## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**  **2. PLEASE TYPE OR PRINT**  **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Josue Ortiz | Western District of New York | Hon. Elizabeth Wolford |
| v. | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
| Mark Stambach | May 10, 2022 | 164 |
| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
| | March 10, 2023 | ☐ Yes  ☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name: Address: Telephone No.: Fax No.: E-mail:

Peter Sahasrabudhe  140 Pearl St., Buffalo, NY 14222

Tel: 716-848-1508 Fax: 716-819-4652 E-mail: psahasra@hodgsonruss.com

**Attorney(s) for Appellee(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name: Address: Telephone No.: Fax No.: E-mail:

Wayne Felle  6024 Man Street, Williamsville, NY 14221

Tel: 716-505-2700  Fax: Unknown E-mail waynefelle@waynefellelaw.com

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No |
|---|---|---|---|
| Yes | 500 | 0 | If Yes, provide the following: Case Name: 2d Cir. Docket No.: Reporter Citation: (i.e., F.3d or Fed. App.) |

***ADDENDUM "A":*** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

***ADDENDUM "B":*** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

1. Federal Jurisdiction
- ☐ U.S. a party
- ☑ Federal question (U.S. not a party)
- ☐ Diversity
- ☐ Other (specify):

2. Appellate Jurisdiction
- ☑ Final Decision
- ☐ Interlocutory Decision Appealable As of Right
- ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))
- ☑ Other (specify): Final judgment

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B:  DISTRICT  COURT DISPOSITION    (Check as many as apply)**

**1. Stage of Proceedings**
- [ ] Pre-trial
- [ ] During trial
- [x] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [x] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [x] Damages:
  - [ ] Sought: $ _____
  - [x] Granted: $ 6,500,00
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

**PART C:  NATURE OF SUIT    (Check as many as apply)**

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [x] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright / Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**
- [x] Yes
- [ ] No

Will appeal raise a matter of first impression?
- [x] Yes
- [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?    [ ] Yes   [x] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?    [ ] Yes   [x] No

   If yes, state whether  [ ] "A," or  [ ] "B," or [ ] both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: 03/24/2023 | Signature of Counsel of Record:  //s Peter A. Sahasrabudhe |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

## Addendum A

**Part 1 and 2**

This is a civil rights action stemming from the alleged wrongful conviction of Plaintiff-Respondent, Josue Ortiz. Following a jury trial, Defendant-Appellant Mark Stambach was found liable for: (1) malicious prosecution; (2) due process fabrication of evidence; and (3) Fifth Amendment coercion. The jury issued a verdict for $5,000,000 in compensatory damages and $1,500,000 in punitive damages.

After close of plaintiff's proof, and then again in a renewed Fed. R. Civ. P. 50(b) motion, Defendant-Appellant moved for judgment as a matter of law. The Court ultimately denied that motion on February 17, 2023. The Court also partially granted Plaintiff's motion for attorney's fees pursuant to 42 U.S.C. § 1988.

This appeal seeks to overturn the judgment entered in favor of Plaintiff, as Defendant-Appellant contends that Plaintiff has not adduced sufficient evidence to sustain any of his three remaining claims.

# U.S. DISTRICT COURT

## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:16-cv-00321-EAW-MJR

Ortiz v. Wagstaff, et al
Assigned to: Hon. Elizabeth A. Wolford
Referred to: Hon. Michael J. Roemer
Cause: 42:1983 Civil Rights Act

Date Filed: 04/25/2016
Date Terminated: 05/10/2022
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Josue Ortiz**

represented by **Alan J. Pierce**
Hancock Estabrook, LLP
1500 AXA Tower 1
100 Madison Street
Syracuse, NY 13202
(315) 565-4546
Fax: (315) 565-4646
Email: apierce@hancocklaw.com
*TERMINATED: 04/26/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne C. Felle**
Law Office of Wayne C. Felle, P.C.
6024 Main Street
Williamsville, NY 14221
716-505-2700
Fax: 716-505-2727
Email: waynefelle@waynefellelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Richard Wagstaff**
*TERMINATED: 03/01/2021*

represented by **Robert Emmet Quinn**
Buffalo Public Schools
65 Niagara Square
Ste 713 City Hall
Buffalo, NY 14202
716-816-3102
Email: requinn@buffaloschools.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maeve Eileen Huggins**
City of Buffalo Law Department
Suite 1112 City Hall

Buffalo, NY 14202
716 851-4317
Fax: 716 851-4105
Email: mhuggins@city-buffalo.com
*TERMINATED: 12/09/2021*

**Defendant**

**Mary Gugliuzza**                     represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Maeve Eileen Huggins**
                                                         (See above for address)
                                                         *TERMINATED: 12/09/2021*

**Defendant**

**BPD DOES 1-12**                      represented by    **Robert Emmet Quinn**
*in their Capacity as Police Officers of the*            (See above for address)
*City of Buffalo*                                        *LEAD ATTORNEY*
*TERMINATED: 03/01/2021*                                 *ATTORNEY TO BE NOTICED*

                                                         **Maeve Eileen Huggins**
                                                         (See above for address)
                                                         *TERMINATED: 12/09/2021*

**Defendant**

**Buffalo Police Department**          represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Maeve Eileen Huggins**
                                                         (See above for address)
                                                         *TERMINATED: 12/09/2021*

**Defendant**

**The City of Buffalo**                represented by    **Robert Emmet Quinn**
*TERMINATED: 03/28/2019*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Maeve Eileen Huggins**
                                                         (See above for address)
                                                         *TERMINATED: 12/09/2021*

**Defendant**

**Mark Stambach**                      represented by    **Peter A. Sahasrabudhe**
                                                         Hodgson Russ LLP
                                                         The Guaranty Building
                                                         140 Pearl Street
                                                         Suite 100
                                                         Buffalo, NY 14202

716-848-1508
Email: psahasra@hodgsonruss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hugh M. Russ , III**
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
(716) 856-4000
Fax: 716-849-0349
Email: hruss@hodgsonruss.com
*ATTORNEY TO BE NOTICED*

**Maeve Eileen Huggins**
(See above for address)
*TERMINATED: 12/09/2021*

**Defendant**

| | | |
|---|---|---|
| **Mark Vaughn**<br>*TERMINATED: 03/01/2021* | represented by | **Robert Emmet Quinn**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Maeve Eileen Huggins**<br>(See above for address)<br>*TERMINATED: 12/09/2021* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/25/2016 | 1 | COMPLAINT against All Defendants $ 400 receipt number 0209-2515426, filed by Josue Ortiz.(Felle, Wayne) (Entered: 04/25/2016) |
| 04/26/2016 | | E-Filing Notification: Attorney is directed to efile a civil cover sheet using the Continuation of Exhibits event found under Responses and Replies re 1 COMPLAINT against All Defendants $ 400 receipt number 0209-2515426, filed by Josue Ortiz.(Felle, Wayne) (SG) (Entered: 04/26/2016) |
| 04/28/2016 | 2 | CONTINUATION OF EXHIBITS by Josue Ortiz. filed by Josue Ortiz. (Attachments: # 1 Summons)(Felle, Wayne) (Entered: 04/28/2016) |
| 04/29/2016 | | Case assigned to Hon. Lawrence J. Vilardo. (SG) (Entered: 04/29/2016) |
| 04/29/2016 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 04/29/2016) |
| 04/29/2016 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c |

| | | |
|---|---|---|
| | | and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. Notification to Chambers of on-line civil case opening. (SG) (Entered: 04/29/2016) |
| 04/29/2016 | | E-Filing Notification: Attorney is directed refile a summons for each individual defendant using the continuation of exhibits event re 2 CONTINUATION OF EXHIBITS by Josue Ortiz. filed by Josue Ortiz. (Attachments: # 1 Summons)(Felle, Wayne) (SG) (Entered: 04/29/2016) |
| 04/29/2016 | 3 | CONTINUATION OF EXHIBITS by Josue Ortiz. to E-Filing Notification, filed by Josue Ortiz. (Felle, Wayne) (Entered: 04/29/2016) |
| 05/03/2016 | 4 | Summons Issued as to BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (SG) (Entered: 05/03/2016) |
| 07/29/2016 | 5 | AFFIDAVIT of Service for Summons and Complaint served on Richard Wagstaff, Mary Gugliuzza, Mark Vaughn, Mark Stambach, BFD does 1-12, Buffalo Police Department, and City of Buffalo on July 25, 2016, filed by Josue Ortiz. (Felle, Wayne) (Entered: 07/29/2016) |
| 08/15/2016 | 6 | ANSWER to 1 Complaint by BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Quinn, Robert) (Entered: 08/15/2016) |
| 08/16/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 08/16/2016) |
| 08/22/2016 | 7 | TEXT REFERRAL ORDER - Hon. Hugh B. Scott, United States Magistrate Judge, is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall not hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), unless further ordered by this Court. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 8/22/2016. (CMD) (Entered: 08/22/2016) |
| 08/23/2016 | 8 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**ORDER**<br><br>Scheduling Conference set for **Thur., 9/29/2016, 10:45 AM**, before Hon. Hugh B. Scott, to be held jointly with the conference in *Oritz v. Case, et al.*, No. 16cv322.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 8/23/2016.<br><br>(Attachments: # 1 AO-85 Consent Form) |

| | | (DRH) (Entered: 08/23/2016) |
|---|---|---|
| 09/29/2016 | 9 | **HONORABLE HUGH B. SCOTT** <br><br> TEXT OF MINUTE ENTRY <br><br> For proceedings held before Magistrate Judge Hugh B. Scott <br><br> Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Robert Quinn for defendants. <br><br> Scheduling Conference held on 9/29/2016 (with *Ortiz v. Case, et al.*, Case No. 16CV322). To have parallel schedule entered in this case as in *Case*, with eight months for discovery due to sealing of records in on going criminal investigation related to plaintiff's claims. Court to enter Scheduling Order consistent with this schedule. (DRH) (Entered: 09/29/2016) |
| 09/29/2016 | 10 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> **SCHEDULING/CASE MANAGEMENT ORDER** <br><br> (Please Note: This docket text may <u>not</u> contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) <br><br> Motions to Join Parties/Amend Pleadings due by 10/28/2016. <br><br> Stipulation of Selection of Mediator due by 10/27/2016. First Mediation Session due by 12/22/2016. Mediation To End by 9/1/2017. <br><br> Plaintiff Expert Witness ID due by 4/4/2017. Motions to Compel Discovery due by 4/28/2017. Defendant Expert Witness ID due by 5/12/2017. Discovery completed by 5/29/2017. <br><br> Dispositive Motions due by 8/28/2017. <br><br> If no motions are filed, parties to contact the Chambers of Judge Vilardo to set a trial date by 9/7/2017. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 9/29/2016. (DRH) (Entered: 09/29/2016) |
| 10/18/2016 | 11 | Stipulation-Selection of Mediator by Josue Ortiz. (Felle, Wayne) (Entered: 10/18/2016) |
| 01/05/2017 | 12 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> **TEXT ORDER** <br><br> Jointly with 16CV322, Status Conference set for **Thur., 1/19/2017, 10:30 AM**, before Hon. Hugh B. Scott. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 1/5/2017. (DRH) (Entered: 01/05/2017) |
| 01/05/2017 | 13 | NOTICE of Appearance by Maeve Eileen Huggins on behalf of BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff (Attachments: # 1 Certificate of Service Certificate of Service of Notice of Appearance)(Huggins, Maeve) (Entered: 01/05/2017) |

| | | |
|---|---|---|
| 01/06/2017 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 01/06/2017) |
| 01/19/2017 | 14 | **HONORABLE HUGH B. SCOTT** <br><br> TEXT OF MINUTE ENTRY AND ORDER <br><br> For proceedings held before Magistrate Judge Hugh B. Scott <br><br> Wayne Felle, for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants. <br><br> Held with *Ortiz v. Case, et al.*, No. 16CV322. <br><br> Status Conference held on 1/19/2017. Parties obtained Order from New York State court unsealing certain records and purporting to have those documents inspected *in camera* by this Court. Defense counsel has located files that were unsealed and need to review for responsiveness and claims of privilege. Parties are to work out among themselves what can be produced and what documents are objected to. Someone should move to extend Scheduling Order deadlines (Docket No. 10) if necessary and parties are encouraged to initiate mediation proceedings. <br><br> Status Conference set for **Thur., 2/9/2017, 2:00 PM**, before Hon. Hugh B. Scott to determine progress regarding defense review and production and the necessity for *in camera* inspection of any part of these records. <br><br> So Ordered. <br><br> Signed by Hon. Hugh B. Scott on 1/19/2017. (DRH) (Entered: 01/19/2017) |
| 02/09/2017 | 15 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> **TEXT ORDER re 14 Terminate Hearings, Set Hearings, Status Conference** <br><br> Due to the Court's calendar, Status Conference reset for today, 2/9/2017, **2:30 PM**, before Hon. Hugh B. Scott. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 2/9/2017. (DRH) (Entered: 02/09/2017) |
| 02/09/2017 | 16 | **HONORABLE HUGH B. SCOTT** <br><br> TEXT OF MINUTE ENTRY AND ORDER <br><br> For proceedings held before Magistrate Judge Hugh B. Scott <br><br> Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants. <br><br> Status Conference held on 2/9/2017, the parties reached agreement on production of the unsealed documents, with defendants agreeing to produce by 2/24/2017. Parties reviewing proposed Amended Scheduling Order to submit to the Court. Parties requested a further Status Conference 1 month from now. <br><br> Status Conference set for **Thur., 3/16/2017, 10:00 AM**, before Hon. Hugh B. Scott with *Ortiz v. Case*, No. 16cv322. |

| | | So Ordered. Signed by Hon. Hugh B. Scott on 2/9/2017. (DRH) (Entered: 02/09/2017) |
|---|---|---|
| 02/28/2017 | 17 | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 02/28/2017) |
| 02/28/2017 | 18 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 14 Terminate Hearings, Set Hearings, Status Conference, 16 Terminate Hearings, Status Conference, Set Hearings**<br><br>Defendants submitted for *in camera* inspection documents from their files, including a privilege log served upon plaintiff. Plaintiff shall respond to the privileges claim in the privilege log, Responses due by **3/8/2017**. Status Conference remain (Docket No. 16) scheduled for **Thur., 3/16/2017, 10:00 AM**.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 2/28/2017. (DRH) (Entered: 02/28/2017) |
| 03/16/2017 | 19 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants<br><br>Status Conference held on 3/16/2017, with *Ortiz v. Case, et al.*, No. 16CV322. Plaintiff reports that mediation was held and would continue.<br><br>Defendants object to producing files due to pending federal investigation, Judge Arcara's Orders limiting production to them, and potentially endangering persons. This Court raised potential of intervention by the United States in discovery due to the role in the files produced by the City defendants. Further Status Conference (4/19/2017, 2 pm) to be held. Court to order United States' intervention.<br><br>Plaintiff raised issues regarding the Scheduling Order (Docket No. 10) deadlines; this Court holds those deadlines **in abeyance** pending resolution of the outstanding discovery issues. (DRH) (Entered: 03/16/2017) |
| 03/16/2017 | 20 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 19 Terminate Hearings, Status Conference**<br><br>Defendants produced for *in camera* inspection certain police files from the investigation that led to the arrest, prosecution, and conviction of plaintiff for homicide. Plaintiff now alleges that others were later convicted in federal court, *United States v. Montalvo, et al.*, No. 11CR366, for those homicides and that plaintiff was exonerated. Plaintiff commenced this false arrest and malicious prosecution action against defendants.<br><br>Defendants now contend that most of these documents are privileged, arguing that the *in camera* materials may reveal confidential sources, identify federal investigation witnesses, and may be deemed confidential due to production of items under terms of a proffer. Defendants also claim that some of the material produced for inspection may have come from the federal Grand Jury, released pursuant to an Order limiting the scope of their production. Defendants, however, do not mention the particulars of the federal investigation, the proffers, or which items were produced to the federal Grand Jury. This Court is unclear whether these confidences remain from the *Montalvo* prosecution, given that all defendants have entered guilty pleas and two have been sentenced. |

As a result, it may be necessary for the United States of America to intervene in this action at least for the limited purpose of conducting discovery in this action (and possibly in the parallel action *Ortiz v. Case, et al.*, Case No. 16CV322), Fed. R. Civ. P. 24; *see* 6-24 *Moore's Federal PracticeCivil* § 24.23 (2017). This Court requests that the Assistant United States Attorney who was counsel in *Montalvo* address whether the items provided for *in camera* inspection should remain undisclosed due to pending prosecution, pending federal criminal investigation, or to protect the safety of confidential sources. The Assistant U.S. Attorney or such representative of the United States is invited to appear at a Status Conference scheduled for **Wed., 4/19/2017, 2:00 pm**. The United States also may make a written submission on this matter; such is due by **4/3/2017**; this submission may be made to this Court under seal. Copies of this Order will be sent by Chambers to the Acting United States Attorney and to Assistant U.S. Attorney Joseph Tripi, counsel of record in *Montalvo*.

Status Conference set for 4/19/2017, 2:00 PM, before Hon. Hugh B. Scott.

So Ordered. Signed by Hon. Hugh B. Scott on 3/16/2017. (DRH) Modified on 3/16/2017--correct causes of action (DRH). (Entered: 03/16/2017)

| | | |
|---|---|---|
| 03/16/2017 | | E-Filing Notification: 20 |

**ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**

**TEXT ORDER re 19 Terminate Hearings, Status Conference**

Defendants produced for *in camera* inspection certain police files from the investigation that led to the arrest, prosecution, and conviction of plaintiff for homicide. Plaintiff now alleges that others were later convicted in federal court, *United States v. Montalvo, et al.*, No. 11CR366, for those homicides and that plaintiff was exonerated. Plaintiff commenced this false arrest and malicious prosecution action against defendants.

Defendants now contend that most of these documents are privileged, arguing that the *in camera* materials may reveal confidential sources, identify federal investigation witnesses, and may be deemed confidential due to production of items under terms of a proffer. Defendants also claim that some of the material produced for inspection may have come from the federal Grand Jury, released pursuant to an Order limiting the scope of their production. Defendants, however, do not mention the particulars of the federal investigation, the proffers, or which items were produced to the federal Grand Jury. This Court is unclear whether these confidences remain from the *Montalvo* prosecution, given that all defendants have entered guilty pleas and two have been sentenced.

As a result, it may be necessary for the United States of America to intervene in this action at least for the limited purpose of conducting discovery in this action (and possibly in the parallel action *Ortiz v. Case, et al.*, Case No. 16CV322), Fed. R. Civ. P. 24; *see* 6-24 *Moore's Federal PracticeCivil* § 24.23 (2017). This Court requests that the Assistant United States Attorney who was counsel in *Montalvo* address whether the items provided for *in camera* inspection should remain undisclosed due to pending prosecution, pending federal criminal investigation, or to protect the safety of confidential sources. The Assistant U.S. Attorney or such representative of the United States is invited to appear at a Status Conference scheduled for **Wed., 4/19/2017, 2:00 pm**. The United States also may make a written submission on this matter; such is due by **4/3/2017**; this submission may be made to this Court under seal. Copies of this Order will be sent by Chambers to the Acting United States Attorney and to Assistant U.S. Attorney Joseph Tripi, counsel of record in *Montalvo*.

Status Conference set for 4/19/2017, 2:00 PM, before Hon. Hugh B. Scott.

| | | |
|---|---|---|
| | | So Ordered. Signed by Hon. Hugh B. Scott on 3/16/2017. (DRH) Modified on 3/16/2017--correct causes of action (DRH). (Entered: 03/16/2017) |
| 04/19/2017 | 21 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins, for defendants; Assistant U.S. Attorney Michael Cerrone specially appearing<br><br>Status Conference held on 4/19/2017. Parties argued production of in camera material from defendants' files. Parties instructed to confer to work out means to identify confidential or sensitive matters and which documents were already produced to plaintiff through his former (now deceased) criminal counsel. A party then may need to make some sort of motion on this. Further status to be scheduled. (DRH) (Entered: 04/19/2017) |
| 04/19/2017 | 22 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 21 Terminate Hearings, Status Conference**<br><br>As indicated (Docket No. 21), Further Status Conference set for **Wed., 5/10/2017, 11:15 AM**, before Hon. Hugh B. Scott. Assistant U.S. Attorney Michael Cerrone is again invited to appear at this conference. This conference will be held jointly with *Ortiz v. Case*, Case No. 16CV322.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 4/19/2017. (DRH) (Entered: 04/19/2017) |
| 05/03/2017 | <u>23</u> | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 05/03/2017) |
| 05/10/2017 | 24 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants; as friend of the Court, Assistant U.S. Attorney Michael Cerrone<br><br>Status Conference held on 5/10/2017, with *Ortiz v. Case, et al.*, No. 16cv322V. The United States Attorney's office produced a redacted version of the transmission letter of the federal Grand Jury materials sent to the Erie County District Attorney and plaintiff's deceased criminal defense counsel pursuant to the Orders of Judge Arcara releasing those materials.<br><br>Defense counsel in this case noted that material provided for *in camera* review contains sensitive material and may include items included in the federal Grand Jury materials.<br><br>This Court set plaintiff's deadline to move to compel (if necessary) by 5/24/2017, with defendants responding by 5/31/2017, and this Court to set a hearing date by a separate Order. (DRH) (Entered: 05/10/2017) |
| 05/10/2017 | 25 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 24 Terminate Hearings, Status Conference** |

| | | |
|---|---|---|
| | | Plaintiff's Motion to Compel (if any) (Docket No. 24) due by 5/24/2017, Responses due by 5/31/2017. Court to schedule oral argument in a separate Order.<br><br>This Court notes that *in camera* review of defense submissions needs to be conducted and an Order issued of what can, and cannot, be produced.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 5/10/2017. (DRH) (Entered: 05/10/2017) |
| 05/25/2017 | 26 | First MOTION for Disclosure by Josue Ortiz. (Attachments: # 1 Affidavit, # 2 Exhibit Decision and Order, # 3 Exhibit Retainer, # 4 Exhibit Order, # 5 Exhibit Motion papers, # 6 Exhibit Text of Minute Entry, # 7 Exhibit Plaintiff correspondence, # 8 Exhibit Text of Minute Entry, # 9 Exhibit Buffalo Police Dept responses, # 10 Exhibit County of Erie responses, # 11 Exhibit Hon. Arcara Orders, # 12 Exhibit Michel Cerrone, Esq letter, # 13 Exhibit Plaintiffs Correspondence, # 14 Exhibit Joseph Tripi, Esq letters, # 15 Memorandum in Support)(Felle, Wayne) (Entered: 05/25/2017) |
| 05/30/2017 | 27 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 25 Text Order, Set Deadlines, Set Scheduling Order Deadlines, 26 First MOTION for Disclosure filed by Josue Ortiz, 24 Terminate Hearings, Status Conference**<br><br>With *Ortiz v. Case, et al.*, Case No. 16CV322, Oral Argument set for **Wed., 6/7/2017, 11:00 AM**, before Hon. Hugh B. Scott.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 5/30/2017. (DRH) (Entered: 05/30/2017) |
| 05/31/2017 | 28 | DECLARATION re 26 First MOTION for Disclosure filed by The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department filed by The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Exhibit Exhibit I, # 10 Exhibit Exhibit J, # 11 Exhibit Exhibit K, # 12 Exhibit Exhibit L, # 13 Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 05/31/2017) |
| 06/07/2017 | 29 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants.<br><br>Oral Argument held on 6/7/2017 parties argued plaintiff's Motion to Compel (Docket No. 26). Defendants note that this case was heard with *Ortiz v. Case, et al.*, No. 16CV322, as a convenience for the common issues, but reinforced that the cases are not consolidated.<br><br>Court reserved decision. (DRH) (Entered: 06/07/2017) |
| 06/23/2017 | 30 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**ORDER granting in part and denying in part 26 Motion for Disclosure** |

| | | |
|---|---|---|
| | | Plaintiff's Motion for Disclosure (Docket No. 26) is denied. Following *in camera* inspection of the Buffalo Police Department files, defendants are to produce the items stated in this Order. |
| | | This Court **declines** to alter Judge Arcara's Orders surrounding disclosure of federal Grand Jury. |
| | | So Ordered. Signed by Hon. Hugh B. Scott on 6/23/2017. (DRH) (Entered: 06/23/2017) |
| 07/14/2017 | 31 | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 07/14/2017) |
| 08/17/2017 | 32 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Affidavit Declaration, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Exhibit Exhibit E, # 7 Memorandum in Support Memorandum of Law in Support, # 8 Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 08/17/2017) |
| 08/25/2017 | 33 | TEXT REFERRAL ORDER (DISPOSITIVE) - Hon. Hugh B. Scott, United States Magistrate Judge, is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall also hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 8/25/2017. (CMD) (Entered: 08/25/2017) |
| 08/28/2017 | 34 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 33 Order Referring Case to Magistrate Judge, 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach**<br><br>With the dispositive referral from Judge Vilardo (Docket No. 33), Responses to defense Motion to Dismiss (Docket No. 32) due by 9/29/2017, Replies due by 10/6/2017. This Court will determine, upon review of moving papers, whether to conduct oral argument. If no argument is scheduled, the motion will be deemed submitted as of the reply deadline date.. Signed by Hon. Hugh B. Scott on 8/28/2017. (DRH) (Entered: 08/28/2017) |
| 09/01/2017 | 35 | NOTICE of Appearance by Alan J. Pierce on behalf of Josue Ortiz (Pierce, Alan) (Entered: 09/01/2017) |
| 09/28/2017 | 36 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach, 34 Text Order, Set/Reset Motion and R&R Deadlines/Hearings** |

Case 23-352, Document 4, 02/24/2023, 3480020, Page15 of 124

| | | |
|---|---|---|
| | | Upon plaintiff's request to extend his time to respond (and corresponding extension of defense time to reply, emailed letters from Alan J. Pierce, Esq., to Chambers, copies to Maeve Huggins, dated 9/27/2017, not filed by Chambers), Responses now due by 10/6/2017, Replies due by 10/13/2017. Motion now deemed submitted 10/13/2017 without oral argument unless scheduled by this Court following review of the moving papers.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 9/28/2017. (DRH) (Entered: 09/28/2017) |
| 10/06/2017 | 37 | RESPONSE to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Josue Ortiz. (Attachments: # 1 Declaration of Alan J. Pierce, Esq., # 2 Exhibit 1 - Copies of Decisions & Order of Hon. Frznczyk, # 3 Exhibit 2 - Discovery, # 4 Exhibit 3 - Letter dated July 24, 2017, # 5 Exhibit 4 - Proposed Amended Complaint, # 6 Exhibit 5 - Redlined Version of Proposed Amended Complaint, # 7 Memorandum in Support, # 8 Certificate of Service)(Pierce, Alan) (Entered: 10/06/2017) |
| 10/07/2017 | 38 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 37 Response to Motion, filed by Josue Ortiz, 36 Text Order, Set/Reset Motion and R&R Deadlines/Hearings, 19 Terminate Hearings, Status Conference, 10 Scheduling Order**<br><br>With plaintiff's cross-Motion (Docket No. 37) for Leave to Amend, Responses due by 10/27/2017. Replies both motions now due by 11/2/2017.<br><br>As previously ordered (Docket No. 19), the deadlines of the Scheduling Order (Docket No. 10) remain held **in abeyance** pending resolution of these motions. As warranted, the Scheduling Order deadlines will be updated and the Order amended following disposition of the pending motions.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 10/7/2017. (DRH) (Entered: 10/07/2017) |
| 10/18/2017 | 39 | Mediation Certification by Michael Menard(AGB) (Entered: 10/18/2017) |
| 10/25/2017 | 40 | RESPONSE to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Exhibit Exhibit A, # 2 Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 10/25/2017) |
| 11/02/2017 | 41 | REPLY to Response to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Reply on Cross-Motion to Amend Complaint* filed by Josue Ortiz. (Attachments: # 1 Exhibit Exh 6)(Pierce, Alan) (Entered: 11/02/2017) |
| 11/02/2017 | 42 | REPLY to Response to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service Certificate of Service for Reply Memorandum of Law)(Huggins, Maeve) (Entered: 11/02/2017) |
| 11/03/2017 | 43 | CERTIFICATE of Service re 41 Reply to Response to Motion *Certificate of Service of Reply MOL 11/2* by Alan J. Pierce on behalf of Josue Ortiz (Pierce, Alan) Modified on 11/6/2017 to correct event (NRE). (Entered: 11/03/2017) |
| 11/06/2017 | | E-Filing Notification: regarding 43 CERTIFICATE of Counsel. Incorrect event used to electronically file document. For future reference, use (Certificate of Service) event found |

Case 23-352, Document 4, 02/24/2023, 3480826, Page16 of 124

| | | |
|---|---|---|
| | | under Service of Process. No action required; changes made by Clerk's Office. (NRE) (Entered: 11/06/2017) |
| 12/13/2017 | 44 | **MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**REPORT & RECOMMENDATION**<br><br>Re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach<br><br>It is recommended that defendants' Motion to Dismiss (Docket No. 32) be granted in part, deemed moot in part. If adopted, this action would be dismissed. It is further recommended that plaintiff's Cross-Motion for leave to amend the Complaint (Docket No. 37) be granted in part to remove defendant Buffalo Police Department as a party and denied as to other allegations. Objections due fourteen days from receipt; Objections to R&R due by 12/27/2017.<br><br>If these recommendations are modified or not adopted, this Court will schedule a status conference to set an Amended Scheduling Order for this action.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 12/13/2017. (DRH) (Entered: 12/13/2017) |
| 12/18/2017 | 45 | Mediation Certification by Michael Menard(AGB) (Entered: 12/18/2017) |
| 12/19/2017 | 46 | REQUEST AND ORDER re 44 REPORT AND RECOMMENDATIONS re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach. Plaintiff's request for an extension of time to file objections to Magistrate Judge Scott's Report and Recommendation is granted. Objections to R&R due by 1/5/2018. SO ORDERED. Signed by Hon. Lawrence J. Vilardo on 12/19/2017. (APG) (Entered: 12/19/2017) |
| 01/05/2018 | 47 | OBJECTION to 44 Report and Recommendations *dated January 5, 2018* by Josue Ortiz. (Pierce, Alan) (Entered: 01/05/2018) |
| 01/07/2018 | 48 | TEXT ORDER re 47 Objection to Report and Recommendations filed by Josue Ortiz. Responses due by 1/26/2018. Replies due by 2/9/2018. If necessary, the Court will schedule oral argument at later time. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 1/7/2018. (CMD) (Entered: 01/07/2018) |
| 01/26/2018 | 49 | REPLY/RESPONSE to re 47 Objection to Report and Recommendations filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service Certificate of Service of Response to Objections)(Huggins, Maeve) (Entered: 01/26/2018) |
| 02/08/2018 | 50 | REPLY/RESPONSE to re 49 Reply/Response, 47 Objection to Report and Recommendations filed by Josue Ortiz. (Pierce, Alan) (Entered: 02/08/2018) |
| 04/13/2018 | 51 | Mediation Certification by Michael Menard(AGB) (Entered: 04/13/2018) |
| 01/03/2019 | 52 | TEXT ORDER. A Status Conference is set for 1/10/2019 at 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Lawrence J. Vilardo. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 1/3/2019. (APG) (Entered: 01/03/2019) |

| 01/10/2019 | 53 | Minute Entry for proceedings held before Hon. Lawrence J. Vilardo: Status Conference held on 1/10/2019. Judge Vilardo advised parties that potential conflicts may exist concerning his presiding over case. Parties given time to determine if actual conflicts exist. A conference call is set for 1/31/2019 at 9:30 AM with Law Clerk, Allison P. Gioia wherein parties will advise court of their findings. Dial-in instructions will be emailed directly to parties. Appearances. For plaintiff: Alan J. Pierce. For defendants: Assistant Corporation Counsel Maeve Huggins. (Court Reporter Ann M. Sawyer.) (CMD) Modified to correct date of conference call on 1/11/2019 (CMD). (Entered: 01/11/2019) |
|---|---|---|
| 01/10/2019 | | Set/Reset Hearings: Conference call set for 1/31/2019 at 9:30 AM. (CMD) (Entered: 01/11/2019) |
| 02/11/2019 | 54 | TEXT ORDER. Teleconference call scheduled for 2/11/2019 at 1:30 PM with Law Clerk, Allison Gioia. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 2/11/2019. (CMD) (Entered: 02/11/2019) |
| 02/11/2019 | 55 | TEXT ORDER. After a January 10, 2019 status conference with the parties and a report back with Chambers staff on 2/11/2019, due to conflicts of interest, Judge Vilardo hereby recuses himself in this case and requests the Clerk of Court to assign a new District Judge (note related case 16-CV-322). SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 2/11/2019. (APG) |
| | | -CLERK TO FOLLOW UP- (Entered: 02/11/2019) |
| 02/11/2019 | | Case Reassigned to Hon. Elizabeth A. Wolford. Hon. Lawrence J. Vilardo no longer assigned to the case. (NRE) (Entered: 02/11/2019) |
| 03/18/2019 | 56 | DECISION AND ORDER adopting in part and rejecting in part 44 Report and Recommendations; granting in part 37 motion for leave to file an amended complaint; denying as moot 32 motion for judgment on the pleadings; granting 32 motion to compel discovery. Plaintiff is instructed to file an amended complaint by no later than March 27, 2019. The parties shall confer with Judge Scott regarding Plaintiff's deadline to produce the documents sought by Defendants. Signed by Hon. Elizabeth A. Wolford on 03/18/2019. (CDH) (Entered: 03/18/2019) |
| 03/20/2019 | 57 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 56 Order on Motion to Dismiss for Failure to State a Claim, Order on Report and Recommendations**<br><br>Status Conference set for **Wed., 4/10/2019, 11:30 AM**, in Allegany Courtroom (6E), US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott to discuss scheduling plaintiff's response to defendants' motion to compel (Docket No. 32; *see* Docket No. 56, Order of 3/18/2019, at 15-16, 16) and scheduling the remaining pretrial proceedings.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 3/20/2019. (DRH) (Entered: 03/20/2019) |
| 03/26/2019 | 58 | TEXT ORDER. The Referral Order in this matter (Dkt. 33) is modified as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A), all pre-trial matters in this case are referred to the Hon. Hugh B. Scott, United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall not hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § |

| | | |
|---|---|---|
| | | 636(b)(1)(B) and (C), unless further ordered by this Court. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 03/26/2019. (CDH) <br><br> -CLERK TO FOLLOW UP- (Entered: 03/26/2019) |
| 03/27/2019 | 59 | AMENDED COMPLAINT *3/27/19* against All Defendants, filed by Josue Ortiz.(Pierce, Alan) (Entered: 03/27/2019) |
| 04/08/2019 | 60 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> TEXT ORDER re 57 Text Order, Set Hearings <br><br> Status Conference of 4/10/2019 is canceled. Scheduling Conference set for **Tues., 4/30/2019, 11:15 AM**, in Allegany (6E) Courtroom, US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 4/8/2019. (DRH) (Entered: 04/08/2019) |
| 04/15/2019 | 61 | ANSWER to 59 Amended Complaint by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Huggins, Maeve) (Entered: 04/15/2019) |
| 04/16/2019 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 04/16/2019) |
| 04/21/2019 | 62 | DISCOVERY PLAN by Josue Ortiz.(Pierce, Alan) (Entered: 04/21/2019) |
| 04/21/2019 | 63 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *with Proposed Amended Discovery Plan*. (Attachments: # 1 Amended Discovery Plan)(Pierce, Alan) (Entered: 04/21/2019) |
| 04/22/2019 | 64 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> **TEXT ORDER re 60 Text Order, Set Hearings, Terminate Hearings, 62 Discovery Plan filed by Josue Ortiz, 63 Letter, filed by Josue Ortiz** <br><br> Status Conference (Docket No. 60) of 4/30/2019 is canceled at the request of the parties (Docket No. 63). <br><br> This Court generally adopts the deadlines proposed by the parties (Docket Nos. 62, 63) for pretrial proceedings. Thus, Fact Discovery completed by 11/1/2019; plaintiff's Expert Disclosure by 11/27/2019; defense's Expert Disclosure by 12/31/2019; Discovery completed by 2/14/2020. <br><br> Dispositive Motions due by 3/16/2020. <br><br> If no dispositive motion, Mediation ends 3/31/2020. Parties to contact the chambers of Judge Wolford to schedule a pretrial conference to set a trial date. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 4/22/2019. (DRH) (Entered: 04/22/2019) |

Case 23-352, Document 4, 02/24/2023, 3489320, Page19 of 124

| 11/19/2019 | 65 | Letter from Alan Pierce, Esq., dated 11/19/2019, to Chambers, with copy to defense counsel requesting status conference by telephone. Filed by Chambers. (DRH) (Entered: 11/19/2019) |
|---|---|---|
| 11/19/2019 | 66 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER [with Attachment] re 65 Letter, 64 Text Order, Set Deadlines/Hearings, Set Scheduling Order Deadlines, Terminate Hearings**<br><br>Plaintiff's counsel wrote to Chambers (Docket No. 65) requesting a telephonic status conference to discuss the Scheduling Order deadlines (Docket No. 64). That request is **granted**.<br><br>Status Conference set for **Wed., 11/20/2019, 2:30 PM**, in Wyoming (5E) Courtroom, US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott. Parties, especially out of town counsel may participate by teleconference. Attached to this Order is the call-in instructions for the Court's teleconference system. At the time for the conference, counsel are to call the number for the Wyoming Courtroom (5E); please stay on the line until the Court joins the teleconference.<br><br>To prepare for the Status Conference (or to decide the scheduling issue if this conference, for whatever reason, is not held) Status Report from both sides as to proposed deadlines due by **11/20/2019 at 10:00 am**. This Court intends to resolve the scheduling issue on 11/20/2019.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 11/19/2019. (DRH) (Entered: 11/19/2019) |
| 11/20/2019 | 67 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Alan Pierce, Esq., for plaintiff; Assistant Corporation Counsel Maeve Higgins for defendants<br><br>Status Conference held on 11/20/2019. Plaintiff sought extension of discovery and subsequent deadlines, seeking a 45-day extension and setting deadline for answering outstanding Interrogatory answers, defense opposed. An extension, the final from this Court (given the age of this case), will be granted; an Amended Scheduling Order to be separately entered. (DRH) (Entered: 11/20/2019) |
| 11/20/2019 | 68 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 67 Terminate Hearings, Status Conference, 64 Text Order, Set Deadlines/Hearings, Set Scheduling Order Deadlines, Terminate Hearings**<br><br>**FIRST AMENDED SCHEDULING/CASE MANAGEMENT ORDER**<br><br>(Please Note: It is your responsibility to read this Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>Plaintiff's answer to outstanding defense Interrogatories due 12/15/2019. Plaintiff Expert Witness ID due by 1/15/2020. Defendant Expert Witness ID due by 2/14/2020. Motions to Compel Discovery due by 2/24/2020. Discovery completed by 3/23/2020. |

| | | Dispositive Motions due by 4/24/2020. |
|---|---|---|
| | | Mediation To End by 5/15/2020. |
| | | If no dispositive motions are filed, parties are to contact the Chambers of Judge Wolford to schedule a Pretrial Conference to set a trial date. |
| | | As stated in the Status Conference of 11/20/2019 (Docket No. 67), this is the **FINAL** extension to be granted by this Court. ANY FURTHER REQUESTS FOR EXTENSIONS OF THIS SCHEDULE WILL BE DENIED BY THIS COURT AND NEED TO BE REFERRED TO JUDGE WOLFORD. |
| | | So Ordered. Signed by Hon. Hugh B. Scott on 11/20/2019. (DRH) (Entered: 11/20/2019) |
| 04/24/2020 | 69 | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss , MOTION for Summary Judgment by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Statement of Undisputed Facts, # 22 Certificate of Service)(Huggins, Maeve) (Entered: 04/24/2020) |
| 04/27/2020 | 70 | TEXT ORDER re 69 Motion to Dismiss and for Summary Judgment. Responses are due on or before May 22, 2020. Replies are due on or before June 5, 2020. Upon receipt of all papers the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/27/2020. (CDH) (Entered: 04/27/2020) |
| 05/19/2020 | 71 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *consent extension of motion filing dates*. (Pierce, Alan) (Entered: 05/19/2020) |
| 05/19/2020 | 72 | TEXT ORDER. At the request of the parties (Dkt. 71), Plaintiff's deadline to respond to Defendants' motion to dismiss (Dkt. 69) is extended to June 5, 2020. Defendants' deadline to file a reply is extended to June 26, 2020. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/19/2020. (CDH) (Entered: 05/19/2020) |
| 06/03/2020 | 73 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *consent extension on motion dates*. (Pierce, Alan) (Entered: 06/03/2020) |
| 06/03/2020 | 75 | ORDER extending time to respond/reply to 69 MOTION to Dismiss for Lack of Jurisdiction (Response due by 6/19/2020, Reply due by 7/10/2020). Signed by Hon. Elizabeth A. Wolford on 6/3/2020. (TF) (Entered: 06/04/2020) |
| 06/04/2020 | | DISREGARD E-Filing Notification: 73 Letter. This document contains a request for relief and should be filed as a motion. NO ACTION REQUIRED. (Entered: 06/04/2020) |
| 06/04/2020 | 74 | Second MOTION to Adjourn motion response dates *on consent - opposition and reply dates* by Josue Ortiz.(Pierce, Alan) (Entered: 06/04/2020) |
| 06/17/2020 | 76 | Third MOTION to Adjourn Opposition to motion to dismiss by Josue Ortiz.(Pierce, Alan) (Entered: 06/17/2020) |
| 06/17/2020 | 77 | LETTER ORDER granting 76 Motion to Extend Deadlines. Plaintiff's opposition to motion to dismiss due by 7/3/2020. Defendant's reply due by 7/24/2020. Signed by Hon. Elizabeth A. Wolford on 06/17/2020. (CDH) (Entered: 06/17/2020) |

| 07/03/2020 | 78 | DECLARATION re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by Josue Ortiz filed by Josue Ortiz. (Attachments: # 1 Statement of Undisputed Facts, # 2 Exhibit 1 - FRANCZYK ORDERS, # 3 Exhibit 2 - DEFS RESPONSES, # 4 Exhibit 3 - RONDON DEPO, # 5 Exhibit 4 - EVANS DEPO, # 6 Exhibit 5 - CITY EXH B, PART 3, # 7 Exhibit 6 - STAMBACH EXH 6, # 8 Exhibit 7 - BPD SYNOPSIS, # 9 Exhibit 8 - ROSARIO STATEMENT, # 10 Exhibit 9- CASE DEC, # 11 Exhibit 10-SEDITA DEC, # 12 Exhibit 11-CITY EXH B, PARTS 1-2, # 13 Exhibit 12-COGGINS DEPO, # 14 Exhibit 13-DEFS INITIAL DISCLOSURES, # 15 Exhibit 14-CLAIM, # 16 Exhibit 15-STAMBACH EXHS 2, 17)(Pierce, Alan) (Entered: 07/03/2020) |
|---|---|---|
| 07/07/2020 | 79 | MEMORANDUM in Opposition re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by Josue Ortiz. (Attachments: # 1 Exhibit 16 - Stambach Exh 1)(Pierce, Alan) (Entered: 07/07/2020) |
| 07/24/2020 | 80 | REPLY to Response to Motion re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Huggins, Maeve) (Entered: 07/24/2020) |
| 08/03/2020 | 81 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *requesting oral argument*. (Pierce, Alan) (Entered: 08/03/2020) |
| 02/26/2021 | 82 | DECISION AND ORDER granting in part and denying in part 69 Motion to Dismiss and/or for Summary Judgment. Signed by Hon. Elizabeth A. Wolford on 02/26/2021. (CDH)<br><br>-CLERK TO FOLLOW UP- (Entered: 02/26/2021) |
| 03/04/2021 | 83 | TEXT ORDER reassigning case referral to Magistrate Judge Hon. Michael J. Roemer in place of Hon. Hugh B. Scott. Signed by Mary C. Loewenguth, Clerk of Court on 3/4/2021. (CGJ) (Entered: 03/04/2021) |
| 04/12/2021 | 84 | TEXT ORDER regarding trial ready status. On or before April 26, 2021, the parties shall submit a joint status report by letter providing the Court with the following information, as well as any other information that the parties believe may be relevant: (1) whether the case is ready for trial; (2) the estimated length of any trial; (3) whether the case will be tried by a jury; and (4) each party's position on whether a settlement conference with the undersigned, the assigned magistrate judge, or a court-appointed mediator would be beneficial, and if so, any preference in that regard.<br><br>To assist in the preparation of this joint status report and for the purposes of transparency, the Court advises the parties that the District's most-recent General Order continuing all jury trials due to the COVID-19 pandemic is set to expire on April 26, 2021. There are 24 civil cases assigned to the undersigned (including this matter) that appear ready for trial. In addition, the undersigned is already scheduled to preside over 6 criminal jury trials this year (including one anticipated to last approximately 2 months), and it is likely that additional criminal cases assigned to the undersigned will be scheduled for trial this year. Therefore, it is unlikely that this matter can be scheduled for a date certain jury trial before the undersigned this year. As a result of this congestion and because cases often get resolved immediately prior to trial, the undersigned is contemplating implementing a standby-trial calendar, where this case would be set down for a jury trial without a date certain and the parties would be expected to proceed to trial on two weeks' notice. The undersigned understands that standby trials can present challenges and the parties may |

include in the joint status report any feedback about that proposal. However, it may be the only reasonable option to manage the undersigned's civil trial calendar.

In view of the above, the parties may wish to consider consenting to magistrate judge jurisdiction whereupon the trial would take place before and the scheduling would be set by a magistrate judge. In this regard, the parties are advised that any trial before the undersigned will take place at the Rochester courthouse, while a trial before the assigned magistrate judge would be held in Buffalo. While consenting to magistrate judge jurisdiction would benefit the parties with respect to scheduling, there will be no adverse substantive consequences should they withhold such consent. The undersigned also notes that if the parties consented to a bench trial, the matter may be able to proceed on set dates this year before the undersigned (although likely not on consecutively-scheduled dates).

SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/12/2021. (CDH) (Entered: 04/12/2021)

| 04/26/2021 | 85 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Huggins, Maeve) (Entered: 04/26/2021) |
| --- | --- | --- |
| 04/27/2021 | 86 | TEXT ORDER re 85 Joint Status Report. The parties have advised the Court that they are in the process of scheduling a mediation date. By no later than June 30, 2021, the parties shall provide a further joint report advising the Court of the status of their mediation efforts. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/27/2021. (CDH) (Entered: 04/27/2021) |
| 06/30/2021 | 87 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Huggins, Maeve) (Entered: 06/30/2021) |
| 07/06/2021 | 88 | TEXT ORDER. On or before August 20, 2021, the parties shall provide the Court with a joint report regarding the status of their mediation efforts. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/06/2021. (CDH). (Entered: 07/06/2021) |
| 08/19/2021 | 89 | STATUS REPORT by Josue Ortiz. (Pierce, Alan) (Entered: 08/19/2021) |
| 08/20/2021 | 90 | STATUS REPORT by Mark Stambach. (Quinn, Robert) (Entered: 08/20/2021) |
| 08/23/2021 | 91 | TEXT ORDER. On or before September 3, 2021, the parties shall provide the Court with a single joint report regarding the status of their mediation efforts. The Court will not consider submission of competing reports to constitute compliance with this Order. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 08/23/2021. (CDH). (Entered: 08/23/2021) |
| 09/03/2021 | 92 | STATUS REPORT by Mark Stambach. (Quinn, Robert) (Entered: 09/03/2021) |
| 09/23/2021 | 93 | Mediation Certification by Michael Menard. The case has not settled mediation complete. (Menard, Michael) (Entered: 09/23/2021) |
| 11/10/2021 | 94 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *requesting conf to set trial date*. (Pierce, Alan) (Entered: 11/10/2021) |
| 11/12/2021 | | E-Filing Notification regarding 94 LETTER: this document contains a request for relief and should be filed as a motion. ACTION REQUIRED: Re-file document using the motion event.(SG) (Entered: 11/12/2021) |

| 11/12/2021 | | E-Filing Notification: DISREGARD previous E-Filing Notification directing the refiling of the 94 Letter. The Court will accept the filing as is. (SG) (Entered: 11/12/2021) |
|---|---|---|
| 11/30/2021 | 95 | TEXT ORDER. A telephonic status conference is set in this matter for December 7, 2021, at 10:00 a.m. The attorneys who will be trying the case must attend and be prepared to schedule a trial date. Due to the Court's congested calendar, the parties are strongly discouraged from seeking an adjournment of this conference, but in the event such an adjournment is requested, any such request must set forth mutually convenient dates and times that the parties are available within the next 45 days. To access the conference, dial (866) 434-5269 and enter access code 8632566# sufficiently in advance of the start time. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 11/30/2021. (CDH) (Entered: 11/30/2021) |
| 12/07/2021 | 96 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances by telephone: Alan J. Pierce, Esq. on behalf of plaintiff; Robert Emmet Quinn, Esq. on behalf of defendant Mark Stambach. Status Conference held on 12/7/2021 by telephone. Jury trial set for 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Pretrial Conference set for 3/30/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Pretrial Order to be issued. (Court Reporter AT&T Teleconference) (DPS) (Entered: 12/08/2021) |
| 12/09/2021 | 97 | NOTICE OF REMOVAL by All Defendants (Huggins, Maeve) (Entered: 12/09/2021) |
| 12/16/2021 | 98 | PRETRIAL ORDER, Pretrial Conference set for 3/30/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury Trial set for 5/9/2022 09:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Signed by Hon. Elizabeth A. Wolford on 12/15/2021. (Please note: This docket entry does not contain every detail of this order. It is your responsibility to read and download the pdf to this document for future reference.) (DPS) (Entered: 12/16/2021) |
| 02/04/2022 | 99 | NOTICE of Appearance by Hugh M. Russ, III on behalf of Mark Stambach (Russ, Hugh) (Entered: 02/04/2022) |
| 02/04/2022 | 100 | NOTICE of Appearance by Peter A. Sahasrabudhe on behalf of Mark Stambach (Sahasrabudhe, Peter) (Entered: 02/04/2022) |
| 02/09/2022 | 101 | First MOTION for Extension of Time to File *proposed voire dire questions, exhibit lists, expert witness list, deposition testimony, motions in limine, statement of claims, list of damages, objections to opposing party's deposition designations and motions in limine, jury instructions, and papers in connection with motions in limine* by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 02/09/2022) |
| 02/09/2022 | 102 | First MOTION for Extension of Time to File *PROPOSED voire dire questions, exhibit lists, expert witnesses and summaries, deposition testimony, motions in limine, statement of claims, list of damages, objections to plaintiff's deposition designations, options to motions in limine, jury instructions, and reply papers in connection with motions in limine* by Mark Stambach.(Sahasrabudhe, Peter) (Entered: 02/09/2022) |
| 02/10/2022 | 103 | First MOTION for Extension of Time to File *joining Def's motion for extension re pretrial documents* by Josue Ortiz.(Pierce, Alan) (Entered: 02/10/2022) |
| 02/10/2022 | 104 | TEXT ORDER granting in part 102 Motion for Extension of Time and 103 Motion for Extension of Time. A jury trial is currently scheduled to commence in this action on May 9, 2022, unless preempted by the trial of a criminal case. (Dkt. 98). The final pretrial conference is scheduled for March 30, 2022, and pretrial filings are to be filed beginning on March 9, 2022. (*Id.*). |

The parties have requested a 30-day extension of the pretrial filing deadlines, without any adjournment of the trial date. While the Court appreciates the parties' scheduling concerns and does not take denying any of the requested relief lightly, the COVID-19 pandemic has created havoc with the Court's already busy docket, and the Court's trial schedule does not allow it to accommodate the parties' request in full. The Court currently has jury trials scheduled through the end of 2022, and in some cases those trials are double- and triple-booked.

Indeed, the parties are hereby advised that with respect to the trial date in this case, the Court currently has a criminal trial in *United States v. Baker*, No. 21-cr-6042, scheduled to commence on May 16, 2022. In the event that criminal trial (which by law takes precedence over any civil trial) goes forward, and the parties continue to anticipate a two-week trial in this matter, the Court will need to move the trial of this action forward by one week, to on or about May 2, 2022. The parties should therefore be prepared to have the start date of this trial determined on a standby basis. If counsel are not available the week of May 2, 2022, they will need to make arrangements to have counsel appear who are available. The Court fully appreciates the difficulties this may present to trial counsel, but it is unfortunately the result of the Court's extremely congested docket. The parties are reminded that they are free to consent to magistrate judge jurisdiction and that the highly competent magistrate judges in this District do not have the same scheduling difficulties with trials as the undersigned. While consenting to magistrate judge jurisdiction would benefit the parties with respect to scheduling, there will be no adverse substantive consequences should they withhold such consent.

For the foregoing reasons and the reasons set forth in the pending motions to extend, the Court grants the parties' requests for an adjournment of the pretrial filing deadlines in part. The final pretrial conference in this matter is reset for April 13, 2022, at 1:30 p.m. Pretrial filing deadlines will be adjusted accordingly, with the earliest pretrial filings being due on March 25, 2022. The Court will issue an amended pretrial order setting forth the new deadlines.

SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 02/10/2022. (CDH) (Entered: 02/10/2022)

| 02/10/2022 | 105 | AMENDED PRETRIAL ORDER. Pretrial Conference is **reset for 4/13/2022 at 1:30 PM** in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury trial to commence on 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury trial to be reset for 5/2/2022 if the Court's criminal calendar requires. Signed by Hon. Elizabeth A. Wolford on 2/10/2022. (Please note: This docket entry does not contain every detail of this order. It is your responsibility to read and download the pdf to this document for future reference.) (DPS) (Entered: 02/10/2022) |
| 03/25/2022 | 106 | Exhibit List by Josue Ortiz.. (Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 107 | Expert Witness List by Josue Ortiz. (Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 108 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *explaining ECF filing error on Trial Documents and attaching missing trial documents*. (Attachments: # 1 Exhibit Trial-Plaintiff's Claims, # 2 Exhibit Trial-Plaintiff's Damages, # 3 Exhibit Trial-Plaintiff's Trial Brief/MIL, # 4 Exhibit Trial-Plaintiff's Voir Dire)(Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 109 | Proposed Voir Dire by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 03/25/2022) |

| 03/25/2022 | 110 | Exhibit List by Mark Stambach.. (Sahasrabudhe, Peter) (Entered: 03/25/2022) |
|---|---|---|
| 03/25/2022 | 111 | First MOTION in Limine by Mark Stambach. (Attachments: # 1 Declaration Declaration in Support, # 2 Exhibit Exhibit A- Plaintiff's Expert Disclosure, # 3 Exhibit Exhibit B-Mary Evans Deposition Excerpt, # 4 Exhibit Exhibit C- Sentencing Transcript, # 5 Memorandum in Support)(Sahasrabudhe, Peter) (Entered: 03/25/2022) |
| 03/28/2022 | 112 | Proposed Voir Dire by Josue Ortiz. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/28/2022 | 113 | MOTION in Limine & Trial Brief by Josue Ortiz. (Pierce, Alan) Modified on 3/29/2022 (CGJ). (Entered: 03/28/2022) |
| 03/28/2022 | 114 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Claims at trial*. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/28/2022 | 115 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Special Damages*. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/29/2022 | | E-Filing Notification: re 113 modified to add Motion in Limine. (CGJ) (Entered: 03/29/2022) |
| 03/31/2022 | 116 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Attachments: # 1 Exhibit Jointly Proposed Statement of the Case)(Sahasrabudhe, Peter) (Entered: 03/31/2022) |
| 04/01/2022 | 117 | Proposed Jury Instructions by Josue Ortiz. (Pierce, Alan) (Entered: 04/01/2022) |
| 04/01/2022 | 118 | MEMORANDUM in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit Epps complaint, # 3 Exhibit Dixon complaint, # 4 Exhibit Peters Amd Complaint, # 5 Exhibit P's Expert Disclosure, # 6 Exhibit Redlich expert report, # 7 Exhibit Joseph expert report, # 8 Exhibit P's responses to document demands)(Pierce, Alan) (Entered: 04/01/2022) |
| 04/01/2022 | 119 | Proposed Jury Instructions by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/01/2022) |
| 04/01/2022 | 120 | DECLARATION filed by Mark Stambach *in partial opposition to Plaintiff's motions in limine* filed by Mark Stambach. (Attachments: # 1 Plaintiff's Deposition Testimony, # 2 Plaintiff's Statement of Damages, # 3 Memorandum of Law)(Sahasrabudhe, Peter) (Entered: 04/01/2022) |
| 04/05/2022 | 121 | TEXT ORDER. Due to a change in the Court's schedule, the pretrial conference currently scheduled for April 13, 2022, is hereby reset for April 11, 2022, at 10:00 a.m. at the United States Courthouse, 100 State Street, Rochester, New York. All other deadlines set forth in the Amended Pretrial Order entered on February 10, 2022 (Dkt. 105) remain in effect. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/05/2022. (CDH) (Entered: 04/05/2022) |
| 04/06/2022 | 122 | REPLY to Response to Motion re 113 MOTION *IN LIMINE* filed by Josue Ortiz. (Pierce, Alan) (Entered: 04/06/2022) |
| 04/06/2022 | 123 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Response to Def's Jury Instructions*. (Pierce, Alan) (Entered: 04/06/2022) |

| 04/06/2022 | 124 | REPLY/RESPONSE to re 111 First MOTION in Limine filed by Mark Stambach. (Attachments: # 1 Exhibit A- March, 2022 E-mail From Plaintiff's Counsel, # 2 Exhibit B- November 19, 2019 Correspondence From Plaintiff's Counsel, # 3 Exhibit C- November 19, 2019 Correspondence from Former Defense Counsel, # 4 Exhibit D- February 2002 E-mail from Plaintiff's Counsel, # 5 Memo of Law)(Sahasrabudhe, Peter) (Entered: 04/06/2022) |
|---|---|---|
| 04/06/2022 | 125 | REPLY/RESPONSE to re 117 Proposed Jury Instructions *Objections to Plaintiff's Proposed Jury Instructions* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/06/2022) |
| 04/11/2022 | 126 | TEXT ORDER re: April 11, 2022 Pretrial Conference. Further submissions by Plaintiff regarding Defendant's Motions in Limine (Dkt. 111) related to expert witnesses and evidence involving conduct at issue in unrelated lawsuits are due on or before April 15, 2022. Responses by Defendant are due on or before April 22, 2022. The parties shall file an agreed upon stipulation concerning post-sentencing evidence or alternatively, an explanation of their respective positions, on or before April 27, 2022. A further Pretrial Conference shall be held on May 2, 2022, at 3:00 p.m. at US Courthouse, 100 State Street, Rochester, NY 14614. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/11/2022. (MGB) (Entered: 04/11/2022) |
| 04/11/2022 | 127 | TEXT ORDER setting trial date. Instead of Monday, May 9, 2022, referenced in the Amended Pretrial Order 105 , the jury trial in this matter will commence on May 3, 2022, at 9:00 a.m. at US Courthouse, 100 State Street, Rochester, NY 14614. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/11/2022. (MGB) (Entered: 04/11/2022) |
| 04/11/2022 | 128 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Alan J. Pierce, Esq. and Wayne C. Felle, Esq. on behalf of plaintiff; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Initial Pretrial Conference held on 4/11/2022. Trial start date of 5/3/2022 confirmed; trial schedule discussed. Court advises regarding rulings on outstanding issues; written decision to also be issued. Supplemental submissions as discussed on the record due by 4/15/2022, responses by 4/22/2022. Proposed Stipulation concerning post-sentencing evidence due by 4/27/2022. Further Pretrial Conference set for 5/2/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 04/11/2022) |
| 04/15/2022 | 129 | RESPONSE in Opposition re 111 First MOTION in Limine *Supplemental* filed by Josue Ortiz. (Attachments: # 1 Exhibit Reiber, # 2 Exhibit Redlich, # 3 Exhibit Joseph, # 4 Exhibit Coggins, # 5 Exhibit Shehata)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/15/2022 | 130 | RESPONSE in Opposition re 111 First MOTION in Limine *SUPPLEMENTAL FILING* filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit)(Pierce, Alan) (Entered: 04/15/2022) |
| 04/15/2022 | 131 | RESPONSE in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Memorandum in Support)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/15/2022 | 132 | First MOTION to Adjourn Trial by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Memorandum in Support)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/16/2022 | 133 | TEXT ORDER regarding 132 First Motion to Adjourn Trial by Josue Ortiz. To the extent Plaintiff suggests that Mr. Pierce and the law firm of Hancock Estabrook LLP have the |

| | | right to withdraw as counsel either unilaterally or through consent of Plaintiff and his co-counsel, this is incorrect. Pursuant to this District's Local Rule of Civil Procedure 83.2(c), any such withdrawal at this stage of the proceeding may only be accomplished with consent of the Court. Not only is no such application for withdrawal pending before the Court, but even in the event such a motion is filed, it is unlikely to be granted at this late stage of the proceeding. Nonetheless, to ensure that the record is complete and to afford Defendant's counsel an opportunity to be heard, the Court will set a deadline to respond to the pending motion to adjourn. Defendant must respond to the pending motion to adjourn on or before April 20, 2022. In the meantime, all deadlines and the trial date remain in place as scheduled. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/16/2022. (MGB) (Entered: 04/16/2022) |
|---|---|---|
| 04/18/2022 | 134 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (MOTION ARGUMENT) held on 04/11/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/9/2022. Redacted Transcript Deadline set for 5/19/2022. Release of Transcript Restriction set for 7/18/2022. (KJC) (Entered: 04/18/2022) |
| 04/19/2022 | 135 | First MOTION to Withdraw as Attorney *Hancock Estabrook, LLP and Alan J Pierce* by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Memorandum in Support)(Pierce, Alan) (Entered: 04/19/2022) |
| 04/20/2022 | 136 | Amended Notice of Motion re 135 MOTION to Withdraw as Attorney by by Josue Ortiz. (Pierce, Alan) Modified on 4/21/2022 (CGJ). (Entered: 04/20/2022) |
| 04/20/2022 | 137 | RESPONSE in Opposition re 132 First MOTION to Adjourn Trial filed by Mark Stambach. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Memo of Law) (Sahasrabudhe, Peter) (Entered: 04/20/2022) |
| 04/21/2022 | | E-Filing Notification: re 136 Docket text modified to show as Amended Notice of Motion. (CGJ) (Entered: 04/21/2022) |
| 04/21/2022 | 138 | TEXT ORDER denying 132 Motion to Adjourn Trial and setting motion hearing re 135 Motion to Withdraw as Attorney. The trial of this action, which has been pending since 2016, is scheduled to commence on May 3, 2022. Plaintiff Josue Ortiz ("Plaintiff") now seeks an adjournment of the trial date based on the requested withdrawal of co-counsel Alan Pierce of the law firm Hancock Estabrook. There is a factual dispute regarding Mr. Pierce's pending motion for withdrawal (Dkt. 135) and a hearing thereon is held on Tuesday, April 26, 2022, at 2:00 p.m. at the United States Courthouse, 100 State Street, Rochester, New York. All counsel for Plaintiff (that is, both Mr. Pierce and co-counsel Wayne Felle) and Plaintiff himself must be present at this hearing and prepared to answer questions from the Court under oath. The purpose of this hearing shall be to determine whether Plaintiff has voluntarily and of his own will discharged Mr. Pierce as his attorney.<br><br>Regardless of the ultimate outcome of Mr. Pierce's motion to withdraw, Plaintiff's motion to adjourn the trial date (Dkt. 132) is denied. "A district court's decisions regarding the timetable for trial will not be reversed absent an abuse of discretion." *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993) (citation omitted). The party seeking to adjourn a trial date "bears the burden of establishing its need." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (citation omitted). Plaintiff has failed to do so here. Even if Mr. Pierce is permitted to withdraw, Plaintiff will continue to be represented by Mr. Felle, an experienced trial attorney who is fully familiar with the facts and |

procedure of this case. Accordingly, there will be minimal, if any, prejudice to Plaintiff in commencing trial as scheduled. Moreover, the Court has already expended significant resources in clearing its calendar for the trial of this case, notwithstanding the preference it is required to give to the many criminal cases on its docket and the tremendous congestion and trial backlog caused by the COVID-19 pandemic. If the Court granted an adjournment at this time it is unlikely the trial of this case could proceed within this calendar year, resulting in further substantial delay in a case that has already been pending for a number of years.

Further, Plaintiff's eleventh-hour request for an adjournment was made only after a Court appearance at which the Court expressed skepticism regarding Plaintiff's compliance with the applicable expert disclosure requirements and stated that several of Plaintiff's expert witnesses would likely not be permitted to testify. Only two months earlier, Plaintiff's counsel rejected a request from newly-retained defense counsel for an adjournment, stating that "[t]his case is 6 years old and needs to go forward." (Dkt. 137-1 at 1). It thus appears that Plaintiff's request for an adjournment is a disguised attempt to allow additional time to cure the deficiencies in Plaintiff's expert disclosures. The Court will not countenance this type of gamesmanship.

Jury selection in this matter will commence on May 3, 2022, as scheduled. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/21/2022. (CDH) (Entered: 04/21/2022)

| 04/22/2022 | 139 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Sahasrabudhe, Peter) (Entered: 04/22/2022) |
| 04/26/2022 | 140 | REPLY/RESPONSE re to re 136 Amended MOTION to Withdraw as Attorney *Notice of Motion by Hancock Estabrook, LLP and Alan J Pierce*, 135 First MOTION to Withdraw as Attorney *Hancock Estabrook, LLP and Alan J Pierce Supplement by Hancock Estabrook, LLP* filed by Josue Ortiz. (Attachments: # 1 Exhibit)(Pierce, Alan) (Entered: 04/26/2022) |
| 04/26/2022 | 141 | TEXT ORDER granting 135 Motion to Withdraw as Attorney. For the reasons discussed on the record on April 26, 2022, the Court grants Alan J. Pierce, Esq.'s and Hancock Estabrook, LLP's motion to withdraw as counsel for Plaintiff Josue Ortiz. Plaintiff will continue to be represented by Wayne C. Felle, Esq. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/26/2022. (CDH) (Entered: 04/26/2022) |
| 04/26/2022 | 142 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Alan J. Pierce, Esq.; Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Oral Argument re 135 Motion to Withdraw as Attorney held on 4/26/2022. Motion granted for reasons as stated on the record; Alan J. Pierce, Esq. and Hancock Estabrook, LLP relieved as counsel for Plaintiff Josue Ortiz. Court addresses plaintiff's expert witnesses; written decision to be issued. Plaintiff's renewed oral request to adjourn trial denied. Pretrial Conference remains set for 5/2/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 04/26/2022) |
| 04/26/2022 | 143 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/26/2022) |
| 04/27/2022 | 144 | RESPONSE in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Felle, Wayne) (Entered: |

| | | 04/27/2022) |
|---|---|---|
| 04/27/2022 | 145 | Trial Document by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Stipulation*. (Attachments: # 1 Exhibit A-Stipulation)(Sahasrabudhe, Peter) (Entered: 04/27/2022) |
| 04/28/2022 | 146 | DECLARATION signed by ALAN J PIERCE re 111 First MOTION in Limine filed by Josue Ortiz *response to court question at 4/26 hearing* filed by Josue Ortiz. (Pierce, Alan) (Entered: 04/28/2022) |
| 05/02/2022 | 147 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Attachments: # 1 Pierce E-mail, # 2 Plaintiff's Memorandum in Opposition to Detective Stambach's Motions in Limine) (Sahasrabudhe, Peter) (Entered: 05/02/2022) |
| 05/02/2022 | 148 | STIPULATION *Stipulation of Undisputed Facts* by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 05/02/2022) |
| 05/02/2022 | 149 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. on behalf of plaintiff; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Final Pretrial Conference held on 5/2/2022. Jury trial set for 5/3/22 to proceed as scheduled. (Court Reporter Karen Clark.) (DPS) (Entered: 05/02/2022) |
| 05/03/2022 | 150 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial held on 5/3/2022. Jury selected and sworn; preliminary instructions given. Opening statements by plaintiff and defendant. Jury Trial set to continue on 5/4/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/03/2022) |
| 05/04/2022 | 151 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant M. Stambach. Jury Trial held on 5/4/2022. Plaintiff's testimony begins; witnesses E. Coggins, M. Vaughn, and J. Lonergan called by plaintiff. Jury Trial set to continue on 5/5/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/04/2022) |
| 05/05/2022 | 152 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial continued on 5/5/2022. Plaintiff's testimony complete; defendant M. Stambach called by plaintiff. Jury Trial set to continue on 5/6/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/05/2022) |
| 05/06/2022 | 153 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant M. Stambach. Jury Trial continued on 5/6/2022. Plaintiff calls witnesses M. Evans and M. Lauver. Charge conference held. Jury Trial set to continue on 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/06/2022) |

| | | |
|---|---|---|
| 05/06/2022 | 154 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (OPENING STATEMENTS) held on 05/03/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/27/2022. Redacted Transcript Deadline set for 6/6/2022. Release of Transcript Restriction set for 8/4/2022. (KJC) (Entered: 05/06/2022) |
| 05/09/2022 | 155 | TEXT ORDER granting in part and denying in part 113 Plaintiff's motion in limine concerning prior convictions for the reasons stated on the record on April 11, 2022; and granting 111 Defendant's motion in limine to limit evidence of other lawsuits against Defendant and subsequent remedial measures, and to limit reference to defense counsel as affiliated with the City of Buffalo, for the reasons stated on the record on April 11 and 26, 2022. In addition, 111 Defendant's motion in limine pertaining to post-sentencing information was resolved as stated on the record at the appearances on April 11 and 26 and May 2, 2022, and through the stipulation of the parties filed at Docket 148. Finally, 111 Defendant's motion in limine pertaining to expert witnesses is granted with respect to Rachel Duchon, Ronald Reiber, Ph.D., and Allison Redlich, Ph.D., granted in part as to Dr. Evelyn Coggins and Dr. Brian Joseph, and denied as moot as to Dr. Hany Shehata, Dr. Raul Vazquez, and Michele Lowry, Psy.D., as stated on the record at the appearances on April 11 and 26 and May 2, 2022, and a written decision explaining the Court's reasoning more fully will be issued in due course. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/09/2022. (CDH) (Entered: 05/09/2022) |
| 05/09/2022 | 156 | Letter filed by ALAN PIERCE as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Charging Lien*. (Pierce, Alan) (Entered: 05/09/2022) |
| 05/09/2022 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL TESTIMONY OF E. COGGINS) held on 05/04/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2022. Redacted Transcript Deadline set for 6/9/2022. Release of Transcript Restriction set for 8/8/2022. (KJC) (Entered: 05/09/2022) |
| 05/09/2022 | 158 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial completed on 5/9/2022. Plaintiff calls witness E. Torres. Parties rest; proof is closed. Jurors charged; deliberations held. Judge orders meals for jurors. Verdict reached; jury finds in favor of plaintiff. Damages awarded in the amount of $5 million in compensatory damages and $1.5 million in punitive damages. (Court Reporter Karen Clark.) (DPS) (Entered: 05/10/2022) |
| 05/10/2022 | 159 | TEXT ORDER. All post-verdict motions in this case shall be filed in accordance with the deadlines contained in the Federal Rules of Civil Procedure. This Text Order shall supersede any prior statements by the Court regarding deadlines for post-verdict motions. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/10/2022. (CDH) (Entered: 05/10/2022) |
| 05/10/2022 | 160 | JURY VERDICT. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 161 | Sealed Document. (CGJ) (Entered: 05/10/2022) |

| | | |
|---|---|---|
| 05/10/2022 | 162 | JURY VERDICT as to punitive damages. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 163 | Sealed Document. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 164 | JUDGMENT in favor of Josue Ortiz against Mark Stambach. Signed by Mary C. Loewenguth, Clerk of Court on 5/10/2022. (CGJ) (Entered: 05/10/2022) |
| 05/16/2022 | 165 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings TRIAL TESTIMONY OF M. STAMBACH) held on 05/05/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2022. Redacted Transcript Deadline set for 6/16/2022. Release of Transcript Restriction set for 8/15/2022. (KJC) (Entered: 05/16/2022) |
| 05/16/2022 | 166 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - CLOSING ARGUMENTS) held on 05/09/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2022. Redacted Transcript Deadline set for 6/16/2022. Release of Transcript Restriction set for 8/15/2022. (KJC) (Entered: 05/16/2022) |
| 05/20/2022 | 167 | First MOTION for Attorney Fees by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit Billing Ledger, # 3 Exhibit Bill of Costs, # 4 Memorandum in Support)(Felle, Wayne) (Entered: 05/20/2022) |
| 05/20/2022 | 168 | TEXT ORDER re 167 First MOTION for Attorney Fees filed by Josue Ortiz. Responses shall be filed on or before June 10, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/20/2022. (CDH) (Entered: 05/20/2022) |
| 05/23/2022 | 169 | First MOTION for Attorney Fees by ALAN PIERCE. (Attachments: # 1 Declaration, # 2 Memorandum in Support)(Pierce, Alan) (Entered: 05/23/2022) |
| 05/23/2022 | 170 | CONTINUATION OF EXHIBITS by ALAN PIERCE. to 169 First MOTION for Attorney Fees filed by ALAN PIERCE. (Attachments: # 1 Exhibit 2 - costs, # 2 Exhibit 3 - AJP CV, # 3 Exhibit 4 - EMAILS, # 4 Exhibit 5 - JOINT RETAINER, # 5 Exhibit 6 - EMAILS, # 6 Exhibit 7 - RETURNED CHECKS)(Pierce, Alan) (Entered: 05/23/2022) |
| 05/23/2022 | 171 | TEXT ORDER re 169 First Motion for Attorney Fees by Alan Pierce. Responses shall be filed on or before June 13, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/23/2022. (CDH) (Entered: 05/23/2022) |
| 05/24/2022 | 172 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME I - PRELIMINARY INSTRUCTIONS/OPENING STATEMENTS) held on 05/03/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 1. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/14/2022. Redacted Transcript Deadline set for |

Case 23-352, Document 4-2, 03/24/2023, 3488820, Page32 of 124

| | | |
|---|---|---|
| | | 6/24/2022. Release of Transcript Restriction set for 8/22/2022. (KJC) (Entered: 05/24/2022) |
| 05/26/2022 | <u>173</u> | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME II TESTIMONY OF J. ORTIZ, M. VAUGHN & J. LONERGAN) held on 05/04/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/16/2022. Redacted Transcript Deadline set for 6/27/2022. Release of Transcript Restriction set for 8/24/2022. (KJC) (Entered: 05/26/2022) |
| 05/31/2022 | <u>174</u> | DECISION AND ORDER memorializing rulings re <u>111</u> Motion in Limine filed by Mark Stambach. Signed by Hon. Elizabeth A. Wolford on 05/31/2022. (CDH) (Entered: 05/31/2022) |
| 06/03/2022 | <u>175</u> | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - TESTIMONY OF J. ORTIZ) held on 05/05/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 3. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/24/2022. Redacted Transcript Deadline set for 7/5/2022. Release of Transcript Restriction set for 9/1/2022. (KJC) (Entered: 06/03/2022) |
| 06/03/2022 | <u>176</u> | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - TESTIMONY OF E. TORRES, FINAL JURY CHARGE, VERICT) held on 05/09/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/24/2022. Redacted Transcript Deadline set for 7/5/2022. Release of Transcript Restriction set for 9/1/2022. (KJC) (Entered: 06/03/2022) |
| 06/07/2022 | <u>177</u> | MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b)*, MOTION for a New Trial Pursuant to Fed. R. Civ. P. 59(a), MOTION for Remittur Pursuant to Fed. R. Civ. P. 59(e) by Mark Stambach. (Attachments: # <u>1</u> Declaration in Support of Motion for Summary Judgment, # <u>2</u> Exhibit A - Trial Exhibits Entered by Ortiz, # <u>3</u> Exhibit B - Trial Exhibits Entered by Defense Counsel, # <u>4</u> Memorandum in Support of Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b)) (Sahasrabudhe, Peter). Added MOTION for New Trial, MOTION for Remittur on 6/8/2022 (CGJ). (Entered: 06/07/2022) |
| 06/07/2022 | 178 | TEXT ORDER re <u>177</u> MOTION for Summary Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e) filed by Mark Stambach. Responses shall be filed on or before June 28, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/07/2022. (CDH) (Entered: 06/07/2022) |
| 06/08/2022 | | E-Filing Notification: re <u>177</u> Modified to add Motion for New Trial and Motion for Remittur. (CGJ) (Entered: 06/08/2022) |
| 06/10/2022 | <u>179</u> | RESPONSE in Opposition re <u>167</u> First MOTION for Attorney Fees filed by Mark Stambach. (Attachments: # <u>1</u> Memorandum of Law in Opposition)(Sahasrabudhe, Peter) (Entered: 06/10/2022) |

| 06/13/2022 | 180 | REPLY to Response to Motion re 169 First MOTION for Attorney Fees filed by Mark Stambach. (Attachments: # 1 Memorandum in Opposition)(Sahasrabudhe, Peter) (Entered: 06/13/2022) |
|---|---|---|
| 06/14/2022 | 181 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME IV - TESTIMONY OF M. EVANS AND M. LAUBER, CHARGE CONFERENCE) held on 05/06/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 4. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/5/2022. Redacted Transcript Deadline set for 7/15/2022. Release of Transcript Restriction set for 9/12/2022. (KJC) (Entered: 06/14/2022) |
| 06/21/2022 | 182 | REPLY to Response to Motion re 169 First MOTION for Attorney Fees filed by ALAN PIERCE. (Attachments: # 1 Memorandum in Support REPLY MOL, # 2 Exhibit EXH 8 - TIME ENTRIES FOR DA CASE, # 3 Exhibit EXH 9-P'S RESPONSES TO DEF'S INTERROGATORIES)(Pierce, Alan) (Entered: 06/21/2022) |
| 06/21/2022 | 183 | First MOTION for Leave to File *Reply Papers in Connection with Pending Fed. R. Civ. P. 50(b) Motion for Judgment as a Matter of Law* by Mark Stambach.(Sahasrabudhe, Peter) (Entered: 06/21/2022) |
| 06/21/2022 | 184 | TEXT ORDER granting 183 Motion for Leave to File Reply Papers in Connection with Pending Fed. R. Civ. P. 50(b) Motion for Judgment.as a Matter of Law. Defendant shall file his reply on or before July 8, 2022. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/21/2022. (CDH) (Entered: 06/21/2022) |
| 06/23/2022 | 185 | First MOTION for Leave to File *REPLY ON HANCOCK MOTION FOR FEES & COSTS* by ALAN PIERCE.(Pierce, Alan) (Entered: 06/23/2022) |
| 06/23/2022 | 186 | TEXT ORDER granting *nunc pro tunc* 185 Motion for Leave to File Reply on Hancock's Motion for Fees & Costs. The Court will consider the reply papers filed on June 21, 2022 (Dkt. 182) in connection with Hancock Estabrook's pending motion for fees and costs (Dkt. 169). SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/23/2022. (CDH) (Entered: 06/23/2022) |
| 06/28/2022 | 187 | RESPONSE in Opposition re 177 MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e)* MOTION for New Trial filed by Josue Ortiz. (Attachments: # 1 Memorandum in Support Memo of Law)(Felle, Wayne) (Entered: 06/28/2022) |
| 07/01/2022 | 188 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Sahasrabudhe, Peter) (Entered: 07/01/2022) |
| 07/05/2022 | 189 | First MOTION for Leave to File by Josue Ortiz.(Felle, Wayne) (Entered: 07/05/2022) |
| 07/05/2022 | 190 | TEXT ORDER granting 189 Motion for Leave to File Excess Pages. The Court grants Plaintiff's request for leave to exceed the 25-page limitation for responsive papers *nunc pro tunc* and will accept and consider Plaintiff's response in opposition to Defendant's post-trial motions filed on June 28, 2022. (Dkt. 187). Consistent with the Local Rules of Civil Procedure and the undersigned's individual practices, any future requests to exceed the applicable page limitations must be made in advance of the filing deadline. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/05/2022. (CDH) (Entered: 07/05/2022) |

| 07/07/2022 | 191 | TEXT ORDER granting leave to file excess pages. Defendant may file a reply brief of no more than 15 pages in further support of his post-trial motions (Dkt. 177). SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/07/2022. (CDH) (Entered: 07/07/2022) |
| --- | --- | --- |
| 07/08/2022 | 192 | REPLY to Response to Motion re 177 MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e)* MOTION for New Trial *Reply Memorandum of Law in Further Support of Post-Verdict Relief* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 07/08/2022) |
| 12/21/2022 | 193 | TEXT ORDER. Oral argument on 167 Motion for Attorney Fees, 169 Motion for Attorney Fees, and 177 Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and Remittur Pursuant to Fed. R. Civ. P. 59(e) is set for January 31, 2023, at 2:00 p.m. at the United States Courthouse, 2 Niagara Square, Buffalo, New York 14202. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 12/21/2023. (CDH) (Entered: 12/21/2022) |
| 01/31/2023 | 194 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Pltf: Wayne Felle, Esq. (current counsel), Alan Pierce, Esq. (former counsel), Pltf present / Deft (via telephone): Hugh Russ, Esq., Peter Sahasrabudhe, Esq. Oral Argument held on 1/31/2023. Court reserved decision. (Court Reporter Megan Pelka.) (SDW) (Entered: 01/31/2023) |
| 02/17/2023 | 195 | DECISION AND ORDER granting in part and denying in part 167 Motion for Attorneys' Fees; granting in part and denying in part 169 Motion for Attorneys' Fees; denying 177 Motion for Summary Judgment; denying 177 Motion for New Trial; denying 177 Motion for Remittitur. Signed by Hon. Elizabeth A. Wolford on 02/17/2023. (CDH) (Entered: 02/17/2023) |
| 02/27/2023 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Oral Argument Proceedings held on 01/31/2023, before Honorable Judge Elizabeth A. Wolford. Court Reporter/Transcriber Megan E. Pelka, RPR, (716) 229-0880. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/20/2023. Redacted Transcript Deadline set for 3/30/2023. Release of Transcript Restriction set for 5/30/2023. (MEP) (Entered: 02/27/2023) |
| 03/10/2023 | 197 | NOTICE OF APPEAL by Mark Stambach. Filing fee $ 505, receipt number ANYWDC-4818525. (Sahasrabudhe, Peter) (Entered: 03/10/2023) |
| 03/13/2023 | | Within 14 days of filing the Notice of Appeal, the appellant is required to electronically file with the District Court an index of filed documents it wishes the Court of Appeals to consider, called Designation of Record on Appeal. After receipt, the Clerks Office will certify and transmit the index to the Circuit. (SG) (Entered: 03/13/2023) |
| 03/13/2023 | | Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (SG) (Entered: 03/13/2023) |
| 03/21/2023 | 198 | First MOTION to Stay *Enforcement of Judgment and Waive Bond Requirement* by Mark Stambach. (Attachments: # 1 Declaration in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement, # 2 Affidavit in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement, # 3 Exhibit A - Buffalo Cash Flow, # 4 Memorandum in Support in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement)(Sahasrabudhe, Peter) (Entered: 03/21/2023) |

CM/ECF LIVE, U.S. District Court:nywd

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/24/2023 09:38:29 | | | |
| **PACER Login:** | pbudhe05 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-cv-00321-EAW-MJR |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                             Plaintiff,

      v.                                                       1:16-cv-00321-EAW-MJR

MARK STAMBACH

                             Defendants.

## <u>NOTICE OF APPEAL</u>

        Defendant Mark Stambach appeals to the United States Court of Appeals for the Second Circuit from the judgment in favor of Plaintiff, Josue Ortiz, entered by the Clerk of Court for the Western District of New York on May 10, 2022 following a jury trial (Dkt. 164), and from each and every order necessary to and encompassed by said judgment. Defendant also appeals from the portions of the District Court's order which granted in part Plaintiff's application for attorney's fees pursuant to 42 U.S.C. § 1988. This appeal is being noticed within thirty days of final determination of a Fed. R Civ. P. 50(b) motion and is thus timely made pursuant to Rule 4 of the Federal Rules of Appellate Procedure.

Dated:      Buffalo, New York
            March 10, 2023

                                **HODGSON RUSS** LLP
                                *Attorneys for Defendant Mark Stambach*

                                By:  _s/ Peter A. Sahasrabudhe_____
                                     Hugh M. Russ, III
                                     Peter A. Sahasrabudhe
                               The Guaranty Building
                               140 Pearl Street – Suite 100
                               Buffalo, New York 14202
                               Telephone: (716) 856-4000

- 2 -

TO:     **Law Office of Wayne C. Felle, P.C.**
        *Attorneys for Plaintiff*
        Wayne C. Felle, Esq.
        6024 Main Street
        Williamsville, New York  14221

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSUE ORTIZ,

                        Plaintiff,                  **DECISION AND ORDER**

                  v.                       1:16-CV-00321 EAW

RICHARD WAGSTAFF, MARY GUGLIUZZA,
BPD DOES 1-12, BUFFALO POLICE
DEPARTMENT, THE CITY OF BUFFALO,
MARK STAMBACH, and MARK VAUGHN,

                        Defendants.
_____

## <u>INTRODUCTION</u>

       Plaintiff Josue Ortiz ("Plaintiff") has sued Defendants for violations of his civil rights related to his arrest and conviction for the murders of Nelson and Miguel Camacho, and his subsequent exoneration. (Dkt. 1). Currently pending before the Court is a motion to dismiss or for summary judgment filed by defendants Richard Wagstaff ("Wagstaff"), Mary Gugliuzza ("Gugliuzza"), the Buffalo Police Department ("BPD"), BPD Does 1-12, Mark Stambach ("Stambach"), and Mark Vaughn ("Vaughn") (collectively "Defendants"). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Statement of Undisputed Material Facts (Dkt. 69-21), Plaintiff's response thereto (Dkt. 78-1), and the exhibits submitted by the parties.  Unless otherwise noted, these facts are undisputed.

On November 11, 2004, Nelson and Miguel Camacho were murdered while in the first-floor apartment at 879 Niagara Street, Buffalo, New York.  (Dkt. 69-21 at ¶ 2; Dkt. 78-1 at ¶ 2).  BPD officers responded to the scene and investigated the murders.  (Dkt. 69-21 at ¶ 3; Dkt. 78-1 at ¶ 3).

On November 16, 2004, two BPD officers brought Plaintiff to police headquarters.  (Dkt. 69-21 at ¶ 5; Dkt. 78-1 at ¶ 5).  Plaintiff indicates that he was brought to police headquarters "as he stated he had information about the homicide."  (Dkt. 78-1 at ¶ 5).  The parties agree that Plaintiff spoke with Stambach, but dispute whether this was Plaintiff's only interaction with Stambach.  (Dkt. 69-21 at ¶ 5; Dkt. 78-1 at ¶ 5).

Plaintiff did not speak much English and Stambach did not speak Spanish, so BPD Officer Edwin Torres ("Torres") assisted with translation.  (Dkt. 69-21 at ¶¶ 7-8; Dkt. 78-1 at ¶¶ 7-8).  Plaintiff was informed of his *Miranda* rights in Spanish.  (Dkt. 69-21 at ¶ 9; Dkt. 78-1 at ¶ 9).  Defendants state that Stambach then asked Plaintiff "specific questions in which his answers could be verified with information known to someone present during the homicides" and that "Plaintiff claimed that he killed the Camacho [brothers] during this questioning."  (Dkt. 69-21 at ¶ 10).  Plaintiff indicates that he "has no recollection of the

- 2 -

events of his involvement with any members of the Buffalo Police Department ('BPD') in November 2004" and therefore cannot admit or deny this claim. (Dkt. 78-1 at ¶¶ 8, 10). Defendants further claim that Stambach typed up a statement reflecting his questions and Plaintiff's answers, that Torres "went through the statement with Plaintiff by reading it before Plaintiff was asked to sign it," and that Plaintiff initialed each page of the statement and signed the last page. (Dkt. 69-21 at ¶ 10). Again, Plaintiff denies any recollection of these events. (Dkt. 78-1 at ¶¶ 8, 10). Defendants have submitted to the Court a copy of the statement. (Dkt. 69-8). Plaintiff recognizes the initials and signature on the statement as his. (Dkt. 69-21 at ¶ 12; Dkt. 78-1 at ¶ 12). Plaintiff was arrested on November 17, 2004, but does not recall his arrest. (Dkt. 69-7 at 2; Dkt. 69-21 at ¶ 14; Dkt. 78-1 at ¶ 14).

Plaintiff was indicted by a grand jury for the murders of the Camacho brothers. (Dkt. 69-21 at ¶ 16; Dkt. 78-1 at ¶ 16). A *Huntley* hearing[1] was held and no constitutional violations warranting suppression of Plaintiff's statements were found. (Dkt. 69-21 at ¶ 17; Dkt. 78-1 at ¶ 17). On March 22, 2006, Plaintiff pled guilty to two counts of manslaughter in the first degree relating to the deaths of the Camacho brothers. (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18). Plaintiff recalls entering into the plea. (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18). Plaintiff subsequently attempted to withdraw his plea, but the trial court did not

---

[1] "In New York, a *Huntley* hearing is held if the prosecution intends to offer a defendant's confession. If the confession is challenged, a hearing is held in which the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant's statement was voluntary." *Thomas v. Lord*, 396 F. Supp. 2d 327, 335-36 (E.D.N.Y. 2005) (citing *People v. Huntley*, 15 N.Y.2d 72 (1965)).

permit him to do so. (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18). On June 16, 2006, the trial court sentenced Plaintiff to 25 years imprisonment, with five years of post-release supervision. (Dkt. 69-21 at ¶ 19; Dkt. 78-1 at ¶ 19).

During the course of an investigation into gangs operating in Buffalo, the Federal Bureau of Investigation and the United States Attorney's Office discovered that three other men—Misael Montalvo, Efrain Hidalgo, and Brandon Jonas (collectively the "Montalvo Defendants")—and not Plaintiff were responsible for the Camacho murders. *Ortiz v. Case*, No. 16-CV-322, 2018 WL 8620414, at *2 (W.D.N.Y. May 18, 2018), *adopted*, 2019 WL 1236413 (W.D.N.Y. Mar. 18, 2019), *aff'd*, 782 F. App'x 65 (2d Cir. 2019). In March 2013, United States District Judge Richard J. Arcara entered two Orders releasing federal grand jury minutes and material showing the involvement of the Montalvo Defendants in the Camacho murders to the Erie County District Attorney and Plaintiff's criminal counsel. *Id*. On April 23, 2013, Plaintiff filed a motion to dismiss the indictment against him pursuant to N.Y. Criminal Procedure Law 440 (the "440 Motion"); despite initially being opposed by the Erie County District Attorney's Office, the 440 Motion was ultimately granted in May 2015. *Id*.

## PROCEDURAL BACKGROUND

The instant action was filed on April 25, 2016. (Dkt. 1). On July 29, 2016, Plaintiff filed an affidavit of service indicating that he had served Defendants by leaving a copy of the summons and complaint with "Janet Poydock," the "legal steno clerk" for the City of

Buffalo Corporation Counsel.  (Dkt. 5).

Defendants filed their answer to the complaint on August 15, 2016.  (Dkt. 6).  In their answer, Defendants asserted a defense that Plaintiff had "fail[ed] to obtain personal jurisdiction based on insufficient service of process."  (*Id*. at 12).

On August 17, 2017, Defendants filed a motion to dismiss or for judgment on the pleadings.  (Dkt. 32).  Plaintiff cross-moved for leave to file an amended complaint.  (Dkt. 37).  On March 18, 2019[2], the Court entered a Decision and Order granting Plaintiff's cross-motion for leave to file an amended complaint except to the extent that Plaintiff sought to assert an abuse of process claim or any claims against the City of Buffalo and denying Defendants' motion for judgment on the pleadings as moot.  (Dkt. 56).

Plaintiff filed his amended complaint on March 27, 2019.  (Dkt. 59).  The amended complaint asserts five causes of action pursuant to 42 U.S.C. § 1983: (1) a claim for false arrest and false imprisonment; (2) a claim for malicious prosecution; (3) a claim for violation of Plaintiff's fifth amendment right against self-incrimination; (4) a claim for a violation of Plaintiff's due process right to be free from fabrication of evidence; and (5) a claim for violation of the Defendants' obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  Defendants filed their answer to the amended complaint on April 15, 2019.  (Dkt. 61).  In their answer to the amended complaint, Defendants again asserted insufficient service of process as a defense.  (*Id*. at 20-21).

---

[2]    This matter was originally assigned to a different district judge and was not transferred to the undersigned until February 11, 2019.  (*See* Dkt. 55).

- 5 -

Defendants filed the instant motion to dismiss and/or for summary judgment on April 24, 2020. (Dkt. 69). At the request of the parties (Dkt. 76), the Court set Plaintiff's response deadline for July 3, 2020, and Defendant's reply deadline for July 24, 2020. (Dkt. 77). Plaintiff filed a declaration and numerous exhibits on July 3, 2020 (Dkt. 78), but did not file his memorandum of law in opposition to Defendants' motion until July 7, 2020. (Dkt. 79). Defendants filed their reply on July 24, 2020. (Dkt. 81).

## DISCUSSION

Defendants' motion seeks numerous forms of relief. First, Defendants seek dismissal of Plaintiff's claims against Gugliuzza, Stambach, and Vaugh for failure to properly serve. (Dkt. 69-1 at 9-10). Second, Defendants seek dismissal of all claims against the BPD because it lacks the capacity to be sued. (*Id*. at 10-11). Third, Defendants seek dismissal of Plaintiff's false arrest and false imprisonment claim on the basis that they are time-barred. (Id. at 11-12). Fourth, Defendants seek dismissal of all of Plaintiff's claims against BPD Does 1-12 because Plaintiff has failed to take any action to further identify or substitute these defendants despite having been provided with voluminous discovery. (*Id*. at 12-13). Fifth, Defendants seek dismissal of all official capacity claims on the basis that they are duplicative of Plaintiff's dismissed claims against the City of Buffalo. (*Id*. at 13-14). Sixth, Defendants seek summary judgment on all of Plaintiff's claims on the basis that there was no violation of his constitutional rights because "ample probable cause to arrest, charge, and prosecute Plaintiff exist[ed] based upon his voluntary

statement to Stambach." (*Id*. at 14-20). Seventh, Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. (*Id*. at 20-24). Finally, Defendants seek summary judgment on the basis that there is no proof they withheld exculpatory evidence. (*Id*. at 24-25). The Court considers each of these requests below.

## I.     Timeliness of Plaintiff's Memorandum of Law

As an initial matter, Defendants argue that Plaintiff's memorandum of law was not timely filed and should be disregarded. (Dkt. 80 at 2). As set forth above, at the request of the parties, the Court set Plaintiff's response deadline for July 3, 2020. (Dkt. 77). Plaintiff nonetheless did not file his opposing memorandum of law until July 7, 2020. (Dkt. 79). Plaintiff's memorandum of law was thus untimely.

It is true that in 2020, the Fourth of July holiday was observed on July 3rd, which was a Friday. However, Federal Rule of Civil Procedure 6(a), which provides for the extension of certain deadlines that fall on weekends and/or holidays, is inapplicable where "the Court set[s] a specific, stated deadline." *Miller v. City of Ithaca*, No. 3:10-CV-597, 2012 WL 1589249, at *1 (N.D.N.Y. May 4, 2012); *see also Violette v. P.A. Days, Inc*., 427 F.3d 1015, 1018 (6th Cir. 2005) ("The language of Rule 6(a) does not address situations where litigants are required to file papers on a particular, stated, calendar date."). Where, as here, the Court has set a specific deadline, the fact that it falls on a holiday does not result in an automatic extension.

- 7 -

Nevertheless, the Court will not, as Defendants urge, disregard Plaintiff's legal arguments on the basis of the untimely filing of his memorandum of law. The majority of Plaintiff's opposition papers were timely filed, and the Court in any event must assure itself that dismissal and/or summary judgment are warranted before granting such relief. *See Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) (holding that a court cannot grant a motion to dismiss "based on the insufficiency or absence of opposition"); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

## II. Insufficient Service of Process on Gugliuzza, Stambach, and Vaughn

The Court considers next Defendants' request for dismissal of the claims against Gugliuzza, Stambach, and Vaughn for failure to properly serve. Defendants contend that this is a matter of jurisdiction, but "the defenses of lack of personal jurisdiction and insufficiency of service of process . . . while often related, are not identical." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990). More specifically, "[q]uestions of personal jurisdiction go to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant," while "questions of sufficiency of service concern the manner in which service

has been made and not . . . the court's power to adjudicate defendant's rights and liabilities." *Id*. (quotations omitted). In other words, "[l]ack of personal jurisdiction and insufficiency of process provide two different but interrelated grounds for dismissal. In particular, adequate service of process is a prerequisite for a court's exercise of personal jurisdiction: 'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" *Davis v. Mara*, 587 F. Supp. 2d 422, 424-25 (D. Conn. 2008) (quoting *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd*., 484 U.S. 97, 104 (1987)).

Pursuant to Federal Rule of Civil Procedure 4(e), an individual within a judicial district of the United States may be served by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "(2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Here, Plaintiff claims to have served Defendants by delivering a copy of the summons and complaint to a clerk of the City of Buffalo Corporation Counsel in 2016. (Dkt. 5). However, Defendants have submitted evidence to the Court that Gugliazza retired from employment with the

BPD in 2013, Stambach retired from employment with the BPD in 2006, and Vaugh retired from employment with the BPD in 2009.  (Dkt. 69-3 at ¶ 5).

Defendants contend that because Gugliuzza, Stambach, and Vaughn were no longer employed by the BPD in 2016, the City of Buffalo Corporation Counsel was not their authorized agent for service of process, and they were accordingly never properly served. (Dkt. 69-1 at 9-10).  In opposition, Plaintiff contends that the case law cited by Defendants is inapposite and notes that "in their Initial Disclosure required by Rule 26 dated February 24, 2017, . . . Defendants list the address of each of these Defendants as 'Buffalo Police Department, 74 Franklin Street, Buffalo, Ny 14202[.]'"  (Dkt. 79 at 12-13).

The Court agrees with Defendants that Plaintiff never properly effectuated service on Gugliuzza, Stambach, and Vaughn.  Neither Rule 4(e) nor the New York State law incorporated therein by reference allows for service by delivery to a defendant's former employer.  *See, e.g., Barnes v. City of New York*, No. 13-CV-7283 GBD JLC, 2015 WL 4076007, at *21 (S.D.N.Y. July 2, 2015) (service of process on two detectives at police headquarters insufficient service on defendant who had retired from the police department more than two years prior to the date of service), *adopted*, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015); *J&J Sports Prods., Inc. v. Byza Rest. Corp.*, No. 09-CV-1773 FB/ALC, 2010 WL 889259, at *6 (E.D.N.Y. Mar. 10, 2010)  (service on an individual present at the defendant's former place of business is not sufficient).

However, the Court finds that Gugliuzza, Vaughn, and Stambach have waived their right to assert a defense based on insufficient service of process by failing to include it in their motion for dismissal or judgment on the pleadings filed on August 17, 2017. Federal Rule of Civil Procedure 12(b)(5) provides that a party may assert the defense of insufficient service of process by motion. Rule 12(h)(1)(A) then provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances listed in Rule 12(g)(2)." Rule 12(g)(2) in turn provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The cumulative effect of these provisions of Rule 12 is that "the Rule 12(b)(5) defense of insufficient service of process is waived if not raised in a Rule 12 motion made by the party." *Capital Ventures Int'l v. The Republic of Argentina*, No. 05 CIV. 4085 (TPG), 2010 WL 1257611, at *3 (S.D.N.Y. Mar. 31, 2010) (further explaining that this rule applies even where the defendant argues that the Court lacks personal jurisdiction based on insufficient service of process); *see also Hooker v. Fulton Cty., Georgia*, No. CIVA105CV982GET, 2006 WL 2617142, at *11 (N.D. Ga. Sept. 12, 2006) ("Rules 12(g) and 12(h)(1)(A) mandate a finding that the defenses of insufficiency of process and insufficiency of service of process have been waived because they were omitted from Defendants' prior Rule 12(c) motion[.]").

- 11 -

In this case, Defendants filed a motion in August 2017 for "judgment on the pleadings and dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and/or Federal Rule of Civil Procedure 12(c), for judgment on the pleadings" (Dkt. 32-7 at 2), but made no mention therein of an insufficient service of process defense. Accordingly, Defendants have waived their insufficient service of process defense.

Moreover, even if Defendants had not waived this defense by failing to include it in their earlier Rule 12 motions, the Second Circuit has held that a delay in seeking dismissal on the basis of improper service may constitute a waiver "even where, as here, the defense was asserted in a timely answer*." Datskow v. Teledyne, Inc., Cont'l Prod. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (holding that "defendant's conduct bars it from complaining about the defective form of service. Defendant attended the conference with the magistrate and participated in scheduling discovery and motion practice. Nothing was said about defective service of process."). In particular, the defense of insufficient service of process can be waived, even if raised in an answer, where "several years and significant proceedings in the case have transpired in the interim[.]" *Barclay v. Pawlak*, No. 3:09-CV-722 CSH, 2011 WL 577332, at *2 (D. Conn. Feb. 9, 2011); *see also Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) (finding personal jurisdiction defense forfeited, notwithstanding the fact that it was included in the defendant's answer, where the defendant "participated in pretrial proceedings but never moved to dismiss for lack of

personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer").

The facts of this case overwhelmingly support a finding of waiver. In more than four years of litigation, Defendants took no action to assert an insufficient service of process defense beyond inclusion of a single sentence in their answers to the complaint and the amended complaint. Defendants failed to include this defense in their prior Rule 12 motion. As Plaintiff notes, Defendants' initial disclosures recite the address for the Buffalo Police Department as the address for Gugliuzza, Vaughn, and Stambach. (*See* Dkt. 78-14 at 1). Further, the statute of limitations has now expired, and the defect in service "could have been readily cured during the limitations period if defendant had promptly complained." *Datskow*, 899 F.2d at 1303. Under these circumstances, the Court finds that Defendants have forfeited their right to assert an insufficient service of process defense and denies their request for dismissal on this basis.

## III. <u>Claims Against the BPD</u>

Defendants seek dismissal of all claims asserted against the BPD. It is well-established that under New York law—which applies here pursuant to Federal Rule of Civil Procedure 17(b)(3)—a police department is an administrative arm of a municipality that lacks the capacity to sue or be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."). Plaintiff conceded this fact in his opposition to

Defendants' motion for judgment on the pleadings. (Dkt. 37-7 at 3 ("Plaintiff concedes that . . . the Buffalo Police Department is not a proper party in this action under New York law[.]")). It was accordingly the understanding of the Court that Plaintiff did not intend to assert claims against the BPD in his amended complaint. (*See* Dkt. 44 at 17 ("[P]laintiff would amend the Complaint to eliminate the Buffalo Police Department as a defendant.")). Indeed, Plaintiff's proposed amended complaint did not list the BPD as a defendant in the caption, and expressly stated that the municipal defendant was "the City of Buffalo . . . acting through its administrative arm, the Buffalo Police Department." (Dkt. 37-5 at 1); *see also* Dkt. 37-6 at ¶¶ 10-12 (redlined version of proposed amended complaint showing references to "Defendant BPD" being replaced with "Defendant CITY").

However, when he filed his amended complaint, Plaintiff filed a document that differs from the proposed amended complaint he had submitted to the Court. Plaintiff included the BPD as a defendant in the caption of the amended complaint and inserted the BPD into paragraphs where it was not included in the proposed amended complaint. To give just one example, paragraph 42 of the proposed amended complaint states that "Defendants WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of Brady v. Maryland, 373 U.S. 83 (1963)" (Dkt. 37-5 at ¶ 42), while

paragraph 42 of the amended complaint actually filed by Plaintiff states that "Defendants **<u>BPD</u>**, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of Brady v. Maryland, 373 U.S. 83 (1963)" (Dkt. 59 at ¶ 42 (emphasis added)). It was, of course, patently improper for Plaintiff to file an amended complaint that was inconsistent with the proposed amended complaint the Court had approved and with his prior concession that he could not maintain his claims against the BPD.

Incredibly, in opposition to Defendants' motion, Plaintiff has made no mention of his previous concession that the BPD is not a proper party, nor proffered any explanation for the discrepancies between the proposed amended complaint approved by the Court and the amended complaint that was actually filed. Instead, Plaintiff asserts that "[t]his Court's March 2019 Order did not dismiss the BPD. . . . That is the law of the case and is determinative of this branch of the current motion." (Dkt. 79 at 13). This argument strains the bounds of reasonable advocacy. The Court did not dismiss claims against the BPD in its March 2019 Decision and Order because it granted Plaintiff leave to file an amended complaint that did not list the BPD as a defendant. In no way did the Court's prior Decision and Order suggest that Plaintiff could maintain an action against the BPD; he plainly cannot.

In any event, the "prudential and discretionary" doctrine of law of the case does not prevent a court from changing a ruling where there is a need to correct a clear error, *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013), and would not prohibit the Court from dismissing claims against the BPD even had the Court previously permitted such claims to proceed. To the extent Plaintiff is seeking to assert claims against the BPD, an entity he has conceded is not amenable to suit, those claims are dismissed.

## IV.    Statute of Limitations for False Arrest and False Imprisonment

Defendants seek summary judgment on Plaintiff's claim for false arrest and false imprisonment, on the basis that it is time-barred. The Court agrees.

There is no dispute that for cases arising in New York, the statute of limitations for false arrest and false imprisonment claims under § 1983 is three years. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). However, the parties dispute when Plaintiff's false arrest and false imprisonment claim accrued. Defendants argue that this claim accrued on December 16, 2004, when Plaintiff was arraigned. (Dkt. 69-1 at 11). Plaintiff contends that his false arrest and false imprisonment claim did not accrue until his conviction was vacated in 2015. (Dkt. 79 at 14).

"[T]he accrual date of a § 1983 cause of action is a question of federal law[.]" *Wallace v. Kato*, 549 U.S. 384, 389 (2007). In *Wallace*, the Supreme Court addressed the precise issue that is currently before the Court. There, the plaintiff had been arrested on

January 19, 1994, in connection with a murder. *Id*. at 386. "After interrogations that lasted into the early morning hours the next day," the plaintiff confessed to the murder. *Id*. The plaintiff was convicted of first-degree murder and sentenced to 26 years in prison. *Id*. However, on direct appeal, the state courts determined that his arrest had been illegal and remanded for a new trial. *Id*. at 386-87. The charges against the plaintiff were ultimately dropped on April 10, 2002. *Id*. at 387. The plaintiff filed a federal lawsuit on April 2, 2003, asserting a § 1983 claim for false arrest and false imprisonment. *Id*.[3] The Supreme Court held that the plaintiff's claim had accrued "when legal process was initiated against him" and that the statute of limitations had thus expired. *Id*. at 390-91.

The *Wallace* court expressly rejected the argument that Plaintiff makes here—namely, that *Heck v. Humphrey*, 512 U.S. 477 (1994), "compels the conclusion that his suit could not accrue until the State dropped its charges against him." *Id*. at 392. As the *Wallace* court explained, *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." *Id*. at 393. However, the *Wallace* court found that it would be a "bizarre extension of *Heck*" to apply it to a false arrest and false imprisonment claim, and further expressly held the statute of limitations for such a claim is not tolled pursuant to *Heck* once a conviction is obtained. *Id*. at 393-95.

---

[3]     As the *Wallace* court explained, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." 549 U.S. at 388.

*Wallace* compels the Court to reject Plaintiff's argument that his false arrest and false imprisonment claim did not accrue until his conviction was overturned in 2015. Plaintiff relies on *Covington v. City of New York*, 171 F.3d 117 (2nd Cir. 1999) and its progeny in support of his argument. However, "[u]nfortunately for [Plaintiff], *Covington* has been overruled by the Supreme Court's decision in *Wallace*[.]" *Jones v. City of New York*, No. 13-CV-929 (ALC), 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016); *see also Fonvil v. Cty. of Rockland*, No. 17 CV 2957 (VB), 2018 WL 357309, at *4 (S.D.N.Y. Jan. 9, 2018) ("*Covington* was overruled in 2007, by *Wallace*[.]"); *De Santis v. City of New York*, No. 10 CIV. 3508 NRB, 2011 WL 4005331, at *4 (S.D.N.Y. Aug. 29, 2011) ("Although [the plaintiff] is correct that previously, under the law of this Circuit, accrual of a false arrest claim could have been deferred in certain circumstances, that is no longer the case since the Supreme Court's 2007 decision, *Wallace* . . ., overruled the aspect of *Covington* on which he relies."). Indeed, in *Watson v. United States*, 865 F.3d 123 (2d Cir. 2017), the Second Circuit noted that the "proper framework" for ascertaining the accrual of a false imprisonment claim is *Wallace*. *Id*. at 130-31.

For all these reasons, the Court finds that Plaintiff's false arrest and false imprisonment claim is barred by the statute of limitations and must be dismissed.

## V.    Claims Against BPD Does 1-12

In both his original and amended complaint, Plaintiff named John Doe defendants—specifically, BPD Does 1-12. "Where a plaintiff names 'John Doe' as a placeholder

defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations period." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009). Defendants seek dismissal of the Claims against BPD Does 1-12 on the basis of Plaintiff's failure to identify them.

Plaintiff contends in opposition to Defendants' motion that the BPD Does were identified during discovery. (Dkt. 79 at 16). Plaintiff specifically states that "Officer Edwin Torres and Detective James Longergan are two of the John Does in this action." (*Id*.). However, Plaintiff does not identify any of the other 10 BPD Doe defendants. Further, Plaintiff has never moved to amend his complaint to name Torres or Longergan as defendants, nor have those individuals ever been served.

Nor could Plaintiff successfully move to amend his complaint to name Torres or Longergan at this stage of the proceedings. "John Doe substitutions [after expiration of the statute of limitations] . . . may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quotation omitted). Here, the only provision of Rule 15(c) that could possibly allow for a John Doe substitution is Rule 15(c)(1)(A), which allows for such substitution if "the law that provides the applicable statute of limitations allows relation back."[4] More specifically,

---

[4]     Rule 15(c)(1)(B) does not apply here because it governs the assertion of new claims against existing defendants, and the Second Circuit has expressly ruled that Rule 15(c)(1)(C) does not apply "where the newly added defendants were not named originally because the plaintiff did not know their identities," *Hogan*, 738 F.3d at 517.

because "§ 1983 derives its statute of limitations from state law," Rule 15(c)(1)(A) allows

for a John Doe substitution where the "more forgiving principle of relation back" set forth

in section 1024 of the New York Civil Practice Law and Rules ("CPLR") is satisfied.

*Hogan*, 738 F.3d at 518 (internal quotation marks omitted).  CPLR 1024 allows for *nunc*

*pro tunc* substitution of John Doe parties if two requirements are satisfied:  "First, the party

must exercise due diligence, prior to the running of the statute of limitations, to identify

the defendant by name.  Second, the party must describe the John Doe party in such form

as will fairly apprise the party that [he] is the intended defendant."  *Id.* at 519 (citations and

quotations omitted and second alteration in original).

Here, as Defendants correctly explain in their motion papers, the amended

complaint does not identify the BPD Does "in any meaningful manner."  (Dkt. 69-1 at 13).

In particular:

> No specific description is provided that apprises of the intended defendant.
> No physical description is provided of these individuals.  There is no factual
> allegation contained in the Amended Complaint other than "officers and/or
> detectives of the BPD."  At the time of the filing of Plaintiff's Amended
> Complaint, considerable paper discovery had been provided by the
> Defendants in this action as well as his separate action, Ortiz v. Case, Index
> No. 1:16-cv-00322.  Plaintiff took no action to further identify BPD Does 1-
> 12 despite the availability of voluminous BPD files. Moreover, there is no
> specific factual allegation regarding the individual conduct of BPD Does 1-
> 12 to aid in their identification either.

(*Id.*).  Accordingly, the requirements of CPLR 1024 are not satisfied, and Plaintiff therefore

has no available mechanism to seek substitution of any of the BPD defendants.

In sum, Plaintiff has not sought to amend his complaint to substitute any of the BPD Doe defendants, nor could he successfully do so at this stage of the litigation. Dismissal of the claims against these defendants is warranted. *See Gleeson v. Cty. of Nassau*, No. 15-CV-6487AMDRL, 2019 WL 4754326, at *12 (E.D.N.Y. Sept. 30, 2019) (dismissing claims against John Doe defendants where "even though they learned the identities of [the relevant individuals] through document discovery, . . . the plaintiffs have not sought to amend the complaint to name the 'John Doe' [defendants]" because the statute of limitations had run and there was no basis for relation back); *Dewitt v. Home Depot U.S.A., Inc.*, No. 10-CV-3319 KAM, 2012 WL 4049805, at *1 (E.D.N.Y. Sept. 12, 2012) (dismissing claims against John Doe defendants who had been identified during discovery where the plaintiff "never moved to amend his complaint to add these individual defendants and never served the complaint on these individual defendants").

## VI. <u>Official Capacity Claims</u>

Defendants seek dismissal of all claims asserted against the individual defendants in their official capacities, because they are duplicative of Plaintiff's insufficient claims against the City of Buffalo. (Dkt. 69-1 at 13-14). The Court agrees that Plaintiff's claims against the individual defendants in their official capacities must be dismissed. "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself. Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim

- 21 -

against the municipality." *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn.

2008). In this case, the Court has already concluded that Plaintiff cannot maintain a *Monell*

claim against the City of Buffalo. (Dkt. 56 at 11-14). Plaintiff thus also cannot maintain

his official capacity claims; they must be dismissed.

## VII.   **Defendants' Request for Summary Judgment as to All Remaining Claims**

Defendants next contend that they are entitled to summary judgment on Plaintiff's

remaining claims, arguing that "there was no Constitutional violation because ample

probable cause to arrest, charge, and prosecute Plaintiff exist based upon his voluntary

statement to Stambach." (Dkt. 69-1 at 14). Defendants further argue that "the record is

devoid of any evidence that Wagstaff, Gugliuzza, or Vaughn took any action that violated

Plaintiff's Constitutional rights." (*Id*. at 16).

### A.   **Legal Standard for Summary Judgment Motion**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

should be granted if the moving party establishes "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## B. Claims Against Defendants Other Than Stambach

Defendants argue that "[t]he record is devoid of any evidence that Wagstaff, Gugliuzza, or Vaughn took any action that violated Plaintiff's Constitutional rights." (Dkt.

69-1 at 16).  The Court agrees, and accordingly finds that Wagstaff, Gugliuzza, and Vaughn are entitled to summary judgment.

A party seeking summary judgment may meet its burden by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (citation omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").  At that point, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial."  *PepsiCo*, 315 F.3d at 105 (quotation omitted).

Here, Defendants have pointed out to the Court that there is no evidence that Wagstaff, Gugliuzza, or Vaughn played any role in the taking of Plaintiff's statement, Plaintiff's arrest, or the initiation of the prosecution against Plaintiff.  In opposition, Plaintiff has failed to come forward with any specific facts tying these defendants to the alleged violation of his constitutional rights.  To the contrary, Plaintiff's memorandum of law sets forth only the following information regarding these defendants: (1) on the day of the Camacho murders, Gugliuzza took a statement from Jeilyn Rosario, Nelson Camacho's girlfriend, indicating that Misael Montalvo "wanted to kill or hurt Nelson or Miguel

- 24 -

Camacho," and this information was in the BPD's homicide file before Plaintiff was arrested; and (2) Vaughn participated in an interview of Plaintiff on November 15, 2004, at Buffalo General Hospital, after which "the detectives left Plaintiff, not considering him to be either a suspect or a witness, and advised him that he should contact them after his release from the hospital if he had any further information." (Dkt. 79 at 4, 6 (quotation and alterations omitted)).    Notably, Plaintiff's memorandum of law is devoid of any information regarding the role Wagstaff allegedly played in the claimed violations of Plaintiff's constitutional rights.[5]

Plaintiff has not come forward with specific facts supporting any of his claims against Wagstaff, Gugliuzza, or Vaughn.  These defendants' involvement in the BPD's investigation of the Camacho murders prior to Plaintiff's giving of his statement and subsequent arrest and prosecution would not permit a reasonable jury to conclude that they were liable to Plaintiff on any of his claims.  Wagstaff, Gugliuzza, or Vaughn are entitled to summary judgment.

---

[5]    Defendants have provided to the Court a copy of the state court decision granting Plaintiff's 440 Motion.  (Dkt. 69-20).  This decision indicates that Wagstaff was one of the BPD officers who responded to the scene of the Camacho murders and that he interviewed a witness who reported having seen "three guys . . . with something in their hand." (*Id.* at 7).

### C. Remaining Claims Against Stambach

The Court turns next to Plaintiff's malicious prosecution claim, due process fabrication of evidence claim, fifth amendment self-incrimination claim, and *Brady* violation claim against Stambach.

#### 1. Malicious Prosecution Claim

The bulk of Defendants' arguments relate to the malicious prosecution claim, and so the Court considers it first. "To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997).

Defendants make numerous arguments as to why Plaintiff's malicious prosecution claim must fail. First, Defendants argue that Plaintiff's malicious prosecution claim is barred in its entirety by the existence of probable cause. Second, Defendants argue that "Plaintiff cannot show that the Defendants initiated or continued the criminal proceeding against the Plaintiff because the independent actions of the District Attorney's Office while charging Plaintiff, later at the *Huntley* hearing, and during the course of the criminal prosecution broke any causal chain." (Dkt. 69-1 at 18). Third, Defendants argue that Plaintiff is barred by the principles of *res judicata* and collateral estoppel from challenging the voluntariness of his statement based on the *Huntley* hearing. Finally, Defendants

- 26 -

contend that Plaintiff cannot establish malice. The Court has considered these arguments below and finds that they do not establish Stambach's entitlement to summary judgment on Plaintiff's malicious prosecution claim.

As to Defendants' probable cause argument, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (quotations and citation omitted). This presumption "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id*. at 162 (quotation omitted). Defendants contend that the grand jury indictment in this case creates a presumption of probable cause and that Plaintiff cannot rebut that presumption. (Dkt. 17-18). The Court disagrees.

"[A] police officer's fabrication and forwarding to prosecutors of known false evidence" is the sort of bad faith misconduct that can rebut the presumption of probable cause flowing from a grand jury indictment. *Manganiello*, 612 F.3d at 162. Here, Plaintiff has pointed to evidence from which a rational jury could conclude that Stambach knew that the confession he had extracted from Plaintiff was false and that he nonetheless used it to set Plaintiff's prosecution in motion. In particular, Plaintiff has pointed to evidence supporting the conclusion that: (1) Stambach either was present at the interview of Plaintiff at Buffalo General Hospital on November 15, 2004, or had at a minimum been informed

- 27 -

of the details of that interview (Dkt. 69-9 at 61; Dkt. 69-12 at 56-57)[6]; (2) Stambach

questioned Plaintiff alone, without *Miranda* warnings, for 30-40 minutes before calling in

a translator, despite the fact that Plaintiff spoke only broken English, during which time he

specifically asked Plaintiff about the details of the Camacho murders and Plaintiff reported

that he was afraid someone was trying to kill him (Dkt. 69-6 at 182-83, 193-94); (3)

Stambach was aware that there were other suspects in the Camacho murders, but did not

pull the homicide file or review the many witness statements contained therein before

taking Plaintiff's confession (*id*. at 143-48, 212-14); (4) there were material inconsistencies

between Plaintiff's confession and the facts known to the BPD about the Camacho murders

(Dkt. 78-4 at 106-07); and (5) Stambach had no evidence "whatsoever" to link Plaintiff to

the crime apart from his confession (Dkt. 69-6 at 247-48; *see also* Dkt. 78-4 at 68). A

reasonable factfinder could conclude based on this evidence that Stambach knew that

Plaintiff's confession was false and was the product of his psychiatric condition, yet

nonetheless chose to procure a statement from Plaintiff setting forth that false confession

and used that statement to initiate the criminal prosecution of Plaintiff, which could in turn

support a finding in Plaintiff's favor on his malicious prosecution claim. *See Ricciuti*, 124

F.3d at 130 ("When a police officer creates false information likely to influence a jury's

decision and forwards that information to prosecutors, he violates the accused's

---

[6]     Plaintiff had been taken to Buffalo General Hospital for psychiatric evaluation, and
had reported to the staff that he had information about the Camacho murders and was in
fear for his life. (Dkt. 69-12 at 59-59). He acted "very unsettled," "jerky," "jittery," and
"out of sorts" during the interview. (*Id*. at 48, 60).

constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); *Pizarro v. City of New York*, No. 14-CV-507 KAM VVP, 2015 WL 5719678, at *5 (E.D.N.Y. Sept. 29, 2015) (finding the plaintiff's claim that the defendants had coerced and falsified his confession sufficient to rebut the presumption of probable cause flowing from grand jury indictment).

Defendants' argument that Stambach had probable cause to arrest Plaintiff based on his statement (*see* Dkt. 69-1 at 18) is misplaced. "The Second Circuit has warned against 'conflating probable cause to arrest with probable cause to believe that plaintiff could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim.'" *Pizarro*, 2015 WL 5719678, at *4 (alterations omitted and quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). As discussed above, a reasonable jury could find on the evidence before the Court that Stambach knew that Plaintiff's confession was false. A known false confession does not provide probable cause to believe a criminal prosecution would be successful. *Id*. at *5; *see also Ricciuti*, 124 F.3d at 131 (2d Cir. 1997) (finding district court erred in granting summary judgment on malicious prosecution claim as to defendant where "a jury could find that [the defendant] knowingly took part . . . in the distribution of a confession he knew to be false, and that he . . . lied about the circumstances surrounding [the plaintiff's] arrest").

- 29 -

Defendants' contention that Stambach did not initiate the criminal prosecution fares no better. To satisfy this element of a malicious prosecution claim, a defendant must "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello*, 612 F.3d at 163 (alteration and citation omitted). Importantly, "[a] jury may permissibly find that a defendant initiated a prosecution where he 'filed the charges' or 'prepared an alleged false confession and forwarded it to prosecutors.'" *Id.* (original alterations omitted and quoting *Ricciuti*, 124 F.3d at 130). Here, as discussed above, a reasonable jury could find that Stambach forwarded a confession he knew to be false to the prosecutors. Further, it was Stambach who signed the Felony Complaint on November 17, 2004, accusing Plaintiff of murder in the second degree. (Dkt. 78-12 at 32).

Nor can the Court find as a matter of law that the causal chain was broken by the prosecutors' actions. "[I]f the prosecution relied on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows." *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016). Where this is the case, "the chain of causation . . . is broken by the intervening exercise of independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). However, the prosecutors cannot serve as a superseding cause where they relied on evidence fabricated by the defendant. *See Bermudez v. City of New York*, 790 F.3d 368, 375 (2d Cir. 2015). Inasmuch as a reasonable jury could find that the prosecutors relied on a false confession extracted

from Plaintiff by Stambach, they could also find that Stambach's actions were the cause of Plaintiff's prosecution.

*Res judicata* and/or collateral estoppel also do not bar Plaintiff's claims. "Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding. The federal court must, however, apply the collateral estoppel rules of the state which rendered the judgment." *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) (citation omitted). "Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (footnote omitted).

Defendants claim that Plaintiff should be barred from challenging the circumstances of his confession because those issues were fully litigated during his criminal proceedings. However, "Defendants' interpretation of collateral estoppel seems plainly wrong—a vacated criminal conviction cannot have preclusive effect." *Dukes v. City of Albany*, 1:17-CV-865, 2018 WL 722414, at \*5 (N.D.N.Y. Feb. 6, 2018) (collecting cases). "Neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action between the same parties constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered." *Peterson v. Forkey*, 50 A.D.2d 774, 774 (1st Dep't 1975) (quoting *Rudd v. Cornell*, 171 N.Y. 114, 128-29

(1902)). "The judgment is the bar, and not the preliminary determination of the court."
*Rudd*, 171 N.Y. at 129. "Thus, when no order or final judgment has been entered on a
verdict or decision, <u>or when the judgment is subsequently vacated</u>, collateral estoppel is
inapplicable." *Church v. N.Y. State Thruway Auth.*, 16 A.D.3d 808, 810 (3d Dep't 2005)
(emphasis added); *see Ruben v. Am. & Foreign Ins. Co.*, 185 A.D.2d 63, 65 (4th Dep't
1992) ("Because the judgment was vacated, the jury verdict lacks finality and cannot be
given collateral estoppel effect."); *see also Kogut v. County of Nassau*, No. 06-CV-6695
(JS)(WDW), 2009 WL 5033937, at *10 (E.D.N.Y. Dec. 11, 2009) (holding that the
principles of collateral estoppel did not bar a challenge to the voluntariness of a confession,
even though that issue had been necessarily decided in the prior action, where the plaintiff
had subsequently been acquitted (citing *Boston Firefighters Union Local 718 v. Boston
Chapter NAACP, Inc.*, 468 U.S. 1206, 1211 (1984) ("[A] vacated judgment, by definition,
cannot have any preclusive effect in subsequent litigation."))). In other words, because
Plaintiff's judgment of conviction has been vacated, he is not barred from challenging the
circumstances under which his confession was obtained.

Finally, a rational jury could find that Stambach acted with malice. "The absence
of probable cause 'raises an inference of malice sufficient for a claim of malicious
prosecution to withstand summary judgment.'" *Bailey v. City of New York*, 79 F. Supp. 3d
424, 451 (E.D.N.Y. 2015) (quoting *Ricciuti*, 124 F.3d at 131). Further "[f]alsifying

evidence is sufficient to show malice." *Id*. The Court's conclusions as to Defendants' probable cause argument also apply to this aspect of a malicious prosecution claim.

For all these reasons, the Court concludes that Stambach is not entitled to summary judgment on Plaintiff's malicious prosecution claim against him.

## 2. Claim for *Brady* Violation

Court next considers Plaintiff's *Brady* violation claim against Stambach. Defendants argue that there is no evidence in the record to show that Stambach (or any of the other defendants) withheld *Brady* information. (Dkt. 69-1 at 24). In opposition, Plaintiff points to two witness statements that he claims were never provided to his criminal defense attorneys. (Dkt. 79 at 26).

"Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez*, 790 F.3d at 376 n. 4 (2d Cir. 2015). "[A] police officer is only liable for *Brady* violations under § 1983 when he intentionally suppresses exculpatory evidence. . . . [F]or purposes of § 1983, a police officer cannot be said to have suppressed *Brady* material that is not in his sole possession, and which is readily available to the prosecutor." *Valentin v. City of Rochester*, No. 11-CV-6238 CJS, 2018 WL 5281799, at *13 (W.D.N.Y. Oct. 24, 2018) (quotations and original alteration omitted), *aff'd*, 783 F. App'x 97 (2d Cir. 2019). In this case, there is no evidence before the Court that Stambach was in sole possession of the witness statements that Plaintiff claims were not turned over, nor is there any evidence before the Court that

- 33 -

these statements were withheld from the prosecution, as opposed to defense counsel. *See id.* ("[P]olice officers cannot be liable for a *Brady* violation where the prosecutor is aware of the allegedly-withheld *Brady* material."). Moreover, fabrication of evidence is not redressable as a *Brady* violation. *See Myers v. Cty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011). On the record before the Court, no reasonable jury could find in favor of Plaintiff on his claim that Stambach violated *Brady*. Accordingly, Stambach is entitled to summary judgment on this claim.

### 3.    Fabrication of Evidence Claim and Violation of Right Against Self-Incrimination Claim

As to Plaintiff's claims against Stambach for fabrication of evidence and violation of the right against self-incrimination, the Court notes that Defendants have offered no arguments specific to these claims. Further, while Defendants have argued generally that there were no constitutional violations because of the presence of probable cause, lack of probable cause is not an element of either of these claims. *See Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016) ("The district court's statement that independent probable cause rules out the possibility that fabricated evidence proximately caused the deprivations stemming from [the plaintiff's] prosecution is not, as a general matter, correct."); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (the elements of a fabrication of evidence claim are that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or

property as a result"); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding."). Because Defendants have failed to address the elements of these claims, they have failed to establish that Stambach is entitled to summary judgment thereon.

## VIII. **Qualified Immunity**

Finally, the Court turns to Defendants' qualified immunity argument. "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The sole argument Defendants offer in support of their assertion that they are entitled to qualified immunity is that there was "arguable probable cause." (Dkt. 69-1 at 23-24). However, as noted above, absence of probable cause is not an element of either a fabrication of evidence claim or a claim for violation of the right against self-incrimination. Accordingly, the existence of "arguable probable cause" would not, in any event, establish that Stambach was entitled to qualified immunity on these claims.

- 35 -

As to Plaintiff's malicious prosecution claim, the Second Circuit has held that no reasonable officer could believe it lawful to misrepresent evidence to the prosecution. *Managaniello*, 612 F.3d 149. Defendants' qualified immunity argument necessarily depends on the factual conclusion that Stambach did not knowingly procure a false statement of confession from Plaintiff and then pass that false statement on to the prosecution, but the facts as to Stambach's conduct are disputed and must be determined by a jury. Accordingly, summary judgment on the basis of qualified immunity is not warranted.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss and/or for summary judgment. (Dkt. 69). Specifically, the Court denies Defendants' request that it dismiss Plaintiff's claims against Gugliuzza, Stambach, and Vaughn due to insufficient service of process, but grants Defendants' request that it dismiss Plaintiff's claims against the BPD and BPD Does 1-12, as well as Plaintiff's claim for false arrest and false imprisonment. The Court further denies Defendants' request for summary judgment as to Plaintiff's claims for malicious prosecution, fabrication of evidence, and violation of the right against self-incrimination against Stambach, but grants Defendants' request for summary judgment as to Plaintiff's claim for a *Brady* violation against Stambach and as to all remaining claims against Wagstaff, Gugliuzza, and Vaughn.

- 36 -

The Clerk of Court is instructed to terminate the BPD, BPD Does 1-12, Wagstaff, Gugliuzza, and Vaughn as defendants in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 26, 2021
       Rochester, New York

- 37 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSUE ORTIZ,

                        Plaintiff,                    **DECISION AND ORDER**

           v.                                         1:16-CV-00321 EAW

MARK STAMBACH,

                        Defendant.
_____

## INTRODUCTION

Plaintiff Josue Ortiz ("Plaintiff") sued defendant Mark Stambach ("Defendant") for violations of his civil rights related to his arrest and conviction for the murders of Nelson and Miguel Camacho, and his subsequent exoneration. (Dkt. 1). A jury found in Plaintiff's favor after a five-day trial, and awarded $5 million in compensatory damages and $1.5 million in punitive damages. (Dkt. 158).

Currently pending before the Court are several post-trial motions: (1) a motion for attorneys' fees filed by Plaintiff (Dkt. 167); (2) a motion for attorneys' fees filed by Plaintiff's former counsel, Hancock Estabrook LLP ("Hancock") (represented here by Alan Pierce, Esq.) (Dkt. 169); and (3) motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), for a new trial pursuant to Fed. R. Civ. P. 59(a), and for remittitur pursuant to Fed R. Civ. P. 59(e) filed by Defendant (Dkt. 177). For the reasons that follow, the

- 1 -

Court denies Defendant's motions, grants in part and denies in part Plaintiff's motion for attorneys' fees, and grants in part and denies in part Hancock's motion for attorneys' fees.

## BACKGROUND

Familiarity with the prior history of this case—including particularly the Court's Decision and Order entered on February 26, 2021 (Dkt. 82), and the evidence adduced at trial—is assumed for purposes of the instant Decision and Order.  The Court has summarized the salient procedural background below.

Plaintiff commenced the instant action on April 26, 2015.  (Dkt. 1).  Following discovery and motion practice, the only claims that proceeded to trial were Plaintiff's claims against Defendant for malicious prosecution, fabrication of evidence, and violation of the right against self-incrimination.  (*See* Dkt. 82 at 36; Dkt. 160).   The jury found in Plaintiff's favor on each of these claims.  (Dkt. 160).

Following entry of judgment, Plaintiff filed his motion for attorneys' fees on May 20, 2022.  (Dkt. 167).  This motion did not include a request for any fees by Hancock, which had been terminated by Plaintiff on the eve of trial.  (*See* Dkt. 140).  Hancock filed its separate request for attorneys' fees on May 23, 2022.  (Dkt. 169).  Defendant filed his motion for judgment as a matter of law, for a new trial, and for remittitur on June 7, 2022. (Dkt. 177).

On June 10, 2022, Defendant filed his opposition to both of the pending motions for attorneys' fees. (Dkt. 179; Dkt. 180). Hancock filed reply papers on June 21, 2022. (Dkt. 182).

Plaintiff filed his opposition to Defendant's post-trial motions on June 28, 2022. (Dkt. 187). Defendant filed his reply on July 8, 2022. (Dkt. 192). The Court heard oral argument on January 31, 2023, and reserved decision. (Dkt. 194).

## DISCUSSION

### I.    Defendant's Post-Trial Motions

Because Plaintiff's entitlement to attorneys' fees turns on his status as a prevailing party, the Court considers first Defendant's challenges to the trial and the jury's verdict.

#### A.    Motion for Judgment as a Matter of Law

Pursuant to Rule 50, the Court may grant a motion for judgment as a matter of law in a jury trial if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" opposing the request. Fed. R. Civ. P. 50(a). The same standard applies where, as here, a party renews its request for judgment as a matter of law after the trial is complete. *See* Fed. R. Civ. P. 50(b).

"In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." *Williams v. Cnty. of Westchester*, 171

- 3 -

F.3d 98, 101 (2d Cir. 1999); *see also Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228 (2d Cir. 2017) ("Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor." (citation and alteration omitted)). Accordingly, the Court may not grant judgment as a matter of law unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Williams*, 171 F.3d at 101 (alterations omitted and quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir. 1994)); *see also Wierzbic v. Howard*, 331 F.R.D. 32, 45 (W.D.N.Y. 2019) ("In ruling on a motion for judgment as a matter of law, the motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him." (quotation and alteration omitted)), *aff'd*, 836 F. App'x 31 (2d Cir. 2020). This "standard places a particularly heavy burden on the movant where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015) (quotations omitted).

Defendant contends that a reasonable jury could not have found for Plaintiff on any of the three causes of action that were presented at trial. The Court disagrees, for the reasons that follow.

### 1.    <u>Malicious Prosecution</u>

The Court turns first to Plaintiff's claim for malicious prosecution. "To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). "The existence of probable cause is a complete defense to a claim of malicious prosecution . . ., and indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (quotations and citation omitted). This presumption "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id*. at 162 (quotation omitted).

Defendant argues that the evidence at trial was insufficient to permit a reasonable jury to find that the presumption of probable cause had been rebutted in this case.[1]  In particular, Defendant argues that there was "no evidence, direct or circumstantial, of bad

---

[1]    It is undisputed that Plaintiff was indicted by a grand jury and that there was correspondingly a presumption of probable cause.

faith" on his part. (Dkt. 177-4 at 18). However, Defendant ignores key evidence presented at trial, and improperly construes the facts in a manner favorable to his position.

More particularly, Defendant ignores or downplays the following critical evidence presented to the jury: (1) it is undisputed that Plaintiff was not involved in the murders of the Camacho brothers; (2) Dr. Evelyn Coggins testified that Plaintiff was "in the throes of a psychotic episode" during the relevant time period (Dkt. 157 at 45-47); (3) Plaintiff testified that he spoke very limited English at the relevant time period (Dkt. 173 at 25-26); (4) Defendant testified, and record evidence corroborated, that he was alone with Plaintiff for approximately 40 minutes prior to Plaintiff giving his confession, during which time he spoke to Plaintiff about the crime without advising him of his *Miranda* rights (Dkt. 165 at 18-19, 39-42); (5) Officer Edwin Torres, who had participated in an interview of Plaintiff at Buffalo General Hospital the day prior to his interview with Defendant[2], testified that Plaintiff was determined at that time not to have any credible information about the murders (Dkt. 176 at 30-32); (6) Officer Torres testified that Defendant's notes from his conversation with Plaintiff during the time that Plaintiff and Defendant were alone contained "details that would only be known by somebody who committed the crimes" (*id.* at 81); and (7) Officer Torres testified that those same details from Defendant's notes and

---

[2]     At the time of trial, Officer Torres was unable to recall whether Defendant was present during the interview of Plaintiff at Buffalo General Hospital. (Dkt. 176 at 18). However, Officer Torres was impeached at trial with testimony he provided at the state court proceeding in 2005, identifying Defendant as being present during Plaintiff's interview at the hospital. (*Id.* at 18-23).

- 6 -

which would only have been known to the perpetrator were repeated by Plaintiff in his confession (*id.*).

Distilled to its essence, Defendant's argument is that this circumstantial evidence is insufficient because Plaintiff was unable to remember his interaction with Defendant and provide direct eyewitness testimony to contradict Defendant's account. However, Defendant has cited no authority holding that direct evidence is required to rebut a presumption of probable cause in a jury trial on a malicious prosecution claim. Defense counsel did point at oral argument to certain reported decisions in which such direct evidence was presented, but the fact that other plaintiffs in other, unrelated cases were able to present stronger evidence does not render the jury's verdict in this case unreasonable. To the contrary, it is well established that—even in the more demanding criminal context— "the jury's verdict may be based entirely on circumstantial evidence, and may be inferred from the evidence, so long as the inference is reasonable, for it is the task of the jury, not the court, to choose among competing inferences." *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004) (quotations and citations omitted).

In this case, while it is certainly not the only conclusion a jury could have drawn, it is a reasonable inference from the circumstantial evidence set forth above that Defendant deliberately fed Plaintiff information regarding the murders of the Camacho brothers during the 40-minute period they were alone, relying on Plaintiff's fragile mental state and limited command of the English language to manufacture a false confession, which

- 7 -

Plaintiff then repeated in front of Officer Torres as a direct result of Defendant's conduct. While defense counsel contended at oral argument that Plaintiff might have somehow been aware of the particulars of the murders despite not having been involved therein, the jury was not obliged to engage in that kind of speculation. Indeed, other than general references to Plaintiff having been associated with the Camacho brothers at the time of their murders, there was no other evidence presented at trial as to how Plaintiff, who was not at the crime scene, was able to provide accurate details regarding the murders in his confession. And, as previously noted, the day before Defendant interviewed Plaintiff, Plaintiff had been interviewed at the hospital by Buffalo Police Department detectives and had been determined not to be a suspect because he lacked any credible information regarding the crimes.

"[A] police officer's fabrication and forwarding to prosecutors of known false evidence" is the sort of bad faith misconduct that can rebut the presumption of probable cause flowing from a grand jury indictment. *Manganiello*, 612 F.3d at 162. Accordingly, a reasonable jury could have concluded, on the evidence presented at trial, that Defendant acted in bad faith and that the presumption of probable cause was accordingly overcome.

Defendant's arguments to the contrary miss the mark. As previously noted, Defendant relies heavily on the fact that Plaintiff himself is unable to remember his interaction with Defendant, and was accordingly unable to offer his own version of what happened during their 40-minute, pre-written confession interaction. According to

- 8 -

Defendant, this dooms Plaintiff's malicious prosecution claim, because he cannot satisfy "the 'competing testimony plus' test announced in *Boyd v. City of New York*[, 336 F.3d 72 (2d Cir. 2003).]" (Dkt. 177-4). Defendant overstates the holding in *Boyd*. There, the Second Circuit found, at the summary judgment stage, that "a jury could reasonably find that the indictment was secured through bad faith or perjury" based on the plaintiff's testimony as corroborated by a booking shoot. 336 F.3d at 77. Defendant reads this case to mean that the <u>only</u> way a plaintiff claiming malicious prosecution can demonstrate bad faith is through a combination of his own contradictory version of events and some corroborating evidence. (*See* Dkt. 192 at 9). However, while the *Boyd* court found that the evidence in that case was sufficient to create a triable issue of fact, it did not suggest that a plaintiff could never prove bad faith in some other fashion.

In other words, while *Boyd* and its progeny indicate that a plaintiff may not rely solely on "his version of events" to rebut the presumption of probable cause, *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (citation omitted), they do not establish that a plaintiff who cannot remember his interaction with the defendant can never prevail on a malicious prosecution claim. To the contrary, the situation presented here is essentially the opposite of what courts have found prohibited by *Boyd*—that is, rather than relying solely on his own version of events without corroborating evidence, Plaintiff relies on circumstantial corroborating evidence but is unable to offer his own eyewitness account.

This simply does not implicate the same prudential concerns as allowing the presumption to be overcome based solely on self-serving testimony.

Further, the jury was not required to find Defendant's version of events credible simply because Plaintiff was unable to offer his own recollection. *See In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("a jury is free to believe part and disbelieve part of any witness's testimony"); *Dillon v. Morano*, 497 F.3d 247, 253 (2d Cir. 2007) ("A jury is under no obligation to find [a defendant] credible or find [his] explanation believable."). The jury could, and plainly did, conclude that Defendant was not being truthful about what happened during the time that he and Plaintiff were alone. On a motion for judgment as a matter of law, the Court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988)).

It is further not dispositive that certain evidence cited by the Court in denying Defendant's motion for summary judgment on Plaintiff's malicious prosecution claim was not ultimately introduced at trial. Defendant argues that "this Court's summary judgment decision required that certain evidence had to be introduced showing that [Defendant] knew that [Plaintiff] was not or could not have been a perpetrator at the time of the confession." (Dkt. 177-4 at 21). Defendant's argument misunderstands the task that a court undertakes in deciding whether summary judgment in favor of a defendant is

- 10 -

appropriate.  In assessing such a motion, a court need not analyze or articulate every legal or factual theory on which the plaintiff could potentially prevail at trial.  If the court is satisfied that at least one material factual dispute exists, summary judgment must be denied.  *See, e.g., Bonnie & Co. Fashions v. Bankers Tr. Co.*, 170 F.R.D. 111, 121 (S.D.N.Y. 1997) ("[I]t is basic, black-letter law that the existence of even one disputed issue of material fact renders a grant of summary judgment inappropriate. . . . Once this Court found that there existed one material issue of disputed fact regarding Count One, this Court did not need to consider any of [the defendant's] other alleged violations of the Factoring Agreement in order to deny summary judgment, and therefore, did not consider them. . . .  As a result, *all* of [the defendant's] conduct which was alleged by plaintiffs in Count One to violate the Factoring Agreement survived [the defendant's] summary judgment motion.").

Consistent with these principles, in its Decision and Order denying Defendant summary judgment on Plaintiff's malicious prosecution claim, the Court identified certain evidence that it found would allow a reasonable factfinder to conclude that Defendant had knowingly procured a false confession from Plaintiff and accordingly denied summary judgment.  (Dkt. 82 at 28).  The Court never held that some lesser quantum of evidence would be insufficient to sustain Plaintiff's burden of proof at trial, because it was not called upon to make such a determination at that time.  Nor did the Court grant partial summary judgment determining that any particular legal or factual theory of Plaintiff's as to this claim failed as a matter of law.  Accordingly, the fact that the evidence at trial did not line

up precisely with the discussion in the Court's prior Decision and Order does not mean that Defendant is entitled to judgment in his favor.

For all these reasons, the Court cannot conclude that a reasonable jury would have been unable to find in Plaintiff's favor on his malicious prosecution claim, and Defendant's motion for judgment as a matter of law thereon is denied.

### 2.     Fabrication of Evidence

The elements of a fabrication of evidence claim are that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). A plaintiff "may rely on circumstantial evidence (and reasonable inferences drawn from such evidence)" to support a contention that a defendant engaged in the fabrication of evidence. *Anilao v. Spota*, 340 F. Supp. 3d 224, 251 (E.D.N.Y. 2018), *aff'd*, 27 F.4th 855 (2d Cir. 2022).

Defendant argues that Plaintiff's fabrication of evidence claim is insufficient as a matter of law because "[t]here is no evidence whatsoever that [Plaintiff's] written confession is not an accurate account of what [Plaintiff] said to [Defendant] on November 16, 2004." (Dkt. 177-4 at 16). This argument fails for essentially the same reasons discussed above with respect to Plaintiff's malicious prosecution claim. Specifically, based on the evidence previously set forth, a reasonably jury could have concluded that

- 12 -

Defendant created a false confession by providing Plaintiff, who was suffering from a psychotic episode, with the details of the murders and causing him to repeat those details in response to Defendant's subsequent questions. Having reached such a conclusion, a reasonable jury could further have found in Plaintiff's favor on his fabrication of evidence claim. The Court accordingly denies Defendant's Rule 50(b) motion as to this claim.

### 3. Violation of Right Against Self-Incrimination

A plaintiff may recover "under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiff[] in a criminal proceeding." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Whether a statement was obtained by coercion is determined by the totality of the circumstances. *Id.*; *see also Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988) ("No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances."). "[F]actors to be considered include: the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). "Psychologically coercive tactics" may include "techniques such as brainwashing or

- 13 -

promises of leniency or other benefits." *Green*, 850 F.2d at 902; *see also United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) (affirmative misrepresentations or improper "trickery" can render a confession involuntary (alteration omitted)).

Although it is a closer question than those presented by Plaintiff's other claims, the Court finds that the jury could have reasonably concluded that Defendant engaged in coercive conduct during the 40 minutes that he was alone with Plaintiff prior to the taking of Plaintiff's written confession. In particular, the jury could have taken into account Plaintiff's limited understanding of English, Plaintiff's psychological state, and the fact that Plaintiff had a limited education. (*See* Dkt. 173 at 23-24 (Plaintiff testifying that he only completed the 11th grade and had been unsuccessful in obtaining his GED)). The jury also could have reasonably inferred that Defendant employed a psychologically coercive interrogation technique and/or engaged in improper trickery, based on the evidence that: (1) Plaintiff had no credible information about the murders when interviewed by law enforcement the previous day; (2) Plaintiff had no involvement in the murders; (3) during the 40-minute interval where he was alone with Plaintiff, Defendant created notes that included details of the murders that could only have been known by someone with inside knowledge; and (4) those same details were then repeated by Plaintiff during his answers to Defendant's questions during the creation of his written confession.

Defendant's emphasis on the law enforcement witnesses' testimony about his conduct while taking Plaintiff's written confession (*see* Dkt. 177-4 at 13-15) misses the

point. As discussed above, the jury was free to disbelieve all or part of that testimony. Further, it is entirely plausible that, having successfully employed psychological coercion during the 40 minutes when he was alone with Plaintiff (an individual with a limited education, little understanding of the English language, and a fragile mental state), Defendant had no need to continue to do so in front of Officer Torres or Sergeant James Lonergan (the other witness to Defendant's post-interview conduct). While the jury certainly was not compelled to reach that conclusion, it was permitted to do so.

Defense counsel also contended at oral argument that Defendant's version of events was corroborated by the facts that Plaintiff pled guilty in his state court criminal proceedings and reiterated his guilt years later before a federal grand jury. However, this argument again fails to consider the evidence in the light most favorable to Plaintiff. As to the former point, the evidence at trial was that Plaintiff attempted to withdraw his guilty plea and that the state court judge denied that request. (Dkt. 175 at 6). As to the latter point, Plaintiff explained at trial that when he testified before the federal grand jury, he was afraid that he would be prosecuted federally if he claimed not to have committed the murders. (*Id*. at 66-67). The jury was within its rights to credit this explanation.

In sum, the Court finds no basis to grant Defendant judgment as a matter of law on Plaintiff's claim that Defendant violated his right against self-incrimination.

### 4.    <u>Punitive Damages</u>

Defendant contends that he is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages, because there was nothing shocking or offensive about his conduct, nor was there any evidence that he had an evil motive or intent or was acting based on personal animus. (Dkt. 177-4 at 23-24). The Court disagrees that a reasonable jury could not have awarded punitive damages in this case.

"Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). As detailed above, the jury in this case could have reasonably concluded that Defendant caused the fabrication of a false confession and then caused that false confession to be used to prosecute Plaintiff. Such actions easily satisfy the standard for engaging in callous indifference to Plaintiff's constitutional rights. Further, a reasonable jury could determine that such conduct was shocking, offensive, and sufficiently egregious to warrant an award of punitive damages. *See, e.g., Niemann v. Whalen*, 928 F. Supp. 296, 300 (S.D.N.Y. 1996) (finding jury was warranted in awarding punitive damages where defendant coerced a false confession), *aff'd,* 107 F.3d 3 (2d Cir. 1997).

For all these reasons, the Court denies in its entirety Defendant's motion for judgment as a matter of law.

### B.    <u>Motion for a New Trial</u>

Defendant seeks in the alternative a new trial pursuant to Rule 59(a).  "As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quotation and alterations omitted); *see also Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) ("[A] decision is against the weight of the evidence, for purposes of a Rule 59 motion, if and only if the verdict is seriously erroneous or a miscarriage of justice[.]"). "Rule 59(a) . . . has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quotations and citation omitted).  "The legal standard for granting a new trial under Rule 59(a) calls for deference to jury determinations while affording discretion to the trial judge to order a new trial in the event of manifest injustice." *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-CV-76, 2018 WL 11419657, at *1 (D. Vt. May 7, 2018).  Whether to grant a new trial under Rule 59(a) is entrusted to the Court's discretion.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 261 (2d Cir. 2002) ("This court reviews the grant of a new trial on the ground that the verdict was against the weight of the evidence for abuse of discretion.").

The Court does not find that this is a case in which the jury's verdict was seriously erroneous or a miscarriage of justice. The resolution of this case turned largely on the jury's assessment of Defendant's credibility, and Second Circuit precedent "teach[es] . . . the high degree of deference accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Indeed, "where, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case[.]" *Id*. at 418-19 (reversing district court's grant of new trial where "[i]n the final analysis, the only testimony regarding what was actually said came from [one witness], and thus the entire case hinged on his credibility").

Here, the jury plainly concluded that Defendant was not being truthful about his interactions with Plaintiff, and there was support in the record for that conclusion. For example, Defendant changed his testimony in some respects from his deposition testimony. (*See, e.g.,* Dkt. 165 at 45-47). Perhaps most significantly, Defendant initially testified at trial that he did not have a conversation with Plaintiff during the 40 minutes they were alone. (*Id*. at 39). However, the jury subsequently learned that Defendant had testified at his deposition that he and Plaintiff had engaged in conversation during that time period, including conversation about the murders, and that Defendant had created two pages of notes during that time containing information specific to the crimes at issue. (*Id*. at 40-44). After being confronted with his prior testimony, Defendant tried to claim that he had asked

"[j]ust limited" questions of Plaintiff, but conceded on further cross-examination that he had asked Plaintiff "questions and details about how the crime had been committed" before a translator arrived and before Plaintiff was advised of his Fifth Amendment rights, and that it was during that same time frame that Plaintiff supposedly gave the facts that "led [Defendant] to believe he was the perpetrator of the crime[]." (*Id.* at 41-42).

The Court does not consider it seriously erroneous or a miscarriage of justice for the jury to have concluded that Defendant was not a credible witness, nor for the jury to have drawn reasonable inferences based on the circumstantial evidence as to what actually occurred during the 40 minutes that Plaintiff and Defendant were alone together prior to Plaintiff's written confession. Under the circumstances of this case, the Court does not find it to be the rare occasion on which the jury's verdict should be disturbed.

### C.    Motion for Remittitur

Defendant's final request is for remittitur pursuant to Rule 59(e). The Second Circuit has explained that:

> The district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, in at least two distinct kinds of cases: (1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally, where the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quotations and alterations omitted). In the latter case—where there is no particular discernable error—"generally . . .

a jury's damage award may not be set aside as excessive unless the award is so high as to shock the judicial conscience and constitute a denial of justice[.]" *Id*. (quotation omitted; *see also Newton v. City of New York*, 171 F. Supp. 3d 156, 171 (S.D.N.Y. 2016) ("[T]his Court must evaluate whether [the plaintiff's] Section 1983 award shocks the judicial conscience given that there is no particular discernable error that caused the jury to include in the verdict a quantifiable amount that should be stricken." (quotations and original alterations omitted)).

Defendant contends that the jury's award of $5 million in compensatory damages was intrinsically excessive. (Dkt. 177-4 at 26). The Court disagrees. As Defendant concedes, "there have been cases holding that an award of $1,000,000 . . . per year spent in prison is a reasonable award in wrongful conviction cases." (Dkt. 177-4 at 27); *see, e.g., Newton*, 171 F. Supp. 3d at 172-75 (collecting cases). Here, Plaintiff spent 10 years in prison for a crime he did not commit, and so the $5 million award equates to $500,000 per year of wrongful confinement. This is well within a permissible range.

Defendant argues that Plaintiff did not present "detailed evidence" of his emotional distress. (Dkt. 177-4 at 27). However, Plaintiff testified at trial about experiencing humiliating strip searches while imprisoned, about being attacked by other inmates, and about being assaulted by corrections officers. (Dkt. 175 at 9-14). He further expressly told the jury how difficult he found it to live in a cell, particularly in light of his mental health struggles. (*Id*. at 15). He also discussed feeling as though he constantly had to "watch[]

- 20 -

his back." (*Id.* at 16).  The jury could have reasonably concluded from this testimony that Plaintiff suffered significant emotional distress as a result of his wrongful conviction.

Defendant also argues that there was no "concrete evidence of a police officer's bad faith misconduct" in this case.  (Dkt. 177-4 at 27).  Of course, for the reasons discussed above, the Court disagrees with Defendant's assessment of the proof at trial that supported the jury's verdict.  While circumstantial, a reasonable jury had a legally sufficient evidentiary basis to find in favor of Plaintiff.  Moreover, the amount of compensatory damages does not depend on the presence of direct—as opposed to circumstantial—proof at trial.  So long as the proof was sufficient to support a verdict in Plaintiff's favor, which the Court has determined it was in this case, the jury was entitled to determine the amount that would compensate Plaintiff for his damages.

As to the punitive damages amount, "no objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct."  *Stampf v. Long Island R. Co.*, 761 F.3d 192, 209 (2d Cir. 2014) (citation and alteration omitted).  However, there are three general "guideposts" a court may look to in reviewing whether a punitive damages award is excessive: "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to the actual harm inflicted, and (3) 'the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'"  *Id.* (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

Defendant focuses solely on the first of these guideposts in seeking remittitur, arguing that "there was no evidence of reprehensible conduct by" Defendant. (Dkt. 177-4 at 27). For the reasons discussed at length above, the Court disagrees. The jury reasonably found that Defendant, a law enforcement officer, fabricated a false confession, and thereby caused an innocent man to be imprisoned for 10 years. That is reprehensible conduct as that term is used in this context. *See Stampf*, 761 F.3d at 209 (explaining that "[c]onduct that involves deceit or malice is more reprehensible than conduct involving mere negligence" and "conduct that could cause serious physical or emotional injury is more reprehensible than conduct that risks only minor injuries or economic damages"). Defendant's argument relies on his contention that he did nothing more than take a statement from Plaintiff (Dkt. 177-4 at 27), but that is not what the jury found.

The Court further notes that the ratio of punitive damages to compensatory damages in this case is 1.5:5, which is less than the 1:1 ratio that the Second Circuit has said does not "raise a suspicious judicial eyebrow." *Stampf*, 761 F.3d at 211 (quoting *Gore*, 517 U.S. at 582). Further, at least one other federal court has apparently approved an "award of $13,000,000 in punitive damages for 31 years of incarceration based on [a] false confession." *Burton v. City of New York*, No. 20-CV-9025 ATR WL, 2022 WL 9491955, at *14 (S.D.N.Y. Sept. 26, 2022) (citing *McCollum v. Robeson County*, No. 15-CV-00451, Dkt. No. 429 (E.D.N.C. May 14, 2021)).

In sum, Defendant has failed to persuade the Court that either the compensatory damages award or the punitive damages award in this case is greater than the amount a reasonable jury could have awarded. Accordingly, the Court denies Defendant's request for remittitur.

## II. <u>Plaintiff's Motion for Attorneys' Fees</u>

The Court turns next to Plaintiff's motion for attorneys' fees. Pursuant to 42 U.S.C. § 1988, the Court may award the prevailing party in a § 1983 action a reasonable attorneys' fee. *See Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019). In determining what constitutes a reasonable fee, the Court must "calculate a presumptively reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables." *Id*. at 229-30 (quotations omitted). This constitutes the "lodestar figure," which "has, as its name suggests, become the guiding light of [federal] fee-shifting jurisprudence." *Perdue v. Kenny A*., 559 U.S. 542, 551 (2010) (quotation omitted).

A reasonable hourly rate "is the rate a paying client would be willing to pay." *Id*. (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[3] factors; it should also

---

[3]    *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's

bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id*. "The determination of an award of attorney's fees under 42 U.S.C. § 1988 is committed to the sound discretion of the district court because the appropriate amount is dependent on the unique facts of each case." *Raja v. Burns*, 43 F.4th 80, 86 (2d Cir. 2022) (quotation omitted).

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020). Here, Plaintiff seeks $538,032.50 in attorneys' fees and $37,638.28 in costs. (Dkt. 167-1 at ¶¶ 6-7). Plaintiff is a prevailing party in this case, and so the Court concludes that a fee award is appropriate. However, for the reasons set forth below, the Court will award $123,550.00 in attorneys' fees and $2,474.81 in costs, rather than the amounts requested by Plaintiff.

## A.  <u>Hours Expended</u>

### 1.  <u>Fees Incurred in Other Matters</u>

Turning first to the determination of the appropriate billable hours expended, Plaintiff seeks compensation for 1065.4 hours expended by Wayne Felle, Esq., 150.8 hours expended by Edward Markarian, Esq., 24 hours expended by Elizabeth Bruce, Esq., and

---

customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3.

- 24 -

190.7 hours expended by paralegal Briana Croce. (Dkt. 167-1 at ¶ 6). However, as Defendant correctly points out, Plaintiff has included in this request many hundreds of hours of time spent on other proceedings and legal matters to which Defendant was not a party. This includes: proceedings in *Ortiz v. Case*, No. 1:16-cv-00322, a civil case in this District which was resolved in favor of the defendants; proceedings in the New York Court of Claims; proceedings in *United States of America v. Ortiz*, No. 1:16-cr-00077, a criminal case in this District wherein Plaintiff was convicted of being a felon in possession of a firearm; and Social Security, disability, and Medicare proceedings.

As the Second Circuit has recently explained, "[i]n section 1988, Congress authorized district courts only to allow the prevailing party a reasonable attorney's fee in an action or proceeding to enforce section 1983." *Raja*, 43 F.4th at 92 (quotation and alteration omitted). Fees incurred in connection with related proceedings may generally be recovered only to the extent those proceedings were "useful and of a type ordinarily necessary to advance the civil rights litigation." *Id*. (quotation omitted).

Here, the Court largely agrees with Defendant that this standard has not been satisfied with respect to the other proceedings as to which Plaintiff seeks attorneys' fees, inasmuch as the other legal proceedings at issue were not sufficiently related to this action. The exception is fees related to Plaintiff's "initial Section 440 proceeding to vacate his conviction." (Dkt. 179 at ¶ 12). Plaintiff could not pursue the instant action without first having his conviction vacated, or his claims would have been barred by *Heck v. Humphrey*,

512 U.S. 477 (1994). Accordingly, the state court proceeding to vacate his criminal conviction was both useful and necessary to advance the instant § 1983 action.

Defendant relies on an unreported, out-of-Circuit case to support his argument that fees related to the § 440 proceeding are not recoverable under § 1988. (*See* Dkt. 179-1 at 14-15 (citing *DeLew v. Nevada*, No. 2:00-CV-00460-LRL, 2010 WL 11636127 (D. Nev. Jan. 7, 2010))). However, the *DeLew* case is not on point, as it involved fees related to a wrongful death suit, not fees related to seeking the vacatur of a criminal conviction. *See* 2010 WL 11636127, at *6. Further, the *DeLew* court acknowledged that "attorney's fees may be available 'where a state proceeding is a necessary preliminary action to the enforcement of a federal claim[.]'" *Id*. (quoting *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 255 (5th Cir. 2000)). Again, Plaintiff could not have pursued his § 1983 claims without first having his conviction vacated in state court.

Defendant has identified 438.7 hours of legal fees that he claims should be struck as having been incurred in connection with miscellaneous other legal proceedings. (Dkt. 179 at ¶ 13). The Court has reviewed the entries identified by Defendant and notes that the entries from April 11, 2014, to January 15, 2015, are related to the § 440 proceedings in which Plaintiff's conviction was vacated. These entries total 57.3 hours. The Court agrees with Defendant that most of the remaining 381.4 hours are not recoverable. However, the entry on September 21, 2021, for 1.8 hours appears on its face to be related to this matter,

as does the entry on May 9, 2022, for 13 hours. The Court has not excluded these two entries on this basis.

Defendant has further identified 465.9 hours in fees that he asserts are associated with the actions before the New York Court of Claims and Appellate Division, Fourth Department and 47.7 hours that are associated with the *Ortiz v. Case* matter. (Dkt. 179 at ¶¶ 14-15).[4] The Court has reviewed the entries identified by Defendant and agrees that they are not recoverable. The Court also agrees with Defendant that time spent on public relations events should be struck, and has not included the identified public relations entries in its lodestar calculation. (*See id*. at ¶ 16).

The Court was not persuaded by Plaintiff's counsel's contention at oral argument that certain of the hours expended in connection with the other litigation discussed above were meant to overlap with and also be used in connection with this litigation. Plaintiff's counsel was unable to point to any record support for that contention, and as the party seeking fees, it is Plaintiff's burden to "submit sufficient evidence to support the hours worked[.]" *Torcivia*, 437 F. Supp. 3d at 251. Without some kind of evidentiary support (and absent any identification of the specific hours at issue), an attorney's general assertion does not satisfy this standard.

---

[4]     There is some overlap in the entries identified in paragraphs 13, 14, 15, and 16 of Defendant's declaration. The Court has accordingly independently cross-referenced the identified entries with Plaintiff's counsel's billing ledger, and has performed its own calculation of the hours remaining for each timekeeper when the entries described in this Decision and Order are excluded.

## 2. **Vague Entries**

Defendant next argues that the Court should strike 11 billing entries for "client meeting" or "meeting with client" as impermissibly vague. (*Id*. at ¶ 17). The Court agrees. "Courts may deny compensation where the billing information submitted is too vague to sufficiently document the hours claimed." *Decastro v. City of New York*, No. 16-CV-3850 (RA), 2017 WL 4386372, at *8 (S.D.N.Y. Sept. 30, 2017) (quotation omitted). In the context of this case, where counsel was representing Plaintiff in connection with multiple actions, the phrases "client meeting" and "meeting with client" provide no useful information about the work done. The Court accordingly will not include these entries in its calculation. *See Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627 (SHS), 2019 WL 3773856, at *3 (S.D.N.Y. Aug. 12, 2019) (describing "[c]alls with team and team meeting, call with client and review of additional documentation" as "exactly the type of descriptions that courts have found to be impermissibly vague in the context of recovering attorneys' fees").

## 3. **Unnecessary Pre-trial Motion Practice**

Defendant further asks the Court not to award fees associated with pre-trial motion practice regarding Plaintiff's failure to disclose expert witnesses, Plaintiff's request for an adjournment of the trial date, and the termination of Hancock and withdrawal of Mr. Pierce. (*See* Dkt. 179 at ¶¶ 18-21). Defendant contends that these activities were unnecessary and

incurred because of Plaintiff's counsel's own failure to comply with the Federal Rules of Civil Procedure. (Dkt. 179-1 at 19).

"In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." *Raja*, 43 F.4th at 87 (quotation omitted). Here, the Court does not agree that the motion practice regarding expert witnesses falls within that category. While the Court ultimately largely found in Defendant's favor on those motions, the Court cannot say that the associated motion practice was unnecessary.

However, the Court agrees that Defendant should not have to bear the costs of Plaintiff's request for an adjournment of the trial date, which was entirely without basis and which the Court noted was made in an attempt at gamesmanship. (*See* Dkt. 138). Defendant also should not have to bear the costs of the internal dispute between Plaintiff's lawyers, which could and should have been handled without resort to motion practice.

Plaintiff's counsel has included litigation of the motion for an adjournment and his work related to his dispute with Mr. Pierce in large, blocked-billed entries in April of 2022. The Court accordingly strikes from the requested fees a 12.5-hour entry on April 14, 2022, a 7.5-hour entry on April 19, 2022, a 6.8-hour entry on April 20, 2022, a 7.2-hour entry on April 21, 2022, and an 8.6-hour entry on April 26, 2022, each of which references work on these items. (*See* Dkt. 167-2 at 19).

- 29 -

### 4.    Paralegal Time Charged to Attorney

Defendant has identified three specific occasions on which Mr. Felle appears to have billed hours that were actually worked by his paralegal, Ms. Croce.  The first is an entry on June 3, 2019.  (Dkt. 167-2 at 12).   The time entry says: "Sent co-counsel transcripts and exhibits (WCF 1.5) (BEC 2)."  (*Id*.).  However,  the corresponding hours charge 3.5 hours to Mr. Felle and none to Ms. Croce.  This is clearly an error, as the time entry itself allocates 2 hours of work to Ms. Croce.  Similar errors can be seen in an entry from November 8, 2019, attributing 0.3 hours of Ms. Croce's work to Mr. Felle, and in an entry from April 29, 2022, attributing 6.5 hours of Ms. Croce's work to Mr. Felle.  (*Id*. at 12, 20).  The entry from November 8, 2019, has already been disallowed by the Court as related to state court litigation.  For the remaining misallocated 8.5 hours, the Court will apply Ms. Croce's rate and not Mr. Felle's rate.

### 5.    Block Billing and Other Deficient Time-Keeping Practices

In addition to the specific arguments made above, Defendant seeks an across-the-board reduction in the requested hours, arguing that counsel's "time entries demonstrate widespread block-billing, excessively vague time-entries, and are suggestive of either deliberate overestimation or a failure to maintain contemporaneous records."  (Dkt. 179-1 at 16).  Defendant specifically seeks an across-the-board 75% reduction in the remaining hours.  (*Id*. at 17).

"Block billing—. . . the practice of lumping multiple distinct tasks into a single billing entry—is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87. Nonetheless, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours." *Id*. In particular, block billing is "permissible as long as the district court is still able to conduct a meaningful review of the hours for which counsel seeks reimbursement." *Id*. (quotation omitted) Here, while Plaintiff's counsel did engage in block billing, the Court does not find that the practice was so egregious as to prevent meaningful review of the requested hours.

However, the Court does agree that some reduction is appropriate due to the vagueness of the time entries and because they reflect excessive time spent on routine matters. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). To give just a few example of excessive time spent on routine matters, an entry on April 25, 2016, reflects two hours of attorney time for "filed, paid—claims against City and County"; an entry on November 2, 2016, reflects 0.5 hours of attorney time for "[s]ent correspondence to defense attorneys with discovery responses and demands"; an entry on June 3, 2019, reflects 3.5 hours being spent simply to send transcripts and exhibits to co-counsel; an entry on September 9, 2020, reflects 0.4 hours being spent to fax a request for records; and an entry on March 2, 2021, reflects 0.7 hours being spent to "[e]mail page count for draft record." (Dkt. 167-2). For examples of vague entries (and in addition to the "client meeting" and

"meeting with client" entries already discussed), an entry on March 16, 2016, states, "[p]hone call with client"; an entry on May 1, 2017, states "[p]hone call with client"; an entry on August 8, 2017, states "[e]mail to co-counsel"; an entry on October 15, 2018, states "ltr to AP, t/c w/ client"; an entry on February 24, 2021, states, "[m]essage to counsel"; an entry on April 21, 2021, states "[p]hone call with counsel; discussed next steps"; an entry on April 30, 2021, states "[p]hone call with counsel; email with counsel"; and an entry on November 10, 2021, states "[l]etter to Fed. Ct., t/c AP." (*Id.*). These lists are not exhaustive, but are representative of counsel's timekeeping practices.

"To address such redundancy or vagueness, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Raja*, 43 F.4th at 87 (quoting *Kirsch*, 148 F.3d at 173). Here, the Court finds an across-the-board reduction of 15% sufficient to account for these time-keeping deficiencies. *See Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 1:18-CV-3668-MKV, 2020 WL 6363960, at *2 (S.D.N.Y. Oct. 29, 2020) (applying 20% reduction to account for similar issues and collecting cases applying reductions between 15% and 30%).

Taking all these rulings together, the Court finds that, prior to any across-the-board reduction, the reasonable hours spent on this litigation are as follows: 449 hours by Mr. Felle, 2.1 hours by Mr. Markarian, 23.2 hours by Ms. Bruce, and 55.8 hours by Ms. Croce.

Applying the 15% across-the-board reductions results in a total of 381.7 hours by Mr. Felle, 1.8 hours by Mr. Markarian, 19.7 hours by Ms. Bruce, and 47.4 hours by Ms. Croce.

### B. Reasonable Hourly Rates

Plaintiff seeks the following hourly rates: $425 per hour for Mr. Felle; $335 per hour for Mr. Markarian; $325 per hour for Ms. Bruce; and $125 per hour for Ms. Croce. (Dkt. 167-1 at ¶ 6). Defendant maintains that these rates are unreasonably high. (Dkt. 170-1 at 23-24). The Court agrees.

For purposes of calculating the lodestar figure, the Court applies "the prevailing hourly rate in the community," and "the community for purposes of this calculation is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (quotations and alteration omitted). The Court may use an out-of-District hourly rate only "if it is clear that a reasonable, paying client would have paid those higher rates." *Id*. at 191. There is a presumption that "a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally," and the burden is on the attorney seeking a higher rate to rebut that presumption. *Id*.

In the Western District of New York, the prevailing hourly rate for an experienced attorney in a civil rights matter is typically no more than $300 per hour, while less experienced attorneys typically have rates of no more $200 per hour. *See Warr v. Liberatore*, No. 13-CV-6508MWP, 2022 WL 969528, at *5 (W.D.N.Y. Mar. 31, 2022) (collecting cases and finding, in civil rights action, that $350 per hour rate for experienced

attorney was unreasonable and should be reduced to $295 per hour).  The rates proposed by Plaintiff's counsel are far outside this range, and the Court finds no reason to apply out-of-District rates in this case.

The Court has considered the *Johnson* factors, among others, in making this determination.  As a threshold matter, the Court notes that Defendant contends that the Supreme Court's decision in *Perdue* "specifically rejected the use of the *Johnson* factors for § 1988 motions" and that *Arbor Hill* is "no longer good law" regarding calculation of a reasonable hourly rate.  (Dkt. 179-1 at 22-23).  However, the Second Circuit held to the contrary in *Lilly*, explaining that "*Perdue* . . . did not overrule *Arbor Hill* or otherwise prohibit district courts from considering the novelty or complexity of a case in determining the reasonable hourly rate or hours billed," and that "the twelve *Johnson* factors remain important tools for helping district courts calculate the lodestar and, in exceptional cases, determining whether an enhancement or cut to the lodestar is warranted."  934 F.3d at 232-33.  Accordingly, the Court rejects Defendant's invitation to ignore the *Johnson* factors.

As set forth above, the *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The Court has considered these factors and does not find that they support the imposition of a higher hourly rate in this case.

Plaintiff's arguments to the contrary are not persuasive. While counsel certainly expended significant time and labor, much of that time and labor (as set forth above) was spent on other legal proceedings. Plaintiff concedes that "this matter did not present significant novel legal questions." (Dkt. 167-3 at 13). The Court further does not find that this case required any unusual skill to pursue.

Counsel contends that he was unable to take on certain other paying matters "during the most intense periods of litigating this case[.]" (*Id.* at 14). While this may be true, those "intense periods" of litigation were relatively limited, and not out of the ordinary for a civil rights matter.

Counsel also contends that his customary hourly rate significantly exceeds the rates sought in the instant fee application. (*Id.* at 15). However, he has calculated his "hourly rate" by looking to contingent fee cases, which the Court does not find to be a useful comparison. The effective hourly rate in a contingent fee case is recompense for the risk of not being paid at all, and is not reflective of the hourly rate a paying client would agree to in a traditional attorney-client relationship. The Court further does not find the fact that

- 35 -

counsel will receive a contingent fee from Plaintiff a reason to depart from the prevailing hourly rates in this District.

Counsel's argument that he was "tasked with conducting discovery and preparing for trial within an expedited timeframe" (Dkt. 167-4 at 15) is entirely belied by the history of this case.  Discovery in this matter began in 2016 and did not close until 2020.  (*See* Dkt. 68).   Further, the Court resolved all dispositive motions by February 2021 (*see* Dkt. 82), and the trial did not occur until over a year later, in May of 2022.  The Pretrial Order setting filing deadlines was entered in December of 2021, approximately five months before the trial occurred.  (*See* Dkt. 98).  This is not an expedited timeframe.

Counsel did obtain a significant award on behalf of his client.  However, as discussed further below, there were also many unsuccessful claims brought in this action.  Accordingly, the Court does not find that this factor warrants an upward adjustment in the hourly rate.  The Court is further unpersuaded by counsel's arguments regarding his experience, inasmuch as counsel has previously represented to the Court that he is unexperienced in federal court matters such as this one.

Plaintiff's counsel argues that the case was "undesirable" because it is societally unpopular to sue law enforcement.  (Dkt. 167-4 at 17-18).  However, Plaintiff—who spent 10 years in jail for a crime he concededly did not commit—was a sympathetic litigant, and the potential damages were very high.  The Court is not persuaded that this case was

undesirable on the whole.  The Court also does not find this case out of the ordinary with respect to the nature of the professional relationship between counsel and client.

Finally, counsel has not cited any civil rights cases in this District where hourly rates in line with those sought here were awarded.  He has instead relied on cases from the Southern and Eastern Districts of New York, where the prevailing rates are significantly higher than in the Western District of New York.  Indeed, in one of the cases that Plaintiff cites, *Vilkhu v. City of New York*, No. 06-CV-2095 CPS (JO), 2009 WL 1851019 (E.D.N.Y. June 26, 2009), the Second Circuit vacated and remanded the decision specifically because the district court had applied Southern District prevailing rates, and not rates from the Eastern District.  *See Vilkhu v. City of New York*, 372 F. App'x 222, 224 (2d Cir. 2010).

The Court accordingly finds that the reasonable hourly rates in this case should be in line with the prevailing rates in this District.  Specifically, the Court finds that rates of $300 per hour for Mr. Felle, $200 per hour for his associates, and $100 per hour for his paralegal are what a reasonable paying client would have been willing to pay.  Multiplying these rates by the hours previously calculated by the Court results in a lodestar figure of $123,550.00.

## C.    <u>Unsuccessful Claims</u>

Defendant asks the Court to reduce the fee award based on the fact that several claims and defendants were dismissed from this case prior to trial.  (Dkt. 179-1 at 21).  "[P]laintiffs may receive fees under § 1988 even if they are not victorious on every claim.

A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011). Where "the plaintiff's claims involve a common core of facts or are based on related legal theories, and are therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (quotations and alterations omitted). Nevertheless, "[a]lthough full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined, the court retains substantial discretion to take into account the specific procedural history and facts of each case." *Id.*

Here, the Court is not persuaded that a further reduction is warranted on this basis. In particular, in exercising its discretion, the Court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). Here, there is no question that Plaintiff obtained a very significant award in his favor, and he was fully successful on all the claims that proceeded to trial. The Court does not find that this is a case in which the lodestar figure should be reduced based on the presence of unsuccessful but intertwined claims.

- 38 -

## D.    Costs

The Court turns to Plaintiff's request for costs.  "The Second Circuit has held for a prevailing plaintiff, attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *Torcivia*, 437 F. Supp. 3d at 257 (quotation omitted).  In this case, Plaintiff seeks $37,638.00 in costs.  (Dkt. 167-1 at ¶ 7).  However, as Defendant has correctly noted, Plaintiff's fee request includes $27,899.50 for expert witness fees.  (*See* Dkt. 179 at ¶ 5).  "Section 1988 does not convey the authority to shift experts' fees to the losing party" in § 1983 cases.  *Stratakos v. Nassau Cnty.*, 574 F. Supp. 3d 154, 162 (E.D.N.Y. 2021) (quotation omitted); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006) ("'[C]osts' is a term of art that generally does not include expert fees." (citation omitted)).  Further, all four of the expert witnesses in question were precluded from testifying by the Court due to counsel's failures to comply with the Federal Rules of Civil Procedure, and the Court would not award their fees even if it had the authority to do so.

Additionally, and again as Defendant correctly points out (*see* Dkt. 179 at ¶ 8), the majority of the remaining costs sought by Plaintiff were incurred in connection with other actions.  For example, Plaintiff seeks reimbursement of his filing fee in the New York State Court of Claims, as well as service fees and transcripts associated with his state court proceedings and his federal criminal proceedings.  (*See* Dkt. 167-3).

Having reviewed the documentation presented by Plaintiff, the Court finds he is entitled to reimbursement of: $400 in filing fees; $100 in service fees; $808.10 in transcript fees; and $1,166.71 in printing fees. This is a total of $2,474.81, which is awarded to Plaintiff as costs.

## III. Hancock's Motion for Attorneys' Fees

The Court turns finally to Hancock's motion for attorneys' fees. Hancock seeks fees pursuant to § 1988. (Dkt. 169-1 at ¶ 2). In the alternative, Hancock asks to intervene in this matter and for the Court to confirm that it has a charging lien that is enforceable against either Plaintiff or Mr. Felle. (*See* Dkt. 169-2 at 15).

### A. Request under § 1988

Under § 1988, "it is the prevailing party rather than the lawyer who is entitled to attorney's fees." *Brown v. Gen. Motors Corp., Chevrolet Div.*, 722 F.2d 1009, 1011 (2d Cir. 1983). Accordingly, a claim for attorneys' fees under § 1988 "must itself be made by the party rather than the attorney." *Id.*; *see also Valley Disposal Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 113 F.3d 357, 361 (2d Cir. 1997) ("This Court, noting § 1988's provision for fees to be awarded to the party, has interpreted § 1988 to mean that the person who is entitled to the award of attorneys' fees is the prevailing party rather than the lawyer." (quotations omitted)). Accordingly, under § 1988, "a former attorney who withdrew as counsel lack[s] standing to claim attorney's fees from a defendant in his own name." *Perez v. Progenics Pharms., Inc.*, 204 F. Supp. 3d 528, 552 (S.D.N.Y. 2016); *see also Babcock*

*v. Rezak*, No. 96-CV-0394E(SC), 2004 WL 1574623, at *1 (W.D.N.Y. June 23, 2004) (denying former attorney's request for fees under § 1988 for lack of standing).

Hancock acknowledges that "[c]ase authority provides that under section 1988 it is the party and not the party's attorney who is entitled to apply for and obtain an award of attorneys' fees and costs" (Dkt. 169-2 at 15), but suggests that *Brown* should be limited to its facts, citing *Malarkey v. Texaco, Inc*., 794 F. Supp. 1237 (S.D.N.Y. 1992). However, *Malarkey* did not discuss *Brown* or consider the issue of standing. Further, there is nothing in the *Malarkey* case suggesting that the plaintiff had not joined in the request for fees by her former counsel. By contrast, the record in this case reflects that Plaintiff deliberately did not include Hancock's fees and costs in his § 1988 application. (*See* Dkt. 170-3.)

Under the circumstances of this case, Hancock lacks standing to seek attorneys' fees from Defendant under § 1988. The right to do so belongs to Plaintiff, who has chosen to exercise it solely with respect to fees and costs incurred by Mr. Felle and his associates and paralegal. Indeed, Mr. Pierce seemed to concede at oral argument that Hancock's request for fees under § 1988 was contingent upon Plaintiff having joined therein, which he has not done. Accordingly, Hancock's request for fees under § 1988 is denied.

## B. Requests to Intervene and for a Charging Lien

The Court turns to Hancock's alternative requests to intervene and for a charging lien. As an initial matter, the Court notes that it has jurisdiction over Hancock's alternative requests. "Federal courts may exercise supplemental jurisdiction to hear fee disputes

- 41 -

between litigants and their attorneys when the dispute relates to the main action." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (quotation omitted). The Second Circuit has "held, in an unbroken line of cases, that a fee dispute between a party and its attorneys shares a common nucleus of operative fact with the underlying action." *Shukla v. Sharma*, 586 F. App'x 752, 753-54 (2d Cir. 2014) (quotation omitted).

"A charging lien is a security interest in the favorable result of litigation, giving the attorney [an] equitable ownership interest in the client's cause of action and ensuring that the attorney can collect his fee from the fund he has created for that purpose on behalf of the client." *Charnow v. Charnow*, 134 A.D.3d 875, 876 (2d Dep't 2015) (citation omitted). "The Second Circuit has made clear that Section 475 [of the New York Judiciary Law] governs attorneys' charging liens in federal courts sitting in New York, and such liens are 'enforceable in federal courts in accordance with its interpretation by New York courts.'" *Stair v. Calhoun,* 722 F.Supp.2d 258, 267 (E.D.N.Y. 2010) (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 449 (2d Cir. 1998)).

"The Second Circuit has not decided whether attorneys may intervene solely for the purpose of protecting their contractual rights to fees or to enforce a charging lien." *United States v. Salix Pharms., Ltd.*, No. 15CV706 (DLC), 2016 WL 4402044, at *3 (S.D.N.Y. Aug. 18, 2016). Indeed, the Second Circuit has noted that "there are arguments both for and against allowing discharged attorneys to intervene to protect their legal fees" and that it is a "close question." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171,

176 (2d Cir. 2001); *see also Peterson v. Islamic Republic of Iran*, 690 F. App'x 744, 745-

46 (2d Cir. 2017) (declining to reach issue of whether attorney's "asserted contractual

interest and statutory charging lien on the proceeds from a judgment in favor of certain

plaintiffs he used to represent" was "valid and sufficient to support intervention of right").

However, the Court does not find that intervention is required in order for Hancock to seek

confirmation of its charging lien.   As noted above, the Second Circuit has made clear that

Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New

York, and Judiciary Law § 475 empowers the Court "upon the petition of the client <u>or

attorney</u>" to "determine and enforce the lien."  N.Y. Judiciary L. § 475 (emphasis added).

Accordingly, in *Itar-Tass*, the Second Circuit held that former counsel may seek to enforce

his lien even when permitted to withdraw as attorney of record.  140 F.3d at 451.  In other

words, counsel who has "been an attorney of record" is "entitled to have . . . his charging

lien determined by the district court under Section 475."  *Id*. at 452.  The Court thus denies

Hancock's request for intervention as moot.

    As to the request for confirmation of the charging lien, "attorneys who terminate

their representation are . .  entitled to enforce their charging liens, as long as the attorney

does not withdraw without 'good cause' and is not discharged for 'good cause.'"  *Stair*,

722 F. Supp. 2d at 267.  Here, while Mr. Felle apparently took the position at one time that

Hancock had been discharged for cause (*see* Dkt. 170-5 at 4), Plaintiff did not file any

opposition to Hancock's motion for attorneys' fees.  It is the client's burden to show a

discharge for cause in opposition to an assertion of a charging lien. *See Love & Madness, Inc. v. Claire's Holdings, LLC*, No. 21 CIV 1913 ATSLC, 2021 WL 4554058, at *4 (S.D.N.Y. Oct. 4, 2021). Plaintiff has not done so here.

As to the amount of the charging lien, "the proper method of fixing the sum of the lien is through a *quantum meruit* analysis, which requires ascertaining the reasonable value of the services rendered." *Pettiford v. City of Yonkers*, No. 14 CIV. 6271 (JCM), 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) (quotation and alteration omitted), *aff'd*, 833 F. App'x 893 (2d Cir. 2020). Much like determining an award under § 1988, this generally involves calculating the lodestar figure, "which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id*. at *5 (quotation omitted).

Here, Hancock seeks $183,426.50 in fees. (*See* Dkt. 169-1 at ¶ 12). This consists of 439.3 hours expended by Mr. Pierce, 11.8 hours expended by associate Paul Tuck, 2.1 hours expended by associate Mary D'Agostino, 27.6 hours expended by associate William Hython, and 2.1 hours expended by paralegal Amy Cobb. (*Id*.). However, in reply, Hancock concedes that certain entries were included in its request that should not have been, as they related to the *Ortiz v. Case* matter or the New York Court of Claims matter. The Court has reviewed the billing records submitted by Hancock, and concludes that 22.7 hours charged by Mr. Pierce, two hours charged by Mr. Tuck, and 8.3 hours charged by Mr. Hython were on matters other than the instant case. This brings the hours totals to 416.6 for Mr. Pierce, 9.8 hours for Mr. Tuck, and 19.3 hours for Mr. Hython.

The Court further finds that a 15% across-the-board reduction is appropriate, due to the vagueness of certain time entries and excessive time spent on certain routine matters. A few examples of vague entries include: an entry on August 3, 2017, that states "[r]eviewed documents for case"; an entry on August 21, 2017, that states "[e]mails with Attorney Felle re case"; an entry on November 21, 2017, that states "[t]elephone conference with Attorney Felle"; and an entry on March 16, 2022, that states "[p]repared pretrial filings." (Dkt. 170). As for examples of excessive time spent on routine matters: an entry on October 18, 2017, reflects 0.2 hours spent to "[r]eceive[] ECF notices re mediation"; an entry on November 12, 2019, reflects 0.3 hours spent on an email to opposing counsel "re extending schedule"; an entry on June 4, 2020, reflects 0.3 hours for "[r]eceived and reviewed notice of improper e-filing; re-filed letter to Judge Wolford; received extension grant from Judge"; and an entry on July 6, 2021, reflects 0.2 hours for receiving and reviewing a text order requiring the filing of a status report. (*Id.*). Applying this reduction results in a total of 354.1 hours expended by Mr. Pierce, 8.3 hours expended by Mr. Tuck, 1.8 hours expended by Ms. D'Agostino, 16.4 hours expended by Mr. Hython, and 1.8 hours expended by Ms. Cobb.

As to the requested rates, for essentially the reasons discussed above with respect to Mr. Felle and his associates and paralegals, the Court finds that a reasonable rate for Mr. Pierce is $300 per hour, a reasonable rate for Mr. Tuck is the requested $185 per hour, a reasonable rate for Ms. D'Agostino is $200 per hour, a reasonable rate for Mr. Hython is

the requested $190 per hour, and a reasonable rate for Ms. Cobb is $100 per hour.[5]  This

amounts to fees of $111,421.50.

Hancock also seeks $2,628.13 in disbursements.  A charging lien includes costs, so

long as they are substantiated.  *See Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12

CIV. 7424 JMF, 2013 WL 371673, at *4 (S.D.N.Y. Jan. 29, 2013).  Here, Hancock has not

substantiated its requests with documentation, but has simply submitted a list of purported

disbursements with vague entries such as "travel."  (Dkt. 170-1 at 2-3).  The Court

accordingly does not include the request for costs in its calculation of the charging lien.

*See Winkfield*, 2013 WL 371673, at *4.

The Court rejects Hancock's alternative argument that it "is entitled to an award for

its fees and costs from Mr. Felle under *Cheng v. Modansky Leasing Co., Inc.*, 73 N.Y.2d

454, 458 (1989)."  (Dkt. 169-2 at 20).  The provision of *Cheng* Hancock relies upon applies

when "the fee dispute is . . . between the discharged attorney and a subsequently retained

attorney."  *Crout v. Haverfield Int'l, Inc.*, 348 F. Supp. 3d 219, 229 (W.D.N.Y. 2018).

Here, there is no indication that the fee dispute is between Hancock and Mr. Felle, as

---

[5]     Hancock has cited to a few cases approving higher hourly rates for experienced partners outside the civil rights context.  (*See* Dkt. 169 at 10-11).  However, "the range of 'reasonable' attorneys' fee rates varies depending on the type of case," *Yash Raj Films (USA) Inc v. Bobby Music Co. & Sporting Goods Inc.*, No. 01 CV 8378 (JFB), 2007 WL 9706613, at *4 (E.D.N.Y. Sept. 5, 2007), and the Court has focused its analysis on the rates typically charged in this District for civil rights litigation.

- 46 -

opposed to Hancock and Plaintiff. Under the circumstances of this case, Hancock is entitled to a charging lien against its former client.

## **CONCLUSION**

For the reasons set forth above, the Court: (1) denies Defendant's motions for judgment as a matter of law, for a new trial, and for remittitur (Dkt. 177); (2) grants Plaintiff's motion for attorneys' fees pursuant to § 1988 (Dkt. 167) to the extent it awards Plaintiff $123,550.00 in attorneys' fees and $2,474.81 in costs, and otherwise denies Plaintiff's motion for attorneys' fees; and (3) grants Hancock's motion for attorneys' fees (Dkt. 169) to the extent that it confirms Hancock's charging lien against Plaintiff in the amount of $111,421.50, and otherwise denies Hancock's motion.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 17, 2022
        Rochester, New York

- 47 -

# Addendum B

Issued presented on this appeal include, but are not limited to:

## Malicious Prosecution Issues

(1): Whether Plaintiff adduced sufficient evidence to rebut the presumption of probable cause created by the grand jury indictment issued against him?

(2) Whether Plaintiff satisfied the "competing testimony plus" test announced in *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)?

(3) Whether Plaintiff can overcome the presumption of probable cause through circumstantial evidence alone?

(4) Whether Plaintiff's confession to a third-party subsequent to Defendant's alleged wrongful conduct created independent probable cause for Plaintiff's arrest and prosecution?

(5) Whether there was probable cause for Plaintiff's arrest and prosecution?

Each of these issues involve questions of law and therefore require *de novo* review.

## Fabrication of Evidence Issues

(1): Whether Defendant can be liable for "fabrication of evidence" where the sworn confession upon which his indictment was based was not fabricated?

(2): Whether district court's "fed confession" theory was actually borne out by the evidence at trial, and whether "feeding a confession" can be the basis for a fabrication of evidence claim?

(3) Whether, based on district court's premise for sustaining the jury's verdict on Plaintiff's fabrication of evidence claim, Defendant is entitled to absolute immunity, as the only way the allegedly "fabricated" evidence could have made its way to a jury was through testimony?

(4) Whether or not Plaintiff can prevail on a due process fabrication of evidence claim through circumstantial evidence alone?

These issues involved questions of law and therefore require *de novo* review. Issue 2 may contain factual questions which are reviewed for clear error.

**Fifth Amendment/Coercion Issues**

(1) Whether a law enforcement officer's mere knowledge that an interviewee is suffering from mental illness is sufficient to find coercion under the Fifth Amendment?

(2) Whether Fifth Amendment coercion can be found in the absence of any evidence of coercive or manipulative tactics?

These issues involve questions of law and are thus reviewed *de novo*.

**Issue Related to All Claims**

(1) Is Defendant-Appellant entitled to qualified immunity on any of the three claims for which he was found liable?

This issue involves issues of law which are reviewed *de novo* and issues of fact which are reviewed for clear error.