# 23-0352

# United States Court of Appeals

*for the*

# Second Circuit

JOSUE ORTIZ,

*Plaintiff-Appellee,*

– v. –

MARK STAMBACH,

*Defendant-Appellant,*

RICHARD WAGSTAFF, MARY GUGLIUZZA, BUFFALO POLICE
DEPARTMENT DOES 1-12, BUFFALO POLICE DEPARTMENT, THE CITY
OF BUFFALO, MARK VAUGHN,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## APPENDIX FOR DEFENDANT-APPELLANT
## Volume 9 (Pages A-1937 to A-2186)

HODGSON RUSS LLP
Peter A. Sahasrabudhe, Esq.
*Attorneys for Defendant-Appellant*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

i

# TABLE OF CONTENTS

**Page**

**Volume 1**

District Court Docket List..........................................  A-1

Amended Complaint, dated March 27, 2019 ............  A-34

Answer to Amended Complaint,
   dated April 15, 2019 ...............................................  A-56

Notice of Motion to Dismiss, dated April 24, 2020...  A-80

Memorandum of Law in Support of Defendants'
   Motion to Dismiss, dated April 24, 2020...............  A-82

Supporting Declaration, dated April 24, 2020 ...........  A-107

   Exhibit A to Declaration -
   Affidavit of Lt. Salvatore Losi,
   sworn to on April 15, 2020...................................  A-112

   Exhibit B to Declaration -
   P-73 of Mark R. Stambach, dated November 16,
   2004, and Notes....................................................  A-114

   Exhibit C to Declaration -
   Plaintiff's Deposition Transcript,
   dated March 15, 2018............................................  A-117

**Volume 2**

   Exhibit D to Declaration -
   Mark Stambach's Deposition Transcript,
   dated January 23, 2019..........................................  A-241

ii

**Page**

**Volume 3**

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019 ...........................................   A-491

Exhibit E to Declaration -
Criminal Case Court Proceedings Notes ...............   A-535

Exhibit F to Declaration -
Plaintiff's Statement and Spanish Miranda Rights
Card .......................................................................   A-539

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019 ...........................................   A-543

**Volume 4**

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019
(Continued) ............................................................   A-741

Exhibit H to Declaration -
P-73 of Mark J. Vaughn, dated November 15,
2004 .......................................................................   A-746

Exhibit I to Declaration -
Indictment ...............................................................   A-748

Exhibit J to Declaration -
Portions of *Huntley* Hearing Transcript Provided
by Plaintiff in Discovery ........................................   A-753

Exhibit K to Declaration -
Answering Affidavit of Assistant District
Attorney Kenneth F. Case,
dated February 22, 2005 .........................................   A-882

iii

**Page**

Exhibit L to Declaration -
Transcripts of Plaintiff's guilty plea on March
22, 2006 and sentencing on June 16, 2006 and
Memorandum and Order Affirming the
Conviction ............................................................... A-889

Exhibit M to Declaration -
Correspondence and Reply to the People's
Opposing Affidavit .................................................. A-913

Exhibit N to Declaration -
Moving Papers and Correspondence Filed in
Opposition to Plaintiff's CPL 440 Motion by the
District Attorney's Office ........................................ A-935

Exhibit O to Declaration -
P-73 of David Sadlocha,
dated November 16, 2004 ........................................ A-976

Exhibit P to Declaration -
Memorandum and Order Deciding *Huntley*
Hearing .................................................................... A-977

Exhibit Q to Declaration -
Mark Stambach Notes,
dated September 30, 2005 ........................................ A-981

**Volume 5**

Exhibit R to Declaration -
Decision & Order Deciding Plaintiff's CPL 440
Motion ..................................................................... A-983

Statement of Undisputed Facts,
dated April 24, 2020 ............................................... A-1056

Declaration of Alan J. Pierce, Esq.,
dated July 3, 2020 .................................................. A-1063

iv

**Page**

Plaintiff's Response to Defendants' Statement of
  Material Facts, dated July 3, 2020 ........................  A-1066

Exhibit 1 to Pierce Declaration -
Orders of Hon. Thomas Franczyk dated
December 9, 2014 and May 8, 2015 in *People v.
Ortiz*, Indictment No. 02630-04 ...........................  A-1069

Exhibit 2 to Pierce Declaration -
Defendants' Response to Plaintiff's First
Interrogatories and First Request for Production
of Documents, dated February 24, 2017 ...............  A-1071

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019 ......................................  A-1091

**Volume 6**

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019
(Continued)............................................................  A-1233

Exhibit 4 to Pierce Declaration -
Transcript of the Deposition of Mary Evans,
taken on January 24, 2019....................................  A-1238

Exhibit 5 to Pierce Declaration -
Documents in Exhibit B, Part 3............................  A-1372

Exhibit 6 to Pierce Declaration -
P-73 Forms Contained in Stambach Deposition
Exhibit 6 ..............................................................  A-1450

v

Page

**Volume 7**

Exhibit 7 to Pierce Declaration -
BPD Synopsis of the Camacho Murder
Investigation ............................................................. A-1473

Exhibit 8 to Pierce Declaration -
Statement of Witness Jexlyn Mary Rosario given
to the BPD on November 12, 2004 ...................... A-1499

Exhibit 9 to Pierce Declaration -
Declaration of Hon. Kenneth Case, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 .............................................................. A-1502

Exhibit 10 to Pierce Declaration -
Declaration of Hon. Frank Sedita, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 .............................................................. A-1505

Exhibit 11 to Pierce Declaration -
Documents in Exhibit B, Parts 1 & 2 .................... A-1512

Exhibit 12 to Pierce Declaration -
Transcript of the Deposition of Dr. Evelyn
Coggins, taken on October 1, 2018 ...................... A-1597

Exhibit 13 to Pierce Declaration -
Defendants' Initial Disclosures,
dated February 24, 2017 ........................................ A-1700

Exhibit 14 to Pierce Declaration -
Josue Ortiz's Verified Claim,
dated May 13, 2015 ............................................... A-1706

**Volume 8**

Exhibit 15 to Pierce Declaration -
Stambach Deposition Exhibits 2 and 17 ............... A-1725

vi

**Page**

Plaintiff's Memorandum of Law in Opposition to
Defendants' Motion to Dismiss, and for
Judgment on the Pleadings and/or Summary
Judgment, dated July 5, 2020 ............................... A-1733

City of Buffalo Department of Law, Exhibit D ......... A-1760

Reply Memorandum of Law in Further Support of
Defendants' Motion to Dismiss,
dated July 24, 2020 ................................................ A-1789

Decision and Order of the Honorable Elizabeth A.
Wolford, dated February 26, 2021 ....................... A-1800

Plaintiffs' Proposed Jury Instructions,
dated April 1, 2022 ................................................ A-1837

Defendants' Proposed Jury Instructions,
dated April 1, 2022 ................................................ A-1861

Plaintiffs' Reply Motions in Limine,
dated April 6, 2022 ................................................ A-1924

Defendant's Objections to Plaintiff's Proposed Jury
Instructions, dated April 6, 2022............................ A-1933

**Volume 9**

Transcript of Proceedings, dated April 11, 2022........ A-1937

Stipulation of Undisputed Facts,
dated April 27, 2022 .............................................. A-1996

Trial Transcript, Preliminary Instructions and
Opening Statements, dated May 3, 2022 ............... A-2001

Trial Transcript, dated May 4, 2022........................... A-2053

vii

                                                                    **Page**

Plaintiff's Witnesses:

    E. Coogins           Direct ......................... A-2054
                                  Cross ........................... A-2116

    J. Ortiz              Direct ......................... A-2125

### Volume 10

Trial Transcript, dated May 4, 2022
    (Cotinued) .............................................. A-2187

    M. Vaughn        Direct ......................... A-2189
                                  Cross ........................... A-2219
                                  Redirect ..................... A-2225

    J. Lonergan       Direct ......................... A-2229
                                  Cross ........................... A-2281
                                  Redirect ..................... A-2284
                                  Recross ...................... A-2287

Trial Transcript, dated May 5, 2022 ...................... A-2297

    M. Stambach     Direct ......................... A-2299
                                    Cross ........................... A-2361
                                  Redirect ..................... A-2384

    J. Ortiz              Direct ......................... A-2393
                                    Cross ........................... A-2426

### Volume 11

Trial Transcript, dated May 6, 2022 ...................... A-2467

    M. Evans          Direct ......................... A-2470
                                    Cross ........................... A-2495

    M. Lauber        Direct ......................... A-2504
                                    Cross ........................... A-2518

Trial Transcript, May 9, 2022 ................................. A-2554

viii

**Page**

| J. Ortiz | Direct | A-2599 |
| | Cross | A-2653 |
| | Redirect | A-2671 |
| | Recross | A-2674 |

Trial Transcript, Closing Arguments, May 9, 2022 ... A-2594

**Volume 12**

Trial Transcript, Closing Arguments, May 9, 2022 (Continued) ............................................................... A-2717

Jury Questionnaire, dated May 9, 2022 ..................... A-2760

Jury Questionnaire, Damages, dated May 9, 2022 .... A-2764

Judgment in a Civil Case, dated May 10, 2022 ......... A-2766

Notice of Motion, by Plaintiff, for Attorneys' Fees, dated May 20, 2022 ................................................. A-2767

Declaration of Wayne C. Felle, Esq., for Plaintiff, in Support of Motion, dated May 20, 2022................ A-2768

Exhibit A to Felle Declaration - Ledger.................................................................... A-2773

Exhibit B to Felle Declaration - Invoices for Services ............................................. A-2792

Plaintiff's Memorandum of Law in Support of his Motion for Attorneys' Fees and Costs, dated May 20, 2023 ................................................. A-2823

Notice of Motion, by Defendant, for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a new trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e), dated June 7, 2022 ................................................. A-2846

ix

**Page**

Declaration of Peter A. Sahasrabudhe, Esq., for
  Defendant, in Support of Motion,
    dated June 7, 2022 ................................................. A-2848

  Exhibit A to Sahasrabudhe Declaration -
  Trial Exhibits Entered by Counsel for
  Plaintiff .................................................................. A-2862

  Exhibit B to Sahasrabudhe Declaration -
  Trial Exhibits Entered by Counsel for
  Defendant ............................................................. A-2909

Memorandum of Law in Support of Motion for
  Judgment as a Matter of Law Under Fed. R. Civ.
  P. 50(b), dated June 7, 2022 .................................... A-2918

Declaration of Peter A. Sahasrabudhe in Opposition
  to Plaintiff's Motion for Attorneys' Fees,
    dated June 10, 2022 .............................................. A-2946

**Volume 13**

Defendants' Memorandum of Law in Opposition to
  Plaintiff's Motion for Attorneys' Fees,
    dated June 10, 2022 .............................................. A-2987

Declaration of Wayne C. Felle, Esq., for Plaintiff, in
  Opposition to Defendant's Post Trial Motion,
    dated June 28, 2022 .............................................. A-3013

Plaintiff's Memorandum of Law in Opposition to
  Defendant's Post Trial Motions,
    dated June 28, 2022 .............................................. A-3023

Reply Memorandum of Law in Further Support of
  Defendant's Motion for Judgment as a Matter of
  Law, a New Trial, or Remittitur,
    dated July 8, 2022 ................................................ A-3071

x

|                                                                                    | Page    |
| ---------------------------------------------------------------------------------- | ------- |
| Decision and Order of the Honorable Elizabeth A. Wolford, dated February 17, 2022 .......................... | A-3090  |
| Transcript of Oral Argument, dated January 31, 2023 .......................................... | A-3112  |
| Notice of Appeal, by Defendant, March 10, 2023 ..... | A-3159  |

```
10:07:10    1                 UNITED STATES DISTRICT COURT

            2                WESTERN DISTRICT OF NEW YORK

            3

            4    - - - - - - - - - - - - - X
                 JOSUE ORTIZ              )        16CV321
            5                  Plaintiff  )
                 vs.
            6                             Rochester, New York
                 MARK STAMBACH,            April 11, 2022
            7                  Defendant.   10:00 a.m.
                 - - - - - - - - - - - - - X
            8    MOTION ARGUMENT

            9

           10              TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                        UNITED STATES MAGISTRATE JUDGE
           11

           12                100 Madison Street
                             Syracuse, NY 13202
           13                    -and-
                             WAYNE C. FELLE, ESQ.
           14                Law Office of Wayne C. Felle, P.C.
                             6024 Main Street
           15                Williamsville, NY 14221

           16

           17                HUGH M. RUSS, III, ESQ.
                             PETER A. SAHASRABUDHE, ESQ.
           18                Hodgson Russ LLP
                             The Guaranty Building
           19                140 Pearl Street, Suite 100
                             Buffalo, New York 14202

           20

           21

           22

           23
                 COURT REPORTER: Karen J. Clark, Official Court Reporter
           24                Karenclark1013@AOL.com
                             100 State Street
           25                Rochester, New York 14614
```

A-1938

2

```
 1                    J. ORTIZ V. M. STAMBACH

 2                  P R O C E E D I N G
                    *           *           *

 3

 4

 5

10:07:11    6            THE COURT:  Judge, we are here in the matter

10:07:13    7    of the Ortiz -- well, actually, Stambach, case No.

10:07:17    8    16-321.  Why don't we have appearances for the record on

10:07:23    9    behalf of the Plaintiff?

10:07:23   10            MR. PIERCE:  Yes, Alan Pierce, Hancock,

10:07:27   11    Estabrook.

10:07:27   12            MR. FELLE:  Wayne Felle appearing from my

10:07:30   13    own firm, Wayne C. Felle, PC.

10:07:33   14            THE COURT:  And on behalf of the Defendant?

10:07:34   15            MR. RUSS:  Good morning, your Honor.  Hugh

10:07:36   16    Russ from Hodgson Russ.  We represent Stambach, the

10:07:40   17    defendant.  Also with me is Peter Sahasrabudhe.

10:07:46   18            THE COURT:  Give me the phonetic.  I know

10:07:49   19    how to spell it, but how do you pronounce it?

10:07:58   20            MR. RUSS:  He is my secret weapon.  He is

10:08:02   21    from Rochester and we're going to wave that in front of

10:08:06   22    Rochester.

10:08:07   23            THE COURT:  Where did you go to high school?

10:08:11   24            MR. SAHASRABUDHE:  I grew up in Rochester,

10:08:20   25    but went to Harley.
```

A-1939

3

|  |  |
|---|---|
|  | 1 |

```
                     J. ORTIZ V. M. STAMBACH
10:08:22    2          THE COURT:  Sahasrabudhe?
10:08:23    3          MR. SAHASRABUDHE:  Yes.
10:08:24    4          THE COURT:  Got it.  We've got a lot we need
10:08:28    5     to talk about this morning.  Let me talk to you about
10:08:31    6     the schedule.  The criminal trial that I mentioned to
10:08:34    7     you, United States versus Baker is still on.  There were
10:08:37    8     some settlement discussions in that case that have not
10:08:44    9     produced any results, and so the last we've heard from
10:08:47   10     the attorneys is that they are anticipating that it's
10:08:51   11     going to go forward as scheduled on May 16.  So, what I
10:08:55   12     would like to do, because I know you all would like
10:09:02   13     clarification, so I plan to start our trial on May 3rd,
10:09:07   14     regardless of whether or not my criminal trial gets
10:09:10   15     resolved or not.  We'll start this trial on Tuesday, May
10:09:14   16     3rd.  And, as I believe was previously communicated, I'm
10:09:27   17     not available the following Tuesday and Wednesday.  What
10:09:30   18     I should say, I'm not available on Tuesday, which I
10:09:34   19     think is the 8th.  I'm pulling up my calendar to double
10:09:38   20     check those dates.  I'm not available on May 10th
10:09:45   21     because I actually have to be in Buffalo that day.  May
10:09:48   22     11th, I am out of pocket, at least in the morning, but
10:09:56   23     if we're running into problems in getting the trial
10:09:58   24     completed, then we could potentially be in session
10:10:02   25     during the afternoon on the 11th, but we'll plan on
```

A-1940

4

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ V. M. STAMBACH |
| 10:10:12 | 2 | going may 3rd, starting on May 3rd and going through the |
| 10:10:14 | 3 | end of that week, and which is the 6th, and picking back |
| 10:10:17 | 4 | up on the 9th down on the 10th, potentially, in session |
| 10:10:21 | 5 | on the afternoon of the 11th, and then, if necessary, in |
| 10:10:26 | 6 | session on the 12th and the 13th.  Any questions from |
| 10:10:31 | 7 | Plaintiff's counsel with respect to that? |
| 10:10:36 | 8 | MR. PIERCE:  No, your Honor. |
| 10:10:36 | 9 | THE COURT:  Defense counsel? |
| 10:10:37 | 10 | MR. RUSS:  No, your Honor, except forgive my |
| 10:10:39 | 11 | ignorance, a typical trial date for you is 9 to 5? |
| 10:10:45 | 12 | THE COURT:  I do it different ways. |
| 10:10:47 | 13 | Sometimes 9 to 5, sometimes just an abbreviated day with |
| 10:10:52 | 14 | no lunch break, but my plan is to go 9 to 5 for this |
| 10:10:56 | 15 | trial day.  The one exception being on the 6th, which is |
| 10:11:00 | 16 | a Friday, we may, depending on the progress we're |
| 10:11:03 | 17 | making, just be in session from 9 to 2 p.m. with no |
| 10:11:07 | 18 | lunch break because of, I mean, I can tell you, not that |
| 10:11:11 | 19 | you care about my schedule that much, but I've got |
| 10:11:15 | 20 | packed calendars on all of these days already that we're |
| 10:11:18 | 21 | going to have to reschedule everything and there is |
| 10:11:21 | 22 | something that I have the afternoon of the 6th, that, if |
| 10:11:25 | 23 | possible, I prefer not to reschedule it, but if I have |
| 10:11:29 | 24 | to, I will.  Any other questions about that? |
| 10:11:39 | 25 | MR. RUSS:  No, your Honor.  I figured we'll |

```
 1                   J. ORTIZ V. M. STAMBACH
 2  figure it out.
 3            THE COURT:  We'll all figure it out.  That
 4  is one thing, so we're clear, I am going to issue orally
 5  a sequestration order, meaning that only the parties can
 6  be present in the courtroom if they are witnesses.  No
 7  other witnesses can be present during any trial
 8  testimony.  So I rely on the attorneys to make sure that
 9  is enforced, because I don't know what your witnesses
10  look like.  So make sure you're aware, if there happens
11  to be somebody who is a witness sitting in here, you
12  need to let me know so that we can have them excused.  I
13  know there is a lot of legal issues that we have to deal
14  with.  So let's go through those.
15            Let's talk, first of all about the
16  Plaintiff's prior convictions.  The Defense is arguing
17  that the conviction from 2016 can come in under 609 and
18  both prior convictions can come in because they are
19  relevant to the issue of damages.  Are we clear, if this
20  Puerto Rico conviction was a felony conviction, my
21  understanding at looking at the papers is the Defendant
22  was sentenced to a year and a half probation.  Is that
23  true?
24            MR. SAHASRABUDHE:  My understanding from the
25  2016 conviction, the reason he was charged with felon in
```

10:11:41
10:11:42
10:11:44
10:11:47
10:11:52
10:11:55
10:11:59
10:12:04
10:12:06
10:12:11
10:12:14
10:12:19
10:12:22
10:12:25
10:12:27
10:12:41
10:12:53
10:12:56
10:13:01
10:13:04
10:13:10
10:13:14
10:13:15
10:13:17

A-1942

6

|   | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 10:13:23 | 2 | possession is because of the conviction in Puerto Rico |
| 10:13:26 | 3 | from before he came to New York, so my understanding is |
| 10:13:29 | 4 | it is a felony. |
| 10:13:32 | 5 | THE COURT:  Okay. |
| 10:13:33 | 6 | MR. FELLE:  Your Honor, if I may.  Excuse |
| 10:13:36 | 7 | me. |
| 10:13:36 | 8 | THE COURT:  You don't have to stand up.  In |
| 10:13:39 | 9 | fact, it's better if you remain seated, that way you |
| 10:13:42 | 10 | make sure you're speaking into the microphone. |
| 10:13:45 | 11 | MR. FELLE:  At that time, there was a great |
| 10:13:47 | 12 | deal of confusion as to whether or not the statute in |
| 10:13:51 | 13 | Puerto Rico would be interpreted as a felony here in the |
| 10:13:56 | 14 | U.S. |
| 10:13:56 | 15 | THE COURT:  You mean at the time of his |
| 10:13:58 | 16 | federal charge being a felon in possession. |
| 10:14:01 | 17 | MR. FELLE:  Correct.  And, in fact, one of |
| 10:14:04 | 18 | the reasons we oppose the admission of that is because |
| 10:14:08 | 19 | Mr. Ortiz, in fact, went to a Walmart store, he did a |
| 10:14:13 | 20 | full background, and he was permitted to have the gun |
| 10:14:16 | 21 | that he had at the time of this charge.  And so that |
| 10:14:19 | 22 | Puerto Rican conviction never showed up in his history |
| 10:14:24 | 23 | at that time.  He was legally permitted to have the gun, |
| 10:14:27 | 24 | which later, when he was charged and there was a further |
| 10:14:30 | 25 | background check, led to the charges.  And so I think if |

A-1943

7

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                    |
| 10:14:34 | 2  | that was to be permitted in this case, it would really     |
| 10:14:37 | 3  | be a trial within a trial.  We'd have to bring in the      |
| 10:14:42 | 4  | federal public defender who represented him at that time   |
| 10:14:43 | 5  | and go through those discussions.  Judge Vilardo had       |
| 10:14:48 | 6  | that case, your Honor, and I think you've seen the         |
| 10:14:50 | 7  | disposition on it.                                         |
| 10:14:51 | 8  | THE COURT:  I did.  The argument that the                  |
| 10:14:55 | 9  | defense makes is that the prior convictions are relevant   |
| 10:15:01 | 10 | to damages, I mean, with respect to the issue of           |
| 10:15:07 | 11 | employability, doesn't that at least, in part, imply       |
| 10:15:13 | 12 | what the Plaintiff presents as truth as to why he is       |
| 10:15:16 | 13 | seeking damages for lack of employability?                 |
| 10:15:22 | 14 | MR. RUSS:  Yes, your Honor.  We anticipate                 |
| 10:15:24 | 15 | that the Plaintiff will claim, not only lost wages, but    |
| 10:15:29 | 16 | also lost future earning ability, and both of those are    |
| 10:15:37 | 17 | dependent, at least, in part, on his history, including    |
| 10:15:42 | 18 | whether he has criminal convictions or not.  So, if, in    |
| 10:15:46 | 19 | fact, the Plaintiff does introduce proof and make a        |
| 10:15:49 | 20 | claim as to past lost wages and future lost earning        |
| 10:15:55 | 21 | capacity, then we would say it is relevant.                |
| 10:16:00 | 22 | THE COURT:  All right.  Here is what I'm                   |
| 10:16:01 | 23 | going to do with the prior convictions.  The 2016          |
| 10:16:04 | 24 | conviction, I will allow that to come into evidence for    |
| 10:16:12 | 25 | impeachment purposes for 609(a).  I think it is,           |

1                    J. ORTIZ V. M. STAMBACH

10:16:16   2    specifically, the date of the offense and the sentence,

10:16:18   3    namely time served, plus three years supervised release.

10:16:21   4    I will not allow in the type of offense, the statutory

10:16:27   5    name.  I find that that would be unfairly prejudicial,

10:16:30   6    subject to the Plaintiff not opening the door.  I mean,

10:16:34   7    in other words, if the Plaintiff tries to get into

10:16:36   8    effects of, I know there is information in your filings

10:16:41   9    as to Judge Vilardo walking off the bench shaking his

10:16:45  10    hand, I'm not sure that is relevant, but, if the

10:16:50  11    Plaintiff wants to get into more specifics about the

10:16:54  12    offense, I would consider an application to allow in the

10:16:57  13    type of offense.  Typically the only information that

10:17:00  14    can come in for prior conviction under 609(1), the type

10:17:05  15    of offense, the date of the offense, and the sentence

10:17:07  16    that was imposed.  I do find that the type of offense

10:17:10  17    here, especially because it, by definition, brings in

10:17:14  18    the other prior alleged felony conviction, I think that

10:17:20  19    would be unfairly prejudicial.  At this point, well,

10:17:23  20    under 609, I'm not going to allow in the Puerto Rico

10:17:28  21    conviction.  It's greater than 10 years old, and I don't

10:17:31  22    believe it has really much probative value, if any, for

10:17:36  23    impeachment purposes, and I do find that that would be

10:17:39  24    unfairly prejudicial.

10:17:41  25                    In terms of the argument that these

A-1945

9

1          J. ORTIZ V. M. STAMBACH

10:17:43   2   convictions are relevant to the issue of damages,

10:17:47   3   subject to hearing what the proof is that the Plaintiff

10:17:51   4   presents, I'm not going to allow these convictions to

10:17:54   5   come in on the issue of damages and I'll give a couple

10:17:57   6   of cites as to what I found particularly persuasive.

10:18:02   7   One case is *Shock v. Ruan Transport Corporation*.  It's

10:18:08   8   an out-of-district case, the cite is 2013 Westlaw

10:18:14   9   12321569 in the Northern District of Indiana.  And, in

10:18:20   10  this case, the argument was that the Plaintiff's prior

10:18:25   11  criminal record was relevant because it goes to the

10:18:30   12  issue of his employability.  And, in that case, at page

10:18:35   13  two, the Court said it is possible to see the relevance

10:18:38   14  of such evidence in theory, but its probative value is

10:18:43   15  extremely low in this actual case given the Defendant's

10:18:46   16  failure to lay any foundation, and that 403 necessary

10:18:50   17  stated the information is not coming into evidence.  It

10:18:54   18  just seems to me it's very speculative to suggest that

10:18:58   19  the Plaintiff's criminal record here, especially this

10:19:02   20  Puerto Rico conviction, somehow diminished his ability

10:19:06   21  to be employed.  Again, we will wait and see what the

10:19:10   22  Plaintiff testifies to and what the proof is with

10:19:13   23  respect to employability.  In terms of the argument that

10:19:20   24  these convictions are relevant for the issue of

10:19:25   25  emotional damages, I found particularly persuasive a

A-1946

10

|       |    | J. ORTIZ V. M. STAMBACH |
|-------|----|-------------------------|
| 10:19:31 | 2  | decision from this district, although it was from a |
| 10:19:35 | 3  | Judge Cogan, who was sitting by designation, the case is |
| 10:19:40 | 4  | *Warney vs. City of Rochester*, 2011 Westlaw 13300297. |
| 10:19:47 | 5  | And in that case, the Court said at page two "The |
| 10:19:55 | 6  | problem with Defendant's argument for diminishment of |
| 10:19:59 | 7  | emotional damages is a matter of degree.  It is true, in |
| 10:20:02 | 8  | an ordinary 1983 case, alleging emotional damages for |
| 10:20:07 | 9  | false imprisonment in which a Defendant is typically |
| 10:20:11 | 10 | imprisoned for a relatively short time period, as he |
| 10:20:16 | 11 | must have had the charges dismissed or been found |
| 10:20:16 | 12 | innocent to proceed with a civil case, evidence of a |
| 10:20:24 | 13 | prior incarceration may be relevant to a damages |
| 10:20:24 | 14 | assessment.  In such a case, the jury may find that the |
| 10:20:30 | 15 | stress and shock of confinement may be decreased by |
| 10:20:34 | 16 | someone who has experienced imprisonment before.  In |
| 10:20:38 | 17 | this unusual case" -- meaning in the *Warney* case -- |
| 10:20:40 | 18 | "however where Plaintiff was convicted of murder and |
| 10:20:43 | 19 | served nearly a decade out of a sentence of twenty five |
| 10:20:47 | 20 | years to life, knowing that he was likely to perish |
| 10:20:52 | 21 | behind bars, a 90-day imprisonment in Monroe County Jail |
| 10:20:52 | 22 | for attempted criminal mischief in the 4th degree is so |
| 10:20:56 | 23 | insignificant in comparison that it becomes irrelevant. |
| 10:21:00 | 24 | And even if it was minimally relevant, it has minimal |
| 10:21:05 | 25 | probative value in comparison to the prejudice." |

A-1947

11

| | | |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:21:10 | 2 | And, I mean, in this case, I don't think for |
| 10:21:13 | 3 | either one of these convictions, there is any evidence |
| 10:21:16 | 4 | that the Plaintiff served any time in custody, or at |
| 10:21:19 | 5 | least any meaningful time in custody, compared to the |
| 10:21:23 | 6 | custody that is at issue in this case.  So, on those |
| 10:21:27 | 7 | grounds, I'm not letting the convictions in for damages |
| 10:21:30 | 8 | purposes, but I will allow the 2016 conviction, subject |
| 10:21:34 | 9 | to my limitations and for impeachment purposes.  Any |
| 10:21:41 | 10 | question from defense counsel about this? |
| 10:21:44 | 11 | MR. RUSS:  No, thank you, your Honor.  I |
| 10:21:45 | 12 | understand. |
| 10:21:45 | 13 | THE COURT:  Any questions from Plaintiff's |
| 10:21:46 | 14 | counsel? |
| 10:21:47 | 15 | MR. PIERCE:  Only, may I get the Westlaw |
| 10:21:52 | 16 | cite for the Shock case again?  I'm sorry, your Honor, I |
| 10:21:55 | 17 | didn't get it fast enough. |
| 10:21:58 | 18 | THE COURT:  2013 Westlaw 12321569. |
| 10:22:07 | 19 | MR. PIERCE:  Thank you. |
| 10:22:07 | 20 | THE COURT:  All right.  Let's talk about the |
| 10:22:09 | 21 | expert witness issues.  I'm going to be very upfront to |
| 10:22:17 | 22 | Plaintiff's counsel.  You have some significant problems |
| 10:22:20 | 23 | here with the expert witness disclosures.  I mean, we'll |
| 10:22:25 | 24 | walk through each expert.  But there are some |
| 10:22:28 | 25 | significant problems.  My plan is to issue a written |

A-1948

12

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                      |
| 10:22:31 | 2  | decision on this because, I'll hear argument, but there      |
| 10:22:38 | 3  | is a likelihood that many of these experts are not going     |
| 10:22:41 | 4  | to be permitted to testify based on what I've read in        |
| 10:22:44 | 5  | the papers.  But let's go through each one of them.          |
| 10:22:48 | 6  | Let's talk about Rachel Duchon first.  So                    |
| 10:22:54 | 7  | she has never been disclosed until March 25, 2022.           |
| 10:23:01 | 8  | There is no explanation in the papers by Plaintiff's         |
| 10:23:04 | 9  | counsel as to the reason for the late disclosure.  Do        |
| 10:23:12 | 10 | you have an explanation?                                      |
| 10:23:18 | 11 | MR. PIERCE:  You may be able to address it.                  |
| 10:23:19 | 12 | My first reaction, what I said in the papers, she was        |
| 10:23:24 | 13 | just hired.  I know that doesn't comply with the idea        |
| 10:23:27 | 14 | that we were supposed to do expert disclosure, I             |
| 10:23:30 | 15 | believe, in early 2020 was the deadline.  I think Mr.        |
| 10:23:33 | 16 | Felle can address it, perhaps, better.                       |
| 10:23:37 | 17 | MR. FELLE:  Thank you, your Honor.  So, Ms.                  |
| 10:23:40 | 18 | Duchon is an expert hired for the purposes of projecting     |
| 10:23:43 | 19 | a future medical needs and costs associated with them.      |
| 10:23:47 | 20 | THE COURT:  I know who she is, I know what                   |
| 10:23:50 | 21 | her purpose is.  But why was it that she was not             |
| 10:23:56 | 22 | retained, and, therefore, not disclosed in until March      |
| 10:23:58 | 23 | 25, 2022?                                                    |
| 10:24:00 | 24 | MR. FELLE:  I think it's a combination of a                  |
| 10:24:04 | 25 | number of things, your Honor.  Obviously we had Covid        |

A-1949

13

```
             1              J. ORTIZ V. M. STAMBACH

10:24:07     2   and we had some limitations with communication for quite

10:24:09     3   a while.

10:24:09     4              THE COURT:  Wait a minute.  The expert

10:24:12     5   witness deadline was early 2020 before Covid existed.

10:24:17     6              MR. FELLE:  Your Honor, I'll also add that

10:24:18     7   the subject of the subject matter to which she was going

10:24:22     8   to testify was disclosed to counsel well before 2022.

10:24:26     9   We had mediation sessions with Mr. Maynard and demand

10:24:30    10   and settlement discussions wherein we provided

10:24:34    11   documentation, which included projected medical costs

10:24:39    12   for Mr. Ortiz and his needs.  It's not that they had no

10:24:42    13   notice we were asserting the things.  I think they are

10:24:47    14   objecting to the formality of a particular expert being

10:24:52    15   disclosed.  But they were certainly aware years ago of

10:24:55    16   the subject matter and the projection and cost.

10:24:57    17              THE COURT:  All right.  Defense counsel.

10:25:01    18              MR. RUSS:  Yes, your Honor.  First of all, I

10:25:02    19   would say, I can't personally attest to the mediation

10:25:10    20   because we weren't handling the case at that time.  I am

10:25:14    21   told by former counsel that no such disclosure was ever

10:25:20    22   made.  But even that being the case, if there was

10:25:25    23   disclosure made of some numbers in the course of

10:25:28    24   mediation, that is not expert disclosure as contemplated

10:25:33    25   by the law.  And the problem that we have is that we
```

A-1950

14

|          |    | J. ORTIZ V. M. STAMBACH |
|----------|----|-------------------------|
| 10:25:40 | 2  | can't prepare to evaluate something that we don't have. |
| 10:25:43 | 3  | THE COURT:  Have you received any report |
| 10:25:45 | 4  | even up to this point? |
| 10:25:46 | 5  | MR. RUSS:  No, your Honor. |
| 10:25:46 | 6  | THE COURT:  Okay. |
| 10:25:50 | 7  | MR. RUSS:  And the other problem is we can't |
| 10:25:52 | 8  | evaluate if we need some kind of expert to rebut this. |
| 10:25:55 | 9  | THE COURT:  I'm not letting any testimony |
| 10:25:57 | 10 | from Ms. Duchon.  The expert disclosure requirements |
| 10:26:02 | 11 | clearly were not complied with.  There is a reason for |
| 10:26:05 | 12 | the rules.  There is a reason for court deadlines.  And |
| 10:26:08 | 13 | as I said, I'll be issuing a written decision with |
| 10:26:11 | 14 | respect to all of this, but she cannot testify. |
| 10:26:15 | 15 | Now, with respect to Mr. Redlich, has there |
| 10:26:20 | 16 | been any supplemental report up to this point? |
| 10:26:23 | 17 | MR. RUSS:  No, your Honor. |
| 10:26:24 | 18 | THE COURT:  So, the extent of the disclosure |
| 10:26:27 | 19 | for Mr. Redlich is in the so-called of -- it's, well, I |
| 10:26:38 | 20 | think it's in a couple different places in the filings, |
| 10:26:40 | 21 | but one place is docket 111-2 at page 34.  I mean, I |
| 10:26:51 | 22 | think the Plaintiff's counsel, counsel is calling it a |
| 10:26:56 | 23 | summary report, I don't think it's called that.  It's, I |
| 10:26:59 | 24 | guess, three pages, and it says "general data sheet for" |
| 10:27:03 | 25 | -- how do you pronounce your client's first name? |

A-1951

15

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ V. M. STAMBACH |
| 10:27:08 | 2 | MR. FELLE:  Josue. |
| 10:27:09 | 3 | THE COURT:  General data sheet for Josue |
| 10:27:13 | 4 | Ortiz. |
| 10:27:14 | 5 | MR. FELLE:  Judge, are you referring to |
| 10:27:18 | 6 | Professor Reiber? |
| 10:27:18 | 7 | THE COURT:  Yes. |
| 10:27:20 | 8 | MR. FELLE:  You said Professor Redlich. |
| 10:27:23 | 9 | THE COURT:  I'm sorry, I'm referring to |
| 10:27:26 | 10 | Reiber. |
| 10:27:26 | 11 | MR. FELLE:  Reiber, correct. |
| 10:27:26 | 12 | THE COURT:  So, has there been any |
| 10:27:28 | 13 | supplemental report from Professor Reiber, that is what |
| 10:27:33 | 14 | I meant to ask defense counsel. |
| 10:27:35 | 15 | MR. RUSS:  No, your Honor, there has not. |
| 10:27:36 | 16 | THE COURT:  So, the extent of what was |
| 10:27:37 | 17 | produced, I want to make sure everybody agrees, the |
| 10:27:41 | 18 | extent of what was produced through Professor Reiber are |
| 10:27:46 | 19 | these three pages. |
| 10:27:47 | 20 | MR. PIERCE:  We provided during expert |
| 10:27:51 | 21 | disclosure, and I don't have the full disclosure, a |
| 10:27:54 | 22 | summary document that I think was four pages, and then I |
| 10:27:58 | 23 | sent it again more recently.  I have it as four pages, |
| 10:28:03 | 24 | not three, but I could be wrong. |
| 10:28:04 | 25 | THE COURT:  Okay.  I wasn't including the |

A-1952

16

                        J. ORTIZ V. M. STAMBACH

10:28:08   2   telefax cover memorandum, which is nothing of any

10:28:11   3   substance.

10:28:11   4               MR. PIERCE:  I didn't bring that with me.

10:28:13   5               THE COURT:  I mean, in other words, as I

10:28:16   6   think we all know, Rule 26 requires a signed report,

10:28:21   7   requires a CV, requires information about prior

10:28:24   8   testimony, requires a whole host of information.  All

10:28:29   9   that I'm seeing that was produced for Professor Reiber

10:28:32  10   was these four pages, one of which is just a telefax

10:28:37  11   cover memorandum, and then the expert witness

10:28:42  12   identification was made where he was listed and it just

10:28:47  13   says, "report on lost income, diminished economic

10:28:52  14   capacity to be provided.  Summary of report is attached

10:28:54  15   hereto."  And that is from January 15, 2020.  Was there

10:28:59  16   anything else that has ever been provided from Professor

10:29:04  17   Reiber?

10:29:08  18               MR. FELLE:  Yes, your Honor.  So he did a

10:29:10  19   revised version of that in 2020.  That was turned over.

10:29:15  20   Disclosure was also made, so --

10:29:18  21               THE COURT:  Wait a minute, where is that?

10:29:21  22   Where is that in your filings?

10:29:23  23               MR. FELLE:  I'm not sure what was filed.

10:29:25  24               THE COURT:  You have to be sure what was

10:29:27  25   filed, Mr. Felle.  I'm just trying to confirm what has

A-1953

17

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 10:29:32 | 2 | been produced with respect to Professor Reiber.  And |
| 10:29:36 | 3 | what I have in front of me in this record is Plaintiff's |
| 10:29:41 | 4 | expert witness identification from January 15, 2020 |
| 10:29:46 | 5 | where he is listed, and it just says what I just read |
| 10:29:49 | 6 | into the record, and then I've got a four-page document |
| 10:29:55 | 7 | that says "general data sheet for Josue Ortiz.  Is there |
| 10:30:02 | 8 | anything else that was produced? |
| 10:30:27 | 9 | MR. FELLE:  So, your Honor, to the issue of |
| 10:30:29 | 10 | whether or not counsel was aware of Professor Reiber's |
| 10:30:33 | 11 | calculations and the process by which he made the |
| 10:30:35 | 12 | calculations, I would suggest that in. |
| 10:30:37 | 13 | THE COURT:  You're not answering my |
| 10:30:38 | 14 | question. |
| 10:30:39 | 15 | MR. FELLE:  They were given notification of |
| 10:30:40 | 16 | this. |
| 10:30:41 | 17 | THE COURT:  How?  How were they given |
| 10:30:43 | 18 | notification of, other than what I've just described, is |
| 10:30:46 | 19 | there any other written documentation that has been |
| 10:30:48 | 20 | produced for Professor Reiber? |
| 10:30:51 | 21 | MR. FELLE:  Yes. |
| 10:30:52 | 22 | THE COURT:  Where is it? |
| 10:30:53 | 23 | MR. FELLE:  So, parallel to this case is an |
| 10:30:56 | 24 | 8(b) case in state court.  We were also working with |
| 10:30:59 | 25 | city counsel at that time, and we did disclose Professor |

A-1954

18

|  |  |  |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:31:03 | 2 | Reiber at various times, including his full CV and |
| 10:31:07 | 3 | including his various calculations. |
| 10:31:09 | 4 | THE COURT:  Where is there proof of that |
| 10:31:14 | 5 | disclosure to defense counsel?  You have a motion to |
| 10:31:17 | 6 | prevent Professor Reiber from testifying.  Now is the |
| 10:31:22 | 7 | time for you to come forward in response to that motion |
| 10:31:25 | 8 | demonstrating you complied with Rule 26.  There is |
| 10:31:28 | 9 | nothing in the papers in front of me suggesting that. |
| 10:31:30 | 10 | The papers in front of me clearly demonstrate that Rule |
| 10:31:34 | 11 | 26 was not complied with.  But you're telling me that |
| 10:31:38 | 12 | there had been other written disclosures made on |
| 10:31:45 | 13 | Professor Reiber. |
| 10:31:45 | 14 | MR. FELLE:  To the City of Buffalo. |
| 10:31:47 | 15 | THE COURT:  No, I'm talking about to Mr. |
| 10:31:50 | 16 | Stambach's attorneys. |
| 10:31:52 | 17 | MR. PIERCE:  They were one in the same.  The |
| 10:31:54 | 18 | City of Buffalo attorneys were the attorneys for all of |
| 10:31:57 | 19 | the defendants. |
| 10:31:58 | 20 | THE COURT:  But in this case, you produced |
| 10:32:01 | 21 | further written disclosures concerning Professor Reiber. |
| 10:32:06 | 22 | MR. FELLE:  Correct, your Honor. |
| 10:32:07 | 23 | THE COURT:  But you decided not to include |
| 10:32:09 | 24 | those in your motion response. |
| 10:32:12 | 25 | MR. FELLE:  I'm not sure why they were not |

A-1955

19

|   |   |   |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:32:15 | 2 | included, your Honor. |
| 10:32:16 | 3 | THE COURT:  Who prepared the response? |
| 10:32:18 | 4 | MR. PIERCE:  I did, your Honor. |
| 10:32:23 | 5 | THE COURT:  Were you aware of -- |
| 10:32:27 | 6 | MR. PIERCE:  Generally, perhaps, I would ask |
| 10:32:29 | 7 | the Court to allow them and I apologize that we didn't |
| 10:32:32 | 8 | here.  It's just some of the miscommunication and that |
| 10:32:39 | 9 | we provide it and that you reserve your decision |
| 10:32:44 | 10 | regarding -- |
| 10:32:44 | 11 | THE COURT:  You keep saying in the papers, |
| 10:32:45 | 12 | the supplemental report is coming any day.  You don't |
| 10:32:49 | 13 | have a supplemental report at this point? |
| 10:32:52 | 14 | MR. PIERCE:  Not as of this year, no. |
| 10:32:55 | 15 | THE COURT:  Well, I mean, it looks as though |
| 10:32:59 | 16 | what was produced goes to 2015, and this was produced in |
| 10:33:03 | 17 | 2020.  I mean, the timing under the federal rules is in |
| 10:33:07 | 18 | a supplement, obviously, can't cure an inadequate |
| 10:33:11 | 19 | initial disclosure of an expert witness.  But, even if |
| 10:33:15 | 20 | you do provide a supplement, it has to be 30 days before |
| 10:33:19 | 21 | trial.  We're past that at this point under the federal |
| 10:33:22 | 22 | rules. |
| 10:33:24 | 23 | From defense counsel's perspective, what do |
| 10:33:26 | 24 | you have in the file?  What is your understanding as to |
| 10:33:30 | 25 | what has been produced with respect to Professor Reiber? |

A-1956

20

| | | |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:33:34 | 2 | MR. RUSS:  All that has been produced, your |
| 10:33:36 | 3 | Honor, is the four pages which you have described on the |
| 10:33:39 | 4 | record. |
| 10:33:39 | 5 | THE COURT:  And the expert witness |
| 10:33:40 | 6 | disclosure? |
| 10:33:41 | 7 | MR. RUSS:  Right, but none of the items |
| 10:33:44 | 8 | required under the rules that you elaborated a few |
| 10:33:48 | 9 | minutes ago. |
| 10:33:49 | 10 | THE COURT:  All right.  I'll reserve |
| 10:33:52 | 11 | decision subject to Plaintiff's counsel demonstrating to |
| 10:33:55 | 12 | me that you have produced further information for |
| 10:33:59 | 13 | Professor Reiber.  If it's only this four-page summary |
| 10:34:02 | 14 | report, I'm not going to let him testify because it |
| 10:34:04 | 15 | clearly doesn't comply with Rule 26.  If there is proof, |
| 10:34:08 | 16 | proof, I don't mean a memo of law saying it, I want |
| 10:34:12 | 17 | proof, either a cover letter or affidavit or what have |
| 10:34:16 | 18 | you, that there has been additional disclosure provided |
| 10:34:20 | 19 | for Professor Reiber, I'll take a look at it and let |
| 10:34:28 | 20 | defense counsel respond. |
| 10:34:31 | 21 | And then in terms of Ms. Redlich? |
| 10:34:34 | 22 | MR. PIERCE:  Yes, Ms. |
| 10:34:35 | 23 | THE COURT:  There clearly seems to be a |
| 10:34:38 | 24 | factual dispute about what was produced.  So the January |
| 10:34:44 | 25 | 15, 2020, the deadline for expert disclosure, there is a |

A-1957

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                      |
| 10:34:50 | 2  | written document that is filed that says the report --       |
| 10:34:58 | 3  | well, I'll read it.  "The report to be provided."  But,      |
| 10:35:02 | 4  | according to defense counsel, there is no report.  Have      |
| 10:35:06 | 5  | you confirmed that with Ms. Huggins?  Ms. Huggins?           |
| 10:35:11 | 6  | MR. RUSS:  Yes May Huggins.  There has been          |
| 10:35:14 | 7  | nothing no supplemental report produced beyond what was      |
| 10:35:18 | 8  | originally was in 2020.                                      |
| 10:35:20 | 9  | THE COURT:  Which is the CV, it looks like,          |
| 10:35:22 | 10 | that was provided?                                          |
| 10:35:24 | 11 | MR. RUSS:  Right.                                    |
| 10:35:24 | 12 | THE COURT:  But, and, in other words, you            |
| 10:35:27 | 13 | confirmed with Ms. Huggins, that she never received a       |
| 10:35:30 | 14 | report after disclosure of the January 15, 2020 expert      |
| 10:35:35 | 15 | identification.                                             |
| 10:35:36 | 16 | MR. RUSS:  That's correct, your Honor.               |
| 10:35:36 | 17 | THE COURT:  And in the Plaintiff's response,         |
| 10:35:41 | 18 | I want to read it and cite.  It's docket 118 at page 11,     |
| 10:36:02 | 19 | it's stated, and I'm quoting, "Thereafter, the January       |
| 10:36:05 | 20 | 24, 2020 expert report of Dr. Allison Redlich, which         |
| 10:36:11 | 21 | fully and completely complied with Rule 26(a)(2)(B), was     |
| 10:36:16 | 22 | provided to Attorney Huggins," and there is a reference      |
| 10:36:20 | 23 | to exhibit 5, which I think was intended to be exhibit       |
| 10:36:23 | 24 | 6, and there is a report that is dated January 24, 2020      |
| 10:36:28 | 25 | that apparently was sent to Mr. Felle.  Do you have the      |

A-1958

22

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 10:36:32 | 2 | proof that this was served on defense counsel? |
| 10:36:37 | 3 | MR. FELLE:  Absolutely was. |
| 10:36:38 | 4 | THE COURT:  What is your proof? |
| 10:36:40 | 5 | MR. FELLE:  It was an exhibit in our summary |
| 10:36:42 | 6 | judgment motion, it was filed before that filing.  And |
| 10:36:44 | 7 | it was certainly served on the City of Buffalo through |
| 10:36:47 | 8 | the filing of our papers in response to the state court |
| 10:36:51 | 9 | action on the 8(b) matter to Judge Hudson.  So they |
| 10:36:55 | 10 | clearly would have had her report, Professor Redlich's |
| 10:37:01 | 11 | report.  In fact, her report is a cornerstone of the |
| 10:37:05 | 12 | Plaintiff's arguments in that motion. |
| 10:37:07 | 13 | THE COURT:  What motion? |
| 10:37:08 | 14 | MR. FELLE:  There was a motion for summary |
| 10:37:11 | 15 | judgment on the state court 8(b). |
| 10:37:15 | 16 | THE COURT:  Not in this litigation. |
| 10:37:16 | 17 | MR. FELLE:  Yes, but counsel was the same. |
| 10:37:19 | 18 | THE COURT:  But if you have a case in |
| 10:37:21 | 19 | Federal Court, you need to comply with the Federal Rules |
| 10:37:26 | 20 | of Civil Procedure, you need to comply with Judge |
| 10:37:26 | 21 | Scott's deadlines.  Providing disclosures in another |
| 10:37:30 | 22 | litigation doesn't necessarily satisfy that. |
| 10:37:33 | 23 | MR. PIERCE:  Your Honor, I sent Professor |
| 10:37:37 | 24 | Redlich's report to Ms. Huggins. |
| 10:37:40 | 25 | THE COURT:  And do you have a cover letter? |

A-1959

23

```
          1                    J. ORTIZ V. M. STAMBACH

10:37:43  2            MR. PIERCE:  I don't believe there is a

10:37:45  3   cover letter, I've looked.

10:37:47  4            THE COURT:  Do you have any proof that you

10:37:48  5   did that an affidavit of service, certificate of

10:37:51  6   service?

10:37:51  7            MR. PIERCE:  Well, I did not do one at the

10:37:54  8   time because I didn't think it was necessary.  I didn't

10:37:56  9   file anything, obviously, since I'm sending it.  I know

10:38:00 10   it was mailed to her.

10:38:03 11            THE COURT:  How do you know that?

10:38:05 12            MR. PIERCE:  I know it because I worked with

10:38:06 13   my assistant to send it out after we got it on January

10:38:11 14   24th, knowing that we had just done our expert

10:38:14 15   disclosure on the 15th.  That assistant is no longer at

10:38:19 16   the firm.  I've spoken to her, and we both concur it was

10:38:23 17   mailed, we're not sure which one of us.

10:38:24 18            THE COURT:  You didn't use a cover letter?

10:38:26 19   I mean, you just put a report in the mail without a

10:38:29 20   cover letter?  Don't interrupt me, please.  You put a

10:38:34 21   report in the mail with no cover letter?

10:38:36 22            MR. PIERCE:  I haven't found one at this

10:38:38 23   point, your Honor.

10:38:38 24            THE COURT:  Don't you keep a chron file for

10:38:41 25   all correspondence in the case?
```

```
              1              J. ORTIZ V. M. STAMBACH

10:38:44      2              MR. PIERCE:  I do not print most of those

10:38:47      3    things, they are in my World DOCS file on my computer.

10:38:50      4    I don't do a lot of printing of paper.

10:38:52      5              THE COURT:  Have you looked for any proof of

10:38:57      6    electronic documents of serving this report?

10:39:00      7              MR. PIERCE:  I have looked.

10:39:01      8              THE COURT:  And do you have any?

10:39:02      9              MR. PIERCE:  I haven't found one, but I'm

10:39:04     10    stating to the Court what I would write in an affidavit

10:39:08     11    or certificate of service that I would mail it.

10:39:11     12              THE COURT:  It should have been included in

10:39:13     13    an affidavit to me as opposed to a memo of law.  The

10:39:19     14    state court litigation where you're indicating that this

10:39:22     15    report was attached went to a summary judgment motion,

10:39:26     16    when did that occur?

10:39:35     17              MR. FELLE:  I don't know offhand.  I don't

10:39:36     18    want to misrepresent to the Court.  But I want to say,

10:39:39     19    to the best of my knowledge, the end of 2000 to 2001,

10:39:47     20    that matter has gone to appeal in the Fourth Department

10:39:50     21    and a decision has been rendered.  That tells me it's

10:39:53     22    been well over a year.

10:39:57     23              THE COURT:  And defense counsel, you're

10:39:59     24    indicating it's not in the file, correct?

10:40:01     25              MR. RUSS:  That's correct, your Honor.  And
```

A-1961

25

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 10:40:03 | 2 | the other thing I would say is that, even if the report |
| 10:40:08 | 3 | had been mailed in January of 2020, it would not satisfy |
| 10:40:14 | 4 | the requirements of the federal rules in terms of |
| 10:40:17 | 5 | everything that has to be given for expert disclosure, |
| 10:40:20 | 6 | prior testimony, et cetera. |
| 10:40:23 | 7 | THE COURT:  Well, I think, if we get into |
| 10:40:27 | 8 | the substance of the report, I think there are some |
| 10:40:29 | 9 | issues with respect to the report.  I think there is |
| 10:40:32 | 10 | some question as to whether or not all of the testimony |
| 10:40:37 | 11 | would be admissible.  I think there is some significant |
| 10:40:41 | 12 | Daubert issues with respect to the testimony.  But I |
| 10:40:45 | 13 | think the first issue we have to figure out is whether |
| 10:40:47 | 14 | or not it was provided.  The deadline to provide expert |
| 10:40:52 | 15 | witness discovery was January 15.  That clearly wasn't |
| 10:40:56 | 16 | provided by January 15, but counsel seems to be |
| 10:41:00 | 17 | suggesting, shortly thereafter, within a matter of a |
| 10:41:03 | 18 | week, it was mailed.  But I'm going to need further |
| 10:41:07 | 19 | supplemental papers from Plaintiff's counsel on this, |
| 10:41:10 | 20 | affidavits, sworn affidavits, attesting when it was |
| 10:41:15 | 21 | served, how it was served, when it was provided in the |
| 10:41:19 | 22 | state court litigation in terms of any additional |
| 10:41:24 | 23 | so-called notice, and I'll let the defense respond to |
| 10:41:27 | 24 | that.  And if I ultimately don't preclude it on |
| 10:41:32 | 25 | timeliness grounds, then we're going to need to decide |

A-1962

26

|  |  |
|---|---|
| | 1 |

                        J. ORTIZ V. M. STAMBACH

10:41:36  2   what, if any, part of it ends up being admissible.

10:41:44  3                 MR. RUSS:  Thank you, your Honor.

10:41:45  4                 THE COURT:  Okay.  Let's talk about the

10:41:48  5   medical experts then.  It looks to me as though Dr.

10:41:56  6   Joseph and Dr. Coggins are not treating physicians.  Am

10:42:02  7   I understanding that correctly?

10:42:05  8                 MR. FELLE:  I can speak to that issue if you

10:42:07  9   would like.

10:42:08  10                 THE COURT:  Sure.

10:42:08  11                 MR. FELLE:  So with respect to each of them,

10:42:11  12   Doctors Joseph and Dr. Coggins, were hired by the Erie

10:42:18  13   County District Attorney's Office to provide forensic

10:42:23  14   examinations to assure his mental health at trial.

10:42:26  15                 THE COURT:  They are not treating

10:42:29  16   physicians?

10:42:30  17                 MR. FELLE:  Dr. Coggins treated him for

10:42:33  18   months.

10:42:34  19                 THE COURT:  She treated him?

10:42:35  20                 MR. FELLE:  She actively treated him,

10:42:38  21   oversaw the pharmaceutical and medication

10:42:42  22   administration.  Her testimony, we have taken her

10:42:45  23   deposition testimony.

10:42:46  24                 THE COURT:  In this case?

10:42:47  25                 MR. FELLE:  Yes, in this case years and

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                      |
| 10:42:48 | 2  | years ago.                                                   |
| 10:42:48 | 3  | THE COURT:  Let's deal --                                    |
| 10:42:50 | 4  | MR. FELLE:  Ms. Huggins was present for that                 |
| 10:42:54 | 5  | deposition.                                                  |
| 10:42:56 | 6  | THE COURT:  Do not interrupt me.  Dr.                        |
| 10:42:57 | 7  | Joseph, he is not a treating physician, correct?             |
| 10:42:59 | 8  | MR. FELLE:  He also performed, at the                        |
| 10:43:01 | 9  | court's direct, a competency examination of Mr. Ortiz at     |
| 10:43:03 | 10 | the time of his arrest.                                       |
| 10:43:03 | 11 | THE COURT:  That is a not a treating                         |
| 10:43:05 | 12 | physician.  A treating physician is somebody that            |
| 10:43:07 | 13 | provides medical care to somebody.  Somebody who             |
| 10:43:11 | 14 | performs a competency examination for purposes of            |
| 10:43:16 | 15 | testifying at a trial or certifying whether or not           |
| 10:43:18 | 16 | somebody is competent to go to trial is not a treating       |
| 10:43:22 | 17 | physician.                                                   |
| 10:43:22 | 18 | MR. FELLE:  Your Honor, are you done?                        |
| 10:43:24 | 19 | THE COURT:  Yes.                                             |
| 10:43:24 | 20 | MR. FELLE:  I would argue that in the scope                  |
| 10:43:27 | 21 | of an expert, somebody hired by a party to an action, in     |
| 10:43:33 | 22 | that scope, he is not an expert because he was involved      |
| 10:43:36 | 23 | in this case at its inception when Mr. Ortiz was             |
| 10:43:40 | 24 | arrested.  He has firsthand knowledge from his               |
| 10:43:45 | 25 | examination, his clinical findings with Mr. Ortiz well       |

A-1964

28

|  |  |
|---|---|
| | 1 |

J. ORTIZ V. M. STAMBACH

10:43:50  2   before this action ever started.  So, the definition of

10:43:54  3   "treatment provider" is a little different, and I'm sure

10:43:57  4   we can agree on that, so I'm not sure what the Court is

10:44:00  5   asking, but I would say that he was involved in this

10:44:03  6   case well before this action was instituted, which I

10:44:05  7   believe could be interpreted more as a treatment

10:44:09  8   provider than an expert witness.

10:44:11  9            THE COURT:  But it looks as though you had a

10:44:13  10   report from him back in March of 2019 that was never

10:44:16  11   produced?

10:44:17  12            MR. PIERCE:  Because I called him a treating

10:44:20  13   physician in our expert disclosure, and we were not

10:44:22  14   called on that by the defense.

10:44:24  15            THE COURT:  It's not the defense -- look it,

10:44:26  16   you have got to comply with the federal rules.  You have

10:44:28  17   to provide the expert disclosure.  I don't disagree that

10:44:33  18   it would have been preferable for these issues to be

10:44:36  19   raised by defense counsel before now.  But just because

10:44:40  20   they were not, doesn't give you an excuse not to comply

10:44:44  21   with the federal rules.  So, in your expert disclosure,

10:44:49  22   what was said was that you were not providing -- I want

10:44:55  23   to make sure I quote it correctly.  You said, "Plaintiff

10:45:01  24   identifies the following expert witnesses who are

10:45:05  25   treating physicians or medical care providers."  So, I

A-1965

29

|        |    |                                                       |
|--------|----|-------------------------------------------------------|
|        | 1  | J. ORTIZ V. M. STAMBACH                               |
| 10:45:09 | 2 | guess, I don't know that I necessarily interpreted that |
| 10:45:15 | 3 | that you were saying that they were -- you were saying |
| 10:45:19 | 4 | they are treating physicians or medical care providers, |
| 10:45:23 | 5 | which isn't necessarily one in the same.  But either |
| 10:45:26 | 6 | way, it looks from Dr. Joseph's report that is attached |
| 10:45:31 | 7 | now, that he has only examined Mr. Ortiz on one or two |
| 10:45:36 | 8 | occasions to provide an opinion, right?               |
| 10:45:46 | 9 | MR. PIERCE:  He is seeing him again,                  |
| 10:45:47 | 10 | correct?                                             |
| 10:45:48 | 11 | MR. FELLE:  I apologize, your Honor.  So,            |
| 10:45:50 | 12 | again, Dr. Joseph saw Mr. Ortiz at the request of the |
| 10:45:54 | 13 | district attorney's office back at the time of his   |
| 10:45:57 | 14 | arrest.  Since his release, Dr. Joseph has again seen |
| 10:46:01 | 15 | Mr. Ortiz and has provided reports relative to his   |
| 10:46:06 | 16 | findings in those cases.                             |
| 10:46:07 | 17 | THE COURT:  Reports or report?  Do you have          |
| 10:46:09 | 18 | more than one report?                                |
| 10:46:11 | 19 | MR. FELLE:  I believe the initial report             |
| 10:46:13 | 20 | that he performed for competency sake was provided, that |
| 10:46:18 | 21 | is way back in 2004.  And then subsequent to Mr. Ortiz's |
| 10:46:23 | 22 | release, he has seen him again.  And that is the report |
| 10:46:26 | 23 | that we're referring to.                             |
| 10:46:27 | 24 | THE COURT:  The March 25, 2019 report says          |
| 10:46:30 | 25 | "Mr. Ortiz was interviewed at my office on March 12, |

A-1966

30

|         |    |                                                      |
|---------|----|------------------------------------------------------|
|         | 1  | J. ORTIZ V. M. STAMBACH                              |
| 10:46:34 | 2  | 2019 now for the second time." That says to me he is |
| 10:46:39 | 3  | not treating him. I mean, has he subsequently been   |
| 10:46:42 | 4  | treating him?                                        |
| 10:46:45 | 5  | MR. FELLE: Well, I believe that report               |
| 10:46:47 | 6  | represents his clinical findings from that meeting,  |
| 10:46:50 | 7  | which it was a treatment appointment, it wasn't -- it |
| 10:46:55 | 8  | was an appointment like it would be for any other    |
| 10:46:57 | 9  | doctor. He went there for treatment for his medical  |
| 10:47:00 | 10 | condition.                                            |
| 10:47:03 | 11 | THE COURT: Okay. And then you're saying              |
| 10:47:05 | 12 | that Dr. Coggins was deposed in this case by the defense |
| 10:47:11 | 13 | counsel?                                              |
| 10:47:11 | 14 | MR. FELLE: Absolutely, your Honor.                   |
| 10:47:12 | 15 | THE COURT: Was she the only expert that was          |
| 10:47:15 | 16 | deposed?                                              |
| 10:47:15 | 17 | MR. FELLE: Well, your Honor, I don't know            |
| 10:47:18 | 18 | if she was an expert. She was deposed as to her      |
| 10:47:22 | 19 | interactions with Mr. Ortiz at the time of his arrest. |
| 10:47:26 | 20 | Through the whole purpose of this case, he was going |
| 10:47:28 | 21 | through a psychotic break and he needed medication and |
| 10:47:32 | 22 | oversight for the psychotropic medications for which Dr. |
| 10:47:37 | 23 | Coggins filled that need.                            |
| 10:47:38 | 24 | THE COURT: So you're not having her testify         |
| 10:47:39 | 25 | as an expert witness? You want her to testify as a fact |

A-1967

31

```
            1                    J. ORTIZ V. M. STAMBACH
10:47:42    2   witness?
10:47:43    3                    MR. FELLE:  I think she can still render
10:47:47    4   opinions, but, yes.
10:47:48    5                    THE COURT:  Look it, the law that you cite
10:47:50    6   in your expert witness disclosure is not the correct
10:47:54    7   law.  Rule 701, which applies to lay witness opinions
10:47:57    8   was amended in 2000.  So if, in fact, you're going to
10:48:03    9   have a so-called expert witness testify, even if they
10:48:07   10   are a treating physician, there has to be compliance
10:48:11   11   with Rule 26.  If they are going to be an expert witness
10:48:16   12   who testifies based as a treating physician, but they
10:48:21   13   are go being to provide expert witness testimony, you
10:48:23   14   still have to comply with 26(a)(2)(C).  If they are
10:48:29   15   going to testify simply as a treating physician, as a
10:48:33   16   fact witness, without providing expert witness
10:48:36   17   testimony, then there could be an argument that you
10:48:40   18   don't have to comply with Rule 26, that the medical
10:48:44   19   records that are disclosed through HIPAA authorizations
10:48:48   20   could provide a basis for any fact testimony.  But if
10:48:58   21   you're going to seek to have an expert or any kind of
10:49:01   22   medical professional, whether a treating physician or
10:49:05   23   not provide expert opinions, either 26(a)(2)(B) or
10:49:09   24   26(a)(2)(C) needs to be complied with.  And so here,
10:49:14   25   clearly for the two treating physicians, I think Dr.
```

A-1968

32

```
            1                    J. ORTIZ V. M. STAMBACH

10:49:20    2    Vazquez and Dr. Shehata, there has been no compliance

10:49:24    3    with Rule 26, I mean, not even 26(a)(2)(C).  For Dr.

10:49:31    4    Joseph, seems to me you're seeking to have him testify

10:49:40    5    as an expert witness, not a treating physician, who then

10:49:44    6    will provide expert testimony, but as an expert witness.

10:49:48    7    But, and that -- I'm basing that on, based on this

10:49:51    8    report that was filed, but this report was never

10:50:04    9    produced until, I guess, late last month.  That clearly

10:50:07   10    is untimely.

10:50:08   11            So, then the issue is Dr. Coggins.  I don't

10:50:11   12    know what has been provided for Dr. Coggins.  I mean,

10:50:14   13    there is nothing in the record in front of me suggesting

10:50:17   14    there is anything of any significance for Dr. Coggins,

10:50:21   15    but you're now telling me she has been deposed in this

10:50:24   16    case.  Were there depositions of the expert witnesses in

10:50:27   17    this case?

10:50:28   18            MR. RUSS:  I frankly don't know, your Honor.

10:50:34   19            MR. SAHASRABUDHE:  So, and apologies,

10:50:36   20    because we're obviously coming into the case late, and

10:50:39   21    some of the procedural posture is confusing because

10:50:41   22    depositions in the Court of Claims action overlapped

10:50:45   23    with depositions in this action.  I haven't seen any

10:50:48   24    stipulations or agreements in writing to do that.  Dr.

10:50:53   25    Coggins may have given testimony, but my understanding
```

A-1969

33

|  |  |  |
|--|--|--|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:50:55 | 2 | in reviewing that testimony was it was to give testimony |
| 10:50:59 | 3 | about her memory and impressions of Mr. Ortiz at the |
| 10:51:03 | 4 | time of his conviction.  I didn't understand or read the |
| 10:51:06 | 5 | testimony to be an expert deposition taken in connection |
| 10:51:12 | 6 | with Rule 26 or done in compliance with Rule 26. |
| 10:51:16 | 7 | THE COURT:  So, are you -- is the defense |
| 10:51:19 | 8 | objecting to Dr. Coggins, for instance, testifying as to |
| 10:51:24 | 9 | her memory of Mr. Ortiz's mental health state at the |
| 10:51:30 | 10 | time of his arrest or prosecution? |
| 10:51:38 | 11 | MR. RUSS:  If Dr. Coggins' testimony was |
| 10:51:41 | 12 | limited to that, I think that is permissible.  But if |
| 10:51:46 | 13 | Dr. Coggins is asked, and so, you know, what did you |
| 10:51:50 | 14 | conclude about Mr. Ortiz or did you diagnose Mr. Ortiz |
| 10:51:55 | 15 | or what did you diagnose Mr. Ortiz, those kind of |
| 10:51:59 | 16 | opinion questions, no.  Pure facts.  I saw him, I |
| 10:52:03 | 17 | examined him, this is how he appeared, I think that is |
| 10:52:06 | 18 | fine, but anything beyond that straying into opinion |
| 10:52:11 | 19 | territory, we would object. |
| 10:52:12 | 20 | THE COURT:  And what is the Plaintiff trying |
| 10:52:15 | 21 | to have Dr. Coggins testify to? |
| 10:52:19 | 22 | MR. PIERCE:  I'm going to let Mr. Felle |
| 10:52:21 | 23 | answer that, but can I just point out?  There is an |
| 10:52:24 | 24 | entire deposition transcript of Dr. Coggins.  We didn't |
| 10:52:28 | 25 | think we needed to produce it because we didn't think |

A-1970

34

|          | 1  | J. ORTIZ V. M. STAMBACH |
|----------|----|---------|
| 10:52:31 | 2  | they were claiming that she couldn't testify when there |
| 10:52:35 | 3  | is a deposition transcript. |
| 10:52:36 | 4  | THE COURT:  There is a motion pending in |
| 10:52:38 | 5  | front of me that they are seeking so preclude her.  How |
| 10:52:41 | 6  | could you not think they were seeking to preclude her. |
| 10:52:45 | 7  | Their motion seeks that relief.  I understood it.  You |
| 10:52:50 | 8  | sure should have understood it.  And the fact that, you |
| 10:52:55 | 9  | know, somebody has been deposed in some other litigation |
| 10:52:59 | 10 | doesn't necessarily satisfy Rule 26.  I mean, I don't |
| 10:53:03 | 11 | disagree with the notion that if there has been |
| 10:53:06 | 12 | disclosure in one form or another that appropriately |
| 10:53:10 | 13 | apprises a party of an individual's or litigant's expert |
| 10:53:18 | 14 | witness plans at trial, that am I going to get stuck on |
| 10:53:22 | 15 | form over substance?  Not necessarily.  But, the |
| 10:53:29 | 16 | substance has to be there.  And so, I don't know, the |
| 10:53:35 | 17 | defense counsel is suggesting is that deposition |
| 10:53:38 | 18 | transcript is discussing what she observed back in |
| 10:53:45 | 19 | whatever date it was.  So, and there has been no, I |
| 10:53:51 | 20 | mean, no disclosure of any kind of report.  So, I mean, |
| 10:53:57 | 21 | she is not a treating physician, so she clearly under |
| 10:54:01 | 22 | 26(a)(2)(B) needs to provide a report or would have |
| 10:54:06 | 23 | needed to provide a report. |
| 10:54:13 | 24 | MR. PIERCE:  If I may, your Honor.  I'm |
| 10:54:15 | 25 | looking at their memo of law and they are asking to |

A-1971

35

|  |  |  |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:54:19 | 2 | preclude the testimony of two economic witnesses.  So I |
| 10:54:23 | 3 | didn't read their motion as seeking to preclude the |
| 10:54:28 | 4 | testimony of Dr. Coggins.  Their memo of law, page 13, |
| 10:54:41 | 5 | with respect to the two expert economists attempted to |
| 10:54:42 | 6 | be disclosed by Plaintiff, no such report.  And we |
| 10:54:43 | 7 | didn't have two economists, I wasn't sure.  I assumed |
| 10:54:46 | 8 | they meant Professor Reiber and Professor Redlich.  I |
| 10:54:51 | 9 | think they misinterpreted what Professor Redlich, the |
| 10:54:57 | 10 | purpose of her testimony, although a 20-page CV was |
| 10:55:00 | 11 | provided on January 15th, 2020 of her with full |
| 10:55:03 | 12 | disclosure of her background, her positions. |
| 10:55:07 | 13 | THE COURT:  That is only part of the rule, |
| 10:55:08 | 14 | though. |
| 10:55:09 | 15 | MR. PIERCE:  I understand.  But it's hard to |
| 10:55:16 | 16 | -- it feels, almost like a trap.  They didn't complain, |
| 10:55:19 | 17 | they didn't seek to depose the experts, and I get it. |
| 10:55:23 | 18 | THE COURT:  I'm sorry, I'm sorry.  Wait a |
| 10:55:25 | 19 | minute.  I'm sorry.  This is one of the worst examples |
| 10:55:28 | 20 | that I have seen of compliance with expert disclosure |
| 10:55:32 | 21 | requirements.  And what makes it more egregious, as far |
| 10:55:37 | 22 | as I'm concerned, is the fact that there were several |
| 10:55:40 | 23 | extensions granted by Judge Scott, and he finally |
| 10:55:43 | 24 | granted one final extension, by January 15th, and it |
| 10:55:47 | 25 | looks from the record in front of me, that Plaintiff's |

A-1972

36

| | | |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 10:55:51 | 2 | counsel didn't even try to comply with your obligations |
| 10:55:55 | 3 | under the federal rules.  So, I mean, I don't know how |
| 10:56:01 | 4 | that is even reasonably interpreted as a trap where the |
| 10:56:07 | 5 | federal rules clearly lay out what you have to do.  It's |
| 10:56:11 | 6 | not rocket science.  It's all laid out there.  The order |
| 10:56:15 | 7 | of Judge Scott set a deadline for doing it.  Said "no |
| 10:56:18 | 8 | further extensions."  It's all laid out there.  So you |
| 10:56:22 | 9 | screw it up, it's not a trap that somebody then doesn't |
| 10:56:26 | 10 | raise it.  Yes, they should have raised it earlier.  I |
| 10:56:29 | 11 | agree with you.  It would have been better to be |
| 10:56:32 | 12 | litigating it not less than 30 days before trial, |
| 10:56:35 | 13 | because, at that point, there may be other options |
| 10:56:38 | 14 | available to a court other than preclusion.  But the |
| 10:56:42 | 15 | reality is, we're here now, it's the Plaintiff's burden |
| 10:56:46 | 16 | to establish that he complied with the expert disclosure |
| 10:56:50 | 17 | requirements and it's woefully inadequate, as far as I'm |
| 10:56:55 | 18 | concerned.  I'm looking at the memo of law right now. |
| 10:57:04 | 19 | It discusses with the end of page 17, with respect to |
| 10:57:06 | 20 | treating physicians who have not been retained solely to |
| 10:57:11 | 21 | provide expert testimony, parties still must disclose, |
| 10:57:14 | 22 | it says, for the seven physicians and/or medical |
| 10:57:18 | 23 | providers disclosed by Plaintiff.  He has neither |
| 10:57:23 | 24 | provided a description of the subject matter on which |
| 10:57:23 | 25 | the witnesses are expected to testify nor provided the |

A-1973

37

```
           1                J. ORTIZ V. M. STAMBACH

10:57:28   2   summary of the facts and opinions that the witnesses

10:57:32   3   will testify to.  I don't know how you didn't read that

10:57:35   4   and come to the conclusion that the defense is seeking

10:57:38   5   to exclude all of the medical experts that you're

10:57:41   6   seeking to have testify at trial.  And in the reply

10:57:45   7   memo, they follow up with that.

10:57:47   8                So, yes, that is the motion.  The time to

10:57:51   9   address this would have been in your opposition papers.

10:57:58  10   What I will do, I'm going to give you a few cites, okay,

10:58:02  11   as to what the accurate law is.  Because what is cited

10:58:05  12   in your expert witness disclosure is case law from over

10:58:10  13   20 years ago, it's not an accurate recitation of the

10:58:13  14   law, and I think what you're citing is one decision from

10:58:16  15   Judge Curtin where he discusses other cases.  But the

10:58:19  16   relevant law on this subject, some of which was cited by

10:58:23  17   the defense in their papers, are as follows: *Kaganovich

10:58:35  18   v. McDonough*, 547 F Supp 3d 268, EDNY from 2021.  It

10:58:42  19   goes through a very detailed discussion of what is

10:58:45  20   required for medical professionals.  Another one is

10:58:49  21   *Rodriguez v. Village of Port Chester,* 535 F Supp 3d 202,

10:58:58  22   SDNY from April 26th, 2021.  *Pierce v. City of New York*,

10:59:07  23   EDNY from June 16, 2017, the cite is 2017 Westlaw

10:59:19  24   2623857.  *In Re: World Trade Center Lower Manhattan

10:59:28  25   Disaster Cite Litigation*, 2014 Westlaw 5757713, SDNY
```

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 10:59:37 | 2 | from November 5, 2014.  And then I notice that |
| 10:59:42 | 3 | Plaintiff's counsel, you cite my *Mikaleck* case didn't |
| 10:59:45 | 4 | deal with expert witness disclosure.  The *Paulus* case |
| 10:59:50 | 5 | where I precluded late disclosure or expert witness from |
| 10:59:54 | 6 | testifying who was disclosed late was *Paulus v.* |
| 11:00:03 | 7 | *Holimont*, Western Distinct of New York 315 FRD 13, 2016, |
| 11:00:11 | 8 | this is the relevant law regarding disclosure of the |
| 11:00:15 | 9 | expert witnesses, including some of the earlier ones I |
| 11:00:18 | 10 | cited disclosure of medical experts.  I think |
| 11:00:22 | 11 | Plaintiff's counsel, based on what I've seen so far in |
| 11:00:25 | 12 | the record, you have a real problem here.  I'm going to |
| 11:00:27 | 13 | allow you supplement this.  But you got to discuss the |
| 11:00:31 | 14 | relevant case law, and I'll allow defense counsel to |
| 11:00:35 | 15 | respond with exactly what your position is with respect |
| 11:00:41 | 16 | to each expert, and, in particular, the medical experts. |
| 11:00:46 | 17 | Because I assume you have the medical records from some |
| 11:00:50 | 18 | of the physicians, correct? |
| 11:00:56 | 19 | MR. RUSS:  We have some medical records, |
| 11:00:59 | 20 | your Honor, yes. |
| 11:00:59 | 21 | THE COURT:  I am assuming that you did not |
| 11:01:02 | 22 | receive Dr. Joseph's report in any of the disclosures |
| 11:01:06 | 23 | with any HIPAA authorizations. |
| 11:01:07 | 24 | MR. RUSS:  No, we haven't.  We did not see |
| 11:01:10 | 25 | Dr. Joseph's report until our motion filings. |

A-1975

39

```
            1                    J. ORTIZ V. M. STAMBACH

11:01:14    2              THE COURT:  Okay.  But you can't sandbag

11:01:21    3    attorneys.  Even if they don't raise an issue with your

11:01:25    4    lack of compliance to federal reports, you can't sandbag

11:01:30    5    them.  You can't be producing reports 30 days before

11:01:33    6    trial.  I won't allow it.  The federal rules don't allow

11:01:36    7    it.  And, as I said, I think you're going to have some

11:01:40    8    problems here.  I'll allow you to supplement the papers

11:01:43    9    and I'll receive further response from defense counsel

11:01:45   10    and then I'll let you now how I'm going to resolve these

11:01:49   11    issues.

11:01:49   12              MR. RUSS:  Thank you, your Honor.  Do you

11:01:50   13    want to set a time table for that?

11:01:52   14              THE COURT:  Yes, I will in a moment.  Mr.

11:01:54   15    Felle, you had your hand raised.

11:02:01   16              MR. FELLE:  Your Honor, I wanted to point

11:02:03   17    out that defense counsel wasn't aware.  Similarly, Dr.

11:02:07   18    Joseph's reports and Dr. Coggins reports and records

11:02:08   19    were made part of the summary judgment motion we

11:02:11   20    discussed earlier pertaining to Professor Redlich, and

11:02:16   21    counsel for the City of Buffalo were certainly served

11:02:19   22    with the reports and the information, and it was

11:02:22   23    ingrained in that motion.  We'll provide it.

11:02:23   24              THE COURT:  None of that is in front of me.

11:02:25   25    You need to identify when that occurred, I want proof of
```

A-1976

|  |  |  |
|--|--|--|
|  | 1 | J. ORTIZ V. M. STAMBACH |
| 11:02:29 | 2 | it, I want the dates, I want identity of who the |
| 11:02:32 | 3 | attorney was that this would have been served on, and |
| 11:02:35 | 4 | then, as I said, I'll let defense counsel respond, okay? |
| 11:02:44 | 5 | All right.  The evidence of the unrelated lawsuits. |
| 11:02:49 | 6 | Plaintiff's counsel, are you proposing to be actually |
| 11:02:51 | 7 | introducing these other complaints?  Is that what your |
| 11:02:56 | 8 | trying to do? |
| 11:03:04 | 9 | MR. PIERCE:  I will say that I'm not 100 |
| 11:03:07 | 10 | percent sure that we would seek to do that.  And we |
| 11:03:10 | 11 | haven't had a chance, because of scheduling, Mr. Felle, |
| 11:03:15 | 12 | and I to discuss the full extent of that.  We did not |
| 11:03:20 | 13 | list those complaints in our exhibit list. |
| 11:03:22 | 14 | THE COURT:  How would you get around the |
| 11:03:24 | 15 | hearsay rule with those complaints? |
| 11:03:25 | 16 | MR. PIERCE:  How would we? |
| 11:03:27 | 17 | THE COURT:  Yes. |
| 11:03:27 | 18 | MR. PIERCE:  As public records. |
| 11:03:29 | 19 | THE COURT:  No, no.  I'll read to you sky |
| 11:04:17 | 20 | Rule 803(10) of the Federal Rules of Evidence -- no, I'm |
| 11:04:21 | 21 | sorry, 803(8) of the Federal Rules of Evidence provides |
| 11:04:27 | 22 | that an exception to the hearsay rule is a public |
| 11:04:29 | 23 | record, but it has to be a record or statement of a |
| 11:04:32 | 24 | public office if it sets out the office's activities, a |
| 11:04:36 | 25 | matter observed while under a legal duty to report, but |

A-1977

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 11:04:40 | 2 | not including, in a criminal case, a matter observed by |
| 11:04:44 | 3 | law enforcement personnel or in a civil case or against |
| 11:04:47 | 4 | the government in a criminal case, factual findings from |
| 11:04:50 | 5 | a legally authorized investigation, and the opponent |
| 11:04:55 | 6 | does not show that the source of the information or |
| 11:04:57 | 7 | other circumstances indicate a lack of trustworthiness. |
| 11:05:01 | 8 | Those complaints would not come in under the public |
| 11:05:04 | 9 | record exception.  So, how would you get around hearsay? |
| 11:05:12 | 10 | MR. PIERCE:  Well, as I indicated, your |
| 11:05:15 | 11 | Honor, Mr. Felle and I have not had a full discussion |
| 11:05:18 | 12 | about that. |
| 11:05:22 | 13 | THE COURT:  All right.  Well, go ahead. |
| 11:05:24 | 14 | MR. PIERCE:  We have a circumstance where |
| 11:05:26 | 15 | the same Defendant has been involved in four matters |
| 11:05:33 | 16 | where it was a wrongful conviction, and there is a |
| 11:05:36 | 17 | determination, as I read the other three, we know in |
| 11:05:40 | 18 | this case there is a false confession and a wrongful |
| 11:05:44 | 19 | conviction.  And my understand is in the other three |
| 11:05:46 | 20 | cases, it's exactly the same, that Mr. Stambach was an |
| 11:05:49 | 21 | active participant that led to the conviction that was |
| 11:05:52 | 22 | then subsequently thrown out.  It seems relevant to his |
| 11:06:02 | 23 | actions, as a police officer, and it may be a |
| 11:06:09 | 24 | circumstance where, like you said, as to Mr. Ortiz's |
| 11:06:13 | 25 | prior 2016 conviction, very limited information would be |

                        J. ORTIZ V. M. STAMBACH

1

11:06:17  2   given, but I think in this case, in the case of Mr.

11:06:26  3   Stambach's three other allegations, and I understand one

11:06:28  4   of them was settled, the amount was confidential and we

11:06:33  5   have a pretty good idea it was a very sizeable

11:06:37  6   settlement in the Peter Dijack case, if I'm saying it

11:06:40  7   correctly, the other two are pending of these three.

11:06:43  8   But, I don't think there is any dispute that Mr.

11:06:48  9   Stambach was directly involved, as he was here, he is

11:06:51 10   the primary person.  And each of those convictions were

11:06:55 11   thrown out.  It's a matter of public record that that

11:06:58 12   occurred.  It seems to me that at least that basic

11:07:01 13   information should be allowed to be conveyed to the

11:07:04 14   jury, especially given that Mr. Ortiz's 2016 conviction

11:07:12 15   with no incarceration, and, basically, a mistake.  And

11:07:19 16   for impeachment purposes, as the defense said, we're

11:07:25 17   going to have a he said he said, we're not --

11:07:27 18              THE COURT:  Your client's credibility is at

11:07:31 19   issue for damages.  So the suggestion that the

11:07:34 20   Plaintiff's credibility is not an issue is a

11:07:38 21   non-starter.  It is an issue for damages.  I agree it

11:07:41 22   seems as though Mr. Stambach's version of events as is

11:07:46 23   to what happened at the confession or the alleged.  I

11:07:51 24   guess it was a confession, but the wrong confession is

11:07:54 25   not going to be necessarily contradicted by Mr. Ortiz?

A-1979

43

|  | 1 | J. ORTIZ V. M. STAMBACH |
| 11:07:58 | 2 | MR. PIERCE:  Right. |
| 11:07:59 | 3 | THE COURT:  So what is your theory, though, |
| 11:08:01 | 4 | in terms of how you introduce this on cross examination |
| 11:08:07 | 5 | of Mr. Stambach? |
| 11:08:08 | 6 | MR. PIERCE:  That would certainly be one |
| 11:08:10 | 7 | possibility. |
| 11:08:11 | 8 | THE COURT:  What is the other possibility? |
| 11:08:12 | 9 | MR. PIERCE:  We have subpoenaed him. |
| 11:08:14 | 10 | THE COURT:  Who, Mr. Stambach. |
| 11:08:16 | 11 | MR. PIERCE:  Yes, defense counsel accepted a |
| 11:08:18 | 12 | subpoena on his behalf, not that we probably needed one |
| 11:08:22 | 13 | since he is going to be in the courtroom anyway.  We |
| 11:08:24 | 14 | intend to call him on Plaintiff's direct case. |
| 11:08:27 | 15 | THE COURT:  So during that examination, you |
| 11:08:29 | 16 | would want to what ask him has he ever been involved in |
| 11:08:35 | 17 | another case where the conviction has been reversed? |
| 11:08:40 | 18 | MR. PIERCE:  Yes, along those lines, your |
| 11:08:42 | 19 | Honor. |
| 11:08:42 | 20 | THE COURT:  And the theory, though, as to |
| 11:08:44 | 21 | the relevancy is what?  Is it 404(b) or Rule 608? |
| 11:08:56 | 22 | MR. PIERCE:  I'm not -- I apologize, your |
| 11:08:58 | 23 | Honor, I'm not in a position to discuss which federal |
| 11:09:01 | 24 | rule.  I can say that I think it's relevant, especially |
| 11:09:06 | 25 | the big issue that seems to be in play is probable cause |

A-1980

44

|   | | |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 11:09:10 | 2 | on the malicious prosecution claim.  And I think his |
| 11:09:15 | 3 | involvement in not just this one, but three other cases |
| 11:09:19 | 4 | where the convictions were all tossed out is relevant |
| 11:09:23 | 5 | information going to his conduct in this case, which is |
| 11:09:29 | 6 | basically -- |
| 11:09:30 | 7 | THE COURT:  But relevant how?  I mean, how |
| 11:09:32 | 8 | does it prove -- how does the fact that Mr. Stambach was |
| 11:09:37 | 9 | involved in another case, not involving the Defendant |
| 11:09:44 | 10 | falsely confessing, which is what occurred here?  I |
| 11:09:47 | 11 | mean, in other words, in this case, Mr. Ortiz |
| 11:09:51 | 12 | voluntarily comes to the police and confesses.  And that |
| 11:09:57 | 13 | the allegation here is the way you get -- you're trying |
| 11:10:02 | 14 | to get over the presumption of probable cause created by |
| 11:10:05 | 15 | the indictment is that Mr. Stambach, either, I guess, |
| 11:10:13 | 16 | fabricated what Mr. Ortiz said to him or knew that what |
| 11:10:20 | 17 | Mr. Ortiz was saying to him was false and yet reported |
| 11:10:28 | 18 | it to the district attorney's office, and he was |
| 11:10:30 | 19 | ultimately prosecuted.  So, the question is, I mean, it |
| 11:10:39 | 20 | does matter what rule of evidence you want to try and |
| 11:10:42 | 21 | pursue this under, because the analysis is different. |
| 11:10:45 | 22 | You keep referring to your client's convictions, those |
| 11:10:48 | 23 | are coming in under Rule 609(a) or the prior conviction |
| 11:10:53 | 24 | coming in under Rule 609(a).  There is a very specific |
| 11:10:57 | 25 | analysis that occurs with respect to whether or not |

A-1981

45

|   |   |   |
|---|---|---|
|          | 1  | J. ORTIZ V. M. STAMBACH |
| 11:11:00 | 2  | something is admissible under that rule.  Now, if you're |
| 11:11:04 | 3  | relying on Rule 409(b), then the Court has to go through |
| 11:11:09 | 4  | an analysis consistent with the Supreme Court's decision |
| 11:11:13 | 5  | in *Huddleson*.  If you're relying on 608, the issue is, |
| 11:11:17 | 6  | does it go to truthfulness and should you be permitted |
| 11:11:21 | 7  | to cross examine the individual with it, but then you're |
| 11:11:25 | 8  | stuck with the answer under Rule 608.  So, I mean, as |
| 11:11:30 | 9  | the proponent of the evidence, you need to be able to |
| 11:11:33 | 10 | articulate to me what is your theory under which you can |
| 11:11:36 | 11 | get into this, and then I'll hear from the defense as to |
| 11:11:41 | 12 | why they think it's either irrelevant or should be |
| 11:11:45 | 13 | barred under Rule 403. |
| 11:11:45 | 14 | MR. PIERCE:  May I reply? |
| 11:11:45 | 15 | THE COURT:  Yes. |
| 11:11:59 | 16 | MR. PIERCE:  In my memo of law, I cited 607 |
| 11:12:04 | 17 | and 608. |
| 11:12:05 | 18 | THE COURT:  I know you cited them, you need |
| 11:12:07 | 19 | to be able to articulate to me how you are satisfying |
| 11:12:11 | 20 | 608. |
| 11:12:11 | 21 | MR. PIERCE:  Okay.  The Epps (phonetic) |
| 11:12:13 | 22 | complaint, again, conviction thrown out, wrongful |
| 11:12:18 | 23 | conviction, and the allegations against Mr. Stambach |
| 11:12:23 | 24 | were that he ignored evidence that somebody else -- |
| 11:12:26 | 25 | THE COURT:  The allegations, if you say -- |

A-1982

46

|       |    | J. ORTIZ V. M. STAMBACH |
|-------|----|-------------------------|
| 11:12:29 | 2 | that is hearsay.  So it's not a proper question to say, |
| 11:12:34 | 3 | the allegations here are saying that you did this and |
| 11:12:37 | 4 | this.  That is introducing an out-of-court statement for |
| 11:12:42 | 5 | its truth.  So the question is, did you do X, Y and Z. |
| 11:12:50 | 6 | And that is how you need to pursue the line of |
| 11:12:52 | 7 | questioning.  But I don't -- I'm not clear on exactly |
| 11:12:56 | 8 | what the area of inquiry is going to be for each one of |
| 11:13:02 | 9 | these complaints and what, if you're pursuing it under |
| 11:13:10 | 10 | Rule 608 or Rule 404(b) or is it both. |
| 11:13:17 | 11 | MR. FELLE:  Judge, if I may just answer your |
| 11:13:19 | 12 | question, your direct question about the theories in our |
| 11:13:22 | 13 | case, and how they might be relevant to these other |
| 11:13:26 | 14 | claims.  There is at least two ways that that is |
| 11:13:28 | 15 | relevant.  As your Honor decided in this case, probable |
| 11:13:31 | 16 | cause is at issue.  We've taken the deposition of the |
| 11:13:34 | 17 | former Detective Stambach.  In his deposition he claims, |
| 11:13:43 | 18 | I follow the rules.  I did what I do as a detective all |
| 11:13:47 | 19 | of the time, and it led me to this conviction and led me |
| 11:13:52 | 20 | to a manufactured confession.  In that vain, it could be |
| 11:13:56 | 21 | relevant that, similarly, if Detective Stambach is going |
| 11:14:00 | 22 | to argue, I just did my job, I did it the same way I |
| 11:14:04 | 23 | always do it.  It would stand to reason that the way he |
| 11:14:08 | 24 | would claim to do his job, it would lead to a wrongful |
| 11:14:13 | 25 | conviction.  Also, we anticipate that the testimony of |

A-1983

47

|   | | |
|---|---|---|
| | 1 | J. ORTIZ V. M. STAMBACH |
| 11:14:16 | 2 | Detective Mary Evans, who is still employed by the City |
| 11:14:18 | 3 | of Buffalo, she is a cold case detective, who initiated |
| 11:14:22 | 4 | the exoneration of Mr. Ortiz.  It was through an |
| 11:14:29 | 5 | investigation, as your Honor probably knows from the |
| 11:14:33 | 6 | summary judgment motion, with the FBI, New York State |
| 11:14:36 | 7 | Detective Rondon, and Ms. Evans.  Ms. Evans says when |
| 11:14:39 | 8 | she opened this file, she was stunned to find out there |
| 11:14:43 | 9 | were three perpetrators to this murder as evidenced by |
| 11:14:47 | 10 | multiple witnesses, three perpetrators.  Nonetheless, |
| 11:14:53 | 11 | this file was closed with the arrest of one defendant, |
| 11:14:57 | 12 | Mr. Ortiz.  The motive, at the time, the homicide bureau |
| 11:15:02 | 13 | was merged into the major crime bureaus, that was felt |
| 11:15:05 | 14 | to be a slight by the common counsel with the detectives |
| 11:15:09 | 15 | of the homicide, as a result, there was a rush to |
| 11:15:11 | 16 | convict.  That theory is consistent with the idea that |
| 11:15:15 | 17 | Detective Stambach did this in other cases where he |
| 11:15:18 | 18 | tried to clear a case and he did it with a rush to |
| 11:15:22 | 19 | judgment just as found in other cases.  Those are two |
| 11:15:27 | 20 | areas where we believe that may be very, very relevant |
| 11:15:32 | 21 | in this case. |
| 11:15:34 | 22 | THE COURT:  All right.  Defense counsel. |
| 11:15:38 | 23 | MR. RUSS:  Thank you, your Honor.  I believe |
| 11:15:40 | 24 | the Court has the issue well in hand.  I would just |
| 11:15:44 | 25 | mention two other aspects.  In the other complaints and |

A-1984

48

|  | 1 | J. ORTIZ V. M. STAMBACH |
|---|---|---|
| 11:15:50 | 2 | the other lawsuits, no determination has been made in |
| 11:15:54 | 3 | any of them.  One was settled, three are pending.  So to |
| 11:15:58 | 4 | try and use those cases as some evidence of the |
| 11:16:04 | 5 | detective's wrongful conduct in the past is not |
| 11:16:08 | 6 | appropriate.  And, secondly, your Honor, despite what |
| 11:16:14 | 7 | Plaintiff's counsel claims, these cases are dramatically |
| 11:16:20 | 8 | different, they are not substantially similar.  In this |
| 11:16:24 | 9 | case, they are claiming that Detective Stambach |
| 11:16:27 | 10 | knowingly took a confession that was false and forwarded |
| 11:16:34 | 11 | it on.  In the other cases, it's completely different |
| 11:16:37 | 12 | issues.  Yes, he is accused of various misconduct, but |
| 11:16:41 | 13 | none of it involves confessions.  And if you get into a |
| 11:16:47 | 14 | -- if you start to investigate the factual background |
| 11:16:50 | 15 | behind each case, they are incredibly different, so I |
| 11:16:54 | 16 | don't know how anybody could ever prove they were |
| 11:16:57 | 17 | similar enough to have any relevance whatsoever.  Plus, |
| 11:17:03 | 18 | it would effectively require a mini trial on each one of |
| 11:17:07 | 19 | those cases to see what had happened and what he had |
| 11:17:10 | 20 | done there to see whether it's admissible here, and |
| 11:17:15 | 21 | we'll be here until next May if we do that, your Honor. |
| 11:17:21 | 22 | THE COURT:  I'm not letting in any testimony |
| 11:17:24 | 23 | about these other complaints.  I'm not letting in the |
| 11:17:27 | 24 | other complaints.  I think the question is whether or |
| 11:17:31 | 25 | not there is conduct by Mr. Stambach that is admissible |

A-1985

49

|   |   |
|---|---|
| | 1 |  J. ORTIZ V. M. STAMBACH |

```
              1              J. ORTIZ V. M. STAMBACH
11:17:36      2    under Rule 404(b) or Rule 608 that relates to these
11:17:42      3    other cases.  And I can't answer that question because
11:17:45      4    Plaintiff's counsel hasn't articulated sufficiently what
11:17:48      5    your theory of admissibility under either one of those
11:17:53      6    rules is.  But as defense counsel points out, under Rule
11:17:59      7    404(b), if you're trying to -- first of all, you have to
11:18:01      8    identify what the non-propensity purpose of the evidence
11:18:05      9    is.  And if it's for intent or knowledge, the other
11:18:10     10    conduct does have to be sufficiently similar to the
11:18:14     11    conduct that is at issue.  Under Rule 608, you have to
11:18:19     12    identify what is the other or the issue or the other
11:18:22     13    conduct that goes to truthfulness.  So I'll give you a
11:18:26     14    few cites.  First of all, the complaints are hearsay.
11:18:30     15    The allegations in the complaints would be hearsay.  To
11:18:33     16    get into the fact that there is other litigation that
11:18:37     17    Mr. Stambach has been named as a defendant in, I think,
11:18:40     18    would be unfairly prejudicial under Rule 403.  And so.
11:18:44     19    Therefore, the complaints themselves, I'm not letting in
11:18:47     20    any evidence about those.  I'll give a few cites to
11:18:51     21    support that, Bryant v. Serebrenik, 2017 Westlaw 713897,
11:19:02     22    EDNY from February 23, 2017; Beachwood Restorative Care
11:19:10     23    Center v. Leeds, 856 F. Supp 2d 580, WDNY from 2012; and
11:19:20     24    then Jean-Laurent v. Hennessy, 840 F. Supp 2d 529,
11:19:29     25    Eastern District of -- no, I'm sorry -- Eastern District
```

50

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ V. M. STAMBACH |
| 11:19:33 | 2 | of New York from October 24, 2011.  I will allow |
| 11:19:37 | 3 | Plaintiff's counsel, though, to supplement the papers, |
| 11:19:40 | 4 | but you need to identify exactly what it is under either |
| 11:19:47 | 5 | Rule 608 or Rule 404(b) or some other rule that you're |
| 11:19:53 | 6 | relying on, what it is that you want to get in, what |
| 11:19:56 | 7 | rule of evidence you're relying onto get it in, and what |
| 11:20:00 | 8 | witness you anticipate trying to get that evidence in |
| 11:20:03 | 9 | with.  I think -- I agree with defense counsel, I think |
| 11:20:07 | 10 | there are serious concerns under Rule 403 about a mini |
| 11:20:14 | 11 | trial, so I'm going to balance all of this against the |
| 11:20:18 | 12 | concerns under Rule 403, but I need to hear first from |
| 11:20:24 | 13 | Plaintiff's counsel exactly what it is that you're |
| 11:20:27 | 14 | trying to introduce with respect to these other cases. |
| 11:20:31 | 15 | Not these other lawsuits, because the lawsuits |
| 11:20:33 | 16 | themselves, as I said, are not relevant, but these other |
| 11:20:37 | 17 | cases.  All right. |
| 11:20:42 | 18 | Let's talk about the motion to preclude |
| 11:21:00 | 19 | reference to defense attorney being city attorneys.  I'm |
| 11:21:04 | 20 | going to bifurcate punitive damages in this case in the |
| 11:21:09 | 21 | sense the jury would be asked yes or no, do you award |
| 11:21:14 | 22 | punitive damages.  They will not be asked about whether |
| 11:21:19 | 23 | or not what the amount is.  If they come back with, yes, |
| 11:21:22 | 24 | they allow punitive damages, we'll get into the amount |
| 11:21:28 | 25 | that then becomes relevant, if the defense wants to |

1            J. ORTIZ V. M. STAMBACH

11:21:31   2   introduce it, what are the Defendant's financial

11:21:34   3   resources.  And then if, in those circumstances, if in

11:21:37   4   fact there is the a potential or a likelihood of

11:21:41   5   indemnification by the City, that then becomes relevant

11:21:45   6   information to introduce to the jury.  And I'll give you

11:21:50   7   a couple of cites on those points.  One is *Coleman v.*

11:22:06   8   *Durkin*, 2022 Westlaw 446200, Northern District of New

11:22:13   9   York from February 14, 2022.  And another one is *Dallas*

11:22:30  10   *v. Goldberg*, 2002 Westlaw 1013291, SDNY from May 20,

11:22:38  11   20002.  So the potential for the city indemnifying Mr.

11:22:44  12   Stambach is only relevant for the punitive damage phase

11:22:48  13   of this trial if we ever get to it.  So, because of

11:22:51  14   that, I'm going to preclude any reference to defense

11:22:55  15   counsel as city attorneys or any suggestion that somehow

11:22:58  16   the City of Buffalo is on trial or that the City of

11:23:01  17   Buffalo would be responsible for any award in this case,

11:23:05  18   at least until we get to a potential phase of punitive

11:23:10  19   damages.

11:23:14  20            Then with respect to the subsequent remedial

11:23:18  21   measures, the policy change by the Buffalo Police

11:23:23  22   Department, based on the present record, there is no

11:23:28  23   exception to Rule 407, which would not allow the

11:23:32  24   testimony to come in that now the Buffalo Police

11:23:36  25   Department requires video recording of any interviews.

|   | |
|---|---|
| 1 | J. ORTIZ V. M. STAMBACH |
| 11:23:40  2 | Now, if Mr. Stambach were to testify that, well -- I |
| 11:23:45  3 | mean, he certainly can be asked, "did you video record |
| 11:23:48  4 | the interview of the Plaintiff?"  He'll say, "no," |
| 11:23:55  5 | presumably.  And if he said, well, if when asked why |
| 11:23:58  6 | not, well, it wasn't feasible to do that, then it does |
| 11:24:02  7 | potentially make it relevant to, under Rule 407.  But |
| 11:24:08  8 | based on the current record, the feasibility of |
| 11:24:14  9 | precautionary measures doesn't seem to be at issue.  So |
| 11:24:18  10 | I am going to grant that portion of the defense motion. |
| 11:24:30  11 | And then the other issue was to preclude |
| 11:24:32  12 | post-sentencing evidence.  I don't disagree with defense |
| 11:24:40  13 | counsel, it may very well may not be relevant, but it's |
| 11:24:44  14 | going to depend on what the stipulation is, and what the |
| 11:24:47  15 | defense is willing to stipulate to.  And has that been |
| 11:24:51  16 | agreed upon at this point or no? |
| 11:24:53  17 | MR. RUSS:  Not yet, your Honor. |
| 11:24:54  18 | THE COURT:  So I'm go to reserve on that |
| 11:24:58  19 | issue until I see what the stipulation is.  And I mean, |
| 11:25:04  20 | because the question isn't what the U.S. Attorney's |
| 11:25:08  21 | Office ultimately or the FBI ultimately uncovered.  The |
| 11:25:12  22 | question is what was known at the time that Mr. Ortiz |
| 11:25:14  23 | was initially prosecuted and convicted.  But it will |
| 11:25:21  24 | depend on what is stipulated to. |
| 11:25:23  25 | MR. RUSS:  I understand, your Honor.  Thank |

A-1989

53

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                    |
| 11:25:24 | 2  | you.                                                       |
| 11:25:26 | 3  | THE COURT:  I think that covers all of the                |
| 11:25:27 | 4  | legal issues.  Let's talk about a deadline for the        |
| 11:25:31 | 5  | further submissions that we've discussed.  Can            |
| 11:25:41 | 6  | Plaintiff's counsel get their filings of all of the       |
| 11:25:45 | 7  | additional submissions in by Friday, April 15th?  That    |
| 11:25:52 | 8  | is what I'm going to require because it, frankly, should   |
| 11:25:55 | 9  | have been in before then.  Plaintiff needs to get any     |
| 11:25:58 | 10 | additional filings in consistent with our discussions     |
| 11:26:01 | 11 | here by April 15th and defense counsel needs to respond   |
| 11:26:05 | 12 | by April 22nd.  I'd like to schedule a further final      |
| 11:26:15 | 13 | pretrial conference for Monday, May 2nd at 3 p.m.  Any    |
| 11:26:27 | 14 | issue with that Plaintiff's counsel?                       |
| 11:26:30 | 15 | MR. PIERCE:  No.                                           |
| 11:26:31 | 16 | MR. FELLE:  No.                                            |
| 11:26:31 | 17 | THE COURT:  From defense counsel?                          |
| 11:26:33 | 18 | MR. RUSS:  No, that would be great.  Thank                 |
| 11:26:35 | 19 | you, your Honor.                                           |
| 11:26:35 | 20 | THE COURT:  At that final pretrial                         |
| 11:26:37 | 21 | conference, I'll also talk to you about the Covid          |
| 11:26:39 | 22 | protocols.  It's kind of in flux right now.  All of the   |
| 11:26:42 | 23 | trials I've had, during trial I've required everyone to   |
| 11:26:46 | 24 | be masked, including the jurors, but when the witness is  |
| 11:26:50 | 25 | testifying, he or she can take the mask off.  In some of  |

A-1990

54

1                    J. ORTIZ V. M. STAMBACH

11:26:55   2   the more recent trials, I would allow the attorney

11:26:59   3   remove their mask.  That is probably what I'll be doing

11:27:02   4   here if you're speaking, otherwise it needs to be on and

11:27:06   5   the jurors will be masked, among other reasons, if we

11:27:09   6   end up being unmasked and one person has Covid, it could

11:27:16   7   shut us down for five days, if not longer.  Whereas if

11:27:20   8   we're all masked, and if somebody has Covid, that person

11:27:23   9   has to quarantine, but not everybody involved in the

11:27:27   10  trial wouldn't.  So I know everybody is getting used to

11:27:31   11  not wearing masks.

11:27:32   12              MR. RUSS:  We probably have to live by the

11:27:35   13  Chief Judge's rules, right?

11:27:36   14              THE COURT:  It would be nice if it was

11:27:39   15  always like that.

11:27:40   16              So we can talk about that on the 2nd.

11:27:46   17              Also, in terms of the qualified immunity

11:27:51   18  issue, is the defense only raising qualified immunity

11:27:56   19  with respect to the malicious prosecution claim?

11:27:59   20              MR. SAHASRABUDHE:  The answer, I believe,

11:28:01   21  raises qualified immunity with respect to all claims

11:28:05   22  asserted against Detective Stambach.  And I believe

11:28:10   23  we're hoping to assert that qualified immunity defense

11:28:16   24  proposed to the jury.  And then depending on the answers

11:28:18   25  to those, as we kind of wrote in our memo of law, the

A-1991

55

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | J. ORTIZ V. M. STAMBACH                                      |
| 11:28:22 | 2  | Court can rule on the merits of the qualified immunity       |
| 11:28:25 | 3  | defense.                                                     |
| 11:28:26 | 4  | THE COURT:  Plaintiff's counsel indicates in                 |
| 11:28:26 | 5  | their memo that my Decision and Order limited it to just      |
| 11:28:26 | 6  | the malicious prosecution claim, that is not accurate.        |
| 11:28:34 | 7  | That was the only argument that was made on the summary       |
| 11:28:36 | 8  | judgment motions.  But I do question whether or not the       |
| 11:28:40 | 9  | qualified immunity rises and falls with the underlying        |
| 11:28:45 | 10 | causes of action here.  I mean, I don't see how -- I          |
| 11:28:49 | 11 | mean, in other words, I don't see how a jury could find       |
| 11:28:55 | 12 | that Mr. Stambach engaged in malicious prosecution and        |
| 11:28:59 | 13 | then yet is entitled to qualified immunity.  So the           |
| 11:29:03 | 14 | questions that were proposed, I think, in your jury           |
| 11:29:07 | 15 | instructions 29 maybe, those are questions that the jury      |
| 11:29:11 | 16 | is going to have to answer a certain way in order to          |
| 11:29:15 | 17 | find Mr. Stambach of or guilty or liable for malicious        |
| 11:29:21 | 18 | prosecution.  And so I'm not sure that this is a case         |
| 11:29:26 | 19 | where special interrogatories are needed for qualified        |
| 11:29:31 | 20 | immunity.  I would ask defense counsel to give that some      |
| 11:29:35 | 21 | further thought.                                             |
| 11:29:37 | 22 | MR. RUSS:  Yes, your Honor, we'll re visit                    |
| 11:29:38 | 23 | that and certainly be ready by the final pretrial            |
| 11:29:41 | 24 | conference to discuss that.                                  |
| 11:29:43 | 25 | THE COURT:  Right.  Because, obviously, the                   |

|   | J. ORTIZ V. M. STAMBACH |
|---|---|
| 1 | J. ORTIZ V. M. STAMBACH |

```
              1                 J. ORTIZ V. M. STAMBACH
11:29:45      2    special interrogatories will be something that we'll
11:29:48      3    have to deal with as part of our charge conference.
11:29:52      4                 MR. RUSS:  Right.
11:29:52      5                 THE COURT:  I don't think I had anything
11:29:53      6    else that we needed to talk about today, but I'll turn
11:29:56      7    to Plaintiff's counsel.  Anything?
11:29:57      8                 MR. PIERCE:  The only thing, your Honor,
11:30:00      9    about the stipulation that was discussed as far back as
11:30:06     10    March 25th in Defendant's pretrial filings, and I
11:30:10     11    followed up with -- I'm going to mispronounce Peter's
11:30:14     12    last name.
11:30:17     13                 THE COURT:  Sahasrabudhe.
11:30:21     14                 MR. SAHASRABUDHE:  Good enough, your Honor.
11:30:24     15                 MR. PIERCE:  And I followed up and talked to
11:30:26     16    him.  No draft stipulation has been filed.  I did tell
11:30:30     17    him in our phone conversation that the week of March
11:30:32     18    18th or 28th, last week, I guess now two weeks ago, that
11:30:37     19    I would try and draft one, and I just have not been able
11:30:41     20    to given our filing obligations in this case and some
11:30:44     21    other obligations that I have in other cases.  And I
11:30:49     22    would like to see this proposed stipulation by no later
11:30:54     23    than this Friday since we have a deadline of this
11:30:57     24    Friday.
11:30:58     25                 THE COURT:  Well, this is a stipulation as
```

|          |    | J. ORTIZ V. M. STAMBACH |
|----------|----|--------------------------|

1               J. ORTIZ V. M. STAMBACH

11:31:01   2   to the post-sentencing facts that you're discussing?

11:31:07   3              MR. PIERCE:  I think so.

11:31:08   4              MR. RUSS:  Yeah, I think the stipulation,

11:31:09   5   your Honor, is the factual and procedural history of the

11:31:14   6   case that we can agree on.  He was convicted

11:31:17   7   such-and-such, and he was sentenced, and his motion,

11:31:25   8   exoneration motion was granted such-and-such a date, and

11:31:27   9   he served such-and-such to such-and-such, those kinds of

11:31:31   10  things.

11:31:31   11             THE COURT:  All right.  And it seems a

11:31:37   12  little unclear as to who is drafting it.  I think, since

11:31:41   13  it's the defense counsel who would need to stipulate to

11:31:44   14  it, it would make sense for to you propose the

11:31:47   15  stipulation.

11:31:47   16             MR. RUSS:  We can do it and we will do it by

11:31:49   17  Friday.

11:31:50   18             THE COURT:  Okay.  And if Plaintiff's

11:31:52   19  counsel can get back to the defense counsel by, let's

11:31:58   20  say, the 22nd with any revisions, and then by an

11:32:04   21  additional deadline, if by April 27th, you can submit to

11:32:09   22  me, either what you've agreed upon with respect to the

11:32:12   23  stipulation or if there is disagreement, explain to me

11:32:17   24  where the disagreement is.  Okay?

11:32:19   25             MR. PIERCE:  Yes, your Honor.

A-1994

58

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ V. M. STAMBACH |
| 11:32:23 | 2 | THE COURT:  Anything else from Plaintiff's |
| 11:32:25 | 3 | counsel? |
| 11:32:26 | 4 | MR. PIERCE:  No, your Honor. |
| 11:32:26 | 5 | THE COURT:  Anything else from defense |
| 11:32:28 | 6 | counsel? |
| 11:32:28 | 7 | MR. RUSS:  Just briefly, your Honor.  I know |
| 11:32:33 | 8 | each side submitted extensive jury charges, and I'm |
| 11:32:37 | 9 | assuming we'll talk about that on the 2nd. |
| 11:32:40 | 10 | THE COURT:  We'll probably talk about it |
| 11:32:42 | 11 | during the charge conference.  But if there is something |
| 11:32:44 | 12 | in particular that you need clarification on before, we |
| 11:32:47 | 13 | -- |
| 11:32:47 | 14 | MR. RUSS:  I'm sorry.  I misspoke.  I meant |
| 11:32:51 | 15 | voir dire questions. |
| 11:32:52 | 16 | THE COURT:  Yeah, the voir dire.  We'll talk |
| 11:32:54 | 17 | about that.  I went through all of them and we'll talk |
| 11:32:58 | 18 | about it more on the 2nd.  In civil cases, I will allow |
| 11:33:01 | 19 | counsel to ask questions of prospective jurors if you |
| 11:33:05 | 20 | want to.  Are the attorneys asking for that? |
| 11:33:10 | 21 | MR. PIERCE:  Yes, your Honor. |
| 11:33:11 | 22 | MR. RUSS:  I typically ask for that, your |
| 11:33:14 | 23 | Honor. |
| 11:33:14 | 24 | THE COURT:  I'll allow that.  I'll give you |
| 11:33:16 | 25 | a time limit, probably.  I'll tell you both they are not |

|          |    |                                                                    |
|----------|----|--------------------------------------------------------------------|
|          | 1  |                                                                    |
| 11:33:20 | 2  | opening statements or closing arguments.  If you are not          |
| 11:33:22 | 3  | asking question and you're making statements, I'll                |
| 11:33:25 | 4  | interrupt you.  But I will allow both.                            |
| 11:33:35 | 5  |              MR. RUSS:  You mean the Court doesn't allow           |
| 11:33:37 | 6  | the kind of brain washing we're permitted in state               |
| 11:33:37 | 7  | court.                                                             |
| 11:33:42 | 8  |              THE COURT:  No brain washing, as much as you          |
| 11:33:43 | 9  | may try.  We can talk about that in further detail on            |
| 11:33:47 | 10 | the 2nd, too.                                                     |
| 11:33:48 | 11 |              Anything else from either side?                      |
| 11:33:50 | 12 |              MR. PIERCE:  No, your Honor.                         |
| 11:33:51 | 13 |              MR. RUSS:  No, your Honor.  Thank you.               |
| 11:33:52 | 14 |              THE COURT:  Thank you very much, everybody.          |
| 11:33:55 | 15 |              MR. PIERCE:  Thank you, Judge.                       |
| 11:33:56 | 16 |              MR. RUSS:  Thank you.                                |

```
              17                    *     *     *

              18              CERTIFICATE OF REPORTER

              19

              20     I certify that the foregoing is a correct transcript

              21  of the record of proceedings in the above-entitled

              22  matter.

              23  S/ Karen J. Clark,  RPR

              24

              25  Official Court Reporter
```

A-1996

**Peter Sahasrabudhe**
Associate
Direct Dial: 716.848.1508
Direct Facsimile: 716.849.0349
*PSahasra@hodgsonruss.com*

April 27, 2022

<u>**Via ECF**</u>

Hon. Elizabeth A. Wolford
Chief United States District Judge
United States District Court
Western District of New York
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York  14614

Dear Chief Judge Wolford:

Re: *Josue Ortiz vs. Mark Stambach, et al.*
<u>Case No. 16-cv-00321 – EAW-MJR</u>

Provided here as **Exhibit A** is a stipulation of undisputed facts that the parties have agreed to.  The parties have a disagreement over whether the term "alleged" should precede the term "confession" in certain factual stipulations, so the word "alleged" appears in parenthesis and in red.  The parties have agreed to discuss the issue of whether the term alleged should appear in the stipulation at the final pre-trial conference with the Court on May 2, 2022.

I am also writing to address counsel's eleventh hour supplemental expert disclosure that was made without leave of Court.  Detective Stambach requests that this submission be disregarded, as the Court did not instruct counsel that he could further supplement his already deficient expert disclosures.  The Court simply instructed that the attorneys were to provide further clarification on whether plaintiff's counsel had ever served Dr. Brian Joseph's 2019 letter report.  There is no evidence that the 2019 letter report from Dr. Brian Joseph was ever served.  Without belaboring the point, counsel's statement that former defense counsel requested authorizations from Dr. Brian Joseph is not proof that the 2019 letter report by Dr. Joseph was ever served in compliance with Fed. R. Civ. P. 26's expert disclosure requirements.  The report was not in the file we received from Buffalo Corporation Counsel's Office, and we did not receive the report until after our initial motions *in limine* were filed in this matter.

Respectfully submitted,

Peter A. Sahasrabudhe

PAS/lml

April 27, 2022
Page 2


Copies to:

Wayne Felle, Esq.
(*ECF*)

A-1998

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSUE ORTIZ,

                              Plaintiff,

        v.                                                      1:16-cv-00321-EAW-MJR

MARK STAMBACH,

                              Defendant.
_____

## STIPULATION OF UNDISPUTED FACTS FOR TRIAL

        **IT IS HEREBY STIPULATED AND AGREED** that the truth of the following

facts shall be deemed admitted and undisputed by the parties at the upcoming trial of this matter:

1. On November 11, 2004, Nelson and Miguel Camacho were murdered in their home at 879 Niagara Street, Buffalo.

2. On November 16, 2004, Josue Ortiz ("Ortiz") was interrogated by Mark Stambach ("Stambach") wherein Stambach, an investigating official, claims Ortiz confessed to his involvement in the murders of the Camacho brothers.

3. On November 17, 2004, Stambach initiated the prosecution of Ortiz by filing a Felony Complaint, based solely on the (alleged) confession.

4. Stambach forwarded the (alleged) confession to the Erie County District Attorney's office knowing that the statement could be used in the prosecution of Ortiz, including at a trial if necessary.

5. On December 8, 2004, an Erie County Grand Jury indicted Ortiz for the murders of the Camacho brothers based on the (alleged) confession taken by Stambach. The (alleged) confession was thus used against Ortiz in a criminal prosecution.

6. On March 22, 2006, Ortiz was convicted of two counts of Manslaughter 1st degree (PL 125.20[1]) after he pled guilty to those charges.

7. On June 16, 2006, Ortiz was sentenced to imprisonment of 25 years.

A-1999

8. Ortiz was incarcerated, and suffered a loss of his liberty, from November 17, 2004, until December 9, 2014, as a result of the felony complaint filed by Stambach, the (alleged) confession taken by Stambach, and his subsequent conviction.

9. As a result of an investigation conducted by the Federal Bureau of Investigation and the United States Attorney's Office for the Western District of New York, and as a result of a re-investigation jointly conducted by the Buffalo Police Department and the New York State Police, law enforcement agencies determined that Josue Ortiz was not involved in the murders of Nelson and Miguel Camacho.

10. The United States Attorney's Office for the Western District of New York, based upon facts learned from the investigation conducted by the Federal Bureau of Investigation, charged three other individuals with the murders of Nelson and Miguel Camacho.

11. These three other individuals were convicted based on their admitted and corroborated involvement in the murders of Nelson and Miguel Camacho.

12. Given the evidence obtained by the FBI and after the arrest of the three others by the United States Attorney's Office for the Western District of New York, a 440-motion hearing was conducted, Judge Thomas P. Franczak, Erie County Court Judge, presiding.

13. After considering evidence, and after the Erie County District Attorney's Office agreed that Ortiz was not involved in the murders, the indictment against Josue Ortiz was dismissed by the Honorable Judge Thomas P. Franczyk.

14. That, in ordering the dismissal of the indictment against Josue Ortiz, Judge Franczyk found that Mr. Ortiz had demonstrated that he was actually innocent of the murders of Nelson and Miguel Camacho.  Thus, the criminal proceedings brought against Ortiz, terminated in his favor.

Dated:     Buffalo, New York
           April 27, 2022

**LAW OFFICES OF**
**WAYNE C. FELLE, P.C.**
*Attorneys for Plaintiff Josue Ortiz*


By: //s Wayne C. Felle
      Wayne C. Felle, Esq.
6024 Main Street
Williamsville, New York  14221

**HODGSON RUSS LLP**
*Attorneys for Defendant Mark Stambach*


By: //s Peter A. Sahasrabudhe
      Hugh M. Russ, Esq.
      Peter A. Sahasrabudhe, Esq.
The Guaranty Building
140 Pearl Street – Suite 100

A-2000

Buffalo, New York  14240
Telephone:  716-856-4000

1

```
 1                   UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3

 4        - - - - - - - - - - - - - X
          JOSUE ORTIZ                    )         16CV321
 5                        Plaintiff   )
          vs.
 6                                          Rochester, New York
          MARK STAMBACH,                         May 3, 2022
 7                        Defendant.          2:00 p.m.
          - - - - - - - - - - - - - X
 8        TRIAL - VOLUME I - PRELIMINARY INSTRUCTIONS/OPENING
          STATEMENTS (MR. FELLE WAS PREVIOUSLY TRANSCRIBED AND
 9        DOCKETED.)

10

11                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE ELIZABETH A. WOLFORD
12                    UNITED STATES MAGISTRATE JUDGE

13

14                    WAYNE C. FELLE, ESQ.
                      Law Office of Wayne C. Felle, P.C.
15                    6024 Main Street
                      Williamsville, NY 14221

16

17                    HUGH M. RUSS, III, ESQ.
                      PETER A. SAHASRABUDHE, ESQ.
18                    Hodgson Russ LLP
                      The Guaranty Building
19                    140 Pearl Street, Suite 100
                      Buffalo, New York 14202

20

21

22

23

24        COURT REPORTER: Karen J. Clark, Official Court Reporter
                           Karenclark1013@AOL.com
25                         100 State Street
                           Rochester, New York 14614
```

A-2002

2

                    J. ORTIZ VS. M. STAMBACH

                      P R O C E E D I N G
                   *              *              *

14:06:32   6

14:06:32   7          THE COURT:  Note the presence of Mr. Russ,
14:06:35   8   Mr. Sahasrabudhe, Mr. Stambach, Mr. Ortiz.  Welcome.  We
14:06:41   9   just need Plaintiff's counsel who seems to have
14:06:44  10   disappeared.  The jury is all back.  It is six minutes
14:06:50  11   after 2:00.  I had told everybody we were starting at
14:06:55  12   2:00.
14:08:16  13          All right.  Mr. Felle is there.  For
14:08:17  14   purposes of consistency, we have a podium set up.
14:08:21  15   Counsel are welcome to use the podium for the opening
14:08:25  16   statements.  If you use the podium, I am going to ask
14:08:29  17   that you remain masked for purposes of consistency,
14:08:33  18   though, if you wanted to make your opening statements
14:08:35  19   from the counsel table, including you, Mr. Russ, if you
14:08:38  20   wanted to move back to where you were for the voir dire
14:08:41  21   and remove your mask, I would let you do that.  So it's
14:08:47  22   up to you.  What you decide to do.  Do you know what you
14:08:50  23   want to do?
14:08:51  24          MR. RUSS:  Yes, Your Honor.  I think I'll
14:08:53  25   use the podium and I'll, of course, use the mask.

A-2003

3

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 14:09:01 | 2 | THE COURT:  Mr. Felle, do you know what you |
| 14:09:07 | 3 | want to do? |
| 14:09:07 | 4 | MR. FELLE:  I do but I will not put my mask |
| 14:09:07 | 5 | on.  I'm having difficulty breathing, I apologize. |
| 14:09:10 | 6 | THE COURT:  Are you okay? |
| 14:09:10 | 7 | MR. FELLE:  I think so. |
| 14:09:14 | 8 | THE COURT:  Okay.  Are you ill? |
| 14:09:14 | 9 | MR. FELLE:  I have not been ill.  I ran |
| 14:09:17 | 10 | miles last night when we left court, I felt great.  When |
| 14:09:22 | 11 | I came in here and I did take off my undershirt, I'm |
| 14:09:26 | 12 | hoping that I would feel better.  I felt light-headed |
| 14:09:29 | 13 | and I'm hoping to take a break. |
| 14:09:31 | 14 | THE COURT:  Okay.  Are you ready to proceed |
| 14:09:34 | 15 | now? |
| 14:09:34 | 16 | MR. FELLE:  I think so, yes. |
| 14:09:34 | 17 | THE COURT:  All right.  So -- but, Mr. |
| 14:09:38 | 18 | Felle, if you're not speaking, I am going to ask you to |
| 14:09:42 | 19 | be masked, can you do that? |
| 14:09:43 | 20 | MR. FELLE:  Yes, I think so. |
| 14:09:44 | 21 | THE COURT:  Okay.  All right.  Let's -- Mr. |
| 14:09:47 | 22 | Felle, are you ready to proceed? |
| 14:09:48 | 23 | MR. FELLE:  Yes. |
| 14:09:52 | 24 | THE COURT:  Mr. Russ, are you ready to |
| 14:09:53 | 25 | proceed? |

A-2004

4

1                    J. ORTIZ VS. M. STAMBACH

14:09:53   2            MR. RUSS:  Yes, Your Honor, thank you.

14:09:55   3            THE COURT:  Okay.  Let's bring our jury back

14:09:57   4    in.

14:10:11   5            MR. FELLE:  Were we able to get the air back

14:10:13   6    on?

14:10:13   7            THE COURT:  I think the air is on.  We were

14:10:16   8    getting complaints earlier.  So there is air in the

14:10:38   9    courtroom.

14:11:09  10            (Whereupon the jury is escorted into the

14:11:12  11    courtroom.)

14:11:17  12            THE COURT:  All right, we wanted to confuse

14:11:19  13    all of you.  So we totally renumbered everything.  And

14:11:23  14    this is a test.  So No. 4 is Ms. Howe.  No. 3 is Mr.

14:11:33  15    Lee.  Ms. Pisciotti, Ms. Pisciotti, I'm very impressed.

14:11:39  16    You walked in though and knew exactly where to go.  You

14:11:42  17    were kind of seated there before, right?

14:11:47  18            JUROR:  I remembered my two.

14:11:50  19            THE COURT:  Ms. Erhardt, you are at the end

14:11:53  20    there, No. 8.  Ms. Montanarella-Kuehn --

14:11:53  21            JUROR:  Kuehn.

14:11:53  22            THE COURT:  Kuehn.  Can I say, Kuehn?  Thank

14:12:01  23    you very much.  And Ms. Voci?

14:12:01  24            JUROR:  Voci.

14:12:01  25            THE COURT:  Voci.  I'm sorry.

A-2005

5

| | |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 14:12:01 2 | JUROR:  It's okay. |
| 14:12:19 3 | THE COURT:  You are No. 5. |
| 14:12:24 4 | Ms. Tronnes, you are six.  There.  Welcome |
| 14:12:33 5 | back.  So I hope everybody had a decent lunch.  We're |
| 14:12:37 6 | now ready to start our trial.  As you can see, ladies |
| 14:12:41 7 | and gentlemen, Mr. Ortiz is here as well.  And he has |
| 14:12:45 8 | joined Mr. Felle at the counsel's table.  So ladies and |
| 14:12:49 9 | gentlemen, welcome back from lunch.  The case is now |
| 14:12:53 10 | officially on trial and you are the jurors in the case. |
| 14:12:55 11 | Now that you have been sworn in, I am going |
| 14:12:57 12 | to give you some preliminary instructions to guide you |
| 14:13:01 13 | in your participation in the trial.  At the end of the |
| 14:13:05 14 | case, I will give you much more extensive instructions |
| 14:13:09 15 | about how to consider the evidence and reach a verdict. |
| 14:13:13 16 | But these preliminary instructions are the so-called |
| 14:13:17 17 | rules of the road to guide you until we reach an end. |
| 14:13:22 18 | Before I give the preliminary instructions, I want to |
| 14:13:25 19 | apologize in advance for what I call the difference |
| 14:13:28 20 | between court time and real-time.  When I tell you we |
| 14:13:33 21 | intend to begin at 9:00 a.m. for example, I mean that. |
| 14:13:37 22 | And when I tell you we're going to take a fifteen-minute |
| 14:13:41 23 | break, I intend to limit it to fifteen minutes. |
| 14:13:44 24 | However, sometimes legal matters come up |
| 14:13:47 25 | that require state discussions outside of your presence. |

A-2006

6

J. ORTIZ VS. M. STAMBACH

14:13:50  2   When that occurs, we may run longer.  You may be back in

14:13:55  3   the jury room fuming, thinking, well, that is a heck of

14:13:58  4   a way to run a business, but I trust that you realize

14:14:01  5   that what we're here to do is justice.  And sometimes,

14:14:04  6   that simply is not capable of a minute-by-minute time

14:14:08  7   schedule.  Also, whenever I instruct you on the law,

14:14:14  8   you'll see me reading from my notes.  You may think,

14:14:18  9   well, you're the judge, you're supposed to know the law.

14:14:21  10  However, all of us, me as the judge, you as the jury,

14:14:25  11  the lawyers, the parties, we are all bound by the laws

14:14:29  12  of our nation exactly as those laws provide.  Therefore,

14:14:34  13  whenever I instruct you on the law, I'm going to make

14:14:38  14  every effort to get it exact.

14:14:42  15        Now, you may notice during the trial either

14:14:44  16  myself or our courtroom deputy, Ms. Samuel, using our

14:14:49  17  respective computers.  I can assure you that we are not

14:14:53  18  playing video games or surfing the internet.  Ms. Samuel

14:14:58  19  has records to enter and from time to time, I may be

14:15:01  20  researching a matter of law.  So please do not be

14:15:05  21  distracted if you see either of us using our computers.

14:15:09  22  It will be your duty to find from the evidence what the

14:15:13  23  facts are.  The function of the jury is to decide the

14:15:18  24  disputed fact issues in the case.  In order to discharge

14:15:25  25  this duty, it is important that you pay close attention

1                    J. ORTIZ VS. M. STAMBACH

14:15:27  2    to the evidence and listen carefully to the witnesses as

14:15:32  3    they testify, and form no judgment with respect to any

14:15:36  4    witness or the outcome of the case as the trial moves

14:15:41  5    forward.  You must keep an open mind throughout the

14:15:47  6    entire trial.  Nothing that I say or do during the

14:15:53  7    course of the trial is intended to indicate or should be

14:15:57  8    taken by you as indicating what your verdict should be.

14:16:02  9    You will then have to apply those facts to the law as I

14:16:07  10   give it to you.  You must follow that law whether you

14:16:11  11   agree with it or not.  The evidence from which you will

14:16:16  12   find the facts will consist of the testimony of

14:16:18  13   witnesses, documents, and other things received into the

14:16:23  14   record as exhibits.  And any facts that the lawyers

14:16:27  15   agree or stipulate to or the Court may instruct you to

14:16:32  16   find.  Certain things are not evidence and must not be

14:16:38  17   considered by you.  I will list them for you now.

14:16:42  18   Statements, arguments, and questions by the lawyers are

14:16:46  19   not evidence.

14:16:50  20            Objections to questions are not evidence.

14:16:55  21   Lawyers have an obligation to their clients to make an

14:16:58  22   objection when they believe the evidence being offered

14:17:01  23   is improper under the rules of evidence.  You should not

14:17:05  24   be influenced by the objection or by my ruling on it.

14:17:10  25   If the objection is sustained, ignore the question.  If

                    J. ORTIZ VS. M. STAMBACH

14:17:15   2   it is overruled, treat the answer like any other.  If

14:17:21   3   you are instructed that some item of evidence is

14:17:25   4   received for a limited purpose only, you must follow

14:17:29   5   that instruction.

14:17:32   6           Testimony, that the Court had excluded or

14:17:35   7   told you to disregard is not evidence and must not be

14:17:39   8   considered.  Anything you may have seen or heard outside

14:17:45   9   of the courtroom is not evidence and must be

14:17:49  10   disregarded.  You are to decide the case solely on the

14:17:53  11   evidence presented here in the courtroom.

14:17:56  12           Now, there are two kinds of evidence:

14:18:00  13   Direct and circumstantial.  Direct evidence is direct

14:18:06  14   proof of a fact such as testimony of an eyewitness.

14:18:13  15   Circumstantial evidence is proof of facts from which you

14:18:18  16   may infer or conclude that other facts exist.

14:18:24  17           Again, I will give you further instructions

14:18:26  18   on these as well as other matters at the end of the

14:18:30  19   case, but keep in mind that you may consider both kinds

14:18:34  20   of evidence.  In other words, both direct and

14:18:39  21   circumstantial evidence may be considered.  It will be

14:18:45  22   up to you to decide which witnesses to believe, which

14:18:49  23   witnesses not to believe, and how much of any witness's

14:18:52  24   testimony to accept or reject.  It is important that you

14:18:57  25   carefully observe the witnesses as they testify because

```
              1                J. ORTIZ VS. M. STAMBACH
14:19:01      2   a witness' manner of testifying is a factor that may
14:19:05      3   play an important role or an important part in your
14:19:09      4   reaching a judgment as to whether or not you can accept
14:19:13      5   that witness's testimony as reliable.  I will give you
14:19:17      6   some guidelines for determining the credibility of
14:19:20      7   witnesses at the end of the case.
14:19:26      8                Now, as I mentioned during the voir dire,
14:19:28      9   the jury selection, this is a civil rights lawsuit
14:19:31     10   brought by the plaintiff, Josue Ortiz.  Mr. Ortiz was
14:19:36     11   arrested on November 16th, 2004, and convicted in 2006
14:19:41     12   for the murders of Nelson and Miguel Camacho.  Which
14:19:45     13   occurred on the West Side of the City of Buffalo on
14:19:48     14   November 11th, 2004.  In 2012, the United States
14:19:53     15   attorney for the Western District of New York determined
14:19:57     16   that three other individuals were the true perpetrators
14:20:01     17   of the murders.  Those individuals were subsequently
14:20:05     18   charged and convicted for the murders.  In December
14:20:10     19   2014, Mr. Ortiz was released from prison.  And in May of
14:20:14     20   2015, his conviction was officially vacated based on his
14:20:19     21   innocence of the murders.  Mr. Ortiz alleges that he was
14:20:23     22   wrongfully convicted of the murders based on the
14:20:26     23   wrongful and improper conduct of the defendant, Mark
14:20:30     24   Stambach, who is a former detective of the Buffalo
14:20:34     25   Police Department's Major Crimes Unit and Homicide
```

A-2010

10

|     |                                                          |
| --- | -------------------------------------------------------- |
| 1   | J. ORTIZ VS. M. STAMBACH                                  |

14:20:37  2    Squad.  Mr. Ortiz has asserted claims against Mr.

14:20:41  3    Stambach for malicious prosecution, violation of his

14:20:46  4    right against self-incrimination, and fabrication of

14:20:50  5    evidence-based on manufacturing a false confession.  Mr.

14:20:55  6    Ortiz seeks significant damages for these claims.  Mr.

14:21:00  7    Stambach, however, maintains that he did not act

14:21:03  8    improperly or violate any of Mr. Ortiz's civil or

14:21:08  9    constitutional rights.  Specifically, Mr. Stambach

14:21:13  10   maintains that Mr. Ortiz voluntarily confessed to the

14:21:17  11   murders which created probable cause to arrest and

14:21:23  12   prosecute him for the murders.  Your job in the case

14:21:26  13   will be to evaluate the claims in accordance with the

14:21:30  14   instructions that I give you.

14:21:33  15          Now, a quick word about civil cases, I

14:21:36  16   mentioned this during voir dire but I want to reiterate

14:21:39  17   it.  As you know, this is a civil case; and as a result

14:21:42  18   of that, the plaintiff has the burden of proving the

14:21:45  19   material allegations of the complaint by what's called a

14:21:51  20   preponderance of evidence.  If, after considering all of

14:21:57  21   the testimony, you are satisfied that the plaintiff has

14:22:01  22   carried his burden on each essential point of the cause

14:22:05  23   of action under consideration, then you must find for

14:22:09  24   the plaintiff on that claim.  If, after such

14:22:13  25   consideration, you find that the testimony of both

A-2011

11

|       | 1  | J. ORTIZ VS. M. STAMBACH |
|-------|----|--------------------------|
| 14:22:16 | 2  | parties is in balance or equally probable then the |
| 14:22:24 | 3  | plaintiff has failed to sustain his burden and must |
| 14:22:26 | 4  | find for the defendant.  Again, I will give you further |
| 14:22:30 | 5  | instructions on all of these issues at the conclusion of |
| 14:22:34 | 6  | the proof.  But bear in mind that in this respect, a |
| 14:22:37 | 7  | civil case is different from a criminal case. |
| 14:22:41 | 8  | I will now briefly describe to you how the |
| 14:22:47 | 9  | trial will be conducted.  We will start with what are |
| 14:22:50 | 10 | called opening statements.  The attorneys representing |
| 14:22:52 | 11 | the plaintiff and the Defendant will before any evidence |
| 14:22:55 | 12 | is received appear before you and make opening |
| 14:22:58 | 13 | statements.  This is a sort of framework or reference as |
| 14:23:03 | 14 | to what the case is about and the attorneys will set |
| 14:23:05 | 15 | forth what they believe the evidence will show.  These |
| 14:23:09 | 16 | statements by the attorneys are made for the purpose of |
| 14:23:12 | 17 | helping you follow the testimony with reference to the |
| 14:23:16 | 18 | issues in the case.  However, as I previously instructed |
| 14:23:20 | 19 | you, they are not evidence.  In other words, statements |
| 14:23:23 | 20 | of attorneys are not evidence and cannot substitute for |
| 14:23:26 | 21 | evidence.  The only evidence that you may act upon is |
| 14:23:31 | 22 | that which you will hear from a witness along with any |
| 14:23:34 | 23 | documents or other items that are admitted into |
| 14:23:38 | 24 | evidence. |
| 14:23:40 | 25 | After the opening statements, the plaintiff |

```
              1                J. ORTIZ VS. M. STAMBACH

14:23:42      2    will offer his proof.  This is called a Plaintiff's

14:23:47      3    direct case.  Upon the conclusion of the Plaintiff's

14:23:52      4    case, the defendant will offer his proof.  Upon the

14:23:57      5    conclusion of all of the testimony, the lawyers will

14:24:00      6    again address you.  This is called a summation or

14:24:04      7    closing argument.  And each lawyer will urge you to

14:24:09      8    consider the arguments that he believes support his

14:24:12      9    client's position.  You should, of course, listen

14:24:20     10    attentively to the lawyers.  The determination as to

14:24:22     11    whether you accept any argument advanced before you by

14:24:26     12    the plaintiff or the defendant is entirely up to you.

14:24:31     13    Following the lawyer's summations, I will instruct you

14:24:34     14    as to the law.  Then, at that point, you will go into

14:24:39     15    the jury room and undertake your fact-finding function.

14:24:43     16    You, as the jury, are the ultimate decision-makers in

14:24:49     17    finding the facts.  This must be based on the evidence

14:24:53     18    presented before you.  Nothing I say or do during the

14:24:59     19    course of the trial is intended to indicate nor should

14:25:04     20    be taken by you as indicating what your verdict should

14:25:07     21    be.  That is not my job.  I am not the fact finder.  I

14:25:18     22    am in charge of the law.  But you as the jury are solely

14:25:21     23    responsible for determining the facts.

14:25:23     24                  Now, a few words about your conduct as

14:25:25     25    jurors.  These are my admonitions and as I warned during
```

A-2013

13

J. ORTIZ VS. M. STAMBACH

14:25:28  2   jury selection, you will hear me repeat these throughout

14:25:31  3   the course of the trial.  Please do not discuss the case

14:25:35  4   either among yourselves or with anyone else during the

14:25:39  5   course of the trial.  This includes discussing the case

14:25:41  6   in person, in writing, by phone, electronic messages,

14:25:46  7   text messaging, e-mail, Facebook, Twitter, blogging, any

14:25:47  8   internet chat room website, or other feature.  In

14:25:51  9   fairness to both sides, you should keep an open mind

14:25:55  10  throughout the trial reaching your conclusion only

14:25:59  11  during your final deliberations after all of the

14:26:02  12  evidence is in and after you've heard the attorney's

14:26:05  13  summations and my instructions to you on the law and

14:26:08  14  then, and only then, after you've had a chance to

14:26:13  15  discuss the evidence with the other members of the Jury.

14:26:16  16  We want you to decide this case solely on the evidence

14:26:19  17  presented in the courtroom and not on the basis of

14:26:22  18  anything anyone who has not heard the evidence may think

14:26:25  19  about the case.  If anyone does try to discuss the case

14:26:29  20  with you or does anything else you think is improper,

14:26:33  21  then you should of course immediately walk away.

14:26:35  22  However, additionally, you should report that fact to me

14:26:38  23  as soon as possible and you can do that by letting Ms.

14:26:41  24  Samuel or one of our court security officers know.  They

14:26:45  25  will then make arrangements for you to meet with me.

A-2014

14

                        J. ORTIZ VS. M. STAMBACH

14:26:47   2   You should not however discuss with any other juror that

14:26:51   3   fact or any other fact that you feel necessary to bring

14:26:53   4   to my attention.  That is, do not seek advice from

14:26:57   5   another juror.  When in doubt, when on the side of

14:27:02   6   caution, and let me know if you think something is not

14:27:04   7   proper.

14:27:06   8           You may hear testimony during the trial

14:27:09   9   about particular locations in the Western District of

14:27:10   10  New York.  You may be tempted to visit the locations.

14:27:14   11  Please do not do so.  Because of the time that elapses

14:27:18   12  before a case comes to trial, substantial changes may

14:27:22   13  have occurred at the location in question since the

14:27:25   14  events that resulted in this trial.  Also, in making a

14:27:30   15  visit without the benefit of explanation, you might get

14:27:34   16  a mistaken impression.  For even if you happen to live

14:27:38   17  near the location, please avoid going to it or passing

14:27:42   18  it until the case is over.  Beyond that, do not try to

14:27:46   19  do any research or make any investigation about the case

14:27:50   20  on your own.

14:27:53   21          Although it's a normal human tendency to

14:27:56   22  talk to people with whom one comes into contact, please

14:28:00   23  do not talk either in or out of the courtroom with any

14:28:04   24  of the lawyers, the parties, or any witnesses.  And by

14:28:07   25  this I mean not only do not talk about the case but do

A-2015

15

J. ORTIZ VS. M. STAMBACH

14:28:10   2    not talk to them at all even to pass the time of day.

14:28:14   3    In no other way can all parties be assured of the

14:28:18   4    absolute impartiality they are entitled to expect from

14:28:22   5    you as jurors.  These courtrooms are open courtrooms.

14:28:25   6    That means anyone can come in and watch the proceedings

14:28:27   7    including the media.  Therefore in the event there are

14:28:31   8    any media accounts about this case, you are not to read,

14:28:35   9    watch, or listen to any such accounts.  Similarly, do

14:28:39  10    not try to access any information about the case or do

14:28:42  11    research on any issue that arises in the case from any

14:28:45  12    outside source including dictionaries, reference books,

14:28:49  13    or anything on the internet.  You are in the best

14:28:53  14    decision to decide what happens in this -- or the best

14:28:57  15    position to decide what happens in this courtroom and

14:29:00  16    you do not need to rely on any second-hand account.

14:29:05  17    Your sworn duty is to decide this case solely and wholly

14:29:11  18    on the evidence presented in this courtroom.

14:29:14  19              Now, let me talk about note-taking.  As you

14:29:17  20    can see, Ms. Samuel has distributed notepads and pens

14:29:22  21    for your use.  If you end up needing another notepad,

14:29:26  22    let her know and we'll get you more.  I want to give you

14:29:29  23    a couple of warnings about taking notes.  First, do not

14:29:33  24    allow your note-taking to distract you from listening

14:29:38  25    carefully to the evidence and testimony that is being

                          J. ORTIZ VS. M. STAMBACH

14:29:40   2   presented.  If you prefer not to take notes at all but

14:29:43   3   simply to listen, please feel free to do so.  The fact

14:29:47   4   that a particular juror has taken notes entitles that

14:29:50   5   juror's views to no greater weight than those of any

14:29:54   6   other juror.  Please remember also that not everything

14:29:58   7   you write down is necessarily what was said.  Thus, when

14:30:03   8   you return to the jury room to discuss the case, do not

14:30:07   9   assume simply because something appears in somebody's

14:30:09  10   notes that it necessarily took place in court.  Instead,

14:30:15  11   it is your collective memory that must control as you

14:30:19  12   deliberate upon the verdict.  Please leave your notes on

14:30:23  13   your chair at every recess and at the end of the day.

14:30:28  14   Ms. Samuel will collect them and then return them to

14:30:31  15   your chair the following day.  In other words, they

14:30:36  16   can't go home with you.  The notes must stay here.  You

14:30:40  17   will have your notes available to you during your final

14:30:42  18   deliberation.  But you should make use of them only as

14:30:46  19   an aid to your memory.  In other words, you should not

14:30:48  20   give your notes any precedence over your independent

14:30:52  21   recollection of the evidence or the lack of evidence,

14:30:55  22   and neither should you be unduly influenced by the notes

14:30:59  23   of other jurors.  If you need testimony read back, Ms.

14:31:03  24   Clark will be available to do so.  As I mentioned

14:31:06  25   earlier, she is creating the official trial transcripts

A-2017

17

1                          J. ORTIZ VS. M. STAMBACH

14:31:09  2   of these proceedings.  I emphasize that notes that are

14:31:14  3   not entitled to any greater weight than the memory or

14:31:18  4   impression of each juror as to what the testimony may

14:31:21  5   have been.

14:31:22  6              Now, let me talk to you about the schedule.

14:31:24  7   Before we get much further.  I know that I had mentioned

14:31:29  8   it earlier, but I just want to continue with what -- so

14:31:36  9   tomorrow, we'll go today until we finish the opening

14:31:39  10  statements, and then we'll be done for today.  Tomorrow

14:31:43  11  we'll start at 9:00 a.m., so please plan to be here by

14:31:47  12  quarter to 9:00 if you could.  You'll report to the

14:31:52  13  deliberation room when you come in tomorrow.  We'll take

14:31:55  14  a lunch break tomorrow about noon to 1:00 p.m., and then

14:32:00  15  we'll break tomorrow by 3:30.  Thursday, May 5th, again,

14:32:06  16  we'll start at 9:00 a.m., we'll take a lunch break

14:32:13  17  probably about 11:45 a.m. on Thursday, and then resume

14:32:19  18  at 1:00 p.m.  And then my plan is to go on Thursday

14:32:24  19  until 4:30.  And then on Friday, which is May 6th, we'll

14:32:30  20  start at 9:00 a.m., and we will not take a lunch break

14:32:35  21  on Friday, but we'll end by 2:00 p.m. on Friday.  So

14:32:39  22  feel free to bring snacks or whatever you would like to

14:32:42  23  bring or even lunch.  On Friday, we'll take breaks.  We

14:32:45  24  just won't take a full one hour-lunch break.  The plan

14:32:49  25  then is to be in session on Monday from 9:00 a.m. to

A-2018

18

1                     J. ORTIZ VS. M. STAMBACH

14:32:53  2    5:00 p.m.  Tuesday, May 10th, we will not be in session.

14:33:00  3    And then Wednesday, May 11th, if we're still going at

14:33:05  4    that point, we probably will start around 1:00 p.m. that

14:33:09  5    day.  It will be an afternoon session.  I'll give you

14:33:13  6    more details as we get closer to that.  That is the plan

14:33:17  7    at this point.  I will before each day give you a

14:33:22  8    reminder as to what the schedule is the next day but I

14:33:25  9    just wanted to give you a framework as to where things

14:33:29  10   stood at this point.  So that completes my preliminary

14:33:31  11   instructions.  What I'm going to do now, ladies and

14:33:33  12   gentlemen, is I'm going to read to you a stipulation of

14:33:36  13   undisputed facts for the trial.

14:33:39  14            Now, a stipulation of facts is an agreement

14:33:42  15   between the parties that a certain fact is true.  And

14:33:46  16   you must regard these agreed facts as true.  This

14:33:50  17   eliminates the need to have life witness testimony or

14:33:54  18   documents entered into evidence because the parties have

14:33:56  19   stipulated that in fact, these facts are true.  So I am

14:34:01  20   going to read the stipulation of undisputed facts for

14:34:04  21   trial and we'll mark this as a court exhibit and it

14:34:08  22   states as follows:  On November 11th, 2004, Nelson and

14:34:15  23   Miguel Camacho were murdered in their home at 879

14:34:21  24   Niagara Street, Buffalo.  On November 16th, 2004, Josue

14:34:29  25   Ortiz was interrogated by Mark Stambach, wherein

A-2019

19

```
            1              J. ORTIZ VS. M. STAMBACH

14:34:36    2   Stambach, an investing official claims Ortiz confessed

14:34:39    3   to his involvement in the murders of the Camacho

14:34:42    4   brothers.  On November 17th, 2004, Stambach initiated

14:34:50    5   the prosecution of Ortiz by filing a felony complaint

14:34:58    6   based solely on the alleged confession.  Stambach

14:35:01    7   forwarded the alleged confession to the Erie County

14:35:06    8   District Attorney's Office, knowing that the statement

14:35:10    9   could be used in the prosecution of Ortiz including a

14:35:12   10   trial if necessary.  On December 8th, 2004, an Erie

14:35:21   11   County Grand Jury indicted Ortiz for the murders of the

14:35:25   12   Camacho brothers.  Stated in the alleged confession

14:35:29   13   taken by Stambach.  The alleged confession was thus used

14:35:33   14   against Ortiz in criminal prosecution.  On March 22nd,

14:35:40   15   2006, Ortiz was convicted of two counts of Manslaughter

14:35:49   16   First Degree in violation of the New York State Penal

14:35:51   17   Law Section 125.20 subparagraph one after he pled guilty

14:35:58   18   to those charges.  On June 16th, 2006, Ortiz was

14:36:05   19   sentenced to imprisonment of 25 years.  Ortiz was

14:36:12   20   incarcerated and suffered a loss of his Liberty from

14:36:17   21   November 17th, 2004 until December 9th, 2014.  As a

14:36:25   22   result of the felony complaint filed by Stambach.  The

14:36:29   23   alleged confession was taken by Stambach and his

14:36:32   24   subsequent conviction.  As a result of an investigation

14:36:37   25   conducted by the Federal Bureau of Investigation and the
```

```
              1              J. ORTIZ VS. M. STAMBACH

14:36:41      2    United States Attorney's Office for the Western District

14:36:46      3    of New York and as a result of a reinvestigation jointly

14:36:49      4    conducted by the Buffalo Police Department and the New

14:36:54      5    York State Police, law enforcement agencies determined

14:36:57      6    that Josue Ortiz was not involved in the murders of

14:37:02      7    Nelson and Miguel Camacho.  The United States Attorney's

14:37:08      8    Office for the Western District of New York, based upon

14:37:11      9    facts learned from the investigation conducted by the

14:37:14     10    Federal Bureau of Investigation, charged three other

14:37:17     11    individuals with the murders of Nelson and Miguel

14:37:21     12    Camacho.  These three other individuals were convicted

14:37:26     13    based on their admitted and corroborated involvement in

14:37:30     14    the murders of Nelson and Miguel Camacho.  Given the

14:37:39     15    evidence obtained by the FBI and after the arrest of the

14:37:42     16    three others by the United States Attorney's Office for

14:37:46     17    the Western District of New York, a 440 motion hearing

14:37:51     18    was conducted.  Judge Thomas P. Franczyk, Erie County

14:38:01     19    court judge presiding.  After considering evidence and

14:38:04     20    after the Erie County District Attorney's Office agreed

14:38:08     21    that Ortiz was not involved in the murders, the

14:38:12     22    indictment against Josue Ortiz was dismissed by the

14:38:18     23    Honorable Judge Thomas P. Franczyk.  That in ordering

14:38:24     24    the dismissal of the indictment against Josue Ortiz,

14:38:30     25    Judge Franczyk found that Mr. Ortiz had demonstrated
```

A-2021

21

                    J. ORTIZ VS. M. STAMBACH

14:38:35  2  that he was actually innocent of the murders of Nelson

14:38:39  3  and Miguel Camacho.  Thus, the criminal proceedings

14:38:43  4  brought against Ortiz terminated in his favor.

14:38:48  5          All right, ladies and gentlemen, that

14:38:49  6  completes my reading of the stipulation of facts and

14:38:52  7  we're now ready to turn to opening statements.  I've

14:38:54  8  told the attorneys that they can either remain seated at

14:38:58  9  the counsel table and remove their masks or go up to the

14:39:01  10  podium but they have to keep their masks on if they are

14:39:05  11  at the podium.  So with that being said, Mr. Felle,

14:39:08  12  whenever you are ready, you may proceed.

14:39:08  13          (Whereupon, the opening statement by Mr.

14:39:08  14  Felle was previously transcribed and filed at docket

14:39:08  15  No.154.)

15:09:27  16          THE COURT:  Thank you, Mr. Felle.  Does

15:09:27  17  anybody need a break before Mr. Russ' opening?  All

15:09:32  18  right.  Mr. Russ, whenever you're ready.

15:09:35  19          MR. RUSS:  Thank you, Your Honor.  I'm going

15:09:45  20  to go to the podium, Your Honor, so forgive me for the

15:09:49  21  mask, but I wanted to get closer to you.  May I please

15:09:52  22  the Court, counsel, ladies and gentlemen of the Jury.

15:09:59  23  Thank you for agreeing to serve.  This trial is

15:10:03  24  important for the parties, it's also important for our

15:10:07  25  justice system.  Judge Wolford is important, the lawyers

```
              1              J. ORTIZ VS. M. STAMBACH

15:10:11      2    are important, the court reporter is important, the

15:10:15      3    courtroom deputy is important, but the most important

15:10:18      4    part of this case is you.  So I thank you before we even

15:10:26      5    start.

15:10:32      6              Josue Ortiz may not have pulled the trigger

15:10:35      7    on the AK-47 rifle that killed the Camacho brothers, but

15:10:42      8    he is not innocent.  There is an old adage, an old

15:10:49      9    saying among trial lawyers, "don't let the facts get in

15:10:53     10    the way of a good story."  You've just heard a good

15:10:58     11    story from Mr. Felle.  Here are the facts that you're

15:11:03     12    going to hear during this case that ruin the good story.

15:11:10     13    The evidence will show that Mr. Ortiz came to Buffalo

15:11:18     14    from Puerto Rico in May of 2004 and that he lived on the

15:11:24     15    West Side of Buffalo where there is a large Puerto Rican

15:11:29     16    population.  For six months in Buffalo, he did not have

15:11:37     17    a conventional job to support himself.  He sold cocaine

15:11:43     18    for the Camacho brothers.  The Camacho brothers, as you

15:11:48     19    heard, and as you will hear, were major drug dealers on

15:11:52     20    the West Side of Buffalo, and gang members in a Latin

15:11:59     21    gang.

15:12:01     22              MR. FELLE:  Judge, I have to object to that

15:12:02     23    assertion.  That is not --

15:12:04     24              THE COURT:  Well, wait a minute.  Counsel,

15:12:06     25    approach with your masks on.
```

A-2023

                          J. ORTIZ VS. M. STAMBACH

15:12:20  2            (Sidebar discussion.)

15:12:25  3            MR. FELLE:  Sure.  Is that black noise?  I

15:12:29  4    thought they could hear us.  So I have been on this file

15:12:33  5    for quite a long time.  There is no evidence that

15:12:36  6    suggests that my client was selling cocaine for the

15:12:39  7    Camacho brothers.

15:12:40  8            MR. RUSS:  His own EBT testimony.

15:12:44  9            THE COURT:  Do you have the testimony?  Can

15:12:46  10   I take a look at it?

15:12:48  11            Ladies and gentlemen, feel free to stand up

15:12:50  12   and stretch and give us a minute here.

15:14:39  13            MR. RUSS:  I'm not finding it, Your Honor.

15:14:41  14   I'll move on if you want, or you can or I will make some

15:14:48  15   kind of corrective statement.  I'm not finding it.

15:14:51  16            THE COURT:  You think it's in his deposition

15:14:51  17   transcript?

15:14:55  18            MR. RUSS:  Yes.  And through -- all through

15:14:56  19   the records and police stuff.

15:14:58  20            THE COURT:  Well, for right now, if you

15:15:01  21   can't cite to anything in the record that supports that,

15:15:03  22   I'll strike that and --

15:15:05  23            MR. FELLE:  That is truly prejudicial, Your

15:15:08  24   Honor.

15:15:08  25            THE COURT:  What do you want me to do, Mr.

                        J. ORTIZ VS. M. STAMBACH

15:15:11   2   Felle?

15:15:11   3              MR. FELLE:  It's almost a basis for a

15:15:13   4   mistrial for you to have said that.

15:15:14   5              THE COURT:  I think --

15:15:15   6              MR. FELLE:  But you should strike what he

15:15:17   7   said.

15:15:18   8              THE COURT:  I think it's an issue of whether

15:15:20   9   it's in the deposition testimony.

15:15:21  10              Okay.  We'll take a break and you can find

15:15:24  11   it, okay?

15:15:24  12              (Whereupon, the proceedings continued.)

15:15:25  13              THE COURT:  All right.  Ladies and

15:15:27  14   gentlemen, we're going to have to take a break.  And I

15:15:29  15   would just remind you, don't talk about the case among

15:15:32  16   yourselves or with anybody else and we'll have you back

15:15:35  17   out here as soon as possible.  Thank you for your

15:15:38  18   patience.

15:15:50  19              (Whereupon the jury is escorted from the

15:15:52  20   courtroom.)

15:16:20  21              So, defense counsel, find the basis for the

15:16:23  22   record and just let me know.

15:16:30  23              MR. RUSS:  Yes, Your Honor.

15:16:36  24              THE COURT:  Okay.  Thank you.

15:22:51  25              So Mr. Russ, were you able to find support

J. ORTIZ VS. M. STAMBACH

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                               |
| 15:22:53 | 2  | for your statement in the record?                      |
| 15:22:54 | 3  | MR. RUSS:  Yes, Your Honor, and I apologize             |
| 15:22:56 | 4  | for my fumbling at the time.  There are actually -- I   |
| 15:22:59 | 5  | actually, in the few minutes that we looked, I found two |
| 15:23:03 | 6  | documents both listed as exhibits by the plaintiff that |
| 15:23:08 | 7  | support the assertion I just made.  Do you want me to   |
| 15:23:15 | 8  | identify them?                                          |
| 15:23:16 | 9  | THE COURT:  Yes, could you?                             |
| 15:23:18 | 10 | MR. RUSS:  The first is, I believe, a P73               |
| 15:23:24 | 11 | City of Buffalo Police Department.                      |
| 15:23:26 | 12 | THE COURT:  What exhibit number is it?                  |
| 15:23:27 | 13 | MR. RUSS:  We've called it Defendant's                  |
| 15:23:30 | 14 | Exhibit 402.                                            |
| 15:23:30 | 15 | THE COURT:  Do you know what the Plaintiff's            |
| 15:23:32 | 16 | exhibit number is?                                      |
| 15:23:35 | 17 | MR. RUSS:  It's Exhibit 7, I believe, Your              |
| 15:23:37 | 18 | Honor.                                                  |
| 15:23:37 | 19 | THE COURT:  Go ahead and explain on the                 |
| 15:23:39 | 20 | record what you're referring to.                        |
| 15:23:46 | 21 | MR. RUSS:  Dated November 15th, 2004, it's a            |
| 15:23:49 | 22 | memorandum prepared by Detective Vaughn who will be a   |
| 15:23:52 | 23 | witness here, recording a conversation that he had with |
| 15:23:56 | 24 | Mr. Ortiz.  And it says I quote, "Ortiz stated that he  |
| 15:24:04 | 25 | spoke some English but was more comfortable speaking    |

J. ORTIZ VS. M. STAMBACH

Spanish.  Police officer Torres told us the following
after conversing in Spanish with Ortiz.  Ortiz knew the
deceased Camacho brothers.  They were members of a
cocaine ring that was headed up by Josue and Jose
Caranzo, C-A-R-A-N-Z-O.  Ortiz was also a member of this
ring.  The Caranzo brothers rented an apartment in
Ortiz's name at 142 Germane Upper.  Ortiz lived there
until moving to 19 Heights.  Ortiz claims the Caranzo's
stored large quantities of cocaine at the Germane
address."

THE COURT:  What is the date of that?

MR. RUSS:  November 15th, 2004.

THE COURT:  Okay.

MR. RUSS:  And the second document is the
summary that was prepared by Detective Mary Evans going
through all of the records that the Buffalo Police
Department had at the time and that account is basically
the same, it's a summary of that.  And that is listed on
Plaintiff's exhibits as I think it's 17.

MR. SAHASRABUDHE:  S 4, Your Honor.

THE COURT:  S 4?

MR. RUSS:  Trial Exhibit 4, Your Honor.

THE COURT:  And this is a summary from Ms.
Evans and it states, what it summarizes the prior memo

                        J. ORTIZ VS. M. STAMBACH

15:26:21    2   that you just referenced?

15:26:22    3              MR. RUSS:  Yes, Your Honor, of the same

15:26:23    4   information.

15:26:23    5              THE COURT:  Okay.  What about it being in

15:26:25    6   Mr. Ortiz's EBT transcript?

15:26:28    7              MR. RUSS:  I was not able to find that, Your

15:26:30    8   Honor.

15:26:30    9              THE COURT:  Okay.  So -- I mean, Mr. Felle,

15:26:35   10   it does seem as though, I guess, part of your client's

15:26:38   11   alleged confession, confessed to sounds as though what

15:26:42   12   I'm hearing is that it involved a confession to selling

15:26:46   13   cocaine for the Camacho brothers.

15:26:50   14              MR. FELLE:  Your Honor, let me just --

15:26:52   15              THE COURT:  I can't hear you, but speak into

15:26:54   16   the microphone.

15:26:55   17              MR. FELLE:  Sure.  Well, that is a pretty

15:26:58   18   far extension from what it actually states in the

15:27:04   19   document that Mr. Russ just read.  Mr. Russ is stating

15:27:07   20   that he is a member of a more exaggerated ring if you

15:27:11   21   will.  There is nothing in there to indicate that Mr.

15:27:14   22   Ortiz was selling cocaine.  That is a very fast and

15:27:17   23   loose use of that information, Your Honor.  And in

15:27:20   24   fact --

15:27:23   25              THE COURT:  I mean, the statement is Ortiz

J. ORTIZ VS. M. STAMBACH

15:27:24  2  was also a member of this ring.

15:27:28  3          MR. FELLE:  But he is selling cocaine is

15:27:30  4  what he told the jury.  That Mr. Ortiz was not innocent,

15:27:33  5  which is another big problem that we have in the

15:27:37  6  statements that he just made.  He is also stating that

15:27:39  7  he was not innocent.  He may have just pulled the

15:27:42  8  trigger of the gun because he was selling cocaine for

15:27:44  9  the Camacho brothers.  That is just not true.

15:27:47  10          THE COURT:  But what does it mean to be a

15:27:49  11  member of a drug ring?

15:27:50  12          MR. FELLE:  Very good point, Your Honor.  I

15:27:52  13  don't know.  But it doesn't necessarily mean that he is

15:27:55  14  selling cocaine.

15:27:56  15          THE COURT:  I think there is a reasonable

15:27:57  16  inference from that.  Now, he could have been doing

15:28:00  17  other things as a member of a drug ring.  You could be

15:28:02  18  storing drugs, you could be distributing drugs, you

15:28:06  19  could be possessing drugs, you could be acquiring the

15:28:07  20  drugs, but I don't disagree that this is not in the EBT

15:28:11  21  transcript.  I think -- is this going to be the defense

15:28:17  22  here that Mr. Ortiz was in fact part of the drug ring

15:28:23  23  with the Camacho brothers?

15:28:26  24          MR. RUSS:  No, Your Honor.  That is not part

15:28:28  25  of the defense.  But presumably, Mr. Ortiz will testify

```
         1              J. ORTIZ VS. M. STAMBACH
15:28:32 2   and keep with his deposition testimony in which he says
15:28:39 3   that he doesn't remember any of this, and he doesn't
15:28:42 4   remember anything and he only woke up later on.  I'm
15:28:45 5   entitled to say what evidence the jury will hear about
15:28:48 6   what actually happened back then.
15:28:51 7              THE COURT:  Well, I think that it's one
15:28:53 8   thing to say that Mr. Ortiz was selling drugs for the
15:28:58 9   Camacho brothers.  I think it's another thing to say
15:29:02 10  that he was part of their drug trafficking organization,
15:29:05 11  which the confession is that he was a member of this
15:29:09 12  ring.  That he was part of a drug trafficking
15:29:11 13  organization.  If there is -- there is basis in the
15:29:16 14  record to state that.  Mr. Ortiz's statement.  There is
15:29:19 15  no basis from what I've seen in the record at least at
15:29:23 16  this point to say that Mr. Ortiz was distributing drugs
15:29:27 17  for the Camacho brothers.  Now, is it an argument that
15:29:32 18  could be made?  Is that a fair inference based on the
15:29:35 19  evidence?  Potentially and that could Potentially make
15:29:38 20  it appropriate during a closing argument, but in an
15:29:41 21  opening statement, it is not supposed to be an argument.
15:29:43 22  It's just supposed to be a statement of the facts.  So
15:29:47 23  if you want to revise what you're saying to say that he
15:29:50 24  was part of the drug trafficking organization, I'm going
15:29:53 25  to allow that because if Mr. Ortiz admitted to that,
```

```
        1              J. ORTIZ VS. M. STAMBACH

15:29:57 2    then there is a basis in the record for that.  I mean,

15:30:02 3    it's his admission.

15:30:03 4              MR. FELLE:  Well, Judge, the admission that

15:30:05 5    you're pointing to is far from what Mr. Russ said to the

15:30:11 6    jury.  So I mean you're going to be ringing the bell

15:30:15 7    twice to allow him to say it again.  I'm asking for a

15:30:18 8    curative instruction with respect to what's been said

15:30:21 9    already.

15:30:21 10             THE COURT:  What do you want me to say

15:30:23 11   though?

15:30:23 12             MR. FELLE:  That the jury should disregard

15:30:25 13   what he just said.

15:30:26 14             THE COURT:  I would have to allow Mr. Russ

15:30:28 15   to go back and say there is a confession where he

15:30:30 16   admitted to being part of the drug trafficking

15:30:33 17   organization.

15:30:33 18             MR. FELLE:  Well, that would be wrong too --

15:30:35 19             THE COURT:  But it's true.

15:30:38 20             MR. FELLE:  -- it's a P73.  A paraphrased

15:30:41 21   statement.

15:30:42 22             THE COURT:  No, it's Mr. Vaughn.  Let me

15:30:45 23   finish.  Mr. Vaughn presumably will testify that is in

15:30:49 24   fact what Mr. Ortiz stated to him.  So now whether or

15:30:53 25   not it's true or not, I don't know, but the point is, is
```

```
                  1              J. ORTIZ VS. M. STAMBACH

15:30:58    2    it fair to state that in an opening statement?  This is

15:31:01    3    a support by the record that Mr. Ortiz was part of the

15:31:05    4    Camacho drug trafficking organization.  He had allegedly

15:31:09    5    admitted to that as part of his statements to Mr.

15:31:13    6    Vaughn.  Based on this memo that Mr. Russ read.  So you

15:31:19    7    know, we can do one of two things, Mr. Felle.  We can

15:31:22    8    either strike what was said but then I'm going to allow

15:31:28    9    Mr. Russ to rephrase the way he is characterizing Mr.

15:31:32   10    Ortiz's involvement in the drug trafficking

15:31:35   11    organization, or I can just remind the jurors when they

15:31:41   12    come out here that what statements that are made by

15:31:44   13    attorneys are not evidence, that they'll need to decide

15:31:47   14    what the evidence is and then we'll move on.

15:31:52   15              MR. FELLE:  If I may, Judge.

15:31:53   16              THE COURT:  Yeah.

15:31:54   17              MR. FELLE:  So I guess the bigger problem I

15:31:56   18    have as much as that was offensive, the picture that is

15:31:59   19    being painted by Mr. Russ is he is not innocent.  We've

15:32:03   20    already entered a stipulation that we read to the jury

15:32:06   21    that Mr. Ortiz is completely innocent and now the

15:32:09   22    opening, is just then an argument --

15:32:13   23              THE COURT:  But the statement is that he is

15:32:14   24    innocent of the murders.

15:32:17   25              MR. FELLE:  Correct, but Mr. Russ just said
```

J. ORTIZ VS. M. STAMBACH

15:32:19  2  he may as well have been pulling the trigger to the

15:32:23  3  AK-47.

15:32:24  4         THE COURT:  I don't think he said that.  You

15:32:26  5  said that.

15:32:28  6         MR. FELLE:  You can read it back.  I

15:32:30  7  requested a copy of the transcript, but he said he may

15:32:30  8  have pulled the trigger to the AK-47.

15:32:30  9         MR. RUSS:  That's not exactly what I say.

15:32:58  10  He did not pull the trigger.

15:32:58  11         THE COURT:  Karen, can you read it?

15:32:59  12         He didn't say he pulled the trigger.  He

15:33:01  13  didn't say he committed the murders.

15:33:04  14         MR. FELLE:  The whole opening so far has

15:33:07  15  been in the opposite of the stipulation that we entered

15:33:10  16  that Mr. Ortiz is completely innocent of the crimes

15:33:13  17  being committed.

15:33:13  18         THE COURT:  No.  That is not what this says.

15:33:15  19  What this says is, that Mr. Ortiz was innocent, not

15:33:20  20  involved in the murders.  He was innocent -- I'm looking

15:33:25  21  at paragraph 14.  He was actually innocent of the

15:33:27  22  murders of Nelson and Miguel Camacho.

15:33:34  23         MR. FELLE:  And I'm looking at paragraph

15:33:36  24  nine, where it says law enforcement agencies determined

15:33:39  25  Josue Ortiz was not involved in the murders of Nelson

A-2033

|          |    |                                                               |
|----------|----|---------------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                                      |
| 15:33:43 | 2  | and Miguel Camacho.                                           |
| 15:33:46 | 3  | THE COURT:  Right.                                            |
| 15:33:47 | 4  | MR. FELLE:  Well, the whole opening so far                    |
| 15:33:47 | 5  | is that he was involved in because --                         |
| 15:33:49 | 6  | THE COURT:  Are you suggesting that he was                    |
| 15:33:50 | 7  | involved in the murders?                                      |
| 15:33:51 | 8  | MR. RUSS:  No, Your Honor.                                    |
| 15:33:52 | 9  | THE COURT:  So he is not saying that.  I                      |
| 15:33:55 | 10 | mean, there is a stipulation that he wasn't involved in       |
| 15:33:57 | 11 | the murders but he may have been involved in drug             |
| 15:34:00 | 12 | trafficking with these individuals.  I don't know.           |
| 15:34:02 | 13 | MR. FELLE:  Judge, if I may then.  I just                     |
| 15:34:05 | 14 | want to formally make a motion for a mistrial based on        |
| 15:34:07 | 15 | what has been said by Mr. Russ so far.  The record as         |
| 15:34:11 | 16 | it's been stated Mr. Russ initially said the statement        |
| 15:34:14 | 17 | was supported by the deposition testimony of my client        |
| 15:34:19 | 18 | that is not true.  He has now pointed to the secondary        |
| 15:34:24 | 19 | sources.  I still believe that those sources do not           |
| 15:34:27 | 20 | support statements made to the jury from moving from          |
| 15:34:31 | 21 | mistrial.                                                     |
| 15:34:31 | 22 | THE COURT:  Okay.  Mr. Russ?                                  |
| 15:34:33 | 23 | MR. RUSS:  Thank you, Your Honor.                             |
| 15:34:33 | 24 | Obviously, I oppose the motion.  I did say at the             |
| 15:34:36 | 25 | sidebar that I thought the reference was to his               |

```
              1               J. ORTIZ VS. M. STAMBACH
15:34:39      2   deposition transcript.  I was not able to find that in
15:34:42      3   the few minutes that I've looked, but I did find two
15:34:45      4   other documents both listed in Plaintiff's own exhibit
15:34:49      5   list, which contain the information that I read and has
15:34:57      6   been entered into the record.
15:35:00      7               THE COURT:  Well, it doesn't contain the
15:35:03      8   information that you read.  What it says was that --
15:35:11      9   that Mr. Ortiz was a member of the cocaine ring.
15:35:15     10               MR. RUSS:  Yes, Your Honor.  What I meant to
15:35:17     11   say and I apologize if I misled you.  Was that -- I read
15:35:21     12   from the document into the record.
15:35:26     13               THE COURT:  Right.  And so, I don't think
15:35:28     14   that there is an admission, at least that has been cited
15:35:31     15   to that Mr. Ortiz was selling cocaine for the Camacho, I
15:35:39     16   can't recall the exact words that you used.
15:36:11     17               Can you read that back, Karen?
15:36:11     18               So that is not what that says.  It says that
15:36:13     19   he was part of the drug trafficking cocaine ring that
15:36:20     20   the Camacho brothers were involved with.  And he
15:36:23     21   obviously knew information until I don't want to say
15:36:26     22   obviously he allegedly knew information about this
15:36:28     23   cocaine ring.  But this is what I'm going to do.  I'm
15:36:31     24   going to deny the motion for a mistrial because I don't
15:36:34     25   think that what Mr. Russ said is not a fair inference
```

J. ORTIZ VS. M. STAMBACH

from what is contained in the documents that he cited to

which is he indicated are part of the Plaintiff's

exhibits here and as he also indicated were allegedly

statements made by Mr. Ortiz.  I will direct the jury

when they return that the objection is overruled.  On

the other hand, the statements of attorneys are not

facts, they are not in evidence and it's up for the jury

to decide what the facts are.  But I don't think that --

in hindsight, I probably would have preferred that the

statement was phrased differently than it was as opposed

to Mr. Ortiz was sold cocaine for the Camacho brothers,

I would have preferred that it stuck more with the exact

language that is contained in the memorandum which is

the Camacho brothers operated a cocaine ring and Mr.

Ortiz was a member of and he had information about the

storage of large quantities of cocaine.  But on the

other hand, I think it's a fair inference from those

statements that in fact he was involved in the drug

trafficking organization by selling cocaine or at least

being knowledgeable about its sale.  I think to strike

that statement and have you go back and reiterate it in

the way that I would have preferred it to have been

stated originally.  I think it would be drawing too much

attention quite frankly to the issue and I don't think

A-2036

36

                    J. ORTIZ VS. M. STAMBACH

15:38:13  2   it's appropriate at this point and we'll see how the

15:38:16  3   evidence comes in and we'll see what is appropriate for

15:38:18  4   closing arguments.  All right.  Let's bring our jury

15:38:25  5   back out.

15:38:26  6            MR. FELLE:  I'll make an exception to that.

15:38:28  7            THE COURT:  Any time you make a motion and I

15:38:32  8   deny it, I assume you're taking exception to it.

15:38:38  9            MR. FELLE:  Okay.  Thank you very much, Your

15:38:40  10  Honor.

15:39:14  11            (Whereupon the jury is escorted into the

15:39:16  12  courtroom.)

15:39:27  13            THE COURT:  All right.  Welcome back, ladies

15:39:29  14  and gentlemen.  Everybody can have a seat.  I am just --

15:39:32  15  I'm going to overrule the objection, ladies and

15:39:35  16  gentlemen, but I am going to remind you that statements

15:39:37  17  by attorneys are not evidenced in the case.  That is

15:39:40  18  ultimately for you to decide what the facts are based on

15:39:44  19  the evidence that is introduced through witness

15:39:46  20  testimony, exhibits, and any stipulations between the

15:39:50  21  parties.  So with that being said, you may continue

15:39:53  22  whenever you're ready, Mr. Russ.

15:39:55  23            MR. RUSS:  Thank you, Your Honor.

15:40:09  24            So as you've heard and as the evidence will

15:40:12  25  show, on November 4th, 2004, the Camacho brothers were

J. ORTIZ VS. M. STAMBACH

15:40:18　2　gunned down in their own apartment by someone using an

15:40:24　3　AK-47 assault rifle.  Several days later, Mr. Ortiz

15:40:31　4　flagged down a patrol car in the neighborhood and he

15:40:35　5　jumped into the back of the patrol car and he told the

15:40:39　6　officers that people were trying to kill him because of

15:40:45　7　his perceived involvement in the killing of the Camacho

15:40:48　8　brothers.  Mr. Ortiz told the police officers that he

15:40:53　9　was scared and that he needed help.  He also told them

15:40:58　10　that he had smoked marijuana and used drugs.  The

15:41:03　11　officers called an ambulance where they took him to

15:41:07　12　Buffalo General Hospital which has a psychiatric ward or

15:41:11　13　which had a psychiatric ward and Mr. Ortiz was given a

15:41:15　14　medical and a psychological evaluation.  He went to

15:41:22　15　Buffalo General Hospital voluntarily.  At the hospital,

15:41:28　16　psychiatrists cleared him and released him, finding that

15:41:34　17　he apparently was not a danger to himself or others or

15:41:40　18　having such an awful psychiatric situation that he

15:41:47　19　needed hospitalization.  But at Buffalo General

15:41:51　20　Hospital, the doctors were concerned and they called

15:41:56　21　Buffalo Police Department and said that Mr. Ortiz had

15:41:59　22　some information and what the doctor told the Buffalo

15:42:11　23　Police Officers was that Mr. Ortiz said that he knew

15:42:14　24　that the Camacho brothers were members of a cocaine

15:42:20　25　ring, that he, himself, Mr. Ortiz, was a member of the

A-2038

38

|          | 1  | J. ORTIZ VS. M. STAMBACH |
|----------|----|--------------------------|
| 15:42:24 | 2  | cocaine ring, and that he was definitely upset and |
| 15:42:30 | 3  | scared but not having a psychotic break.  The next day, |
| 15:42:40 | 4  | Mr. Ortiz again summoned the Buffalo Police Department |
| 15:42:45 | 5  | and they found him at 142 Germane Street, also on the |
| 15:42:51 | 6  | West Side of Buffalo.  He said that he had information |
| 15:42:57 | 7  | on the murders of the Camacho brothers and they took him |
| 15:43:02 | 8  | down to headquarters.  At headquarters, he was |
| 15:43:12 | 9  | interviewed and questioned by Detective Stambach. |
| 15:43:19 | 10 | Detective Lonergan was a witness, Police Officer Torres |
| 15:43:24 | 11 | served as a translator, and in that meeting, Mr. Ortiz |
| 15:43:34 | 12 | confessed that he was the one that killed the Camacho |
| 15:43:38 | 13 | brothers.  He explained that he used an AK-47 assault |
| 15:43:45 | 14 | rifle.  He included details of the crime scene that only |
| 15:43:50 | 15 | someone who had been there would know.  For example, a |
| 15:43:57 | 16 | gold chain had been ripped off the neck of one of the |
| 15:44:00 | 17 | brothers and there was a big screen TV on at the time. |
| 15:44:10 | 18 | Detective Stambach took the statement from him, typed it |
| 15:44:14 | 19 | up, then Police Officer Torres read it to him in |
| 15:44:20 | 20 | Spanish.  And Mr. Ortiz signed the confession and |
| 15:44:27 | 21 | initialed the various pages of the confession and |
| 15:44:34 | 22 | otherwise admitted that he was the one that had killed |
| 15:44:40 | 23 | the brothers.  You will hear from all of the police |
| 15:44:46 | 24 | officers who were present during the confession, |
| 15:44:50 | 25 | Detective Stambach is here, obviously, you will also |

J. ORTIZ VS. M. STAMBACH

15:44:53  2   meet Police Officer Torres, and you will also meet

15:44:57  3   Detective Lonergan.  They will all tell you that, yes,

15:45:04  4   Mr. Ortiz was scared and nervous but he was competent,

15:45:14  5   he knew what he was doing, he knew what he was saying.

15:45:17  6   They will also tell you that there was no coercion, no

15:45:22  7   intimidation, no trickery, no false identification.  In

15:45:27  8   fact, when he said that he was hungry that he hadn't

15:45:33  9   eaten all day, they got him McDonald's, a Big Mac,

15:45:37  10  French fries, and a Coke.  And so based upon this

15:45:41  11  confession which you will see and you will read, Mr.

15:45:44  12  Ortiz was arrested and prosecuted.  On March 22nd, 2006,

15:45:56  13  a year and a half later, Mr. Ortiz pleaded guilty to two

15:46:00  14  counts of manslaughter.  You will hear testimony that he

15:46:06  15  had 18 months basically to change his confession if it

15:46:10  16  weren't true.  At his guilty plea proceedings, he was

15:46:19  17  represented by John Torino, who was one of Buffalo's

15:46:26  18  best criminal lawyers at the time, and by Betty

15:46:30  19  Calvo-Torres, who is now a judge.  During the plea, the

15:46:32  20  Court offered him a chance to back out.  He did not.  He

15:46:36  21  confirmed that he meant to kill them and that he did

15:46:39  22  kill them.  On June 16th, 2006, the sentencing for Mr.

15:46:47  23  Ortiz was held.  Again, the judge offered him an

15:46:51  24  opportunity to speak to explain himself and he declined

15:47:00  25  to do so.  So you may be evaluating this evidence and

A-2040

40

|  |  |
|---|---|
| | 1 |
| 15:47:04 | 2 |
| 15:47:08 | 3 |
| 15:47:14 | 4 |
| 15:47:22 | 5 |
| 15:47:25 | 6 |

                    J. ORTIZ VS. M. STAMBACH

wondering, why would Mr. Ortiz confess to a crime that

he did not commit.  Presumably, Mr. Ortiz will give you

that answer if he remembers.  I appreciate your

attention.  I know that this has been a long day.  But

we couldn't do any of this without you.  So thank you.

                    THE COURT:  Thank you, Mr. Russ.  All right.

Ladies and gentlemen, we are finished for today.  I

agree, it's been a long day.  So I hope you have a good

rest of the day.  Get some sleep.  As I said tomorrow,

the plan is to start at 9:00 a.m., and we will take a

lunch break from noon to 1:00 o'clock and I have to stop

by 3:30.  So we'll be finished for the day by 3:30.  I

want to remind you about my admonitions.  Do not talk

about the case among yourselves or with anyone else.  If

anyone else does try to talk about the case with you,

walk away immediately and let me know by letting the

Courtroom Security Officer or Courtroom Deputy.  Don't

do any research or investigation about the case on your

own.  Don't talk in or out of the courtroom with any of

the attorneys, parties, or witnesses, and avoid any

media accounts about the case in the event that there

are any.  Thank you very much for your attention and

your patience today.  I can tell you're very attentive.

You're a great jury and we appreciate your service and

```
            1              J. ORTIZ VS. M. STAMBACH

15:48:36    2    we will see you tomorrow morning, everybody.  And you

15:48:38    3    can just leave your notepads right on the chairs.  Dawn

15:48:42    4    will take care of those.

15:48:55    5              (Whereupon the jury is escorted from the

15:49:02    6    courtroom.)

15:49:28    7              THE COURT:  You can have a seat, everybody.

15:49:37    8    A couple of questions that I have.  I don't think I have

15:49:41    9    a binder of the Defense Exhibits.

15:49:46   10              MR. SAHASRABUDHE:  We turned it in at the

15:49:48   11    first one, it's got a red-like, a red dot on it because

15:49:53   12    that was the one we identified.

15:49:56   13              THE COURT:  Okay.  I'll find it.  Because

15:49:59   14    the Plaintiff's exhibits I have up here, right?

15:50:02   15              MR. SAHASRABUDHE:  Blue binders.  Yes, Your

15:50:04   16    Honor.

15:50:04   17              THE COURT:  All right.  Let's talk about

15:50:07   18    anything that you all need to talk about but also the

15:50:10   19    plan for witnesses.  Because I want to nail this down if

15:50:15   20    we can.  So Mr. Felle, tomorrow morning, who is your

15:50:34   21    first witness?

15:50:35   22              MR. FELLE:  Dr. Coggins.

15:50:38   23              THE COURT:  Okay.  And do you have an

15:50:41   24    estimate as to how long her testimony will go?

15:50:44   25              MR. FELLE:  About two hours.
```

A-2042

42

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| --- | --- | --- |
| 15:50:46 | 2 | THE COURT: Okay. And then after Dr. |
| 15:50:49 | 3 | Coggins, who were you going to put on? |
| 15:50:51 | 4 | MR. FELLE: Mr. Ortiz. |
| 15:50:53 | 5 | THE COURT: Is your microphone on? |
| 15:50:57 | 6 | MR. FELLE: Mr. Ortiz. |
| 15:50:58 | 7 | THE COURT: Okay. Ballpark, I mean, best |
| 15:51:01 | 8 | estimate as to how long you think Mr. Ortiz will be? |
| 15:51:04 | 9 | MR. FELLE: Hour and a half, two hours in |
| 15:51:06 | 10 | that range. |
| 15:51:09 | 11 | THE COURT: Okay. And then after Mr. Ortiz? |
| 15:51:11 | 12 | MR. FELLE: We've got a subpoena for |
| 15:51:15 | 13 | Detective Lauber, and we reissued a letter today, which |
| 15:51:20 | 14 | should be issued to Detective Lauber today while I'm |
| 15:51:23 | 15 | here. And I reminded him under subpoena, that he should |
| 15:51:26 | 16 | be here at 1:00 o'clock sharp. And I also talked to |
| 15:51:29 | 17 | Peter about -- they received the subpoena for him. They |
| 15:51:33 | 18 | accepted service and so we asked them to check with |
| 15:51:37 | 19 | Lauber, and I personally called Detective Lauber myself, |
| 15:51:39 | 20 | personally on my cell phone, but he did return my call |
| 15:51:42 | 21 | to Peter. So I've done it both ways, Your Honor. We're |
| 15:51:46 | 22 | going to serve a letter, e-mail, and on the defense, and |
| 15:51:50 | 23 | it also asked them personally to reach out to Detective |
| 15:51:55 | 24 | Lauber. |
| 15:51:55 | 25 | THE COURT: Is he a current Buffalo Police |

A-2043

43

|  | | J. ORTIZ VS. M. STAMBACH |
|---|---|---|

15:51:58 2   Department employee?

15:51:58 3           MR. SAHASRABUDHE:  No, retired.

15:51:59 4           THE COURT:  Have you accepted the service of

15:52:00 5   the subpoena on his behalf?

15:52:02 6           MR. SAHASRABUDHE:  We did, Your Honor.

15:52:03 7           THE COURT:  And so can you assure me that he

15:52:05 8   will be here tomorrow?

15:52:08 9           MR. SAHASRABUDHE:  I will call him and make

15:52:09 10   sure he knows.  We also had discussed -- I thought,

15:52:15 11   because Detective Lonergan is going to be here.

15:52:20 12          THE COURT:  I thought when you said earlier

15:52:23 13   that Detective Lonergan is the witness on the deck

15:52:23 14   you're referring to.

15:52:27 15          MR. SAHASRABUDHE:  Correct.  And he would go

15:52:31 16   after Detective Lauber.  Lauber should be fairly quick

15:52:34 17   within an hour.  He had limited involvement.  And I

15:52:35 18   believe Mr. Lonergan would be about an hour and a half

15:52:38 19   to two hours.  He had two different connections and a

15:52:42 20   Huntley Hearing that he went through.

15:52:43 21          THE COURT:  And is Detective Lonergan

15:52:48 22   somebody that you have any control over or is he someone

15:52:52 23   that you're serving the subpoena on defense counsel and

15:52:55 24   he is not talking to you?

15:52:59 25          MR. SAHASRABUDHE:  I've not had any direct

A-2044

44

                    J. ORTIZ VS. M. STAMBACH

15:53:01  2  interactions with him, but the defense has confirmed

15:53:04  3  that he would be here tomorrow at 9:00 o'clock and they

15:53:07  4  accepted a subpoena for him, just like Detective Lauber.

15:53:11  5  And we secured him to be here tomorrow for testimony.

15:53:15  6            THE COURT:  Okay.  And the order you want to

15:53:17  7  go is Coggins, Ortiz, Lauber, and Lonergan.

15:53:23  8            MR. FELLE:  Correct.

15:53:24  9            THE COURT:  All right.  And are you in

15:53:27  10  communication with Lonergan?

15:53:29  11            MR. SAHASRABUDHE:  Yes, Your Honor.  There

15:53:29  12  was no subpoena we agreed amongst counsel just so speed

15:53:34  13  things he can call him as a witness in his case in chief

15:53:37  14  and we'll see how the cross-examination goes so there

15:53:40  15  has been no subpoena of him.

15:53:42  16            MR. RUSS:  He is ready to go, Your Honor.

15:53:44  17            THE COURT:  So you can arrange for him to be

15:53:45  18  here?

15:53:46  19            MR. SAHASRABUDHE:  He will be here tomorrow.

15:53:48  20            THE COURT:  How far away are both Lauber and

15:53:55  21  Lonergan in terms of travel.

15:53:58  22            MR. RUSS:  Buffalo.

15:53:59  23            THE COURT:  So if for some reason in the

15:54:01  24  morning we're going slower than we anticipated, we can

15:54:05  25  always take a break and alert them that they don't have

A-2045

45

```
               1              J. ORTIZ VS. M. STAMBACH

15:54:07       2    to be here by 1:00 o'clock.  Otherwise, they should plan

15:54:11       3    to be here by 1:00 o'clock.  Especially because you

15:54:14       4    believe Lauber is going to be short, right?

15:54:16       5              MR. FELLE:  I do.

15:54:16       6              THE COURT:  That is the plan for tomorrow.

15:54:18       7    And then, do you want -- are you in a position right now

15:54:23       8    to talk about what your plan would be for the next day?

15:54:26       9              MR. FELLE:  I am, Your Honor.

15:54:28      10              THE COURT:  Okay.

15:54:28      11              MR. FELLE:  So right now, we have Detective

15:54:32      12    Vaughn coming in at 9:00 a.m.

15:54:34      13              THE COURT:  So this is on Thursday, right?

15:54:37      14              MR. FELLE:  Correct.  And we have the State

15:54:41      15    Investigator Robert Rondan at 10:30.  We believe that

15:54:46      16    we'll take the morning.

15:54:47      17              THE COURT:  Okay.

15:54:47      18              MR. FELLE:  And then at 1:00 o'clock, we're

15:54:51      19    intending to put Mr. Stambach on.

15:54:54      20              THE COURT:  Okay.

15:54:59      21              MR. FELLE:  And I have -- with the same

15:55:02      22    letter today, reminding Detective Lauber of his

15:55:08      23    obligation on this subpoena.  We've also done the same

15:55:09      24    thing with respect to Officer Torres.  Now, you know,

15:55:11      25    the defense said to me that Torres is out of town this
```

                        J. ORTIZ VS. M. STAMBACH

15:55:14    2   week and he can't be here.  I was trying to offer

15:55:17    3   courtesy but I can't based on what Your Honor told me,

15:55:20    4   so I went back and asked defense counsel to make him

15:55:23    5   available on Thursday afternoon.

15:55:25    6               THE COURT:  Has he been subpoenaed?

15:55:29    7               MR. FELLE:  Yes.

15:55:29    8               THE COURT:  So what is the deal with

15:55:31    9   subpoena?

15:55:32   10               MR. SAHASRABUDHE:  We accepted his service.

15:55:33   11   He told me before we even knew when the trial was going

15:55:36   12   to begin that he had a family vacation planned.  I

15:55:40   13   didn't tell him to cancel the family vacation.  He is

15:55:45   14   back on May 7th and will be available on Monday the 9th.

15:55:48   15               THE COURT:  Well, he might have to be back

15:55:50   16   before then if he is under subpoena.  Where is he?

15:55:54   17               MR. SAHASRABUDHE:  He is on a cruise.

15:56:00   18               THE COURT:  All right.  When does the cruise

15:56:08   19   dock?  Are you able to communicate with him?

15:56:12   20               MR. SAHASRABUDHE:  He has access to his cell

15:56:14   21   phone.  I can call him on his cell phone and he said he

15:56:17   22   would have.

15:56:19   23               THE COURT:  Let's talk about the other

15:56:20   24   witnesses.  Let's set Torres aside for a minute.  So,

15:56:24   25   then you also have -- in addition to those, you have

A-2047

47

|       |    | J. ORTIZ VS. M. STAMBACH |
|-------|----|--------------------------|
| 15:56:30 | 2  | Vaughn -- so the only two left after that are Shehata |
| 15:56:40 | 3  | and Joseph, right? |
| 15:56:43 | 4  | MR. SAHASRABUDHE:  And Detective Evans. |
| 15:56:45 | 5  | Mary Evans.  She is still a detective at the Buffalo |
| 15:56:52 | 6  | Police Department.  She confirmed with me that she would |
| 15:56:55 | 7  | be here on Friday at 9:00 a.m. |
| 15:56:57 | 8  | THE COURT:  She is going to be here?  I'm |
| 15:57:00 | 9  | sorry. |
| 15:57:00 | 10 | MR. FELLE:  Friday at 9:00 a.m. |
| 15:57:00 | 11 | THE COURT:  Evans will be? |
| 15:57:01 | 12 | MR. FELLE:  Correct.  And I intended on |
| 15:57:03 | 13 | Friday knowing it was a short date based on the Court's |
| 15:57:05 | 14 | schedule to go to 2:00 o'clock.  I intended to have |
| 15:57:11 | 15 | Detective Evans and then Detective Lauber obviously |
| 15:57:15 | 16 | we're moving up Lauber, so. |
| 15:57:18 | 17 | THE COURT:  So what about Joseph and |
| 15:57:20 | 18 | Shehata?  What is your plan with them? |
| 15:57:28 | 19 | MR. FELLE:  I'm not sure if I'm going to |
| 15:57:30 | 20 | call them based on Your Honor's decision today regarding |
| 15:57:33 | 21 | Dr. Joseph. |
| 15:57:33 | 22 | THE COURT:  Okay. |
| 15:57:34 | 23 | MR. FELLE:  If I could reserve until after |
| 15:57:36 | 24 | the testimony of Dr. Coggins, it may prove to be |
| 15:57:39 | 25 | somewhat repetitive in which I would not call Dr. |

A-2048

|           |    |                                                              |
|-----------|----|--------------------------------------------------------------|
|           | 1  | J. ORTIZ VS. M. STAMBACH                                     |
| 15:57:43  | 2  | Joseph.                                                       |
| 15:57:44  | 3  | THE COURT:  So, if that is the case, are you                |
| 15:57:48  | 4  | going to put Shehata on or no?                               |
| 15:57:50  | 5  | MR. FELLE:  I may not call Shehata either,                  |
| 15:57:52  | 6  | Your Honor.  So we may be done based on this accelerated     |
| 15:57:55  | 7  | if we get Torres in early, we could be done as early as      |
| 15:57:58  | 8  | Friday.  At the worst, as I told the defense counsel, I      |
| 15:58:01  | 9  | expect it to be done on the morning of Monday.               |
| 15:58:04  | 10 | THE COURT:  Torres not being here could                     |
| 15:58:06  | 11 | present an issue because -- if -- you expect -- I'm          |
| 15:58:13  | 12 | assuming Mr. Stambach to take a while.                       |
| 15:58:20  | 13 | MR. FELLE:  I do.  I have it off in the                     |
| 15:58:23  | 14 | afternoon, Judge.  1:00 to 4:30, Your Honor, he had to       |
| 15:58:27  | 15 | be done.                                                      |
| 15:58:27  | 16 | THE COURT:  It's realistic that if things go                |
| 15:58:31  | 17 | according to plan which they don't always do, that we        |
| 15:58:34  | 18 | could have Ms. Evans testify Friday morning and we're --     |
| 15:58:41  | 19 | I mean, how long do you think her testimony is going to      |
| 15:58:41  | 20 | be?                                                           |
| 15:58:44  | 21 | MR. FELLE:  An hour and a half.  That is why                |
| 15:58:46  | 22 | I put Torres on by 11:00 and we would be done by 2:00.       |
| 15:58:52  | 23 | THE COURT:  On Friday.                                       |
| 15:58:53  | 24 | MR. RUSS:  Your Honor, you know, we'll try                  |
| 15:58:55  | 25 | to contact him, but if he is on a cruise, he is on a         |

```
                         J. ORTIZ VS. M. STAMBACH
15:58:59   2    cruise.

15:58:59   3              THE COURT:  But if he has a Federal Court

15:59:01   4    order and a subpoena that he has to be here, he's going

15:59:04   5    to find a way to get here.

15:59:06   6              MR. RUSS:  I understand that, Your Honor.

15:59:06   7    He is also -- they have a transcript on him.  They took

15:59:09   8    his deposition, so there are other ways.

15:59:13   9              THE COURT:  Well, I'm not going to make him

15:59:15  10    do that, especially given the fact that we moved the

15:59:18  11    trial date given the fact that you have control of this

15:59:21  12    witness, not Mr. Felle.  But, I mean, how critical is a

15:59:27  13    witness of Torres?  And the reason I'm asking this,

15:59:30  14    there is always a potential to have somebody testify

15:59:33  15    remotely as well.

15:59:36  16              MR. RUSS:  I would say he is essential, Your

15:59:39  17    Honor.

15:59:39  18              THE COURT:  And in other words, do you think

15:59:41  19    it would be difficult to conduct his testimony if he was

15:59:44  20    appearing remotely by Zoom or something like that?

15:59:52  21              MR. FELLE:  Yeah.  I think it has all kinds

15:59:55  22    of other technical problems.

15:59:55  23              THE COURT:  I'm not asking about the

15:59:58  24    technical problems.

15:59:58  25              MR. FELLE:  In terms of reading the witness,
```

A-2050

50

|     |    |                                                          |
|-----|----|----------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                         |
| 15:59:59 | 2  | I think it's important.  We believe he is essential.  He |
| 16:00:03 | 3  | was involved in various different portions of this time. |
| 16:00:09 | 4  | THE COURT:  Ballpark timeframe, how long do       |
| 16:00:12 | 5  | you expect his testimony to be?                          |
| 16:00:13 | 6  | MR. FELLE:  Two hours.                             |
| 16:00:14 | 7  | THE COURT:  See the concern I have is that        |
| 16:00:16 | 8  | Torres, this the first time I'm hearing he is not        |
| 16:00:19 | 9  | available this week, and the concern I have is that      |
| 16:00:23 | 10 | we're not in session on Tuesday because of my schedule,  |
| 16:00:27 | 11 | and then we don't resume again until Wednesday afternoon |
| 16:00:30 | 12 | and I certainly don't want to have all this dead time so |
| 16:00:36 | 13 | to speak.  And I also have this criminal trial that is   |
| 16:00:46 | 14 | tentatively scheduled for jury selections on May 12th.   |
| 16:00:50 | 15 | I suppose it's realistic that we could have Torres       |
| 16:00:53 | 16 | testify Monday morning.  It doesn't sound to me that the |
| 16:00:57 | 17 | defense is not going to have any witnesses if all of the |
| 16:01:00 | 18 | witnesses are put in through the Plaintiff's case.  Is   |
| 16:01:03 | 19 | that probably a fair estimate?                           |
| 16:01:04 | 20 | MR. RUSS:  That is a fair assessment of the       |
| 16:01:06 | 21 | situation, Your Honor.                                   |
| 16:01:07 | 22 | THE COURT:  And then we would do our closing      |
| 16:01:16 | 23 | arguments and final instructions on Monday and at least  |
| 16:01:18 | 24 | the jury would start its deliberations on Monday but     |
| 16:01:22 | 25 | they may not be able to return until Wednesday.  Now, I  |

```
                    J. ORTIZ VS. M. STAMBACH
16:01:26   2  know I've told them that they are not in session until
16:01:29   3  Wednesday afternoon but I suppose there is no reason
16:01:31   4  that they couldn't come back before I'm available on
16:01:35   5  Wednesday to at least start their deliberations on
16:01:38   6  Wednesday.  We can find out from everybody what their
16:01:41   7  schedule is.  Obviously, if there is a question, we
16:01:44   8  won't be able to deal with it until I'm here.  But I'd
16:01:49   9  like you to get some further clarity from Torres on
16:01:53  10  exactly when he gets off the ship, okay?  You know, is
16:01:59  11  he -- let's get some further clarity.  I would like
16:02:02  12  details in terms of what's his itinerary, okay?
16:02:08  13            MR. SAHASRABUDHE:  Okay.  I'll do that.
16:02:14  14            THE COURT:  And in terms of -- I suppose we
16:02:17  15  could always have our charge conference on Friday.  I
16:02:20  16  want to make as much use of the time that we have with
16:02:22  17  the jury as possible so there is not a gap basically
16:02:25  18  between the end of the proof, closing arguments, and
16:02:28  19  their deliberations.  So let's get more details from
16:02:34  20  Torres as to what his situation is and we'll revisit it
16:02:37  21  tomorrow.  All right.  Anything else Mr. Felle before we
16:02:40  22  break for today?
16:02:40  23            MR. FELLE:  No.  I don't think so, Judge.
16:02:42  24            THE COURT:  Mr. Russ or Mr. Sahasrabudhe?
16:02:48  25            MR. RUSS:  No, thank you, Your Honor.
```

A-2052

1

16:02:49  2          THE COURT:  All right.  Have a good night,

16:02:51  3  everybody.  Thank you.  See you tomorrow.

4

5                    *     *     *

6              CERTIFICATE OF REPORTER

7

8     I certify that the foregoing is a correct transcript

9  of the record of proceedings in the above-entitled

10  matter.

11

12  S/ Karen J. Clark,  RPR

13
    Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25

A-2053

1

```
1                  UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - X
    JOSUE ORTIZ                )          16CV321
5                Plaintiff  )
    vs.
6                               Rochester, New York
    MARK STAMBACH,                      May 4, 2022
7                Defendant.         9:00 a.m.
    - - - - - - - - - - - - - X
8   TRIAL - VOLUME II - TESTIMONY OF E. COGGINS

9

10                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE ELIZABETH A. WOLFORD
11               UNITED STATES MAGISTRATE JUDGE

12
                    WAYNE C. FELLE, ESQ.
13                  Law Office of Wayne C. Felle, P.C.
                    6024 Main Street
14                  Williamsville, NY 14221

15

16                  HUGH M. RUSS, III, ESQ.
                    PETER A. SAHASRABUDHE, ESQ.
17                  Hodgson Russ LLP
                    The Guaranty Building
18                  140 Pearl Street, Suite 100
                    Buffalo, New York 14202
19

20

21

22

23

24  COURT REPORTER: Karen J. Clark, Official Court Reporter
                    Karenclark1013@AOL.com
25                  100 State Street
                    Rochester, New York 14614
```

A-2054

2

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | E. COGGINS - DX BY MR. FELLE                                  |
|       | 2  | P R O C E E D I N G                                           |
|       | 3  | *              *              *                               |
|       | 4  |                                                              |
|       | 5  |                                                              |
| 08:55:01 | 6  |                                                           |
| 08:55:01 | 7  | (Time witness was called 9:27 a.m.)                       |
| 09:13:10 | 8  | MR. FELLE:  Good morning your Honor may it                |
| 09:27:36 | 9  | please the Court.  We would like to call Dr. Evelyn       |
| 09:27:39 | 10 | Coggins.                                                  |
| 09:27:39 | 11 | THE COURT:  All right.  Let's have Dr.                    |
| 09:27:42 | 12 | Coggins come in, Mike?                                    |
| 09:28:11 | 13 | Doctor, come on in and come up to the bench               |
| 09:28:14 | 14 | and I'll have you sworn in before you take the bench.     |
| 09:28:20 | 15 | THE WITNESS:  Good morning.                               |
| 09:28:22 | 16 | **(E. COGGINS WAS CALLED TO THE WITNESS STAND AND SWORN.)** |
| 09:28:27 | 17 | THE CLERK:  Thank you.  And you can go ahead              |
| 09:28:30 | 18 | and walk right around Mr. Felle, go to the right and you  |
| 09:28:35 | 19 | can have a seat right in the chair right up here and      |
| 09:28:38 | 20 | just watch yourself.                                      |
| 09:28:41 | 21 | THE WITNESS:  Right here?                                 |
| 09:28:44 | 22 | THE CLERK:  Yes.  And there is water over                 |
| 09:28:46 | 23 | there if you need it and this is moveable.                |
| 09:28:49 | 24 | THE COURT:  Good morning, Doctor.                         |
| 09:28:52 | 25 | THE WITNESS:  Good morning.                               |

A-2055

3

| | | |
|---|---|---|
| | 1 | E. COGGINS - DX BY MR. FELLE |
| 09:28:53 | 2 | THE CLERK: Now that you're seated, please |
| 09:28:55 | 3 | state your first name and last name and spell the last |
| 09:28:57 | 4 | name for the record for the court reporter. |
| 09:28:59 | 5 | THE COURT: And you can remove your mask now |
| 09:29:01 | 6 | that you're seated. |
| 09:29:04 | 7 | THE WITNESS: Evelyn Coggins, E-v-e-y-l-n, |
| 09:29:16 | 8 | C-o-g-g-i-n-s. |
| 09:29:16 | 9 | THE COURT: Doctor, my name is Judge |
| 09:29:19 | 10 | Wolford. I have some instructions for you before you |
| 09:29:20 | 11 | get started. |
| 09:29:21 | 12 | THE WITNESS: Okay. |
| 09:29:21 | 13 | THE COURT: First of all, you're here to |
| 09:29:23 | 14 | testify for the benefit of the Ladies and Gentlemen of |
| 09:29:25 | 15 | the Jury, so I ask you to please direct your answers |
| 09:29:27 | 16 | towards them. |
| 09:29:28 | 17 | THE DEFENDANT: Okay. |
| 09:29:29 | 18 | THE COURT: Only answer the question that |
| 09:29:30 | 19 | you're asked, don't volunteer information. |
| 09:29:33 | 20 | THE WITNESS: Okay. |
| 09:29:33 | 21 | THE COURT: If there is an objection to a |
| 09:29:35 | 22 | question, you can wait until I rule on it, you need to |
| 09:29:39 | 23 | wait until I rule on it and I will let you know whether |
| 09:29:43 | 24 | or not you can answer the question. And please speak |
| 09:29:45 | 25 | slowly and clearly and speak into the microphone so that |

A-2056

4

|   |   |
|---|---|
| | 1      E. COGGINS - DX BY MR. FELLE |
| 09:29:48 | 2   everybody can hear you and my court reporter can take |
| 09:29:50 | 3   down your testimony.  Do you understand? |
| 09:29:52 | 4            THE WITNESS:  Yes. |
| 09:29:52 | 5            THE COURT:  You may proceed whenever you're |
| 09:29:53 | 6   ready, Mr. Felle. |
| 09:29:55 | 7            MR. FELLE:  Thank you very much, your Honor. |
| 09:29:55 | 8   DIRECT EXAMINATION BY MR. FELLE: |
| 09:29:57 | 9   Q.  Good morning, Dr. Coggins.  And thank you for |
| 09:30:00 | 10  being here.  I know you traveled from Buffalo today so |
| 09:30:03 | 11  it was no small effort, so thank you so much. |
| 09:30:06 | 12       You are a forensic psychiatrist, correct? |
| 09:30:11 | 13  A.  Yes, I am. |
| 09:30:12 | 14  Q.  And that is an MD? |
| 09:30:13 | 15  A.  Yes. |
| 09:30:13 | 16  Q.  Doctor, can you tell us a little bit about your |
| 09:30:17 | 17  educational background and credentials in that field? |
| 09:30:19 | 18  A.  Sure.  I went to college at University of Buffalo |
| 09:30:25 | 19  and graduated, I don't remember the year.  I graduated |
| 09:30:30 | 20  from medical school, also in Buffalo, in 1992.  And then |
| 09:30:34 | 21  I did my residency training in psychiatry at Case |
| 09:30:40 | 22  Western Reserve in Cleveland.  And I returned to Buffalo |
| 09:30:44 | 23  in 1996 and started working for the University and I got |
| 09:30:50 | 24  board certified in general psychiatry in 1997.  And then |
| 09:30:56 | 25  I got extra credentials and was certified in forensic |

A-2057

5

|  |  | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:31:03 | 2 | psychiatry in 1998.  So, the forensic psychiatry does |
| 09:31:08 | 3 | require special training about the interface between |
| 09:31:11 | 4 | psychiatry and the law. |
| 09:31:15 | 5 | Q.  And in addition to that educational background, |
| 09:31:20 | 6 | do you have affiliations with various hospitals, |
| 09:31:22 | 7 | organizations within the Western New York area? |
| 09:31:25 | 8 | A.  Yes.  I'm on faculty at Erie County Medical |
| 09:31:31 | 9 | Center, and I'm still currently on faculty with the SUNY |
| 09:31:38 | 10 | Buffalo School of Medicine. |
| 09:31:44 | 11 | Q.  This case, the case involving Mr. Ortiz, takes us |
| 09:31:47 | 12 | back to 2004. |
| 09:31:49 | 13 | A.  Yes. |
| 09:31:50 | 14 | Q.  Back then, were you also an attending doctor at |
| 09:31:54 | 15 | Buffalo General Hospital? |
| 09:31:55 | 16 | A.  At the time, I was working at Buffalo General |
| 09:31:58 | 17 | Hospital, yes. |
| 09:31:58 | 18 | Q.  And, also, at that time, were you working with |
| 09:32:02 | 19 | the Erie County Department of Mental Health Services? |
| 09:32:05 | 20 | A.  Yes, I was. |
| 09:32:07 | 21 | Q.  And just, if you could, just describe the |
| 09:32:10 | 22 | services that the Erie County Mental Health Services |
| 09:32:13 | 23 | Department provided in Erie County? |
| 09:32:15 | 24 | A.  So, at that time, I was an attending psychiatrist |
| 09:32:20 | 25 | at the Erie County Holding Center where I took care of |

A-2058

6

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:32:24 | 2 | mentally ill prisoners, and I also did evaluations for |
| 09:32:29 | 3 | the court to make sure that mentally ill inmates were |
| 09:32:34 | 4 | able to understand what was going on in court and would |
| 09:32:37 | 5 | have access to a fair trial. |
| 09:32:43 | 6 | Q. And would you say then, through your services |
| 09:32:45 | 7 | through the Erie County Mental Health Services |
| 09:32:48 | 8 | Department, that you were a treatment provider of those |
| 09:32:51 | 9 | inmates? |
| 09:32:51 | 10 | A. Yes, I was. |
| 09:32:52 | 11 | Q. And was that the case with respect to Mr. Ortiz? |
| 09:32:55 | 12 | A. Yes. |
| 09:32:56 | 13 | Q. And with respect to your involvement, after Mr. |
| 09:33:03 | 14 | Ortiz left Erie County in approximately 2006 and was |
| 09:33:08 | 15 | moved within the prison system, did you have any other |
| 09:33:11 | 16 | contact with him? |
| 09:33:12 | 17 | A. No, I didn't. |
| 09:33:13 | 18 | Q. And just so the jury understands, between that |
| 09:33:17 | 19 | time, the time you treated Mr. Ortiz and up until I took |
| 09:33:21 | 20 | your deposition in 2018, you and I never met, correct? |
| 09:33:24 | 21 | A. That's correct. |
| 09:33:25 | 22 | Q. And between 2018, I believe it was October when |
| 09:33:30 | 23 | you and I met and you provided deposition testimony, |
| 09:33:34 | 24 | that has been the only time that you and I have actually |
| 09:33:37 | 25 | face to face met and talked, correct? |

A-2059

7

|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 09:33:39 | 2 | A. That's correct. |
| 09:33:40 | 3 | Q. And just to be further clear, we're not |
| 09:33:42 | 4 | compensating you in any way for your testimony today, |
| 09:33:45 | 5 | correct? |
| 09:33:46 | 6 | A. No, I'm not being paid. I'm a material witness. |
| 09:33:50 | 7 | Q. And you're here under a sense of obligation as a |
| 09:33:54 | 8 | treatment provider to Mr. Ortiz, correct? |
| 09:33:57 | 9 | A. That's correct. |
| 09:33:58 | 10 | Q. And I appreciate your testimony does take us back |
| 09:34:00 | 11 | to 2004, 18 years ago, there will be time, of course, |
| 09:34:05 | 12 | that you'll want help to refresh your memory. If you |
| 09:34:09 | 13 | want to refer to your medical records through the Erie |
| 09:34:13 | 14 | County Health Services Center, please let me know that. |
| 09:34:16 | 15 | We have marked them and we can introduce them if you |
| 09:34:19 | 16 | like. In addition to that, did you review any materials |
| 09:34:21 | 17 | before coming in here today to testify? |
| 09:34:23 | 18 | A. Yes. I reviewed my deposition from 2018 and |
| 09:34:29 | 19 | flipped through a little bit of the records, that was |
| 09:34:36 | 20 | all. |
| 09:34:37 | 21 | Q. Just so we're very clear, back in 2005 when the |
| 09:34:44 | 22 | prosecution of Mr. Ortiz was going on, you were asked by |
| 09:34:49 | 23 | then, Judge Forma, who was the trial court judge in the |
| 09:34:55 | 24 | criminal prosecution, to give testimony, correct? |
| 09:34:57 | 25 | A. Yes. |

A-2060

8

|   |   |
|---|---|
| | 1 |
| 09:34:58 | 2 |
| 09:35:01 | 3 |
| 09:35:03 | 4 |
| 09:35:05 | 5 |
| 09:35:08 | 6 |

E. COGGINS - DX BY MR. FELLE

1

09:34:58  2   Q.  And like today, you entered the Court there and

09:35:01  3   you took an oath to tell the truth then, correct?

09:35:03  4   A.  Yes, I did.

09:35:05  5   Q.  And at that time, you talked about your treatment

09:35:08  6   of Mr. Ortiz, correct?

09:35:09  7   A.  Yes.

09:35:11  8   Q.  Likewise, if you would like to reference that, it

09:35:16  9   would stand to reason that your memory would be much

09:35:19  10  clearer then in 2005 than it would 18 years removed,

09:35:24  11  okay, Doctor?

09:35:25  12  A.  Yes.

09:35:25  13  Q.  In other words, we would like to be as fair to

09:35:28  14  you as possible.  If you want to reference any of your

09:35:30  15  materials in addressing any of my questions, please feel

09:35:34  16  free to do so and let me know if you need anything to

09:35:37  17  reference, okay?

09:35:38  18  A.  Okay.

09:35:47  19  Q.  I may have asked you this.  In your capacity as a

09:35:50  20  forensic psychiatrist for the Erie County Mental Health

09:35:54  21  Services, did you become involved in the treatment of

09:35:55  22  Mr. Ortiz?

09:35:56  23  A.  Yes, I did.

09:35:57  24  Q.  Are you aware of the circumstances that you

09:36:01  25  became involved in his treatment?

A-2061

9

1                     E. COGGINS - DX BY MR. FELLE

09:36:02   2       A.  I was the psychiatrist on duty the day that he

09:36:05   3   was scheduled for his first treatment session with the

09:36:08   4   psychiatrist.

09:36:10   5       Q.  And when you came to treat Mr. Ortiz, was he

09:36:17   6   under pending criminal charges at that time?

09:36:19   7       A.  Yes, he was already in custody, so he had been

09:36:23   8   charged.

09:36:24   9       Q.  And so he was an inmate, at that time, in the

09:36:27   10  Erie County Holding Center, correct?

09:36:29   11      A.  Yes.

09:36:36   12      Q.  Based on the records, it looks like there was a

09:36:39   13  number of doctors that would treat inmates at the Erie

09:36:45   14  County Holding Center back then, including, for example,

09:36:47   15  a doctor?

09:36:50   16      A.  Yes.

09:36:50   17      Q.  Do you know, presently, how Dr. Liebergall is

09:36:54   18  doing?

09:36:55   19      A.  Well, Dr. Liebergall was a psychologist, he

09:36:59   20  wasn't a physician at the time.  And he is retired.  And

09:37:02   21  last I heard, he moved to Florida.  I mean, I know his

09:37:07   22  wife died, but that is all I know.

09:37:09   23      Q.  Fair enough.  And I was going to bring that up.

09:37:11   24  We did try to get his deposition.  At that time, his

09:37:15   25  wife was ill and I was hoping Mr. Liebergall was well.

A-2062

```
           1              E. COGGINS - DX BY MR. FELLE
09:37:19   2              MR. RUSS:  I object.
09:37:21   3              THE COURT:  Mr. Felle, Mr. Felle, sustained.
09:37:23   4    That is not a question.
09:37:24   5              MR. RUSS:  Move to strike.
09:37:25   6              THE COURT:  I'm going to strike that, ladies
09:37:27   7    and gentlemen, and you should disregard Mr. Felle's
09:37:29   8    comments.  The attorneys are not giving evidence, it's
09:37:33   9    the witness giving evidence.
09:37:35  10              Let's keep your questions to actual
09:37:37  11    questions, Mr. Felle.
09:37:37  12              MR. FELLE:  My apologies.
09:37:41  13              THE COURT:  Thank you.
09:37:41  14    Q.  Dr. Coggins, as you just expressed back in 2004,
09:37:45  15    was it common for you and, for example, Dr. Liebergall
09:37:48  16    to work in conjunction with respect to the treatment of
09:37:52  17    inmates at the Erie County Holding Center?
09:37:54  18    A.  Yes.
09:37:54  19    Q.  And while he wasn't a forensic psychiatrist, he
09:37:57  20    was involved in the treatment of inmates along with you,
09:38:01  21    correct?
09:38:01  22    A.  Yes, he was.  He was the head of the program.
09:38:04  23    Q.  And with respect to other doctors that may work
09:38:09  24    within Eric County Medical Health Services Department,
09:38:13  25    at that time, would you rely on each other with respect
```

E. COGGINS - DX BY MR. FELLE

09:38:16  2   to treatment notes, contact evaluations with patients in

09:38:21  3   the holding center?

09:38:23  4       A.  Yes.  We were a team and we worked together and

09:38:26  5   sometimes saw each other's patients.

09:38:29  6       Q.  And that is not unlike, maybe, your position at

09:38:33  7   Buffalo General Hospital, you rely on colleagues with

09:38:39  8   respect to contacts with patients of yours?

09:38:40  9       A.  Yes, we do.

09:38:41  10      Q.  Would it be common, back in 2004, to rely on the

09:38:44  11  notes of other colleagues in the Erie County Medical

09:38:52  12  Center informing your decision about a patient?

09:38:54  13      A.  Yes, it would be.

09:38:55  14      Q.  Would it be common that you would rely on that

09:38:58  15  with respect to your treatment plan?

09:38:59  16      A.  Yes.

09:38:59  17      Q.  And could you explain that for me and the jury?

09:39:02  18      A.  Well, if one doctor examined a patient and made a

09:39:06  19  diagnosis and started medication, that doctor may not be

09:39:11  20  there the next time the patient had to be seen and

09:39:13  21  another doctor would see the patient, and you usually

09:39:16  22  would stick with the treatment plan, as long as it made

09:39:19  23  sense, and continued the same therapy.

09:39:22  24      Q.  In other words, there are just not enough of you

09:39:26  25  to treat everybody at every time, correct?

A-2064

|       |                                                         |
|-------|---------------------------------------------------------|
| 1     | E. COGGINS - DX BY MR. FELLE                             |

09:39:28  2      A.  Yes.

09:39:28  3      Q.  And so you spread out the responsibilities

09:39:31  4   amongst other colleagues and professionals, correct?

09:39:34  5      A.  Yes.

09:39:34  6      Q.  And we call that a multi-disciplinary approach to

09:39:37  7   medicine.  Is that fair to say?

09:39:39  8      A.  Yes.

09:39:42  9      Q.  And so, Doctor, did you happen to bring your

09:39:46  10  records from the Erie County Health Services Department?

09:39:48  11     A.  I have some notes with me, yes.

09:39:52  12          MR. FELLE:  Your Honor, we've had those

09:39:54  13  notes, which we exchanged with counsel, as marked

09:39:57  14  Exhibit 29.  These are the medical records that have

09:40:01  15  been exchanged through discovery from the Eric County

09:40:05  16  Medical Health Services Department, and we would like,

09:40:06  17  at this point, to be able to utilize those as an exhibit

09:40:09  18  to show the Doctor.

09:40:10  19          THE COURT:  Any objection?

09:40:11  20          MR. RUSS:  No objection to the Doctor

09:40:14  21  looking at them.

09:40:15  22          THE COURT:  Okay.  Thank you, Mr. Russ.  So,

09:40:21  23  if you want, do you have a copy for Dr. Coggins or were

09:40:24  24  you just going to display them to her?

09:40:27  25          MR. FELLE:  I ask her if you have a copy.

A-2065

13

|  |    |                                                              |
|-----------|----|--------------------------------------------------------------|
|           | 1  | E. COGGINS - DX BY MR. FELLE                                 |
| 09:40:29  | 2  | THE WITNESS:  I do have a copy.  I'm not                     |
| 09:40:32  | 3  | sure I have everything.                                      |
| 09:40:33  | 4  | THE COURT:  Let's make sure she is looking                   |
| 09:40:35  | 5  | at the document that is marked as an exhibit, Mr. Felle.     |
| 09:40:40  | 6  | Do you have another copy of exhibit 29?                      |
| 09:41:00  | 7  | And so I'm clear, so that, I think it's                      |
| 09:41:10  | 8  | helpful if the witness looks at it to make sure it's the     |
| 09:41:15  | 9  | same as what is in her file.                                 |
| 09:41:21  | 10 | MR. FELLE:  May I approach, your Honor?                       |
| 09:41:23  | 11 | THE COURT:  Yes.                                             |
| 09:41:35  | 12 | So the record should reflect that Mr. Felle                  |
| 09:41:38  | 13 | handed an exhibit to the witness.  And this is Exhibit       |
| 09:41:42  | 14 | 29?                                                          |
| 09:41:42  | 15 | MR. FELLE:  That's correct, your Honor.                      |
| 09:41:42  | 16 | THE COURT:  And, Doctor, what is Exhibit 29?                 |
| 09:41:44  | 17 | That is your file or a copy of your file?                    |
| 09:41:46  | 18 | THE WITNESS:  This is a copy of the Erie                     |
| 09:41:50  | 19 | County Mental Health Services from the holding center.       |
| 09:41:52  | 20 | THE COURT:  Okay, thank you.                                 |
| 09:41:57  | 21 | Go ahead whenever you're ready, Mr. Felle.                   |
| 09:41:59  | 22 | MR. FELLE:  Thank you, your Honor.                           |
| 09:41:59  | 23 | CONTINUING DIRECT EXAMINATION BY MR. FELLE:                  |
| 09:41:59  | 24 | Q.  At the risk of repeating myself, Dr. Coggins,            |
| 09:42:03  | 25 | that is the file that contains your records or notes         |

A-2066

14

|  |  |  |
|--|--|--|
|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 09:42:06 | 2 | pertaining to your treatment of Mr. Ortiz while he was |
| 09:42:08 | 3 | an inmate at the Erie County Holding Center, correct? |
| 09:42:12 | 4 | A. Yes. |
| 09:42:13 | 5 | Q. And it also has various other comments from |
| 09:42:17 | 6 | doctors who treated him in conjunction with you, |
| 09:42:20 | 7 | correct? |
| 09:42:20 | 8 | A. That's correct. |
| 09:42:20 | 9 | Q. And you relied on it in your continuing treatment |
| 09:42:27 | 10 | of Mr. Ortiz? |
| 09:42:28 | 11 | A. Yes, that's correct. |
| 09:42:29 | 12 | Q. And I want to look to your first involvement of |
| 09:42:32 | 13 | Mr. Ortiz. Looks to be November 19th of 2004? |
| 09:42:35 | 14 | A. Yes. |
| 09:42:45 | 15 | Q. And do you see that in front of you? |
| 09:42:47 | 16 | A. Yes, I do. |
| 09:42:48 | 17 | Q. And, I apologize, I think I gave you the |
| 09:42:52 | 18 | marked-up version. |
| 09:42:55 | 19 | A. Do you want to switch back? |
| 09:42:58 | 20 | MR. FELLE: That would be great. |
| 09:43:15 | 21 | Q. Doctor, that may show up to your monitor. |
| 09:43:18 | 22 | THE COURT: Let's make sure this is not |
| 09:43:22 | 23 | published to the jury, Dawn. |
| 09:43:24 | 24 | THE CLERK: It is not. |
| 09:43:26 | 25 | Q. Are you able to see that both on your notes and |

A-2067

15

|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 09:43:29 | 2 | on the monitor? |
| 09:43:29 | 3 | A.  Yes. |
| 09:43:30 | 4 | Q.  And I just ask you, with respect to that meeting, |
| 09:43:35 | 5 | first of all, do your notes indicate now that -- the |
| 09:43:38 | 6 | 19th, that is two days after Mr. Ortiz was arrested for |
| 09:43:42 | 7 | sake of the record reference.  Does that indicate that |
| 09:43:44 | 8 | your meeting with Mr. Ortiz was in person, face to face? |
| 09:43:48 | 9 | A.  Yes, it does. |
| 09:43:49 | 10 | MR. RUSS:  Your Honor, I'm going to object. |
| 09:43:50 | 11 | THE COURT:  Sustained.  This document is not |
| 09:43:52 | 12 | in evidence, so you can't read from it.  You can't ask |
| 09:43:55 | 13 | the witness to testify about what it says.  She can use |
| 09:43:59 | 14 | it to facilitate her testimony if she can't recall |
| 09:44:03 | 15 | certain issues.  You can have her refer to it to refresh |
| 09:44:08 | 16 | her recollection, but she has to testify about what she |
| 09:44:11 | 17 | remembers, not what the document says. |
| 09:44:14 | 18 | Q.  Okay.  So, Doctor, I can ask you the question and |
| 09:44:18 | 19 | like the Judge just admonished me, if you don't recall |
| 09:44:22 | 20 | independently and you need your notes, let us know that |
| 09:44:24 | 21 | and you can use that to refresh your memory and answer |
| 09:44:27 | 22 | the question. |
| 09:44:28 | 23 | A.  Okay. |
| 09:44:29 | 24 | Q.  With respect to that meeting, do you recall if |
| 09:44:31 | 25 | that was in person? |

A-2068

16

|   |   |
|---|---|
| | 1            E. COGGINS - DX BY MR. FELLE |
| 09:44:31 | 2      A. Yes, it was in person. |
| 09:44:37 | 3      Q. And do you recall if you felt threatened in any |
| 09:44:40 | 4   way by meeting with Mr. Ortiz at that time in person? |
| 09:44:44 | 5      A. I don't ever remember feeling threatened by him. |
| 09:44:48 | 6      Q. And, incidentally, do you have an independent |
| 09:44:50 | 7   recollection of that meeting with him, Mr. Ortiz? |
| 09:44:53 | 8      A. I remember meeting with him, yes. |
| 09:44:55 | 9      Q. And can you tell me and the jury what do you |
| 09:44:58 | 10   remember about that meeting? |
| 09:44:59 | 11      A. I remember that he seemed confused. He had |
| 09:45:07 | 12   difficulty engaging, and that he was fearful and that I |
| 09:45:16 | 13   thought he had schizophrenia. |
| 09:45:30 | 14      Q. Do you recall, at that time, having any |
| 09:45:32 | 15   conversation about the charges that were pending against |
| 09:45:35 | 16   Mr. Ortiz with him? |
| 09:45:37 | 17      A. I don't remember if we discussed it that day, but |
| 09:45:40 | 18   it would have been listed in the referral what his |
| 09:45:43 | 19   charges were, what he was facing. |
| 09:46:06 | 20      Q. Looking at your report of November 19th of 2004. |
| 09:46:10 | 21         MR. FELLE: Judge, with respect to her |
| 09:46:12 | 22   report, this is her statement, and I would like to move |
| 09:46:14 | 23   it into evidence and have her read it. |
| 09:46:16 | 24         THE COURT: Any objection? |
| 09:46:18 | 25         MR. RUSS: I do object. I don't think a |

A-2069

17

|          |    |                                                    |
|----------|----|----------------------------------------------------|
|          | 1  | E. COGGINS - DX BY MR. FELLE                       |
| 09:46:19 | 2  | full and sufficient foundation has been laid.      |
| 09:46:23 | 3  | THE COURT:  Okay.  All right.  Sustained.          |
| 09:46:28 | 4  | Q.  Dr. Coggins, you've told us that you recall that |
| 09:46:39 | 5  | meeting with Mr. Ortiz, correct?                   |
| 09:46:41 | 6  | A.  Yes.                                           |
| 09:46:42 | 7  | Q.  And with respect to the specific findings of that |
| 09:46:57 | 8  | initial evaluation, would it assist you in looking at |
| 09:47:00 | 9  | your report?                                       |
| 09:47:01 | 10 | A.  Yes, it would.                                 |
| 09:47:02 | 11 | Q.  Would it help to refresh your memory?          |
| 09:47:04 | 12 | A.  Yes.                                           |
| 09:47:04 | 13 | Q.  And now looking at that, could you tell us at  |
| 09:47:07 | 14 | that time how old was Mr. Ortiz?  Do you recall that, |
| 09:47:10 | 15 | first of all?                                      |
| 09:47:11 | 16 | A.  I remembered that he was in his early 20s.  And, |
| 09:47:16 | 17 | according to this, it says he was 23.              |
| 09:47:19 | 18 | Q.  Okay.  And you talked there about --           |
| 09:47:24 | 19 | THE COURT:  Mr. Felle, you can't read from a       |
| 09:47:27 | 20 | document that is not in evidence?                  |
| 09:47:29 | 21 | MR. FELLE:  Your Honor, may we take a recess       |
| 09:47:31 | 22 | where we can discuss that further?                 |
| 09:47:33 | 23 | THE COURT:  All right.  Ladies and                 |
| 09:47:36 | 24 | gentlemen, unfortunately, we're going to have to take |
| 09:47:38 | 25 | another break.  So I would just remind you, do not talk |

A-2070

18

|  | | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:47:42 | 2 | about the case among yourselves or with anybody else and |
| 09:47:44 | 3 | we'll see you back here shortly.  Thank you. |
| 09:48:07 | 4 | (Whereupon the jury is escorted from the |
| 09:48:09 | 5 | courtroom.) |
| 09:48:15 | 6 | THE COURT:  Look it, Mr. Felle, it's your |
| 09:48:17 | 7 | responsibility to know the rules of evidence.  And it's |
| 09:48:21 | 8 | apparent to me that you're not following the rules of |
| 09:48:25 | 9 | evidence.  You can't read from a document that is not in |
| 09:48:28 | 10 | evidence.  Have the witness testify about what she |
| 09:48:32 | 11 | remembers.  And if she doesn't remember something, then |
| 09:48:35 | 12 | she can refer to a document to refresh her recollection. |
| 09:48:40 | 13 | MR. FELLE:  Judge, if I may.  These are |
| 09:48:42 | 14 | certified records that were exchanged between the |
| 09:48:44 | 15 | parties.  I can lay the foundation, if I need to.  These |
| 09:48:48 | 16 | go back to 2004.  It's a bit unfair for me to have to do |
| 09:48:52 | 17 | that.  I did try to work these issues out with counsel. |
| 09:48:55 | 18 | I was led to believe there would be no problems with |
| 09:48:58 | 19 | respect to the admissibility.  They've had these |
| 09:49:00 | 20 | documents for years, almost a decade.  So, I can make |
| 09:49:07 | 21 | that application now.  We can go through the foundation, |
| 09:49:11 | 22 | if we need to, as far as the medical records being |
| 09:49:14 | 23 | certified being maintained in the normal course of |
| 09:49:18 | 24 | business.  I can ask her that outside of the presence of |
| 09:49:21 | 25 | the jury. |

|   |   |
|---|---|
| 1 | E. COGGINS - DX BY MR. FELLE |
| 09:49:21 2 | THE COURT:  You're not dealing with the |
| 09:49:23 3 | hearsay issues. |
| 09:49:24 4 | MR. FELLE:  This is her report, your Honor. |
| 09:49:25 5 | THE COURT:  That doesn't mean that it isn't |
| 09:49:27 6 | hearsay. |
| 09:49:28 7 | MR. FELLE:  She is here to talk about what |
| 09:49:31 8 | she stated in the report.  She can be cross examined by |
| 09:49:34 9 | counsel. |
| 09:49:34 10 | THE COURT:  That doesn't mean it's not |
| 09:49:36 11 | hearsay.  You know, Dr. Coggins, I'll have to have you |
| 09:49:39 12 | step out of the courtroom while we have this discussion. |
| 09:49:44 13 | THE WITNESS:  Do I take my things with me? |
| 09:49:46 14 | THE COURT:  No, you can leave them.  We'll |
| 09:49:48 15 | have you back here in a minute. |
| 09:49:52 16 | MR. FELLE:  Thank you for your patience. |
| 09:49:52 17 | (Whereupon, the witness exited the |
| 09:50:09 18 | courtoom.) |
| 09:50:09 19 | THE COURT:  So just dealing, Mr. Russ, with |
| 09:50:11 20 | the page that is up on the screen.  Is the defense |
| 09:50:13 21 | objecting to this page of the medical records? |
| 09:50:18 22 | MR. RUSS:  The defense, at this point, |
| 09:50:22 23 | objects.  If an appropriate foundation were laid and |
| 09:50:26 24 | sufficient foundation, for example, not to tell him how |
| 09:50:31 25 | to do it, did you make these notes, are these your |

|   |   |
|---|---|
| 1 | E. COGGINS - DX BY MR. FELLE |
| 09:50:34  2 | notes. |
| 09:50:35  3 | THE COURT:  But, Mr. Felle is suggesting |
| 09:50:36  4 | that somehow there were discussions that you were going |
| 09:50:39  5 | to stipulate to these. |
| 09:50:41  6 | MR. RUSS:  Twice, your Honor, we had |
| 09:50:43  7 | scheduled to meet at 8 o'clock Monday morning and after |
| 09:50:47  8 | court on Monday to go through both of our exhibits and |
| 09:50:51  9 | we had them out here and we were ready to go and didn't |
| 09:50:56  10 | do it. |
| 09:50:56  11 | THE COURT:  Why didn't you do it? |
| 09:50:58  12 | MR. RUSS:  I don't know. |
| 09:51:01  13 | THE COURT:  Well, I mean, there must have |
| 09:51:03  14 | been a reason that the meeting didn't go forward.  Who |
| 09:51:09  15 | cancelled the meeting? |
| 09:51:11  16 | MR. RUSS:  Well, the first, it was supposed |
| 09:51:13  17 | to be 8 o'clock Monday morning before court, and then we |
| 09:51:16  18 | agreed we would do it after court, and we just never did |
| 09:51:20  19 | it. |
| 09:51:21  20 | THE COURT:  All right. |
| 09:51:23  21 | MR. FELLE:  I've asked each afternoon, your |
| 09:51:25  22 | Honor.  And I think, initially, it was pushed only |
| 09:51:27  23 | because we were waiting for your Honor to rule on |
| 09:51:30  24 | whether a post-sentencing evidence would be admitted. |
| 09:51:33  25 | That had to do with many of the exhibits they were |

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:51:35 | 2 | asking to be entered. |
| 09:51:36 | 3 | THE COURT: That doesn't have to do with |
| 09:51:38 | 4 | these. |
| 09:51:38 | 5 | MR. FELLE: No, it explains why it was |
| 09:51:40 | 6 | pushed off initially by me, but I asked the last two |
| 09:51:44 | 7 | nights, but in speaking with counsel, it was always a |
| 09:51:47 | 8 | general, I don't think we'll have any problems. I'm a |
| 09:51:51 | 9 | little stimede, I guess. All of a sudden, there is this |
| 09:51:54 | 10 | protest. And they've had the records. There has been |
| 09:51:56 | 11 | no issue. |
| 09:51:57 | 12 | THE COURT: Mr. Felle, the fact that |
| 09:51:59 | 13 | something is certified and the fact that something has |
| 09:52:02 | 14 | been produced doesn't eliminate the need for you to lay |
| 09:52:05 | 15 | a foundation if there isn't a stipulation. And it |
| 09:52:08 | 16 | sounds as though defense counsel is not stipulating, so |
| 09:52:11 | 17 | what you're going to have to do for each page that |
| 09:52:14 | 18 | you're seeking to have displayed or published to the |
| 09:52:17 | 19 | jury, either having the document published or have the |
| 09:52:21 | 20 | witness actually testify about what's in the document by |
| 09:52:24 | 21 | reading or referring to the document, you're going to |
| 09:52:26 | 22 | have to lay the foundation and you're going to have |
| 09:52:29 | 23 | to -- we'll have to rule on whether or not it comes into |
| 09:52:31 | 24 | evidence, it's the rule of evidence, it's what they |
| 09:52:37 | 25 | require, so it's tedious, and I don't disagree, it's |

22

|  |  | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:52:41 | 2 | wasting time, especially, for example, this record, I'm |
| 09:52:47 | 3 | looking at, seems as though they are mostly Mr. Ortiz's |
| 09:52:51 | 4 | statements.  I don't see why they wouldn't come into |
| 09:52:55 | 5 | evidence, but if they are going to insist on that, then |
| 09:52:58 | 6 | you have to lay the foundation.  It's a more than a |
| 09:53:02 | 7 | little problematic.  I'm looking at Exhibit 29, there is |
| 09:53:05 | 8 | no Bates stamp numbers on this, and there is none, the |
| 09:53:12 | 9 | record is going to be a mess.  There is no way to refer |
| 09:53:17 | 10 | to each page by what's coming in, so, do you have |
| 09:53:21 | 11 | stickers? |
| 09:53:24 | 12 | MR. FELLE:  I do have stickers. |
| 09:53:25 | 13 | THE COURT:  I think what we're going to have |
| 09:53:27 | 14 | to do for, at least record purposes, we don't have to |
| 09:53:32 | 15 | put the stickers on during the examination, we'll have |
| 09:53:36 | 16 | to identify each page by a letter.  For instance, the |
| 09:53:40 | 17 | page that you have displayed up there right now, 29 A, |
| 09:53:44 | 18 | and then you'll move in 29 A.  Once you lay the |
| 09:53:50 | 19 | foundation, we'll see if there is an objection and go on |
| 09:53:54 | 20 | from there.  All right.  Let's bring Dr. Coggins back |
| 09:54:01 | 21 | in.  And then we can bring our jury in. |
| 09:54:07 | 22 | THE CLERK:  Certainly, Judge. |
| 09:54:08 | 23 | (Whereupon, the witness retakes the witness |
| 09:54:10 | 24 | stand.) |
| 09:54:13 | 25 | (Whereupon, the jury is escorted into the |

|       |    | E. COGGINS - DX BY MR. FELLE                              |
|-------|----|-----------------------------------------------------------|
|       | 1  |                                                           |
| 09:54:16 | 2  | courtroom.)                                            |
| 09:55:20 | 3  | THE COURT:  Welcome back, Ladies and                  |
| 09:55:23 | 4  | Gentlemen of the Jury.  Everyone can have a seat.  Thank |
| 09:55:24 | 5  | you for your patience.                                |
| 09:55:25 | 6  | Mr. Felle, whenever you're ready, you can             |
| 09:55:27 | 7  | continue.                                             |
| 09:55:28 | 8  | MR. FELLE:  Thank you, your Honor.                    |
| 09:55:28 | 9  | CONTINUING DIRECT EXAMINATION BY MR. FELLE            |
| 09:55:29 | 10 | Q.  Again, Dr. Coggins, thank you for your patience.  |
| 09:55:31 | 11 | Dr. Coggins, with respect to the records, I'm going to |
| 09:55:33 | 12 | ask you some questions to lay a foundation, if you will, |
| 09:55:36 | 13 | for those records.  The notes that you have that we   |
| 09:55:43 | 14 | started to look at in the Erie County Mental Health   |
| 09:55:47 | 15 | Services file, are those notes made by you?           |
| 09:55:49 | 16 | A.  Yes, they are.                                     |
| 09:55:50 | 17 | Q.  And is it standard procedure for you to do that?  |
| 09:55:53 | 18 | A.  Yes, it is.                                        |
| 09:55:54 | 19 | Q.  And with respect to the notations that you made   |
| 09:56:00 | 20 | in the file, do these appear to be in conformity with |
| 09:56:05 | 21 | what you've done in this case to what you've done in  |
| 09:56:09 | 22 | other cases?                                          |
| 09:56:09 | 23 | A.  Yes.                                               |
| 09:56:10 | 24 | Q.  Since making those notes, have there been any     |
| 09:56:14 | 25 | changes or alterations, revisions made to the notes?  |

24

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:56:17 | 2 | A.  No, there haven't been. |
| 09:56:19 | 3 | Q.  Do these appear to be the notes that they are |
| 09:56:21 | 4 | written on the day they subscribe to be on November 19, |
| 09:56:27 | 5 | 2004? |
| 09:56:27 | 6 | A.  Yes, these are the notes. |
| 09:56:28 | 7 | MR. FELLE:  At this point, I would like to |
| 09:56:30 | 8 | move in the document, the notes that we'll refer to as |
| 09:56:34 | 9 | 29 A. |
| 09:56:35 | 10 | THE COURT:  The page that is displayed on |
| 09:56:36 | 11 | the screen to the witness right now? |
| 09:56:39 | 12 | MR. FELLE:  Correct, your Honor. |
| 09:56:39 | 13 | THE COURT:  Any objection? |
| 09:56:40 | 14 | MR. RUSS:  Just that one page? |
| 09:56:42 | 15 | THE COURT:  Just the one page. |
| 09:56:43 | 16 | MR. RUSS:  No objection, your Honor. |
| 09:56:50 | 17 | THE COURT:  Okay.  29 A will come into |
| 09:56:56 | 18 | evidence and we can display it to the jury. |
| 09:56:56 | 19 | **(Whereupon, Exhibit 29-A was received into** |
| 09:56:59 | 20 | **evidence.)** |
| 09:56:59 | 21 | THE CLERK:  One moment while it warms up. |
| 09:57:49 | 22 | THE COURT:  Can you see on your screen? |
| 09:57:52 | 23 | Okay.  Great.  Go ahead, Mr. Felle. |
| 09:57:54 | 24 | MR. FELLE:  Great. |
| 09:57:55 | 25 | Q.  Dr. Coggins, come a long way, but now could you |

A-2077

25

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 09:58:00 | 2 | read the report? |
| 09:58:01 | 3 | A.  Would you like me to start at the top where it |
| 09:58:05 | 4 | says "referral" or where I start with my response? |
| 09:58:09 | 5 | Q.  I'll have you start with "psychiatric response." |
| 09:58:12 | 6 | A.  "Twenty-three-year-old Hispanic male with history |
| 09:58:16 | 7 | of depression complains of feeling sad.  Reported poor |
| 09:58:21 | 8 | sleep.  Complains of hearing voices.  Poor historian. |
| 09:58:27 | 9 | Past medical history, unknown.  Substance, history of |
| 09:58:32 | 10 | alcohol, Xanax, marijuana in the past.  Mental status |
| 09:58:39 | 11 | examination.  Speech, under productive.  Affect, that is |
| 09:58:48 | 12 | emotional expression, blunt.  Mood, dysphoric, guarded. |
| 09:58:57 | 13 | Thoughts, poverty of content plus auditory |
| 09:59:06 | 14 | hallucinations, plus thoughts of suicide at times, but |
| 09:59:10 | 15 | no plan or intent.  Denied thoughts of hurting others. |
| 09:59:15 | 16 | The impression, schizophrenia.  Plan, continue Zyprexa, |
| 09:59:23 | 17 | 20 milligrams, twice daily.  Needs interpreter for |
| 09:59:27 | 18 | competency evaluation," and then my signature. |
| 09:59:33 | 19 | Q.  And so, just to help us understand that a little |
| 09:59:36 | 20 | bit better, Doctor, when you talked about his mental or, |
| 09:59:41 | 21 | I'm sorry, his emotional expression or presentation, you |
| 09:59:45 | 22 | said "blunt."  Can you explain to us what that means? |
| 09:59:49 | 23 | A.  Blunt, even when he is discussing emotional |
| 09:59:53 | 24 | content, he is unable to show any expression.  That is a |
| 09:59:57 | 25 | symptom common with someone who is psychotic. |

A-2078

26

|          |    | E. COGGINS - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:00:00 | 2  | Q.   And how about the phrase dysphoric? |
| 10:00:04 | 3  | A.   Dysphoric means kind of a bad mood, he didn't |
| 10:00:07 | 4  | feel right, he just was off. |
| 10:00:16 | 5  | Q.   And when you talk about poverty of content with |
| 10:00:19 | 6  | respect to his thoughts or speech when he was talking to |
| 10:00:22 | 7  | you, what does that mean? |
| 10:00:23 | 8  | A.   That means he wasn't able to convey thoughts |
| 10:00:26 | 9  | properly.  There wasn't much.  It seemed like much |
| 10:00:31 | 10 | wasn't going on in his mind, like he wasn't able to let |
| 10:00:35 | 11 | me know anything that was going on. |
| 10:00:38 | 12 | Q.   And you had placed in your notes here that he was |
| 10:00:40 | 13 | hearing voices.  Are those referred to like |
| 10:00:44 | 14 | hallucinations? |
| 10:00:45 | 15 | A.   Yes. |
| 10:00:45 | 16 | Q.   And can you explain what that means and why it's |
| 10:00:48 | 17 | important in your diagnosis? |
| 10:00:49 | 18 | A.   Hallucinations are a symptom of a psychotic |
| 10:00:54 | 19 | episode why people hear voices seeming to be coming from |
| 10:01:01 | 20 | inside the room as though someone is talking to them |
| 10:01:04 | 21 | when there isn't anyone there.  It's commonly seen with |
| 10:01:10 | 22 | schizophrenia. |
| 10:01:13 | 23 | Q.   And you did note there that there had been |
| 10:01:15 | 24 | thoughts of suicide that he expressed to you, correct? |
| 10:01:18 | 25 | A.   Yes. |

A-2079

| | | |
|---|---|---|
| | 1 | E. COGGINS - DX BY MR. FELLE |
| 10:01:20 | 2 | Q. Now, can you explain to us, by way of being a |
| 10:01:25 | 3 | trained forensic psychiatrist, what do you mean by the |
| 10:01:31 | 4 | diagnosis of schizophrenia and what does that mean in |
| 10:01:33 | 5 | general? |
| 10:01:33 | 6 | A. Schizophrenia is a disorder of thought where a |
| 10:01:38 | 7 | person is unable to. |
| 10:02:04 | 8 | THE COURT: All right. Sorry about that, |
| 10:02:05 | 9 | ladies and gentlemen. Go ahead, Mr. Felle. |
| 10:02:08 | 10 | MR. FELLE: Okay. Wake us up. I'm sorry, |
| 10:02:12 | 11 | Doctor. You were telling us about the meaning of |
| 10:02:16 | 12 | schizophrenia and particularly with respect to Mr. |
| 10:02:18 | 13 | Ortiz. |
| 10:02:18 | 14 | A. Okay. So schizophrenia is an illness where a |
| 10:02:23 | 15 | person loses their ability to tell what is real from |
| 10:02:26 | 16 | what's not real. And it's a disorder of thinking where |
| 10:02:31 | 17 | logical thought processes that we all have and rely on |
| 10:02:36 | 18 | don't work right. And one thought doesn't lead to the |
| 10:02:40 | 19 | next logically. |
| 10:02:44 | 20 | Q. And with respect to Mr. Ortiz, at least based on |
| 10:02:49 | 21 | your initial discussion with him, he didn't have a |
| 10:02:52 | 22 | history of schizophrenia, correct? |
| 10:02:54 | 23 | A. No, I don't believe he did, but I made the |
| 10:02:56 | 24 | diagnosis when I saw him. |
| 10:02:58 | 25 | Q. And, incidentally, your notes indicated he was |

1                E. COGGINS - DX BY MR. FELLE

10:03:02  2   23-years-old.  Given your profession, your education and

10:03:07  3   training, is it uncommon for someone to suffer a

10:03:10  4   schizophrenia psychotic break, if you will, at the age

10:03:14  5   of 23.

10:03:14  6       A.  That is the most common time it's a disease of

10:03:18  7   early adulthood.

10:03:19  8       Q.  Can you explain that to us, it stands to reason

10:03:22  9   that someone would have that at that point in life.

10:03:26 10   Could you explain that, please?

10:03:28 11       A.  The most common for a first psychotic break where

10:03:32 12   there is a complete break with connection to reality, it

10:03:36 13   happens in men, usually, as they are transitioning into

10:03:40 14   adulthood or early adulthood.  Women, it's a little bit

10:03:45 15   later.  That is the onset of the first psychotic break

10:03:49 16   typically happens.

10:03:52 17       Q.  Is that because of certain stressors what would

10:03:57 18   be, other than maybe hormones, but what is it that

10:04:02 19   triggers that at that point in life, if you know?

10:04:05 20       A.  Oftentimes, people who have schizophrenia will

10:04:11 21   have kind of a weird behavior early or signs that things

10:04:14 22   are not quite right.  And the first episode of a

10:04:18 23   complete psychotic break like Mr. Ortiz experienced will

10:04:22 24   happen in response to a stressor.  Sometimes, that is

10:04:26 25   going away to college, sometimes that is having a baby.

A-2081

29

                    E. COGGINS - DX BY MR. FELLE

10:04:29   2   Mr. Ortiz's case, he had just moved from Puerto Rico to

10:04:33   3   the United States, and I imagine that, you know, would

10:04:37   4   have been a significant stressor for anyone.

10:04:42   5       Q.  Now, again, you indicated here that there had

10:04:45   6   been positive thoughts for suicide.  With respect to the

10:04:48   7   referral -- so, Mr. Ortiz, it looks like, and if you

10:04:54   8   need to refresh your recollection, let me know, was the

10:04:57   9   initial screening of Mr. Ortiz, was that conducted on

10:05:05  10   the 17th when he first came into the holding center?

10:05:10  11       A.  I believe it's usually the first thing done.

10:05:12  12       Q.  Is that the practice within the Erie County

10:05:16  13   Holding Department, you would have done that on the day

10:05:18  14   they were admitted?

10:05:19  15       A.  Yes.

10:05:19  16       Q.  And that might be whoever was on duty that day or

10:05:22  17   working?

10:05:22  18       A.  That would have been done by one of the social

10:05:25  19   workers or mental health counselors, that is who does

10:05:28  20   those.

10:05:28  21       Q.  And, okay.  And in this case, are you aware that

10:05:33  22   Dr. Liebergall did that initial screening?

10:05:36  23       A.  I didn't recall that.

10:05:37  24       Q.  If you were to look at your notes, would it

10:05:39  25   refresh your memory?

                        E. COGGINS - DX BY MR. FELLE

10:05:40   2      A.   Yes.

10:05:42   3      Q.   So once you have refreshed your memory, just let

10:05:46   4   us know and I'll ask you that question again.

10:05:53   5      A.   So you're talking about the screening and

10:05:55   6   admission summary?

10:06:01   7      Q.   Exactly.

10:06:03   8      A.   So I'm not seeing Dr. Liebergall's name on here,

10:06:07   9   but this looks like his writing.

10:06:12  10      Q.   Okay.  And with respect to it refreshing your

10:06:16  11   memory, does that help your memory as to when the

10:06:19  12   initial screening was done?

10:06:20  13      A.   Yes.

10:06:20  14      Q.   And when was that?

10:06:21  15      A.   November 17th, 2004.

10:06:24  16      Q.   And with respect to your indications that Mr.

10:06:28  17   Ortiz was having thoughts of suicide, do you know

10:06:33  18   whether or not Dr. Liebergall put Mr. Ortiz on a suicide

10:06:37  19   watch based on his initial screening?

10:06:46  20      A.   Yes, he was put on constant observation.

10:06:52  21      Q.   And what does constant observation mean in your

10:06:55  22   terms?

10:06:55  23      A.   That means he had a guard, security officer,

10:07:01  24   watching him 24 hours a day sitting right outside his

10:07:09  25   cell.

A-2083

1     E. COGGINS - DX BY MR. FELLE

10:07:09 2  Q. And was that because of concern of him inflicting

10:07:15 3 harm on himself?

10:07:16 4  A. Yes.

10:07:16 5  Q. And that would have been on the day he was

10:07:19 6 arrested, the 17th, correct?

10:07:23 7  A. Yes.

10:07:27 8  Q. Now, prior to your initial examination of Mr.

10:07:31 9 Ortiz, are aware that he was treated at Buffalo General

10:07:36 10 Hospital?

10:07:36 11  A. Yes.

10:07:36 12  Q. And would it have been common back then to obtain

10:07:40 13 the records of Buffalo General Hospital with respect to

10:07:42 14 your evaluation of the patient?

10:07:44 15  A. It would have been.  I don't know if I had those

10:07:46 16 records or not, though.  That would have been the

10:07:49 17 routine, though; I should have had them.

10:07:51 18  Q. And, in fact, back then in 2004, you were an

10:07:54 19 attending doctor in the psychiatric department of

10:07:57 20 Buffalo General Hospital, correct?

10:07:58 21  A. Yes, I was at Buffalo General Hospital.

10:08:05 22  Q. And I believe, at the time of your deposition, we

10:08:08 23 had a conversation about those records.  Let me ask you,

10:08:12 24 as you testify today, do you have an independent

10:08:15 25 recollection of what those records told you back then

A-2084

32

|          |    | E. COGGINS - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:08:18 | 2  | about Mr. Ortiz? |
| 10:08:20 | 3  | MR. RUSS:  I'm going to object to the way it |
| 10:08:22 | 4  | was phrased starting with her deposition testimony and |
| 10:08:25 | 5  | then asking her another question. |
| 10:08:26 | 6  | THE COURT:  I'll overrule it, go ahead. |
| 10:08:30 | 7  | MR. FELLE:  Okay. |
| 10:08:30 | 8  | THE COURT:  I'm sorry, could you repeat the |
| 10:08:32 | 9  | question? |
| 10:08:32 | 10 | Q.  I'll try. |
| 10:08:35 | 11 | THE COURT:  Do you want it read back? |
| 10:08:35 | 12 | MR. FELLE:  Yes, if I could. |
| 10:08:35 | 13 | (Whereupon the pending question was read |
| 10:08:57 | 14 | back for the jury.) |
| 10:08:57 | 15 | A.  Yes, I remember some of it. |
| 10:08:59 | 16 | Q.  And can you tell us what you can recall? |
| 10:09:01 | 17 | A.  I remember that he was taken by ambulance to the |
| 10:09:05 | 18 | hospital because he was paranoid and psychotic, if I |
| 10:09:11 | 19 | recall, I don't exactly remember, and seen there.  And I |
| 10:09:17 | 20 | believe, I'm not even sure if he came straight to jail |
| 10:09:20 | 21 | from the hospital or if he was released.  That is all I |
| 10:09:25 | 22 | remember. |
| 10:09:25 | 23 | Q.  But you do recall that those records indicated |
| 10:09:29 | 24 | that he was psychotic at that time, correct? |
| 10:09:36 | 25 | A.  Yes. |

A-2085

33

|           |    |                                                                |
|-----------|----|----------------------------------------------------------------|
|           | 1  | E. COGGINS - DX BY MR. FELLE                                    |
| 10:09:36  | 2  | MR. RUSS:  Objection, your Honor.                              |
| 10:09:37  | 3  | THE COURT:  Sustained.                                         |
| 10:09:38  | 4  | MR. RUSS:  And move to strike the answer.                     |
| 10:09:40  | 5  | THE COURT:  Ladies and gentlemen, you should                 |
| 10:09:42  | 6  | disregard the witness' last answer.                           |
| 10:09:44  | 7  | Q.  Would it help refresh your memory if I showed you        |
| 10:09:47  | 8  | the Buffalo General Hospital records?                         |
| 10:09:49  | 9  | A.  Yes, it would.                                            |
| 10:09:54  | 10 | THE COURT:  Well, I don't think she said her                 |
| 10:09:57  | 11 | memory needs to be refreshed.  I mean, in other words,        |
| 10:10:00  | 12 | the objection was to her testifying about what a record       |
| 10:10:02  | 13 | says that is not in evidence.  So I'm not sure you're         |
| 10:10:07  | 14 | going to cure that issue by showing her the record.          |
| 10:10:10  | 15 | MR. FELLE:  Well, your Honor, I initially                    |
| 10:10:11  | 16 | asked her what her independent recollection was of what      |
| 10:10:14  | 17 | she reviewed back then and she was able to tell us what      |
| 10:10:17  | 18 | she could recall independently, and I'm going to simply      |
| 10:10:24  | 19 | ask her about the date of that.                              |
| 10:10:26  | 20 | Q.  Do you remember the date of that treatment?              |
| 10:10:27  | 21 | A.  It was a day or two before he came to jail.              |
| 10:10:30  | 22 | Q.  And I would like to use the records to refresh           |
| 10:10:34  | 23 | her memory?                                                   |
| 10:10:35  | 24 | THE COURT:  Fair enough.                                      |
| 10:10:36  | 25 | MR. FELLE:  And that is going to be exhibit                  |

A-2086

34

```
              1              E. COGGINS - DX BY MR. FELLE

10:10:37      2    28.  And may I approach, your Honor?

10:10:48      3              THE COURT:  Yes.

10:10:49      4    Q.  Dr. Coggins, just, if you would, yourself, review

10:10:52      5    the records from Buffalo General Hospital.  Does it

10:10:55      6    refresh your memory as to what date it was that Mr.

10:11:00      7    Mr. Ortiz was treated at Buffalo General Hospital?

10:11:02      8    A.  Yes.

10:11:03      9    Q.  What date was that?

10:11:04     10    A.  November 15th, 2004.

10:11:05     11    Q.  So that would have been, essentially, two days

10:11:08     12    before Dr. Liebergall did his screening at the mental

10:11:12     13    health, the Erie County Mental Health Services clinic,

10:11:16     14    correct?

10:11:16     15    A.  Yes.

10:11:16     16    Q.  And that would have been two days before, I

10:11:19     17    guess, as his arrest when he was put into the holding

10:11:22     18    center, correct?

10:11:26     19    A.  Yes.

10:11:26     20    Q.  And you were telling us what your independent

10:11:29     21    recollection was.  Can you recall your findings on the

10:11:32     22    19th?  You've told us what you found certain things,

10:11:35     23    including, you know, poverty of content, blunt mood.

10:11:40     24    Can you tell us, based on your memory of those records

10:11:43     25    from Buffalo General Hospital, was he suffering many of
```

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | E. COGGINS - DX BY MR. FELLE                                |
| 10:11:46 | 2  | those things as early as the 15th?                         |
| 10:11:49 | 3  | MR. RUSS:  Objection, your Honor.                          |
| 10:11:50 | 4  | THE COURT:  Sustained.                                     |
| 10:11:51 | 5  | MR. FELLE:  Her independent recollection?                  |
| 10:11:52 | 6  | THE COURT:  No, you're asking her about a                 |
| 10:11:54 | 7  | diagnosis provided by a different institution on a         |
| 10:11:58 | 8  | different date; that would be hearsay.                      |
| 10:12:04 | 9  | MR. FELLE:  No, no, not diagnosis.                         |
| 10:12:06 | 10 | Q.  When he presented, the notes in there about how        |
| 10:12:09 | 11 | he presented, are they consistent?                         |
| 10:12:11 | 12 | A.  Yes.                                                    |
| 10:12:12 | 13 | MR. RUSS:  Objection, your Honor, and move                 |
| 10:12:13 | 14 | to strike.  He is effectively getting her to testify       |
| 10:12:16 | 15 | what these records contain and they are not in evidence.   |
| 10:12:19 | 16 | THE COURT:  Sustained.  Ladies and                        |
| 10:12:22 | 17 | gentlemen, you should disregard that last answer.          |
| 10:12:38 | 18 | Q.  Dr. Coggins, as you were an attending doctor at        |
| 10:12:43 | 19 | Buffalo General Hospital on that date, do you recall at    |
| 10:12:46 | 20 | all having been involved in the treatment at all of Mr.    |
| 10:12:50 | 21 | Ortiz at Buffalo General Hospital?                         |
| 10:12:51 | 22 | A.  No, I was not involved.                                |
| 10:13:20 | 23 | Q.  Dr. Coggins, do you recall, and I think I asked        |
| 10:13:23 | 24 | you this earlier, giving testimony in a competency         |
| 10:13:27 | 25 | hearing back in 2005?                                       |

A-2088

36

```
          1              E. COGGINS - DX BY MR. FELLE
10:13:30  2       A.  Yes.
10:13:30  3       Q.  And were you asked questions then about the signs
10:13:39  4   and symptoms that Mr. Ortiz exhibited while at Buffalo
10:13:43  5   General Hospital?
10:13:43  6       A.  I don't recall.
10:13:47  7       Q.  Would it refresh your memory if I were to show
10:13:49  8   you your testimony?
10:13:50  9       A.  Yes.
10:14:02 10          MR. FELLE:  Your Honor, at this time -- let me
10:14:05 11   ask a couple more questions beforehand, but --
10:14:07 12       Q.  Dr. Coggins, you swore to tell the truth on that
10:14:11 13   day in front of Judge Forma, correct?
10:14:13 14       A.  I did.
10:14:14 15       Q.  And just as today, you gave sworn testimony in a
10:14:17 16   courtroom similar to this, correct?
10:14:19 17       A.  Yes.
10:14:20 18       Q.  And you did, in fact, give truthful testimony,
10:14:23 19   correct?
10:14:23 20       A.  Yes, I did.
10:14:24 21          MR. FELLE:  At this time, I would like to
10:14:26 22   admit Exhibit 25, which is the testimony from that court
10:14:30 23   hearing where Dr. Coggins gave testimony.  It's a public
10:14:35 24   document, a court document.
10:14:36 25          MR. RUSS:  Your Honor, I object.
```

A-2089

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                               |
| 10:14:38 | 2  | THE COURT:  Sustained.                                 |
| 10:14:43 | 3  | MR. FELLE:  Your Honor, may we approach?               |
| 10:14:45 | 4  | THE COURT:  All right.  Ladies and                     |
| 10:14:46 | 5  | gentlemen, we're going to have to take another break.  I |
| 10:14:48 | 6  | would just ask that you please do not talk about the   |
| 10:14:51 | 7  | case among yourselves or with anyone else.  Thank you  |
| 10:14:54 | 8  | for your patience, and we'll see you back here shortly. |
| 10:15:11 | 9  | (Whereupon the jury is escorted from the               |
| 10:15:13 | 10 | courtroom.)                                            |
| 10:15:13 | 11 | THE COURT:  And, Doctor, once the jury steps           |
| 10:15:16 | 12 | out, if you could step down and step out of the        |
| 10:15:18 | 13 | courtroom.  Thank you.                                 |
| 10:15:32 | 14 | MR. FELLE:  Thank you for your patience.               |
| 10:15:19 | 15 | (Whereupon, the witness exits the                      |
| 10:15:31 | 16 | courtroom.)                                            |
| 10:15:34 | 17 | THE COURT:  All right, Mr. Felle, you wanted           |
| 10:15:37 | 18 | to have a sidebar, but we'll do it outside of the      |
| 10:15:39 | 19 | presence of the jury, that is easier.                  |
| 10:15:41 | 20 | MR. FELLE:  Correct, Judge.  I just wanted             |
| 10:15:43 | 21 | to go through what the decision may involve.  Again, I'm |
| 10:15:47 | 22 | looking to move in a prior testimony from a court      |
| 10:15:50 | 23 | proceeding of Dr. Coggins to help refresh her memory and |
| 10:15:54 | 24 | refer to and even read.  It's previous sworn testimony |
| 10:15:58 | 25 | in a case that is now 18 years old.  She gave this     |

A-2090

38

|   | J. ORTIZ VS. M. STAMBACH |
|---|---|

10:16:01  2   testimony back then closer to the time, and I believe it

10:16:06  3   would be admissible and relevant.

10:16:07  4          THE COURT:  Under what rule of evidence

10:16:09  5   would this not constitute hearsay?

10:16:13  6          MR. FELLE:  It's a public, excuse me, it's a

10:16:15  7   court document, so it could be recognized as that.  It's

10:16:19  8   the statements of this.  First of all, hearsay is an

10:16:23  9   out-of-court statement for the truth of the matter

10:16:26  10  asserted.

10:16:26  11         THE COURT:  Out of this court.  So this is

10:16:29  12  hearsay.

10:16:29  13         MR. FELLE:  But --

10:16:31  14         THE COURT:  No.

10:16:32  15         MR. FELLE:  It's an in-court statement.

10:16:33  16         THE COURT:  No, Mr. Felle, it's this court.

10:16:36  17  Out of this court is what hearsay is.

10:16:39  18         MR. FELLE:  Your Honor, I would move to

10:16:41  19  admit it as a court document.

10:16:48  20         THE COURT:  I know it's a court document,

10:16:50  21  but a court document doesn't mean something is not

10:16:53  22  hearsay.  So, if you look at 801(d)(1), that addresses a

10:17:15  23  statement where you can admit the declarant, because she

10:17:22  24  is the declarant, their prior statement if she

10:17:29  25  testifies, is subject to cross examination about a prior

1                    J. ORTIZ VS. M. STAMBACH

10:17:33  2   statement, and the statement is inconsistent with the

10:17:36  3   declarant's testimony and was given under penalty of

10:17:39  4   perjury at a trial, hearing or other proceeding.  So if

10:17:42  5   this witness or any other witness testifies

10:17:46  6   inconsistently with prior sworn testimony, then under

10:17:52  7   801(d)(1)(A), the prior court testimony would fall as an

10:18:00  8   exclusion from hearsay.  Now, if you want to introduce

10:18:03  9   it where it's consistent with the declarant's testimony,

10:18:08  10  you can do that to rebut an express or implied charge of

10:18:13  11  recent fabrication, to rehabilitate credibility, but

10:18:18  12  that is not why you're offering it.  So this would be

10:18:22  13  hearsay, Mr. Felle, and it's not admissible at this

10:18:27  14  point based on the testimony.

10:18:39  15          Let me ask a point of clarification.  You

10:18:41  16  said these records earlier are certified.  In what way

10:18:46  17  are they certified?

10:18:48  18          MR. FELLE:  With a certification.

10:18:49  19          THE COURT:  I don't see any certification.

10:18:51  20  I mean, did you do it pursuant to rule 902(11)?

10:18:55  21          MR. FELLE:  I know we sent the certification

10:18:57  22  out to be signed, and I believe it was with that.  I

10:19:00  23  think it was received, whether or not it was included

10:19:02  24  with the exhibits, I can have my office, if I need to,

10:19:05  25  to forward that.  But these are records that have been

A-2092

40

                    J. ORTIZ VS. M. STAMBACH

10:19:08   2   utilized throughout the history of this case.

10:19:11   3              THE COURT:  The reason I'm asking the

10:19:12   4   question is under Federal Rules of Evidence 902(11),

10:19:17   5   there is a way to have a certification by a business

10:19:20   6   record custodian so you can eliminate having the

10:19:25   7   business record custodian come in and testify to that.

10:19:30   8   But I don't know if you complied with the rule in

10:19:32   9   certifying the records.  Does the defense have a 902(11)

10:19:37  10   certification for the medical records?

10:19:38  11              MR. RUSS:  I don't believe there was one,

10:19:41  12   your Honor, but I don't question that these are -- these

10:19:55  13   are records that are able to be self authenticated under

10:20:00  14   902, but they still contain the hearsay.

10:20:02  15              THE COURT:  The hearsay within the business

10:20:04  16   record.  So the defense is not objecting on the initial

10:20:08  17   grounds that these records would fall within the scope

10:20:12  18   of a business record, it's the other statements that

10:20:16  19   wouldn't come in on that basis that you're objecting to?

10:20:21  20              MR. RUSS:  That is accurate, your Honor.

10:20:22  21   Thank you.

10:20:23  22              THE COURT:  Okay.  All right.  Mr. Felle,

10:20:27  23   are you ready to continue?

10:20:28  24              MR. FELLE:  I believe so, Judge, yes.

10:20:31  25              THE COURT:  Let's have Dr. Coggins come back

|            |    |                                                       |
|------------|----|-------------------------------------------------------|
|            | 1  | E. COGGINS - DX BY MR. FELLE                          |
| 10:20:36   | 2  | in.                                                   |
| 10:20:37   | 3  | (Whereupon, the witness retook the witness            |
| 10:20:39   | 4  | stand.)                                               |
| 10:20:46   | 5  | THE COURT:  And we can bring our jury back             |
| 10:20:48   | 6  | in once Dr. Coggins gets back on the witness stand.   |
| 10:20:53   | 7  | Thank you, Doctor, for your patience.                 |
| 10:21:47   | 8  | (Whereupon, the jury is it escorted into the          |
| 10:21:49   | 9  | courtroom.                                            |
| 10:21:50   | 10 | THE COURT:  Thank you, everybody, for your            |
| 10:21:51   | 11 | patience.  Everyone can have a seat.  Thank you for your |
| 10:21:54   | 12 | patience.                                             |
| 10:21:55   | 13 | Mr. Felle, you can continue when you're               |
| 10:21:57   | 14 | ready.                                                |
| 10:21:59   | 15 | CONTINUING DIRECT EXAMINATION BY MR. FELLE:           |
| 10:21:59   | 16 | Q.  So, Doctor, I just want to kind of bring us back  |
| 10:22:05   | 17 | to where we were.  We had looked at your notes, your  |
| 10:22:09   | 18 | initial evaluation of Mr. Ortiz and that was from     |
| 10:22:12   | 19 | November 19, 2004, correct?                           |
| 10:22:14   | 20 | A.  Yes.                                              |
| 10:22:14   | 21 | Q.  And we discussed a bit about the admission to     |
| 10:22:18   | 22 | Buffalo General Hospital, which was on November 15th of |
| 10:22:23   | 23 | 2004, correct?                                        |
| 10:22:23   | 24 | A.  Correct.                                          |
| 10:22:25   | 25 | Q.  And again, based on your examination on the 19th, |

A-2094

42

|  |  | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:22:30 | 2 | you found that he was suffering from schizophrenia, |
| 10:22:34 | 3 | correct? |
| 10:22:34 | 4 | A.  Yes, I did. |
| 10:22:36 | 5 | Q.  And are there various degrees of schizophrenia? |
| 10:22:39 | 6 | A.  Well, schizophrenia is a slowly progressive |
| 10:22:47 | 7 | disease that is characterized by acute exacerbations of |
| 10:22:53 | 8 | intense symptoms of delusions, which is fixed false |
| 10:22:57 | 9 | beliefs and confusion, disorganization and |
| 10:22:59 | 10 | hallucinations.  And then in between those acute |
| 10:23:03 | 11 | episodes, the person has still a deterioration in |
| 10:23:11 | 12 | function often, but it's characterized mostly by trouble |
| 10:23:15 | 13 | connecting with people.  That is where I described the |
| 10:23:18 | 14 | blunt effect, like not having normal facial expressions |
| 10:23:23 | 15 | and just the connected feeling that people have when |
| 10:23:27 | 16 | they get to know one another. |
| 10:23:31 | 17 | Q.  And in your testimony, you used the word |
| 10:23:35 | 18 | "psychotic."  What does that mean with relation |
| 10:23:38 | 19 | particularly to schizophrenia? |
| 10:23:39 | 20 | A.  The word "psychosis" means there is an acute |
| 10:23:44 | 21 | break with reality, and that is a period where a person |
| 10:23:49 | 22 | can't distinguish what is real from what's not, and may |
| 10:23:55 | 23 | have paranoid fears that people are trying to hurt them |
| 10:23:58 | 24 | or know things about them or are controlling their |
| 10:24:04 | 25 | minds, are controlling their thoughts, making them do |

A-2095

|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 10:24:09 | 2 | things, making them say things. |
| 10:24:11 | 3 | Q.  And did you find that to be the case based on |
| 10:24:15 | 4 | your evaluation with respect to Mr. Ortiz? |
| 10:24:18 | 5 | A.  Yes, I thought he was in an acute psychotic |
| 10:24:21 | 6 | episode. |
| 10:24:23 | 7 | Q.  And going back to your memory of Buffalo General |
| 10:24:29 | 8 | Hospital records, do you recall statements made by Mr. |
| 10:24:35 | 9 | Ortiz that he was afraid someone was trying to kill him? |
| 10:24:38 | 10 | MR. RUSS:  Objection, your Honor.  Is he |
| 10:24:39 | 11 | back talking about the 17th, November 17th, Buffalo |
| 10:24:44 | 12 | General Hospital records? |
| 10:24:44 | 13 | THE COURT:  Sustained. |
| 10:24:49 | 14 | Q.  Do you recall -- do you recall the basis under |
| 10:24:55 | 15 | which Mr. Ortiz was admitted to Buffalo General |
| 10:24:58 | 16 | Hospital? |
| 10:24:58 | 17 | MR. RUSS:  Objection, your Honor. |
| 10:24:59 | 18 | THE COURT:  Well, I'll allow that.  I mean, |
| 10:25:01 | 19 | let me ask you this, Doctor, did you consider the |
| 10:25:06 | 20 | Buffalo General Hospital treatment in connection with |
| 10:25:08 | 21 | your treatment of Dr. Ortiz? |
| 10:25:13 | 22 | THE WITNESS:  Yes, I did. |
| 10:25:14 | 23 | THE COURT:  I'll allow that, overruled. |
| 10:25:16 | 24 | Q.  Do you recall the circumstances under which he |
| 10:25:18 | 25 | was admitted to Buffalo General Hospital on November |

A-2096

|          | 1  | E. COGGINS - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:25:21 | 2  | 15th? |
| 10:25:21 | 3  | MR. RUSS:  The other problem is he was not |
| 10:25:23 | 4  | admitted. |
| 10:25:24 | 5  | THE COURT:  All right. |
| 10:25:25 | 6  | Q.  When he was treated at Buffalo General Hospital |
| 10:25:29 | 7  | on that day? |
| 10:25:30 | 8  | A.  Yes. |
| 10:25:30 | 9  | Q.  What do you recall? |
| 10:25:31 | 10 | A.  I knew he was taken by ambulance because of |
| 10:25:37 | 11 | paranoia, that is what I remember. |
| 10:25:38 | 12 | Q.  Did he express any fears at that point? |
| 10:25:43 | 13 | MR. RUSS:  Objection, your Honor.  This is |
| 10:25:45 | 14 | the same thing.  He is talking about the November 17th |
| 10:25:47 | 15 | medical records. |
| 10:25:48 | 16 | THE COURT:  I know.  But if a statement is |
| 10:25:50 | 17 | made for purposes of medical treatment, then it's not |
| 10:25:53 | 18 | hearsay.  And if she can testify, based on her treatment |
| 10:25:58 | 19 | of Dr. Ortiz (sic), that included consideration of his |
| 10:26:02 | 20 | prior treatment, then I'll allow it.  Go ahead.  Thank |
| 10:26:07 | 21 | you. |
| 10:26:07 | 22 | MR. FELLE:  Thank you. |
| 10:26:09 | 23 | A.  I knew there was paranoia that people -- he |
| 10:26:12 | 24 | thought people were out to kill him or out to harm him. |
| 10:26:16 | 25 | That is what I recall. |

A-2097

45

|  |  |
|--|--|
| | 1 |

E. COGGINS - DX BY MR. FELLE

10:26:17  2    Q.  And is that consistent with your comments in your

10:26:21  3  report of the 19th of hallucinations and hearing voices?

10:26:26  4    A.  Yes, it is.

10:26:27  5    Q.  Would it be your opinion that he was suffering

10:26:30  6  the psychotic break, consistent with the symptoms that

10:26:36  7  you recognize on the 19th, as early as the 15th?

10:26:40  8         MR. RUSS:  Objection, your Honor.  We've

10:26:42  9  been over the opinion testimony.

10:26:43  10         THE COURT:  She can testify as to whether or

10:26:58  11  not she formed an opinion of Dr. Ortiz (sic).  What did

12  I say?

13         COURT REPORTER:  Dr. Ortiz.

14         THE COURT:  Now I am making Mr. Ortiz a

15  doctor.  So in other words, she can testify about her

16  opinion formed based on the treatment of Mr. Ortiz.

10:27:08  17         MR. FELLE:  Correct.

10:27:08  18    A.  I thought he was in the throws of a psychotic

10:27:11  19  episode which did not start the moment I saw him.  I

10:27:15  20  thought it had been going on.

10:27:21  21    Q.  Thank you, Doctor.  And, Doctor, next I want to

10:27:25  22  turn to the records again of Erie County Mental Health

10:27:29  23  Services.  And was there a time, are you aware, while

10:27:31  24  you were treating Mr. Ortiz, and particularly on the

10:27:36  25  19th of November, that he was taken from the holding

A-2098

46

1                    E. COGGINS - DX BY MR. FELLE

10:27:39   2   center where you were caring for him and he was brought

10:27:43   3   to ECMC for psychiatric care there?

10:27:46   4       A.  Yes.  He was very, very ill, and he was taken to

10:27:52   5   for an emergency psychiatric hospitalization at ECMC

10:27:56   6   within a couple of days of when I saw him.

10:28:01   7       Q.  And on the 19th, you evaluated him, correct?

10:28:05   8       A.  Yes.

10:28:06   9       Q.  And then later that day, while he was still under

10:28:09  10   your care, he was brought to ECMC for acute care.  Is

10:28:14  11   that what you said?

10:28:15  12       A.  I'm not sure.

10:28:16  13            MR. RUSS:  Objection, your Honor, that is

10:28:17  14   not what the Doctor testified to.

10:28:19  15            MR. FELLE:  I apologize.  I withdraw the

10:28:21  16   question because I think I messed up the dates and I

10:28:24  17   apologize.  I think I just referenced the 19th, but that

10:28:29  18   the date of your evaluation.

10:28:30  19       Q.  It was November 22nd?

10:28:32  20       A.  That sounds right.  Within a couple of days when

10:28:35  21   I saw him, he continued to deteriorate and got more and

10:28:39  22   more psychotic and went to the hospital.

10:28:43  23       Q.  And do you recall at that time, now three days

10:28:46  24   removed from your initial evaluation, what the signs and

10:28:50  25   symptoms were at that time?

A-2099

47

|  |  |
|---|---|
|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 10:28:52 | 2 | A. I know he ended up becoming catatonic where he |
| 10:28:56 | 3 | couldn't talk or move or even think, because that |
| 10:29:00 | 4 | sometimes happens in schizophrenia when the symptoms |
| 10:29:03 | 5 | become so intense that the brain and body actually end |
| 10:29:07 | 6 | up freezing. |
| 10:29:09 | 7 | Q. That phrase "catatonic," can you tell us what |
| 10:29:12 | 8 | that means by way of effect? |
| 10:29:15 | 9 | A. So catatonia is a state that happens in the most |
| 10:29:19 | 10 | severe psychotic episodes where a person's thoughts are |
| 10:29:23 | 11 | so disorganized and jumbled that they stop thinking, |
| 10:29:29 | 12 | really, and stop moving, and stop eating, and that is |
| 10:29:34 | 13 | what happened to Mr. Ortiz. |
| 10:29:39 | 14 | Q. And, again, you were actively treating him at |
| 10:29:43 | 15 | that time, correct? |
| 10:29:44 | 16 | A. Yes, I was his treating doctor. |
| 10:29:46 | 17 | Q. And you would have followed the treatment that |
| 10:29:48 | 18 | was given then at ECMC? |
| 10:29:51 | 19 | A. There is another psychiatrist working at the |
| 10:29:54 | 20 | hospital, so that person would have been seeing him |
| 10:29:57 | 21 | daily. I would just get updates on it, and, you know, |
| 10:30:01 | 22 | what his medicines were and so forth, and when he was |
| 10:30:06 | 23 | well enough to come back. |
| 10:30:07 | 24 | Q. And would you rely on those statements from the |
| 10:30:10 | 25 | treating doctors at ECMC with respect to forming your |

A-2100

48

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:30:13 | 2 | ongoing diagnosis and treatment plan? |
| 10:30:15 | 3 | A.   Yes. |
| 10:30:28 | 4 | Q.   Doctor, what is meant by the term "flat affect"? |
| 10:30:33 | 5 | A.   Flat affect, that is complete absence of |
| 10:30:37 | 6 | emotional expression.  I think I used blunt affect, flat |
| 10:30:42 | 7 | affect is even more extreme than blunt.  Blunt is |
| 10:30:45 | 8 | dulled, still abnormal, but flat is just a complete |
| 10:30:50 | 9 | blank face when you're trying to talk to someone. |
| 10:30:52 | 10 | Q.   And according to the notes, do you recall when it |
| 10:30:56 | 11 | was that Mr. Ortiz was released from ECMC and then came |
| 10:31:01 | 12 | back under your direct care at the Erie County Holding |
| 10:31:04 | 13 | Center? |
| 10:31:04 | 14 | A.   You're asking me the date he came back? |
| 10:31:06 | 15 | Q.   If you know. |
| 10:31:07 | 16 | A.   I believe it was the very end of December, I'm |
| 10:31:10 | 17 | not sure.  I don't think I saw him again until January, |
| 10:31:15 | 18 | if I'm correct, though. |
| 10:31:16 | 19 | Q.   Doctor, there were a couple of admissions to |
| 10:31:21 | 20 | ECMC, was there not? |
| 10:31:22 | 21 | A.   There were a couple of admissions to the |
| 10:31:25 | 22 | psychiatric service, he became -- he developed a |
| 10:31:30 | 23 | complication where he had to be discharged from the |
| 10:31:33 | 24 | psychiatric service and go to the medical service and |
| 10:31:35 | 25 | then readmitted to the psychiatric service. |

A-2101

49

|   | E. COGGINS - DX BY MR. FELLE |
|---|---|
| 10:31:38 | 1 |
| | 2     Q.  Okay. |

E. COGGINS - DX BY MR. FELLE

1

10:31:38  2     Q.  Okay.

10:31:39  3     A.  I'm not sure if he came back to jail in between

10:31:41  4  there, I don't believe so.

10:31:43  5     Q.  With respect to the first admission, we talked

10:31:46  6  about that being November 22nd, three days after you

10:31:50  7  evaluated him.  You told us how he presented at that

10:31:53  8  point.  Would it refresh your memory to refer to your

10:31:57  9  records as to whether he came back to the holding center

10:32:00  10  on the 26th of November?  Do you know that

10:32:02  11  independently?

10:32:03  12     A.  I don't recall that, but...

10:32:06  13     Q.  Would it help refresh your memory?  It's very

10:32:09  14  unfair to expect you to remember these things in 2004.

10:32:14  15     A.  Did I see him then let's see November 26th?  The

10:32:35  16  next note of mine I see --

10:32:37  17          THE COURT:  Don't testify about what you're

10:32:39  18  seeing.  The question is simply:  Do reviewing those

10:32:41  19  records refresh your recollection as to whether or not

10:32:44  20  you saw him on the 26th or whether or not he came back

10:32:47  21  to the holding center on November the 26th.

10:32:57  22          MR. FELLE:  Doctor, maybe it would be

10:32:59  23  helpful to actually show you, if it were to refresh your

10:33:05  24  recollection, the records from ECMC, marked exhibit 31.

10:33:10  25     Q.  Would that help refresh your memory?

A-2102

50

|  |  |  |
|--|--|--|
| | 1 | E. COGGINS - DX BY MR. FELLE |
| 10:33:13 | 2 | A.  Yes.  This isn't helping.  So this is a discharge |
| 10:33:26 | 3 | summary from Erie County Medical Center. |
| 10:33:27 | 4 | THE COURT:  Don't testify about what it is. |
| 10:33:30 | 5 | The question is simply:  If taking a look at that |
| 10:33:33 | 6 | refreshes your recollection as to whether or not Mr. |
| 10:33:35 | 7 | Ortiz came back to the Erie County Jail, right, holding |
| 10:33:41 | 8 | center, on November 26th of 2004. |
| 10:33:56 | 9 | A.  Yes. |
| 10:33:57 | 10 | Q.  And does it help refresh your memory on the 26th |
| 10:34:00 | 11 | of November he was discharged from ECMC, psychiatric |
| 10:34:05 | 12 | ward, and would have returned to the holding center? |
| 10:34:07 | 13 | A.  What I'm seeing here, he was discharged from the |
| 10:34:10 | 14 | psychiatric service and was admitted to the medical |
| 10:34:13 | 15 | service on that date. |
| 10:34:16 | 16 | Q.  Are you aware of whether or not Mr. Ortiz -- and |
| 10:34:21 | 17 | let me ask you this, before I ask you that question.  Do |
| 10:34:24 | 18 | you see in the records, before you look at the records, |
| 10:34:26 | 19 | do you have an independent recollection that Mr. Ortiz |
| 10:34:29 | 20 | was readmitted to ECMC psychiatric ward on the 30th of |
| 10:34:34 | 21 | November? |
| 10:34:34 | 22 | A.  Yes, I do. |
| 10:34:35 | 23 | Q.  And so between the 26th and the 30th, there is a |
| 10:34:43 | 24 | gap in time, correct? |
| 10:34:44 | 25 | A.  Yes. |

A-2103

51

|   |   |
|---|---|
| | 1 |
| 10:34:44 | 2 |
| 10:34:48 | 3 |
| 10:34:49 | 4 |
| 10:34:52 | 5 |
| 10:34:52 | 6 |
| 10:34:57 | 7 |
| 10:34:58 | 8 |
| 10:35:03 | 9 |
| 10:35:05 | 10 |
| 10:35:06 | 11 |
| 10:35:09 | 12 |
| 10:35:26 | 13 |
| 10:35:28 | 14 |
| 10:35:32 | 15 |
| 10:35:38 | 16 |
| 10:35:40 | 17 |
| 10:35:40 | 18 |
| 10:35:43 | 19 |
| 10:35:47 | 20 |
| 10:35:47 | 21 |
| 10:35:53 | 22 |
| 10:35:59 | 23 |
| 10:36:02 | 24 |
| 10:36:03 | 25 |

1           E. COGGINS - DX BY MR. FELLE

2      Q.  And what do you recall about that gap in time?

3  Did he return to the holding center?

4      A.  I don't recall him returning to the holding

5  center.

6      Q.  If you were to look at your records now from Erie

7  County Mental Health Services, can you tell me if there

8  is a notation made in those notes pertaining to the 29th

9  of November?

10          THE COURT:  Sustained.  Mr. Russ has an

11  objection.  Again, you're asking her to identify whether

12  something is in a record that is not in evidence.

13      Q.  Doctor, you testified earlier that between say

14  the 15th of November until the time he was admitted to

15  ECMC on the 22nd, he was progressively worse in his

16  psychotic behavior.  Is that correct?

17      A.  Yes.

18      Q.  And was there a point in time toward the end of

19  November that you recall Mr. Ortiz attempted to commit

20  suicide?

21      A.  I recall being told that, yes.

22      Q.  Do you recall, if, because of that, was he

23  readmitted to ECMC for more psychiatric care at that

24  time?

25      A.  Yes, was he was readmitted to the psychiatric

A-2104

52

|          |    | E. COGGINS - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:36:06 | 2  | service. |
| 10:36:06 | 3  | Q. So there is a period of time that while he was |
| 10:36:09 | 4  | still under your care actively, because he was an |
| 10:36:13 | 5  | inmate, he was also being cared for at ECMC, the |
| 10:36:17 | 6  | psychiatric ward, in conjunction or along with your |
| 10:36:22 | 7  | treatment, correct? |
| 10:36:23 | 8  | A. Yes. |
| 10:36:23 | 9  | Q. And during that time frame, were you continuing |
| 10:36:27 | 10 | to monitor and prescribe medications for him? |
| 10:36:30 | 11 | A. No, I wasn't. |
| 10:36:31 | 12 | Q. You would have deferred to the doctors in that |
| 10:36:34 | 13 | hospital at that point? |
| 10:36:35 | 14 | A. Yes, I would. |
| 10:36:37 | 15 | Q. And would you have discussions with those doctors |
| 10:36:39 | 16 | about those medications going forward? |
| 10:36:48 | 17 | A. I may have, I don't recall. |
| 10:36:57 | 18 | Q. My records indicate that on January 21 of '05, |
| 10:37:03 | 19 | you re-evaluated Mr. Ortiz, correct? |
| 10:37:06 | 20 | MR. RUSS: Objection. |
| 10:37:07 | 21 | THE COURT: Sustained. You can't refer to |
| 10:37:09 | 22 | records that are not in as part of your questioning, |
| 10:37:14 | 23 | that are not in evidence. |
| 10:37:16 | 24 | MR. FELLE: Okay. |
| 10:37:17 | 25 | Q. Doctor, you have the records in front of you, |

A-2105

53

```
            1              E. COGGINS - DX BY MR. FELLE
10:37:19    2   right?
10:37:21    3       A.  Yes.
10:37:21    4       Q.  When is the next time --
10:37:24    5              MR. RUSS:  Objection.
10:37:24    6              THE COURT:  Sustained.  You can't have her
10:37:26    7   refer to records that are not in evidence.  You can lay
10:37:29    8   the foundation to get the records in evidence and have
10:37:31    9   her testify or ask her, when is the next time you
10:37:34   10   treated Dr. Ortiz.  I think I keep calling Mr. Ortiz a
10:37:38   11   doctor, I apologize.
10:37:39   12              MR. FELLE:  I think I just asked her.
10:37:41   13       Q.  When is the next time you treated Mr. Ortiz, you
10:37:43   14   evaluated him.
10:37:44   15       A.  I saw him soon after he came back from the
10:37:47   16   hospital in January.
10:37:48   17       Q.  Okay.  Do you recall the date?
10:37:50   18       A.  January 5th.
10:37:52   19       Q.  And did you make notes within the Eric County
10:37:56   20   Medical Health Services records about that meeting?
10:37:58   21       A.  I would have done so, yes.
10:37:59   22       Q.  And can you find those for us in your records, at
10:38:04   23   least, just to find them at this point.
10:38:27   24       A.  Yes, I have it.  It's the wrong day.  Could that
10:38:29   25   be that that is when I did the competency assessment?  I
```

A-2106

54

|  |  | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:38:35 | 2 | don't have a treatment note from that day. |
| 10:38:39 | 3 | Q.   Would you have notes pertaining to that |
| 10:38:41 | 4 | appointment or would those be in the report? |
| 10:38:44 | 5 | A.   That would be in the report. |
| 10:38:45 | 6 | Q.   And when is that report dated? |
| 10:38:47 | 7 | A.   Well, let's see.  I don't know if that is in this |
| 10:38:54 | 8 | treatment file.  I believe that was somewhere else. |
| 10:38:59 | 9 | Wait.  Okay.  And that was January 20th.  I'm sorry, I |
| 10:39:23 | 10 | just don't -- here is a note from January, I believe |
| 10:39:31 | 11 | this is January 5th. |
| 10:39:40 | 12 | Q.   Doctor, we had marked an exhibit, I believe this |
| 10:39:43 | 13 | is part of the Erie County Mental Health Services file, |
| 10:39:46 | 14 | and I'm not sure if you see it there, it's a document |
| 10:39:49 | 15 | dated January 20th, 2005.  For the sake of time, I think |
| 10:39:54 | 16 | I can show this to you. |
| 10:39:55 | 17 | MR. RUSS:  How did you mark it? |
| 10:40:01 | 18 | MR. FELLE:  It's 33. |
| 10:40:02 | 19 | THE COURT:  And so you're showing the |
| 10:40:04 | 20 | witness a document marked exhibit 33? |
| 10:40:06 | 21 | MR. FELLE:  And I'm asking if it refreshes |
| 10:40:09 | 22 | her recollection as to when the report was dated. |
| 10:40:11 | 23 | A.   Yes, it does. |
| 10:40:13 | 24 | Q.   And what date was that? |
| 10:40:14 | 25 | A.   January 20th, 2005. |

A-2107

55

|          |    | E. COGGINS - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:40:17 | 2  | Q.   Okay.  And what was the purpose of that report? |
| 10:40:19 | 3  | A.   Correction, the report is dated January 21st, |
| 10:40:25 | 4  | 2005, and it refers to an evaluation I completed on |
| 10:40:30 | 5  | January 20th, 2005. |

                    1              E. COGGINS - DX BY MR. FELLE

10:40:17   2        Q.   Okay.  And what was the purpose of that report?

10:40:19   3        A.   Correction, the report is dated January 21st,

10:40:25   4   2005, and it refers to an evaluation I completed on

10:40:30   5   January 20th, 2005.

10:40:33   6        Q.   Okay.  And was that a report that was generated

10:40:36   7   for the sake of the Court?

10:40:36   8        A.   Yes.

10:40:37   9        Q.   And did you prepare that report?

10:40:38  10        A.   Yes, I did.

10:40:39  11        Q.   And does that report contain your notations?

10:40:45  12        A.   Yes.

10:40:46  13        Q.   Is it true and accurate?

10:40:47  14        A.   Yes, it is, except for one typo where it has

10:40:52  15   another name in there.

10:40:54  16        Q.   Okay.  Other than that, have any changes or

10:40:57  17   revisions been made to that report?

10:40:58  18        A.   No.

10:40:59  19        Q.   And does that contain your medical opinions from

10:41:02  20   your evaluation of Mr. Ortiz at that time?

10:41:05  21        A.   Yes, it does.

10:41:06  22             MR. FELLE:  At this time, I would like to

10:41:07  23   move Exhibit 33 into evidence.

10:41:09  24             THE COURT:  Any objection?

10:41:10  25             MR. RUSS:  No objection, your Honor.

A-2108

56

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:41:11 | 2 | THE COURT:  Exhibit 33 will come into |
| 10:41:12 | 3 | evidence. |
| 10:41:12 | 4 | **(Whereupon, Exhibit 33 was received into** |
| 10:41:13 | 5 | **evidence.)** |
| 10:41:13 | 6 | Q.  Incidentally, Doctor, now that you've been able |
| 10:41:16 | 7 | to see that document, is it contained in the overall |
| 10:41:19 | 8 | file from Erie County Medical Health? |
| 10:41:23 | 9 | A.  No, these reports usually were not included in |
| 10:41:26 | 10 | there. |
| 10:41:26 | 11 | Q.  I did a poor job of making copies.  Would you |
| 10:41:36 | 12 | find, if I took that back and put it on the monitor? |
| 10:41:39 | 13 | A.  Sure. |
| 10:41:48 | 14 | Q.  So, Dr. Coggins, showing you what has been marked |
| 10:41:52 | 15 | as Exhibit 33 and entered into evidence.  Can you read |
| 10:41:55 | 16 | for us your evaluation at that time? |
| 10:41:57 | 17 | A.  "At your request, I completed a psychiatric |
| 10:42:02 | 18 | evaluation."  This says "Lawrence Smith," but that is |
| 10:42:06 | 19 | the typo, the rest of the report says "Josue."  I'm not |
| 10:42:15 | 20 | sure how to pronounce the name. |
| 10:42:18 | 21 | Q.  Josue Ortiz. |
| 10:42:19 | 22 | A.  Josue Ortiz. |
| 10:42:21 | 23 | Q.  You're saying the reference to Mr. Smith is an |
| 10:42:23 | 24 | error, a clerical error? |
| 10:42:25 | 25 | A.  Yes. |

```
          1                E. COGGINS - DX BY MR. FELLE

10:42:25  2        Q.  Okay.

10:42:26  3        A.  On January 20th, 2005, do you want me to read the

10:42:33  4   whole thing?

10:42:34  5        Q.  If you could tell us in the second paragraph, we

10:42:37  6   can kind of read it along with you.

10:42:38  7        A.  "Mr. Ortiz presented as a 23-year-old Hispanic

10:42:42  8   male with a history of depression and substance abuse,

10:42:44  9   recently relocated from Buffalo to Puerto Rico.  He has

10:42:49 10   been charged with two counts of second degree murder.

10:42:51 11   Mr. Ortiz experienced a psychotic decompensation after

10:42:58 12   his arrest necessitating hospitalization at Erie County

10:43:03 13   Medical Center.  He was disorganized, bizarre and

10:43:06 14   catatonic prior to treatment.  He was stabilized with

10:43:14 15   tranquilizers and antipsychotic medication while

10:43:17 16   hospitalized at ECMC 11/30/2004 through 12/29/2004.

10:43:25 17   Upon his return to the holding center, Mr. Ortiz

10:43:28 18   continued to complain of hearing voices that are telling

10:43:31 19   him that he would be better off dead.  On one occasion,

10:43:34 20   he attempted to hang himself and had to be returned to

10:43:39 21   constant observation.

10:43:43 22        Q.  With respect to the section there entitled "past

10:43:47 23   psychiatric history," can you tell us, was there any

10:43:51 24   history that Mr. Ortiz had ever suffered this kind of

10:43:56 25   psychotic break in the past?
```

A-2110

58

|     |     |
| --- | --- |
| 1 | E. COGGINS - DX BY MR. FELLE |
| 10:43:57 2 | A.   So, I made reference to a history of depression |
| 10:44:02 3 | for which he had received treatment in Puerto Rico and |
| 10:44:09 4 | no evidence of psychosis, really. |
| 10:44:16 5 | Q.   And so, based on your training and experience, |
| 10:44:20 6 | would that be an initial onset then of the |
| 10:44:23 7 | schizophrenia? |
| 10:44:24 8 | A.   The initial? |
| 10:44:26 9 | Q.   Based on history. |
| 10:44:27 10 | A.   What would be an initial onset. |
| 10:44:30 11 | Q.   His psychotic break and the schizophrenia that |
| 10:44:36 12 | you diagnosed? |
| 10:44:38 13 | A.   Yes, his first psychotic break occurred in 2004, |
| 10:44:48 14 | yes. |
| 10:44:48 15 | Q.   Thank you, Doctor. |
| 10:44:51 16 | And, Doctor, turning to the second page of that |
| 10:44:54 17 | same document, can you read for us what you detailed |
| 10:45:04 18 | under "mental status examination"? |
| 10:45:06 19 | A.   Mr. Ortiz was well groomed.  His speech was clear |
| 10:45:11 20 | and spontaneous.  Emotional expression of blunt.  He |
| 10:45:14 21 | said his mood was low.  His thoughts were organized, |
| 10:45:19 22 | thought process was normal.  There were no delusions. |
| 10:45:23 23 | He complained of hearing voices coming from all around |
| 10:45:27 24 | him saying "it was you."  He reported command |
| 10:45:34 25 | hallucinations at times.  He said he was no longer |

E. COGGINS - DX BY MR. FELLE

10:45:37   2    having thoughts of suicide.  He denied any thoughts of

10:45:41   3    hurting other people.  Intellectual function was

10:45:45   4    estimated at average or below.  Insight was fair

10:45:48   5    judgment was impaired."

10:45:52   6      Q.  Can you continue to read on, Doctor?

10:45:54   7      A.  "Mr. Ortiz was able to discuss the charges

10:45:57   8    against him in a rational manner.  While he maintained

10:46:01   9    his innocence, he understood what the charges were and

10:46:05  10    the seriousness of the charges.  Mr. Ortiz was able to

10:46:08  11    describe ordinary courtroom procedure.  He understood

10:46:14  12    the role of his attorney, the prosecutor, the judge, the

10:46:18  13    jury, and other courtroom personnel.  He understood the

10:46:22  14    defenses available to him.  He knew the meaning of a

10:46:26  15    plea bargain.  He described it as a negotiation for a

10:46:30  16    better sentence."

10:46:34  17      Q.  And then under -- actually, before we -- before

10:46:38  18    we leave this, Doctor, you state in the second paragraph

10:46:42  19    that Mr. Ortiz maintained his innocence while talking to

10:46:46  20    you on January 20th of 2005.  Is that correct?

10:46:52  21      A.  Yes, it is.

10:46:53  22      Q.  And let me ask you two things.  In all of your

10:46:56  23    encounters with Mr. Ortiz, were they in person?

10:46:59  24      A.  Yes, they were.

10:47:00  25      Q.  Did you ever feel threatened in any of those

A-2112

60

```
          1                E. COGGINS - DX BY MR. FELLE
10:47:03  2     meetings?
10:47:03  3         A.  I never did.
10:47:04  4         Q.  Did Mr. Ortiz ever act in a violent way with you?
10:47:09  5         A.  He was never violent.
10:47:10  6         Q.  And with respect to his claim of innocence,
10:47:13  7     during the various meetings that you had with Mr. Ortiz
10:47:17  8     as a treatment doctor, had you ever had any discussions
10:47:19  9     about his innocence?
10:47:23  10        A.  We talked about it often.
10:47:25  11        Q.  What do you recall about that?
10:47:26  12        A.  I recall thinking, this man might really not have
10:47:34  13    done this.  That is what I remember, which, you know,
10:47:38  14    everyone says they didn't do it, but there was something
10:47:41  15    different here.
10:47:46  16        Q.  And you felt --
10:47:47  17        A.  I remember it distinctly, yes.
10:47:50  18        Q.  And so, during those conversations, he maintained
10:47:54  19    his innocence to you, correct?
10:47:55  20        A.  Yes.
10:47:55  21        Q.  Was there any mechanism back then that you could
10:48:05  22    have utilized to express that to the prosecutors or
10:48:09  23    anyone else?
10:48:09  24        A.  No.
10:48:17  25        Q.  Can you read for us your diagnostic impression,
```

A-2113

|  | 1 | E. COGGINS - DX BY MR. FELLE |
| 10:48:20 | 2 | please? |
| 10:48:20 | 3 | A.  "Josue Ortiz is suffering from a psychotic |
| 10:48:25 | 4 | illness, possibly schizophrenic disorder, bipolar sub |
| 10:48:31 | 5 | type, his symptoms have improved substantially with |
| 10:48:36 | 6 | antipsychotic medication Zyprexa.  He has a history of |
| 10:48:42 | 7 | the marijuana, alcohol and benzodiazapine abuse. |
| 10:48:47 | 8 | Compentency opinion, while mentally ill, Joshua (sic) |
| 10:48:51 | 9 | Ortiz is not an incapacitated person as defined under |
| 10:48:55 | 10 | article 730 of the Criminal Procedure Law.  He is |
| 10:48:58 | 11 | competent to proceed with the adjudication process. |
| 10:49:01 | 12 | Please feel to contact me at any time if you have any |
| 10:49:04 | 13 | questions regarding this assessment." |
| 10:49:06 | 14 | Q.  And just so there is no confusion, Doctor, you |
| 10:49:10 | 15 | did make the distinction that while he was mentally ill |
| 10:49:14 | 16 | and actively treated, that allowed him to be competent |
| 10:49:18 | 17 | for the trial, correct? |
| 10:49:19 | 18 | A.  Correct. |
| 10:49:19 | 19 | Q.  And while under your care and under the care of |
| 10:49:21 | 20 | other doctors in conjunction with your care, you've |
| 10:49:24 | 21 | indicated here that Mr. Ortiz was placed on various |
| 10:49:27 | 22 | medications, including tranquilizers at time? |
| 10:49:31 | 23 | A.  Yes, he required a high dose of antipsychotic |
| 10:49:35 | 24 | medication to control his symptoms. |
| 10:49:37 | 25 | Q.  And it looks like with relative success, looks |

A-2114

62

|  | | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:49:41 | 2 | like, by the way of your examination, and you tell me, |
| 10:49:44 | 3 | in January 20th of 2005, he was doing quite better, much |
| 10:49:48 | 4 | better? |
| 10:49:48 | 5 | A.  Yes. |
| 10:49:48 | 6 | Q.  And what to you attribute that to? |
| 10:49:53 | 7 | A.  He got treated, he was on medication and he was |
| 10:49:58 | 8 | stable, so that the acute episode was over, the acute |
| 10:50:03 | 9 | dis organization and break with reality had was under |
| 10:50:07 | 10 | control with medication. |
| 10:50:18 | 11 | Q.  Doctor, do you recall when you found out -- let |
| 10:50:20 | 12 | me ask you.  Did you find out at some point that Mr. |
| 10:50:24 | 13 | Ortiz was found out to be innocent in this case? |
| 10:50:27 | 14 | A.  Yes. |
| 10:50:27 | 15 | Q.  How did you hear that? |
| 10:50:29 | 16 | A.  I believe I heard it on TV on the news and I |
| 10:50:32 | 17 | remembered him then and thought I knew it. |
| 10:50:42 | 18 | MR. FELLE:  Judge, I believe that is all I |
| 10:50:43 | 19 | have.  Thank you very much. |
| 10:50:44 | 20 | THE COURT:  Thank you, Mr. Felle.  About how |
| 10:50:48 | 21 | long do you think you'll have for cross examination? |
| 10:50:55 | 22 | MR. RUSS:  I would say, your Honor, a half |
| 10:50:57 | 23 | an hour or less. |
| 10:50:58 | 24 | THE COURT:  Okay.  Why don't we take a short |
| 10:51:01 | 25 | break before the cross examination.  So, ladies and |

A-2115

63

|  | 1 | E. COGGINS - DX BY MR. FELLE |
|---|---|---|
| 10:51:03 | 2 | gentlemen, let's plan on about a 10-minute break.  I |
| 10:51:06 | 3 | would remind you, don't talk about the case among |
| 10:51:08 | 4 | yourselves or with anybody else and we'll see you back |
| 10:51:11 | 5 | here shortly thank you. |
| 10:51:17 | 6 | (Whereupon the jury is escorted from the |
| 10:51:20 | 7 | courtroom.) |
| 10:51:36 | 8 | THE COURT:  And, Doctor, you can step down |
| 10:51:38 | 9 | and we'll see you back here.  We'll start back up at 11, |
| 10:51:42 | 10 | everybody.  Thank you. |
| 10:51:42 | 11 | (Whereupon, there was a break in the |
| 11:02:24 | 12 | proceeding.) |
| 11:02:24 | 13 | THE COURT:  All right.  Mr. Russ, you ready |
| 11:02:27 | 14 | to proceed? |
| 11:02:27 | 15 | MR. RUSS:  I am. |
| 11:02:29 | 16 | THE COURT:  Lest's have Dr. Coggins get back |
| 11:02:31 | 17 | up on the witness stand and then we can bring our jury |
| 11:02:34 | 18 | out. |
| 11:02:34 | 19 | (Whereupon, the witness retook the witness |
| 11:02:34 | 20 | stand.) |
| 11:02:34 | 21 | (Whereupon, the jury was escorted into the |
| 11:04:05 | 22 | courtroom.) |
| 11:04:05 | 23 | THE COURT:  All right.  Welcome back, |
| 11:04:06 | 24 | everybody.  Thank you for your patience.  And everybody |
| 11:04:09 | 25 | can have a seat. |

A-2116

64

```
          1              E. COGGINS - CX BY MR. RUSS

11:04:09  2              And, Mr. Russ, whenever you're ready, you

11:04:12  3    can conduct your cross examination.

11:04:14  4              MR. RUSS:  Thank you, your Honor.

11:04:18  5              And just so I am clear, I can take this off?

11:04:20  6              THE COURT:  You can remove your mask?

11:04:22  7              MR. RUSS:  Thank you.

11:04:22  8              THE COURT:  Thank you for checking.

11:04:23  9    CROSS EXAMINATION BY MR. RUSS:

11:04:23  10     Q.  Good morning, Dr. Coggins.

11:04:25  11     A.  Good morning.

11:04:26  12     Q.  I just want to ask you a couple of quick

11:04:33  13    questions about ECMC.  If a prisoner goes to ECMC for

11:04:37  14    psychiatric treatment, does he go to the same ward as

11:04:43  15    other patients or is there a special ward?

11:04:47  16     A.  There is a special lockup unit.

11:04:48  17     Q.  And at ECMC now, the 7th floor is the psych ward.

11:04:53  18    Is that right?

11:04:54  19     A.  Well, the lockup unit is on the 9th floor.  The

11:04:58  20    in patient psychiatric floors are, there are several in

11:05:03  21    the hospital on multiple different floors.

11:05:06  22     Q.  So, he would have gone to the 9th floor?

11:05:09  23     A.  Yes.

11:05:13  24     Q.  I want to begin, sort of, where you ended.  And

11:05:21  25    in your testimony before our break, you were telling us
```

A-2117

65

1                    E. COGGINS - CX BY MR. RUSS

11:05:25  2    about the competency recommendation you made to Judge

11:05:32  3    Forma.  Is that correct?

11:05:33  4        A.  Yes.

11:05:33  5        Q.  And I believe you -- your decision or your

11:05:41  6    recommendation was, although Mr. Ortiz has some mental

11:05:48  7    illness, he is competent to stand trial, to proceed with

11:05:52  8    trial and to be able to help his counsel and able to

11:05:59  9    assist in his own defense, is that correct?

11:06:02  10       A.  That was the opinion I offered.

11:06:07  11       Q.  And the opinion was offered in connection with a

11:06:11  12   competency hearing that was held, correct?

11:06:13  13       A.  Yes, that's correct.

11:06:15  14       Q.  And, ultimately, the Court, Judge Forma, issued a

11:06:25  15   decision.  Is that right?

11:06:26  16       A.  Yes, I believe so.

11:06:28  17       Q.  And do you know what his decision was?

11:06:31  18       A.  I don't recall it at the time, but it had to have

11:06:36  19   been that he had capacity.

11:06:44  20       Q.  Dr. Brian Joseph also submitted a report, is that

11:06:51  21   correct?

11:06:51  22       A.  I've been told so.

11:06:53  23       Q.  Didn't you tell Judge Forma that Mr. Ortiz was

11:07:12  24   able to rationally discuss the ordinary courtroom

11:07:16  25   procedure as well as potential disposition of his case?

A-2118

66

|        |    |                                                            |
|--------|----|------------------------------------------------------------|
|        | 1  | E. COGGINS - CX BY MR. RUSS                                |
| 11:07:23 | 2  | A.  I don't recall.                                      |
| 11:07:34 | 3  | Q.  Didn't you tell Judge Forma that he exhibited the   |
| 11:07:38 | 4  | ability to recall and relate events, both recent and    |
| 11:07:43 | 5  | historical?                                              |
| 11:07:44 | 6  | A.  Are you reading from my testimony?                   |
| 11:07:46 | 7  | MR. FELLE:  I have to object.                            |
| 11:07:47 | 8  | THE COURT:  Sustained.                                   |
| 11:07:59 | 9  | Q.  Do you recall what you put in the report to Judge   |
| 11:08:02 | 10 | Forma?                                                   |
| 11:08:02 | 11 | A.  Well, we just reviewed it a few moments ago, so     |
| 11:08:06 | 12 | most of it, yes.                                         |
| 11:08:07 | 13 | Q.  And you read some of it to us?                       |
| 11:08:09 | 14 | A.  Yes.                                                 |
| 11:08:19 | 15 | Q.  And I think you ended up saying, although he had    |
| 11:08:23 | 16 | serious psychological problems in the fall and winter of |
| 11:08:26 | 17 | 2004, that by the time you submitted your report in     |
| 11:08:29 | 18 | January of 2005, he had made significant improvement?   |
| 11:08:32 | 19 | A.  I don't remember if that is exactly what I said,    |
| 11:08:35 | 20 | but, yes, he was severely ill in November and by        |
| 11:08:40 | 21 | January, after being in the hospital, he got a lot      |
| 11:08:43 | 22 | better.                                                  |
| 11:08:59 | 23 | Q.  And you were asked whether Mr. Ortiz maintained     |
| 11:09:04 | 24 | his innocence?                                          |
| 11:09:05 | 25 | THE COURT:  Mr. Felle, you are going to have            |

A-2119

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | E. COGGINS - CX BY MR. RUSS                            |
| 11:09:08 | 2  | to put your mask on when you're not speaking           |
| 11:09:11 | 3  | MR. FELLE:  My apologies, your Honor.                  |
| 11:09:13 | 4  | THE COURT:  That's okay.                               |
| 11:09:14 | 5  | Q.  Let me ask you a question.                         |
| 11:09:16 | 6  | THE COURT:  I was remembering when Mr. Felle           |
| 11:09:19 | 7  | stood up, looked like when he stood up to object, I    |
| 11:09:23 | 8  | can't really see.                                      |
| 11:09:26 | 9  | MR. FELLE:  Should I be objecting, your                |
| 11:09:27 | 10 | Honor?                                                 |
| 11:09:27 | 11 | THE COURT:  Yes.                                       |
| 11:09:28 | 12 | Q.  Thank you, your Honor.  In your testimony a        |
| 11:09:31 | 13 | little earlier this morning, toward the end, you       |
| 11:09:35 | 14 | indicated that Mr. Ortiz maintained his innocence      |
| 11:09:42 | 15 | throughout?                                            |
| 11:09:43 | 16 | A.  Yes.                                               |
| 11:09:43 | 17 | Q.  And you even told us that when you learned about   |
| 11:09:46 | 18 | it at the news that he had been found to be innocent,  |
| 11:09:49 | 19 | you said something like, oh, yeah, I knew it, I knew it?|
| 11:09:53 | 20 | A.  Correct.                                           |
| 11:09:54 | 21 | Q.  During that entire time when he was telling you    |
| 11:09:57 | 22 | that he was innocent, did he ever say, I can't remember|
| 11:10:01 | 23 | what happened?                                         |
| 11:10:01 | 24 | A.  He had a vague -- he didn't remember clearly       |
| 11:10:06 | 25 | everything, that was -- that is common is psychosis to |

A-2120

68

|        | 1  | E. COGGINS - CX BY MR. RUSS |
|--------|----|-----------------------------|
| 11:10:11 | 2 | not recall what happened. |
| 11:10:13 | 3 | Q.  You learned that he made a confession, a written |
| 11:10:20 | 4 | confession, didn't you? |
| 11:10:21 | 5 | A.  I knew that he had confessed.  You know, I didn't |
| 11:10:26 | 6 | know it was written.  I knew that a confession had been |
| 11:10:30 | 7 | obtained somehow. |
| 11:10:32 | 8 | Q.  Did he ever tell you he didn't remember making a |
| 11:10:35 | 9 | confession? |
| 11:10:36 | 10 | A.  I don't recall. |
| 11:10:42 | 11 | Q.  You noted that your various reports that he |
| 11:10:45 | 12 | maintained his innocence.  If he had said that he didn't |
| 11:10:49 | 13 | recall a confession or he didn't make a confession, is |
| 11:10:52 | 14 | that something that you would have noted? |
| 11:10:54 | 15 | A.  I don't know. |
| 11:11:14 | 16 | Q.  You were asked some questions about the |
| 11:11:16 | 17 | deposition that you gave a couple of years ago? |
| 11:11:20 | 18 | A.  Yes. |
| 11:11:20 | 19 | Q.  And did you testify that, in words or substance, |
| 11:11:26 | 20 | that in hindsight, it seemed like Mr. Ortiz was probably |
| 11:11:31 | 21 | psychotic and paranoid and should have been |
| 11:11:34 | 22 | hospitalized? |
| 11:11:35 | 23 | MR. FELLE:  Object to the form. |
| 11:11:35 | 24 | THE COURT:  Sustained. |
| 11:11:45 | 25 | Q.  When you were going through your notes concerning |

A-2121

69

|   |   |
|---|---|
| | 1 |

E. COGGINS - CX BY MR. RUSS

11:11:49   2   Mr. Ortiz, and when you made the report to Judge Forma,

11:11:54   3   did you consider that, in hindsight, he was probably

11:12:00   4   psychotic and paranoid and should have been

11:12:03   5   hospitalized?

11:12:06   6       A.   That is pretty clear right now.  But I'm not sure

11:12:09   7   what you're asking me.

11:12:10   8       Q.   Didn't you use the word "hindsight"?

11:12:14   9       A.   I don't recall.

11:12:30   10          MR. FELLE:  Your Honor, I'm going to object

11:12:32   11   to the when.

11:12:34   12          THE COURT:  Hindsight at the deposition or

11:12:37   13   at the arrest?

11:12:39   14          MR. RUSS:  I appreciate that, your Honor.

11:12:40   15   Thank you.

11:12:40   16       Q.   Did you use the word "hindsight" at your

11:12:46   17   deposition?

11:12:46   18       A.   I don't recall.

11:12:54   19          MR. FELLE:  Your Honor, I have to object to

11:12:56   20   the premise question about asking her about a time when

11:12:59   21   Mr. Ortiz should have been hospitalized.  We've talked

11:13:02   22   about, at length, he was hospitalized.  I'm objecting to

11:13:06   23   the basis question, the premise question that he asked

11:13:10   24   for her about hindsight, about something in the past

11:13:13   25   without any definition of when that was.

1                    E. COGGINS - CX BY MR. RUSS

11:13:15   2          THE COURT:  Overruled.  But I'm not going to

11:13:18   3   let you read from the deposition transcript.

11:13:20   4          MR. RUSS:  I'm not going to.

11:13:21   5          THE COURT:  If you want to refresh your

11:13:22   6   recollection about the deposition.

11:13:24   7          MR. RUSS:  May I approach her to do that?

11:13:26   8          THE COURT:  Is it marked as an exhibit

11:13:28   9   number?

11:13:29  10          MR. RUSS:  I don't believe so.

11:13:31  11          THE COURT:  So, let's mark it as an exhibit,

11:13:35  12   anybody?

11:13:40  13          MR. RUSS:  So the exhibits that we submitted

11:13:45  14   418, so this would be 419.

11:13:48  15          THE COURT:  Okay.

11:13:54  16          MR. RUSS:  Now may I approach, your Honor?

11:13:56  17          THE COURT:  Yes, you may.

11:14:08  18      Q.  Doctor, I show you what we've had marked as

11:14:11  19   exhibit No. 419.  I indicate to you that this is a copy

11:14:16  20   of a deposition that you gave on October 1, 2018?

11:14:26  21      A.  Okay.

11:14:26  22      Q.  And I call your attention to page 28, line 19?

11:14:33  23      A.  Okay.

11:14:34  24      Q.  And I ask you if that refreshes your recollection

11:14:37  25   as to whether you used the term "hindsight"?

A-2123

|  | 1 | E. COGGINS - CX BY MR. RUSS |
|---|---|---|
| 11:14:41 | 2 | A.  The word "hindsight" is written there. |
| 11:14:44 | 3 | Q.  So does that refresh your recollection? |
| 11:14:46 | 4 | A.  I mean, I see that it was written there, I don't |
| 11:14:51 | 5 | recall using it. |
| 11:14:52 | 6 | THE COURT:  The question isn't what you see |
| 11:14:53 | 7 | on the document.  The question is, does that document |
| 11:14:57 | 8 | independently refresh your recollection that you used |
| 11:15:00 | 9 | that word at your deposition. |
| 11:15:02 | 10 | THE WITNESS:  I do not independently recall |
| 11:15:07 | 11 | using the word. |
| 11:15:27 | 12 | Q.  Now, you gave extensive testimony concerning when |
| 11:15:34 | 13 | you first saw Mr. Ortiz, and I believe that was November |
| 11:15:40 | 14 | 19th, 2004? |
| 11:15:43 | 15 | A.  Yes. |
| 11:15:45 | 16 | Q.  And you said that was your first involvement with |
| 11:15:48 | 17 | Mr. Ortiz, correct? |
| 11:15:49 | 18 | A.  That's correct. |
| 11:15:52 | 19 | Q.  And you gave us extensive testimony concerning |
| 11:15:57 | 20 | your observations of his behavior at that time, correct? |
| 11:16:03 | 21 | A.  Correct. |
| 11:16:04 | 22 | Q.  And you gave us some opinions as to certain |
| 11:16:11 | 23 | psychological problems that he was suffering at the |
| 11:16:14 | 24 | time? |
| 11:16:15 | 25 | A.  That's correct. |

A-2124

72

```
                    E. COGGINS - CX BY MR. RUSS

11:16:16   2     Q.   And I think you said that was the first onset of

11:16:22   3     the psychotic break?

11:16:23   4     A.   Yeah.  Well, he was in the midst of his first

11:16:29   5     episode, yes.

11:16:30   6     Q.   So if we go back before November 19th, you didn't

11:16:36   7     see him on November 16th, for example, did you?

11:16:40   8     A.   No, I did not.

11:16:42   9     Q.   So you don't know what his exact condition would

11:16:45   10    have been on November 16th, do you?

11:16:48   11    A.   Exact, not exact, no.

11:16:51   12    Q.   Does someone who is having a psychotic break have

11:17:10   13    moments of lucidity or clearness?

11:17:16   14    A.   It can happen, yes, but usually not.

11:17:21   15    Q.   But it can happen that someone could be clear and

11:17:26   16    then have a psychotic view or hallucinations and

11:17:37   17    delusions and those kinds of things?

11:17:40   18    A.   Yes.

11:17:48   19    Q.   And you don't know whether Mr. Ortiz would have

11:17:52   20    been lucid on November 16th 2004, do you?

11:17:55   21    A.   I know he was one of the most seriously mentally

11:17:58   22    ill people I had ever seen and it's unlikely that he was

11:18:01   23    in good contact with reality the day before I saw him.

11:18:06   24    Q.   Okay.  It was three days before you saw him and

11:18:08   25    you didn't see him on that, at that time, correct?
```

A-2125

73

|  |  |
|---|---|
| 1 | E. COGGINS - CX BY MR. RUSS |
| 11:18:12  2 | A.  Correct. |
| 11:18:13  3 | Q.  So you can't say definitively, can you? |
| 11:18:15  4 | A.  I cannot. |
| 11:18:24  5 | Q.  At some point, did you use the term describing |
| 11:18:33  6 | Mr. Ortiz "psychotic decompensation"? |
| 11:18:36  7 | A.  Yes. |
| 11:18:37  8 | Q.  And what does psychotic decompensation mean? |
| 11:18:43  9 | A.  It means the normal thinking process was |
| 11:18:46  10 | deteriorating and he was becoming further and further |
| 11:18:49  11 | separated from reality. |
| 11:18:51  12 | Q.  Was it your impression that Mr. Ortiz's psychotic |
| 11:18:56  13 | decompensation occurred after his arrest? |
| 11:18:59  14 | A.  It continued, he continued to deteriorate. |
| 11:19:20  15 | Q.  You mentioned that Mr. Ortiz was suffering from |
| 11:19:25  16 | hallucinations.  Is that correct? |
| 11:19:26  17 | A.  Yes. |
| 11:19:27  18 | Q.  What hallucinations can come and go? |
| 11:19:38  19 | A.  Yes. |
| 11:19:38  20 | Q.  And any of your work that you did with Mr. Ortiz, |
| 11:19:40  21 | were you able to discern when his psychotic break began? |
| 11:19:51  22 | A.  I knew that he had been taken by ambulance to the |
| 11:19:54  23 | hospital because of paranoia a few days before he came |
| 11:19:59  24 | to jail, so I knew it was before that. |
| 11:20:02  25 | Q.  But you also testified that you knew that at |

A-2126

74

|  | | E. COGGINS - CX BY MR. RUSS |
|---|---|---|
| 11:20:07 | 2 | Buffalo General Hospital on the 15th he was not |
| 11:20:10 | 3 | admitted? |
| 11:20:13 | 4 | A.  Yeah, I don't know if he got arrested right then |
| 11:20:15 | 5 | or what happened there. |
| 11:20:17 | 6 | Q.  Okay.  Would it be fair to say that you don't |
| 11:20:20 | 7 | know the timing of his confession, arrest, what happened |
| 11:20:26 | 8 | before you saw him on the 19th? |
| 11:20:29 | 9 | A.  I don't know the exact time, right, that's right. |
| 11:20:36 | 10 | Q.  And a person suffering from some of the symptoms |
| 11:20:39 | 11 | that you've described for Mr. Ortiz can vary on a |
| 11:20:44 | 12 | day-to-day basis, right? |
| 11:20:45 | 13 | A.  Yes, to a degree. |
| 11:21:06 | 14 | Q.  I believe you confirmed for us that you had no |
| 11:21:09 | 15 | contact with Mr. Ortiz after early 2006? |
| 11:21:15 | 16 | A.  That's correct. |
| 11:22:07 | 17 | Q.  Ultimately, your opinion issued to Judge Forma on |
| 11:22:11 | 18 | January 5th, 2005, was that Mr. Ortiz was ill, but |
| 11:22:15 | 19 | competent, right? |
| 11:22:16 | 20 | A.  Yes. |
| 11:22:18 | 21 | MR. RUSS:  Nothing further, your Honor. |
| 11:22:19 | 22 | THE COURT:  Thank you, Mr. Russ.  Any |
| 11:22:22 | 23 | further redirect, Mr. Felle? |
| 11:22:23 | 24 | MR. FELLE:  Yes, your Honor.  It should be |
| 11:22:25 | 25 | brief. |

```
             1              E. COGGINS - CX BY MR. RUSS
11:22:25     2              THE COURT:  Okay.
11:22:32     3   REDIRECT EXAMINATION BY MR. FELLE:
11:22:32     4      Q.  Dr. Coggins, thank you for all your time this
11:22:35     5   morning.  Just a few follow-up questions.  Mr. Russ
11:22:38     6   brought up your opinions relative to the condition of
11:22:41     7   Mr. Ortiz going back to the 15th and 16th of November.
11:22:44     8   I want to be clear.  Based on your training and
11:22:47     9   experience, based on your treatment of Mr. Ortiz
11:22:50    10   starting on the 17th of November 2004, do you have a
11:22:55    11   medical opinion with a reasonable degree of medical
11:22:58    12   certainty as to whether Mr. Ortiz was suffering from a
11:23:02    13   psychotic break on it the 16th into the 17th, the time
11:23:06    14   of his arrest?
11:23:07    15      A.  Yes, I do.
11:23:08    16              MR. RUSS:  Objection.
11:23:09    17              THE COURT:  Wait a minute.  You're
11:23:11    18   objecting.
11:23:12    19              MR. RUSS:  Yes, your Honor.
11:23:12    20              THE COURT:  You can ask her if she formed an
11:23:16    21   opinion on that issue in connection with her treatment,
11:23:18    22   but you can't ask her about her opinion right now
11:23:21    23   because she is not an expert witness.
11:23:26    24              MR. FELLE:  She is a treatment provider.
11:23:28    25              THE COURT:  She is a treatment provider.
```

A-2128

|       |    | E. COGGINS - CX BY MR. RUSS |
|-------|----|---|
| 11:23:30 | 2  | You need to restate the question and I'll sustain the |
| 11:23:33 | 3  | objection. |
| 11:23:33 | 4  | Q.  Okay.  Doctor, same question with regard to your |
| 11:23:37 | 5  | training and experience and your treatment of Mr. Ortiz |
| 11:23:40 | 6  | starting on the 17th.  Do you have an opinion? |
| 11:23:42 | 7  | THE COURT:  It's the same question, your |
| 11:23:43 | 8  | Honor. |
| 11:23:43 | 9  | MR. FELLE:  It's, Mr. Felle, don't argue |
| 11:23:46 | 10 | with me, sustained. |
| 11:23:47 | 11 | MR. RUSS:  Thank you, your Honor. |
| 11:23:48 | 12 | THE COURT:  Dr. Coggins, based on your |
| 11:23:50 | 13 | treatment of Mr. Ortiz, was he suffering psychotic break |
| 11:23:55 | 14 | back on the 16th, back on November of 2004. |
| 11:23:59 | 15 | A.  I believe at the time I saw him, I believed he |
| 11:24:02 | 16 | was in the midst of a psychotic break that had been |
| 11:24:05 | 17 | going on for some days. |
| 11:24:09 | 18 | Q.  And did that psychotic break, those conditions, |
| 11:24:12 | 19 | did they deteriorate to the point he went catatonic? |
| 11:24:17 | 20 | A.  Yes. |
| 11:24:17 | 21 | Q.  And that he attempted suicide? |
| 11:24:19 | 22 | A.  Yes. |
| 11:24:19 | 23 | Q.  And I think you told us on redirect that Mr. |
| 11:24:26 | 24 | Ortiz was one of the most serious psychotic case the |
| 11:24:30 | 25 | you've ever seen? |

A-2129

|  | 1 | E. COGGINS - CX BY MR. RUSS |
|---|---|---|
| 11:24:32 | 2 | A.  Yes. |
| 11:24:32 | 3 | MR. RUSS:  Objection, we're way beyond. |
| 11:24:34 | 4 | THE COURT:  Overruled. |
| 11:24:34 | 5 | Q.  To give us a scope of that knowledge, how active |
| 11:24:37 | 6 | are you in treating patients like Mr. Ortiz? |
| 11:24:42 | 7 | A.  I've been treating patients with serious mental |
| 11:24:45 | 8 | illness my entire career since 1992. |
| 11:24:49 | 9 | Q.  And, currently, as much as back in 2004, you were |
| 11:24:54 | 10 | a treating doctor through the Erie County Medical Health |
| 11:24:59 | 11 | Department, what is your position now with that |
| 11:25:01 | 12 | department? |
| 11:25:01 | 13 | A.  I'm the chief psychiatrist there now. |
| 11:25:05 | 14 | MR. FELLE:  That's all I have.  Thanks so |
| 11:25:09 | 15 | much, Doctor. |
| 11:25:09 | 16 | THE COURT:  Any further cross? |
| 11:25:11 | 17 | MR. RUSS:  Very briefly, your Honor, please. |
| 11:25:13 | 18 | THE COURT:  Okay. |
| 11:25:19 | 19 | RECROSS EXAMINATION BY MR. RUSS: |
| 11:25:19 | 20 | Q.  I think you just said, Doctor, and correct me if |
| 11:25:24 | 21 | I'm wrong, that Mr. Ortiz was in a midst of a psychotic |
| 11:25:29 | 22 | episode that began sometime before when you first saw |
| 11:25:35 | 23 | him on November 19th, is that correct? |
| 11:25:37 | 24 | A.  Yes. |
| 11:25:38 | 25 | Q.  On any day before you first saw him, do you know |

A-2130

78

|   |   |
|---|---|
| | 1              E. COGGINS - CX BY MR. RUSS |
| 11:25:45 | 2   the nature or extent of his problems? |

```
                  E. COGGINS - CX BY MR. RUSS

11:25:45   2   the nature or extent of his problems?

11:25:49   3       A.  Well, I knew that I was continuing antipsychotic

11:25:53   4   medication that another doctor had ordered, so I knew he

11:25:58   5   had psychosis that had been diagnosed before I saw him.

11:26:02   6       Q.  That was what, the 17th?

11:26:05   7       A.  When I saw him on the 17th, my treatment plan was

11:26:09   8   to continue the Zyprexa that he had been started on.  I

11:26:13   9   don't recall who started it.

11:26:14  10       Q.  I'm sorry, I might have confused you.  I thought

11:26:18  11   that you first saw him on November 19th?

11:26:21  12       A.  Correct, the 19th, yes, the first day on the

11:26:25  13   19th.

11:26:25  14       Q.  And you reviewed the records that -- and it

11:26:27  15   appeared he was started on medications on the 17th?

11:26:30  16       A.  I'm not sure what day he was started on the

11:26:33  17   medicine, but I continued medicine that had been

11:26:37  18   prescribed by another psychiatrist, so on the 19th, I

11:26:42  19   wrote continue Zyprexa, 20 milligrams, twice a day as my

11:26:46  20   treatment plan.  So, someone else had diagnosed

11:26:51  21   psychosis and started that medicine.

11:26:54  22       Q.  And on the evening of November 16th, 2004,

11:26:58  23   beginning at around 8 p.m. and continuing for several

11:27:07  24   hours, you have no idea precisely what condition Mr.

11:27:10  25   Ortiz was in?
```

A-2131

79

11:27:11　2　　　A.　I wouldn't agree with no idea.　I don't know the

11:27:14　3　exact mental status on that time, but I have an idea

11:27:18　4　that he was psychotic.

11:27:20　5　　　Q.　But you don't know his exact mental status at

11:27:23　6　that time?

11:27:23　7　　　A.　That's correct.

11:27:24　8　　　　　　MR. RUSS:　Thank you, your Honor.

11:27:26　9　　　　　　THE COURT:　Thank you, Mr. Russ.　All right.

11:27:28　10　Dr. Coggins, you may step down.　Thank you.　Have a nice

11:27:32　11　day.　And a safe return home.

11:27:37　12　　　　　　THE WITNESS:　Thank you.

13

14　　　　　　　　　　*　　　*　　　*

15　　　　　　　　CERTIFICATE OF REPORTER

16

17　　　I certify that the foregoing is a correct transcript

18　of the record of proceedings in the above-entitled

19　matter.

20

21　S/ Karen J. Clark,　RPR

22

23　Official Court Reporter

24

25

A-2132

```
 1                  UNITED STATES DISTRICT COURT

 2                 WESTERN DISTRICT OF NEW YORK

 3

 4    - - - - - - - - - - - - - X
      JOSUE ORTIZ                )          16-CV-321
 5                  Plaintiff   )
      vs.
 6                                    Rochester, New York
      MARK STAMBACH,                     May 4, 2022
 7                  Defendant.          9:00 a.m.
      - - - - - - - - - - - - - X
 8    TRIAL - VOLUME II - TESTIMONY OF E. COGGINS (previously
      transcribed and filed), J. ORTIZ, M. VAUGHN & J.
 9    LONERGAN

10

11                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE ELIZABETH A. WOLFORD
12                UNITED STATES MAGISTRATE JUDGE

13                  WAYNE C. FELLE, ESQ.
                    Law Office of Wayne C. Felle, P.C.
14                  6024 Main Street
                    Williamsville, NY 14221
15

16
                    HUGH M. RUSS, III, ESQ.
17                  PETER A. SAHASRABUDHE, ESQ.
                    Hodgson Russ LLP
18                  The Guaranty Building
                    140 Pearl Street, Suite 100
19                  Buffalo, New York 14202

20

21

22

23

24    COURT REPORTER: Karen J. Clark, Official Court Reporter
                      Karenclark1013@AOL.com
25                    100 State Street
                      Rochester, New York 14614
```

```
 1              J. ORTIZ  VS. M. STAMBACH-

 2                      I N D E X

 3

 4    PLAINTIFF WITNESS       DX       CX      RDX    RCX

 5    E. COGGINS (PREVIOUSLY TRANSCRIBED AND FILED AT DOCKET
      157.)
 6
      J. Ortiz              73
 7

 8    M. Vaughn             110       140     146

 9
      J. Lonergan           150       202     205    208
10

11    Exhibit No.                   Received

12      1                           159
        3                           182
13

14               P R O C E E D I N G

15          *              *              *

16

17
```

```
      PLAINTIFF WITNESS       DX       CX      RDX    RCX
      E. COGGINS (PREVIOUSLY TRANSCRIBED AND FILED AT DOCKET
      157.)
      J. Ortiz              73
      M. Vaughn             110       140     146
      J. Lonergan           150       202     205    208
      Exhibit No.                   Received
        1                           159
        3                           182
```

```
08:55:01 18

08:55:01 19

09:13:10 20          THE COURT:  Good morning, everybody.  We are

09:13:10 21    on the record in the matter of the Ortiz versus Stambach

09:13:10 22    Case Number --

09:13:10 23          THE CLERK:  16-CV-321.

09:13:10 24          THE COURT:  And we have Mr. Felle and Mr.

09:13:10 25    Ortiz present.  Mr. Russ, Mr. Sahasrabudhe, is present.
```

A-2134

J. ORTIZ VS. M. STAMBACH

09:13:11  2  Mr. Stambach is excused for the day.  I discussed with

09:13:11  3  counsel and Mr. Ortiz before we went on the record the

09:13:11  4  fact that yesterday after court juror No. 4, Mr. Howe

09:13:11  5  brought to my courtroom deputy's attention the fact that

09:13:11  6  he suffers from migraines and anxiety and does not feel

09:13:11  7  that he is able to concentrate and pay attention to the

09:13:11  8  evidence and the trial and he didn't bring this up

09:13:11  9  during jury selection because he thought he would never

09:13:11  10  be selected.  So what I'm planning to do or propose to

09:13:11  11  do and bring Mr. Howe out and question him as to exactly

09:13:12  12  what the situation is and I'll excuse him if that is

09:13:12  13  what we decide to do.  Any objections?

09:13:12  14          MR. FELLE:  No, Your Honor.

09:13:12  15          THE COURT:  Mr. Russ, do you have any

09:13:12  16  objections?

09:13:12  17          MR. RUSS:  No, Your Honor.

09:13:12  18          THE COURT:  Mr. Howe, why don't you move to

09:13:12  19  the seat next to you?  I understand you have some

09:13:12  20  concerns about your ability to sit as a --

09:13:12  21          PROSPECTIVE JUROR:  Juror.  Yeah.  I kind

09:13:12  22  of -- after the second break we took yesterday, I

09:13:12  23  started getting headaches and migraines and I had it

09:13:12  24  going back to high school.  It gives me focusing issues

09:13:12  25  and I don't want myself not being able to fully focus.

A-2135

56

```
             1              J. ORTIZ VS. M. STAMBACH
09:13:12     2   Obviously, to the people spent a lot of time and you
09:13:12     3   said you were working on this for seven years and I just
09:13:12     4   don't want it to affect my -- I don't want my vote that
09:13:12     5   I might not be able to fully focus for a couple of days
09:13:12     6   to pay a part in someone's decision in someone's life.
09:13:13     7              THE COURT:  You said you experienced this
09:13:13     8   after the second break so this would have been before.
09:13:13     9              PROSPECTIVE JUROR:  Before lunch break,
09:13:13    10   about 12:15ish.
09:13:13    11              THE COURT:  Okay.  Were you able to pay
09:13:13    12   attention to the opening statements?
09:13:13    13              PROSPECTIVE JUROR:  I was having trouble.
09:13:13    14   You probably didn't see me.  I was taking my glasses off
09:13:13    15   and rubbing my eyes a little bit.  I was having some
09:13:13    16   trouble keeping up.  I could to some extent listen as I
09:13:13    17   was trying to focus but I was having a little trouble.
09:13:13    18              THE COURT:  What about -- how are you
09:13:13    19   feeling this morning?
09:13:13    20              PROSPECTIVE JUROR:  Okay, right now.
09:13:13    21              THE COURT:  See.  It's not like we can get
09:13:13    22   another juror at this point.
09:13:13    23              PROSPECTIVE JUROR:  I know.
09:13:13    24              THE COURT:  The point of bringing it to my
09:13:13    25   attention until after you're selected if you're excused,
```

A-2136

57

                    J. ORTIZ VS. M. STAMBACH

09:13:13   2   we're down a juror and that could create complications.

09:13:13   3   It doesn't seem to me.  It sounds to me and you tell me

09:13:13   4   if I'm wrong because I don't want to put words in your

09:13:13   5   mouth.  It sounds to me that you have concerns that

09:13:13   6   going forward you may experience these migraines or

09:13:13   7   anxiety issues that would then prevent you from paying

09:13:13   8   as much attention as you should.

09:13:14   9           PROSPECTIVE JUROR:  Yes.

09:13:14   10          THE COURT:  Would it be feasible for if that

09:13:14   11  happens for you to let me know?  I mean, in other words,

09:13:14   12  how do you deal to redeem with this in your everyday

09:13:14   13  life?

09:13:14   14          PROSPECTIVE JUROR:  I haven't dealt with it

09:13:14   15  since I was in school, which is the part of the reason

09:13:14   16  that I never attended college.  I work from home.  It

09:13:14   17  doesn't happen if I'm at home.  It starts to happen if I

09:13:14   18  get a little tired and I typically don't have to start

09:13:14   19  my work until about 10:00 o'clock and I'm coming from

09:13:14   20  about an hour and fifteen minutes away.  I woke up 3

09:13:14   21  hours earlier.

09:13:14   22          THE COURT:  Would it be helpful if we had a

09:13:14   23  later start time?

09:13:14   24          PROSPECTIVE JUROR:  I wouldn't say so, no.

09:13:14   25  I don't want to make everything just change because of

A-2137

58

J. ORTIZ VS. M. STAMBACH

09:13:14  2  me.

09:13:14  3  THE COURT:  Well, you're one of eight who

09:13:14  4  are very critical in this case.  What I'm trying to do

09:13:14  5  is to explore ways to have you remain a juror and be an

09:13:15  6  attentive juror and I mean, if we had a 9:30 start time

09:13:15  7  as opposed to a 9:00 a.m. start time, would that be

09:13:15  8  helpful?

09:13:15  9  PROSPECTIVE JUROR:  Thirty minutes probably

09:13:15  10  wouldn't make it a pass of difference.  I can still make

09:13:15  11  it here on time.

09:13:15  12  THE COURT:  What about staying overnight in

09:13:15  13  a hotel?  Would you have any interest overnight?

09:13:15  14  PROSPECTIVE JUROR:  I can't stay overnight.

09:13:15  15  I have things at home that I have to take care of after

09:13:15  16  I get done here.

09:13:15  17  THE COURT:  Is there anything that you're

09:13:15  18  experiencing if you take a break and clear your head;

09:13:15  19  would that help?

09:13:15  20  PROSPECTIVE JUROR:  I dropped off and I went

09:13:15  21  with them a little bit and came back.  It didn't help

09:13:15  22  me, then I wouldn't say so, no.

09:13:15  23  THE COURT:  Okay.  But if I understand

09:13:15  24  correctly, you're feeling okay right now?

09:13:15  25  PROSPECTIVE JUROR:  At this moment.

```
1                    J. ORTIZ VS. M. STAMBACH
09:13:15    2            THE COURT:  And you would be able to bring
09:13:15    3    to my attention.
09:13:16    4            PROSPECTIVE JUROR:  If something pops up,
09:13:16    5    yes.
09:13:16    6            THE COURT:  Why don't you do this?  I'm
09:13:16    7    going to have one of our CSOs escort you into the
09:13:16    8    hallway.  I want to talk to the attorneys about this.
09:13:16    9            PROSPECTIVE JUROR:  I'm sorry for not saying
09:13:16   10    anything yesterday.  I feel bad about it.
09:13:16   11            THE COURT:  I don't want you to feel bad
09:13:16   12    because that is probably going to make an excuse as part
09:13:16   13    of the situation.  You know as I said obviously the time
09:13:16   14    it would have been better to address it during jury
09:13:16   15    selection, but you've brought it to our attention.
09:13:16   16    There is nothing we can do about the past.  I want to
09:13:16   17    figure out a way to make this work.
09:13:16   18            PROSPECTIVE JUROR:  I'm sorry.
09:13:16   19            THE COURT:  Thank you.  Mike will escort you
09:13:16   20    into the hallway, but at this point, let's see how it
09:13:16   21    goes, Mr. Felle.
09:13:16   22            MR. FELLE:  I agree.  I think yesterday was
09:13:16   23    an intense experience because of direct questions and
09:13:16   24    the opening statement being direct as the trial goes on
09:13:17   25    and it's more of a question and answer scenario.  I
```

```
                        J. ORTIZ VS. M. STAMBACH
09:13:17   2    think that should give a little bit more buffer to the
09:13:17   3    jury and I think your approach is fair.  Let's see how
09:13:17   4    he does.
09:13:17   5             THE COURT:  I think it's fair to stay that
09:13:17   6    the jurors are more on the hot seat yesterday than they
09:13:17   7    will be up to, I suppose, the time of deliberations, Mr.
09:13:17   8    Russ.
09:13:17   9             MR. RUSS:  I think that makes sense, Your
09:13:17  10    Honor.  I do think that we may want to see how things go
09:13:17  11    and observe him and, you know, if he appears to be in
09:13:17  12    the streets, then I think we can revisit the issue, but
09:13:17  13    he seems okay now.
09:13:17  14             MR. FELLE:  He does.
09:13:17  15             THE COURT:  All right.  I'll have him come
09:13:17  16    back in here and I'll explain to him that just what I
09:13:17  17    reiterated I want him to let us know by bringing it to
09:13:17  18    Dawn's attention if he has any issues but that I want to
09:13:17  19    do anything I can to try and accommodate him and to be
09:13:17  20    able to serve and remain as a juror, so.  Can you let
09:13:17  21    him know to bring Mr. Howe back in?  Thanks, Mike.
09:13:17  22    Please come back to Mr. Howe.
09:13:17  23             PROSPECTIVE JUROR:  Same seat?
09:13:17  24             THE COURT:  Yes.  Thank you very much for
09:13:17  25    bringing this to our attention.  And as I think I
```

1                         J. ORTIZ VS. M. STAMBACH

09:13:17   2    indicated I want to do whatever I can to try and

09:13:18   3    accommodate you to be able to serve as a juror in this

09:13:18   4    trial.  Your role is important.  And in some aspects

09:13:18   5    yesterday may be a more intense situation for you

09:13:18   6    because we were asking questions and it was jury

09:13:18   7    selection and it was all new.  What I want to do is have

09:13:18   8    you remain as a juror, but you let under the

09:13:18   9    circumstances know by letting Ms. Samuel knows if there

09:13:18   10   is a point in time where your experience brings these

09:13:18   11   symptoms and you either need to take a break or need to

09:13:18   12   bring that to my attention further, okay?  Okay.

09:13:18   13                   PROSPECTIVE JUROR:  Yes.

09:13:18   14                   THE COURT:  The last thing in the world I

09:13:18   15   want to do is make this difficult for you any more

09:13:18   16   difficult than regular jury service already is so to

09:13:18   17   speak.  So the other point is, if at any point in time

09:13:18   18   you need a break, raise your hand.  And if I don't see

09:13:18   19   you, they'll see you trying to get my attention and

09:13:18   20   we'll take a break, okay?

09:13:18   21                   PROSPECTIVE JUROR:  Okay.

09:13:18   22                   THE COURT:  Any questions that you have for

09:13:18   23   me?

09:13:18   24                   PROSPECTIVE JUROR:  No.  No questions.

09:13:18   25                   THE COURT:  Thank you very much.  I'm going

A-2141

62

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 09:13:18 | 2 | to bring you back into the jury deliberation room and |
| 09:13:18 | 3 | we'll have everybody out in a few minutes.  Thank you. |
| 09:13:19 | 4 | Any update about Mr. Torres's situation. |
| 09:13:19 | 5 | MR. SAHASRABUDHE:  Your Honor, I called him |
| 09:13:19 | 6 | at least fifteen times last night.  At first, the phone |
| 09:13:21 | 7 | was not ringing, then it did ring.  And I left multiple |
| 09:13:25 | 8 | voice mails for him, I have not heard back.  I asked him |
| 09:13:29 | 9 | to call me as soon as he got the message.  But I will |
| 09:13:33 | 10 | say, I spoke to him on Friday before he left and he and |
| 09:13:36 | 11 | we talked I said at the very least you have to show up |
| 09:13:40 | 12 | Monday at 9:00 a.m. to give testimony when you're back |
| 09:13:44 | 13 | present in New York and he understands that and told me |
| 09:13:46 | 14 | that he plans to do so. |
| 09:13:48 | 15 | THE COURT:  Okay.  Well, keep me updated, |
| 09:13:51 | 16 | okay? |
| 09:13:51 | 17 | MR. SAHASRABUDHE:  Yes.  And I guess the |
| 09:13:52 | 18 | more updates, I spoke with Police Officer Lauber after |
| 09:13:59 | 19 | calling him repeatedly last night, he called me late |
| 09:14:03 | 20 | last night.  Essentially, what he told me is, I can not |
| 09:14:07 | 21 | show up on Wednesday or Thursday, you told me you had an |
| 09:14:10 | 22 | agreement with opposing counsel that I could come in |
| 09:14:13 | 23 | Friday at 11:00 a.m.  I can tell the judge about my |
| 09:14:15 | 24 | doctor's appointments.  I reminded him he was under |
| 09:14:18 | 25 | subpoena and that he basically told me too bad.  But I |

A-2142

63

|  |  |  |
|---|---|---|
|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 09:14:22 | 2 | have made arrangements to have Detective Vaughn |
| 09:14:28 | 3 | available this afternoon and he said he will be here |
| 09:14:32 | 4 | ready to go this afternoon as well as tomorrow morning |
| 09:14:36 | 5 | if that will help us move things along. |
| 09:14:39 | 6 | THE COURT: So refresh my recollection. I |
| 09:14:42 | 7 | didn't bring my notes out from yesterday on the witness |
| 09:14:45 | 8 | order. We have Dr. Coggins here right now. |
| 09:14:49 | 9 | MR. FELLE: Correct, Your Honor. |
| 09:14:49 | 10 | THE COURT: And then you're going to put on. |
| 09:14:52 | 11 | MR. FELLE: Mr. Ortiz. |
| 09:14:53 | 12 | THE COURT: And then you had two other |
| 09:14:55 | 13 | witnesses. |
| 09:14:55 | 14 | MR. FELLE: And then we were going to put on |
| 09:14:58 | 15 | Detective Lauber and then Lonergan. |
| 09:15:02 | 16 | THE COURT: So what I hear you indicating |
| 09:15:05 | 17 | Mr. Sahasrabudhe is that Mr. Lauber is refusing to show |
| 09:15:09 | 18 | up today or tomorrow? |
| 09:15:13 | 19 | MR. SAHASRABUDHE: Yes. |
| 09:15:13 | 20 | THE COURT: And will be here 11:00 a.m. on |
| 09:15:15 | 21 | Friday. |
| 09:15:15 | 22 | MR. SAHASRABUDHE: Yes. And Detective |
| 09:15:19 | 23 | Lonergan will be here at 1:00 p.m. |
| 09:15:23 | 24 | THE COURT: He will be here this afternoon. |
| 09:15:25 | 25 | MR. SAHASRABUDHE: Yes. |

A-2143

64

J. ORTIZ VS. M. STAMBACH

09:15:25 2    THE COURT:  All right.  Before -- I mean, we

09:15:27 3    may have time on Friday in any event I suppose.  I mean,

09:15:33 4    Mr. Felle, what is your view of Mr. Lauber refusing to

09:15:38 5    attend this afternoon?

09:15:40 6    MR. FELLE:  Again, he won't return my calls

09:15:43 7    so I don't know.  I trust the veracity of what Mr.

09:15:46 8    Sahasrabudhe has said.  I would just say this.  I know

09:15:50 9    he has offered Detective Vaughn to come in this

09:15:54 10   afternoon to fill that void, which I would be agreeable

09:15:56 11   to if we3 have time but it is a bit of stealing from

09:16:01 12   Peter to pay Paul because tomorrow we would have a gap

09:16:04 13   because he was the starting witness.  Now, what the

09:16:06 14   court may want to do is start court later tomorrow so

09:16:10 15   the jury doesn't have an extended lunch of 3 hours but

09:16:14 16   they have no place to go.  But I'll leave that to the

09:16:19 17   Court's discretion if we take Detective Vaughn today it

09:16:24 18   would leave the void in the morning.

09:16:26 19   THE COURT:  Let's take Dr. Coggins and see

09:16:29 20   how we are time wise and we'll revisit the issue.

09:16:32 21   MR. FELLE:  Sounds fair.  Judge, one last

09:16:34 22   issue, I was attempting to speak to counsel.  We were

09:16:36 23   hoping to move in some exhibits that have been exchanged

09:16:40 24   and move them into evidence before the jury comes in.

09:16:43 25   So.

A-2144

65

|  |  |  |
|--|--|--|
| | 1 | J. ORTIZ VS. M. STAMBACH |
| 09:16:43 | 2 | THE COURT: Before the jury comes in? |
| 09:16:45 | 3 | MR. FELLE: Well, I can do it during the |
| 09:16:47 | 4 | exam. I'm hoping to save time. |
| 09:16:48 | 5 | THE COURT: I think it's fine for you to |
| 09:16:50 | 6 | move in exhibits to which there is no objection, but we |
| 09:16:52 | 7 | need to make that record I think in front of the jury. |
| 09:16:54 | 8 | MR. FELLE: Okay. |
| 09:16:55 | 9 | THE COURT: So they are aware of what |
| 09:16:57 | 10 | exhibits have come in. |
| 09:16:58 | 11 | MR. RUSS: Just so there are no surprises, |
| 09:17:00 | 12 | Your Honor. I'm happy to go through them one by one at |
| 09:17:03 | 13 | this point or at that point. Most of them I don't have |
| 09:17:08 | 14 | a problem with. Some of them are probably admissible as |
| 09:17:19 | 15 | business records but contain so much hearsay that they |
| 09:17:23 | 16 | would necessarily be considered redaction. So I don't |
| 09:17:28 | 17 | know. |
| 09:17:28 | 18 | THE COURT: Well, I mean these are issues |
| 09:17:30 | 19 | that we should have dealt with before the jury is |
| 09:17:34 | 20 | sitting back there. So if there are exhibits that are |
| 09:17:37 | 21 | stipulated, that there are no issues with respect to, |
| 09:17:40 | 22 | then we can move them in right at the start and in front |
| 09:17:43 | 23 | of the jury. But if there are issues that we need to |
| 09:17:46 | 24 | deal with -- do you need to address those issues before |
| 09:17:50 | 25 | Dr. Coggins testimony? |

A-2145

66

                        J. ORTIZ VS. M. STAMBACH

09:17:51    2           MR. FELLE:  They are relevant to her

09:17:53    3    testimony.  I did try to reach out last night and Mr.

09:17:56    4    Russ was unavailable.  Peter and I did speak, so I did

09:17:59    5    try to avoid it.  But yes, they are relevant to her

09:18:02    6    testimony and I can bring them in as she testifies.  I

09:18:06    7    was hoping to do it more efficiently by just entering

09:18:09    8    Exhibits 28 through 36.  These are all relevant.

09:18:14    9           THE COURT:  These are all Plaintiffs Exhibit

09:18:16   10    Numbers.

09:18:16   11           MR. FELLE:  Correct, Your Honor.

09:18:16   12           THE COURT:  Which are the ones then Mr. Russ

09:18:19   13    that the defense has an issue on?

09:18:28   14           MR. RUSS:  Exhibit 28, Your Honor, is a

09:18:30   15    Buffalo General Hospital record.  And those are full of

09:18:35   16    hearsay statements by various treating people and people

09:18:41   17    other than the Plaintiff.  Exhibit 29 is the same thing:

09:18:47   18    It's a screening summary medical record.  Exhibit 30.

09:18:57   19           THE COURT:  I don't have a 30 in here.

09:19:01   20           MR. FELLE:  So I think it's combined with

09:19:03   21    29, Your Honor.  The original list by Mr. Pierce was

09:19:08   22    duplicative in many areas.  But 29 is essentially the

09:19:12   23    file of the Erie County Mental Health Services

09:19:18   24    Department, which is who Dr. Coggins treated Mr. Ortiz

09:19:21   25    through.  That is the department and she was a doctor

A-2146

67

1                    J. ORTIZ VS. M. STAMBACH

09:19:26    2    treating patients.  I should say inmates of the Erie

09:19:32    3    County Holding Center through that department.

09:19:41    4                 THE COURT:  These are multiple page

09:19:43    5    exhibits.  This is going to take us a long time to sort

09:19:45    6    through the hearsay objections that you have to these.

09:19:49    7    This is the exact kind of issue that should have been

09:19:52    8    brought to my attention before 9:20 at the start of a

09:19:55    9    trial.  And that falls on both of you.  I mean, what do

09:20:03   10    you say to the hearsay objection that Mr. Russ is

09:20:06   11    making?

09:20:07   12                 MR. FELLE:  I think we can agree to admit as

09:20:09   13    evidence and take up relevancy issues as they may arise.

09:20:12   14                 THE COURT:  But hearsay is an admissibility

09:20:16   15    issue.

09:20:16   16                 MR. FELLE:  Yeah.  Well, I think that --

09:20:19   17    again, she is a treating doctor through that

09:20:21   18    organization and she uses the records to form her

09:20:24   19    diagnosis and treatment plan under the professional

09:20:27   20    reliability rule would allow her to talk about

09:20:32   21    colleagues of hers that would treat him in conjunction

09:20:36   22    and of course there are her own reports that she would

09:20:40   23    be able to testify to.

09:20:42   24                 THE COURT:  But that is not addressing the

09:20:43   25    hearsay issue.  I mean, in other words, if these are

A-2147

68

1                    J. ORTIZ VS. M. STAMBACH

09:20:46   2   out-of-court statements of third parties, what is your

09:20:50   3   basis for admitting them into evidence?

09:20:54   4               MR. FELLE:  I think through the testimony of

09:20:56   5   Dr. Coggins, that she utilized and relied on those

09:21:00   6   statements, the professional reliability rule, one

09:21:06   7   doctor relying on another doctor's conjunctive treatment

09:21:09   8   would bypass any hearsay.

09:21:16   9               THE COURT:  What rule of evidence are you

09:21:18  10   relying on?

09:21:19  11               MR. FELLE:  No.  There are a string of

09:21:21  12   cases.

09:21:22  13               THE COURT:  No, Rules of Evidence, Mr.

09:21:25  14   Felle.

09:21:25  15               MR. FELLE:  Your Honor, I would say they are

09:21:27  16   certified documents.

09:21:29  17               THE COURT:  Certification has nothing to do

09:21:31  18   with the hearsay rules.  So, there are exceptions to the

09:21:35  19   hearsay rules for medical treatment.  I would imagine

09:21:39  20   that there are some statements that are in here that

09:21:42  21   would fall within the hearsay exceptions.

09:21:46  22               MR. RUSS:  Yes, Your Honor.  For example, if

09:21:48  23   they are statements of the Plaintiff himself saying this

09:21:50  24   is what I did, this is what I saw, this is what I feel,

09:21:55  25   you know that would fall within the exception, an

|     | J. ORTIZ VS. M. STAMBACH |
| --- | --- |
| 09:22:00 2 | exception to the hearsay rule. But there are all kinds |
| 09:22:08 3 | of statements made by others -- third parties who are |
| 09:22:11 4 | not here. Now, I have no objection to Mr. Felle marking |
| 09:22:22 5 | the documents and allowing the doctor to refer to them |
| 09:22:25 6 | to refresh her recollection as many doctors do with |
| 09:22:31 7 | patients, especially things that happened years and |
| 09:22:35 8 | years and years ago. But, I would object to their |
| 09:22:42 9 | admission into evidence. In other words, she can use |
| 09:22:44 10 | them, but they should not be admitted. |
| 09:22:52 11 | THE COURT: What we will do is this. Go |
| 09:22:54 12 | through the testimony with Dr. Coggins, you lay the |
| 09:22:59 13 | foundation to the extent that you need to for the |
| 09:23:04 14 | admission of any of the records. As Mr. Russ indicates |
| 09:23:11 15 | if she can't remember something and needs to refer to |
| 09:23:15 16 | the records to refresh her recollection that is fine but |
| 09:23:18 17 | in terms of the admissibility this must be at least 25 |
| 09:23:22 18 | pages. If not more, or at least 28 and 29, we're going |
| 09:23:26 19 | to have to go through this line by line to determine |
| 09:23:29 20 | what is hearsay and what isn't hearsay and what are you |
| 09:23:32 21 | offering for the truth and what are you not offering for |
| 09:23:35 22 | the truth and this is going to take over an hour if not |
| 09:23:38 23 | more and I'm not going to do that with the jury sitting |
| 09:23:43 24 | back there. As I said, this is an issue that should |
| 09:23:45 25 | have been dealt with before right now. So lay the |

A-2149

70

|  |  |  |
|---|---|---|
| | 1 | J. ORTIZ VS. M. STAMBACH |
| 09:23:49 | 2 | foundation for this with Dr. Coggins's testimony.  If it |
| 09:23:53 | 3 | gets to the point where you wanted to publish something |
| 09:23:55 | 4 | to the jury during her testimony, bring that to my |
| 09:24:00 | 5 | attention and we'll deal with that particular part of |
| 09:24:03 | 6 | the document that you wanted to publish, and then we'll |
| 09:24:05 | 7 | have to revisit the hearsay objections, okay? |
| 09:24:08 | 8 | MR. FELLE:  Okay. |
| 09:24:10 | 9 | THE COURT:  All.  Anything else, Mr. Felle? |
| 09:24:12 | 10 | MR. FELLE:  Your Honor, just -- I guess one |
| 09:24:15 | 11 | of housekeeping in terms of using the projector but |
| 09:24:20 | 12 | possibly coming back to the desk to ask questions so I |
| 09:24:25 | 13 | can take off my mask.  I continue to have a |
| 09:24:26 | 14 | respiratory -- I don't know what it is.  Maybe similar |
| 09:24:28 | 15 | to what the juror experienced this afternoon here.  If |
| 09:24:33 | 16 | it's possible I wear the mask as an approach the podium, |
| 09:24:36 | 17 | of course, but if sitting here at the table like |
| 09:24:38 | 18 | yesterday asking questions. |
| 09:24:40 | 19 | THE COURT:  I don't know that there is a |
| 09:24:42 | 20 | distinction between -- when I said you could sit at |
| 09:24:43 | 21 | counsel's table to ask the questions it was when you |
| 09:24:46 | 22 | were seated where Mr. Ortiz was.  I honestly don't know |
| 09:24:50 | 23 | if there is much of a distinction between you sitting |
| 09:24:52 | 24 | where you are and standing at the podium.  I'll tell you |
| 09:24:55 | 25 | what.  I'll let you stand at the podium, I'll let you |

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 09:24:59 | 2 | each stand at the podium to ask questions without a mask |
| 09:25:03 | 3 | behind the Plexiglass.  When we're doing statements to |
| 09:25:06 | 4 | the jurors where you are actually looking at them then |
| 09:25:09 | 5 | I'll either make you wear a mask or I guess sitting at |
| 09:25:15 | 6 | counsel's table.  Where you sat -- I mean, once you |
| 09:25:17 | 7 | started giving your opening yesterday and I saw before |
| 09:25:20 | 8 | you were sitting compared to where the podium was, I |
| 09:25:23 | 9 | don't think it makes a difference quite frankly.  But, |
| 09:25:27 | 10 | all right.  Anything else, Mr. Felle? |
| 09:25:30 | 11 | MR. FELLE:  I don't believe so, Judge. |
| 09:25:32 | 12 | THE COURT:  Mr. Russ, anything? |
| 09:25:32 | 13 | MR. RUSS:  No, thank you, Your Honor. |
| 09:25:35 | 14 | THE COURT:  Okay.  Let's bring our jury in |
| 09:25:37 | 15 | Dawn. |
| 09:26:50 | 16 | (Jury is escorted into the courtroom.) |
| 09:26:54 | 17 | THE COURT:  Everybody can have a seat and |
| 09:26:55 | 18 | welcome back.  I apologize we're running late.  This is |
| 09:26:59 | 19 | the difference between real time and court time.  And I |
| 09:27:03 | 20 | can assure you that I was doing everything I could to |
| 09:27:05 | 21 | make sure we started on time but sometimes there are |
| 09:27:08 | 22 | issues that come up that we need to address outside your |
| 09:27:13 | 23 | presence.  Thank you for your patience.  I will say that |
| 09:27:15 | 24 | I'm going to let counsel ask questions without their |
| 09:27:18 | 25 | masks on from behind the Plexiglass and the podium |

A-2151

72

|   |   |   |
|---|---|---|
|   | 1 | J. ORTIZ - DX BY MR. FELLE |
| 09:27:22 | 2 | there.  And as I said the witnesses will testify up here |
| 09:27:26 | 3 | without their masks on as well.  So we are now ready to |
| 09:27:31 | 4 | start the proof in this case. |
| 09:27:32 | 5 | Mr. Felle, who is the Plaintiff's first |
| 09:27:34 | 6 | witness? |
| 09:27:34 | 7 | MR. FELLE:  Good morning, Your Honor.  May I |
| 09:27:36 | 8 | please the Court.  We would like to call Dr. Evelyn |
| 09:27:39 | 9 | Coggins. |
| 09:27:39 | 10 | THE COURT:  All right.  Let's have Dr. |
| 09:27:42 | 11 | Coggins come in, Mike? |
| 09:28:11 | 12 | Doctor, come on in and come up to the bench |
| 09:28:14 | 13 | and I'll have you sworn in before you take the bench. |
| 09:28:20 | 14 | THE WITNESS:  Good morning. |
| 09:28:20 | 15 | **(Whereupon, E. Coggins was previously** |
| 09:28:20 | 16 | **transcribed and filed at docket No. 157.)** |
| 11:27:58 | 17 | THE COURT:  All right.  Is the Plaintiff |
| 11:27:59 | 18 | ready to call his next witness? |
| 11:28:01 | 19 | MR. FELLE:  Yes, Your Honor.  At this point, |
| 11:28:03 | 20 | we would like to call Mr. Ortiz to the stand. |
| 11:28:06 | 21 | THE COURT:  All right.  Mr. Ortiz, why don't |
| 11:28:07 | 22 | you come on up.  My courtroom deputy will swear you in |
| 11:28:11 | 23 | before you take the witness stand and she is also |
| 11:28:13 | 24 | getting ready for you to take the witness stand, so just |
| 11:28:18 | 25 | give her a minute. |

A-2152

73

| | |
|---|---|
| 1 | J. ORTIZ - DX BY MR. FELLE |
| 11:28:47　2 | **(J. ORTIZ WAS CALLED TO THE WITNESS STAND AND SWORN.)** |
| 11:28:48　3 | THE COURT:  So state your name and then |
| 11:28:50　4 | spell the last name for the record. |
| 11:28:52　5 | THE WITNESS:  My name is Josue Ortiz.  First |
| 11:28:55　6 | name, J-O-S-U-E, last name Ortiz, O-R-T-I-Z. |
| 11:29:01　7 | THE COURT:  All right.  So I have some |
| 11:29:04　8 | instructions for you, similar to what I gave to Dr. |
| 11:29:08　9 | Coggins.  Mr. Ortiz, make sure you only answer the |
| 11:29:10　10 | question that you're asked, don't volunteer information. |
| 11:29:13　11 | If there is an objection, you need to wait until I rule |
| 11:29:15　12 | on the objection and I'll let you know whether or not |
| 11:29:18　13 | you can answer it.  Speak slowly and clearly and speak |
| 11:29:21　14 | into the microphone.  Instead of having to keep leaning |
| 11:29:26　15 | forward, you can move the microphone toward you, but you |
| 11:29:30　16 | have a nice loud voice and don't feel like you have to |
| 11:29:33　17 | shout.  We can all hear you and direct your answers to |
| 11:29:36　18 | the ladies and gentlemen.  That is why you're here, to |
| 11:29:38　19 | testify for their benefit.  Do you understand? |
| 11:29:41　20 | THE WITNESS:  Yes, I do. |
| 11:29:42　21 | THE COURT:  Maybe we'll turn that on.  You |
| 11:29:45　22 | can proceed whenever you're ready, Mr. Felle. |
| 11:29:46　23 | MR. FELLE:  Thank you, Your Honor. |
| 11:29:48　24 | DIRECT EXAMINATION BY MR. FELLE: |
| 11:29:48　25 | Q.  Good morning, Mr. Ortiz.  How are you? |

A-2153

74

|  | J. ORTIZ - DX BY MR. FELLE |
|---|---|

11:29:51  2    A.  I'm doing well, Mr. Felle.

11:29:53  3    Q.  I know you waited a long time for today.  Are you

11:29:56  4  nervous?

11:29:56  5    A.  Yes, I've been waiting a long time.  I'm a little

11:30:00  6  anxious because it's my first time in a situation like

11:30:02  7  this.  I've never been, so.

11:30:04  8    Q.  We'll take it slow, okay?

11:30:09  9    A.  Okay.

11:30:09  10    Q.  I want to talk to you today about why we're here.

11:30:17  11    A.  Right.

11:30:18  12    Q.  We're here to discuss your arrest from back in

11:30:21  13  2004?

11:30:23  14        MR. RUSS:  Your Honor, questions and

11:30:24  15  answers, please.

11:30:25  16        THE COURT:  Yeah, well, I'll let Mr. Felle

11:30:29  17  say, we're here to discuss your arrest from back in

11:30:32  18  2004.  But no leading.  These are open-ended questions.

11:30:36  19        MR. FELLE:  Okay.

11:30:37  20        THE COURT:  So, overruled.

11:30:39  21    Q.  Before we do that, I want to talk a little bit

11:30:42  22  about your background.  Can you tell us where you were

11:30:45  23  born?

11:30:45  24    A.  I was born in Puerto Rico on October 14th, 1991.

11:30:55  25    Q.  And while you were in Puerto Rico, who did you

A-2154

|  | 1 | J. ORTIZ - DX BY MR. FELLE |
|---|---|---|
| 11:31:01 | 2 | live with? |
| 11:31:01 | 3 | A.   I used to live with my mother and dad. |
| 11:31:03 | 4 | Q.   And do you have any siblings, brothers, or |
| 11:31:07 | 5 | sisters? |
| 11:31:07 | 6 | A.   Yes, I do.  I have two older brothers. |
| 11:31:09 | 7 | Q.   And how much older are they than you? |
| 11:31:12 | 8 | A.   Well, I'm 40.  Right now, my older brother is 44, |
| 11:31:16 | 9 | and my middle brother is 42. |
| 11:31:20 | 10 | Q.   And back in Puerto Rico, do your brothers work? |
| 11:31:25 | 11 | A.   Excuse me. |
| 11:31:26 | 12 | Q.   Do your brothers work? |
| 11:31:28 | 13 | A.   Yeah, one of -- my older brother, he is a |
| 11:31:32 | 14 | paramedic and my middle brother is a state police |
| 11:31:35 | 15 | officer. |
| 11:31:35 | 16 | Q.   And I'm sorry, did you say the middle brother is |
| 11:31:38 | 17 | a -- |
| 11:31:38 | 18 | A.   Yes, my middle brother is, yes. |
| 11:31:41 | 19 | Q.   He is a police officer? |
| 11:31:42 | 20 | A.   Yes, state police officer. |
| 11:31:44 | 21 | Q.   So what is the greatest or highest level of |
| 11:31:47 | 22 | education you attained? |
| 11:31:48 | 23 | A.   I only -- I only got like one credit when I was |
| 11:31:53 | 24 | in Puerto Rico to get my GED, so 11th grade, I would |
| 11:31:59 | 25 | say. |

A-2155

|        | 1  | J. ORTIZ - DX BY MR. FELLE |
|--------|----|----------------------------|
| 11:31:59 | 2  | Q.  And you said in Puerto Rico, so you attended |
| 11:32:04 | 3  | school in Puerto Rico, correct? |
| 11:32:05 | 4  | A.  Yes. |
| 11:32:06 | 5  | Q.  And that was up through 11th grade? |
| 11:32:08 | 6  | A.  Yes. |
| 11:32:09 | 7  | Q.  And at that point, you tried to get your GED? |
| 11:32:13 | 8  | A.  Yes. |
| 11:32:13 | 9  | Q.  And you're a little short of getting it, correct? |
| 11:32:16 | 10 | A.  Yes. |
| 11:32:18 | 11 | Q.  And was there a point in time when you came here |
| 11:32:20 | 12 | in the U.S.A.? |
| 11:32:23 | 13 | A.  Yes. |
| 11:32:23 | 14 | Q.  And can you tell me when did you come to the |
| 11:32:27 | 15 | U.S.A.? |
| 11:32:28 | 16 | A.  I came in summer of 2004. |
| 11:32:32 | 17 | Q.  And if my math is correct, based on your date of |
| 11:32:35 | 18 | birth, how old were you? |
| 11:32:36 | 19 | A.  I was between 22 to 23 years old. |
| 11:32:41 | 20 | Q.  And why had you come here to the U.S. at that |
| 11:32:44 | 21 | point? |
| 11:32:44 | 22 | A.  Well, my mom, she just recently pretty much just |
| 11:32:48 | 23 | a couple of years before she passed away, so I was |
| 11:32:54 | 24 | living with my father and he decided to come to the |
| 11:32:59 | 25 | United States and live with my uncle and start fresh.  I |

A-2156

```
           1              J. ORTIZ - DX BY MR. FELLE
11:33:02   2   was depressed because my mom passed and I came over here
11:33:07   3   to live with my uncle for the meantime in the beginning.
11:33:10   4       Q.   And did your uncle live here in the Buffalo or
11:33:15   5   Western New York area?
11:33:16   6       A.   He used to live in Buffalo, yes.
11:33:17   7       Q.   And what is your uncle's name?
11:33:19   8       A.   My uncle, her name, his name, used to be Reynaldo
11:33:26   9   Velasquez.  He passed away in 2010.
11:33:32  10       Q.   2010, is that while you were in jail?
11:33:34  11       A.   Yes.  I was in prison when he passed away, yes.
11:33:37  12       Q.   And when you left Puerto Rico, what resources did
11:33:45  13   you come here with to the U.S.?
11:33:46  14       A.   Well, my father, after my mom passed away, my
11:33:51  15   father, he sold the home we used to live at so he
11:33:54  16   divided the amount between me and my two brothers and
11:33:58  17   with that money I was able to come over here and live
11:34:01  18   until you know everything that happened.  I tried to get
11:34:04  19   a job, but, eventually, I was not able to speak English
11:34:08  20   at that time, so it was kind of, it was kind of hard to
11:34:12  21   get a job back in 2004 over here in the United States.
11:34:15  22   If you're not speaking English.
11:34:18  23       Q.   And what kind of work were you trying to get when
11:34:21  24   you got here to the U.S.?
11:34:23  25       A.   Well, I remembered I went to Burger King, and
```

A-2157

|  | 1 | J. ORTIZ - DX BY MR. FELLE |
|--|---|----------------------------|

11:34:27  2  eventually, it was not successful, but, like I said, I

11:34:31  3  barely speak English and I can't understand it at that

11:34:35  4  time and so I remember I went to a few interviews and

11:34:38  5  they used to talk to me and I was not able to speak back

11:34:41  6  to them because, you know, I didn't know what they were

11:34:44  7  saying and back then I'm pretty sure they wasn't

11:34:48  8  understanding what I said and I applied to Burger King

11:34:52  9  and my cousin was use to be bus aide in Buffalo and I

11:35:07  10  wasn't able to understand and they weren't able to

11:35:10  11  understand me.

11:35:10  12      THE COURT:  Where was your cousin employed?

11:35:11  13  A.  She was a bus aide in Buffalo, school bus.

11:35:13  14  Q.  And I think you told us you came here in the

11:35:17  15  summer of 2004, do you remember when?

11:35:18  16  A.  I think it was like May of 2004, if I'm not

11:35:21  17  mistaken.

11:35:23  18  Q.  And then, just to be clear, when you came in the

11:35:26  19  spring of 2004, you came here and lived with your

11:35:30  20  cousin, correct?

11:35:31  21  A.  My uncle, my uncle.

11:35:32  22  Q.  Uncle, I'm sorry.  And did he also have children?

11:35:36  23  A.  Yes, he got my cousin, his name was Reynaldo

11:35:42  24  Velasquez, also, and my two female cousins, one is

11:35:47  25  Brenda Velasquez and Vanessa Velasquez.

A-2158

1          J. ORTIZ - DX BY MR. FELLE

11:35:51   2      Q.  And when you came here in the U.S., did you have

11:35:54   3   physical or mental disabilities?

11:35:56   4      A.  Actually, back in Puerto Rico, like when I was 15

11:36:02   5   or 16, I got in a real breakdown with one of my

11:36:06   6   girlfriends, I was with, I was depressed and kind of

11:36:09   7   depressed, and my mom got a little concerned and she

11:36:12   8   took me to a counselor, a psych counselor, and so I talk

11:36:17   9   and we talk, and whatever they prescribed me some

11:36:20   10  medications and, you know, just keeping treatment and a

11:36:26   11  few months later or a year later I move on with my wife

11:36:31   12  and, like I said, I found a different girlfriend and I

11:36:34   13  moved on from that chapter in my life.

11:36:37   14     Q.  So, I understand, did you say breakdown?  Did you

11:36:40   15  mean break up?

11:36:41   16     A.  Pretty much.

11:36:42   17     Q.  You had a girlfriend in Puerto Rico, and you two

11:36:45   18  broke up and you took it a little hard?

11:36:47   19     A.  Yes, it was kind of hard.  That time I was young

11:36:51   20  to 15, 16 years old, I remember.

11:36:53   21     Q.  And your mom was concerned and she brought you to

11:36:56   22  a doctor?

11:36:56   23     A.  Yes, my mom did.

11:36:57   24     Q.  And you were sad you had depression for a while?

11:37:01   25     A.  Yes.

A-2159

80

```
          1              J. ORTIZ - DX BY MR. FELLE
11:37:01  2       Q.  Did you get better?
11:37:02  3       A.  Between treatment, they gave me medication and
11:37:06  4   counseling, and, yeah, I was better a few months later,
11:37:10  5   how you say that I move on, let's put it like that.
11:37:15  6       Q.  When you came here in the U.S. in the spring of
11:37:18  7   2004, were you doing well then?
11:37:20  8       A.  Yes.
11:37:22  9       Q.  Okay.  You weren't seeing any doctors then,
11:37:25 10   right?
11:37:26 11       A.  No.
11:37:26 12       Q.  You weren't taking any medications then?
11:37:28 13       A.  No.
11:37:29 14       Q.  And you talked about your mom passing away.  I
11:37:40 15   assume, how did that affect you?
11:37:42 16       A.  Well, when my mom passed away, I was, she passed
11:37:49 17   away, nobody was suspecting, you know.  She got
11:37:53 18   diagnosed with cancer, you know, and pretty much after 3
11:37:57 19   and a half months after she got diagnosed with cancer
11:38:00 20   she passed away.  So, it was hard.  It was very hard.
11:38:04 21   Especially me, I was young when my mom passed away and
11:38:08 22   stuff.  So you can say that after my mom passed away, I
11:38:13 23   became very depressed.  I became, we was -- it was hard,
11:38:24 24   it was very hard.
11:38:30 25       Q.  I'm going to turn you to another subject to get
```

A-2160

81

|       |    | J. ORTIZ - DX BY MR. FELLE |
|-------|----|----|
| 11:38:33 | 2 | your head somewhere else.  Now, when you told us you |
| 11:38:36 | 3 | were looking for work in the U.S. for those months |
| 11:38:39 | 4 | before the arrest occurred, did you tell us you were |
| 11:38:42 | 5 | unsuccessful in finding any work? |
| 11:38:44 | 6 | A.  Yes. |
| 11:38:45 | 7 | Q.  And you were living with your uncle, correct? |
| 11:38:48 | 8 | A.  Yes. |
| 11:38:48 | 9 | Q.  And were you contributing based on the money that |
| 11:38:54 | 10 | your father gave you for the house and things like that? |
| 11:38:57 | 11 | A.  Yes. |
| 11:38:57 | 12 | Q.  And you were actively looking for work? |
| 11:39:00 | 13 | A.  Yes. |
| 11:39:00 | 14 | Q.  And with respect to your cousin working as a bus |
| 11:39:03 | 15 | aide for the City of Buffalo, was she trying to help you |
| 11:39:07 | 16 | to get a job there? |
| 11:39:08 | 17 | A.  Yes. |
| 11:39:08 | 18 | Q.  And was she actively trying to get you a job |
| 11:39:12 | 19 | there when you were arrested? |
| 11:39:13 | 20 | A.  Say it one more time, I don't understand the |
| 11:39:16 | 21 | question. |
| 11:39:16 | 22 | Q.  I guess what I was saying, were you still hopeful |
| 11:39:19 | 23 | you could get the job when this all happened, when you |
| 11:39:22 | 24 | got arrested? |
| 11:39:23 | 25 | A.  Yes. |

1          J. ORTIZ - DX BY MR. FELLE

11:39:29  2      Q.  Now, you told us a little bit, but I want to be

11:39:37  3  clear, back in November of 2005, did you speak much, if

11:39:41  4  any, English?

11:39:43  5      A.  No, no, I was -- I was pretty much, you know, my

11:39:50  6  first language is Spanish, so, and in Puerto Rico,

11:39:54  7  everybody speaks Spanish.  Not a lot of people speak

11:39:57  8  English.  So I never -- they do teach you English in

11:40:00  9  school, but my English was not very good.  You know, I

11:40:03  10  was not able to speak, understand, or write English back

11:40:07  11  in 2004.

11:40:08  12      Q.  But did you know some of the basic phrases like,

11:40:12  13  hello and goodbye, some basic phrases to help you get

11:40:16  14  by?

11:40:16  15      A.  Yes.

11:40:17  16      Q.  And you were here for roughly six months from,

11:40:20  17  we'll say, May, as you said, until November, were you

11:40:23  18  picking up on some English at least at that point?

11:40:26  19      A.  No, not really.

11:40:27  20      Q.  Okay.  And if speaking English was difficult, was

11:40:36  21  reading English difficult?

11:40:38  22      A.  Yes.  Like I said, I don't understand English at

11:40:49  23  all, reading or talking.

11:40:50  24      Q.  And I want to bring your attention to what's at

11:40:56  25  issue in this case.  And I want to bring you to a date

A-2162

83

|  |  |
|---|---|
| 1 | J. ORTIZ - DX BY MR. FELLE |
| 11:40:59 2 | of November 15th of 2004.  And I want to first ask you, |
| 11:41:06 3 | on November 15th, 2004, the investigation file says that |
| 11:41:12 4 | you went to a police officer.  Do you recall going to a |
| 11:41:14 5 | police officer on that date? |
| 11:41:16 6 | MR. RUSS:  Objection. |
| 11:41:17 7 | A.  No, I don't. |
| 11:41:18 8 | THE COURT:  Wait a minute.  There is an |
| 11:41:19 9 | objection.  Sustained.  You can't cite from a file that |
| 11:41:23 10 | is not in evidence.  You can ask him the question, but |
| 11:41:26 11 | you can't cite a document that is not in evidence as |
| 11:41:29 12 | part of your question. |
| 11:41:30 13 | MR. FELLE:  Your Honor, I think by |
| 11:41:34 14 | stipulation, I'm going to ask that we introduce the |
| 11:41:38 15 | arrest, actually, Your Honor.  May I ask for a brief |
| 11:41:43 16 | continuance without the jury? |
| 11:41:44 17 | THE COURT:  No. |
| 11:41:45 18 | MR. FELLE:  Then I would like to move into |
| 11:41:47 19 | evidence the investigation filed with Buffalo City |
| 11:41:50 20 | Police regarding the arrest of Mr. Ortiz. |
| 11:41:51 21 | THE COURT:  Any objection? |
| 11:41:53 22 | MR. RUSS:  Yes, Your Honor.  I do object. |
| 11:41:54 23 | THE COURT:  Okay.  Then you're going to have |
| 11:41:56 24 | to lay the foundation for it, Mr. Felle, or move on with |
| 11:41:59 25 | your questioning. |

1          J. ORTIZ - DX BY MR. FELLE

11:42:06  2     Q.  Mr. Ortiz, do you recall going to the police on

11:42:10  3  that day?

11:42:11  4     A.  No, I don't.

11:42:12  5     Q.  Before that date, do you recall a day that the

11:42:17  6  Camacho brothers, Nelson or Miguel Camacho, were

11:42:22  7  murdered?

11:42:22  8     A.  Do you say if I recall?

11:42:24  9     Q.  Do you recall that time frame?  Do you remember

11:42:27  10  that it was November 11th, 2004?  Do you recall knowing

11:42:30  11  about that event?

11:42:31  12     A.  Well, I remember that I think I saw them on the

11:42:36  13  news or something like that the very next day.

11:42:40  14     Q.  And what do you recall thinking when you saw that

11:42:42  15  on the news, if anything?

11:42:45  16     A.  Well, I just, you know, I think that was just

11:42:49  17  messed up, whoever they killed and whatever, nobody

11:42:53  18  deserves to die like that, you know.

11:42:55  19     Q.  And at that time, you knew the Camacho brothers,

11:42:59  20  right?

11:42:59  21     A.  Yes, we met.  I used to, like, every weekend, I

11:43:03  22  used to go to the Famous Corner, that is like a bar in

11:43:07  23  Buffalo, and that is how we met.  It's like a Spanish

11:43:10  24  bar back then.

11:43:11  25     Q.  And when you say you met, is that the extent of

A-2164

|         | 1  | J. ORTIZ - DX BY MR. FELLE |

11:43:13  2  how you knew them, you would see them at the bar?

11:43:16  3      A.   Yeah, I used to see them at the bar, yes.

11:43:18  4      Q.   Other than the bar, would you see them?

11:43:20  5      A.   No.

11:43:21  6      Q.   Would you consider them friends?

11:43:22  7      A.   No.

11:43:23  8      Q.   So between November 11th and November 15th, can

11:43:38  9  you recall anything else you may have learned about the

11:43:42  10  Camacho brothers' murders?

11:43:44  11      A.   No.

11:43:44  12      Q.   Do you recall on the 15th talking to a Detective

11:43:52  13  Mark Lauber?

11:43:53  14      A.   No.

11:43:54  15      Q.   Do you recall telling Officer Lauber that

11:43:59  16  somebody was trying to kill you?

11:44:08  17      A.   No.

11:44:16  18      Q.   Do you recall taking an ambulance that Officer

11:44:19  19  Lauber called to Buffalo General Hospital on the 15th of

11:44:22  20  November?

11:44:23  21      A.   No.

11:44:25  22      Q.   Do you recall, as you testify today, who you

11:44:31  23  think was trying to kill you, what you were thinking at

11:44:35  24  that time?

11:44:35  25      A.   I know I was feeling scared and anxious and I was

A-2165

86

```
        1            J. ORTIZ - DX BY MR. FELLE

11:44:39   2   hearing voices.  I'm pretty sure I never experienced

11:44:42   3   that in my life, so I was kind of scared.  And I know I

11:44:46   4   used to hear things, like see things, where they are not

11:44:49   5   used to be at, and stuff like that, and hear voices and

11:44:53   6   stuff.  It was not some, not normal stuff.

11:44:57   7       Q.  Do you recall -- when did that start?

11:44:59   8       A.  I would like to say like around -- well, when I

11:45:13   9   regained consciousness, I was at ECMC.  I can't tell you

11:45:19  10   exactly when they start.  I remember seeing all that

11:45:22  11   stuff and experiencing that thing, it was my first time

11:45:25  12   experiencing all that so aggressive like that.  I never

11:45:28  13   in my life experienced a mental breakdown like that

11:45:32  14   before.

11:45:32  15       Q.  And just so you know, we can understand that.

11:45:35  16   Are you saying from when it started, you don't recall

11:45:39  17   anything after you were in the hospital?

11:45:41  18       A.  Right.  When I regained back consciousness, I was

11:45:45  19   in the Erie County Medical Center.  They got me in the

11:45:50  20   psych unit.  That is when I started regaining back

11:45:53  21   consciousness.

11:45:53  22       Q.  Do you recall when that was?

11:45:56  23       A.  I remember it was snowing outside, but I can't

11:46:01  24   tell exactly what day it was.  But I remember when I

11:46:04  25   looked at the window, it was snowing.
```

A-2166

87

|  | 1 | J. ORTIZ - DX BY MR. FELLE |
| --- | --- | --- |
| 11:46:07 | 2 | Q.  And so that is the first consciousness you can |
| 11:46:10 | 3 | recall after recovering.  What is the last thing you can |
| 11:46:14 | 4 | remember before becoming very ill? |
| 11:46:21 | 5 | A.  Well, the last thing I barely can recall was it |
| 11:46:27 | 6 | was like being at my cousin's house, Vanessa, my cousin. |
| 11:46:32 | 7 | And, you know, just talking and whatever, and then I |
| 11:46:34 | 8 | just started feeling, I started feeling paranoid, and I |
| 11:46:38 | 9 | started like hearing voices and seeing some things.  It |
| 11:46:41 | 10 | was something, something abnormal, like I said, I never |
| 11:46:46 | 11 | experienced anything like that before, so I was scared |
| 11:46:49 | 12 | or something, I don't know.  If it was something like |
| 11:46:52 | 13 | from another world, like I said, I never experienced |
| 11:46:55 | 14 | something like that before. |
| 11:46:56 | 15 | Q.  And after having felt that way that you just |
| 11:46:59 | 16 | described, are you telling us that from there on until |
| 11:47:03 | 17 | you recovered in Erie County Medical Center that you |
| 11:47:06 | 18 | don't recall anything? |
| 11:47:11 | 19 | A.  No. |
| 11:47:11 | 20 | MR. RUSS:  I'm going to object to the |
| 11:47:13 | 21 | leading. |
| 11:47:13 | 22 | THE COURT:  I'll allow it for purposes of |
| 11:47:17 | 23 | answering the question.  Go ahead.  You can answer the |
| 11:47:22 | 24 | question. |
| 11:47:23 | 25 | A.  No, I don't remember. |

A-2167

88

1                    J. ORTIZ - DX BY MR. FELLE

11:47:24   2       Q.  I want to clarify something at this time.  You do

11:47:28   3   recall seeing something on the news that the Camacho

11:47:31   4   brothers were murdered, correct?

11:47:32   5       A.  Yes.

11:47:33   6       Q.  And you told us that you remember feeling nobody

11:47:36   7   should die that way.  Is that what you said?

11:47:39   8       A.  Right.

11:47:39   9       Q.  And let me ask you this, when you saw that on the

11:47:43   10  news, did you have any doubt you were not involved in

11:47:45   11  that crime?

11:47:46   12      A.  I was not involved in that crime.

11:47:49   13              THE COURT:  Hold on a second, go ahead.

11:47:51   14      A.  I was not involved in the crime.  I wasn't there,

11:47:54   15  so I have nothing to do with those murders.

11:47:58   16      Q.  Now, the Camacho brothers, there was a funeral

11:48:02   17  held for them on the 16th of November.  Do you recall

11:48:05   18  going to that funeral?

11:48:12   19      A.  Well, very little.  My cousin said that is when

11:48:16   20  they came to see me at the county jail, my cousin and

11:48:20   21  her boyfriend said we went to the funeral, the Camacho

11:48:24   22  funeral.

11:48:25   23              MR. RUSS:  Objection.

11:48:25   24              THE COURT:  Sustained.  Ladies and

11:48:27   25  gentlemen, I'll ask you to withdraw that.  You can't

|  | 1 | J. ORTIZ - DX BY MR. FELLE |
| 11:48:29 | 2 | talk about what somebody else told you.  The question is |
| 11:48:33 | 3 | whether or not you remember going to the funeral on the |
| 11:48:35 | 4 | 16th. |
| 11:48:36 | 5 | THE WITNESS:  No. |
| 11:48:52 | 6 | Q.  Do you remember anything about Buffalo General |
| 11:48:54 | 7 | Hospital and being there on the 15th of November? |
| 11:48:57 | 8 | A.  No. |
| 11:48:57 | 9 | Q.  Do you recall speaking to a number of detectives |
| 11:49:02 | 10 | who came to Buffalo General Hospital to speak with you? |
| 11:49:04 | 11 | A.  No. |
| 11:49:12 | 12 | Q.  Do you remember, most importantly, ever speaking |
| 11:49:17 | 13 | to a Detective Stambach at the Buffalo Police Major |
| 11:49:22 | 14 | Crimes Unit on the 16th of November? |
| 11:49:24 | 15 | A.  I don't remember. |
| 11:49:29 | 16 | Q.  If Mr. Stambach was in this room right now, would |
| 11:49:32 | 17 | you be able to tell us what he looked like? |
| 11:49:39 | 18 | A.  No, I don't remember his face like that, no. |
| 11:49:50 | 19 | Q.  Do you remember on the 16th of November going up |
| 11:49:56 | 20 | to a police officer, a police officer and telling him |
| 11:50:06 | 21 | that you had information about those homicides, about |
| 11:50:08 | 22 | the Camacho brothers? |
| 11:50:09 | 23 | A.  No, I don't recall. |
| 11:50:11 | 24 | Q.  Do you remember telling police officers at |
| 11:50:14 | 25 | Buffalo General Hospital on the 15th that you had some |

A-2169

90

|      |    |                                                      |
|------|----|------------------------------------------------------|
|          | 1  | J. ORTIZ - DX BY MR. FELLE                       |
| 11:50:20 | 2  | information about who the murderers were?        |
| 11:50:22 | 3  | A.  No.                                          |
| 11:50:24 | 4  | Q.  Do you have any information or did you have any |
| 11:50:26 | 5  | information about who the murderers were?        |
| 11:50:29 | 6  | A.  No, I don't, because like I said, I'm not    |
| 11:50:31 | 7  | involved, I don't know who killed those people and I |
| 11:50:34 | 8  | have nothing to do with it.                      |
| 11:50:37 | 9  | Q.  And so when -- when you saw that police officer |
| 11:50:49 | 10 | on the 16th, did you tell him that you wanted to confess |
| 11:50:52 | 11 | to the murders?                                  |
| 11:50:53 | 12 | A.  That is what they say.  But I don't remember |
| 11:50:56 | 13 | exactly how I'm going to confess when I'm an innocent |
| 11:51:00 | 14 | man, I didn't kill nobody.                       |
| 11:51:02 | 15 | Q.  Do you recall a police officer by the name of |
| 11:51:10 | 16 | Torres, who spoke Spanish?  Do you remember seeing him |
| 11:51:14 | 17 | at all?                                          |
| 11:51:14 | 18 | A.  No, I'm pretty sure around that time, I had |
| 11:51:21 | 19 | experienced my first psychotic breakdown with reality, |
| 11:51:25 | 20 | which I can barely explain.  It was crazy stuff, man.  I |
| 11:51:29 | 21 | used to hear things, see things, feel like people were |
| 11:51:33 | 22 | behind me and try to hurt me or kill me.  It was some |
| 11:51:36 | 23 | crazy stuff.  Like I said, I never experienced something |
| 11:51:40 | 24 | like that in my life.  That was my first breakdown with |
| 11:51:44 | 25 | reality.                                         |

|   |   |
|---|---|
| | J. ORTIZ - DX BY MR. FELLE |
| 11:51:44 | 2 |

1          J. ORTIZ - DX BY MR. FELLE

11:51:44   2      Q.   Let me ask you something.  Your family in Puerto

11:51:49   3   Rico, you told us that your older brother is a paramedic

11:51:52   4   and your middle brother was a police officer.  Were you

11:51:55   5   taught in your home that if you needed help, you should

11:51:58   6   turn to a police officer?

11:51:59   7      A.   Yes.

11:51:59   8      Q.   And when you were very sick here in the U.S., did

11:52:02   9   you still continue to believe that you could turn to a

11:52:04  10   police officer for help?

11:52:06  11      A.   Yes.

11:52:09  12      Q.   Do you recall being arrested on November 16th?

11:52:12  13      A.   No.

11:52:12  14      Q.   Do you recall being given a Big Mac and fries and

11:52:18  15   a soda?

11:52:19  16      A.   No.

11:52:29  17      Q.   Now, you've come to realize, since you've gotten

11:52:33  18   better, that Detective Stambach said you signed a

11:52:37  19   confession to that murder, correct?

11:52:39  20           MR. RUSS:  Your Honor, I object.

11:52:41  21           THE COURT:  Overruled.

11:52:42  22      A.   Can you repeat the question?

11:52:44  23      Q.   Sure.  You told us earlier in your testimony that

11:52:46  24   you recall getting better or at least regaining some

11:52:50  25   consciousness while at ECMC, correct?

A-2171

92

|  | J. ORTIZ - DX BY MR. FELLE |
| --- | --- |
| 11:52:53  2 | A. Yes. |
| 11:52:53  3 | Q. And upon getting better, did you question why you |
| 11:52:58  4 | were in handcuffs, why you were an inmate in jail? |
| 11:53:02  5 | A. Well, I mean, I was thinking about it, I wasn't |
| 11:53:05  6 | like what am I doing here, you know. And I did ask the |
| 11:53:10  7 | doctor, I believe his name was doctor -- I forgot his |
| 11:53:14  8 | name, Liebergall -- I think that was his name. He was |
| 11:53:23  9 | the doctor that used to see me at the ECMC. And then |
| 11:53:27  10 | when I went back to the holding center, it was him and |
| 11:53:29  11 | Dr. Coggins who saw me, too, and I asked him why I'm |
| 11:53:33  12 | here and he pretty much told me that. |
| 11:53:35  13 | MR. RUSS: Your Honor, I object. |
| 11:53:38  14 | THE COURT: Why don't you stop. You said |
| 11:53:40  15 | you asked him why you were there. And let's not say |
| 11:53:43  16 | what Dr. Coggins told you. |
| 11:53:45  17 | Q. And then through discussions with others, did you |
| 11:53:48  18 | come to realize that you had been arrested for those |
| 11:53:51  19 | murders of the Camacho brothers? |
| 11:53:52  20 | A. After I come, some days after that is when I |
| 11:53:57  21 | realized I was in custody for the murder of the Camacho |
| 11:54:00  22 | brothers, yes. |
| 11:54:01  23 | Q. And having been an arrested person, did you have |
| 11:54:06  24 | an attorney? |
| 11:54:07  25 | A. Back then, yeah, my attorney was Johnny Torino |

A-2172

93

```
          1                J. ORTIZ - DX BY MR. FELLE
11:54:13  2    and Betty Calvo-Torres.  Which Ms. Betty Calvo-Torres
11:54:18  3    used to be like my attorney plus interpreter because
11:54:22  4    back then in 2004, I wasn't able to speak English or
11:54:25  5    understand it like that.
11:54:26  6        Q.  Okay.  And were those assigned counsel attorneys
11:54:31  7    or they appointed to you as attorneys defense?
11:54:34  8        A.  Yes.  I think the Court appointed to me, yes.
11:54:37  9        Q.  Okay.  And through your discussions with the
11:54:41  10   attorneys, did you come to realize that Buffalo police
11:54:45  11   and particularly Mr. Stambach was claiming that you
11:54:48  12   signed a confession?
11:54:49  13       A.  That is what my attorneys told me, yes.
11:55:03  14       Q.  And did you have discussions with your attorney
11:55:08  15   back then about what the confession meant?
11:55:12  16       A.  Well, I remember Ms. Betty Calvo-Torres, as I
11:55:19  17   said, she was an interpreter.  So every time that Mr.
11:55:26  18   Johnny came to see me, they never gave me some good
11:55:29  19   news, because like I said, Ms. Betty Calvo-Torres was my
11:55:34  20   interpreter, every time speaking she would tell me in
11:55:37  21   Spanish.  But pretty much what they were saying was that
11:55:40  22   a fair confession that I gave, it was a detailed
11:55:43  23   confession and if I was to go to trial, I was going to
11:55:47  24   lose and spend the rest of my life in prison and I would
11:55:49  25   never get out of prison and that is what Mr. Torino told
```

94

                        J. ORTIZ - DX BY MR. FELLE

11:55:54    2    me.

11:55:54    3        Q.   So your attorneys explained to you and you

11:55:56    4    understood that the charges you were facing would result

11:55:59    5    or could result in a life sentence if you were

11:56:03    6    convicted, correct?

11:56:03    7        A.   That is what my attorneys told me, yes.

11:56:05    8        Q.   And did you tell your attorneys you were

11:56:08    9    innocent?

11:56:08   10        A.   I did tell both of them Betty Calvo-Torres and

11:56:14   11    Johnny Torino.

11:56:15   12        Q.   And notwithstanding, through those institutions

11:56:18   13    with your attorneys, why would they tell you to take a

11:56:22   14    plea, did they?

11:56:23   15        A.   Well, that is my attorney, like I said Mr. Johnny

11:56:28   16    Torino told me if I was not going to get a successful

11:56:32   17    trial, if I was going to go to trial, I was going to

11:56:35   18    lose my trial and spend the rest of my life in prison so

11:56:38   19    they give me a period of time to -- I remember the first

11:56:41   20    offer was 30 to life and the second offer was 25 to life

11:56:45   21    and the third offer was 20 flat and the last offer, I

11:56:52   22    believe was 25 flat.  And I remembered that I talked to

11:56:55   23    my family in Puerto Rico and they were talking back and

11:56:58   24    forth by the phone and they pretty much told me well you

11:57:02   25    just got to realize if you lose you're never going to

A-2174

95

J. ORTIZ - DX BY MR. FELLE

11:57:05  2    get out of prison.  That is what they were telling me.

11:57:08  3    I understand that you pretty much locked up by yourself

11:57:12  4    but you got to realize too, that is what they were

11:57:15  5    telling me.  So I talked to my lawyer and down like two

11:57:19  6    and a half weeks getting sentencing I called him and

11:57:22  7    talked to him that I would like to withdraw my guilty

11:57:25  8    plea because I don't want to plead guilty, I was an

11:57:27  9    innocent man.  So the day of my sentence, my lawyer told

11:57:32  10   the judge that my -- his client, which is me, would like

11:57:35  11   to go to trial.  Because, you know, whatever the case

11:57:39  12   may be, the judge said he denied the request because

11:57:44  13   it's not a strong ground, you know, grant it what my

11:57:51  14   lawyer was saying and they decided today to sentence me.

11:57:53  15       Q.  I just want to break that down a little bit.  You

11:57:56  16   talked about a long period of time.  So we were

11:57:59  17   initially talking about your plea and you said that you

11:58:02  18   talked to your attorneys, and you understood that the

11:58:04  19   option was that if you went to trial, you could face

11:58:09  20   life in jail, correct?

11:58:09  21       A.  Correct.

11:58:10  22       Q.  And you also understood that because there was

11:58:13  23   what you called a detailed confession that it was likely

11:58:16  24   that you would be convicted, correct?

11:58:18  25       A.  Correct.

A-2175

96

|   |   |
|---|---|
| 1 | J. ORTIZ - DX BY MR. FELLE |
| 11:58:18  2 | Q.  And based on that, did your attorneys tell you |
| 11:58:21  3 | that you should take the plea? |
| 11:58:23  4 | A.  Yes, that is what they advise me, yes.  Every |
| 11:58:26  5 | time they come to see me in the holding center that is |
| 11:58:29  6 | what they advise me to take a plea. |
| 11:58:32  7 | Q.  Even though you told them you were innocent? |
| 11:58:35  8 | A.  Yes. |
| 11:58:47  9 | Q.  And because of what they were telling you your |
| 11:58:51  10 | attorneys were telling you and trying to convince you |
| 11:58:54  11 | did you feel you had any options to take the plea? |
| 11:58:57  12 | A.  I felt as though I was powerless and hopeless.  I |
| 11:59:01  13 | really had no other options.  My only option was to |
| 11:59:04  14 | plead guilty if you realize because like they said in an |
| 11:59:08  15 | unsuccessful trial I was going to lose and go to jail |
| 11:59:14  16 | forever. |
| 11:59:14  17 | Q.  And you did go into court and did take that plea, |
| 11:59:17  18 | didn't you? |
| 11:59:18  19 | A.  I did, yes. |
| 11:59:19  20 | Q.  And you admitted that you did something that you |
| 11:59:21  21 | didn't do, correct? |
| 11:59:22  22 | A.  Even though I was an innocent man, yes, I did. |
| 11:59:26  23 | Q.  But during that time, Dr. Coggins told us you |
| 11:59:30  24 | were telling her you were innocent, correct? |
| 11:59:32  25 | A.  Yes. |

A-2176

97

|   |   |
|---|---|
| | 1 |  J. ORTIZ - DX BY MR. FELLE |
| 11:59:32 | 2 |  Q.  And you were telling your attorneys the same, |
| 11:59:35 | 3 | correct? |
| 11:59:35 | 4 |  A.  Yes. |
| 11:59:35 | 5 |  Q.  And so then you told us what you just testified |
| 11:59:37 | 6 | to, you told us after you took the plea, there was a |
| 11:59:41 | 7 | time that you tried to change your plea of guilty and |
| 11:59:44 | 8 | declare that you were innocent, correct? |
| 11:59:45 | 9 |  A.  Withdraw my guilty plea, yes. |
| 11:59:48 | 10 |  Q.  And you told your attorneys before sentencing |
| 11:59:52 | 11 | that you wanted to withdraw your guilty plea, correct? |
| 11:59:57 | 12 |  A.  Yes, I did. |
| 11:59:58 | 13 |  Q.  And did they make that application to the judge? |
| 12:00:01 | 14 |  A.  My lawyer the day of my sentencing my lawyer |
| 12:00:04 | 15 | talked to the judge to argue and you know let him know |
| 12:00:08 | 16 | that I would like to withdraw my guilty plea and go to |
| 12:00:11 | 17 | trial.  But like I said the judge denied the motion |
| 12:00:14 | 18 | because he said like it was not a strong ground or |
| 12:00:17 | 19 | strong point to you know adjourn the sentencing so they |
| 12:00:20 | 20 | decided to sentence me that day. |
| 12:00:26 | 21 |  Q.  Somebody determined that the fact that you were |
| 12:00:28 | 22 | innocent was not a good grounds to withdraw your plea? |
| 12:00:32 | 23 |  A.  Can you repeat the question? |
| 12:00:33 | 24 |  Q.  Sure, you were looking to change your plea from |
| 12:00:37 | 25 | guilty to not guilty based on your actual innocence, |

A-2177

98

```
        1              J. ORTIZ - DX BY MR. FELLE
12:00:39  2   correct?
12:00:40  3        A.   Correct.
12:00:40  4        Q.   And yet that was denied, correct?
12:00:42  5        A.   Correct.
12:00:43  6        Q.   And your attorneys brought that up at sentencing
12:00:45  7   but the judge refused to allow you to change your plea;
12:00:48  8   is that true?
12:00:49  9        A.   That's true, correct.
12:00:50 10        Q.   And was that Judge D'Amico?
12:00:53 11        A.   I believe so, yes, Michael D'Amico, I think that
12:00:57 12   is his name.
12:00:58 13        Q.   So you go to sentencing and you can tell me this.
12:01:00 14   When you went to sentencing, you anticipated that your
12:01:04 15   attorneys would try and change the plea to innocent,
12:01:06 16   correct?
12:01:07 17        A.   Correct.
12:01:07 18        Q.   They tried but the judge refused, correct?
12:01:10 19        A.   That's correct.
12:01:11 20        Q.   And then you were sentenced to jail, correct?
12:01:14 21        A.   Yes.
12:01:14 22        Q.   And what was the sentence?
12:01:16 23        A.   It was 25 years.
12:01:18 24        Q.   That of the agreed upon plea, correct?
12:01:21 25        A.   Yes.
```

|        | 1  | J. ORTIZ - DX BY MR. FELLE |
|--------|----|-----|

12:01:24  2      Q.  And after that, you were shipped off to prison,

12:01:27  3   correct?

12:01:27  4      A.  Yeah, that is correct, yes.

12:01:30  5              THE COURT:  Mr. Felle, I'm going to take a

12:01:32  6   lunch break, so, why don't we, unless you had a question

12:01:37  7   to follow up on that was related to that issue.

12:01:40  8              MR. FELLE:  No, I can resume.

12:01:42  9              THE COURT:  Okay.  Ladies and gentlemen,

12:01:44  10  we're going to take an hour lunch break.  Please plan to

12:01:47  11  be back here at 1:00 o'clock and one point I wanted to

12:01:50  12  mention to you.  I know when I was giving you the

12:01:53  13  schedule yesterday, I had indicated that Wednesday, May

12:01:57  14  11th, we would only be in session in the afternoon.

12:02:00  15  Now, I don't know where things are going to stand with

12:02:02  16  the trial at that point, but it could be that you would

12:02:05  17  be involved in deliberations at that point.  And if so I

12:02:09  18  wanted to explore whether or not you were available in

12:02:11  19  the morning as well.  So just give that some thought and

12:02:15  20  let Dawn know if there are any issues of us going for a

12:02:19  21  more full day on May 11th, and if there aren't then

12:02:24  22  we'll stick with the initial schedule but I wanted to

12:02:27  23  raise that as a possibility.  With that being said, have

12:02:30  24  a good lunch.  Don't talk about the case among

12:02:32  25  yourselves or with anybody else and see you back here

A-2179

100

```
          1                    J. ORTIZ - DX BY MR. FELLE

12:02:36   2    after lunch.  Thank you, everybody.

12:02:41   3                    (Whereupon the jury is escorted from the

12:02:43   4    courtroom.)

12:02:44   5                    THE COURT:  And then once the jury steps out

12:02:46   6    Mr. Ortiz, you can step down.

12:02:49   7                    THE WITNESS:  Okay.  Good now, Your Honor?

12:03:03   8                    THE COURT:  Yes.  I think I told you during

12:03:05   9    one of the pretrial conferences but if not my general

12:03:09  10    rule is one redirect and one recross if there is an

12:03:12  11    application to do something further than that let me

12:03:14  12    know but that is my general practice.  Everybody have a

12:03:17  13    good lunch and we'll see you back here at 1:00 o'clock.

12:03:21  14                    MR. RUSS:  Do you have further proceedings?

12:03:23  15                    THE COURT:  I think they are mostly by Zoom.

12:03:26  16                    We have one defendant coming in person, so.

12:03:32  17                    (Whereupon, there was a break in the

12:03:39  18    proceedings.)

12:03:39  19                    THE COURT:  Also, with respect, I don't

12:03:40  20    think we're going to get to a 4th witness today.  I

12:03:43  21    don't think there is any need to have the 4th witness.

12:03:51  22                    MR. SAHASRABUDHE:  I'll call him.  He may be

12:03:53  23    on route already.  I'll give him a call.

12:03:56  24                    THE COURT:  But the third witness who was

12:03:58  25    definitely going to be put on is who, after Mr. Ortiz?
```

```
          1              J. ORTIZ - DX BY MR. FELLE
12:04:03  2              MR. FELLE:  Lonergan.
12:04:05  3              MR. SAHASRABUDHE:  And he is on his way, so.
12:04:08  4              THE COURT:  Thank you.
12:04:10  5              MR. FELLE:  I misunderstood.  Do you need
12:04:12  6     the desks?
12:04:13  7              THE COURT:  I don't need that one.  I do
12:04:15  8     need that one though.
12:04:15  9              (Whereupon, there was a break in the
12:04:15  10    proceedings.)
13:05:31  11             THE COURT:  We're back on the record.  Mr.
13:05:32  12    Felle and Mr. Ortiz are here on behalf of the Plaintiff,
13:05:35  13    and Mr. Russ and Mr. Sahasrabudhe are here on behalf of
13:05:38  14    the defense.  I understand that both Mr. Vaughn and Mr.
13:05:44  15    Lonergan are here and ready to testify.  I guess my
13:05:53  16    first question is, Mr. Felle, how much longer do you
13:05:57  17    think you have with Mr. Ortiz's direct?
13:06:00  18             MR. FELLE:  Roughly about 20 minutes.
13:06:02  19             THE COURT:  Ballpark figure on how long you
13:06:04  20    think the cross is going to be.
13:06:08  21             MR. RUSS:  Half an hour-ish.
13:06:12  22             THE COURT:  So, that will take us to at
13:06:15  23    least 2:00 o'clock, and then in terms of witness order,
13:06:20  24    well, regardless of that, how long do you think Mr.
13:06:25  25    Lonergan is going to be?
```

A-2181

```
              1            J. ORTIZ - DX BY MR. FELLE
13:06:28      2            MR. FELLE:  I had Lonergan to be at 1:00
13:06:30      3    o'clock and I expected him to be an hour, hour and a
13:06:34      4    half, but I wasn't sure if the medical condition looks
13:06:37      5    to be fine.
13:06:38      6            MR. SAHASRABUDHE:  Ready to go.
13:06:39      7            THE COURT:  You want Lonergan to testify
13:06:41      8    before Vaughn and you think he is going to be an hour
13:06:44      9    and hour and a half.  How long do you think Vaughn would
13:06:48     10    be?
13:06:48     11            MR. FELLE:  I think pretty quick.  I think
13:06:50     12    we could take him here as long as he is here.
13:06:53     13            THE COURT:  A possibility is we could
13:06:56     14    interrupt Mr. Ortiz's direct with Mr. Vaughn and Mr.
13:07:02     15    Lonergan's testimony and return to Mr. Ortiz's
13:07:07     16    testimony, maybe even potentially tomorrow depending on
13:07:11     17    how long we take.
13:07:16     18            MR. FELLE:  I'm amenable to that, Your
13:07:18     19    Honor.  I'm a little less prepared but I could do that.
13:07:23     20    I would take Detective Lonergan first.
13:07:26     21            THE COURT:  What about from the defense
13:07:28     22    perspective?
13:07:28     23            MR. RUSS:  I think it's a good idea, Your
13:07:31     24    Honor, essentially since both witnesses came from
13:07:37     25    Buffalo.  One had to rent a car because his car broke
```

A-2182

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | J. ORTIZ - DX BY MR. FELLE                             |
| 13:07:40 | 2  | and if we could accommodate them.                      |
| 13:07:43 | 3  | THE COURT:  And I'll explain to the jury for           |
| 13:07:46 | 4  | scheduling purposes, we'll interrupt Mr. Ortiz's direct|
| 13:07:50 | 5  | testimony and return to it either later today or       |
| 13:07:52 | 6  | tomorrow morning depending on how far we get.  So you  |
| 13:07:56 | 7  | want Mr. Vaughn to testify first, right?               |
| 13:07:59 | 8  | MR. FELLE:  Yes, Your Honor.  At this point,           |
| 13:08:00 | 9  | I would like to suggest or state to the court that I   |
| 13:08:04 | 10 | intended to treat both witnesses as adverse witnesses. |
| 13:08:08 | 11 | They are both parts of the Buffalo Police Department.  |
| 13:08:13 | 12 | THE COURT:  I don't think there is a need to           |
| 13:08:14 | 13 | lay the foundation for that.  It seems to me they would|
| 13:08:16 | 14 | be hostile witnesses if they had terms of their interest|
| 13:08:19 | 15 | being adverse to the Plaintiffs.                       |
| 13:08:24 | 16 | MR. RUSS:  I agree, Your Honor.  And I have            |
| 13:08:25 | 17 | no objection to them being treated as adverse witnesses.|
| 13:08:30 | 18 | THE COURT:  Fair enough.  That means you can           |
| 13:08:32 | 19 | ask leading questions and that shouldn't draw an       |
| 13:08:34 | 20 | objection.                                             |
| 13:08:35 | 21 | MR. FELLE:  Thank you.  Thank you, Your                |
| 13:08:36 | 22 | Honor.  And then with respect to the exhibits, I mean, |
| 13:08:43 | 23 | there didn't seem to be any disagreement that both     |
| 13:08:46 | 24 | parties have on their trial exhibits the arrest and    |
| 13:08:49 | 25 | booking information Exhibit 3 for the Plaintiff.  Any  |

A-2183

104

|   |   |
|---|---|
| 1 | J. ORTIZ - DX BY MR. FELLE |
| 13:08:54  2 | objection to the admissibility of that? |
| 13:08:58  3 | MR. RUSS:  Sorry.  No objection, Your Honor. |
| 13:09:09  4 | THE COURT:  So Exhibit 3 can be moved in |
| 13:09:13  5 | without objection.  And what other exhibits were you |
| 13:09:15  6 | thinking of using or planning to use with the witnesses? |
| 13:09:20  7 | MR. FELLE:  I think, Plaintiffs treated the |
| 13:09:26  8 | investigation of the Buffalo Police Department which is |
| 13:09:29  9 | Exhibit 7, I believe.  And within that, it contained the |
| 13:09:37 10 | various P73s.  Defense broke that out into individual |
| 13:09:42 11 | exhibits.  I moved earlier for the admission of the |
| 13:09:46 12 | investigation file that was maintained by the Buffalo |
| 13:09:50 13 | Police Department regarding the murder investigation of |
| 13:09:53 14 | the Camacho brothers and there was some I think some |
| 13:09:56 15 | objections to that.  But I guess I would like to move to |
| 13:09:58 16 | admit that that is the center of the case and it's also |
| 13:10:03 17 | been suggested by defendants in their exhibits that they |
| 13:10:05 18 | intend to use those same exhibits. |
| 13:10:07 19 | THE COURT:  So this is Exhibit 7 on the |
| 13:10:09 20 | Plaintiff's list? |
| 13:10:16 21 | MR. FELLE:  Your Honor, I apologize.  It's |
| 13:10:20 22 | 6.  And it's entitled 6 slash 7 only because of the |
| 13:10:26 23 | semantics of how Mr. Pierce disclosed things, the |
| 13:10:30 24 | Buffalo Police Homicide Department. |
| 13:10:31 25 | THE COURT:  I don't understand what exhibit |

A-2184

105

|     |                                                             |
|-----|-------------------------------------------------------------|
|   1 | J. ORTIZ - DX BY MR. FELLE                                  |

13:10:34   2   number it is.

13:10:34   3            MR. FELLE:  6.

13:10:35   4            THE COURT:  6?  What is the defense position

13:10:37   5   on that, Mr. Russ?

13:10:45   6            MR. RUSS:  I'm looking for it in the

13:10:46   7   documents.

13:10:47   8            THE COURT:  I don't either.

13:11:05   9            MR. FELLE:  I think we can call 6, I

13:11:07  10   apologize for that.

13:11:39  11            MR. RUSS:  I guess my position on Exhibit 6

13:11:40  12   is similar to that.  I took the medical exhibits

13:11:44  13   earlier.  I don't have an objection that it's a business

13:11:46  14   record or that any specific items are business records,

13:11:50  15   but, certain portions of them contain hearsay from

13:11:59  16   out-of-court witnesses.  And you know we can redact it,

13:12:10  17   but I don't think that they should go in -- in whole.

13:12:16  18            THE COURT:  All right.  So, what we'll do is

13:12:20  19   we'll do the same thing with the medical records.  If

13:12:22  20   there is a page from Exhibit 6 that you want to

13:12:25  21   introduce, Mr. Russ is not going to require a foundation

13:12:28  22   to be laid for it being a business record, correct?

13:12:32  23            MR. RUSS:  Yes, correct, Your Honor.

13:12:33  24            THE COURT:  But if there is hearsay in

13:12:35  25   there, then there is going to be an action objection and

A-2185

106

| | |
|---|---|
| 1 | J. ORTIZ - DX BY MR. FELLE |
| 13:12:42  2 | we'll have to deal with that.  So that is not being |
| 13:12:44  3 | stipulated in.  I mean if the defendant marked these as |
| 13:12:52  4 | exhibits on his exhibit list, what is your position on |
| 13:12:58  5 | the admissibility of those exhibits? |
| 13:13:01  6 | MR. RUSS:  Well, we did not mark the entire |
| 13:13:03  7 | file. |
| 13:13:03  8 | THE COURT:  Right.  But if I'm just |
| 13:13:05  9 | wondering if a work-around to this is to admit and I |
| 13:13:11  10 | don't know I don't know if Mr. Felle is amenable to it, |
| 13:13:13  11 | but to admit the portions of the file that have been |
| 13:13:16  12 | marked as Defense Exhibits. |
| 13:13:19  13 | MR. RUSS:  That is a work-around if |
| 13:13:22  14 | acceptable to the Plaintiff, Your Honor. |
| 13:13:24  15 | THE COURT:  Mr. Felle? |
| 13:13:28  16 | MR. FELLE:  I guess I didn't look at it in a |
| 13:13:30  17 | global context to know how much of what they've |
| 13:13:33  18 | suggested of their exhibits and what is in the total to |
| 13:13:36  19 | say yes or no.  But for the sake of getting through |
| 13:13:40  20 | those witnesses, I would agree just to use those |
| 13:13:44  21 | particular P73s that the defense has disclosed on their |
| 13:13:50  22 | trial exhibit list and including the two P73s from |
| 13:13:55  23 | Detective Vaughn we're going to start with him.  Do you |
| 13:13:58  24 | agree with that? |
| 13:13:59  25 | MR. RUSS:  Yes. |

A-2186

107

|  | 1 | J. ORTIZ - DX BY MR. FELLE |
| 13:14:00 | 2 | THE COURT:  So we'll use the P73s that are |
| 13:14:03 | 3 | marked as Defendant's Exhibits.  Mr. Felle, the defense |
| 13:14:07 | 4 | is willing to stipulate those in as is Mr. Felle and |
| 13:14:11 | 5 | those can be used for the examination of the witness. |
| 13:14:13 | 6 | Am I stating that correctly? |
| 13:14:15 | 7 | MR. RUSS:  Yes, Your Honor. |
| 13:14:17 | 8 | MR. SAHASRABUDHE:  Yes.  And so 402 and 408, |
| 13:14:20 | 9 | I believe are the two P73s that Detective Vaughn |
| 13:14:28 | 10 | created. |
| 13:14:29 | 11 | THE COURT:  Did I state that correctly, Mr. |
| 13:14:31 | 12 | Felle? |
| 13:14:33 | 13 | MR. SAHASRABUDHE:  If you want to look at |
| 13:14:34 | 14 | this copy. |
| 13:14:40 | 15 | MR. FELLE:  Do you have a copy of that that |
| 13:14:42 | 16 | I can use? |
| 13:14:44 | 17 | THE COURT:  You can use the Court's copy if |
| 13:15:23 | 18 | you want. |
| 13:15:23 | 19 | MR. FELLE:  November 15th is which exhibit |
| 13:15:25 | 20 | for the defendants. |
| 13:15:29 | 21 | THE COURT:  402. |
| 13:15:31 | 22 | MR. FELLE:  And the only other one I have is |
| 13:15:33 | 23 | on the 17th. |
| 13:15:37 | 24 | THE COURT:  That is 408. |
| 13:15:39 | 25 | MR. FELLE:  408.  Okay.  Anything else in |