# 23-0352

# United States Court of Appeals

*for the*

# Second Circuit

JOSUE ORTIZ,

*Plaintiff-Appellee,*

– v. –

MARK STAMBACH,

*Defendant-Appellant,*

RICHARD WAGSTAFF, MARY GUGLIUZZA, BUFFALO POLICE
DEPARTMENT DOES 1-12, BUFFALO POLICE DEPARTMENT, THE CITY
OF BUFFALO, MARK VAUGHN,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## APPENDIX FOR DEFENDANT-APPELLANT
### Volume 11 (Pages A-2467 to A-2716)

HODGSON RUSS LLP
Peter A. Sahasrabudhe, Esq.
*Attorneys for Defendant-Appellant*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

i

## TABLE OF CONTENTS

**Page**

**Volume 1**

District Court Docket List .......................................... A-1

Amended Complaint, dated March 27, 2019 ............ A-34

Answer to Amended Complaint,
    dated April 15, 2019 ............................................... A-56

Notice of Motion to Dismiss, dated April 24, 2020... A-80

Memorandum of Law in Support of Defendants'
    Motion to Dismiss, dated April 24, 2020 .............. A-82

Supporting Declaration, dated April 24, 2020 ........... A-107

Exhibit A to Declaration -
Affidavit of Lt. Salvatore Losi,
sworn to on April 15, 2020 .................................... A-112

Exhibit B to Declaration -
P-73 of Mark R. Stambach, dated November 16,
2004, and Notes ....................................................... A-114

Exhibit C to Declaration -
Plaintiff's Deposition Transcript,
dated March 15, 2018 ............................................. A-117

**Volume 2**

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019 .......................................... A-241

ii

Page

**Volume 3**

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019............................................. A-491

Exhibit E to Declaration -
Criminal Case Court Proceedings Notes................ A-535

Exhibit F to Declaration -
Plaintiff's Statement and Spanish Miranda Rights
Card ........................................................................ A-539

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019............................................. A-543

**Volume 4**

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019
(Continued)............................................................. A-741

Exhibit H to Declaration -
P-73 of Mark J. Vaughn, dated November 15,
2004 ........................................................................ A-746

Exhibit I to Declaration -
Indictment............................................................... A-748

Exhibit J to Declaration -
Portions of *Huntley* Hearing Transcript Provided
by Plaintiff in Discovery ........................................ A-753

Exhibit K to Declaration -
Answering Affidavit of Assistant District
Attorney Kenneth F. Case,
dated February 22, 2005......................................... A-882

iii

**Page**

Exhibit L to Declaration -
Transcripts of Plaintiff's guilty plea on March
22, 2006 and sentencing on June 16, 2006 and
Memorandum and Order Affirming the
Conviction ............................................................. A-889

Exhibit M to Declaration -
Correspondence and Reply to the People's
Opposing Affidavit ................................................ A-913

Exhibit N to Declaration -
Moving Papers and Correspondence Filed in
Opposition to Plaintiff's CPL 440 Motion by the
District Attorney's Office ...................................... A-935

Exhibit O to Declaration -
P-73 of David Sadlocha,
dated November 16, 2004 ...................................... A-976

Exhibit P to Declaration -
Memorandum and Order Deciding *Huntley*
Hearing .................................................................. A-977

Exhibit Q to Declaration -
Mark Stambach Notes,
dated September 30, 2005 ...................................... A-981

**Volume 5**

Exhibit R to Declaration -
Decision & Order Deciding Plaintiff's CPL 440
Motion .................................................................... A-983

Statement of Undisputed Facts,
dated April 24, 2020 .............................................. A-1056

Declaration of Alan J. Pierce, Esq.,
dated July 3, 2020 ................................................. A-1063

iv

**Page**

Plaintiff's Response to Defendants' Statement of
    Material Facts, dated July 3, 2020 ........................ A-1066

Exhibit 1 to Pierce Declaration -
Orders of Hon. Thomas Franczyk dated
December 9, 2014 and May 8, 2015 in *People v.
Ortiz*, Indictment No. 02630-04 ........................... A-1069

Exhibit 2 to Pierce Declaration -
Defendants' Response to Plaintiff's First
Interrogatories and First Request for Production
of Documents, dated February 24, 2017 ............... A-1071

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019 ...................................... A-1091

**Volume 6**

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019
(Continued) ........................................................... A-1233

Exhibit 4 to Pierce Declaration -
Transcript of the Deposition of Mary Evans,
taken on January 24, 2019 .................................... A-1238

Exhibit 5 to Pierce Declaration -
Documents in Exhibit B, Part 3 ............................ A-1372

Exhibit 6 to Pierce Declaration -
P-73 Forms Contained in Stambach Deposition
Exhibit 6 ............................................................... A-1450

v

Page

### Volume 7

Exhibit 7 to Pierce Declaration -
BPD Synopsis of the Camacho Murder
Investigation ............................................................. A-1473

Exhibit 8 to Pierce Declaration -
Statement of Witness Jexlyn Mary Rosario given
to the BPD on November 12, 2004 ....................... A-1499

Exhibit 9 to Pierce Declaration -
Declaration of Hon. Kenneth Case, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 ............................................................. A-1502

Exhibit 10 to Pierce Declaration -
Declaration of Hon. Frank Sedita, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 ............................................................. A-1505

Exhibit 11 to Pierce Declaration -
Documents in Exhibit B, Parts 1 & 2 .................... A-1512

Exhibit 12 to Pierce Declaration -
Transcript of the Deposition of Dr. Evelyn
Coggins, taken on October 1, 2018 ....................... A-1597

Exhibit 13 to Pierce Declaration -
Defendants' Initial Disclosures,
dated February 24, 2017 ........................................ A-1700

Exhibit 14 to Pierce Declaration -
Josue Ortiz's Verified Claim,
dated May 13, 2015 ............................................... A-1706

### Volume 8

Exhibit 15 to Pierce Declaration -
Stambach Deposition Exhibits 2 and 17 ............... A-1725

vi

**Page**

Plaintiff's Memorandum of Law in Opposition to
Defendants' Motion to Dismiss, and for
Judgment on the Pleadings and/or Summary
Judgment, dated July 5, 2020 ............................... A-1733

City of Buffalo Department of Law, Exhibit D ......... A-1760

Reply Memorandum of Law in Further Support of
Defendants' Motion to Dismiss,
dated July 24, 2020 ................................................ A-1789

Decision and Order of the Honorable Elizabeth A.
Wolford, dated February 26, 2021 ....................... A-1800

Plaintiffs' Proposed Jury Instructions,
dated April 1, 2022 ................................................ A-1837

Defendants' Proposed Jury Instructions,
dated April 1, 2022 ................................................ A-1861

Plaintiffs' Reply Motions in Limine,
dated April 6, 2022 ................................................ A-1924

Defendant's Objections to Plaintiff's Proposed Jury
Instructions, dated April 6, 2022........................... A-1933

**Volume 9**

Transcript of Proceedings, dated April 11, 2022........ A-1937

Stipulation of Undisputed Facts,
dated April 27, 2022 .............................................. A-1996

Trial Transcript, Preliminary Instructions and
Opening Statements, dated May 3, 2022 ............... A-2001

Trial Transcript, dated May 4, 2022........................... A-2053

vii

**Page**

Plaintiff's Witnesses:

| | | | |
|---|---|---|---|
| E. Coogins | Direct | .......................... | A-2054 |
| | Cross | .......................... | A-2116 |
| J. Ortiz | Direct | .......................... | A-2125 |

**Volume 10**

Trial Transcript, dated May 4, 2022
(Cotinued) ............................................................... A-2187

| | | | |
|---|---|---|---|
| M. Vaughn | Direct | .......................... | A-2189 |
| | Cross | .......................... | A-2219 |
| | Redirect | ...................... | A-2225 |
| J. Lonergan | Direct | .......................... | A-2229 |
| | Cross | .......................... | A-2281 |
| | Redirect | ...................... | A-2284 |
| | Recross | ...................... | A-2287 |

Trial Transcript, dated May 5, 2022 ........................ A-2297

| | | | |
|---|---|---|---|
| M. Stambach | Direct | .......................... | A-2299 |
| | Cross | .......................... | A-2361 |
| | Redirect | ...................... | A-2384 |
| J. Ortiz | Direct | .......................... | A-2393 |
| | Cross | .......................... | A-2426 |

**Volume 11**

Trial Transcript, dated May 6, 2022 ........................ A-2467

| | | | |
|---|---|---|---|
| M. Evans | Direct | .......................... | A-2470 |
| | Cross | .......................... | A-2495 |
| M. Lauber | Direct | .......................... | A-2504 |
| | Cross | .......................... | A-2518 |

Trial Transcript, May 9, 2022 .................................. A-2554

viii

| | | Page |
|---|---|---|
| J. Ortiz | Direct | A-2599 |
| | Cross | A-2653 |
| | Redirect | A-2671 |
| | Recross | A-2674 |

Trial Transcript, Closing Arguments, May 9, 2022 ... A-2594

**Volume 12**

Trial Transcript, Closing Arguments, May 9, 2022 (Continued) ............................................................... A-2717

Jury Questionnaire, dated May 9, 2022 ..................... A-2760

Jury Questionnaire, Damages, dated May 9, 2022 .... A-2764

Judgment in a Civil Case, dated May 10, 2022 ......... A-2766

Notice of Motion, by Plaintiff, for Attorneys' Fees, dated May 20, 2022 ................................................. A-2767

Declaration of Wayne C. Felle, Esq., for Plaintiff, in Support of Motion, dated May 20, 2022.................. A-2768

Exhibit A to Felle Declaration - Ledger.................................................................... A-2773

Exhibit B to Felle Declaration - Invoices for Services ............................................. A-2792

Plaintiff's Memorandum of Law in Support of his Motion for Attorneys' Fees and Costs, dated May 20, 2023 ................................................. A-2823

Notice of Motion, by Defendant, for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a new trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e), dated June 7, 2022 ................................................. A-2846

ix

**Page**

Declaration of Peter A. Sahasrabudhe, Esq., for
Defendant, in Support of Motion,
dated June 7, 2022 ................................................ A-2848

Exhibit A to Sahasrabudhe Declaration -
Trial Exhibits Entered by Counsel for
Plaintiff.................................................................. A-2862

Exhibit B to Sahasrabudhe Declaration -
Trial Exhibits Entered by Counsel for
Defendant ............................................................. A-2909

Memorandum of Law in Support of Motion for
Judgment as a Matter of Law Under Fed. R. Civ.
P. 50(b), dated June 7, 2022 .................................... A-2918

Declaration of Peter A. Sahasrabudhe in Opposition
to Plaintiff's Motion for Attorneys' Fees,
dated June 10, 2022 ............................................... A-2946

**Volume 13**

Defendants' Memorandum of Law in Opposition to
Plaintiff's Motion for Attorneys' Fees,
dated June 10, 2022 ............................................... A-2987

Declaration of Wayne C. Felle, Esq., for Plaintiff, in
Opposition to Defendant's Post Trial Motion,
dated June 28, 2022 ............................................... A-3013

Plaintiff's Memorandum of Law in Opposition to
Defendant's Post Trial Motions,
dated June 28, 2022 ............................................... A-3023

Reply Memorandum of Law in Further Support of
Defendant's Motion for Judgment as a Matter of
Law, a New Trial, or Remittitur,
dated July 8, 2022 ................................................. A-3071

**x**

                                                                                  **Page**

Decision and Order of the Honorable Elizabeth A.
    Wolford, dated February 17, 2022 ........................   A-3090

Transcript of Oral Argument,
    dated January 31, 2023 .........................................   A-3112

Notice of Appeal, by Defendant, March 10, 2023 .....   A-3159

A-2467

297

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | WESTERN DISTRICT OF NEW YORK |
| 3 | |
| 4 | - - - - - - - - - - - - - X |
| | JOSUE ORTIZ ) 16CV321 |
| 5 | Plaintiff ) |
| | vs. |
| 6 | Rochester, New York |
| | MARK STAMBACH, May 6, 2022 |
| 7 | Defendant. 9:00 a.m. |
| | - - - - - - - - - - - - - X |
| 8 | **TRIAL - VOLUME IV - TESTIMONY OF M. EVANS & M. LAUBER,** |
| | **JURY CHARGE CONFERENCE** |
| 9 | |
| 10 | TRANSCRIPT OF PROCEEDINGS |
| | BEFORE THE HONORABLE ELIZABETH A. WOLFORD |
| 11 | UNITED STATES DISTRICT JUDGE |
| 12 | |
| 13 | WAYNE C. FELLE, ESQ. |
| | Law Office of Wayne C. Felle, P.C. |
| 14 | 6024 Main Street |
| | Williamsville, NY 14221 |
| 15 | |
| 16 | |
| 17 | HUGH M. RUSS, III, ESQ. |
| | PETER A. SAHASRABUDHE, ESQ. |
| 18 | Hodgson Russ LLP |
| | The Guaranty Building |
| 19 | 140 Pearl Street, Suite 100 |
| | Buffalo, New York 14202 |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | **COURT REPORTER: Karen J. Clark, Official Court Reporter** |
| | **Karenclark1013@AOL.com** |
| 25 | **100 State Street** |
| | **Rochester, New York 14614** |

A-2468

298

P R O C E E D I N G

&ast;                    &ast;                    &ast;

08:55:01  4

08:55:01  5

09:03:08  6          THE CLERK:  We're here in the matter of

09:03:10  7  Ortiz versus Stambach, 16CV321.

09:03:14  8          THE COURT:  Good morning, everybody.  We

09:03:16  9  have Mr. Felle and Mr. Ortiz here.  And Mr. Russ, Mr.

09:03:19  10  Sahasrabudhe.  Is Ms. Evans here?

09:03:22  11          MR. FELLE:  She is, your Honor.

09:03:23  12          THE COURT:  So is the Plaintiff ready to

09:03:24  13  proceed?

09:03:24  14          MR. FELLE:  We are, your Honor.

09:03:26  15          THE COURT:  Is the defense ready to proceed?

09:03:28  16          MR. RUSS:  Yes, your Honor, thank you.

09:03:29  17          THE COURT:  Let's bring our jury in and we

09:03:33  18  can get going.

09:05:01  19          (Whereupon, the jury is escorted into the

09:05:04  20  courtroom.)

09:05:39  21          THE COURT:  Good morning, everyone.  Happy

09:05:43  22  Friday.  So, everyone can have a seat.  Welcome back,

09:05:50  23  ladies and gentlemen.  We are now ready to continue with

09:05:52  24  the Plaintiff's direct case.

09:05:54  25          And I'm going to turn to Mr. Felle.  Is the

A-2469

299

|   | | J. ORTIZ VS. M. STAMBACH |
|---|---|---|

1           J. ORTIZ VS. M. STAMBACH

09:05:57  2   Plaintiff ready to call its next witness?

09:05:59  3           MR. FELLE:  Yes, we are.  May it please

09:06:01  4   Court, we want to call Homicide Detective Mary Evans to

09:06:08  5   the stand.

09:06:09  6           THE COURT:  Okay.  Let's have Mary Evans

09:06:12  7   come in Charlie.  Come on in, Ms. Evans.  I'll have you

09:06:18  8   walk up to the bench here to be sworn in before you take

09:06:21  9   the witness stand.

09:06:34  10  (M. EVANS WAS CALLED TO THE WITNESS STAND AND SWORN.)

09:06:50  11          THE CLERK:  You can remove your mask and

09:06:53  12  state the first and last name and spell the last name

09:06:56  13  for the record.

09:06:56  14          THE WITNESS:  Mary Evans, E-v-a-n-s.

09:06:59  15          THE COURT:  My name is Judge Wolford, and I

09:07:02  16  have some instructions for you before you get started.

09:07:04  17  First of all, the reason you're here is to testify for

09:07:07  18  the benefit of the Ladies and Gentlemen of the Jury, so,

09:07:10  19  if you would, direct your answers towards them.  Only

09:07:13  20  answer the question you're asked.  Don't volunteer

09:07:15  21  information.  If there is an objection, you need to wait

09:07:17  22  until I rule on it and I'll let you know whether or not

09:07:20  23  you can answer the question.  And speak slowly, clearly,

09:07:23  24  and keep your voice up so everybody can hear you and my

09:07:26  25  court reporter can take down your testimony.  Do you

```
            1                    M. EVANS - DX BY MR. FELLE
09:07:31    2    understand?
09:07:31    3                    THE WITNESS:  Yes, your Honor.
09:07:31    4                    THE COURT:  Thank you.
09:07:32    5                    You can proceed whenever you're ready, Mr.
09:07:34    6    Felle.
09:07:34    7                    MR. FELLE:  Thank you, your Honor.  May it
09:07:36    8    please the Court.
09:07:37    9    DIRECT EXAMINATION BY MR. FELLE:
09:07:37   10        Q.  Good morning, Detective Evans.  How are you
09:07:40   11    today?
09:07:40   12        A.  Very well, thank you.
09:07:42   13        Q.  I know you first want to thank you.  I know you
09:07:46   14    traveled from Buffalo, and I know you had work to attend
09:07:49   15    to there.  Thank you very much for being here.
09:07:51   16        A.  You're welcome.
09:07:53   17        Q.  Detective, how long have you been a member of the
09:07:57   18    Buffalo Police Department?
09:07:57   19        A.  Since 1994.
09:07:59   20        Q.  And since 1994, what various positions have you
09:08:02   21    held?
09:08:02   22        A.  Patrol officer for approximately seven years,
09:08:06   23    promoted to detective in 2001.  I worked as a district
09:08:11   24    detective for approximately five years, and then I
09:08:15   25    transferred to the homicide squad in October of 2006.
```

A-2471

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | M. EVANS - DX BY MR. FELLE                                   |
| 09:08:21 | 2  | Q.  And can you tell us, as a district detective,            |
| 09:08:24 | 3  | what types of crimes did you investigate?                    |
| 09:08:26 | 4  | A.  Burglaries, simple assaults, some serious                |
| 09:08:31 | 5  | assaults, some home invasions, robberies, larcenies,         |
| 09:08:40 | 6  | things like that.                                            |
| 09:08:42 | 7  | Q.  And when you went to the homicide bureau as a            |
| 09:08:45 | 8  | detective, is that considered a bit of a promotion?          |
| 09:08:48 | 9  | A.  Well, it's a more complex area of investigation.         |
| 09:08:54 | 10 | We are transferred into units by seniority.                  |
| 09:08:58 | 11 | Q.  Okay.  And in your capacity as a detective,             |
| 09:09:06 | 12 | homicide detective, was there a point in time when you       |
| 09:09:09 | 13 | were assigned to a cold case squad?                          |
| 09:09:12 | 14 | A.  Yes.                                                     |
| 09:09:12 | 15 | Q.  And can you explain to us, more importantly, the        |
| 09:09:14 | 16 | jury, what does it mean to be involved in a cold case        |
| 09:09:19 | 17 | review and/or squad?                                         |
| 09:09:20 | 18 | A.  The cold case squad investigates older homicide         |
| 09:09:24 | 19 | investigations that, for whatever reason, the                |
| 09:09:31 | 20 | investigation may stall or come to a stopping point when     |
| 09:09:37 | 21 | the investigative leads have been exhausted and then we      |
| 09:09:41 | 22 | will wait for new information to come in or start            |
| 09:09:45 | 23 | reinvestigating old material and hope for a good             |
| 09:09:49 | 24 | conclusion.                                                  |
| 09:09:51 | 25 | Q.  And, Detective Evans, with respect to your cold         |

A-2472

302

|          |    |                                                       |
|----------|----|-------------------------------------------------------|
|          | 1  | M. EVANS - DX BY MR. FELLE                            |
| 09:09:56 | 2  | case review, did you become involved in the murder    |
| 09:09:59 | 3  | investigation of Nelson and Miguel Camacho?           |
| 09:10:02 | 4  | A. Yes.                                               |
| 09:10:02 | 5  | Q. And did you become involved in the review of the   |
| 09:10:06 | 6  | arrest and incarceration of Mr. Ortiz?                |
| 09:10:08 | 7  | A. Yes.                                               |
| 09:10:10 | 8  | Q. And during the course of this civil case, you and  |
| 09:10:14 | 9  | I have met just one other time, correct?              |
| 09:10:16 | 10 | A. Correct.                                           |
| 09:10:16 | 11 | Q. And that was to give deposition testimony,         |
| 09:10:19 | 12 | correct?                                              |
| 09:10:19 | 13 | A. Correct.                                           |
| 09:10:20 | 14 | Q. And my notes indicate that was back on January 24  |
| 09:10:23 | 15 | of 2019, correct?                                     |
| 09:10:24 | 16 | A. Correct.                                           |
| 09:10:27 | 17 | Q. While I expect this morning's testimony to be      |
| 09:10:29 | 18 | brief, if at any time you need to refresh your memory |
| 09:10:33 | 19 | with that deposition testimony, you can simply let me |
| 09:10:37 | 20 | know, okay?                                           |
| 09:10:37 | 21 | A. Okay.                                              |
| 09:10:38 | 22 | Q. Now, while you were a Buffalo police homicide      |
| 09:10:43 | 23 | detective, excuse me, and working on the cold case, were |
| 09:10:46 | 24 | you also working on a joint task force with other     |
| 09:10:54 | 25 | agencies?                                             |

A-2473

303

|  |  |  |
|---|---|---|
|  | 1 | M. EVANS - DX BY MR. FELLE |
| 09:10:55 | 2 | A.  I was working with the joint terrorism task |
| 09:10:59 | 3 | force. |
| 09:10:59 | 4 | THE COURT:  Make sure you keep your voice |
| 09:11:02 | 5 | up. |
| 09:11:02 | 6 | A.  It wasn't JTTF.  It was a couple members of the |
| 09:11:06 | 7 | FBI were assisting us with an investigation. |
| 09:11:08 | 8 | Q.  And in my notes, I have that, at some point in |
| 09:11:11 | 9 | time, you were involved in a FBI Safe Streets Task Force |
| 09:11:15 | 10 | that was primarily investigating gangs and organized |
| 09:11:19 | 11 | crime in Buffalo, New York.  Is that true? |
| 09:11:21 | 12 | A.  Yes.  We worked with the Safe Streets Task Force. |
| 09:11:24 | 13 | Q.  Can you explain to me and the jury, more |
| 09:11:26 | 14 | importantly, what does it mean to be involved a joint |
| 09:11:29 | 15 | task force like that? |
| 09:11:30 | 16 | A.  The investigation was involving gang activity |
| 09:11:36 | 17 | that was primarily occurring on the west side of |
| 09:11:40 | 18 | Buffalo.  And the U.S. Attorney's Office agreed to |
| 09:11:43 | 19 | assist with the investigation.  And when the U.S. |
| 09:11:49 | 20 | Attorney's Office works with a local department, the FBI |
| 09:11:54 | 21 | is involved as well, because they are the federal law |
| 09:12:00 | 22 | enforcement agents. |
| 09:12:01 | 23 | Q.  In addition to the FBI being involved, was there |
| 09:12:05 | 24 | New York State Police investigators assigned? |
| 09:12:08 | 25 | A.  Yes. |

A-2474

|          |    | M. EVANS - DX BY MR. FELLE |
|----------|----|----------------------------|
| 09:12:08 | 2  | Q.   And in this particular task force, who were they? |
| 09:12:11 | 3  | A.   Senior Investigator Josh Keets and Investigator |
| 09:12:18 | 4  | Geraldo Rondon. |
| 09:12:18 | 5  | Q.   And when you mention the FBI, were there various |
| 09:12:22 | 6  | agents assigned to the task force? |
| 09:12:24 | 7  | A.   Yes. |
| 09:12:25 | 8  | Q.   And who were they? |
| 09:12:26 | 9  | A.   One was Special Agent Thomas Palmer, one was |
| 09:12:30 | 10 | Special Agent Jason Galley, and I can't recall the name |
| 09:12:37 | 11 | right now of the first individual that was also |
| 09:12:40 | 12 | assisting. |
| 09:12:43 | 13 | Q.   And then with respect to your component, the |
| 09:12:47 | 14 | Buffalo Police Department detectives, were there other |
| 09:12:50 | 15 | detectives working along with you on this task force? |
| 09:12:54 | 16 | A.   Yes. |
| 09:12:54 | 17 | Q.   And who was that? |
| 09:12:55 | 18 | A.   Detective Noreen Welch. |
| 09:12:57 | 19 | Q.   And was she a homicide detective? |
| 09:13:00 | 20 | A.   Yes. |
| 09:13:04 | 21 | Q.   And would you say that yourself and Investigator |
| 09:13:08 | 22 | Rondon worked fairly closely on this case? |
| 09:13:10 | 23 | A.   Yes. |
| 09:13:12 | 24 | Q.   And how long were you involved with that joint |
| 09:13:19 | 25 | task force, approximately? |

A-2475

305

|   |   | M. EVANS - DX BY MR. FELLE |
|---|---|---|
| 09:13:20 | 2 | A.   To the conclusion, probably six years, seven |
| 09:13:26 | 3 | years. |
| 09:13:26 | 4 | Q.   And did you prepare a document which you |
| 09:13:30 | 5 | described a synopsis of your ongoing efforts in that |
| 09:13:33 | 6 | investigation? |
| 09:13:34 | 7 | A.   Yes. |
| 09:13:35 | 8 | Q.   And you prepared that synopsis, correct? |
| 09:13:38 | 9 | A.   Correct. |
| 09:13:39 | 10 | Q.   And what was the purpose of that? |
| 09:13:40 | 11 | A.   Just to provide a path, if you will, of the |
| 09:13:45 | 12 | investigation for someone that may not have been |
| 09:13:49 | 13 | familiar with it and was trying to learn what had |
| 09:13:52 | 14 | happened. |
| 09:13:53 | 15 | Q.   And given the scope of this task force involving |
| 09:13:57 | 16 | the FBI, the U.S. attorney General's Office, state |
| 09:14:00 | 17 | investigators and Buffalo detectives, did the scope of |
| 09:14:06 | 18 | that task force allow you to investigate crime scene |
| 09:14:11 | 19 | evidence, say, through the FBI lab? |
| 09:14:16 | 20 | A.   We may have used the FBI lab at some point, I |
| 09:14:21 | 21 | don't recall exactly, but it probably would have been an |
| 09:14:26 | 22 | option. |
| 09:14:26 | 23 | Q.   And with respect to the scope of that task force |
| 09:14:29 | 24 | investigation, were there wiretaps? |
| 09:14:31 | 25 | A.   Yes. |

1                   M. EVANS - DX BY MR. FELLE

09:14:33   2        Q.   And during the course of that task force

09:14:39   3   investigation into gang activity, were you made aware

09:14:43   4   that there were other people that had implicated

09:14:47   5   themselves in the murder of the Camacho brothers?

09:14:50   6        A.   Yes.

09:14:55   7        Q.   And was that in part what led you to

09:14:59   8   reinvestigate this file involving the arrest and

09:15:01   9   conviction of Mr. Ortiz?

09:15:02   10       A.   Yes.

09:15:05   11       Q.   And were you involved in that cold case review

09:15:07   12   from the start?

09:15:08   13       A.   Yes.

09:15:09   14       Q.   And were you involved in that cold case review

09:15:12   15   right to the end when Mr. Ortiz was exonerated?

09:15:15   16       A.   Yes.

09:15:16   17       Q.   Did you agree with his exoneration?

09:15:18   18       A.   Yes.

09:15:19   19       Q.   And did you find in the course of that task force

09:15:22   20   investigation that Mr. Ortiz had no involvement in the

09:15:26   21   murders of the Camacho brothers?

09:15:28   22       A.   Yes.

09:15:31   23       Q.   When you initially were tasked with opening that

09:15:34   24   cold case or that cold file, did you physically retrieve

09:15:39   25   the case file?

A-2477

307

| | |
|---|---|
| | 1 M. EVANS - DX BY MR. FELLE |
| 09:15:40 | 2 A. Yes. |
| 09:15:41 | 3 Q. And I apologize for being almost -- terrible |
| 09:15:47 | 4 question. But when you physically obtained that file, |
| 09:15:50 | 5 did you notice that it was marked cleared or closed? |
| 09:15:53 | 6 A. It was marked "cleared" in our database that we |
| 09:15:57 | 7 have which lists all of the incidents that the homicide |
| 09:16:02 | 8 squad responded to. |
| 09:16:04 | 9 Q. So, in any event -- so, in that event, nothing on |
| 09:16:08 | 10 your screen as a detective in the homicide bureau would |
| 09:16:11 | 11 have led your attention to that as an open file? |
| 09:16:14 | 12 A. Correct. |
| 09:16:15 | 13 Q. So if you had not been tasked -- excuse me. If |
| 09:16:18 | 14 you had not reopened that file in the task force |
| 09:16:21 | 15 investigation, that file could have remained closed and |
| 09:16:25 | 16 cleared forever, correct? |
| 09:16:26 | 17 A. It's hard to say, I don't know what may or may |
| 09:16:30 | 18 not have happened. |
| 09:16:31 | 19 Q. That's fair. But it was, in fact, stored when |
| 09:16:40 | 20 you opened it? |
| 09:16:41 | 21 A. Correct. |
| 09:16:44 | 22 Q. Did it surprise you that the file had been marked |
| 09:16:48 | 23 "cleared" in the system? |
| 09:16:49 | 24 A. No. |
| 09:16:51 | 25 Q. Once you got into your investigation, I suppose, |

A-2478

|  |  |  |
|---|---|---|
|  | 1 | M. EVANS - DX BY MR. FELLE |
| 09:16:55 | 2 | initially, you didn't know what to expect once you got |
| 09:16:58 | 3 | into your investigation and you looked into the folders |
| 09:17:00 | 4 | and file pertaining to the evidence, did it surprise you |
| 09:17:03 | 5 | that the file was marked "clear" with only the arrest of |
| 09:17:09 | 6 | one person? |
| 09:17:09 | 7 | MR. RUSS:  Your Honor, I object.  He just |
| 09:17:12 | 8 | asked her and she answered "no." |
| 09:17:13 | 9 | THE COURT:  Overruled.  Go ahead, you can |
| 09:17:16 | 10 | answer the question. |
| 09:17:18 | 11 | A.  No. |
| 09:17:22 | 12 | Q.  As you got into your investigation of that cold |
| 09:17:26 | 13 | case, the arrest of Mr. Ortiz, did you find |
| 09:17:28 | 14 | inconsistencies with his guilt in the case? |
| 09:17:32 | 15 | A.  Could you be more specific, please? |
| 09:17:36 | 16 | Q.  Sure.  When you reviewed the evidence, including |
| 09:17:39 | 17 | witness statements, things of that nature, did it give |
| 09:17:42 | 18 | you pause, were there inconsistencies with him being one |
| 09:17:48 | 19 | of the perpetrators of that crime? |
| 09:17:48 | 20 | A.  Yes. |
| 09:17:49 | 21 | Q.  What about that evidence that led you to think |
| 09:17:51 | 22 | it's inconsistent? |
| 09:17:53 | 23 | MR. RUSS:  Your Honor, I'm going to object |
| 09:17:54 | 24 | at this point to the extent that it's asking for some |
| 09:17:57 | 25 | kind of hearsay response. |

A-2479

|  | 1 | M. EVANS - DX BY MR. FELLE |
|---|---|---|

09:18:00    2          THE COURT:  Well, I don't think it is.  Just

09:18:03    3   testify about what you observed personally, don't

09:18:07    4   testify about what anybody else said, all right, because

09:18:11    5   you're testifying what somebody else said outside of

09:18:14    6   court, that could create a hearsay issue.  Okay?

09:18:18    7          THE WITNESS:  Okay.

09:18:18    8          THE COURT:  Overruled.  Go ahead.

09:18:20    9     A.   Information in the file with regard to the height

09:18:25   10   of the individuals who were observed on the date.

09:18:31   11          MR. RUSS:  Your Honor, this is exactly what

09:18:33   12   I meant, that information there, the height of the

09:18:37   13   individuals, that comes from a hearsay statement.

09:18:41   14          THE COURT:  All right.  What would be the

09:18:43   15   exception, Mr. Felle?  And we can talk about it outside

09:18:47   16   of the presence, if you think that would be --

09:18:49   17          MR. FELLE:  I would say it's not being

09:18:51   18   asserted for the truth of the matter, just what her

09:18:53   19   knowledge was of that point of the investigation of the

09:18:55   20   file.

09:18:56   21          THE COURT:  Ladies and gentlemen, we're

09:18:57   22   going to have to take a break.  I remind you, don't talk

09:19:00   23   about the case among yourselves or with anybody else,

09:19:03   24   and we'll see you back here shortly.

09:19:25   25          (Whereupon, the jury is escorted from the

A-2480

```
1                    M. EVANS - DX BY MR. FELLE
09:19:28    2   courtroom.)
09:19:29    3           THE COURT:  Normally, I would have you step
09:19:31    4   down, but I want to find out how were you going to
09:19:34    5   answer the question, like, in other words, the question
09:19:36    6   is, when you took a look at the file, you concluded that
09:19:40    7   there were inconsistencies between Mr. Ortiz being the
09:19:44    8   person and what you were seeing in the file, is that
09:19:47    9   what you're testifying to?  And speak into the
09:19:49   10   microphone.
09:19:49   11      A.  Yes, eventually.  When I first reviewed the file
09:19:53   12   and I saw that witnesses had said three people went in,
09:19:58   13   three people went out, they were described as being of
09:20:03   14   average height.  I don't believe when I actually read
09:20:06   15   that, that I was aware of Mr. Ortiz's height.  Later on,
09:20:10   16   obviously, I learned that he was quite tall as opposed
09:20:16   17   to average height.  That would have been the
09:20:19   18   inconsistency between Mr. Ortiz and what was described
09:20:24   19   by people who saw the three running in and out.
09:20:28   20           THE COURT:  Anything else that you were
09:20:30   21   going to testify to in response to that question?
09:20:33   22           THE WITNESS:  I don't think so.
09:20:35   23           THE COURT:  Okay.  If you would step out of
09:20:37   24   the courtroom for a minute.  Thank you.
09:20:37   25           (Whereupon, the witness exits the
```

|            |    |                                                        |
|------------|----|--------------------------------------------------------|
|            | 1  | M. EVANS - DX BY MR. FELLE                             |
| 09:20:37   | 2  | courtroom.)                                            |
| 09:20:54   | 3  | All right.  So what you want to introduce              |
| 09:20:58   | 4  | are these witness statements, you want to have evidence|
| 09:21:01   | 5  | come in there were witness statements in the file      |
| 09:21:03   | 6  | describing three perpetrators who did not match the    |
| 09:21:06   | 7  | height of Mr. Ortiz.  Now, normally witness statements |
| 09:21:11   | 8  | made out at court about the height of perpetrators, that|
| 09:21:14   | 9  | would be hearsay if it's admitted for the truth.  I    |
| 09:21:17   | 10 | don't know why else you're trying to admit it other than|
| 09:21:20   | 11 | to show to the jury that there were witnesses who      |
| 09:21:24   | 12 | believed that the three perpetrators were not the same |
| 09:21:29   | 13 | height as Mr. Ortiz.  What is the other relevant purpose|
| 09:21:34   | 14 | for it?                                                |
| 09:21:34   | 15 | MR. FELLE:  Your Honor, it goes to her                 |
| 09:21:36   | 16 | mental state while reviewing the evidence.             |
| 09:21:38   | 17 | THE COURT:  But why is her mental state                |
| 09:21:41   | 18 | relevant?                                              |
| 09:21:41   | 19 | MR. FELLE:  She is reinvestigating this                |
| 09:21:43   | 20 | case.                                                  |
| 09:21:43   | 21 | THE COURT:  Why is that relevant to what the           |
| 09:21:45   | 22 | jury has to consider, what Ms. Evans' mental state was.|
| 09:21:50   | 23 | In other words, let's say the evidence is Ms. Evans took|
| 09:21:55   | 24 | a look at the file and concluded, no, Mr. Ortiz was not|
| 09:22:00   | 25 | the true perpetrator and she thought the evidence was  |

A-2482

312

|   |   |
|---|---|
| | 1 |

                    M. EVANS - DX BY MR. FELLE

09:22:04   2   inconsistent with him being a perpetrator, how is that

09:22:08   3   relevant to the issue of whether or not Mr. Stambach

09:22:11   4   fabricated evidence against Mr. Ortiz?

09:22:16   5                    MR. FELLE:  I guess it could go to the same

09:22:18   6   issue, why didn't Detective Stambach notice that if they

09:22:22   7   are both detectives in the homicide, she noticed it and

09:22:26   8   he didn't, it goes further than the truth of the matter

09:22:29   9   asserted.  This is the only question I'm going to ask.

09:22:32   10  I'm not going to specify further any of the specifics of

09:22:38   11  the witness statements.  When she got in the file, did

09:22:41   12  she notice inconsistencies in the evidence that would

09:22:46   13  allow her to go further in the investigation.

09:22:49   14                   THE COURT:  So, Mr. Russ, why isn't it

09:22:52   15  relevant that there is evidence in the file that there

09:22:56   16  are three perpetrators, that the height didn't match the

09:23:03   17  height of Mr. Ortiz, and Mr. Stambach didn't notice

09:23:08   18  that.  It's not being raised for the truth of whether or

09:23:14   19  not the three perpetrators had the height of Mr. Ortiz

09:23:16   20  or not, it's to show what was in the file and what would

09:23:19   21  have been the effect of any reasonable investigator

09:23:23   22  reviewing the file at the time of the murders.

09:23:26   23                   MR. RUSS:  Your Honor, first of all, I did

09:23:28   24  not object when he asked, were there inconsistencies

09:23:33   25  between a conviction and the crime.  That is fair.  I

A-2483

313

|   |   |
|---|---|
|  | 1 |
| 09:23:41 | 2 |
| 09:23:47 | 3 |
| 09:23:54 | 4 |
| 09:23:58 | 5 |
| 09:24:00 | 6 |
| 09:24:03 | 7 |
| 09:24:06 | 8 |
| 09:24:10 | 9 |
| 09:24:15 | 10 |
| 09:24:18 | 11 |
| 09:24:24 | 12 |
| 09:24:28 | 13 |
| 09:24:32 | 14 |
| 09:24:34 | 15 |
| 09:24:37 | 16 |
| 09:24:38 | 17 |
| 09:24:42 | 18 |
| 09:24:44 | 19 |
| 09:24:50 | 20 |
| 09:24:53 | 21 |
| 09:24:57 | 22 |
| 09:25:01 | 23 |
| 09:25:02 | 24 |
| 09:25:04 | 25 |

M. EVANS - DX BY MR. FELLE

think when you get into physical descriptions of made by

witnesses of persons leaving the scene, that is only

asserted for the truth of the matter.

THE COURT:  I agree with you.  Mr. Felle

hasn't been totally consistent in his explanation for

why it's coming in.  I'm taking pieces of what he is

saying and I'm saying, why isn't it relevant that there

was evidence in the file suggesting that the

perpetrators were not Mr. Ortiz's height.  Not to prove

that they really weren't or not, but just to have

triggered or caused a further investigation to have

occurred as opposed to accepting a confession by

somebody that didn't match the description of the

witnesses of the perpetrators.

MR. RUSS:  I think it's the description part

that is objectionable.  I think he can ask were there

witness statements in there, were those witness

statements inconsistent with Mr. Ortiz's guilt, you

know, was there other evidence inconsistent with Mr.

Ortiz's guilt, but then when you start detailing the

evidence, that is hearsay, and it is offered for the

truth.

THE COURT:  I'm going to allow this

question, but I'll give the jury a limiting instruction,

A-2484

|  |  |
|---|---|
| 1 | M. EVANS - DX BY MR. FELLE |
| 09:25:07 2 | it's not being offered for the truth of the description |
| 09:25:10 3 | of the perpetrators, rather it's being offered to show |
| 09:25:14 4 | the impact on the state of mind of anybody who would |
| 09:25:18 5 | have reviewed the file, because that is not hearsay. |
| 09:25:22 6 | MR. RUSS: Okay. I understand the Court's |
| 09:25:24 7 | ruling. And I just, I'm asking for one, I guess, |
| 09:25:30 8 | supplemental instruction. That Detective Evans be |
| 09:25:37 9 | limited to saying that as opposed to giving the details |
| 09:25:41 10 | and any other descriptive information, because I think |
| 09:25:45 11 | that, you know, it can only be offered for the truth. |
| 09:25:48 12 | THE COURT: So, in other words -- |
| 09:25:51 13 | MR. RUSS: The way it will come out, your |
| 09:25:54 14 | Honor, will be in closing arguments, he'll -- I fear Mr. |
| 09:26:01 15 | Felle will use that information to make a truth |
| 09:26:07 16 | argument, a facts argument as opposed to a mental state |
| 09:26:11 17 | argument. He'll say that the perpetrators were a |
| 09:26:15 18 | different height, the perpetrators were a different |
| 09:26:18 19 | description. |
| 09:26:19 20 | THE COURT: But there, see, I guess, Mr. |
| 09:26:21 21 | Russ, what I'm having a little trouble with, there is a |
| 09:26:24 22 | stipulation that Mr. Ortiz was found innocent. Now, |
| 09:26:28 23 | you've had witnesses from the BPD, that they are really |
| 09:26:33 24 | not convinced of that. They think he was involved in |
| 09:26:36 25 | these murders, so, I guess, I don't disagree that there |

|  | 1 | M. EVANS - DX BY MR. FELLE |
| 09:26:44 | 2 | is a hearsay issue with trying to get that evidence in, |
| 09:26:46 | 3 | but, on the other hand, the perpetrators were of a |
| 09:26:53 | 4 | different height, they were a different description than |
| 09:26:57 | 5 | Mr. Ortiz. I mean, we've got people who have pled |
| 09:27:00 | 6 | guilty to this crime. |
| 09:27:02 | 7 | MR. RUSS: And that is in the record. |
| 09:27:04 | 8 | THE COURT: So why can't Mr. Felle argue |
| 09:27:06 | 9 | that in closing arguments? |
| 09:27:11 | 10 | MR. RUSS: He can argue that other people |
| 09:27:13 | 11 | ended up pleading guilty or were convicted, but, I don't |
| 09:27:20 | 12 | believe he can argue that there were alleged |
| 09:27:29 | 13 | perpetrators of different physical descriptions and |
| 09:27:34 | 14 | Detective Stambach should have followed up on that or |
| 09:27:36 | 15 | should have known that Mr. Ortiz's confession wasn't |
| 09:27:43 | 16 | good, that is how it's going to come in. |
| 09:27:47 | 17 | THE COURT: But why? See, I'm not seeing |
| 09:27:51 | 18 | that the description of other perpetrators as being |
| 09:27:56 | 19 | offered here for the truth that they were really the |
| 09:28:01 | 20 | perpetrators if it comes in to show what was in the file |
| 09:28:04 | 21 | in terms of witness statements at the time that the |
| 09:28:10 | 22 | investigation was occurring with respect to the murders. |
| 09:28:17 | 23 | MR. RUSS: Because Mr. Felle is going to |
| 09:28:19 | 24 | argue, I fear, that the three alleged perpetrators were |
| 09:28:22 | 25 | 5' 7" and Mr. Ortiz is 6'6", and it should have been so |

A-2486

316

|   | | M. EVANS - DX BY MR. FELLE |
|---|---|---|
| 09:28:27 | 2 | obvious to Detective Stambach that Mr. Ortiz's |
| 09:28:34 | 3 | confession wasn't valid because there was this other |
| 09:28:38 | 4 | witness statement. |
| 09:28:40 | 5 | THE COURT:  Is that what you're going to |
| 09:28:42 | 6 | argue? |
| 09:28:42 | 7 | MR. FELLE:  Well, I'm certainly going to |
| 09:28:44 | 8 | argue that with all of the evidence in the file, |
| 09:28:47 | 9 | Detective Stambach had an obligation to look at that |
| 09:28:49 | 10 | before arresting a man.  So, if some of the evidence in |
| 09:28:52 | 11 | this was inconsistent with his height, of course that is |
| 09:28:56 | 12 | center to the case. |
| 09:28:57 | 13 | THE COURT:  I don't see why he can't argue |
| 09:29:00 | 14 | that. |
| 09:29:00 | 15 | MR. FELLE:  Right. |
| 09:29:01 | 16 | THE COURT:  I don't see that that is |
| 09:29:03 | 17 | hearsay.  I see that that is just evidence contradictory |
| 09:29:08 | 18 | to the confession that was given by Mr. Ortiz. |
| 09:29:16 | 19 | MR. RUSS:  While I understand your position, |
| 09:29:18 | 20 | your Honor.  You know, we've spent three or four days |
| 09:29:21 | 21 | keeping out statements from other witnesses who aren't |
| 09:29:24 | 22 | here. |
| 09:29:26 | 23 | THE COURT:  Well, well, sure, if they are |
| 09:29:31 | 24 | being offered for the truth.  But I think if there is a |
| 09:29:36 | 25 | limiting instruction that this isn't coming in for the |

A-2487

|   |   |
|---|---|
| | 1 |
| 09:29:39 | 2 |
| 09:29:46 | 3 |
| 09:29:48 | 4 |
| 09:29:51 | 5 |
| 09:29:54 | 6 |
| 09:30:00 | 7 |
| 09:30:03 | 8 |
| 09:30:06 | 9 |
| 09:30:09 | 10 |

M. EVANS - DX BY MR. FELLE

truth, that avoids the hearsay issue.

        MR. RUSS:  I hope you're right, your Honor.

        THE COURT:  Well, I mean, I guess the point is, there is a difference between arguing the true perpetrators were 5 foot 7, and, therefore, Mr. Stambach had an obligation not to accept the veracity of Mr. Ortiz's confession.  That is one thing I agree with you, I think, that is hearsay and that is not permitted.  But to say there was evidence in the file from witnesses suggesting that there were three perpetrators that they were 5 foot 7, and Mr. Stambach didn't follow up on that, there is a distinction there.  I guess I'm seeing a distinction.

        MR. RUSS:  I mean, I understand, your Honor. I guess my fear, as I suggested, is that the evidence may come in as mental stage or mental impressions or as a description of something that is physically in a file, not for the truth, but then when we get to closing argument, it will be argued that it's the truth, and, therefore, you, the jury, should conclude something.

        THE COURT:  All right.  Let me just give it some thought.  I'm having a little trouble understanding the prejudice to the defense since there is really no, despite that, that is what was in the file.  I mean,

|   |   |
|---|---|
| | 1 M. EVANS - DX BY MR. FELLE |
| 09:31:25 | 2 that was in the file. Mr. Stambach, I think, well, he |
| 09:31:27 | 3 testified inconsistently, he said he did look at the |
| 09:31:31 | 4 witness statement, he didn't look at the witness |
| 09:31:34 | 5 statement, you know, it's an issue that the jury is |
| 09:31:36 | 6 going to have to resolve. |
| 09:31:38 | 7 MR. RUSS: I concede, your Honor, it's in |
| 09:31:39 | 8 the file. I also concede, your Honor, that it's in |
| 09:31:42 | 9 Detective Evans' summary, which has been mentioned |
| 09:31:45 | 10 several times, and maybe will be again. And I |
| 09:31:50 | 11 understand, I understand the Court's ruling, but I |
| 09:31:57 | 12 simply would renew my request and appropriate limiting |
| 09:32:01 | 13 instruction be given. |
| 09:32:01 | 14 THE COURT: Let's take a break and let's |
| 09:32:05 | 15 resume at twenty of, okay. Thanks, everybody. |
| 09:32:10 | 16 MR. ORTIZ: Thank you, Judge. |
| 09:32:28 | 17 (Whereupon, there was a break in the |
| 09:32:28 | 18 proceeding.) |
| 09:38:17 | 19 All right. Note the presence of counsel and |
| 09:38:19 | 20 Mr. Ortiz. A couple of things, one is, first of all, to |
| 09:38:24 | 21 Mr. Russ' comment that we've been keeping out-of-court |
| 09:38:27 | 22 statements out throughout this trial, I will state that |
| 09:38:31 | 23 Mr. Felle, though, in his proffer of this evidence as |
| 09:38:35 | 24 opposed to some of his prior proffers of evidence is |
| 09:38:40 | 25 contending that he is not trying to admit this for the |

A-2489

319

                    M. EVANS - DX BY MR. FELLE

09:38:42  2    truth, whereas, previously, he was not taking that

09:38:45  3    position.  I do not view this evidence as coming in for

09:38:50  4    the truth, because it's not being offered to show that

09:38:54  5    the true murders were, in fact, fitting of this

09:38:59  6    description, it's being offered to show the difference

09:39:02  7    between this description that was made by witnesses and

09:39:06  8    Mr. Ortiz's physical description and the difference

09:39:10  9    between those.  So, it, frankly, doesn't matter whether

09:39:15  10   or not the witnesses described the perpetrators who

09:39:18  11   matched those who were ultimately convicted in Federal

09:39:22  12   Court.  The significance of the evidence is that it was

09:39:25  13   in the file and the description, true or not, didn't

09:39:31  14   match Mr. Ortiz.  So, I wanted to write up a proposed

09:39:36  15   limiting instruction and this is what I'm going to do.

09:39:38  16   I am going to allow the testimony to come in, but I'm

09:39:42  17   going to give a limiting instruction that says as

09:39:45  18   follows:  The testimony of the description from the

09:39:49  19   alleged witnesses concerning the perpetrators of the

09:39:55  20   murders is not coming in to show that in fact that the

09:39:59  21   individuals that fit those descriptions were the

09:40:02  22   murderers, it's coming in to show the impact it had on

09:40:07  23   the individual or individuals reviewing the file.

09:40:10  24              Any concerns about that?

09:40:13  25              MR. FELLE:  I would say instead of

| | 1 | M. EVANS - DX BY MR. FELLE |
|---|---|---|
| 09:40:15 | 2 | "reviewing the file," "investigating the case" is the |
| 09:40:19 | 3 | only suggestion I would make. |
| 09:40:21 | 4 | THE COURT: Mr. Russ. |
| 09:40:22 | 5 | MR. RUSS: I'm fine with the Court's |
| 09:40:26 | 6 | instruction. And I'm also fine with Mr. Felle's |
| 09:40:30 | 7 | proposed suggestion for the last few words. |
| 09:40:34 | 8 | THE COURT: Okay. Recognizing that you are |
| 09:40:40 | 9 | objecting to it coming in. |
| 09:40:42 | 10 | MR. RUSS: While maintaining my objection, |
| 09:40:44 | 11 | yes. |
| 09:40:44 | 12 | THE COURT: Let's bring Ms. Evans back in |
| 09:40:48 | 13 | here. |
| 09:41:02 | 14 | You can resume the witness stand, Ms. Evans. |
| 09:41:14 | 15 | And I will allow you to testify. I'm going to give a |
| 09:41:17 | 16 | limiting instruction, but I'll allow you to testify |
| 09:41:19 | 17 | about the witness descriptions in response to Mr. |
| 09:41:22 | 18 | Felle's question. So let's bring our jury back out. |
| 09:41:27 | 19 | THE CLERK: Certainly, Judge. |
| 09:42:18 | 20 | (Whereupon, the jury is escorted into the |
| 09:42:20 | 21 | courtroom.) |
| 09:42:21 | 22 | THE COURT: Welcome back, everybody. |
| 09:42:24 | 23 | Everybody can have a seat. Thank you for your patience. |
| 09:42:25 | 24 | So, ladies and gentlemen, I am going to overrule the |
| 09:42:28 | 25 | objection, and I'm going to let Ms. Evans testify in |

|        |    |                                                            |
|--------|----|------------------------------------------------------------|
|        | 1  | M. EVANS - DX BY MR. FELLE                                 |
| 09:42:31 | 2  | response to Mr. Felle's question about the description    |
| 09:42:34 | 3  | from alleged witnesses concerning the alleged            |
| 09:42:37 | 4  | perpetrators of the murders, but I want to give you a     |
| 09:42:40 | 5  | limiting instruction.  The testimony about the           |
| 09:42:44 | 6  | description from the alleged witnesses concerning the    |
| 09:42:47 | 7  | perpetrators of the murders, which I anticipate is about |
| 09:42:51 | 8  | to come into evidence, is not coming in to show that, in |
| 09:42:54 | 9  | fact, the individuals who committed the murders matched  |
| 09:42:58 | 10 | those descriptions.  In other words, it's not being      |
| 09:43:01 | 11 | offered for the truth of the matter asserted.  Instead,  |
| 09:43:04 | 12 | it's being offered to show the impact it had or could    |
| 09:43:08 | 13 | have had on an individual investigating the case.        |
| 09:43:12 | 14 | Now, with that being said, Mr. Felle,                    |
| 09:43:14 | 15 | whenever you're ready, you can continue.                 |
| 09:43:15 | 16 | MR. FELLE:  Thank you, your Honor.                       |
| 09:43:19 | 17 | CONTINUING DIRECT EXAMINATION BY MR. FELLE:              |
| 09:43:19 | 18 | Q.  And thank you for your patience, Detective Evans.    |
| 09:43:27 | 19 | Just want to bring us back to where we were discussing   |
| 09:43:30 | 20 | this issue.  I had been asking you, when you opened the  |
| 09:43:32 | 21 | cold case involving the arrest and conviction of my      |
| 09:43:35 | 22 | client, did you find certain inconsistencies within the |
| 09:43:40 | 23 | file as to his guilt?                                    |
| 09:43:41 | 24 | A.  Yes.                                                 |
| 09:43:42 | 25 | Q.  And with respect to your review of that file, did   |

|          | 1  | M. EVANS - DX BY MR. FELLE |
|----------|----|----------------------------|
| 09:43:45 | 2  | you review witness statements? |
| 09:43:46 | 3  | A.  Yes. |
| 09:43:47 | 4  | Q.  And did you find that those witness statements |
| 09:43:50 | 5  | were inconsistent with the height of my client? |
| 09:43:53 | 6  | A.  Yes. |
| 09:43:57 | 7  | Q.  Now, we have a stipulation in this case wherein |
| 09:43:59 | 8  | the defendants agreed that my client has been completely |
| 09:44:03 | 9  | -- was completely innocent of these crimes, so we're not |
| 09:44:06 | 10 | allowed, by the Court's ruling, to get into your full |
| 09:44:10 | 11 | investigation, and I don't intend to do that.  In fact, |
| 09:44:13 | 12 | I can't.  But I do want to ask and confirm based on the |
| 09:44:17 | 13 | joint task force their investigation and all of the |
| 09:44:20 | 14 | evidence they obtained, you and the folks on that task |
| 09:44:24 | 15 | force, including the U.S. Attorney General's Office, the |
| 09:44:26 | 16 | FBI, the state investigators and colleagues of yours in |
| 09:44:30 | 17 | the Buffalo Police Department, homicide bureau, all came |
| 09:44:32 | 18 | to the same conclusion that Mr. Ortiz was not involved |
| 09:44:35 | 19 | in that crime, correct? |
| 09:44:36 | 20 | A.  Correct. |
| 09:44:40 | 21 | Q.  Incidentally, do you have an independent |
| 09:44:44 | 22 | recollection of Mr. Ortiz from your discussions with |
| 09:44:46 | 23 | him? |
| 09:44:46 | 24 | A.  Yes. |
| 09:44:47 | 25 | Q.  And you met with Mr. Ortiz at various times, |

A-2493

```
          1              M. EVANS - DX BY MR. FELLE
09:44:52  2    correct?
09:44:52  3       A.  Correct.
09:44:52  4       Q.  And when you met with him, did you do that in
09:44:55  5    person?
09:44:55  6       A.  Yes.
09:44:55  7       Q.  And did you ever feel threatened when you were
09:44:59  8    with him?
09:44:59  9       A.  No.
09:44:59 10       Q.  Did he ever strike you or come across as a
09:45:04 11    violent person in all of your meetings with him?
09:45:06 12       A.  No.
09:45:07 13       Q.  And with respect to your review of this crime,
09:45:09 14    would you agree with me, this was a very violent crime?
09:45:13 15       A.  Yes.
09:45:18 16       Q.  Because of your investigation and the evidence
09:45:21 17    uncovered in the joint task force investigation,
09:45:25 18    ultimately were three individuals indicted on November
09:45:28 19    8th of 2012?
09:45:30 20       A.  Yes.
09:45:33 21       Q.  And were those individuals, the three
09:45:35 22    individuals, did they admit their guilt in that crime?
09:45:41 23       A.  I don't believe all three did.
09:45:44 24       Q.  I think, is one still pending, to some extent,
09:45:47 25    sentencing?
```

A-2494

324

|  |  |  |
|--|--|--|
| | 1 | M. EVANS - DX BY MR. FELLE |
| 09:45:47 | 2 | A.  Possibly, I don't recall the status of his |
| 09:45:51 | 3 | situation. |
| 09:45:51 | 4 | Q.  Based on your investigation and the involvement |
| 09:45:53 | 5 | of all of these individuals you've described in the |
| 09:45:56 | 6 | joint task force, did you find evidence sufficient to |
| 09:45:59 | 7 | conclude that those three individuals committed the |
| 09:46:02 | 8 | murders of the Camacho brothers? |
| 09:46:03 | 9 | A.  Yes. |
| 09:46:04 | 10 | Q.  And did you find that they were working in |
| 09:46:08 | 11 | concert, the three of them only? |
| 09:46:12 | 12 | A.  There may have been other individuals who |
| 09:46:16 | 13 | assisted or were present during the planning. |
| 09:46:21 | 14 | Q.  Okay.  Maybe it was my fault, that was a poor |
| 09:46:24 | 15 | question.  Just to be clear, now that you said that, |
| 09:46:26 | 16 | there was never any indication that my client was any of |
| 09:46:29 | 17 | those individuals, correct? |
| 09:46:30 | 18 | A.  Correct. |
| 09:46:35 | 19 | Q.  And those three individuals that were arrested, |
| 09:46:39 | 20 | did they fit with respect to the evidence that you saw |
| 09:46:42 | 21 | in the cold case you opened? |
| 09:46:44 | 22 | A.  Yes. |
| 09:46:46 | 23 | Q.  Did the evidence in the investigation file |
| 09:46:49 | 24 | corroborate their guilt in the murder of the Camacho |
| 09:46:53 | 25 | brothers? |

A-2495

325

|  | | M. EVANS - CX BY MR. RUSS |
|---|---|---|
| 09:46:53 | 2 | A.  Yes. |
| 09:46:55 | 3 | Q.  And just to be clear, other than the confession |
| 09:46:58 | 4 | that you saw when you investigated this file, did you |
| 09:47:01 | 5 | find any corroborating evidence with respect to Mr. |
| 09:47:05 | 6 | Ortiz being guilty of those crimes? |
| 09:47:07 | 7 | A.  No. |
| 09:47:09 | 8 | Q.  One last question.  Since his release, have you |
| 09:47:12 | 9 | seen Mr. Ortiz? |
| 09:47:13 | 10 | A.  Yes. |
| 09:47:13 | 11 | Q.  And can you tell me about that interaction? |
| 09:47:16 | 12 | A.  It was in person, I don't recall specifically |
| 09:47:18 | 13 | where it was.  We spoke briefly. |
| 09:47:23 | 14 | Q.  And what did he say to you? |
| 09:47:24 | 15 | A.  He thanked us for our investigation, for our |
| 09:47:29 | 16 | work, he was very grateful. |
| 09:47:31 | 17 |         MR. FELLE:  Thank you.  Thank you, |
| 09:47:33 | 18 | Detective.  That is all I have. |
| 09:47:34 | 19 |         THE COURT:  Thank you, Mr. Felle. |
| 09:47:36 | 20 |         Cross examination, Mr. Russ. |
| 09:47:38 | 21 |         MR. RUSS:  Yes.  Thank you, your Honor. |
| 09:47:38 | 22 | CROSS EXAMINATION BY MR. RUSS: |
| 09:47:49 | 23 | Q.  Good morning, Detective Evans. |
| 09:47:51 | 24 | A.  Good morning. |
| 09:47:52 | 25 | Q.  We've never met have, have we? |

A-2496

1          M. EVANS - CX BY MR. RUSS

09:47:54  2      A.   No, we have not.

09:47:56  3      Q.   Nor have we discussed this case?

09:47:58  4      A.   Correct.

09:48:00  5      Q.   I don't have many questions for you, but there

09:48:03  6   are a couple of clarifications I want to make, I guess

09:48:06  7   you would call them.  First of all, the joint task force

09:48:13  8   that was investigating organized crime and gang activity

09:48:20  9   primarily on the west side of Buffalo, is that right?

09:48:23  10     A.   Yes.

09:48:24  11     Q.   And the murder of the Camacho brothers occurred

09:48:30  12  on the west side of Buffalo, correct?

09:48:32  13     A.   Correct.

09:48:35  14     Q.   And there was some suggestion that gangs were

09:48:39  15  involved, is that correct?

09:48:40  16     A.   Individuals who later associated with the Seventh

09:48:46  17  Street gang.

09:48:46  18     Q.   The Seventh Street gang?

09:48:48  19     A.   Yes, sir.

09:48:49  20     Q.   And was there also the Latin Kings?

09:48:51  21     A.   Yes.

09:48:59  22     Q.   And Mr. Felle asked you several times about Mr.

09:49:06  23  Ortiz's case and you said not that it was closed, but

09:49:10  24  that it was cleared?

09:49:11  25     A.   Yes.

|  | 1 | M. EVANS - CX BY MR. RUSS |
| 09:49:11 | 2 | Q.  Is there a distinction between cleared and |
| 09:49:15 | 3 | closed? |
| 09:49:15 | 4 | A.  Well, no homicide investigation is ever closed |
| 09:49:19 | 5 | per se.  However, when they note the disposition of a |
| 09:49:24 | 6 | case, if an arrest has been made, it will be shown as |
| 09:49:29 | 7 | cleared.  If there is an -- if the potential offender is |
| 09:49:38 | 8 | deceased, they can clear that as exceptionally cleared |
| 09:49:45 | 9 | with the death of the suspect.  And it could also be |
| 09:49:48 | 10 | noted as partially cleared if one arrest was made and |
| 09:49:52 | 11 | there may be outstanding co-defendants, if you will. |
| 09:49:56 | 12 | Q.  So, Mr. Ortiz's case or the Camacho brother's |
| 09:50:02 | 13 | case was marked cleared because Mr. Ortiz had pleaded |
| 09:50:06 | 14 | guilty? |
| 09:50:06 | 15 | A.  Yes. |
| 09:50:09 | 16 | Q.  It wasn't closed? |
| 09:50:11 | 17 | A.  Correct, it was not closed. |
| 09:50:31 | 18 | Q.  Now, you were asked some questions concerning the |
| 09:50:34 | 19 | investigation that you performed.  Do you remember those |
| 09:50:37 | 20 | questions? |
| 09:50:38 | 21 | A.  Yes. |
| 09:50:38 | 22 | Q.  And you were asked about the summary statement |
| 09:50:41 | 23 | that you prepared? |
| 09:50:42 | 24 | A.  Yes. |
| 09:50:45 | 25 | Q.  During your investigation, you learned that Mr. |

|          | 1  | M. EVANS - CX BY MR. RUSS |
|----------|----|---------------------------|
| 09:50:48 | 2  | Ortiz confessed to the crime? |
| 09:50:50 | 3  | A.  Yes. |
| 09:50:52 | 4  | Q.  Pleaded guilty to the crime? |
| 09:50:53 | 5  | A.  Yes. |
| 09:50:56 | 6  | Q.  Stood silent when he was sentenced for the crime? |
| 09:50:58 | 7  | A.  I don't know that detail. |
| 09:51:03 | 8  | Q.  After his incarceration, he testified at a |
| 09:51:06 | 9  | federal grand jury that he committed the murders? |
| 09:51:09 | 10 | MR. FELLE:  Your Honor, I object. |
| 09:51:10 | 11 | THE COURT:  Overruled. |
| 09:51:11 | 12 | A.  I know that he did testify in a federal grand |
| 09:51:18 | 13 | jury. |
| 09:51:18 | 14 | Q.  And then you indicated a few minutes ago that you |
| 09:51:22 | 15 | met with Mr. Ortiz several times? |
| 09:51:26 | 16 | A.  Yes. |
| 09:51:26 | 17 | Q.  And you questioned him concerning this situation, |
| 09:51:30 | 18 | right? |
| 09:51:31 | 19 | A.  Correct. |
| 09:51:31 | 20 | Q.  And didn't he, at first, tell you that he had |
| 09:51:34 | 21 | committed the crimes? |
| 09:51:35 | 22 | A.  He did not. |
| 09:51:37 | 23 | Q.  He did not tell you that? |
| 09:51:38 | 24 | A.  No. |
| 09:51:39 | 25 | Q.  You didn't have to convince him to withdraw his |

A-2499

329

|     |     |
| --- | --- |
| | 1 |                    M. EVANS - CX BY MR. RUSS |
| 09:51:43 | 2 | plea? |
| 09:51:43 | 3 |     A.   Eventually, we spoke with him and he said he was |
| 09:51:50 | 4 | innocent. |
| 09:51:51 | 5 |     Q.   So, at first, did he say he was innocent? |
| 09:51:54 | 6 |     A.   No. |
| 09:51:54 | 7 |     Q.   Right.  He, at first, stood by his plea of |
| 09:51:58 | 8 | guilty, correct? |
| 09:51:59 | 9 |     A.   He said that he would not speak with us with |
| 09:52:04 | 10 | regard to the incident.  We did not discuss any details. |
| 09:52:10 | 11 |     Q.   In the first meeting, he certainly didn't tell |
| 09:52:12 | 12 | you he was innocent, did he? |
| 09:52:13 | 13 |     A.   No, he did not. |
| 09:52:15 | 14 |     Q.   Or in your second meeting? |
| 09:52:16 | 15 |     A.   He did not. |
| 09:52:17 | 16 |     Q.   And for a long time, he refused even to talk to |
| 09:52:20 | 17 | you, correct? |
| 09:52:20 | 18 |     A.   About the case, yes. |
| 09:52:23 | 19 |     Q.   Ultimately, you had to confront him with evidence |
| 09:52:27 | 20 | of these inconsistencies and then, at that point, |
| 09:52:32 | 21 | finally, he said, "I'm innocent"? |
| 09:52:34 | 22 |     A.   Yes. |
| 09:52:36 | 23 |     Q.   But that was a lengthy process? |
| 09:52:37 | 24 |     A.   Yes. |
| 09:52:38 | 25 |     Q.   That wasn't your first meeting? |

A-2500

|  | 1 | M. EVANS - CX BY MR. RUSS |
|---|---|---|
| 09:52:39 | 2 | A.  Correct. |
| 09:52:52 | 3 | Q.  The joint task force investigation of organized |
| 09:52:57 | 4 | crime and gang activity, part of its mission was to |
| 09:53:04 | 5 | examine cold cases like this one, correct? |
| 09:53:07 | 6 | A.  Yes. |
| 09:53:08 | 7 | Q.  But, no part of its mission was to ascribe fault |
| 09:53:14 | 8 | for any mistaken convictions or mistaken police conduct? |
| 09:53:22 | 9 | A.  True. |
| 09:53:24 | 10 | Q.  And you made no finding that Detective Stambach |
| 09:53:27 | 11 | had done anything wrong? |
| 09:53:28 | 12 | A.  Correct. |
| 09:53:39 | 13 | Q.  Now, in your investigation concerning the murder |
| 09:53:43 | 14 | of the Camacho brothers, did you yourself make a |
| 09:53:52 | 15 | determination as to who was involved? |
| 09:53:56 | 16 | A.  It was a group effort. |
| 09:54:00 | 17 | Q.  And did you obtain confessions from an individual |
| 09:54:06 | 18 | or individuals? |
| 09:54:07 | 19 | A.  That participated in the homicides, yes. |
| 09:54:13 | 20 | Q.  And, obviously, that was years after the actual |
| 09:54:17 | 21 | homicide, correct? |
| 09:54:18 | 22 | A.  Correct. |
| 09:54:19 | 23 | Q.  So, obviously, Detective Stambach didn't have |
| 09:54:22 | 24 | that information? |
| 09:54:23 | 25 | A.  Correct. |

A-2501

331

|  |  |
|---|---|
| | 1 |

                                    M. EVANS - CX BY MR. RUSS

09:54:35    2              MR. RUSS:  That's all I have, your Honor.

09:54:37    3    Thank you, Detective.

09:54:38    4              THE COURT:  Thank you, Mr. Russ.

09:54:40    5              Any further direct, your Honor?

09:54:42    6              MR. FELLE:  No, your Honor.

09:54:43    7              THE COURT:  Ms. Evans, you can step down,

09:54:47    8    put your mask on when you do.

09:54:49    9              THE WITNESS:  Thank you, your Honor.

09:54:49   10              THE COURT:  Why don't we take a break and

09:54:52   11    we'll see if your next witness is here and plan on a

09:54:56   12    five, five to ten minute break and we'll see you back

09:54:59   13    here shortly.  Thank you.

09:55:01   14              (Whereupon, the jury is escorted from the

09:55:04   15    courtroom.)

09:55:25   16              THE COURT:  All right.  Let's see if Mr.

09:55:28   17    Lauber is here.

09:56:07   18              MR. SAHASRABUDEHE:  The witness is here,

09:56:08   19    your Honor.

09:56:09   20              THE COURT:  He is here.  Why don't we plan

09:56:11   21    on putting him on at 10 o'clock, okay?

09:56:16   22              MR. SAHASRABUDEHE:  Perfect.

09:56:19   23              (Whereupon, there was a break in the

09:56:21   24    proceeding.)

10:02:51   25              THE COURT:  All right is the Plaintiff ready

A-2502

|   |   |
|---|---|
| | 1 |

```
                1              M. EVANS - CX BY MR. RUSS
10:02:52        2    Mr. Felle.
10:02:53        3              MR. FELLE:  Yes, your Honor.
10:02:54        4              THE COURT:  Defense ready?
10:02:55        5              MR. RUSS:  Yes, your Honor, thank you.
10:02:56        6              THE COURT:  Let's bring our jury back in.
10:02:56        7              (Whereupon, the jury was escorted into the
10:03:47        8    courtroom.)
10:03:47        9              THE COURT:  All right.  Welcome back,
10:03:49       10    everybody.  Everybody can have a seat.  Mr. Felle, is
10:03:52       11    the Plaintiff ready to call his next witness?
10:03:55       12              MR. FELLE:  We are, your Honor.  We would
10:03:56       13    like to call at this time Detective Mark Lauber to the
10:04:02       14    stand.
10:04:02       15              THE COURT:  All right.  Jim, if we could
10:04:04       16    have Mr. Lauber come in.
10:04:15       17              Come on in, I'll have you step up to the
10:04:19       18    bench to be sworn in to take the witness stand.
10:04:23       19              THE CLERK:  Raise your right hand.
10:04:23       20              THE COURT:  That's your left
10:04:34       21              THE WITNESS:  My other right.  Good way to
10:04:36       22    start.
10:04:37       23    (M. LAUBER WAS CALLED TO THE WITNESS STAND AND SWORN.)
10:04:40       24              THE CLERK:  You can stand walk around that,
10:04:42       25    to your right, around the stand, there is a chair over
```

A-2503

|  | 1 | M. EVANS - CX BY MR. RUSS |
| 10:04:53 | 2 | there and take a seat, watch your head.  You may remove |
| 10:05:00 | 3 | your mask and state your first and last name and spell |
| 10:05:03 | 4 | the last name for the record. |
| 10:05:04 | 5 | THE WITNESS:  Mark Joseph Lauber, my last |
| 10:05:07 | 6 | name is spelled L-a-u-b-e-r. |
| 10:05:10 | 7 | THE COURT:  Sir, my name is Judge Wolford, |
| 10:05:12 | 8 | and I have some instructions for you before you get |
| 10:05:15 | 9 | started.  First of all, the reason you're here is to |
| 10:05:18 | 10 | testify for the benefit of the Ladies and Gentlemen of |
| 10:05:21 | 11 | the Jury.  Direct your answers towards them, look at |
| 10:05:24 | 12 | them when you're testifying. |
| 10:05:25 | 13 | THE WITNESS:  I always do, ma'am. |
| 10:05:26 | 14 | THE COURT:  Only answer the question that |
| 10:05:28 | 15 | you're asked.  Don't volunteer information.  It's up to |
| 10:05:32 | 16 | the attorneys to elicit the answers that they are |
| 10:05:37 | 17 | asking.  If there is an objection, wait until I rule and |
| 10:05:40 | 18 | I'll let you know if you can answer it.  Speak slowly, |
| 10:05:45 | 19 | clearly so everyone can hear you and so my court |
| 10:05:48 | 20 | reporter can take down your testimony.  Do you |
| 10:05:49 | 21 | understand? |
| 10:05:49 | 22 | THE WITNESS:  Yes, I do. |
| 10:05:50 | 23 | THE COURT:  Thank you.  You can proceed |
| 10:05:52 | 24 | whenever ready, Mr. Felle. |
| 10:05:53 | 25 | MR. FELLE:  Thank you, your Honor.  Ladies |

A-2504

334

|            | 1  | M. LAUBER - DX BY MR. FELLE |
|------------|----|-----------------------------|
| 10:05:53   | 2  | and gentlemen. |
| 10:05:54   | 3  | DIRECT EXAMINATION BY MR. FELLE: |
| 10:05:54   | 4  | Q.   Former Detective Lauber, how are you? |
| 10:05:59   | 5  | A.   How are you? |
| 10:06:01   | 6  | Q.   I'd like to tell you my questions will get harder |
| 10:06:07   | 7  | than the initial question, but not too much. |
| 10:06:09   | 8  | A.   All I will do is tell the truth. |
| 10:06:12   | 9  | Q.   I appreciate you drove from Buffalo.  You're here |
| 10:06:16   | 10 | pursuant to the subpoena we served on you? |
| 10:06:18   | 11 | A.   Yes, there was a subpoena served on corporation |
| 10:06:20   | 12 | counsel and I received something in the mail last week. |
| 10:06:24   | 13 | Q.   Okay.  Again, I sincerely appreciate you being |
| 10:06:28   | 14 | here and taking the time to be here in court. |
| 10:06:30   | 15 | Sir, can you tell us about your employment with |
| 10:06:33   | 16 | the Buffalo Police Department?  How long were you |
| 10:06:36   | 17 | employed there? |
| 10:06:36   | 18 | A.   Twenty-three years. |
| 10:06:37   | 19 | Q.   And during that 23 years, what positions did you |
| 10:06:40   | 20 | hold? |
| 10:06:40   | 21 | A.   Patrol officer and detective. |
| 10:06:45   | 22 | Q.   Did there come a point in time when you were a |
| 10:06:47   | 23 | homicide detective? |
| 10:06:48   | 24 | A.   Yes. |
| 10:06:49   | 25 | Q.   And for how long were you a homicide detective? |

A-2505

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | M. LAUBER - DX BY MR. FELLE                            |
| 10:06:52 | 2  | A.  Approximately 11 years.                            |
| 10:06:54 | 3  | Q.  And were you a homicide detective back in         |
| 10:06:59 | 4  | November of 2004?                                      |
| 10:06:59 | 5  | A.  The unit was called "major crimes unit," I think, |
| 10:07:08 | 6  | and one of the responsibilities, in addition to many  |
| 10:07:10 | 7  | others, was investigating homicides, so, yes, I was.  |
| 10:07:13 | 8  | Q.  And we talked about that earlier with a couple of |
| 10:07:17 | 9  | the detectives.  There was a brief period of time, was |
| 10:07:20 | 10 | there not, that the homicide department was essentially |
| 10:07:23 | 11 | absorbed by the major crimes unit?                     |
| 10:07:25 | 12 | A.  Yes.                                               |
| 10:07:25 | 13 | Q.  And was that a little less than a year?           |
| 10:07:28 | 14 | A.  I'm not quite sure of the time frame, but it      |
| 10:07:30 | 15 | wasn't very long.                                      |
| 10:07:31 | 16 | Q.  Fair enough.  Semantically, even though you may   |
| 10:07:36 | 17 | have been formally a homicide detective, you, at the   |
| 10:07:39 | 18 | time of November of 2004, were part of the major crimes |
| 10:07:42 | 19 | unit as a detective, fair to say?                      |
| 10:07:44 | 20 | A.  Yes.                                               |
| 10:07:44 | 21 | Q.  And have you since retired from the Buffalo       |
| 10:07:48 | 22 | Police Department?                                     |
| 10:07:48 | 23 | A.  Yes.                                               |
| 10:07:48 | 24 | Q.  And when did you retire?                           |
| 10:07:50 | 25 | A.  June 30th, 2011.                                   |

A-2506

336

1              M. LAUBER - DX BY MR. FELLE

10:07:54    2       Q.   All right.   And since retirement, have you found

10:07:57    3   other employment?

10:07:57    4       A.   I have.

10:07:58    5       Q.   And do you work with Detective Stambach at all?

10:08:01    6       A.   I do not.

10:08:02    7       Q.   Detective Vaughn?

10:08:03    8       A.   I do not.

10:08:05    9       Q.   And do you work for Detective Stambach's

10:08:09   10   investigation company?

10:08:10   11       A.   I do not.

10:08:14   12       Q.   Prior to today, you and I have not met about this

10:08:17   13   case, have we?

10:08:18   14       A.   We have not.

10:08:19   15       Q.   So we didn't take your deposition at all,

10:08:24   16   correct?

10:08:24   17       A.   That's correct.

10:08:25   18       Q.   So prior to today, what document, if any, did you

10:08:28   19   review to help prepare for your testimony?

10:08:30   20       A.   I briefly looked at a P73 memorandum that was

10:08:36   21   completed by me in 2004.   I don't remember the exact

10:08:40   22   date, but, yes, in relation to this case, I looked at a

10:08:43   23   document that I prepared for this.

10:08:45   24       Q.   And based on your review of that document, did

10:08:49   25   that appear to be your only involvement with Mr. Ortiz?

A-2507

337

| | |
|---|---|
| 1 | M. LAUBER - DX BY MR. FELLE |
| 10:08:53  2 | A.  It was. |
| 10:08:54  3 | Q.  Okay.  And we're going to review that in a |
| 10:08:58  4 | moment.  In addition to the documents, did you have any |
| 10:09:00  5 | conversations with any of the other police officers or |
| 10:09:02  6 | detectives in this matter? |
| 10:09:03  7 | A.  Recently or back then? |
| 10:09:05  8 | Q.  Let's start recently.  In preparation for trial |
| 10:09:09  9 | testimony, did you speak to anybody? |
| 10:09:10  10 | A.  No. |
| 10:09:11  11 | Q.  Did you speak to Officer, former Officer Stambach |
| 10:09:15  12 | at all? |
| 10:09:16  13 | A.  No. |
| 10:09:16  14 | Q.  Former Detective Vaughn? |
| 10:09:19  15 | A.  No. |
| 10:09:19  16 | Q.  How about Officer Torres? |
| 10:09:25  17 | A.  I'm not familiar with Officer Torres. |
| 10:09:28  18 | Q.  So then you made the distinction about recently |
| 10:09:31  19 | as opposed to a long time ago.  Was there a point in |
| 10:09:34  20 | time a long time ago that you had discussions with those |
| 10:09:36  21 | detectives about the case involving Mr. Ortiz? |
| 10:09:39  22 | A.  No. |
| 10:09:43  23 | Q.  Maybe you can just explain the distinction you |
| 10:09:46  24 | had made.  If you had had conversations with them at any |
| 10:09:49  25 | time and/or more recently, have you ever had any |

A-2508

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | M. LAUBER - DX BY MR. FELLE                                   |
| 10:09:53 | 2  | conversations with anybody about the arrest of Mr.           |
| 10:09:57 | 3  | Ortiz?                                                        |
| 10:09:57 | 4  | A.  No.                                                       |
| 10:09:58 | 5  | Q.  Now, sir, I want to show you, I believe it's             |
| 10:10:05 | 6  | marked into evidence, Dawn, maybe you can tell me, it's      |
| 10:10:10 | 7  | the P73 of Mark Lauber.  Is that marked in evidence?         |
| 10:10:14 | 8  | THE COURT:  I believe it is in evidence.  6C                 |
| 10:10:17 | 9  | is in evidence, but.                                         |
| 10:10:25 | 10 | THE CLERK:  I have 6 A and B.                                |
| 10:11:29 | 11 | MR. RUSS:  I'm willing to stipulate that it                  |
| 10:11:31 | 12 | can come in, if it's not already in.                         |
| 10:11:34 | 13 | THE COURT:  Some of them came in as Defense                  |
| 10:11:37 | 14 | Exhibits.  In any event, you want to mark, I don't want      |
| 10:11:39 | 15 | to mark -- you don't have.                                   |
| 10:11:54 | 16 | MR. SAHASRABUDEHE:  Is it possible it is                     |
| 10:11:56 | 17 | 401?                                                          |
| 10:11:56 | 18 | THE COURT:  I just don't want to duplicate,                  |
| 10:11:59 | 19 | so maybe we can mark this 6 D.  And it may be                |
| 10:12:03 | 20 | duplicative.  If so, we'll figure that out afterwards.       |
| 10:12:07 | 21 | As long as there is no objection to 6D coming in, right,     |
| 10:12:11 | 22 | Mr. Russ?                                                    |
| 10:12:11 | 23 | MR. RUSS:  Correct, your Honor.                              |
| 10:12:12 | 24 | THE COURT:  So 6D will come into evidence.                   |
| 10:12:12 | 25 | **(Whereupon, Exhibit 6D was received into**                 |

A-2509

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | M. LAUBER - DX BY MR. FELLE                            |
| 10:12:12 | 2  | **evidence.**)                                         |
| 10:12:25 | 3  | THE CLERK: I think it was some confusion               |
| 10:12:29 | 4  | when 6 C was discussed, there was no 6 B.              |
| 10:12:33 | 5  | THE COURT: Okay. For purposes of this,                 |
| 10:12:35 | 6  | this P73 will be marked 6D and it will come into       |
| 10:12:39 | 7  | evidence. And the date of that, Mr. Felle?             |
| 10:12:43 | 8  | MR. FELLE: November 15th, 2004.                        |
| 10:12:46 | 9  | Q. Mr. Lauber, before I put the P73 up, can you tell   |
| 10:12:51 | 10 | me and the jury what is a P73?                         |
| 10:12:54 | 11 | A. Intra-department memorandum that is used for        |
| 10:12:58 | 12 | communication within the police department.            |
| 10:13:00 | 13 | Q. And used for investigators who are working on the   |
| 10:13:03 | 14 | same case?                                             |
| 10:13:04 | 15 | A. It's a standard document that everyone in the       |
| 10:13:07 | 16 | police department uses if they have to make a          |
| 10:13:11 | 17 | memorandum.                                            |
| 10:13:11 | 18 | Q. And is it placed if had the an investigative        |
| 10:13:15 | 19 | file?                                                  |
| 10:13:15 | 20 | A. If you're speaking of a homicide file, yes, that    |
| 10:13:17 | 21 | would be the case.                                     |
| 10:13:18 | 22 | Q. And common sense, but you have investigators        |
| 10:13:22 | 23 | working different shifts and they may be working on the|
| 10:13:25 | 24 | same criminal investigation, correct?                  |
| 10:13:26 | 25 | A. Actually, no, there is usually a case officer and   |

A-2510

340

1                M. LAUBER - DX BY MR. FELLE

10:13:30   2   they are in charge of a file and they would be the

10:13:32   3   person that would keeping track of any activity in the

10:13:36   4   file.

10:13:37   5       Q.  But would it be fair to say there, at different

10:13:40   6   times, different shifts, different officers, detectives,

10:13:43   7   could be working on the investigation of a file?

10:13:44   8       A.  I would not necessarily agree with that.  But

10:13:49   9   there -- there were four squads, we'll say 24 people

10:13:53  10   assigned there, you would have a sergeant and four

10:13:57  11   detectives.  We would work four days with the same crew

10:14:00  12   at night, and then we would be on our days off and

10:14:03  13   another crew would come in and do the exact same

10:14:07  14   schedule every 15 days.  The unit would be together for

10:14:11  15   one day where everybody in the unit would be working

10:14:13  16   together.  That is pretty much how the scheduling went

10:14:15  17   as far as the filing went, too.  Because at the time

10:14:20  18   there were so many different responsibilities like

10:14:23  19   robberies, and so you could be working a bike robbery on

10:14:26  20   Tuesday and on Wednesday, working double murder, very

10:14:30  21   ineffective.  So what would happen is you would try and

10:14:34  22   keep track of everything going on at the time the vine

10:14:37  23   of work was too much to do that.

10:14:39  24       Q.  Okay.  Thank you.  Mr. Lauber, but let me ask you

10:14:44  25   this, this P73 and other P73s is the way you

A-2511

341

|  | | |
|---|---|---|
|  | 1 | M. LAUBER - DX BY MR. FELLE |
| 10:14:49 | 2 | communicated with officers that may be working different |
| 10:14:55 | 3 | times or different shifts? |
| 10:14:56 | 4 | A.  Correct.  If you had a memorandum, you would do |
| 10:14:59 | 5 | that and it would go in the file. |
| 10:15:01 | 6 | Q.  It would be in an investigative file and others |
| 10:15:04 | 7 | could see what was done on the file? |
| 10:15:06 | 8 | A.  Yes, you would physically place it in the file. |
| 10:15:08 | 9 | Q.  So, Mr. Lauber, let's show you now what you |
| 10:15:11 | 10 | described earlier as the document.  You reviewed this? |
| 10:15:18 | 11 | A.  This is awesome. |
| 10:15:19 | 12 | Q.  Isn't that great? |
| 10:15:20 | 13 | A.  You used to hold the piece of paper in front of |
| 10:15:28 | 14 | you and hand it around to the jury. |
| 10:15:30 | 15 | Q.  This is the -- this is the P73. |
| 10:15:38 | 16 | A.  I don't doubt it is mine.  I would like to see if |
| 10:15:46 | 17 | that is my signature.  Yes, that is mine. |
| 10:15:49 | 18 | Q.  And when I asked you about the documents that you |
| 10:15:51 | 19 | reviewed to prepare for today's testimony, is this the |
| 10:15:54 | 20 | document that you were referring to? |
| 10:15:55 | 21 | A.  Yes, it is. |
| 10:15:56 | 22 | Q.  And to be clear, this was your only involvement |
| 10:15:59 | 23 | or interaction with Mr. Ortiz, correct? |
| 10:16:01 | 24 | A.  That's correct. |
| 10:16:02 | 25 | Q.  And we've already had some testimony about this |

A-2512

342

|           |    |                                                      |
|-----------|----|------------------------------------------------------|
|           | 1  | M. LAUBER - DX BY MR. FELLE                          |
| 10:16:06  | 2  | P73, but just so that all of the evidence is in front of |
| 10:16:10  | 3  | the jury, I want you to just tell us briefly, that   |
| 10:16:13  | 4  | encounter was initiated when Mr. Ortiz approached Police |
| 10:16:28  | 5  | Officer Schreckenberger?                              |
| 10:16:28  | 6  | A.  Yes, I tried to help.                            |
| 10:16:30  | 7  | Q.  So, Mr. Ortiz approached her and then she        |
| 10:16:34  | 8  | contacted you, correct?                              |
| 10:16:34  | 9  | A.  That's correct.                                  |
| 10:16:37  | 10 | Q.  Okay.  And then you arrived on the scene,        |
| 10:16:39  | 11 | correct?                                             |
| 10:16:40  | 12 | A.  Correct.                                         |
| 10:17:23  | 13 | THE COURT:  Do we have a hard copy?                  |
| 10:17:25  | 14 | MR. FELLE:  I do have a blow up of the same          |
| 10:17:27  | 15 | P73, and can put it on the for the jurors' sake.     |
| 10:17:32  | 16 | THE COURT:  As opposed to putting the easel          |
| 10:17:35  | 17 | over there, do we have another copy of this that we  |
| 10:17:39  | 18 | could hand to the jury?                              |
| 10:17:40  | 19 | Mr. Sahasrabudhe seems to be grabbing it out         |
| 10:17:43  | 20 | of his binder.                                       |
| 10:17:44  | 21 | THE COURT:  You have one to hand it to Dawn.         |
| 10:18:14  | 22 | Q.  Mr. Lauber, I was asking this inaction occurred  |
| 10:18:19  | 23 | when he approached Police Officer Schreckenberger,   |
| 10:18:21  | 24 | correct?                                             |
| 10:18:21  | 25 | A.  Yes.                                             |

A-2513

343

|  | M. LAUBER - DX BY MR. FELLE |
|---|---|
| 1 | |

10:18:22  2    Q.  And you prepared this P73, correct?

10:18:25  3    A.  Yes.

10:18:25  4    Q.  And the information that is contained in there,

10:18:27  5  it was known to you at that time, correct?

10:18:29  6    A.  Yes.

10:18:29  7    Q.  And it's not that multiple people contributed to

10:18:34  8  this, right?

10:18:34  9    A.  No, I'm the person who authored the document.

10:18:37  10    Q.  Okay.  And so, you were aware when you arrived at

10:18:43  11  the scene that when Mr. Ortiz approached the patrol

10:18:46  12  officer, that he was claiming that people were trying to

10:18:49  13  kill him, correct?

10:18:49  14    A.  Yes.

10:18:50  15    Q.  And he was Spanish speaking, correct?

10:18:53  16    A.  Yes.

10:18:53  17    Q.  And you had invited, it looks like, an Officer

10:18:58  18  Rodriguez to interpret?

10:18:59  19    A.  Yes, a police officer, Padillo Rodriguez.

10:19:02  20    Q.  And do you speak Spanish, sir?

10:19:05  21    A.  I do not.

10:19:05  22    Q.  And when you arrived at the scene, did Mr. Ortiz

10:19:11  23  tell you that unknown people were trying to kill him?

10:19:14  24    A.  Yes.

10:19:17  25    Q.  And did he appear to be in a scared and

A-2514

|  | 1 | M. LAUBER - DX BY MR. FELLE |
|---|---|---|
| 10:19:20 | 2 | disoriented state? |
| 10:19:22 | 3 | A.  Scared, disoriented and high from smoking |
| 10:19:26 | 4 | marijuana, yes. |
| 10:19:30 | 5 | Q.  And you questioned him about who was trying to |
| 10:19:32 | 6 | kill him, correct? |
| 10:19:33 | 7 | A.  Yes. |
| 10:19:34 | 8 | Q.  And he was just unable to really articulate any |
| 10:19:41 | 9 | specifics regarding that claim, correct? |
| 10:19:43 | 10 | A.  That's correct. |
| 10:19:43 | 11 | Q.  As a result of meeting with Mr. Ortiz, did you |
| 10:19:47 | 12 | make a decision that he was in need of medical and |
| 10:19:49 | 13 | psychiatric care? |
| 10:19:50 | 14 | A.  It was determined that he, you know, his behavior |
| 10:19:54 | 15 | was -- it needed to be addressed, and I, not being a |
| 10:20:00 | 16 | psychiatric person, decided that perhaps he should go |
| 10:20:03 | 17 | and see if he could go and get some help. |
| 10:20:06 | 18 | THE COURT:  Brian, we'll hold off.  When we |
| 10:20:09 | 19 | take a break, we'll have you look at the monitor. |
| 10:20:12 | 20 | Go ahead, Mr. Lauber. |
| 10:20:14 | 21 | A.  Yes.  It was decided that, based on that |
| 10:20:16 | 22 | information that we had during this encounter, that |
| 10:20:20 | 23 | perhaps that is something that he should avail himself |
| 10:20:23 | 24 | to and he agreed and went voluntarily. |
| 10:20:25 | 25 | Q.  And so, and I understand you're not a doctor, but |

A-2515

345

|  | | M. LAUBER - DX BY MR. FELLE |
|---|---|---|
| 10:20:29 | 2 | based on your observations of Mr. Ortiz, you felt he was |
| 10:20:32 | 3 | in need of a psychiatric evaluation, correct? |
| 10:20:34 | 4 | A.  Well, medical, too, because of the fact he had |
| 10:20:37 | 5 | been smoking marijuana, and I don't know how the effects |
| 10:20:39 | 6 | of that, you know, cause him to perhaps have this |
| 10:20:44 | 7 | behavior or this was how he was ordinarily, so, you |
| 10:20:47 | 8 | know, the thought was he should get an evaluation and he |
| 10:20:51 | 9 | agreed and that is what happened. |
| 10:20:52 | 10 | Q.  And then you had called an ambulance and he was |
| 10:20:55 | 11 | brought to Buffalo General Hospital, correct? |
| 10:20:57 | 12 | A.  Yes.  Rural Metro ambulance took him to Buffalo |
| 10:21:03 | 13 | General Hospital, correct. |
| 10:21:04 | 14 | Q.  And if I'm reading the P73 correct, the encounter |
| 10:21:09 | 15 | started about 11:05 a.m., and you departed about 11:35 |
| 10:21:15 | 16 | a.m., correct? |
| 10:21:16 | 17 | A.  Correct. |
| 10:21:16 | 18 | Q.  So, about 30 minutes you were with Mr. Ortiz? |
| 10:21:20 | 19 | A.  Correct. |
| 10:21:21 | 20 | Q.  And when we look at the P73, it says people were |
| 10:21:25 | 21 | trying to kill him because they thought he was involved |
| 10:21:29 | 22 | in the homicides of Camacho brothers.  Do you see that? |
| 10:21:33 | 23 | A.  Yes. |
| 10:21:33 | 24 | Q.  And did you ask him about the Camacho brothers' |
| 10:21:37 | 25 | murders? |

1           M. LAUBER - DX BY MR. FELLE

10:21:38   2      A.  He had spoken to the patrol officers first, and

10:21:42   3   based on what they told me on the behavior, he exhibited

10:21:46   4   to me, he was under the influence of marijuana.  I

10:21:50   5   prefer not to interview people that are under the

10:21:53   6   influence of marijuana, alcohol or any other drugs.  I

10:21:56   7   felt the best way to go is get a medical examination and

10:22:03   8   come down from his high, so to speak.

10:22:05   9      Q.  It would be a correct statement that there was

10:22:07  10   nothing about the 30 minutes that you spent with Mr.

10:22:10  11   Ortiz where he articulated anything credible about his

10:22:13  12   involvement or having any information about the Camacho

10:22:17  13   brothers' murder?

10:22:18  14           MR. RUSS:  Your Honor, I object.

10:22:19  15           THE COURT:  Sustained.

10:22:19  16      Q.  As a result of this encounter with Mr. Ortiz, was

10:22:22  17   he considered a suspect in the murder investigation?

10:22:25  18      A.  Well, he was on a radar, but, again, we had this

10:22:30  19   situation where this man was smoking marijuana, I can't

10:22:34  20   tell you how that affected him, and so my answer to that

10:22:39  21   is he certainly could have been because the case wasn't

10:22:44  22   solved at that point.

10:22:45  23      Q.  Did you make any efforts to schedule to interview

10:22:49  24   him?

10:22:50  25      A.  The next few days, he was off and usually there

A-2517

347

|   | M. LAUBER - DX BY MR. FELLE |
|---|---|
| 1 | M. LAUBER - DX BY MR. FELLE |

10:22:53  2  is a 72-day hold when they are admitted to a hospital.

10:22:57  3  I had no encounter with him after that.  So, no, when I

10:23:01  4  came back to work, I believe there had been an arrest

10:23:05  5  made and my involvement was finished.

10:23:07  6      Q.  So let me ask you, when you say a 72-hour hold,

10:23:11  7  is that normally 72 hours, hands off, let's get this guy

10:23:16  8  better?

10:23:16  9      A.  At the time, the mental health laws were slightly

10:23:20  10  different than they are now.  If somebody voluntarily

10:23:23  11  went to the hospital for an evaluation, they certainly

10:23:26  12  could voluntarily sign themselves out.  There was

10:23:29  13  nothing really to hold them in the hospital, so I don't

10:23:34  14  know.  In that particular unit, we didn't have access to

10:23:37  15  someone in that unit as a police officer, it was not

10:23:40  16  something we did because they were basically in lock up.

10:23:43  17  So, you know, it wasn't at a time when somebody we would

10:23:49  18  sit outside the room waiting for them to get discharged.

10:23:52  19  There was no patrol officer assigned to keep them in the

10:23:56  20  custody.  He was in their care.

10:23:57  21      Q.  Did you come to realize or did you find out that

10:24:02  22  other detectives from your department went to see Mr.

10:24:06  23  Ortiz while he was in Buffalo General Hospital?

10:24:09  24      A.  I have no knowledge of that, no.

10:24:10  25      Q.  With respect to your involvement with Mr. Ortiz

A-2518

348

|          |    |                                                               |
|----------|----|---------------------------------------------------------------|
|          | 1  | M. LAUBER - CX BY MR. RUSS                                     |
| 10:24:16 | 2  | on November 15th of 2004, did you ever communicate your       |
| 10:24:20 | 3  | interactions with Mr. Ortiz to Mr. Stambach before Mr.        |
| 10:24:25 | 4  | Ortiz was arrested?                                            |
| 10:24:26 | 5  | A.  I was off duty.  I didn't see anybody in our              |
| 10:24:31 | 6  | unit, so the answer would be no.                              |
| 10:24:36 | 7  | MR. FELLE:  I believe that's all I have, your                 |
| 10:24:38 | 8  | Honor.                                                         |
| 10:24:38 | 9  | THE COURT:  Okay.  Thank you, Mr. Felle.                       |
| 10:24:40 | 10 | Cross examination, Mr. Russ?                                   |
| 10:24:41 | 11 | MR. RUSS:  Yes, your Honor, very briefly.                      |
| 10:24:42 | 12 | Thank you.                                                     |
| 10:24:42 | 13 | CROSS EXAMINATION BY MR. RUSS:                                 |
| 10:24:53 | 14 | Q.  Detective Lauber, we have never met, have we?            |
| 10:24:58 | 15 | A.  I don't believe we have.                                  |
| 10:24:59 | 16 | Q.  I'm Hugh Russ and I represent Detective Stambach.        |
| 10:25:05 | 17 | Good to meet you and we've never spoken about this case?      |
| 10:25:08 | 18 | A.  No.                                                        |
| 10:25:08 | 19 | Q.  So, if I understand your P 73, Mr. Ortiz actually       |
| 10:25:17 | 20 | jumped into the police car?                                   |
| 10:25:20 | 21 | A.  According to the patrol officers, that is what          |
| 10:25:22 | 22 | happened, yes.                                                 |
| 10:25:23 | 23 | Q.  So he volunteered, so to speak, for the                 |
| 10:25:28 | 24 | interaction?                                                   |
| 10:25:30 | 25 | A.  To my understanding of it, yes.                          |

A-2519

|  |  |  |
|---|---|---|
|  | 1 | M. LAUBER - CX BY MR. RUSS |
| 10:25:32 | 2 | Q.  He wasn't pulled over or stopped or anything like |
| 10:25:35 | 3 | that? |
| 10:25:35 | 4 | A.  No, not to my knowledge, no. |
| 10:25:37 | 5 | Q.  He initiated the interaction? |
| 10:25:39 | 6 | A.  That is what I was told, yes. |
| 10:25:41 | 7 | Q.  And at the conclusion of your roughly 30 minutes |
| 10:25:49 | 8 | with him, you didn't arrest him, right? |
| 10:25:53 | 9 | A.  No. |
| 10:25:54 | 10 | Q.  You didn't take him into custody? |
| 10:25:57 | 11 | A.  No. |
| 10:25:57 | 12 | Q.  You didn't detain him in any way? |
| 10:25:59 | 13 | A.  No. |
| 10:26:00 | 14 | Q.  You merely arranged for a transport by ambulance? |
| 10:26:04 | 15 | A.  Yes. |
| 10:26:18 | 16 | Q.  So I'm going to show you, again, my copy of -- |
| 10:26:23 | 17 | now mine is not working, either.  My copy of your P73 |
| 10:26:29 | 18 | which, and, of course, we know that this is the P 73 |
| 10:26:44 | 19 | that you prepared concerning this encounter with Mr. |
| 10:26:50 | 20 | Ortiz, correct? |
| 10:26:51 | 21 | A.  Yes. |
| 10:26:53 | 22 | Q.  Can you read to the jury out loud just your third |
| 10:26:57 | 23 | paragraph? |
| 10:27:00 | 24 | A.  "Ortiz had told the officers that persons unknown |
| 10:27:05 | 25 | were trying to kill him because they thought he was |

A-2520

350

|     |                                                                       |
|-----|-----------------------------------------------------------------------|
|   1 | M. LAUBER - CX BY MR. RUSS                                             |

10:27:08   2   involved in the homicides of Nelson and Miguel Camacho.

10:27:12   3   We talked with Ortiz, and he stated he just came to

10:27:16   4   Buffalo from Puerto Rico.  Ortiz admitted that he had

10:27:21   5   just smoked marijuana.  His eyes were glassy, and he

10:27:25   6   exhibited signs of being under the influence of

10:27:29   7   marijuana diluted and steady red gaze.  And he stated

10:27:33   8   that people were attempting to kill him, although he

10:27:36   9   couldn't articulate the manner in which the attempts

10:27:38   10   were being made, the location of which the attempts were

10:27:42   11   being made the attempts or motives for those trying to

10:27:50   12   kill him."

10:27:51   13       Q.  And if I understand you correctly, at that time

10:27:53   14   you made no effort to investigate the various

10:27:57   15   allegations that Mr. Ortiz made at that point?

10:28:01   16       A.  That's correct.

10:28:03   17       Q.  And this ended your involvement with Mr. Ortiz?

10:28:07   18       A.  Yes, it did.

10:28:09   19           MR. RUSS:  Thank you, your Honor.  Nothing

10:28:11   20   further.

10:28:11   21           THE COURT:  Thank you, Mr. Russ.  Any

10:28:13   22   further direct, Mr. Felle?

10:28:14   23           MR. FELLE:  No, your Honor.

10:28:15   24           THE COURT:  All right.  Mr. Lauber, thank

10:28:17   25   you very much.  You can put your mask on and have a nice

A-2521

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 10:28:21 | 2 | weekend. |
| 10:28:22 | 3 | THE WITNESS: You too, thanks. |
| 10:28:30 | 4 | THE COURT: All right. Ladies and Gentlemen |
| 10:28:32 | 5 | of the Jury, if you want to retrieve that exhibit, which |
| 10:28:34 | 6 | I think you're doing. |
| 10:28:35 | 7 | THE CLERK: Certainly. |
| 10:28:36 | 8 | THE COURT: And that completes our testimony |
| 10:28:38 | 9 | for today. So we're finished early. Just because of a |
| 10:28:42 | 10 | scheduling issue, who I anticipate being the final |
| 10:28:46 | 11 | witness in the case, is not available until Monday |
| 10:28:49 | 12 | morning. So what I am anticipating, and, obviously, |
| 10:28:52 | 13 | everything is all subject to change, but I am |
| 10:28:57 | 14 | anticipating that the final witness will testify Monday |
| 10:29:00 | 15 | morning, that we'll then move to closing arguments and |
| 10:29:03 | 16 | then my final instructions and then you'll start your |
| 10:29:06 | 17 | deliberations, which I anticipate all happening on |
| 10:29:09 | 18 | Monday. So, as I indicated yesterday, we'll put lunch |
| 10:29:13 | 19 | order in for you on Monday, we'll be -- if you maybe |
| 10:29:19 | 20 | show up at quarter of 9, so that Dawn would circulate |
| 10:29:23 | 21 | the menus and get everybody's orders in. And as I |
| 10:29:27 | 22 | indicated, we'll be off on Tuesday. So if you are |
| 10:29:30 | 23 | continuing your deliberations past Monday, you'll come |
| 10:29:33 | 24 | back on Wednesday. I have not heard that anybody has an |
| 10:29:36 | 25 | issue with coming back Wednesday morning. So, we'll |

A-2522

1          J. ORTIZ VS. M. STAMBACH

10:29:41   2    probably, if, in fact, you're continuing to deliberate,

10:29:45   3    we'll have you return for your deliberations Wednesday

10:29:48   4    morning after Monday.  We don't keep you in a hotel or

10:29:54   5    sequester you or anything like that once you start your

10:29:57   6    deliberations.  You can go home for the evening and come

10:30:00   7    back the next day.  So with that being said, I want to

10:30:04   8    thank you again for your patience and your attention.

10:30:07   9    You have been a very attentive jury.  We can all tell

10:30:11   10   how close attention you're paying to everything and we

10:30:13   11   appreciate that, myself, the parties and the attorneys.

10:30:18   12           I do want to remind you of my admonitions

10:30:21   13   before you go.  Do not discuss the case among yourselves

10:30:25   14   or with anyone else.  This includes discussing it orally

10:30:28   15   as well as in writing, including social media.  In

10:30:32   16   fairness to all parties, you need to keep an open mind

10:30:35   17   throughout the trial reaching your conclusion only

10:30:38   18   during your final deliberations after all of the

10:30:41   19   evidence is in, after you've heard the attorney

10:30:43   20   summations, and my instructions to you on the law, and

10:30:47   21   then and only then, once you've had a chance to discuss

10:30:50   22   the evidence with the other Members of the Jury.  If

10:30:53   23   anyone does try to talk to you about the case or does

10:30:56   24   anything else that you think is improper, then you need

10:30:58   25   to walk away immediately and let me know about that by

J. ORTIZ VS. M. STAMBACH

10:31:02  2  letting Ms. Samuel or our court security officer know.

10:31:05  3  They will then make arrangements for you to meet with

10:31:08  4  me.  You should not, however, discuss that fact or any

10:31:11  5  other fact that you feel necessary to bring to my

10:31:13  6  attention with another juror.  Err on the side of

10:31:17  7  caution and let me know if you think something is not

10:31:19  8  proper.  Do not visit any location at issue in this case

10:31:23  9  and do not do any research or investigation about the

10:31:26  10  case on your own.  Do not talk, either in or out of the

10:31:30  11  courtrooms, with any of the attorneys, witnesses or

10:31:33  12  parties, even to pass the time of day.  In no other way

10:31:37  13  can all parties be assured of the absolute impartiality

10:31:42  14  they are entitled to expect from you as jurors, and, as

10:31:46  15  I've said before, these courtrooms are open courtrooms.

10:31:49  16  That means anyone can come in and watch the proceedings,

10:31:52  17  including the media.  Therefore, in the event there are

10:31:55  18  any media accounts about this case, you are not to read,

10:31:58  19  watch or listen to any such accounts because you're in

10:32:01  20  the best position to decide what happens in this

10:32:03  21  courtroom and you do not need to rely on any secondhand

10:32:06  22  accounts.  So with that being said, I hope you have a

10:32:10  23  wonderful weekend.  Enjoy the sunshine.  Hopefully,

10:32:17  24  we'll have some.  And we'll see you Monday morning.

10:32:20  25  Thank you.

A-2524

354

```
                          J. ORTIZ VS. M. STAMBACH
```

10:32:25    2              (Whereupon, the jury is escorted from the

10:32:28    3    courtroom and dismissed.)

10:32:44    4              THE COURT:  All right.  We need to have our

10:32:46    5    charge conference.  Is everybody ready to proceed with

10:32:49    6    that?  Mr. Felle?

10:32:50    7              MR. FELLE:  I hoping to take a short break

10:32:52    8    so I can put this information in my car, because I need

10:32:55    9    to check out real quick.  If we can take a 20-minute

10:32:59   10    break or so, and then I'm all yours.

10:33:01   11              THE COURT:  Mr. Russ.

10:33:02   12              MR. RUSS:  I'm ready to go whenever you are.

10:33:04   13              THE COURT:  One thing I wanted to mention,

10:33:06   14    we need to have exhibit lists, so, and it can be one

10:33:11   15    exhibit list that reflects all of the exhibits that came

10:33:14   16    into evidence, particularly because of that issue that

10:33:16   17    we encountered with Mr. Lauber.  I want to make sure the

10:33:20   18    record is settled so that I and me, namely Dawn, are on

10:33:24   19    the same page in terms of what exhibits have come in.

10:33:27   20    So we need to have your records with respect to exhibits

10:33:30   21    for our charge conference today, too, okay?

10:33:33   22              But why don't we plan to come back here at

10:33:36   23    11 o'clock, if that works for everybody.

10:33:38   24              MR. FELLE:  That would be terrific.  Thank

10:33:41   25    you, Judge.
```

A-2525

355

|              |    |                                                            |
|--------------|----|------------------------------------------------------------|
|              | 1  | J. ORTIZ VS. M. STAMBACH                                   |
| 10:33:41     | 2  | MR. RUSS:  Thank you, your Honor.                          |
| 10:33:42     | 3  | THE COURT:  Okay.                                          |
| 10:33:43     | 4  | (Whereupon, there was a break in the                      |
| 10:33:44     | 5  | proceeding.)                                              |
| 11:06:24     | 6  | THE COURT:  All right.  We are on the record              |
| 11:06:26     | 7  | with Mr. Felle, Mr. Russ and Mr. Sahasrabudhe for our     |
| 11:06:30     | 8  | final charge conference.  I'll turn to Mr. Felle first.   |
| 11:06:38     | 9  | Any issues, concerns about the proposed final             |
| 11:06:41     | 10 | instructions which were distributed yesterday?            |
| 11:06:44     | 11 | MR. FELLE:  Just a couple of issues to                    |
| 11:06:46     | 12 | discuss, your Honor.                                      |
| 11:06:49     | 13 | THE COURT:  Make sure you have your                       |
| 11:06:50     | 14 | microphone on.                                            |
| 11:06:52     | 15 | MR. FELLE:  I'm not sure of the best way to               |
| 11:06:54     | 16 | do this.  I'm usually in a conference room doing these    |
| 11:06:57     | 17 | charges.                                                  |
| 11:06:58     | 18 | THE COURT:  I've never done it in a                       |
| 11:07:01     | 19 | conference room.                                          |
| 11:07:02     | 20 | MR. FELLE:  Just a couple of questions or                 |
| 11:07:04     | 21 | issues to discuss pertaining to the elements of the 1983  |
| 11:07:08     | 22 | claim in relation to the stipulation we have in place     |
| 11:07:11     | 23 | and how that might be described to the jury.              |
| 11:07:14     | 24 | THE COURT:  So what page are you on?                      |
| 11:07:16     | 25 | MR. FELLE:  For example, when I look at page              |

A-2526

1                      J. ORTIZ VS. M. STAMBACH

11:07:18    2    18.

11:07:23    3                    THE COURT:  Okay.

11:07:24    4                    MR. FELLE:  I'm just trying to alleviate any

11:07:27    5    confusion by the jury.  For example, inasmuch as the

11:07:31    6    Court is acknowledging there is a stipulation, it says,

11:07:33    7    the last sentence of the first paragraph, as it leads

11:07:36    8    into page 18.

11:07:38    9                    THE COURT:  Hold on one second.  Let me make

11:07:40   10    sure I'm on the right page.  Okay.

11:07:57   11                    MR. FELLE:  I apologize, I don't mean to be

11:08:01   12    nit picky, I like to be as clear as possible.  When I

11:08:04   13    look at the last sentence, assuming that the defendant

11:08:06   14    did commit those acts and since --

11:08:08   15                    THE COURT:  What page are you on?

11:08:14   16                    MR. FELLE:  I'm at page 18 of the proposed

11:08:16   17    charge.

11:08:17   18                    THE COURT:  You're at the last paragraph?

11:08:20   19                    MR. FELLE:  The first paragraph, last

11:08:22   20    sentence.

11:08:23   21                    MR. RUSS:  Last sentence of the first

11:08:24   22    paragraph.

11:08:25   23                    MR. FELLE:  I'm looking to change the

11:08:27   24    language the Court instruct since the defendant was

11:08:29   25    taking those acts in his capacity not purported to be.

A-2527

                              J. ORTIZ VS. M. STAMBACH

11:08:33   2          THE COURT:  An that was a question we had as
11:08:36   3   to whether or not the defendant is contesting this
11:08:39   4   because we weren't entirely clear from the proposed
11:08:43   5   charge of the defense, whether or not you are contesting
11:08:47   6   that first element that the act could be committed under
11:08:51   7   the color of state law because if you agree with that,
11:08:55   8   then I agree.  I don't think we need as fulsome an
11:08:59   9   instruction.
11:09:00  10          MR. RUSS:  That's fine, your Honor.  We're
11:09:01  11   not contesting that he was somehow acting beyond his
11:09:07  12   work capacity.
11:09:12  13          THE COURT:  So, I think what we should do
11:09:15  14   then, change where we discuss the first element, so this
11:09:18  15   would be at the bottom of page 17, we say, the first
11:09:26  16   element of the Plaintiff's claims, that is the conduct
11:09:29  17   complained of was committed by the defendant acting
11:09:33  18   under color of state law.  We can or cannot include that
11:09:37  19   next sentence, which just defines it for the jury, but
11:09:41  20   then we should just say, "there is no dispute here, the
11:09:45  21   parties agree that there is no dispute that that first
11:09:48  22   element is satisfied" or something to that effect.
11:09:51  23          MR. RUSS:  That's fine.
11:09:52  24          MR. FELLE:  That is exactly what I was
11:09:55  25   asking for.  I suggest that we take out the second

A-2528

358

                        J. ORTIZ VS. M. STAMBACH

11:09:57  2   sentence, it just has the tendency to be confusing,

11:10:02  3   there is no confusion as to which entity.

11:10:04  4             THE COURT:  Any problem with that?

11:10:06  5             MR. RUSS:  No.  I mean, you might, and I may

11:10:09  6   be over thinking this, your Honor, and please tell me if

11:10:11  7   I am.

11:10:32  8             THE COURT:  What about?  I don't mean to

11:10:34  9   interrupt.

11:10:34  10            MR. RUSS:  Detective Stambach was working

11:10:37  11  for the Buffalo Police Department.

11:10:38  12            THE COURT:  What?

11:10:39  13            MR. RUSS:  Detective Stambach was working

11:10:42  14  for the Buffalo Police Department and thus --

11:10:54  15            THE COURT:  Okay.

11:10:57  16            MR. RUSS:  I mean, I don't mean to rewrite

11:11:00  17  it.  Just I have no problem with agreeing that he was

11:11:05  18  acting under color of state law.

11:11:15  19            THE COURT:  Just give me a second.  Okay.

11:11:47  20  What about if we do this?  So, the first, at the bottom

11:11:50  21  of page 17, we'll say the first element of the

11:11:54  22  Plaintiff's claims, is that the conduct complained of

11:11:57  23  was committed by the defendant acting under color of

11:12:00  24  state law.  In this case, at the time of the alleged

11:12:04  25  actions, the defendant was working for the Buffalo

A-2529

|        |    |                                                      |
|--------|----|------------------------------------------------------|
|        | 1  | J. ORTIZ VS. M. STAMBACH                             |
| 11:12:07 | 2 | Police Department, and, therefore, there is no dispute |
| 11:12:10 | 3 | as to this first element.                            |
| 11:12:15 | 4 | MR. FELLE:  Agreed.                                   |
| 11:12:16 | 5 | THE COURT:  Does that work?                           |
| 11:12:19 | 6 | MR. RUSS:  That's fine, your Honor.                   |
| 11:12:24 | 7 | THE COURT:  Okay.  All right.  What else do           |
| 11:12:27 | 8 | you have, Mr. Felle?                                  |
| 11:12:28 | 9 | MR. FELLE:  Your Honor, I was just turning            |
| 11:12:30 | 10 | then to page 20, when we get into the elements of    |
| 11:12:33 | 11 | malicious prosecution and specifically with respect to |
| 11:12:38 | 12 | the first element, the stipulation between the parties |
| 11:12:44 | 13 | at number three is that Stambach initiated the       |
| 11:12:47 | 14 | prosecution of Ortiz by filing the felony complaint  |
| 11:12:50 | 15 | based solely on the alleged confession.  I think that |
| 11:12:54 | 16 | element, first element, is admitted.                 |
| 11:12:55 | 17 | THE COURT:  We weren't sure about that,              |
| 11:12:58 | 18 | either.  So, I guess that is another question, whether |
| 11:13:02 | 19 | or not the defense is disputing the first element,   |
| 11:13:05 | 20 | because, I agree, if there is no dispute that Mr.     |
| 11:13:07 | 21 | Stambach initiated the criminal proceedings, then I  |
| 11:13:11 | 22 | don't think there is a necessity for that more fulsome |
| 11:13:15 | 23 | description.                                          |
| 11:13:15 | 24 | MR. RUSS:  The only consideration that that          |
| 11:13:19 | 25 | would raise, your Honor, is that, yes, I agree, we did |

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                                 |
| 11:13:23 | 2  | stipulate that, but there was also testimony that he was |
| 11:13:26 | 3  | directed to do it by the district attorney and --        |
| 11:13:48 | 4  | THE COURT:  There was testimony about that,              |
| 11:13:50 | 5  | but I'm looking at paragraph three of the stipulation.   |
| 11:13:52 | 6  | On November 17th, 2004, Stambach initiated the           |
| 11:13:56 | 7  | prosecution of Ortiz by filing a felony complaint based  |
| 11:14:00 | 8  | solely on the alleged confession.  I think it's tough    |
| 11:14:06 | 9  | for the defense to try and walk that back.               |
| 11:14:09 | 10 | MR. RUSS:  I agree, your Honor.  I'll                    |
| 11:14:11 | 11 | withdraw my comments.                                    |
| 11:14:12 | 12 | THE COURT:  Okay.  So because of that, we               |
| 11:14:18 | 13 | will -- let's see.  So what I would propose and what     |
| 11:14:28 | 14 | I'll do, so everybody is clear, we'll make changes to    |
| 11:14:31 | 15 | the instructions and e-mail to everybody the             |
| 11:14:35 | 16 | instructions with track changes reflecting the changes   |
| 11:14:38 | 17 | after this conference, but, what I would propose that we |
| 11:14:42 | 18 | do, for this first element, is I'll say here, and I'll   |
| 11:14:46 | 19 | make specific reference to the stipulation, and, again   |
| 11:14:49 | 20 | say, "so, therefore, there is no dispute about this      |
| 11:14:53 | 21 | first element."                                          |
| 11:14:54 | 22 | MR. FELLE:  I think that would work, your                |
| 11:14:56 | 23 | Honor.                                                   |
| 11:14:56 | 24 | THE COURT:  Does that address your concern,             |
| 11:14:58 | 25 | Mr. Felle?                                               |

A-2531

361

|  |  |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 11:14:58  2 | MR. FELLE:  It does, your Honor. |
| 11:15:02  3 | THE COURT:  All right.  What else do you |
| 11:15:04  4 | have? |
| 11:15:05  5 | MR. FELLE:  I just wanted to address, and |
| 11:15:07  6 | maybe just discuss with respect to the elements of |
| 11:15:14  7 | malicious prosecution, I believe that in the Court's |
| 11:15:17  8 | decision, there was a like the elements were a little |
| 11:15:21  9 | different as discussed and stated in the decision.  And |
| 11:15:24  10 | I thought that the fourth element, there were four |
| 11:15:31  11 | elements, but the matter terminated in Plaintiff's favor |
| 11:15:35  12 | I don't see any discussions, not that there should be. |
| 11:15:37  13 | THE COURT:  That is the third element here, |
| 11:15:41  14 | on page 21. |
| 11:15:52  15 | MR. FELLE:  Okay.  Your Honor, I had it in a |
| 11:15:54  16 | different order.  I didn't recognize it that way.  That |
| 11:15:57  17 | is perfect. |
| 11:15:58  18 | THE COURT:  I don't think it's in different |
| 11:16:00  19 | order.  But, in any event, because the last element, I |
| 11:16:06  20 | think, we've always discussed is the need for acting |
| 11:16:08  21 | malicious-ly.  But, in any event, we have it terminated |
| 11:16:14  22 | in his favor, and, again, there is no dispute about that |
| 11:16:18  23 | here. |
| 11:16:20  24 | MR. FELLE:  Now, in regards to the, again, |
| 11:16:22  25 | the stipulation, as it affects the fabrication of |

A-2532

362

                    J. ORTIZ VS. M. STAMBACH

11:16:25  2   evidence claim, I believe, according to my notes, that

11:16:34  3   there was a stipulation that addressed that Mr. Stambach

11:16:37  4   was the investigating official, the first element of the

11:16:41  5   crime, excuse me, of the claim, the third, that that

11:16:46  6   statement or confession was likely to influence the

11:16:49  7   jury's verdict, that is stated in the Stambach forwarded

11:16:59  8   the confession, this is the stipulation, forwarded the

11:17:02  9   connection to the Erie County District Attorney's

11:17:04  10  Office, knowing that the statement could be used in the

11:17:07  11  prosecution of Ortiz, including a trial, if necessary,

11:17:09  12  and I suppose in that regard, the stipulation would

11:17:16  13  address the third that it's likely to influence a jury

11:17:18  14  verdict, and I know there is some discussion in the

11:17:21  15  charge about that, but I think the stipulation would

11:17:23  16  suggest that it is satisfied.

11:17:26  17          THE COURT:  So you don't think there is a

11:17:28  18  dispute about the third element?

11:17:30  19          MR. FELLE:  Based on the stipulation, that

11:17:32  20  was specifically why we had that clause in there.  I

11:17:36  21  thought it left open only the element of was the

11:17:38  22  information fabricated, was the confession fabricated is

11:17:43  23  the only question.

11:17:44  24          THE COURT:  The second element, I think.

11:17:47  25          LAW CLERK:  Judge, I'm sorry to interject.

A-2533

1                    J. ORTIZ VS. M. STAMBACH

11:17:50  2    As I'm looking at this, there is a numbering error.  Two

11:17:55  3    number twos.  It should be one, two, three, four, five.

11:17:58  4             THE COURT:  Thanks, Colleen.  So just to be

11:18:01  5    clear, if you go back to, let me just get to the right

11:18:11  6    page, page 22, it should be, you'll see there are two

11:18:23  7    number twos, the second number two should be three, No.

11:18:28  8    3 should be 4 and number 4 should be 5.  In terms of the

11:18:31  9    elements, there are five elements to the fabrication of

11:18:35  10   evidence claim.  And what I hear you saying, Mr. Felle,

11:18:39  11   is you believe that the only element that is in dispute

11:18:44  12   is number two, that the defendant fabricated the

11:18:49  13   evidence.

11:18:49  14            MR. FELLE:  Correct, your Honor.  And as

11:18:51  15   much as the charge acknowledges the first, fourth and

11:18:55  16   fifth elements are admitted, I believe it should include

11:18:58  17   the third element, that it's likely to influence a jury

11:19:03  18   verdict.  It doesn't have to go to a jury, of course,

11:19:05  19   it's when it was provided, was it intended to go that

11:19:09  20   far, if necessary, and number four in the stipulation

11:19:14  21   specifically addresses that when the statement was

11:19:19  22   turned over by Stambach to the DA's office, it could be

11:19:25  23   used, including a trial, if necessary.

11:19:28  24            THE COURT:  What is the defense view of

11:19:30  25   that?

A-2534

364

1                    J. ORTIZ VS. M. STAMBACH

11:19:30   2          MR. RUSS:  Your Honor, I don't read the

11:19:31   3   stipulation as going as far as does Mr. Felle.  Knowing

11:19:36   4   that something will be used is different than likely to

11:19:40   5   influence a jury's verdict.

11:19:43   6          THE COURT:  I agree with the defense, Mr.

11:19:45   7   Felle.  I'm not suggesting you have a good argument of

11:19:50   8   the fourth or the third element is met, but I don't

11:19:56   9   think it's been stipulated to that it's material.

11:19:59  10          MR. FELLE:  I would just say that number

11:20:01  11   four in the stipulation says, "specifically including an

11:20:04  12   at a trial, if necessary."

11:20:06  13          THE COURT:  But that isn't the same thing as

11:20:09  14   saying that it is likely to be used, is not the same

11:20:13  15   thing as saying that it was sufficiently material or

11:20:18  16   important to influence a jury's verdict.  Those are two

11:20:25  17   different things.  So I'm going to leave the charge as

11:20:36  18   is in that regard.

11:20:37  19          MR. FELLE:  And my apologies, I don't mean

11:20:40  20   to cut you off.  I would add that four should be taken

11:20:43  21   in context with three, that when Stambach initiated the

11:20:47  22   prosecution, which was to turn over the confession to

11:20:50  23   the DA's office, the felony complaint, it was based

11:20:53  24   solely on the confession.  That was the only thing he

11:20:55  25   was turning over.  And that being the case, it's implied

A-2535

365

|          |    | J. ORTIZ VS. M. STAMBACH |
|----------|----|---------------------------|
| 11:20:58 | 2  | in four that that would be used in a trial, if |
| 11:21:01 | 3  | necessary.  I'm just kind of making my case more, but I |
| 11:21:04 | 4  | understand your Honor's ruling. |
| 11:21:06 | 5  | THE COURT:  You can argue it to the jury, |
| 11:21:09 | 6  | but it hasn't been stipulated to, that that third |
| 11:21:16 | 7  | element was satisfied, too. |
| 11:21:17 | 8  | MR. RUSS:  Just simply, I tried to say, you |
| 11:21:19 | 9  | said it better, used does not equal likely to influence |
| 11:21:23 | 10 | a jury's verdict. |
| 11:21:25 | 11 | THE COURT:  Those are two different things |
| 11:21:29 | 12 | that the jury will have to evaluate.  I don't quarrel |
| 11:21:33 | 13 | with the notion that a confession from the defendant, |
| 11:21:37 | 14 | pretty good argument that is likely to influence a |
| 11:21:40 | 15 | jury's verdict, but it hasn't been stipulated to here. |
| 11:21:43 | 16 | So I'm not going to instruct the jury that it's |
| 11:21:46 | 17 | undisputed.  What else do you have? |
| 11:21:53 | 18 | MR. FELLE:  Your Honor, similarly, with |
| 11:21:56 | 19 | respect to the third claim, the violation of the Fifth |
| 11:22:00 | 20 | Amendment right against self incrimination, we believe |
| 11:22:03 | 21 | that the stipulation also addresses the second of the |
| 11:22:05 | 22 | two elements of that claim.  Second element being that |
| 11:22:10 | 23 | the statement was used against Plaintiff in the criminal |
| 11:22:12 | 24 | proceeding, and we just like the charge to say that the |
| 11:22:16 | 25 | parties have stipulated to that. |

```
          1                 J. ORTIZ VS. M. STAMBACH
11:22:27  2                 THE COURT:  So the third element, in other
11:22:29  3      words, of the Fifth Amendment claim?
11:22:31  4                 MR. FELLE:  Correct, your Honor.  I had it
11:22:33  5      as two elements, correct, the third of those three.
11:22:37  6                 THE COURT:  Mr. Russ.
11:22:39  7                 MR. RUSS:  I believe, your Honor, we did
11:22:43  8      stipulate that the confession would be used in a
11:22:47  9      subsequent criminal proceedings, so, you know, I
11:22:59  10     understand Plaintiff' concerns.  I'm not exactly sure
11:23:03  11     how to address it.
11:23:07  12                THE COURT:  Well, I'm looking at the Fifth
11:23:10  13     Amendment claim.  I say, "To prevail on this claims,
11:23:15  14     Plaintiff must prove by a preponderance of evidence
11:23:17  15     that, one, the defendant applied coercion against him;
11:23:20  16     two, to obtain a waiver of his right against self
11:23:24  17     incrimination and/or to obtain an inculpatory statement;
11:23:29  18     and, three, the statements thereby obtained were used
11:23:32  19     against him in a criminal proceeding."
11:23:38  20                MR. RUSS:  I mean, you've got all that
11:23:40  21     stipulated, so I suppose you could argue to the jury
11:23:42  22     that all of the elements are satisfied.
11:23:49  23                THE COURT:  Well, the number one is not
11:23:51  24     satisfied.
11:23:52  25                MR. RUSS:  Right.
```

A-2537

367

```
           1              J. ORTIZ VS. M. STAMBACH

11:23:55   2              THE COURT:  I guess the reason, we didn't

11:23:57   3    put, and we can certainly, but the reason we didn't put

11:24:01   4    it was stipulated, among other things, is that the

11:24:05   5    element two and three flow from number one.  So, you

11:24:09   6    have to have a finding on number one to even get to two

11:24:13   7    and three.  Is that stating it correctly, Colleen?

11:24:18   8              LAW CLERK:  Yes.  It says the statements

11:24:20   9    thereby obtained, meaning they were obtained via the

11:24:25  10    coercion, so I guess the alternative would be to add a

11:24:29  11    statement that it's stipulated that the alleged

11:24:31  12    confession was used in the criminal proceeding against

11:24:35  13    Mr. Ortiz.

11:24:38  14              THE COURT:  But you need to determine.

11:24:41  15              LAW CLERK:  But it's for the jury to

11:24:44  16    determine whether it was obtained by coercion.

11:24:47  17              MR. FELLE:  I agree with that.  I just take

11:24:49  18    exception to the third element.  I believe it is

11:24:52  19    satisfied that the statement was used against him in the

11:24:55  20    criminal proceeding, and I think that is admitted at

11:24:57  21    number three when we say that Stambach initiated the

11:25:05  22    prosecution of Ortiz by filing the complaint based

11:25:05  23    solely on the alleged confession.

11:25:06  24              THE COURT:  Does the defense have any

11:25:10  25    objection to adding a sentence.
```

A-2538

|          |    |                                                           |
|----------|----|-----------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                                   |
| 11:25:15 | 2  | MR. RUSS:  The Cornell version.                           |
| 11:25:18 | 3  | THE COURT:  Number one in her class from                  |
| 11:25:21 | 4  | Cornell, so she is pretty smart.                          |
| 11:25:23 | 5  | MR. RUSS:  No, I have no objection to adding              |
| 11:25:26 | 6  | a sentence.  What I was objecting to was deleting number |
| 11:25:31 | 7  | three.                                                    |
| 11:25:31 | 8  | THE COURT:  I agree.  We should not delete                |
| 11:25:33 | 9  | any of the elements because the jury needs to be advised |
| 11:25:36 | 10 | of all of the elements of the crime.  We'll add that     |
| 11:25:39 | 11 | sentence to the Fifth Amendment claim.                    |
| 11:25:42 | 12 | MR. FELLE:  And, I apologize, your Honor, if             |
| 11:25:43 | 13 | I wasn't paying attention.  What is the language of that |
| 11:25:46 | 14 | sentence?  It's just that it is admitted.                 |
| 11:25:49 | 15 | THE COURT:  No, I'll read it back.  To add a             |
| 11:25:59 | 16 | statement that it's stipulated that the alleged          |
| 11:26:02 | 17 | confession was used in the criminal proceeding against    |
| 11:26:05 | 18 | Mr. Ortiz, but it's for the jury to determine whether it  |
| 11:26:08 | 19 | was obtained by coercion.  Okay.                          |
| 11:26:13 | 20 | MR. FELLE:  I'm in agreement with that                   |
| 11:26:14 | 21 | language.                                                 |
| 11:26:15 | 22 | THE COURT:  Okay.  We'll make that change.               |
| 11:26:18 | 23 | MR. RUSS:  Thank you, your Honor.                         |
| 11:26:21 | 24 | THE COURT:  What else, Mr. Felle?                        |
| 11:26:25 | 25 | MR. FELLE:  Your Honor, the only other                   |

A-2539

369

J. ORTIZ VS. M. STAMBACH

11:26:26    2  request I would have, and I apologize for my naivety, in

11:26:31    3  state law there is a charge called *falsus in uno*, I

11:26:36    4  don't know if there is an equivalent.

11:26:39    5              THE COURT:  There is, and the Second Circuit

11:26:40    6  advises against including it.  I do not include it.

11:26:43    7  There is nothing more false than the concept that if

11:26:47    8  somebody testifies falsely as to one thing, that means

11:26:50    9  all of their testimony is false.  That is the reasoning.

11:26:54   10  So I don't include that in my jury instructions.

11:26:57   11              MR. FELLE:  Okay.  I would make the request

11:26:58   12  and I understand your Honor's position.

11:27:01   13              THE COURT:  And I'm going to deny that

11:27:04   14  request.

11:27:04   15              MR. FELLE:  That is all I had.  I'm

11:27:06   16  certainly open to other discussions.

11:27:07   17              THE COURT:  Let me raise an issue, because I

11:27:09   18  don't have it in the jury instructions.  There is also

11:27:12   19  Second Circuit case law that encourages district courts

11:27:16   20  not to let Plaintiff's counsel ask for a certain sum in

11:27:20   21  monetary damages.  So, in other words, the Second

11:27:26   22  Circuit cautions against that and advises, it doesn't

11:27:29   23  think it's appropriate for counsel to be asking for a

11:27:31   24  particular amount to be awarded.  And, so, were you

11:27:37   25  requesting permission to do that.

A-2540

370

11:27:44  2      MR. FELLE:  Yes.  I guess I would, if when I

11:27:47  3  looked at the charge, the charge admonishes it can't be

11:27:51  4  inadequate and/or too successive without context.  How

11:27:55  5  would the jury know those parameters?

11:27:58  6      THE COURT:  That is why the Second Circuit

11:28:02  7  counsels against counsel putting a number in the jury's

11:28:06  8  heads.  It suggests to the jury that somehow counsel has

11:28:11  9  expert information or knowledge as to what an

11:28:13  10  appropriate award should be, when, really, that is a

11:28:17  11  determination that the jury has to make.

11:28:19  12      MR. FELLE:  And I think the charge the Court

11:28:21  13  gives, qualifying that, you know, statements made in

11:28:23  14  closing arguments are not evidence at all, they are

11:28:26  15  simply statements, and I think that qualifies it to

11:28:31  16  avoid that error.

11:28:34  17      THE COURT:  What is the defense position on

11:28:38  18  this?  Because I have allowed, notwithstanding that

11:28:43  19  being the Second Circuit's cautionary instructions, I

11:28:46  20  also, from a practitioner's standpoint, I understand why

11:28:52  21  it's something that you would like to be able to argue.

11:28:56  22  If I do allow that, though, I include an additional

11:29:01  23  cautionary instruction in my final charge specifically

11:29:04  24  addressing that issue.

11:29:07  25      MR. RUSS:  Well, your Honor, you probably

                        1              J. ORTIZ VS. M. STAMBACH

11:29:08   2   know better than I, but I think we depart from Second

11:29:14   3   Circuit precedent at our own risk.  I understand that

11:29:17   4   precedent, and I agree with the precedent that you can't

11:29:20   5   say a precise number.  I will concede, however, that

11:29:24   6   there are plenty of ways to suggest appropriate values,

11:29:28   7   and, therefore, saying I ask you for X.

11:29:32   8              THE COURT:  The Second Circuit doesn't say I

11:29:35   9   can't allow it, it's my discretion.  It cautions against

11:29:39  10   it.  But I have to specifically permit it before it

11:29:45  11   could be requested.

11:29:47  12              MR. FELLE:  And I am asking for that

11:29:48  13   permission.  I think the risk of error might be greater

11:29:51  14   in the instance of what Mr. Russ is suggesting, that I

11:29:55  15   somehow ask the jury to put themselves in the own shoes

11:30:00  16   of the Plaintiff.

11:30:01  17              THE COURT:  You can't do it that way.

11:30:03  18              MR. FELLE:  When he suggests I can do it

11:30:06  19   other ways, that runs the risk of errors, I don't want

11:30:10  20   to get into, this allows the best way to suggest the

11:30:15  21   best compensation in the eyes of the Plaintiff, and I

11:30:19  22   would like to hear what the Court would add as a charge

11:30:22  23   and that would balance it.

11:30:24  24              THE COURT:  I'll give it thought and let you

11:30:26  25   know later today what I decide to do on that.

A-2542

```
                              J. ORTIZ VS. M. STAMBACH
11:30:29   2            MR. FELLE:  And if we -- if you allow that,
11:30:35   3   you would provide the caution in the next version.
11:30:39   4            THE COURT:  Yes.
11:30:39   5            Anything else, Mr. Felle?
11:30:41   6            MR. FELLE:  No, your Honor.
11:30:43   7            THE COURT:  Mr. Russ or Mr. Sahasrabudhe,
11:30:44   8   any concerns, objections, concerns that you have?
11:30:46   9            MR. RUSS:  Judge, I'm going to disappoint
11:30:49  10   you saying we have no questions, concerns or objections
11:30:51  11   and that we think the charge, as proposed, is
11:30:59  12   sufficient.  We will, of course, evaluate the various
11:31:04  13   changes that we discussed today.  Most, most of them
11:31:08  14   seem to be fine.  I have to see a couple written out.
11:31:11  15   But I don't have anything else to add.
11:31:14  16            THE COURT:  Okay.  What about with respect
11:31:17  17   to the proposed verdict sheet?  Did you have any
11:31:35  18   concerns or questions?
11:31:36  19            MR. FELLE:  Yes.  I am, again, addressing
11:31:38  20   this with the Court and with respect to the nominal
11:31:42  21   damages, and I should have brought it up on the charge,
11:31:44  22   because it's in the charge, also, but when I look at it,
11:31:47  23   seems to me when I see the phrase, for example,
11:31:50  24   "sufficient injury," it would seem like that charge is
11:31:53  25   may be focused at a personal injury claim of some sort
```

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 11:31:56 | 2 | or a physical injury claim.  Where, in this case, it's |
| 11:32:00 | 3 | admitted by the parties that because of this |
| 11:32:04 | 4 | prosecution, my client was in jail for 10 years, which |
| 11:32:07 | 5 | would seem to be an admitted injury.  Now, the jury can |
| 11:32:11 | 6 | decide if that is compensable, and if so, to what |
| 11:32:14 | 7 | extent.  But I don't believe there would be any onus to |
| 11:32:20 | 8 | put sufficient injury because this is a different type |
| 11:32:23 | 9 | of case, but correct me if I'm wrong, your Honor. |
| 11:32:26 | 10 | THE COURT:  I guess I'm not following you. |
| 11:32:27 | 11 | MR. RUSS:  I'm not sure I understand the |
| 11:32:29 | 12 | argument, your Honor. |
| 11:32:30 | 13 | THE COURT:  I have don't, either. |
| 11:32:31 | 14 | MR. FELLE:  So, in paragraph five of the |
| 11:32:32 | 15 | damages section of the verdict sheet, when you read the |
| 11:32:35 | 16 | paragraph, on the second line it says that -- well, I'll |
| 11:32:42 | 17 | read the whole thing:  "Plaintiff has proved that |
| 11:32:44 | 18 | Defendant violated his rights but has not demonstrated |
| 11:32:47 | 19 | sufficient injury to warrant any award of compensatory |
| 11:32:51 | 20 | damages."  The phrase "sufficient injury," I'm not sure |
| 11:32:54 | 21 | it would apply to a wrongful incarceration case.  And |
| 11:32:58 | 22 | given the stipulation where it's agreed that he served |
| 11:33:01 | 23 | 10 years in jail, I can't balance those.  The phrase |
| 11:33:08 | 24 | "sufficient injury" and then an admission or stipulation |
| 11:33:12 | 25 | that he served 10 years and 22 days in jail. |

A-2544

374

|          |    | J. ORTIZ VS. M. STAMBACH |
|----------|----|--------------------------|
| 11:33:15 | 2  | THE COURT: Well, we could change it to, if |
| 11:33:18 | 3  | you find that the Plaintiff has proved that the |
| 11:33:20 | 4  | defendant violated his rights, but has not proven an |
| 11:33:25 | 5  | amount of compensatory damages, you are required to |
| 11:33:28 | 6  | award Plaintiff nominal damages not to exceed $1. |
| 11:33:33 | 7  | MR. FELLE: That would probably be more |
| 11:33:35 | 8  | appropriate for this case. I agree with that change. |
| 11:33:37 | 9  | THE COURT: Mr. Russ, any concerns about |
| 11:33:39 | 10 | that? |
| 11:33:45 | 11 | MR. RUSS: No, your Honor, that would be |
| 11:33:46 | 12 | fine. |
| 11:33:47 | 13 | THE COURT: We'll make that change. |
| 11:33:48 | 14 | MR. FELLE: And I think there might be some |
| 11:33:53 | 15 | proportionate changes to page 26 and 27 when the charge |
| 11:33:57 | 16 | describes "nominal damages." |
| 11:34:06 | 17 | THE COURT: Well, no. I don't think the |
| 11:34:07 | 18 | charge should be changed. The charge is consistent with |
| 11:34:10 | 19 | the standard instruction and -- |
| 11:34:17 | 20 | MR. FELLE: Well, no, I'm looking at it, I |
| 11:34:19 | 21 | agree. I agree, it doesn't use the same language. |
| 11:34:21 | 22 | THE COURT: It doesn't use the same |
| 11:34:23 | 23 | language. And, I mean, I suppose, theoretically, if the |
| 11:34:26 | 24 | jury determined he was injured but they can't put a |
| 11:34:31 | 25 | number on it and they just would be engaging in |

A-2545

1     J. ORTIZ VS. M. STAMBACH

11:34:34 2 speculation, then they would award nominal damages.  So,

11:34:39 3 I mean, in other words, nominal damages are appropriate

11:34:42 4 if you haven't demonstrated compensatory damages or you

11:34:46 5 can't agree upon what the compensatory damages should

11:34:52 6 be, that the Plaintiff hasn't met its burden of proof.

11:34:54 7 And that is essentially what the instruction says.

11:34:59 8     MR. FELLE:  And I battled with that, if it's

11:35:02 9 appropriate in this case, but I did a little research

11:35:05 10 and there might be other reasons you might have that in

11:35:08 11 there.  I understand.  I'm fine with that change.

11:35:10 12     THE COURT:  Okay.  Any other concerns about

11:35:12 13 the verdict sheet?

11:35:14 14     MR. FELLE:  Not by the Plaintiff, your

11:35:15 15 Honor.

11:35:15 16     THE COURT:  Mr. Russ?

11:35:16 17     MR. RUSS:  No concerns, your Honor.

11:35:18 18     THE COURT:  Okay.  Let's talk about the

11:35:20 19 exhibits.  So, I think everybody has Dawn's copy of the

11:35:28 20 exhibit list.  So I'll ask Mr. Felle, and I think I was

11:35:48 21 wrong when I said 6 C had come into evidence.  I don't

11:35:52 22 think it had.  Do you agree with Dawn's list of

11:35:56 23 exhibits, I'll list them on the record just so it's

11:35:59 24 clear.  Plaintiff's exhibit 1, 3, 6 A, 6 B, 6 D, 10, 22,

11:36:09 25 29 A, 33 and then Defense Exhibits 402, 406, 407, 408,

A-2546

376

                    J. ORTIZ VS. M. STAMBACH

11:36:20   2   do you agree those are the exhibits admitted at least at

11:36:23   3   this point?

11:36:24   4            MR. FELLE:  Your Honor, I apologize.  My

11:36:26   5   focus was on the charge, I didn't have sufficient time

11:36:29   6   to really look at that.  I thought that exhibit D today

11:36:34   7   was put in and I thought there was an exhibit C.

11:36:37   8            THE COURT:  You mean 6 C and 6 D.

11:36:41   9            MR. FELLE:  6 C was a P73.

11:36:46  10            MR. RUSS:  Your Honor, while we were taking

11:36:49  11   a break, we took a look at the read back and I think we

11:36:54  12   all determined that 6 C did not go in, but 6 D did this

11:37:02  13   morning.

11:37:02  14            THE COURT:  Okay.  So, during the break, it

11:37:06  15   seems, would you agree with me, Mr. Russ, that you

11:37:10  16   believe Dawn's list of admitted exhibits is correct?

11:37:14  17            MR. RUSS:  I do believe that, your Honor.

11:37:15  18            THE COURT:  Okay.  Mr. Felle, take a look at

11:37:18  19   it.  If you have a disagreement, we just need to discuss

11:37:21  20   that before the case goes to the jury, obviously.

11:37:25  21            MR. FELLE:  Understood, your Honor.  And I

11:37:26  22   would defer to Mr. Russ.  He is in a better position.

11:37:29  23   I'm in the mix at the time.  I'm a little bit more

11:37:34  24   discombobulated and I'll do that.  And I think your

11:37:36  25   Honor wanted us to place on Plaintiff's exhibit, I

A-2547

377

1                    J. ORTIZ VS. M. STAMBACH

11:37:40  2    should place exhibit tabs on those, correct, and have

11:37:43  3    them available Monday?

11:37:44  4              THE COURT:  Right.  Usually I have the

11:37:48  5    attorneys also prepare an exhibit list and there is not

11:37:51  6    a lot of exhibits here, so if everybody agrees to it, we

11:37:55  7    can use Dawn's list of exhibits, especially since the

11:37:59  8    exhibits are going back, so there is no need for them to

11:38:03  9    have to request exhibits from us by number.  Any concern

11:38:06  10   about that, Mr. Felle?

11:38:08  11             MR. FELLE:  No, none at all.

11:38:09  12             THE COURT:  Mr. Russ?

11:38:10  13             MR. RUSS:  No concern, your Honor.

11:38:11  14             THE COURT:  Okay.  So each side should just

11:38:14  15   make sure that you have the original exhibits that have

11:38:17  16   been admitted into evidence ready to go back for the

11:38:20  17   jury's deliberations.

11:38:21  18             So, Mr. Felle, for you -- Dawn, have you

11:38:24  19   given Mr. Felle a copy of your list?

11:38:27  20             THE COURT:  Yes.  So take a look at that and

11:38:30  21   make sure you have the exhibits and I want counsel to

11:38:33  22   review with each other the exhibits that you agree are

11:38:36  23   going back before they go back so there is no dispute

11:38:40  24   about that.  Okay?

11:38:41  25             MR. FELLE:  Fair enough.

A-2548

1          J. ORTIZ VS. M. STAMBACH

11:38:43   2          THE CLERK:  Counsel, did have a copy of the

11:38:46   3   stipulation, the Court exhibit 1, if that is something

11:38:49   4   that would go back.

11:38:50   5          THE COURT:  No, I don't usually send the

11:38:52   6   Court exhibits back.

11:38:54   7          MR. FELLE:  So, how would we address that if

11:38:57   8   the jury had any confusion about the stipulation.

11:39:03   9          THE COURT:  Unless you both agree to have it

11:39:05   10  go back.

11:39:07   11          I can put it in the charge.

11:39:08   12          MR. FELLE:  If they need it reread, they

11:39:11   13  could come back out and your Honor would reread, but to

11:39:15   14  your point, I wouldn't disagree that the stipulation

11:39:18   15  could go back.

11:39:18   16          THE COURT:  Any concern about that, Mr.

11:39:20   17  Russ?

11:39:21   18          MR. RUSS:  I mean, I prefer to follow the

11:39:29   19  practice that, obviously, Plaintiff exhibits go back and

11:39:34   20  Defendant's Exhibits go back, and court exhibits don't.

11:39:37   21  If they came out to the jury question, what was the

11:39:41   22  stipulation.  I think at that point, we could decide

11:39:44   23  whether it makes sense to read or to give them a copy,

11:39:48   24  but I wouldn't automatically do it.

11:39:50   25          THE COURT:  Here is what I will do, when I

1                    J. ORTIZ VS. M. STAMBACH

11:39:53   2   discuss the exhibits and I add this to the charge that

11:39:57   3   the stipulation that I read into the record at the

11:39:59   4   beginning of the trial is a court exhibit that is not

11:40:02   5   going to go back, but if they have any question about

11:40:05   6   it, they are welcome to send a note and we'll address

11:40:08   7   it.

11:40:09   8                    MR. RUSS:  And, like, I know it's not

11:40:12   9   testimony, your Honor, because the information came from

11:40:16   10  the Court itself, but that could be read back.

11:40:21   11                   THE COURT:  Right.  In other words, this

11:40:23   12  hasn't been published to them, the stipulation.  It's

11:40:26   13  been published in the form of me orally reading it in

11:40:29   14  into the record and that is why, typically, with

11:40:32   15  stipulations, that are handled in that fashion, either

11:40:35   16  the Court reading them or counsel reading them.  I don't

11:40:38   17  send them back to the jury, but if they have a question

11:40:41   18  about it, they will ask and I'll make that clear as part

11:40:44   19  of the instruction and I'll make a change to the

11:40:47   20  instructions that you'll receive.  That will make that

11:40:51   21  clear.

11:40:51   22                   MR. FELLE:  Okay.  That would be perfect.

11:40:53   23  Thank you, your Honor.

11:40:54   24                   THE COURT:  All right.  Closing arguments.

11:40:58   25  How much time are you asking because I will put time

A-2550

1            J. ORTIZ VS. M. STAMBACH

11:41:01    2    limits on this?

11:41:02    3              MR. FELLE:  I think a half hour for opening,

11:41:06    4    45 minutes for closing.

11:41:07    5              THE COURT:  Mr. Russ.

11:41:08    6              MR. RUSS:  Less than that.

11:41:09    7              THE COURT:  I'll give you each up to 45

11:41:12    8    minutes, okay?

11:41:12    9              MR. FELLE:  Thank you, Judge.  I may not use

11:41:16   10    it, but I would like it.

11:41:18   11              THE COURT:  Okay.  And I haven't done a

11:41:21   12    civil case, I have to admit, since before the pandemic

11:41:25   13    started.  Our first civil case since started.

11:41:28   14              MR. RUSS:  Some of the other people in the

11:41:30   15    room would make the same admission.

11:41:35   16              THE COURT:  We've had criminal trials.  So

11:41:37   17    because the Plaintiff has the burden of proof, the

11:41:39   18    Plaintiff goes last with the closing.

11:41:42   19              MR. FELLE:  Usually that is the case.

11:41:43   20              THE COURT:  In criminal cases, the

11:41:45   21    government gets the two bites at the apple.  They get to

11:41:47   22    get up and get up and do a rebuttal, but civil cases we

11:41:53   23    don't do that.  Mr. Russ, I assume you're going to be

11:41:56   24    doing the closing.

11:41:57   25              MR. RUSS:  Yes, your Honor, unless you want

A-2551

| | |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 11:41:58  2 | to give me a second bite of apple, which I welcome. |
| 11:42:01  3 | THE COURT:  No.  I would like Mr. |
| 11:42:03  4 | Sahasrabudhe do the cross examination of Mr. Torres. |
| 11:42:07  5 | MR. FELLE:  I would not.  I object to that. |
| 11:42:10  6 | MR. RUSS:  You're going to get to see Mr. |
| 11:42:12  7 | Sahasrabudhe.  I'll give you that little teaser. |
| 11:42:16  8 | THE COURT:  So, so 45 minutes, Mr. Russ and |
| 11:42:20  9 | then Mr. Felle.  Anything else, Mr. Felle, that we need |
| 11:42:25  10 | to talk about before we break? |
| 11:42:27  11 | MR. FELLE:  No, your Honor.  Just the |
| 11:42:29  12 | practical, and I know you've advised the jury as to the |
| 11:42:33  13 | time frame of Monday.  So, would it be our anticipation |
| 11:42:36  14 | we take a lunch break and if all goes as planned and |
| 11:42:40  15 | everything goes off timely, possibly in the afternoon we |
| 11:42:44  16 | charge and the intention is to get the case to the jury |
| 11:42:48  17 | that afternoon. |
| 11:42:48  18 | THE COURT:  I'm hoping it might be before |
| 11:42:51  19 | lunch.  I guess how long do you think Mr. Torres will |
| 11:42:55  20 | be? |
| 11:42:55  21 | MR. FELLE:  Maybe an hour. |
| 11:42:56  22 | THE COURT:  Yeah, so if he is finished by |
| 11:42:58  23 | 10, we do the closing arguments, we could be finished |
| 11:43:01  24 | with the closing arguments by 11:30, and I may do the |
| 11:43:07  25 | charge before the lunch break. |

A-2552

```
          1              J. ORTIZ VS. M. STAMBACH
11:43:09  2              MR. FELLE:  Okay, great.
11:43:10  3              THE COURT:  We'll take breaks, but, you
11:43:13  4    know, I would do the -- as long as we, you know, I'd
11:43:18  5    push the lunch break as long as we're not getting any
11:43:22  6    vocal obstructions or objections from the jury even as
11:43:25  7    late as 1:30.
11:43:27  8              MR. FELLE:  Okay.
11:43:28  9              THE COURT:  So, all right.  Anything else?
11:43:30 10              MR. FELLE:  No, that's all, your Honor.
11:43:32 11              THE COURT:  Mr. Russ or Mr. Sahasrabudhe?
11:43:34 12              MR. RUSS:  Nothing further, your Honor.
11:43:36 13              THE COURT:  Everybody have a good weekend
11:43:38 14    and we'll see you Monday morning.
11:43:39 15              MR. RUSS:  Monday morning at 9.
11:43:42 16              THE COURT:  Make sure you're early in case
11:43:44 17    there are any last minute issues we need to deal with.
11:43:48 18              MR. FELLE:  Sounds good.  It did look -- I
11:43:50 19    did keep an eye on number four, he looks to be much
11:43:53 20    better.
11:43:53 21              THE COURT:  I think he is.  He seems to be
11:43:55 22    doing fine.  He hasn't brought any additional issues to
11:43:58 23    our attention.  I think it was the first day, it was
11:44:01 24    tough for him.
11:44:02 25              MR. FELLE:  Gave us a scare to lose him on
```

1
11:44:05  2   the first day.
11:44:06  3              THE COURT:  Have a good weekend.
11:44:08  4              MR. FELLE:  Thank you, Judge.
5
6                    *      *      *
7              CERTIFICATE OF REPORTER
8
9      I certify that the foregoing is a correct transcript
10   of the record of proceedings in the above-entitled
11   matter.
12
13   S/ Karen J. Clark,  RPR
14
     Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25

A-2554

1

1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4        - - - - - - - - - - - - - X
         JOSUE ORTIZ                    )            16CV321
5                      Plaintiff   )
         vs.
6                                        Rochester, New York
         MARK STAMBACH,                          May 9, 2022
7                      Defendant.            9:00 a.m.
         - - - - - - - - - - - - - - X
8        **TRIAL - CLOSING ARGUMENTS**

9

10                       TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                     UNITED STATES DISTRICT JUDGE

11

12                       WAYNE C. FELLE, ESQ.
13                       Law Office of Wayne C. Felle, P.C.
                         6024 Main Street
14                       Williamsville, NY 14221

15

16                       HUGH M. RUSS, III, ESQ.
                         PETER A. SAHASRABUDHE, ESQ.
17                       Hodgson Russ LLP
                         The Guaranty Building
18                       140 Pearl Street, Suite 100
                         Buffalo, New York 14202

19

20

21

22

23

24       **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                         **Karenclark1013@AOL.com**
25                       **100 State Street**
                         **Rochester, New York 14614**

A-2555

2

1          J. ORTIZ VS. M. STAMBACH

2

3              P R O C E E D I N G
                *              *              *

4

5          (TIME: 11:06, Closing arguments)

11:06:59   6          THE COURT:  What that means is that the

11:07:01   7   proof is closed, so to speak, all of the testimony and

11:07:02   8   evidence that you're going to receive is in the record

11:07:04   9   and we're now ready to move onto the next phase of the

11:07:07  10   trial, which are the closing arguments.  Now because the

11:07:11  11   Plaintiff has the burden of proof, the Plaintiff

11:07:13  12   presents his closing argument last.

11:07:16  13   So with that being said, Mr. Russ, whenever you're ready

11:07:19  14   you may proceed.

11:07:20  15          MR. RUSS:  Thank you, your Honor.

11:07:31  16          And you did say I may remove my mask.

11:07:35  17          THE COURT:  Yes, you may, Mr. Russ.

11:07:36  18          MR. RUSS:  Thank you.

11:07:40  19          May it please the Court, counsel, Ladies and

11:07:47  20   Gentlemen of the Jury.  I like Mr. Ortiz.  And I feel

11:07:54  21   some sympathy for him.  He has experienced challenges in

11:07:59  22   life, he has made some poor decisions in his life and he

11:08:07  23   has suffered the consequences.  After listening to

11:08:22  24   opening statements, I wondered why Mr. Ortiz did

11:08:27  25   confess.  And I remarked in opening statements, either

A-2556

3

J. ORTIZ VS. M. STAMBACH

11:08:32  2  Mr. Ortiz would tell us or he would say "I don't

11:08:37  3  remember." And let me expand on that a little bit. I

11:08:48  4  wondered not just why did Mr. Ortiz confess, but I

11:08:58  5  wondered why after his confession did he plead guilty.

11:09:06  6  Why after he pled guilty, did he stand silent during

11:09:09  7  sentencing. After he was in jail for a number of years,

11:09:16  8  why did he confess again to a federal grand jury. I

11:09:24  9  wondered why did he refuse the questions of the cold

11:09:30  10  case defendants -- cold case detectives. And I wondered

11:09:37  11  why did Detective Mary Evans have to convince him to

11:09:41  12  assert his innocence. We don't know the answer to the

11:09:49  13  why questions because Mr. Ortiz didn't tell us. Peter

11:09:53  14  and I have our suspicions, but trials are not about

11:09:56  15  suspicions; trials are about evidence. The why question

11:10:05  16  may bother you as it bothers me, but you don't have to

11:10:10  17  answer the why question in your deliberations. Nor do

11:10:16  18  you have to answer the question did Mr. Ortiz confess on

11:10:22  19  November 16th, 2004. The uncontested evidence in this

11:10:27  20  case demonstrates that he did confess that night. Mr.

11:10:33  21  Ortiz, himself, says he doesn't remember. He does

11:10:40  22  remember having psychotic distress, he does remember the

11:10:48  23  distress itself, he remembers hearing voices, he

11:10:51  24  remembers being at the Camacho brother funerals with his

11:10:55  25  cousin, but he doesn't remember the confession. Even

A-2557

4

1                J. ORTIZ VS. M. STAMBACH

11:11:02  2   though he doesn't remember the confession, he identified

11:11:04  3   the confession.  Remember he showed us that he initialed

11:11:09  4   each page of the confession and that he signed the last

11:11:15  5   page of the confession.  The confession, you can read

11:11:22  6   when you begin your deliberations.  But there is no

11:11:25  7   doubt that he made a confession.  The only witnesses who

11:11:30  8   testified concerning the confession were detectives

11:11:39  9   Stambach and Lonergan and Police Officer Torres.  They

11:11:42  10  all described the confession.  They all confirmed that

11:11:46  11  it was genuine.  And they all confirmed that appropriate

11:11:50  12  procedure was followed.  The confession was genuine, and

11:11:57  13  Mr. Ortiz maintained it for years, years.  You may have

11:12:06  14  noticed that Detective Stambach was not present in the

11:12:11  15  courtroom when any of the police officers or detectives

11:12:16  16  testified.  The reason for that is to avoid any

11:12:20  17  appearance of influence or to avoid it appearing that

11:12:26  18  the police officers or detectives had to testify to

11:12:31  19  benefit Mr. Stambach.  So, the uncontested evidence in

11:12:34  20  this case is that Mr. Ortiz confessed and that the

11:12:41  21  confession was good.

11:12:45  22           The questions you do have to answer in your

11:12:48  23  deliberations are three.  And they basically require you

11:12:56  24  to think about whether Detective Stambach, by coercing

11:13:03  25  Mr. Ortiz, by falsifying evidence, by manufacturing

A-2558

5

1                    J. ORTIZ VS. M. STAMBACH

11:13:08  2  evidence, whether Detective Stambach unduly influenced

11:13:18  3  that confession or, in fact, fabricated that confession.

11:13:24  4  Again, I urge you to read the confession itself.  The

11:13:29  5  last few questions of the confession.

11:13:39  6            Question:  How have the police treated you

11:13:42  7  tonight?

11:13:42  8            Answer: You treated me good.

11:13:46  9            Question: Did anyone yell at you tonight?

11:13:50  10           Answer: No.

11:13:52  11           Question: Did you have dinner here tonight?

11:13:56  12           Answer. Yes.

11:13:58  13           Question: Did anyone make you any promises?

11:14:02  14           Answer: No promises were made.

11:14:06  15           Question: And you had your rights read to

11:14:09  16  you, correct?

11:14:10  17           Answer: Yes.

11:14:15  18           Then the last part of the confession, "I am

11:14:20  19  now going to have Police Officer Torres read this

11:14:22  20  three-page statement and ask you if it is correct."  And

11:14:28  21  Mr. Ortiz answered, "It is correct."

11:14:33  22           You can read for yourself if you have any

11:14:36  23  question about the procedure used during the confession.

11:14:46  24  The only evidence that you have in this case, the only

11:14:49  25  evidence you have in this case is the testimony of the

A-2559

6

J. ORTIZ VS. M. STAMBACH

11:14:52 2 three witnesses to the confession and the confession

11:14:55 3 itself because Mr. Ortiz doesn't remember.

11:15:08 4 Now, remember back to last Tuesday when we

11:15:16 5 began our proceedings in front of you, we gave opening

11:15:22 6 statements. And in his opening statement, Mr. Felle

11:15:29 7 went out on a limb and made various representations to

11:15:35 8 you that I'm going to tell you or that I hope I'm going

11:15:38 9 to show you didn't come out in the trial. On page 3 of

11:15:52 10 his opening, Mr. Felle said "Stambach, Detective

11:16:02 11 Stambach, placed into that confession -- I'm sorry.

11:16:08 12 "Detective Stambach placed those facts into

11:16:12 13 that confession to frame my client."

11:16:19 14 On page 18, Mr. Felle said: "Stambach

11:16:27 15 manufactured that confession, ladies and gentlemen, we

11:16:31 16 know that to be the case because my client wasn't

11:16:37 17 there."

11:16:38 18 And on page 19, Mr. Felle promised you that

11:16:44 19 he, Stambach, was going to frame him. "I mean, if he

11:16:48 20 was going to put words in his mouth and have him sign a

11:16:51 21 document, he would have done it at any time."

11:16:56 22 When you are engaged in your deliberations,

11:16:59 23 I ask you to ask yourselves, is there any evidence of

11:17:04 24 any of that stuff, framing, coercing, tricking? We

11:17:12 25 didn't hear any testimony about that. We haven't seen

7

J. ORTIZ VS. M. STAMBACH

11:17:15  2   any documents about that.  So, there is no evidence and

11:17:19  3   only, I guess, speculation, but you can't decide your

11:17:24  4   case based on speculation.

11:17:36  5          You recall Mr. Felle's opening, he was

11:17:39  6   somewhat emotional and he basically promised you that he

11:17:44  7   would prove that Detective Stambach framed Mr. Ortiz.

11:17:55  8   He did not prove that.  That is a broken promise on his

11:18:01  9   part.  And there have been other broken promises in this

11:18:05  10  trial as well.  In his opening, Mr. Felle, at pages 6

11:18:12  11  and 15, said that there were multiple witnesses at the

11:18:15  12  scene and that we would hear those witnesses describe

11:18:17  13  the persons responsible.  Did we see any witnesses?

11:18:30  14          Mr. Felle told you that, apparently, to

11:18:35  15  cover up whatever he did that was wrong, Detective

11:18:39  16  Stambach closed the file.  Closed Mr. Ortiz's file.

11:18:46  17  Detective Mary Evans, the cold case detective, said that

11:18:51  18  the file was cleared, not closed, and that murder files

11:18:56  19  are never closed.  Again, a broken promise.  And Mr.

11:19:04  20  Felle told you that Detective Stambach should have done

11:19:08  21  a lineup or should have done a one on one with Mr. Ortiz

11:19:12  22  in it and other suspects, I suppose.  But you learned

11:19:17  23  from the police officers in this case that only district

11:19:20  24  attorneys do a lineup.  And you learned that a one on

11:19:24  25  one showing of a witness or showing of a suspect to a

A-2561

8

1                    J. ORTIZ VS. M. STAMBACH

11:19:29    2   witness is never done, it's improperly suggestive.

11:19:37    3   There has been no evidence of any animus, bad motive,

11:19:43    4   malice, on the part of Detective Stambach.  Why would a

11:19:48    5   detective with, at the time of, over 30 years experience

11:19:52    6   and now over 50 years experience, risk his career on

11:19:57    7   this case?  And there has been no evidence in this case

11:20:08    8   in this courtroom to establish that the problems Mr.

11:20:14    9   Ortiz has suffered owe to anything that Detective

11:20:23   10   Stambach did.

11:20:24   11            Mr. Felle's apparently going to tell you

11:20:26   12   there was some kind of grand conspiracy that Detective

11:20:33   13   Stambach orchestrated between the three police officers

11:20:38   14   who were at the confession, others who were not at the

11:20:42   15   confession but handled other parts of it, and the people

11:20:47   16   at Buffalo General Hospital, Officer Torres, the

11:20:52   17   translator, this grand conspiracy to frame Mr. Ortiz.

11:20:59   18   But, again, there is no evidence at all of a grand

11:21:06   19   conspiracy.  Mr. Ortiz attributes all of the problems he

11:21:14   20   has faced in life to Detective Stambach.  It's as if he

11:21:21   21   views all of the problems in his life through the lens

11:21:28   22   or the filter of his confession.  The confession he made

11:21:31   23   in this case, blaming Detective Stambach.  But Mr.

11:21:37   24   Ortiz's problems don't begin or tend with Detective

11:21:41   25   Stambach.  They began well before the encounter,

|       |    |                                                      |
|-------|----|------------------------------------------------------|
|       | 1  | J. ORTIZ VS. M. STAMBACH                             |
| 11:21:48 | 2  | actually in Puerto Rico. You heard testimony concerning |
| 11:21:54 | 3  | Mr. Ortiz's mental healths problems in Puerto Rico, the |
| 11:21:59 | 4  | death of his mother, the break up with the girlfriend, |
| 11:22:01 | 5  | and the having to come alone to America. And we know in |
| 11:22:09 | 6  | evidence, Defendant's Exhibit 405, that Mr. Ortiz said |
| 11:22:16 | 7  | that he had been in trouble in Puerto Rico for guns and |
| 11:22:19 | 8  | dope. His problems continued in Buffalo, largely his |
| 11:22:39 | 9  | choice of friends and colleagues, hanging around with |
| 11:22:43 | 10 | the wrong crowd, you might say, being involved with |
| 11:22:50 | 11 | persons involved in drug operations. And he had more |
| 11:22:56 | 12 | mental health problems before his confession. And Mr. |
| 11:23:03 | 13 | Ortiz's problems also post date that confession. They |
| 11:23:08 | 14 | post date his release from prison. He has had a |
| 11:23:15 | 15 | criminal conviction since, he has been hospitalized in |
| 11:23:19 | 16 | Niagara Falls when he went off his medications. So |
| 11:23:27 | 17 | while we recognize that Mr. Ortiz has had a hard life, |
| 11:23:31 | 18 | that he has suffered, and while we feel some genuine |
| 11:23:36 | 19 | sympathy for him, he seems like a nice guy. He has |
| 11:23:41 | 20 | turned his life around. He is married now. Mr. Felle |
| 11:23:47 | 21 | told you he is not bitter. He is happy every day he |
| 11:23:51 | 22 | wakes up. While we feel genuine sympathy for him, |
| 11:24:00 | 23 | sympathy is not an appropriate basis for your verdict. |
| 11:24:16 | 24 | Since it was only last Tuesday, the jurors |
| 11:24:22 | 25 | will remember that I made a big deal at jury selection |

J. ORTIZ VS. M. STAMBACH

11:24:25  2   about asking you all one question.  I asked you

11:24:30  3   different individual questions, but I asked you all the

11:24:33  4   same question, whether you could put aside whatever

11:24:36  5   feelings you have about police officers, police officers

11:24:41  6   current events, and decide this case based on the

11:24:44  7   evidence and the law that you saw in this courtroom.  In

11:24:55  8   your deliberations, when you consider the evidence

11:24:59  9   presented in this courtroom, when you apply the law

11:25:03  10  given to you by Judge Wolford, I suggest you will make

11:25:12  11  the following findings.  When you deliberate, you will

11:25:18  12  have a sheet with the questions you have to answer.  And

11:25:22  13  you will have it with you, so you can read them and talk

11:25:26  14  about them.  Question one will state, with respect to

11:25:33  15  the first cause of action, do you find that the

11:25:36  16  Plaintiff has demonstrated by a preponderance of the

11:25:39  17  evidence that the defendant maliciously prosecuted the

11:25:42  18  Plaintiff.  And I ask you to answer no.  The second

11:25:52  19  question you will consider, with respect to the second

11:25:56  20  cause of action, do you find that the Plaintiff has

11:26:01  21  demonstrated by a preponderance of evidence that the

11:26:03  22  defendant fabricated evidence against the Plaintiff.

11:26:10  23  Again, I will ask you to answer no.  And the third

11:26:20  24  question you will have to consider with respect to the

11:26:26  25  third cause of action, do you find that the Plaintiff

A-2564

11

J. ORTIZ VS. M. STAMBACH

11:26:29  2  has demonstrated by a preponderance of evidence that the

11:26:34  3  defendant violated Plaintiff's Fifth Amendment right

11:26:38  4  against self incrimination.  And, again, I will ask you

11:26:43  5  to find no.

11:26:56  6          Now, you may not know it, hopefully you

11:26:59  7  don't know it, but I spent a fair amount of time in this

11:27:03  8  last week observing you guys and I have to say, you are

11:27:06  9  an incredibly attentive, dedicated jury.  You've

11:27:11  10  obviously paid close attention to what has happened in

11:27:14  11  this court.  As I told you during my opening statement

11:27:21  12  and as I will repeat now, you are the most important

11:27:25  13  part of this case.  The lawyers are important, the

11:27:33  14  witnesses are important, the parties are important, the

11:27:36  15  judge is important, Karen, the court reporter, has the

11:27:40  16  hardest job in the courtroom, and she is important, but

11:27:43  17  you are the most important part of this.  We couldn't do

11:27:46  18  this without you.  And so as I finish here, this

11:27:54  19  morning, I ask you to remember the question I asked each

11:27:59  20  of you during jury selection.  I asked you to assure me

11:28:04  21  that you could put aside whatever feelings you have

11:28:07  22  about police officers and decide the case based upon the

11:28:12  23  evidence in this courtroom, the law from the Judge, and

11:28:17  24  you all assured me you could do that.  Now is the time I

11:28:22  25  hold you to that assurance.

1                   J. ORTIZ VS. M. STAMBACH

11:28:27  2          On behalf of Detective Stambach, I thank

11:28:31  3   you.

11:28:33  4          THE COURT:  Thank you, Mr. Russ.  Ladies and

11:28:37  5   gentlemen, I need to take a quick break before I turn to

11:28:41  6   Mr. Felle's closing argument.  Don't talk among

11:28:55  7   yourselves about the case or about the evidence in the

11:29:00  8   case and we'll have you back here shortly.

11:29:08  9          (Whereupon, the jury is escorted from the

11:29:10  10  courtroom)

11:29:13  11         THE COURT:  So you made reference during

11:29:16  12  your closing to Defense Exhibit 405, and we don't have

11:29:20  13  that in evidence.

11:29:27  14         MR. RUSS:  Maybe it came in under

11:29:28  15  Plaintiff's number, the notes of Stambach.

11:29:32  16         THE CLERK:  Plaintiff's 10.

11:29:33  17         THE COURT:  Okay.  I just want to clarify

11:29:35  18  that on the record in case there is any issues.  So,

11:29:40  19  Defense Exhibit 405 that Mr. Russ referred to during his

11:29:45  20  closing is actually Plaintiff's Exhibit 10.  Do you have

11:29:49  21  any disagreement with that, Mr. Felle?

11:29:52  22         MR. FELLE:  No, I have no disagreement.

11:29:54  23         THE COURT:  Fair enough.

11:29:55  24         MR. RUSS:  I'm sorry, your Honor.

11:29:56  25         THE COURT:  That's okay.  I didn't want the

A-2566

13

J. ORTIZ VS. M. STAMBACH

11:29:58  2  record reflecting that you were referring to some

11:30:00  3  exhibit.

11:30:02  4          You want to use the restroom?  Sure, go

11:30:05  5  ahead.

11:30:07  6          THE DEFENDANT:  Your Honor, can I take a

11:30:08  7  seat?

11:30:08  8          THE COURT:  Yes.  Thanks for checking, Mr.

11:30:10  9  Ortiz.

11:30:10  10          (Whereupon, there was a pause in the

11:32:11  11  proceeding.)

11:32:11  12          THE COURT:  All right.  Dawn, I think the

11:32:13  13  sound is off.  And once you do that, we can bring our

11:32:16  14  jury back in.

11:33:43  15          (Whereupon, the jury is escorted into the

11:33:45  16  courtroom.)

11:33:45  17          THE COURT:  Thank you, Dawn.  Thank you,

11:33:48  18  everybody.  Everybody can have a seat.  I wanted to

11:33:49  19  clarify on the record, ladies and gentlemen, Mr. Russ

11:33:52  20  made reference in his closing argument to Defense

11:33:55  21  Exhibit 405, which is the same as Plaintiff's Exhibit

11:33:58  22  10, which was introduced in evidence.  Some of the

11:34:02  23  exhibits were marked both as a Defense exhibit and

11:34:05  24  Plaintiff's exhibit, so that I just want the record to

11:34:08  25  reflect that.

J. ORTIZ VS. M. STAMBACH

11:34:10  2    MR. RUSS:  That's correct, your Honor.

11:34:10  3    Thank you.

11:34:11  4    THE COURT:  Thank you, Mr. Russ.

11:34:12  5    Mr. Felle, whenever you're ready, you may

11:34:14  6    proceed.

11:34:15  7    MR. FELLE:  Thank you, your Honor.  Ladies

11:34:18  8    and gentlemen.  Back on December 9th of 2014, a whole

11:34:32  9    group of law enforcement officers stood at the steps of

11:34:36  10   the Federal Courthouse.  Cameras were there, reporters

11:34:40  11   were there, and they announced that an innocent man had

11:34:44  12   been freed from a false arrest.  There was celebration.

11:34:51  13   I remember getting letters from judges, from

11:34:54  14   politicians, there was a celebration because justice had

11:34:58  15   prevailed, an innocent man was freed.  It was determined

11:35:00  16   that all of the charges against him were false.  And it

11:35:05  17   was a time to celebrate justice.  A lot of talk about

11:35:10  18   social reform, but this was real justice.  It was

11:35:13  19   determined that an innocent man should be let out of

11:35:16  20   jail.  And, ladies and gentlemen, while it's certainly

11:35:19  21   important that an innocent man should get out of jail,

11:35:23  22   it wasn't full justice.  You, each of you collectively,

11:35:29  23   is here to provide full justice to Mr. Ortiz, an

11:35:33  24   innocent man, who was in jail for 10 years and 22 days.

11:35:37  25   Since that day, I've been charged with this

A-2568

15

J. ORTIZ VS. M. STAMBACH

1

2 responsibility. And it's been my pleasure, it really

3 has, to represent Mr. Ortiz. He is just a good human

4 being. And what happened to him is tragic. So for

5 seven and a half years, I've dreamed about this trial.,

6 it certainly hasn't gone smoothly, you've seen that, but

7 I've also dreamed about this day, about the prospect of

8 full justice for Mr. Ortiz. And I told you in opening

9 statements, that this case represents one of the

10 greatest failures we can have in society. An Officer

11 who we provide authority to, power to, that he would

12 take advantage of that power, and he would arrest an

13 innocent man. And I also told you that with power comes

14 responsibility. That a detective is given the authority

15 by all of us to arrest people and put them in jail and

16 we collectively trust them to do a job, a good job at

17 doing that. Throughout this trial, you've listened to

18 the evidence. That was not the case here, ladies and

19 gentlemen. There was reckless disregard, at a minimum,

20 for the rights of Mr. Ortiz. And we'll get into the

21 details of that. But with that power comes

22 responsibility. And as you heard Mr. Stambach testify,

23 he hasn't accepted any responsibility whatsoever for his

24 actions. It's up to you, collectively, to make him

25 responsible for his actions. You are charged in this

A-2569

16

                    J. ORTIZ VS. M. STAMBACH

11:37:18  2  case to write a terrible wrong, a terrible wrong, an

11:37:23  3  innocent man in jail for 10 years and 22 days for crimes

11:37:27  4  he did not commit.

11:37:28  5           And so this case brings into conflict two

11:37:31  6  very big issues. Now, we told you, the Judge has told

11:37:35  7  you repeatedly, there is a stipulation, the other side

11:37:38  8  has agreed, Mr. Ortiz was completely innocent of this

11:37:41  9  crime. Had no involvement whatsoever. So any

11:37:45  10  suggestion or inference by Mr. Russ that he had any

11:37:49  11  involvement is completely improper. And you should ask

11:37:51  12  yourself, well, why would he even say that. It's simply

11:37:55  13  to mislead you. To somehow make you think that Mr.

11:37:59  14  Ortiz is not a good guy. I've heard a lot of that

11:38:03  15  during this trial. I mean, talk for a moment of adding

11:38:07  16  insult to the injury they created for this man. This

11:38:10  17  trial has been how he is a bad guy, and maybe because

11:38:14  18  you don't like him, you shouldn't see the fact that what

11:38:17  19  happened to him is absolutely unacceptable. Is that

11:38:20  20  what the defense has been trying to do. Ask yourself

11:38:23  21  that. Irrespective of all of the allegations they've

11:38:26  22  thrown at my client, he didn't deserve to go to jail for

11:38:29  23  10 years and 22 days. And when I asked those detectives

11:38:33  24  on the stand, do you want to apologize to him. The only

11:38:39  25  guy that had any decency was Torres at the end. Ask

A-2570

17

1                    J. ORTIZ VS. M. STAMBACH

11:38:42   2   yourself, what does that mean to the case.  I submit to

11:38:47   3   you that it means, with respect to Stambach, he knew

11:38:49   4   exactly what he did from the start, he had no remorse.

11:38:53   5   You heard his testimony and he still could care less

11:38:56   6   that he put an innocent man in jail.  Now, even knowing

11:39:00   7   with certainly, with certainly, that he put an innocent

11:39:03   8   man in jail, he never once looked back, never once

11:39:07   9   contacted Mr. Ortiz.  That should tell you a lot about

11:39:10  10   Mr. Stambach.

11:39:12  11          So we know from the stipulation, and the

11:39:14  12   judge is going to read you the stipulation again in the

11:39:16  13   charge later, that is accepted fact.  You have to accept

11:39:20  14   the facts.  We've agreed to that stipulation.  The

11:39:23  15   defense has agreed to that stipulation.  And it says Mr.

11:39:26  16   Ortiz was completely innocent.  Had no involvement in

11:39:29  17   the crimes.  And because of that stipulation, the Court

11:39:34  18   has precluded us from bringing in all that investigation

11:39:38  19   material.  We would have had another week of trial.  I

11:39:41  20   would have brought in U.S. Attorney's, FBI agents.  They

11:39:45  21   would have shown you unequivocally Mr. Ortiz had no

11:39:50  22   involvement whatsoever.  We didn't have to do that

11:39:53  23   because the stipulation is there.  So, again, any

11:39:56  24   inference to the contrary is improper.  And so that is

11:40:01  25   the first issue we have in the case, my client is

J. ORTIZ VS. M. STAMBACH

completely innocent. And the second thing we have is we
have a confession that has specific details that would
only be known by somebody who was at the crime scene. A
TV was on, so and so shot a gun, so and so took a chain.
These are all in the confession. It's in the evidence
and you can ask for it. That is impossible, ladies and
gentlemen. That is impossible. My client was not
there. My client has no information about how the scene
looked at the time of the crime. So how are those facts
inside of this confession? Stambach. The only guy who
would have known those facts. And ask yourself, 30 to
40 minutes alone, why would he do that? Well, you know
exactly why. He was taking advantage of a seriously ill
person. And you don't have to ask yourself why. There
are plenty reasons of why. It teases your brain. All
you have to know is that confession has details that my
client could not have known. And it was only that
confession that put my client in jail. Remember when
Mr. Stambach was asked, was there any other
corroborating evidence. I mean, you're a detective for
30 years, surely you looked at the file. Nope, I didn't
look at the file. Surely you looked at the witness
statements. Nope. Surely you looked at the P73s from
seven other detectives about their involvement with Mr.

1               J. ORTIZ VS. M. STAMBACH

11:41:35   2   Ortiz.  Nope.  So, Mr. Stambach, did you have any other

11:41:41   3   evidence that supported the fact that my client was

11:41:43   4   involved in the crimes.  And remember, quote, unquote,

11:41:48   5   "none whatsoever."  That was Mr. Stambach's words.

11:41:54   6   "None whatsoever."  Can you imagine how cavalier that is

11:41:59   7   to throw away a man's life for 10 years.  He intended it

11:42:03   8   for 25 or if not life all together.  That should tell

11:42:08   9   you a lot about the man, "none whatsoever."

11:42:12  10           So you have those two issues in conflict,

11:42:14  11   ladies and gentlemen, and there is just no way to

11:42:17  12   reconcile them.  We know that those facts were placed in

11:42:20  13   that confession.  We know they were in the notes well

11:42:23  14   before Torres even got there, and we know that all of

11:42:26  15   that happened when Torres got there, as Stambach said,

11:42:29  16   yes, no, and Stambach is typing it up.  The fix was

11:42:33  17   already in.  Those details, those facts in that

11:42:38  18   confession, could not, were not known to my client.

11:42:43  19   That is a textbook false confession.  A manufactured

11:42:48  20   confession.  Manufactured by Stambach.  And what is so

11:42:54  21   important to keep in mind is, as much as those details

11:42:57  22   were used because they are important, because he would

11:43:01  23   point to the details as saying to the DA and anyone else

11:43:05  24   looking at the case, this is a strong confession.  He

11:43:08  25   had to be there because look at the details that are in

1          J. ORTIZ VS. M. STAMBACH

11:43:11  2   there.  So when you hear Mr. Ortiz talk about him trying

11:43:17  3   to withdraw his plea and his attorney telling him no,

11:43:20  4   that is because Stambach with a lot of years as a

11:43:23  5   detective, really wanted to give it to him, and really

11:43:27  6   put in all of the facts that he couldn't get away from

11:43:30  7   him.  But we know, those are not facts known to my

11:43:37  8   client.

11:43:39  9          Ladies and gentlemen, based on those facts,

11:43:48  10  I am so certain that you will return a verdict in favor

11:43:52  11  of my client.  I'll go through the proof just a little

11:43:55  12  bit.  You were here and it was a quick trial, and so I

11:43:58  13  won't want to repeat myself.  And, you know, this may be

11:44:01  14  a good time to tell you and apologize to you because my

11:44:06  15  emotions have become strong.  I know I became combative

11:44:10  16  in this case, but it's difficult and frustrating to be

11:44:14  17  involved in this trial and know the information I know.

11:44:16  18  And I do want apologize.  And I'll try not to get

11:44:20  19  emotional now, but I may.  But I'll try not to, and I

11:44:24  20  want to go through the facts and evidence as best I can.

11:44:27  21          Remember the testimony of Dr. Coggins.  She

11:44:33  22  is now the chief of the Erie County Mental Health

11:44:36  23  Services Department, a forensic psychiatrist by

11:44:38  24  training.  And she only came into the life of Mr. Ortiz

11:44:41  25  because of her job, she treated him when he first came

A-2574

21

J. ORTIZ VS. M. STAMBACH

11:44:46 into the holding center. Remember what she told you.

11:44:50 So important. Her testimony was that he was one of the

11:44:53 most severely ill people she has ever treated. That he

11:44:56 was in the midst of a full on psychotic break from

11:45:01 reality. She told you that that would have necessarily

11:45:05 have affected him on the date Stambach talked with him.

11:45:09 Absolutely. He was psychotic on that day. He could not

11:45:14 differentiate between what was reality and non reality.

11:45:20 Hallucinations, schizophrenia, and paranoia. How do we

11:45:23 know how that was also true? We know it because all of

11:45:26 the other police officers that came into contact with

11:45:28 Mr. Ortiz on the 15th, they all recognize that. They

11:45:31 recognized he needed treatment. They sent him to

11:45:35 Buffalo General for a psych eval. And when the other

11:45:38 four or five officers came that night, they kept him,

11:45:42 wanted him to continue to be seen for a psych

11:45:44 evaluation, so we know he exhibited all of the signs.

11:45:48 We know in all of the P73s, he was afraid for his life,

11:45:52 afraid for his life. He was going to the police because

11:45:56 people were trying to kill him. Rationally or not

11:46:00 rationally, he was going to the police. Let me ask you

11:46:03 something very important about that, ladies and

11:46:05 gentlemen. You heard about this crime. The Camacho

11:46:10 brothers were killed point blank with an AK-47 and

J. ORTIZ VS. M. STAMBACH

bludgeoned with a baseball bat that was found, the DNA
of both deceased were on it. Would a person who
committed that crime that violent a crime, would that be
a person that would go to the police? Would that be a
person that would seek out the police? Not at all,
ladies and gentlemen. These are violent criminals.
These are people that run from the police. They hide in
the darkness. These are people completely unlike Mr.
Ortiz. He was going to the police for help. Just like
he had been taught as a kid. Just like I teach my kids
and maybe you teach yours. When you're in trouble, you
can turn to the police. Well, he knew he was in
trouble. He was afraid. And he consistently kept
turning to the police, calling to the police, going to
the police car. That is not consistent with a violent
criminal who committed these murders. He was mentally
ill and anyone who came into contact with him knew that.
And, undoubtedly, Stambach saw that and recognized it,
and, unfortunately, unlike the seven other officers who
saw my client, he decided to take advantage of it.

        Dr. Coggins also testified that once Mr.
Ortiz was medically treated and stabilized, he would
continue to tell her that he was innocent and she
believed him. Now, you know, I asked her, she has no

A-2576

23

                    J. ORTIZ VS. M. STAMBACH

11:47:49   2   bias in this.  She came here never asked for a dime for

11:47:54   3   all her travel and time.  She came here to tell you the

11:47:57   4   truth about what she experienced with Mr. Ortiz.  And

11:48:02   5   she told you, all those years, I believed him.  Well,

11:48:05   6   there is a lot of folks that say they are innocent,

11:48:08   7   ladies and gentlemen.  But she believed Mr. Ortiz.  And

11:48:11   8   as it turned out, she was absolutely right.  Her

11:48:15   9   instinct, I suppose, as a forensic psychiatrist, guided

11:48:17   10  her and she was right and she told you that on the

11:48:20   11  stand.  Now, I do want to talk about bias a little bit.

11:48:25   12  Dr. Coggins was unbiased completely.  She came in and

11:48:28   13  told the truth.  She was only involved as a treatment

11:48:31   14  provider to Mr. Ortiz.  But some of the officers that

11:48:34   15  have come in, I am sure you sort of saw, they have the

11:48:40   16  same narrative.  They are trying to sell -- I get it,

11:48:42   17  their friend is on trial, he is a former police officer

11:48:44   18  with them.  But, nonetheless, the evidence was very

11:48:48   19  clear, that both Detective Vaughn and Detective Lauber

11:48:55   20  picked up on all of the cues of his mental illness of

11:49:00   21  Mr. Ortiz.  They all picked up on it and that was clear

11:49:04   22  when they took the stand.  And that brings me to

11:49:08   23  Detective Lonergan, hard one to figure out.  But

11:49:11   24  Detective Lonergan testified that he met with my client

11:49:15   25  for 30 minutes at Buffalo General Hospital, and then

J. ORTIZ VS. M. STAMBACH

2 tries to tell us he never told Stambach about that.

3 Never could understand this. Throughout all of the

4 years, I could never understand it. Two experienced

5 detectives and said, both say they never spoke. When

6 Lonergan comes in at 9 o'clock and Stambach says, I got

7 a full confession. Did Lonergan say, "that guy was real

8 sick yesterday, is he okay now?" And "that guy had no

9 information yesterday, now he has information?" Ladies

10 and gentlemen, there are many things that we will never

11 know the answer to. We know the certain answer, this

12 wasn't my client's confession. But we will never know

13 how this all developed. Maybe Lonergan did tell him.

14 Maybe it was the two of them. They said, hey, this guy

15 is going to give a confession. We don't know how it all

16 came out. You did hear Mr. Lonergan say something, I

17 don't want to go off on crazy conspiracies, but you

18 heard Lonergan, that we were pretty unhappy. Our

19 department was merged into MCU and that was merged for

20 about 10 months and we had a lot more work and a lot of

21 grumblings and people were not happy. Now, I agree with

22 every one of you collectively, that seems like a hard

23 sell. Would someone convict an innocent person just to

24 solve a crime? I don't know. Again, I don't have to

25 prove why they did it. You all know that they did do

1                    J. ORTIZ VS. M. STAMBACH

11:50:49  2   it.  And both say, again, experienced detectives, Mr.

11:50:54  3   Russ just pointed out, both experienced detectives and

11:50:57  4   both said to you that before talking to Mr. Ortiz, they

11:51:00  5   never looked at the investigation file.  Is that odd?

11:51:03  6   Like you go in to talk to somebody about a crime, but

11:51:07  7   yet you testified before us that you never looked at the

11:51:10  8   details of the crime.  That, ladies and gentlemen, is

11:51:14  9   hard to believe, it's incredible, and maybe it's just

11:51:19  10  uncredible, unbelivable.  But that is what Mr. Lonergan

11:51:25  11  said, and you heard it repeatedly from Mr. Stambach.  "I

11:51:29  12  didn't see anything."  That is hard to believe.

11:51:33  13  Experienced detectives didn't look at any of the other

11:51:36  14  evidence in that file.

11:51:41  15          And then it leads me to the testimony today

11:51:43  16  of Mr. Torres.  Very confusing.  He remembers Stambach

11:51:47  17  being there at Buffalo General Hospital.  Now, that is

11:51:53  18  pretty crazy.  What if he was and what if he did see how

11:51:58  19  sick my client was and then the next day had a patrolman

11:52:02  20  bring him right to the MCU?  That is even more

11:52:05  21  disturbing, but a distinct possibility.  You know, Mr.

11:52:10  22  Hugh or Mr. Russ said something in opening, "don't let

11:52:14  23  the truth get in the way of a good story," and I think

11:52:16  24  he was trying to take a shot at me for my opening

11:52:20  25  statement.  But where it really applies, ladies and

| | | |
|---|---|---|
| | 1 | J. ORTIZ VS. M. STAMBACH |
| 11:52:22 | 2 | gentlemen, is, let's not let the truth get in the way of |
| 11:52:26 | 3 | a good confession, right? The truth is, my client |
| 11:52:30 | 4 | didn't do any of this stuff and is completely innocent, |
| 11:52:33 | 5 | but Stambach didn't let that get in the way of what he |
| 11:52:36 | 6 | was going to make a good confession. This case shocks |
| 11:52:46 | 7 | my conscience every time I look at the facts and I |
| 11:52:50 | 8 | prepare, it just shocks my conscience to think that the |
| 11:52:55 | 9 | officers were so reckless, at a minimum, were so |
| 11:52:59 | 10 | reckless, didn't look at anything else, no evidence at |
| 11:53:02 | 11 | all, would arrest my client. I want you to review the |
| 11:53:04 | 12 | confession if you have any doubts whatsoever. It's in |
| 11:53:07 | 13 | evidence. Anything in evidence can be pulled back by |
| 11:53:12 | 14 | you. You can come out at any time and have any |
| 11:53:15 | 15 | testimony read back. And the testimony is absolutely |
| 11:53:18 | 16 | evidence. And the Judge will tell you this in her |
| 11:53:21 | 17 | charge. You are entitled to see all of that if you have |
| 11:53:24 | 18 | any questions about what we've said. |
| 11:53:26 | 19 | What was very telling also, and I don't mean |
| 11:53:29 | 20 | to repeat myself, when Mr. Stambach was asked that |
| 11:53:32 | 21 | question about, after you filed that arrest report, did |
| 11:53:38 | 22 | you ever go back and afterwards and re-examine the case. |
| 11:53:41 | 23 | You know there were two other perpetrators, did you ever |
| 11:53:44 | 24 | do anything more? No. But it was marked "cleared" in |
| 11:53:51 | 25 | the file system. You heard that from Detective Evans. |

J. ORTIZ VS. M. STAMBACH

And then you also know that Stambach, even once he
became aware my client was innocent, didn't care, didn't
go back and look at it and try and find out how that
could happen.  Remember I read to you numerous times,
and I apologize if it was ad nauseam, the code of ethics
of for a police officer.  To protect the innocent
against deception.  The weak against oppression or
intimidation.  And to respect the constitutional rights
to liberty, equality and justice.  Ask yourself, these
officers didn't care about that.  Officer Stambach
didn't care about that oath.

Now, the Judge told you on your opening
charge and she'll tell you again in your closing charge,
that this case requires proof by the Plaintiff by a
preponderance of the evidence.  That is our burden.  Is
it more likely than not.  We always consider the scales
of justice, and does the evidence tip ever so favorably
to the Plaintiff or the person trying to make the claim.
Ladies and gentlemen, I would submit, in this case, the
evidence has been overwhelming.  In fact, the Defense
hasn't even called a witness.  We brought all of the
evidence to you.

So, ladies and gentlemen, as much of Mr.
Russ talks about generically the claims here, I want to

A-2581

28

                    J. ORTIZ VS. M. STAMBACH

11:55:19    2    talk to you about the claims specifically and what the

11:55:21    3    law requires.  There are three claims.  The claim of

11:55:26    4    malicious prosecution.  The claim of fabrication of

11:55:29    5    evidence.  And the claim that there was a violation of

11:55:32    6    the Fifth Amendment right against self incrimination,

11:55:35    7    the Miranda.  And, so, looking at the malicious

11:55:41    8    prosecution claim, there are four elements to that

11:55:45    9    claim.  But the Judge is going to tell you that the

11:55:49   10    first and third element of that claim are admitted by

11:55:52   11    way of our stipulation.  So you, as a jury, are going to

11:55:56   12    decide, did the defendant lack probable cause to believe

11:55:59   13    that my client's case would succeed.  And did he act for

11:56:07   14    a reason or purpose other than bringing the Plaintiff to

11:56:10   15    justice.  So, that second element, the lack of probable

11:56:20   16    cause, it's what he knew at the time.  Well, did he have

11:56:23   17    any other cause to arrest my client?  No.  To use his

11:56:28   18    words "none whatsoever."  All he used was this false

11:56:31   19    confession that he knew had to have known it was false.

11:56:34   20    My client could not have known those facts.  When

11:56:47   21    considering that element, and, again, I'm going to

11:56:50   22    repeat myself a little bit, but there was no

11:56:53   23    corroborating evidence.  There were numerous witness

11:56:57   24    statements that were never looked at by Stambach.  There

11:57:00   25    were seven other officers that met with Ortiz on the

1           J. ORTIZ VS. M. STAMBACH

11:57:02  2   15th that Stambach said he never considered those P73s.

11:57:08  3   And I understand, they try to sell the narrative that

11:57:13  4   the P73s may not be produced right away.  There might be

11:57:17  5   a lag.  But if they knew that, ladies and gentlemen,

11:57:19  6   they should not have arrested my client.  They shouldn't

11:57:22  7   arrest nobody until they know what is going on actively

11:57:26  8   in an investigation, especially in this case where there

11:57:28  9   were so many other interactions with my client the day

11:57:31  10  before.  That is not an excuse.  That is not an excuse

11:57:33  11  at all.  The P73s were there in the file.  Mr. Stambach

11:57:39  12  didn't care to look for them or care to review them or

11:57:42  13  maybe he did and still didn't care.  He didn't want the

11:57:45  14  facts to get in the way of a good confession.  Now, the

11:57:51  15  fourth element, that malicious prosecution claim, the

11:57:58  16  Judge is going to tell you that a prosecution is

11:58:03  17  initiated maliciously -- maliciously has a lot of other

11:58:08  18  definitions -- but, in this case, if it is done with

11:58:11  19  reckless disregard of the rights of the person accused.

11:58:16  20  Reckless disregard.  Doesn't have to be intentional.  I

11:58:19  21  think in this case it's pretty clear it was, but with

11:58:22  22  reckless disregard.  At a minimum, that happened here.

11:58:26  23  He didn't consult with any of the investigation file, no

11:58:29  24  other information, that is reckless disregard with

11:58:32  25  respect to the arrest of my client.  Those are the two

A-2583

30

| | |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 11:58:34  2 | elements.  And once you consider the weight of the |
| 11:58:37  3 | evidence, I feel confident that you're going to answer |
| 11:58:40  4 | that question in the affirmative. |
| 11:58:42  5 | Now, if it please the Court, can I use the |
| 11:58:47  6 | projector to show the verdict sheet as opposed to waving |
| 11:58:52  7 | it? |
| 11:58:52  8 | THE COURT:  Sure.  Do you have the revised |
| 11:58:54  9 | verdict sheet that my law clerk passed out? |
| 11:58:57  10 | MR. FELLE:  I do, your Honor.  Thank you. |
| 11:58:59  11 | THE COURT:  Okay. |
| 11:58:59  12 | MR. FELLE:  So, ladies and gentlemen, hope |
| 11:59:13  13 | you are all able to see that monitor on top is working, |
| 11:59:17  14 | I hope.  This is the verdict sheet that you all will be |
| 11:59:20  15 | handed when I sit down after the charge that the judge |
| 11:59:22  16 | gives you.  And the first question you will be asked is: |
| 11:59:25  17 | With respect to the first cause of action -- and, again, |
| 11:59:29  18 | that claim is for malicious prosecution -- did the |
| 11:59:33  19 | Plaintiff demonstrate by a preponderance of the evidence |
| 11:59:35  20 | that the defendant maliciously prosecuted the Plaintiff. |
| 11:59:40  21 | I feel confident that, based on all of the evidence in |
| 11:59:42  22 | this case, that your answer in that question will |
| 11:59:45  23 | collectively be "yes."  Again, the Judge will tell you |
| 11:59:48  24 | in her charge what the law is.  I explained there are |
| 11:59:51  25 | four elements, two conceded and/or admitted by the |

J. ORTIZ VS. M. STAMBACH

11:59:55  2  defense, and two we have proven by the preponderance of

11:59:58  3  the evidence.  So I ask you that your mark right there

12:00:01  4  be yes and all you would do is put a check collectively.

12:00:05  5  And then from there you move to the next question:  Was

12:00:08  6  there a fabrication of evidence.  Well, the claim of

12:00:12  7  fabrication of evidence has five elements.  But in this

12:00:15  8  case, three of them have been admitted:  Elements one,

12:00:19  9  elements four and elements five.  So you, as a jury, are

12:00:23  10  going to consider the heaviest question in a fabrication

12:00:28  11  of evidence, did the defendant manufacture the evidence,

12:00:30  12  the confession.  I continue to tell you, my client was

12:00:35  13  completely innocent, had no involvement in that crime

12:00:38  14  and there is no way he knew those facts.  This

12:00:41  15  confession was clearly manufactured or fabricated as it

12:00:44  16  applies to this.  And then the second prong of that,

12:00:48  17  well, did that fabricated evidence, was it used to

12:00:52  18  influence the outcome or verdict or decision.  Well,

12:00:55  19  absolutely it was.  And, in fact, I would say it was the

12:00:58  20  only thing that was submitted, right?  They didn't have

12:01:01  21  any other evidence, so the confession that was

12:01:04  22  manufactured or fabricated was used with the potential

12:01:07  23  that it would convict him if a trial was necessary.  So,

12:01:11  24  again, when you consider the issue of fabrication of

12:01:14  25  evidence, ladies and gentlemen, I feel very strongly

1                    J. ORTIZ VS. M. STAMBACH

12:01:16    2    when you look at that question as number two, you will

12:01:20    3    collectively say "yes."  Now, keep in mind, each one of

12:01:26    4    these questions is independent.  You don't have to

12:01:28    5    answer all of these questions in the affirmative before

12:01:31    6    justice can prevail for Mr. Ortiz on any one of the

12:01:35    7    claims, but we believe, I believe, I believe strongly

12:01:40    8    the evidence has been overwhelming on all three counts.

12:01:46    9              Now, the last element, and I think this one

12:01:51   10    tends to be, in my mind at least, the easiest one

12:01:54   11    because the Fifth Amendment right against self

12:01:57   12    incrimination, as you heard Mr. Torres talk about a

12:02:02   13    little bit earlier, when somebody becomes a suspect,

12:02:05   14    you're required to read them those rights.  It's clear

12:02:08   15    that when Mr. Ortiz was brought to the MCO or MCU, the

12:02:13   16    major crimes unit on the 16th, he was brought there for

12:02:17   17    the purpose of confessing to a crime.  That is when he

12:02:20   18    was brought specifically to Sergeant Viviane's office

12:02:24   19    and met with Mr. Stambach for 30 to 40 minutes alone,

12:02:30   20    but if he was coming there to admit to a crime, the

12:02:33   21    Fifth Amendment requires that he be given his Miranda

12:02:38   22    warnings and sign off on them.  We could agree or

12:02:41   23    disagree with the Miranda rights, but the Constitution

12:02:45   24    gives Mr. Ortiz the right against self incrimination.

12:02:51   25    And here we also know that when he came in, Mr. Stambach

J. ORTIZ VS. M. STAMBACH

12:02:53  2  brought him to a room, and during that 30 or 40 minutes

12:02:58  3  Mr. Ortiz essentially confessed is what Mr. Stambach

12:03:01  4  would have you think.  At any time during that 30 or 40

12:03:04  5  minutes, he was required to give him the Miranda

12:03:09  6  warnings, not after he confessed.  No.  Once he declared

12:03:14  7  him a suspect, the Judge will tell you, there are three

12:03:22  8  elements to the right of self incrimination, and the

12:03:25  9  third element of that is conceded.  It's admitted that

12:03:29  10  the statements were used against him in the prosecution.

12:03:31  11  Well, of course they were, right?  That is the only

12:03:33  12  evidence they had.  But number one and two are that the

12:03:38  13  defendant applied coercion to obtain the waiver of the

12:03:42  14  right against self incrimination or to obtain or to

12:03:46  15  obtain an inculpatory statement.  That is an admission

12:03:49  16  of involvement, inculpatory, it says I was involved.

12:03:53  17  And that gets back to what I just said.  Once you become

12:03:56  18  a suspect, you're required to get the Miranda warnings.

12:03:59  19  Now, now the word coercion, we think of that brut force,

12:04:10  20  and some guy taking your arm behind your back and not

12:04:16  21  undoing it until you take it back.  That is not what it

12:04:20  22  is.  It's undue influence that makes another person feel

12:04:23  23  like they have no choice.  And in this situation, we

12:04:26  24  know from the evidence, it is uncontroverted, Mr. Ortiz

12:04:31  25  was very ill, needed psychiatric treatment and was very

A-2587

34

J. ORTIZ VS. M. STAMBACH

12:04:33  2  vulnerable and suggestible, and, clearly, Mr. Stambach

12:04:36  3  used that against him to obtain a confession, and

12:04:39  4  certainly used that to avoid reading his Miranda rights

12:04:42  5  and getting the so-called confession. So, with respect

12:04:45  6  to the violation of the Fifth Amendment rights, I,

12:04:48  7  again, would say that is an easy claim, the evidence has

12:04:53  8  been clear and uncontroverted. And when you look at the

12:04:57  9  verdict sheet, I think collectively you can answer

12:05:00  10  "yes." I feel strongly about that.

12:05:08  11          So, ladies and gentlemen, I'm confident on

12:05:10  12  all three claims, we met the burden. Common sense, life

12:05:14  13  experience tells you what happened here. It brings me

12:05:20  14  to the issue of damages. And that is really why we're

12:05:25  15  here, ladies and gentlemen. It's the rest of the

12:05:26  16  justice that Mr. Ortiz deserves. Sure, there was a

12:05:32  17  great celebration when he was released from jail, but

12:05:34  18  that is only part of what justice requires. He was in

12:05:38  19  jail 10 years and 22 days. He lived in absolute

12:05:44  20  torture. I'm not even sure if each of us can comprehend

12:05:49  21  that. We all live in our bubbles of freedom. We take

12:05:54  22  for granted the decisions we make every day to be with

12:05:57  23  our family and be surrounded by love. Can we appreciate

12:06:01  24  what being in jail for 10 years and 22 days would mean?

12:06:05  25  I submit to you that the hardest thing we do in life is

J. ORTIZ VS. M. STAMBACH

12:06:09  2   to appreciate the pain and suffering of another person.

12:06:13  3   To truly understand their struggles. It's hard, to put

12:06:17  4   yourself in someone else's shoes and try and appreciate,

12:06:21  5   sincerely, try and appreciate what their life has

12:06:24  6   brought them through. And I'm going to challenge each

12:06:27  7   one of you to do that. Think about the testimony of Mr.

12:06:32  8   Ortiz. And, really, when you're in that deliberation,

12:06:40  9   close your eyes and think, how would life be in jail.

12:06:44 10   To feel threatened every day. In this case, be

12:06:47 11   assaulted. And then think how much harder it may be for

12:06:51 12   somebody with mental illness confined to four walls

12:06:55 13   fighting the demons in their mind all of the time. It

12:07:01 14   was absolute torture, ladies and gentlemen. And it

12:07:05 15   wasn't just torture once, it was a hopeless kind of

12:07:08 16   torture because Mr. Ortiz was going to be behind bars

12:07:12 17   for 25 years. There is no recourse. Nothing you can

12:07:17 18   do. You heard him talk about strip searchs, being

12:07:22 19   humiliated, you heard about him being assaulted and

12:07:26 20   knifed, he has a scar. The basic dignities that we take

12:07:32 21   for granted in life, and, you know, he talked about some

12:07:40 22   other things. Imagine the people you love in life,

12:07:44 23   maybe dying, thinking you were a bad person. Maybe not

12:07:49 24   having contact with your family for an extended time.

12:07:51 25   Not being surrounded by love and affection, the things

```
              1                  J. ORTIZ VS. M. STAMBACH

12:07:55      2     that make each one of us emotionally secure, for 10

12:07:58      3     years.  For 10 years, I can assure you Mr. Ortiz's

12:08:04      4     birthday was not celebrated, no cake, no friends, no

12:08:08      5     presents.  Christmas day was no different, and all of

12:08:12      6     those holidays.  He lost the love and affection of his

12:08:14      7     family and anybody else that he could have come into

12:08:17      8     contact with during that time.  It was taken away from

12:08:20      9     him.  And, ladies and gentlemen, think about the time

12:08:22     10     frame that was taken from Mr. Ortiz.  He was 23 years

12:08:26     11     old.  And he spent 23 to 33 of his years of life in

12:08:34     12     jail.  Now, I submit to you, those could be the most

12:08:38     13     important years of our life.  Think back in your own

12:08:41     14     life experience all of the things that happened during

12:08:45     15     those years, sorry, you're a little ahead of us, you're

12:08:48     16     a little younger.  But some great things are going to

12:08:52     17     happen.  I met my wife, I got married, I had kids, I was

12:08:58     18     able to coach them and enjoy them and share all of that.

12:09:02     19     Best days of my life.  I was able to make relationships,

12:09:06     20     some of the best friendships of my life.  I'm still the

12:09:09     21     godfather of some of those friends, and they are the

12:09:13     22     godfather to my kids.  Those are the times that make

12:09:17     23     life worth living.  Those are the years that make us who

12:09:23     24     we are.  Without them, we would be hollow.  We would be

12:09:29     25     a fraction of ourselves.  Mr. Ortiz was not given those
```

                    J. ORTIZ VS. M. STAMBACH

12:09:33   2   chances.  They were taken from him, ladies and

12:09:35   3   gentlemen.  He wasn't able to develop relationships and

12:09:38   4   wasn't able to feel love, affection, needed.  He wasn't

12:09:42   5   able to work, get the sense of self worth that you get

12:09:46   6   from working.  You can tell who he is.  Remember he told

12:09:50   7   you about working.  Who would have blamed Mr. Ortiz

12:09:53   8   after being wrongfully incarcerated for 10 years for

12:09:57   9   staying on public assistance.  But that is not who he

12:10:00  10   is.  And he is not even here today asking you for

12:10:03  11   economic loss.  He could have absolutely brought a claim

12:10:07  12   in this case for economic loss.  But that is not who he

12:10:10  13   is.  You heard him testify.  He got a job when he lived

12:10:14  14   in Niagara Falls working at the chocolate factory making

12:10:18  15   minimum wage.  I think 8.50 an hour, and he took three

12:10:22  16   buses to get there and back home.  That is who Mr. Ortiz

12:10:26  17   is.  But he lost, he lost all of that opportunity he

12:10:29  18   would have had those 10 years to gain knowledge, to gain

12:10:32  19   skills.  All of those things that have made us more

12:10:35  20   successful in our careers and our businesses and just in

12:10:38  21   life.

12:10:38  22               THE COURT:  You have under five minutes, Mr.

12:10:40  23   Felle.

12:10:42  24               MR. FELLE:  Ladies and gentlemen, I'd ask

12:10:44  25   you, one of the hardest things you're going to do today

```
          1              J. ORTIZ VS. M. STAMBACH
12:10:47  2   is put to an amount on what would be fair and just to
12:10:50  3   Mr. Ortiz.  I would submit to you that, at a minimum,
12:10:54  4   what justice deserves is $1000 a day for each day he was
12:10:57  5   in jail for 10 years and 22 days.  Judge will tell you
12:11:04  6   that is just my opinion, not evidence, but I think it's
12:11:08  7   the minimum that justice requires.  You can certainly
12:11:11  8   award him more if your conscience tells you
12:11:16  9   collectively.  So please close your eyes while in the
12:11:19 10   deliberation room what a moment or day would feel like
12:11:22 11   in jail, and then feel that perpetuated for 10 years.
12:11:26 12   On the verdict sheet, you're going to be asked to make
12:11:29 13   an award, it's question No. 4.  And when you're asked
12:11:37 14   that, you'll write in that amount, $1000 a day for 10
12:11:43 15   years and 22 days.  Incidentally, that is your
12:11:46 16   discretion.  You're the jury, that is your power.  And
12:11:48 17   that is why you are the judges of this trial.  And
12:11:51 18   you'll put an amount there that you feel is fair and
12:11:54 19   just to Mr. Ortiz having heard this case and knowing
12:11:57 20   that an innocent man was in jail.  Now, the last thing
12:12:01 21   you're going to consider in this case after you award
12:12:03 22   damages is whether or not, whether or not the evidence
12:12:15 23   in this case and the conduct of Mr. Stambach
12:12:19 24   demonstrates a shocking or an offensive misconduct.  And
12:12:24 25   we call this punitive damages.  Now, you're not going to
```

J. ORTIZ VS. M. STAMBACH

12:12:27  2  award punitive damages at this stage, but you're going

12:12:31  3  to make an indication.  And, again, the Judge is going

12:12:33  4  to read you the law, but if you believe the evidence in

12:12:35  5  this case has shown the conduct of Mr. Stambach was both

12:12:39  6  shocking and offensive, and I would suggest it was

12:12:44  7  absolutely offensive.  He put an innocent man in jail.

12:12:48  8  He forged this confession.  But, at this point in the

12:12:52  9  trial, you're going to be asked at question No. 6:  Do

12:12:58  10  you find that punitive damages should be awarded in

12:13:01  11  favor of the Plaintiff.  And you're simply going to say

12:13:04  12  yes or no, I'm going to submit to you collectively, you

12:13:08  13  can indicate "yes."  And if you indicate "yes," we'll

12:13:10  14  have another brief discussion and then you'll be given

12:13:14  15  another verdict sheet where you can make an award for

12:13:17  16  punitive damages.

12:13:19  17          Ladies and gentlemen, what happened to Mr.

12:13:20  18  Ortiz should not happen to anyone.  And punitive damages

12:13:24  19  sends a message that it shouldn't have happened at all.

12:13:28  20  You know, we hear a lot about social justice in this

12:13:32  21  community and communities around the country.  But you,

12:13:34  22  ladies and gentlemen, are in the front seat of social

12:13:37  23  justice.  A man was falsely imprisoned and spent 10

12:13:41  24  years in jail and requires justice and you can provide

12:13:45  25  that to him.  I've held this burden out now for seven

12:13:49 2 and a half years. All of the sweat and tears that have

12:13:52 3 been in the case. And now when I sit down, I'm going to

12:13:55 4 take that burden off my shoulders, and I'm going to

12:13:58 5 place it on your shoulders collectively, to see this

12:14:01 6 through, to be sure that justice is done. And I have

12:14:04 7 every confidence that each one of you have been so

12:14:08 8 attentive and have heard and understand what happened in

12:14:10 9 this case. And I trust your good judgment. Thank you

12:14:13 10 all very, very much.

12:14:15 11         THE COURT: Thank you, Mr. Felle.

12         (Whereupon, the proceeding continued.)

13

14            *    *    *

15        CERTIFICATE OF REPORTER

16

17   I certify that the foregoing is a correct transcript

18 of the record of proceedings in the above-entitled

19 matter.

20

21 S/ Karen J. Clark, RPR

22

23 Official Court Reporter

24

25

A-2594

383

08:51:07

1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4      - - - - - - - - - - - - - X
       JOSUE ORTIZ                    )          16CV321
5                    Plaintiff   )
       vs.
6                                     Rochester, New York
       MARK STAMBACH,                          May 9, 2022
7                    Defendant.          9:00 a.m.
       - - - - - - - - - - - - - X
8      **TRIAL - VOLUME V - TESTIMONY OF E. TORRES - CLOSING**
       **ARGUMENTS PREVIOUSLY FILED - JURY INSTRUCTIONS - JURY**
9      **NOTES - JURY VERDICT**

10

11                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE ELIZABETH A. WOLFORD
12                    UNITED STATES DISTRICT JUDGE

13

14                    WAYNE C. FELLE, ESQ.
                      Law Office of Wayne C. Felle, P.C.
15                    6024 Main Street
                      Williamsville, NY 14221

16

17                    HUGH M. RUSS, III, ESQ.
                      PETER A. SAHASRABUDHE, ESQ.
18                    Hodgson Russ LLP
                      The Guaranty Building
19                    140 Pearl Street, Suite 100
                      Buffalo, New York 14202

20

21

22

23

24     **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                      **Karenclark1013@AOL.com**
25                    **100 State Street**
                      **Rochester, New York 14614**

A-2595

384

|   |   |
|---|---|
| | J. ORTIZ VS. M. STAMBACH |
| | P R O C E E D I N G |
| | *          *          * |

| | |
|---|---|
| 08:55:01 6 | |
| 08:55:01 7 | |
| 09:13:10 8 | THE CLERK:  We're here in the matter of the |
| 09:05:38 9 | Ortiz versus Stambach, 1:16-cv-00321. |
| 09:05:38 10 | THE COURT:  Good morning, everybody. |
| 09:05:38 11 | MR. RUSS:  Good morning, Your Honor. |
| 09:05:38 12 | THE COURT:  All counsel are here.  Mr. Ortiz |
| 09:05:38 13 | and Mr. Stambach are here as well.  A few things I |
| 09:05:38 14 | wanted to talk about before we get started.  First of |
| 09:05:38 15 | all, is Mr. Torres here? |
| 09:05:38 16 | MR. SAHASRABUDHE:  He is on his way.  He'll |
| 09:05:38 17 | be here in five minutes. |
| 09:05:38 18 | MR. FELLE:  He is here. |
| 09:05:38 19 | THE COURT:  Good to hear. |
| 09:05:38 20 | MR. FELLE:  I assume he is the guy with the |
| 09:05:38 21 | Hawaiian shirt and the hat. |
| 09:05:38 22 | I put all that together. |
| 09:05:38 23 | THE COURT:  There was some communications |
| 09:05:38 24 | this weekend about the verdict sheet and my proposal is, |
| 09:05:38 25 | that for, I think, is damages, do you find punitive |

|   | J. ORTIZ VS. M. STAMBACH |
|---|---|
| 09:05:42 | 2 damages, should be awarded against the Defendant. I |
| 09:05:45 | 3 don't think it would be -- I don't think "as to the |
| 09:05:46 | 4 Plaintiff" is the correct use of the words because "as |
| 09:05:54 | 5 to" is intended to be the award is against or with |
| 09:06:00 | 6 respect to the Defendant, but my suggestion is either |
| 09:06:03 | 7 against the Defendant or in favor of the Plaintiff. |

09:05:42  2  damages, should be awarded against the Defendant.  I

09:05:45  3  don't think it would be -- I don't think "as to the

09:05:46  4  Plaintiff" is the correct use of the words because "as

09:05:54  5  to" is intended to be the award is against or with

09:06:00  6  respect to the Defendant, but my suggestion is either

09:06:03  7  against the Defendant or in favor of the Plaintiff.

09:06:06  8  MR. FELLE:  That is what I was going to

09:06:08  9  suggest, only because the word awarded, it almost

09:06:11  10  implies toward the moving party, the claimant.  So it

09:06:15  11  would be in favor, our punitive damages awarded in favor

09:06:24  12  of the Plaintiff.

09:06:24  13  THE COURT:  Okay.  Any issues with that, Mr.

09:06:27  14  Russ?

09:06:27  15  MR. RUSS:  No.

09:06:28  16  THE COURT:  Okay, we'll make that change.  I

09:06:28  17  went through the instructions this weekend and I had two

09:06:33  18  proposed changes.  One is -- there is a paragraph on

09:06:39  19  page five about whether or not the juror had

09:06:43  20  conversations between myself and the lawyers at the

09:06:46  21  bench, we didn't have any sidebars so that means to

09:06:56  22  me -- we did?  Oh, okay.  Thank you.  The other change

09:07:24  23  is at the end of the general instructions, there is a

09:07:31  24  paragraph that says that is the very last paragraph it

09:07:35  25  says that, "keep in mind that the law does not require

A-2597

|          | 1  | J. ORTIZ VS. M. STAMBACH |
|----------|----|--------------------------|
| 09:07:39 | 2  | any party to call as a witness any witness who may have |
| 09:07:43 | 3  | knowledge of the facts related to this trial, similarly |
| 09:07:46 | 4  | the law does not require any party to present any |
| 09:07:49 | 5  | exhibits or papers or things mentioned in the trial." |
| 09:07:53 | 6  | And it comes in after the direct and circumstantial |
| 09:07:56 | 7  | evidence discussion, and I think it would be more |
| 09:07:59 | 8  | appropriate to move it to the page before that, that |
| 09:08:02 | 9  | same paragraph, that just says that "facts must be |
| 09:08:05 | 10 | proven by evidence," and that evidence consists, I'm |
| 09:08:09 | 11 | paraphrasing, witness testimony, exhibits and any |
| 09:08:11 | 12 | stipulations.  And then I think it makes sense to |
| 09:08:14 | 13 | include that paragraph there before I discuss direct and |
| 09:08:18 | 14 | circumstantial evidence.  Any objection to that Mr. |
| 09:08:21 | 15 | Felle? |
| 09:08:22 | 16 | MR. FELLE:  No objection. |
| 09:08:23 | 17 | THE COURT:  Mr. Russ? |
| 09:08:24 | 18 | MR. RUSS:  No, Your Honor, that sounds like |
| 09:08:26 | 19 | a good idea. |
| 09:08:27 | 20 | THE COURT:  Okay, that was it.  Anything |
| 09:08:34 | 21 | that we need to talk about, Mr. Felle, before we get |
| 09:08:37 | 22 | started? |
| 09:08:38 | 23 | MR. FELLE:  I don't think so, Judge. |
| 09:08:39 | 24 | THE COURT:  Mr. Russ? |
| 09:08:40 | 25 | MR. RUSS:  No, Your Honor, thank you. |

```
                        J. ORTIZ VS. M. STAMBACH
09:08:42    2           THE COURT:  All right.  Why don't we do
09:08:44    3   this?  Let's confirm that Mr. Torres is in fact here.
09:09:14    4   Also, in terms of the damages discussion, I had
09:09:18    5   indicated that I would allow Mr. Felle to make a
09:09:20    6   statement as to the amount that the Plaintiff is
09:09:23    7   seeking, but you need to run that by me before you do
09:09:26    8   that.  So are you prepared to do that now?
09:09:30    9           MR. FELLE:  I can.  I suppose I would like
09:09:32   10   to have a broader conversation, I suppose, after we
09:09:36   11   close proof, and then maybe we can just return to those
09:09:39   12   issues.
09:09:39   13           THE COURT:  Sure, we can do that.
09:09:41   14           MR. FELLE:  Thank you, Judge.  He is here,
09:09:50   15   great.
09:10:53   16           THE COURT:  Whenever we're ready, Dawn, we
09:11:28   17   can bring our jury in because Mr. Torres is here.
09:13:23   18           (Whereupon the jury is escorted into the
09:13:25   19   courtroom.)
09:13:26   20           THE COURT:  So I hope everyone had a nice
09:13:29   21   weekend.  Everyone can have a seat.  So, as far as I
09:13:35   22   know, ladies and gentlemen, the schedule that I
09:13:36   23   suggested on Friday is still what I believe will be the
09:13:39   24   schedule.  So, I expect the Plaintiff to call his next
09:13:43   25   witness right now and that is who, Mr. Felle?
```

A-2599

388

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 09:13:45 | 2 | MR. FELLE:  Your Honor, we would like to |
| 09:13:47 | 3 | call our former Buffalo Police Officer Edwin Torres. |
| 09:14:03 | 4 | THE COURT:  All right.  Let's have Mr. |
| 09:14:05 | 5 | Torres come in. |
| 09:14:06 | 6 | Come on in, sir.  Walk right up to the bench |
| 09:14:10 | 7 | here so we can place you under oath before you take the |
| 09:14:13 | 8 | witness stand. |
| 09:14:20 | 9 | **(E. TORRES WAS CALLED TO THE WITNESS STAND AND SWORN** |
| 09:14:24 | 10 | **IN.)** |
| 09:14:24 | 11 | THE CLERK:  Thank you.  You can go right |
| 09:14:26 | 12 | around that podium to your right.  You're going right up |
| 09:14:34 | 13 | to the seat and -- |
| 09:14:36 | 14 | THE COURT:  Watch the Plexiglass. |
| 09:14:38 | 15 | THE CLERK:  Once seated, please remove your |
| 09:14:40 | 16 | mask and state your first and last name and spell the |
| 09:14:42 | 17 | last name for the record. |
| 09:14:43 | 18 | THE WITNESS:  Edwin Torres, T-O-R-R-E-S. |
| 09:14:45 | 19 | THE COURT:  Mr. Torres, my name is Judge |
| 09:14:49 | 20 | Wolford.  I have some instructions for you before you |
| 09:14:51 | 21 | get started.  First of all, the reason you're here is to |
| 09:14:54 | 22 | testify for the benefit of the Ladies and Gentlemen of |
| 09:14:56 | 23 | the Jury.  So try and direct your answers towards them. |
| 09:14:59 | 24 | Only answer the question that you're asked.  Don't |
| 09:15:01 | 25 | volunteer information.  If there is an objection to a |

A-2600

|  | 1 | E. TORRES - DX BY MR. FELLE |
| 09:15:04 | 2 | question, wait until I rule on it, and I'll let you know |
| 09:15:08 | 3 | whether or not you can answer it.  And speak slowly and |
| 09:15:11 | 4 | clearly and speak into the microphone so that everyone |
| 09:15:14 | 5 | can hear you and my court reporter can take down your |
| 09:15:17 | 6 | testimony.  Do you understand? |
| 09:15:18 | 7 | THE WITNESS:  I do. |
| 09:15:19 | 8 | THE COURT:  You may proceed whenever you're |
| 09:15:34 | 9 | ready, Mr. Felle. |
| 09:15:34 | 10 | DIRECT EXAMINATION BY MR. FELLE: |
| 09:15:35 | 11 | Q.  Good morning, Officer Torres.  Thank you.  I |
| 09:15:37 | 12 | thank you for having driven here from Buffalo this |
| 09:15:41 | 13 | morning.  And I do appreciate the effort. |
| 09:15:43 | 14 | A.  Thank you. |
| 09:15:43 | 15 | Q.  I want to start by just asking you a little bit |
| 09:15:46 | 16 | about your background.  How long did you work for the |
| 09:15:49 | 17 | Buffalo Police Department? |
| 09:15:50 | 18 | A.  Thirty-two years. |
| 09:15:51 | 19 | Q.  And during that time, what positions did you |
| 09:15:54 | 20 | hold? |
| 09:15:55 | 21 | A.  Police officer. |
| 09:15:55 | 22 | Q.  Were you always a patrol officer? |
| 09:15:57 | 23 | A.  Yes. |
| 09:15:58 | 24 | Q.  Ever a detective? |
| 09:15:59 | 25 | A.  No. |

A-2601

390

|          |    | E. TORRES - DX BY MR. FELLE |
|----------|----|------------------------------|
| 09:16:00 | 2  | Q.   And when did you retire? |
| 09:16:01 | 3  | A.   December of 2018. |
| 09:16:04 | 4  | Q.   And since leaving the police force, have you |
| 09:16:08 | 5  | maintained different forms of employment? |
| 09:16:09 | 6  | A.   I have. |
| 09:16:10 | 7  | Q.   And what kind of work do you do? |
| 09:16:12 | 8  | A.   Currently, I work part-time for Enterprise Rental |
| 09:16:17 | 9  | Car. |
| 09:16:17 | 10 | Q.   Have you ever done any work as a security guard |
| 09:16:20 | 11 | and/or an investigation company such as the company that |
| 09:16:23 | 12 | Mr. Stambach owns since retirement? |
| 09:16:26 | 13 | A.   No. |
| 09:16:26 | 14 | Q.   I'm sorry? |
| 09:16:28 | 15 | A.   No. |
| 09:16:28 | 16 | Q.   Thank you.  Now, on November 11th of 2004, the |
| 09:16:35 | 17 | date of the Camacho brother homicides, was your title at |
| 09:16:41 | 18 | the Buffalo Police Department a patrol officer? |
| 09:16:44 | 19 | A.   Yes. |
| 09:16:44 | 20 | Q.   And did you, at that time, provide translation |
| 09:16:49 | 21 | work with the Detective Bureau? |
| 09:16:52 | 22 | A.   Yes. |
| 09:16:54 | 23 | Q.   And did you speak Spanish in November of 2004? |
| 09:16:56 | 24 | A.   Yes. |
| 09:16:56 | 25 | Q.   And prior to coming today to give testimony, what |

A-2602

391

|   |   | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:17:01 | 2 | documents did you review? |
| 09:17:02 | 3 | A.  I was sent the deposition, I believe it was.  And |
| 09:17:07 | 4 | a P73 from one of the detectives. |
| 09:17:12 | 5 | Q.  Okay.  So prior to coming here today to court, |
| 09:17:16 | 6 | you and I met in my office and you provided deposition |
| 09:17:20 | 7 | testimony, correct? |
| 09:17:21 | 8 | A.  Yes. |
| 09:17:21 | 9 | Q.  And at that time you swore to tell the truth, |
| 09:17:24 | 10 | correct? |
| 09:17:25 | 11 | A.  Correct. |
| 09:17:25 | 12 | Q.  And in addition to your deposition, you also gave |
| 09:17:28 | 13 | sworn testimony at a hearing in front of the criminal |
| 09:17:32 | 14 | trial court judge, Judge Forma, way back in 2005.  Do |
| 09:17:35 | 15 | you recall that? |
| 09:17:35 | 16 | A.  Yes. |
| 09:17:36 | 17 | Q.  And that was part of what was called Huntley |
| 09:17:38 | 18 | Hearing, correct? |
| 09:17:39 | 19 | A.  Correct. |
| 09:17:39 | 20 | Q.  And so at that time, you would have taken the |
| 09:17:42 | 21 | stand just like today in a courtroom, would have sworn |
| 09:17:45 | 22 | to tell the truth and you did in fact tell the truth, |
| 09:17:49 | 23 | correct? |
| 09:17:50 | 24 | A.  I did. |
| 09:17:50 | 25 | Q.  And have you looked at a copy of that hearing |

```
         1                 E. TORRES - DX BY MR. FELLE
09:17:53 2    testimony before today?
09:17:54 3        A.  Yes.
09:17:56 4        Q.  So you were given your deposition testimony, were
09:17:59 5    you also given your Huntley Hearing testimony?
09:18:01 6        A.  Yes.
09:18:02 7        Q.  And then you said a P73, correct?
09:18:05 8        A.  Correct.
09:18:06 9        Q.  Was it one or two P73s?
09:18:10 10       A.  I think it was just one.
09:18:18 11       Q.  Did you speak to folks at Hutchon Russ?  I don't
09:18:22 12   want to talk about the contents of those discussions,
09:18:25 13   but did you speak with them generally about the case?
09:18:27 14            MR. SAHASRABUDHE:  I object to the relevance
09:18:30 15   of that question.
09:18:31 16            THE COURT:  All right, Mr. Sahasrabudhe, I'm
09:18:33 17   going to overrule the objection.
09:18:36 18       Q.  You can answer, sir.
09:18:37 19       A.  Repeat the question.
09:18:38 20       Q.  Did you have conversations with Hutchon Russ?
09:18:41 21       A.  Yes.
09:18:42 22       Q.  About your testimony today?
09:18:42 23       A.  Yes.
09:18:43 24       Q.  And do you understand what this case is about?
09:18:46 25       A.  Yes.
```

A-2604

393

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:18:46 | 2 | Q. And you understand that the, Defendant, in this |
| 09:18:48 | 3 | case, is Mr. Stambach, also a former police officer, |
| 09:18:52 | 4 | correct? |
| 09:18:52 | 5 | A. Correct. |
| 09:18:53 | 6 | Q. But nonetheless, you're not going to be biased in |
| 09:18:56 | 7 | your testimony today, correct? |
| 09:18:57 | 8 | A. Correct. |
| 09:18:59 | 9 | Q. Do you have an independent recollection of |
| 09:19:03 | 10 | meeting Mr. Ortiz? |
| 09:19:04 | 11 | A. I do. |
| 09:19:05 | 12 | Q. And as he sits here today, do you recognize him? |
| 09:19:08 | 13 | A. I do not. |
| 09:19:12 | 14 | Q. But if you weren't here for the intention of |
| 09:19:14 | 15 | being here at his trial, and you passed him in the |
| 09:19:17 | 16 | grocery store, you probably wouldn't have recognized |
| 09:19:19 | 17 | him, correct? |
| 09:19:19 | 18 | A. Correct. |
| 09:19:23 | 19 | Q. And 18 years ago in 2004, he looked a lot |
| 09:19:30 | 20 | different, didn't he? |
| 09:19:31 | 21 | A. Yes. |
| 09:19:31 | 22 | Q. I think he even had hair, correct? |
| 09:19:34 | 23 | A. Yes. |
| 09:19:41 | 24 | Q. Do you recall seeing Mr. Ortiz on the night of |
| 09:19:45 | 25 | November 15th of 2004? |

A-2605

|          | 1  | E. TORRES - DX BY MR. FELLE |
|----------|----|------------------------------|
| 09:19:49 | 2  | A.  I don't know the specific date. |
| 09:20:02 | 3  | Q.  I'd like to show you what's been marked into |
| 09:20:05 | 4  | evidence as Exhibit 3.  And it's a photo of Mr. Ortiz. |
| 09:20:11 | 5  | I think it can be published to the jury as we speak.  Is |
| 09:20:25 | 6  | that how Mr. Ortiz appeared back in November of 2004 |
| 09:20:29 | 7  | when you met with him? |
| 09:20:30 | 8  | A.  Yes. |
| 09:20:31 | 9  | Q.  And that photograph appears to be a photo taken |
| 09:20:36 | 10 | at the Buffalo Police Department, correct? |
| 09:20:38 | 11 | A.  Yes. |
| 09:20:48 | 12 | Q.  Sir, when you started your employment at the |
| 09:20:51 | 13 | Buffalo Police Department, did you review and have |
| 09:20:54 | 14 | knowledge of the Buffalo Police Department policies and |
| 09:20:56 | 15 | procedures and in particular about their code of ethics? |
| 09:21:00 | 16 | A.  Yes. |
| 09:21:00 | 17 | Q.  I'd like to show you what's been marked into |
| 09:21:18 | 18 | evidence as Exhibit 1.  And Officer Torres, would you |
| 09:21:21 | 19 | agree with me that a Buffalo police officer has the duty |
| 09:21:25 | 20 | under the code of ethics to protect the innocent against |
| 09:21:29 | 21 | deception? |
| 09:21:30 | 22 | A.  Yes. |
| 09:21:30 | 23 | Q.  And to protect the weak against oppression and |
| 09:21:35 | 24 | intimidation? |
| 09:21:36 | 25 | A.  Yes. |

A-2606

395

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | E. TORRES - DX BY MR. FELLE                              |
| 09:21:36 | 2  | Q.   And to respect the constitutional rights of all    |
| 09:21:39 | 3  | persons to liberty, equality, and justice; would you    |
| 09:21:42 | 4  | agree?                                                   |
| 09:21:48 | 5  | A.   Yes.                                                |
| 09:21:51 | 6  | Q.   Now, I want to bring your attention to your        |
| 09:21:55 | 7  | involvement with the Camacho brothers' investigation.   |
| 09:22:03 | 8  | In November of 2004, did you assist the Major Crimes     |
| 09:22:07 | 9  | Unit with Spanish translation as it relates to          |
| 09:22:10 | 10 | discussions with Mr. Ortiz?                             |
| 09:22:11 | 11 | A.   Yes.                                                |
| 09:22:15 | 12 | Q.   And back in 2004, I think you testified, you       |
| 09:22:19 | 13 | worked frequently, frequently with Mr. Stambach,        |
| 09:22:23 | 14 | correct?                                                 |
| 09:22:23 | 15 | A.   I wouldn't say frequently, but once in a while.    |
| 09:22:28 | 16 | Q.   Now, Officer Stambach was in here and he said      |
| 09:22:31 | 17 | that this was the first time he had ever worked with you |
| 09:22:33 | 18 | when you met with him on the Ortiz case; would you      |
| 09:22:36 | 19 | agree?                                                   |
| 09:22:37 | 20 | MR. SAHASRABUDHE:  Objection, hearsay.                   |
| 09:22:38 | 21 | THE COURT:  I don't think it's hearsay, so              |
| 09:22:42 | 22 | overruled.                                               |
| 09:22:43 | 23 | Q.   Would you disagree with that?                       |
| 09:22:45 | 24 | A.   No.                                                 |
| 09:22:52 | 25 | Q.   This is your deposition testimony, correct?  This   |

|  | 1 | E. TORRES - DX BY MR. FELLE |
| 09:22:55 | 2 | was the testimony you were given a copy of it? |
| 09:22:59 | 3 | A.   I believe so. |
| 09:22:59 | 4 | Q.   Do you have it in front of you? |
| 09:23:01 | 5 | A.   My deposition? |
| 09:23:03 | 6 | Q.   Correct. |
| 09:23:03 | 7 | A.   No. |
| 09:23:03 | 8 | Q.   I'm going to show you your deposition testimony |
| 09:23:10 | 9 | of August 29th of 2019, page 57. |
| 09:23:15 | 10 | THE COURT:  So you've turned off the -- |
| 09:23:18 | 11 | THE CLERK:  Yes. |
| 09:23:19 | 12 | MR. SAHASRABUDHE:  Your Honor, is this |
| 09:23:20 | 13 | marked? |
| 09:23:22 | 14 | THE COURT:  Is this marked? |
| 09:23:24 | 15 | MR. FELLE:  It could be marked. |
| 09:23:25 | 16 | THE COURT:  We should mark it as an Exhibit. |
| 09:23:54 | 17 | MR. FELLE:  We can mark it Exhibit 7. |
| 09:23:58 | 18 | THE COURT:  70? |
| 09:23:59 | 19 | MR. FELLE:  7. |
| 09:24:00 | 20 | THE COURT:  That will be Mr. Torres' |
| 09:24:03 | 21 | deposition testimony. |
| 09:24:03 | 22 | Q.   I'll show you page 57 of your testimony from that |
| 09:24:06 | 23 | day.  Do you recall me asking you that question, were |
| 09:24:09 | 24 | there particular detectives that you worked with |
| 09:24:12 | 25 | frequently back in 2004, and your answer was? |

A-2608

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:24:14 | 2 | A. Do you want me to read it? |
| 09:24:16 | 3 | Q. Correct? |
| 09:24:16 | 4 | A. Answer, well, Mark Stambach. |
| 09:24:19 | 5 | Q. No, your answer at line 20. I asked you the |
| 09:24:24 | 6 | question, were there particular detectives that you |
| 09:24:28 | 7 | worked with frequently back in 2004, your answer was? |
| 09:24:31 | 8 | A. Yes. |
| 09:24:31 | 9 | Q. And I asked you, who do you recall working with |
| 09:24:35 | 10 | specifically, and your answer at 23 was? |
| 09:24:37 | 11 | A. Mark Stambach. |
| 09:24:39 | 12 | Q. Thank you. Does that refresh your memory that |
| 09:24:41 | 13 | you worked with Mr. Stambach frequently back then? |
| 09:24:44 | 14 | A. I think I meant I worked with the homicide unit |
| 09:24:48 | 15 | frequently. |
| 09:24:51 | 16 | Q. And again, it would be a fair statement that your |
| 09:24:53 | 17 | work with the Major Crimes Unit and/or the Homicide |
| 09:24:58 | 18 | Bureau would have been for Spanish translation, correct? |
| 09:25:01 | 19 | A. And other things also. |
| 09:25:02 | 20 | Q. Now, according to the investigation file |
| 09:25:14 | 21 | surrounding the Camacho brother murders, you had two |
| 09:25:17 | 22 | interactions with Mr. Ortiz, would you agree with that? |
| 09:25:20 | 23 | A. Yes. |
| 09:25:22 | 24 | Q. And the first of those two interactions was while |
| 09:25:25 | 25 | he was a patient at Buffalo General Hospital on November |

E. TORRES - DX BY MR. FELLE

09:25:31  2   14th, correct?

09:25:32  3       A.  I remember getting a call there.

09:25:33  4       Q.  And up to that point, up to coming to Buffalo

09:25:37  5   General Hospital on November 15th to translate for an

09:25:41  6   interview between detectives and Mr. Ortiz, you had no

09:25:45  7   prior involvement in that investigation, correct?

09:25:47  8       A.  Correct.

09:25:52  9       Q.  And just for the sake of clarity, your next and

09:25:55  10  only other interaction with Mr. Ortiz was on the 16th at

09:26:00  11  the Major Crimes Unit when Mr. Stambach had called you

09:26:04  12  in to translate and give the Miranda warnings, correct?

09:26:07  13      A.  Correct.  I don't know the specific dates.

09:26:09  14      Q.  But it was the next day, correct?

09:26:13  15      A.  There was a second interaction.

09:26:15  16      Q.  And no other interactions, just those two?

09:26:19  17      A.  Yes.

09:26:20  18      Q.  Okay.  Now, I want to ask you something very

09:26:25  19  important, when you arrived at Buffalo General Hospital

09:26:27  20  on November 15th, 2004, who was there from the Buffalo

09:26:36  21  Police Department to interview Mr. Ortiz?

09:26:37  22      A.  I don't recall which detective was there.

09:26:40  23      Q.  I'm sorry?

09:26:41  24      A.  I don't recall which detective was there.

09:26:55  25      Q.  Let me show you what's been marked into evidence

A-2610

399

|  |  |  |
|---|---|---|
| | 1 | E. TORRES - DX BY MR. FELLE |
| 09:26:58 | 2 | as Exhibit 6A.  I believe this can be published, this is |
| 09:27:08 | 3 | in evidence. |
| 09:27:14 | 4 | Mr. Torres, can you tell me -- first of all, |
| 09:27:27 | 5 | Exhibit 6A, does that appear to be a P73? |
| 09:27:31 | 6 | A.  Yes. |
| 09:27:34 | 7 | Q.  And -- is this an interdepartmental |
| 09:27:40 | 8 | correspondence?  This is how police officers, |
| 09:27:43 | 9 | detectives, communicate about their involvement in an |
| 09:27:47 | 10 | investigation? |
| 09:27:47 | 11 | A.  Yes. |
| 09:27:47 | 12 | Q.  And so this document is prepared at the same time |
| 09:27:50 | 13 | as the involvement, correct? |
| 09:27:52 | 14 | A.  Shortly thereafter. |
| 09:27:53 | 15 | Q.  When everything is fresh in your mind, right? |
| 09:27:55 | 16 | A.  Yes. |
| 09:27:57 | 17 | Q.  And in the second paragraph, do you see there it |
| 09:28:00 | 18 | says Detective Lema was at Buffalo General Hospital?  Do |
| 09:28:11 | 19 | you see that? |
| 09:28:11 | 20 | A.  Second paragraph? |
| 09:28:12 | 21 | Q.  Correct. |
| 09:28:13 | 22 | A.  Yes, I see that. |
| 09:28:14 | 23 | Q.  It says your writer -- and if we look up on top, |
| 09:28:19 | 24 | it says Detective Mark Vaughn, so he would be the writer |
| 09:28:24 | 25 | of the P73, correct? |

A-2611

|          | 1  | E. TORRES - DX BY MR. FELLE |
|----------|----|------------------------------|
| 09:28:25 | 2  | A.  Correct. |
| 09:28:26 | 3  | Q.  So we know Detective Vaughn was there, right? |
| 09:28:30 | 4  | A.  Yes. |
| 09:28:30 | 5  | Q.  And we know from the P73 that Detective James |
| 09:28:36 | 6  | Lema was there? |
| 09:28:37 | 7  | A.  Yes. |
| 09:28:38 | 8  | Q.  And we know Detective Sergeant James Lonergan was |
| 09:28:43 | 9  | there, correct? |
| 09:28:44 | 10 | A.  Yes. |
| 09:28:44 | 11 | Q.  And then we know from the P73 that you were |
| 09:28:48 | 12 | there, correct? |
| 09:28:49 | 13 | A.  Yes. |
| 09:28:52 | 14 | Q.  Now, to your memory, who else was there? |
| 09:28:56 | 15 | A.  I don't recall. |
| 09:29:22 | 16 | Q.  Now, I want to show you the transcript of your |
| 09:29:27 | 17 | Huntley Hearing testimony when you were in court in 2005 |
| 09:29:31 | 18 | and gave testimony. |
| 09:29:33 | 19 | MR. SAHASRABUDHE:  Your Honor, I ask again, |
| 09:29:35 | 20 | is this marked? |
| 09:29:35 | 21 | THE COURT:  Let's mark it as an Exhibit, Mr. |
| 09:29:38 | 22 | Felle. |
| 09:29:39 | 23 | MR. FELLE:  Okay.  Why don't we call it 8? |
| 09:29:42 | 24 | THE COURT:  Exhibit 8, you said? |
| 09:29:45 | 25 | MR. FELLE:  Please. |

A-2612

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | E. TORRES - DX BY MR. FELLE                                 |
| 09:29:58 | 2  | Q.  And because it's not in evidence, we're going to       |
| 09:30:01 | 3  | have it just published to the witness at this point.       |
| 09:30:18 | 4  | Mr. Torres, you told us that you got a copy                |
| 09:30:24 | 5  | of this in the transcript in preparation of today's        |
| 09:30:27 | 6  | testimony, correct?                                        |
| 09:30:28 | 7  | A.  Yes.                                                    |
| 09:30:28 | 8  | Q.  And I will show you page 61 of that testimony,         |
| 09:30:30 | 9  | and we can read it together.                               |
| 09:30:31 | 10 | MR. SAHASRABUDHE:  I object, Your Honor.  We                |
| 09:30:34 | 11 | shouldn't be reading this from a document not in            |
| 09:30:37 | 12 | evidence.                                                  |
| 09:30:37 | 13 | THE COURT:  Are you using this to refresh                   |
| 09:30:40 | 14 | his recollection?                                          |
| 09:30:41 | 15 | MR. FELLE:  Yes, Your Honor.                                |
| 09:30:41 | 16 | THE COURT:  You should ask him to read it,                  |
| 09:30:43 | 17 | take it away, and ask him if it refreshes his               |
| 09:30:46 | 18 | recollection.                                              |
| 09:30:47 | 19 | MR. FELLE:  Okay.                                           |
| 09:30:49 | 20 | Q.  Your testimony just a moment ago is that you           |
| 09:30:52 | 21 | don't recall who else was there, correct?                  |
| 09:30:54 | 22 | A.  Correct.                                                |
| 09:30:54 | 23 | Q.  And so I'm showing you your testimony from in          |
| 09:30:57 | 24 | court sworn testimony where you were asked certain          |
| 09:31:00 | 25 | questions about who was there.  Do you see that in front    |

|  | 1 | E. TORRES - DX BY MR. FELLE |
| 09:31:03 | 2 | of you? |
| 09:31:04 | 3 | A.  I'm sorry.  Where is it exactly? |
| 09:31:05 | 4 | Q.  Do you see that in front of you, page 61? |
| 09:31:09 | 5 | A.  Yes. |
| 09:31:09 | 6 | Q.  And do you see that there is a discussion |
| 09:31:12 | 7 | about -- |
| 09:31:12 | 8 | MR. SAHASRABUDHE:  Objection, Your Honor. |
| 09:31:14 | 9 | We shouldn't be reading from a document or referencing a |
| 09:31:16 | 10 | document.  He can review it and ask if it refreshes his |
| 09:31:21 | 11 | recollections. |
| 09:31:21 | 12 | MR. FELLE:  Your Honor, this is more |
| 09:31:22 | 13 | definite that I can impeach this witness -- |
| 09:31:22 | 14 | THE COURT:  You can impeach him and if that |
| 09:31:24 | 15 | is the purpose then you can read from it.  Let me |
| 09:31:26 | 16 | finish.  But if your purpose is to refresh recollection, |
| 09:31:30 | 17 | then the proper procedure is show it to him, have him |
| 09:31:33 | 18 | read it silently to himself, take it away, and ask him |
| 09:31:36 | 19 | if it refreshes his recollection.  If the purpose is |
| 09:31:40 | 20 | impeachment, then you can read what is not in evidence |
| 09:31:44 | 21 | into the record.  But I'm not sure this is proper |
| 09:31:47 | 22 | impeachment because the question was -- what he is |
| 09:31:54 | 23 | saying is he doesn't recall if anyone else was there. |
| 09:32:01 | 24 | And I'm not sure this is impeaching that testimony. |
| 09:32:04 | 25 | MR. FELLE:  Okay.  Let me continue to |

A-2614

403

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | E. TORRES - DX BY MR. FELLE                                |
| 09:32:07 | 2  | refresh your memory first and see if this refreshes your |
| 09:32:11 | 3  | memory and if it doesn't, we can go the other route.     |
| 09:32:14 | 4  | THE COURT:  Okay.                                         |
| 09:32:15 | 5  | MR. FELLE:  Thank you, Your Honor.                       |
| 09:32:16 | 6  | Q.  Mr. Torres, as I show you that testimony, pages      |
| 09:32:19 | 7  | 61 and going into 62, does that refresh your memory as   |
| 09:32:25 | 8  | to who else you testified was at Buffalo General         |
| 09:32:28 | 9  | Hospital?                                                 |
| 09:32:28 | 10 | THE COURT:  Wait, wait.  Let him ask the                |
| 09:32:30 | 11 | question first.                                           |
| 09:32:32 | 12 | Q.  Does that refresh your memory as to who else was    |
| 09:32:36 | 13 | at Buffalo General Hospital that you interviewed on      |
| 09:32:40 | 14 | November 14th, 2004?                                      |
| 09:32:42 | 15 | A.  Well, I can read that.  It doesn't necessarily       |
| 09:32:46 | 16 | refresh my memory.                                       |
| 09:32:48 | 17 | MR. FELLE:  I would like to read it.                    |
| 09:32:49 | 18 | THE COURT:  Okay.  Go ahead.                             |
| 09:32:50 | 19 | MR. FELLE:  Mr. Torres, I would like to read            |
| 09:32:52 | 20 | from your testimony back in 2005 starting with page 61,  |
| 09:32:55 | 21 | you were asked a question not by me, but by the          |
| 09:32:58 | 22 | attorneys involved then.                                  |
| 09:32:58 | 23 | THE COURT:  Refer to the line that you're               |
| 09:33:00 | 24 | starting with.                                            |
| 09:33:02 | 25 | MR. FELLE:  Line 19 of page 61, you were                |

A-2615

404

|  |  | E. TORRES - DX BY MR. FELLE |
|--|--|--|
| 09:33:05 | 2 | asked the question, "and when you arrived there, were |
| 09:33:08 | 3 | other officers there?"  Your response at 21. |
| 09:33:14 | 4 | THE COURT:  Well, let's read the entire |
| 09:33:16 | 5 | question. |
| 09:33:17 | 6 | MR. FELLE:  "When you arrived there, were |
| 09:33:19 | 7 | other officers there?  Actually, other detectives were |
| 09:33:24 | 8 | there?"  And your answer? |
| 09:33:26 | 9 | A.  According to this, yes. |
| 09:33:27 | 10 | Q.  And then you were asked the follow-up question, |
| 09:33:29 | 11 | and one of those detectives was Detective Lonergan, and |
| 09:33:33 | 12 | you said? |
| 09:33:34 | 13 | A.  Yes. |
| 09:33:34 | 14 | Q.  And then you were asked the question before I |
| 09:33:37 | 15 | became involved in this case in court in front of Judge |
| 09:33:40 | 16 | Forma, "who else was there?"  And what is your response |
| 09:33:42 | 17 | on page 52 line 2? |
| 09:33:44 | 18 | A.  Detective Vaughn, I believe, Detective Stambach. |
| 09:33:48 | 19 | Q.  Your testimony back in 2005 is that you believed |
| 09:33:53 | 20 | that Mr. Stambach was at Buffalo General Hospital on the |
| 09:33:56 | 21 | 15th of November, correct? |
| 09:34:00 | 22 | A.  That is what it says there. |
| 09:34:02 | 23 | Q.  Well, would you agree with me that your memory |
| 09:34:04 | 24 | would be much better then than it would be today, 18 |
| 09:34:08 | 25 | years removed? |

A-2616

405

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:34:09 | 2 | A.  Yes. |
| 09:34:09 | 3 | Q.  And that was your testimony while under oath? |
| 09:34:12 | 4 | A.  Yes. |
| 09:34:19 | 5 | Q.  Now, the P73 that has been marked into evidence |
| 09:34:29 | 6 | as 6A, that doesn't reference that Stambach was there |
| 09:34:34 | 7 | but you recalled him being there, right? |
| 09:34:36 | 8 | A.  I'm sorry? |
| 09:34:37 | 9 | Q.  That P73 doesn't reference that Stambach was |
| 09:34:42 | 10 | there at Buffalo General Hospital? |
| 09:34:43 | 11 | A.  I didn't read the P73 in its entirety. |
| 09:34:46 | 12 | Q.  Okay. |
| 09:34:49 | 13 | MR. FELLE:  May I present this to the |
| 09:34:50 | 14 | witness, Your Honor. |
| 09:34:51 | 15 | THE COURT:  Yes.  That is fine. |
| 09:34:54 | 16 | MR. FELLE:  I'll have you take a look at the |
| 09:34:57 | 17 | clarity of P73 and I'll ask you the question again. |
| 09:35:49 | 18 | THE WITNESS:  Am I going to the next page? |
| 09:36:30 | 19 | Q.  So Mr. Torres now has the opportunity to review |
| 09:36:34 | 20 | the full P73, Exhibit 6A in evidence.  Is there any |
| 09:36:40 | 21 | reference to Mr. Stambach being there at Buffalo General |
| 09:36:43 | 22 | Hospital that night? |
| 09:36:43 | 23 | A.  No. |
| 09:36:51 | 24 | Q.  Are you aware that Mr. Stambach asked that his |
| 09:36:54 | 25 | name be taken off that P73? |

A-2617

406

| | | |
|---|---|---|
| | 1 | E. TORRES - DX BY MR. FELLE |
| 09:36:56 | 2 | MR. SAHASRABUDHE: Objection, Your Honor. |
| 09:36:57 | 3 | THE COURT: Overruled. Go ahead. |
| 09:36:59 | 4 | A. Repeat. |
| 09:37:00 | 5 | Q. Are you aware of a circumstance where Mr. |
| 09:37:02 | 6 | Stambach asked that his name be taken out of that P73? |
| 09:37:06 | 7 | A. No. |
| 09:37:13 | 8 | Q. Now, the P73 that you just reviewed, it indicates |
| 09:37:17 | 9 | that Mr. Ortiz didn't speak English, correct? That he |
| 09:37:21 | 10 | needed a Spanish translator? |
| 09:37:23 | 11 | A. It also stated that he spoke some English. |
| 09:37:26 | 12 | Q. And when you gave testimony again in court in |
| 09:37:29 | 13 | your Huntley Hearing, you agreed that he could not speak |
| 09:37:32 | 14 | English, correct? |
| 09:37:34 | 15 | A. I'm sorry, repeat. |
| 09:37:35 | 16 | Q. Do you recall giving testimony that when you met |
| 09:37:38 | 17 | with Mr. Ortiz, he could not speak English? |
| 09:37:41 | 18 | MR. SAHASRABUDHE: Objection. |
| 09:37:42 | 19 | THE COURT: Sustained. If you want to |
| 09:37:43 | 20 | reference prior testimony, you need to do it by page and |
| 09:37:48 | 21 | line number. |
| 09:37:53 | 22 | Q. I just want to refresh your memory at this point, |
| 09:37:57 | 23 | okay? Mr. Torres, I asked you the question about of |
| 09:37:59 | 24 | whether he could speak English. I'll turn your |
| 09:38:02 | 25 | attention to Exhibit 7, correct. Exhibit 7, your |

A-2618

407

| | |
|---|---|
| 1 | E. TORRES - DX BY MR. FELLE |
| 09:38:08  2 | Huntley testimony in court, page 75. |
| 09:38:13  3 | THE COURT:  I thought it was Exhibit 8. |
| 09:38:15  4 | MR. SAHASRABUDHE:  I believe 8, Your Honor. |
| 09:38:16  5 | MR. FELLE:  It is 8.  I'm sorry, I'm looking |
| 09:38:19  6 | at 7. |
| 09:38:24  7 | THE COURT:  The Huntley Hearing is Exhibit |
| 09:38:25  8 | 8. |
| 09:38:26  9 | Q.  Just have you read from line three to line six. |
| 09:38:31  10 | Do you see your response there? |
| 09:38:32  11 | A.  From three to six?  Yes.  I see my response. |
| 09:38:36  12 | Q.  And the conversation was about whether Mr. Ortiz |
| 09:38:41  13 | could speak English? |
| 09:38:43  14 | MR. SAHASRABUDHE:  Objection, Your Honor. |
| 09:38:44  15 | THE COURT:  Sustained. |
| 09:38:45  16 | Q.  Does that refresh your memory that he does not |
| 09:38:48  17 | speak English? |
| 09:38:49  18 | A.  I can read it.  It says that. |
| 09:38:51  19 | THE COURT:  Okay.  Hold on a second.  Don't |
| 09:38:53  20 | testify about what it says.  The question is, does that |
| 09:38:56  21 | refresh your recollection as to whether or not Mr. Ortiz |
| 09:38:59  22 | could speak English. |
| 09:39:02  23 | THE WITNESS:  Not necessarily, no. |
| 09:39:04  24 | MR. FELLE:  At this time, I would like to |
| 09:39:05  25 | use your prior testimony with respect to what you did |

```
                    E. TORRES - DX BY MR. FELLE
09:39:08   2   say.  Again, looking at page 75 of your Huntley
09:39:13   3   testimony.
09:39:13   4             MR. SAHASRABUDHE:  I object, this is an
09:39:14   5   improper impeachment.  The question was about what the
09:39:18   6   P73 said.  It indicated that Mr. Ortiz spoke some
09:39:26   7   English.
09:39:27   8             THE COURT:  No.  That is not the question.
09:39:28   9   The question was whether Mr. Ortiz could speak some
09:39:31  10   English.  Go ahead, Mr. Felle.
09:39:34  11   Q.  So, Mr. Torres, you see there when you were in
09:39:36  12   court in November of 2005, other attorneys were asked
09:39:40  13   the question, you were asked the question at line four.
09:39:43  14   A.  Okay.
09:39:43  15   Q.  "And that was because Mr. Ortiz could not speak
09:39:46  16   English, correct?"  Your response at number six was?
09:39:52  17   A.  I believe so, yes.
09:39:53  18   Q.  And just so the record is clear, that was from
09:39:56  19   page 75 of Exhibit 8?
09:39:59  20             MR. FELLE:  Eight, correct.
09:40:06  21   Q.  And so that was why you were brought in to help
09:40:11  22   translate, correct?
09:40:12  23   A.  Correct.
09:40:12  24   Q.  And do you recall Mr. Ortiz's appearance, his
09:40:16  25   demeanor during that meeting?
```

A-2620

409

|         |    | E. TORRES - DX BY MR. FELLE |
|---------|----|------------------------------|
| 09:40:18 | 2 | A.  I recall him looking kind of nervous. |
| 09:40:30 | 3 | Q.  And do you recall the conversation that he was |
| 09:40:34 | 4 | claiming that people were trying to kill him? |
| 09:40:39 | 5 | A.  I remember that. |
| 09:40:43 | 6 | Q.  And do you recall him saying that he was in fear |
| 09:40:45 | 7 | of his life because the killers were after him? |
| 09:40:50 | 8 | A.  I don't recall that specifically. |
| 09:40:53 | 9 | Q.  I want to show you what's been marked again into |
| 09:40:56 | 10 | evidence as 6A, that is the P73.  Now, let me ask you |
| 09:41:04 | 11 | this question first, all of the information that was |
| 09:41:09 | 12 | elicited from Mr. Ortiz while at Buffalo General |
| 09:41:12 | 13 | Hospital, that would have been through you as a |
| 09:41:14 | 14 | translator, correct? |
| 09:41:15 | 15 | A.  If I was translating, sure. |
| 09:41:19 | 16 | Q.  Okay.  So when the P73 states that he, Ortiz, do |
| 09:41:26 | 17 | you see it there in the last sentence of the first |
| 09:41:28 | 18 | paragraph, he, Mr. Ortiz further stated that he was in |
| 09:41:32 | 19 | fear of his life because the killers were after him? |
| 09:41:36 | 20 | A.  I see that. |
| 09:41:36 | 21 | Q.  And you would have in fact been translating that, |
| 09:41:41 | 22 | right?  He said it.  You translated it.  And then |
| 09:41:45 | 23 | Detective Vaughn would understand it, and Detective |
| 09:41:47 | 24 | Vaughn would then put it into the P73, correct? |
| 09:41:51 | 25 | A.  Correct. |

A-2621

410

|  | | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:41:52 | 2 | Q. Okay. So you were aware at that time that he was |
| 09:41:55 | 3 | claiming that the killers were trying to kill him, |
| 09:41:58 | 4 | correct? |
| 09:41:59 | 5 | A. I don't remember that specifically. |
| 09:42:10 | 6 | Q. And do you recall during that same interview that |
| 09:42:14 | 7 | you asked Mr. Ortiz if he had any knowledge of who the |
| 09:42:18 | 8 | murderers were. Do you recall asking him that? |
| 09:42:22 | 9 | A. I do not. |
| 09:42:23 | 10 | Q. This is the P73 in evidence as 6A. And do you |
| 09:42:30 | 11 | see where it reads through the interpreter, now that was |
| 09:42:33 | 12 | you, correct? |
| 09:42:33 | 13 | A. Correct. |
| 09:42:34 | 14 | Q. Through the interpreter, we asked Ortiz if he had |
| 09:42:37 | 15 | any direct knowledge of the murderers at 879 Niagara. |
| 09:42:42 | 16 | And he claimed he did not, correct? |
| 09:42:44 | 17 | A. I see that. |
| 09:42:45 | 18 | Q. And that would have been again, you receiving |
| 09:42:48 | 19 | that information from Mr. Torres, translating it -- |
| 09:42:52 | 20 | THE COURT: Mr. Ortiz. |
| 09:42:53 | 21 | MR. FELLE: Excuse me, Mr. Ortiz. |
| 09:42:57 | 22 | Q. Mr. Ortiz, and telling the detectives what he |
| 09:43:01 | 23 | responded, correct? |
| 09:43:02 | 24 | A. Yes. |
| 09:43:02 | 25 | Q. And just so we're all clear, the reference to the |

A-2622

|          |    |                                                             |
|----------|----|-------------------------------------------------------------|
|          | 1  | E. TORRES - DX BY MR. FELLE                                 |
| 09:43:05 | 2  | murderers at 879 Niagara is the Camacho brothers            |
| 09:43:09 | 3  | murders, correct?                                           |
| 09:43:10 | 4  | A.  Correct.                                                |
| 09:43:10 | 5  | Q.  That is where they occurred, right?                     |
| 09:43:12 | 6  | A.  Correct.                                                |
| 09:43:13 | 7  | Q.  So would you agree with me based on both those          |
| 09:43:17 | 8  | statements from Mr. Ortiz that the killers, so clearly      |
| 09:43:19 | 9  | he was not the killer, the killers were trying --           |
| 09:43:22 | 10 | MR. SAHASRABUDHE:  Objection.                                |
| 09:43:22 | 11 | THE COURT:  Sustained.                                       |
| 09:43:24 | 12 | Q.  Would you agree with me that based on the               |
| 09:43:26 | 13 | discussion with Mr. Ortiz while at Buffalo General          |
| 09:43:30 | 14 | Hospital that he was not considered a suspect?              |
| 09:43:34 | 15 | A.  I agree with you.                                        |
| 09:43:35 | 16 | Q.  And in fact, he wasn't even considered with             |
| 09:43:38 | 17 | credible information about the crime, correct?              |
| 09:43:41 | 18 | A.  Correct.                                                |
| 09:43:49 | 19 | Q.  And the P73 doesn't get into the same detail but        |
| 09:43:53 | 20 | we know from Detective Lonergan, his testimony in court     |
| 09:43:57 | 21 | that he said he met with Mr. Ortiz for about thirty         |
| 09:44:00 | 22 | minutes.  Would you agree with that?                        |
| 09:44:01 | 23 | A.  I don't recall that.                                    |
| 09:44:06 | 24 | Q.  What is your recollection of how long that              |
| 09:44:09 | 25 | meeting was with Mr. Ortiz?                                 |

A-2623

412

|   |   |
|---|---|
| | 1 |  E. TORRES - DX BY MR. FELLE |
| 09:44:10 | 2 |  A.  At the hospital? |
| 09:44:11 | 3 |  Q.  Correct. |
| 09:44:11 | 4 |  A.  I don't recall. |
| 09:44:24 | 5 |  Q.  And as you left that interview with Mr. Ortiz, it |
| 09:44:30 | 6 | was agreed that he needed continued evaluation at the |
| 09:44:34 | 7 | hospital, correct? |
| 09:44:34 | 8 |  A.  I don't recall that. |
| 09:44:37 | 9 |  Q.  Do you see that last -- excuse me, sentence in |
| 09:44:41 | 10 | the second last paragraph, it reads, Ortiz was turned |
| 09:44:45 | 11 | back over to the hospital personnel, Ortiz was going to |
| 09:44:53 | 12 | be medically evaluated before being released from the |
| 09:44:56 | 13 | hospital.  Do you see that? |
| 09:44:57 | 14 |  A.  I see that. |
| 09:44:58 | 15 |  Q.  Okay.  So it was anticipated that he would get |
| 09:45:01 | 16 | more treatment before being released, correct? |
| 09:45:03 | 17 |  A.  Correct. |
| 09:45:11 | 18 |  Q.  And again, just to be clear, that is your first |
| 09:45:15 | 19 | involvement with Mr. Ortiz, correct? |
| 09:45:16 | 20 |  A.  Yes. |
| 09:45:16 | 21 |  Q.  And we can agree, can we not, that based on that |
| 09:45:20 | 22 | first interaction with Mr. Ortiz, he was not considered |
| 09:45:23 | 23 | a suspect or anyone with credible information about the |
| 09:45:26 | 24 | crimes, correct? |
| 09:45:27 | 25 |  A.  Correct. |

A-2624

413

| | |
|---|---|
| 1 | E. TORRES - DX BY MR. FELLE |
| 09:45:27  2 | Q.  And we can also agree that he was in need of |
| 09:45:30  3 | further medical attention, correct? |
| 09:45:32  4 | A.  Correct. |
| 09:45:44  5 | Q.  Now, based on the P73 and the conversations that |
| 09:45:51  6 | are placed into the P73, it would appear that relatively |
| 09:45:56  7 | quickly into the conversation, it was determined that |
| 09:45:59  8 | Mr. Ortiz didn't have any knowledge.  Would that be a |
| 09:46:02  9 | fair statement? |
| 09:46:03  10 | A.  I'm sorry, repeat. |
| 09:46:04  11 | Q.  Was it determined fairly early on in that |
| 09:46:08  12 | discussion with Mr. Ortiz at Buffalo General Hospital |
| 09:46:10  13 | that he didn't have any knowledge about the murderers? |
| 09:46:12  14 | A.  I don't recall. |
| 09:46:15  15 | Q.  Well, let me ask you this, was Mr. Ortiz shown |
| 09:46:19  16 | any photographs or any information from the crime scene |
| 09:46:21  17 | at that time? |
| 09:46:23  18 | A.  I don't believe so. |
| 09:46:25  19 | Q.  Do you recall ever interpreting anything that was |
| 09:46:28  20 | in the investigation file and telling it to Mr. Ortiz on |
| 09:46:31  21 | the 15th? |
| 09:46:34  22 | A.  I do not. |
| 09:46:37  23 | Q.  Was the investigation file brought to the |
| 09:46:39  24 | hospital? |
| 09:46:40  25 | A.  I don't know. |

A-2625

414

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | E. TORRES - DX BY MR. FELLE                              |
| 09:46:42 | 2  | Q.  Were photographs used at all to show Mr. Ortiz?   |
| 09:46:49 | 3  | A.  I don't recall seeing any.                         |
| 09:46:53 | 4  | Q.  Was Mr. Ortiz asked while at Buffalo General      |
| 09:46:58 | 5  | Hospital specific questions as to how the crime was    |
| 09:47:01 | 6  | committed?                                             |
| 09:47:01 | 7  | A.  I do not recall.                                   |
| 09:47:10 | 8  | Q.  While you were at Buffalo General Hospital, did   |
| 09:47:14 | 9  | Detective Stambach ask Ortiz any questions at the      |
| 09:47:16 | 10 | hospital?                                              |
| 09:47:17 | 11 | A.  I don't recall.                                    |
| 09:47:26 | 12 | Q.  While you were at Buffalo General Hospital with   |
| 09:47:28 | 13 | Mr. Ortiz, did you ever read him his Miranda rights?   |
| 09:47:31 | 14 | A.  I don't recall.                                    |
| 09:47:38 | 15 | Q.  Let me ask you this, what is your understanding   |
| 09:47:41 | 16 | of when Miranda rights or warnings have to be given to a |
| 09:47:44 | 17 | person?                                                |
| 09:47:45 | 18 | MR. SAHASRABUDHE:  I object.  It calls for a          |
| 09:47:47 | 19 | legal conclusion.                                      |
| 09:47:49 | 20 | THE COURT:  What is the relevance of this             |
| 09:47:50 | 21 | question?                                              |
| 09:47:50 | 22 | MR. FELLE:  It goes to the idea of whether            |
| 09:47:52 | 23 | or not he is considered a suspect and/or.              |
| 09:47:57 | 24 | THE COURT:  I'll let him answer as to what            |
| 09:47:58 | 25 | your understanding is in that regard, but understand   |

A-2626

415

|  | E. TORRES - DX BY MR. FELLE |
|---|---|
| 1 | |

09:48:02  2   ladies and gentlemen, the witness is not providing any

09:48:05  3   kind of legal opinion on this issue.  Go ahead.

09:48:08  4       A.  When a person is going to be arrested.

09:48:11  5       Q.  Okay.  Would you agree with me that Miranda

09:48:15  6   warnings are required when a conversation turns from

09:48:17  7   general information to a person becoming a suspect?

09:48:21  8       A.  I agree.

09:48:23  9       Q.  And at that time, when you spoke with Mr. Ortiz,

09:48:26  10  nothing that he provided you moved that conversation

09:48:29  11  from him being somebody who he might ask questions about

09:48:34  12  but he never became a suspect, correct?

09:48:37  13      A.  I don't recall.

09:48:44  14      Q.  And the Miranda warnings are required by the

09:48:47  15  Fifth Amendment, correct?

09:48:48  16      A.  Yes.

09:48:48  17      Q.  It's a person's right against self-incrimination,

09:48:53  18  correct?

09:48:53  19      A.  Correct.

09:48:54  20      Q.  And so you would agree with me, Mr. Torres, that

09:49:00  21  when a person of interest becomes a suspect --

09:49:03  22              MR. SAHASRABUDHE:  I object.  He is asking

09:49:04  23  for a legal conclusion.

09:49:05  24              THE COURT:  I don't even know what the

09:49:06  25  question is, I'll let him finish.

A-2627

416

```
           1              E. TORRES - DX BY MR. FELLE
09:49:09   2              MR. SAHASRABUDHE:  Sorry, Your Honor.
09:49:10   3              THE COURT:  Overruled.  Go ahead.
09:49:11   4         Q.   When a person becomes a suspect in a crime,
09:49:15   5    you're required to give him or her the Miranda warnings,
09:49:22   6    correct?
09:49:22   7         A.   Yes.
09:49:23   8         Q.   So now, I would like to turn your attention to
09:49:27   9    your involvement in the second, you told us there were
09:49:29  10    two encounters with Mr. Ortiz.  We went over the first
09:49:32  11    one at Buffalo General.  And now, I want to talk about
09:49:35  12    your second involvement.  I'm going to show you what
09:49:39  13    we've marked into evidence as Exhibit 6B.  Do you see
09:49:45  14    that?
09:49:45  15         A.   I do.
09:49:48  16         Q.   And just for the sake of clarity, now, that would
09:49:55  17    have been the next day, right?  November 16th of '04,
09:50:00  18    correct?
09:50:00  19         A.   Yes.
09:50:01  20         Q.   I want to say the next day, just the day after
09:50:05  21    when you had just met him in the evening at Buffalo
09:50:08  22    General Hospital, and less than 24-hours, you're meeting
09:50:11  23    him again at the Major Crimes Unit, correct?
09:50:15  24         A.   I don't recall specific dates.
09:50:17  25         Q.   You see the P73.  What date is that from?
```

1            E. TORRES - DX BY MR. FELLE

09:50:20   2    A.   Sixteenth of November '04.

09:50:22   3    Q.   And this is the second and last time you met with

09:50:25   4   Mr. Ortiz, correct?

09:50:26   5    A.   Correct.

09:50:26   6    Q.   And then let me just bring you back to Exhibit

09:50:32   7   6A, that we were just talking about for a while.  Do you

09:50:36   8   see the date on that?

09:50:37   9    A.   Yes.

09:50:37  10    Q.   And what date is that?

09:50:38  11    A.   November 15th, 2004.

09:50:40  12    Q.   Does that refresh your memory?  It was the day

09:50:43  13   before, correct?

09:50:44  14    A.   Correct.

09:50:45  15    Q.   And so within 24-hours, you're meeting with Mr.

09:50:48  16   Ortiz again, and at this time, it's in the Major Crimes

09:50:52  17   Unit, that is a department within the Buffalo Police

09:50:54  18   Department, correct?

09:50:54  19    A.   Correct.

09:50:55  20    Q.   And you were called there to give a translation,

09:50:58  21   correct?

09:50:58  22    A.   Yes.

09:51:00  23    Q.   Now, do you recall what time you arrived that

09:51:03  24   night?

09:51:03  25    A.   I do not.

A-2629

418

|  |  |
|--|--|
| | 1 |

                    E. TORRES - DX BY MR. FELLE

09:51:17    2      Q.  I'm going to turn to Exhibit 8.  The Huntley

09:51:21    3   Hearing testimony.  Page 92.  And I'm going to start by

09:51:27    4   asking you, Mr. Torres, if it refreshes your memory.

09:51:30    5   The testimony you gave back then refreshes your memory

09:51:34    6   of the time you arrived.  I'll ask you to read on page

09:51:39    7   92, line 6?

09:51:40    8      A.  Line 6?

09:51:41    9      Q.  No.  Not on yourself, and just yourself.  Does it

09:51:44   10   refresh your memory as to what time you got there that

09:51:47   11   night?

09:51:50   12      A.  Sure.

09:51:51   13      Q.  Okay.  And what time did you arrive at the Major

09:51:55   14   Crimes Unit on the 16th?

09:51:56   15      A.  After 8:00 p.m.

09:52:05   16      Q.  And when you arrived at the Major Crimes Unit

09:52:08   17   that night, were you surprised to see Mr. Ortiz was

09:52:11   18   sitting there?

09:52:12   19      A.  I don't recall my reaction.

09:52:33   20      Q.  Again, referring to your Exhibit 8, your

09:52:39   21   testimony at the Huntley Hearing, page 75.  I'm just

09:52:43   22   asking you at this point, Mr. Torres, if that refreshes

09:52:46   23   your memory, do you recall that you were surprised when

09:52:49   24   you saw Mr. Ortiz at the Major Crimes Unit?

09:52:53   25                MR. SAHASRABUDHE:  Are we reading from the

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:52:55 | 2 | document? |
| 09:52:55 | 3 | THE COURT:  No.  I think he is asking him if |
| 09:52:58 | 4 | it refreshes his recollection. |
| 09:53:02 | 5 | Q.  Did you read it? |
| 09:53:03 | 6 | A.  It does not refresh my memory. |
| 09:53:06 | 7 | Q.  At this point, I would like to use it as your |
| 09:53:10 | 8 | testimony with respect to what you said then.  Do you |
| 09:53:13 | 9 | see when you're asked for the question, we already went |
| 09:53:16 | 10 | over the speaking English.  Do you see at line 10, you |
| 09:53:23 | 11 | were asked the question by the attorneys then at court, |
| 09:53:26 | 12 | and they said "you weren't provided with any background |
| 09:53:30 | 13 | as to why you were there?"  And your answer was? |
| 09:53:33 | 14 | A.  Would you like me to read it? |
| 09:53:38 | 15 | Q.  You can read it. |
| 09:53:39 | 16 | A.  Out loud? |
| 09:53:40 | 17 | Q.  Your answer at line 12, can you read it for us? |
| 09:53:43 | 18 | A.  Sure.  Line 12, "no, as a matter of fact, I was |
| 09:53:47 | 19 | surprised to see him, Mr. Ortiz." |
| 09:53:50 | 20 | Q.  So when you got to the Major Crimes Unit that |
| 09:53:53 | 21 | night you were surprised to see that Mr. Ortiz was |
| 09:53:56 | 22 | sitting in a detective's office, correct? |
| 09:53:58 | 23 | A.  That is what it says there. |
| 09:54:01 | 24 | Q.  Well, again, would you agree with me that your |
| 09:54:03 | 25 | memory was much better than when you gave this testimony |

A-2631

420

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 09:54:07 | 2 | than it is today, 18 years later? |
| 09:54:10 | 3 | A. Yes. |
| 09:54:14 | 4 | Q. Now, were you surprised to see him there because |
| 09:54:17 | 5 | the night before you spoke to him and he was excluded as |
| 09:54:20 | 6 | a witness and/or a suspect to the crime. Is that why |
| 09:54:24 | 7 | you were surprised? |
| 09:54:26 | 8 | A. I don't recall. |
| 09:54:26 | 9 | Q. Well, you did recall him from the night before, |
| 09:54:29 | 10 | didn't you? When you saw him? |
| 09:54:30 | 11 | A. I'm sure I did. |
| 09:54:34 | 12 | Q. Now back on November 15th and 16th of 2004, the |
| 09:54:43 | 13 | Major Crimes Unit had an interview room, correct? |
| 09:54:46 | 14 | A. Yes. |
| 09:54:46 | 15 | Q. And that interview room had two-way windows, |
| 09:54:51 | 16 | mirrors, correct? |
| 09:54:52 | 17 | A. Yes. |
| 09:54:52 | 18 | Q. And there was only one interview room, correct? |
| 09:54:55 | 19 | A. Yes. |
| 09:54:57 | 20 | Q. And in addition to that interview room, there |
| 09:55:00 | 21 | were detective offices, correct? |
| 09:55:02 | 22 | A. It was one big office, several smaller offices, |
| 09:55:08 | 23 | sure. |
| 09:55:08 | 24 | Q. So just we're clear. When we talk about the |
| 09:55:10 | 25 | interview room, that is one thing, there is a mirror |

A-2632

421

E. TORRES - DX BY MR. FELLE

09:55:14    2    there and everything and a table, separate and apart

09:55:16    3    from an interview room there are detective offices,

09:55:19    4    correct?

09:55:20    5    A.   Correct.

09:55:21    6    Q.   And one of the detective offices was Detective

09:55:24    7    Sergeant Viviane, correct?  Do you recall that?

09:55:26    8    A.   The office being his?

09:55:27    9    Q.   No.  Do you recall that back then that was one of

09:55:30   10    the offices in the Major Crimes Unit?

09:55:32   11    A.   I don't recall.

09:55:38   12    Q.   Now, I want to be clear.  When you came to the

09:55:43   13    Major Crimes Unit on the 16th of November to translate

09:55:49   14    for Stambach as he was meeting with Ortiz, where was Mr.

09:55:53   15    Ortiz situated in the Major Crimes Unit?

09:55:56   16    A.   I believe, guessing, the interview room.

09:56:02   17    Q.   So when you got to the Major Crimes Unit on the

09:56:06   18    16th, Mr. Ortiz, it's your testimony, he was in an

09:56:08   19    interview room, not a detective's office, correct?

09:56:11   20    A.   Correct.

09:56:17   21    Q.   And there is a difference, so we established

09:56:22   22    that, right?  You know he was in an interview room with

09:56:24   23    the double mirrors and all that, correct?

09:56:28   24    A.   Yes.

09:56:28   25    Q.   And when you arrived, how long had Mr. Stambach

```
            1              E. TORRES - DX BY MR. FELLE
09:56:32    2    been questioning my client, do you know?
09:56:33    3        A.  I do not.
09:56:36    4        Q.  And just to be further clear, when you were
09:56:39    5    brought in, it was to strictly translate, correct?
09:56:42    6        A.  Correct.
09:56:43    7        Q.  In other words, you weren't going to be asking
09:56:45    8    questions independent of what Mr. Stambach was asking,
09:56:48    9    correct?
09:56:48   10        A.  Correct.
09:56:49   11        Q.  He was asking all of the questions and all you
09:56:53   12    were doing was translating between Ortiz and Stambach,
09:56:56   13    correct?
09:56:57   14        A.  Correct.
09:57:02   15        Q.  And when you arrived, did Mr. Stambach tell you
09:57:05   16    that he had already been meeting with Mr. Ortiz for 30
09:57:08   17    to 40 minutes, correct?
09:57:14   18        A.  I don't recall.
09:57:15   19        Q.  When you arrived, did Mr. Stambach tell you that
09:57:18   20    Mr. Ortiz already admitted his guilt to the murders?
09:57:22   21        A.  I do not recall.
09:57:25   22        Q.  But when you arrived at a little after 8:00
09:57:28   23    o'clock that night, do you recall him telling you that
09:57:32   24    Mr. Ortiz was a suspect?
09:57:36   25        A.  He may have, I don't recall.
```

A-2634

|   | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|

09:57:46  2    Q.  But let me ask you this, it wasn't until 8:25

09:57:49  3   that you read him his Miranda warnings, correct?

09:57:52  4    A.  I don't recall.  I don't recall the time.

09:57:59  5    Q.  Let's look at Exhibit 6B, P73.  So you see there

09:58:16  6   at the 4th paragraph the P73 says that the rights were

09:58:20  7   read at 8:25 p.m.  Would that refresh your memory?

09:58:24  8    A.  Yes.

09:58:24  9    Q.  So we know Mr. Ortiz got to the station at 7:15,

09:58:28  10  and we know you arrived at a little after 8:00 o'clock,

09:58:31  11  correct?

09:58:31  12   A.  That is what is stated there.

09:58:33  13   Q.  And we know that it took a little while for you

09:58:37  14  to find a Spanish Miranda card, you tell me, did it take

09:58:41  15  you a little while to find a Spanish Miranda card at the

09:58:46  16  station?

09:58:46  17   A.  I don't recall.

09:58:47  18   Q.  Ultimately when you did, Mr. Ortiz was given his

09:58:50  19  warnings and you signed off, correct?

09:58:52  20   A.  Yes.

09:58:59  21   Q.  But just to be clear, if Mr. Ortiz was specific

09:59:07  22  at an earlier point that night, he should have read his

09:59:12  23  Miranda warnings, correct?

09:59:14  24         MR. SAHASRABUDHE:  Objection, Your Honor.

09:59:15  25  Calls for legal conclusion.

A-2635

424

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  |              E. TORRES - DX BY MR. FELLE                      |
| 09:59:16 | 2  |              THE COURT:  Why don't you rephrase the           |
| 09:59:18 | 3  | question.  I wasn't sure.                                     |
| 09:59:21 | 4  |     Q.  Mr. Torres, I asked you earlier if Mr. Stambach       |
| 09:59:27 | 5  | told you when you arrived that Mr. Ortiz was a suspect.       |
| 09:59:31 | 6  | Do you recall that?                                           |
| 09:59:32 | 7  |     A.  I recall you asking that.                            |
| 09:59:33 | 8  |     Q.  And you don't recall, correct?                       |
| 09:59:35 | 9  |     A.  I don't.                                             |
| 09:59:35 | 10 |     Q.  Would it be a fair statement that if he was a        |
| 09:59:39 | 11 | suspect at that time, he should have read his Miranda        |
| 09:59:43 | 12 | warnings?                                                    |
| 09:59:45 | 13 |     A.  Yes.                                                 |
| 09:59:45 | 14 |     Q.  But nonetheless, it wasn't until 8:25 that you       |
| 09:59:49 | 15 | read him his Miranda warnings, correct?                      |
| 09:59:51 | 16 |     A.  That is what it says there.                         |
| 09:59:53 | 17 |     Q.  And if he had read his Miranda warnings at an        |
| 09:59:56 | 18 | earlier time, it would have been noted on P73, correct?      |
| 10:00:03 | 19 |              MR. SAHASRABUDHE:  Objection.  Calls for         |
| 10:00:05 | 20 | speculation.                                                 |
| 10:00:06 | 21 |              THE COURT:  Well, do you know the answer to      |
| 10:00:09 | 22 | that?                                                        |
| 10:00:09 | 23 |              THE WITNESS:  I do not.                          |
| 10:00:10 | 24 |     Q.  Now, I want to ask you a very important question.    |
| 10:00:13 | 25 | When you arrived at the MCU, the Major Crimes Unit on        |

```
              1                 E. TORRES - DX BY MR. FELLE
10:00:21      2    the 16th of November, did you tell Detective Stambach
10:00:23      3    that you had just met Ortiz the night before?
10:00:25      4        A.  I don't recall.
10:00:40      5        Q.  I think it's Exhibit 7, the deposition testimony.
10:00:44      6    I'll refer to page 181.
10:01:22      7                 Can you read your testimony from back at the
10:01:26      8    deposition, Mr. Torres?
10:01:28      9        A.  I can see it there.  Would you like me to read
10:01:32     10    it?
10:01:33     11        Q.  No.  I just want to ask you the question again.
10:01:36     12    Does it refresh your memory as to whether or not you
10:01:39     13    told Mr. Stambach about your interactions with Mr. Ortiz
10:01:43     14    the night before?
10:01:43     15        A.  It doesn't refresh my memory.
10:01:46     16        Q.  Let me do this then, this is your sworn
10:01:49     17    testimony, correct?
10:01:49     18        A.  Yes.
10:01:50     19        Q.  And before giving that deposition, you raised
10:01:53     20    your hand and took an oath to tell the truth, correct?
10:01:56     21        A.  Correct.
10:01:57     22        Q.  And at that time, you were asked the question, so
10:01:59     23    my question to you is this, did you rely upon the idea
10:02:05     24    that Detective Stambach was with you at Buffalo General
10:02:09     25    Hospital on the 15th during your interactions with Mr.
```

A-2637

426

E. TORRES - DX BY MR. FELLE

10:02:12  2   Ortiz, during your interview and translation of him at

10:02:16  3   that time, did you trust that he had all that same

10:02:19  4   knowledge that you had from the 15th when you met with

10:02:22  5   Mr. Ortiz on the 16th?

10:02:24  6        MR. SAHASRABUDHE:  I object.  This is

10:02:26  7   improper impeachment.  That was not the question asked

10:02:29  8   of this witness.

10:02:36  9        THE COURT:  Hold on a second.  Let me review

10:02:39  10  it.

10:02:58  11        Overruled.  I'll allow it.  Go ahead.

10:03:01  12  Q.  What was your answer to that question?

10:03:03  13  A.  I can see my answer.  I don't recall it

10:03:06  14  personally.

10:03:06  15  Q.  You can read it.  What was your answer at that

10:03:08  16  time?

10:03:09  17  A.  The witness, yes.

10:03:10  18  Q.  So I want to be clear, you told us earlier that

10:03:13  19  when you gave testimony back at your Huntley in front of

10:03:16  20  a judge, that you recalled Mr. Stambach being at Buffalo

10:03:19  21  General Hospital the night before, correct?

10:03:21  22  A.  That is what is written.

10:03:23  23  Q.  Right.  Now, Mr. Stambach has denied that.  Now,

10:03:26  24  you're asked a question in your deposition, well, why on

10:03:29  25  the 16th didn't you tell Stambach that you just met

A-2638

|         |    |                                                        |
|---------|----|--------------------------------------------------------|
|         | 1  | E. TORRES - DX BY MR. FELLE                            |
| 10:03:32 | 2  | Ortiz the night before?  And he had no information.   |
| 10:03:35 | 3  | Wasn't a credible witness or suspect.  And in fact, he |
| 10:03:38 | 4  | was under psychiatric evaluation.  And when I asked you |
| 10:03:41 | 5  | that --                                                |
| 10:03:42 | 6  | MR. SAHASRABUDHE:  I object.  This is                  |
| 10:03:44 | 7  | argumentative.                                         |
| 10:03:44 | 8  | THE COURT:  Sustained.  This is now a                 |
| 10:03:46 | 9  | speech.                                                |
| 10:03:46 | 10 | MR. FELLE:  I apologize, Your Honor.  I                |
| 10:03:48 | 11 | don't mean it to be.  I just want to make a point.     |
| 10:03:50 | 12 | THE COURT:  No, no, no.  See, closing                 |
| 10:03:53 | 13 | arguments are the time for you to make points.  This is |
| 10:03:56 | 14 | the time to ask these witness question, okay?          |
| 10:03:59 | 15 | Q.  You were asked why you didn't tell Mr. Stambach    |
| 10:04:02 | 16 | that and you said it was because you recalled him there |
| 10:04:05 | 17 | the night before and that is why you thought he had that |
| 10:04:07 | 18 | information, correct?                                   |
| 10:04:08 | 19 | A.  I don't personally recall that.                    |
| 10:04:10 | 20 | Q.  But that is what your testimony says, correct?     |
| 10:04:12 | 21 | A.  It appears to say that, yes.                       |
| 10:04:14 | 22 | Q.  It was years ago, would you agree that your        |
| 10:04:17 | 23 | memory would be better than it is today?               |
| 10:04:20 | 24 | A.  Yes.                                                |
| 10:04:20 | 25 | Q.  And again, it was sworn testimony at the time,     |

A-2639

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|

10:04:23  2  correct?

10:04:23  3      A.  Yes.

10:04:26  4      Q.  Now, the P73 goes through the fact that Mr.

10:04:31  5  Stambach alleges my client confessed to the crime that

10:04:34  6  evening, correct?

10:04:35  7      A.  I'd have to read that.

10:04:42  8      Q.  Let me ask you something, did you translate for

10:04:45  9  the confession?

10:04:48  10      A.  I translated.

10:04:50  11      Q.  Do you recall translating when my client admitted

10:04:54  12  his guilt to that crime?  Do you recall that?

10:04:56  13      A.  I don't.

10:05:04  14      Q.  Did you ever express to Mr. Stambach any doubt in

10:05:09  15  the fact that Mr. Ortiz had any involvement in the

10:05:12  16  crimes?

10:05:12  17      A.  I have no memory of that.

10:05:17  18      Q.  But you would agree with me that in less than 24

10:05:20  19  hours, you spoke to Mr. Ortiz and he had no credible

10:05:24  20  information about the crimes, right?

10:05:25  21      A.  I don't remember the -- what was -- the

10:05:29  22  interaction on that, at Buffalo General.

10:05:33  23      Q.  But we just went over it, Mr. Torres.  And we

10:05:36  24  agreed that when you left Buffalo General Hospital, he

10:05:39  25  wasn't considered a suspect or anyone with credible

| | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 10:05:41 | 2 | information about the crimes, correct? |
| 10:05:42 | 3 | A.  I don't recall what the belief was. |
| 10:06:00 | 4 | Q.  And the information that Mr. Stambach was telling |
| 10:06:02 | 5 | you on the 15th was inconsistent with what happened on |
| 10:06:06 | 6 | the 16th, correct? |
| 10:06:07 | 7 | A.  I don't recall. |
| 10:06:08 | 8 | Q.  In other words, Mr. Ortiz had no specific details |
| 10:06:12 | 9 | as to the crime correct on the 15th? |
| 10:06:15 | 10 | A.  I don't recall. |
| 10:06:16 | 11 | Q.  Let me ask you this, were you aware of any other |
| 10:06:20 | 12 | evidence in the Camacho brother murder investigation |
| 10:06:23 | 13 | that pointed to my client as being guilty? |
| 10:06:26 | 14 | A.  I was not aware. |
| 10:06:31 | 15 | Q.  And so when you're involved in translating for |
| 10:06:34 | 16 | this so-called confession, did you ever raise any |
| 10:06:37 | 17 | concerns? |
| 10:06:37 | 18 | A.  Personally? |
| 10:06:39 | 19 | Q.  Correct. |
| 10:06:39 | 20 | A.  I don't recall. |
| 10:06:48 | 21 | Q.  Now, I got to get back to something you testified |
| 10:06:51 | 22 | to a moment ago.  You clearly stated, that when you |
| 10:06:59 | 23 | arrived on the 16th of November, you went to the |
| 10:07:03 | 24 | interview room and that was where Mr. Ortiz was, |
| 10:07:06 | 25 | correct? |

A-2641

430

|  | E. TORRES - DX BY MR. FELLE |
|---|---|
| 1 |  |
| 10:07:06 | 2 | A. Ultimately, yes. |
| 10:07:07 | 3 | Q. Now, the P73, Exhibit 6B, states that when he |
| 10:07:17 | 4 | arrived, he arrived, Mr. Ortiz was in Sergeant Viviane's |
| 10:07:22 | 5 | office, correct? |
| 10:07:23 | 6 | A. I don't personally recall that. |
| 10:07:25 | 7 | Q. And I guess we've had the benefit of the |
| 10:07:30 | 8 | testimony of -- hearing at least the testimony of Mr. |
| 10:07:34 | 9 | Stambach, and he says they were in the office. |
| 10:07:36 | 10 | MR. SAHASRABUDHE: Objection, argumentative. |
| 10:07:38 | 11 | THE COURT: Sustained. I don't know if it's |
| 10:07:40 | 12 | argumentative. Again, this is not the time to be giving |
| 10:07:43 | 13 | closing arguments. Let's ask these witness questions, |
| 10:07:46 | 14 | Mr. Felle. |
| 10:07:48 | 15 | Q. But Mr. Torres, when you gave testimony, you were |
| 10:07:52 | 16 | asked questions about this. Are you aware of ever being |
| 10:07:56 | 17 | in Detective Viviane's office with Stambach or Ortiz on |
| 10:07:59 | 18 | that night? |
| 10:08:00 | 19 | A. I do not recall. |
| 10:08:10 | 20 | Q. And let me show you what's been marked. This is |
| 10:08:13 | 21 | the deposition, I believe, Exhibit 7, page 41. This is |
| 10:08:26 | 22 | your deposition testimony where you swore. Do you see |
| 10:08:34 | 23 | your response at lines 15 and 16? Does that refresh |
| 10:08:37 | 24 | your memory? |
| 10:08:38 | 25 | A. I see my response. |

A-2642

431

|  | 1 | E. TORRES - DX BY MR. FELLE |
| 10:08:40 | 2 | Q.   Does that refresh your memory? |
| 10:08:41 | 3 | A.   It does not refresh my memory. |
| 10:08:44 | 4 | Q.   Let me ask you this, you were asked -- this is |
| 10:08:46 | 5 | your sworn testimony.  You were asked a question and |
| 10:08:49 | 6 | I'll read it.  The P73 prepared by Detective Mark |
| 10:08:54 | 7 | Stambach indicates that questioning of Ortiz took place |
| 10:08:58 | 8 | in detective or Sergeant Viviane's office that evening. |
| 10:09:04 | 9 | Does that refresh your memory or change your |
| 10:09:06 | 10 | recollection at all?  And your answer is, you can read |
| 10:09:11 | 11 | it. |
| 10:09:11 | 12 | A.   Sorry.  "Answer, I was not in Detective Viviane's |
| 10:09:16 | 13 | office for my part of it." |
| 10:09:18 | 14 | Q.   So you were never in Detective Viviane's office, |
| 10:09:22 | 15 | correct? |
| 10:09:22 | 16 | A.   I don't personally recall. |
| 10:09:28 | 17 | Q.   Let's take a look at page 145 of that same |
| 10:09:32 | 18 | Exhibit 7.  Do you see a response there at line 18?  Can |
| 10:09:44 | 19 | you read that for us at line 18? |
| 10:09:46 | 20 | A.   Line 18.  During my time there, he was always -- |
| 10:09:49 | 21 | THE COURT:  Why don't we get the question |
| 10:09:50 | 22 | first? |
| 10:09:51 | 23 | Q.   The question at line 16, "was he, Mr. Ortiz, |
| 10:09:56 | 24 | still in the interview room or had he been moved |
| 10:09:59 | 25 | somewhere else?"  And your question -- your answer, |

A-2643

432

|          |    | E. TORRES - DX BY MR. FELLE |
|----------|----|------------------------------|
| 10:10:04 | 2  | excuse me. |
| 10:10:04 | 3  | A.  "During my time there, he was always in the |
| 10:10:07 | 4  | interview room." |
| 10:10:24 | 5  | Q.  Now, the P73, Exhibit 6B, indicates that after |
| 10:10:38 | 6  | 8:25, Stambach typed up the alleged confession; is that |
| 10:10:43 | 7  | correct? |
| 10:10:43 | 8  | A.  I'm sorry, what? |
| 10:10:45 | 9  | Q.  Reading the P73, does it indicate that sometime |
| 10:10:50 | 10 | after 8:25 p.m., that Stambach typed up a confession? |
| 10:10:55 | 11 | MR. SAHASRABUDHE:  I object.  That is not |
| 10:10:56 | 12 | what it says. |
| 10:10:57 | 13 | MR. FELLE:  I'm asking if it says that. |
| 10:10:59 | 14 | A.  Where does that say that? |
| 10:11:01 | 15 | Q.  Well, he was read his waiver and Miranda rights |
| 10:11:05 | 16 | at 8:30, correct? |
| 10:11:06 | 17 | A.  Where are you? |
| 10:11:08 | 18 | Q.  On the 4th paragraph. |
| 10:11:16 | 19 | A.  And your question? |
| 10:11:16 | 20 | Q.  And then as we turn to the sixth paragraph, does |
| 10:11:21 | 21 | it say that at 9:00 o'clock, after he had something to |
| 10:11:24 | 22 | eat, that a formal statement, a confession was taken |
| 10:11:27 | 23 | from him? |
| 10:11:36 | 24 | A.  Where exactly do you want me? |
| 10:11:39 | 25 | Q.  Mr. Torres, I'm asking you, do you agree that the |

A-2644

433

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|           | 1  | E. TORRES - DX BY MR. FELLE                          |
| 10:11:44  | 2  | sixth paragraph of the P73 indicates a formal statement |
| 10:11:48  | 3  | was taken from where Mr. Ortiz --                    |
| 10:11:51  | 4  | MR. SAHASRABUDHE:  Your Honor, he is asking         |
| 10:11:54  | 5  | him where on the document he is referring to.        |
| 10:11:58  | 6  | MR. FELLE:  I said paragraph six.                    |
| 10:11:59  | 7  | THE COURT:  If that is an objection, it's           |
| 10:12:01  | 8  | overruled.  Go ahead and ask your question, Mr. Felle. |
| 10:12:04  | 9  | Q.  Let me ask you this, Mr. Torres, during that     |
| 10:12:08  | 10 | evening, you were the one translating between Mr. Ortiz |
| 10:12:13  | 11 | and Stambach with respect to this alleged confession; is |
| 10:12:17  | 12 | that correct?                                        |
| 10:12:17  | 13 | A.  I was the translator.                            |
| 10:12:19  | 14 | Q.  Let me ask you this, do you recall that?         |
| 10:12:21  | 15 | A.  Sure.  I recall parts of it, sure.               |
| 10:12:24  | 16 | Q.  And you were in the interview room, correct?     |
| 10:12:26  | 17 | A.  Yes.                                             |
| 10:12:27  | 18 | Q.  Not Detective Sergeant Viviane's office, correct? |
| 10:12:31  | 19 | A.  Correct.                                         |
| 10:12:33  | 20 | Q.  And did you sign that confession?                |
| 10:12:35  | 21 | A.  I'm sure I did.                                  |
| 10:12:37  | 22 | Q.  That is standard practice?                       |
| 10:12:39  | 23 | A.  Yes.                                             |
| 10:12:43  | 24 | Q.  And that confession was also signed by Detective |
| 10:12:50  | 25 | Sergeant Lonergan.  Do you recall him signing that with |

A-2645

434

E. TORRES - DX BY MR. FELLE

10:12:53  2  you?

10:12:53  3      A.  I don't specifically recall.

10:12:54  4      Q.  In fact, do you recall seeing Mr. Lonergan at all

10:12:58  5  that night?

10:12:58  6      A.  I don't recall.

10:13:09  7      Q.  And upon the taking of that confession and at the

10:13:14  8  very late hour of midnight or a little after, Mr. Ortiz

10:13:17  9  was arrested.  Do you recall that?

10:13:18  10     A.  I don't recall.

10:13:22  11     Q.  I showed you the picture when we started your

10:13:26  12  deposition of him being photographed as he was arrested,

10:13:29  13  you said you recall that.  Do you recall that?

10:13:31  14     A.  I recall what he looked like in that picture.

10:13:36  15     Q.  Now, during that time you were interviewing Mr.

10:13:40  16  Ortiz at the Major Crimes Unit, were you aware that

10:13:43  17  there were three perpetrators to that crime?

10:13:45  18             MR. SAHASRABUDHE:  Objection.

10:13:46  19             THE COURT:  Overruled.

10:13:49  20             THE WITNESS:  Answer?

10:13:50  21             THE COURT:  Go ahead.  You can answer.

10:13:52  22     A.  No.

10:13:53  23     Q.  And do you recall me asking, I know I asked you

10:13:58  24  earlier today, that with respect to these two encounters

10:14:01  25  with Mr. Ortiz, where you translated on the 15th and

A-2646

435

|         |    |                                                        |
|---------|----|--------------------------------------------------------|
|         | 1  | E. TORRES - DX BY MR. FELLE                            |
| 10:14:04 | 2  | 16th of November 2004, that that was your only         |
| 10:14:07 | 3  | involvement in the Camacho murders investigation,      |
| 10:14:09 | 4  | correct?                                               |
| 10:14:09 | 5  | A.  Correct.                                           |
| 10:14:13 | 6  | Q.  But that is not true, is it?                       |
| 10:14:15 | 7  | A.  It's absolutely true.                              |
| 10:14:19 | 8  | Q.  Because we know that on the 16th of November at    |
| 10:14:24 | 9  | about 8:00 o'clock, you were also meeting with a person|
| 10:14:27 | 10 | by the name of Osario, at the Major Crimes Unit; isn't |
| 10:14:34 | 11 | that correct?                                          |
| 10:14:35 | 12 | A.  I remember you mentioning that and my answer was   |
| 10:14:37 | 13 | I don't recall that.                                   |
| 10:14:39 | 14 | Q.  I'm going to show you an Exhibit that I'm going    |
| 10:14:41 | 15 | to mark at 6C, 6C.  And at this point, it's just going |
| 10:14:48 | 16 | to be published to the witness.                        |
| 10:14:49 | 17 | THE CLERK:  They are off.                              |
| 10:15:01 | 18 | Q.  Now, Mr. Torres, I'm going to show you a P73, and  |
| 10:15:05 | 19 | is that P73 dated November 16th of '04?                |
| 10:15:08 | 20 | A.  Yes.                                               |
| 10:15:09 | 21 | Q.  And does that P73 say --                           |
| 10:15:14 | 22 | MR. SAHASRABUDHE:  Objection.  Reading from            |
| 10:15:15 | 23 | a document that is not in evidence.                    |
| 10:15:16 | 24 | THE COURT:  Sustained.                                 |
| 10:15:17 | 25 | Q.  I'll ask you if this refreshes your memory on      |

A-2647

436

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 10:15:19 | 2 | that date, that you were involved in an interview with a |
| 10:15:22 | 3 | Carlos Osario? |
| 10:15:23 | 4 | A.  It does not refresh my memory. |
| 10:15:26 | 5 | Q.  Does the P73 purport to say? |
| 10:15:29 | 6 | MR. SAHASRABUDHE:  Objection, once again. |
| 10:15:31 | 7 | THE COURT:  Sustained. |
| 10:15:35 | 8 | MR. FELLE:  Your Honor, it goes to the state |
| 10:15:37 | 9 | of mind of this person at the time he is arresting Mr. |
| 10:15:40 | 10 | Ortiz, what knowledge he had relative to -- |
| 10:15:42 | 11 | THE COURT:  No.  That's hearsay, Mr. Felle. |
| 10:15:46 | 12 | You can't read from a document that is not in evidence. |
| 10:15:49 | 13 | MR. FELLE:  That's fair.  But I'm not asking |
| 10:15:51 | 14 | him about the hearsay, the contents of that.  I'm asking |
| 10:15:54 | 15 | him about -- |
| 10:15:54 | 16 | THE COURT:  You can't ask him about a |
| 10:15:57 | 17 | document and state what a document says if it's not in |
| 10:16:01 | 18 | evidence. |
| 10:16:02 | 19 | MR. FELLE:  Correct.  And I'm not asking him |
| 10:16:04 | 20 | that.  I'm asking him if he recalls being there as it |
| 10:16:07 | 21 | states. |
| 10:16:08 | 22 | A.  I do not. |
| 10:16:11 | 23 | Q.  Were you aware of Mr. Osario from any other |
| 10:16:15 | 24 | involvement in that investigation? |
| 10:16:16 | 25 | A.  No. |

A-2648

|  | 1 | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| 10:16:19 | 2 | Q.  And did you have knowledge on the 16th of |
| 10:16:22 | 3 | November at the same time you testified, you were taking |
| 10:16:25 | 4 | a confession from Mr. Ortiz, did you have knowledge |
| 10:16:28 | 5 | there was a person in the next room that had information |
| 10:16:30 | 6 | about the crimes? |
| 10:16:33 | 7 | MR. SAHASRABUDHE:  Objection.  Calls for |
| 10:16:35 | 8 | speculation. |
| 10:16:35 | 9 | THE COURT:  Overruled.  I'll allow that. |
| 10:16:37 | 10 | A.  I did not. |
| 10:16:39 | 11 | Q.  And so it's your testimony that you were not |
| 10:16:41 | 12 | aware of person in the interview room that night having |
| 10:16:47 | 13 | knowledge about the Camacho brother murders, correct? |
| 10:16:50 | 14 | THE COURT:  You just asked him the question |
| 10:16:55 | 15 | and he answered it.  You're trying to do indirectly, Mr. |
| 10:16:58 | 16 | Felle.  Or what you can't do directly, Mr. Felle, and |
| 10:17:00 | 17 | I'm not going to let you do that. |
| 10:17:02 | 18 | Q.  Mr. Torres, is it your testimony today that you |
| 10:17:05 | 19 | don't recall that at all? |
| 10:17:08 | 20 | A.  Correct. |
| 10:17:19 | 21 | Q.  I'm going to refresh your memory, turning to |
| 10:17:22 | 22 | Exhibit 7, your deposition testimony, at line 152, |
| 10:17:28 | 23 | excuse me, page 152.  This is just for the witness. |
| 10:17:47 | 24 | Turning to page 152, can you read that yourself, sir, |
| 10:17:54 | 25 | and what your testimony was back on November 29th, 2019. |

A-2649

438

|  | | |
|---|---|---|
| | 1 | E. TORRES - DX BY MR. FELLE |
| 10:18:02 | 2 | Starting with line 9 and going to line 18? |
| 10:18:05 | 3 | MR. SAHASRABUDHE:  Your Honor, I would |
| 10:18:06 | 4 | object to the extent.  He was asked to look at a |
| 10:18:09 | 5 | document that is not in evidence at this trial in his |
| 10:18:12 | 6 | deposition. |
| 10:18:12 | 7 | THE COURT:  And if, Mr. Felle gets to the |
| 10:18:14 | 8 | point where he is going to try and read this for |
| 10:18:17 | 9 | impeachment purposes, I think that is a legitimate |
| 10:18:20 | 10 | objection.  But if it's just being use to refresh his |
| 10:18:23 | 11 | recollection, he can do that. |
| 10:18:24 | 12 | MR. SAHASRABUDHE:  Okay.  Withdrawn. |
| 10:18:28 | 13 | A.  You would have to repeat the question. |
| 10:18:29 | 14 | Q.  Sure.  Does it refresh your memory your testimony |
| 10:18:32 | 15 | given years ago that you were aware -- |
| 10:18:34 | 16 | THE COURT:  Mr. Felle, Mr. Felle, you can't |
| 10:18:36 | 17 | read from it if it's not in evidence, okay?  All right? |
| 10:18:41 | 18 | So the question is simply, does this refresh your |
| 10:18:44 | 19 | recollection? |
| 10:18:48 | 20 | A.  Okay.  Do you want my answer?  Let me read it |
| 10:18:51 | 21 | real quick.  It does not refresh my memory. |
| 10:19:19 | 22 | Q.  Mr. Torres, without acknowledging your |
| 10:19:25 | 23 | involvement in that, does the P73 -- |
| 10:19:28 | 24 | MR. SAHASRABUDHE:  Objection, Your Honor. |
| 10:19:29 | 25 | THE COURT:  Mr. Felle, I'm seriously -- I |

A-2650

439

| | | E. TORRES - DX BY MR. FELLE |
|---|---|---|
| | 1 | |
| 10:19:31 | 2 | keep telling you.  You cannot refer to a document that |
| 10:19:34 | 3 | is not in evidence.  And yet, you keep trying to do it. |
| 10:19:40 | 4 | It's violating my rulings.  So please stop it. |
| 10:19:59 | 5 | Q.  Is your testimony that you were involved with the |
| 10:20:01 | 6 | Ortiz interview for the entire night? |
| 10:20:05 | 7 | A.  Yes. |
| 10:20:14 | 8 | Q.  Now, you've also testified that you did not see |
| 10:20:18 | 9 | Sergeant Detective Lonergan that night, correct? |
| 10:20:21 | 10 | A.  I don't recall. |
| 10:20:25 | 11 | Q.  Are you aware of any conversations between |
| 10:20:29 | 12 | Sergeant Detective Lonergan and Mr. Stambach, where he |
| 10:20:33 | 13 | told him about the interaction with Mr. Ortiz the night |
| 10:20:36 | 14 | before? |
| 10:20:36 | 15 | MR. SAHASRABUDHE:  Objection. |
| 10:20:37 | 16 | THE COURT:  Overruled.  I'll allow that.  Go |
| 10:20:40 | 17 | ahead. |
| 10:20:40 | 18 | A.  I was not aware. |
| 10:20:43 | 19 | Q.  And do you have any personal knowledge that |
| 10:20:45 | 20 | Lonergan told Stambach about? |
| 10:20:47 | 21 | MR. SAHASRABUDHE:  Objection again. |
| 10:20:48 | 22 | THE COURT:  Well, let's hear the question |
| 10:20:51 | 23 | first. |
| 10:20:51 | 24 | Q.  Do you have any personal knowledge as to whether |
| 10:20:55 | 25 | Lonergan told Stambach about that interview? |

A-2651

440

|          |    |                                                       |
|----------|----|-------------------------------------------------------|
|          | 1  | E. TORRES - DX BY MR. FELLE                           |
| 10:20:59 | 2  | THE COURT:  About what interview?                     |
| 10:21:00 | 3  | MR. FELLE:  The night before at Buffalo               |
| 10:21:00 | 4  | General Hospital.                                     |
| 10:21:04 | 5  | THE COURT:  Okay.  If there is an objection,          |
| 10:21:07 | 6  | it's overruled.  Go ahead.  You can answer.           |
| 10:21:09 | 7  | A.  I don't recall.                                   |
| 10:21:19 | 8  | Q.  Mr. Torres, let me ask you this, you testified    |
| 10:21:24 | 9  | that night that you were never in a detective office and |
| 10:21:28 | 10 | you were always in an interview room, right?          |
| 10:21:31 | 11 | A.  I don't recall.                                   |
| 10:21:39 | 12 | Q.  I'll refer to your testimony again.               |
| 10:21:41 | 13 | MR. SAHASRABUDHE:  Your Honor, this has been          |
| 10:21:42 | 14 | asked and answered.                                   |
| 10:21:44 | 15 | THE COURT:  It has been asked and answered.           |
| 10:21:47 | 16 | Are you indicating that you don't recall if you       |
| 10:21:49 | 17 | testified to that or if you were always in an interview |
| 10:21:52 | 18 | room?                                                 |
| 10:21:52 | 19 | A.  I don't recall being anywhere else other than the |
| 10:21:56 | 20 | interview room.                                       |
| 10:21:57 | 21 | THE COURT:  I think he testified to that.             |
| 10:22:00 | 22 | Q.  So is it possible that you were not involved with |
| 10:22:02 | 23 | Mr. Ortiz but you were involved with someone else who |
| 10:22:05 | 24 | was in the interview room that night?                 |
| 10:22:08 | 25 | A.  I don't recall.                                   |

A-2652

441

|       |    |                                                      |
|-------|----|------------------------------------------------------|
|       | 1  | E. TORRES - DX BY MR. FELLE                          |
| 10:22:14 | 2  | Q.  Was there a point in time that you became aware |
| 10:22:16 | 3  | that Mr. Ortiz was found to be completely innocent of |
| 10:22:19 | 4  | this crime?                                          |
| 10:22:20 | 5  | A.  I'm sorry, repeat.                               |
| 10:22:21 | 6  | Q.  Was there a point in time when you became aware |
| 10:22:24 | 7  | that it was determined through an investigation that Mr. |
| 10:22:26 | 8  | Ortiz was completely innocent of these crimes?      |
| 10:22:29 | 9  | A.  I believe many years later on the news.         |
| 10:22:33 | 10 | Q.  And when you became aware of that, did you      |
| 10:22:36 | 11 | remember him?                                       |
| 10:22:36 | 12 | A.  Remember Josue Ortiz?                            |
| 10:22:40 | 13 | Q.  Yes.                                            |
| 10:22:40 | 14 | A.  Yes.                                            |
| 10:22:40 | 15 | Q.  And did you remember that you were involved in  |
| 10:22:43 | 16 | his arrest and putting him in jail?                 |
| 10:22:45 | 17 | A.  I was not involved in his arrest.  I was the    |
| 10:22:47 | 18 | translator.                                         |
| 10:22:49 | 19 | Q.  Okay.  You were involved in taking a confession |
| 10:22:51 | 20 | from the man that was now found innocent, correct?  |
| 10:22:55 | 21 | A.  Correct.                                         |
| 10:22:56 | 22 | Q.  And so when you heard that, what did you do?    |
| 10:22:59 | 23 | A.  It bothered me a lot.                            |
| 10:23:03 | 24 | Q.  Did you ever go back to investigate the matter  |
| 10:23:05 | 25 | and find out how that could have happened?          |

A-2653

442

|      |    | E. TORRES - CX BY MR. SAHASRABUDHE |
|------|----|---|
| 10:23:08 | 2 | A.  No. |
| 10:23:08 | 3 | Q.  And did you ever reach out to Mr. Ortiz to |
| 10:23:10 | 4 | apologize? |
| 10:23:11 | 5 | A.  No. |
| 10:23:13 | 6 | MR. FELLE:  Okay.  I have nothing further, |
| 10:23:14 | 7 | Your Honor. |
| 10:23:14 | 8 | THE COURT:  Thank you, Mr. Felle. |
| 10:23:16 | 9 | Cross-examination? |
| 10:23:17 | 10 | MR. SAHASRABUDHE:  Yes, Your Honor. |
| 10:23:35 | 11 | CROSS-EXAMINATION BY MR. SAHASRABUDHE: |
| 10:23:44 | 12 | Q.  Good morning, Mr. Torres. |
| 10:23:47 | 13 | A.  Good morning. |
| 10:23:48 | 14 | Q.  So I have to apologize, the other witnesses got |
| 10:23:50 | 15 | the star of the show.  You're stuck with the lowly |
| 10:23:54 | 16 | understudy, so apologies in advance to you, sir. |
| 10:23:58 | 17 | THE COURT:  He doesn't even understand what |
| 10:24:01 | 18 | you're referring to, Mr. Sahasrabudhe. |
| 10:24:06 | 19 | This is the first witness that Mr. |
| 10:24:08 | 20 | Sahasrabudhe has asked questions in this trial.  That is |
| 10:24:11 | 21 | what he is referring to. |
| 10:24:12 | 22 | Q.  I don't want to keep you here much longer, but |
| 10:24:15 | 23 | there are a couple of points I would like to clarify. |
| 10:24:18 | 24 | And if we could, I'd like to start with your background, |
| 10:24:21 | 25 | okay? |

A-2654

443

|  | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:24:21 | 2 | A. Yes. |
| 10:24:22 | 3 | Q. Could you tell us who you were raised by |
| 10:24:24 | 4 | primarily? |
| 10:24:25 | 5 | A. My mother. |
| 10:24:26 | 6 | Q. Can you tell us where your mother is from? |
| 10:24:28 | 7 | A. Puerto Rico. |
| 10:24:29 | 8 | Q. Can you tell us what your mother's first language |
| 10:24:32 | 9 | is? |
| 10:24:32 | 10 | A. Spanish. |
| 10:24:34 | 11 | Q. Fair to say then that you were primarily raised |
| 10:24:37 | 12 | by a native Puerto Rican who speaks Spanish as her first |
| 10:24:42 | 13 | language? |
| 10:24:42 | 14 | A. Yes. |
| 10:24:43 | 15 | Q. And she spoke Spanish to you in your household |
| 10:24:46 | 16 | while you were growing up, correct? |
| 10:24:47 | 17 | A. Correct. |
| 10:24:47 | 18 | Q. And fair to say that from conversing and speaking |
| 10:24:51 | 19 | with your mother in Spanish, you became conversing in |
| 10:24:55 | 20 | Spanish? |
| 10:24:55 | 21 | A. Correct. |
| 10:24:57 | 22 | Q. You also learned Spanish from some other sources |
| 10:25:00 | 23 | growing up, correct? |
| 10:25:01 | 24 | A. Yes. |
| 10:25:02 | 25 | Q. Can you tell us about those? |

A-2655

444

|  | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:25:04 | 2 | MR. FELLE:  Your Honor, I object.  We don't |
| 10:25:06 | 3 | contest if he knows Spanish. |
| 10:25:08 | 4 | THE COURT:  Overruled.  I'll allow it.  Go |
| 10:25:10 | 5 | ahead. |
| 10:25:10 | 6 | A.  I attended a Spanish speaking church for many |
| 10:25:15 | 7 | years.  And I took Spanish classes in high school, once |
| 10:25:19 | 8 | or twice.  I don't recall specifically. |
| 10:25:21 | 9 | Q.  When you attended a Spanish speaking church, did |
| 10:25:24 | 10 | you learn to read and write Spanish? |
| 10:25:26 | 11 | A.  Learned to read it. |
| 10:25:27 | 12 | Q.  And of the Spanish speaking church, was that |
| 10:25:31 | 13 | primarily attended by native Puerto Ricans that speak |
| 10:25:36 | 14 | Spanish as their first language? |
| 10:25:37 | 15 | A.  Correct. |
| 10:25:38 | 16 | Q.  And you attended school in the City of Buffalo; |
| 10:25:41 | 17 | is that correct? |
| 10:25:41 | 18 | A.  Correct. |
| 10:25:42 | 19 | Q.  And your education was primarily in English? |
| 10:25:46 | 20 | A.  Correct. |
| 10:25:47 | 21 | Q.  Fair to say in addition to learning Spanish from |
| 10:25:50 | 22 | your mother, you also became conversant and fluent in |
| 10:25:54 | 23 | English just from school? |
| 10:25:56 | 24 | A.  Yes. |
| 10:25:56 | 25 | Q.  And can you tell us where you went to high |

A-2656

445

```
              1            E. TORRES - CX BY MR. SAHASRABUDHE

10:25:58      2    school?

10:25:58      3        A.  High school?

10:25:58      4        Q.  Yes.

10:25:59      5        A.  Grover Cleveland High School.

10:26:02      6        Q.  And can you tell the jury who may not be familiar

10:26:06      7    with the Buffalo area where that is?

10:26:07      8        A.  West Side of Buffalo.

10:26:10      9        Q.  Were you born on the West Side of Buffalo?

10:26:16     10        A.  I was born in Rochester and moved to Buffalo when

10:26:21     11    I was ten.

10:26:21     12        Q.  And can you tell -- for those of us who aren't

10:26:21     13    familiar with the Buffalo area.  What are the

10:26:25     14    demographics of the individuals who live on the West

10:26:25     15    Side of Buffalo?

10:26:26     16        A.  Very sizable.

10:26:27     17            MR. FELLE:  I object.  There is no timeframe

10:26:29     18    to that.  20 years ago or today?

10:26:31     19            THE COURT:  Fair enough.  Are you asking him

10:26:33     20    presently or why don't you narrow down the timeframe?

10:26:37     21        Q.  Okay.  Same question but with respect to today,

10:26:39     22    can you tell us generally what the demographics are of

10:26:43     23    the individuals who live on the West Side of Buffalo?

10:26:46     24        A.  I don't know for sure.  It's an even mix.  Plenty

10:26:50     25    of Hispanics and other races.
```

A-2657

446

|  | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|

10:26:51　2　Q.　Fair to say that there is a substantial Hispanic

10:26:55　3　population on this that lives on the West Side of

10:26:58　4　Buffalo?

10:26:58　5　A.　Yes.

10:26:59　6　Q.　Was that fair back in 2004?

10:27:01　7　A.　Yes.

10:27:01　8　Q.　And is it fair to say that the majority of the

10:27:04　9　Hispanic population that lived on the West Side of

10:27:07　10　Buffalo back in 2004 were either native Puerto Ricans or

10:27:12　11　of Puerto Rican descent?

10:27:14　12　A.　Yes.

10:27:14　13　Q.　And let me ask you something, can you tell the

10:27:19　14　difference between a Spanish speaker from Puerto Rico

10:27:21　15　and a Spanish speaker from a different Spanish speaking

10:27:26　16　country?

10:27:26　17　A.　Can I tell the difference?

10:27:28　18　Q.　When they are speaking Spanish?

10:27:30　19　A.　Yes.

10:27:33　20　Q.　Fair to say that Puerto Rican Spanish speaking

10:27:38　21　has a distinct dialect and accent?

10:27:42　22　A.　I can understand it a lot.

10:27:43　23　Q.　Fair to say it's easiest for you to understand

10:27:46　24　Spanish when you're listening to a native Puerto Rican

10:27:50　25　Spanish speaker as opposed to a Spanish speaker from a

A-2658

447

|  | |
|---|---|
| 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
| 10:28:01 2 | country like the Dominican? |
| 10:28:01 3 | A.  Correct. |
| 10:28:02 4 | Q.  And being a native Spanish speaker and growing up |
| 10:28:10 5 | in the house, did you come to find out you could switch |
| 10:28:14 6 | back from speaking English to Spanish? |
| 10:28:16 7 | A.  Yes. |
| 10:28:16 8 | Q.  And you were a police officer for over 30 years; |
| 10:28:19 9 | is that correct? |
| 10:28:19 10 | A.  Yes. |
| 10:28:19 11 | Q.  And as part of your duties, you did general |
| 10:28:22 12 | police work, crime prevention, investigating crimes, |
| 10:28:26 13 | correct? |
| 10:28:26 14 | A.  Correct. |
| 10:28:27 15 | Q.  But also from time to time during your over 30 |
| 10:28:30 16 | years of employment, you were asked to translate when a |
| 10:28:34 17 | witness was either being interviewed or questioned and |
| 10:28:36 18 | that witness only spoke Spanish, correct? |
| 10:28:39 19 | A.  Among other things. |
| 10:28:41 20 | Q.  What other things? |
| 10:28:42 21 | A.  Accidents, domestic violence, just any person on |
| 10:28:47 22 | the street.  In all -- in all parts of the job, there |
| 10:28:55 23 | was always once in a while who didn't speak English and |
| 10:29:01 24 | I assisted. |
| 10:29:01 25 | Q.  And you assisted when those people were Spanish |

A-2659

448

|   |   |
|---|---|
| 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
| 10:29:05 2 | speakers, correct? |
| 10:29:05 3 | A.  Correct. |
| 10:29:07 4 | Q.  And as a general matter, did you find you were |
| 10:29:10 5 | able to effectively communicate to the person being |
| 10:29:14 6 | interviewed what officers were asking you to |
| 10:29:16 7 | communicate? |
| 10:29:16 8 | A.  Yes. |
| 10:29:17 9 | Q.  And they would ask you to communicate in English |
| 10:29:20 10 | but you would communicate it to the person being |
| 10:29:22 11 | interviewed in Spanish, correct? |
| 10:29:24 12 | A.  Correct. |
| 10:29:24 13 | Q.  And did you find you were effective at relaying |
| 10:29:28 14 | what the interviewee or the witness was saying in |
| 10:29:31 15 | Spanish back to your fellow officers in English? |
| 10:29:33 16 | A.  Yes. |
| 10:29:34 17 | Q.  Can you tell us what you would have done if you |
| 10:29:36 18 | felt there was a communication barrier between you and |
| 10:29:38 19 | the person being interviewed? |
| 10:29:40 20 | A.  I'd let that optional that I couldn't understand |
| 10:29:44 21 | him or there were specific words or phrases that I |
| 10:29:48 22 | didn't understand. |
| 10:29:49 23 | Q.  So that is something you would make sure to bring |
| 10:29:52 24 | to your fellow officer's attention, correct? |
| 10:29:55 25 | A.  Absolutely. |

A-2660

449

|  |  |
|---|---|
| | 1 |
| 10:29:56 | 2 |
| 10:30:09 | 3 |
| 10:30:12 | 4 |
| 10:30:20 | 5 |

                    E. TORRES - CX BY MR. SAHASRABUDHE

         Q.  I want to show you what's already in evidence.  I

believe we marked it as different things but this is the

P73 from Mark Vaughn that was taken on November 15th,

2004.

         A.  My screen is blank.

                    THE COURT:  We're just waiting for it to go

up.  I think it's 6A.

                    MR. RUSS:  I can use it if Mr. Felle would

allow it.  I could use his copy.

                    THE COURT:  Mr. Felle, you agree this is 6A,

right?

                    MR. FELLE:  Yeah.  If it's the P73 from that

day, yes.

                    THE COURT:  Okay.

         Q.  And you were asked some questions about this P73

on your direct examination by Mr. Felle, correct?

         A.  Correct.

         Q.  And I believe that you stated that you don't

really have any independent recollection of this

particular encounter you had with Mr. Ortiz at Buffalo

General Hospital on November 15th, 2004?

         A.  Correct.

         Q.  And I guess one thing I want to clarify.  As you

sit there today, do you have any independent

A-2661

|  |  |
|---|---|
| | 1 |
| 10:31:32 | 2 |
| 10:31:36 | 3 |
| 10:31:38 | 4 |
| 10:31:39 | 5 |
| 10:31:42 | 6 |
| 10:31:43 | 7 |
| 10:31:44 | 8 |
| 10:31:46 | 9 |
| 10:31:48 | 10 |
| 10:31:49 | 11 |
| 10:31:51 | 12 |
| 10:31:58 | 13 |
| 10:31:59 | 14 |
| 10:32:01 | 15 |
| 10:32:01 | 16 |
| 10:32:02 | 17 |
| 10:32:03 | 18 |
| 10:32:06 | 19 |
| 10:32:09 | 20 |
| 10:32:10 | 21 |
| 10:32:11 | 22 |
| 10:32:15 | 23 |
| 10:32:20 | 24 |
| 10:32:23 | 25 |

E. TORRES - CX BY MR. SAHASRABUDHE

recollection whatsoever of Mark Stambach being at

Buffalo General Hospital when you met with Mr. Ortiz?

A.  I do not.

Q.  Are there any specific detectives that you do

remember being there?

A.  I do not.

Q.  Okay.  So you couldn't tell us one way or the

other who was there and who wasn't there?

A.  Correct.

Q.  Do you have any reason that believe that Mark

Vaughn would omit to include in this P73 that Detective

Stambach was there when he was not?

        MR. FELLE:  Objection.  Calls for

speculation.

        THE COURT:  Overruled.

A.  I do not.

Q.  No reason to believe that Mark Vaughn would

intentionally leave Detective Stambach's name out of

this P73?

A.  I do not.

Q.  And I guess, do you have any reason to dispute or

to question that anything in this P73 inaccurately

depicts or conveys what was communicated to you by Mr.

Ortiz on that day?

A-2662

1                    E. TORRES - CX BY MR. SAHASRABUDHE

10:32:24  2         A.  So you like me to read that?

10:32:28  3         Q.  No.  I'm just asking you, as you sit there today,

10:32:31  4    is there anything that you can tell us that you know

10:32:35  5    brings you doubt as to whether this actually reflects

10:32:39  6    what Mr. Ortiz told you at Buffalo General Hospital on

10:32:44  7    November 15th?

10:32:45  8         A.  No, there's not.

10:32:46  9         Q.  No reason to doubt what's in the P73?

10:32:49  10        A.  Correct.

10:32:49  11        Q.  If you could, could you read the last paragraph

10:32:55  12   for me?

10:32:56  13        A.  Out loud?

10:32:58  14        Q.  Yes, please.

10:32:59  15        A.  "Ortiz knew the deceased Camacho brothers.  They

10:33:03  16   were members of a cocaine ring that was headed up by

10:33:09  17   Josue and Jose Camacho, phonetically spelled.  Ortiz was

10:33:16  18   also a member of this ring.  The Camacho brothers rented

10:33:20  19   an apartment in Ortiz's name at 142 Jermaine Upper.

10:33:24  20   Ortiz lived there until moving to 19 Heights."

10:33:29  21        Q.  And you can stop there, Mr. Torres.  Any reason

10:33:34  22   to dispute or doubt those were actually statements made

10:33:38  23   by Mr. Ortiz to you at Buffalo General Hospital on

10:33:40  24   November 15th, 2004?

10:33:42  25        A.  No.

A-2663

452

|  | | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:33:52 | 2 | Q.   Now, I think we covered on your direct |
| 10:33:55 | 3 | examination that there came a time where you spoke with |
| 10:33:58 | 4 | Mr. Ortiz again after that interview at Buffalo general, |
| 10:34:02 | 5 | correct? |
| 10:34:02 | 6 | A.   Yes. |
| 10:34:03 | 7 | Q.   And I think we also covered on your direct |
| 10:34:05 | 8 | examination, that was the next day, correct? |
| 10:34:08 | 9 | A.   Yes. |
| 10:34:08 | 10 | Q.   And it was a little unclear in your direct |
| 10:34:14 | 11 | testimony, but do you have an independent recollection |
| 10:34:16 | 12 | of what occurred in that interview while you were |
| 10:34:19 | 13 | present? |
| 10:34:19 | 14 | A.   Some things. |
| 10:34:21 | 15 | Q.   Okay.  Can you tell me what you remember? |
| 10:34:23 | 16 | A.   Just Josue Ortiz being there, doing the |
| 10:34:31 | 17 | translating, it went on for a while.  That is pretty |
| 10:34:38 | 18 | much what I remember generally. |
| 10:34:39 | 19 | Q.   Do you have a specific recollection that Mr. |
| 10:34:42 | 20 | Ortiz confessed to murdering Nelson and Miguel Camacho |
| 10:34:47 | 21 | during that interview? |
| 10:34:48 | 22 | A.   I do not. |
| 10:34:49 | 23 | Q.   You don't remember that? |
| 10:34:50 | 24 | A.   I don't. |
| 10:34:51 | 25 | Q.   Do you have a specific recollection of whether |

A-2664

1          E. TORRES - CX BY MR. SAHASRABUDHE

10:34:54   2    Mr. Ortiz could understand you during that interview?

10:34:59   3        A.  I recall that he could understand me, yes.

10:35:01   4        Q.  And you didn't perceive that he had any issue

10:35:05   5    understanding what you were relaying to him in Spanish,

10:35:08   6    correct?

10:35:08   7        A.  Correct.

10:35:08   8        Q.  How about you understanding him, did you have any

10:35:12   9    issue understanding him?

10:35:13   10       A.  No.

10:35:13   11       Q.  When you were in the interview, did you feel

10:35:16   12   confident that you were accurately conveying to Mark

10:35:19   13   Stambach what Mr. Ortiz was saying to you?

10:35:21   14       A.  Yes.

10:35:25   15       Q.  All right.  Do you recall Mr. Ortiz seeming to be

10:35:28   16   out of touch with reality during that interview?

10:35:32   17       A.  He seemed to pause for seconds longer, that kind

10:35:43   18   of stood out for me.  I remember the long pauses.

10:35:47   19       Q.  But he was nonetheless responding to the

10:35:49   20   questions that you asked?

10:35:50   21       A.  Yes.

10:35:50   22       Q.  And those responses were to the particular

10:35:54   23   question that was being asked of him, correct?

10:35:56   24       A.  Correct.

10:35:57   25       Q.  He wasn't responding to questions that weren't

A-2665

454

| | | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:36:02 | 2 | asked of him? |
| 10:36:03 | 3 | A.  Correct. |
| 10:36:04 | 4 | Q.  I'm going to show you what's already in evidence |
| 10:36:07 | 5 | as Defendant's Exhibit 407.  This is the Miranda rights |
| 10:36:28 | 6 | waiver that was read to Mr. Ortiz, correct?  Or the |
| 10:36:31 | 7 | card, excuse me, not the waiver; is that correct? |
| 10:36:36 | 8 | A.  That is the Spanish version. |
| 10:36:38 | 9 | Q.  And is this your signature at the bottom, Mr. |
| 10:36:41 | 10 | Torres? |
| 10:36:43 | 11 | A.  You'd have to Zoom out a little.  Oh, I see it |
| 10:36:46 | 12 | now on the card, yes.  The copy of the card. |
| 10:36:48 | 13 | Q.  So you signed this card, correct? |
| 10:36:50 | 14 | A.  Yes. |
| 10:36:51 | 15 | Q.  Can you tell this jury that you would have signed |
| 10:36:54 | 16 | this card if you had any indication that Mr. Ortiz |
| 10:36:57 | 17 | didn't understand his rights after they were read to |
| 10:36:59 | 18 | him? |
| 10:37:00 | 19 | A.  I would not have signed it. |
| 10:37:01 | 20 | Q.  And fair to say then that you were under the |
| 10:37:04 | 21 | impression that Mr. Ortiz understood the rights that |
| 10:37:07 | 22 | were being read? |
| 10:37:08 | 23 | A.  Correct. |
| 10:37:09 | 24 | Q.  All right.  And can you just read in Spanish line |
| 10:37:13 | 25 | one of the cards? |

A-2666

1          E. TORRES - CX BY MR. SAHASRABUDHE

10:37:17    2          THE COURT:  Wait a minute.  You want him to

10:37:18    3    read it out loud in Spanish?  Because that is not going

10:37:21    4    to be able to be --

10:37:23    5          Q.  I guess I can do this.  Can you tell us as far as

10:37:26    6    you can see and given your general experience as a

10:37:29    7    police officer, are these Spanish rights the equivalent

10:37:34    8    of the traditional English Miranda Rights?

10:37:37    9          A.  Yes, they are.

10:37:38   10          Q.  And it's a full and complete Miranda rights,

10:37:41   11    correct?

10:37:42   12          A.  Correct.

10:37:42   13          Q.  And fair to say that Mr. Ortiz signed this?

10:37:46   14          A.  Yes.

10:37:56   15          Q.  I'm now going to show you and I guess for

10:37:59   16    clarification purposes, did we put this in the

10:38:05   17    confession at Defendant's 406.  I know it's in evidence.

10:38:08   18          THE COURT:  406 is in evidence.

10:38:10   19          Q.  Okay.  All right.  I'm showing you what's already

10:38:29   20    in evidence as Defendant's Exhibit 406.  Can you tell me

10:38:34   21    where I'm pointing here, are those your initials?

10:38:38   22          A.  They are.

10:38:38   23          Q.  All right.  And can you tell me generally how

10:38:41   24    this would work?  When would you add your initials to a

10:38:44   25    particular page of the confession?

A-2667

456

|  | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:38:45 | 2 | A. At the end of the confession. |
| 10:38:47 | 3 | Q. Okay. Would you read through it page for page? |
| 10:38:50 | 4 | A. Yes. |
| 10:38:52 | 5 | Q. And if a page was accurate, would you -- if a |
| 10:38:55 | 6 | page accurately conveyed what was said to you by the |
| 10:38:59 | 7 | witness in Spanish, would you have added your initials? |
| 10:39:02 | 8 | A. Yes. |
| 10:39:02 | 9 | Q. If it didn't, would you have added your initials? |
| 10:39:05 | 10 | A. No. |
| 10:39:05 | 11 | Q. All right. And fair to say you would have not |
| 10:39:08 | 12 | added your initials to the bottom of page one of this |
| 10:39:11 | 13 | confession if it didn't accurately depict what was said |
| 10:39:14 | 14 | by Mr. Ortiz when he was questioned by Detective |
| 10:39:17 | 15 | Stambach? |
| 10:39:17 | 16 | A. Correct. |
| 10:39:23 | 17 | Q. Same question for page two of Defendant's Exhibit |
| 10:39:27 | 18 | 406. Would you have added your initials to that page if |
| 10:39:30 | 19 | it didn't accurately depict what was communicated by Mr. |
| 10:39:35 | 20 | Ortiz when he was questioned by Detective Stambach? |
| 10:39:38 | 21 | A. I would not have signed that. |
| 10:39:39 | 22 | Q. Same question for page 3. Does that contain your |
| 10:39:46 | 23 | initials? |
| 10:39:47 | 24 | A. My signature. |
| 10:39:49 | 25 | Q. And are those your initials? |

|  | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
| 10:39:50 | 2 | A.  Yes, I see them. |
| 10:39:54 | 3 | Q.  Would you have added your initials to that page |
| 10:39:56 | 4 | if that was not an accurate representation or depiction |
| 10:40:00 | 5 | of what was communicated by Mr. Ortiz and in Spanish in |
| 10:40:04 | 6 | response to the questions posed by Detective Stambach? |
| 10:40:06 | 7 | A.  I would not have added my initials. |
| 10:40:08 | 8 | Q.  And you did sign this confession, correct? |
| 10:40:11 | 9 | A.  Yes. |
| 10:40:11 | 10 | Q.  Is your signature the second signature we see on |
| 10:40:14 | 11 | the signature line? |
| 10:40:15 | 12 | A.  Yes. |
| 10:40:15 | 13 | Q.  And would you have signed that page if you had |
| 10:40:19 | 14 | any doubt whatsoever that the confession accurately |
| 10:40:24 | 15 | portrayed or depicted what was communicated by Mr. Ortiz |
| 10:40:27 | 16 | in that interview room? |
| 10:40:28 | 17 | A.  I would not have signed it. |
| 10:40:43 | 18 | Q.  As you walk out of the interview room, do you |
| 10:40:46 | 19 | recall thinking one way or the other whether or not you |
| 10:40:48 | 20 | had done a good job translating? |
| 10:40:50 | 21 | A.  Yes. |
| 10:40:50 | 22 | Q.  Can you tell the jury what you thought about the |
| 10:40:53 | 23 | job that you did translating for Mr. Ortiz? |
| 10:40:55 | 24 | A.  I remember recalling that I firmly believed that |
| 10:41:03 | 25 | he committed these crimes. |

A-2669

458

|   |   |
|---|---|
| 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
| 10:41:04 2 | Q.  So you do recall that Mr. Ortiz confessed being |
| 10:41:08 3 | the perpetrator of these crimes; is that correct? |
| 10:41:10 4 | A.  Yes. |
| 10:41:10 5 | Q.  And were you convinced when he told you that? |
| 10:41:13 6 | That he was in fact the perpetrator? |
| 10:41:14 7 | A.  I recall firmly believing that he had committed |
| 10:41:18 8 | those crimes.  I recall thinking that to myself upon |
| 10:41:21 9 | leaving. |
| 10:41:21 10 | Q.  And I want to clarify, that was based on a |
| 10:41:24 11 | statement made by Mr. Ortiz, correct? |
| 10:41:26 12 | A.  Correct. |
| 10:41:26 13 | Q.  You weren't convinced by anything that Detective |
| 10:41:30 14 | Stambach did? |
| 10:41:31 15 | A.  Correct. |
| 10:41:31 16 | Q.  It was solely based on a statement made in the |
| 10:41:34 17 | interview room by Josue Ortiz? |
| 10:41:36 18 | A.  Correct. |
| 10:41:38 19 | Q.  All right.  Now I want to ask you something. |
| 10:41:41 20 | When you were present with Detective Stambach and Mr. |
| 10:41:44 21 | Ortiz, did you ever see Detective Stambach raise his |
| 10:41:47 22 | voice to Mr. Ortiz? |
| 10:41:49 23 | A.  Never. |
| 10:41:49 24 | Q.  How would you describe Detective Stambach's tone |
| 10:41:52 25 | during the interview? |

| | 1 | E. TORRES - CX BY MR. SAHASRABUDHE |
|---|---|---|
| 10:41:53 | 2 | A. Professional. |
| 10:41:54 | 3 | Q. How would you describe his demeanor? |
| 10:42:02 | 4 | A. Very good. |
| 10:42:03 | 5 | Q. Did you ever see him threaten Mr. Ortiz? |
| 10:42:06 | 6 | A. Not at all. |
| 10:42:06 | 7 | Q. Did you ever see him use physical force with Mr. |
| 10:42:09 | 8 | Ortiz? |
| 10:42:10 | 9 | A. No. |
| 10:42:10 | 10 | Q. Did you ever see him do anything you perceive to |
| 10:42:13 | 11 | be a trick? |
| 10:42:14 | 12 | A. Nothing at all. |
| 10:42:15 | 13 | Q. Did you ever see him fabricate statements that |
| 10:42:18 | 14 | were made by Mr. Ortiz? |
| 10:42:19 | 15 | A. No. |
| 10:42:20 | 16 | Q. In other words, as far as you observed, |
| 10:42:22 | 17 | everything that Detective Stambach took down were in |
| 10:42:25 | 18 | fact statements that Mr. Ortiz made in that interview |
| 10:42:29 | 19 | room, correct? |
| 10:42:29 | 20 | A. I'm sorry, repeat. |
| 10:42:30 | 21 | Q. As far as you observed, everything that Mr. |
| 10:42:36 | 22 | Stambach wrote down came from Mr. Ortiz in the interview |
| 10:42:39 | 23 | room? |
| 10:42:40 | 24 | A. Yes. |
| 10:42:40 | 25 | Q. Did you see Detective Stambach do anything that |

A-2671

460

|  | E. TORRES - RDX BY MR. FELLE |
|---|---|
| 10:42:43  2 | you would describe him as manipulative? |
| 10:42:45  3 | A.  Not at all. |
| 10:42:46  4 | Q.  Did you see Detective Stambach do anything that |
| 10:42:48  5 | you would describe as coercive in any way? |
| 10:42:50  6 | A.  Not at all. |
| 10:42:54  7 | MR. SAHASRABUDHE:  Your Honor, can I have a |
| 10:42:55  8 | moment to confer with Mr. Russ. |
| 10:42:58  9 | THE COURT:  Sure. |
| 10:43:13  10 | MR. SAHASRABUDHE:  Your Honor, at this time, |
| 10:43:15  11 | I have nothing.  Thank you. |
| 10:43:15  12 | THE COURT:  Thank you, Mr. Sahasrabudhe. |
| 10:43:17  13 | Any further redirect? |
| 10:43:23  14 | MR. FELLE:  Yes, Your Honor. |
| 10:43:25  15 | REDIRECT EXAMINATION BY MR. FELLE: |
| 10:43:26  16 | Q.  Mr. Torres, you told us that you were not aware |
| 10:43:30  17 | that Mr. Stambach met with Mr. Ortiz thirty to forty |
| 10:43:35  18 | minutes before you arrived? |
| 10:43:37  19 | A.  Correct. |
| 10:43:37  20 | Q.  And by the time you arrived, he had spoken to Mr. |
| 10:43:42  21 | Ortiz and generated two pages of notes.  Are you aware |
| 10:43:45  22 | of that? |
| 10:43:45  23 | A.  I don't recall that. |
| 10:43:47  24 | Q.  We've had marked in evidence Exhibit 10.  They |
| 10:43:50  25 | are notes that Mr. Stambach claims were based on the |

A-2672

461

|  |  |  |
|---|---|---|
|  | 1 | E. TORRES - RDX BY MR. FELLE |
| 10:43:53 | 2 | conversations he had with Mr. Ortiz before you got |
| 10:43:56 | 3 | there.  Are you aware of that? |
| 10:43:57 | 4 | A.  I'm aware of it now. |
| 10:43:59 | 5 | Q.  And so -- well, you came there for the purpose of |
| 10:44:04 | 6 | strictly translating, correct? |
| 10:44:06 | 7 | A.  Correct. |
| 10:44:06 | 8 | Q.  And all that was going out when you got there, |
| 10:44:10 | 9 | Stambach was asking my client questions, pointing to his |
| 10:44:13 | 10 | notes, and my client was answering, correct? |
| 10:44:15 | 11 | A.  Correct. |
| 10:44:16 | 12 | Q.  And so those notes are similar to the confession |
| 10:44:20 | 13 | stated by my client? |
| 10:44:23 | 14 | MR. SAHASRABUDHE:  Your Honor, I ask that he |
| 10:44:25 | 15 | be shown the document if he is going to ask questions |
| 10:44:27 | 16 | about it. |
| 10:44:28 | 17 | THE COURT:  Well, doesn't necessarily have |
| 10:44:30 | 18 | to.  I mean, as long as counsel knows what he is |
| 10:44:32 | 19 | referring to.  Do you have a copy? |
| 10:44:35 | 20 | MR. SAHASRABUDHE:  I do. |
| 10:44:36 | 21 | THE COURT:  Okay. |
| 10:44:38 | 22 | Q.  We just went over the confession, right?  That |
| 10:44:40 | 23 | you took from Mr. Ortiz, correct? |
| 10:44:42 | 24 | A.  I'm sorry, what? |
| 10:44:44 | 25 | Q.  You just answered questions about the confession? |

A-2673

462

|   | E. TORRES - RDX BY MR. FELLE |
|---|---|
| 1 | |

10:44:47 2    A.   Yes.

10:44:48 3    Q.   But in fairness, you weren't aware of that full

10:44:52 4    conversation that had occurred between Stambach and my

10:44:55 5    client before you got there?

10:44:56 6    A.   I don't recall.

10:44:58 7    Q.   And Mr. Stambach admits that he made these notes,

10:45:01 8    Exhibit 10.  And in those notes, there is reference for

10:45:05 9    example, that there was a big TV in the apartment where

10:45:08 10   the Camacho brothers were killed.  Was that something

10:45:12 11   that was gone over during the actual confession?  Do you

10:45:14 12   recall that?

10:45:15 13   A.   I don't recall that.

10:45:17 14   Q.   Let me show you Exhibit 10 in evidence.  Do you

10:45:28 15   see all of the writing on that document?

10:45:30 16   A.   I do.

10:45:30 17   Q.   And Mr. Stambach has testified that all of that

10:45:33 18   writing is his.  Now, let me ask you.  There was a

10:45:36 19   question there where it said "the TV was big and the TV

10:45:40 20   was on."  Do you see that?

10:45:42 21   A.   Yes.

10:45:43 22   Q.   Let me ask you this, Mr. Torres, we now know that

10:45:47 23   my client was completely innocent of this crime, is

10:45:51 24   there any way possible that my client would have known

10:45:53 25   that there was a TV?

A-2674

| | | |
|---|---|---|
| | 1 | E. TORRES - RCX BY MR. SAHASRABUDHE |
| 10:45:54 | 2 | MR. SAHASRABUDHE:  Objection, Your Honor. |
| 10:45:55 | 3 | THE COURT:  Sustained. |
| 10:45:56 | 4 | Q.  The details and the notes of Mr. Stambach would |
| 10:45:59 | 5 | only be known by somebody who committed the crimes. |
| 10:46:02 | 6 | Would you agree with that? |
| 10:46:03 | 7 | MR. SAHASRABUDHE:  Objection, Your Honor. |
| 10:46:03 | 8 | Again, calls for speculation. |
| 10:46:05 | 9 | THE COURT:  Well, can you answer that |
| 10:46:06 | 10 | question? |
| 10:46:07 | 11 | THE WITNESS:  Can you repeat it? |
| 10:46:08 | 12 | Q.  Sure.  The details in the confession that you |
| 10:46:11 | 13 | took and in the notes that Mr. Stambach took and wrote, |
| 10:46:15 | 14 | those are details that would only be known by somebody |
| 10:46:17 | 15 | who committed the crimes, correct? |
| 10:46:20 | 16 | A.  Yes. |
| 10:46:22 | 17 | Q.  And we know Mr. Ortiz did not commit the crime, |
| 10:46:25 | 18 | correct? |
| 10:46:26 | 19 | A.  Yes. |
| 10:46:31 | 20 | MR. FELLE:  That's all I have.  Thank you. |
| 10:46:32 | 21 | THE COURT:  Thank you, Mr. Felle.  Any |
| 10:46:34 | 22 | further cross? |
| 10:46:34 | 23 | MR. SAHASRABUDHE:  Very briefly, Your Honor. |
| 10:46:34 | 24 | RECROSS-EXAMINATION BY MR. SAHASRABUDHE: |
| 10:46:49 | 25 | Q.  I want to make one thing very clear.  Was there |

|        |    |                                                          |
|--------|----|----------------------------------------------------------|
|        | 1  | E. TORRES - RCX BY MR. SAHASRABUDHE                      |
| 10:46:52 | 2  | anything inappropriate or improper about Mr. Ortiz's    |
| 10:46:56 | 3  | confession given on November 16th, 2004?                |
| 10:47:00 | 4  | MR. FELLE:  Objection, Your Honor.                      |
| 10:47:01 | 5  | THE COURT:  Overruled.                                  |
| 10:47:03 | 6  | A.  No.                                                 |
| 10:47:05 | 7  | MR. SAHASRABUDHE:  I have nothing further.              |
| 10:47:06 | 8  | THE COURT:  Okay.  You can step down, sir.             |
| 10:47:08 | 9  | Thank you.  Why don't you put your mask on and watch the |
| 10:47:12 | 10 | Plexiglass.  Your head is right near it, there.  Okay.  |
| 10:47:15 | 11 | Thank you.                                              |
| 10:47:16 | 12 | THE WITNESS:  Thank you.                                |
| 10:47:18 | 13 | THE COURT:  All right.  Ladies and                     |
| 10:47:19 | 14 | gentlemen, we're going to take a break.  I would remind |
| 10:47:21 | 15 | you not to talk about the case among yourselves or with |
| 10:47:25 | 16 | anybody else.  Let's plan to resume back here at 11:00  |
| 10:47:28 | 17 | o'clock.  Thank you, everybody.                        |
| 10:47:46 | 18 | (Whereupon the jury is escorted from the               |
| 10:47:49 | 19 | courtroom.)                                            |
| 10:48:01 | 20 | THE COURT:  All right.  Mr. Felle, does the            |
| 10:48:02 | 21 | Plaintiff have any further witnesses or proof?         |
| 10:48:04 | 22 | MR. FELLE:  We do not, Your Honor.                     |
| 10:48:05 | 23 | THE COURT:  All right.  What is the defense            |
| 10:48:07 | 24 | going to do?                                           |
| 10:48:09 | 25 | MR. SAHASRABUDHE:  Your Honor, at this time,           |

A-2676

465

|  | |
|--|--|
| 1 | E. TORRES - RCX BY MR. SAHASRABUDHE |
| 10:48:11 2 | we're going to move on behalf of Mr. Stambach for |
| 10:48:16 3 | judgment as a matter of law.  Pursuant to the Federal |
| 10:48:18 4 | Rule of Civil Procedure 50A, on each of the three |
| 10:48:22 5 | remaining claims that are still pending against |
| 10:48:26 6 | Detective Stambach and in the alternative, in the event |
| 10:48:29 7 | that judgment as a matter of law is not granted on any |
| 10:48:33 8 | of the three claims, we would move for judgment as a |
| 10:48:40 9 | matter of law pursuant to the Federal Rule of Civil |
| 10:48:45 10 | Procedure 50A on the claim for punitive to answer.  I'm |
| 10:48:48 11 | happy to go through each claim one by one, I can do it |
| 10:48:50 12 | all at once.  I guess I defer to the court on how you |
| 10:48:54 13 | prefer to handle that at this time. |
| 10:48:56 14 | THE COURT:  I think -- why don't you hold |
| 10:48:57 15 | your powder there so to speak you made.  I don't think |
| 10:49:02 16 | for purposes of the record that you need to go through |
| 10:49:06 17 | them.  And my intention is to reserve a decision on the |
| 10:49:08 18 | motion so, if we get a verdict and you need to make more |
| 10:49:13 19 | detailed arguments at that point, you've reserved your |
| 10:49:16 20 | right to do that. |
| 10:49:17 21 | MR. SAHASRABUDHE:  Okay.  Great. |
| 10:49:18 22 | THE COURT:  All right.  Mr. Felle? |
| 10:49:19 23 | MR. FELLE:  I just didn't hear an answer to |
| 10:49:21 24 | the question.  Do they have any proof? |
| 10:49:24 25 | THE COURT:  He is making the motion.  He |

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 10:49:27 | 2 | would first make the motion right now.  I take it the |
| 10:49:29 | 3 | Plaintiff opposes that motion? |
| 10:49:31 | 4 | MR. FELLE:  Absolutely, Your Honor.  The |
| 10:49:32 | 5 | Plaintiff opposes that.  I think the proof has been more |
| 10:49:35 | 6 | than adequate. |
| 10:49:36 | 7 | THE COURT:  All right.  I'll reserve a |
| 10:49:37 | 8 | decision on the defense motions.  With that being said, |
| 10:49:40 | 9 | does the defense have any proof? |
| 10:49:41 | 10 | MR. RUSS:  No, Your Honor.  As we advised |
| 10:49:44 | 11 | the Court all along, we've try to keep it moving by |
| 10:49:50 | 12 | using our witness testimony during the Plaintiff's case, |
| 10:49:54 | 13 | so there is nothing further to present. |
| 10:49:56 | 14 | THE COURT:  So what we'll do is we'll take a |
| 10:49:58 | 15 | break, and when we have the jury come back out, I'll |
| 10:50:01 | 16 | have Mr. Felle confirm on the record the Plaintiff has |
| 10:50:04 | 17 | no further proof.  And I'll turn to the defense to |
| 10:50:07 | 18 | return to the same and we can move to closing arguments. |
| 10:50:10 | 19 | Which means I need to know, Mr. Felle, what you're going |
| 10:50:13 | 20 | to be asking for or what you're asking for permission to |
| 10:50:16 | 21 | state to the jury in terms of monetary damages. |
| 10:50:20 | 22 | MR. FELLE:  Sure, Your Honor.  We did a |
| 10:50:32 | 23 | little research on it based on the Court's opinion that |
| 10:50:35 | 24 | we would be allowed to talk about an amount stated.  I |
| 10:50:38 | 25 | intend to ask the jury for an award that would fairly |

1                    J. ORTIZ VS. M. STAMBACH

10:50:44   2   and justify compensate Mr. Ortiz and I ask them to grant

10:50:48   3   an amount of one thousand per day for the time he spent

10:50:52   4   in jail for 10 years and 22 days.

10:50:56   5              THE COURT:  Do you have a total figure on

10:51:00   6   how it would be going to be?

10:51:00   7              MR. FELLE:  3.6 million dollars,

10:51:03   8   thereabouts.

10:51:03   9              THE COURT:  So just that I'm clear.  Your

10:51:05  10   plan is to -- in terms of talking about any specifics,

10:51:07  11   in terms of a monetary award, your plan is to ask the

10:51:10  12   jury to award $1000 a day for the time Mr. Ortiz spent

10:51:15  13   incarcerated which would amount to 3.6 million dollars,

10:51:20  14   correct?

10:51:20  15              MR. FELLE:  Approximately.

10:51:21  16              THE COURT:  But you're not planning to ask

10:51:23  17   for any -- you're not planning to make my further

10:51:28  18   specific statement in terms of a monetary amount?

10:51:32  19              MR. FELLE:  I am not, Your Honor.  To answer

10:51:34  20   your question.

10:51:35  21              THE COURT:  Okay.

10:51:35  22              MR. FELLE:  My understanding is that as much

10:51:38  23   as I can talk about, why they may indicate yes to

10:51:42  24   punitive damages.  I don't plan to get into any damages

10:51:46  25   at this point.  It's a bifurcated trial and we would

```
         1              J. ORTIZ VS. M. STAMBACH

10:51:50 2    turn to that for a very abbreviated discussion.  That is

10:51:57 3    my understanding.

10:51:58 4              THE COURT:  They will be answering yes or no

10:51:59 5    on punitive damages, not amounts.  Okay, that is fine.

10:52:03 6    I'll allow you to do that with the cautionary

10:52:05 7    instruction that I enclosed in my final instructions.

10:52:09 8              MR. FELLE:  Your Honor, there is just one

10:52:10 9    other issue and I don't mean to cut you off.

10:52:13 10             THE COURT:  No, go ahead.

10:52:14 11             MR. FELLE:  I just want to avoid a situation

10:52:16 12   that we had in openings, you know, that borders on the

10:52:20 13   potential for a mistrial.  In the opening statement, Mr.

10:52:24 14   Russ made a comment to the jury and he said Mr. Ortiz

10:52:28 15   may have not pulled the trigger on the gun that killed

10:52:34 16   the Camacho brothers and, "but he is not innocent."  And

10:52:39 17   I just want to remind the Court when we have in

10:52:40 18   stipulation numbers 9 and 14, "Josue Ortiz was not

10:52:45 19   involved in the murders of Jose and Miguel Camacho."

10:52:50 20   And No. 14, Mr. Ortiz demonstrated that he was actually

10:52:54 21   innocent of the murders of Nelson and Miguel Camacho.

10:52:57 22   And I think it's -- not just only disingenuous, I think

10:53:00 23   it's really improper for Mr. Russ to now invade the

10:53:05 24   stipulation he agreed to.  And I'm just saying this in

10:53:08 25   an abundance of caution, nobody wants a mistrial at this
```

1                    J. ORTIZ VS. M. STAMBACH

10:53:11   2    point in the case.  The stip is clear, and it was agreed

10:53:14   3    upon based on the stip, Your Honor, relied on that stip

10:53:18   4    and precluded us from bringing in certain evidence in

10:53:21   5    the trial.  And so I just don't want Mr. Russ to get up

10:53:24   6    and say my client was in any way involved in this crime.

10:53:27   7    That would be improper in my opinion.  It's in an

10:53:30   8    abundance of caution that I bring it up.

10:53:33   9                    THE COURT:  Okay.  And I think in fairness

10:53:35  10    my understanding of what Mr. Russ said during the

10:53:39  11    opening was related to Mr. Ortiz's alleged to know in

10:53:45  12    drug trafficking with the Camacho brothers, not involved

10:53:47  13    if the murders.  And I think there is evidence in the

10:53:49  14    record that Mr. Ortiz was involved in drug trafficking

10:53:52  15    with the Camacho brothers.  So that is fair game during

10:53:56  16    closing arguments.

10:53:58  17                    MR. RUSS:  And I appreciate your Honor's

10:54:01  18    interpretation of that but it's in the same sense of

10:54:03  19    pulling the trigger of the AK-47.  I think there is a

10:54:06  20    strong inference that he is trying to make, and I don't

10:54:09  21    think that is fair.

10:54:10  22                    THE COURT:  Well, I don't agree with your

10:54:13  23    interpretation of the opening statement.  As I said, I

10:54:16  24    would have preferred the language not to have been that

10:54:19  25    he was distributing cocaine for the Camacho brothers,

A-2681

470

```
                    J. ORTIZ VS. M. STAMBACH
10:54:21   2   because I don't think that there's evidence in the
10:54:24   3   record suggesting that.  I think the evidence in the
10:54:26   4   record about Mr. Ortiz's alleged involvement in the drug
10:54:30   5   trafficking with the Camacho brothers is what is
10:54:33   6   contained in Mr. Ortiz's alleged statement.  So I guess
10:54:39   7   Mr. Russ, to what extent were you planning to get into
10:54:43   8   that again during closing arguments?
10:54:45   9               MR. RUSS:  Really, I wasn't, Your Honor.
10:54:46  10   Now I'm wondering whether I should.  No, I've been doing
10:54:50  11   this a long time.  I know the boundaries.  I will stay
10:54:54  12   within the boundaries.
10:54:55  13               THE COURT:  So hopefully, there won't be an
10:54:57  14   issue.  Anything else, Mr. Felle?
10:54:59  15               MR. FELLE:  No.  That's it, Your Honor.
10:55:00  16               THE COURT:  Anything else from the defense?
10:55:02  17               MR. RUSS:  No, Your Honor, thank you.
10:55:03  18               THE COURT:  Okay.  So why don't we plan,
10:55:06  19   we'll start closings?  I'll probably -- I've given you
10:55:09  20   each 45 minutes, we may take the lunch break before the
10:55:15  21   final instructions given where we are with time.  We'll
10:55:18  22   get things set up with the closing arguments.  At this
10:55:22  23   time point, you've been walking around without masks and
10:55:28  24   asking witnesses questions.  Why don't you put the other
10:55:30  25   podium there?  And if you want to give your closings
```

A-2682

471

|  |  |
|---|---|
| | J. ORTIZ VS. M. STAMBACH |

10:55:34  2    without masks, that's fine.

10:55:36  3              All right.  Thank you, everybody.  Let's

10:55:39  4    plan to hopefully go at 11:00.

11:05:29  5              (Whereupon, there was a break in the

11:05:29  6    proceedings.)

11:05:29  7              THE COURT:  All right.  Mr. Felle, is the

11:05:31  8    Plaintiff ready?

11:05:31  9              MR. FELLE:  I'm sorry?

11:05:32  10             THE COURT:  Is the Plaintiff ready?

11:05:34  11             MR. FELLE:  Yes, we are, Your Honor.

11:05:35  12             THE COURT:  Mr. Russ, is the defense ready?

11:05:38  13             MR. RUSS:  Yes, we are, Your Honor.

11:05:40  14             THE COURT:  All right.  Let's bring our jury

11:05:42  15    in.

11:06:29  16             All right.  Welcome back, everybody.

11:06:31  17    Everybody can have a seat.  So Mr. Felle, can you put

11:06:35  18    your mask on, please?  Mr. Felle, any further proof in

11:06:53  19    behalf of the Plaintiffs?

11:06:53  20             MR. FELLE:  No additional proof, Your Honor.

11:06:55  21             THE COURT:  Mr. Russ, any additional proof?

11:06:57  22             MR. RUSS:  We have no additional proof, Your

11:06:58  23    Honor.  And we rest.

11:06:59  24             (Whereupon, the closing arguments were

11:06:59  25    previously transcribed and filed at Docket No. 166)

A-2683

472

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 12:14:21 | 2 | Ladies and gentlemen, I'm going to take a |
| 12:14:22 | 3 | brief break and see where your lunches are because if |
| 12:14:25 | 4 | they are here, we'll have you take lunch before I give |
| 12:14:28 | 5 | my final instructions.  But why don't we escort the jury |
| 12:14:33 | 6 | out and we'll have the clerk escort them. |
| 12:14:38 | 7 | THE CLERK:  Certainly, judge. |
| 12:14:39 | 8 | (Whereupon the jury is escorted from the |
| 12:14:41 | 9 | courtroom.) |
| 12:15:11 | 10 | THE COURT:  All right.  I'm concerned that |
| 12:15:15 | 11 | Mr. Felle incorrectly suggested to the jury what the law |
| 12:15:18 | 12 | is with respect to the Fifth Amendment claim.  That in |
| 12:15:21 | 13 | fact, it could be found solely based on not providing |
| 12:15:27 | 14 | Miranda, which is not the law.  And in fact, I'll give |
| 12:15:29 | 15 | everybody a cite.  Deshawn E., by Charlotte E., versus |
| 12:15:38 | 16 | Safir 156 F.3d 340, page 346, second circuit, case from |
| 12:15:45 | 17 | 1998, which stands for that very proposition that the |
| 12:15:48 | 18 | failure to provide Miranda warnings in and of itself |
| 12:15:52 | 19 | does not constitute a Fifth Amendment claim.  So what |
| 12:15:55 | 20 | I'm proposing to do, there was no objection to Mr. |
| 12:15:59 | 21 | Felle, his closing.  But in my view, I think he crossed |
| 12:16:05 | 22 | the line in terms of instructing the jury on the law.  I |
| 12:16:10 | 23 | didn't interrupt because there was no objection, but it |
| 12:16:13 | 24 | was far from what I would typically allow an attorney to |
| 12:16:16 | 25 | do during a closing argument.  Nonetheless, you did it |

A-2684

473

1          J. ORTIZ VS. M. STAMBACH

12:16:20   2   at your own risk, which is that you, unfortunately,

12:16:24   3   wrongfully instructed the jury as to what the Fifth

12:16:27   4   Amendment claim is.  So with the Fifth Amendment claim,

12:16:30   5   what I'm going to do is add a sentence.

12:16:35   6          MR. RUSS:  Your Honor, while you're looking

12:16:36   7   up your sentence, may I just add that we were elbowing

12:16:41   8   each other trying to decide whether to object at that

12:16:44   9   moment or not.  We decided not to object at that moment,

12:16:47  10   and I was going to ask for an instruction that an

12:16:51  11   instruction be added to the jury charge which it appears

12:16:55  12   as if the Court is going to do.

12:16:57  13          THE COURT:  Okay.  Well, what I'm suggesting

12:16:59  14   we do is, in the Fifth Amendment claim after the first

12:17:02  15   paragraph, that discusses the three elements says the

12:17:06  16   parts have stipulated that the Plaintiff's confession

12:17:09  17   was used in the criminal proceeding against him, and the

12:17:12  18   next sentence is whether that confession was obtained by

12:17:16  19   coercion is a question of fact for you the jury to

12:17:19  20   decide.  And then add the following sentence -- two

12:17:26  21   sentences.  "In addition, you have heard evidence

12:17:30  22   regarding the administration of Miranda warnings to the

12:17:32  23   Plaintiff.  While you may take that evidence into

12:17:36  24   account in making your factual determinations, I

12:17:39  25   instruct you that Miranda violations absent coercion do

A-2685

474

```
              1              J. ORTIZ VS. M. STAMBACH

12:17:44      2   not recognize to the level of a constitutional violation

12:17:47      3   actionable under Section 1983."  And that in fact is a

12:17:51      4   direct quote from the Second Circuit case, Jocks versus

12:17:56      5   Tavernier, 316 F.3d 128, page 138, Second Circuit case

12:18:02      6   from 2003.  So I guess I'll start with Mr. Russ.  Does

12:18:07      7   that address your concerns?

12:18:08      8              MR. RUSS:  Yes, it does, Your Honor.  Thank

12:18:10      9   you very much.

12:18:11     10              THE COURT:  Mr. Felle, any objection to

12:18:13     11   that?

12:18:13     12              MR. FELLE:  No objection, Your Honor.

12:18:13     13              THE COURT:  All right.  So with that, what

12:18:17     14   is the deal with our lunches, Dawn?

12:18:20     15              THE CLERK:  They still have not arrived.  I

12:18:24     16   requested a 12:30 delivery.

12:18:26     17              THE COURT:  Why don't we do this.  My

12:18:29     18   suggestion is, I'll give my first part of my

12:18:32     19   instructions before I get to the specific instructions.

12:18:37     20   I think they'll be a little bit more than an hour.  I'll

12:18:41     21   take a break after I do the general instructions and

12:18:44     22   we'll take a thirty-minute break and come back for the

12:18:47     23   specific instructions.  Everybody is shaking your heads,

12:18:50     24   yes, any concerns?

12:18:51     25              MR. FELLE:  I agree with you, judge.
```

1                    J. ORTIZ VS. M. STAMBACH

12:18:52   2              THE COURT:  Mr. Russ?

12:18:53   3              MR. RUSS:  Sounds like a good plan, Your

12:18:55   4    Honor.  Thank you.

12:18:55   5              THE COURT:  For the record, my law clerk

12:18:57   6    distributed the updated verdict sheet which I think

12:19:00   7    conforms with our discussion that we discussed earlier.

12:19:03   8    Does everybody agree?

12:19:04   9              MR. FELLE:  Yes, we received it over the

12:19:09  10    weekend.  The language and --

12:19:10  11              THE COURT:  With the change to -- or

12:19:15  12    question six.  On the punitive damages, it now says in

12:19:20  13    favor of the Plaintiff.  Okay.  Let's bring our jury in.

12:19:30  14              (Whereupon the jury is escorted in the

12:19:31  15    courtroom.)

12:20:12  16              THE COURT:  All right.  Ladies and

12:20:14  17    gentlemen, welcome back.  Everyone can have a seat.  So

12:20:17  18    ladies and gentlemen, the lunches are not here yet but

12:20:19  19    will be here soon.  And what I'm going to do is you'll

12:20:21  20    see my instructions are divided into two parts.  One is

12:20:24  21    general instructions on the law that applies to civil

12:20:27  22    cases.  I give these instructions in all civil cases

12:20:30  23    that are handled in front of me.  And then the second

12:20:33  24    part of the instructions are more specific to this case

12:20:35  25    in particular and set forth each cause of action, the

A-2687

476

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 12:20:39 | 2 | elements of each cause of action.  What I'm going to do |
| 12:20:42 | 3 | is give you my general instructions now.  And then we'll |
| 12:20:47 | 4 | take a break.  Presumably, the lunches will be here at |
| 12:20:51 | 5 | that point.  And we'll take about a half-hour for lunch, |
| 12:20:54 | 6 | you can't deliberate yet until you get all of my |
| 12:20:57 | 7 | instructions.  But we'll resume after your lunch break |
| 12:21:02 | 8 | and I'll give you my specific instructions that apply to |
| 12:21:05 | 9 | this case. |
| 12:21:05 | 10 | With that being said, ladies and gentlemen, |
| 12:21:07 | 11 | following summations, it now becomes my duty to |
| 12:21:10 | 12 | instruct, that is, charge you, as to the law applicable |
| 12:21:14 | 13 | to this case.  Before doing so, I would like to commend |
| 12:21:17 | 14 | you, ladies and gentlemen, for your patience and |
| 12:21:19 | 15 | attention during the course of the trial.  You have now |
| 12:21:23 | 16 | received all of the evidence that is to be presented in |
| 12:21:26 | 17 | this case.  And through the attorney's closing |
| 12:21:29 | 18 | arguments, you have learned the conclusions which each |
| 12:21:33 | 19 | side believes should be drawn from this evidence.  It is |
| 12:21:37 | 20 | now very important that you listen carefully to my final |
| 12:21:41 | 21 | instructions to you. |
| 12:21:43 | 22 | A lawsuit is a civilized method of |
| 12:21:47 | 23 | determining differences between parties.  It is basic to |
| 12:21:50 | 24 | the administration of any system of justice that the |
| 12:21:54 | 25 | determination of both the law and the facts be made |

1          J. ORTIZ VS. M. STAMBACH

12:21:59  2   fairly and honestly.  You as the jury and I as the

12:22:03  3   Judge, therefore, have a very important

12:22:06  4   responsibility -- to ensure that a just result is

12:22:12  5   reached in the determination of the differences between

12:22:16  6   the Plaintiff and the Defendant in this case.

12:22:21  7          We've have now arrived at that phase of your

12:22:23  8   work where you will be instructed on the law and then

12:22:25  9   retire to the jury room for your final deliberations.

12:22:30  10  You will find that my instructions, as I just indicated,

12:22:37  11  are divided into two main parts.  First, a general

12:22:40  12  statement of the law applicable to all jury trials in

12:22:44  13  all cases.  And then second a statement of the law that

12:22:47  14  is particularly applicable to the claim in this case.

12:22:50  15          Now, during their summations, Mr. Felle and

12:22:52  16  Mr. Russ have suggested to you certain inferences and

12:22:56  17  conclusions that you might reasonably and logically draw

12:22:59  18  from the evidence.  The summations of the attorneys are,

12:23:03  19  of course, not evidence.  However, if the arguments of

12:23:08  20  the parties strike you as reasonable and logical and

12:23:11  21  supported by the evidence, you may, if you so conclude,

12:23:15  22  adopt them.  On the other hand, if you find such

12:23:20  23  arguments to be unreasonable or illogical or unsupported

12:23:24  24  by the evidence, you may, if you so conclude, reject

12:23:31  25  them.  In the last analysis, it is your function as the

1          J. ORTIZ VS. M. STAMBACH

12:23:34  2   jury to draw your own inferences and conclusions from

12:23:38  3   the evidence as you recollect the evidence and as you

12:23:42  4   find such evidence credible and believable.

12:23:46  5          Keep in mind that you as the jury are the

12:23:49  6   sole and exclusive judges of the facts.  It is your duty

12:23:56  7   to decide each and every issue of fact which has arisen

12:24:01  8   during the course of the trial.  No one, not the

12:24:05  9   attorneys, not the Court, may presume to tell you how

12:24:09  10  the issues of fact should be decided.  I repeat, you and

12:24:15  11  you alone are the sole and exclusive judges of the

12:24:20  12  facts.

12:24:22  13         The credibility, that is the believability

12:24:25  14  of each witness is itself an issue of fact solely and

12:24:31  15  exclusively within your province as a jury.  With

12:24:36  16  respect to each witness, you must determine to what

12:24:41  17  extent you find that witness's testimony credible and

12:24:44  18  acceptable.  With respect to any individual witness, you

12:24:48  19  may accept in whole or in part such testimony as you

12:24:53  20  find credible and worthy of belief and reject in whole

12:24:58  21  or in part such testimony as you find unworthy of credit

12:25:03  22  or belief.

12:25:05  23         As I have stated, you, as the jurors, are

12:25:08  24  the sole and exclusive judges of the facts.  On the

12:25:12  25  other hand, I am the sole and exclusive judge of the

J. ORTIZ VS. M. STAMBACH

law.  These responsibilities are separate and distinct.
And each is of equal importance.  As the judge of the
law, it has been my function to regulate the course of
the trial.  And to determine what evidence under the law
was admissible.  My rulings in each instance were based
solely upon the law.  My other function is of course to
instruct you on the law.  Specifically applicable to
this case.

Now, as I say, my instructions to you on the
law must be accepted by you whether you agree with them
or not.  If you have any ideas of your own of what the
law is, or what you think it should be, it is now your
duty, pursuant to the oath that you took as jurors, to
disregard your own ideas of the law and accept the law
exactly as I give it to you.  Please remember that all
of us, I, as the Judge, you as the jury, counsel, the
Plaintiff and the Defendant, we are all bound by the
laws of our country exactly as those laws provide.

During the course of the trial, I have tried
to preside impartially and not express an opinion one
way or the other as to what you should find the facts to
be.  In the course of the trial, it has been necessary
for me from time to time to rule on the admission of
evidence.  And on motions made with respect to the

1          J. ORTIZ VS. M. STAMBACH

12:26:58   2   applicable law.  You must not infer from any such ruling

12:27:04   3   that I have made or from anything that I have said

12:27:08   4   during the course of this trial or from these

12:27:12   5   instructions or from the manner in which they are given

12:27:16   6   that I hold any views for or against the Plaintiff or

12:27:21   7   for or against the Defendant.  In that regard, any views

12:27:27   8   of mine would, in any event, not be relevant.  Since it

12:27:31   9   is your recollection of the evidence and your

12:27:35   10  determination of the issues of fact which controls.

12:27:40   11  With respect to my instructions, you should not single

12:27:43   12  out a particular sentence or any individual point and

12:27:47   13  ignore the rest.

12:27:49   14          Similarly, if, in the interest of advocacy,

12:27:52   15  the attorneys have done or said anything which you deem

12:27:55   16  to be objectionable you must not let such feeling

12:28:02   17  interfere with your primary duty here, which is to judge

12:28:06   18  the facts impartially and to be fair to both the

12:28:08   19  Plaintiff and the Defendant.

12:28:11   20          It is the duty of the attorneys to offer

12:28:14   21  evidence and press objections on behalf of their side.

12:28:20   22  It is my function to cut off counsel from an improper

12:28:24   23  line of argument or questioning, to strike offending

12:28:29   24  remarks, and to admonish counsel when I think it is

12:28:32   25  necessary.  But you should draw no inference against the

1          J. ORTIZ VS. M. STAMBACH

12:28:36   2   attorney or the attorney's client.  It is irrelevant

12:28:42   3   whether you like a lawyer or whether you believe I like

12:28:46   4   a lawyer.

12:28:48   5          During the course of the trial, you may have

12:28:50   6   heard some conversations between myself and the lawyers

12:28:54   7   at the bench.  Bear in mind that such exchanges between

12:28:57   8   myself and the lawyers did not constitute evidence, and

12:29:03   9   to the extent that you may have overheard anything, it

12:29:06   10  must be disregarded by you.

12:29:09   11         On occasion, I may have asked a question to

12:29:11   12  a witness.  When I did so, it was because I believed it

12:29:16   13  was necessary to clarify some particular point.  My

12:29:21   14  question to the witness and the witness's answer may be

12:29:24   15  considered by you just as you consider any other

12:29:27   16  question and answer.  However, you should not attach any

12:29:33   17  special weight to the testimony simply because I may

12:29:37   18  have asked the question.  From time to time there have

12:29:41   19  been spectators in the courtroom.  Any comments made by

12:29:45   20  the spectators which you may have overheard are of

12:29:48   21  course not evidence in this case and must be

12:29:53   22  disregarded.

12:29:54   23         At times during the trial, I sustained

12:29:57   24  objections to questions asked without permitting the

12:30:00   25  witness to answer or, where an answer was made, on

1        J. ORTIZ VS. M. STAMBACH

12:30:04  2   occasion, instructed that it be stricken from the record

12:30:08  3   and that you disregard the answer.  You may not draw any

12:30:14  4   inference from an unanswered question.  Nor may you

12:30:19  5   consider testimony which has been stricken in reaching

12:30:23  6   your decision.  The law requires that your decision be

12:30:27  7   made solely upon the pertinent evidence before you.  The

12:30:32  8   items I have excluded from your consideration were

12:30:35  9   included because I determined that they were not

12:30:39  10  admissible.

12:30:41  11          In reaching your verdict, you may consider

12:30:44  12  only the testimony and exhibits received into evidence,

12:30:49  13  and certain things are not evidence and you may not

12:30:51  14  consider them in deciding what the facts are.  I will

12:30:54  15  list them for you:

12:30:55  16          1.  Arguments and unsworn statements by the

12:31:00  17  lawyers are not evidence.  What the lawyers may have

12:31:06  18  said in their closing arguments just like what they said

12:31:09  19  in opening statements, and at other times during the

12:31:13  20  trial was intended to help you interpret the evidence,

12:31:17  21  but it is not evidence.  If the facts as you remember

12:31:21  22  them differ from the way they have been stated in

12:31:25  23  closing arguments, your memory of the facts controls.

12:31:32  24          2.  Questions and objections by the

12:31:34  25  attorneys are not evidence.  Evidence consists of a

A-2694

483

|  |  |  |
|--|--|--|
| | 1 | J. ORTIZ VS. M. STAMBACH |
| 12:31:41 | 2 | question and an answer.  Not just the question.  As to |
| 12:31:45 | 3 | objections, the attorneys have a duty to object when |
| 12:31:49 | 4 | they believe a question is improper under the rules of |
| 12:31:54 | 5 | evidence.  You should not be influenced by the objection |
| 12:31:58 | 6 | or by the way I ruled on it. |
| 12:32:02 | 7 | 3.  Testimony that has been excluded or |
| 12:32:05 | 8 | stricken or that you have been instructed to disregard |
| 12:32:10 | 9 | is not evidence and must not be considered.  In |
| 12:32:16 | 10 | addition, the testimony or exhibits have been received |
| 12:32:19 | 11 | only for a limited purpose, you must follow the limiting |
| 12:32:23 | 12 | instructions I have given. |
| 12:32:26 | 13 | 4.  Anything that you may have seen or heard |
| 12:32:30 | 14 | when the court was not in session is not evidence.  You |
| 12:32:34 | 15 | are to decide the case solely on the evidence received |
| 12:32:38 | 16 | at this trial.  That means you may not consider or |
| 12:32:42 | 17 | speculate on matters not in evidence or matters outside |
| 12:32:46 | 18 | of the case as it has been presented in this courtroom. |
| 12:32:52 | 19 | I would remind you now that any notes that |
| 12:32:55 | 20 | you have taken during this trial are only aids to your |
| 12:32:58 | 21 | memory.  If your memory differs from your notes, you |
| 12:33:02 | 22 | shall rely on your memory and not on the notes.  The |
| 12:33:06 | 23 | notes are not evidence.  If you have not taken notes, |
| 12:33:11 | 24 | you should rely on your independent recollection of the |
| 12:33:15 | 25 | evidence and should not be unduly influenced by the |

A-2695

484

1                    J. ORTIZ VS. M. STAMBACH

12:33:19   2   notes of other jurors.  Notes are not entitled to any

12:33:23   3   greater weight than the recollection or impression of

12:33:28   4   each juror about the testimony.

12:33:32   5            Your verdict must be based solely on the

12:33:35   6   evidence developed at this trial or the lack of

12:33:37   7   evidence.  It would be improper for you to consider any

12:33:42   8   personal feelings you may have about one of the parties'

12:33:46   9   race, religion, national origin, gender or age.  It

12:33:51  10   would be equally improper for you to a lieu any feelings

12:33:55  11   you might have about the nature of the claim against the

12:34:01  12   Defendant to influence you in any way.  The parties, in

12:34:06  13   this case, are entitled to a trial free from prejudice.

12:34:11  14   Our judicial system cannot work unless you each reach

12:34:15  15   your verdict through a fair and impartial consideration

12:34:18  16   of the evidence.

12:34:22  17            You also must completely disregard any

12:34:25  18   report which you may have heard in the press, watched on

12:34:29  19   television, heard on the radio or seen on the internet.

12:34:32  20   It would be unfair to consider any such reports.

12:34:36  21   Because they are not evidence and the parties have no

12:34:39  22   opportunity to contradict their accuracy or otherwise

12:34:44  23   explain them away.  It would be a violation of your oath

12:34:48  24   as jurors to allow yourselves to be influenced in any

12:34:53  25   manner by such publicity.

A-2696

485

J. ORTIZ VS. M. STAMBACH

12:34:56  2        I'm now going to turn, ladies and gentlemen,

12:34:58  3  to the fundamental legal principles that are applicable

12:35:01  4  to civil cases in general.  These basic principles are

12:35:05  5  applicable to every civil trial conducted in all of the

12:35:09  6  courts of our country.  I made reference to these

12:35:13  7  principles in my preliminary instructions at the

12:35:15  8  beginning of the trial but because of their importance,

12:35:19  9  I'm going to repeat and amplify them now.

12:35:22  10        In a civil case, a Plaintiff has the burden

12:35:24  11  of proving the material allegations of the complaint by

12:35:29  12  a preponderance of the evidence.  If after considering

12:35:34  13  all of the testimony, you are satisfied that the

12:35:37  14  Plaintiff has carried his burden on each essential point

12:35:42  15  as to which he has the burden of proof, then you must

12:35:47  16  find for the Plaintiff on the claim under consideration.

12:35:52  17  If after such consideration, you find that the testimony

12:35:55  18  of both parties to be in balance or equally probable,

12:36:01  19  then the Plaintiff has failed to sustain his burden and

12:36:05  20  you must find for the Defendant.

12:36:09  21        If upon consideration of all of the facts,

12:36:11  22  you find that the Plaintiff has failed to sustain the

12:36:14  23  burden cast upon him, then you should proceed no further

12:36:18  24  and your verdict must be for the Defendant.

12:36:22  25        The Plaintiff has the burden of proving

A-2697

486

1          J. ORTIZ VS. M. STAMBACH

12:36:25   2   every disputed element of a claim by a preponderance of

12:36:30   3   evidence.  Now, what does "preponderance of evidence"

12:36:33   4   mean?  To establish a fact by a preponderance of

12:36:39   5   evidence means to prove that a fact is more likely true

12:36:43   6   than not true.  A preponderance of the evidence means

12:36:48   7   the greater weight of the evidence.  It refers to the

12:36:53   8   quality and persuasiveness necessary of the evidence,

12:36:57   9   not to the number of witnesses or documents.  In

12:37:01   10  determining whether a claim has been proved by a

12:37:04   11  preponderance of evidence, you may consider the relevant

12:37:09   12  testimony of all witnesses regardless of who may have

12:37:12   13  called them, and all of the relevant exhibits received

12:37:16   14  into evidence regardless of who may have introduced

12:37:19   15  them.

12:37:21   16          If you find that the credible evidence on a

12:37:24   17  given issue is evenly divided between the parties, that

12:37:28   18  it is equally probable that one side is right as it is

12:37:34   19  that the other side is right, then you must decide that

12:37:37   20  issue against the Plaintiff.  That is because the

12:37:42   21  Plaintiff must prove more than simply or simply the

12:37:47   22  quality of evidence.  The Plaintiff must prove the

12:37:50   23  element at issue by a preponderance of evidence.  On the

12:37:56   24  other hand, the Plaintiff need not prove any other than

12:38:00   25  a preponderance so long as you find that the scales tip

1          J. ORTIZ VS. M. STAMBACH

12:38:04  2  however slightly in favor of the Plaintiff, then what he

12:38:08  3  claims is more likely true than not true, that what he

12:38:13  4  claims is more likely true than not true.  Then that

12:38:18  5  element will be proved by a preponderance of evidence.

12:38:21  6        In that regard, you may have heard of proof

12:38:26  7  beyond a reasonable doubt, which is the proper standard

12:38:27  8  of proof in a criminal case.  That requirement does not

12:38:30  9  apply to a civil case such as this and you should put it

12:38:35 10  out of your mind.

12:38:36 11        Now, that concludes our discussion of the

12:38:39 12  burden of proof applicable in civil cases.  I'm now

12:38:42 13  going to turn to your estimate of the credibility of

12:38:44 14  each witness's testimony.  And the weight to be accorded

12:38:49 15  to such testimony.  You as the jury must determine the

12:38:53 16  credibility that is the belief ability of each of the

12:38:56 17  witnesses who testified.  As well as the proper weight

12:38:59 18  to be accorded to his or her testimony.

12:39:02 19        In simple terms, this means that you must

12:39:05 20  decide whether the witness has testified truthfully or

12:39:08 21  whether the witness has testified falsely.  Or if you

12:39:12 22  are satisfied that the witness has not consciously

12:39:15 23  testified falsely, whether his recollection of the

12:39:19 24  events about which has testified is accurate and

12:39:23 25  reliable or inaccurate and unreliable.

A-2699

488

J. ORTIZ VS. M. STAMBACH

12:39:30  2    There is no magical formula by which you can
12:39:33  3  evaluate the credibility or believability of a witness.
12:39:36  4  Each of you brings with you into this courtroom all of
12:39:40  5  the experience and background of your everyday lives.
12:39:43  6  In the course of your everyday affairs, you determine
12:39:47  7  for you the reliability or unreliability of things that
12:39:50  8  people tell you.  The same test which you use in your
12:39:54  9  everyday dealings are the tests which you will apply in
12:39:58  10  your deliberations.  In this regard, I will now explain
12:40:02  11  a few tests that you should use.
12:40:05  12    Is the witness an interested or
12:40:07  13  disinterested witness?  If he or she is interested in
12:40:12  14  the outcome of the trial on one side or the other, you
12:40:15  15  may consider such interest in determining how much
12:40:18  16  credit or weight you will give to his testimony or her
12:40:23  17  testimony.  A witness is an interested witness when by
12:40:27  18  reason of relationship, friendship, and agonism, or
12:40:30  19  prejudice, in favor of, or against one side or the
12:40:35  20  other, his or her testimony in your judgment is biased
12:40:38  21  or likely to be biased toward the side which he or she
12:40:42  22  favors.
12:40:45  23    On the other hand, a disinterested witness
12:40:48  24  is one who has no interest whatsoever in the outcome of
12:40:52  25  the trial.  A factor which you may consider in

A-2700

489

1          J. ORTIZ VS. M. STAMBACH

12:40:55  2   determining the credibility and weight to be given to

12:40:58  3   the testimony of such a witness.

12:41:01  4          However, keep in mind, you should not reject

12:41:04  5   the testimony of an interested witness merely because of

12:41:08  6   such interest.  Nor should you accept the testimony of a

12:41:12  7   disinterested witness merely because of such

12:41:16  8   disinterest.  It is your duty in the case of all

12:41:22  9   witnesses to accept such testimony as you believe to be

12:41:26  10  truthful and reject only such testimony as you believe

12:41:30  11  to be false.  As I said, interest and disinterest are

12:41:36  12  merely factors you may consider in evaluating

12:41:40  13  credibility.

12:41:42  14         Another test you should consider is the test

12:41:44  15  of reasonableness.  The testimony of the witness is

12:41:48  16  plausible and therefore likely to be true.  Or is it

12:41:53  17  implausible and unlikely to be true?  This test is based

12:41:59  18  on experience and common sense.  Testimony is plausible

12:42:04  19  and believable if, based on your experience, it is more

12:42:09  20  likely to be true than untrue.

12:42:13  21         Another test you should consider is the test

12:42:15  22  of consistency.  To determine whether testimony is

12:42:19  23  worthy of belief, it should be weighed with and against

12:42:22  24  the testimony of other witnesses with equal opportunity

12:42:26  25  to observe and recall the same events.  Is the testimony

1    J. ORTIZ VS. M. STAMBACH

12:42:31  2    consistent or inconsistent with other testimony in this

12:42:35  3    case?

12:42:35  4            Moreover, to determine whether you believe a

12:42:39  5    specific witness, you may consider whether his or her

12:42:42  6    testimony at the trial is inconsistent with any prior

12:42:47  7    statement he or she made.  If you find that any prior

12:42:51  8    statement made by a witness was not consistent with his

12:42:54  9    testimony or her testimony at trial, you should decide

12:42:58  10   whether that affects the believability of the witness's

12:43:02  11   testimony at this trial.

12:43:04  12           Another test:  In determining the

12:43:07  13   credibility of any witness, you should consider his

12:43:10  14   demeanor and manner of testifying on the witness stand.

12:43:15  15   Did the witness strike you as being frank, open, and

12:43:18  16   certain?  Or evasive, deceptive, and unsure?  Did the

12:43:25  17   witness's memory of the events concerning which he or

12:43:28  18   she testified appear to you to be accurate or hazy?  Did

12:43:33  19   the witness have an opportunity to really see, hear and

12:43:37  20   know the events concerning which he or she testified?

12:43:41  21           In determining the credibility of a witness,

12:43:45  22   you may consider whether such witness has any bias or

12:43:49  23   prejudice for or against any party in the case.  In

12:43:54  24   determining the credibility and weight to be given to

12:43:57  25   the testimony of a witness, you may take into account

1          J. ORTIZ VS. M. STAMBACH

12:44:00  2   such bias or prejudice.

12:44:05  3          In addition, you have heard that the

12:44:08  4   Plaintiff has been convicted of a prior felony.  This

12:44:11  5   evidence was introduced only for you to consider in

12:44:17  6   evaluating the Plaintiff's credibility.  You may

12:44:19  7   consider the fact that the Plaintiff is a convicted

12:44:21  8   felon in deciding how much of his testimony to accept

12:44:26  9   and what weight if any it should be given.

12:44:30  10          Now, some of the witnesses who testified, in

12:44:32  11  this case, have been current or former members of law

12:44:37  12  enforcement.  The fact that a witness may be employed or

12:44:41  13  has been employed as a law enforcement officer does not

12:44:45  14  mean that his or her testimony is deserving of more or

12:44:50  15  less consideration or greater or lesser weight than that

12:44:53  16  of an ordinary witness.  You should use the same tests

12:44:58  17  in evaluating his or her testimony as you use in

12:45:01  18  evaluating the testimony of any other witness.

12:45:06  19          Now, I permitted Dr. Coggins to express her

12:45:09  20  opinions about matters that are in issue.  A witness may

12:45:14  21  be permitted to testify to an opinion on those matters

12:45:18  22  about which she has special knowledge, skill, experience

12:45:22  23  and training.  Such testimony is presented to you on the

12:45:27  24  theory that someone who is experienced and knowledgeable

12:45:31  25  in the field can assist you in understanding the

A-2703

492

                    J. ORTIZ VS. M. STAMBACH

12:45:33   2   evidence or in reaching an independent decision on the

12:45:38   3   facts.

12:45:39   4            In weighing this opinion testimony, you may

12:45:42   5   consider the witness's qualifications, her opinions, the

12:45:46   6   reasons for testifying, as well as all of the other

12:45:50   7   considerations that ordinarily apply when you are

12:45:54   8   deciding whether or not to believe a witness's

12:45:57   9   testimony.  In addition, because she gave her opinions,

12:46:00  10   you should consider the soundness of each opinion, the

12:46:04  11   reason for the opinion, and the witness's motive if any

12:46:09  12   for testifying.  You may give the testimony of this

12:46:13  13   witness such weight if any that you think it deserves in

12:46:17  14   light of all of the evidence.  You should not permit a

12:46:21  15   witness's opinion testimony to be an institute for your

12:46:25  16   own reason, judgment and common sense.  You may reject

12:46:30  17   the testimony of any opinion witness in whole or in

12:46:34  18   part.  If you conclude that the reasons given in support

12:46:38  19   of an opinion in support of an opinion are unsound or if

12:46:45  20   you for other reasons do not believe the witness.  The

12:46:49  21   determination of the facts in the case rests solely with

12:46:53  22   you.

12:46:56  23            As to the witnesses who testified, everyone

12:46:59  24   if you find that the testimony given by any witness was

12:47:03  25   not contradicted by any other evidence in the case, such

A-2704

493

                    J. ORTIZ VS. M. STAMBACH

12:47:07  2   finding does not relief you of your duty and

12:47:10  3   responsibility to evaluate the credibility of the

12:47:13  4   witness and to make your own determination of what

12:47:17  5   weight if any you will give such testimony.

12:47:22  6          By the processes that I have just described

12:47:25  7   to you, you as the sole and exclusive judges of the

12:47:28  8   facts will determine which of the witnesses you believe

12:47:33  9   and what portion of their testimony you accept and what

12:47:37  10  weight you will give it.

12:47:39  11         Now, of course, facts must be proven by

12:47:43  12  evidence.  The evidence from which you are to decide

12:47:46  13  what the facts are consists of sworn testimony of the

12:47:50  14  witnesses both on direct and cross-examination,

12:47:54  15  regardless of who called witness, the exhibits that have

12:47:59  16  been received into evidence regardless of who introduced

12:48:04  17  them, and any stipulations between the parties.  Keep in

12:48:09  18  mind that the law does not require any party to call as

12:48:13  19  a witness to every person who might have knowledge of

12:48:17  20  the facts related to this trial.  Similarly, the law

12:48:22  21  does not require any party to present as exhibits all

12:48:26  22  papers and things mentioned during this trial.

12:48:31  23         Now, ladies and gentlemen, as evidence there

12:48:33  24  are two kinds:  Direct and circumstantial.  Direct

12:48:37  25  evidence is when a witness testifies about something he

A-2705

494

12:48:40  2  or she knows by virtue of his or her own senses.

12:48:45  3  Something that he or she has seen, felt, touched, or

12:48:49  4  heard.  Direct evidence may also be in the form of an

12:48:53  5  exhibit when the fact to be proved is its present

12:49:00  6  existence or condition.

12:49:01  7          The other type of evidence is circumstantial

12:49:04  8  evidence.  This is evidence which tends to prove a

12:49:08  9  disputed fact by proof of other facts.  They say simple

12:49:12  10  examples of circumstantial evidence which is often used

12:49:15  11  in this courthouse.

12:49:18  12          When you came in this morning it was sunny.

12:49:20  13  It was a nice day.  Assume that when you're sitting here

12:49:25  14  someone walks into this courtroom with an umbrella that

12:49:28  15  is dripping wet.  Then a few minutes later another

12:49:32  16  person also enters with a dripping wet umbrella.  Now we

12:49:36  17  can not look so there are no windows.  We can't look

12:49:39  18  outside this courtroom and see whether or not it's

12:49:41  19  raining outside, so you have no direct evidence of that

12:49:45  20  fact.  But, based on the combination of facts which I

12:49:49  21  have asked you to assume, it would be reasonable and

12:49:54  22  logical for you to conclude that it's been raining

12:49:56  23  outside.

12:49:58  24          That is all there is to circumstantial

12:50:00  25  evidence.  You infer on the basis of reason and

A-2706

495

```
          1              J. ORTIZ VS. M. STAMBACH

12:50:04   2   experience and common sense from one established fact

12:50:08   3   the existence or non-existence of some other fact.

12:50:13   4              Circumstantial evidence is of no less value

12:50:17   5   than direct evidence.  For it says the general rule that

12:50:21   6   the law makes no distinction between direct evidence and

12:50:24   7   circumstantial evidence.  But simply requires that your

12:50:28   8   verdict must be based on a preponderance of all of the

12:50:34   9   evidence presented.

12:50:36  10              All right.  Ladies and gentlemen, that

12:50:38  11   completes my general instructions that as I said apply

12:50:40  12   to all civil cases.  Dawn, I'm assuming the lunches are

12:50:45  13   here?

12:50:45  14              THE CLERK:  They're here, judge.

12:50:47  15              THE COURT:  Let's plan on taking about a

12:50:49  16   half-hour break for lunch, and we'll plan to be back

12:50:52  17   here at 20 after we have your lunches set out downstairs

12:50:56  18   so you can spread out.  At this point, after I give you

12:50:59  19   the rest of my instructions, I'm about to tell you, talk

12:51:02  20   about the case and listen to each other we're not there

12:51:05  21   yet.  So please do not talk about the case among

12:51:08  22   yourselves.  Have a good lunch and see you back here in

12:51:12  23   about half-hour.  Thank you.

12:51:19  24              (Whereupon the jury is escorted from the

12:51:21  25   courtroom.)
```

A-2707

496

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|--|---|---|

12:51:41  2        THE COURT:  All right.  So I know it's a

12:51:43  3   short lunch but, 20 after?  Let's plan on being back

12:51:47  4   here to resume, okay?

12:51:49  5        MR. FELLE:  Before we break, I have to put

12:51:50  6   an exception to what Your Honor just stated to the jury.

12:51:53  7        THE COURT:  What did I just --

12:51:54  8        MR. FELLE:  On page 12, you stated that the

12:51:56  9   Plaintiff has been convicted of a prior felony.  Well,

12:52:00  10  first of all, Your Honor ruled in motions in limine that

12:52:04  11  the defense could not bring up anything regarding the

12:52:07  12  prior conviction of Mr. Ortiz, and now you just --

12:52:10  13       THE COURT:  No.  That came out in the

12:52:12  14  cross-examination.  The 2016 conviction, Mr. Felle.

12:52:15  15       MR. FELLE:  Page 12.  You just read to the

12:52:17  16  jury.

12:52:17  17       THE COURT:  This refers to the 2016

12:52:19  18  conviction which did come out and I gave a limiting

12:52:22  19  instruction that it's just exactly what I said to the

12:52:26  20  jury.

12:52:26  21       MR. FELLE:  Well, it says Plaintiff has been

12:52:30  22  convicted of a prior felony.

12:52:32  23       THE COURT:  That is the 2016 conviction.

12:52:34  24       MR. FELLE:  So we're here to talk about an

12:52:36  25  '04 arrest, so it's not prior.

A-2708

497

|  | | J. ORTIZ VS. M. STAMBACH |
|---|---|---|

1             J. ORTIZ VS. M. STAMBACH

12:52:38  2             THE COURT:  Prior to today.

12:52:40  3             MR. FELLE:  Okay.  I guess if that is the

12:52:42  4  interpretation, I take exception to it.

12:52:46  5             THE COURT:  I don't understand the

12:52:47  6  exception, Mr. Felle.  First of all, you had the charge

12:52:51  7  in advance.  You never raised any issue with this.  I

12:52:54  8  didn't read anything different in the charge that was

12:52:56  9  distributed.  But, I'm reading the in limine instruction

12:53:02  10  that I gave when Mr. Ortiz on cross-examination was

12:53:06  11  asked about his felony conviction.  You have heard the

12:53:10  12  testimony that Mr. Ortiz was previously convicted of a

12:53:14  13  crime punishable by more than one year in jail.  This

12:53:18  14  prior conviction was put into evidence only for you to

12:53:21  15  consider in evaluating the witness's credibility.  You

12:53:24  16  may consider the fact that the witness who testified is

12:53:27  17  a convicted felon in deciding how much of his testimony

12:53:30  18  to accept and what weight, if any it, should be given.

12:53:33  19  That is what that is referring to.

12:53:36  20             MR. FELLE:  I understand what Your Honor is

12:53:37  21  saying, I will just make an exception.

12:53:39  22             THE COURT:  I don't understand what the

12:53:41  23  exception is.  It came into evidence.  All right.

12:53:44  24             MR. FELLE:  I'm placing it on the record.

12:53:46  25  Okay.

A-2709

498

|          |    |                                                      |
|----------|----|------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                             |
| 12:53:46 | 2  | THE COURT:  All right.  Anything from the            |
| 12:53:48 | 3  | defense?                                             |
| 12:53:48 | 4  | MR. RUSS:  No, Your Honor.  Not at this              |
| 12:53:50 | 5  | time.                                                |
| 12:53:50 | 6  | THE COURT:  Okay.  We'll see you back here           |
| 12:53:52 | 7  | at 20 after.                                         |
| 13:26:26 | 8  | (Whereupon, there was a break in the                |
| 13:38:49 | 9  | proceedings.)                                        |
| 13:38:49 | 10 | THE COURT:  All right.  Mr. Felle, are you           |
| 13:38:50 | 11 | ready to proceed?                                    |
| 13:38:51 | 12 | MR. FELLE:  I am, Your Honor.                        |
| 13:38:52 | 13 | THE COURT:  Mr. Russ?                                |
| 13:38:53 | 14 | MR. RUSS:  Yes, please, Your Honor.  Thank           |
| 13:38:54 | 15 | you.                                                 |
| 13:38:54 | 16 | THE COURT:  Let's bring our jury back in.            |
| 13:39:15 | 17 | (Whereupon the jury is escorted into the            |
| 13:39:17 | 18 | courtroom.)                                           |
| 13:39:43 | 19 | THE COURT:  All right.  Welcome, everybody.          |
| 13:39:46 | 20 | Everybody can have a seat.  I hope everybody is in.  It |
| 13:39:48 | 21 | was a quick lunch.  I hope it was a good lunch.  I   |
| 13:39:51 | 22 | apologize that we're running late.  That's on me.  I got |
| 13:39:54 | 23 | tied up with something else during lunch.  So we're now |
| 13:39:57 | 24 | ready to continue, ladies and gentlemen, with my final |
| 13:40:00 | 25 | instructions.  And I'm now going to turn our attention |

A-2710

499

1              J. ORTIZ VS. M. STAMBACH

13:40:03   2   to the definitions and rules applicable to each of the

13:40:07   3   specific causes of action that will be submitted to you

13:40:11   4   for your final determination.  I am not going to

13:40:16   5   summarize the testimony of the witnesses or talk about

13:40:19   6   the evidence any more than I have to for my explanation.

13:40:23   7   Of course, you must not assume anything from my

13:40:27   8   mentioning or not mentioning any of the evidence.

13:40:31   9          Now, the Plaintiff has brought this lawsuit

13:40:34  10   pursuant to a Federal Civil Rights Statute 42 U.S.C.,

13:40:39  11   Section 1983.  To recover money damages to which he

13:40:45  12   claims he is entitled because of what he alleges were

13:40:49  13   violations of his constitutional rights on the part of

13:40:52  14   the Defendant.  The Plaintiff contends that as a result

13:40:58  15   of the Defendant's conduct, he sustained injuries.  The

13:41:00  16   Defendant denies that he violated the Plaintiff's

13:41:03  17   rights.  Title 42 of the U.S.C., Section 1983, is a

13:41:11  18   Federal Civil Rights Law which provides a remedy for

13:41:15  19   individuals who have been deprived of their

13:41:18  20   constitutional rights under color of state law.  Section

13:41:22  21   1983 of title 42 of the U.S.C. states, "Every person

13:41:29  22   who, under color of any statute, ordinance, regulation,

13:41:34  23   custom, or usage, of any state or territory or the

13:41:37  24   District of Columbia, subjects or causes to be subjected

13:41:42  25   to any citizen of the United States or other person

A-2711

500

                              J. ORTIZ VS. M. STAMBACH

13:41:46   2    within the jurisdiction thereof to the deprivation of

13:41:51   3    any rights privileges or immunities secured by the

13:41:54   4    Constitution and laws shall be liable to the party

13:41:58   5    injured in an action at lawsuit and equity or other

13:42:03   6    proper proceedings for redress."

13:42:06   7              Section 1983 creates a remedy for persons

13:42:12   8    deprived by any person acting under color state of the

13:42:15   9    law of rights, privileges, and immunity secured by the

13:42:19   10   United States Constitution and federal statutes.

13:42:23   11             As I stated earlier in my instructions, the

13:42:26   12   Plaintiff has the burden of proving each essential

13:42:30   13   element of his Section 1983 claims by a preponderance of

13:42:34   14   evidence.  To prove an assertion by a preponderance of

13:42:39   15   evidence means proving that it is more likely true than

13:42:42   16   not true.

13:42:44   17             To prove a Section 1983 cause of action, the

13:42:48   18   Plaintiff must establish by a preponderance of evidence

13:42:53   19   each of the following three elements:

13:42:55   20             First, that the acts complained of were

13:43:02   21   committed by the Defendant acting under color of state

13:43:06   22   law;

13:43:06   23             Second, that in committing these acts, the

13:43:12   24   Defendant deprived the Plaintiff of rights, privileges,

13:43:17   25   or immunities secured by the Constitution or laws of the

A-2712

501

```
                    1              J. ORTIZ VS. M. STAMBACH

13:43:22    2    United States;.

13:43:25    3              And third, that the Defendant's asked were

13:43:30    4    the proximate cause of the injuries sustained by the

13:43:34    5    Plaintiff.

13:43:35    6              I'm now going to examine each of those three

13:43:38    7    almost all elements in greater detail.

13:43:41    8              So the first element of the Plaintiff's

13:43:43    9    claims is that the conduct complained of was committed

13:43:47   10    by the Defendant acting under color of state law.  In

13:43:52   11    this case, at the time of the alleged actions, the

13:43:56   12    Defendant was working for the Buffalo Police Department.

13:43:59   13    Therefore, there is no dispute as to this first element.

13:44:06   14              The second element of the Plaintiff's claims

13:44:09   15    is that the Defendant in committing the acts complained

13:44:13   16    of, deprived the Plaintiff of a Federal right.  In

13:44:17   17    general, to prove a claim for Section 1983, a Plaintiff

13:44:22   18    must demonstrate that the deprivation of his rights was

13:44:27   19    intentional or under certain circumstances reckless.  An

13:44:34   20    act is intentional if it is done voluntarily and

13:44:39   21    deliberately and not because of mistake, accident,

13:44:42   22    negligence or some other innocent reason.  Please note

13:44:47   23    that intent can be proved directly or it can be proved

13:44:52   24    by reasonable inference from circumstantial evidence.

13:44:57   25    An act is reckless if it is done in conscious disregard
```

A-2713

502

                    J. ORTIZ VS. M. STAMBACH

13:45:02   2   of its known probable consequences.

13:45:07   3        In this case, the Plaintiff has alleged that

13:45:10   4   the deprivation of his right to be free from malicious

13:45:13   5   prosecution, his right to be free from fabrication of

13:45:19   6   evidence and his Fifth Amendment right against

13:45:22   7   self-incrimination.  I will discuss the necessary

13:45:26   8   elements to prove a deprivation of each of those rights

13:45:31   9   including the necessary state of mind in detail later in

13:45:35  10   these instructions.

13:45:38  11        The third element which the Plaintiff must

13:45:40  12   prove is that the Defendant's acts were an proximate

13:45:45  13   cause of the Plaintiff's injuries and act is a proximate

13:45:57  14   cause for causing injury to the Defendant if that

13:45:59  15   reasonable foreseeable consequence of the Defendant's

13:46:03  16   acts.

13:46:04  17        A proximate cause need not always be the

13:46:08  18   nearest cause either in time or in space.  In addition,

13:46:12  19   there may be more than one proximate cause of an injury

13:46:16  20   or damage.  Many factors or the conduct of two or more

13:46:20  21   people may operate at the same time either independently

13:46:25  22   or together to cause an injury.

13:46:29  23        I will now instruct you regarding the

13:46:31  24   specific rights that the Plaintiff claims the Defendant

13:46:33  25   violated.  I'm going to start with the malicious

A-2714

503

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|

13:46:37  2   prosecution claim.

13:46:38  3        The Plaintiff claims that the Defendant

13:46:40  4   deprived him of his right to be free from malicious

13:46:45  5   prosecution.  To be available on a claim of malicious

13:46:49  6   prosecution, the Plaintiff must prove the following four

13:46:52  7   things by a preponderance of evidence:

13:46:55  8        First, that the Defendant initiated the

13:47:00  9   criminal proceeding against the Plaintiff.

13:47:03  10       Second, that the Defendant lacked probable

13:47:06  11  cause to believe the proceeding could succeed.

13:47:10  12       Third, that the criminal proceeding ended in

13:47:12  13  the Plaintiff's favor.

13:47:14  14       And fourth, the Defendant acted maliciously

13:47:18  15  or for a purpose other than bringing the Plaintiff to

13:47:20  16  justice.

13:47:22  17       As to the first element of the Plaintiff's

13:47:24  18  malicious prosecution claim, the parties have stipulated

13:47:28  19  that the Defendant initiated the prosecution of the

13:47:31  20  Plaintiff by filing a felony complaint.  Accordingly,

13:47:35  21  there is no dispute as to this first element.

13:47:40  22       As to the second element of the Plaintiff's

13:47:42  23  malicious prosecution claim, the Plaintiff must prove

13:47:45  24  that the Defendant lacked probable cause to initiate the

13:47:49  25  proceeding.  Whether probable cause existed depends upon

A-2715

504

```
             1          J. ORTIZ VS. M. STAMBACH

13:47:55     2   whether a reasonably prudent person would have believed

13:48:00     3   that the Plaintiff was guilty of the crime charged on

13:48:03     4   the basis of the facts known to the Defendant at the

13:48:07     5   time the prosecution was initiated or what the Defendant

13:48:11     6   reasonably believed to be true.  The fact that the

13:48:15     7   Defendant personally believed that the Defendant was

13:48:19     8   guilty is not enough if a reasonably prudent person

13:48:25     9   would not have believed that to be so.  On the other

13:48:29    10   hand, the fact that the Plaintiff was ultimately

13:48:32    11   determined to be innocent of the murders of the Camacho

13:48:37    12   brother does not establish that the Defendant lacked

13:48:40    13   probable cause at the time the prosecution was

13:48:44    14   initiated.  The question on the issue of probable cause

13:48:48    15   is not whether the Plaintiff was in fact guilty or

13:48:52    16   innocent, or whether the Defendant was in fact mistaken

13:48:57    17   or correct, but rather whereon the facts known to or

13:49:03    18   reasonably believed by the Defendant, a reasonably

13:49:07    19   prudent person would have believed the Plaintiff was

13:49:10    20   guilty.

13:49:12    21          In this case, the Plaintiff was indicted by

13:49:15    22   a grand jury.  Indictment by a grand jury created a

13:49:19    23   presumption of probable cause which must be rebutted by

13:49:24    24   the Plaintiff.  This presumption may be rebutted by

13:49:28    25   evidence that the indictment was procured by fraud,
```

A-2716

505

1          J. ORTIZ VS. M. STAMBACH

13:49:33   2   perjury, the suppression of evidence or other police

13:49:39   3   conduct undertaken in bad faith.

13:49:42   4          As to the third element, it is undisputed

13:49:46   5   that the criminal proceeding at issue ended in the

13:49:48   6   Plaintiff's favor.

13:49:54   7          As to the fourth element of the malicious

13:49:58   8   prosecution claim, a prosecution is initiated

13:50:03   9   maliciously if it is brought for a wrong or improper

13:50:07  10   purpose.  Malice does not have to be actual spite or thy

13:50:13  11   tread.  It means only that the Defendant must have

13:50:17  12   commenced the criminal proceeding due to a wrong or

13:50:20  13   improper motive or for an improper purpose.  That is for

13:50:26  14   a purpose other than bringing an offender to justice.

13:50:30  15   Or a desire to see the ends of justice served.  For

13:50:36  16   example, a prosecution may be initiated maliciously if

13:50:40  17   done out of a personal ill will or in reckless disregard

13:50:45  18   of the rights of the person accused.

13:50:49  19          You are permitted but not required to infer

13:50:53  20   the existence of malice based on a lack of probable

13:50:57  21   cause.  Actual malice may be found where probable cause

13:51:02  22   was so lacking that no reasonable officer could have

13:51:08  23   thought it existed.  Actual malice may also be found

13:51:13  24   where a Defendant acted in reckless disregard of the

13:51:16  25   rights of a Plaintiff.  Such as by making a false or