# 23-0352

## United States Court of Appeals

*for the*

## Second Circuit

JOSUE ORTIZ,

*Plaintiff-Appellee,*

– v. –

MARK STAMBACH,

*Defendant-Appellant,*

RICHARD WAGSTAFF, MARY GUGLIUZZA, BUFFALO POLICE
DEPARTMENT DOES 1-12, BUFFALO POLICE DEPARTMENT, THE CITY
OF BUFFALO, MARK VAUGHN,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## APPENDIX FOR DEFENDANT-APPELLANT
## Volume 12 (Pages A-2717 to A-2986)

HODGSON RUSS LLP
Peter A. Sahasrabudhe, Esq.
*Attorneys for Defendant-Appellant*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

i

# TABLE OF CONTENTS

**Page**

### Volume 1

District Court Docket List..........................................  A-1

Amended Complaint, dated March 27, 2019 ............  A-34

Answer to Amended Complaint,
    dated April 15, 2019 ...............................................  A-56

Notice of Motion to Dismiss, dated April 24, 2020...  A-80

Memorandum of Law in Support of Defendants'
    Motion to Dismiss, dated April 24, 2020...............  A-82

Supporting Declaration, dated April 24, 2020 ...........  A-107

    Exhibit A to Declaration -
    Affidavit of Lt. Salvatore Losi,
    sworn to on April 15, 2020...................................  A-112

    Exhibit B to Declaration -
    P-73 of Mark R. Stambach, dated November 16,
    2004, and Notes......................................................  A-114

    Exhibit C to Declaration -
    Plaintiff's Deposition Transcript,
    dated March 15, 2018.............................................  A-117

### Volume 2

    Exhibit D to Declaration -
    Mark Stambach's Deposition Transcript,
    dated January 23, 2019..........................................  A-241

ii

**Page**

**Volume 3**

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019 ........................................... A-491

Exhibit E to Declaration -
Criminal Case Court Proceedings Notes ............... A-535

Exhibit F to Declaration -
Plaintiff's Statement and Spanish Miranda Rights
Card ........................................................................ A-539

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019 ........................................... A-543

**Volume 4**

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019
(Continued) ............................................................ A-741

Exhibit H to Declaration -
P-73 of Mark J. Vaughn, dated November 15,
2004 ....................................................................... A-746

Exhibit I to Declaration -
Indictment ............................................................. A-748

Exhibit J to Declaration -
Portions of *Huntley* Hearing Transcript Provided
by Plaintiff in Discovery ...................................... A-753

Exhibit K to Declaration -
Answering Affidavit of Assistant District
Attorney Kenneth F. Case,
dated February 22, 2005 ....................................... A-882

iii

**Page**

Exhibit L to Declaration -
Transcripts of Plaintiff's guilty plea on March
22, 2006 and sentencing on June 16, 2006 and
Memorandum and Order Affirming the
Conviction ............................................................... A-889

Exhibit M to Declaration -
Correspondence and Reply to the People's
Opposing Affidavit .................................................. A-913

Exhibit N to Declaration -
Moving Papers and Correspondence Filed in
Opposition to Plaintiff's CPL 440 Motion by the
District Attorney's Office ....................................... A-935

Exhibit O to Declaration -
P-73 of David Sadlocha,
dated November 16, 2004 ...................................... A-976

Exhibit P to Declaration -
Memorandum and Order Deciding *Huntley*
Hearing ................................................................... A-977

Exhibit Q to Declaration -
Mark Stambach Notes,
dated September 30, 2005 ...................................... A-981

**Volume 5**

Exhibit R to Declaration -
Decision & Order Deciding Plaintiff's CPL 440
Motion ..................................................................... A-983

Statement of Undisputed Facts,
dated April 24, 2020 ............................................... A-1056

Declaration of Alan J. Pierce, Esq.,
dated July 3, 2020 .................................................. A-1063

iv

**Page**

Plaintiff's Response to Defendants' Statement of
    Material Facts, dated July 3, 2020 ........................ A-1066

Exhibit 1 to Pierce Declaration -
Orders of Hon. Thomas Franczyk dated
December 9, 2014 and May 8, 2015 in *People v.
Ortiz*, Indictment No. 02630-04 ........................... A-1069

Exhibit 2 to Pierce Declaration -
Defendants' Response to Plaintiff's First
Interrogatories and First Request for Production
of Documents, dated February 24, 2017 ............... A-1071

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019 ....................................... A-1091

**Volume 6**

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019
(Continued) ............................................................ A-1233

Exhibit 4 to Pierce Declaration -
Transcript of the Deposition of Mary Evans,
taken on January 24, 2019 ..................................... A-1238

Exhibit 5 to Pierce Declaration -
Documents in Exhibit B, Part 3 ............................ A-1372

Exhibit 6 to Pierce Declaration -
P-73 Forms Contained in Stambach Deposition
Exhibit 6 ................................................................ A-1450

v

Page

**Volume 7**

Exhibit 7 to Pierce Declaration -
BPD Synopsis of the Camacho Murder
Investigation ............................................................ A-1473

Exhibit 8 to Pierce Declaration -
Statement of Witness Jexlyn Mary Rosario given
to the BPD on November 12, 2004 ....................... A-1499

Exhibit 9 to Pierce Declaration -
Declaration of Hon. Kenneth Case, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 .............................................................. A-1502

Exhibit 10 to Pierce Declaration -
Declaration of Hon. Frank Sedita, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 .............................................................. A-1505

Exhibit 11 to Pierce Declaration -
Documents in Exhibit B, Parts 1 & 2 ................... A-1512

Exhibit 12 to Pierce Declaration -
Transcript of the Deposition of Dr. Evelyn
Coggins, taken on October 1, 2018 ....................... A-1597

Exhibit 13 to Pierce Declaration -
Defendants' Initial Disclosures,
dated February 24, 2017 ........................................ A-1700

Exhibit 14 to Pierce Declaration -
Josue Ortiz's Verified Claim,
dated May 13, 2015 ............................................... A-1706

**Volume 8**

Exhibit 15 to Pierce Declaration -
Stambach Deposition Exhibits 2 and 17 ............... A-1725

vi

**Page**

Plaintiff's Memorandum of Law in Opposition to
   Defendants' Motion to Dismiss, and for
   Judgment on the Pleadings and/or Summary
   Judgment, dated July 5, 2020 ............................... A-1733

City of Buffalo Department of Law, Exhibit D ......... A-1760

Reply Memorandum of Law in Further Support of
   Defendants' Motion to Dismiss,
   dated July 24, 2020 ................................................ A-1789

Decision and Order of the Honorable Elizabeth A.
   Wolford, dated February 26, 2021 ........................ A-1800

Plaintiffs' Proposed Jury Instructions,
   dated April 1, 2022 ................................................ A-1837

Defendants' Proposed Jury Instructions,
   dated April 1, 2022 ................................................ A-1861

Plaintiffs' Reply Motions in Limine,
   dated April 6, 2022 ................................................ A-1924

Defendant's Objections to Plaintiff's Proposed Jury
   Instructions, dated April 6, 2022 ........................... A-1933

**Volume 9**

Transcript of Proceedings, dated April 11, 2022 ........ A-1937

Stipulation of Undisputed Facts,
   dated April 27, 2022 .............................................. A-1996

Trial Transcript, Preliminary Instructions and
   Opening Statements, dated May 3, 2022 ............... A-2001

Trial Transcript, dated May 4, 2022 .......................... A-2053

vii

**Page**

Plaintiff's Witnesses:

| | | |
|---|---|---|
| E. Coogins | Direct | A-2054 |
| | Cross | A-2116 |
| J. Ortiz | Direct | A-2125 |

**Volume 10**

Trial Transcript, dated May 4, 2022
(Cotinued) ................................................ A-2187

| | | |
|---|---|---|
| M. Vaughn | Direct | A-2189 |
| | Cross | A-2219 |
| | Redirect | A-2225 |
| J. Lonergan | Direct | A-2229 |
| | Cross | A-2281 |
| | Redirect | A-2284 |
| | Recross | A-2287 |

Trial Transcript, dated May 5, 2022 ........................ A-2297

| | | |
|---|---|---|
| M. Stambach | Direct | A-2299 |
| | Cross | A-2361 |
| | Redirect | A-2384 |
| J. Ortiz | Direct | A-2393 |
| | Cross | A-2426 |

**Volume 11**

Trial Transcript, dated May 6, 2022 ........................ A-2467

| | | |
|---|---|---|
| M. Evans | Direct | A-2470 |
| | Cross | A-2495 |
| M. Lauber | Direct | A-2504 |
| | Cross | A-2518 |

Trial Transcript, May 9, 2022 ................................ A-2554

viii

**Page**

| J. Ortiz | Direct | A-2599 |
| | Cross | A-2653 |
| | Redirect | A-2671 |
| | Recross | A-2674 |

Trial Transcript, Closing Arguments, May 9, 2022 ... A-2594

**Volume 12**

Trial Transcript, Closing Arguments, May 9, 2022 (Continued) .............................................................. A-2717

Jury Questionnaire, dated May 9, 2022 ..................... A-2760

Jury Questionnaire, Damages, dated May 9, 2022 .... A-2764

Judgment in a Civil Case, dated May 10, 2022 ......... A-2766

Notice of Motion, by Plaintiff, for Attorneys' Fees, dated May 20, 2022 ................................................ A-2767

Declaration of Wayne C. Felle, Esq., for Plaintiff, in Support of Motion, dated May 20, 2022............... A-2768

Exhibit A to Felle Declaration - Ledger................................................................... A-2773

Exhibit B to Felle Declaration - Invoices for Services ............................................ A-2792

Plaintiff's Memorandum of Law in Support of his Motion for Attorneys' Fees and Costs, dated May 20, 2023 ................................................ A-2823

Notice of Motion, by Defendant, for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a new trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e), dated June 7, 2022 ................................................ A-2846

ix

**Page**

Declaration of Peter A. Sahasrabudhe, Esq., for
  Defendant, in Support of Motion,
    dated June 7, 2022 ................................................ A-2848

  Exhibit A to Sahasrabudhe Declaration -
  Trial Exhibits Entered by Counsel for
  Plaintiff.................................................................. A-2862

  Exhibit B to Sahasrabudhe Declaration -
  Trial Exhibits Entered by Counsel for
  Defendant ............................................................. A-2909

Memorandum of Law in Support of Motion for
  Judgment as a Matter of Law Under Fed. R. Civ.
  P. 50(b), dated June 7, 2022 ................................... A-2918

Declaration of Peter A. Sahasrabudhe in Opposition
  to Plaintiff's Motion for Attorneys' Fees,
    dated June 10, 2022 ................................................ A-2946

**Volume 13**

Defendants' Memorandum of Law in Opposition to
  Plaintiff's Motion for Attorneys' Fees,
    dated June 10, 2022 ................................................ A-2987

Declaration of Wayne C. Felle, Esq., for Plaintiff, in
  Opposition to Defendant's Post Trial Motion,
    dated June 28, 2022 ................................................ A-3013

Plaintiff's Memorandum of Law in Opposition to
  Defendant's Post Trial Motions,
    dated June 28, 2022 ................................................ A-3023

Reply Memorandum of Law in Further Support of
  Defendant's Motion for Judgment as a Matter of
  Law, a New Trial, or Remittitur,
    dated July 8, 2022 ................................................ A-3071

x

|  | Page |
|---|---|
| Decision and Order of the Honorable Elizabeth A. Wolford, dated February 17, 2022 ........................ | A-3090 |
| Transcript of Oral Argument, dated January 31, 2023 ......................................... | A-3112 |
| Notice of Appeal, by Defendant, March 10, 2023 ..... | A-3159 |

A-2717

506

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 13:51:22 | 2 | incomplete statement to prosecutors.  I'm now going to |
| 13:51:28 | 3 | turn to the fabrication of evidence.  The Plaintiff also |
| 13:51:32 | 4 | alleges that the Defendant fabricated evidence in |
| 13:51:35 | 5 | violation of his rights.  To establish this claim, the |
| 13:51:40 | 6 | Plaintiff must prove by a preponderance of evidence five |
| 13:51:45 | 7 | elements and I'm going to list each one of them.  Number |
| 13:51:48 | 8 | one, that the Defendant was an investing official. |
| 13:51:51 | 9 | Number two, that the Defendant fabricated evidence. |
| 13:51:55 | 10 | Number three, that the fabricated evidence was likely to |
| 13:52:00 | 11 | influence a jury's verdict.  Number four, that the |
| 13:52:04 | 12 | Defendant forwarded the fabricated evidence to the |
| 13:52:08 | 13 | prosecutor.  And five, that the Plaintiff suffered a |
| 13:52:15 | 14 | deprivation of life, liberty, or property as a result. |
| 13:52:20 | 15 | In this case, the first fourth and fifth of |
| 13:52:23 | 16 | these elements are not in dispute.  I instruct you that |
| 13:52:27 | 17 | the Defendant is an investing official and that he |
| 13:52:30 | 18 | forwarded the Plaintiff's confession to the District |
| 13:52:33 | 19 | Attorney's Office.  If the Plaintiff fails to prove any |
| 13:52:37 | 20 | of the remaining elements, that is the second and third |
| 13:52:40 | 21 | elements, by a preponderance of evidence, then you must |
| 13:52:44 | 22 | decide in favor of the Defendant.  If the Plaintiff |
| 13:52:47 | 23 | proves all of the remaining elements by a preponderance |
| 13:52:50 | 24 | of evidence, then you must decide in favor of the |
| 13:52:53 | 25 | Plaintiff. |

A-2718

507

|   | |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 13:52:55 2 | As to the second element, fabrication means |
| 13:52:58 3 | to make something up.  A good faith mistake is not a |
| 13:53:04 4 | fabrication.  The Plaintiff bears the burden of proving |
| 13:53:08 5 | by a preponderance of evidence that the Defendant |
| 13:53:11 6 | fabricated evidence.  I have already instructed you as |
| 13:53:15 7 | to the meaning of intentionally and the same instruction |
| 13:53:19 8 | applies here. |
| 13:53:23 9 | Evidence is fabricated if it is false.  A |
| 13:53:26 10 | document is false if it was untrue at the time it was |
| 13:53:31 11 | made and known to be untrue at the time by the person |
| 13:53:34 12 | who made it or caused it to be made.  Fabricated |
| 13:53:39 13 | evidence includes an Officer's false account of his or |
| 13:53:42 14 | her own observations of alleged criminal activity which |
| 13:53:47 15 | led to an arrest.  Paperwork errors or mere mistakes by |
| 13:53:52 16 | a police officer in preparing a written record are not a |
| 13:53:56 17 | basis for finding a constitutional violation. |
| 13:54:01 18 | As to the third element, the Plaintiff must |
| 13:54:04 19 | prove that the allegedly fabricated evidence was |
| 13:54:07 20 | sufficiently material or important to influence a jury's |
| 13:54:12 21 | verdict.  False information is likely to influence a |
| 13:54:17 22 | jury's decision if the false information is material or |
| 13:54:23 23 | important to the charges against the person.  It is not |
| 13:54:27 24 | necessary for the Plaintiff to prove that the false |
| 13:54:31 25 | information was ever actually presented to a judge or |

A-2719

508

|  | 1 | J. ORTIZ VS. M. STAMBACH |
| 13:54:35 | 2 | jury or that the Plaintiff was ever brought to trial. |
| 13:54:40 | 3 | It is sufficient for the Plaintiff to prove that the |
| 13:54:44 | 4 | information would have been important to a jury had it |
| 13:54:48 | 5 | been used against the Plaintiff during a court |
| 13:54:50 | 6 | proceeding. |
| 13:54:56 | 7 | And I'm going to have to take a short break |
| 13:54:59 | 8 | ladies and gentlemen because before I still need to |
| 13:55:06 | 9 | instruct you on the Fifth Amendment claim as well as on |
| 13:55:10 | 10 | the issue of damages, but I'm missing a page of my |
| 13:55:14 | 11 | instructions. So I left it on my desk. I have to go |
| 13:55:17 | 12 | back and get it. Just bear with me in a minute and |
| 13:55:20 | 13 | we'll have you back here in a minute. Thank you, |
| 13:55:23 | 14 | everyone. |
| 13:55:24 | 15 | (Whereupon the jury is escorted from the |
| 13:55:26 | 16 | courtroom.) |
| 13:55:44 | 17 | THE COURT: All right. I'll be right back. |
| 13:55:46 | 18 | I have to get the page where we made the changes. |
| 13:55:46 | 19 | (Whereupon, there was a break in the |
| 13:57:00 | 20 | proceedings.) |
| 13:57:00 | 21 | THE COURT: Bring the jury back in, Dawn. |
| 13:57:03 | 22 | (Whereupon the jury is escorted into the |
| 13:57:06 | 23 | courtroom.) |
| 13:57:37 | 24 | THE COURT: All right. Sorry about that, |
| 13:57:40 | 25 | everyone. Everyone can have a seat. And thank you for |

A-2720

509

1          J. ORTIZ VS. M. STAMBACH

13:57:41  2    your patience.  Thank you, Dawn.  All right.

13:57:48  3          Now, let me turn to the Fifth Amendment

13:57:51  4    claim.  This is the third of the three causes of action.

13:57:54  5    The Plaintiff alleges that the Defendant violated his

13:57:56  6    Fifth Amendment right against self-incrimination.  To

13:58:00  7    prevail on this claim, the Plaintiff must prove by a

13:58:03  8    preponderance of evidence that, Number one, the

13:58:07  9    Defendant applied coercion against him.  Two, to obtain

13:58:12  10   a waiver of his right against self-incrimination and/or

13:58:17  11   to obtain an inculpatory statement.  And three, the

13:58:21  12   statements thereby obtained were used against him in a

13:58:25  13   criminal proceeding.  Here, the parties have stipulated

13:58:29  14   that the Plaintiffs confession was used in a criminal

13:58:33  15   proceeding against him.  Whether that confession was

13:58:36  16   obtained by coercion is a question of fact for you the

13:58:40  17   jury to decide.

13:58:42  18         In addition, you have heard evidence

13:58:45  19   regarding the administration of Miranda warnings to the

13:58:48  20   Plaintiff.  While you may take that evidence into

13:58:51  21   account in making your factual determinations, I

13:58:55  22   instruct you that Miranda violations absent coercion do

13:59:00  23   not recognize the level of constitutional violations

13:59:04  24   actionable under Section 1983.  If you determine that

13:59:09  25   the Plaintiff has established each of these elements by

A-2721

510

|    | J. ORTIZ VS. M. STAMBACH |
|----|---------------------------|
| 13:59:12 | 2 | a preponderance of evidence, you must find for him on |
| 13:59:16 | 3 | this claim.  However, if you find that the Plaintiff has |
| 13:59:19 | 4 | failed to prove any one or more of these elements by a |
| 13:59:23 | 5 | preponderance of evidence, your verdict on this claim |
| 13:59:26 | 6 | must be for the Defendant.  Now that concludes our |
| 13:59:30 | 7 | discussion of the Plaintiff's causes of action.  Now, I |
| 13:59:33 | 8 | will turn to an instruction or the instructions on |
| 13:59:36 | 9 | damages.  Keep in mind my charge to you on the law of |
| 13:59:41 | 10 | damages must not be taken as a suggestion that you |
| 13:59:46 | 11 | should find for the Plaintiff.  It is for you to decide |
| 13:59:50 | 12 | on the evidence presented and the rules of law I have |
| 13:59:54 | 13 | given you whether the Plaintiff is entitled to recover |
| 13:59:58 | 14 | from the Defendant.  If you decide that the Plaintiff is |
| 14:00:02 | 15 | not entitled to recover from the Defendant you need not |
| 14:00:05 | 16 | consider damages.  Only if you decide that the Plaintiff |
| 14:00:16 | 17 | is entitled to recover will you consider the measure of |
| 14:00:19 | 18 | damages. |
| 14:00:22 | 19 | If you find that the Plaintiff is entitled |
| 14:00:24 | 20 | to recover from the Defendant, you must render a verdict |
| 14:00:28 | 21 | for a sum of money that will justly and fairly |
| 14:00:32 | 22 | compensate the Plaintiff for all of the losses resulting |
| 14:00:35 | 23 | from any injury or injuries he sustained.  Now at this |
| 14:00:40 | 24 | time let me emphasize an important point, while |
| 14:00:44 | 25 | Plaintiff's attorney may in summation have suggested to |

A-2722

511

                        J. ORTIZ VS. M. STAMBACH

14:00:48    2    you a dollar amount as to the damages the Plaintiff

14:00:51    3    claims he has suffered, that suggestion is not evidence

14:00:55    4    or entitled to any deference.  Keep in mind that the

14:00:59    5    ultimate measure of damages is for you to determine and

14:01:04    6    must be a sum of money that you find will be justly and

14:01:08    7    fairly compensate the injured party.

14:01:11    8             The purpose of the law of damages is to

14:01:15    9    award, as far as possible, just and fair compensation

14:01:19   10    for the loss, if any, which resulted from the

14:01:23   11    Defendant's violation of the Plaintiff's rights.  If you

14:01:31   12    find that the Defendant is liable on one or more of the

14:01:34   13    claims as I have explained then you must award the

14:01:38   14    Plaintiff sufficient damages to compensate him for any

14:01:41   15    injury proximate caused by the Defendant's conduct.

14:01:45   16    Again an injury is approximately caused by conduct when

14:01:48   17    a reasonable person would regard it as a substantial

14:01:53   18    factor in bringing about such injury.

14:02:00   19             Compensatory or actual damages seek to make

14:02:05   20    a Plaintiff whole that is compensate him for the damages

14:02:09   21    suffered.  Furthermore, compensatory damages are not

14:02:12   22    limited merely to expenses that a Plaintiff may have

14:02:14   23    sustained.  A prevailing Plaintiff is entitled to

14:02:17   24    compensatory damages both for the physical injury and

14:02:21   25    pain and suffering that he has suffered because of a

A-2723

512

|     |     |
|-----|-----|
|          | 1  | J. ORTIZ VS. M. STAMBACH |
| 14:02:24 | 2  | Defendant's conduct. |
| 14:02:28 | 3  | I remind you that you may award compensatory |
| 14:02:31 | 4  | damages only for injuries that the Plaintiff proves were |
| 14:02:36 | 5  | approximately caused by the Defendant's allegedly |
| 14:02:38 | 6  | wrongful conduct.  The damages that you award must be |
| 14:02:42 | 7  | fair and reasonable.  Neither inadequate nor excessive. |
| 14:02:49 | 8  | You should not award compensatory damages for |
| 14:02:53 | 9  | speculative damages but only for those injuries that the |
| 14:02:56 | 10 | Plaintiff has actually suffered or which he has |
| 14:02:59 | 11 | reasonably likely to suffer in the future. |
| 14:03:03 | 12 | In awarding compensatory damages, if you |
| 14:03:05 | 13 | decide to award them, you must be guided by |
| 14:03:09 | 14 | dispassionate common sense.  Computing damages may be |
| 14:03:13 | 15 | difficult, but you must not let that difficulty lead you |
| 14:03:16 | 16 | to engage in arbitrary guesswork.  On the other hand, |
| 14:03:21 | 17 | the law does not require the Plaintiff to prove the |
| 14:03:26 | 18 | amount of his losses with mathematical precision but |
| 14:03:32 | 19 | only with as much definiteness and accuracy as the |
| 14:03:36 | 20 | circumstances permit. |
| 14:03:38 | 21 | In all instances, you are to use sound |
| 14:03:41 | 22 | discretion in fixing an award of damages drawing |
| 14:03:45 | 23 | reasonable inferences where you deem appropriate from |
| 14:03:47 | 24 | the facts and circumstances of in evidence. |
| 14:03:52 | 25 | With respect to each of the Plaintiff's |

| | | |
|---|---|---|
| | 1 | J. ORTIZ VS. M. STAMBACH |
| 14:03:54 | 2 | constitutional claims, if you return a verdict for the |
| 14:03:58 | 3 | Plaintiff, but find that the Plaintiff has failed to |
| 14:04:00 | 4 | prove by a preponderance of evidence that he suffered |
| 14:04:04 | 5 | any compensatory damages, then you must return an award |
| 14:04:08 | 6 | of damages in some nominal token amount not to exceed |
| 14:04:14 | 7 | the sum of one dollar. |
| 14:04:16 | 8 | Nominal damages must be awarded when a |
| 14:04:18 | 9 | Plaintiff has been deprived by a Defendant of a |
| 14:04:21 | 10 | constitutional right but has suffered no actual damage |
| 14:04:26 | 11 | as a natural consequence of that deprivation. The mere |
| 14:04:34 | 12 | fact that a constitutional deprivation occurred is an |
| 14:04:37 | 13 | injury to the person entitled to enjoy that right |
| 14:04:40 | 14 | everyone when no actual damages flow from the |
| 14:04:44 | 15 | deprivation. Therefore, if you find that the Plaintiff |
| 14:04:46 | 16 | has suffered no injury as a result of the Defendant's |
| 14:04:49 | 17 | conduct, other than the fact of a constitutional |
| 14:04:54 | 18 | deprivation, you must award nominal damages not to |
| 14:04:57 | 19 | exceed one dollar. |
| 14:05:00 | 20 | You must also award nominal damages if upon |
| 14:05:04 | 21 | a finding that some injury resulted from a given |
| 14:05:07 | 22 | unlawful act you find that you are unable to compute |
| 14:05:12 | 23 | monetary damages except by engaging in pure speculation |
| 14:05:16 | 24 | and guessing. You may not award both nominal and |
| 14:05:21 | 25 | compensatory damages to the Plaintiff. Either, he was |

A-2725

514

                              J. ORTIZ VS. M. STAMBACH

14:05:25  2    measurably injured in which case you must award

14:05:29  3    compensatory damages or else he was not, in which case

14:05:34  4    you may award nominal damages.  Nominal damages may not

14:05:39  5    be awarded for more than a token sum.

14:05:42  6              If you find that the Defendant is liable for

14:05:44  7    the Plaintiff's injuries, then you have the discretion

14:05:47  8    to award in addition to compensatory damages punitive

14:05:51  9    damages.  You may award punitive damages if the

14:05:55  10   Plaintiff proves by a preponderance of evidence that a

14:06:00  11   Defendant's conduct was malicious and reckless not

14:06:04  12   merely unreasonable.  An act is malicious and reckless

14:06:09  13   if it is done in such a manner and under such

14:06:13  14   circumstances as to reflect utter disregard for the

14:06:19  15   potential consequences of the acts on safety and rights

14:06:23  16   of others.  The purpose of punitive damages is to punish

14:06:26  17   a Defendant for shocking conduct and to set an example

14:06:32  18   in order to deter him and others from committing similar

14:06:37  19   acts in the future.  The awarding of punitive damages is

14:06:41  20   within your discretion.  You are not required to award

14:06:45  21   them.  Punitive damages are appropriate only for

14:06:50  22   especially shocking and offensive misconduct.  If you

14:06:55  23   decide to award punitive damages, you must use sound

14:06:59  24   reason without any influence by biased, prejudice, or

14:07:04  25   sympathy toward any party.

A-2726

515

J. ORTIZ VS. M. STAMBACH

14:07:07 2     If you decide to award punitive damages, you

14:07:11 3 will not determine the amount of punitive damages at

14:07:14 4 this time but rather I will give you further

14:07:16 5 instructions if and when we reach that point.

14:07:20 6     Ladies and gentlemen, I have now outlined

14:07:23 7 for you the rules of law that apply to this case.  And

14:07:28 8 the processes by which you weigh the evidence and decide

14:07:30 9 the facts.  In a few minutes, you will retire to the

14:07:34 10 jury room for your deliberations.  In order for your

14:07:38 11 deliberations to proceed in an ordinary fashion, you

14:07:41 12 must have a foreperson but of course, her vote is

14:07:45 13 entitled to no greater weight than that of any other

14:07:49 14 jury.  Ms. Whiting, because you're in seat No. 1, you

14:07:51 15 are our foreperson.  Your responsibilities will be to

14:07:55 16 make sure that everyone has an opportunity to

14:07:58 17 participate during deliberations.  To communicate with

14:08:02 18 the Court if the jury has a question.  To tell us when

14:08:06 19 the jury has reached a verdict.  And of course to

14:08:09 20 announce the verdict.  If you need to communicate with

14:08:13 21 me, that is if you have a question or if you want to

14:08:16 22 indicate that you have a verdict, you need to do so in

14:08:19 23 writing and sign the note.

14:08:22 24     If, in the course of your deliberations

14:08:24 25 ladies and gentlemen your recollection of any part of

1          J. ORTIZ VS. M. STAMBACH

14:08:27  2   the testimony should fail, or you should have any

14:08:30  3   question about my instructions to you on the law, you

14:08:33  4   have the right to return to the courtroom for the

14:08:36  5   purpose of having such testimony or instructions read to

14:08:40  6   you.  A copy of my instructions is not sent back to the

14:08:44  7   jury room.  However, with respect to reading back

14:08:48  8   testimony, keep in mind that it takes just as long to

14:08:50  9   read testimony back as it did for a witness to testify

14:08:54  10  in the first instance.  For example, if it took a

14:08:58  11  particular witness one hour to testify, then it will

14:09:02  12  take approximately one hour to read that witness's

14:09:05  13  testimony back.  Therefore, if you desire just a portion

14:09:09  14  of the witness's testimony, please indicate that or else

14:09:13  15  the entire testimony both direct and cross-examination

14:09:17  16  will be read.  Also, if you request testimony, certain

14:09:21  17  things need to occur before it can be read back.  First

14:09:26  18  our court reporter Ms. Clark must find the requested

14:09:30  19  testimony in her notes.  Second, we must all reassemble

14:09:34  20  here in court before the testimony can be read to you.

14:09:37  21  Now, I'm telling you not to discourage you from

14:09:41  22  requesting the testimony be read back if you have a

14:09:44  23  question.  But rather to explain that it will take a

14:09:48  24  period of time to comply with your request.

14:09:50  25          In deciding the case, you may consider only

A-2728

517

J. ORTIZ VS. M. STAMBACH

14:09:53  2    the exhibits which have been admitted into evidence.

14:09:56  3    The testimony of the witnesses as you have heard such

14:10:00  4    testimony in this courtroom.  And any stipulations

14:10:04  5    between the parties.  As to the exhibits that were

14:10:09  6    received into evidence, they will be sent to the jury

14:10:11  7    room.  With respect to the stipulation between the

14:10:14  8    parties that I read to you at the outset of the trial,

14:10:17  9    that has been marked as a court exhibit it's court

14:10:21  10   exhibit I believe No. 1 in case correct Dawn that is not

14:10:25  11   sent into the jury room but if you need that read back

14:10:28  12   to you just send a note and we'll assemble back here in

14:10:32  13   the courtroom and I will read it again for you.  If you

14:10:35  14   have any questions regarding the stipulation as I said

14:10:38  15   you may send the note relaying that question I will

14:10:41  16   discuss the process for sending notes in just a minute.

14:10:45  17            Your verdict must represent the considered

14:10:48  18   judgment of each juror.  In order to return a verdict,

14:10:52  19   it is necessary that each juror agree.  Your verdict

14:10:57  20   must be unanimous.

14:11:00  21            Additionally, to assist you during your

14:11:02  22   final deliberations, I have prepared a verdict sheet

14:11:04  23   which contains the list of questions that you will

14:11:07  24   answer after careful consideration of all of the

14:11:10  25   evidence and in accordance with my instructions.  Each

A-2729

518

                    J. ORTIZ VS. M. STAMBACH

14:11:14   2   of the questions calls for a "yes or no" answer or some

14:11:18   3   numerical figure.  You must return a verdict on each

14:11:22   4   claim.  As I indicated, your verdict must be unanimous.

14:11:28   5   Ms. Samuel, can you distribute the verdict sheets to the

14:11:33   6   Members of the Jury.

14:11:35   7              THE CLERK:  Yes, judge.

14:11:35   8              THE COURT:  Thank you.  We'll gather these

14:11:36   9   back from you after they are distributed.  But I want

14:11:40  10   you to each have the verdict sheet so I can walk through

14:11:43  11   the questions with you.

14:12:04  12              Okay.  So as I mentioned, the verdict sheet

14:12:09  13   contains a list of questions that you will answer after

14:12:12  14   careful consideration of all the evidence in accordance

14:12:17  15   with my instruction.  Don't assume from the questions or

14:12:19  16   their order what your answer should be.  That is of

14:12:22  17   course for you to decide.  When you have all agreed upon

14:12:25  18   an answer, there will be just one verdict sheet back

14:12:29  19   with you in the jury deliberation room.  When you all

14:12:32  20   agree on an answer, Ms. Whiting, as your foreperson,

14:12:34  21   should record the answer in the space provided.  When

14:12:38  22   you reach a verdict, you can send a note indicating

14:12:41  23   that.  You do not include the verdict sheet with your

14:12:43  24   note.  Just send a note indicating that you reached a

14:12:47  25   verdict.  Let me walk through the verdict sheet with you

A-2730

519

                    J. ORTIZ VS. M. STAMBACH

14:12:50   2    now.  As you can see, as I mentioned, there are three

14:12:53   3    causes of action.  Question No. 1 deals with the first

14:12:56   4    cause of action whether or not you found that the

14:12:58   5    Plaintiff demonstrated by a preponderance of evidence

14:13:01   6    that the Defendant maliciously prosecuted the Plaintiff.

14:13:04   7    That is the malicious prosecution claim.  You need to

14:13:07   8    answer yes or no.  You then proceed to question two.

14:13:11   9    That deals with the fabrication of evidence claims.  The

14:13:13  10    second cause of action and asks whether or not you find

14:13:16  11    that the Plaintiff has demonstrated by a preponderance

14:13:19  12    of evidence that the Defendant fabricated evidence

14:13:21  13    against the Plaintiff.  You need to answer yes or no.

14:13:25  14    You then proceed to question three.  This is the third

14:13:28  15    cause of action, the Fifth Amendment claims that the

14:13:33  16    Defendant violated the Plaintiff's Fifth Amendment right

14:13:36  17    against self-incrimination and you need to answer

14:13:39  18    whether or not the Plaintiff has demonstrated that cause

14:13:42  19    of action by a preponderance of evidence.  Now, if you

14:13:46  20    answer yes to any of the questions one, two or three,

14:13:49  21    then you proceed to consider the issue of damages.  But

14:13:52  22    if you answer no to questions one, two, and three, that

14:13:56  23    could complete your deliberations.  Then you need to

14:13:59  24    sign the signature page and report to me that you have a

14:14:02  25    verdict.  In other words, your only move onto section

A-2731

520

                    J. ORTIZ VS. M. STAMBACH

14:14:05  2   two which is on page 3 which addresses damages if you

14:14:10  3   have found that the Plaintiff has sustained his burden

14:14:13  4   of proof for one or more of the causes of action that

14:14:16  5   are at issue.  So if you get to the issue of damages,

14:14:20  6   section two, the 4th question asks about compensatory

14:14:26  7   damages.  And asks for a numerical figure.  Now, if you

14:14:31  8   find that the Plaintiff is not entitled to compensatory

14:14:35  9   damages, then you're going to answer the question about

14:14:38  10  nominal damages.  But if you find that the Plaintiff is

14:14:41  11  entitled to compensatory damages, you're going to skip

14:14:45  12  over question five and you move on to question six.  And

14:14:50  13  then question six is the yes or no question on punitive

14:14:54  14  damages, whether or not you find that punitive damages

14:14:57  15  should be awarded in favor of the Plaintiff.  And then

14:15:02  16  once your deliberations are complete, once you've

14:15:04  17  reached a unanimous verdict the foreperson needs to sign

14:15:08  18  the signature page and date it and then send me a note

14:15:12  19  indicating that a verdict has been reached.  Ms.

14:15:19  20  Whiting, you should retain possession of the verdict

14:15:21  21  sheet and what will happen once you tell me that you

14:15:25  22  have a verdict we'll bring you back out into court and

14:15:28  23  I'll have Dawn retrieve the verdict sheet from you and

14:15:31  24  I'll inspect the verdict sheet to make sure that it's in

14:15:34  25  the proper form and then we'll publish the verdict we'll

1           J. ORTIZ VS. M. STAMBACH

14:15:37   2   announce it here in court.  Ms. Samuel will bring a copy

14:15:42   3   of the verdict sheet to the jury room when you retire

14:15:45   4   for your final deliberations.  If at any time during

14:15:49   5   your deliberations you have any questions concerning

14:15:52   6   your use of the verdict sheet or the exhibits or any

14:15:56   7   questions concerning any of my instructions feel free to

14:15:59   8   send a note in writing and we will respond as promptly

14:16:03   9   as possible.  The note needs to be completed by Ms.

14:16:06   10  Whiting, put in an envelope sealed and signed with the

14:16:11   11  date and time and I have an example here under my pile

14:16:18   12  of papers.  So there will be back in the deliberation

14:16:22   13  room there will be a number of notes and you use as many

14:16:27   14  as you need to.  But the note -- you need to write the

14:16:30   15  note out, try to be as specific as possible as to what

14:16:33   16  you're asking so that we can positive hopefully answer

14:16:36   17  it.  That needs to be signed by the foreperson and then

14:16:39   18  it needs to be put in the envelope and you need to seal

14:16:43   19  the envelope and put your initials, the date, and time

14:16:47   20  on the envelope.  It will be handed to the Court

14:16:49   21  Security Officer who will be charged with keeping

14:16:51   22  custody so to speak of the jurors as you deliberate and

14:16:55   23  that Court Security Officer will make arrangements for

14:16:58   24  it to be delivered directly to me and that is how I will

14:17:01   25  know that it's gone directly from the jury to me that

A-2733

522

1          J. ORTIZ VS. M. STAMBACH

14:17:04   2   it's in a sealed note and it's it has your initials and

14:17:08   3   time and date on it.  That is how I know that it's a

14:17:12   4   direct communication from our jury.  Ladies and

14:17:18   5   gentlemen of the jury please remember at all times that

14:17:22   6   you are not advocates for one side or the other.  Rather

14:17:26   7   you are judges of the facts.  Your sole interest is to

14:17:31   8   seek the truth from the evidence in this case.  In

14:17:35   9   reaching your verdict you are not to be affected by

14:17:39   10  sympathy, bias or prejudice.  Nor must you let any

14:17:45   11  personal feelings concerning the nature of the causes of

14:17:47   12  action alleged to interfere with your decision making

14:17:53   13  process.  Further, you must not be influenced by what

14:17:55   14  you might believe the reaction to your verdict will be.

14:18:00   15  Whether it will please or displease anyone, be popular

14:18:04   16  or unpopular or indeed any consideration outside of the

14:18:08   17  case as it has been presented to you in this courtroom.

14:18:12   18  You should consider only the evidence both the testimony

14:18:16   19  and exhibits, find the facts from what you consider to

14:18:19   20  be the believable evidence and apply the law as I have

14:18:22   21  given it to you to those facts.  Your verdict will be

14:18:26   22  determined by the conclusions thus reached.

14:18:30   23          Also, keep in mind that your function to

14:18:32   24  reach a decision based on the evidence and the law is a

14:18:36   25  very important one.  When you are in the jury room,

A-2734

523

                        J. ORTIZ VS. M. STAMBACH

14:18:40   2    listen to each other and discuss the evidence and issues

14:18:43   3    in the case among yourselves.  It is the duty of each of

14:18:47   4    you as jurors to consult with one another and to

14:18:51   5    deliberate with a view toward reaching agreement on a

14:18:54   6    verdict if you can do so without violating your

14:18:58   7    individual judgment and your conscience.  While you

14:19:03   8    should not surrender honest convictions of what the

14:19:07   9    truth is and of the weight and effect of the evidence

14:19:11   10   and while each of you must decide the case yourself and

14:19:14   11   not merely consent to the decision of the other members

14:19:19   12   of the Jury, you should examine the issues and the

14:19:21   13   evidence before you with candor and frankness and will

14:19:26   14   proper respect in regard the opinions of each other.

14:19:29   15   Additionally, if somebody needs to take a break during

14:19:32   16   the deliberations for instance a bathroom break that is

14:19:36   17   fine, but the deliberations must stop until the juror

14:19:39   18   returns from the break.  In other words, all jurors, all

14:19:42   19   eight of you have to be there to participate in the

14:19:45   20   deliberations.

14:19:48   21           Members of the Jury, this case is obviously

14:19:50   22   important to both the Plaintiff and the Defendant.

14:19:53   23   Therefore they and I rely upon you to give full and

14:19:56   24   conscientious attention and consideration to the issues

14:20:00   25   and evidence before you.  By doing so, you will carry

A-2735

524

|  | J. ORTIZ VS. M. STAMBACH |
|---|---|

1       J. ORTIZ VS. M. STAMBACH

14:20:05  2  out to the fullest, your oaths as jurors.  To truly try

14:20:10  3  the issues of this case and to render a true verdict.

14:20:14  4         All right.  I'm going to take a short break,

14:20:17  5  ladies and gentlemen, and ask Dawn to escort our jury to

14:20:20  6  the deliberation room.  And as you do that, Dawn, if you

14:20:23  7  could collect the verdict sheets that you distributed.

14:20:26  8         THE CLERK:  Certainly, judge.

14:20:27  9         THE COURT:  Thank you.

14:20:27  10        (Whereupon the jury is escorted from the

14:21:12  11  courtroom.)

14:21:12  12        First of all, any exceptions, or objections

14:21:19  13  to the charge that has been discussed on the record?

14:21:21  14        MR. FELLE:  No, Your Honor.

14:21:22  15        THE COURT:  Mr. Russ?

14:21:22  16        MR. RUSS:  No exceptions, Your Honor.  I'm

14:21:24  17  glad that you collected the verdict sheets.  I stood up.

14:21:27  18  I wanted to make sure we got the verdict sheets, which

14:21:30  19  we did.

14:21:30  20        THE COURT:  Do we have the exhibits all

14:21:33  21  together?

14:21:33  22        MR. FELLE:  Yes, we provided them.

14:21:35  23        THE COURT:  Yes.

14:21:35  24        THE CLERK:  Yes, Judge.

14:21:36  25        THE COURT:  And is there an issue with an

A-2736

|          |    |                                                         |
|----------|----|---------------------------------------------------------|
|          | 1  | J. ORTIZ VS. M. STAMBACH                                |
| 14:21:38 | 2  | Exhibit, Karen?                                         |
| 14:21:38 | 3  | THE CLERK:  Yes, Judge.                                 |
| 14:22:17 | 4  | THE COURT:  You previously marked Exhibit 7             |
| 14:22:18 | 5  | and 8.  7 was the evidence unit case file document.  And|
| 14:22:23 | 6  | 8 was BPD or murder investigation from November 11th,   |
| 14:22:28 | 7  | 2004.  So for the record purposes, I'd ask you to       |
| 14:22:33 | 8  | renumber premarked 7 as Exhibit 60 and premarked 8 as   |
| 14:22:43 | 9  | Exhibit 61.  Just there to say record of that because   |
| 14:22:45 | 10 | the Huntley Hearing and deposition transcript were      |
| 14:22:45 | 11 | marked Exhibit 8 and 7.                                  |
| 14:22:51 | 12 | MR. FELLE:  The ones today that I marked                |
| 14:22:53 | 13 | improperly, we're going to mark those 60 and 61?        |
| 14:22:57 | 14 | THE COURT:  No.  The ones you premarked 7               |
| 14:22:59 | 15 | and 8, that never came in evidence, just so there is a  |
| 14:23:02 | 16 | clear record of what they were should now be 60 and 61. |
| 14:23:07 | 17 | Otherwise, we're going to have two Exhibit 7s and two   |
| 14:23:10 | 18 | Exhibit 8s.                                             |
| 14:23:16 | 19 | It's the party's responsibility to maintain            |
| 14:23:18 | 20 | custody of the exhibits after abode.  For record        |
| 14:23:23 | 21 | purposes.                                               |
| 14:23:26 | 22 | THE CLERK:  Judge, I wanted to ask one more             |
| 14:23:28 | 23 | thing.  For three, I had just a photo in there but Karen |
| 14:23:33 | 24 | clarified that it was the entire packet.                |
| 14:23:36 | 25 | THE COURT:  And everybody agrees it was the             |

A-2737

526

|       |    |                                                     |
|-------|----|-----------------------------------------------------|
|       | 1  | J. ORTIZ VS. M. STAMBACH                            |
| 14:23:38 | 2  | entire packet?                                      |
| 14:23:40 | 3  | MR. FELLE: Is it the arrest and booking             |
| 14:23:41 | 4  | reports?                                            |
| 14:23:42 | 5  | MR. RUSS: Yes, that's correct.                      |
| 14:23:43 | 6  | THE CLERK: Okay. I just want to clarify,            |
| 14:23:44 | 7  | Because I just have the right photo.                |
| 14:23:53 | 8  | THE COURT: All right. Anything, Mr. Felle,          |
| 14:23:55 | 9  | that we need to talk about before we bring the jury back |
| 14:23:57 | 10 | in here to start the deliberations?                 |
| 14:23:59 | 11 | MR. FELLE: I don't believe so, Your Honor.          |
| 14:24:00 | 12 | THE COURT: Mr. Russ?                                |
| 14:24:01 | 13 | MR. RUSS: No, Your Honor. Thank you.                |
| 14:24:02 | 14 | THE COURT: Let's have our jury come back in         |
| 14:24:05 | 15 | and we'll swear in our Court Security Officer.      |
| 14:24:09 | 16 | THE CLERK: Thank you, judge.                        |
| 14:24:10 | 17 | (Whereupon the jury is escorted into the            |
| 14:24:12 | 18 | courtroom.)                                         |
| 14:24:52 | 19 | THE COURT: All right. Everybody can have a          |
| 14:24:53 | 20 | seat. All right. Ladies and gentlemen, we are now   |
| 14:24:56 | 21 | ready to swear in our Court Security Officer who will |
| 14:25:00 | 22 | then be responsible for keeping the custody of our jury |
| 14:25:04 | 23 | during their deliberations.                         |
| 14:25:11 | 24 | (A. MCFADDEN WAS CALLED TO THE WITNESS STAND AND SWORN |
| 14:25:12 | 25 | IN.) Court Security Officer.                        |

A-2738

527

|  |  | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 14:25:22 | 2 | THE COURT: All right. Thank you, Charlie. |
| 14:25:24 | 3 | Ladies and gentlemen, you will now be escorted by our |
| 14:25:28 | 4 | Court Security Officer to commence your deliberations. |
| 14:25:30 | 5 | Dawn will be in with the exhibit list, the verdict |
| 14:25:33 | 6 | sheet, and notes, and as I said, just send a note if you |
| 14:25:36 | 7 | need to ask us any question. Thank you very much. And |
| 14:25:40 | 8 | you can take your notepads with you. I take it Charlie |
| 14:26:03 | 9 | knows they are going downstairs. |
| 14:26:05 | 10 | THE CLERK: Should I check on that? |
| 14:26:07 | 11 | THE COURT: Okay. Thanks, Dawn. |
| 14:26:27 | 12 | Make sure that Karen has your cell phones. |
| 14:26:32 | 13 | MR. RUSS: Your Honor, did you prefer that |
| 14:26:33 | 14 | we not be in the courtroom. |
| 14:26:34 | 15 | THE COURT: You're welcome to be here, but |
| 14:26:37 | 16 | you have to move from counsel's table because I have |
| 14:26:39 | 17 | some other matters on. You're welcome to be in the |
| 14:26:42 | 18 | courtroom. That's fine. |
| 14:26:44 | 19 | MR. RUSS: Okay. Thank you. |
| 17:10:42 | 20 | THE COURT: All right. We're back on the |
| 17:10:44 | 21 | record in Ortiz versus Stambach, 16-CV-00321. Is Mr. |
| 17:10:48 | 22 | Felle, Mr. Ortiz, Mr. Russ, Mr. Stambach, Mr. |
| 17:10:51 | 23 | Sahasrabudhe, here? We have a note that I will mark as |
| 17:10:55 | 24 | Court Exhibit 4 that steps as follows. If we have |
| 17:10:58 | 25 | unanimous answers to two elements, one yes and one no, |

|        |    | J. ORTIZ VS. M. STAMBACH |
|--------|----|--------------------------|
| 17:11:03 | 2 | does this make the answer to that constitutional claim a |
| 17:11:07 | 3 | yes?  I think the answer is no.  It makes it a no |
| 17:11:15 | 4 | because you have to say yes for all of the elements.  So |
| 17:11:18 | 5 | my suggestion is we bring them back out here and I |
| 17:11:21 | 6 | explain to them that they have to find that the |
| 17:11:24 | 7 | Plaintiff has proven by evidence each element of the |
| 17:11:36 | 8 | particular claim that they are considering. |
| 17:11:39 | 9 | MR. FELLE:  Correct.  The note could also |
| 17:11:42 | 10 | mean one of the constitutional violations or claims they |
| 17:11:45 | 11 | all unanimously found one way and/or a separate claim |
| 17:11:51 | 12 | they found differently.  So I guess -- I guess the |
| 17:11:56 | 13 | question could be read, is it sufficient that we find |
| 17:11:59 | 14 | one of the claims to go forward? |
| 17:12:01 | 15 | THE COURT:  It doesn't say claims, it says |
| 17:12:03 | 16 | elements. |
| 17:12:04 | 17 | MR. FELLE:  Elements.  Okay. |
| 17:12:05 | 18 | THE COURT:  I don't know.  I mean, you know, |
| 17:12:10 | 19 | I'm not sure and I'll tell them if they want to ask us |
| 17:12:14 | 20 | something more specifically I'll answer it more |
| 17:12:16 | 21 | specifically but the best I can do with the question is |
| 17:12:19 | 22 | answer it more generically.  Any concerns about that |
| 17:12:22 | 23 | answer, Mr. Russ? |
| 17:12:23 | 24 | MR. RUSS:  No, I think your approach is |
| 17:12:25 | 25 | correct and I would note that a previous jury note asked |

A-2740

529

J. ORTIZ VS. M. STAMBACH

17:12:31    2    for the charge, so they have the charge and they see the

17:12:35    3    word elements, I'm quite sure the jury is asking what it

17:12:40    4    intends to ask.

17:12:41    5                THE COURT:  Okay.  All right.  Let's bring

17:12:45    6    our jury up here, Dawn.  And we're still on the record.

17:13:15    7    I had Dawn go down there and ask them whether they

17:13:19    8    wanted to continue or if so whether or not they wanted

17:13:21    9    to have dinner brought in and the response was, no we

17:13:24   10    want to push on but they weren't sure if they wanted

17:13:28   11    dinner.  So when they come out, that is something I'll

17:13:31   12    tell them that if they would like us to order them

17:13:34   13    dinner, we will do that.

17:17:58   14                (Whereupon the jury is escorted into the

17:18:01   15    courtroom.)

17:18:21   16                THE COURT:  All right.  Everybody can have a

17:18:23   17    seat.  Welcome back, ladies and gentlemen.  We have your

17:18:27   18    note and I've reviewed it with the attorneys and I'm

17:18:30   19    going to answer it as best as I can at this point.  But,

17:18:33   20    if this doesn't answer your question, you're free to

17:18:37   21    provide me with more specifics and that answer will

17:18:42   22    hopefully be more specific.  The best I can answer the

17:18:45   23    question at this point is to say as follows.  In order

17:18:47   24    to find in favor of the Plaintiff on the particular

17:18:51   25    claim that you are considering, you must find that the

A-2741

530

|  | J. ORTIZ VS. M. STAMBACH |
|---|---|

1      J. ORTIZ VS. M. STAMBACH

17:18:55  2   Plaintiff has proven by a preponderance of evidence each

17:19:00  3   of the elements set forth in the cause of action under

17:19:04  4   consideration. So I'm going to send you back for your

17:19:11  5   deliberations but you're welcome to send additional

17:19:14  6   notes. I had my courtroom deputy indicate to you as

17:19:18  7   well that if you want us to order dinner for you, we can

17:19:21  8   do that. I'll have Dawn go back to the deliberation

17:19:29  9   room and when you all go back down there and if you want

17:19:32  10  us to do that, let us know. Alternatively, you're not

17:19:36  11  hostages so to speak. You're also if you want to, if

17:19:42  12  you're not finished with your deliberations and you want

17:19:44  13  to come back on Wednesday, we can do that as well. It's

17:19:47  14  entirely up to you. So with that being said, I'm going

17:19:51  15  to have you return to the deliberation room.

17:19:55  16      MR. FELLE: Would you mind reading that one

17:19:57  17  more time?

17:19:57  18      THE COURT: Not at all. And as I said, if

17:20:01  19  this is not answering your question, then be more

17:20:04  20  specific and I will be able to be more specific in order

17:20:08  21  to find in favor of the Plaintiff on the particular

17:20:14  22  claim that you are considering. So three causes of

17:20:17  23  action here that you're considering in order to find in

17:20:23  24  favor of the Plaintiff on the particular claim that

17:20:25  25  you're considering, you must find that the Plaintiff has

A-2742

531

J. ORTIZ VS. M. STAMBACH

1

17:20:29   2   proven by a preponderance of evidence each of the

17:20:35   3   elements set forth in the cause of action under

17:20:38   4   consideration.

17:20:43   5          MR. FELLE:  All right.  Yes.

17:20:48   6          THE COURT:  I'll have you return to your

17:20:50   7   deliberations and Dawn, go down there as well and get a

17:20:53   8   sentence of what they would like to do in terms of

17:20:57   9   scheduling.  Thank you.

17:21:09  10          (Whereupon the jury is escorted from the

17:21:12  11   courtroom.)

17:21:18  12          THE COURT:  All right.  I'd ask that you not

17:21:22  13   leave the building.  Let's stay and you're welcome to

17:21:24  14   stay in the courtroom or stay in the vicinity because

17:21:28  15   we'll find out what they want to do.  Thank you.

17:21:28  16          (Whereupon, there was a break at 5:21 p.m.)

19:46:05  17                (TIME 7:43 P.M.)

19:46:05  18          THE COURT:  All right.  Note the presence of

19:46:07  19   all counsel and Mr. Ortiz and Mr. Stambach.  We have a

19:46:10  20   note that indicates we have a verdict.  And we will mark

19:46:14  21   this court exhibit.

19:46:17  22          THE CLERK:  Five, Judge.

19:46:18  23          THE COURT:  So, our jury is being brought

19:46:20  24   up.  Mike, you can let me know.  I saw them walking out

19:46:28  25   there.  Once -- is JP with them?  You can let JP know

A-2743

532

|        |    |                                                        |
|--------|----|--------------------------------------------------------|
|        | 1  | J. ORTIZ VS. M. STAMBACH                               |
| 19:46:32 | 2  | that they can come out whenever you're ready.  Thank   |
| 19:46:35 | 3  | you.                                                   |
| 19:47:59 | 4  | (Whereupon the jury is escorted into the              |
| 19:48:01 | 5  | courtroom.)                                            |
| 19:48:14 | 6  | THE COURT:  All right.  Ladies and                    |
| 19:48:15 | 7  | gentlemen, thank you.  Welcome back.  Everybody, can   |
| 19:48:18 | 8  | have a seat.  So, I understand from your note that you |
| 19:48:22 | 9  | have reached a verdict.  So here is what's going to    |
| 19:48:25 | 10 | happen?  I'm first going to ask my courtroom deputy to |
| 19:48:29 | 11 | obtain the verdict sheet from our foreperson, bring it |
| 19:48:33 | 12 | to me so that I can inspect it and make sure that it's |
| 19:48:37 | 13 | in the proper form, so, Dawn.  All right.  It does     |
| 19:49:05 | 14 | appear to be in the proper format.  What's going to    |
| 19:49:10 | 15 | happen is this, I'm going to return the verdict sheet. |
| 19:49:12 | 16 | I'll have my courtroom deputy return the verdict sheet |
| 19:49:16 | 17 | to our foreperson and we'll publish the verdict.  What |
| 19:49:19 | 18 | that means is, I'll go through each question on the    |
| 19:49:22 | 19 | verdict sheet.  Ms. Whiting, as the foreperson, I'll ask |
| 19:49:24 | 20 | you to give me the jury's response.  Once I read the   |
| 19:49:27 | 21 | questions.                                             |
| 19:49:28 | 22 | So, the first question with respect to the            |
| 19:49:31 | 23 | first cause of action:  Do you find that the Plaintiff |
| 19:49:33 | 24 | has demonstrated by a preponderance of evidence that the |
| 19:49:37 | 25 | Defendant maliciously prosecuted the Plaintiff.  And  |

A-2744

533

|   |   |
|---|---|
| 1 | J. ORTIZ VS. M. STAMBACH |
| 19:49:40  2 | your answer? |
| 19:49:42  3 | FOREPERSON:  Yes. |
| 19:49:43  4 | THE COURT:  Question number two, with |
| 19:49:45  5 | respect to the second cause of action, do you find that |
| 19:49:48  6 | the Plaintiff has demonstrated by a preponderance of |
| 19:49:51  7 | evidence that the Defendant fabricated evidence against |
| 19:49:54  8 | the Plaintiff and your answer to that question? |
| 19:49:57  9 | FOREPERSON:  Yes. |
| 19:50:00  10 | THE COURT:  Question No. 3, with respect to |
| 19:50:02  11 | the third cause of action, do you find that the |
| 19:50:05  12 | Plaintiff has demonstrated by a preponderance of |
| 19:50:09  13 | evidence that the Defendant violated Plaintiff's Fifth |
| 19:50:12  14 | Amendment right against self incrimination.  And the |
| 19:50:15  15 | answer? |
| 19:50:16  16 | FOREPERSON:  Yes. |
| 19:50:18  17 | THE COURT:  So, you move to the section on |
| 19:50:20  18 | damages.  Question No. 4.  What amount, if any, in |
| 19:50:28  19 | compensatory damages do you find will fairly and |
| 19:50:31  20 | adequately compensate the Plaintiff for the damages, if |
| 19:50:34  21 | any, that were proximately caused by the Defendant and |
| 19:50:38  22 | the jury's answer. |
| 19:50:40  23 | FOREPERSON:  Five million dollars. |
| 19:50:42  24 | THE COURT:  So you did not answer question |
| 19:50:44  25 | five.  Question No. 6, with respect to punitive damages, |

A-2745

534

                    J. ORTIZ VS. M. STAMBACH

1

2  do you find that the punitive damages should be awarded

3  in favor of the Plaintiff.  And the answer?

4                 FOREPERSON:  Yes.

5                 THE COURT:  All right.  Thank you very much.

6                 Mr. Felle, does the Plaintiff wish to poll

7  the jury?

8                 MR. FELLE:  No, Your Honor.

9                 THE COURT:  Mr. Russ.

10                MR. RUSS:  No, Your Honor.

11                THE COURT:  All right.  I need to talk to

12 the attorneys about an issue that remains to be

13 resolved.  I know it's late, but I'm going to ask you to

14 return to the deliberation room.  I am going to ask my

15 courtroom deputy to retrieve the verdict sheet from Ms.

16 Whiting, but then just return to the deliberation room

17 and we will be back with you very shortly, I promise.

18 Thank you.  All right.  You can have a seat.  We have

19 the issue of punitive damages.  So, I want to hear from

20 you each of you as to what you would like to do, it's,

21 obviously, ten of 8 right now.  I don't know if you were

22 planning on presenting any proof, Mr. Felle, in support

23 of punitive damages?

24                I know you probably -- we didn't get this

25 far, but we're here now.

1                      J. ORTIZ VS. M. STAMBACH
19:52:26   2          MR. FELLE:  I'm stunned by everything.  But,
19:52:28   3   no, I think when Your Honor made the decision to
19:52:29   4   bifurcate.
19:52:30   5          THE COURT:  You can take off your mask.
19:52:32   6          MR. FELLE:  When Your Honor made the
19:52:33   7   decision to bifurcate, I think it was with the idea
19:52:36   8   there would be some acknowledgement that the City of
19:52:40   9   Buffalo would indemnify the Defendant with such a
19:52:44  10   verdict with that statement to the jury, that is all I
19:52:47  11   would intend to do.  I would be fine for them to go back
19:52:50  12   to the issue.  I know exactly what you're saying, it's
19:52:53  13   very late, but the alternative would be to come back on
19:52:56  14   Wednesday.
19:52:56  15          THE COURT:  I prefer not to do that.  Mr.
19:52:58  16   Russ, because the law is different, in other words, the
19:53:03  17   law is different, if, in fact, the City of Buffalo
19:53:08  18   indemnifies Mr. Stambach.  If it doesn't, then his
19:53:10  19   financial net worth would be a relevant issue.  But, if
19:53:15  20   it does, then it's not.  But, I mean, what is the
19:53:20  21   defense position on this in terms of how to proceed from
19:53:25  22   here?
19:53:25  23          MR. RUSS:  I, frankly, don't know, Your
19:53:28  24   Honor.  Punitive damages, I don't know whether a
19:53:34  25   municipality can indemnify for punitive damages.  That

A-2747

536

                    J. ORTIZ VS. M. STAMBACH

19:53:40  2   being said, everything I've been told by the City all

19:53:43  3   along has been, you know, we stand behind Detective

19:53:49  4   Stambach.

19:53:49  5                    THE COURT:  Was the defense planning on

19:53:51  6   presenting any proof in connection with the punitive

19:53:54  7   damages issue?

19:53:54  8                    MR. RUSS:  My answer to that, Your Honor, is

19:54:02  9   no proof, but if the Plaintiff makes argument concerning

19:54:08  10  it, I would like a chance to make argument.

19:54:10  11                    THE COURT:  So you would like to each make

19:54:12  12  closing arguments in support of punitive damages?

19:54:17  13                    MR. FELLE:  I guess I'm just thinking out

19:54:19  14  loud.  I think we addressed it.  I think it was

19:54:21  15  addressed in the charge the Court gave relative to,

19:54:24  16  generally speaking, punitive damages, what would be the

19:54:27  17  basis to warrant them, and so if the Court would agree

19:54:32  18  there is no further charge, I wouldn't have any other

19:54:35  19  statements to make.  I would rely on what we already

19:54:37  20  spoke to the jury about.

19:54:38  21                    THE COURT:  I haven't given the charge on

19:54:40  22  the amount of punitive damages.  There is another charge

19:54:43  23  for that.

19:54:44  24                    MR. FELLE:  I wasn't aware of that.  I

19:54:53  25  guess, just continuing to think out loud, I think it

A-2748

537

1                    J. ORTIZ VS. M. STAMBACH

19:54:56  2   would be more fair for the jury to continue tonight as

19:55:00  3   unfair as it seems as opposed to Wednesday.

19:55:03  4             THE COURT:  I don't disagree with that.  I

19:55:05  5   don't -- they wanted to stay and work through this

19:55:11  6   today.  Let me do this, let me go get the charge that I

19:55:15  7   would give on the punitive damages.  And I'll be back

19:55:17  8   out in a minute.

19:55:17  9             (Whereupon, there was a pause in the

19:57:43  10  proceeding.)

19:57:43  11            You can have a seat, everybody.  So, the

19:57:46  12  standard instruction from what I call *Sands* on punitive

19:57:50  13  damages.  Part of it I've already given as part of the

19:57:53  14  charge about whether or not to award punitive damages

19:57:56  15  for conduct that is shocking, set and example, to deter,

19:58:02  16  et cetera.  The second part of the instruction, though,

19:58:09  17  is the awarding of punitive damages is within your

19:58:12  18  discretion says you are not required to award them.

19:58:18  19  That has already happened.  I think, I should say, the

19:58:24  20  awarding of punitive damages is within your discretion.

19:58:29  21  If you decide, well, they have decided you must use

19:58:36  22  sound reason in setting the amount.  It must not reflect

19:58:40  23  bias, prejudice or sympathy toward any party, but the

19:58:45  24  amount may be as large as you believe necessary to fill

19:58:47  25  the purposes of punitive damages and then there is this

A-2749

J. ORTIZ VS. M. STAMBACH

19:58:50  2  sentence:  In this regard, you may consider the

19:58:53  3  financial resources of the Defendant in fixing the

19:58:55  4  amount of punitive damages and you may impose punitive

19:58:59  5  damages against one or more defendants that doesn't

19:59:02  6  apply.  It seems to me that if both of you agree that

19:59:07  7  there is no further proof, and both of you agree, and I

19:59:12  8  don't know that you don't, but if both of you agree

19:59:14  9  there is no further argument that you want to make, or

19:59:17  10  maybe you do, I don't know, that -- that there is not

19:59:21  11  going to be any proof as to the Defendant's financial

19:59:25  12  resources, and, therefore, the indemnification by the

19:59:29  13  City of Buffalo or not doesn't become and issue and so

19:59:33  14  we could simply proceed with having the jury come back

19:59:36  15  out here and me indicating to them that the amount of

19:59:40  16  punitive damages to be awarded is within your

19:59:43  17  discretion.  Punitive damages, you must use sound reason

19:59:53  18  in establishing the amount.  It must not reflect bias,

19:59:56  19  prejudice or sympathy toward any party, but the amount

19:59:59  20  may be as large as you believe necessary to fulfill the

20:00:03  21  purpose of punitive damages, period.

20:00:06  22       MR. FELLE:  Period, yes.

20:00:07  23       THE COURT:  So, I guess, Mr. Felle, I hear

20:00:11  24  you saying you're not intending to present any further

20:00:14  25  proof.  And I guess I'm not clear on whether or not

A-2750

|  | 1 | J. ORTIZ VS. M. STAMBACH |
|---|---|---|
| 20:00:17 | 2 | you're asking to make further argument to the jury. |
| 20:00:20 | 3 | MR. RUSS: I'm prepared not to make any |
| 20:00:22 | 4 | other arguments. If counsel is in the same light, and, |
| 20:00:25 | 5 | Your Honor, I think the only thing I would -- I don't |
| 20:00:28 | 6 | know if Your Honor is already thinking this would be to |
| 20:00:31 | 7 | read in context the other paragraph about punitive |
| 20:00:34 | 8 | damages that was already read and then the paragraph you |
| 20:00:37 | 9 | just indicated, right? |
| 20:00:38 | 10 | THE COURT: Okay. I could do that, reread |
| 20:00:40 | 11 | my instruction, although, keep in mind, they've had that |
| 20:00:43 | 12 | instruction down there with them. |
| 20:00:47 | 13 | MR. FELLE: Well I just think it puts into |
| 20:00:49 | 14 | context what you say next in relation to what punitive |
| 20:00:52 | 15 | damages are for. |
| 20:00:57 | 16 | THE COURT: Mr. Russ. |
| 20:00:58 | 17 | MR. RUSS: It sounds to me, Your Honor, that |
| 20:01:00 | 18 | Mr. Felle intends to put on neither proof nor make |
| 20:01:04 | 19 | argument. And if that is the case, I will do the same, |
| 20:01:09 | 20 | that is, I will not put on proof and I will not make |
| 20:01:12 | 21 | argument. |
| 20:01:12 | 22 | THE COURT: And are you, in terms of the |
| 20:01:15 | 23 | instruction I give, any concerns about that? In other |
| 20:01:17 | 24 | words, I guess I will -- I don't know, I mean they've |
| 20:01:28 | 25 | already answered the question, yes, on punitive damages. |

A-2751

540

J. ORTIZ VS. M. STAMBACH

20:01:31  2   I'm not sure it makes sense for me to reread the

20:01:34  3   instruction that I already gave.

20:01:36  4           MR. FELLE:  Well, I just -- the information

20:01:38  5   that you just read, it tells them that it has to be

20:01:41  6   specific, I suppose, but when you look at the charge you

20:01:44  7   already gave, it says the purpose of punitive damages

20:01:47  8   is, you know, gives it context.  I know what you're

20:01:50  9   saying, they already have this and probably are aware of

20:01:53  10  this, but if you go to another stage and you only read

20:01:56  11  the other part, they may think that a part applies.

20:01:59  12           THE COURT:  Do you have any objection, Mr.

20:02:00  13  Russ, to me, rereading the punitive instruction that I

20:02:04  14  already gave.

20:02:05  15           MR. RUSS:  It's like one paragraph?

20:02:06  16           THE COURT:  Yes, two paragraphs.

20:02:08  17           MR. RUSS:  Two paragraphs.  No objection,

20:02:10  18  Your Honor.

20:02:10  19           THE COURT:  Okay.  Colleen, do you have a

20:02:12  20  verdict sheet for the punitive damages?

20:02:20  21           LAW CLERK:   I do, Judge.

20:02:20  22           THE COURT:  And there is a copy of it.

20:02:22  23           I guess I should see a copy of it as well.

20:02:46  24           This verdict sheet looks fine to me.  Any

20:02:49  25  issues?

A-2752

541

```
            1              J. ORTIZ VS. M. STAMBACH

20:02:49    2              MR. FELLE:  No issue, Your Honor.  I

20:02:50    3    approve, also.

20:02:51    4              THE COURT:  Mr. Russ?

20:02:52    5              MR. RUSS:  Just taking a quick look.  I'm

20:02:55    6    sorry, Your Honor.  That's fine, Your Honor.

20:03:01    7              THE COURT:  Okay.  Let's bring our jury back

20:03:03    8    out, Mike.

20:03:03    9              (Whereupon, the jury was escorted into the

20:03:03   10    courtroom.)

20:04:12   11              THE COURT:  All right.  Ladies and

20:04:13   12    gentlemen, everybody can have a seat.  Thank you for

20:04:15   13    your patience.  So there is one remaining issue for you

20:04:18   14    to decide.  And that is the amount of punitive damages.

20:04:22   15    Now, I know it's late, and if after I give you this

20:04:25   16    brief instruction, you go back and you say, "we don't

20:04:29   17    want to do this tonight, we want to come back on

20:04:31   18    Wednesday," that's fine.  But I want to give you the

20:04:34   19    opportunity to decide this issue tonight.  If that is

20:04:37   20    how you would like to proceed.  I am, first, though,

20:04:40   21    going to reread to you my instructions that I gave you

20:04:44   22    earlier today on punitive damages just to remind you

20:04:49   23    what I had said earlier and that was as follows.  I said

20:04:52   24    if you should find that the Defendant is liable for the

20:04:56   25    Plaintiff's injuries, then you have the discretion to
```

A-2753

542

J. ORTIZ VS. M. STAMBACH

20:04:59  2    award in addition to compensatory damages, punitive

20:05:02  3    damages.  And, obviously, you all answered, yes, that

20:05:05  4    you want to make that award.

20:05:07  5          I had indicated you may award punitive

20:05:09  6    damages if the Plaintiff proves by a preponderance of

20:05:14  7    evidence that a Defendant's conduct was malicious and

20:05:16  8    reckless, not merely unreasonable.  An act is malicious

20:05:21  9    and reckless if it is done in such a manner and under

20:05:25  10   such circumstances as to reflect utter disregard for the

20:05:29  11   potential consequences of the acts on safety and rights

20:05:34  12   of others.  The purpose of punitive damages is to punish

20:05:38  13   a Defendant for shocking conduct, and to set an example

20:05:42  14   in order to deter him and others from committing similar

20:05:45  15   acts in the future.  The awarding of punitive damages is

20:05:50  16   within your discretion.  You are not required to award

20:05:53  17   them.  Punitive damages are appropriate only for an

20:05:56  18   especially shocking and offense misconduct.  If you

20:06:00  19   decide to award punitive damages, you must use sound

20:06:04  20   reason without any influence, bias, prejudice or

20:06:07  21   sympathy toward any party.  Now, I'm going to give you

20:06:12  22   just one further instruction on what you should consider

20:06:17  23   in awarding an amount of punitive damages because you've

20:06:21  24   indicated, yes, that you want to award punitive damages,

20:06:24  25   but the question now is what is that amount.  You must

A-2754

543

J. ORTIZ VS. M. STAMBACH

20:06:28 2  use sound reason in setting the amount.  It must not

20:06:32 3  reflect bias, prejudice or sympathy toward any party.

20:06:37 4  But, the amount may be as large as you believe necessary

20:06:41 5  to fulfill the purpose of punitive damages.

20:06:45 6           All right.  Ladies and gentlemen, I'll just

20:06:48 7  check.  Mr. Felle, do you have any exception to the

20:06:51 8  charge?

20:06:51 9           MR. FELLE:  No exception, Your Honor.

20:06:52 10          THE COURT:  Mr. Russ?

20:06:53 11          MR. RUSS:  No, Your Honor, thank you.

20:06:54 12          THE COURT:  All right.  Thank you.  Ladies

20:06:56 13 and gentlemen, I have a verdict sheet for you to use in

20:07:00 14 setting the amount of punitive damages.  I'd ask you,

20:07:03 15 though, I'm going to have Dawn go back into that

20:07:06 16 deliberation room with you to find out, first of all, do

20:07:10 17 you want to decide this tonight, which, if so, is

20:07:14 18 totally fine.  Do you want to stay in there or go back

20:07:17 19 downstairs and I'll have Dawn gauge how you would like

20:07:20 20 to proceed.  Thank you very much, everybody.

20:07:20 21          (Whereupon, the jury was escorted from the

20:07:20 22 courtroom to continue deliberations at 8:07 p.m.)

20:07:48 23          All right.  I'll let you know as soon as we

20:07:51 24 hear anything.  Stay close, thank you.

20:22:21 25          (TIME: 8:22 P.M.)

A-2755

544

|  |  |
|--|--|
| | 1 |

J. ORTIZ VS. M. STAMBACH

| Time | Line | |
|------|------|--|
| 20:22:21 | 2 | THE COURT:  We're back on the record.  Note |
| 20:22:22 | 3 | the presence of all counsel, Mr. Felle, Mr. Russ and Mr. |
| 20:22:31 | 4 | Sahasrabudhe and Mr. Stambach, and Mr. Ortiz.  This is |
| 20:22:45 | 5 | court Exhibit 6.  Let's bring our jury in. |
| 20:22:45 | 6 | (Whereupon, the jury was escorted into the |
| 20:22:45 | 7 | courtroom.) |
| 20:23:46 | 8 | All right.  Welcome back, ladies and |
| 20:23:48 | 9 | gentlemen.  Everybody can have a seat.  I understand |
| 20:23:50 | 10 | that you reached an amount with respect to punitive |
| 20:23:53 | 11 | damages.  I do have to inspect the jury sheet with this |
| 20:23:57 | 12 | as well.  I'll ask my courtroom deputy to please |
| 20:24:00 | 13 | retrieve the verdict sheet from our foreperson. |
| 20:24:14 | 14 | Thank you, Dawn. |
| 20:24:15 | 15 | It is signed and there is an amount, so I |
| 20:24:17 | 16 | now am going to return it to our foreperson so that the |
| 20:24:21 | 17 | verdict can be published.  All right.  And let me ask |
| 20:24:28 | 18 | you, what is the amount of punitive damages that the |
| 20:24:30 | 19 | jury has decided to award in favor of the Plaintiff? |
| 20:24:36 | 20 | FOREPERSON:  1.5 million dollars. |
| 20:24:38 | 21 | THE COURT:  Thank you very much. |
| 20:24:39 | 22 | Mr. Felle, does the Plaintiff wish to poll |
| 20:24:41 | 23 | the jury? |
| 20:24:42 | 24 | MR. FELLE:  No, Your Honor. |
| 20:24:43 | 25 | THE COURT:  Mr. Russ. |

J. ORTIZ VS. M. STAMBACH

20:24:44  2          MR. RUSS:  No, thank you, Your Honor.

20:24:45  3          THE COURT:  Any reason, Mr. Felle, that I

20:24:47  4  cannot discharge this jury.

20:24:49  5          MR. FELLE:  No, you may discharge this jury.

20:24:52  6  Thank you.

20:24:52  7          THE COURT:  All right.  Mr. Russ.

20:24:54  8          MR. RUSS:  No reason, Your Honor.  Thank

20:24:56  9  you.

20:24:56  10         THE COURT:  All right.  Ladies and

20:24:58  11  gentlemen, I want to publically thank you for all of the

20:25:00  12  work that you've put into this case, and I would like to

20:25:03  13  privately thank you.  So, I know it's late, but if you

20:25:06  14  wouldn't mind waiting for a moment in the deliberation

20:25:09  15  room, I will be back there in a minute.  So, thank you

20:25:12  16  very much, ladies and gentlemen.  And Dawn will retrieve

20:25:20  17  that from you, actually, the verdict sheet.  Thank you.

20:25:25  18         THE COURT:  Thank you.

20:25:35  19         (Whereupon, the jury was excused and

20:25:38  20  discharged.)

20:25:38  21         THE COURT:  All right.  We are finished for

20:25:42  22  today.  Just a reminder that there cannot be any contact

20:25:45  23  with this jury without court supervision.  So, in the

20:25:49  24  event anybody wanted to do that, you need my permission.

20:25:52  25         MR. RUSS:  Yes, Your Honor.  Just for record

A-2757

546

J. ORTIZ VS. M. STAMBACH

20:25:54  2  purposes, at the close of Plaintiff's proof, we moved

20:26:00  3  under Rule 50 for a directed verdict.  At this time, I

20:26:04  4  would renew that motion and also ask the Court to allow

20:26:12  5  me the opportunity under Rule 50(b) to take 28 days to

20:26:18  6  make submissions on that issue.

20:26:20  7          THE COURT:  That is fine.  And what will

20:26:23  8  happen, Mr. Felle, is if there is a -- once there is

20:26:26  9  written submission, I'll set a deadline then for any

20:26:30  10  response from the Plaintiff to respond to those written

20:26:34  11  submissions.  I think it probably would be best if I

20:26:37  12  just set a firm deadline so that there is no dispute.

20:26:41  13  So --

20:26:42  14          MR. RUSS:  That is even better.

20:26:43  15          THE COURT:  So, today is May 9th.  What

20:26:45  16  about June 15th?  Is that a Friday, Dawn?

20:26:54  17          THE CLERK:  That is a Wednesday; the 17th

20:26:56  18  would be that Friday.

20:26:57  19          THE COURT:  What about June 15th for the

20:27:00  20  filing of any post-verdict written motions on the part

20:27:04  21  of the defense.

20:27:05  22          Any objection to that, Mr. Felle?

20:27:07  23          MR. FELLE:  No, Your Honor.

20:27:07  24          THE COURT:  Does that work, Mr. Russ?

20:27:10  25          MR. RUSS:  That's correct, Your Honor.

A-2758

547

```
                        J. ORTIZ VS. M. STAMBACH
```

1

20:27:11  2   Thank you.

20:27:11  3            THE COURT:  And then once those are filed,

20:27:13  4   I'll set a deadline for the Plaintiff to respond, and

20:27:18  5   any further proceedings.

20:27:21  6            MR. FELLE:  Okay.

20:27:22  7            THE COURT:  Any questions?  Anything else,

20:27:24  8   Mr. Felle?

20:27:24  9            MR. FELLE:  No, it's been a tumultuous week.

20:27:31  10  I'm glad it ended this way.

20:27:34  11            THE COURT:  Mr. Russ or Mr. Sahasrabudhe.

20:27:39  12            MR. RUSS:  Sorry, Your Honor.  My learned

20:27:42  13  counsel is whispering in my bad ear.

20:27:48  14            Nothing further, Your Honor.

20:27:49  15            THE COURT:  Okay.  Safe trip back to

20:27:50  16  Buffalo, everybody.  Thank you.

20:27:54  17            MR. ORTIZ:  Thank you, Your Honor.

20:27:54  18            THE COURT:  Thank you, Mr. Ortiz.

20:27:56  19            Do you have the certificates?

20:27:58  20

21

22

23

24

25

A-2759

548

2                    *       *       *

3              CERTIFICATE OF REPORTER

4

5     I certify that the foregoing is a correct transcript

6  of the record of proceedings in the above-entitled

7  matter.

8

9  S/ Karen J. Clark,  RPR

10

   Official Court Reporter
11

A-2760

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                    Plaintiff,

          v.                                    1:16-CV-00321 EAW MJR

MARK STAMBACH,

                    Defendant.

## **Section I: Constitutional Claims**

(1)     With respect to the first cause of action, do you find that the Plaintiff has demonstrated by a preponderance of the evidence that the Defendant maliciously prosecuted the Plaintiff?

                    Yes __✓__   No____

*Proceed to Question 2.*

(2)     With respect to the second cause of action, do you find that the Plaintiff has demonstrated by a preponderance of the evidence that the Defendant fabricated evidence against the Plaintiff?

                    Yes __✓__   No____

*Proceed to Question 3.*

- 1 -

A-2761

(3)    With respect to the third cause of action, do you find that the Plaintiff has

demonstrated by a preponderance of the evidence that the Defendant violated

Plaintiff's Fifth Amendment right against self-incrimination?

Yes ___✓___    No_____

*If you answered "Yes" to any of Questions 1, 2, or 3, proceed to Section II.  If you answered "No" to all of Questions 1, 2, and 3, then you should not answer any more questions and should proceed to the signature page.*

A-2762

## Section II: Damages

(4)     Compensatory Damages.

What amount, if any, in compensatory damages do you find will fairly and adequately compensate the Plaintiff for the damages, if any, that were proximately caused by the Defendant?

$ _5 MILLION_

*If you find that Plaintiff is **not** entitled to compensatory damages, proceed to Question 5.  If you find that Plaintiff is entitled to compensatory damages, proceed to Question 6.*

(5)     Nominal Damages

If you find that the Plaintiff has proved that the Defendant violated his rights but has not proven an amount of compensatory damages, you are required to award the Plaintiff nominal damages, not to exceed one dollar.

$ _____

*Proceed to Question 6.*

(6)     Punitive Damages

Do you find that punitive damages should be awarded in favor of the Plaintiff?

Yes _✓_     No _____

**STOP: Please proceed to the signature page.**

- 3 -

A-2763

## Signature Page

Instructions to the Foreperson:   Once you have indicated the jury's answers to the questions above and have been directed by the instructions to the signature page, simply sign and date this page in the space provided below.   Then inform the court security officer that you have finished deliberating.

By his/her signature below, the jury foreperson affirms that the above are the answers of the unanimous jury in the case of *Josue Ortiz v. Mark Stambach*, 1:16-CV-00321.

S/Foreperson
_____
FOREPERSON

Dated: May 9, 2022

- 4 -

A-2764

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                    Plaintiff,

            v.                                          1:16-CV-00321 EAW MJR

MARK STAMBACH,

                    Defendant.

What amount of punitive damages do you find should be awarded to the Plaintiff?

$ ___1.5 MILLION___

**STOP: Please proceed to the signature page.**

- 1 -

A-2765

## **Signature Page**

<u>Instructions to the Foreperson</u>:  Once you have indicated the jury's answer to the question above simply sign and date this page in the space provided below.  Then inform the court security officer that you have finished deliberating.


By his/her signature below, the jury foreperson affirms that the above is the answer of the unanimous jury in the case of *Josue Ortiz v. Mark Stambach*, 1:16-CV-00321.


**S/Foreperson**
FOREPERSON

Dated: May 9, 2022

- 2 -

A-2766

Judgment in a Civil Case

## United States District Court
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ

     v.

MARK STAMBACH

**JUDGMENT IN A CIVIL CASE**
CASE NUMBER: 16-CV-321

☒ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the Plaintiff.

Damages awarded in the amount of $5 million in compensatory damages and $1.5 million in punitive damages.

Date: May 10, 2022

MARY C. LOEWENGUTH
CLERK OF COURT

By: s/ Colin J.
    Deputy Clerk

A-2767

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSUE ORTIZ | **NOTICE OF MOTION** |
| Plaintiff, | **Civil Action No.:** |
| | **1:16-cv-00321 (EAW-MJR)** |
| *vs.* | |
| MARK STAMBACH | |
| Defendant. | |

**PLEASE TAKE NOTICE** that upon the Declaration of Wayne C. Felle, Esq., dated May 18, 2022, with accompanying exhibits and the supporting Memorandum of Law, Plaintiff will move before the Hon. Elizabeth A. Wolford of the United States District Court for the Western District of New York at the United States District Courthouse in Rochester, New York on _____ at 10:00 a.m., or as soon thereafter as counsel may be heard, for an Order granting Plaintiff's motion for attorney's fees and costs pursuant to 42 U.S.C § 1988, together with such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE,** that pursuant to W.D.N.Y.L.R. 7(b)(2), the party opposing the motion must file its opposition papers with the Court and serve them upon the other parties not less than 17 days prior to the return date of the motion.

DATED:    May 20, 2022          **The Law Offices of Wayne C. Felle, P.C.**

By: *s// Wayne C. Felle* _
    Wayne C. Felle, Esq.
    *Attorney for Plaintiff, Josue Ortiz*
    6024 Main Street
    Williamsville, New York 14221
    Telephone: (716) 505-2700

A-2768

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JOSUE ORTIZ,

                                 Plaintiff,

        v.

MARK STAMBACH

                            Defendant.

**DECLARATION OF**
**WAYNE C. FELLE**

**1:16-cv-00321(EAW/MJR)**

**WAYNE C. FELLE,** pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.    I am an attorney with the Law Offices of Wayne C. Felle, P.C., ("Wayne C. Felle, P.C." or the "firm") attorney for Plaintiff, Josue Ortiz ("Plaintiff"), and I am a member in good standing with the United States District Court for the Western District of New York. As such, I am fully familiar with the facts, circumstances and prior proceedings relating to, and created by, the above-captioned action.

2.    This Declaration is submitted in support of Plaintiff's Application for attorney's fees, including litigation expenses and costs pursuant to 42 U.S.C § 1988.

3.    On behalf of the Plaintiff, Josue Ortiz, the Law Office of Wayne C. Felle, P.C., filed a claim in the United States District Court, Western District of New York, claiming violations of Constitutional rights, and violations of 42 U.S.C § 1983, that action was commenced on April 25, 2016, has been litigated by counsel for over six (6) years.

A-2769

4.      On May 9, 2022, following a jury trial, the jury returned a verdict in Mr. Ortiz' favor in the total amount of $6,500,000.00, finding the Defendant liable on all three causes of action alleging violations of 42 U.S.C. §1983 (Dkt. 160, 162))

5.      Attached is a ledger of time expended in representation of Josue Ortiz, which is a true and accurate bill for legal services rendered. The billing was made contemporaneously with the work performed and does not include work deemed to be incidental to legal representation, or duplicative in nature. See *Exhibit A"

6.      The legal fees claimed herein are calculated as follows:

| NAME | POSITION | HOURLY RATE | TIME EXPENDED | FEE ALLOCATION | |
|------|----------|-------------|---------------|----------------|--|
| Wayne Felle | Principal Attorney | $425.00 | 1065.4 | $452,795 | |
| Edward Markarian | Appellate Counsel | $335.00 | 150.8 | 53,600 | |
| Elizabeth Bruce | Associate Attorney | $325.00 | 24 | 7,800 | |
| Briana Croce | Paralegal | $125.00 | 190.7 | 23,837 | |
| | | | | | |
| TOTAL | | | | $538,032 | |
| | | | | | |

7.      Attached as *Exhibit B"* are a true and correct copy of the invoices for services Plaintiff, Josue Ortiz, has paid for legal costs in connection with his claims. The Court will note that Ortiz paid a total of $37,638.28 in fees and disbursements for services related to the prosecution and trial of his claims.

8.      Felle has not charged for incidental costs such as copies, fax transmissions, travel or office supplies. The costs taxed to Ortiz are actual paid, or to be paid, disbursements made on behalf of his claims.

9.      Felle is a small law firm which requires selective case retention. The choice to represent Mr. Ortiz meant that other cases could not be taken on, thus legal fees and income were lost.

10.      Wayne Felle, Esq., has been practicing law in Western New York since June 1994. After graduating from Canisius Collage with Political Science and Finance degree's he attended the University of Detroit Law School where he served as Student Bar Association president his senior year. He also worked at the law firm Christensen, Bannigan and Hayes which specialized in injury and commercial litigation. Upon returning to the Buffalo area Felle worked as an associate attorney at the Paul Beltz law firm working in the automobile liability and medical malpractice departments. The Beltz firm was a premier litigation firm in the region and allowed Felle to obtain a high level of proficiency in trial preparation. After leaving the Beltz firm Felle accepted a position at the law firm Rosenthal, Siegel, Menkel and Maloney where he was a senior litigation and trial attorney. Since 2002 Felle has maintained his own law firm and has secured numerous multi-million-dollar verdicts and settlements. Felle is a certified Trial Attorney through the New York State Academy of Trial Lawyers (obtained in 2010). He is a sustaining member of the New York State Bar Association, along with the Bar Association of Erie County. Felle has served on numerous Boards, including the YMCA where he is a Chairman's Round Table member.

11.     Attorney Elizabeth Bruce, Esq., was an associate attorney with Felle during the early stages of representation. She is a graduate from Western Michigan University where she acquired a Bachelor of Arts degree in Criminal Justice, she continued in her education attending Cooley Law School and was admitted to practice law in New York state in 2011. Before accepting an associate position with Wayne C. Felle, PC Liz held a litigation position at Hagelin Kent, LLC. She now works as in-house counsel for New York Central Mutual.

12.     Attorney Edward Markarian, Esq., is a partner I the law firm Magavern, Magavern Grimm, LLP, where he concentrates his practice in appeals. Attorney Markarian served as a law clerk to the New York State Court of Appeals, Judge Richard D. Simmons from 1987-1988, and as legal assistant to the New York State Supreme Court, Appellate Division, Fourth Department, from 1985 -1986. He was a partner in the firm Hawthorn, Markarian & Siegel, PLLC until taking his current position with Magavern, as a partner. Markarian has also served as counsel to the New York State Board of Law Examiners for many years and serves on the Board of Directors of the Erie County Bar Association, where he has previously served as the Appellate Practice Committee chair.

13.     Briana Croce is a Senior paralegal specialist and office manager at the Law Office of Wayne C. Felle, PC. She attained her paralegal degree from Bryant & Stratton Collage and has attended numerous continuing legal education courses and training seminars in the field of litigation support.

14.     Felle has served as lead counsel on this case since its inception. In fact, Felle met with Ortiz while he was still incarcerated. Other attorneys, and paralegal Croce, have assisted in representation of Ortiz at the direction of Felle. All work reported in the attached ledger is work

required in the legal representation of Mr. Ortiz, and time entries were made contemporaneous to work performed.

15.    Based on the foregoing Felle respectfully requests that this Court grant his application for legal fees and costs reasonably and necessarily incurred in the representation of the Plaintiff.

Dated:        May 20, 2022

                                        Law Offices of Wayne C. Felle, P.C.

                                        By:    _s// Wayne C. Felle_____
                                               Wayne C. Felle
                                               *Attorney for Plaintiff*
                                               6024 Main Street
                                               Williamsville, New York 14221
                                               Telephone: (716) 505-2700

Case 1:16-cv-00321-EAW-MJR   Document 167-2   Filed 05/20/22   Page 2 of 20

A-2773

| J. ORTIZ | BILLING LEDGER | | | | | |
|---|---|---|---|---|---|---|
| Date of Serivce: | Description: | Hours Spent: | WCF | EAB | BEC | EJM |
| | | | | | | |
| 4/11/2014 | Obtained Dept of Corrections, Inmate info (EAB), reviewed (WCF) | 0.4 | 0.4 | | | |
| 4/12/2014 | Reqd Attica Prison records (EAB) , t/c Schwartz (EAB) | 0.6 | | 0.6 | | |
| 4/30/2014 | Review 440 motion papers, rev crim case, read J. Franczak decision (EAB 4.5)(WCF 6) | 10.5 | 6 | 4.5 | | |
| 7/21/2014 | meeting w/ crim records clerk, rev and req copies from file (EAB 3.4)(BEC .3) | 3.7 | | 3.4 | 0.3 | |
| 9/4/2014 | Client meeting, intake discussion, retention | 2.5 | 2.5 | | | |
| 9/5/2014 | draft/ send letter to Schwartz, on-line research (WCF 3) (EAB 0.5) | 3.5 | 3 | 0.5 | | |
| 9/8/2014 | Research crim case, Ltr to client (EAB 1.6) | 1.6 | | 1.6 | | |
| 9/16/2014 | Meeting with Schwartz, review 440 Motion, evidence | 4.5 | 4.5 | | | |
| 9/22/2014 | Rcvd ltr from client (.3) | 0.3 | 0.3 | | | |
| 9/24/2014 | Ltr to client (EAB 1.6) | 1.6 | | 1.6 | | |
| 10/15/2014 | Rcvd ltr from client (.3) | 0.3 | 0.3 | | | |
| 10/16/2014 | email former BPD det Delano (EAB) | 0.5 | | 0.5 | | |
| 10/24/2014 | Meeting with Velasquez (cousin), history of arrest, client | 2.2 | 2.2 | | | |
| 10/28/2014 | Rcvd ltr from client, t/c w/ Scwartz (.5) | 0.5 | 0.5 | | | |
| 10/31/2014 | Ltr to client, t/c w/ sister, emails (EAB 1.2) | 1.2 | | 1.2 | | |
| 11/10/2014 | Ltr from client | 0.3 | 0.3 | | | |
| 12/1/2014 | Rcvd ltr from client (.3) | 0.3 | 0.3 | | | |
| 12/8/2014 | Attend Court 440 motion, rcvd ltr from ECDA | 2.5 | 2.5 | | | |
| 12/9/2014 | Draft auths, t/c w/ crim def attys (EAB 1.2) | 1.2 | | 1.2 | | |
| 12/9/2014 | Client release, meeting, rcvd Order J. Franczak (EAB 6.2)(WCF 4.5) | 10.7 | 4.5 | 6.2 | | |
| 12/10/2014 | rev file, Ltr to client, scheduling meeting (EAB 1.4) | 1.4 | | 1.4 | | |
| 12/11/2014 | emails w/ EC Dept of mental health (EAB .5)(WCF.3) | 3.5 | 3 | 0.5 | | |
| 12/12/2014 | Contacted Court reporter, reqd transcript from 440 Motion/ hearing; t/c Scwartz | 0.7 | 0.7 | | | |
| 12/16/2014 | Meeting w/ client, calls to assist w/ housing, employment | 2.5 | 2.5 | | | |
| 1/15/2015 | Email to S. Coehn, schedule DeJac case rev (WCF .3) | 0.3 | 0.3 | | | |

A-2774

| 1/17/2015 | Meeting; review file | 1 | 1 | | | |
| 1/19/2015 | Client Meeting | 0.5 | 0.5 | | | |
| 1/23/2015 | Client Meeting, Rcvd app from PSS re. loan (WCF 1.2)(BEC .6) | 1.8 | 1.2 | 0.6 | | |
| 1/27/2015 | Draft Motion to expunge, ECC | 4.5 | 4.5 | | | |
| 1/28/2015 | Attended Wrongful Conviction Summit, DA Sedita | 8 | 8 | | | |
| 1/30/2015 | Meeting with client and press | 1 | 1 | | | |
| 2/2/2015 | Rcvd letter from J. Pigott, t/c w/ Judge (.5) | 0.5 | 0.5 | | | |
| 2/9/2015 | Motion to expunge, J. Franczak; t/c D'Augistino | 2 | 2 | | | |
| 2/10/2015 | Call to Det Evans, S Cohen, investigation of claim | 1.8 | 1.8 | | | |
| 2/11/2015 | Research claim; copies from cases investigation; Phone call to attorneys, Trott & Nuchereno; Conference call with USAG Tripi phone call with client, rcvd ltr from NYS disdabilty; ltr to economics expert (WCF 13.6)(BEC .8) | 14 | 13.2 | 0.8 | | |
| 2/14/2015 | Meeting with Cohen, review DeJac case materials | 3.5 | 3.5 | | | |
| 2/26/2015 | Received Dr. Reiber's report; drafted revisions to claim | 3 | 3 | | | |
| 3/5/2015 | Phone call with Client; moved to City Mission | 0.5 | 0.5 | | | |
| 3/12/2015 | Phone call from Social Security office; Talked to client | 0.5 | 0.5 | | | |
| 3/31/2015 | Ltr to client, re SSD appts (WCF .5)(BEC .8) | 1.3 | 0.5 | 0.8 | | |
| 4/23/2015 | Coordinate press conference, client meeting, | 2.2 | 2.2 | | | |
| 4/27/2015 | Research, Preperation of Claim | 5.1 | 5.1 | | | |
| 4/28/2015 | Draft Claim, Research | 6.2 | 6.2 | | | |
| 4/29/2015 | Client Meeting | 1 | 1 | | | |
| 5/4/2015 | Press conference | 3.5 | 3.5 | | | |
| 5/13/2015 | Revisions to Claim for Wrongful Incarceration in State Court, Research; Recvd app from PSS; meeting w/client | 3.8 | 2.4 | 1.4 | | |
| 5/20/2015 | Recd call from SSD office; rev file, draft State Claim (WCF 6) | 6 | 6 | | | |
| 5/28/2015 | Phone call with Client, draft State claim (WCF 4.2)(BEC .4) | 4.6 | 4.2 | 0.4 | | |
| 6/9/2015 | Ltr to Ct of Claims w/ filing fee and Claim (WCF 1)(BEC .5) | 1.5 | 1 | 0.5 | | |
| 6/10/2015 | Rcvd email response from former Det Delaney (EAB), t/c w/ Delaney, rev policies/ procedures BPD (EAB) | 0.8 | | | 0.8 | |
| 6/11/2015 | Sent Verified Claim to Attorney General and Court of Claims | 0.5 | 0.5 | | | |
| 6/15/2015 | Claim filed NY Court of Claims, service;  Recvd email receipt; rev. file | 3.9 | 3.9 | | | |
| 6/16/2015 | Sent Proposed Order to Judge Francyzk for access to sealed file | 0.5 | 0.5 | | | |

| Date | Description | | | |
|---|---|---|---|---|
| 6/25/2015 | Meeting with Judge Francyzk and Milling, advised to bring motion to unseal; draft motion | 6.5 | 6.5 | |
| 6/27/2015 | Rcvd ltr from Ct of Claims (WCF .3)(BEC(.2) | 0.5 | 0.3 | 0.2 |
| 6/29/2015 | draft motion, rev file, research (WCF 6.6)(BEC 1.2) | 7.8 | 6.6 | 1.2 |
| 6/30/2015 | prep Motion, notice, research (WCF 7.2)(BEC 2.1) | 9.3 | 7.2 | 2.1 |
| 7/2/2015 | served motion to unseal records J. Franczak (WCF 6)(BEC 1.4) | 7.4 | 6 | 1.4 |
| 7/8/2015 | Phone call with Client | 0.2 | 0.2 | |
| 7/10/2015 | Rcvd ltr from ECDA re. records disclosure (WCF1.4)(BEC .5) | 1.9 | 1.4 | 0.5 |
| 7/14/2015 | Emails w/ Erie co judge, ECDA re. disclosure of docs; Rcvd app w/ letter from PSS re: lien | 1.5 | 0.9 | 0.6 |
| 7/15/2015 | Rcvd, filed, served J. Franczak Order (WCF 2.8)(BEC .5) | 3.3 | 2.8 | 0.5 |
| 7/25/2015 | Received Answer/discovery demands from Attorney General; reviewed discovery documents | 2.5 | 2.5 | |
| 8/31/2015 | Client Meeting | 1 | 1 | |
| 9/10/2015 | Phone call to attorney- discussed case | 0.5 | 0.5 | |
| 11/4/2015 | Letter to Dr. Joseph- request exam of client | 0.5 | 0.5 | |
| 11/6/2015 | Client Meeting | 1 | 1 | |
| 11/17/2015 | Client Meeting | 1 | 1 | |
| 11/27/2015 | Reqd records from ECCo, Lakeshore (WCF (.3)(BEC .5) | 0.8 | 0.3 | 0.5 |
| 12/1/2015 | Rcvd reseponse to med req, t/c w/ Lakeshore, rev file (BEC .6) | 0.6 | | 0.6 |
| 12/4/2015 | Rcvd letter from Medicaid re. lien (WCF .2)(BEC.3) | 0.5 | 0.2 | 0.3 |
| 12/16/2015 | Client Meeting | 1 | 1 | |
| 12/8/2015 | Letter to Medicare regarding recovery | 0.5 | 0.5 | |
| 12/11/2015 | Client Meeting | 1 | 1 | |
| 12/16/2015 | Meeting w/ atty Cohen, rev DeJac case (WCF 3) | 3 | 3 | |
| 12/18/2015 | Client Meeting | 0.5 | 0.5 | |
| 1/13/2016 | Meeting with attorney to consult about case | 1.5 | 1.5 | |
| 1/14/2016 | Email to attorney- reviewed case | 0.5 | 0.5 | |
| 1/21/2016 | Telephone conference with attorney, Rcvd ltr from PSS re. lien (WCF .8)(BEC .4) | 1.2 | 0.8 | 0.4 |
| 2/5/2016 | Attended Court- Federal legal proceedings, reqd NFMMC records (WCF 4.6)(BEC 1.3) | 5.9 | 4.6 | 1.3 |
| 2/8/2016 | Emails w/ atty re. post crim charges | 0.8 | 0.8 | |
| 3/1/2016 | Email with attorney; regarding plea | 0.5 | 0.5 | |

| 3/16/2016 | Phone call with client | 0.5 | 0.5 | | |
| 3/17/2016 | email/ register w/ Fed Ct (WCF .4)(BEC .6) | 1 | 0.4 | 0.6 | |
| 4/6/2016 | Resp to State D/I, omnibus demands, discovery, VBOP, 1st Int (WCF 6)(BEC 2.5) | 8.5 | 6 | 2.5 | |
| 4/7/2016 | Draft of discovery documents (WCF 5)(BEC 1.5) | 6.5 | 5 | 1.5 | |
| 4/8/2016 | Client Meeting, signed VBOP, auths (WCF 1.5)(BEC.5) | 2 | 1.5 | 0.5 | |
| 4/11/2016 | Ltr w/ VBOP, resp and demands (WCF (1.5)(BEC 2) | 3.5 | 1.5 | 2 | |
| 4/15/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | 0.4 | |
| 4/16/2016 | prep Complaint fed ct (WCF 3)(BEC 1.2) | 4.2 | 3 | 1.2 | |
| 4/25/2016 | filed, paid - claims against City and County | 2 | 2 | | |
| 4/27/2016 | Filed Claim in Federal Court, service  (WCF 1.5)(BEC .8) | 2.3 | 1.5 | 0.8 | |
| 4/28/2016 | filed exhibits to claim (BEC .6) | 0.6 | | 0.6 | |
| 4/29/2016 | filed exhibits to claim (BEC .6) | 0.6 | | 0.6 | |
| 5/4/2016 | Ltr to ECDSS, t/c w/ client (WCF.5)(BEC.3) | 0.8 | 0.5 | 0.3 | |
| 5/6/2016 | Rcvd ltr from State Ct judge, scheduling conference (WCF .3) | 0.3 | 0.3 | | |
| 5/27/2016 | Rcvd ltr from atty, t/c w/ atty | 0.5 | 0.5 | | |
| 6/8/2016 | emails w/ PR atty, re. level of offense in PR | 0.6 | 0.6 | | |
| 6/14/2016 | Sent ltr w/ pmt for PR atty, to investigate convcition (WCF .6)(BEC.6) | 1.2 | 0.6 | 0.6 | |
| 6/22/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | 0.4 | |
| 6/28/2016 | Rcvd ltr from PR atty, re. prior crimes in PR, w/ cert copies of conviction, t/c and email w/ atty, rev file (WCF 2.2)(BEC.4) | 2.6 | 2.2 | 0.4 | |
| 6/30/2016 | Rcvd ltr from atty re. plea deal, rev file, t/c w/ client and atty | 1.5 | 1.5 | | |
| 7/6/2016 | State court conference, rcvd ltr from Judge hudson (WCF 3.4) | 3.4 | 3.4 | | |
| 7/7/2016 | rev file, t/c with client; requested updated medical records; sent auths to defense counsel, supp discovery (WCF 2.6)(BEC 1.2) | 3.8 | 2.6 | 1.2 | |
| 7/19/2016 | Rcvd ltr from atty, draft letter reply, rev file (WCF 1.2)(BEC.4) | 1.6 | 1.2 | 0.4 | |
| 7/25/2016 | Ltr w/ S/C to process served (WCF .4)(BEC .8) | 1.2 | 0.4 | 0.8 | |
| 7/29/2016 | Coordinate service of Fed Comp, file AOS (WCF 1.2)(BEC 2.5) | 3.7 | 1.2 | 2.5 | |
| 8/15/2016 | Answer filed by City & County, rev file (WCF 3.7)(BEC .6) | 4.3 | 3.7 | 0.6 | |
| 8/16/2016 | Rcvd ltr w/ med records (WCF .5)(BEC .2) | 0.7 | 0.5 | 0.2 | |
| 8/22/2016 | Rcvd Tex Order of Fed Ct Mag, rev file | 0.8 | 0.8 | | |
| 8/23/2016 | Rcvd text Order of Fed Ct mag, scheduling (WCF.3)(BEC.2) | 0.5 | 0.3 | 0.2 | |
| 9/2/2016 | Rcvd Lakeshore med records, ltr from State atty, rev | 2.2 | 2.2 | | |

Case 1:16-cv-00321-EAW-MJR   Document 167-2   Filed 05/20/22   Page 6 of 20

A-2777

| Date | Description | | | | |
|------|-------------|------|------|------|------|
| 9/22/2016 | Rcvd Rule 26 disclusre from County atty (WCF 1.3)(BEC.2) | 1.5 | 1.5 | | |
| 9/29/2016 | Court Conference- Fed Ct. Mag, rcvd Scheduling Order | 5.5 | 5.5 | | |
| 9/30/2016 | Letter to attorneys- stipulation for mediation (WCF .4)(BEC .4) | 0.8 | 0.4 | 0.4 | |
| 10/4/2016 | Sent Defense counsel letter, re. aff defenses raised (WCF .8)(BEC .5) | 1.3 | 0.8 | 0.5 | |
| 10/5/2016 | State court conference, rcvd ltr from Judge hudson (WCF 3.2) | 3.2 | 3.2 | | |
| 10/12/2016 | Phone Call to counsel- schedule depositions, rcvd ltr from county atty, emails medication (WCF1.2)(BEC 1) | 2.2 | 1.2 | 1 | |
| 10/18/2016 | E-filed Stipulation of Mediator; mailed copy to attorneys; Notice of Motion to obtain ECADO and BPD files (WCF 6.5)(BEC 2.2) | 8.7 | 6.5 | 2.2 | |
| 10/20/2016 | Phone call to counsel to discuss motions | 0.5 | 0.5 | | |
| 10/21/2016 | Rcvd ltr from mediator, scheuling, draft aff in support of release of Fed Ct file (WCF 2.4)(BEC.8) | 3.2 | 2.4 | 0.8 | |
| 10/25/2016 | Phone call with defense counsel | 0.5 | 0.5 | | |
| 10/26/2016 | Phone call with attorney | 0.5 | 0.5 | | |
| 10/27/2016 | Sent request for transcript, rcvd ltr from county atty adj motion return date (WCF .5)(BEC .8) | 1.3 | 0.5 | 0.8 | |
| 11/1/2016 | Drafted discovery; Rule 26 and Interrogatories, Ltr to State atty, reqd discovery responses, ebt dates (WCF 3.5)(BEC 1.5) | 5 | 3.5 | 1.5 | |
| 11/2/2016 | Sent correspondence to defense attorneys with discovery responses and demands | 0.5 | 0.5 | | |
| 11/3/2016 | Rcvd ltr from state atty w/ aff in support, aff reply from city atty, aff in opp from county atty (WCF 6.3)(BEC.8) | 7.1 | 6.3 | 0.8 | |
| 11/8/2016 | Drafted Reply Affirmation, research (WCF 5.6)(BEC .6) | 6.2 | 5.6 | 0.6 | |
| 11/9/2016 | Sent Reply Affirmation to Judge and attorneys (WCF 3.2)(BEC 1.2) | 4.4 | 3.2 | 1.2 | |
| 11/10/2016 | Court- Motion hearing in front of Judge Francyzk | 2 | 2 | | |
| 11/11/2016 | Drafted and sent stipulated order to attorneys for signature; also provided defense attorneys a copy of criminal files (WCF 2.6)(BEC 3.3) | 5.9 | 2.6 | 3.3 | |
| 11/16/2016 | Rcvd ltr from atty Humann re. post arrest, t/c w/ atty (WCF .6)(BEC .3) | 0.9 | 0.6 | 0.3 | |
| 11/22/2016 | emails w/ attys re. disclusre, rev file (WCF 1.5)(BEC .6) | 2.1 | 1.5 | 0.6 | |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 12/2/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | | 0.4 | |
| 12/5/2016 | t/c w/ county atty, emails, rev file, reschedule mediation (WCF 2.6)(BEC 1.6) | 4.2 | 2.6 | | 1.6 | |
| 12/7/2016 | Phone call with defense counsel regarding mediation; scheduled mediation | 1 | 1 | | | |
| 12/9/2016 | Sent letter to defense counsel- outstanding discovery, ltr to J Franczak re. stip Order, email to Niag Co. clerk req transcript  (WCF 1.5)(BEC .8) | 2.3 | 1.5 | | 0.8 | |
| 12/14/2016 | Rcvd ltr from city atty, dispute about stip Order (WCF .5)(BEC.2) | 0.7 | 0.5 | | 0.2 | |
| 12/19/2016 | Rcvd ltr from county atty, obj to prop Order (WCF.8)(BEC.4) | 1.2 | 0.8 | | 0.4 | |
| 12/23/2016 | Ltr sent to city, county attys w/ prop Order (WCF 1.2)(BEC.5) | 1.7 | 1.2 | | 0.5 | |
| 12/29/2016 | Rcvd ltr from State AG w/ discovery responses, rev file (WCF 2.2) | 2.2 | 2.2 | | | |
| 1/3/2017 | Ltr to State Court judge, Order granted by J. Franczak for files, entered, served  (BEC2.3)(WCF4.4) | 6.7 | 4.4 | | 2.3 | |
| 1/19/2017 | Fed court conference, rev file | 4 | 4 | | | |
| 1/23/2017 | rev file, ltr to defense attorneys | 1.5 | 1.5 | | | |
| 1/18/2017 | ltr from city atty, re. discovery, unsealing files (BEC .3)(WCF 1) | 1.3 | 1 | | 0.3 | |
| 1/31/2017 | Rcvd stip from city atty, mailed stip Order to Judge (BEC.5)(WCF.4) | 0.9 | 0.4 | | 0.5 | |
| 2/1/2017 | T/C from defense attorney, ltr from mediator (WCF.8)(BEC .4) | 1.2 | 0.8 | | 0.4 | |
| 2/9/2017 | Fed Court Conference, ltr to attys w/ Franczak Order (WCF 4.2)(BEC .6) | 4.8 | 4.2 | | 0.6 | |
| 2/23/2017 | prep for mediation, rev file, reseasch | 2.4 | 2.4 | | | |
| 2/24/2017 | Rcvd letter from city atty w/ disclosure 26(b) (WCF 2.3)(BEC .4) | 2.7 | 2.3 | | 0.4 | |
| 2/27/2017 | Mediation conf, rev file, summary to mediator, rcvd ltr of city atty to Fed Ct Mag w/ records, priv log (WCF 4.5)(BEC 1.2) | 5.7 | 4.5 | | 1.2 | |
| 3/1/2017 | Ltr to county atty, discovery (WCF 1.4)(BEC .4) | 1.8 | 1.4 | | 0.4 | |
| 3/8/2017 | Sent letter to county attorney, req discovery  (WCF 2.2)(BEC 1) | 3.2 | 2.2 | | 1 | |
| 3/16/2017 | State Court Conference; rcvd ltr from Court | 3.5 | 3.5 | | | |
| 3/23/2017 | Phone call with client, Rcvd ltr from PSS re. lien (WCF .7)(BEC .4) | 1.2 | 0.7 | | 0.4 | |
| 3/28/2017 | Meeting with client | 0.5 | 0.5 | | | |

A-2779

| Date | Description | | | | |
|---|---|---|---|---|---|
| 3/30/2017 | Rcvd ltr from USAG opposed disclosure of fed GJ testimony, rev file, call USAG (WCF 1.2)(BEC.6) | 1.8 | 1.2 | | 0.6 |
| 4/19/2017 | Fed Court conference (2), text entry of proceedings, rev file (WCF 4.5)(BEC .5) | 5 | 4.5 | | 0.5 |
| 4/20/2017 | Ltr to Mag Scott (WCF.8)(BEC.2) | 1 | 0.8 | | 2 |
| 5/1/2017 | Phone call with client | 0.5 | 0.5 | | |
| 5/16/2017 | rev file, research, prep motion to compel discovery (WCF 7.2)(BEC 2.2) | 9.4 | 7.2 | | 2.2 |
| 5/18/2017 | prep Motion to compel, rev file (WCF 4.3)(BEC 4.3) | 8.6 | 4.3 | | 4.3 |
| 5/22/2017 | prep motion, compile exhibits, prep mol (WCF 6.1)(BEC 3.7) | 9.8 | 6.1 | | 3.7 |
| 5/24/2017 | Drafted Motion to Compel (WCF 5.4)(BEC 2.2) | 7.6 | 5.4 | | 2.2 |
| 5/25/2017 | Filed Motion to Compel; sent to Judge | 0.5 | 0.5 | | |
| 5/31/2017 | Rcvd city atty reply to motion, rev file, research (WCF 2.3)(BEC .2) | 2.5 | 2.3 | | 0.2 |
| 6/7/2017 | State court conference, rcvd ltr from Judge hudson (WCF 3.2) | 3.2 | 3.2 | | |
| 6/13/2017 | Rcvd county response to discovery demands (WCF 1.5)(BEC .4) | 1.9 | 1.5 | | 0.4 |
| 6/17/2017 | Emails to press | 0.5 | 0.5 | | |
| 6/23/2017 | Rcvd Order of Fed ct mag, motion to compel(WCF 3)(BEC .5) | 3.5 | 3 | | 0.5 |
| 7/20/2017 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | | 0.4 |
| 7/24/2017 | Ltr from city atty, submit records to Fed CT mag for in-camara inspection, discovery responses from city, rev file (WCF 3.3)(BEC1.2) | 4.5 | 3.3 | | 1.2 |
| 7/25/2017 | Rcvd ltr w/ discovery from county atty, rev materials, rev file | 4.8 | 4.8 | | |
| 8/5/2017 | Meeting with attorney; reviewed file | 2.5 | 2.5 | | |
| 8/7/2017 | Exchanged all pleadings/discovery | 1 | 1 | | |
| 8/8/2017 | rev file, send discovery docs to co-counsel CD of file (WCF 3.5) | 3.5 | 3.5 | | |
| 8/9/2017 | Rcvd ltr from County attorney (WCF .2)(BEC .1) | 0.3 | 0.2 | | 0.1 |
| 8/15/2017 | Rcvd ltr from State attorney adjourning conference (WCF .4) | 0.4 | 0.4 | | |
| 8/17/2017 | Rcvd filed Declaration of city atty, motion to dismiss, rev file, research (WCF 4.3)(BEC .4) | 4.7 | 4.3 | | 0.4 |
| 8/28/2017 | Email to co-counsel | 0.5 | 0.5 | | |
| 9/6/2017 | Court conference | 2.5 | 2.5 | | |
| 9/11/2017 | Sent attorney forensic report | 0.5 | 0.5 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/20/2017 | Drafted and sent discovery responses to defense counsel; call to co-counsel | 3 | 3 | | |
| 10/4/2017 | emails, t/c w/ AP, rev file, provide docs, response (WCF 3.8)(BEC .6) | 4.4 | 3.8 | 0.6 | |
| 11/2/2017 | Filed reply to city atty motion (WCF 1.2)(BEC .2) | 1.4 | 1.2 | 0.2 | |
| 11/3/2017 | Rcvd ltr from city atty, w/ copy of MOL (WCF 2.4)(BEC .7) | 3.1 | 2.4 | 0.7 | |
| 11/22/2017 | Mailed file to co-counsel (WCF .4)(BEC 1.2) | 1.6 | 0.4 | 1.2 | |
| 1/3/2018 | Meeting with client; sent requested authorizations to counsel (BEC 2)(WCF.8) | 2.8 | 0.8 | 2 | |
| 1/8/2018 | Ltr to Fed Court (.6) | 0.6 | 0.6 | | |
| 1/10/2018 | Email to defense counsel- schedule depositions | 0.5 | 0.5 | | |
| 1/25/2018 | Phone Call to defense counsel; sent follow up email | 0.3 | 0.3 | | |
| 1/29/2018 | Rcvd ltr from city atty discovery responses, rev file (WCF 1.3) | 1.3 | 1.3 | | |
| 2/5/2018 | Meeting with client (WCF 1); sent requested authorizations to defense attorney; prep auths (BEC 1), sent auths to County atty (.4)(WCF.2) | 2.6 | 1.2 | 1.4 | |
| 2/6/2018 | Drafted and sent letter to defense counsel- confirming depositions; sent confirming letter to client (BEC .5)(WCF .5) | 1 | 0.5 | 0.5 | |
| 2/7/2018 | Meeting with client, Rcvd ltr from PSS re. lien (WCF 1.2)(BEC .6) | 1.8 | 1.2 | 0.6 | |
| 2/15/2018 | Rcdv ltr adjourning court conf, rescheduled (WCF .3)(WCF .2) | 0.5 | 0.3 | 0.2 | |
| 2/21/2018 | Meeting with client | 2 | 2 | | |
| 2/22/2018 | Drafted and sent requests for medical records | 1 | 1 | | |
| 2/28/2018 | Phone call with defense counsel- depositions cancelled, rescheduled new date; advised and sent client confirming letter (WCF .7)(BEC.2) | 0.9 | 0.7 | 0.2 | |
| 3/6/2018 | Rcvd filed Declaration of county atty, motion to dismiss, rev file, research (WCF 4.3)(BEC .4) | 4.7 | 4.3 | 0.4 | |
| 3/7/2018 | Court conference | 3.5 | 3.5 | | |
| 3/12/2018 | Client meeting, EBT prep (WCF 2) | 2 | 2 | | |
| 3/15/2018 | Prepared and conduceted Depositions - Ortiz | 6.5 | 6.5 | | |
| 3/20/2018 | Rcvd letter from State atty, reqd disclosure, auths | 0.5 | 0.5 | | |
| 3/27/2018 | Ltr to Def Attorney, with auths (BEC .5)(WCF .2) | 0.7 | 0.2 | 0.5 | |

| Date | Description | | | | |
|------|-------------|-----|-----|-----|-----|
| 4/3/2018 | rev file, meet w/ client, drafted and sent authorizations to defense counsel (BEC 1) (WCF .4) | 1.4 | 0.4 | | 1 |
| 4/4/2018 | State court conf | 2.8 | 2.8 | | |
| 4/12/2018 | Filed cross mtn Fed Ct Mag Scott, t/c w/ AP, emails (WCF 3.2)(BEC 1.2) | 4.4 | 3.2 | | 1.2 |
| 4/13/2018 | Filed AC fed ct, rev file, emails (WCF 1.3)(BEC .5) | 1.8 | 1.3 | | 0.5 |
| 4/23/2018 | Rcvd ltr from Def atty, with auths (BEC .3)(WCF .2) | 1.1 | 0.2 | | 0.3 |
| 4/25/2018 | Rcvd, rev MOL and opp declar of county atty, rcvd ltr w/ ECMC meds from State atty (WCF 3.2)(BEC .6) | 3.8 | 3.2 | | 0.6 |
| 5/18/2018 | Rcvd Fed Ct Mag report and rec (WCF 2.5)(BEC.3) | 2.8 | 2.5 | | 0.3 |
| 5/22/2018 | Email to co-counsel (WCF .2) | 0.2 | 0.2 | | |
| 6/6/2018 | Conference State Ct. | 3 | 3 | | |
| 6/7/2018 | Rcvd ltr from J. Hudson, re. conference & trial dates (WCF .3) | 0.3 | 0.3 | | |
| 6/11/2018 | Sent letter and plea transcript to defense counsel (WCF .3)(BEC .2) | 0.5 | 0.3 | | 0.2 |
| 8/1/2018 | State Ct conf, sched bifurcated trial | 3.8 | 3.8 | | |
| 8/4/2018 | meeting w/ AP, prep | 2.5 | 2.5 | | |
| 8/16/2018 | Drafted and sent subpoenas to Judge for signature; rev file, scheduled depositions (WCF 3.7)(BEC 2.4) | 6.1 | 6.1 | | |
| 8/20/2018 | Rcvd signed judicial subpeonas, rev file | 0.8 | 0.8 | | |
| 8/27/2018 | Ltr to city atty, scheduling EBT's w/ judicial subpeonas, rev file (WCF 4.3)(BEC 1.4) | 5.7 | 4.3 | | 1.4 |
| 8/31/2018 | Rcvd letter from city attorney w/ motion to quash subpeonas, rev file, draft reply (WCF 4.3)(BEC 1.3) | 5.6 | 4.3 | | 1.3 |
| 9/4/2018 | prep reply, rev file (WCF 3)(BEC 1.4) | 4.4 | 3 | | 1.4 |
| 9/5/2018 | prep x-motion/ reply, research, rev file (WCF 5.8) | 5.8 | 5.8 | | |
| 9/6/2018 | Filed x-motion in support of subpeonas, t/c w/ city and State atys (WCF 1.2)(BEC 1.6) | 2.8 | 1.2 | | 1.6 |
| 9/7/2018 | Rcvd reply aff from city atty, rev file, rcvd ltr from State ct scheduling motion (WCF 1.3)(BEC .3) | 1.6 | 1.3 | | 0.3 |
| 9/10/2018 | Rcvd letter from J. Hudson re. stiplation/ motions (WCF 1.3)(BEC .2) | 1.5 | 1.3 | | 0.2 |
| 9/25/2018 | Phone call with attorney, witness, prepare for EBT's (WCF 2.8) | 2.8 | 2.8 | | |
| 9/30/2018 | Rev medical records, prep exhibits, rev file in prep for EBT (WCF) | 3.2 | 3.2 | | |

**A-2782**

| Date | Description | | | | |
|---|---|---|---|---|---|
| 10/1/2018 | Prepared for and conducted Depositions (WCF 6.5) | 6.5 | 6.5 | | |
| 10/2/2018 | Sent defense counsel depositions exhibits | 0.5 | 0.5 | | |
| 10/9/2018 | Phone call with doctor; sent records w/ subpoena to review | 1 | 1 | | |
| 10/15/2018 | ltr to AP. t/c w/ client (WCF 2.6)(BEC .7) | 3.3 | 2.6 | 0.7 | |
| 10/24/2018 | draft, fax prop stip Order to counsel, recvd revisions from State AG (WCF 2.4)(BEC .8) | 3.2 | 2.4 | 0.8 | |
| 11/7/2018 | Rcvd ltr from St Court w/ stip Order re. disclosure (WCF .4)(BEC.2) | 0.6 | 0.4 | 0.2 | |
| 12/13/2018 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3); ltr t State attorney scheduling detective EBT's (BE. 4)(WCF.6); ltr to Dr. Liebergall re. EBT date (BEC .2)(WCF.2) | 2 | 0.8 | 1.2 | |
| 10/2/2018 | Ltr to State atty, enclose exhibits from EBT (BEC .3)(WCF .1) | 0.4 | 0.1 | 0.3 | |
| 10/15/2018 | Court Conference; Drafted and sent letter to co-counsel | 3 | 3 | | |
| 10/16/2018 | rev file, draft proposed stipulation, ltr to City and State attys (WCF 2.2)(BEC .5); rcvd ltr from Court schedules next conf (BEC .2) | 2.9 | 2.2 | 0.7 | |
| 10/24/2018 | Revised stipulation per attorneys requests; resent; phone call with Doctor | 1.5 | 1.5 | | |
| 10/25/2018 | Phone call to co-counsel | 0.2 | 0.2 | | |
| 10/26/2018 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | 0.4 | |
| 11/1/2018 | Prepared and send deposition transcripts | 0.5 | 0.5 | | |
| 11/7/2018 | Ct conference ct of claims | 2.3 | 2.3 | | |
| 11/8/2018 | Rcvd ltr from J. Hudson, re. conference & trial dates (WCF .3) | 0.3 | 0.3 | | |
| 11/5/2018 | Ltr to State atty re. depositions, Liebergall availability (WCF .4)(BEC .3) | 0.7 | 0.4 | 0.3 | |
| 11/3/2018 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | | 0.6 | |
| 11/5/2018 | Drafted and sent letter to defense counsel- depositions | 0.5 | 0.5 | | |
| 12/5/2018 | T/C w/ State atty Flynn vmm, rev file EBT scheduling (WCF .5) | 0.5 | 0.5 | | |
| 12/12/2018 | T/C w/ Flynn re. depsoition scheduling (WCF .4)(BEC .2) | 0.6 | 0.4 | 0.2 | |
| 12/13/2018 | Prepared documents and sent to doctor to review | 1 | 1 | | |
| 12/14/2018 | Drafted and sent letter to defense attorneys- outlining deposition schedule; Sent file to Doctor/Experts (WCF 3.4)(BEC 1.2) | 4.6 | 3.4 | 1.2 | |
| 1/3/2019 | Phone call with doctor; rescheduled- sent letter to client | 0.3 | 0.3 | | |

Case 1:16-cv-00321-EAW-MJR Document 167-2 Filed 05/20/22 Page 12 of 20

A-2783

| Date | Description | | | | |
|---|---|---|---|---|---|
| 1/4/2019 | Phone call with Judge Brunetti- discussed case | 0.5 | 0.5 | | |
| 1/7/2019 | Sent documents to Judge Brunetti for review (WCF .8)(BEC .6) | 1.4 | 0.8 | 0.6 | |
| 1/9/2019 | Ltr to Best Self reqd med records, rev file (WCF 1.6)(BEC 1.2) | 2.8 | 1.6 | 1.2 | |
| 1/10/2019 | Rev file, prep for Stambach EBT | 3.5 | 3.5 | | |
| 1/11/2019 | draft EBT outline, Stambach, rev file (4.2) | 4.2 | 4.2 | | |
| 1/14/2019 | Rev file, synopsis of Evans, prep outline for EBT (5.3) | 5.3 | 5.3 | | |
| 1/21/2019 | Rev file, prep exhibits, rev to EBT outline (2.6) | 2.6 | 2.6 | | |
| 1/23/2019 | Prepared and conducted defendants Deposition (Stambach) | 6.5 | 6.5 | | |
| 1/24/2019 | Depositions continued- M. Evans | 4.5 | 4.5 | | |
| 1/25/2019 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | | 0.6 | |
| 1/28/2019 | Sent email to defense attorneys- reschedule party depositions; phone call to expert; discussed case- retained, sent ltr w/ cd exhibits attached (WCF 3.2)(BEC1.4) | 4.6 | 3.2 | 1.4 | |
| 2/5/2019 | Email to defense attorneys | 0.2 | 0.2 | | |
| 2/6/2019 | Court conference J. Hudson (WCF 3) | 3 | 3 | | |
| 2/8/2019 | Sent all medical/treatment records to Dr. Joseph | 0.5 | 0.5 | | |
| 2/11/2019 | Rescheduled defendants deposition | 0.3 | 0.3 | | |
| 2/12/2019 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | | 0.6 | |
| 3/4/2019 | Prepare for Rondon EBT, rev file, prep outline (WCF 2.6) | 2.6 | 2.6 | | |
| 3/6/2019 | State Ct conf, rcvd letter from court | 2.8 | 2.8 | | |
| 3/12/2019 | Phone call with client; phone call to doctor | 0.5 | | 0.5 | |
| 3/13/2019 | Prepared for and conducted deposition. G. Rondon (5 WCF); sent email to defense to reschedule other party depositions (BEC.2) | 5.2 | 5 | 0.2 | |
| 3/19/2019 | Phone call with Dr. Joseph | 0.5 | 0.5 | | |
| 3/22/2019 | Communication with defense counsels- confirmed depositions | 0.5 | 0.5 | | |
| 4/8/2019 | T/C w/ P Redlich expert (.6) | 0.6 | 0.6 | | |
| 5/7/2019 | Sent all documents to co-counsel relative to settlement demand | 0.5 | 0.5 | | |
| 5/28/2019 | Ltr from City atty re. discovery | 0.4 | 0.4 | | |
| 6/3/2019 | Sent co-counsel transcripts and exhibits (WCF 1.5)(BEC 2) | 3.5 | 3.5 | | |

A-2784

| | | | | | |
|---|---|---|---|---|---|
| 6/4/2019 | Rcvd letter from City attorney, req for employment records, t/c w/ client, prepared and sent new auth (BEC .7)(WCF .2) | 0.9 | 0.2 | 0.7 | |
| 6/5/2019 | Court Conference | 2 | 2 | | |
| 6/7/2019 | Drafted and sent letter to defense attorney- reschedule depositions(WCF .5)(BEC .3) | 0.8 | 0.5 | 0.3 | |
| 6/10/2019 | Drafted and sent letter to defense attorney- regarding Dr. Josephs records | 0.5 | 0.5 | | |
| 6/11/2019 | Rcvd ltr from city atty w/ med records, rev and file (WCF .3)(BEC(.1) | 0.4 | 0.3 | 0.1 | |
| 6/13/2019 | RCvd ltr from City atty re. stip, t/c w/ city atty | 0.6 | 0.6 | | |
| 6/18/2019 | Rcvd letter from City Attorney, re.scheduling EBT's (BEC .2) | 0.2 | | 0.2 | |
| 6/26/2019 | Ltr to City attorney, proposed EBT dates (WCF .3)(BEC .2) | 0.5 | 0.3 | 0.2 | |
| 7/4/2019 | State Ct conference, ltr from ct | 3.5 | 3.5 | | |
| 7/10/2019 | Rcvd letter from City Attorney, scheduling EBT's (BEC .2) | 0.2 | | 0.2 | |
| 7/22/2019 | Rcvd letter from City Attorneys, re. discovery (BEC .2)(WCF..2), rev draft of discovery responses, make revisions (WCF .5)(BEC .3) | 1.2 | 0.7 | 0.5 | |
| 7/24/2019 | rev file, docs sent to AP (BEC 1.5)(WCF.4) | 1.9 | 0.4 | 1.5 | |
| 8/5/2019 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | 0.4 | |
| 8/7/2019 | Meeting with client | 0.5 | 0.5 | | |
| 8/12/2019 | Email to expert- provided transcripts, documentation for review | 0.5 | 0.5 | | |
| 8/14/2019 | Filed Reply Brief, Ct of Appeals | 1.4 | 1.4 | | |
| 8/15/2019 | email w/ EBT transcripts to expert (WCF 1.5)(BEC 2.2) | 3.7 | 1.5 | 2.2 | |
| 8/20/2019 | Prep for deposition (WCF 2.8) | 2.8 | 2.8 | | |
| 8/28/2019 | rev file, prepared outline for deposition. E. Torres (WCF 2.2) | 2.2 | 2.2 | | |
| 8/30/2019 | Conudcted EBT of Torres (WCF 4) | 4 | 4 | | |
| 9/4/2019 | Phone call with expert | 0.5 | 0.5 | | |
| 9/5/2019 | Phone call to co-counsel | 0.3 | 0.3 | | |
| 9/6/2019 | Email to co-counsel, emails w/ city atty re. Lonergan EBT (WCF .6)(BEC.2) | 0.8 | 0.6 | 0.2 | |
| 9/10/2019 | emails w/ AP | 0.6 | 0.6 | | |
| 10/15/2019 | Phone call with co-counsel; drafted and sent email to expert- provided transcripts | 1 | 1 | | |
| 10/29/2019 | Rcvd Notice of summary Order fed Court, Ct of Appeals (.5) | 0.5 | 0.5 | | |

Case 1:16-cv-00321-EAW-MJR   Document 167-2   Filed 05/20/22   Page 14 of 20

A-2785

| Date | Description | | | | |
|---|---|---|---|---|---|
| 11/5/2019 | Meeting with client. Prep for Ct conf | 1.6 | 1.6 | | |
| 11/6/2019 | Court Conference; phone call with attorney- scheduled meeting | 2.5 | 2.5 | | |
| 11/7/2019 | rev file, pull EBT transcripts and email to AJP (BEC .6), t/c AP (WCF 1.2) | 1.8 | 1.2 | 0.6 | |
| 11/8/2019 | Recv letter from J. Hudson, schedule check, file (BEC) | 0.3 | 0.3 | | |
| 11/21/2019 | emails w/ AP, rev file | 0.8 | 0.8 | | |
| 12/3/2019 | Phone call to attorney, app for PSS (WCF .6)(BEC .5) | 1.1 | 0.6 | 0.4 | |
| 12/5/2019 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | 0.2 | 0.4 | |
| 12/13/2019 | prep response to Def Interrogatories | 1.2 | 1.2 | | |
| 12/23/2019 | ltr to client w/ auths and verification (WCF .3)(BEC .3) | 0.6 | 0.3 | 0.3 | |
| 12/27/2019 | Sent reports, EBT transcripts, invest summary (WCF 2)(BEC1.4) | 3.4 | 2 | 1.4 | |
| 1/11/2020 | Email exchange w/ expert (WCF) | 0.6 | 0.6 | | |
| 1/13/2020 | Conference with expert | 1 | 1 | | |
| 1/15/2020 | ltr w/ expert info to city atty, emails w/ AP, file rev | 3.7 | 3.7 | | |
| 1/24/2020 | rcvd email w/ expert report from Prof Redlich, rev file, report | 3.2 | 3.2 | | |
| 1/31/2020 | Letter to client re. Court (.2 BEC); rev file (.4 WCF) | 0.6 | 0.4 | 0.2 | |
| 2/4/2020 | Recvd State AG motion to dismiss, rev file | 4.6 | 4.6 | | |
| 2/6/2020 | Research, rev file, draft reply (WCF 6) | 6 | 6 | | |
| 2/7/2020 | Research, rev file, draft reply (WCF 7.2)(BEC 2.2) | 9.4 | 7.2 | 2.2 | |
| 2/11/2020 | Draft reply to motion to dismiss, rcvd ltr from Court (WCF 5.6)(BEC 1.2) | 6.8 | 5.6 | 1.2 | |
| 2/12/2020 | Draft reply to motion to dismiss (WCF 8.6)(BEC .6) | 9.2 | 8.6 | 0.6 | |
| 2/17/2020 | Rev file, research, draft reply (WCF 5.5)(BEC .8) | 6.3 | 5.5 | 0.8 | |
| 2/18/2020 | Rcvd expert wageloss report, email to AP (WCF.6)(BEC.8) | 1.4 | 0.6 | 0.8 | |
| 2/20/2020 | Legal research, Draft reply to motion to dismiss (WCF 7)(BEC 3.5) | 10.5 | 7 | 3.5 | |
| 2/21/2020 | Draft reply to motion (6.6 WCF)(1.2 BEC) | 7.8 | 6.6 | 1.2 | |
| 2/22/2020 | Draft reply to motion, rev file (WCF 5.6) | 5.6 | 5.6 | | |
| 2/24/2020 | Prepare motion reply (BEC 3)(WCF 6) | 9 | 6 | 3 | |
| 2/26/2020 | Prpeare reply, revisions, rev file (WCF 8)(BEC 2) | 10 | 8 | 2 | |
| 2/27/2020 | Drafted and submitted Affirmation in Opp to Dismiss(WCF 6.5)(BEC1.1) | 7.6 | 6.5 | 1.1 | |
| 3/4/2020 | Fed Ct Court Appearance w/ client, Rcvd Motion to Dismiss State AG (WCF 6.5) | 6.5 | 6.5 | | |

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 3/13/2020 | Rcvd ltr w/ State AG reply aff, re. SJM, rev file, research (WCF 1.6)(BEC .2) | 1.8 | 1.6 | 0.2 | |
| 3/16/2020 | Telephone Court Conference- Motion argued, prep for motion | 2.2 | 2.2 | | |
| 4/27/2020 | Sent copy of State SJ reply to AP, rev file, emails (WCF 1.5)(BEC1.6) | 3.1 | 1.5 | 1.6 | |
| 5/15/2020 | Rcvd Decision. Ltr from Flynn (1.2) | 1.2 | 1.2 | | |
| 5/16/2020 | Filed corrected Decision. Rev file | 1.3 | 1.3 | | |
| 5/19/2020 | RCvd ltr from AP, to Court, ext to reply | 0.5 | 0.5 | | |
| 5/20/2020 | Rcvd ltr from Flynn w/ Decision (.4) | 0.4 | 0.4 | | |
| 5/27/2020 | Rev file, prep for court conf | 1.2 | 1.2 | | |
| 6/1/2020 | Court Conference, scheduled trial | 4.2 | 4.2 | | |
| 6/18/2020 | Court Conference; requested court transcripts; Conference call with attorney regarding appeal | 3.6 | 3.6 | | |
| 6/19/2020 | Drafted and filed Notice of Appeal (WCF 3.2)(BEC 1) | 4.2 | 3.2 | 1 | |
| 6/22/2020 | Filed Notice of Appeal with Appellate Division; sent copy to defense attorney (WCF 1)(BEC .8) | 1.8 | 1 | 0.8 | |
| 7/3/2020 | Created and sent file on CD to appeal attorney | 0.5 | 0.5 | | |
| 7/7/2020 | Ltr to appelate counsel w/ CD, documents (WCF (3.3)(BEC 2.6) | 5.9 | 3.3 | 2.6 | |
| 7/10/2020 | Recvd ltr from J Hudson, corrected Decision (WCF 1.5) | 1.5 | 1.5 | | |
| 7/13/2020 | filed corrrected Decision (BEC .5)(WCF.2) | 0.7 | 0.2 | 0.5 | |
| 7/14/2020 | Ltr to Flynn, service of Decision, rcdv ltr from J. Hudson (WCF .6)(BEC 1.2) | 1.8 | 0.6 | 1.2 | |
| 7/15/2020 | Recvd Supp motion for SJ, rev file | 3.2 | 3.2 | | |
| 7/16/2020 | Court Conference, rev filre, draft reply to supp motion | 4.5 | 4.5 | | |
| 7/17/2020 | Rev file, reseach, prep resp to supp motion (WCF 6)(BEC 1.4) | 7.4 | 6 | 1.4 | |
| 7/20/2020 | Prepare reply to motion, research (WCF 4.2)(BEC .6) | 4.8 | 4.2 | 0.6 | |
| 7/21/2020 | draft reply to motion, rev file, t/c J. Franczak (WCF 7.5)(BEC 2.5) | 10.9 | 7.5 | 2.5 | 0.9 |
| 7/22/2020 | Drafted Reply Affirmation | 4.5 | 4.5 | | |
| 7/23/2020 | t/c J. Franczak, rev reply, research (WCF 6.2)(BEC .4) | 6.6 | 6.2 | 0.4 | |
| 7/28/2020 | rcvd ltr from Court, scheduling Motion return (.6 WCF)(.2 BEC) | 2.3 | 0.6 | 0.2 | |
| 7/30/2020 | Draft reply, rev file (6 WCF)(3.6) | 9.6 | 6 | 3.6 | |
| 7/31/2020 | Filed Reply Affirmation; mailed copy to Clerk, Judge and attorneys | 1.5 | 1.5 | | |
| 8/3/2020 | Assemble record documents; message to counsel | 1.5 | | | 1.5 |
| 8/4/2020 | Sent request for records/ledgers from treating doctors | 0.5 | 0.5 | | |

Case 1:16-cv-00321-EAW-MJR   Document 167-2   Filed 05/20/22   Page 16 of 20

**A-2787**

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 8/6/2020 | Sent medical requests for updated records to doctors, rcvd ltr from Medicaid re. lien (WCF 1.2)(BEC 1.4) | 2.6 | 1.2 | 1.4 | |
| 8/10/2020 | Filed Notice of Appeal for corrected decision; served on defense attorney (WCF .5)(BEC 1.2) | 1.7 | 0.5 | 1.2 | |
| 8/17/2020 | Rcvd ltr from Ct of Appeals, recipt of filing, reply to supp motion to dismiss (WCF 4.2)(BEC 2.3) | 6.5 | 4.2 | 2.3 | |
| 8/24/2020 | Conference with Judge; trial adjourned, rev file | 6.8 | 6.8 | | |
| 8/25/2020 | rcvd letter from court, scheduling trial (WCF .4)(BEC.3) | 0.7 | 0.4 | 0.3 | |
| 8/26/2020 | Rcvd med records, rev | 1.8 | 1.8 | | |
| 9/3/2020 | Drafted and mailed request for ledgers to pharmacy | 0.5 | 0.5 | | |
| 9/9/2020 | Faxed request for phamacy records (BEC .4) | 0.4 | | 0.4 | |
| 10/1/2020 | Phone call with client | 0.8 | 0.4 | | 0.4 |
| 10/5/2020 | Drafted authorization and request, rcvd phamacy records (WCF .6)(BEC .6) | 1.3 | 0.6 | 0.6 | |
| 11/12/2020 | Phone call with attorney- req extension; waiting on decision; review file; draft ext. letter | 0.9 | 0.4 | | 0.5 |
| 11/13/2020 | File and serve extension application | 0.4 | | | 0.4 |
| 12/9/2020 | Phone with counsel re: pending motion and coordination of appeals | 0.2 | 0.1 | | 0.1 |
| 1/17/2021 | Prep settlement demand. Research (WCF 6.5)(BEC 1.2) | 7.8 | 6.5 | 1.2 | 0.1 |
| 1/19/2021 | Court Conference. Sent demand to State AG (WCF 4)(BEC 1.5) | 7 | 4 | 1.5 | 1.5 |
| 2/2/2021 | Phone call with counsels office re: status of lawsuit | 0.4 | | 0.2 | 0.2 |
| 2/3/2021 | Court Conference; phone call with attorney; emailed settlement demand; email with counsel re: second extension | 2.3 | 2.2 | | 0.1 |
| 2/4/2021 | Phone call to attorneys at AG office; req for extension; letter to Court; served AG | 1.5 | | | 1.5 |
| 2/18/2021 | Phone call with counsel re: perfect appeal; record preparation | 1 | 0.5 | | 0.5 |
| 2/19/2021 | Reviewed decision; prepared 5531 statement; assembly of record and prepared table of contents | 2.9 | | | 2.9 |
| 2/21/2021 | Review record docs; assemble record; email to counsel; preliminary research | 5.5 | 0.1 | | 5.4 |
| 2/24/2021 | Message to counsel | 0.1 | | | 0.1 |
| 2/26/2021 | Prepared record summary; email counsel; requested meeting | 0.5 | | | 0.5 |
| 2/27/2021 | Reviewed and analyzed record; prepare summary; legal research | 4.7 | | | 4.7 |
| 2/28/2021 | Reviewed and analyzed record; prepared memo to counsel; | 4.5 | | | 4.5 |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 3/1/2021 | Message to counsel; email to counsel with analysis; reviewed orig record documents | 1.7 | | | | 1.7 |
| 3/2/2021 | Email page count for draft record | 0.7 | | | | 0.7 |
| 3/11/2021 | Prepared motion to extend time to appeal; email to counsel; | 1.5 | | | | 1.5 |
| 3/12/2021 | Emails to printing co; re: preparing, filing and serving motion | 0.3 | | | | 0.3 |
| 3/31/2021 | Filed decision of Hudson; reviewed decision; left msg for counsel | 0.7 | 0.5 | | | 0.2 |
| 4/4/2022 | draft, serve subpeonas, cover letters (WCF 1.4)(BEC 3.5) | 4.9 | 1.4 | 3.5 | | 0.2 |
| 4/8/2021 | rcvd letter from Flynn w. Court decision (WCF .5)(BEC .3) | 0.8 | 0.5 | 0.3 | | |
| 4/13/2021 | Rcvd 4th Dept decision re: extension, emails w/ PSS (WCF 1.2)(BEC .8); received extension Order; msg for counsel (EJM .2) | 2.2 | 1.2 | 0.8 | | 0.2 |
| 4/21/2021 | Phone call with counsel; discussed next steps | 0.4 | 0.2 | | | 0.2 |
| 4/22/2021 | Filed Notice of Appeal for corrected decision; served on defense attorney, meeting w/ client (WCF 2.5)(BEC 1.6) | 4.1 | 2.5 | 1.6 | | |
| 4/23/2021 | Order (WCF .5)(BEC .5); phone call with counsel re: new appeal filing; registering appeal to Appellate Division (EJM .2) | 1.2 | 0.5 | 0.5 | | 0.2 |
| 4/26/2021 | Email to Appellate Division re: appeal now being e-filed | 0.3 | | | | 0.3 |
| 4/29/2021 | Phone call with Appellate Division clerk re: appeal | 0.4 | | | | 0.4 |
| 4/30/2021 | Phone call with counsel; email with counsel | 1 | 0.5 | | . | 0.5 |
| 5/3/2021 | Letter to atty gen re: appeal, filings w/ court (WCF 1.2)(BEC 2); register appeal with App. Div as e-filed appeal; prepare, efile and serve notification of Docket Numbers; draft motion (EJM 2.2) | 5.4 | 1.2 | 2 | | 2.2 |
| 5/4/2021 | Complete/assemble second motion to extend time | 1 | | | | 1.7 |
| 5/5/2021 | Emails to printer re: e-filed motion and court request | 0.2 | | | | 0.2 |
| 5/10/2021 | Letter from state court re: appeal | 0.4 | 0.4 | | | |
| 5/15/2021 | Assemble and review docs for Record on Appeal; email to paralegal for exhibits; 5531 statement and stipulation; legal research. | 6.2 | | | | 6.2 |
| 5/17/2021 | Received and reviewed exhibits; revise draft Record, draft of Table of Contents | 0.7 | | | | 0.7 |
| 5/18/2021 | Review and analyze Hudon's 3 decisions; legal research | 1.7 | | | | 1.7 |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 5/19/2021 | Phone call with paralegal re: status | 0.2 | | | 0.1 | 0.1 |
| 5/20/2021 | Email Solicter General- requesting docs for Record on Appeal | 0.3 | | | | 0.3 |
| 5/26/2021 | Received missing exhibits from AG; finalized Record | 1.2 | | | | 1.2 |
| 5/27/2021 | Letter to App. Printer with record documents and legal research | 0.4 | | | | 0.4 |
| 6/2/2021 | Received Order from 4th Dept, ext granted | 0.8 | 0.8 | | | |
| 6/11/2021 | Receive link for draft Record and fwd to AG | 0.3 | | | | 0.3 |
| 6/12/2021 | Read Record; prepare summary | 5.5 | | | | 5.5 |
| 6/14/2021 | Prepare Record Summary | 0.5 | | | | 0.5 |
| 6/17/2021 | Prepare Record Summary | 1.9 | | | | 1.9 |
| 6/19/2021 | Prepare Record Summary | 6.5 | | | | 6.5 |
| 6/21/2021 | Email from Solicitor General; reply re: corrections for Record | 0.2 | | | | 0.2 |
| 6/24/2021 | Settlement ltr to City Atty, prep (WCF .5)(BEC.3) | 0.8 | 0.5 | | 0.3 | |
| 7/1/2021 | Email Soliciter General- with revisions per request with stipulation | 0.2 | | | | 0.2 |
| 7/3/2021 | Prepare Record Summary | 6.4 | | | | 6.4 |
| 7/4/2021 | Prepare Record Summary | 3.3 | | | | 3.3 |
| 7/6/2021 | Review legislature history; phone call to state library; phone call to counsel | 0.9 | 0.1 | | | 0.8 |
| 7/9/2021 | Prepare Record Summary and legal research | 1 | | | | 1 |
| 7/11/2021 | Preparing Record Summary | 1.7 | | | | 1.7 |
| 7/13/2021 | Prepare Record Summary and legal research | 7.1 | | | | 7.1 |
| 7/14/2021 | Legal research and drafting brief | 4.5 | | | | 4.5 |
| 7/15/2021 | Drafting brief | 5.5 | | | | 5.5 |
| 7/16/2021 | Legal research; drafting brief; email to counsel | 7 | | | | 7 |
| 7/17/2021 | Drafting brief | 12 | | | | 12 |
| 7/18/2021 | Drafting brief | 15 | | | | 15 |
| 7/19/2021 | Revisions, phone call w/ counsel, Filed appeal brief 4th Dept; deliver to App. Printer; copy to counsel (EJM 3.2) | 5.6 | 2.2 | | | 3.4 |
| 8/4/2021 | Reqd med records, rev file WCF (3)(BEC 1.2) | 4.2 | 3 | | 1.2 | |
| 8/6/2021 | Reqd updated meds, scheduled appt w/ dr (BEC 1.1)(WCF.3) | 1.4 | 0.3 | | 1.1 | |
| 9/1/2021 | City filed Offer of Proof, rev file, T/C w/ AP, Menard | 1.8 | 1.8 | | | |
| 10/20/2021 | Review Appellant's Brief | 0.9 | | | | 0.9 |
| 10/21/2021 | Review and annotate AG brief; review record; legal research | 2.3 | | | | 2.3 |
| 10/22/2021 | Legal research and begin drafting reply brief | 2.9 | | | | 2.9 |
| 10/23/2021 | Drafting reply brief | 5.5 | | | | 5.5 |

A-2790

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 10/25/2021 | Drafting reply brief | 8.1 | | | | | 8.1 |
| 10/26/2021 | Drafting reply brief; email to counsel- review and comment | 7.6 | 1 | | | 6.6 |
| 10/27/2021 | Prepare Table of Auths; final revisions; letter to Batavia Legal | 4 | | | | 4 |
| 11/10/2021 | Letter to Fed Ct., t/c AP | 0.5 | 0.5 | | | |
| 11/30/2021 | Rcvd Court notice of T/C (WCF .3)(BEC .2) | 0.5 | 0.3 | 0.2 | | |
| 2/9/2022 | Letter from City atty to Fed Ct, t/c emails vocational expert (2.5) | 2.5 | 2.5 | | | |
| 2/23/2022 | Emails w/ AP, t/c w/ client, meeting (WCF 2.5)(BEC.3) | 2.8 | 2.5 | 0.3 | | |
| 3/18/2022 | Recvd Decision from 4th Dept, denied appeal, research (2.6) | 2.6 | 2.6 | | | |
| 3/25/2022 | Motion filed by city atty, research, draft reply | 4.6 | 4.6 | | | |
| 3/31/2022 | Filed jointly prop statement of case, emails w/ city atty | 1.2 | 1.2 | | | |
| 3/23/2022 | emails w/ economic expert, rcvd report (WCF .8) | 0.8 | 0.8 | | | |
| 3/25/2022 | Expert disclsure, t/c w/ AP, rev file, filed exhibit list, rev city exhibit list (WCF 2.3)(BEC .5) | 2.8 | 2.3 | 0.5 | | |
| 3/29/2022 | T/C w/ AP, emails w/ city attys, scheduling PO's, | 2.5 | 2.5 | | | |
| 4/1/2022 | City atty filed declaration in opp, mol, research, draft reply | 5.3 | 5.3 | | | |
| 4/6/2022 | Rcvd ltr from USAG objects to tripi testimony | 0.6 | 0.6 | | | |
| 4/11/2022 | Court conference Fed Ct., rev file, prep for conference | 6.8 | 6.8 | | | |
| 4/12/2022 | Prep Supp expert disclosure, rev file, ltr to city atty (6.5)(BEC 2) | 8.5 | 6.5 | 2 | | |
| 4/13/2022 | PrepSupp expert disclosure, t/c AP, t/c w/ client, email to expert Redlich, rcvd certified records BestSelf, rev records (WCF 8.4)(BEC 2.3) | 10.7 | 8.4 | 2.3 | | |
| 4/14/2022 | prep expert disclosure, t/c AP re. withdrawl. t/c client, email to AP, Motion to adjourn, research (WCF 9.5)(BEC 3) | 12.5 | 9.5 | 3 | | |
| 4/15/2022 | Prep Supp expert disclosure, rev file, file, email w/ AP, meeting with client (8.5)(BEC 1) | 9.5 | 8.5 | 1 | | |
| 4/16/2022 | Txt order of Ct, trial prep | 7.2 | 7.2 | | | |
| 4/18/2022 | trial prep, scheduling witnesses, (WCF 9)(BEC 6.5) | 15.5 | 9 | 6.5 | | |
| 4/19/2022 | motion to w/d, MOL filed by AP, rev, research, trial prep, rcvd ltr from USAG denies Tripi subpeona | 7.5 | 7.5 | | | |
| 4/20/2022 | opp aff filed by city atty re. motion to adj, research | 6.8 | 6.8 | | | |
| 4/21/2022 | Text order of ct re. motion to w/d, adjourn, rev case, trial prep | 7.2 | 7.2 | | | |
| 4/22/2022 | City atty filed declaration re. in limine motions, rev file, | 2.5 | 2.5 | | | |
| 4/25/2022 | emails w/ city attys, scheduling witnesses, trial prep | 7.1 | 7.1 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 4/26/2022 | Def atty filed declaration re. motion in limine, trial prep, Court conference re. motion to withdraw, notion to adjourn | 8.6 | 8.6 | | | |
| 4/27/2022 | resp to motion filings, prep and file declaration in opp to motion in limine, ltr to ct from city atty, emails w/ city atty, stip re. facts  (WCF 7.2)(BEC 4.6) | 11.8 | 7.2 | | 4.6 | |
| 4/28/2022 | Declaration fled by AP, trial prep, witness scheduling | | | | | |
| 4/29/2022 | trial prep, rev file, prep exhibit list (WCF 8.5)(BEC 6.5) | 15 | 15 | | | |
| 4/30/2022 | Trial prep | 10.5 | 10.5 | | | |
| 5/1/2022 | Trial prep | 6.2 | 6.2 | | | |
| 5/2/2022 | Trial prep, ct appearance | 9.5 | 9.5 | | | |
| 5/3/2022 | Trial, prep | 10.5 | 10.5 | | | |
| 5/4/2022 | Trial. Prep | 11 | 11 | | | |
| 5/5/2022 | Trial, prep | 10 | 10 | | | |
| 5/6/2022 | Trial. Prep | 8.5 | 8.5 | | | |
| 5/7/2022 | Trial prep | 7.5 | 7.5 | | | |
| 5/8/2022 | Trial prep | 7 | 7 | | | |
| 5/9/2022 | trial, prep, recvd charging lien of AP. Filed | 13 | 13 | | | |
| 5/10/2022 | file rev, t/c w/ client, research | 4.5 | 4.5 | | | |
| 5/11/2022 | press release, client meeting, press conf | 6.2 | 6.2 | | | |
| 5/12/2022 | research, draft motion for fee's, costs, t/c counsel re. apppeal | 7.4 | 7.4 | | | |
| 5/13/2022 | research, draft motion for fee's, costs, | 4.8 | 4.8 | | | |
| 5/16/2022 | draft motion, emails w/ AP, rev file | 6.5 | 6.5 | | | |
| 5/17/2022 | | | | | | |
| | | | | | | |
| **Total Hours:** | | 1440.1 | 1065.4 | 24 | 190.7 | 160 |
| | | | x$425/hr | x$325/hr | x $125/hr | x335/hr |
| | | | | | | |
| | | $538,032.50 | $452,795 | $7,800 | $23,837.50 | $53,600 |

A-2791

A-2792

# UNITED STATES DISTRICT COURT
## for the
### Western District of New York

JOSUE ORTIZ,

Plaintiff,

     v.                                         1:16-cv-00321-EAW-MJR

MARK STAMBACH,

Defendant.

## BILL OF COSTS

Judgment having been entered in the above entitled action on May 10, 2022 against Mark Stambach,

the clerk is requested to tax the following as costs:

| | | |
|---|---|---:|
| Fees of the clerk.................................................................... | $ | 450.00 |
| Fees for service of summons and subpoena............................................. | | 450.00 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case.. | | 4,331.15 |
| Fees and disbursements for printing................................................ | | 4,507.63 |
| Fees for witnesses................................................................. | | 27,899.50 |

|  | | |
|---|---:|---|
| 1. Ronald R. Reiber, Ph.D.............................. | 3,500.00 | |
| 2. Allison D. Redlich, Ph.D............................ | 6,777.00 | |
| 3. Dr. Brian S. Joseph, M.D............................ | 9,300.00 | |
| 4. Rachel A. Duchon.................................... | 8,322.50 | |

Fees for exemplification and the costs of making copies of any materials where the copies are
necessarily obtained for use in the case..................................................

Other costs (*please itemize*)..................................................................

TOTAL   $    37,638.28

A-2793

## Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

☐ Electronic Service ☐ First class mail, postage prepaid

☐ Other: _____

s/ Attorney: *Wayne C. Felle, Esq.*_____

Name of Attorney:   Wayne C. Felle _____

For:   Josue Ortiz _____   _____ Date: 05/20/2022 _____
            *Name of Claiming Party*

A-2794

4/25/2016                                    CM/ECF LIVE(C) - U.S. District Court:nywd

## Complaints and Other Initiating Documents
1:16-cv-00321 Ortiz v. WAGSTAFF et al

### U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered by Felle, Wayne on 4/25/2016 at 11:04 AM EDT and filed on 4/25/2016

| | |
|---|---|
| **Case Name:** | Ortiz v. WAGSTAFF et al |
| **Case Number:** | 1:16-cv-00321 |
| **Filer:** | Josue Ortiz |
| **Document Number:** | 1 |
| **Judge(s) Assigned:** | None (please contact the court) |

**Docket Text:**
**COMPLAINT against All Defendants $ 400 receipt number 0209-2515426, filed by Josue Ortiz.(Felle, Wayne)**


**1:16-cv-00321 Notice has been electronically mailed to:**

Wayne C. Felle     waynefelle@waynefellelaw.com

**1:16-cv-00321 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=4/25/2016] [FileNumber=3230462-0
] [3ac074edb24ac7934a0592f96178d9013b6e79424a30230070c338f6f4c053c6bd4
7b56d9748abc15bbbdc8bb3e091908301bb4d6838731c8c9498e162e8601f]]



WAYNE C. FELLE, P.C.   01/99
EXPENSE ACCOUNT
6024 MAIN STREET
WILLIAMSVILLE, NY 14221

FIVE STAR BANK
50-403/223

5039

5/26/2015

PAY TO THE
ORDER OF   New York State Court of Claims                    $ **50.00

Fifty and 00/100********************************************************************* DOLLARS

COPY NOT NEGOTIABLE

MEMO   Josue Ortiz: Filing Fee

---

WAYNE C. FELLE, P.C. / EXPENSE ACCOUNT                      5039

New York State Court of Claims                  5/26/2015

50.00

Five Star Checking Ex   Josue Ortiz: Filing Fee                      50.00

WAYNE C. FELLE, P.C. / EXPENSE ACCOUNT                      5039

New York State Court of Claims               5/26/2015

50.00

PAYMENT RECORD

Five Star Checking Ex   Josue Ortiz: Filing Fee                      50.00

# DOUGLAS A. DIFILIPPO, P.S., P.I.

200 GENEVA ROAD
EAST AURORA, NY 14052
P: 716.481-7322

**INVOICE**

Email: Ddifil@verizon.net

Date: OCTOBER 9 2018

Bill to: WAYNE C. FELLE, ESQ
c/o BRIANA

Process Server
Surveillance Investigator

Re: SKIPTRACE DR. JOSEPH LIEBERGALL          Client:

| DESCRIPTION | AMOUNT |
| --- | --- |
| 10/9/18: Service of (1) SKIPTRACE License CURRENT Information & Address on Witness | $50. |
| * DR. Joseph LIEBERGALL | |

BILL TO: J. ORTIZ

KC

$ 50.

# DOUGLAS A. DiFILIPPO, P.S., P.I.

200 GENEVA ROAD
EAST AURORA, NY 14052
P: 716.481.7322

Email: Ddifil@verizon.net

## INVOICE

Date: August 28 2018

Bill to: WAYNE C. FELLE, ESQ
         c/o BRIANA

Re: Jasue ORTIZ   -V-  STATE of New York

Process Serve
(4) Judicial
    Subpoena
    Dures Team

Client: Jasue ORTIZ

| DESCRIPTION | AMOUNT |
|---|---|
| 8/28/18 : Serve of (4) Judicial subpoena Dures Team | |
| | |
| Chen/file: Jasue ORTIZ | |
| | |
| Served on:   * Buffalo General Hospital | $25.00 |
| * FCMC | $25.00 |
| * GME Camry Attorney - Law DEPT | $25.00 |
| * Buffalo City Corporation Counsel | $25.00 |
| | $100.00 |

# DOUGLAS A. DIFILIPPO, P.S., P.I.

**200 GENEVA ROAD**
**EAST AURORA, NY 14052**
P: 716.481-7322

**INVOICE**

Email: Ddifil@verizon.net

Date: July 25 2016

Bill to: WAYNE C. FELLE, ESQ

Process service
(2) USDC S/C
(Civil Action)

Re: ORTIZ + V ERIE County DISTRICT   Client: Josue ORTIZ
ATTORNEY's office etal.

| DESCRIPTION | AMOUNT |
|---|---|

7/25/16:   Service of (2) US DISTRICT COURT Summons
Complaint - Civil Action

Client/File: Josue ORTIZ

Served on:   ❋ ERIE County CLERK DISTRICT              $ 50.⁰⁰
ATTORNEY's office

❋   CITY CORPORATION Council       $ 50.⁰⁰

$ 100.⁰⁰

# DOUGLAS A. DIFILIPPO, P.S., P.I.

**200 GENEVA ROAD**
**EAST AURORA, NY 14052**
**P: 716.481-7322**

## INVOICE

**Email: Ddifil@verizon.net**

Date: APRIL 27, 2016

Bill to: WAYNE C. FEUE, ESQ

Process Service
(2) Complaint

Client/File: JOSUE ORTIZ

Re: ORTIZ -V- CITY of BUFFALO
etal...

| DESCRIPTION | AMOUNT |
|---|---|

4/27/16: Serve of (2) US District Court
Complaints - FALSE Imprisonment

Client/File: JOSUE ORTIZ

Served on: City Corporation Counsel                     $50.00

ERIE County District Attorney's office          $50.00

**Total Due:**                                              $100.00

# DOUGLAS A. DIFILIPPO, P.S., P.I.

**200 GENEVA ROAD**
**EAST AURORA, NY 14052**
P: 716.481-7322

Email: Ddifil@verizon.net

## INVOICE

Date: July 28, 2016

Bill to: WAYNE FELLE, ESQ

Re: ORTIZ -VT CASE etc.

Process service
(2) USDC
SDC

Client: JOSUE ORTIZ

| DESCRIPTION | AMOUNT |
|---|---|

7/28/16:  Service of (2) Summons/Complaint

Client file: JOSUE ORTIZ

Served on: ＊ FRANK A. SEDITA III    $50.⁰⁰

＊ FRANK J. CLARK    $50.⁰⁰

＊ SKIPTRACE: Home Address for FRANK CLARK    Included

＊ FRANK SEDITA III Dob: 8/11/61
    247 Summit Ave. BFLO 14214

＊ FRANK J. CLARK Dob: 4/6/42
    404 Gull Landing
    BFLO, NY 14202

$100.⁰⁰

AO 44 (Rev. 04/18)

# UNITED STATES DISTRICT COURT
for the

| INVOICE | NUMBER 8000057 |
|---|---|

| TO: WAYNE C. FELLE, ESQ. | MAKE CHECK PAYABLE TO: KAREN CLARK 100 STATE STREET, 6TH FLOOR ROCHESTER, NY 14614 |
|---|---|
| PHONE: | PHONE: |
| FAX: | |

## TRANSCRIPTS

| ☐ CRIMINAL   ☑ CIVIL | DATE ORDERED 04/11/2022 | DATE DELIVERED 04/18/2022 |
|---|---|---|

IN THE MATTER OF (CASE NUMBER AND TITLE)
J. ORTIZ V. M. STAMBACH 16CV321

## CHARGES

| CATEGORY | ORIGINAL | | | 1ST COPY | | | ADDITIONAL COPIES | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE @ | SUB TOTAL | PAGES | PRICE @ | SUB TOTAL | PAGES | PRICE @ | SUB TOTAL | |
| Ordinary | | | 0.00 | 59 | 0.90 | 53.10 | | | 0.00 | 53.10 |
| 14-Day | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |
| Expedited | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |
| 3-Day | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |
| Daily | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |
| Hourly | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |
| Realtime | | | 0.00 | | | 0.00 | | | 0.00 | 0.00 |

| For proceedings on (Date): | 4/11/22 | TOTAL | 53.10 |
|---|---|---|---|
| MOTION ARGUMENT | | LESS DISCOUNT FOR LATE DELIVERY | |
| | | ADD AMOUNT OF DEPOSIT | |
| EAW | | AMOUNT DUE (OR REFUND) | 53.10 |

### ADDITIONAL INFORMATION

Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within (7) calendar days, payment would be at the 14-day *delivery* rate, and if not completed and delivered within 14 days, payment would be at the ordinary delivery rate.

### CERTIFICATION

I certify that the transcript fees charged and page format used comply with the requirements of this court and the Judicial Conference of the United States.

| SIGNATURE OF OFFICIAL COURT REPORTER | DATE 04/18/2022 |
|---|---|

DISTRIBUTION:   TO PARTY (2 copies - 1 to be returned with payment)   COURT REPORTER   COURT REPORTER SUPERVISOR

A-2802

# ANN M. SAWYER
**RPR, CRR, NYRCR, NYACR**
Official Court Reporter

**ROBERT H. JACKSON COURTHOUSE**
**2 NIAGARA SQUARE**
**6th FLOOR**
**BUFFALO, NEW YORK 14202**
**(716) 207-0550**

Ann_Sawyer@nywd.uscourts.gov

---

**Invoice:** **16-0052**

**Date:** **11/10/16**

**TO:**      **Wayne C. Felle, P.C.**
             **Wayne C. Felle, Esq.**
             6024 Main Street
             Williamsville, New York 14221

**EMAIL:**   **Briana E. Croce, Paralegal**
             Waynefelle@waynefellelaw.com

*For ordinary turnaround transcript prepared in the following matter:*

United States of America v. Josue Ortiz

Case Number: 16-cr-77 (LJV)

Sentencing of Josue Ortiz – 10/24/16

---

Date of Invoice:       11/10/16
Date of Proceeding:    10/24/16

22 pages @ 3.65 per page      =      **$ 80.30**

**PAID IN FULL – WAYNE C. FELLE P.C.  EXPENSE ACCOUNT CHECK # 5672**

Thank you.

A-2803

# WENDY ROYCE MCCANN

## COURT REPORTER

250 Long Avenue
Hamburg, NY 14075
(716) 649-6934

# Invoice



| Date | Invoice # |
|------|-----------|
| 10/15/2018 | 3617 |

**Bill To**

WAYNE C. FELLE, ESQ.
6024 MAIN STREET
WILLIAMSVILLE, NEW YORK  14221

| Description | Amount |
|-------------|--------|
| YOUR SHARE FOR ATTENDING, REPORTING AND FURNISHING TRANSCRIPT OF EXAMINATION BEFORE TRIAL OF DR. EVELYN COGGINS HELD ON 10/1/18 AT THE LAW OFFICE OF WAYNE C. FELLE IN THE MATTER RE: JOSUE ORTIZ -VS- THE STATE OF NEW YORK. 93 PGS @ $3.50 PER PG.<br>*COPY SUPPLIED TO MS. ORTIZ-FOGG, ESQ. | 325.50 |

Wendy Royce McCann
ID # 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

*Thank you*

| **Total** | $325.50 |

A-2804

# WENDY ROYCE MCCANN

COURT REPORTER
250 Long Avenue
Hamburg, NY 14075
(716) 649-6934

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/13/2019 | 3771 |

**Bill To**

WAYNE C. FELLE, ESQ.
6024 MAIN STREET
WILLIAMSVILLE, NEW YORK 14221

| Description | Amount |
|-------------|--------|
| YOUR SHARE FOR ATTENDING, REPORTING AND FURNISHING TRANSCRIPT OF EXAMINATION BEFORE TRIAL OF MARK R. STAMBACH HELD ON 1/23/19 IN THE MATTER RE: JOSUE ORTIZ -VS- THE STATE OF NEW YORK  276 @ $3.75 PER PG. | 1,035.00 |
| YOUR SHARE FOR ATTENDING, REPORTING AND FURNISHING TRANSCRIPT OF EXAMINATION BEFORE TRIAL OF MARY EVANS HELD ON 1/24/19 IN THE MATTER RE: JOSUE ORTIZ -VS- THE STATE OF NEW YORK  122 PGS @ $3.75 PER PG. | 457.50 |

Wendy Royce McCann
ID # 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

| **Total** | **$1,492.50** |

# WENDY ROYCE MCCANN

# Invoice

COURT REPORTER
250 Long Avenue
Hamburg, NY 14075
(716) 649-6934

| Date | Invoice # |
|------|-----------|
| 4/19/2019 | 3843 |

**Bill To**

WAYNE C. FELLE, ESQ.
6024 MAIN STREET
WILLIAMSVILLE, NEW YORK  14221

| Description | Amount |
|------------|--------|
| FOR ATTENDING, REPORTING AND FURNISHING TRANSCRIPT OF EXAMINATION BEFORE TRIAL OF GERALDO RONDON HELD ON 3/13/19 AT THE LAW OFFICES OF WAYNE C. FELLE IN THE MATTER RE: JOSUE ORTIZ -VS- THE STATE OF NEW YORK. 135 PGS. @ $4.75 PER PG | 641.25 |

Wendy Royce McCann
ID # 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

**Total**          $641.25

A-2806

# WENDY ROYCE MCCANN

## Invoice

COURT REPORTER
250 Long Avenue
Hamburg, NY 14075
(716) 649-6934

| Date | Invoice # |
|------|-----------|
| 10/12/2019 | 4065 |

**Bill To**

WAYNE C. FELLE, ESQ.
6024 MAIN STREET
WILLIAMSVILLE, NEW YORK 14221

| Description | Amount |
|-------------|--------|
| FOR ATTENDING, REPORTING AND FURNISHING TRANSCRIPT OF EXAMINATION BEFORE TRIAL OF EDWIN TORRES HELD ON 8/30/19 IN THE MATTER RE: JOSUE ORTIZ -VS- THE STATE OF NEW YORK. 186 pgs. @ $4.75 per pg | 883.50 |

Wendy Royce McCann
ID # 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

| **Total** | $883.50 |

A-2807

```
                              KIM M. BUCK
                              Senior Court Reporter
                              25 Delaware Avenue
                              Fifth Floor
                              Buffalo, New York 14202
                              716-845-3609
                              kmbuck@nycourts.gov


WAYNE C. FELLE, ESQ.
6024 Main Street
Williamsville, New York 14221


            BILL FOR STENOGRAPHIC SERVICES

DATE: June 18, 2020

RE:  People -vs- Josue Ortiz 02630-2004

TRANSCRIPT OF: 440 Hearing and Motion

DATE HELD: 9/2/14, 9/3/14, 10/8/14, 11/7/14,

           12/9/14 and 1/30/15


TOTAL AMOUNT DUE:  $755.00


            THANK YOU
```

A-2808

 **Batavia Legal Printing** Inc.

# Invoice

7 Bank Street
LeRoy, NY 14482

Federal ID # 16-1559274

BILL TO

Magavern Magavern Grimm LLP
Edward J. Markarian, Esq.
1100 Rand Building
14 Lafayette Square
Buffalo, NY 14203

| DATE | INVOICE # |
|---|---|
| 10/25/2021 | 21952 |

| TERMS | JOB NAME |
|---|---|
| Net 30 | Ortiz v State of New York |

We now accept Credit & Debit Cards. If you wish to pay with your card, please call us at (866)768-2100

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|---|---|---|---|
| 7,224 | Pages of Record (1,806 pages x 4 copies) | 0.25 | 1,806.00 |
| 3 | Sets of Record Covers (3 Volumes) | 40.00 | 120.00 |
| 4 | Hours of Index Prep. | 25.00 | 100.00 |
| 1,806 | Pages of PDF Proof - Reduced Rate | 0.10 | 180.60 |
| 1,809 | Pages of Hard Copy Proof Delivered | 0.20 | 361.80 |
| 448 | Pages of Appellant's Brief (64 pages x 7 copies) | 0.22 | 98.56 |
| 1 | Set of Brief Covers | 40.00 | 40.00 |
| 1,809 | Prepare PDF for Court efiling/page - Reduced Rate | 0.15 | 271.35 |
|  | Format PDF of Brief and Upload prepared PDF's to Court (5 files) | 100.00 | 100.00 |
|  | Affirming Delivery | 15.00 | 15.00 |
|  | Delivery to Court | 45.00 | 45.00 |
| 2 | Delivery to Customer - NO CHARGE | 0.00 | 0.00 |

| **Total** | $3,138.31 |
|---|---|

**PLEASE RETURN YELLOW COPY WITH YOUR PAYMENT FOR PROPER CREDIT.**
We do not send out Statements, please pay promptly.
Overdue accounts may be sent to our collection agency.
Please contact us if you need to make payment arrangements (866-768-2100).

*Now due*

A-2809



**Batavia Legal Printing** Inc.

# Invoice

7 Bank Street
LeRoy, NY 14482

Federal ID # 16-1559274

BILL TO

Magavern Magavern Grimm LLP
Edward J. Markarian, Esq.
1100 Rand Building
14 Lafayette Square
Buffalo, NY 14203

| DATE | INVOICE # |
|------|-----------|
| 11/1/2021 | 21977 |

| TERMS | JOB NAME |
|-------|----------|
| Net 30 | Oritz v State of NY |

We now accept Credit & Debit Cards. If you wish to pay with your card, please call us at (866) 768-2100.

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|----------|-------------|------|--------|
| 203 | Pages of Reply Brief (29 pages x 7 copies) | 0.22 | 44.66 |
| 1 | Set of Brief Covers | 40.00 | 40.00 |
| | Format PDF of Brief and Upload prepared PDF to Court | 50.00 | 50.00 |
| | Affirming Delivery | 15.00 | 15.00 |
| | Delivery to Court | 45.00 | 45.00 |
| | Postage Priority Mail | 7.95 | 7.95 |

| **Total** | **$202.61** |

**PLEASE RETURN YELLOW COPY WITH YOUR PAYMENT FOR PROPER CREDIT.**
We do not send out Statements, please pay promptly.
Overdue accounts may be sent to our collection agency.
Please contact us if you need to make payment arrangments (866-768-2100).

*Now due*

A-2810

ORTIZ



4681 Transit Rd
Williamsville, NY 14221-6022
(716) 631-2679

Terminal: 3695AEC01
4/19/2022 14:28
Receipt #: 3695JQ30098
Type: Purchase

| Qty | Description | Amount |
|-----|-------------|--------|
| 1 | 50582 - SS Econ Color 24X36 | 35.94 |

| | | |
|-----|-------------|--------|
| SubTotal | | 35.94 |
| District tax | | 0.00 |
| City tax | | 0.00 |
| County tax | | 1.71 |
| State tax | | 1.44 |
| Total | | USD $39.09 |

Acct #:************1105
CHASE VISA
Chip Read
Auth No.: 04279G
Mode: Issuer
AID: A0000000031010
NO CVM
CVM Result: 1F0002
TVR: 0080008000
IAD: 06010A03602002
TSI: F800
ARC: 00
APPROVED

The Cardholder agrees to pay the Issuer
of the charge card in accordance with
the agreement between the Issuer and
the Cardholder.



**Tell us how we're doing and get a coupon for $7 off a print order of $40. Complete our survey by scanning the QR code below, visit fedex.com/welisten.**



Offer expires 6/30/2022

*$7 off print order of $40.00 or more. Discount applies to orders placed in a FedEx Office store or online through FedEx Office® Print Online. Offer is valid at time of purchase only, no cash value and may not be discounted or credited toward past or future purchases; discount cannot be used in combination with custom-bid orders, other coupons, or discounts, including account pricing. Discount not valid on the following products and services: finishing-only orders; self-service print, photo station, fax or scan; direct mail, EDDM® or postage. Does not apply to shipping, Custom branded boxes, rush or delivery charges. Does not apply to retail products. No cash value. Offer void where prohibited or restricted by law. Products, services and prices may vary by location. © 2022 FedEx. All rights reserved. Offer expires 6/30/2022.

By submitting your project to FedEx Office or by making a purchase in a FedEx Office store, you agree to all FedEx Office terms and conditions, including limitations of liability.

Request a copy of our terms and conditions from a team member or visit fedex.com/officeserviceterms for details.

A-2811

ORTIZ



**FedEx**
Office

4681 Transit Rd
Williamsville, NY 14221-6022
(716) 631-2679

Terminal: 3695AEC01
4/19/2022 14:22
Receipt #: 3695JQ30097
Type: Purchase

| Qty | Description | Amount |
|-----|-------------|--------|
| 10 | 2172 - BW 24X36 Print | 51.00 |
| 2 | 1270 - BW Print Per Sq. Ft | 1.70 |

| | | |
|---|---|---|
| SubTotal | | 52.70 |
| District tax | | 0.00 |
| City tax | | 0.00 |
| County tax | | 2.50 |
| State tax | | 2.11 |
| Total | USD | $57.31 |

Acct #:************1105
CHASE VISA
Chip Read
Auth No.: 07284G
Mode: Issuer
AID: A0000000031010
NO CVM
CVM Result: 1F0002
TVR: 0080008000
IAD: 06010A0360A002
TSI: F800
ARC: 00
APPROVED

The Cardholder agrees to pay the Issuer
of the charge card in accordance with
the agreement between the Issuer and
the Cardholder.



**Tell us how we're doing and get
a coupon for $7 off a print order
of $40.** Complete our survey by
scanning the QR code below,
visit **fedex.com/welisten**.



Offer expires 6/30/2022

*$7 off print order of $40.00 or more. Discount applies to orders placed in a FedEx Office store or online through FedEx Office® Print Online. Offer is valid at time of purchase only. No cash value and may not be discounted or credited toward past or future purchases; discount cannot be used in combination with custom-bid orders, other coupons, or discounts, including account pricing. Discount not valid on the following products and services: finishing-only orders; self-service print, photo station, fax or scan; direct mail, EDDM® or postage. Does not apply to shipping. Custom branded boxes, mailers or delivery charges. Does not apply to retail products. No cash value. Offer void where prohibited or restricted by law. Products, services and hours may vary by location. ©2021 FedEx. All rights reserved. Offer expires 6/30/2022.

By submitting your project to FedEx Office
or by making a purchase in a FedEx Office
store, you agree to all FedEx Office terms
and conditions, including limitations
of liability.

Request a copy of our terms and
conditions from a team member or visit
fedex.com/officeserviceterms for details.

A-2812

Ortiz



FedEx Office is your destination
for printing and shipping.

4881 Transit Rd
Williamsville, NY 14221-6022
Tel: (716) 631-2679

4/22/2022                    1:11:02 PM EST
Team Member: Andrew E.
Customer: Briana Croce

SALE

Blow-up                  Qty 1      33.80

BW 24x36 Print            8 @     4.2250 T
  000278 Reg. Price      5.10

  Price per piece        33.80
  Regular Total          40.80
  Discounts               7.00


Sub-Total                           33.80
Tax                                  2.96
Deposit                              0.00

Total                               36.76

************** PURCHASE **************

A-2813

Ortiz

FedEx Office.

FedEx Office is your destination
for printing and shipping.

4681 Transit Rd
Williamsville, NY 14221-6022
Tel: (716) 631-2679

4/28/2022                    2:20:23 PM EST
Team Member: Andrew E.
Customer: Briana Croce

SALE

| 20220428132228 | Qty 3 | 602.40 |
|---|---|---|
| BW 1S on 24# Wht | 2808 @ | 0.1700 T |
|   000330 Reg. Price | 0.24 | |
| Drill Per Sheet | 2952 @ | 0.0200 T |
|   000371 Reg. Price | 0.02 | |
| Drilling Setup | 1 @ | 1.4900 T |
|   000372 Reg. Price | 1.49 | |
| CLR 1S Copy/Print | 48 @ | 0.7400 T |
|   000173 Reg. Price | 0.74 | |
| BW 1S 8.5x14 | 96 @ | 0.3020 T |
|   000265 Reg. Price | 0.30 | |

Price per piece    200.80
Regular Total      798.96
Discounts          196.56

| 20220428133321 | Qty 3 | 347.99 |
|---|---|---|
| BW 2S on 24# Wht | 825 @ | 0.4000 T |
|   000331 Reg. Price | 0.48 | |
| Drill Per Sheet | 825 @ | 0.0200 T |
|   000371 Reg. Price | 0.02 | |
| Drilling Setup | 1 @ | 1.4900 T |
|   000372 Reg. Price | 1.49 | |

Price per piece    116.00
Regular Total      413.99
Discounts           66.00

Sub-Total                     950.39
Tax                            83.16
Deposit                         0.00

Total                       1,033.55

************ PURCHASE ************
APPROVED

**Ronald R. Reiber, Ph.D.**
**Economist**

**206 North Buffalo Street**
**Springville, N.Y. 14141**

**reiber@canisius.edu**
**phone 716-592-4825**

April 27, 2022

Attn:   Wayne Felle
Law Offices of Wayne C. Felle
Attorney & Counselor at Law
6024 Main Street
Williamsville, NY 14221-6833

                    RE:    Case of Josue Ortiz

Dear Mr. Felle:

My fee for all recent work-to-date regarding new calculations of economic loss & FRCP 26
compliance in this case is $1400.

Very truly yours,

Ronald Reiber, Ph.D.

A-2815

**Ronald R. Reiber, Ph.D.**

**Economics & Finance Department
Canisius College
2001 Main Street
Buffalo, N.Y. 14208-1098**

**reiber@canisius.edu
Phone 716-888-2665
Fax 716-888-3121**

August 10, 2020

Attn:   Wayne Felle
Law Offices of Wayne C. Felle
Attorney & Counselor at Law
6024 Main Street
Williamsville, NY 14221-6833

                    RE:    Case of Josue Ortiz

Dear Mr. Felle:

My fee for all recent work-to-date regarding new calculations of economic loss in this case is $600.

Very truly yours,

Ronald Reiber, Ph.D.

A-2816

**Ronald R. Reiber, Ph.D.**

**Economics & Finance Department**
**Canisius College**
**2001 Main Street**
**Buffalo, N.Y. 14208-1098**

**reiber@canisius.edu**
**Phone 716-888-2665**
**Fax 716-888-3135**

February 23, 2015

Attn:  Wayne Felle
Law Offices of Wayne C. Felle
Attorney & Counselor at Law
6024 Main Street
Williamsville, NY 14221-6833

                RE:    Case of Josue Ortiz

Dear Wayne:

My fee for all work-to-date regarding calculations of economic loss in this case is $1500.

Very truly yours,

*Ron Reiber*

Ronald Reiber, Ph.D.
Tax ID 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



**College of Humanities and Social Sciences**

*Department of Criminology, Law & Society*
4400 University Drive 4F4 Fairfax, Virginia 22030
Phone: 703-993-8183 Fax: 703-993-8316

January 24, 2020

Dear Mr. Felle,

At your request, I reviewed materials relating to criminal case of Mr. Josue Ortiz and wrote my report. We agreed on a fee of $300.00 per hour.

| Date | Description | Hours @ 300 per | Amount |
|------|-------------|-----------------|--------|
| 12/10/19 | Reviewed case materials | 0.50 hour | $150.00 |
| 12/14/19 | Reviewed case materials | 0.50 hour | $150.00 |
| 12/15/19 | Reviewed case materials | 0.67 hour | $201.00 |
| 12/16/19 | Reviewed case materials | 0.75 hour | $225.00 |
| 12/20/19 | Reviewed case materials; Phone call with Felle | 1.67 hours | $501.00 |
| 1/5/20 | Reviewed case materials | 1 hour | $300.00 |
| 1/9/20 | Reviewed case materials | 1 hour | $300.00 |
| 1/11/20 | Reviewed case materials | 1.25 hour | $375.00 |
| 1/13/20 | Drafted report; Phone call with Felle | 1 hour | $300 |
| 1/20/20 | Drafted report | 4 hours | $1,200 |
| 1/22/20 | Drafted Report; Reviewed materials | 2.5 hours | $750.00 |
| 1/23/20 | Drafted Report | 2 hours | $600.00 |
| 1/24/20 | Drafted Report | 2 hours | $600.00 |
| TOTAL | | 18.84 hrs. @300 | **$5.652.00** |

Please let me know if you need any additional information.  Please send the amount owed <u>within 2 weeks</u> to:
13096 Brookmead Dr.
Manassas, VA 20112

Thank you.

Sincerely,

Allison D. Redlich, Ph.D.

A-2818

 **College of Humanities and Social Sciences**

*Department of Criminology, Law & Society*
4400 University Drive 4F4 Fairfax, Virginia 22030
Phone: 703-993-8183 Fax: 703-993-8316

August 5, 2019

Dear Mr. Felle,

At your request, I reviewed materials relating to criminal case of Mr. Josue Ortiz. We agreed on a fee of $300.00 per hour.

| Date | Description | Hours @ 300 per | Amount |
|---|---|---|---|
| 6/12/19 | Reviewed case materials | 0.75 hour | $225.00 |
| 6/13/19 | Reviewed case materials | 0.75 hour | $225.00 |
| 6/16/19 | Reviewed case materials | 0.75 hour | $225.00 |
| 6/17/19 | Reviewed case materials | 0.75 hour | $225.00 |
| 6/18/19 | Reviewed case materials | 0.75 hour | $225.00 |
| | | | |
| TOTAL | | 3.75 hrs. @300 | $1125.00 |

Please let me know if you need any additional information. Thanks.

Sincerely,

Allison D. Redlich, Ph.D.

A-2819

STATEMENT

**BRIAN S. JOSEPH, M.D.**
Psychiatry
5820 MAIN STREET, SUITE 206
WILLIAMSVILLE, NEW YORK 14221

Board Certified By The
American Board of Psychiatry And Neurology

Mr. Wayne Kelle, PC

Telephone
(716) 633-5997

SSAN 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

3 May 22

| Account No. | Amount Due | AMOUNT PAID $ |
| --- | --- | --- |

Please Return This Portion With Your Remittance

Statement Date

Josue Ortiz

Retain This Portion Of Statement For Your Records

| DATE OF SERVICE | PROFESSIONAL SERVICE | CPT CODE | CHARGE/ PAID | BALANCE |
| --- | --- | --- | --- | --- |
| 4.11.22 | Interview & Review 82 1 Hr | | | $400 |
| 4.27.22 | Consult w attys 1½ hrs | | | $600 |
| 5.2.22 | Prep for Trial 2 hrs | | | $800 |
| 5.6.22 | Testimonial time 4 Hrs | | | $4000 |

| CURRENT AMOUNT | AMOUNT 31-60 DAYS PAST DUE | AMOUNT 61-90 DAYS PAST DUE | AMOUNT 90 DAYS OR MORE PAST DUE | TOTAL AMOUNT DUE |
| --- | --- | --- | --- | --- |
| | | | | $5800 |

BRIAN S. JOSEPH, M.D.
SSN: 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

5820 MAIN STREET, SUITE 206
(716) 633-5997

WILLIAMSVILLE, NEW YORK 14221

716 505 2720

A-2820

**STATEMENT**

**BRIAN S. JOSEPH, M.D.**
Psychiatry
5820 MAIN STREET, SUITE 206
WILLIAMSVILLE, NEW YORK  14221

Board Certified By The
American Board of Psychiatry And Neurology

**Telephone**
**(716) 633-5997**

SSAN 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

**3/25/19**
Date

Wayne C. Felle, Esquire
**Attorney and Counselor at Law**
**6024 Main Street**
**Williamsville, NY  14221-6833**

| Account No. | **ORTIZ, J** | Amount Due | **$1000.00** | AMOUNT PAID $ _____ |
|---|---|---|---|---|
| | | | | Please Return This Portion With Your Remittance |

| Statement Date | **3/25/19** | **ORTIZ** | Retain This Portion Of Statement For Your Records |

| DATE OF SERVICE | PROFESSIONAL SERVICE | CPT CODE | CHARGE/ PAID | BALANCE |
|---|---|---|---|---|
| 3/12/19 | INTERVIEW OF CLIENT | | | |
| | REVIEW OF RECORDS | | | |
| | PREPARATION AND | | | |
| | SUBMISSION OF REPORT | | | |

| CURRENT AMOUNT | AMOUNT 31-60 DAYS PAST DUE | AMOUNT 61-90 DAYS PAST DUE | AMOUNT 90 DAYS OR MORE PAST DUE | TOTAL AMOUNT DUE |
|---|---|---|---|---|
| **$1000.00** | | | | **$1000.00** |

FORM 03855  R/10/11  ITEM 7851

BRIAN S. JOSEPH, M.D.          5820 MAIN STREET, SUITE 206          WILLIAMSVILLE, NEW YORK  14221
SSN: 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                        (716) 633-5997

A-2821

CASH ONLY IF ALL CheckLock™ SECURITY FEATURES LISTED ON BACK INDICATE NO TAMPERING OR COPYING

**WAYNE C. FELLE, P.C.** 01/99
EXPENSE ACCOUNT
6024 MAIN STREET
WILLIAMSVILLE, NY 14221

**FIVE STAR BANK**
50-403/223

**5297**

11/5/2015

PAY TO THE
ORDER OF   Dr. Brian S. Joseph                                    $ **2,500.00

Two Thousand Five Hundred and 00/100************************************************************ DOLLARS

Dr. Brian S. Joseph
5820 Main Street
Williamsville, NY 14221

**COPY NOT NEGOTIABLE** MP

MEMO
      Josue Ortiz: Evaluation/Reports

---

WAYNE C. FELLE, P.C. / EXPENSE ACCOUNT                        **5297**

Dr. Brian S. Joseph                              11/5/2015

                                                        2,500.00

Five Star Checking Ex   Josue Ortiz: Evaluation/Reports                2,500.00

WAYNE C. FELLE, P.C. / EXPENSE ACCOUNT                        **5297**

Dr. Brian S. Joseph                              11/5/2015

                                                        2,500.00

PAYMENT RECORD

Five Star Checking Ex   Josue Ortiz: Evaluation/Reports                2,500.00







10021/10021 662468 (7/14)          100212                          Rev 2/14

A-2822



Josue, OrizVelazquez

Invoice # 234 4/12/22

Thank you for your business, I look forward to working with you again.

To:

**The Law Offices of Wayne Felle, P.C.**
(716) 505-2700

6024 Main Street
Williamsville, New York 14221

From:

**Duchon Vocational & Economic Consulting, LLC**
716.807.9128
RADuchon@dvecny.com

3859 North Buffalo Road
Suite 16
Orchard Park, NY 14127

| Item | Qty/Hrs | Tax | Price | Subtotal |
|------|---------|-----|-------|----------|
| Record Review, Cost Research, Interview Preparation, Interview, Letter Preparation, Phone Calls | 1 | | $8,322.50 | $8,322.50 |

Subtotal: $8,322.50
Tax: $0.00
Total: $8,322.50

Remainder: $8,322.50

Payment in full due net 30, a 1.9% late charge will be assessed monthly.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSUE ORTIZ,

                              Plaintiff,                    1:16-cv-00321-EAW-MJR

        v.

MARK STAMBACH

                              Defendant.
_____


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS


**LAW OFFICES OF WAYNE C. FELLE, P.C.**
Wayne C. Felle, Esq., of counsel
6024 Main Street
Williamsville, New York 14221
Telephone: (716) 505-2700
*Attorney for Plaintiff Josue Ortiz*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ……………………………………...............1

STATEMENT OF FACTS ………………..………………..……...………........1

ARGUMENT ………………………………………………………...........2

I.      PLAINTIFF IS THE PREVAILING PARTY IN THIS LITIGATION
        AND THEREFORE IS ENTITLED TO AN AWARD OF REASONABLE
        ATTORNEYS' FEES ………………...…………………………...……......2

II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE……………........3

        A.      The Hourly Rates Sought are Reasonable …………………………….....6

                1.      The Requested Hourly Rates Are in Line With Market Rates in
                        the Western District of New York………………………….…….........7

                2.      Application of the <u>Johnson</u> Factors Further Supports the
                        Reasonableness of the Requested Hourly Rates…………………….....9

        B.      The Number of Hours Expended Litigating This Case is Reasonable….... 16

        C.      No Adjustment to the Presumptively Reasonable Fee is Necessary………..18

III.    PLAINTIFF IS ALSO ENTITLED TO REASONABLE COSTS……...……….....19

CONCLUSION………………………………………………………………....20

## TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

Adorno v. Port Auth. of N.Y. & N.J., 06-CV-593, 2010 U.S. Dist. LEXIS 14692
  (S.D.N.Y).……………………...............................................................................8

Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182
  (2d Cir. 2008).………………………………………………………*passim*

Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510 (S.D.N.Y. 2002)……………19

City of Riverside v. Rivera, 477 U.S. 561 (1986)………………………………………2, 4

In re Continental Illinois Sec. Litig., 962 F.2d 566 (7th Cir. 1992)……………………..8

Farrar v. Hobby, 506 U.S. 103 (1992) ……………………….…………………...5, 18

Gierlinger v. Gleason, 160 F.3d 858 (2d Cir. 1998)………………………………………6

Gonzalez v. State, 906 N.Y.S.2d 779 (2009)………………………………………...15

Grant v. Martinez, 973, F.2d 96 (2d Cir. 1992) ………………………..…………………...16

Gristwood v. State, 119 A.D.3d 1414 (Fourth Dept. 2014)…………………………………15

Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir.1993)………………………………..8

Hensley v. Eckerhart, 461 U.S. 424 (1983)……………………………………….2, 5, 16

Husain v. Springer, 579 F. App'x 3, (2d. Cir. 2014)…………………………………….5

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)……………………...6

Kassim v. City of Schenectady., 415 F.3d 246 (2d Cir 2005)…………………………………4

Ker v. Quinn, 692 F.2d 875, 877 (2d. Cir. 1982)………………………………………5

LeBlanc Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998)…...……………….……….19

Lighthouse Baptist Church, Inc. v. Chemung Cnty.,
  WL 4166633 (WDNY Sept. 14, 2021)……………………………………………5

**TABLE OF AUTHORITIES- cont'd**

Page(s)

Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210
(S.D.N.Y. Feb. 9, 2010)…………………………………………...…..3, 18

Quaratino v. Tiffany & Co., 166 F.3d 422 (2d Cir. 1999)…………………………….…..4

Raishevic v. Foster, 247 F.3d 337, 344 (2d Cir. 2001)…………………………………4, 5

Reichman v. Bonsignore, Brignati & Maszzortta, P.C., 818 F.2d 278 (2d Cir. 1999)………...18

Robinson v. City of New York
05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009)………………7

Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008)…..…………………………8

Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.,
545 F. Supp. 2d 260 (E.D.N.Y. 2008)……………………………………………7

Vilkhu v. City of New York,
06-CV-2095, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. June 25, 2009)………..…….passim

**Statues and Rules:**

42 U.S.C. §1983……….........................................................................................1, 5

42 U.S.C. §1988……….........................................................................................1, 2

42 U.S.C § 1988(b).……………………………………………………………...…5

Local Civil Rule 54.1 ..........................................................................................19

Fed. R. Civ. Proc. 54(d)………………………………………………………….....5

Fed. R. Civ. Proc. 54(d)(1)……………………………………………………….19

Fed. R. Civ. Proc. 68…………………………………………………………….12

## PRELIMINARY STATEMENT

On May 9, 2022 the jury issued a verdict finding in favor of Plaintiff Josue Ortiz on all three of his 42 U.S.C. § 1983 claims in this matter and awarded compensatory damages of $5 Million and punitive damages of $1.5 Million.  As the prevailing party, Mr. Ortiz is entitled to recover costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.  Accordingly, Plaintiff submits this application for costs and attorneys' fees pursuant to FRCP 54(d) within 14 days following entry of Judgment on May 11, 2022.  (Dkt. No. 164).  For the reasons set forth below, Plaintiff respectfully submits that his application for costs and attorneys' fees should be granted in its entirety.

## STATEMENT OF FACTS

Plaintiff Josue Ortiz filed this action alleging that, on the night of November 16, 2004, Defendant detective, Mark Stambach of the BPD ("Defendant") falsely arrested him without cause and maliciously prosecuted him without basis. It was also asserted that Stambach violated the 5th amendment rights of Mr. Ortiz against self-incrimination. Defendant disputed almost every aspect of Mr. Ortiz's version of events in question.

From the beginning, this case presented substantial challenges. At the time representation started, Mr. Ortiz had already served ten (10) years in prison in this matter and evidence, including witnesses were difficult to find which presented a challenge to lay out the events in question. Mr. Ortiz also had suffered from a history of psychological issues. In a case where credibility was crucial, attorney Felle was tasked with convincing a jury to credit the version of events set forth by Mr. Ortiz over that of the members of the BPD with largely unblemished records. The only settlement offer presented by defendant was for 100,001.00.

1

**A-2828**

On May 9, 2022, after a five-day trial, the jury rendered a unanimous verdict for Mr. Ortiz on each and every one of the claims he asserted, finding the Defendant liable for violating Mr. Ortiz's constitutional rights and awarding him $5 Million in compensatory damages and $1.5 Million in punitive damages. As the prevailing party in this litigation, Mr. Ortiz now moves pursuant to 42 U.S.C. § 1988 for an award of attorney fees in the amount of $ 538,032.00 and costs in the amount of $37,638.00. [1] While the requested fees are significant, they represent a substantial reduction from the actual hours spent and rates charged to Felle's paying clients.

Moreover, in securing a verdict in a police misconduct case, the firm also contributes value to the public in deterring such conduct in the future. See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

**ARGUMENT**

## I.   PLAINTIFF IS THE PREVAILING PARTY IN THIS LITIGATION AND THEREFORE IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY FEES.

42 U.S.C. § 1988 provides that "in any action or proceedings to enforce a provision of section 1983 the court, in its discretion, may allow the prevailing party… reasonable attorney's fee as part of the costs." While the statue invokes the court's discretion, there is a presumption that prevailing the civil rights plaintiffs should recover reasonable attorneys' fees, unless special circumstances would render such an award unjust. See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

---

[1] Plaintiff expressively reserves the right to seek additional fees and costs for his counsel's work on the instant fee application, any other post-trial litigation and any appeals in this matter.

2

A plaintiff is considered the "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" Id. at 433. Here, Mr. Ortiz unquestionably meets the standard as the jury rendered a verdict in his favor on every one of the claims he asserted and awarded him $5,000,000 in compensatory damages and $1,500,000 in punitive damages.

## II.   THE REQUESTED ATTORNEY'S FEES ARE REASONABLE.

In calculating reasonable attorneys' fees, courts in this district are guided by the Second Circuit's recent opinion in Abor Hill Citizens Neighborhood Assn v. County of Albany, 522 F.3d 182 (2d Cir. 2008). In Abor Hill, the Court of Appeals moved away from the traditional use of the "lodestar" method of calculation in favor of calculating what it termed the "presumptively reasonable fee". Id. at 190. To calculate the presumptively reasonable fee, a court should first determine a reasonable hourly rate, which the Court defines as "the rate a paying client would be willing to pay". Next, the court should multiply that hourly rate by the number of hours "reasonably expended litigating cases" to determine the "presumptively reasonable fee". Vilkhu v. City of New York, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. June 25, 2009); see also Abor Hill, 522 F.3d at 190. Following determination of the presumptively reasonable fee, the court should consider whether that amount must be adjusted based on factors such as the extent of plaintiff's success in litigation. See Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210 (S.D.N.Y. Feb. 9, 2010). While a court may adjust the presumptively reasonable fee amount, there remains a strong presumption throughout the fee determination process that the initial calculation represents a reasonable fee. Id. at 11.

3

In determining a reasonable fee, a court must also bear in mind the well-settled principle that an appropriate award under Section 1988 need not be proportional to the damages recovered in the underlying litigation. As the Court of Appeals stated:

> [Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements. Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of a low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation ... If the district disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

Kassim v. City of Schenectady 415 F.3d 246, 252 (2d Cir. 2005); see also City of Riverside, 477, U.S. at 575 ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); Quaratino v. Tiffany & Co., 166 F.3d 422, 424 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected ex ante).

In the Second Circuit there is "a presumption that the successful civil rights litigants should ordinarily recover attorney's fees unless special circumstances would render an award unjust" under section 1988(b). Raishevic v. Foster, 247 F.3d 337, 344 (2d Cir. 2001) (following five-day trial awarding plaintiff $12,000 in damages the court awarded $365, 605.00 in

4

A-2831

attorney's fees plus costs to prevailing plaintiff). The Court stated, "as we explained in Kerr v. Quinn, 692 F. 2d 875, 877 (2d Cir. 1982), and also stated the "function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel" Raishevich, 247 F.3d at 344.

  The Court recently restated this well-established law as follows:

    Where, as here, an action is brought pursuant to 42 U.S.C. §1983, "the court, in its discretion. May allow the prevailing party ... a reasonable attorney's fee as part of the costs" subject to certain exceptions not relevant here. 42 U.S.C. §1988(b). "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 422 (1983). "However, while prevailing parties are eligible for fees under §1988, they are not invariably entitled to them" and "it is not the technical fact of prevailing party status, but the 'degree of success obtained' that determines a party's entitlement to a fee award and, relatedly, the reasonableness of the amount of that award" Husain v. Springer, 579 F. App'x 3, (2d Cir. 2014) and see Farrar v. Hobby, 506 U.S. 103, 114 (1992), Lighthouse Baptist Church, Inc. v. Chemung Cnty., 2021 WL 4166633(WDNY Sept. 14, 2021)

  Additionally, costs are recoverable under section 1988 and Fed R. Civ, P. 54(d), costs other than attorney's fees 'should be allowed to the prevailing party".

A.      **The Hourly Rates Sought are Reasonable.**

In determining the reasonable hourly rate to be used in calculating the presumptively reasonable fee, the Second Circuit has instructed the district courts to "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees". Arbor Hill, 522 F.3d at 190. The relevant include, among other things, the case-specific variables set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (the "Johnson" factors) [2], as well as the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.". Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998).

As set forth in detail in the accompanying Felle Declaration, Plaintiff requests the following hourly rates for work performed by his attorneys and their staff:

| NAME | POSITION | HOURLY RATE |
|---|---|---|
| Wayne Felle | Principal Attorney | $425.00 |
| Edward Markarian | Appellate Attorney | $335.00 |
| Elizabeth Bruce | Associate Attorney | $325.00 |
| Briana Croce | Paralegal | $125.00 |

(Felle Decl.¶ 6) Applying the relevant factors to the circumstances of this case demonstrates that the hourly rates sought are reasonable.

---

[2] The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Arbor Hill, 522 F.3d at 187 n.3.

1.      **The Requested Hourly Rates Are in Line With Market Rates
in the Western District of New York**

The Second Circuit has explained that the relevant "community" for purposes of

comparing prevailing market rates is the district in which the district court sits – here, the

Western District of New York. Arbor Hill, 522 F.3d at 190. Here, the Court may consider the

prevailing rates in the Western District of New York, where Felle's firm is located, and it may

adjust the base hourly rate to account for other case-specific variables. Teamsters Local 814

Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 265-66 (E.D.N.Y. 2008);

see also Arbor Hill, 522 F.3d at 191. In deciding whether to use out-of-district rates, the court

should look to "what a reasonable, paying client would be willing to pay to have the case

litigated efficiently". Teamsters, 545 F. Supp. 2d at 266.

The key issues in this case were intensely factual in nature, with success or failure likely

turning on the credibility of the Plaintiff, who is unable to remember the facts and circumstances

surrounding his interrogation and arrest. Which added to the importance, if not critical nature, of

the cross-examination of the Defendant and other Buffalo Police officers and detectives. See

Robinson v. City of New York 05 Civ. 9545, 2009 U.S. Dist. Lexis 89981 (SDNY Sept. 29,

2009) (holding that where the complexity of the case was almost entirely logistical and factual,

the attorney's general litigation experience was 'wholly transferable and relevant')

Mr. Felle himself has 27 years of litigation experience and has previously represented

clients in securing very successful verdicts and settlements, many in excess of a million dollars.

(Felle Declaration at ¶ 10) Under these circumstances, it would have been entirely reasonable for

a paying client to retain a firm like Felle located in the Western District of New York in this

matter. See Teamsters, 545 F. Supp 2d at 266. As such, it is appropriate to utilize

A-2834

rates prevailing in the Western District of New York to determine the reasonableness of the hourly rates requested herein.

The hourly rates sought are squarely within the range of hourly rates that have been approved in recent cases applying rates prevailing in the Western District. Courts in that district routinely have approved awards in civil cases over the past ten years in the range of $250 to $600 for partners, and $200 to $350 for associates, with average awards increasing over time. Adorno v. Port Auth. of N.Y. & N.J., 06-CV-593, 2010 U.S. Dist. LEXIS 89981, at *13-14 (approving attorneys' hourly rates ranging from $185 to $500); [4] Vilkhu, 2009 U.S Dist. LEXIS 73696 at * 19-30 (E.D.N.Y. June 25, 2009) (utilizing prevailing Western District rates in approving hourly rates of $400 to $525 for partners in civil rights action); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 545-46(applying hourly rates of $600 for partners, $350 for senior associates, $250 for junior associates, and $125 for paralegals). Indeed, in the recent Vilkhu matter, plaintiff provided direct evidence – in the form of affidavits from lawyers in the community –of the current prevailing market rates in the Western District of New York for civil rights actions of this nature, which rates are in line with those requested here. Vilkhu, 2009 U.S. Dist. LEXIS 73696, at *15-16. Therefore, the requested hourly rates should be utilized in calculating the presumptively reasonable fee.

---

[4] As Judge Posner explained in reversing a district court opinion that refused to apply counsel's prevailing market rates: "It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyers' services better than the market did. What the market valued at $350 he though worth only half as much… [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if the lawyer were selling his services in the market rather than being paid by court order." In re Continental Illinois Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992); see also Gusman v. Unisys Corp., 986 F.2d 1146, 1150-51 (7th Cir. 1993) ("[T]he best measure of the cost of attorney's time is what the attorney could earn from paying clients… A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community.")

**2.    Application of the <u>Johnson</u> Factors Further Supports the Reasonableness of the Requested Hourly Rates.**

Application of the <u>Johnson</u> factors likewise compels a finding that the hourly rates sought are reasonable:

(1)    <u>The Time and Labor Required</u>: The fact-intensive nature of this matter required the expenditure of a great deal of time and effort in identifying and developing the factual inconsistencies that ultimately convinced the jury to disbelieve the version of events posited by Defendant in this matter. Moreover, Mr. Ortiz's psychological issues, his difficulty understanding and explaining many aspects of his medical history and records, and his inability to meet regularly with his attorneys made it difficult to marshal evidence and develop the facts to corroborate Mr. Ortiz's claims, as well as to respond appropriately to Defendant's requests for documentation and information. As a result, his attorneys spent considerable time conducting factual investigations and speaking to potential witnesses without the guidance and assistance that a typical client may otherwise have been able to provide. In addition, the case was hard fought by Defendants' counsel, the Buffalo City Law Department and Hodgson Russ, LLP., requiring numerous discovery conferences with Magistrates and Judges, requiring Plaintiff to respond to motions to compel, preclude and dismiss, filed by Defendant.

(2)    <u>The Novelty and Difficulty of the Questions</u>: Although this matter did not present significant novel legal questions, the factual issues in this case were far from simple. Because there were no eyewitnesses to the events in question other than the Plaintiff and the Defendant, a Buffalo detective with 30 years' experience, Mark Stambach who denied all wrongdoing, and

A-2836

where the Plaintiff was unable to testify as to the events surrounding his interrogation and ultimate arrest. The proof had to be drawn together painstakingly through a review of various records – Mr. Ortiz's medical and prison records, files relating to the criminal proceedings against him, and the Defendants' arrest reports, investigation file and police reports, among other records – and through the deposition testimony of the parties and non-parties in this action.

(3)     <u>The Level of Skills Required to Perform the Legal Services Properly:</u> This case presented significant difficulties that required Plaintiff's counsel to exercise considerable skill in order to obtain the verdict the jury ultimately rendered. In a case where the credibility of the Plaintiff and Defendant was of paramount importance, Plaintiff's counsel was tasked with convincing a jury to credit the testimony of plaintiff, with a subsequent arrest (as came out at trial), a history of psychological problems. In the end, the jury returned a verdict for Plaintiff on all claims, and registered its displeasure with Defendant by awarding substantial punitive damages.

(4)     <u>The Preclusion of Employment by the Attorney Due to Acceptance of the Case:</u> Because of the significant amount of time expended in preparing this matter for trial, Mr. Felle were unable, during the most intense periods of litigating this case, to take on certain paying matters that they would otherwise undertake.

As this Court is aware Felle is a small firm with limited resources, this case consumed the full attention of Felle during depositions, motions and certainly trial. As such, potential clients could not be met or assisted in their legal circumstances which resulted in a loss of clients and the fee potential of those cases.

(5)     The Attorney's Customary Hourly Rate: Plaintiff's attorneys' customary hourly rates significantly exceed the rates sought in this fee application. Mr. Felle's customary hourly rate is earned through a contingent fee, which given the verdicts and settlements obtained is well in excess of the hourly fee claimed herein.

Felle has maintained a solo legal practice for over twenty (20) years. He has successfully litigated and settled cases in excess of tens of millions of dollars. This year alone Felle tried a case to excess verdict (above the insurance policy limits), requiring an insurance company to pay 2.5 times its policy limits. That case generated an hourly fee, by approximation, of $650/ hour.

(6)     Whether the Fee is Fixed or Contingent: Felle's work on this matter commenced when the firm was asked by Mr. Ortiz and agreed to represent Mr. Ortiz. While Felle and Ortiz entered a contingent fee agreement, which meant without success no fee would be generated, as in most civil rights actions, Felle relied on the fee-shifting provisions of Section 1988 to provide adequate compensation for the services rendered should Plaintiff prevail. There was no provision for Mr. Ortiz to pay his attorneys any fees or cover their expenses unless and until successful resolution of his claims. Any fee awarded Felle will be subtracted from the contingent fee due by Ortiz, which will provide a greater net sum to Ortiz, consistent with the intent of §1988.

(7)     Time Limitations Imposed by the Clients or the Circumstances: The time limitations imposed by the circumstances of this case were significant, as Plaintiff's counsel was tasked with conducting discovery and preparing for trial within an expedited timeframe.

Again, discovery and depositions required extensive time given plaintiff's inability to contradict the position of defendant, and other Buffalo police officers, use of prior

11

**A-2838**

testimony and the investigation file was essential. If discovery and effective deposition

questioning wasn't challenging enough, as this Court is aware, co-counsel withdrew from

representation a week before the start of trial, which necessitated dogged preparation under

strenuous circumstances. The ineffective counsel of Pierce also resulted in numerous preclusion

Orders and limits in effective representation after his discharge. Given the time limitation

between the Pierce discharge and the start of trial Felle requested an adjournment of the trial,

which was denied. Therefore, this Court is well aware of the time limitations placed on Felle.

    (8)   <u>The Amount Involved in the Case and the Results Obtained:</u> Plaintiff obtained a

definitive finding that Defendant violated his constitutional rights and must pay him $5,000,000

in compensatory damages and 1,500,000 in punitive damages. Notably, the total award was 65

times greater than that which Defendants had proposed in a Rule 68 offer of judgment prior to

trial. [5] Moreover, the relationship between the compensatory and punitive awards is significant,

as it demonstrates that while the jury found that Plaintiff suffered a verifiable and compensable

harm as a result of Defendant's actions, Plaintiff's counsel was successful in producing sufficient

evidence to allow the jury to find the conduct of Defendant was so offensive that the jury felt

compelled to punish the Defendant to deter similar actions in the future.

---

[5] Following Defendants' Rule 68 offer of judgment in the amount of $100, 001.00, and prior to engaging in the substantial pre-trial preparations that account for a substantial portion of the fees sought herein, Plaintiff presented a counteroffer bracket of 6,500,000-1,500,000 for a global settlement of his claims, including any claim for attorneys' fees. Plaintiff was negotiating in good faith toward a middle ground settlement. Defendant rejected that counteroffer and instead decided to proceed to trial. Based on that decision, Defendant should not now be heard to complain that they are faced with a monetary judgment and a request for attorneys' fees that far exceed the dollar amount for which they could have resolved this litigation at an earlier stage.

The jury determined that the Defendants actions represented outrageous conduct and made a significant award of punitive damages. This result was intended as a deterrent thereby ensuring the protection of civil rights laws in future conduct.

(9)    <u>The Experience, Reputation and Ability of the Attorneys:</u> As set forth in the accompanying Felle Declaration, Felle is a preferred law firm who other attorney's refer cases for litigation and with extensive litigation experience. Every attorney who worked on this matter has exemplary credentials and litigation experience. (Felle Decl.¶10)

While there are certainly many law firms who are capable in these matters, many firms are unwilling to accept cases on a contingent fee basis. Felle has a reputation of fighting for the underdog and in may instances providing pro bono services in reviewing and investigation of potential cases. With 28 years of litigation experience Felle was willing to accept Ortiz as a client and persevere for more than 7 years on his behalf, even when his state case was lost in the Court of Claims, appeals were taken to the Appellate division and now a pending appeal to New York Court of Appeals.

(10)    <u>The "Undesirability" of the Case:</u> Suing the police department is always to some extent undesirable in the public mind. Suing the Buffalo Police Department, Erie County District Attorney's Office and now sitting Supreme Court Judge Frank A. Sedita has presented professional barriers and impacted case referral sources. Western New York is a small community and suing police officers and prosecutors is not always viewed as reputable business. This is especially true when "back the blue" sentiment has been high regionally and nationally.

A-2840

Taking on this case was also undesirable because it was a difficult case. There were no eyewitnesses to the interrogation other than the parties, and the Plaintiff could not recall the events due to severe psychological illness. Then while the case was pending the Plaintiff was arrested and charged, making his credibility more challenging. This case presented particularly risky and undesirable factual and legal issues.

(11)    The Nature of the Professional Relationship with the Client: Prior to appointment in this matter, Felle did not have a preexisting client relationship with Mr. Ortiz. (Felle Decl. ¶ 13) The firm's relationship with Mr. Ortiz is not the type of ongoing client relationship that typically would compel a firm to accept reduced hourly rates from that client in exchange for the promise of future business.

Felle did, and does, maintain a good working relationship with other attorneys in the community and when criminal defense attorneys realized that Ortiz would be released, having been determined to be innocent of the charges, they contacted Felle to review the potential for wrongful conviction and/or incarceration claims. The decision to enter a professional relationship with Ortiz was initially complicated by the issues he immediately presented with, ie. no income, no residence and being in need of continued psychiatric treatment, which he relied on my firm to assist in coordinating. Ortiz is of a certain likable character and is very forthcoming and honest. All these factors being considered entering the relationship was daunting and very time consuming, with the prospect of financial success doubtful.

(12)    Awards in Similar Cases: As set forth above, the hourly rate sought is within the range of rates routinely approved in connection with attorneys' fees awards in the Western District of New York. In addition, the total fee sought is consistent, if not more supported, with the fees awarded in similar cases in this district. See, e.g., Vilkhu, 2009 U.S. Dist. LEXIS 73696

14

(awarding $671,056.80 in attorneys' fees in a case where plaintiff prevailed on excessive force claims and obtained a verdict of only $20,000 in compensatory damages).

Accordingly, all twelve Johnson factors weigh in favor of awarding Plaintiff the full requested legal fee.

### B.    The Number is Hours Expended Litigating This Case is Reasonable.

After assessing the reasonable hourly rate, the court must then determine the number of "hours reasonably expended" on this matter in order to calculate the presumptively reasonable fee. Vilkhu, 2009 U.S. Dist. LEXIS 73696. Hours reasonably expended are those actually expended by counsel less any "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434. In determining whether hours should be excluded, the inquiry is not based on what efforts appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures" See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Here, as detailed in the Felle Declaration and its accompanying exhibits, the work for which fees are sought was necessary and entirely reasonable. (Felle Decl. ¶ 5, 8). Plaintiff seeks reimbursement for the following hours expended by counsel and his staff in litigating this matter:

| NAME | POSITION | HOURLY RATE |
|---|---|---|
| Wayne Felle | Principal Attorney | $425.00 |
| Edward Markarian | Appellate Attorney | $335.00 |
| Elizabeth Bruce | Associate Attorney | $325.00 |
| Briana Croce | Paralegal | $125.00 |

(Felle Decl.) The vast majority of the listed attorney time was spent on performing legal research, conducting document review and other factual investigations, taking, defending, and preparing for depositions, resolving discovery dispute (including participating in numerous

conferences with the Magistrate and Federal Court Judges and Court of Claims Judge Hudson) and drafting associated correspondence or motions, and preparing for and conducting trial, including briefing extensive *in limine* motions and preparing for trial – all ordinary and necessary expenditures of time during the course of this litigation. (Felle Decl. ¶ 5, 8).

Throughout this litigation, and consistent with the highest professional standards, Felle has endeavored to minimize its fee. First, this matter was staffed leanly, with one partner, (Mr. Felle), one mid-level associate (Ms. Bruce) comprising the core team. (Felle Decl. ¶14). Second, Felle utilized the least expensive level of personnel to accomplish required tasks, including, where appropriate, by assigning work to a paralegal whenever possible. (Felle Decl. ¶ 14)

Moreover, for purpose of this fee application, Felle has exercised "billing judgment" and is therefore not seeking fees for any arguably inefficient or duplicative hours expended in this matter.

First, certain legal work has been entirely excluded from the fee request. For example, throughout the course of this case, Wayne Felle and Elizabeth Bruce contributed numerous hours of time to assisting Ortiz with housing, employment and medical treatment, which is not billed. Felle has also not billed for substantive work, including legal research, google searches related to other wrongful conviction cases, attendance at seminars and conferences related to wrongful incarceration, reviewing documents and briefs from other cases, research of Federal Court rules and logistics surrounding trial. In addition, Felle consulted with various attorneys on litigation strategy, preparation and presentation of trial issues and jury composition and this time has been excluded from this application.

Second, with respect to the lawyer's entries, we have reviewed the records closely for arguably duplicative or redundant time that two or more attorneys spent on one task.

16

A-2843

Third, the firm is seeking fees only for the attorney's and paralegal listed above – Mr. Felle, Ms. Bruce and Ms. Croce. The firm is not seeking fees for additional timekeepers (paralegals, law clerks, and support staff) who assisted in the preparation of this case. All such hours have been excluded from this application. (Felle Decl. ¶ 8).

Particularly in light of these reductions, we respectfully submit that the hours sought to be reimbursed are reasonable and appropriate. As set forth in the table below, multiplying those hours by the reasonable hourly rates requested herein yields a presumptively reasonable fee of $538,032.00.

### C.    No Adjustment to the Presumptively Reasonable Fee is Necessary.

Once having determined the presumptively reasonable fee, the Court may consider whether any adjustment to that fee is warranted. Mugavero, 2010 U.S. Dist. LEXIS 11210, at 10. The Supreme Court has held that "the most critical factor" in determining whether to adjust a fee award "is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992).

The circumstances of the present case make this analysis fairly straightforward. Plaintiff is not seeking any upward adjustment of fees, even though Plaintiff obtained a unanimous jury verdict in his favor on each and every one of the claims he asserted. The jury found that Defendant violated Plaintiff's constitutional rights in a number of ways, thus vindicating his claims and deterring future violations. Based on those findings, the jury awarded Mr. Ortiz both $5 Million in compensatory damages and a substantial punitive damages award in the amount of $1.5 Million to punish Defendant for his outrageous conduct. In light of these circumstances, it cannot reasonably be argued that Plaintiff "failed" in any sense to achieve what

17

A-2844

he sought in this litigation. Therefore, the Court need not consider any downward adjustment, and Plaintiff should be awarded the full presumptively reasonable fee.

## III.   PLAINTIFF IS ALSO ENTITLED TO REASONABLE COSTS

As the prevailing party, Plaintiff is also entitled to recover reasonable out-of-pocket costs necessarily incurred in litigating this matter. See LeBlanc Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (abuse of discretion not to award plaintiff reasonable out-of-pocket costs); Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987) (prevailing plaintiff entitled to "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients"); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) (prevailing plaintiff entitled to reasonable costs). The costs incurred by Plaintiff's counsel are set forth in Exhibit 2 to the accompanying Felle Declaration. The total costs sought, through today's date, are $37,638.00. [7]

---

[7] The costs sought herein do not include certain costs that are taxable in favor of the prevailing party under Federal Rule of Civil Procedure 54(d)(1) and Local Civil Rule 54.1. Those costs will be the subject of a separate Bill of Costs directed to the Clerk of the Court.

A-2845

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant him an award of attorneys' fees in the amount of $ 538,032.00 and costs in the amount of $37,638.00, plus fee and costs reasonably expended in preparing this motion and on any other post-trial litigation or appeals.

Dated:        May 20, 2022

**LAW OFFICES OF WAYNE C. FELLE, P.C.**

By:        *s// Wayne C. Felle*
           Wayne C. Felle, Esq.
           *Attorney for Plaintiff Josue Ortiz*
           6024 Main Street
           Williamsville, New York 14221
           Telephone: (716) 505-2700

A-2846

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

Plaintiff,

v.                                                              1:16-cv-00321-EAW-MJR

MARK STAMBACH

Defendants.

**NOTICE OF MOTION FOR JUDGMENT**
**AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b),**
**A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a),**
**AND FOR REMITTUR PURSUANT TO FED. R. CIV. P. 59(e)**

| | |
|---|---|
| Nature of Action: | Civil Rights |
| Moving Party: | Defendant Mark Stambach |
| Directed To: | Plaintiff Joseph Ortiz |
| Date and Time: | At a date and time to be determined by the Court. |
| Place: | Kenneth B. Keating Federal Building, 100 State Street Rochester, New York 14614 |
| Supporting Papers: | Declaration of Peter A. Sahasrabudhe in Support, with Exhibits A-B, and Memorandum of Law |
| Answering Papers: | Must be served in accordance with a briefing schedule to be set by the Court. |
| Relief Requested: | Judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, a new trial pursuant to Fed. R. Civ. P. 59(a).  Further, if neither judgment as a matter of law nor a new trial are granted, an order of remittur pursuant to Fed. R. Civ. P. 59(e). |
| Grounds for Relief: | Are fully set forth in the accompanying Memorandum of Law. |
| Oral Argument: | Requested |

A-2847

- 2 -

Dated:      Buffalo, New York
            June 7, 2022

                              **HODGSON RUSS** LLP
                              *Attorneys for Defendant Mark Stambach*

                              By:  s/ Peter A. Sahasrabudhe
                                   Hugh M. Russ, III
                                   Peter A. Sahasrabudhe
                              The Guaranty Building
                              140 Pearl Street – Suite 100
                              Buffalo, New York  14202
                              Telephone:  (716) 856-4000

**TO:     LAW OFFICES OF
          WAYNE C. FELLE, P.C.**
          *Attorney for Plaintiff*
          Wayne C. Felle, Esq.
          6024 Main Street
          Williamsville, NY  14221
          Telephone:  (716) 505-2700

A-2848

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                                   Plaintiff,

         v.                                              1:16-cv-00321-EAW-MJR

MARK STAMBACH

                                   Defendants.

# DECLARATION IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

**PETER A. SAHASRABUDHE**, under penalty of perjury and pursuant to 28

U.S.C. § 1746, declares the following to be true and correct:

1.      I am an associate of Hodgson Russ LLP, attorneys for Defendant Mark

Stambach.

2.      I submit this Declaration in support of Detective Stambach's motion for

judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative for a new trial

pursuant to Fed. R. Civ. P. 59(a).  Detective Stambach also moves for remittur pursuant to Fed.

R. Civ. P. 59(e).

3.      Based on the evidence recounted here, and based on the legal argument

contained within the accompanying Memorandum of Law, Detective Stambach requests that the

Court grant judgment as a matter law in his favor on each of the three remaining claims against

him that were submitted to the jury.

- 2 -

4.      In the alternative, Detective Stambach requests that the Court grant a new trial or, at the very least, that the Court reduce the damages awarded against him by the jury in its verdict.

## TESTIMONIAL EVIDENCE

### The Testimony of Dr. Evelyn Coggins

5.      The first witness to testify at trial was Dr. Evelyn Coggins.  Dr. Coggins's trial testimony was previously transcribed and filed to the docket of this matter.  (Dkt. No. 157).

6.      Dr. Coggins did not give any testimony related to Detective Stambach. Her testimony offered nothing concerning Detective Stambach's involvement in the underlying investigation that led the conviction of Plaintiff, Josue Ortiz.

7.      Dr. Coggins testified that she first saw Ortiz on November 19, 2004, approximately three days after Ortiz's confession. (Dkt. No. 157) at p. 72.

8.      Dr. Coggins testified that she concluded Ortiz was schizophrenic and was in the middle of the onset of a psychotic break.  (*Id.*) at p. 28.  She further testified that, in her opinion, the psychotic break had been continuing for "some days." (*Id.*) at 76.

9.      Dr. Coggins acknowledged, however, that she could not testify as to Ortiz's exact mental state on November 16, 2004.  (*Id.*) at p. 79.  Nor could she say that Ortiz had not experienced "clarity" at the time or that Ortiz failed to understand his confession.

- 3 -

10.     Dr. Coggins also testified that, during Ortiz's criminal proceedings, she rendered an opinion that he was competent to stand trial.  (*Id.*) at p. 65.

**The Testimony of Josue Ortiz**

11.     The next witness to testify was Ortiz himself.  Ortiz's testimony was interrupted to allow two other witnesses to testify, so his testimony had been filed to the docket in two separate entries.  (Dkt Nos. 173, 175).

12.     Ortiz did not testify about Detective Stambach's conduct at all.  In fact, the only thing Ortiz could offer is that he does not remember his interactions with Detective Stambach or any other member of the Buffalo Police Department before his arrest and conviction.  (Dkt. No. 175) at p. 265.

13.     Ortiz also confirmed that he signed a *Miranda* waiver card that was read to him.  He admitted his signature was present on his sworn statement confessing to the murders of Nelson and Miguel Camacho.  (*Id.*) at p. 266, 272.

14.     Ortiz also admitted to the murders by pleading guilty before Judge Forma and by standing silent at sentencing.  Ortiz also admitted that he testified in front of a federal grand jury that he murdered Nelson and Miguel Camacho, approximately seven years after his initial confession.  (*Id.*) at p. 283-284.

15.     Despite being represented by two respected and highly regarded defense attorneys, after his psychological distress subsided, Ortiz still pleaded guilty to two counts of manslaughter in connection with the Camacho murders.  (*Id.*) at p. 225.

- 4 -

**The Testimony of Mark Vaughn**

16.     The next witness to testify was former Buffalo Police Department Detective Mark Vaughn.  A transcript of Detective Vaughn's trial testimony had been filed to the docket of this matter.  (Dkt. No. 173).

17.     Detective Vaughn did not offer any testimony about the involvement of Detective Stambach or his role in Ortiz's confession.

18.     Detective Vaughn merely testified that on November 15, 2004, he received a call while on duty.  The call was from an individual at Buffalo General Hospital who told him that a patient in the psychiatric unit claimed to have information about the Camacho murders.  (*Id.*) at p. 123.

19.     Detective Vaughn then went to Buffalo General Hospital with his partner, James Leema, and the Sergeant of the Major Crimes Unit, Jim Lonergan.  (*Id.*) at p. 122-125.

20.     The Detectives also called in a patrolman, Edwin Torres, to interpret once they got to Buffalo General because, upon discovering that Ortiz was the witness, they also learned that Ortiz spoke Spanish as his first language.  (*Id.*) at p. 124.

21.     Detective Vaughn testified that he interviewed Ortiz with assistance from Officer Torres for about half an hour. (*Id.*) at p. 126.

- 5 -

22.    Detective Vaughn testified that, during the interview at Buffalo General, Ortiz did not offer any information which was relevant to the Camacho investigation. (*Id.*) at p. 127.

23.    Detective Vaughn did testify that Ortiz seemed to understand the questions being asked of him, and that Ortiz and Officer Torres were able to communicate with each other. (*Id.*) at p. 145.

24.    Detective Vaughn further testified that, as far as he could tell, Ortiz was not in a manic or psychotic state. (*Id.*) at p. 144-145.  Detective Vaughn also testified that, in his many years as a law enforcement officer, he had encountered individuals suffering severe psychological distress, but Ortiz did not appear to be suffering from such a condition. (*Id.*) at p. 144.

**The Testimony of Jim Lonergan**

25.    The next witness to testify was Detective Sergeant Lonergan.  Detective Lonergan's trial testimony has been filed to the docket of this matter.  (Dkt. No. 173).

26.    Detective Sergeant Lonergan testified that he was present when Ortiz was interviewed at Buffalo General Hospital on November 15, 2004. (*Id.*) at p. 176.

27.    The next day, Detective Sergeant Lonergan was notified over dispatch that a witness was coming in to give information about the Camacho murders. (*Id.*) at p. 180.  He did not know this witness was Ortiz, but he did recognize Ortiz when he was brought into the Major Crimes Unit office by two patrolmen. (*Id.*) at p. 184.

- 6 -

28.     Detective Sergeant Lonergan observed Ortiz's formal statement, which began at approximately 9:00 p.m.  Detective Sargent Lonergan witnessed the signatures on Ortiz's confession.  He stated that he agreed with the decision that Ortiz should have been arrested and charged after he confessed.  (*Id*.) at p. 188-190.

29.     Detective Sergeant Lonergan further testified that Ortiz's account of the murders contained details suggesting that he was in fact a perpetrator of the Camacho murders. (*Id*.) at p. 189.

30.     For example, Ortiz stated that a gold chain had been ripped from the neck of one victim.  Ortiz also provided that a big screen television at the crime scene was on when the crime was committed.  (*Id*.)

31.     Detective Sergeant Lonergan testified that he believed Ortiz was guilty of the Camacho murders after hearing the confession.  (*Id*.) at p. 201.

**The Testimony of Detective Stambach**

32.     The next witness to testify was Detective Stambach.  A transcript of Detective Stambach's testimony has been filed to the docket.  (Dkt. No. 165).

33.     Detective Stambach's first involvement with the investigation of the Camacho murders was on November 16, 2004.  (*Id*.) at p. 14.

34.     Detective Stambach did not do an analysis of the crime scene prior to that evening, and he did not have supervisory authority over the investigation.  (*Id*.)

Case 23-352, Document 45, 06/23/2023, 3533159, Page149 of 281

- 7 -

35.     Detective Stambach testified that, on November 16, 2004, a call came through stating that someone voluntarily wanted to speak to the Major Crimes Unit about the Camacho murders.  (*Id.*) at 15.

36.     Two patrolman brought Ortiz to the station.  (*Id.*) at p. 39.  Detective Stambach played no role in transporting Ortiz to the police station on the evening in question.

37.     When Ortiz arrived at the police station, Detective Stambach met with him for less than an hour in the office of an off-duty sergeant. Detective Stambach began asking Ortiz open ended questions, and Ortiz made statements which tended to show he was a perpetrator of the Camacho murders.  (*Id.*) at p. 39-40.  Detective Stambach did not ask Ortiz leading questions.  Ortiz voluntarily offered information tending to show he was involved in the murders in response to Detective Stambach's open ended questions.  (*Id.*) at p. 82.

38.     Because Ortiz's first language was Spanish, Detective Stambach called for the assistance of Officer Torres to ensure that there were no issues with communication once Ortiz was to deliver a statement.  (*Id.*) at p. 54.

39.     After Officer Torres arrived and Ortiz was read his *Miranda* rights in Spanish.  Ortiz was then given food from McDonalds.  Then his formal statement was taken.  (*Id.*) at p. 38.

40.     Detective Stambach asked Ortiz questions, which Officer Torres translated.  (*Id.*) at 74.  Sometimes, Ortiz did not need Officer Torres to translate, and he would simply respond to Detective Stambach's question in English.  (*Id.*)  Based on Ortiz's answers to

Case 23-352, Document 45, 06/23/2023, 3533159, Page150 of 281

- 8 -

his questions and Torres's translation, Detective Stambach transcribed Ortiz's confession on a typewriter.  (*Id.*) at p. 74.

41.     After the confession was taken, Officer Torres, Detective Stambach, and Ortiz added their initials to each page of the confession.  (*Id.*) at 75-77.  Officer Torres and Ortiz also signed the confession.  (*Id.*)  Detective Sergeant Lonergan signed the confession, as well.  (*Id.*)

42.     According to Detective Stambach, Ortiz did not exhibit any behavior which led him to suspect that Ortiz was suffering from a mental health crisis.  (*Id.*) at p. 77-78.

43.     Detective Stambach found Ortiz's confession to be credible, and he believed after the confession that Ortiz was involved in the Camacho murders.  (*Id.*) at p. 82-83.

44.     After Detective Stambach took the confession, he followed protocol and notified the Erie County District Attorney's Office about the statement.  An Assistant District Attorney later instructed Detective Stambach to charge Ortiz with the murders based on the confession.  (*Id.*) at p. 85-86.

45.     Detective Stambach did not "close" the investigation file after Ortiz's confession, and he testified that the investigation remained open after Ortiz had confessed.  (*Id.*) at p. 86-87.

- 9 -

**The Testimony of Mary Evans**

  46. The next witness to testify was Mary Evans, a cold case detective for the Buffalo Police Department.  Detective Evans's testimony has not yet been filed to the docket, and the undersigned has not yet received a transcript of her testimony.  However, the pertinent parts of her testimony are discussed below, to the best of the undersigned's memory.

  47. Detective Evans did not offer any testimony regarding Detective Stambach's investigative involvement with Ortiz in 2004.  In fact, she testified that her careful review of the investigation file for the Camacho murders years later did not reveal any misconduct by Detective Stambach.

  48. Detective Evans testified that, based on confessions and witness statements that were not available in 2004, she and other investigators eventually determined that Ortiz was not involved in the Camacho murders.

  49. When Detective Evans first confronted Ortiz with the determination of his non-involvement, Ortiz refused to speak.  Only after considerable persuasion on her part did Ortiz finally admit that his 2004 confession was fraudulent.

  50. Detective Evans offered no testimony regarding any information known to Detective Stambach at the time of Ortiz's confession that would have tended to suggest Ortiz's innocence.

Case 23-352, Document 45, 06/23/2023, 3533159, Page152 of 281

- 10 -

**The Testimony of Mark Lauber**

51.     The next witness to testify was former Buffalo Police Department Detective Mark Lauber.  Detective Lauber's testimony has not yet been filed to the docket, and the undersigned has not yet received a transcript of his testimony.  However, the pertinent parts of his testimony are discussed below, to the best of the undersigned's memory.

52.     Detective Lauber did not offer any testimony regarding the conduct or investigative activity of Detective Stambach.

53.     Detective Lauber testified that, during the afternoon November 15, 2004, he received word from a patrol officer that someone had climbed into a police car and claimed to have information about the Camacho murders.

54.     Upon meeting the patrol officer with whom he had spoken, Lauber began to interview the individual, and he learned that this individual was Ortiz.

55.     Detective Lauber testified that Ortiz did not seem to be making sense, because Ortiz was under the obvious influence of marijuana.  Detective Lauber determined that Ortiz could not give relevant information regarding the Camacho murders at that time.  He offered to call an ambulance for Ortiz if Ortiz wished to receive medical care.  Ortiz agreed to seek medical care, and he voluntarily went to the hospital in an ambulance.

56.     Although Detective Lauber testified that Ortiz did not relay any relevant information to him at the time of their interaction, he testified that Ortiz was nonetheless "on the radar" as an individual who may have relevant information pertaining to the Camacho murders.

Case 23-352, Document 45, 06/23/2023, 3533159, Page153 of 281

- 11 -

**The Testimony of Edwin Torres**

57.     The final witness to testify was former Buffalo Police Officer Edwin Torres.  A transcript of Officer Torres's testimony has been filed to the docket.  (Dkt. No. 176).

58.     Officer Torres testified that he grew up speaking Spanish, could switch back and forth between Spanish and English, and was effective at translating for Spanish speakers throughout his years as a police officer.  (*Id.*) at p. 443-448.

59.     Officer Torres testified that, on November 16, 2004, he was called into the office of the Buffalo Police Department's Major Crimes Unit, where he translated Ortiz's confession.  (*Id.*) at 452.

60.     Officer Torres testified that he had no problems understanding Ortiz. Ortiz had no problems understanding him.  (*Id.*) at p. 452-453.

61.     Officer Torres read Ortiz his *Miranda* rights from a Spanish *Miranda* card. (*Id.*) at p. 454-455.  Officer Torres testified that both he and Ortiz signed the *Miranda* card.  (*Id.*) Ortiz appeared to understand his rights.  Officer Torres would not have signed the card if he felt that Ortiz did not understand what had been read to him.  (*Id.*)

62.     After Ortiz's formal statement was taken, Officer Torres reviewed every page of the confession and added his initials to each page.  (*Id.*) at p. 456-457.  Officer Torres also signed the confession.  (*Id.*) at p. 457.  He testified that he would not have added his initials or signature if he had any doubts about the accuracy of the written confession.  (*Id.*) at p. 457.  In

A-2859

- 12 -

other words, the written confession accurately recorded the information Ortiz provided on November 16, 2004. (*Id.*)

63.     Officer Torres testified that he walked away from the confession convinced that Ortiz had committed of the Camacho murders. (*Id.*) at p. 457-458.  He was convinced by Ortiz's statement, and not by anything that Detective Stambach did or said. (*Id.*) at 458.

64.     Officer Torres testified that Detective Stambach's demeanor was professional during the entire confession. (*Id.*) at p. 458-459.  According to Officer Torres, Detective Stambach did not raise his voice to Ortiz or do anything that could be described as manipulative or coercive. (*Id.*) at p. 460.  Officer Torres testified that Detective Stambach accurately transcribed Ortiz's statement.  Detective Stambach did not fabricate any part of the statement. (*Id.*) at p. 460.

65.     Concluding, Officer Torres testified that there was nothing improper or inappropriate about the confession given by Ortiz on November 16, 2004. (*Id.*) at p. 463-464.

## **OTHER EVIDENCE**

66.     The parties entered into a stipulation before trial. (Dkt. No. 148).  This stipulation includes critical facts which were agreed to and undisputed at trial.  The stipulation was read to the jury at trial. (Dkt. No. 172).  As part of the stipulation, Ortiz admitted that a grand jury had indicted him.  A grand jury indictment creates a presumption of probable cause for his arrest and prosecution.

A-2860

- 13 -

67.     Attached collectively as **Exhibit A** are the trial exhibits that were entered into evidence by counsel for Ortiz, including the confession.[1]

68.     Attached collectively as **Exhibit B** are the trial exhibits that were entered into evidence by defense counsel.

## PRESERVATION

69.     After the close of Ortiz's proof, the undersigned moved orally on behalf of Detective Stambach for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  (Dkt. No. 176) at p. 465.  The undersigned was prepared to make a detailed argument regarding the specific elements of Ortiz's claims that were the basis for the motion.  (*Id.*)  The undersigned was also prepared to make a detailed argument that Detective Stambach was entitled to judgment as a matter of law on Ortiz's claim for punitive damages.  (*Id.*)

70.     Before hearing argument, however, the Court determined that it was going to reserve ruling Detective Stambach's Rule 50(a) motion, and expressed to the undersigned that it deemed argument unnecessary.  (*Id.*)  The Court assured the undersigned that the right to raise further arguments (after the rendering of the verdict) had been preserved.  (*Id.*)  The Court also stated that Detective Stambach's counsel would have the opportunity to make more complete arguments after the jury rendered its verdict if necessary.  (*Id.*)

---

[1]     Ortiz's counsel has not shared photo copies of his marked trial exhibits, so the undersigned has included copies of the exhibits that were circulated before trial.  Based on a review of the testimony, these copies are true and correct copies of the exhibits that came into evidence at trial.

A-2861

- 14 -

## **CONCLUSION**

71.     Based on the evidence adduced at trial, Detective Stambach requests that the Court grant the relief requested in this motion, and grant such other further relief as it may deem just and proper.

Dated:          Buffalo, New York
                June 7, 2022

                                    ___//s Peter A. Sahasrabudhe_____
                                          Peter A. Sahasrabudhe

A-2862





# CITY OF BUFFALO

## DEPARTMENT OF LAW

# EXHIBIT

# D

## CHAPTER 15: DISCIPLINE AND DISCHARGE

### CONTENTS

**1.0  DISCIPLINE - GENERALLY**
1.1  Policy
1.2  Discipline - Definition
1.3  Law Enforcement Code of Ethics
1.4  Police Officer's Bill of Rights
1.5  Time Limitations
1.6  Disciplinary Penalties
1.7  Supervisor/Superior Officer Responsibilities
1.8  Probationary Employees

**2.0  INTERNAL AFFAIRS DIVISION**
2.1  Policy
2.2  IAD to Report Directly to Commissioner
2.3  Cooperation With Labor Relations Division
2.4  IAD Investigations
2.5  Civil Law Suits and Claims
2.6  Authority of IAD
2.7  Confidential Records
2.8  Annual Reports
2.9  IAD Assistance to Other Units
2.10  Blatantly False Claims

**3.0  INVESTIGATING COMPLAINTS AND VIOLATIONS**
3.1  Policy
3.2  Where Complaints May be Received
3.3  Subordinates to Notify Supervisor/Superior Officer
3.4  Citizen Complaints - Supervisor/Superior Officer Responsibilities
3.5  Handling Minor Violations
3.6  Complaints Against Superior Officers
3.7  Determining Which Command is to Investigate the Complaint
3.8  Conducting the Investigation
3.9  Lines of Authority
3.10  Conclusions of Fact

**4.0  SUSPENSIONS PRIOR TO DISCIPLINARY HEARINGS**
4.1  Policy
4.2  Authority to Suspend From Duty
4.3  Procedure for Suspending an Employee
4.4  Return of Benefits if Charges Not Sustained

**5.0  CHARGES AND HEARINGS**
5.1  Policy

**1.0   DISCIPLINE - GENERALLY**

**1.1   POLICY**

It is the policy of the Buffalo Police Department to maintain a highly disciplined work environment that induces individual employees to reach their fullest potential; that creates a sense of esprit de corps; and that gains the trust and respect of the community.

**1.2   DISCIPLINE - DEFINITION**

Discipline in its broadest sense means all those methods that can be used to train employees to fully comport with Department rules, regulations and procedures and which encourage employees to perform their jobs to the fullest extent of their natural talents. Discipline may be either positive or negative in nature. Positive discipline entails teaching, training and encouragement. Negative discipline involves the use of punitive measures to gain compliance.

**1.3   LAW ENFORCEMENT CODE OF ETHICS**

Rules, regulations and procedures generally establish the minimum level of conduct and performance that the Department can tolerate. In contrast, the Law Enforcement Code of Ethics sets the ideal standards which all members should strive to attain.

## LAW ENFORCEMENT CODE OF ETHICS

As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all persons to liberty, equality and justice.

I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my Department. Whatever I see or hear of a confidential nature or that is confided in me in my official capacity will be kept ever secret   unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before

God and to my chosen profession...law enforcement.

1.4    POLICE OFFICER'S BILL OF RIGHTS
By agreement with the PBA the Police Officer's Bill of Rights has been adopted as part of the collective bargaining agreement. It establishes guidelines to be followed by superior officers in conducting investigations arising from a member's conduct as a police officer.

A. Informing the Member
1.  The member shall be informed of the rank, name, and command of the officer in charge of the investigation, as well as the rank, name and command of the interrogating officer, and all persons present during the investigation. If a member is directed to leave his/her post and report for interrogation to another command, his/her own command shall be promptly notified of his/her whereabouts.

2.  The member shall be informed of the nature of the investigation before any interrogation begins, including the name of the complainant. The addresses of the complainant and/or witnesses need not be disclosed. However, the member shall be given sufficient information to reasonably apprise him/her of the allegations.

3.  If it is known that the member is to be interrogated only as a witness, (s)he shall be so informed at the initial notification to appear.

4.  If the member is under arrest, or is likely to be ( that is, if (s)he is a suspect or the target of a criminal investigation), (s)he shall be informed of, and given, all his/her rights, pursuant to the "Miranda" decision as set forth by the Supreme Court of the United States.

B. Conduct of the Investigation
1.  These guidelines shall be observed by all superior officers in conducting investigations of actions of members of the police force.

2.  The interrogation of a member shall be at a reasonable hour, preferably when the member is on duty, unless the exigencies of the investigation dictate otherwise. Where practicable, interrogations should be scheduled for the daytime and the reassignment of the member to the day shift should be employed. If any time is lost, the member shall be compensated.

3.  The interrogation shall take place at a location designated by the investigating Officer. Usually it will be at the command to which the investigating Officer is assigned, or at the District stationhouse within which the incident allegedly occurred.

4.  The questioning shall not be overly long. Reasonable respites shall be

allowed. Time shall be provided for personal necessities, meals, telephone calls, and reasonable rest periods.

5. The member shall not be subjected to offensive language, nor shall (s)he be threatened with transfer, dismissal, or other punishment. No promises or reward shall be made as an inducement to answer questions.

6. The complete interrogation shall be recorded, either mechanically or by a stenographer. There will be no "off the record" questions. All recesses called during the questioning shall be recorded.

7. If a member so requests, (s)he shall be given the opportunity to consult with counsel before being questioned concerning a serious violation of the Departmental rules, provided the interrogation would not be delayed unduly thereby. In such cases, the interrogation may not be postponed past 1000hrs of the day following the notification of the interrogation. Counsel, if available, and a representative of a line organization may be present during the interrogation.

8. Members represented by the PBA and covered by the collective bargaining agreement shall not be ordered to submit to a polygraph test.

C. Minor Violations
In cases of investigations of minor violations of Departmental rules, requests to consult with legal counsel or with a line organization representative will be denied unless sufficient reasons are advanced. In cases of minor violations, the investigating officer shall have discretion as to whether or not the interrogation shall be recorded.

D. Disciplinary Action
In any case, the refusal to answer pertinent questions may result in disciplinary action.

1.5   TIME LIMITATIONS
No disciplinary proceeding shall be commenced more than one year after the occurrence of the wrongdoing complained of or its discovery, if later. However, such limitation shall not apply where the wrongdoing complained of would, if proved in a court of appropriate jurisdiction, constitute a crime.

1.6   DISCIPLINARY PENALTIES
A permanent employee shall be subjected to departmental discipline, and termination where appropriate, as provided for in the respective collective bargaining agreements, departmental regulations, and applicable laws. A permanent employee subjected to disciplinary charges shall be afforded all rights to a hearing process as established in the respective collective bargaining

agreements, departmental regulations, and applicable laws. Sworn members are also subject to removal for a conviction for any felony, or any crime involving moral turpitude as provided in the Public Officers Law, or any other violation of law that carries a mandatory forfeiture of employment as a remedy. Examples of mandatory forfeiture include, but are not limited to, residency violations as outlined in the NYS Public Officers Law.

Disciplinary actions or measures shall consist only of the following in accordance with existing collective bargaining agreements and appropriate laws:

1. Reprimand,
2. A fine not to exceed one hundred dollars ($100.00) to be deducted from salary or wages,
3. Suspension without pay not to exceed sixty (60) days,
4. Demotion in grade and title,
5. Dismissal from the service.

As a guideline in determining the form of discipline and/or severity of punishment, if any, the department should consider all relevant factors. Minimally, those factors should include:

1. the severity of the transgression and the extent of injury or damage to any victim;
2. the extent of damage to the professional reputation of the department;
3. the employee's past work record including any past disciplinary action and any instances of meritorious work;
4. the impact of the discipline on other members of the department;
5. the affect of the discipline in deterring the offending employee from engaging in future acts of misconduct.

1.7   SUPERVISORS/SUPERIOR OFFICER RESPONSIBILITIES

Department Rules and Regulations
Refer to Chapter VII of the Buffalo Police Department Rules and Regulations.

For Whom Supervisors/Superiors Must Initiate Disciplinary Action
1. Whenever the level of performance falls below acceptable limits, supervisors/superior officers are responsible for initiating disciplinary action if:

   a. the employee is assigned to their command; or
   b. the employee is temporarily assigned to their command, however briefly;  or
   c. the employee is assigned to another command but the substandard performance occurred in the supervisor's/superior officer's presence.

2. Whenever facts come to the supervisor's/superior officer's attention that indicate that the standards of conduct of the department have been violated by an employee of another command, the supervisor/superior officer shall prepare an Inter-Departmental memorandum detailing the nature of the employee's conduct, and shall forward the memorandum through channels to IAD, with one copy being sent to the command of the employee who is alleged to have violated the Department standards of conduct.

Positive Discipline
A supervisor/superior officer can implement positive discipline by using all the means at his/her disposal to teach, train and encourage employees to become the best employees that their natural talents allow. This is a constant and continuing process that requires the supervisor/superior officer to be aware of the employee's daily performance. Positive discipline shall be used in cases in which an employee's performance is somehow deficient or it may be used when there are minor violations of Department rules, regulations and procedures..

Formal Discipline
The formal disciplinary process shall be invoked for all major violations of department standards of conduct, for cases in which a disciplinary may be an appropriate remedy, for cases involving complex investigations or when further investigation is required. The formal disciplinary process requires that IAD open a case file; that a thorough and complete investigation be undertaken; and that there be a conclusion of fact at the end of the investigation. In such cases the supervisor/superior officer shall:

1. inform the employee of the nature of the substandard performance, telling him/her that it is unacceptable, and provide remedial instruction so that conduct of a similar nature is not repeated in the future;
2. prepare a memorandum, or in the case of a complaint from a citizen, a Citizen Complaint Form, detailing the nature of the violation of Department standards of conduct;
3. Call upon IAD for assistance and guidance as to suspend the employee when required. IAD can always be contacted through the 911 Communications Lt.

E. Major vs Minor Violations
It is difficult to draw a clear line distinguishing minor violations of Department standards of conduct from major ones. Major violations will tend to seriously impair the on going operation of the unit or they may have a substantial adverse impact on the Department. Major violations include allegations of criminal conduct, moral turpitude, insubordination, misuse of Department property or equipment, or repeated documented minor violations of Department standards of conduct. Minor violations might include slovenly appearance, coarse or

A-2869

harsh language, tardiness, poor service, etc. Supervisors/superior officers must use their best judgment in determining these distinctions. IAD is available for assistance as to determining major or minor violations as they case may be.

**1.8   PROBATIONARY EMPLOYEES**

A probationary employee is not guaranteed continued employment but merely has an expectation of appointment to a permanent position. The department has wide latitude in deciding to either retain or dismiss these employees while they are serving their probationary period.

Monitoring

During an employee's period of probation his/her performance shall be closely monitored by his/her immediate supervisor. The supervisor shall immediately correct deficiencies and shall periodically report on the probationary employee's progress to the Police Academy and other departmental units as determined by the Commissioner from time to time on the appropriate forms as the case may be.

Police Academy

The Police Academy shall be responsible for the oversight of all probationary employees. They shall prepare and disseminate forms designed to assess the progress of such employees. They shall carefully review completed progress reports and shall stay in close contact with the supervisor of any probationary employee who is exhibiting sub-standard performance levels.

Termination

Probationary employees who the Commissioner believes will not be able to raise their performance to an acceptable level may have their appointment to the position rescinded at any time prior to the expiration of the probationary period. Such probationary employee shall be given the opportunity to address the Commissioner on his/her own behalf prior to such rescission. All Departmental property, identification and equipment must be promptly returned by any employee who has had his/her appointment rescinded.

Department of Human Resources

The Commissioner's office shall promptly notify the Department of Human Resources in writing whenever a probationary employee is dropped from the rolls.

**2.0   INTERNAL AFFAIRS DIVISION**

**2.1   POLICY**

It is the policy of the Buffalo Police Department to maintain a Internal Affairs Division whose primary function is to ensure that all Department personnel achieve high standards of personal integrity, discipline and professional conduct.

**2.2   I.A.D. TO REPORT DIRECTLY TO COMMISSIONER**

Because of the sensitivity and potential impact of investigations involving the internal affairs of the Department, the commanding officer of IAD shall report

directly to the Commissioner.

The commanding officer of IAD shall keep the Commissioner informed of the nature and progress of all on going investigations.

The commanding officer of IAD shall immediately notify the Commissioner of:

1. any credible allegation of a Department employee's commission of a crime, or any offense involving moral turpitude;
2. any incident allegedly involving misconduct by a Department employee which is likely to generate substantial public attention.

Based on the investigation of the internal affairs incident and the recommendation of IAD, the Commissioner shall determine the appropriate disposition of each such incident.

2.3    COOPERATION WITH LABOR RELATIONS DIVISION
In cases involving discrimination in the workplace based on race, color, religion, sex or national origin, or cases involving sexual harassment, or disciplinary cases in which Departmental charges are preferred, IAD shall keep the Division of Labor Relations informed and shall extend to that Division their fullest cooperation.

2.4    I.A.D. INVESTIGATIONS
IAD shall coordinate the investigation of disciplinary infractions. They may designate the offending employee's command to conduct the investigation of minor violations. The employee's command will report the results of the investigation to IAD and recommend appropriate remedial measures.

All major violations shall be investigated by IAD. Investigations that are particularly complex or that involve allegations of discrimination based on race, color, religion, sex or national origin, or that involve allegations of sexual harassment, shall be investigated by IAD.

Subject to review by the Commissioner, the Commanding Officer of IAD shall have the authority to determine which departmental unit is to conduct employee investigations.

2.5    CIVIL LAW SUITS AND CLAIMS
Refer M.O.P. Chapter 6.

2.6    AUTHORITY OF I.A.D.
In pursuit of employee investigations, the Commanding Officer of IAD is authorized to transgress District and Division boundaries and lines of authority and (s)he shall be given complete cooperation by all department employees.

2.7   CONFIDENTIAL RECORDS
The Internal Affairs Division shall maintain a record of all complaints against the Department or its employees and shall be the central repository for all such complaints. These records shall be kept confidential and shall be separate and apart from regularly maintained personnel files.

All records concerning allegations of violations of Department standards of conduct which do not result in the lodging of Department charges shall be expunged after five years. In cases in which the employee is a party to a law suit involving his/her employment with the City or the City is also a named party, IAD records shall be maintained until the law suit has been concluded or until five years have expired from the date of the complaint, whichever is later.

Records concerning violations of Department standards of conduct which result in the preferring of Department charges, shall be maintained permanently in the employee's IAD file.

2.8   ANNUAL REPORTS
The Internal Affairs Division shall annually prepare statistical summaries of the activities of the unit.

2.9   I.A.D. ASSISTANCE TO OTHER UNITS
IAD is always available for advice and assistance. The 911 Communication Lt. shall be contacted when circumstances arise outside normal business hours. The 911 Communications Lt. may contact the on-call IAD investigator for further assistance should circumstances so require.

2.10   BLATANTLY FALSE COMPLAINTS
In those instances in which there are grossly or blatantly false accusations concerning employee misconduct and there exists evidence of intentional misrepresentation or the filing of false statements, the Commanding Officer of IAD shall recommend to the Commissioner that criminal action be pursued against the complainant.

3.0   **INVESTIGATING COMPLAINTS AND VIOLATIONS**

3.1   POLICY
It is the policy of the Buffalo Police Department to thoroughly investigate **ALL** complaints, from whatever source derived, and to investigate all allegations of misconduct or infractions of department standards of conduct. Each such investigation shall result in an appropriate disposition.

3.2   WHERE COMPLAINTS MAY BE RECEIVED
Citizen complaints concerning Department employees will be accepted at **ALL** police facilities in which sworn members are assigned regardless of whether the

employee who is the subject of the complaint is assigned to that facility. Complaints may be made in person or over a telephone or through the mail, fax, departmental website, or in some instances through a third party as the case may be.

3.3   SUBORDINATES TO NOTIFY SUPERVISOR/SUPERIOR OFFICER
Subordinates becoming aware of complaints regarding an employee of the department, in whatever manner received, shall immediately notify his/her supervisor/superior officer.

3.4   CITIZEN COMPLAINTS - SUPERVISOR/SUPERIOR OFFICER RESPONSIBILITIES
It is the responsibility of every supervisor/superior officer to personally accept citizens' complaints concerning employees of the department. In those circumstances in which the supervisor/superior officer is away from the building/office, (s)he shall be requested to return immediately.

In every case in which a citizen makes a complaint concerning an employee of the department, the complainant shall be provided with the pamphlet entitled "How the Buffalo Police Department Complaint Process Works." The complainant shall also be allowed to read and review the departmental copy of the IAD Complaint Investigation Manual located at each District.

Often a complaint may result from a lack of understanding of the law or of police procedures. Complaints of this nature in which there is no basis for an allegation of misconduct or where there is obviously no violation of department standards of conduct, shall be resolved by the supervisor/superior officer if possible. The supervisor/superior officer need not prepare a Citizen Complaint Form (P-294) if the citizen is satisfied with the resolution and there are no grounds for further investigation. If the citizen cannot be satisfied or there may be a reason for further investigation, the supervisor/superior officer shall complete and forward a Citizen Complaint Form.

In cases in which a citizen alleges conduct by a department employee and the conduct, if true, would constitute any violation of department standards of conduct, the supervisor/superior officer must complete a Citizen Complaint Form.

A. If the alleged conduct of the employee would constitute a minor violation but it is not of a repetitive nature, the supervisor/superior officer shall attempt to resolve the complaint. If (s)he is able to successfully resolve the complaint and the citizen is satisfied with the disposition, the supervisor/superior shall note his/her actions on the Citizen's Complaint Finding Form (P-294b).

B. In cases alleging infractions of law, major violations of Department standards of conduct, minor violations of a repetitive nature, or other misconduct, the supervisor/superior shall complete and forward the Citizen Complaint Form to the Internal Affairs Division and no attempt

shall be made to resolve the complaint at this time.

    C. In cases in which the allegations, if proven, would constitute a crime (i.e. misdemeanor or felony), the supervisor/superior officer shall also prepare an incident report.

When a Citizen Complaint Form is completed concerning conduct of an employee not of the supervisor/superior officer's command, the supervisor/superior officer shall also forward a copy of the form to the employee's command.

Citizens shall not routinely be referred to IAD concerning a complaint against a departmental employee without first having completed a Citizen Complaint Form.

## 3.5   HANDLING MINOR VIOLATIONS

Minor violations of Department standards of conduct which are isolated incidents and which are not the subject of a citizen complaint may be handled with positive discipline.

In cases of minor violations of Department standards of conduct which are not isolated instances, supervisor/superior officer shall:

1. Prepare a memorandum detailing the incident. Upon giving remedial instruction, the supervisor/superior officer will include in the memorandum the nature of the remedial instruction provided;

2. A copy of the memorandum shall be issued to the employee. The employee may choose to respond in writing and the employee's response will be attached to each copy of the supervisor/superior officer's memorandum.

3. The memorandum shall be forwarded to IAD through the chain of command. The memorandum shall include a suggested disposition of the case from each of the superior officers in the chain of command including the initiating supervisor/superior officer. The memorandum and the employee's response, if any, will be filed in IAD.

4. The Commanding Officer of IAD will decide whether a IAD case file will be opened and the formal disciplinary process invoked.

## 3.6   COMPLAINTS AGAINST SUPERIOR OFFICERS

If a subordinate employee becomes aware that a superior officer has violated department standards of conduct, the subordinate shall notify IAD either in writing or in person. This does not permit subordinate employees to initiate complaints that they know are capricious, unjustifiable and without any basis in fact.

A-2874

If a citizen attempts to lodge a complaint against a superior officer:

1. The Superior Officer who is the subject of the complaint shall refer the complaint to an on-duty Supervisor of a higher rank than (s)he assigned to that command; or

2. If no Supervisor of a higher rank assigned to that command is on duty, the Duty Officer or Captain assigned as the Duty Officer should investigate the complaint; or

3. If there is no Duty Officer or Captain assigned as the Duty Officer on Duty, the complainant shall be referred to IAD.

3.7   DETERMINING WHICH COMMAND IS TO INVESTIGATE THE COMPLAINT

Upon receipt of a Citizen Complaint Form or a Department memorandum detailing allegations of substandard conduct, IAD will review the documents and determine which would be the best unit to handle the investigation. If accusations of a serious nature are alleged, IAD will investigate the case. The employee's command may be designated to investigate complaints that are minor in nature. The Commanding Officer of IAD, subject to the review of the Commissioner, shall determine which unit handles the investigation.

3.8   CONDUCTING THE INVESTIGATION

A. When an employee investigation is assigned to the employee's command, the Chief or superior in charge of that command will be responsible for its completion. The Chief or superior in charge may delegate authority to lesser ranking superior officers of his/her command to pursue the investigation however, the ultimate responsibility for its completion rests with the Chief or superior in charge.

B. All investigations targeting sworn members of the department must be conducted in conformance with the Police Officer's Bill of Rights. Investigations shall also be conducted as determined by the IAD Office Investigation Manual.

C. All evidence must be thoroughly evaluated and witnesses must be carefully interviewed. Statements of witnesses shall be taken in appropriate cases.

D. In all cases, the complainant will be contacted and apprised of the results of the investigation. This may be done in writing or telephonically. A record of such contact must be noted on form P-294b.

E. All superior officers in the employee's chain of command will submit in writing their recommendations concerning the disposition of the case. In cases of

citizen complaints this will be done on form P-294b. For non-citizen complaints the recommendations will be forwarded on an Intra-Departmental memorandum.

F.  Cases shall be resolved within thirty (30) days. If additional time is required, a request in writing must be submitted to the Commanding Officer of IAD and approved by the Commissioner.

**NOTE**:  If an employee's command conducts the investigation, the Command Officer conducting the investigation must speak with the complainant as part of their investigation.

3.9    LINES OF AUTHORITY
The Commanding Officer of IAD shall have authority to transgress District and Division boundaries, and lines of authority. In pursuit of such investigations, (s)he shall be given complete cooperation by department employees. Chiefs and other Superior Officers should not encroach on the command of their peers except in emergency circumstances (e.g. when the police purpose or good order of the department would be jeopardized by failure to take immediate action).

When minor complaints affect more than one command, the investigation shall be conducted by one Chief or superior in charge of the command, with the active cooperation of other affected Chiefs or superior in charge of the command. Recommendations shall reflect the combined thinking of the concerned Chiefs or superior's in charge of the commands.

3.10   CONCLUSIONS OF FACT
At the completion of each formal investigation the department shall reach one of the following conclusions of fact concerning the allegations:

SUSTAINED - Sufficient evidence exists to clearly prove the allegations.

EXONERATED - The alleged facts did occur but were justified and proper.

NOT SUSTAINED - Insufficient evidence exists to clearly prove the allegations.

UNFOUNDED - The alleged facts did not occur or the accused officer was not involved.

**4.0    SUSPENSIONS PRIOR TO DISCIPLINARY HEARINGS**

4.1    POLICY
Whenever there is an allegation of misconduct against a Department employee, it is the policy of the Buffalo Police Department to suspend that employee from duty prior to a disciplinary hearing, consistent with existing collective bargaining agreements, if the employee's continued presence on the job will disrupt the operations of the unit to which (s)he is assigned; or it will have an adverse impact

on the Department; or the alleged violation is of a serious nature.

4.2   AUTHORITY TO SUSPEND FROM DUTY

Prior to Service of Charges

All officers of the rank of lieutenant and above are authorized to immediately suspend a subordinate for violations of department standards of conduct which are deemed to be of a serious nature including appearing for duty under the influence of alcohol. Such suspensions shall be with pay pending service of departmental charges.

1. Consistent with the Department Drug Testing policy, sworn members appearing for duty under circumstances in which there exists reasonable cause to believe that they are under the influence of drugs shall be directed to submit to a "reasonable cause" drug test. They shall be relieved from duty and placed on administrative leave of absence with pay pending receipt of test results and the completion of any investigation conducted by the City. Refer to the Buffalo Police Department Drug Testing Policy.

After Service of Charges

After service of Departmental charges an employee may be suspended without pay for a period not to exceed thirty (30) days. Such suspension shall be at the direction of the Commissioner.

1. Employees represented by Local 264 may be suspended without pay after service of charges only if their continued presence on the job would represent a potential danger to persons or property or would severely interfere with operations.

2. All other employees of the Department may be suspended without pay after service of charges if their continued presence on the job would have an adverse impact on the Department.

4.3   PROCEDURE FOR SUSPENDING AN EMPLOYEE

Suspension With Pay Prior to Service of Charges - Civilian Employees

If a civilian employee is immediately suspended with pay prior to service of charges, the superior officer making the suspension shall inform the employee that (s)he is suspended and the reason therefore.

Suspension With Pay Prior to Service of Charges - Sworn Members

Supervisors/superior officers contemplating suspending an employee prior to service of charges shall, absent exigent circumstances, first consult with IAD. If a sworn member of the Department is to be suspended prior to service of charges, the superior officer that suspends the sworn member shall:

1. inform the sworn member that (s)he is suspended and the reason therefore;

2. obtain the sworn member's badge and identification card;

3. if possible, ascertain if the sworn member has a valid pistol permit;
   a. if no permit is presented, obtain all handguns owned by the sworn member,
   b. if a valid permit is presented, obtain all Department issued weapons only;

4. prepare forms P10 and/or P-10a for the officer's weapons, badge and identification and deliver the property to the Property Office consistent with current directives;

5. notify IAD if IAD personnel are on duty, or notify the 911 Communications Lieutenant. when no IAD personnel are working and in such case the 911 Communications Lt. will notify the on-call IAD investigator;

6. prepare a memorandum detailing the conduct or activities for which the employee was suspended. Copies of the memorandum must be forwarded to IAD prior to the expiration of the suspending officer's tour of duty. A copy shall also be forwarded through the normal chain of command.

Suspension Without Pay After Service of Charges
Employees who are to be suspended without pay after service of charges shall first be served with the charges. The employee shall be allowed to review them and cite any inaccuracies before the suspension occurs.

4.4    RETURN OF BENEFITS IF CHARGES ARE NOT SUSTAINED
If the charges are not sustained, the accused person shall be restored to his/her position with full pay for any period of suspension less the amount of compensation for that period:

A.  which (s)he may have earned in any other occupation or employment;
B.  received from unemployment benefits

5.0    **CHARGES AND HEARINGS**

5.1    POLICY
When disciplinary charges are to be lodged against a Department employee, it is the policy of the Buffalo Police Department to prepare and serve the charges on the accused employee and to present evidence concerning the charges before the hearing officer designated to try the case.

5.2   PREPARING THE CHARGES

Commissioner's Determination

If after a thorough and complete employee investigation, the conclusion of fact results in a finding of "sustained," the Commissioner may direct, in his/her sole discretion, that Departmental charges be preferred against the accused employee. If the Commissioner determines that departmental charges are not to be preferred, (s)he shall direct that appropriate action be taken to insure that the employee's conduct is corrected and that the likelihood of recurrence is minimized. Any action directed by the Commissioner shall be consistent with the terms of the applicable collective bargaining agreement.

Charges and Specifications Defined

1. The charge is the designation of the specific standard of conduct which the accused is charged with violating.

2. The specification is a statement of facts which in law constitute the offense charged. Specifications should be drawn in clear and concise language and should contain the following information:

   a. rank, name and command of the accused;
   b. date, time and place of the alleged offense, (approximate entries will be acceptable);
   c. if the offense was committed more than once, or in more than one way, there shall be distinct specifications;
   d. each specification shall be complete in itself and not refer to facts or particulars of other specifications;
   e. specifications under each charge shall be numbered consecutively.

5.3   SERVING THE CHARGES

IAD shall prepare a "Notice of Charges" which shall be attached to the charges.

IAD shall issue or cause to be issued to the accused employee, a copy of the charges and "Notice of Charges."

If the charges are issued in person to the accused employee, the employee shall acknowledge receiving the charges by signing his/her name and the date thereon. If the charges are not issued in person to the accused employee, the officer delivering the charges shall certify in writing on the original copy, the time, date, place and manner in which the charges were delivered. If the charges cannot be personally issued to the accused employee, charges may be issued by:

1. delivering the charges personally to some person of suitable age and discretion at the accused employee's place of residence; or

2. if the place of residence cannot be located, then by personally posting the charges in a conspicuous place in the stationhouse or office to which the accused employee is assigned.

In all cases, the employee's collective bargaining agent must also be served with the charges.

### 5.4 ANSWER TO CHARGES

The accused employee shall have ten (10) days, exclusive of the date of service, in which to answer the charges.

The answer must be in writing and must be served on the Commissioner.

Failure to serve a written answer within the time provided shall be deemed an admission of the charges. However, where the accused defaults in answering, (s)he shall be permitted to show matters in mitigation of any punishment which may be imposed.

### 5.5 AMENDMENTS TO THE CHARGE

After charges have been preferred, they may be altered or amended by the Commissioner, or (s)he may cause new charges to be prepared. Slight errors in names, dates and amounts may be corrected by the Commissioner on motion.

All causes for complaints against the accused employee arising from the same incident and not covered by the original or amended charges shall be forever barred.

### 5.6 INFORMAL CONFERENCE

Within ten (10) days after the receipt of the written answer to the charges preferred, or if the accused employee defaults in answering, within ten (10) days after his/her time to answer has expired, the Commissioner shall conduct an informal conference upon the charges. At such conference the accused employee shall have the opportunity to be represented by his/her collective bargaining agent or by legal counsel. (S)he may, if (s)he desires, present witnesses on his/her behalf. The Commissioner shall have the power to dismiss or withdraw the charges if the conference so warrants, or accept a plea of guilty.

In all cases where the accused employee enters a plea of guilty, the Commissioner shall receive evidence showing all the circumstances of mitigation or aggravation which accompanied the offense, unless they are fully disclosed in the specifications.

In the event that the charges are not withdrawn or dismissed after such conference or if a plea of guilty has not been entered, a formal hearing shall then be held upon the charges before a hearing officer mutually selected by the parties. Such hearing officer shall be deemed to be the person designated by the Commissioner for that purpose within the meaning Section 75 of the Civil Service Law of the State of New York. In the case of a sworn member, where the parties are unable to agree upon a hearing officer, or, where the hearing officer agreed upon is or becomes unable or

to act, then the parties shall mutually apply to the Supreme Court of the State of New York for the appointment of a hearing officer.

5.7   UNIFORMS TO BE WORN
Uniformed employees of the Department shall appear at the Informal Conference and/or Formal Hearing and shall do so in uniform.

Officers assigned to Detective or plainclothes duty, Officers on long time sick and IOD status and non-uniform civilian employees, need not appear in uniform at the Informal Conference and/or Formal Hearing however, shall appear in acceptable attire as if attending court. (See M.O.P. Chapter 6)

5.8   RIGHTS OF THE ACCUSED EMPLOYEE
The accused employee is entitled to the following, as a matter of right:

A reasonable time in which to prepare for trial;

To be present at the trial;

To be heard in person and by counsel and to give and furnish evidence in his/her defense;

To reasonable adjournments in order to be able to prepare for trial;

(S)he shall not be compelled in advance of the trial to disclose the names of any of his/her proposed witnesses;

Upon application, the Commissioner shall issue blank subpoenas in which the accused or his/her attorney may insert the name of any person (s)he desires to attend and give evidence.

The burden of proving the charges shall rest with the Department.

5.9   SUBPOENAS
The Commissioner shall have the power to administer oaths and issue subpoenas. In case any witness shall refuse to appear or answer any proper question, (s)he may be ordered to do so by a justice of any court of record, and punished for his/her disobedience of any such order in accordance with law.

The impartial hearing officer selected to conduct the formal hearing shall be vested with all the powers of the Commissioner in conducting the hearing.

5.10   ADJOURNMENT: ABSENCE OF WITNESSES
Upon application by the accused for adjournment of the formal hearing because of the absence of a witness for the accused, it should distinctly appear upon his/her oath that:

The witness is material, and why;

The accused employee has used due diligence to require the attendance of the witness;

The accused has reasonable grounds to believe that (s)he will be able to procure such attendance within a reasonable time. If the absence of a witness is caused by sickness, the accused employee must produce a certificate from the attending physician to that effect.

5.11   RECORDING THE FORMAL HEARING
All formal hearings must be recorded.

If the accused employee is found guilty, a copy of the charges, his/her written answer, a transcript of the hearing, and the final determination itself shall be placed in the employee's personnel file. A copy thereof shall also be filed with the Municipal Civil Service Commission.

A copy of the transcript of the hearing shall, upon the request of an accused employee who has been found guilty, be furnished without charge.

5.12   RULES OF EVIDENCE
Compliance with the technical rules of evidence during a formal disciplinary hearing is not required.

5.13   REVIEW OF THE HEARING OFFICER'S DECISION
After the formal hearing, the impartial hearing officer shall make findings and recommendations which shall be referred to the Commissioner for review and decision. The judgment of the Commissioner will be set forth as an order or resolution and will become part of the record of the case.

If the PBA disagrees with the decision of the Commissioner of Police to change the decision recommended by the Hearing Officer concerning a sworn member of the Department, the PBA may seek review of such change in decision. The parties, through the American Arbitration Association and within seven days of the Commissioner's decision, shall mutually select an arbitrator to review the case. It is understood that such arbitrator shall not be authorized to conduct a rehearing of the matter, but only to review the record of the proceeding to determine whether the change in decision by the Commissioner was supported by substantial evidence in the record. If the arbitrator so determines, (s)he shall have the authority to award an appropriate remedy which shall be final and binding upon the parties and the sworn  member involved. It is further understood that the cost of such arbitration shall be shared equally between the parties.

Any employee believing himself/herself aggrieved by a penalty or punishment of

demotion in or dismissal from the service, or suspension without pay, or a fine imposed pursuant to the provisions of the collective bargaining agreement, may appeal from such determination either by an application to the Buffalo Municipal Civil Service Commission or by an application to the Supreme Court in accordance with the provisions of Article 78 of the Civil Practice Laws and Rules. If such person elects to appeal to the Commission, (s)he shall file such appeal, in writing within twenty (20) days after receiving written notice of the determination to be reviewed. In accordance with the provisions of Subdivision 76 of the Civil Service Law, the decision of the Commission shall be final and conclusive and not subject to further review in court.

5.14    TERMINATION CONFERENCE
If an employee's dismissal results from disciplinary action or for violation of the Department's Drug Testing Policy, a termination conference shall be held. At this conference the employee facing dismissal shall be:

Informed of the reason for the dismissal;

Informed of the effective date of the dismissal;

Informed of the status of fringe benefits and retirement benefits;

Informed of the contents of his/her personnel file as it relates to the cause of dismissal;

Required to return all Department property and equipment.

5.15    SEEKING INTERCESSION ON BEHALF OF THE ACCUSED
Employees against whom charges have been preferred, shall not in any manner, or at any time, cause any person to intercede for them, personally or otherwise.

5.16    AFFECT OF A FINDING OF GUILT LIMITED TO TWO YEARS
After a lapse of two (2) years, a determination that an accused employee was guilty of the charges preferred against him/her shall not be considered upon application for promotion made by him/her, nor shall it affect any right or privilege to which (s)he would otherwise be entitled were it not for such determination. A lapse of two years shall be deemed to have occurred two years from the date that the Department accepts a plea of guilty to the charges, or two years after the Commissioner receives the findings and recommendations of the hearing officer.

5.17    RESIGNATIONS, SEPARATION FOR CAUSE
The Commissioner shall caused to be placed in the personnel file of any employee resigning or separating from the Department for cause, all the facts pertinent to the action.

**6.0    PREVENTING DISCRIMINATION IN THE WORKPLACE**

6.1    POLICY
It is the policy of the Buffalo Police Department to treat all employees fairly and to seek out and prevent discrimination to or by its employees that is based upon race, color, religion, sex or national origin.

6.2    COMPLAINT PROCEDURE
Department employees who feel aggrieved because of discrimination that is based upon race, color, religion, sex or national origin, which occurs in the work place, may make their concerns known by any of the following means.

Aggrieved employees who feel comfortable doing so may directly inform the person engaging in the discriminatory conduct that the conduct is discriminatory and that it must stop.

Aggrieved employees who do not wish to communicate directly with the person engaged in the discriminatory conduct, or if direct communication with the offending party has proved unavailing, may contact either their own immediate supervisor or the offending party's immediate supervisor. The supervisor shall immediately prepare a memorandum detailing the allegations of the subordinate and have such report delivered to IAD prior to the start of the next business day. Copies of the memorandum shall be forwarded through the chain of command to the offending party's District/Division Chief or Commanding Officer. Minimally the report shall include:

1. the date of receipt of the complaint;
2. identification of the complainant;
3. identification of the party or parties and the action complained of, including all relevant background facts and circumstances;
4. a statement detailing the scope of the preliminary investigation that had been undertaken and the results thereof;
5. a statement of corrective measures pursued, the dates such measures were undertaken and the results achieved.

Aggrieved employees who do not wish to communicate directly with the person engaged in the discriminatory conduct and who do not chose to contact their own immediate supervisor or the offending party's immediate supervisor, may as an alternative, directly contact the Labor Relations Division.
Aggrieved employees who do not choose to directly confront the person engaging in the discriminatory conduct, or who do not choose to contact their own immediate supervisor or the offending party's immediate supervisor, or contact the Labor Relations Division, may prepare a memorandum detailing their allegations and forward the memorandum directly to IAD.

Aggrieved employees alleging discriminatory conduct by anyone with supervisory authority, or the failure by supervision to take immediate action on the employee's

complaint, may also file a formal grievance in accord with the provisions of the appropriate collective bargaining agreement grievance procedure.

6.3    TIMELINESS FOR INITIATING COMPLAINTS OR GRIEVANCES
There are no express time limits for initiating complaints under this policy, however, every effort should be made to file such complaints as soon as possible, while facts and potential testimony of witnesses, if any, are still fresh.

Employee grievance procedures under collective bargaining agreements have time limits. If the employee submits a grievance alleging discrimination based upon race, color, religion, sex or national origin and the grievance procedure outlined in the appropriate collective bargaining agreement is invoked, time limits must be observed.

Complaints to the Equal Employment Opportunity Commission must be filed within one hundred eighty (180) days.

6.4    INTERNAL AFFAIRS DIVISION AS CENTRAL REPOSITORY
IAD shall be the unit for channeling and recording all complaints against Department employees involving allegations of discrimination based upon race, color, religion, sex or national origin. IAD shall be responsible for insuring that all complaints are dealt with fairly, effectively, and in accord with Department policies and procedures.

Upon receipt of such a complaint, IAD shall immediately notify the Division of Labor Relations. IAD shall fully cooperate with the Division of Labor Relations in handling complaints of this nature.

IAD shall maintain such records, establish such systems, and adopt such procedures that are necessary to handle complaints involving allegations of discrimination in the workplace that are based on race, color, religion, sex or national origin.

If the Commissioner determines that a complaint would best be processed under the grievance procedures outlined in the respective collective bargaining agreements, (s)he shall refer the complaint to the appropriate collective bargaining agent.

6.5    INVESTIGATION
All complaints alleging discrimination in the workplace that are based upon race, color, religion, sex, or national origin shall be thoroughly and completely investigated by IAD. IAD shall interview all witnesses, Department personnel, persons named in the complaint, and any other person who may have pertinent information. All relevant evidence shall be carefully examined. At the completion of the investigation, IAD shall report their findings and make appropriate recommendations to the Commissioner. Cases shall be resolved within thirty (30) days, with extensions granted by the Commissioner based upon good cause.

The Commanding Officer of IAD shall keep the Commissioner informed at all times of the progress of the investigation.

The Commanding Officer of IAD shall have authority to transgress District and Division boundaries and lines of authority. In pursuit of such investigations (s)he shall be given complete cooperation by Department employees.

6.6   COMMISSIONER'S DETERMINATION
The Commissioner shall make a determination as to the validity of the complaint, based upon the report of IAD. If the Commissioner determines that the complaint may be valid, (s)he shall determine the best course of action.

The Commissioner's choices include, but are not limited to, preferring charges against employees violating Department standards of conduct; amending rules, regulations, policies and procedures; or referring the complainant to the grievance process outlined in the appropriate collective bargaining agreement if the time limits for filing the grievance have not yet expired. In every case, the complaining employee shall be provided with the written determination of the Commissioner.

6.7   RESPONSIBILITY OF SUPERVISORS/SUPERIOR OFFICERS
It is the responsibility of supervisors/superior officers to prevent, report and uncover instances in the workplace in which discrimination based on race, color, religion, sex or national origin occurs. They shall take prompt remedial measures commensurate with the level of authority vested in their rank and position. Such remedial measures shall be consistent with current directives and shall not breach the applicable collective bargaining agreement.

7.0   **PREVENTING SEXUAL HARASSMENT IN THE WORKPLACE**

7.1   POLICY
It is the policy of the City of Buffalo (hereafter "City") and the Buffalo Police Department to provide a business and employment environment free of unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct or communications, which have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment constituting sexual harassment as defined and otherwise prohibited by state and federal statutes.

7.2   DEFINITION OF SEXUAL HARASSMENT
The U.S. Equal Employment Opportunity Commission (EEOC) has issued guidelines interpreting Section 703 of Title VII as prohibiting sexual harassment (29 CFR 1604.11). Sexual harassment is defined in these guidelines as follows:

...Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual

harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Further, New York State Human Rights Law prohibits discrimination on the same basis as covered by Title VII, including sexual harassment.

7.3    CONDUCT CONSTITUTING SEXUAL HARASSMENT

An employee's engaging in sexual harassment in the workplace brings discredit to the Department as well as the offending employee and it is prejudicial to the Department's good order, discipline and reputation.    Sexual harassment is prohibited and employees shall not:

1.    Make sexual advances or request sexual favors when submission to, or rejection of, such advances or requests is the basis for either implicitly or explicitly recommending, imposing, granting, withholding or refusing terms and conditions that either favor or adversely affect the employment of the employee or individual;

2.    Recommend, impose, grant, withhold or refuse to take any personnel or other action consistent with the offending employee's duties and responsibilities because of sexual favors or as a reprisal against an employee or other individual who has rejected or reported sexual advances;

3.    Disregard and fail to investigate allegations of sexual harassment whether reported by the employee or individual who is the subject of the alleged harassment or a witness, and fail to take immediate corrective action in the event misconduct has occurred.

Employees shall not abuse any other person through conduct or communication of a sexual nature and constituting sexual harassment as defined in section M.O.P. Chapter 15 above. Whenever such conduct exists, prompt and corrective action is required.

Whenever there is reason to believe disciplinary action is warranted, the supervisor or other responsible individual is required to take prompt and corrective action commensurate with the authority vested in his/her rank and position. Such remedial action shall be consistent with Department directives    and shall not breach the applicable collective bargaining agreement.

The violation of this policy can result in discipline and discharge for employees pursuant to Section 75 of the Civil Service Law and the discipline clause of the

appropriate collective bargaining agreement, if applicable; and such penalties, sanctions and impositions against other individuals or parties     as may be available to the City, given the nature of the contractual or business relationship that may be established with such parties or individuals.

7.4   COMPLAINT PROCEDURE

Department employees who feel aggrieved because of sexual harassment may make their concerns known by any of the following means.

Aggrieved employees who feel comfortable doing so may directly inform the person engaging in sexual harassment conduct or communications that the conduct is offensive and that it must stop.

Aggrieved employees who do not wish to communicate directly with the person whose conduct or communication is offensive, or if direct communication with the offending party has proved unavailing, may contact either their own immediate supervisor or the offending party's immediate supervisor. The supervisor shall immediately prepare a memorandum detailing the allegations of the subordinate and have such report delivered to IAD prior to the start of the next business day. Copies of the memorandum shall be forwarded through the chain of command to the offending party's District/Division Chief or Commanding Officer. Minimally the report shall include:

1.   the date of receipt of the complaint;
2.   identification of the complainant;
3.   identification of the party or parties and the action complained of, including all relevant background facts and circumstances;
4.   a statement detailing the scope of the preliminary investigation that had been undertaken and the results thereof;
5.   a statement of corrective measures pursued, the dates such measures were undertaken and the results achieved.

Aggrieved employees who do not wish to communicate directly with the person engaged in the sexual harassment conduct or communications and who do not chose to contact their immediate supervisor or the offending party's immediate supervisor, may as an alternative directly contact the Labor Relations Division.

Aggrieved employees who do not choose to directly confront the person engaging in the discriminatory conduct, or who do not choose to contact their immediate supervisor or the offending party's immediate supervisor, or contact the Labor Relations Division, may prepare a memorandum detailing their allegations and forward the memorandum directly to IAD.

Aggrieved employees alleging sexual harassment by anyone with supervisory authority, or the failure by supervision to take immediate action on the employee's complaint, may also file a formal grievance in accord with the provisions of the

appropriate collective bargaining agreement grievance procedure.

7.5   TIMELINESS FOR INITIATING COMPLAINTS OR GRIEVANCES
There are no express time limits for initiating complaints alleging sexual
harassment however; every effort should be made to file such complaints as soon
as possible, while facts and potential testimony of witnesses, if any, are still fresh.

Employee grievance procedures under collective bargaining agreements have time
limits. If the employee submits a grievance alleging sexual harassment in the
workplace and the grievance procedure outlined in the appropriate collective
bargaining agreement is invoked, time limits must be observed.

Complaints to the Equal Employment Opportunity Commission must be filed
within one hundred eighty (180) days.

7.6   INTERNAL AFFAIRS DIVISION AS CENTRAL REPOSITORY
IAD shall be the unit for channeling and recording all complaints against
Department employees alleging sexual harassment in the workplace. IAD shall be
responsible for insuring that all complaints are dealt with fairly, effectively, and in
accord with Department policies and procedures.

Upon receipt of such a complaint, IAD shall immediately notify the Division of
Labor Relations. IAD shall fully cooperate with the Division of Labor Relations in
handling complaints of this nature.

IAD shall maintain such records, establish such systems, and adopt such procedures
that are necessary to handle complaints involving sexual harassment in the
workplace.

7.7   INVESTIGATION
IAD shall conduct a thorough and complete investigation of all complaints alleging
sexual harassment in the workplace. IAD shall interview all witnesses, Department
personnel, persons named in the complaint, and any other person who may have
pertinent information. All relevant evidence shall be carefully examined. At the
completion of the investigation, IAD shall report their findings and make
appropriate recommendations to the Commissioner. Cases shall be resolved within
thirty (30) days, with extensions granted by the Commissioner for good cause.

The Commanding Officer of IAD shall keep the Commissioner informed at all
times of the progress of the investigation.

The Commanding Officer of IAD shall have authority to transgress District and
Division boundaries, and lines of authority. In pursuit of such investigations (s)he
shall be given complete cooperation by Department employees.

7.8   COMMISSIONER'S DETERMINATION

The Commissioner shall make a determination as to the validity of the complaint, based upon the report of IAD. If the Commissioner determines that the complaint may be valid, (s)he shall determine the best course of action. The Commissioner's choices include, but are not limited to, preferring charges against employees violating Department standards of conduct; amending rules, regulations, policies and procedures; or referring the complainant to the grievance process outlined in the appropriate collective bargaining agreement if the time limits for filing the grievance have not yet expired. In every case, the complaining employee shall be provided with the written determination of the Commissioner.

7.9     RESPONSIBILITY OF SUPERVISORS/SUPERIOR OFFICERS
It is the responsibility of supervisors/superior officers to prevent, report and uncover instances in the workplace involving sexual harassment. They shall take prompt remedial measures commensurate with the level of authority vested in their rank and position. Such remedial measures shall be consistent with current directives and shall not breach the applicable collective bargaining agreement.

7.10     CONSISTENCY WITH CITY OF BUFFALO SEXUAL HARASSMENT POLICY
Nothing in the Police Department's Sexual Harassment Policy shall be construed to be inconsistent with the principles outlined in the City of Buffalo Sexual Harassment Policy. The Police Department's policy adapts the City policy to the needs peculiar to the Police Department.





A-2892



Exhibit
3



**RICI #: 10035834**

Caution Indicator:

**BUFFALO POLICE DEPARTMENT**
ARRESTING/BOOKING REPORT

Agency Case #: 04-13723-20 (A)

Report Date: 11/17/2004 04:17
Report Printed By: BLADY, Marian

### PERSON INFORMATION

NAME: **ORTIZ, Josue D**
DOB: **11/14/1981**   AGE: **23**   SEX: **Male**   RACE: **Other**
HEIGHT: **6'03**   WEIGHT: **280**   BUILD: **Heavy**   ETHNICITY: **Hispanic**   SS #: **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**
HAIR COLOR: **Black**   HAIR TYPE: **Brush Cut**   EYE COLOR: **Brown**
EYE DEFECTS:   FACE:   SKIN TONE:
FACIAL FEATURES:   DISABILITY:
SCARS/MARKS/TATTOOS:
ADDRESS: **142 GERMAIN ST, BUFFALO NY US**
HOME TELEPHONE:   MARITAL STATUS: **Single (never married)**
EDUCATION: **09**   CITIZEN OF: **US**   PLACE OF BIRTH: **PUERTO RICO PR**
RELIGION: **Catholic**   DRIVERS LICENSE #:   LICENSE STATE:
NYSID #:   FBI #:   MUG #:

### ARREST/OFFENSE INFORMATION

INCIDENT #: **04-3160879**   ARREST TYPE: **CIP - Crime in Progress**   ARRESTING AGENCY: **BUF**
STATUS AT ARREST: **Held**   ARREST DATE/TIME: **11/17/2004 02:15**
CONDITION AT ARREST:
ARRESTING OFFICER: **JUDGE, PATRICK**
ASSISTING OFFICER:
ADDRESS OF ARREST: **74 FRANKLIN ST, BUFFALO NY US**
PRIMARY ARREST CHARGE: **PL 125.25-01 MURDER: INTENTION**   ATT: **N**

### BOOKING INFORMATION

CJTN #:   BOOKING STATUS: **Normal**   BAIL:
BOOKING START DATE/TIME: **11/17/2004 03:35**   BOOKING END DATE/TIME: **11/17/2004 04:11**
ITEM(S) SEIZED AT ARREST:
ARRAIGNMENT COURT: **NY014011J CITY OF BUFFALO**
BOOKING COMMENTS: **THE DEFENDANT DID ON 11/11/2004 WHILE AT 879 NIAGARA STREET AT OR ABOUT 9:45PM BREAK IN THROUGH THE FRONT DOOR AND DID SHOOT**
F/P'S TAKEN BY: **DIAMOND, Anthony**   DATE: **11/17/2004**
NCIC CLASS BY:

**Rolled Right Thumb**
NCIC CLASS:

ARRESTEE SIGNATURE:   DATE/TIME:

| Arrest Charges: | Att. | Incident #: | Warrant #: | Summons #: |
| --- | --- | --- | --- | --- |
| PL 125.25-01 MURDER: INTENTION | N | 04-3160879 | | |

Page   1 of 1

00001003

DEF000514

A-2893

## THIS SIDE TO BE COMPLETED BY THE ARRESTING OFFICERS

P-163

**BUFFALO POLICE DEPARTMENT**
**ARREST DATA REPORT**

AFN 04-13723-20(A)

CD 04-3160879

Date 11-17-2004

DEFENDANT'S NAME    ORTIZ (LAST)    JOSUE (FIRST)    DANIEL (M)

STREET NAMES/ALIASES

DATE OF BIRTH 11-14-81    RACE W    SEX M    ETHNIC    SKIN WHITE

ADDRESS    142 GERMAIN STREET

CITY    BUFFALO    STATE N.Y.    ZIP CODE

HEIGHT 6·3    WEIGHT 280    BUILD H    EYES BROWN    HAIR BLACK

SCARS, MARKS, TATTOOS    NONE

U.S. CITIZEN? Yes [X]  No [ ]    PLACE OF BIRTH PUERTO-RICO    OCCUPATION

MARITAL STATUS SINGLE    SOCIAL SECURITY NUMBER    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

ARREST DATE 11-17-04    ARREST TIME 2:15A    ARRESTING OFFICER DET. M. STAMBACH

ASSISTING OFFICER DET. P. JUDGE    ASSIGNMENT/RADIO CALL NUMBER 1271

ADDRESS OF ARREST 74 FRANKLIN STREET

COMPLAINANT'S NAME CAMACHO-MIGUEL CAMACHO-NELSON (LAST) (FIRST) (M)    RELATIONSHIP VICTIM

COMPLAINANT'S ADDRESS BOTH DECEASED    PHONE NUMBER

CITY    STATE    ZIP CODE

CHARGES MURDER IN THE SECOND DEGREE - TWO COUNTS
125.25-1 P.L. (2) COUNTS.

NARRATIVE THE DEFENDANT DID ON 11-11-2004 WHILE AT 879 NIAGARA STREET AT OR ABOUT 9:45PM BREAK IN THROUGH THE FRONT DOOR AND DID SHOOT MIGUEL CAMACHO AND ALSO NELSON CAMACHO WERE BOTH VICTIMS MET THERE DEMISE.

HAS A CHEMICAL AGENT BEEN USED UPON PRISONER? Yes [ ]  No [X]
IF YES, NAME OF THE OFFICER ADMINISTERING THE CHEMICAL AGENT
LOCATION OF VEHICLE    KEYS

PLATE    YR/MAKE    MODEL    COLOR

IS VEHICLE TO BE IMPOUNDED? Yes [ ]  No [X]

(ARRESTING OFFICER IS RESPONSIBLE FOR: P-31, P-77C, AND DCPS-L-1)

00001004
DEF000515

A-2894

)                                     )

## City Court of Buffalo – Department of Police
### Central Booking Bureau

FELONY COMPLAINT

State of New York, County of Erie, City Court of Buffalo

**THE PEOPLE OF THE STATE OF NEW YORK**

| | DEFENDANT(S) | DOB | CASE NO. |
|---|---|---|---|
| VS | Ortiz, Josue | 11-14-81 | 04-13723-20 |
| VS | | | |
| VS | | | |
| VS | | | |

I, Det Mark Stambach accuse the above named defendant(s) in this action, that on or about 9:45PM November 11, 2004 in the City of Buffalo, did intentionally, knowingly and unlawfully commit the felony of Murder in the Second Degree Contrary to the provision of 125.25-1 2cts of the [x] Penal Law [_] Vehicle and Traffic Law [_] of the State of New York [_]Ordinances of the City of Buffalo.

The facts upon which this accusation is based are [ ]of my own knowledge [x] on information and belief.

125.25-1 2 cts. Murder in the Second Degree
In that the defendant, while at 879 Niagara Street, did with the intent to cause the death of Miguel Camacho and Nelson Camacho, cause the death of Miguel Camacho and Nelson Camacho, in that the defendant did while at 879 Niagara along with two co-defendants, break in through the front door and did fire shots from a weapon striking Miguel Camacho and Nelson Camaco resulting in gun shot wounds to both complainants and ultimately causing demise.

MAS

Please take notice, pursuant to CPL 710.30, of the People's intent to offer at trial, evidence of defendant's statements to a public servant as referenced above.

Relationship: NONE

NOTICE: False statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the New York State Penal Law.

| _Mark R. Stambach_ | Det MCU | 11-17-04 |
|---|---|---|
| **Officer's\Complainant's Signature** | **Rank/Assignment** | **Date** |

Supporting Deposition(s) Attached?   Yes [ ]No [ ]

Page 1 of 1

**A-2895**

## City Court of Buffalo – Department of Police
### Central Booking Bureau

FELONY COMPLAINT

State of New York, County of Erie, City Court of Buffalo

THE PEOPLE OF THE STATE OF NEW YORK

| DEFENDANT(S) | DOB | CASE NO. |
|---|---|---|
| VS | | |
| VS | | |
| VS | | |
| VS | | |

I, Det Mark Stambach accuse the above named defendant(s) in this action, that on or about 9:45PM November 11, 2004 In the City of Buffalo, did intentionally, knowingly and unlawfully commit the felony of Murder in the Second Degree Contrary to the provision of 125.25-1 2cts of the [x] Penal Law [_] Vehicle and Traffic Law [_] _____ of the State of New York [_]Ordinances of the City of Buffalo.

The facts upon which this accusation is based are [_]of my own knowledge [x] on information and belief.

125.25-1 2 cts. Murder in the Second Degree
In that the defendant, while at 879 Niagara Street, did with the intent to cause the death of Miguel Camacho and Nelson Camacho, cause the death of Miguel Camacho and Nelson Camacho, in that the defendant did while at 879 Niagara along with two co-defendants, break in through the front door and did fire shots from a weapon striking Miguel Camacho and Nelson Camaco resulting in gun shot wounds to both complainants and ultimately causing demise.

MAS

Please take notice, pursuant to CPL 710.30, of the People's intent to offer at trial, evidence of defendant's statements to a public servant as referenced above.

Relationship: NONE

NOTICE: False statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the New York State Penal Law.

| | | |
|---|---|---|
| | Det MCU | 11-17-04 |
| **Officer's\Complainant's Signature** | **Rank/Assignment** | **Date** |

Supporting Deposition(s) Attached?    Yes [ ]No [ ]

Page 1 of 1

**City Of Buffalo – Department Of Police**
**Central Booking Bureau**

Docket No.
CD No.        04-316-0879
AFN           04 13723-20

## NOTICE TO DEFENDANT OF INTENTION TO OFFER EVIDENCE AT TRIAL (CPL 710.30 AND 700.70)

**PEOPLE OF THE STATE OF NEW YORK**
                    -VS-

DEFENDANT: Ortiz, Josue          DOB: 11-14-81        Date of Arrest: 11-17-04

Officer in charge of case: Det Mark Stambach                Assignment: MCU

**THE PEOPLE** INTEND TO OFFER AT TRIAL:

I.        **STATEMENTS BY DEFENDANT:** EVIDENCE OF A STATEMENT MADE BY THE DEFENDANT TO A PUBLIC SERVANT ENGAGED IN LAW ENFORCEMENT ACTIVITY OR TO A PERSON THEN ACTING UNDER HIS DIRECTION OR IN COOPERATION WITH HIM.

☒        1.  Written statement (attach copy)
☐        2.  What was said by the defendant at the time of arrest? (specify: date, place, content and to whom)
☐        3.  No statements were made        **Arresting Officers Initials** _____

**See Homicide case Number 2004-242**

**MAS**

**IDENTIFICATION OF DEFENDANT:** TESTIMONY IDENTIFYING THE DEFENDANT AS A PERSON WHO COMMITTED THE OFFENSE CHARGED BY WITNESSES WHO HAVE IDENTIFIED HIM AS SUCH PRIOR TO ARREST / TRIAL. SPECIFICALLY:

WHO MADE IDENTIFICATION OF DEFENDANT? (SPECIFY NAME)        Det Mark Stambach

        Date 11 / 17 / 04          Place  74 Franklin St

☒        Showup Identification
☐        Photograph Identification
☐        Line-up
☐        Observation of defendant upon some other occasion **relevant** to case
☐        Other (specify)

00001007

DEF000518

A-2897

# CITY OF BUFFALO POLICE DEPARTMENT
## CENTRAL BOOKING BUREAU
## CASE HISTORY

DEFENDANT: Ortiz, Josue
AFN # 04 13723-20

**THE OFFICER IN CHARGE OF A CASE IS THE OFFICER WITH THE MOST
KNOWLEDGE OF THE EVENTS LEADING TO THE ARREST. THIS
OFFICER WILL ALSO BE THE ONE TO SUBMIT ALL ITEMS OF AN
EVIDENTIARY NATURE TO THE CPS LAB OR PROPERTY ROOM. THE
OFFICER IN CHARGE MUST GIVE A CONCISE AND SUFFICIENTLY
DETAILED ACCOUNT OF THE CASE WITH SPECIFICS PERTAINING TO
ALL OFFICERS INVLOVED. THIS ACCOUNT WILL ACCOMPANY ALL
PAPERWORK FORWARDED TO BUFFALO CITY COURT.**

THE FOLLOWING SUMMARY REPRESENTS THIS CASE FILE TO THE BEST OF
MY KNOWLEDGE:
See Police Information

OFFICER PRINTED NAME: Det Mark Stambach

OFFICER SIGNATURE: _Mark R. Stambach_

DATE: _11 - 17 - 2004_

00001008

DEF000519

**A-2898**

| *City Of Buffalo – Department Of Police* | Docket No. | |
|---|---|---|
| *Central Booking Bureau* | CD No. | 04-316-0879 |
| P-32   *Defendant Information* | AFN | 04-13723-20 |

| DEFENDANT: Ortiz, Josue | DOB: 11-14-81 | Date Of Arrest: 11-17-04 |
|---|---|---|

Co-DEFENDANTS:

| 1. | | DOB: |
|---|---|---|
| 2. | | DOB: |
| 3. | | DOB: |

| 1. Officer in charge of case:  Det Mark Stambach | Assignment: MCU |
|---|---|

| Victim(s) / Witness (es) | Date / Chg'd | Purpose | Notice | Date / Initial |
|---|---|---|---|---|
| 2. Name   Miguel Camacho  Deceased | | | | |
| Address | | | | |
| Phone | | | | |
| 3. Name   Nelson Camacho  Deceased | | | | |
| Address | | | | |
| Phone | | | | |
| 4. Name | | | | |
| Address | | | | |
| Phone | | | | |
| 5 Name | | | | |
| Address | | | | |
| Phone | | | | |

### Erie County District Attorney – Buffalo City Court Disposition Form

| Arraign Date:<br>Disp. Date: | Defense Attorney | Type | Bail Status | Judge | ADA |
|---|---|---|---|---|---|

| Charges | PL 20 | Disposition | Disp. Code | Sentenced to: |
|---|---|---|---|---|
| 1.  125.25.1  2 cts | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |

| 710.30 ( ) | Lab ( ) | Local/NYSISS ( ) | MV-104 ( ) |
|---|---|---|---|
| Supporting Dep. ( ) | Medicals ( ) | DMV ( ) | Readiness ( ) |
| Forensic Req. ( ) | Breath Documents ( ) | Albany ( ) | Domestic Violence ( ) |

00001009

DEF000520

**A-2899**

# Permission to Search

The undersigned, residing at _142   Germain   upper_

does hereby voluntarily authorize _Det Patrick Judge_ ,

and other officers he may designate to assist him, to search my residence (or other real property) located at _142   Germain   upper_

and my motor vehicle, namely my_____
(year)        (make)

bearing license plate number_____, of the State of

_____, presently parked or located at _____

_____

and I further authorize said officers to remove from my residence, real estate and/or motor vehicle, whatever documents, or items of property whatsoever which they deem pertinent to their investigation, with the understanding that said officers will give me a receipt for whatever is removed.

I am giving this written permission to these officers freely and voluntarily, without any threats or promises having been made, and after having been informed by said officer that I have a right to refuse this search and/or seizure.

_____
Signature

Witnesses:

_____

Date: _11-17-04_ , 19_____. Time _0018 hrs_ m.

**A-2900**

Case 1:16-cv-00321-EAW-MJR Document 177-2 Filed 06/07/22 Page 49 of 48

04-0929





ITEM 68 E

ID FROM WALLET

11/17/04   JM

A-2901

## City Of Buffalo - Department Of Police
### Major Crimes Unit

**To:**     Captain Mark Morgan
            Crimes Against Persons Bureau

**From:**   Det. Mark J. Lauber
            Det/Sgt. Philip Torre
            Major Crime Unit

**Subject:**   MCU File #04-242,
               Homicides of Nelson & Miguel Camacho

**Date:**   November 15, 2004

Sir;

In the continuing investigation of the above captioned file, your writers did respond at about 1100hrs. to the area of Hampshire & 19ᵗʰ St. This was in request to a call by car D-341 PO Marie Schreckenberger concerning a male she had encountered at that location.

We arrived at about 1105hrs. and met with PO Schreckenberger, PO's Poleon (D-241) and Lewczyk (D-342) along with off-duty PO B. Rodriguez. We were informed that a subject identified as Josue Ortiz, DOB 11-14-1981 of 142 Germain St. Buffalo had stopped PO Schreckenberger and jumped into her patrol car saying that people were trying to kill him. Subject Ortiz was speaking Spanish and Rodriguez was interpreting for us.

Ortiz had told the Officers that person(s) unknown were trying to kill him because they thought he was involved in the homicides of Nelson & Miguel Camacho. We talked with Ortiz and he stated he just came to Buffalo from Puerto Rico. Ortiz admitted that he had just smoked marihuana, his eyes were glassy and he exhibited signs of being under the influence of marihuana (dilated, red pupils and unsteady gait). He continued to state that unknown persons where attempting to kill him although he could not articulate the manner in which these attempts were being made, the location these attempts were occurring at, the identities or motives for those trying to kill him.

Ortiz stated he was scared and needed help. After consulting with the Officers and observing the behavior of Ortiz it was decided that he might be in need of medical and or physic iatric evaluation. Ortiz agreed to voluntarily go to the Buffalo General Hospital for these examinations and was taken there via Rural/Metro ambulance.

We departed the area at about 1135hrs. and continued to investigate the homicides. Your office will be kept informed of developments as they occur.

Respectfully Submitted,

Det. Mark Lauber
Major Crime Unit

00001189

DEF000613

A-2902

## *City Of Buffalo - Department Of Police*
### *Major Crimes Unit*

**To:**  Captain Mark Morgan
Crimes Against Persons Bureau

**From:**  Det. Mark R. Stambach
D/Sgt. James Lonergan
Major Crimes Unit

**Subject:**  FILE # 04-242

**Date:**  11/16/04

ATTN:  Lt. Margaret Sack
Major Crimes Unit

Sir:

Your writers did meet with P.O. David Sadlocha and P.O. John Lobaugh at the Major Crimes Unit Office. Both officers did have with them a Mr. Josue Daniel Ortiz. They responded to a call at 7:16pm. P.O. Sadlocha, Car D432, indicated the subject was confessing about the homicide on Niagara Street.

Mr. Josue Daniel Ortiz was placed into Sgt. Vivian's Office at 7:25pm. A formal interview was started at 7:30pm. He gave information during this interview that indicated he was involved in the homicides. Present in the Interview Room was P.O. Edwin Torres of B District. He was used as an interpreter as he informed your writers he spoke only a little English.

After listening to Mr. Ortiz explain what had happened, he was advised of his rights.

P.O. Edwin Torres read a Spanish Rights Card to Mr. Ortiz. The rights were read at 8:25pm. He then signed the Rights Card. His waiver was read at 8:30pm. This Rights Card shall now become a part of this file.

At 8:40pm, Mr. Ortiz was given a Coke, large fries and a sandwich from McDonald's.

At 9:00pm, a formal sworn statement was taken from him. Please see attached sworn statement for further details on this matter. This sworn statement will now become a part of this file. The statement was finished at 10:30pm, whereas it was read back to him and he signed it.

Your office will be kept apprised of any new developments in this case.

Respectfully,

*Mark R. Stambach*
Det. Mark R. Stambach
Major Crimes Unit

00001190
DEF000614

A-2903

FORENSIC MENTAL HEALTH SERVICE
MEDICATION/PSYCHIATRIC CONSULTATION FORM

PATIENT'S NAME _Ortiz, Jose_   LOCATION: _____

ALLERGIES/MEDICAL ALERTS: _____

REASON FOR CONSULTATION: _2 count of murder_
_After arrest seemingly became catatonic_

COUNSELOR COMMENTS & OBSERVATIONS:
_& required. Medical issues as well, Now "somewhat"_
_improved. Competency exam pending_

_____   DATE: _10/19/11_
(COUNSELOR'S SIGNATURE)

PSYCHIATRIC RESPONSE: 23 yo H♂ Th/o depression. C/O feeling
sad. Reported poor sleep. C/O hearing voices.
Poor historian  ett-unknown substance - hx of
ETOH, xanax, marij in past
use  Malodorous speech - underproductive
affect - blunt mood - so dysphoric, guarded.
Thoughts - poverty of content ⊕ AH. ⊕
Thoughts of suicide at times but no plan or
intent. Denied thoughts of hurting
others

Imp  Schizophrenia
Plan  cont Zyprexa 20 mg BID
       needs interpretor for competency eval

Rx: _____   Start Date: _____   Stop Date: _____

Rx: _____   Start Date: _____   Stop Date: _____

(modpsyconsult)



**County of Erie**

JOEL A. GIAMBRA
COUNTY EXECUTIVE

Exhibit
**33**

DEPARTMENT OF MENTAL HEALTH
MICHAEL WEINER, M.S., M.B.A.
COMMISSIONER

FORENSIC MENTAL HEALTH SERVICE
JOSEPH W. LIEBERGALL, Ph.D.
EXECUTIVE DIRECTOR

January 21, 2005

Hon. Joseph S. Forma, JSC
Supreme Court : State of New York
County of Erie

RE:   **JOSUE ORTIZ**
DOB:   **11/14/81**
INDICTMENT NO.:   **02630-2004**

Dear Justice Forma:

At your request, I completed a psychiatric evaluation on Lawrence Smith at the Erie County Holding Center on January 20th, 2005. The interview was completed with the assistance of an interpreter. Mr. Ortiz was advised of the non confidential nature of the examination.

Josue Ortiz is a 23-year-old, Hispanic male with a history of depression and substance abuse, recently relocated to Buffalo from Puerto Rico. He has been charged with two counts of 2nd Degree Murder. Mr. Ortiz experienced a psychotic decompensation after his arrest, necessitating hospitalization at the Erie County Medical Center. He was disorganized, bizarre and catatonic prior to treatment. He was stabilized with tranquilizers and antipsychotic medication while hospitalized at ECMC (11/30/2004 through 12/29/04). Upon his return to the Holding Center, Mr. Ortiz has continued to complain of hearing voices that are telling him that he would be better off dead. On one occasion, he attempted to hang himself and had to be returned to constant observation.

**PAST PSYCHIATRIC HISTORY:**

Mr. Ortiz has a long history of depression for which he received treatment in Puerto Rico. He also complained of a history of mood swings, and he reported two previous episodes of decreased need for sleep, elevated mood and increased spending. Both episodes lasted approximately one week. He did not receive treatment for these episodes.

**SUBSTANCE ABUSE HISTORY:**

Mr. Ortiz has a history of abusing alcohol, Xanax and marijuana.

**SOCIAL HISTORY:**

Mr. Ortiz completed 11th grade, but never obtained a high school diploma. He attended regular classes. He also had some training in barber school.

Employment history is poor.

CRIMINAL COURT CLINIC
PHONE: (716) 853-6998

120 WEST EAGLE STREET • BUFFALO, NEW YORK 14202
FAX: (716) 851-5166

FAMILY COURT CLINIC
PHONE: (716) 851-5167

**EXHIBIT 3**

Page 2                    RE:  JOSUE ORTIZ

He said he had one long term relationship, which ended two years ago after the couple began arguing.

## MENTAL STATUS EXAMINATION:

Mr. Ortiz was well groomed.  His speech was clear and spontaneous.  Emotional expression was blunt.  He said his mood was low.  His thoughts were organized.  Thought process was normal.  There were no delusions.  He complained of hearing voices, coming from all around him saying, "It was you."  He also reported command hallucinations at times.  He said he was no longer having thoughts of suicide.  He denied any thoughts of hurting other people. Intellectual function was estimated as average or below.  Insight was fair.  Judgment was impaired.

Mr. Ortiz was able to discuss the charges against him in a rational manner.  While he maintained his innocence, he understood what the charges were and the seriousness of the charges.  Mr. Ortiz was able to describe ordinary courtroom procedure.  He understood the role of his attorney, the prosecutor, the judge, the jury and other courtroom personnel.  He understood the defenses available to him.  He knew the meaning of a plea bargain.  He described it as a negotiation for a better sentence.

## DIAGNOSTIC IMPRESSION:

Josue Ortiz is suffering from a psychotic illness, possibly Schizoaffective Disorder, Bipolar Subtype.  His symptoms have improved substantially with the antipsychotic medication, Zyprexa.  He also has a history of marijuana, alcohol and Benzodiazepine abuse.

## COMPETENCY OPINION:

While mentally ill, Josue Ortiz is not an incapacitated person as defined under Article 730 CPL. He is competent to proceed with the adjudication process.

Please feel free to contact me at any time, if you have any questions regarding this assessment.

Sincerely yours,

Dr. Coggins
Evelyn Coggins, M.D.
Consulting Psychiatrist

EC:kmd

A-2906

EXHIBIT
3
1/23/19   LP

Exhibit
10

NOTES                                    11·16·2004

                                         7:30PM


        JOSUE           WM 23
        DANIEL          11-14-1981
        ORTIZ           142 GERMAIN ST.


        ARRESTED   IN   PUERTO  RICO
        FOR  GUNS  AND  DOPE. . . .

                                              VICTIM
  Ⓐ  /  CELL PHONE IN HAND      Ⓐ   ONE  IN
        PISTOL  IN  OTHER              REAR  OF
        FLOCO  HAD  PISTOL IN HAND    HOUSE
        CELL

  Ⓐ  /  T.V.  WAS  BIG      Ⓐ  /  GOLD  CHAIN
  Ⓐ  /  T·V  WAS  ON            RIPPED  OFF
                                 LOBO  WHO
                                 WAS  AT
        HE  WAS  WITH            FRONT  DOOR
        UDAH
        HE  IS  JOEY            RAN  AWAY

                      THREE
        THERE  WERE  THERE
                                 GERMAIN  WAS
                                 HIMSELF

  ☆   THEY  WENT
       THERE  FOR  DOPE      Ⓐ   HE  HAD  A
       AND  MONEY               SHOTGUN  HE
                               DID  NOT  FIRE
    /  FLOCO  HAD              ANY  SHOTS
       PISTOL                  INSIDE

★ NAME OF GUN

MILATARY GUN

AK —  ←  HIS WORDS

★ YES AK WAS

FIRED

A Where is the milatary gun
right now
He knows                        8:25 PM
were it is                       Advised
                                 8:30 PM
                                 Waiver

                                      8:40 PM
                          Feed
                          McDonalds
                          Cake - Fries
                          Sandwhich



CERTIFICATE OF CONVICTION-IMPRISONMENT          Sec. 380.60 C.P.L.

AT A TERM OF THE COUNTY COURT
held in and for the County of Erie, at the Erie County Hall,
In the City of Buffalo, on the 16TH day of JUNE, 2006

Present-Honorable MICHAEL L. D'AMICO, JCC
INDICTMENT NO: 2004 -2630

THE PEOPLE OF THE STATE OF NEW YORK

ADA: K. CASE

DC: J. NUCHERENO/ B. CALVO-TORRES

AGAINST                          CR: P. STERLACE

JOSUE ORTIZ
DOB: 11-14-1981
DATE OF ARREST: 11-17-2004

(pled guilty)
The defendant above having (xxxxxxxxxxx) in this court, on the 22ND day of MARCH, 2006
of the crime of TWO COUNTS of MANSLAUGHTER IN THE FIRST (1ST) DEGREE, PL. 125.20-1,
"B" FELONIES;

personally appears this day for judgment, the Court informs the defendant, the defendant's counsel and the District
Attorney of their rights to make statements and rebuttal to the Courts remarks under Section 380.50 of the C.P.L.

Judgment is thereupon pronounced that the said defendant be imprisoned in the
            At            N.Y., for the term of CUSTODY TIME: TWENTY-FIVE (25) YEARS,
DETERMINATE and FIVE (5) YEARS POST RELEASE SUPERVISION ON EACH COUNT,
CONCURRENT TO EACH OTHER; $250.00/$20.00/$50.00 MANDATORY SURCHARGE/CVAF/DNA FEE
IMPOSED-PAID.

**I HEREBY CERTIFY** the foregoing to be a true copy of the entry of Judgment upon the minutes in the above-
entitled action.

**WITNESS** my hand and the seal of said court this
8TH day of MARCH, 2013

CHRISTOPHER L. JACOBS
Erie County Clerk

A-2909

# EXHIBIT  B

A-2910

City of Buffalo Police Department
Intra-Departmental Correspondence
Major Crimes Unit

To: Mark Morgan
    Capt., Crimes Against Persons Bureau

From: Det. Mark J. Vaughn
      Major Crimes Unit

Subject: MCU File #04-242
         879 Niagara

Date: November 15, 2004

Sir:

On the above date at approx. 1645 hrs., your writer
received a phone call at the MCU office from Kevin Enburg.
Mr. Enburg is the Emergency Room staff counselor for
Psychiatric Services at Buffalo General Hospital. Mr.
Enburg stated that a Hispanic male had been brought to the
hospital for evaluation. The doctors had cleared him
psychiatrically. During the evaluation, the Hispanic male
claimed he had information on the recent double homicide
that occurred at 879 Niagara. He further stated that he was
in fear of his life because the killers were after him.

Your writer and Det. James Lema proceeded to Buffalo
General. Det/Sgt. James Lonergan and P.O. Edwin Torres of
B-District met us there. Torres was there to act as an
interpreter.

At 1715 hrs., Mr. Enburg placed the four of us in the
family conference room on the first floor just off the
emergency room. He brought the Hispanic to the room. This
male identified himself as Josue Ortiz, d.o.b. ████ 81 of
19 Hoyt, rear. Ortiz stated that he spoke some English but
was more comfortable speaking Spanish. P.O. Torres told us
the following after conversing in Spanish with Ortiz.

Ortiz knew the deceased Camacho brothers. They were
members of a cocaine ring that was headed up by Justo and
Jose Caranzo (phonetically spelled). Ortiz was also a
member of this ring. The Caranzo brothers rented an
apartment in Ortiz's name at 142 Germain, upper. Ortiz
lived there until moving to 19 Hoyt. Ortiz claims the



DEFENDANT'S
EXHIBIT
402

00001183

A-2911

Caranzo's stored large quantities of cocaine at the Germain address. The Caranzo's also had an apartment at 46 Blum.

Through the interpreter, we asked Ortiz if he had any direct knowledge of the murders at 979 Niagara. He claimed he did not. He said that it was his opinion that the Camacho brothers were killed because of jealousy due to their drug selling.

When asked whom he was specifically afraid of, Ortiz gave the name, Rinaldo Valesquez. When asked why he was afraid of Valesquez, Ortiz stated it was because he had a shotgun. Ortiz did not claim that Valesquez had anything to do with the above murders.

Mr. Ortiz was definitely upset at the time of the interview. He was given a card with our names and phone numbers on it and asked to call us if he had any further information. Ortiz was turned back over Mr. Enburg. Ortiz was going to be medically evaluated before being released from the hospital.

Your office will be kept apprised of any new developments in this case.

Respectfully submitted,

Det. Mark Vaughn

00001184

November 16th, 2004

City of Buffalo
Department of the Police

State of New York
County of Erie
City of Buffalo

Mister Josue Daniel Ortiz, WM23-11-14-81 residing at 142 Germain Street in
the City of Buffalo, New York. Being duly sworn deposes and makes the follow-
ing sworn statement. This statement is taken by Detective Mark R. Stambach of
the HOMICIDE SQUAD in the presence of Det/Sgt James Lonergan. The statement
is typed by Detective Mark R. Stambach and the questions are being asked in
Spanish by Police Officer Edwin Torres.

Q. Do you kno how to read and write?
A. Sôo- So with the english.

Q. How far have you gone in school and do you have a formal education?
A. 11 grade I dropped out of the 11th grade.

Q. Bow long have you lived here in Buffalo, New York?
A. Four or five months I got here in May.

Q. Bave you lived in the United States for how long?
A. This is my first time.

Q. The Buffalo Police Departments Bomicide Squad is investigating the
shooting and the death of Mister Miguel Camacho and also Misterv Nelson
Camacho. Both were victims of a homicide that occured on 11-11-2004 at
or about 9:44 PM at 879 Niagara Street in the City of Buffalo. Can you
tell me in your own words what you know about those homicides.
A. It was about 9:30 PM we started to head over there. We went over there
to get money. There was three of us. Me, UDAH, and UDABS brother. We got
there. And we did what we did. Went over there and got it. Because we
heard that they were making money. We went over there to assault them only
He opened the door. I mean I did. UDAH kicked the door in. We entered.
We got in. All three of us entered. Entered and BAM. Fired shots. Forced o
way in and fired a shot. Then he heard the other brother yell out they
are killing my brother. They jumped on FLOCO. UDAHS brother fired the
nine millimeter. No the rifle I mean. Shot fired at FLOCO. FLOCO came and
then UDABS brother came and POW - POW. They we rean off.

Q. Did you enter through the front or the side door?
A. The front door.

Q. How did you open the door?
A. We kicked in the door, I did.

Q. Bow may of there was it that went inside?
A. It was the three of us.

Q. Did you all have weapons?
A. Yes.

Q. Who do you meet first when you go in?
A. LOBO was the first person I saw.

Q. What kind of gun did you bring with you?
A. A shot gun.

Q. What did LOBO do when he saw you?
A. We entered and he was there and FLOCO was in the back.

Q. Was there a struggle with LOBO at the fron door?
A. Yes.

Q. Who was struggling with him?
A. Me.

Q. Did anyone try to take any thing from LOBO?
A. Yes I did his chain.



MRS
JOV



DEFENDANT'S
EXHIBIT
4D6

STATEMENT PAGE TWO CONTD.........

Q. Did you see anyone else inside the house with LOBO?
A. The brother.

Q. What was the brothers name?
A. Thye called him EL-FLACO.

Q. Where was EL-FLACO inside the house when he came in?
A. He was standing in the rear of the apartment.

Q. Did EL- FLACO have anything in his hands when he was standing?
A. A gun, in one hand, and a telephone in his other hand.

Q. What was EL - FLACO doing with the telephone?
A. I heard him talking.

Q. Did you hear what he was saying?
A. Yes they are killing LOBO they are killing LOBO.

Q. Did you see a T.V. inside the apartment?
A. Yes.

Q. Was it a small one or a large one?
A. It was big.

Q. Was the T.V on or off?
A. The T.V. was on.

Q. Did you go there to get drugs or money?
A. Yes both.

Q. Did anyone find the money or the drugs?
A. I saw money there and drugs.

Q. Can you name the three types of guns you took with you?
A. A shotgun - A pistol, and a AK.

Q. Who brought the AK to the house?
A. It was UDAHS brother.

Q. Who actually kicked the door in to the bottom apartment?
A. I did/.

Q. What were you wearing the night this all happened?
A. Dark clothing, a dark hooded coat, combination matching set, not what
   I am wearing right now. sneakers white.

Q. Where are the clothes that you wer wearing that night?
A. They are on or at 19 Hoyt street.

Q. Which way did you leave from the house?
A. We came out of the house and across the street, and down Massachusetts.

Q. How may shots were fired inside the house?
A. A couple. It was rapid and real fast.

Q. Did you see who was firing the AK inside the house?
A. Yes I did see who was shooting. It was IDAHS borther.

Q. Did you have the AK - 47?
A. Yes I did.

Q. Did you do the shooting?
A. Yes.

Q. Did you shoot EL- FLACC with the AK?
A. Yes.

Q. Where did you shoot FLOCO?
A. In the belly.

Q. Where did you shoot LOBO at?
A. Face chest, I did a couple when he was on the floor.

Q. The first man at the door when you entered did he have any type of weapon?
A. No.

STATEMENT PAGE THREE. . . . . . . . . . . . .

Q. Did you take anything from the apartment?
A. No we got scared.

Q. Why did you tell us at first you had a shot gun instead of the AK?
A. I was scared.

Q. How have the police treated you tonight?
A. You treated me good.

Q. Did anyone yell at you tonight?
A. No.

Q. Did you have dinner here tonight?
A. Yes.

Q. Did anyone make you any promises?
A. No promises were made.

Q. And you had your rights read to you correct?
A. Yes.

Q. I am now going to have Police Officer Torres read this three page statement and ask you if it is correct?
A. It is correct.

Q. Will you now sign this statement for me now?
A. Yes.

STATEMENT IS STOPPED AT 10:30 PM.

SIGNED

WITNESSED:

WITNESSED:

Sworn and subribed before me this
16th day of November 2004

Mark R Stambach

Commissioner of Deed in and for the City of
Buffalo, New York. My commission expires
on 12-31-2004

**A-2915**

73  **BUFFALO POLICE DEP  RTMENT INTRA-DEPARTMEI  AL CORRESPONDENCE**

| TO C.O.H.<br>    C.M.M. | SUBJECT | DATE 11-16-04 |
| --- | --- | --- |
| FROM DET. M.R.S.<br>     DET/SGT J.L. | RIGHTS CARD<br>CASE 2004 - 242 | |

RIGHTS - CARD

8:25 PM

AVISO   DERECHOS DEL SOSPECHO ✓

1. Ud. tiene el derecho de quedarse callado. ✓
2. Cualquier declaración que ud. haga puede ser usada y sera usada contra ud. en el juicio. ✓
3. Ud. tiene el derecho de hablar con un abogado y de pedirle que este presente mientras lo interrogan a ud. ✓
4. Si ud. no puede pagar a un abogado, se nombrara uno para representarlo antes de que lo interroguen, si lo desea ud. . ✓

11-16-2004  Mark R. Stambach
[signatures]

DO NOT REMOVE FROM FILE

FILE # 2004 - 242



DEFENDANT'S EXHIBIT
407

A-2916

City of Buffalo Police Department
Intra-Departmental Correspondence
Major Crimes Unit

To: Mark Morgan
    Capt., Crimes Against Persons Bureau

From: Det. Mark J. Vaughn
      Major Crimes Unit

Subject: MCU File #04-242
         879 Niagara

Date: November 17, 2004

Sir:

On the above date, at approx. 0300 hrs., your writer
along with Det/Sgt. James Lonergan and Det. James Lema went
to 19 Hoyt St, Apt. #3.  Josue Ortiz signed a permission to
search for this address.
    Ortiz did not have a key on his person for this
apartment.  Through our investigation, we learned that the
landlord for this property is Dennis Dunson.  His address
is 687 Eggert Rd.  His phone number is 835-6049 and his
cell number is 308-3837.  He agreed to meet us at this
property.  He arrived at 0330 hrs.  He stated that the
person he rented apartment #3 to was Angel Rivera.  Dunson
was shown a photo of Josue Ortiz.  He stated that it was
not Rivera but that he had seen Ortiz at this address in
the past.  Dunson unlocked apartment #3 and we entered.  It
did not appear that anyone was living in this apartment.
There was very little furniture and no clothing.
    There was nothing of an evidentiary nature at this
apartment.  We secured the door and left at 0350 hrs.
    Your office will be kept apprised of any new
developments in this case.

DEFENDANT'S
EXHIBIT
408

00001191

Respectfully submitted,

Det. Mark J. Vaughn

00001192

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                              Plaintiff,

          v.                                         1:16-cv-00321-EAW-MJR

MARK STAMBACH,

                              Defendants.

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT
<u>AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(b)</u>**

**HODGSON RUSS LLP**
*Attorneys for Defendant Mark Stambach*
Hugh M. Russ, of counsel
Adam W. Perry, of counsel
Peter A. Sahasrabudhe, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

A-2919

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF ARGUMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................3

ARGUMENT ...............................................................................................................4

POINT I.     THE COURT SHOULD GRANT DETECTIVE STAMBACH'S RULE
             50 MOTION IN ITS ENTIRETY ...........................................................4

      A.     Ortiz's Fifth Amendment Claim Fails as a Matter of Law .....................6

      B.     Detective Stambach is entitled to judgment as a matter of law on
             plaintiff's fabrication of evidence claim .............................................11

      C.     Detective Stambach is Entitled to Judgment as a Matter of Law on
             Plaintiff's Malicious Prosecution Claim ..............................................13

      D.     Detective Stambach is entitled to judgment as a matter of law on
             plaintiff's punitive damages claim ......................................................18

POINT II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW
             TRIAL ON ALL OF PLAINTIFF'S CLAIMS ....................................20

POINT III.   THE COURT SHOULD GRANT DETECTIVE STAMBACH'S
             MOTION FOR REMITTUR AND REDUCE THE JURY'S AWARD OF
             COMPENSATORY DAMAGES .........................................................21

CONCLUSION..........................................................................................................23

i

A-2920

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Federal Cases**

*Bennett v. Vidal,*
    267 F. Supp. 3d 487 (S.D.N.Y. 2017)................................................................11

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996)................................................................22

*Bonds v. City of New York,*
    No. 12-cv-1772, 2014 WL 2440542 (E.D.N.Y. May 2014)..............................13, 14

*Boyd v. City of New York,*
    336 F.3d 72 (2d Cir. 2003)................................................................13

*Brady v. Southern Railway Co.,*
    320 U.S. 476 (1943)................................................................5

*Brandon v. City of New York,*
    705 F. Supp. 2d 261 (S.D.N.Y. 2010)................................................................15

*Brown v. City of New York,*
    08-cv-5095, 2013 WL 1338785 (E.D.N.Y. Apr. 1, 2013)..............................14, 15

*Colorado v. Connelly,*
    479 U.S. 157 (1986)................................................................10

*DeShawn E. by Charlotte E. v. Safir,*
    156 F.3d 340 (2d Cir. 1998)................................................................6

*Dewar v. Felmon,*
    No. 16-cv-2287, 2020 WL 1312954 (N.D. Ill. Jan. 2, 2020)................................19

*Farrior v. Waterford Bd. of Educ.,*
    277 F.3d 633 (2d. Cir. 2002)................................................................20

*Greene v. City of New York,*
    No. 08-cv-243, 2017 WL 1030707 (E.D.N.Y. Mar. 15, 2017)..............................11

*Kolstad v. American Dental Ass'n,*
    527 U.S. 526 (1999)................................................................18

*Lee v. Edwards,*
    101 F.3d 805 (2d Cir. 1996)................................................................18

## TABLE OF AUTHORITIES - cont'd

PAGE

*Limone v. United States,*
   579 F.3d 79 (1st Cir. 2009)....................................................22

*King v. City of New York,*
   No. 99-cv-3669, 2007 WL 959696 (E.D.N.Y. Mar. 30, 2007)........................6, 7, 10

*Manganiello v. City of New York,*
   612 F.3d 149 (2d Cir. 2010)...................................................17

*Memphis Cmty. Sch. Dist. v. Stachura,*
   477 U.S. 299 (1986)..........................................................18

*Metromedia Co. v. Fugazy,*
   983 F.2d 350 (2d Cir. 1992)..................................................20

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,*
   442 F.3d 101 (2d Cir. 2006)..................................................18

*Newton v. City of New York,*
   171 F. Supp. 3d 156 (S.D.N.Y. 2016).......................................21, 22

*Ortiz v. Wagstaff,*
   523 F. Supp. 3d 347 (W.D.N.Y 2021).........................................16

*Peterson v. Regina,*
   935 F. Supp. 2d 628 (S.D.N.Y 2013).......................................14, 15

*Raedle v. Credit Agricole Indosuez,*
   670 F.3d 411, 418 (2d Cir. 2012).............................................20

*Rodriguez v. City of Rochester,*
   12 F. Supp. 3d 598 (W.D.N.Y. 2014).........................................19

*Sedunova v. City of New York,*
   652 F. App'x 29 (2d Cir. 2016)..............................................7, 8

*Shumaker v. Kirkpatrick,*
   808 F. App'x 47 (2d Cir. 2020)..............................................10

*Simmons v. N.Y.C. Police Dep't,*
   97 F. App'x 341 (2d Cir. 2004)..............................................14

*Smith v. Wade,*
   461 U.S. 30 (1983)..........................................................18

iii

### TABLE OF AUTHORITIES - cont'd

PAGE

*Stamf v. Long Island R. Co.,*
   761 F.3d 192 (2d Cir. 2014)..................................................................22

*Sulkowska v. City of New York,*
   129 F. Supp. 2d 274 (S.D.N.Y. 2001)........................................................18

*Thomsen v. City of New York,*
   No. 15-CV-2668, 2016 WL 590235 (S.D.N.Y. Feb. 11, 2016)..........................14

*Wierzbic v. Howard,*
   331 F.R.D. 32 (W.D.N.Y. 2019)...............................................................5

*Williams v. County of Westchester,*
   171 F.3d 98 (2d Cir. 1999).....................................................................5

**State Cases**

*Jean-Mary v. City of New York,*
   234 A.D.2d 515 (2d Dep't 1996)..............................................................18

**Federal Statutes**

42 U.S.C. § 1983.................................................................................6, 18

**Rules**

Fed. R. Civ. P. 50..........................................................................1, 3, 4, 5, 20, 21

Fed. R. Civ. P. 56(f)............................................................................5

Fed. R. Civ. P. 59............................................................................20, 21, 22

**Constitutional Provisions**

Fifth Amendment...........................................................................1, 6, 7, 10

A-2923

## PRELIMINARY STATEMENT

Josue Ortiz's plight inspires profound sympathy, and the jury obviously embraced his story. But sympathy is not an appropriate basis to sustain a jury verdict. Rule 50 of the Federal Rules of Civil Procedure is designed for this precise circumstance – where a jury bases its verdict entirely on sympathy, but the evidence presented at trial is legally insufficient for a plaintiff to succeed on his claims. Ortiz presented no evidence at trial to even suggest that Detective Stambach coerced him or otherwise deprived him of any constitutional right. Nor did Ortiz present any evidence at trial sufficient to satisfy his burden of proof on any of his three claims. Since the jury based its verdict entirely on sympathy – and could not possibly have based its verdict on the actual evidence in the record – the Court must grant Detective Stambach's Rule 50 motion and dismiss Ortiz's Complaint.

## SUMMARY OF ARGUMENT

At trial, there was no evidence whatsoever – none – to suggest that Detective Stambach coerced Ortiz in violation of his Fifth Amendment rights. Without any evidence of coercion, no reasonable jury could have decided as this one did. And, any conclusion by the jury that coercion occurred was necessarily based only on complete speculation. The evidence showed only that Ortiz's confession was freely given. Detective Stambach is thus entitled to judgment as a matter of law dismissing Ortiz's claim for a Fifth Amendment violation.

On Ortiz's claim for fabrication of evidence, there was no evidence whatsoever from which a reasonable jury could infer that Detective Stambach fabricated any element of Ortiz's confession. All of the testimony from the witnesses present during the confession demonstrated that Ortiz did in fact confess to the murders of Nelson and Miguel Camacho, that

his confession was voluntary, and that the information contained in the confession came from Ortiz, himself.  Ortiz introduced no evidence to the contrary.  In fact, Ortiz did not even deny that he confessed.  He identified his signature and initials on the confession.  He claims only not to remember having given the confession.

On Ortiz's malicious prosecution claim, he stipulated that he was indicted, and he further stipulated to a presumption of probable cause.  Ortiz introduced no evidence to overcome that presumption.  There was no evidence whatsoever from which a reasonable jury could infer that Detective Stambach committed fraud or perjury, or from which the jury could infer that Detective Stambach was motivated by anything other than a desire to bring the perpetrator of the crime to justice.  Every witness who was present when Ortiz confessed, including Detective Stambach, testified that Ortiz's confession was credible.  Every witness indicated that Ortiz's confession was voluntary and not coerced.  Ortiz failed to introduce evidence to suggest that Detective Stambach had any improper or evil motive in taking the confession.  To conclude Detective Stambach held such a motive was, again, complete conjecture and speculation by the jury.  Detective Stambach is thus entitled to judgment as a matter of law on Ortiz's malicious prosecution claim.

In the alternative, the jury's award of punitive damages should be stricken. Taking a voluntary confession does not evince the kind of egregious and offensive conduct that punitive damages are designed to deter.  The basis for punitive damages in this case does not exist.

2

In the event Detective Stambach's Rule 50 motion is not granted, the Court should reduce the jury's award of punitive damages to Ortiz.  The verdict is intrinsically excessive, particularly in light of the fact that there was no evidentiary basis or aggravating circumstances in the record upon which the jury could have based its award.  The jury's verdict should therefore be reduced.

### STATEMENT OF FACTS

The Declaration of Peter A. Sahasrabudhe and its exhibits present the complete facts underlying this motion. The facts will be cited here in brief only for purposes of argument.

Only three witnesses testified at trial regarding the transaction between Ortiz and Detective Stambach.  Ortiz, himself, shed no light on the subject.  He told the jury that he could not remember the night of his confession.  (Dkt. No. 175) at p. 265.  He did identify, however, his signature and his series of initials on that confession.  (*Id.*) at p. 266, 272.  These markings proved that Ortiz had reviewed the confession and approved its contents.

Despite its considerable focus at trial, the confession only started the process of his conviction.  On March 22, 2006, Ortiz pleaded guilty to the Camacho brothers' murders, stating under oath that he was involved in the murders.  (*Id.*) at p. 259.  Several months later at sentencing, Ortiz stood silent when asked if he had anything to add.  (*Id.*) at p. 275.  Years later, in 2011, Ortiz testified before a federal grand jury investigating drug gangs on the west side of Buffalo that he was responsible for the murders.  (*Id.*) at p. 266, 272.  Under oath, he testified that he was a perpetrator of the Camacho murders.  (*Id.*)  Ortiz also maintained to investigators, including May Evans of the Buffalo Police Department, that he killed the Comacho brothers.

3

Only after Detective Evans confronted Ortiz with information she had uncovered tending to show that he was not involved in the murders did Ortiz recant and admit that he had not committed the crime.  Ortiz had at least five opportunities over a period of seven years to set the record straight.  During that time, Detective Stambach had no involvement with Ortiz.  The evidence presented by Ortiz simply does not support a finding that Detective Stambach violated Ortiz's constitutional rights.

Detective Stambach identified Ortiz's confession and explained the circumstances of its delivery.  (Dkt. No. 165) at p. 74-77.  Detective Stambach's version of the events was never seriously challenged.  The only two other persons present – Detective Lonergan and P.O. Torres – corroborated every element of Detective Stambach's testimony:  Ortiz volunteered to come to the station, and after appropriate *Miranda* warnings, Ortiz confessed.  P.O. Torres translated.  Ortiz indicated his approval of the confession by signing and initialing it.  There was no coercion or pressure applied.  All three witnesses found Ortiz to be credible.  *See generally* (Dkt. Nos. 165, 173, 176).  After consulting with the DA, Detective Stambach commenced the prosecution.  (Dkt. No. 165) at p. 85-86.  Ortiz introduced no evidence – written or testimonial – to contradict this account of the confession.  Give this failure, no evidence exists in the record to support the verdict rendered.

## **ARGUMENT**

**POINT I.    THE COURT SHOULD GRANT DETECTIVE STAMBACH'S RULE 50 MOTION IN ITS ENTIRETY**

A motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) will be granted if: (1) there is a complete absence of probative evidence to support a verdict for the non-

4

movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that

reasonable and fair minded men and women in the exercise of impartial judgment could not

arrive at a verdict against movant. *Wierzbic v. Howard*, 331 F.R.D. 32, 45 (W.D.N.Y. 2019).[1]

Both standards apply here.

Nearly eighty years old, *Brady v. Southern Railway Co.*, 320 U.S. 476 (1943) still

articulates the federal standard for ruling on a motion for judgment as matter of law.  Haig,

Business and Commercial Litigation in Federal Courts, 5th Ed. § 63.4 at p. 439-40.  The

Supreme Court held that such a motion should be granted where the trial court concludes that the

evidence is amenable to one, and only one, reasonable conclusion:

> When the evidence is such that without weighing the credibility of
> witnesses, there can be but one reasonable conclusion as to the
> verdict, the Court should determine the proceeding by nonsuit,
> directed verdict, or otherwise, in accordance with applicable
> practice,  without submission to the jury, or by judgment
> notwithstanding the verdict.  By such discretion of the trial court,
> the result is saved from the mischance of speculation over legally
> unfounded claims.

*Brady*, 32 U.S. at 470-80.  Recognizing that the evidence does not begin to support the jury's

verdict, this Court must grant Detective Stambach's Rule 50 motion.

---

[1]    A Rule 50(b) motion is decided according to the same standard as a Fed. R. Civ. P. 56(f)
motion for summary judgment.  *Id.*  And a denial of a past summary judgment motion
does not preclude granting judgment as a matter of law to the previously unsuccessful
summary judgment movant.  *Williams v. County of Westchester*, 171 F.3d 98, 102 (2d
Cir. 1999).  That is because the denial of a summary judgment motion is an interlocutory
decision, and interlocutory decisions remain subject to modification or adjustment prior
to the entry of a final judgment adjudicating the claims to which they pertain.  *Id.*

A.     <u>Ortiz's Fifth Amendment Claim Fails as a Matter of Law</u>

No evidence even suggests that Ortiz's confession was coerced by Detective

Stambach, or that Detective Stambach engaged in conduct that could arguably be characterized

as coercive.  Without evidence of coercion, Ortiz's Fifth Amendment claim fails as a matter of

law.  For claims brought pursuant 42 U.S.C. § 1983, "the key inquiry for Fifth Amendment

purposes is whether the statement introduced in a judicial proceeding was obtained, not by

failure to read a defendant *Miranda* warnings,[2] but by coercion – an inquiry determined by the

totality of the circumstances."  *DeShawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir.

1998).

Decisions from courts within this Circuit demonstrate how Ortiz's proof fell far

short of establishing coercion by Detective Stambach.  In *King v. City of New York*, for example,

the Court determined that the plaintiff's confession was ***not*** coerced as a matter of law.  No. 99-

cv-3669, 2007 WL 959696, at *12-*13 (E.D.N.Y. Mar. 30, 2007).  The plaintiff testified that, the

day before his confession, officers had repeatedly kicked him, stomped on his head, and sprayed

him with mace.  *Id.* at *3.  The plaintiff also submitted evidence showing a recommendation

from a psychiatrist that he should undergo psychiatric care in an out-patient setting.  *Id.* at *13,

n.15.  The plaintiff argued that this evidence demonstrated that his statements were involuntary,

---

[2]     The evidence demonstrates that there was no violation of *Miranda* in this case, as Ortiz's
*Miranda* warnings were read, and he waived his *Miranda* rights, prior to his recorded
confession taken by Detective Stambach.  That incriminating statements may have been
made by Ortiz before *Miranda* warnings were given to him does not evince that those
statements were used in a criminal proceeding, and there is no evidence whatsoever that
anything other than Ortiz's *Mirandized* statement was used in his prosecution.
Nonetheless, even if there were a *Miranda* violation, this would be insufficient to sustain
Plaintiff's claim.  *Deshawn E.*, 156 F.3d at 346.

6

and were in fact the result of mental, physical, and psychological impairments. *Id.* at *13. The

Court rejected this argument, emphasizing that the plaintiff was required to show that his

impairments were linked to, or caused by, the techniques used by the interrogating officers to

elicit incriminating statements from him. *Id.* Because there was no evidence that the

interrogating officers intentionally employed techniques to exacerbate or exploit the plaintiff's

weakened state, the plaintiff's Fifth Amendment claim failed as a matter of law. *Id.*

Importantly, regarding the recommendation from plaintiff's psychiatrist, the court explained that

"the recommendation is evidence that [plaintiff] required medical care for his mental health . . . it

is not evidence linking his mental health to the circumstances attending his interrogation." *Id.* at

n.15.

      *Sedunova v. City of New York*, 652 F. App'x 29, 31 (2d Cir. 2016) is also

instructive. There, the plaintiff alleged that officers who interrogated her engaged in

manipulative tactics by telling the plaintiff that confessing would be "better for her" or "good for

her," and that she would be "free to leave" if she confessed. *Id.* Even accepting these

allegations of the officers' manipulative conduct as true, the Second Circuit held that these

tactics did not create a situation where the plaintiff could not have made a knowing or voluntary

decision to confess to a crime. *Id.*

      As demonstrated at trial – without any contradictory evidence – Detective

Stambach's conduct does not even rise to the level of coerciveness attributed to the officers in

*King* and *Sedunova*, who were found as a matter of law not to have committed any constitutional

violations. To start, Ortiz's testimony offered nothing regarding Detective Stambach's conduct.

Ortiz testified only that he does not remember his interactions with the Buffalo Police

Department.  (Dkt. No. 175) at p. 265.  He provided no information regarding Detective Stambach's involvement with his arrest and conviction.

The jury heard testimony from three witnesses regarding Detective Stambach's conduct during Ortiz's confession: (1) Detective Stambach, (2) Jim Lonergan, and (3) Edwin Torres.  Nothing in their testimony reveals any coercion.  The jury heard testimony only of appropriate police procedure.

Detective Stambach testified that, on the day of Ortiz's voluntary confession, he was on duty, and that he received word that a witness was coming into the station to give a statement about the murders of Nelson and Miguel Camacho.  (Dkt. No. 165) at p. 15, 39.  When Ortiz arrived at police headquarters, Detective Stambach sat down with him in the office of an off-duty sergeant.  Detective Stambach asked Ortiz open ended questions, and in response Ortiz voluntarily offered information that tended to implicate him as the perpetrator of the murders. (*Id.*) at p. 39-40.  At that point, Detective Stambach requested that an interpreter be arranged. (*Id.*) at p. 54.  Although Ortiz was able to communicate in English, his first language was Spanish, and Detective Stambach wanted to ensure that any statement given by Ortiz was accurate.  Officer Torres was called to interpret Ortiz's answers.  Ortiz was then read his *Miranda* rights from a Spanish *Miranda* card.  (*Id.*) at p. 38.  Detective Stambach provided Ortiz with food from McDonalds before his official statement was transcribed.  Ortiz signed the *Miranda* card after Officer Torres read him his rights.  (*Id.*)  At trial, Ortiz himself acknowledged that his signature appears on the *Miranda* card.  (Dkt. No. 175) at p. 265-266.  Afterwards, Detective Stambach typed the statement given by Ortiz, which both Officer Torres and Ortiz

8

A-2931

signed, affirming that what Detective Stambach had typed was an accurate transcription of Ortiz's statement.

Detective Sergeant Lonergan testified that, while he was not present when Ortiz originally confessed, he agreed with Ortiz's arrest, notwithstanding the fact that he had seen Ortiz at Buffalo General Hospital the day prior. (Dkt No. 176) at p. 188-190. Detective Sergeant Lonergan further testified that there were aspects of Ortiz's statement that tended to show that he had knowledge of the murder scene. (*Id.*) at p. 189. Detective Sergeant Lonergan witnessed the signatures placed on the confession, including Ortiz's.

Finally, Officer Torres testified that Detective Stambach was calm and completely professional during Ortiz's confession. According to Officer Torres, Detective Stambach did not even raise his voice. He testified that there were no manipulative tactics deployed by Detective Stambach, and that Detective Stambach did nothing more than accurately transcribe Ortiz's statement. (Dkt. No. 176) at p. 458-459. Officer Torres further testified that he added his initials to each page of Ortiz's confession after fully reviewing each page with him. (*Id.*) at p. 456-457. He testified that he would not have added his initials to each page if the pages did not accurately reflect statements that Ortiz had actually made. (*Id.*) at p. 457. He then signed the confession. (*Id.*) He testified that he would not have given his signature if he had any doubts about the accuracy of the confession, or if the confession was taken through improper means. (*Id.*) Officer Torres testified that he left the confession feeling confident that he had accurately interpreted Ortiz's statement, and that there was nothing improper or inappropriate about the confession in any way. (*Id.*) at p. 457-458. Officer Torres believed that Ortiz had committed the Camacho murders. (*Id.*)

9

Every other witness who testified had no personal knowledge and could not give any testimony about the actions or conduct of Detective Stambach during Ortiz's confession. This list includes Dr. Evelyn Coggins, Detective Mark Vaughn, Detective Mark Lauber, and Detective Mary Evans.  None of these witnesses' testimony could possibly support the jury's finding that Detective Stambach engaged in coercion.  Dr. Coggins's testimony on Ortiz's mental state many days after the confession is not probative of any interrogation techniques employed by Detective Stambach.  It cannot support the jury's finding that Detective Stambach coerced Ortiz's confession.  As *King* teaches, the mere fact that a plaintiff may have suffered from mental health issues is not enough to demonstrate that coercion was applied in an interrogation.[3]  The tactics employed must have caused or exacerbated Ortiz's condition in such a manner so as to render his statement involuntary.  2007 WL 959696 at *13.  No evidence suggested coercion in any fashion.

Ortiz failed to offer any evidence that could support the jury's finding that his confession was the result of coercion.  Detective Stambach is thus entitled to judgment as a matter of law on Ortiz's Fifth Amendment claim.

---

[3]     The Supreme Court has also noted that, when a witness confesses to a crime based on a mental impairment, this does not render the confession or statement made by the witness "involuntary" for constitutional purposes. *Colorado v. Connelly*, 479 U.S. 157, 163-167 (1986).  Under *Connelly*, taking a confession from an individual with a mental illness does not constitute a constitutional violation absent a showing of additional coercive tactics.  *Id.*; *see also Shumaker v. Kirkpatrick*, 808 F. App'x 47, 48-49 (2d Cir. 2020).

**B.** **Detective Stambach is entitled to judgment as a matter of law on plaintiff's fabrication of evidence claim**

There was no evidence whatsoever that Ortiz's confession was "fabricated" or "made up." Where a plaintiff proves at best that a police officer is mistaken about certain information, a constitutional claim for "fabrication of evidence" fails as a matter of law. *Bennett v. Vidal*, 267 F. Supp. 3d 487, 498-499 (S.D.N.Y. 2017) (mistaken belief that plaintiff was involved in criminal activity does not amount to knowingly forwarding false evidence). Absent a showing of deliberate falsification of evidence, such a claim cannot be maintained. *Id.* In addition, a fabrication of evidence claim fails as a matter of law where a fact finder could only conclude that evidence was fabricated by resorting to speculation. *Greene v. City of New York*, No. 08-cv-243, 2017 WL 1030707, at \*25 (E.D.N.Y. Mar. 15, 2017) (granting summary judgment on a denial of the right to a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact"). This precise circumstance is presented by the evidence adduced at trial. The jury could only have concluded that Ortiz's confession was fabricated by resorting to speculation.

There is no evidence whatsoever that Ortiz's written confession is not an accurate account of what Ortiz said to Detective Stambach on November 16, 2004. In fact, the testimony conclusively establishes that Ortiz did in fact confess to the murders of Nelson and Miguel Camacho. Again, the testimony of Detective Stambach and Edwin Torres establishes the voluntary confession. Both of these witnesses testified that Ortiz confessed to the murders. (Dkt. No. 176) at p. 457-458; (Dkt. No. 165) at p. 82-83. Both witnesses testified that they found the confession credible. They believed Ortiz was a perpetrator of the murders after the confession. (*Id.*) Torres testified that he reviewed each page of Ortiz's three page confession

11

with Ortiz, and he added his initials to each page. (Dkt. No. 176) at p. 456-457. He testified that he would not have added his initials if anything on the page he was reviewing did not accurately memorialize what Ortiz had said. (*Id.*) at p. 457. He also would not have added his signature to the confession if he felt there was anything inaccurate about its contents. (*Id.*) Torres further testified that Ortiz had no problems understanding him, and that he had no problems understanding Ortiz. (*Id.*) at p. 452-453. Torres testified that he believed that Ortiz was a perpetrator based on Ortiz's statements, not based on anything that Detective Stambach did or said. (*Id.*) at 458. According to Torres, everything that Stambach typed in the confession was an accurate account of what Ortiz had communicated. (*Id.*) at p. 460.

Moreover, Detective Sergeant Lonergan testified that, after observing the confession. He agreed charges should have been brought against Ortiz at that time based on the confession. (Dkt. No. 173) at p. 188-190. Ortiz himself acknowledged that his signature is present on the confession. (Dkt. No. 175) at p. 272. At trial, Ortiz admitted that he maintained his responsibility for the murders by testifying to a federal grand jury seven years later, in 2011, that he had murdered Nelson and Miguel Camacho. (*Id.*) at p. 283-284. These portions of Ortiz's trial testimony actually tend to show that he did in fact confess to the murders in 2004. He offered no testimony to the contrary.

Again, no other witness called by Ortiz offered any testimony contradicting the account of the confession given by Detective Stambach or Officer Torres. The jury certainly could not have relied on any other witness to conclude that the confession was fabricated. At most, the evidence presented by Ortiz only tends to prove that his confession was false. Ortiz did not, however, introduce any evidence that the confession was not an accurate representation

12

A-2935

of his statements to Detective Stambach on November 16, 2004.  He followed the confession by pleading guilty.  (*Id.*) at p. 259.  At sentencing he stood silent.  (*Id.*) at p. 275.  The jury's conclusion that Ortiz's confession was fabricated was necessarily informed only by complete conjecture.  It was not based on any evidence that was introduced at trial.  For this reason, Detective Stambach is entitled to judgment as a matter of law on Ortiz's fabrication of evidence claim.

**C.      Detective Stambach is Entitled to Judgment as a Matter of Law on Plaintiff's Malicious Prosecution Claim**

Ortiz presented no evidence to rebut the presumption of probable cause.  Ortiz stipulated that he was indicted by a grand jury, which creates a presumption of probable cause, a presumption which was his burden to overcome for his malicious prosecution claim.  *Bonds v. City of New York*, No. 12-cv-1772, 2014 WL 2440542, at *7 (E.D.N.Y. May 2014) (citing *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)).  To overcome the presumption of probable cause created by the grand jury indictment, Ortiz was required to prove that the indictment was secured by fraud, perjury, or other bad faith police conduct.  *Id.* at 77.  Fraud and perjury have never been at issue in this case, and thus Ortiz was required to demonstrate "bad faith" by Detective Stambach.  There was no evidence, direct or circumstantial, of bad faith.  Under controlling Second Circuit precedent, the Court must apply the "competing testimony plus" test announced in *Boyd v. City of New York* to analyze whether Ortiz introduced sufficient evidence of bad faith or misconduct by Detective Stambach.  336 F.3d at 76.  Under that standard, because there was no testimony contradicting Detective Stambach's account of the confession, and because there was no other corroborating evidence of bad faith, Ortiz's malicious prosecution claim fails as a matter of law.

13

A-2936

1.     <u>Ortiz offered no evidence contradicting Detective Stambach's version of events</u>

In this Circuit, to show the type of bad faith conduct sufficient to overcome the

presumption of probable cause, it is not even enough for a plaintiff to offer his own version of

events that contradicts that of a police officer's. *Bonds*, 2014 WL 2440542, at *7. Courts have

repeatedly held that a plaintiff's own testimony cannot overcome a presumption of probable

cause created by a grand jury indictment. *Brown v. City of New York*, No. 08-cv-5095, 2013 WL

1338785, at *4 (E.D.N.Y. Apr. 1, 2013) (citing *Simmons v. N.Y.C. Police Dep't*, 97 F. App'x

341, 343 (2d Cir. 2004)) ("Although [plaintiff] testified that the arresting officer ... told him that

the officers would falsify evidence and manipulate line-ups in order to implicate him, this

allegation is not, without more, sufficient to raise an inference that the indictment was procured

by fraud or bad faith conduct.").

Also, a plaintiff's mere suspicions about a police officer's misconduct are

insufficient. The plaintiff must point to some concrete corroborating evidence of bad faith to

substantiate his suspicions. *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y 2013)

(holding that plaintiff's "mere suspicions" were insufficient to overcome presumption of

probable cause).[4]

---

[4]     A showing that a confession turned out not be true is also insufficient to overcome the
presumption of probable cause. *See Thomsen v. City of New York*, No. 15-CV-2668,
2016 WL 590235, at *8 (S.D.N.Y. Feb. 11, 2016) ("Although the confession is now
known to be false, [defendant] did not invent it. . . . After [plaintiff] confessed both in
writing and during his recorded interview with [defendants], there was probable cause for
his arrest and prosecution.").

Here, Ortiz did not even offer his own version of the events. He claimed not to remember the confession. He did not even offer that he had suspicions regarding Detective Stambach's conduct. (Dkt. No. 175) at p. 265. The only suspicions offered were through his counsel's arguments, which do not constitute evidence. Nor did any witness called by Ortiz offer any version of events that contradicted Detective Stambach's account of his involvement in the investigation. Thus, Ortiz offered even less proof than the other plaintiffs who also failed to rebut the presumption of probable cause as a matter of law. *See Peterson*, 935 F. Supp. 2d at 643; *Brown*, 2013 WL 1338785, at *4. The only testimony established that Ortiz's conviction was the product of a voluntary confession, for which Detective Stambach and other police officers believed Ortiz to be credible. For this reason alone, Ortiz's malicious prosecution claim fails.

2.     <u>There was no corroborating evidence demonstrating bad faith</u>

Ortiz was required to offer competing witness testimony ***plus*** corroborating evidence that Detective Stambach acted in bad faith, in order to rebut the presumption of probable cause. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010). But Ortiz introduced no such evidence. Because there was no testimony by Ortiz or any other witness to compete with the account given by Detective Stambach. Thus, Ortiz's malicious prosecution claim fails.

In addition, even if Ortiz had introduced competing testimony, his claim would fail because there was no other corroborating evidence of bad faith by Detective Stambach. In this Court's decision denying Detective Stambach's motion for summary judgment, this Court pointed to certain evidence which, if it had been introduced to a jury, could have cumulatively

15

**A-2938**

provided a reasonable basis for a jury to conclude that Detective Stambach acted in bad faith. *Ortiz v. Wagstaf*, 523 F. Supp. 3d 347, 366 (W.D.N.Y 2021). Much of the expected testimony referenced by the Court on summary judgment, however, did not come into evidence at trial.

For example, there was no evidence that there were material inconsistencies between details given in Ortiz's confession and details which were known to the police about the murders of Nelson and Miguel Camacho. In implying that such evidence could be introduced at trial, the Court cited to the deposition testimony of New York State Investigator Geraldo Rondon in its summary judgment decision. *Id.* at 364 (citing Dkt. No. 78-4). But Investigator Rondon was not called as a witness at trial. No other witness testified or explained that there were portions of Ortiz's statement that were inconsistent with aspects of the crime scene. In fact, Ortiz offered no evidence about the crime scene at all. Any evidence that the jury did hear suggested that, in the officers' view, Ortiz's confession was consistent with details of the crime scene and suggested he was, in fact, present at the scene at the time of the murders. (Dkt No. 173) at p. 189; (Dkt. No. 165) at p. 39-40.

There was also no evidence that Detective Stambach knew of other suspects being investigated for the Camacho murders prior to Ortiz's confession. The Court specifically referenced alternative suspects in its summary judgment decision, but Ortiz introduced no such evidence at trial. There was no evidence that Detective Stambach had any information whatsoever prior to the confession about the identities of other individuals that may have been responsible for the murders. Crucially, this Court's summary judgment decision required that certain evidence had to be introduced showing that Detective Stambach knew that Ortiz was not or could not have been a perpetrator at the time of the confession. The jury heard no such

16

evidence.  As a result of this failure, Ortiz's malicious prosecution claim fails as a matter of law.  *Cf. Manganiello v. City of New York*, 612 F.3d 149, 161-163 (2d Cir. 2010).

The proof Ortiz introduced at trial falls far short of the proof offered by the plaintiff in *Manganiello*, the case this court cited in its denial of Detective Stambach's summary judgment motion.  There, the plaintiff overcame the presumption of probable cause through evidence showing that a detective had acted with in bad faith.  612 F.3d at 161-163.  The plaintiff introduced evidence showing that the detective withheld relevant information from prosecutors, altered his police reports to enhance his case against the plaintiff, and relied on a witness who the detective knew was lying in order to get out of prison.  *Id.*  The detective also coerced and extorted another witness in order to get him to make an untrue statement about the plaintiff.  *Id.* at 157.  The evidence introduced by Ortiz is not even remotely similar to the evidence introduced at trial by the plaintiff in *Manganiello*.  Ortiz introduced no evidence to suggest that Detective Stambach withheld relevant information from prosecutors, or that Detective Stambach altered police reports to enhance the case against Ortiz.  The evidence showed only that Detective Stambach typed what Ortiz communicated to him, and that he and other officers believed the information was credible.

To conclude that Detective Stambach knew that Ortiz was not the perpetrator when he confessed could only be speculation by the jury.  The only evidence heard by the jury demonstrated that Detective Stambach happened to be on duty on the day of the confession, that he played no prior role in the investigation, and that he simply recorded a statement voluntarily given to him by Ortiz, who had come to the police station of his own volition.  Moreover, the evidence showed that Detective Stambach and the officers found Ortiz's confession to be

17

credible, and they submitted the confession to the District Attorney's Office for direction on how to proceed.  There was simply no evidence of bad faith, and Ortiz thus did not overcome the presumption of probable cause.[5]  Ortiz's malicious prosecution claim fails as a matter of law.

**D.     Detective Stambach is entitled to judgment as a matter of law on plaintiff's punitive damages claim**

In the alternative, to the extent that any of Ortiz's claims survive, Detective Stambach is entitled to judgment as a matter of law on Ortiz's claim for punitive damages. Punitive damages are meant to "punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n.9 (1986)). "Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  "To be entitled to an award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'" *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538 (1999) (internal quotation marks omitted)).

There was no evidence in the record that showed that Detective Stambach's decision to take Ortiz's confession was motivated by evil motive or intent.  Moreover, nothing

---

[5]     Notably, New York courts analyzing malicious prosecution claims with the same elements have overturned seven figure jury verdicts where the plaintiff did not overcome the presumption of probable cause based on the proof adduced at trial. *Jean-Mary v. City of New York*, 234 A.D.2d 515, 515 (2d Dep't 1996).

from the record could be used to infer that Detective Stambach had any reason to harbor a personal animus toward Ortiz.  In fact, the record showed that Detective Stambach had not met or known Ortiz prior to November 16, 2004.  (Dkt. No. 165) at p. 14.  Ortiz's arrest was motivated by his own confession, not any evil motive or intent by Detective Stambach. This bars an award of punitive damages.  *See*, e.g., *Rodriguez v. City of Rochester*, 12 F. Supp. 3d 598, 608 (W.D.N.Y. 2014) ("[T]he record is devoid of any evidence of an 'evil motive or intent' or 'callous indifference' that is indispensable to an award of punitive damages.") *aff'd in part*, 624 F. App'x 16 (2d Cir. 2015) (upholding district court's denial of punitive damages); *see also Dewar v. Felmon*, No. 16-cv-2287, 2020 WL 1312954, at *2 (N.D. Ill. Jan. 2, 2020) (holding that the plaintiff was not entitled to punitive damages because there was no evidence to show that the officers' goal was to arrest the plaintiff under any circumstances.  The arrest "was motivated by a neighbor's complaints and desire to press charges, rather than any malice or recklessness on the part of the police.").

Ortiz offered no evidence of egregious conduct on the part of Detective Stambach.  The only evidence regarding Detective Stambach's conduct is that he accurately recorded a voluntary confession and forwarded it to prosecutors who decided to go forward with the prosecution of Ortiz.  There is nothing shocking or offensive about this conduct.  At best, Detective Stambach was mistaken about whether Ortiz's confession was true, but that is not the type of intentional or reckless conduct that warrants punitive damages.  Moreover, there is no evidence of Detective Stambach exhibiting a callous indifference for Ortiz's rights.  Detective Stambach called in an interpreter to ensure that Ortiz's statement was being accurately recorded, and to ensure that Ortiz was read his *Miranda* rights in Spanish before he gave his official

19

statement.  The evidence actually shows that Detective Stambach was conscious of Ortiz's

constitutional rights and went out of his way ensure they were protected.

Accordingly, the Court should strike the jury's punitive damages award.

**POINT II.**     **IN THE ALTERNATIVE, THE COURT**
                 **SHOULD GRANT A NEW TRIAL ON ALL OF**
                 **PLAINTIFF'S CLAIMS**

To the extent Detective Stambach is not granted judgment as a matter of law on

each of Ortiz's claims, the Court should order a new trial pursuant to Fed. R. Civ. P. 59(a).  As a

general matter, a new trial may be granted when the jury's verdict is against the weight of the

evidence.  *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d. Cir. 2002).

In contrast to a Rule 50 motion, a court may weigh the evidence and the

credibility of witnesses and "need not view the evidence in the light most favorable to the verdict

winner" when considering a Rule 59 motion.  *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411,

418 (2d Cir. 2012).  The Court must, however, "exercise its ability to weigh credibility with

caution if resolution of an issue is dependent on the credibility of witnesses."  *Id.* (quoting

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

Again, there was no competing testimony or narratives offered by any of the

witnesses called by Ortiz.  There was absolutely no testimony of coercion, fabrication, or bad

faith by Detective Stambach.  In fact, all of the testimony supported a finding that Detective

Stambach did not coerce Ortiz, accurately transcribed his confession, and acted in good faith

during his limited involvement in the investigation of the Camacho murders.  The overwhelming

evidence weighs in Detective Stambach's favor.  Given that all of the testimony and evidence

introduced at trial supports a finding for Detective Stambach on the issues disputed by the parties, this case constitutes a rare instance where the jury's verdict cannot stand and a new trial is warranted.  Thus, if the Court is inclined to deny any portion of Detective Stambach's Rule 50 motion on Ortiz's substantive claims, the jury's verdict should still be set aside and a new trial should be granted.

**POINT III.   THE COURT SHOULD GRANT DETECTIVE STAMBACH'S MOTION FOR REMITTUR AND REDUCE THE JURY'S AWARD OF COMPENSATORY DAMAGES**

Pursuant to Fed. R. Civ. P. 59(e), the Court has authority to enter a conditional order of remittur, compelling Ortiz to choose between reduction of the excessive verdict and a new trial.  Remittur is appropriate in two circumstances: "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken; and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded.  *Newton v. City of New York*, 171 F. Supp. 3d 156, 171 (S.D.N.Y. 2016).

In this case, the jury's award is intrinsically excessive, particularly in light of the fact that there was no evidence of bad faith misconduct by Detective Stambach.  Moreover, Ortiz's testimony did not provide detailed information or accounts of his emotional distress and trauma in prison.  He provided no economic information.  Given the evidence that came out at trial, there is no basis for the jury's award of $5,000,000 of compensatory damages, which essentially amounts to $500,000 per year Ortiz spent incarcerated.

21

Although there have been cases holding that an award of $1,000,000 dollars per year spent in prison is a reasonable award in wrongful conviction cases, those cases contained detailed evidence of the plaintiff's emotional distress that are not present here.  In this case, the only evidence of emotional distress that Ortiz presented involved his pre-existing mental health problems.  Those cases turn on concrete evidence of a police officer's bad faith misconduct.  *Cf. Newton*, 171 F. Supp. 3d at 172; *see also Limone v. United States*, 579 F.3d 79, 106 (1st Cir. 2009) (noting that "the $1,000,000 per year baseline is extremely generous, and in cases involving non-economic damages we have counseled that special attention must be paid to the particular circumstances of each individual plaintiff").  The circumstances of this case simply do not call for the compensatory damages awarded by the jury, and the Court should therefore exercise its discretion and reduce the award.

At the very least, if the Court does not grant judgment as a matter of law to Detective Stambach on Ortiz's claim for punitive damages, then the Court should either strike the punitive damages award or lower it pursuant to its authority under Fed. R. Civ. P. 59(e).  In determining whether to strike or reduce a punitive damages award, the most important factor for the Court to consider is the "reprehensibility" of Detective Stambach's conduct.  *Stampf v. Long Island R. Co.*, 761 F.3d 192, 209 (2d Cir. 2014) (describing factors for Court to consider in determining whether to reduce punitive damages) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  Here, there was no evidence of reprehensible conduct by Detective Stambach. Taking a statement from a witness who voluntarily comes into the police station is not the type of reprehensible conduct that supports a $1,500,000 punitive damages award.  The jury's punitive damages verdict should either be stricken or significantly reduced by the Court.

22

**A-2945**

**CONCLUSION**

For the foregoing reasons, Detective Stambach should be granted judgment as a matter of law on each of Ortiz's three remaining claims.  In the alternative, judgment as a matter of law should be granted on Ortiz's claim for punitive damages.  Moreover, if judgment as a matter of law is not granted, the Court should grant a new trial.  At the very least, Detective Stambach is entitled to remittur of the jury's verdict.

Dated:      Buffalo, New York
            June 7, 2022

                              **HODGSON RUSS** LLP
                              *Attorneys for Defendant Mark Stambach*

                              By: /s/ Peter A. Sahasrabudhe
                                     Hugh M. Russ, III
                                     Peter A. Sahasrabudhe
                              The Guaranty Building
                              140 Pearl Street – Suite 100
                              Buffalo, New York  14202
                              Telephone:  (716) 856-4000

017635.00061 Business 22472605v5

A-2946

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                                        Plaintiff,

        v.                                                    1:16-cv-00321-EAW-MJR

MARK STAMBACH,

                                        Defendants.

## DECLARATION OF PETER A. SAHASRABUDHE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**PETER A. SAHASRABUDHE**, under the penalties of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1.      I am an attorney with Hodgson Russ LLP, attorneys for defendant Mark Stambach.  I make this declaration in opposition to Plaintiff's motion for attorneys' fees.

2.      As explained below, the invoices for legal services submitted by Plaintiff's attorneys are grossly inflated.  Plaintiff's attorneys seek compensation for excessive time on court conferences, routine clerical tasks, time spent opposing a motion to compel (without justification), repeated failures to comply with the Court's Pre-Trial order, and duplicative billing.  Many of the time entries are vague and inaccurate.   All of these factors call for the Court to reduce Plaintiff's requested fees by a significant across-the-board percentage.

3.      Plaintiff's attorneys also seek compensation for fees incurred in connection with other proceedings and miscellaneous legal matters, including social security, disability, and Medicare; proceedings in *Ortiz v. Case*, No. 1:16-cv-00322-EAW-HBS; proceedings in *Ortiz v. State of New York* in the New York Court of Claims; and proceedings

held in connection with the vacatur of Plaintiff's criminal conviction. There is no legal basis for Plaintiff to seek payment from Defendant Stambach for these proceedings. The Court should strike these fees in their entirety.

## PRELIMINARY OBJECTIONS

4.      First, Attorney Felle's billing ledge consists largely of block-billed *daily* entries, often lacking identification as to who performed the work, or any details regarding what the work was performed for.  This, alone, justifies a sharp across-the-board reduction, as it has made reviewing the reasonableness of many of these entries impossible.

5.      Second, Plaintiff's Bill of Costs is primarily made up of fees and costs for which he is not entitled to reimbursement.

| | | |
|---|---|---|
| Fees of the clerk………………………………………………………… | $ | 450.00 |
| Fees for service of summons and subpoena……………………………… | | 450.00 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case.. | | 4,331.15 |
| Fees and disbursements for printing…………………………………… | | 4,507.63 |
| Fees for witnesses…………………………………………………… | | 27,899.50 |
|     1. Ronald R. Reiber, Ph.D………………………... 3,500.00 | | |
|     2. Allison D. Redlich, Ph.D……………………… 6,777.00 | | |
|     3. Dr. Brian S. Joseph, M.D……………………… 9,300.00 | | |
|     4. Rachel A. Duchon……………………………… 8,322.50 | | |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case………………………………………… | | |
| Other costs (*please itemize*)…………………………………………… | | |
| TOTAL | $ | 37,638.28 |

6.      As seen above, the Bill of Costs includes $27,899.50 in "Fees for witnesses."  Absent special circumstances not present here, expert witnesses in § 1983 cases are

not usually reimbursable under § 1988.  Moreover, this Court precluded all four experts from

testifying.  Notably, counsel for Plaintiff represented to the Court at one point that he had not

paid Dr. Brian S. Joseph, something clearly contradicted by his submission at this time.

Defendants respectfully request that the fees for witnesses be struck.

       7.      The Bill of Costs also includes $450.00 in "fees of the clerk" and $450.00

in "Fees for service of summons and subpoena," $4,331.15 for transcripts, and $4,507.63 for

printing, totaling $9,738.78:

| Bill | Page | Amount |
|------|------|--------|
| Fee to New York Court of Claims | 5 | $50.00 |
| Service Fees in *Ortiz v. Case* & Erie County | 8<br>10 | $100<br>$100 |
| Service Fees for *Ortiz v. State of New York* | 7 | $100.00 |
| Transcript for *Ortiz v. State of New York* | 13<br>14<br>15<br>16 | $325.50<br>$1492.50<br>$641.25<br>$883.50 |
| Transcript of 440 hearing and motion | 17 | $755.00 |
| Printing bill from Batavia for appeal in *Ortiz v. State of New York* | 18<br>19 | $3138.31<br>$202.61 |
| **Total** | | **$7788.67** |

       8.      The evidence attached to the bill of costs indicates that **$7,788.67** of the

charges were specifically incurred for other, unsuccessful proceedings — primarily in the New

York Court of Claims. In fact, the supporting evidence attached to the bill of costs shows that

only $400 (page 4) in court fees, $100 in service fees (page 9), $133.41 in transcript fees (pages

11 and 13), and $1166.71 in printing fees (pages 20-23) appear to be fairly attributable to this

action, for a total of **$1,800.12.**  There is no evidentiary basis included for the remaining $150.

       9.      Thus, the Bill of Costs should be reduced to $1,800.12.

## BILLING ENTRIES FOR OTHER PROCEEDINGS

10.    Plaintiff's billing records demonstrate that Plaintiff's counsel is currently attempting to collect fees for all matters on which he represented Plaintiff, not just those in *Ortiz v. Wagstaff*, No. 1:16-cv-00321-EAW-MJR.  His time entries include: miscellaneous legal matters, including social security, disability, and Medicare; his Section 440 proceedings; and various parallel litigations in state and federal court.  This is exacerbated by the fact that many of his other entries are so vague that it is impossible to tell whether they were for this case or for one of the other proceedings.

11.    The most obviously unrelated entries are those for issues entirely unrelated to Plaintiff's conviction.  This includes time billed securing social security benefits, state disability benefits, Medicare benefits, addressing a "lien" and "loan," and helping Plaintiff with "housing" and "employment," and Plaintiff's conviction for being a felon in possession of a firearm (*U.S.A. v. Ortiz*, 16-cr-00077-LJV).  None of these matters are related to this case in any fashion.

12.    Plaintiff also wants Defendant Stambach to pay his attorneys' fees for the initial Section 440 proceeding to vacate his conviction; his State court proceeding for an expungement; proceedings in *Ortiz v. Case*, No. 1:16-cv-00322-EAW-HBS; and proceedings in *Ortiz v. State of New York* in the New York Court of Claims. None of these proceedings involve Detective Stambach, and all of the related billing entries should be struck.

13.    These entries total 438.7 hours, or $162,334.00, and should be struck.

### *Table 1: Entries relating to other proceedings*

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 4/11/2014 | Obtained Dept of Corrections, Inmate info (EAB), reviewed (WCF) | 0.4 | $170.00 | 0.40 | | | |
| 4/12/2014 | Reqd Attica Prison records (EAB), t/c Schwartz (EAB) | 0.6 | $195.00 | | 0.6 | | |
| 4/30/2014 | Review 440 motion papers, rev crim case, read J. Franczak decision (EAB 4.5)(WCF 6) | 10.5 | $4,012.50 | 6.00 | 4.5 | | |
| 7/21/2014 | meeting w/ crim records clerk, rev and req copies from file (EAB 3.4)(BEC .3) | 3.7 | $1,142.50 | | 3.4 | 0.3 | |
| 9/4/2014 | Client meeting, intake discussion, retention | 2.5 | $1,062.50 | 2.50 | | | |
| 9/5/2014 | draft/ send letter to Schwartz, on-line research (WCF 3) (EAB 0.5) | 3.5 | $1,437.50 | 3.00 | 0.5 | | |
| 9/8/2014 | Research crim case, Ltr to client (EAB 1.6) | 1.6 | $520.00 | | 1.6 | | |
| 9/16/2014 | Meeting with Schwartz, review 440 Motion, evidence | 4.5 | $1,912.50 | 4.50 | | | |
| 9/22/2014 | Rcvd ltr from client (.3) | 0.3 | $127.50 | 0.30 | | | |
| 9/24/2014 | Ltr to client (EAB 1.6) | 1.6 | $520.00 | | 1.6 | | |
| 10/15/2014 | Rcvd ltr from client (.3) | 0.3 | $127.50 | 0.30 | | | |
| 10/16/2014 | email former BPD det Delano (EAB) | 0.5 | $162.50 | | 0.5 | | |
| 10/24/2014 | Meeting with Velasquez (cousin), history of arrest, client | 2.2 | $935.00 | 2.20 | | | |
| 10/28/2014 | Rcvd ltr from client, t/c w/ Scwartz (.5) | 0.5 | $212.50 | 0.50 | | | |
| 10/31/2014 | Ltr to client, t/c w/ sister, emails (EAB 1.2) | 1.2 | $390.00 | | 1.2 | | |
| 11/10/2014 | Ltr from client | 0.3 | $127.50 | 0.30 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/1/2014 | Rcvd ltr from client (.3) | 0.3 | $127.50 | 0.30 | | | |
| 12/8/2014 | Attend Court 440 motion, rcvd ltr from ECDA | 2.5 | $1,062.50 | 2.50 | | | |
| 12/9/2014 | Draft auths, t/c w/ crim def attys (EAB 1.2) | 1.2 | $390.00 | | 1.2 | | |
| 12/9/2014 | Client release, meeting, rcvd Order J. Franczak (EAB 6.2) (WCF 4.5) | 10.7 | $3,927.50 | 4.50 | 6.2 | | |
| 12/10/2014 | rev file, Ltr to client, scheduling meeting (EAB 1.4) | 1.4 | $455.00 | | 1.4 | | |
| 12/11/2014 | emails w/ EC Dept of mental health (EAB .5) (WCF.3) | 3.5 | $1,437.50 | 3.00 | 0.5 | | |
| 12/12/2014 | Contacted Court reporter, reqd transcript from 440 Motion/ hearing; t/c Scwartz | 0.7 | $297.50 | 0.70 | | | |
| 12/16/2014 | Meeting w/ client, calls to assist w/ housing, employment | 2.5 | $1,062.50 | 2.50 | | | |
| 1/15/2015 | Email to S. Coehn, schedule DeJac case rev (WCF .3) | 0.3 | $127.50 | 0.30 | | | |
| 1/17/2015 | Meeting; review file | 1 | $425.00 | 1.00 | | | |
| 1/23/2015 | Client Meeting, Rcvd app from PSS re. loan (WCF 1.2) (BEC .6) | 1.8 | $585.00 | 1.20 | | 0.6 | |
| 1/27/2015 | Draft Motion to expunge, ECC | 4.5 | $1,912.50 | 4.50 | | | |
| 2/2/2015 | Rcvd letter from J. Pigott, t/c w/ Judge (.5) | 0.5 | $212.50 | 0.50 | | | |
| 2/9/2015 | Motion to expunge, J. Franczak; t/c D'Augistino | 2 | $850.00 | 2.00 | | | |
| 2/10/2015 | Call to Det Evans, S Cohen, investigation of claim | 1.8 | $765.00 | 1.80 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 2/11/2015 | Research claim; copies from cases investigation; Phone call to attorneys, Trott & Nuchereno; Conference call with USAG Tripi phone call with client, rcvd ltr from NYS disdabilty; ltr to economics expert (WCF 13.6) (BEC .8) | 14 | $5,710.00 | 13.20 | | 0.8 | |
| 2/14/2015 | Meeting with Cohen, review DeJac case materials | 3.5 | $1,487.50 | 3.50 | | | |
| 2/26/2015 | Received Dr. Reiber's report; drafted revisions to claim | 3 | $1,275.00 | 3.00 | | | |
| 3/5/2015 | Phone call with Client; moved to City Mission | 0.5 | $212.50 | 0.50 | | | |
| 3/12/2015 | Phone call from Social Security office; Talked to client | 0.5 | $212.50 | 0.50 | | | |
| 3/31/2015 | Ltr to client, re SSD appts (WCF .5) (BEC .8) | 1.3 | $312.50 | 0.50 | | 0.8 | |
| 5/13/2015 | Revisions to Claim for Wrongful Incarceration in State Court, Research; Recvd app from PSS; meeting w/client | 3.8 | $1,195.00 | 2.40 | | 1.4 | |
| 5/20/2015 | Recd call from SSD office; rev file, draft State Claim (WCF 6) | 6 | $2,550.00 | 6.00 | | | |
| 6/16/2015 | Sent Proposed Order to Judge Francyzk for access to sealed file | 0.5 | $212.50 | 0.50 | | | |
| 6/25/2015 | Meeting with Judge Francyzk and Milling, advised to bring motion to unseal; draft motion | 6.5 | $2,762.50 | 6.50 | | | |
| 6/29/2015 | draft motion, rev file, research (WCF 6.6) (BEC 1.2) | 7.8 | $2,955.00 | 6.60 | | 1.2 | |
| 6/30/2015 | prep Motion, notice, research (WCF 7.2) | 9.3 | $3,322.50 | 7.20 | | 2.1 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| | (BEC 2.1) | | | | | | |
| 7/2/2015 | served motion to unseal records J. Franczak (WCF 6) (BEC 1.4) | 7.4 | $2,725.00 | 6.00 | | 1.4 | |
| 7/8/2015 | Phone call with Client | 0.2 | $85.00 | 0.20 | | | |
| 7/10/2015 | Rcvd ltr from ECDA re. records disclosure (WCF 1.4) (BEC .5) | 1.9 | $657.50 | 1.40 | | 0.5 | |
| 7/14/2015 | Emails w/ Erie co judge, ECDA re. disclosure of docs; Recvd app w/ letter from PSS re: lien | 1.5 | $457.50 | 0.90 | | 0.6 | |
| 7/15/2015 | Rcvd, filed, served J. Franczak Order (WCF 2.8)(BEC .5) | 3.3 | $1,252.50 | 2.80 | | 0.5 | |
| 11/4/2015 | Letter to Dr. Joseph- request exam of client | 0.5 | $212.50 | 0.50 | | | |
| 11/27/2015 | Reqd records from ECCo, Lakeshore (WCF .3)(BEC .5) | 0.8 | $190.00 | 0.30 | | 0.5 | |
| 12/1/2015 | Rcvd response to med req, tic w/ Lakeshore, rev file (BEC .6) | 0.6 | $75.00 | | | 0.6 | |
| 12/4/2015 | Rcvd letter from Medicaid re. lien (WCF .2)(BEC.3) | 0.5 | $122.50 | 0.20 | | 0.3 | |
| 12/8/2015 | Letter to Medicare regarding recovery | 0.5 | $212.50 | 0.50 | | | |
| 1/13/2016 | Meeting with attorney to consult about case | 1.5 | $637.50 | 1.50 | | | |
| 1/14/2016 | Email to attorney – reviewed case | 0.5 | $212.50 | 0.50 | | | |
| 1/21/2016 | Telephone conference with attorney, Rcvd ltr from PSS re. lien (WCF .8)(BEC .4) | 1.2 | $390.00 | 0.80 | | 0.4 | |
| 2/5/2016 | Attended Court- Federal legal proceedings, reqd NFMMC records | 5.9 | $2,117.50 | 4.60 | | 1.3 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| | (WFC 4.6)(BEC 1.3) | | | | | | |
| 2/8/2016 | Emails w/ atty re. post crim charges | 0.8 | $340.00 | 0.80 | | | |
| 3/1/2016 | Email with attorney; regarding plea | 0.5 | $212.50 | 0.50 | | | |
| 3/17/2016 | email/ register w/ Fed Ct (WCF .4)(BEC .6) | 1 | $245.00 | 0.40 | | 0.6 | |
| 4/15/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 5/4/2016 | Ltr to ECDSS, t/c w/ client (WCF.5)(BEC.3) | 0.8 | $250.00 | 0.50 | | 0.3 | |
| 5/27/2016 | Rcvd ltr from atty, t/c w/ atty | 0.5 | $212.50 | 0.50 | | | |
| 6/8/2016 | emails w/ PR atty, re. level of offense in PR | 0.6 | $255.00 | 0.60 | | | |
| 6/14/2016 | Sent ltr w/ pmt for PR atty, to investigate conviction (WCF .6)(BEC.6) | 1.2 | $330.00 | 0.60 | | 0.6 | |
| 6/22/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 6/28/2016 | Rcvd ltr from PR atty, re. prior crimes in PR, w/ cert copies of conviction, t/c and email w/ atty, rev file (WCF 2.2)(BEC.4) | 2.6 | $985.00 | 2.20 | | 0.4 | |
| 6/30/2016 | Rcvd ltr from atty re. plea deal, rev file, t/c w/ client and atty | 1.5 | $637.50 | 1.50 | | | |
| 7/7/2016 | rev file, t/c with client; requested updated medical records; sent auths to defense counsel, supp discovery (WCF 2.6)(BEC 1.2) | 3.8 | $1,255.00 | 2.60 | | 1.2 | |
| 7/19/2016 | Rcvd ltr from atty, draft letter reply, rev file (WCF 1.2)(BEC.4) | 1.6 | $560.00 | 1.20 | | 0.4 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 8/16/2016 | Rcvd ltr w/ med records (WCF .5)(BEC .2) | 0.7 | $237.50 | 0.50 | | 0.2 | |
| 9/2/2016 | Rcvd Lakeshore med records, ltr from State atty, rev | 2.2 | $935.00 | 2.20 | | | |
| 10/12/2016 | Phone call to counsel – schedule depositions, rcvd ltr from county atty, emails medication (WCF 1.2)(BEC 1) | 2.2 | $635.00 | 1.20 | | 1 | |
| 10/27/2016 | Sent request for transcript, rcvd ltr from county atty adj motion return date (WCF .5)(BEC .8) | 1.3 | $312.50 | 0.50 | | 0.8 | |
| 11/3/2016 | Rcvd ltr from state atty w/ aff :in support, aff reply from city atty, aff in opp from county atty (WCF 6.3)(BEC.8) | 7.1 | $2,777.50 | 6.30 | | 0.8 | |
| 11/8/2016 | Drafted Reply Affirmation, research (WCF 5.6)(BEC .6) | 6.2 | $2,455.00 | 5.60 | | 0.6 | |
| 11/9/2016 | Sent Reply Affirmation to Judge and attorneys (WCF 3.2)(BEC 1.2) | 4.4 | $1,510.00 | 3.20 | | 1.2 | |
| 11/10/2016 | Court- Motion hearing in front of Judge Francyzk | 2 | $850.00 | 2.00 | | | |
| 11/11/2016 | Drafted and sent stipulated order to attorneys for signature; also provided defense attorneys a copy of criminal files (WCF 2.6)(BEC 3.3) | 5.9 | $1,517.50 | 2.60 | | 3.3 | |
| 11/16/2016 | rcvd ltr from atty Humann re. post arrest, t/c w/ atty (WCF .6)(BEC .3) | 0.9 | $292.50 | 0.60 | | 0.3 | |
| 11/22/2016 | emails w/ attys re. disclosure, rev file (WCF l .5)(BEC .6) | 2.1 | $712.50 | 1.50 | | 0.6 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/2/2016 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 12/9/2016 | Sent letter to defense counsel- outstanding discovery, ltr to J Franczak re. stip Order, email to Niag Co. clerk req transcript (WCF 1.5)(BEC .8) | 2.3 | $737.50 | 1.50 | | 0.8 | |
| 12/14/2016 | Rcvd ltr from city atty, dispute about stip Order (WCF .5)(BEC.2) | 0.7 | $237.50 | 0.50 | | 0.2 | |
| 12/19/2016 | Rcvd ltr from county atty, obj to prop Order (WCF.8)(BEC.4) | 1.2 | $390.00 | 0.80 | | 0.4 | |
| 12/23/2016 | Ltr sent to city, county attys w/ prop Order (WCF l .2)(BEC.5) | 1.7 | $572.50 | 1.20 | | 0.5 | |
| 1/3/2017 | Ltr to State Court judge, Order granted by J. Franczak for files, entered, served (BEC2.3)(WCF4.4) | 6.7 | $2,157.50 | 4.40 | | 2.3 | |
| 1/18/2017 | ltr from city atty, re. discovery, unsealing files (BEC .3)(WCF 1) | 1.3 | $462.50 | 1.00 | | 0.3 | |
| 1/31/2017 | Rcvd stip from city atty, mailed stip Order to Judge (BEC.5)(WCF.4) | 0.9 | $232.50 | 0.40 | | 0.5 | |
| 2/9/2017 | Fed Court Conference, ltr to attys w/ Franczak Order (WCF 4.2)(BEC 6) | 4.8 | $1,860.00 | 4.20 | | 0.6 | |
| 3/16/2017 | State Court Conference; rcvd ltr from Court | 3.5 | $1,487.50 | 3.50 | | | |
| 7/20/2017 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 9/11/2017 | Sent attorney forensic report | 0.5 | $212.50 | 0.50 | | | |

A-2957

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 2/7/2018 | Meeting with client, Rcvd ltr from PSS re. lien (WCF 1.2)(BEC .6) | 1.8 | $585.00 | 1.20 | | 0.6 | |
| 2/22/2018 | Drafted and sent requests for medical records | 1 | $425.00 | 1.00 | | | |
| 3/7/2018 | Court conference | 3.5 | $1,487.50 | 3.50 | | | |
| 4/4/2018 | State court conf | 2.8 | $1,190.00 | 2.80 | | | |
| 4/13/2018 | Filed AC fed ct, rev file, emails (WCF l .3)(BEC .5) | 1.8 | $615.00 | 1.30 | | 0.5 | |
| 8/16/2018 | Drafted and sent subpoenas to Judge for signature; rev file, scheduled depositions (WCF 3.7)(BEC 2.4) | 6.1 | $2,592.50 | 6.10 | | | |
| 8/20/2018 | Rcvd signed judicial subpoenas, rev file | 0.8 | $340.00 | 0.80 | | | |
| 8/27/2018 | Ltr to city atty, scheduling EBT's w/ judicial subpoenas, rev file (WCF 4.3)(BEC 1.4) | 5.7 | $2,002.50 | 4.30 | | 1.4 | |
| 8/31/2018 | Rcvd letter from city attorney w/ motion to quash subpoenas, rev file, draft reply (WCF 4.3)(BEC 1.3) | 5.6 | $1,990.00 | 4.30 | | 1.3 | |
| 9/4/2018 | prep reply, rev file (WCF 3)(BEC 1.4) | 4.4 | $1,450.00 | 3.00 | | 1.4 | |
| 9/5/2018 | prep x-motion/ reply, research, rev file (WCF 5.8) | 5.8 | $2,465.00 | 5.80 | | | |
| 9/6/2018 | Filed x-motion in support of subpoenas, tlc w/ city and State atys (WCF l .2)(BEC 1.6) | 2.8 | $710.00 | 1.20 | | 1.6 | |
| 9/7/2018 | Rcvd reply aff from city atty, rev file, rcvd ltr from State ct scheduling motion (WCF l .3)(BEC .3) | 1.6 | $590.00 | 1.30 | | 0.3 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 9/25/2018 | Phone call with attorney, witness, prepare for EBT's (WCF 2.8) | 2.8 | $1,190.00 | 2.80 | | | |
| 9/30/2018 | Rev medical records, prep exhibits, rev file in prep for EBT (WCF) | 3.2 | $1,360.00 | 3.20 | | | |
| 10/1/2018 | Prepared for and conducted Depositions (WCF 6.5) | 6.5 | $2,762.50 | 6.50 | | | |
| 10/2/2018 | Sent defense counsel depositions exhibits | 0.5 | $212.50 | 0.50 | | | |
| 10/9/2018 | Phone call with doctor; sent records w/ subpoena to review | 1 | $425.00 | 1.00 | | | |
| 12/13/2018 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3); ltr t State attorney scheduling detective EBT's (BE .4)(WCF.6); ltr to Dr. Liebergall re. EBT date (BEC .2)(WCF.2) | 2 | $490.00 | 0.80 | | 1.2 | |
| 10/15/2018 | Court Conference; Drafted and sent letter to co-counsel | 3 | $1,275.00 | 3.00 | | | |
| 10/24/2018 | Revised stipulation per attorneys requests; resent; phone call with Doctor | 1.5 | $637.50 | 1.50 | | | |
| 10/26/2018 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 11/3/2018 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | $75.00 | | | 0.6 | |
| 11/5/2018 | Drafted and sent letter to defense counsel- depositions | 0.5 | $212.50 | 0.50 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/13/2018 | Prepared documents and sent to doctor to review | 1 | $425.00 | 1.00 | | | |
| 12/14/2018 | Drafted and sent letter to defense attorneys- outlining deposition schedule; Sent file to Doctor/Experts (WCF 3.4)(BEC 1.2) | 4.6 | $1,595.00 | 3.40 | | 1.2 | |
| 1/3/2019 | Phone call with doctor; rescheduled- sent letter to client | 0.3 | $127.50 | 0.30 | | | |
| 1/4/2019 | Phone call with Judge Brunetti- discussed case | 0.5 | $212.50 | 0.50 | | | |
| 1/7/2019 | Sent documents to Judge Brunetti for review (WCF .8)(BEC .6) | 1.4 | $415.00 | 0.80 | | 0.6 | |
| 1/9/2019 | Ltr to Best Self reqd med records, rev file (WCF l .6)(BEC 1.2) | 2.8 | $830.00 | 1.60 | | 1.2 | |
| 1/25/2019 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | $75.00 | | | 0.6 | |
| 2/8/2019 | Sent all medical/treatment records to Dr. Joseph | 0.5 | $212.50 | 0.50 | | | |
| 2/11/2019 | Rescheduled defendants deposition | 0.3 | $127.50 | 0.30 | | | |
| 2/12/2019 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3) | 0.6 | $75.00 | | | 0.6 | |
| 3/12/2019 | Phone call with client; phone call to doctor | 0.5 | $62.50 | | | 0.5 | |
| 3/19/2019 | Phone call with Dr. Joseph | 0.5 | $212.50 | 0.50 | | | |
| 6/5/2019 | Court Conference | 2 | $850.00 | 2.00 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 6/10/2019 | Drafted and sent letter to defense attorney- regarding Dr. Josephs records | 0.5 | $212.50 | 0.50 | | | |
| 8/5/2019 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 8/12/2019 | Email to expert- provided transcripts, documentation for review | 0.5 | $212.50 | 0.50 | | | |
| 8/15/2019 | email w/ EBT transcripts to expert (WCF 1.5)(BEC 2.2) | 3.7 | $912.50 | 1.50 | | 2.2 | |
| 10/15/2019 | Phone call with co-counsel; drafted and sent email to expert-provided transcripts | 1 | $425.00 | 1.00 | | | |
| 12/3/2019 | Phone call to attorney, app for PSS (WCF .6)(BEC .5) | 1.1 | $305.00 | 0.60 | | 0.4 | |
| 12/5/2019 | Rcvd ltr from PSS re. lien (WCF .2)(BEC .4) | 0.6 | $135.00 | 0.20 | | 0.4 | |
| 12/27/2019 | Sent reports, EBT transcripts, invest summary (WCF 2)(BEC1.4) | 3.4 | $1,025.00 | 2.00 | | 1.4 | |
| 1/11/2020 | Email exchange w/ expert (WCF) | 0.6 | $255.00 | 0.60 | | | |
| 1/13/2020 | Conference with expert | 1 | $425.00 | 1.00 | | | |
| 5/27/2020 | Rev file, prep for court conf | 1.2 | $510.00 | 1.20 | | | |
| 6/1/2020 | Court Conference, scheduled trial | 4.2 | $1,785.00 | 4.20 | | | |
| 6/18/2020 | Court Conference; requested court transcripts; Conference call with attorney regarding appeal | 3.6 | $1,530.00 | 3.60 | | | |
| 7/15/2020 | Recvd Supp motion for SJ, rev file | 3.2 | $1,360.00 | 3.20 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 7/16/2020 | Court Conference, rev filre, draft reply to supp motion | 4.5 | $1,912.50 | 4.50 | | | |
| 7/17/2020 | Rev file, research, prep resp to supp motion (WCF 6)(BEC 1.4) | 7.4 | $2,725.00 | 6.00 | | 1.4 | |
| 7/20/2020 | Prepare reply to motion, research (WCF 4.2)(BEC .6) | 4.8 | $1,860.00 | 4.20 | | 0.6 | |
| 7/21/2020 | draft reply to motion, rev file, tic J. Franczak (WCF 7.5)(BEC 2.5) | 10.9 | $3,801.50 | 7.50 | | 2.5 | 0.9 |
| 7/22/2020 | Drafted Reply Affirmation | 4.5 | $1,912.50 | 4.50 | | | |
| 7/23/2020 | t/c J. Franczak, rev reply, research (WCF 6.2)(BEC .4) | 6.6 | $2,685.00 | 6.20 | | 0.4 | |
| 7/28/2020 | rcvd ltr from Court, scheduling Motion return (.6 WCF)(.2 BEC) | 2.3 | $280.00 | 0.60 | | 0.2 | |
| 7/30/2020 | Draft reply, rev file (6 WCF)(3.6) | 9.6 | $3,000.00 | 6.00 | | 3.6 | |
| 7/31/2020 | Filed Reply Affirmation; mailed copy to Clerk, Judge and attorneys | 1.5 | $637.50 | 1.50 | | | |
| 8/4/2020 | Sent request for records/ledgers from treating doctors | 0.5 | $212.50 | 0.50 | | | |
| 8/6/2020 | Sent medical requests for updated records to doctors, rcvd ltr from Medicaid re. lien (WCF l.2)(BEC 1.4) | 2.6 | $685.00 | 1.20 | | 1.4 | |
| 8/24/2020 | Conference with Judge; trial adjoumed, rev file | 6.8 | $2,890.00 | 6.80 | | | |
| 8/25/2020 | rcvd letter from court, scheduling trial (WCF .4)(BEC.3) | 0.7 | $207.50 | 0.40 | | 0.3 | |
| 8/26/2020 | Rcvd med records, rev | 1.8 | $765.00 | 1.80 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 9/3/2020 | Drafted and mailed request for ledgers to pharmacy | 0.5 | $212.50 | 0.50 | | | |
| 10/5/2020 | Drafted authorization and request, rcvd pharmacy records (WCF .6)(BEC .6) | 1.3 | $330.00 | 0.60 | | 0.6 | |
| 11/12/202 | Phone call with attorney- req extension; waiting on decision; review file; draft ext. letter | 0.9 | $337.50 | 0.40 | | | 0.5 |
| 11/13/2020 | File and serve extension application | 0.4 | $134.00 | | | | 0.4 |
| 1/17/2021 | Prep settlement demand. Research (WCF 6.5)(BEC 1.2) | 7.8 | $2,946.00 | 6.50 | | 1.2 | 0.1 |
| 2/2/2021 | Phone call with counsels office re: status of lawsuit | 0.4 | $92.00 | | | 0.2 | 0.2 |
| 2/3/2021 | Court Conference; phone call with attorney; emailed settlement demand; email with counsel re: second extension | 2.3 | $968.50 | 2.20 | | | 0.1 |
| 4/4/2022 | draft, serve subpeonas, cover letters (WCF 1.4)(BEC 3.5) | 4.9 | $1,099.50 | 1.40 | | 3.5 | 0.2 |
| 8/4/2021 | Reqd med records, rev file WCF (3)(BEC 1.2) | 4.2 | $1,425.00 | 3.00 | | 1.2 | |
| 8/6/2021 | Reqd updated meds, scheduled appt w/ dr (BEC 1.1)(WCF.3) | 1.4 | $265.00 | 0.30 | | 1.1 | |
| 9/1/2021 | City filed Offer of Proof, rev file, TIC w/ AP, Menard | 1.8 | $765.00 | 1.80 | | | |
| 3/23/2022 | emails w/ economic expert, rcvd report (WCF .8) | 0.8 | $340.00 | 0.80 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) | EJM Hours (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 5/9/2022 | trial, prep, recvd charging lien of AP. Filed | 13 | $5,525.00 | 13 00 | | | |
| **TOTAL:** | | 438.7 | $162,334.00 | | | | |

14.     The billing entries also include a number of entries that refer to Plaintiff's proceedings before the New York Court of Claims and the 4th Department. These proceedings were largely unsuccessful, and neither part of nor necessary to this action. They total 465.9 hours, or $166,695.00, all of which should be struck.

### *Table 2: Proceedings in Ortiz v. State of New York*

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | EJM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 4/23/2015 | Coordinate press conference, client meeting, | 2.2 | $935.00 | 2.20 | | | |
| 4/27/2015 | Research, Preperation of Claim | 5.1 | $2,167.50 | 5.10 | | | |
| 4/28/2015 | Draft Claim, Research | 6.2 | $2,635.00 | 6.20 | | | |
| 5/13/2015 | Revisions to Claim for Wrongful Incarceration in State Court, Research; Recvd app from PSS; meeting w/client | 3.8 | $1,195.00 | 2.40 | | 1.4 | |
| 5/20/2015 | Recd call from SSD office; rev file, draft State Claim (WCF 6) | 6 | $2,550.00 | 6.00 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 5/28/2015 | Phone call with Client, draft State claim (WCF 4.2) (BEC .4) | 4.6 | $1,835.00 | 4.20 | | 0.4 | |
| 6/9/2015 | Ltr to Ct of Claims w/ filing fee and Claim (WCF 1) (BEC .5) | 1.5 | $487.50 | 1.00 | | 0.5 | |
| 6/10/2015 | Rcvd email response from former Det Delaney (EAB), t/c w/ Delaney, rev policies/ procedures BPD (EAB) | 0.8 | $260.00 | | 0.8 | | |
| 6/11/2015 | Sent Verified Claim to Attorney General and Court of Claims | 0.5 | $212.50 | 0.50 | | | |
| 6/15/2015 | Claim filed NY Court of Claims, service; Recvd email receipt; rev. file | 3.9 | $1,657.50 | 3.90 | | | |
| 6/27/2015 | Rcvd ltr from Ct of Claims (WCF .3) (BEC .2) | 0.5 | $152.50 | 0.30 | | 0.2 | |
| 7/25/2015 | Received Answer/discovery demands from Attorney General; reviewed discovery documents | 2.5 | $1,062.50 | 2.50 | | | |
| 4/6/2016 | Resp to State D/I, omnibus demands, discover, VBOP, 1st Int (WCF 6)(BEC 2.5) | 8.5 | $2,862.50 | 6.00 | | 2.5 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $125/hr.) | BEC (Rate $125/hr.) | FLM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 4/7/2016 | Draft of discovery documents (WCF 5)(BEC 1.5) | 6.5 | $2,312.50 | 5.00 | | 1.5 | |
| 4/8/2016 | Client Meeting, signed VBOP, auths (WCF I .5)(BEC.5) | 2 | $700.00 | 1.50 | | 0.5 | |
| 4/11/2016 | Ltr w/ VBOP, resp and demands (WCF (1.5)(BEC 2) | 3.5 | $887.50 | 1.50 | | 2 | |
| 5/6/2016 | Rcvd ltr from State Ct judge, scheduling conference (WCF .3) | 0.3 | $127.50 | 0.30 | | | |
| 7/6/2016 | State court conference, rcvd ltr from Judge Hudson (WCF 3.4) | 3.4 | $1,445.00 | 3.40 | | | |
| 7/7/2016 | rev file, t/c with client; requested updated medical records; sent auths to defense counsel, supp discovery (WCF 2.6)(BEC 1.2) | 3.8 | $1,255.00 | 2.60 | | 1.2 | |
| 8/16/2016 | Rcvd ltr w/ med records (WCF .S)(BEC .2) | 0.7 | $237.50 | 0.50 | | 0.2 | |
| 9/2/2016 | Rcvd Lakeshore med records, ltr from State atty, rev | 2.2 | $935.00 | 2.20 | | | |
| 10/5/2016 | State court conference, rcvd ltr from Judge Hudson (WCF 3.2) | 3.2 | $1,360.00 | 3.20 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 10/12/2016 | Phone call to counsel – schedule depositions, rcvd ltr from county atty, emails medication (WCF 1.2)(BEC 1) | 2.2 | $635.00 | 1.20 | | 1 | |
| 10/18/2016 | E-filed Stipulation of Mediator; mailed copy to attorneys; Notice of Motion to obtain ECADO and BPD files (WCF 6.5)(BEC 2.2) | 8.7 | $3,037.50 | 6.50 | | 2.2 | |
| 10/20/2016 | Phone call to counsel to discuss motions | 0.5 | $212.50 | 0.50 | | | |
| 10/21/2016 | Rcvd ltr from mediator, scheduling, draft aff :in support of release of Fed Ct file (WCF 2.4)(BEC.8) | 3.2 | $1,120.00 | 2.40 | | 0.8 | |
| 10/25/2016 | Phone call with defense counsel | 0.5 | $212.50 | 0.50 | | | |
| 10/26/2016 | Phone call with attorney | 0.5 | $212.50 | 0.50 | | | |
| 11/1/2016 | Drafted discovery; Rule 26 and Interrogatories, Ltr to State atty, reqd discovery responses, ebt dates (WCF 3.S)(BEC 1.5) | 5 | $1,675.00 | 3.50 | | 1.5 | |

A-2967

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | BAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/29/2016 | Rcvd ltr from State AG w/ discovery responses, rev file (WCF 2.2) | 2.2 | $935.00 | 2.20 | | | |
| 3/16/2017 | State Court Conference; rcvd ltr from Court | 3.5 | $1,487.50 | 3.50 | | | |
| 6/7/2017 | State court conference, rcvd ltr from Judge Hudson (WCF 3.2) | 3.2 | $1,360.00 | 3.20 | | | |
| 8/15/2017 | Rcvd ltr from State attorney adjourning conference (WCF .4) | 0.4 | $170.00 | 0.40 | | | |
| 9/6/2017 | Court conference | 2.5 | $1,062.50 | 2.50 | | | |
| 2/5/2018 | Meeting with client (WCF 1); sent requested authorizations to defense attorney; prep auths (BEC 1), sent auths to County atty (.4)(WCF.2) | 2.6 | $685.00 | 1.20 | | 1.4 | |
| 2/22/2018 | Drafted and sent requests for medical records | 1 | $425.00 | 1.00 | | | |
| 3/7/2018 | Court conference | 3.5 | $1,487.50 | 3.50 | | | |
| 3/20/2018 | Rcvd letter from State atty, reqd disclosure, auths | 0.5 | $212.50 | 0.50 | | | |
| 3/27/2018 | Ltr to Def Attorney, with auths (BBC .5)(WCF .2) | 0.7 | $147.50 | 0.20 | | 0.5 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FJM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 4/3/2018 | rev file, meet w/ client, drafted and sent authorizations to defense counsel (BEC 1) (WCF .4) | 1.4 | $295.00 | 0.40 | | 1 | |
| 4/4/2018 | State court conf | 2.8 | $1,190.00 | 2.80 | | | |
| 4/23/2018 | Rcvd ltr from Def atty, with auths (BEC .3)(WCF .2) | 1.1 | $122.50 | 0.20 | | 0.3 | |
| 6/7/2018 | Rcvd ltr from J. Hudson, re. conference & trial dates (WCF .3) | 0.3 | $127.50 | 0.30 | | | |
| 8/1/2018 | State Ct conf, sched bifurcated trial | 3.8 | $1,615.00 | 3.80 | | | |
| 8/4/2018 | meeting with AP, prep | 2.5 | $1,062.50 | 2.50 | | | |
| 9/10/2018 | Rcvd letter from J. Hudson re. stipulation/ motions (WCF 1.3)(BEC .2) | 1.5 | $577.50 | 1.30 | | 0.2 | |
| 10/24/2018 | draft, fax prop stip Order to counsel, recvd revisions from State AG (WCF 2.4)(BEC .8) | 3.2 | $1,120.00 | 2.40 | | 0.8 | |
| 11/7/2018 | Rcvd ltr from St Court w/ stip Order re. disclosure (WCF .4)(BEC.2) | 0.6 | $195.00 | 0.40 | | 0.2 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | FAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/13/2018 | Scheduled appt w/ Dr. Joseph (BEC.3), letter to client, re. doctor appt (BEC .3); ltr t State attorney scheduling detective EBT's (BE .4)(WCF.6); ltr to Dr. Liebergall re. EBT date (BEC .2)(WCF.2) | 2 | $490.00 | 0.80 | | 1.2 | |
| 10/2/2018 | Ltr to State atty, enclose exhibits from EBT (BEC .3)(WCF .1) | 0.4 | $80.00 | 0.10 | | 0.3 | |
| 10/16/2018 | rev file, draft proposed stipulation, ltr to City and State attys (WCF 2.2)(BEC .5); rcvd ltr from Court schedules next conf (BEC .2) | 2.9 | $1,022.50 | 2.20 | | 0.7 | |
| 11/7/2018 | Ct conference ct of claims | 2.3 | $977.50 | 2.30 | | | |
| 11/8/2018 | Rcvd ltr from J. Hudson, re. conference & trial dates (WCF .3) | 0.3 | $127.50 | 0.30 | | | |
| 11/5/2018 | Ltr to State atty re. depositions, Liebergall availability (WCF .4)(BEC .3) | 0.7 | $207.50 | 0.40 | | 0.3 | |
| 12/5/2018 | T/C w/ State atty Flynn vmm, rev file EBT scheduling (WCF .5) | 0.5 | $212.50 | 0.50 | | | |

A-2970

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | FAB (Rate $325/hr.) | BEC (Rate $125/hr.) | HM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 12/12/2018 | T/C w/ Flynn re. deposition scheduling (WCF .4)(BEC .2) | 0.6 | $195.00 | 0.40 | | 0.2 | |
| 2/6/2019 | Court conference J. Hudson (WCF 3) | 3 | $1,275.00 | 3.00 | | | |
| 3/6/2019 | State Ct conf, rcvd letter from court | 2.8 | $1,190.00 | 2.80 | | | |
| 7/4/2019 | State Ct conference, ltr from ct | 3.5 | $1,487.50 | 3.50 | | | |
| 8/14/2019 | Filed Reply Brief, Ct of Appeals | 1.4 | $595.00 | 1.40 | | | |
| 11/8/2019 | Recv letter from J. Hudson, schedule check, file (BEC) | 0.3 | $127.50 | 0.30 | | | |
| 2/4/2020 | Recvd State AG motion to dismiss, rev file | 4.6 | $1,955.00 | 4.60 | | | |
| 2/6/2020 | Research, rev file, draft reply (WCF 6) | 6 | $2,550.00 | 6.00 | | | |
| 2/7/2020 | Research, rev file, draft reply (WCF 7.2)(BEC 2.2) | 9.4 | $3,335.00 | 7.20 | | 2.2 | |
| 2/11/2020 | Draft reply to motion to dismiss, rcvd ltr from Court (WCF 5.6)(BEC 1.2) | 6.8 | $2,530.00 | 5.60 | | 1.2 | |
| 2/12/2020 | Draft reply to motion to dismiss (WCF 8.6)(BEC .6) | 9.2 | $3,730.00 | 8.60 | | 0.6 | |
| 2/17/2020 | Rev file, research, draft reply (WCF 5.5)(BEC .8) | 6.3 | $2,437.50 | 5.50 | | 0.8 | |
| 2/18/2020 | Rcvd expert wageloss report, email to AP (WCF.6)(BEC.8) | 1.4 | $355.00 | 0.60 | | 0.8 | |

A-2971

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 2/20/2020 | Legal research, Draft reply to motion to dismiss (WCF 7)(BEC 3.5) | 10.5 | $3,412.50 | 7.00 | | 3.5 | |
| 2/21/2020 | Draft reply to motion (6.6 WCF)(1.2 BEC) | 7.8 | $2,955.00 | 6.60 | | 1.2 | |
| 2/22/2020 | Draft reply to motion, rev file (WCF 5.6) | 5.6 | $2,380.00 | 5.60 | | | |
| 2/24/2020 | Prepare motion reply (BEC 3)(WCF 6) | 9 | $2,925.00 | 6.00 | | 3 | |
| 2/26/2020 | Prepare reply, revisions, rev file (WCF 8)(BEC 2) | 10 | $3,650.00 | 8.00 | | 2 | |
| 2/27/2020 | Drafted and submitted Affirmation in Opp to Dismiss(WCF 6.5)(BEC1.1) | 7.6 | $2,900.00 | 6.50 | | 1.1 | |
| 3/4/2020 | Fed Ct Court Appearance w/ client, Rcvd Motion to Dismiss State AG (WCF 6.5) | 6.5 | $2,762.50 | 6.50 | | | |
| 3/13/2020 | Rcvd ltr w/ State AG reply aff, re. SJM, rev file, research (WCF l .6)(BEC .2) | 1.8 | $705.00 | 1.60 | | 0.2 | |
| 3/16/2020 | Telephone Court Conference- Motion argued, prep for motion | 2.2 | $935.00 | 2.20 | | | |
| 4/27/2020 | Sent copy of State SJ reply to AP, rev file, emails (WCF l .5)(BEC1.6) | 3.1 | $837.50 | 1.50 | | 1.6 | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 5/15/2020 | Rcvd Decision. Ltr from Flynn (1.2) | 1.2 | $510.00 | 1.20 | | | |
| 5/16/2020 | Filed corrected Decision. Rev file | 1.3 | $552.50 | 1.30 | | | |
| 5/20/2020 | Rcvd ltr from Flynn w/ Decision (.4) | 0.4 | $170.00 | 0.40 | | | |
| 6/19/2020 | Drafted and filed Notice of Appeal (WCF 3.2)(BEC 1) | 4.2 | $1,485.00 | 3.20 | | 1 | |
| 6/22/2020 | Filed Notice of Appeal with Appellate Division; sent copy to defense attorney (WCF 1)(BEC .8) | 1.8 | $525.00 | 1.00 | | 0.8 | |
| 7/3/2020 | Created and sent file on CD to appeal attorney | 0.5 | $212.50 | 0.50 | | | |
| 7/7/2020 | Ltr to appelate counsel w/ CD, documents (WCF 3.3)(BEC 2.6) | 5.9 | $1,727.50 | 3.30 | | 2.6 | |
| 7/10/2020 | Recvd ltr from J Hudson, corrected Decision (WCF 1.5) | 1.5 | $637.50 | 1.50 | | | |
| 7/13/2020 | filed corrrected Decision (BEC .5)(WCF.2) | 0.7 | $147.50 | 0.20 | | 0.5 | |
| 7/14/2020 | Ltr to Flynn, service of Decision, rcdv ltr from J. Hudson (WCF .6)(BEC 1.2) | 1.8 | $405.00 | 0.60 | | 1.2 | |

A-2973

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 8/10/2020 | Filed Notice of Appeal for corrected decision; served on defense attorney (WCF .5)(BEC 1.2) | 1.7 | $362.50 | 0.50 | | 1.2 | |
| 8/17/2020 | Rcvd ltr from Ct of Appeals, receipt of filing, reply to supp motion to dismiss (WCF 4.2)(BEC 2.3) | 6.5 | $2,072.50 | 4.20 | | 2.3 | |
| 12/9/2020 | Phone with counsel re: pending motion and coordination of appeals | 0.2 | $76.00 | 0.10 | | | 0.1 |
| 1/19/2021 | Court Conference. Sent demand to State AG (WCF 4)(BEC 1.5) | 7 | $2,390.00 | 4.00 | | 1.5 | 1.5 |
| 2/4/2021 | Phone call to attorneys at AG office; req for extension; letter to Court; served AG | 1.5 | $502.50 | | | | 1.5 |
| 2/18/2021 | Phone call with counsel re: perfect appeal; record preparation | 1 | $380.00 | 0.50 | | | 0.5 |

**A-2974**

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | WFC (Rate $125/hr.) | FJM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 2/19/2021 | Reviewed decision; prepared 5531 statement; assembly of record and prepared table of contents | 2.9 | $971.50 | | | | 2.9 |
| 2/21/2021 | Review record docs; assemble record; email to counsel; preliminary research | 5.5 | $1,851.50 | 0.10 | | | 5.4 |
| 2/24/2021 | Message to counsel | 0.1 | $33.50 | | | | 0.1 |
| 2/26/2021 | Prepared record summary; email counsel; requested meeting | 0.5 | $167.50 | | | | 0.5 |
| 2/27/2021 | Reviewed and analyzed record; prepare summary; legal research | 4.7 | $1,574.50 | | | | 4.7 |
| 2/28/2021 | Reviewed and analyzed record; prepared memo to counsel; | 4.5 | $1,507.50 | | | | 4.5 |
| 3/1/2021 | Message to counsel; email to counsel with analysis; reviewed orig record documents | 1.7 | $569.50 | | | | 1.7 |
| 3/2/2021 | E mail page count for draft record | 0.7 | $234.50 | | | | 0.7 |

A-2975

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | EJM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 3/11/2021 | Prepared motion to extend time to appeal; email to counsel; | 1.5 | $502.50 | | | | 1.5 |
| 3/12/2021 | E mails to printing co; re: preparing, filing and serving motion | 0.3 | $100.50 | | | | 0.3 |
| 3/31/2021 | Filed decision of Hudson; reviewed decision; left msg for counsel | 0.7 | $279.50 | 0.50 | | | 0.2 |
| 4/8/2021 | rcvd letter from Flynn w. Court decision  (WCF .5)(BEC .3) | 0.8 | $250.00 | 0.50 | | 0.3 | |
| 4/13/2021 | Rcvd 4th Dept decision re. extension, emails w/ PSS (WCF 1.2)(BEC | 2.2 | $677.00 | 1.20 | | 0.8 | 0.2 |
| | .8); received extension Order; msg for counsel (EJM .2) | | $0.00 | | | | |
| 4/22/2021 | Filed Notice of Appeal for corrected decision; served on defense attorney, meeting w/ client (WCF 2.5)(BEC 1.6) | 4.1 | $1,262.50 | 2.50 | | 1.6 | |

Case 23-352, Document 45, 06/23/2023, 3533159, Page271 of 281

**A-2976**

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 4/23/2021 | Order (WCF .5)(BEC .5); phone call with counsel re: new appeal filing; registering appeal to Appellate Division (EJM .2) | 1.2 | $342.00 | 0.50 | | 0.5 | 0.2 |
| 4/26/2021 | Email to Appellate Division re: appeal now being e-filed | 0.3 | $100.50 | | | | 0.3 |
| 4/29/2021 | Phone call with Appellate Division clerk re: appeal | 0.4 | $134.00 | | | | 0.4 |
| 4/30/2021 | Phone call with counsel; email with counsel | 1 | $380.00 | 0.50 | | | 0.5 |
| 5/3/2021 | Letter to atty gen re. appeal, filings w/ court (WCF 1.2)(BEC 2); register appeal with App. Div as e-filed appeal; prepare, efile and serve notification of Docket Numbers; draft motion (EJM 2.2) | 5.4 | $1,497.00 | 1.20 | | 2 | 2.2 |
| 5/4/2021 | Complete/assemble second motion to extend time | 1 | $569.50 | | | | 1.7 |
| 5/5/2021 | Emails to printer re: e-filed motion and court request | 0.2 | $67.00 | | | | 0.2 |
| 5/10/2021 | Letter from state court re. appeal | 0.4 | $170.00 | 0.40 | | | |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BFC (Rate $125/hr.) | FJM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 5/15/2021 | Assemble and review docs for Record on Appeal; email to paralegal for exhibits; 5531 statement and stipulation; legal research. | 6.2 | $2,077.00 | | | | 6.2 |
| 5/17/2021 | Received and reviewed exhibits; revise draft Record, draft of Table of Contents | 0.7 | $234.50 | | | | 0.7 |
| 5/18/2021 | Review and analyze Hudon's 3 decisions; legal research | 1.7 | $569.50 | | | | 1.7 |
| 5/19/2021 | Phone call with paralegal re: status | 0.2 | $46.00 | | | 0.1 | 0.1 |
| 5/20/2021 | Email Solicter General- requesting docs for Record on Appeal | 0.3 | $100.50 | | | | 0.3 |
| 5/26/2021 | Received missing exhibits from AG; finalized Record | 1.2 | $402.00 | | | | 1.2 |
| 5/27/2021 | Letter to App. Printer with record documents and legal research | 0.4 | $134.00 | | | | 0.4 |
| 6/2/2021 | Received Order from 4th Dept, ext granted | 0.8 | $340.00 | 0.80 | | | |
| 6/11/2021 | Receive link for draft Record and fwd to AG | 0.3 | $100.50 | | | | 0.3 |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | EAB (Rate $325/hr.) | BEC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 6/12/2021 | Read Record; prepare summary | 5.5 | $1,842.50 | | | | 5.5 |
| 6/14/2021 | Prepare Record Summary | 0.5 | $167.50 | | | | 0.5 |
| 6/17/2021 | Prepare Record Summary | 1.9 | $636.50 | | | | 1.9 |
| 6/19/2021 | Prepare Record Summary | 6.5 | $2,177.50 | | | | 6.5 |
| 6/21/2021 | Email from Solicitor General; reply re: corrections for Record | 0.2 | $67.00 | | | | 0.2 |
| 7/1/2021 | Email Solicter General- with revisions per request with stipulation | 0.2 | $67.00 | | | | 0.2 |
| 7/3/2021 | Prepare Record Summary | 6.4 | $2,144.00 | | | | 6.4 |
| 7/4/2021 | Prepare Record Summary | 3.3 | $1,105.50 | | | | 3.3 |
| 7/6/2021 | Review legislature history; phone call to state library; phone call to counsel | 0.9 | $310.50 | 0.10 | | | 0.8 |
| 7/9/2021 | Prepare Record Summary and legal research | 1 | $335.00 | | | | 1 |
| 7/11/2021 | Preparing Record Summary | 1.7 | $569.50 | | | | 1.7 |
| 7/13/2021 | Prepare Record Summary and legal research | 7.1 | $2,378.50 | | | | 7.1 |
| 7/14/2021 | Legal research and drafting brief | 4.5 | $1,507.50 | | | | 4.5 |
| 7/15/2021 | Drafting brief | 5.5 | $1,842.50 | | | | 5.5 |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $42½/hr.) | EAB (Rate $125/hr.) | BFC (Rate $125/hr.) | FIM (Rate $335/hr.) |
|---|---|---|---|---|---|---|---|
| 7/16/2021 | Legal research; drafting brief; email to counsel | 7 | $2,345.00 | | | | 7 |
| 7/17/2021 | Drafting brief | 12 | $4,020.00 | | | | 12 |
| 7/18/2021 | Drafting brief | 15 | $5,025.00 | | | | 15 |
| 7/19/2021 | Revisions, phone call w/ counsel, Filed appeal brief 4th Dept; deliver | 5.6 | $2,074.00 | 2.20 | | | 3.4 |
| 10/20/2021 | Review Appellant's Brief | 0.9 | $301.50 | | | | 0.9 |
| 10/21/2021 | Review and annotate AG brief; review record; legal research | 2.3 | $770.50 | | | | 2.3 |
| 10/22/2021 | Legal research and begin drafting reply brief | 2.9 | $971.50 | | | | 2.9 |
| 10/23/2021 | Drafting reply brief | 5.5 | $1,842.50 | | | | 5.5 |
| 10/25/2021 | Drafting reply brief | 8.1 | $2,713.50 | | | | 8.1 |
| 10/26/2021 | Drafting reply brief; email to counsel- review and comment | 7.6 | $2,636.00 | 1.00 | | | 6.6 |
| 10/27/2021 | Prepare Table of Auths; final revisions; letter to Batavia Legal | 4 | $1,340.00 | | | | 4 |
| 3/18/2022 | Recvd Decision from 4th Dept, denied appeal, research (2.6) | 2.6 | $1,105.00 | 2.60 | | | |
| **TOTAL:** | | 465.9 | $166,695.00 | | | | |

15.     The billing entries also include a number of entries that refer to Plaintiff's proceedings in *Ortiz v. Case*, which was a separate, parallel action brought against the County in which Plaintiff was not successful.  They total 47.7 hours, or $17,512.50, all of which should be struck.

### *Table 3: Proceedings in Ortiz v Case*

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) |
|---|---|---|---|---|---|---|
| 9/22/2016 | Rcvd Rule 26 disclosure from County atty (WCF 1.3)(BEC.2) | 1.5 | $637.50 | 1.50 | | |
| 10/12/2016 | Phone call to counsel – schedule depositions, rcvd ltr from county atty, emails medication (WCF 1.2)(BEC 1) | 2.2 | $635.00 | 1.20 | | 1 |
| 11/3/2016 | Rcvd ltr from state atty w/ aff :in support, aff reply from city atty, aff in opp from county atty (WCF 6.3)(BEC.8) | 7.1 | $2,777.50 | 6.30 | | 0.8 |
| 12/5/2016 | t/c w/ county atty, emails, rev file, reschedule mediation (WCF 2.6)(BEC 1.6) | 4.2 | $1,305.00 | 2.60 | | 1.6 |
| 3/1/2017 | Ltr to county atty, discovery (WCF l .4)(BEC .4) | 1.8 | $645.00 | 1.40 | | 0.4 |
| 3/8/2017 | Sent letter to county attorney, req discovery (WCF 2.2)(BEC 1) | 3.2 | $1,060.00 | 2.20 | | 1 |
| 5/25/2017 | Filed Motion to Compel; sent to Judge | 0.5 | $212.50 | 0.50 | | |
| 6/13/2017 | Rcvd county response to discovery demands (WCF l.5)(BEC .4) | 1.9 | $687.50 | 1.50 | | 0.4 |
| 7/25/2017 | Rcvd ltr w/ discovery from county atty, rev materials, rev file | 4.8 | $2,040.00 | 4.80 | | |
| 8/9/2017 | Rcvd ltr from County attorney (WCF .2)(BEC .1) | 0.3 | $97.50 | 0.20 | | 0.1 |
| 2/5/2018 | Meeting with client (WCF 1); sent requested authorizations to defense attorney; prep auths (BEC 1), sent auths to County atty (.4)(WCF.2) | 2.6 | $685.00 | 1.20 | | 1.4 |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) | EAB Hours (Rate $325/hr.) | BEC Hours (Rate $125/hr.) |
|---|---|---|---|---|---|---|
| 3/6/2018 | Rcvd filed Declaration of county atty, motion to dismiss, rev file, research (WCF 4.3)(BEC .4) | 4.7 | $1,877.50 | 4.30 | | 0.4 |
| 4/12/2018 | Filed cross mtn Fed Ct Mag Scott, tic w/ AP, emails (WCF 3.2)(BEC 1.2) | 4.4 | $1,510.00 | 3.20 | | 1.2 |
| 4/25/2018 | Revd., rev MOL and opp declar of county atty, rcvd ltr w/ ECMC meds from State atty (WCF 3.2)(BEC .6) | 3.8 | $1,435.00 | 3.20 | | 0.6 |
| 5/18/2018 | Rcvd Fed Ct Mag report and rec (WCF 2.5)(BEC.3) | 2.8 | $1,100.00 | 2.50 | | 0.3 |
| 8/14/2019 | Filed Reply Brief, Ct of Appeals | 1.4 | $595.00 | 1.40 | | |
| 10/29/2019 | Rcvd Notice of summary Order fed Court, Ct of Appeals (.5) | 0.5 | $212.50 | 0.50 | | |
| **TOTAL:** | | 47.7 | $17,512.50 | | | |

## BILLING ENTRIES FOR NON-LEGAL SERVICES

16.    Plaintiff's Counsel spent a significant amount of time for public relations events. They total 21.4 hours, or $9,095.00, all of which should be struck.

### *Table 4: Billing for Public Relations Events*

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) |
|---|---|---|---|---|
| 1/28/2015 | Attended Wrongful Conviction Summit, DA Sedita | 8 | $3,400.00 | 8.00 |
| 1/30/2015 | Meeting with client and press | 1 | $425.00 | 1.00 |
| 4/23/2015 | Coordinate press conference, client meeting, | 2.2 | $935.00 | 2.20 |
| 5/4/2015 | Press conference | 3.5 | $1,487.50 | 3.50 |

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF Hours (Rate $425/hr.) |
|---|---|---|---|---|
| 6/17/2017 | Emails to press | 0.5 | $212.50 | 0.50 |
| 5/11/2022 | press release, client meeting, press conf | 6.2 | $2,635.00 | 6.20 |
| **TOTAL:** | | 21.4 | $9,095.00 | |

## **VAGUE BILLING ENTRIES**

17.     As mentioned above, Wayne C. Felle's billing entries often fail to include pertinent information, which justifies striking them.  This includes 11 different entries for "client meeting."  None of these identify what the client meeting entailed.  All of these, where not block-billed with other events, are for 0.5 hours, 1 hour, or 2 hours exactly, indicating the use of estimated time rather than contemporaneous record keeping practices.  Notably, a significant number of these "1 hour" meetings, primarily those in late 2015, have less than one hour of actual work between them—the entries in November 2015 occurred without *any* work being performed between them.  What was there to discuss—and bill—for one hour in the second meeting, when no work occurred in the interim?  All of these entries should be struck or reduced.

### *Table 5: Vague Entries & Client Meetings*

| Date of Service: | Task Performed | Total Hours | Total Billed | WCF (Rate $425/hr.) | WCF Total |
|---|---|---|---|---|---|
| 1/19/2015 | Client Meeting | 0.5 | $212.50 | 0 50 | $212.50 |
| 4/29/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 8/31/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 11/6/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 11/17/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 12/16/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 12/11/2015 | Client Meeting | 1 | $425.00 | 1.00 | $425.00 |
| 12/18/2015 | Client Meeting | 0.5 | $212.50 | 0.50 | $212.50 |
| 3/28/2017 | Meeting with client | 0.5 | $212.50 | 0.50 | $212.50 |

A-2983

| 2/21/2018 | Meeting with client | 2 | $850.00 | 2.00 | $850.00 |
|---|---|---|---|---|---|
| 8/7/2019 | Meeting with client | 0.5 | $212.50 | 0.50 | $212.50 |
| **TOTAL:** | | 10 | $4,250.00 | | |

### BILLING ENTRIES FOR COUNSEL'S FAILURE TO PROPERLY DISCLOSE EXPERTS AND OTHER PRETRIAL MOTIONS

18.     A significant portion of the Plaintiff's claimed attorneys' fees stem from Plaintiff's counsel's repeated failure to comply with the Federal Rules of Civil Procedure, and motions made which the Court described as "gamesmanship" prior to the trial.

19.     Counsel is not entitled to attorney's fees for opposing motions by Detective Stambach which were granted, and which were granted because counsel did not comply with the applicable Rules of Civil Procedure.  This is precisely the situation presented here.  Counsel's initial opposition to Detective Stambach's motion, along with the supplemental submissions attempting to justify counsel's non-compliance, are not compensable, and the Court should strike all such entries.

20.     Moreover, any request for fees based on counsel's motion for an adjournment of the trial should be stricken, as the Court found this motion to be baseless and described it as gamesmanship in its Text Order denying the motion.

21.    The relevant entries, which are unfortunately block-billed with other tasks, are collected below:

| 3/23/2022 | emails w/ economic expert, rcvd report (WCF .8) | 0.8 |
|---|---|---|
| 3/25/2022 | Expert disclusre, t/c w/ AP, rev file, filed exhibit list, rev city exhibit list (WCF 2.3)(BEC .5) | 2.8 |
| 3/29/2022 | T/C w/ AP, emails w/ city attys, scheduling PO's, | 2.5 |
| 4/1/2022 | City atty filed declaration in opp, mol, research, draft reply | 5.3 |
| 4/11/2022 | Court conference Fed Ct., rev file, prep for conference | 6.8 |
| 4/12/2022 | Prep Supp expert disclosure, rev file, ltr to city atty (6.5)(BEC 2) | 8.5 |
| 4/13/2022 | PrepSupp expert disclosure, t/c AP, t/c w/ client, email to expert Redlich, rcvd certified records BestSelf, rev records (WCF 8.4)(BEC 2.3) | 10.7 |
| 4/14/2022 | prep expert disclosure, t/c AP re. withdrawl. t/c client, email to AP, Motion to adjourn, research (WCF 9.5)(BEC 3) | 12.5 |
| 4/15/2022 | Prep Supp expert disclosure, rev file, file, email w/ AP, meeting with client (8.5)(BEC 1) | 9.5 |
| 4/19/2022 | motion to w/d, MOL filed by AP, rev, research, trial prep, rcvd ltr from USAG denies Tripi subpeona | 7.5 |
| 4/20/2022 | opp aff filed by city atty re. motion to adj, research | 6.8 |
| 4/21/2022 | Text order of ct re. motion to w/d, adjourn, rev case, trial prep | 7.2 |
| 4/22/2022 | City atty filed declaration re. in limine motions, rev file, | 2.5 |
| 4/26/2022 | Def atty filed declaration re. motion in limine, trial prep, Court conference re. motion to withdraw, notion to adjourn | 8.6 |
| 4/27/2022 | resp to motion filings, prep and file declaration in opp to motion in limine, ltr to ct from city atty, emails w/ city atty, stip re. facts  (WCF 7.2)(BEC 4.6) | 11.8 |
| 5/9/2022 | trial, prep, recvd charging lien of AP. Filed | 13 |
| 5/16/2022 | draft motion, emails w/ AP, rev file | 6.5 |

**Excessive Time/Routine Clerical Tasks**

22.    Attorney Felle's records reflect significant amounts of time spent reviewing cover letters and minute entries, excessive time on routine matters, and attorneys performing clerical tasks.

23.    Many of these entries speak for themselves.  Attaching every single document to demonstrate the defects in these charges would result in an even longer declaration. A few of representative examples are briefly discussed below.

24.     On several specific occasions, Mr. Felle appears to have billed multiple hours that were actually performed by his paralegal, such as the entries on 6/3/2019, 11/8/2019, and 4/29/2022.  There may be far more tasks for which this has occurred, but due to the absence of detail on the billing ledger, they have simply been attributed to the highest-billing attorney, Mr. Felle.

25.     Attorney Felle's Office routinely took an excessive amount of time on routine emails and other documents, such as taking nearly five hours to draft subpoenas, or routinely taking half an hour to file an already-drafted motion, review a form letter, or send an already drafted report:

| 5/25/2017 | Filed Motion to Compel; sent to Judge | | | 0.5 | |
| 8/15/2017 | Rcvd ltr from State attorney adjourning conference (WCF .4) | | | 0.4 | |
| 9/11/2017 | Sent attorney forensic report | | | 0.5 | |
| 11/13/2020 | File and serve extension application | | | 0.4 | |
| 4/4/2022 | draft, serve subpoenas, cover letters (WCF 1.4)(BEC 3.5) | 4.9 | 1.4 | 3.5 | 0.2 |

26.     These vague and highly questionable time entries should be removed from Plaintiff's fee application or significantly discounted.  Indeed, many of the time entries appear to be grossly inflated in a transparent attempt to jack up the billing.

## EXCESSIVE BILLING RATES

27.     Not only are Plaintiff's counsel's billing entries themselves excessive, but the hourly rate is as well. Mr. Felle's proposed hourly rate is $425/hour, and his associates' proposed hourly rates are $335 and $325.

28.     Counsel for Defendant, Peter A. Sahasrabudhe and Hugh M. Russ, III, were compensated at an hourly rate of $289 in this action.

A-2986

## <u>CONCLUSION</u>

29.    Based on the foregoing, the Court should reduce Plaintiff's attorneys' fee request by a significant across-the-board percentage.

Dated:  June 10, 2022

s/_PeterASahasrabudhe_____<br>
Peter A. Sahasrabudhe

16224365v2 017635.00061