# 23-0352

# United States Court of Appeals

*for the*

# Second Circuit

———— • ————

JOSUE ORTIZ,

*Plaintiff-Appellee,*

– v. –

MARK STAMBACH,

*Defendant-Appellant,*

RICHARD WAGSTAFF, MARY GUGLIUZZA, BUFFALO POLICE DEPARTMENT DOES 1-12, BUFFALO POLICE DEPARTMENT, THE CITY OF BUFFALO, MARK VAUGHN,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## APPENDIX FOR DEFENDANT-APPELLANT
### Volume 1 (Pages A-1 to A-240)

Hodgson Russ LLP
Peter A. Sahasrabudhe, Esq.
*Attorneys for Defendant-Appellant*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

i

# TABLE OF CONTENTS

**Page**

## Volume 1

District Court Docket List..........................................    A-1

Amended Complaint, dated March 27, 2019 ............    A-34

Answer to Amended Complaint,
    dated April 15, 2019 ...............................................    A-56

Notice of Motion to Dismiss, dated April 24, 2020...    A-80

Memorandum of Law in Support of Defendants'
    Motion to Dismiss, dated April 24, 2020...............    A-82

Supporting Declaration, dated April 24, 2020 ...........    A-107

Exhibit A to Declaration -
Affidavit of Lt. Salvatore Losi,
sworn to on April 15, 2020...................................    A-112

Exhibit B to Declaration -
P-73 of Mark R. Stambach, dated November 16,
2004, and Notes....................................................    A-114

Exhibit C to Declaration -
Plaintiff's Deposition Transcript,
dated March 15, 2018............................................    A-117

## Volume 2

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019.........................................    A-241

ii

Page

**Volume 3**

Exhibit D to Declaration -
Mark Stambach's Deposition Transcript,
dated January 23, 2019 ........................................... A-491

Exhibit E to Declaration -
Criminal Case Court Proceedings Notes ............... A-535

Exhibit F to Declaration -
Plaintiff's Statement and Spanish Miranda Rights
Card ........................................................................ A-539

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019 ........................................... A-543

**Volume 4**

Exhibit G to Declaration -
Edwin Torres' Deposition Transcript,
dated August 30, 2019
(Continued) ............................................................. A-741

Exhibit H to Declaration -
P-73 of Mark J. Vaughn, dated November 15,
2004 ........................................................................ A-746

Exhibit I to Declaration -
Indictment ............................................................... A-748

Exhibit J to Declaration -
Portions of *Huntley* Hearing Transcript Provided
by Plaintiff in Discovery ....................................... A-753

Exhibit K to Declaration -
Answering Affidavit of Assistant District
Attorney Kenneth F. Case,
dated February 22, 2005 ......................................... A-882

iii

**Page**

Exhibit L to Declaration -
Transcripts of Plaintiff's guilty plea on March
22, 2006 and sentencing on June 16, 2006 and
Memorandum and Order Affirming the
Conviction .................................................... A-889

Exhibit M to Declaration -
Correspondence and Reply to the People's
Opposing Affidavit ....................................... A-913

Exhibit N to Declaration -
Moving Papers and Correspondence Filed in
Opposition to Plaintiff's CPL 440 Motion by the
District Attorney's Office ............................... A-935

Exhibit O to Declaration -
P-73 of David Sadlocha,
dated November 16, 2004 .............................. A-976

Exhibit P to Declaration -
Memorandum and Order Deciding *Huntley*
Hearing .......................................................... A-977

Exhibit Q to Declaration -
Mark Stambach Notes,
dated September 30, 2005 .............................. A-981

**Volume 5**

Exhibit R to Declaration -
Decision & Order Deciding Plaintiff's CPL 440
Motion ........................................................... A-983

Statement of Undisputed Facts,
dated April 24, 2020 ...................................... A-1056

Declaration of Alan J. Pierce, Esq.,
dated July 3, 2020 ......................................... A-1063

iv

**Page**

Plaintiff's Response to Defendants' Statement of
    Material Facts, dated July 3, 2020 ........................ A-1066

Exhibit 1 to Pierce Declaration -
Orders of Hon. Thomas Franczyk dated
December 9, 2014 and May 8, 2015 in *People v.
Ortiz*, Indictment No. 02630-04 ........................... A-1069

Exhibit 2 to Pierce Declaration -
Defendants' Response to Plaintiff's First
Interrogatories and First Request for Production
of Documents, dated February 24, 2017 ............... A-1071

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019 ...................................... A-1091

**Volume 6**

Exhibit 3 to Pierce Declaration -
Transcript of the Deposition of Geraldo Rondon,
taken on March 13, 2019
(Continued)............................................................. A-1233

Exhibit 4 to Pierce Declaration -
Transcript of the Deposition of Mary Evans,
taken on January 24, 2019 .................................... A-1238

Exhibit 5 to Pierce Declaration -
Documents in Exhibit B, Part 3 ............................ A-1372

Exhibit 6 to Pierce Declaration -
P-73 Forms Contained in Stambach Deposition
Exhibit 6 ............................................................... A-1450

v

**Page**

**Volume 7**

Exhibit 7 to Pierce Declaration -
BPD Synopsis of the Camacho Murder
Investigation ............................................................ A-1473

Exhibit 8 to Pierce Declaration -
Statement of Witness Jexlyn Mary Rosario given
to the BPD on November 12, 2004 ........................ A-1499

Exhibit 9 to Pierce Declaration -
Declaration of Hon. Kenneth Case, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 ............................................................ A-1502

Exhibit 10 to Pierce Declaration -
Declaration of Hon. Frank Sedita, submitted in
March 2018 in the companion case *Ortiz v. Case*,
16-CV-322 ............................................................ A-1505

Exhibit 11 to Pierce Declaration -
Documents in Exhibit B, Parts 1 & 2 .................... A-1512

Exhibit 12 to Pierce Declaration -
Transcript of the Deposition of Dr. Evelyn
Coggins, taken on October 1, 2018 ........................ A-1597

Exhibit 13 to Pierce Declaration -
Defendants' Initial Disclosures,
dated February 24, 2017 ........................................ A-1700

Exhibit 14 to Pierce Declaration -
Josue Ortiz's Verified Claim,
dated May 13, 2015 ................................................ A-1706

**Volume 8**

Exhibit 15 to Pierce Declaration -
Stambach Deposition Exhibits 2 and 17 ............... A-1725

vi

**Page**

Plaintiff's Memorandum of Law in Opposition to
    Defendants' Motion to Dismiss, and for
    Judgment on the Pleadings and/or Summary
    Judgment, dated July 5, 2020 ............................... A-1733

City of Buffalo Department of Law, Exhibit D ......... A-1760

Reply Memorandum of Law in Further Support of
    Defendants' Motion to Dismiss,
    dated July 24, 2020 ................................................. A-1789

Decision and Order of the Honorable Elizabeth A.
    Wolford, dated February 26, 2021 ....................... A-1800

Plaintiffs' Proposed Jury Instructions,
    dated April 1, 2022 ................................................. A-1837

Defendants' Proposed Jury Instructions,
    dated April 1, 2022 ................................................. A-1861

Plaintiffs' Reply Motions in Limine,
    dated April 6, 2022 ................................................. A-1924

Defendant's Objections to Plaintiff's Proposed Jury
    Instructions, dated April 6, 2022 ........................... A-1933

**Volume 9**

Transcript of Proceedings, dated April 11, 2022........ A-1937

Stipulation of Undisputed Facts,
    dated April 27, 2022 .............................................. A-1996

Trial Transcript, Preliminary Instructions and
    Opening Statements, dated May 3, 2022 ............... A-2001

Trial Transcript, dated May 4, 2022........................... A-2053

vii

                                                           **Page**

Plaintiff's Witnesses:

    E. Coogins          Direct ........................ A-2054
                                 Cross ......................... A-2116

    J. Ortiz            Direct ........................ A-2125

**Volume 10**

Trial Transcript, dated May 4, 2022
    (Cotinued) ............................................. A-2187

    M. Vaughn         Direct ........................ A-2189
                                 Cross ......................... A-2219
                                 Redirect ..................... A-2225

    J. Lonergan       Direct ........................ A-2229
                                 Cross ......................... A-2281
                                 Redirect ..................... A-2284
                                 Recross ...................... A-2287

Trial Transcript, dated May 5, 2022 ........................ A-2297

    M. Stambach     Direct ........................ A-2299
                                 Cross ......................... A-2361
                                 Redirect ..................... A-2384

    J. Ortiz            Direct ........................ A-2393
                                 Cross ......................... A-2426

**Volume 11**

Trial Transcript, dated May 6, 2022 ........................ A-2467

    M. Evans          Direct ........................ A-2470
                                 Cross ......................... A-2495

    M. Lauber         Direct ........................ A-2504
                                 Cross ......................... A-2518

Trial Transcript, May 9, 2022 ................................. A-2554

viii

|  |  |  | **Page** |
|---|---|---|---|
| J. Ortiz | Direct | ...................... | A-2599 |
|  | Cross | ...................... | A-2653 |
|  | Redirect | ...................... | A-2671 |
|  | Recross | ...................... | A-2674 |

Trial Transcript, Closing Arguments, May 9, 2022 ... A-2594

**Volume 12**

Trial Transcript, Closing Arguments, May 9, 2022
(Continued) ............................................................. A-2717

Jury Questionnaire, dated May 9, 2022 ..................... A-2760

Jury Questionnaire, Damages, dated May 9, 2022 .... A-2764

Judgment in a Civil Case, dated May 10, 2022 ......... A-2766

Notice of Motion, by Plaintiff, for Attorneys' Fees,
dated May 20, 2022 ................................................ A-2767

Declaration of Wayne C. Felle, Esq., for Plaintiff, in
Support of Motion, dated May 20, 2022................ A-2768

Exhibit A to Felle Declaration -
Ledger.................................................................... A-2773

Exhibit B to Felle Declaration -
Invoices for Services ........................................... A-2792

Plaintiff's Memorandum of Law in Support of his
Motion for Attorneys' Fees and Costs,
dated May 20, 2023 ................................................ A-2823

Notice of Motion, by Defendant, for Judgment as a
Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a
new trial Pursuant to Fed. R. Civ. P. 59(a), and
for Remittur Pursuant to Fed. R. Civ. P. 59(e),
dated June 7, 2022 ................................................. A-2846

ix

**Page**

Declaration of Peter A. Sahasrabudhe, Esq., for
   Defendant, in Support of Motion,
      dated June 7, 2022 .................................................. A-2848

   Exhibit A to Sahasrabudhe Declaration -
   Trial Exhibits Entered by Counsel for
   Plaintiff .................................................................. A-2862

   Exhibit B to Sahasrabudhe Declaration -
   Trial Exhibits Entered by Counsel for
   Defendant ............................................................... A-2909

Memorandum of Law in Support of Motion for
   Judgment as a Matter of Law Under Fed. R. Civ.
   P. 50(b), dated June 7, 2022 .................................... A-2918

Declaration of Peter A. Sahasrabudhe in Opposition
   to Plaintiff's Motion for Attorneys' Fees,
      dated June 10, 2022 ............................................... A-2946

**Volume 13**

Defendants' Memorandum of Law in Opposition to
   Plaintiff's Motion for Attorneys' Fees,
      dated June 10, 2022 ............................................... A-2987

Declaration of Wayne C. Felle, Esq., for Plaintiff, in
   Opposition to Defendant's Post Trial Motion,
      dated June 28, 2022 ............................................... A-3013

Plaintiff's Memorandum of Law in Opposition to
   Defendant's Post Trial Motions,
      dated June 28, 2022 ............................................... A-3023

Reply Memorandum of Law in Further Support of
   Defendant's Motion for Judgment as a Matter of
   Law, a New Trial, or Remittitur,
      dated July 8, 2022 ................................................. A-3071

x

**Page**

Decision and Order of the Honorable Elizabeth A.
  Wolford, dated February 17, 2022 ........................  A-3090

Transcript of Oral Argument,
  dated January 31, 2023 .........................................  A-3112

Notice of Appeal, by Defendant, March 10, 2023 .....  A-3159

A-1

**Query**     **Reports**     **Utilities**     **Help**     **Log Out**

APPEAL,CASREF,MEDIATION

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:16-cv-00321-EAW-MJR

Ortiz v. Wagstaff, et al
Assigned to: Hon. Elizabeth A. Wolford
Referred to: Hon. Michael J. Roemer
Cause: 42:1983 Civil Rights Act

Date Filed: 04/25/2016
Date Terminated: 05/10/2022
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Josue Ortiz**                          represented by  **Alan J. Pierce**
                                         Hancock Estabrook, LLP
                                         1500 AXA Tower 1
                                         100 Madison Street
                                         Syracuse, NY 13202
                                         (315) 565-4546
                                         Fax: (315) 565-4646
                                         Email: apierce@hancocklaw.com
                                         *TERMINATED: 04/26/2022*
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Wayne C. Felle**
                                         Law Office of Wayne C. Felle, P.C.
                                         6024 Main Street
                                         Williamsville, NY 14221
                                         716-505-2700
                                         Fax: 716-505-2727
                                         Email: waynefelle@waynefellelaw.com
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Spencer Leeds Durland**
                                         Hoover & Durland LLP
                                         561 Franklin Street
                                         Buffalo, NY 14202
                                         716-800-2605
                                         Fax: 716-885-8569
                                         Email: sdurland@hooverdurland.com
                                         *ATTORNEY TO BE NOTICED*

                                         **Timothy W. Hoover**
                                         Hoover & Durland LLP
                                         561 Franklin Street
                                         Buffalo, NY 14202
                                         716-800-2604

A-2

Fax: 716-885-8569
Email: thoover@hooverdurland.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Richard Wagstaff**                    represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                   Buffalo Public Schools
                                                           65 Niagara Square
                                                           Ste 713 City Hall
                                                           Buffalo, NY 14202
                                                           716-816-3102
                                                           Email: requinn@buffaloschools.org
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Maeve Eileen Huggins**
                                                           City of Buffalo Law Department
                                                           Suite 1112 City Hall
                                                           Buffalo, NY 14202
                                                           716 851-4317
                                                           Fax: 716 851-4105
                                                           Email: mhuggins@city-buffalo.com
                                                           *TERMINATED: 12/09/2021*

**Defendant**

**Mary Gugliuzza**                      represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Maeve Eileen Huggins**
                                                           (See above for address)
                                                           *TERMINATED: 12/09/2021*

**Defendant**

**BPD DOES 1-12**                       represented by    **Robert Emmet Quinn**
*in their Capacity as Police Officers of the*              (See above for address)
*City of Buffalo*                                          *LEAD ATTORNEY*
*TERMINATED: 03/01/2021*                                   *ATTORNEY TO BE NOTICED*

                                                           **Maeve Eileen Huggins**
                                                           (See above for address)
                                                           *TERMINATED: 12/09/2021*

**Defendant**

**Buffalo Police Department**           represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Maeve Eileen Huggins**

A-3

(See above for address)
*TERMINATED: 12/09/2021*

**Defendant**

**The City of Buffalo**                    represented by    **Robert Emmet Quinn**
*TERMINATED: 03/28/2019*                                    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maeve Eileen Huggins**
(See above for address)
*TERMINATED: 12/09/2021*

**Defendant**

**Mark Stambach**                    represented by    **Peter A. Sahasrabudhe**
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
716-848-1508
Email: psahasra@hodgsonruss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hugh M. Russ , III**
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
(716) 856-4000
Fax: 716-849-0349
Email: hruss@hodgsonruss.com
*ATTORNEY TO BE NOTICED*

**Maeve Eileen Huggins**
(See above for address)
*TERMINATED: 12/09/2021*

**Defendant**

**Mark Vaughn**                    represented by    **Robert Emmet Quinn**
*TERMINATED: 03/01/2021*                                    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maeve Eileen Huggins**

CM/ECF LIVE(C) - U.S. District Court:nywd

(See above for address)
*TERMINATED: 12/09/2021*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/25/2016 | 1 | COMPLAINT against All Defendants $ 400 receipt number 0209-2515426, filed by Josue Ortiz.(Felle, Wayne) (Entered: 04/25/2016) |
| 04/26/2016 | | E-Filing Notification: Attorney is directed to efile a civil cover sheet using the Continuation of Exhibits event found under Responses and Replies re 1 COMPLAINT against All Defendants $ 400 receipt number 0209-2515426, filed by Josue Ortiz.(Felle, Wayne) (SG) (Entered: 04/26/2016) |
| 04/28/2016 | 2 | CONTINUATION OF EXHIBITS by Josue Ortiz. filed by Josue Ortiz. (Attachments: # 1 Summons)(Felle, Wayne) (Entered: 04/28/2016) |
| 04/29/2016 | | Case assigned to Hon. Lawrence J. Vilardo. (SG) (Entered: 04/29/2016) |
| 04/29/2016 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 04/29/2016) |
| 04/29/2016 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. Notification to Chambers of on-line civil case opening. (SG) (Entered: 04/29/2016) |
| 04/29/2016 | | E-Filing Notification: Attorney is directed refile a summons for each individual defendant using the continuation of exhibits event re 2 CONTINUATION OF EXHIBITS by Josue Ortiz. filed by Josue Ortiz. (Attachments: # 1 Summons)(Felle, Wayne) (SG) (Entered: 04/29/2016) |
| 04/29/2016 | 3 | CONTINUATION OF EXHIBITS by Josue Ortiz. to E-Filing Notification, filed by Josue Ortiz. (Felle, Wayne) (Entered: 04/29/2016) |
| 05/03/2016 | 4 | Summons Issued as to BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (SG) (Entered: 05/03/2016) |
| 07/29/2016 | 5 | AFFIDAVIT of Service for Summons and Complaint served on Richard Wagstaff, Mary Gugliuzza, Mark Vaughn, Mark Stambach, BFD does 1-12, Buffalo Police Department, and City of Buffalo on July 25, 2016, filed by Josue Ortiz. (Felle, Wayne) (Entered: 07/29/2016) |
| 08/15/2016 | 6 | ANSWER to 1 Complaint by BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Quinn, Robert) (Entered: 08/15/2016) |
| 08/16/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 08/16/2016) |
| 08/22/2016 | 7 | TEXT REFERRAL ORDER - Hon. Hugh B. Scott, United States Magistrate Judge, is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non- |

A-5

| | | |
|---|---|---|
| | | dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall not hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), unless further ordered by this Court. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 8/22/2016. (CMD) (Entered: 08/22/2016) |
| 08/23/2016 | 8 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**ORDER**<br><br>Scheduling Conference set for **Thur., 9/29/2016, 10:45 AM**, before Hon. Hugh B. Scott, to be held jointly with the conference in *Oritz v. Case, et al.*, No. 16cv322.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 8/23/2016.<br><br>(Attachments: # 1 AO-85 Consent Form)<br><br>(DRH) (Entered: 08/23/2016) |
| 09/29/2016 | 9 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Robert Quinn for defendants.<br><br>Scheduling Conference held on 9/29/2016 (with *Ortiz v. Case, et al.*, Case No. 16CV322). To have parallel schedule entered in this case as in *Case*, with eight months for discovery due to sealing of records in on going criminal investigation related to plaintiff's claims. Court to enter Scheduling Order consistent with this schedule. (DRH) (Entered: 09/29/2016) |
| 09/29/2016 | 10 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**SCHEDULING/CASE MANAGEMENT ORDER**<br><br>(Please Note: This docket text may <u>not</u> contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>Motions to Join Parties/Amend Pleadings due by 10/28/2016.<br><br>Stipulation of Selection of Mediator due by 10/27/2016. First Mediation Session due by 12/22/2016. Mediation To End by 9/1/2017.<br><br>Plaintiff Expert Witness ID due by 4/4/2017. Motions to Compel Discovery due by 4/28/2017. Defendant Expert Witness ID due by 5/12/2017. Discovery completed by 5/29/2017. |

A-6

| | | |
|---|---|---|
| | | Dispositive Motions due by 8/28/2017. |
| | | If no motions are filed, parties to contact the Chambers of Judge Vilardo to set a trial date by 9/7/2017. |
| | | So Ordered. Signed by Hon. Hugh B. Scott on 9/29/2016. (DRH) (Entered: 09/29/2016) |
| 10/18/2016 | 11 | Stipulation-Selection of Mediator by Josue Ortiz. (Felle, Wayne) (Entered: 10/18/2016) |
| 01/05/2017 | 12 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER**<br><br>Jointly with 16CV322, Status Conference set for **Thur., 1/19/2017, 10:30 AM**, before Hon. Hugh B. Scott.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 1/5/2017. (DRH) (Entered: 01/05/2017) |
| 01/05/2017 | 13 | NOTICE of Appearance by Maeve Eileen Huggins on behalf of BPD DOES 1-12, Buffalo Police Department, City of Buffalo, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff (Attachments: # 1 Certificate of Service Certificate of Service of Notice of Appearance)(Huggins, Maeve) (Entered: 01/05/2017) |
| 01/06/2017 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 01/06/2017) |
| 01/19/2017 | 14 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY AND ORDER<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants.<br><br>Held with *Ortiz v. Case, et al.*, No. 16CV322.<br><br>Status Conference held on 1/19/2017. Parties obtained Order from New York State court unsealing certain records and purporting to have those documents inspected *in camera* by this Court. Defense counsel has located files that were unsealed and need to review for responsiveness and claims of privilege. Parties are to work out among themselves what can be produced and what documents are objected to. Someone should move to extend Scheduling Order deadlines (Docket No. 10) if necessary and parties are encouraged to initiate mediation proceedings.<br><br>Status Conference set for **Thur., 2/9/2017, 2:00 PM**, before Hon. Hugh B. Scott to determine progress regarding defense review and production and the necessity for *in camera* inspection of any part of these records.<br><br>So Ordered.<br><br>Signed by Hon. Hugh B. Scott on 1/19/2017. (DRH) (Entered: 01/19/2017) |
| 02/09/2017 | 15 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 14 Terminate Hearings, Set Hearings, Status Conference** |

| | | |
|---|---|---|
| | | Due to the Court's calendar, Status Conference reset for today, 2/9/2017, **2:30 PM**, before Hon. Hugh B. Scott. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 2/9/2017. (DRH) (Entered: 02/09/2017) |
| 02/09/2017 | 16 | **HONORABLE HUGH B. SCOTT** <br><br> TEXT OF MINUTE ENTRY AND ORDER <br><br> For proceedings held before Magistrate Judge Hugh B. Scott <br><br> Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants. <br><br> Status Conference held on 2/9/2017, the parties reached agreement on production of the unsealed documents, with defendants agreeing to produce by 2/24/2017. Parties reviewing proposed Amended Scheduling Order to submit to the Court. Parties requested a further Status Conference 1 month from now. <br><br> Status Conference set for **Thur., 3/16/2017, 10:00 AM**, before Hon. Hugh B. Scott with *Ortiz v. Case*, No. 16cv322. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 2/9/2017. (DRH) (Entered: 02/09/2017) |
| 02/28/2017 | <u>17</u> | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 02/28/2017) |
| 02/28/2017 | 18 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** <br><br> **TEXT ORDER re 14 Terminate Hearings, Set Hearings, Status Conference, 16 Terminate Hearings, Status Conference, Set Hearings** <br><br> Defendants submitted for *in camera* inspection documents from their files, including a privilege log served upon plaintiff. Plaintiff shall respond to the privileges claim in the privilege log, Responses due by **3/8/2017**. Status Conference remain (Docket No. 16) scheduled for **Thur., 3/16/2017, 10:00 AM**. <br><br> So Ordered. Signed by Hon. Hugh B. Scott on 2/28/2017. (DRH) (Entered: 02/28/2017) |
| 03/16/2017 | 19 | **HONORABLE HUGH B. SCOTT** <br><br> TEXT OF MINUTE ENTRY <br><br> For proceedings held before Magistrate Judge Hugh B. Scott <br><br> Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants <br><br> Status Conference held on 3/16/2017, with *Ortiz v. Case, et al.*, No. 16CV322. Plaintiff reports that mediation was held and would continue. <br><br> Defendants object to producing files due to pending federal investigation, Judge Arcara's Orders limiting production to them, and potentially endangering persons. This Court raised potential of intervention by the United States in discovery due to the role in the files produced by the City defendants. Further Status Conference (4/19/2017, 2 pm) to be held. Court to order United States' intervention. |

A-8

Plaintiff raised issues regarding the Scheduling Order (Docket No. 10) deadlines; this Court holds those deadlines **in abeyance** pending resolution of the outstanding discovery issues. (DRH) (Entered: 03/16/2017)

| 03/16/2017 | 20 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 19 Terminate Hearings, Status Conference**<br><br>Defendants produced for *in camera* inspection certain police files from the investigation that led to the arrest, prosecution, and conviction of plaintiff for homicide. Plaintiff now alleges that others were later convicted in federal court, *United States v. Montalvo, et al.*, No. 11CR366, for those homicides and that plaintiff was exonerated. Plaintiff commenced this false arrest and malicious prosecution action against defendants.<br><br>Defendants now contend that most of these documents are privileged, arguing that the *in camera* materials may reveal confidential sources, identify federal investigation witnesses, and may be deemed confidential due to production of items under terms of a proffer. Defendants also claim that some of the material produced for inspection may have come from the federal Grand Jury, released pursuant to an Order limiting the scope of their production. Defendants, however, do not mention the particulars of the federal investigation, the proffers, or which items were produced to the federal Grand Jury. This Court is unclear whether these confidences remain from the *Montalvo* prosecution, given that all defendants have entered guilty pleas and two have been sentenced.<br><br>As a result, it may be necessary for the United States of America to intervene in this action at least for the limited purpose of conducting discovery in this action (and possibly in the parallel action *Ortiz v. Case, et al.*, Case No. 16CV322), Fed. R. Civ. P. 24; *see* 6-24 *Moore's Federal PracticeCivil* § 24.23 (2017). This Court requests that the Assistant United States Attorney who was counsel in *Montalvo* address whether the items provided for *in camera* inspection should remain undisclosed due to pending prosecution, pending federal criminal investigation, or to protect the safety of confidential sources. The Assistant U.S. Attorney or such representative of the United States is invited to appear at a Status Conference scheduled for **Wed., 4/19/2017, 2:00 pm**. The United States also may make a written submission on this matter; such is due by **4/3/2017**; this submission may be made to this Court under seal. Copies of this Order will be sent by Chambers to the Acting United States Attorney and to Assistant U.S. Attorney Joseph Tripi, counsel of record in *Montavlo*.<br><br>Status Conference set for 4/19/2017, 2:00 PM, before Hon. Hugh B. Scott.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 3/16/2017. (DRH) Modified on 3/16/2017--correct causes of action (DRH). (Entered: 03/16/2017) |
| 03/16/2017 | | E-Filing Notification: 20<br>**ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 19 Terminate Hearings, Status Conference**<br><br>Defendants produced for *in camera* inspection certain police files from the investigation that led to the arrest, prosecution, and conviction of plaintiff for homicide. Plaintiff now alleges that others were later convicted in federal court, *United States v. Montalvo, et al.*, No. 11CR366, for those homicides and that plaintiff was exonerated. Plaintiff commenced this false arrest and malicious prosecution action against defendants.<br><br>Defendants now contend that most of these documents are privileged, arguing that the *in camera* materials may reveal confidential sources, identify federal investigation |

6/16/23, 2:07 PM                                CM/ECF LIVE(C) - U.S. District Court:nywd

witnesses, and may be deemed confidential due to production of items under terms of a proffer. Defendants also claim that some of the material produced for inspection may have come from the federal Grand Jury, released pursuant to an Order limiting the scope of their production. Defendants, however, do not mention the particulars of the federal investigation, the proffers, or which items were produced to the federal Grand Jury. This Court is unclear whether these confidences remain from the *Montalvo* prosecution, given that all defendants have entered guilty pleas and two have been sentenced.

As a result, it may be necessary for the United States of America to intervene in this action at least for the limited purpose of conducting discovery in this action (and possibly in the parallel action *Ortiz v. Case, et al.*, Case No. 16CV322), Fed. R. Civ. P. 24; *see* 6-24 *Moore's Federal PracticeCivil* § 24.23 (2017). This Court requests that the Assistant United States Attorney who was counsel in *Montalvo* address whether the items provided for *in camera* inspection should remain undisclosed due to pending prosecution, pending federal criminal investigation, or to protect the safety of confidential sources. The Assistant U.S. Attorney or such representative of the United States is invited to appear at a Status Conference scheduled for **Wed., 4/19/2017, 2:00 pm**. The United States also may make a written submission on this matter; such is due by **4/3/2017**; this submission may be made to this Court under seal. Copies of this Order will be sent by Chambers to the Acting United States Attorney and to Assistant U.S. Attorney Joseph Tripi, counsel of record in *Montavlo*.

Status Conference set for 4/19/2017, 2:00 PM, before Hon. Hugh B. Scott.

So Ordered. Signed by Hon. Hugh B. Scott on 3/16/2017. (DRH) Modified on 3/16/2017--correct causes of action (DRH). (Entered: 03/16/2017)

| 04/19/2017 | 21 | **HONORABLE HUGH B. SCOTT** |
|---|---|---|

TEXT OF MINUTE ENTRY

For proceedings held before Magistrate Judge Hugh B. Scott

Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins, for defendants; Assistant U.S. Attorney Michael Cerrone specially appearing

Status Conference held on 4/19/2017. Parties argued production of in camera material from defendants' files. Parties instructed to confer to work out means to identify confidential or sensitive matters and which documents were already produced to plaintiff through his former (now deceased) criminal counsel. A party then may need to make some sort of motion on this. Further status to be scheduled. (DRH) (Entered: 04/19/2017)

| 04/19/2017 | 22 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** |
|---|---|---|

**TEXT ORDER re 21 Terminate Hearings, Status Conference**

As indicated (Docket No. 21), Further Status Conference set for **Wed., 5/10/2017, 11:15 AM**, before Hon. Hugh B. Scott. Assistant U.S. Attorney Michael Cerrone is again invited to appear at this conference. This conference will be held jointly with *Ortiz v. Case*, Case No. 16CV322.

So Ordered. Signed by Hon. Hugh B. Scott on 4/19/2017. (DRH) (Entered: 04/19/2017)

| 05/03/2017 | 23 | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 05/03/2017) |
|---|---|---|
| 05/10/2017 | 24 | **HONORABLE HUGH B. SCOTT** |

TEXT OF MINUTE ENTRY

For proceedings held before Magistrate Judge Hugh B. Scott

Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants; as friend of the Court, Assistant U.S. Attorney Michael Cerrone

Status Conference held on 5/10/2017, with *Ortiz v. Case, et al.*, No. 16cv322V. The United States Attorney's office produced a redacted version of the transmission letter of the federal Grand Jury materials sent to the Erie County District Attorney and plaintiff's deceased criminal defense counsel pursuant to the Orders of Judge Arcara releasing those materials.

Defense counsel in this case noted that material provided for *in camera* review contains sensitive material and may include items included in the federal Grand Jury materials.

This Court set plaintiff's deadline to move to compel (if necessary) by 5/24/2017, with defendants responding by 5/31/2017, and this Court to set a hearing date by a separate Order. (DRH) (Entered: 05/10/2017)

| | | |
|---|---|---|
| 05/10/2017 | 25 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 24 Terminate Hearings, Status Conference**<br><br>Plaintiff's Motion to Compel (if any) (Docket No. 24) due by 5/24/2017, Responses due by 5/31/2017. Court to schedule oral argument in a separate Order.<br><br>This Court notes that *in camera* review of defense submissions needs to be conducted and an Order issued of what can, and cannot, be produced.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 5/10/2017. (DRH) (Entered: 05/10/2017) |
| 05/25/2017 | 26 | First MOTION for Disclosure by Josue Ortiz. (Attachments: # 1 Affidavit, # 2 Exhibit Decision and Order, # 3 Exhibit Retainer, # 4 Exhibit Order, # 5 Exhibit Motion papers, # 6 Exhibit Text of Minute Entry, # 7 Exhibit Plaintiff correspondence, # 8 Exhibit Text of Minute Entry, # 9 Exhibit Buffalo Police Dept responses, # 10 Exhibit County of Erie responses, # 11 Exhibit Hon. Arcara Orders, # 12 Exhibit Michel Cerrone, Esq letter, # 13 Exhibit Plaintiffs Correspondence, # 14 Exhibit Joseph Tripi, Esq letters, # 15 Memorandum in Support)(Felle, Wayne) (Entered: 05/25/2017) |
| 05/30/2017 | 27 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 25 Text Order, Set Deadlines, Set Scheduling Order Deadlines, 26 First MOTION for Disclosure filed by Josue Ortiz, 24 Terminate Hearings, Status Conference**<br><br>With *Ortiz v. Case, et al.*, Case No. 16CV322, Oral Argument set for **Wed., 6/7/2017, 11:00 AM**, before Hon. Hugh B. Scott.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 5/30/2017. (DRH) (Entered: 05/30/2017) |
| 05/31/2017 | 28 | DECLARATION re 26 First MOTION for Disclosure filed by The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department filed by The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 |

A-11

| | | |
|---|---|---|
| | | Exhibit Exhibit H, # <u>9</u> Exhibit Exhibit I, # <u>10</u> Exhibit Exhibit J, # <u>11</u> Exhibit Exhibit K, # <u>12</u> Exhibit Exhibit L, # <u>13</u> Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 05/31/2017) |
| 06/07/2017 | 29 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Wayne Felle, Esq., for plaintiff; Assistant Corporation Counsel Maeve Huggins for defendants.<br><br>Oral Argument held on 6/7/2017 parties argued plaintiff's Motion to Compel (Docket No. 26). Defendants note that this case was heard with *Ortiz v. Case, et al.*, No. 16CV322, as a convenience for the common issues, but reinforced that the cases are not consolidated.<br><br>Court reserved decision. (DRH) (Entered: 06/07/2017) |
| 06/23/2017 | <u>30</u> | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**ORDER granting in part and denying in part <u>26</u> Motion for Disclosure**<br><br>Plaintiff's Motion for Disclosure (Docket No. 26) is denied. Following *in camera* inspection of the Buffalo Police Department files, defendants are to produce the items stated in this Order.<br><br>This Court **declines** to alter Judge Arcara's Orders surrounding disclosure of federal Grand Jury.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 6/23/2017. (DRH) (Entered: 06/23/2017) |
| 07/14/2017 | <u>31</u> | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 07/14/2017) |
| 08/17/2017 | <u>32</u> | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # <u>1</u> Affidavit Declaration, # <u>2</u> Exhibit Exhibit A, # <u>3</u> Exhibit Exhibit B, # <u>4</u> Exhibit Exhibit C, # <u>5</u> Exhibit Exhibit D, # <u>6</u> Exhibit Exhibit E, # <u>7</u> Memorandum in Support Memorandum of Law in Support, # <u>8</u> Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 08/17/2017) |
| 08/25/2017 | 33 | TEXT REFERRAL ORDER (DISPOSITIVE) - Hon. Hugh B. Scott, United States Magistrate Judge, is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall also hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 8/25/2017. (CMD) (Entered: 08/25/2017) |

| 08/28/2017 | 34 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 33 Order Referring Case to Magistrate Judge, 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach**<br><br>With the dispositive referral from Judge Vilardo (Docket No. 33), Responses to defense Motion to Dismiss (Docket No. 32) due by 9/29/2017, Replies due by 10/6/2017. This Court will determine, upon review of moving papers, whether to conduct oral argument. If no argument is scheduled, the motion will be deemed submitted as of the reply deadline date.. Signed by Hon. Hugh B. Scott on 8/28/2017. (DRH) (Entered: 08/28/2017) |
| 09/01/2017 | 35 | NOTICE of Appearance by Alan J. Pierce on behalf of Josue Ortiz (Pierce, Alan) (Entered: 09/01/2017) |
| 09/28/2017 | 36 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach, 34 Text Order, Set/Reset Motion and R&R Deadlines/Hearings**<br><br>Upon plaintiff's request to extend his time to respond (and corresponding extension of defense time to reply, emailed letters from Alan J. Pierce, Esq., to Chambers, copies to Maeve Huggins, dated 9/27/2017, not filed by Chambers), Responses now due by 10/6/2017, Replies due by 10/13/2017. Motion now deemed submitted 10/13/2017 without oral argument unless scheduled by this Court following review of the moving papers.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 9/28/2017. (DRH) (Entered: 09/28/2017) |
| 10/06/2017 | 37 | RESPONSE to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Josue Ortiz. (Attachments: # 1 Declaration of Alan J. Pierce, Esq., # 2 Exhibit 1 - Copies of Decisions & Order of Hon. Frznczyk, # 3 Exhibit 2 - Discovery, # 4 Exhibit 3 - Letter dated July 24, 2017, # 5 Exhibit 4 - Proposed Amended Complaint, # 6 Exhibit 5 - Redlined Version of Proposed Amended Complaint, # 7 Memorandum in Support, # 8 Certificate of Service)(Pierce, Alan) (Entered: 10/06/2017) |
| 10/07/2017 | 38 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 37 Response to Motion, filed by Josue Ortiz, 36 Text Order, Set/Reset Motion and R&R Deadlines/Hearings, 19 Terminate Hearings, Status Conference, 10 Scheduling Order**<br><br>With plaintiff's cross-Motion (Docket No. 37) for Leave to Amend, Responses due by 10/27/2017. Replies both motions now due by 11/2/2017.<br><br>As previously ordered (Docket No. 19), the deadlines of the Scheduling Order (Docket No. 10) remain held **in abeyance** pending resolution of these motions. As warranted, the Scheduling Order deadlines will be updated and the Order amended following disposition of the pending motions.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 10/7/2017. (DRH) (Entered: 10/07/2017) |
| 10/18/2017 | 39 | Mediation Certification by Michael Menard(AGB) (Entered: 10/18/2017) |

| 10/25/2017 | 40 | RESPONSE to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Exhibit Exhibit A, # 2 Certificate of Service Certificate of Service)(Huggins, Maeve) (Entered: 10/25/2017) |
| 11/02/2017 | 41 | REPLY to Response to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Reply on Cross-Motion to Amend Complaint* filed by Josue Ortiz. (Attachments: # 1 Exhibit Exh 6)(Pierce, Alan) (Entered: 11/02/2017) |
| 11/02/2017 | 42 | REPLY to Response to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service Certificate of Service for Reply Memorandum of Law)(Huggins, Maeve) (Entered: 11/02/2017) |
| 11/03/2017 | 43 | CERTIFICATE of Service re 41 Reply to Response to Motion *Certificate of Service of Reply MOL 11/2* by Alan J. Pierce on behalf of Josue Ortiz (Pierce, Alan) Modified on 11/6/2017 to correct event (NRE). (Entered: 11/03/2017) |
| 11/06/2017 |  | E-Filing Notification: regarding 43 CERTIFICATE of Counsel. Incorrect event used to electronically file document. For future reference, use (Certificate of Service) event found under Service of Process. No action required; changes made by Clerk's Office. (NRE) (Entered: 11/06/2017) |
| 12/13/2017 | 44 | **MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**REPORT & RECOMMENDATION**<br><br>Re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach<br><br>It is recommended that defendants' Motion to Dismiss (Docket No. 32) be granted in part, deemed moot in part. If adopted, this action would be dismissed. It is further recommended that plaintiff's Cross-Motion for leave to amend the Complaint (Docket No. 37) be granted in part to remove defendant Buffalo Police Department as a party and denied as to other allegations. Objections due fourteen days from receipt; Objections to R&R due by 12/27/2017.<br><br>If these recommendations are modified or not adopted, this Court will schedule a status conference to set an Amended Scheduling Order for this action.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 12/13/2017. (DRH) (Entered: 12/13/2017) |
| 12/18/2017 | 45 | Mediation Certification by Michael Menard(AGB) (Entered: 12/18/2017) |
| 12/19/2017 | 46 | REQUEST AND ORDER re 44 REPORT AND RECOMMENDATIONS re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Vaughn, The City of Buffalo, Richard Wagstaff, Mark Stambach. Plaintiff's request for an extension of time to file objections to Magistrate Judge Scott's Report and Recommendation is granted. Objections to R&R due by 1/5/2018. SO ORDERED. Signed by Hon. Lawrence J. Vilardo on 12/19/2017. (APG) (Entered: 12/19/2017) |
| 01/05/2018 | 47 | OBJECTION to 44 Report and Recommendations *dated January 5, 2018* by Josue Ortiz. (Pierce, Alan) (Entered: 01/05/2018) |

**A-14**

| 01/07/2018 | 48 | TEXT ORDER re 47 Objection to Report and Recommendations filed by Josue Ortiz. Responses due by 1/26/2018. Replies due by 2/9/2018. If necessary, the Court will schedule oral argument at later time. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 1/7/2018. (CMD) (Entered: 01/07/2018) |
|---|---|---|
| 01/26/2018 | 49 | REPLY/RESPONSE to re 47 Objection to Report and Recommendations filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service Certificate of Service of Response to Objections)(Huggins, Maeve) (Entered: 01/26/2018) |
| 02/08/2018 | 50 | REPLY/RESPONSE to re 49 Reply/Response, 47 Objection to Report and Recommendations filed by Josue Ortiz. (Pierce, Alan) (Entered: 02/08/2018) |
| 04/13/2018 | 51 | Mediation Certification by Michael Menard(AGB) (Entered: 04/13/2018) |
| 01/03/2019 | 52 | TEXT ORDER. A Status Conference is set for 1/10/2019 at 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Lawrence J. Vilardo. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 1/3/2019. (APG) (Entered: 01/03/2019) |
| 01/10/2019 | 53 | Minute Entry for proceedings held before Hon. Lawrence J. Vilardo: Status Conference held on 1/10/2019. Judge Vilardo advised parties that potential conflicts may exist concerning his presiding over case. Parties given time to determine if actual conflicts exist. A conference call is set for 1/31/2019 at 9:30 AM with Law Clerk, Allison P. Gioia wherein parties will advise court of their findings. Dial-in instructions will be emailed directly to parties. Appearances. For plaintiff: Alan J. Pierce. For defendants: Assistant Corporation Counsel Maeve Huggins. (Court Reporter Ann M. Sawyer.) (CMD) Modified to correct date of conference call on 1/11/2019 (CMD). (Entered: 01/11/2019) |
| 01/10/2019 | | Set/Reset Hearings: Conference call set for 1/31/2019 at 9:30 AM. (CMD) (Entered: 01/11/2019) |
| 02/11/2019 | 54 | TEXT ORDER. Teleconference call scheduled for 2/11/2019 at 1:30 PM with Law Clerk, Allison Gioia. SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 2/11/2019. (CMD) (Entered: 02/11/2019) |
| 02/11/2019 | 55 | TEXT ORDER. After a January 10, 2019 status conference with the parties and a report back with Chambers staff on 2/11/2019, due to conflicts of interest, Judge Vilardo hereby recuses himself in this case and requests the Clerk of Court to assign a new District Judge (note related case 16-CV-322). SO ORDERED. Issued by Hon. Lawrence J. Vilardo on 2/11/2019. (APG)<br><br>-CLERK TO FOLLOW UP- (Entered: 02/11/2019) |
| 02/11/2019 | | Case Reassigned to Hon. Elizabeth A. Wolford. Hon. Lawrence J. Vilardo no longer assigned to the case. (NRE) (Entered: 02/11/2019) |
| 03/18/2019 | 56 | DECISION AND ORDER adopting in part and rejecting in part 44 Report and Recommendations; granting in part 37 motion for leave to file an amended complaint; denying as moot 32 motion for judgment on the pleadings; granting 32 motion to compel discovery. Plaintiff is instructed to file an amended complaint by no later than March 27, 2019. The parties shall confer with Judge Scott regarding Plaintiff's deadline to produce the documents sought by Defendants. Signed by Hon. Elizabeth A. Wolford on 03/18/2019. (CDH) (Entered: 03/18/2019) |
| 03/20/2019 | 57 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** |

**A-15**

|  |  |  |
|---|---|---|
|  |  | **TEXT ORDER re 56 Order on Motion to Dismiss for Failure to State a Claim, Order on Report and Recommendations**<br><br>Status Conference set for **Wed., 4/10/2019, 11:30 AM**, in Allegany Courtroom (6E), US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott to discuss scheduling plaintiff's response to defendants' motion to compel (Docket No. 32; *see* Docket No. 56, Order of 3/18/2019, at 15-16, 16) and scheduling the remaining pretrial proceedings.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 3/20/2019. (DRH) (Entered: 03/20/2019) |
| 03/26/2019 | 58 | TEXT ORDER. The Referral Order in this matter (Dkt. 33) is modified as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A), all pre-trial matters in this case are referred to the Hon. Hugh B. Scott, United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall not hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), unless further ordered by this Court. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 03/26/2019. (CDH)<br><br>-CLERK TO FOLLOW UP- (Entered: 03/26/2019) |
| 03/27/2019 | 59 | AMENDED COMPLAINT *3/27/19* against All Defendants, filed by Josue Ortiz.(Pierce, Alan) (Entered: 03/27/2019) |
| 04/08/2019 | 60 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>TEXT ORDER re 57 Text Order, Set Hearings<br><br>Status Conference of 4/10/2019 is canceled. Scheduling Conference set for **Tues., 4/30/2019, 11:15 AM**, in Allegany (6E) Courtroom, US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 4/8/2019. (DRH) (Entered: 04/08/2019) |
| 04/15/2019 | 61 | ANSWER to 59 Amended Complaint by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Huggins, Maeve) (Entered: 04/15/2019) |
| 04/16/2019 |  | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 04/16/2019) |
| 04/21/2019 | 62 | DISCOVERY PLAN by Josue Ortiz.(Pierce, Alan) (Entered: 04/21/2019) |
| 04/21/2019 | 63 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *with Proposed Amended Discovery Plan*. (Attachments: # 1 Amended Discovery Plan)(Pierce, Alan) (Entered: 04/21/2019) |

A-16

| 04/22/2019 | 64 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 60 Text Order, Set Hearings, Terminate Hearings, 62 Discovery Plan filed by Josue Ortiz, 63 Letter, filed by Josue Ortiz**<br><br>Status Conference (Docket No. 60) of 4/30/2019 is canceled at the request of the parties (Docket No. 63).<br><br>This Court generally adopts the deadlines proposed by the parties (Docket Nos. 62, 63) for pretrial proceedings. Thus, Fact Discovery completed by 11/1/2019; plaintiff's Expert Disclosure by 11/27/2019; defense's Expert Disclosure by 12/31/2019; Discovery completed by 2/14/2020.<br><br>Dispositive Motions due by 3/16/2020.<br><br>If no dispositive motion, Mediation ends 3/31/2020. Parties to contact the chambers of Judge Wolford to schedule a pretrial conference to set a trial date.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 4/22/2019. (DRH) (Entered: 04/22/2019) |
| 11/19/2019 | 65 | Letter from Alan Pierce, Esq., dated 11/19/2019, to Chambers, with copy to defense counsel requesting status conference by telephone. Filed by Chambers. (DRH) (Entered: 11/19/2019) |
| 11/19/2019 | 66 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER [with Attachment] re 65 Letter, 64 Text Order, Set Deadlines/Hearings, Set Scheduling Order Deadlines, Terminate Hearings**<br><br>Plaintiff's counsel wrote to Chambers (Docket No. 65) requesting a telephonic status conference to discuss the Scheduling Order deadlines (Docket No. 64). That request is **granted**.<br><br>Status Conference set for **Wed., 11/20/2019, 2:30 PM**, in Wyoming (5E) Courtroom, US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Hugh B. Scott. Parties, especially out of town counsel may participate by teleconference. Attached to this Order is the call-in instructions for the Court's teleconference system. At the time for the conference, counsel are to call the number for the Wyoming Courtroom (5E); please stay on the line until the Court joins the teleconference.<br><br>To prepare for the Status Conference (or to decide the scheduling issue if this conference, for whatever reason, is not held) Status Report from both sides as to proposed deadlines due by **11/20/2019 at 10:00 am**. This Court intends to resolve the scheduling issue on 11/20/2019.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 11/19/2019. (DRH) (Entered: 11/19/2019) |
| 11/20/2019 | 67 | **HONORABLE HUGH B. SCOTT**<br><br>TEXT OF MINUTE ENTRY<br><br>For proceedings held before Magistrate Judge Hugh B. Scott<br><br>Alan Pierce, Esq., for plaintiff; Assistant Corporation Counsel Maeve Higgins for defendants |

|  |  |  |
|---|---|---|
|  |  | Status Conference held on 11/20/2019. Plaintiff sought extension of discovery and subsequent deadlines, seeking a 45-day extension and setting deadline for answering outstanding Interrogatory answers, defense opposed. An extension, the final from this Court (given the age of this case), will be granted; an Amended Scheduling Order to be separately entered. (DRH) (Entered: 11/20/2019) |
| 11/20/2019 | 68 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT ORDER re 67 Terminate Hearings, Status Conference, 64 Text Order, Set Deadlines/Hearings, Set Scheduling Order Deadlines, Terminate Hearings**<br><br>**FIRST AMENDED SCHEDULING/CASE MANAGEMENT ORDER**<br><br>(Please Note: It is your responsibility to read this Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>Plaintiff's answer to outstanding defense Interrogatories due 12/15/2019. Plaintiff Expert Witness ID due by 1/15/2020. Defendant Expert Witness ID due by 2/14/2020. Motions to Compel Discovery due by 2/24/2020. Discovery completed by 3/23/2020.<br><br>Dispositive Motions due by 4/24/2020.<br><br>Mediation To End by 5/15/2020.<br><br>If no dispositive motions are filed, parties are to contact the Chambers of Judge Wolford to schedule a Pretrial Conference to set a trial date.<br><br>As stated in the Status Conference of 11/20/2019 (Docket No. 67), this is the **FINAL** extension to be granted by this Court. ANY FURTHER REQUESTS FOR EXTENSIONS OF THIS SCHEDULE WILL BE DENIED BY THIS COURT AND NEED TO BE REFERRED TO JUDGE WOLFORD.<br><br>So Ordered. Signed by Hon. Hugh B. Scott on 11/20/2019. (DRH) (Entered: 11/20/2019) |
| 04/24/2020 | 69 | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss , MOTION for Summary Judgment by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Statement of Undisputed Facts, # 22 Certificate of Service)(Huggins, Maeve) (Entered: 04/24/2020) |
| 04/27/2020 | 70 | TEXT ORDER re 69 Motion to Dismiss and for Summary Judgment. Responses are due on or before May 22, 2020. Replies are due on or before June 5, 2020. Upon receipt of all papers the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/27/2020. (CDH) (Entered: 04/27/2020) |
| 05/19/2020 | 71 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *consent extension of motion filing dates*. (Pierce, Alan) (Entered: 05/19/2020) |
| 05/19/2020 | 72 | TEXT ORDER. At the request of the parties (Dkt. 71), Plaintiff's deadline to respond to Defendants' motion to dismiss (Dkt. 69) is extended to June 5, 2020. Defendants' deadline to file a reply is extended to June 26, 2020. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/19/2020. (CDH) (Entered: 05/19/2020) |

A-18

| 06/03/2020 | 73 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *consent extension on motion dates*. (Pierce, Alan) (Entered: 06/03/2020) |
| --- | --- | --- |
| 06/03/2020 | 75 | ORDER extending time to respond/reply to 69 MOTION to Dismiss for Lack of Jurisdiction (Response due by 6/19/2020, Reply due by 7/10/2020). Signed by Hon. Elizabeth A. Wolford on 6/3/2020. (TF) (Entered: 06/04/2020) |
| 06/04/2020 | | DISREGARD E-Filing Notification: 73 Letter. This document contains a request for relief and should be filed as a motion. NO ACTION REQUIRED. (Entered: 06/04/2020) |
| 06/04/2020 | 74 | Second MOTION to Adjourn motion response dates *on consent - opposition and reply dates* by Josue Ortiz.(Pierce, Alan) (Entered: 06/04/2020) |
| 06/17/2020 | 76 | Third MOTION to Adjourn Opposition to motion to dismiss by Josue Ortiz.(Pierce, Alan) (Entered: 06/17/2020) |
| 06/17/2020 | 77 | LETTER ORDER granting 76 Motion to Extend Deadlines. Plaintiff's opposition to motion to dismiss due by 7/3/2020. Defendant's reply due by 7/24/2020. Signed by Hon. Elizabeth A. Wolford on 06/17/2020. (CDH) (Entered: 06/17/2020) |
| 07/03/2020 | 78 | DECLARATION re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by Josue Ortiz filed by Josue Ortiz. (Attachments: # 1 Statement of Undisputed Facts, # 2 Exhibit 1 - FRANCZYK ORDERS, # 3 Exhibit 2 - DEFS RESPONSES, # 4 Exhibit 3 - RONDON DEPO, # 5 Exhibit 4 - EVANS DEPO, # 6 Exhibit 5 - CITY EXH B, PART 3, # 7 Exhibit 6 - STAMBACH EXH 6, # 8 Exhibit 7 - BPD SYNOPSIS, # 9 Exhibit 8 - ROSARIO STATEMENT, # 10 Exhibit 9- CASE DEC, # 11 Exhibit 10-SEDITA DEC, # 12 Exhibit 11-CITY EXH B, PARTS 1-2, # 13 Exhibit 12-COGGINS DEPO, # 14 Exhibit 13-DEFS INITIAL DISCLOSURES, # 15 Exhibit 14-CLAIM, # 16 Exhibit 15-STAMBACH EXHS 2, 17)(Pierce, Alan) (Entered: 07/03/2020) |
| 07/07/2020 | 79 | MEMORANDUM in Opposition re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by Josue Ortiz. (Attachments: # 1 Exhibit 16 - Stambach Exh 1)(Pierce, Alan) (Entered: 07/07/2020) |
| 07/24/2020 | 80 | REPLY to Response to Motion re 69 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss MOTION for Summary Judgment filed by BPD DOES 1-12, Buffalo Police Department, Mary Gugliuzza, Mark Stambach, The City of Buffalo, Mark Vaughn, Richard Wagstaff. (Attachments: # 1 Certificate of Service)(Huggins, Maeve) (Entered: 07/24/2020) |
| 08/03/2020 | 81 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *requesting oral argument*. (Pierce, Alan) (Entered: 08/03/2020) |
| 02/26/2021 | 82 | DECISION AND ORDER granting in part and denying in part 69 Motion to Dismiss and/or for Summary Judgment. Signed by Hon. Elizabeth A. Wolford on 02/26/2021. (CDH)<br><br>-CLERK TO FOLLOW UP- (Entered: 02/26/2021) |
| 03/04/2021 | 83 | TEXT ORDER reassigning case referral to Magistrate Judge Hon. Michael J. Roemer in place of Hon. Hugh B. Scott. Signed by Mary C. Loewenguth, Clerk of Court on 3/4/2021. (CGJ) (Entered: 03/04/2021) |
| 04/12/2021 | 84 | TEXT ORDER regarding trial ready status. On or before April 26, 2021, the parties shall submit a joint status report by letter providing the Court with the following information, |

as well as any other information that the parties believe may be relevant: (1) whether the case is ready for trial; (2) the estimated length of any trial; (3) whether the case will be tried by a jury; and (4) each party's position on whether a settlement conference with the undersigned, the assigned magistrate judge, or a court-appointed mediator would be beneficial, and if so, any preference in that regard.

To assist in the preparation of this joint status report and for the purposes of transparency, the Court advises the parties that the District's most-recent General Order continuing all jury trials due to the COVID-19 pandemic is set to expire on April 26, 2021. There are 24 civil cases assigned to the undersigned (including this matter) that appear ready for trial. In addition, the undersigned is already scheduled to preside over 6 criminal jury trials this year (including one anticipated to last approximately 2 months), and it is likely that additional criminal cases assigned to the undersigned will be scheduled for trial this year. Therefore, it is unlikely that this matter can be scheduled for a date certain jury trial before the undersigned this year. As a result of this congestion and because cases often get resolved immediately prior to trial, the undersigned is contemplating implementing a standby-trial calendar, where this case would be set down for a jury trial without a date certain and the parties would be expected to proceed to trial on two weeks' notice. The undersigned understands that standby trials can present challenges and the parties may include in the joint status report any feedback about that proposal. However, it may be the only reasonable option to manage the undersigned's civil trial calendar.

In view of the above, the parties may wish to consider consenting to magistrate judge jurisdiction whereupon the trial would take place before and the scheduling would be set by a magistrate judge. In this regard, the parties are advised that any trial before the undersigned will take place at the Rochester courthouse, while a trial before the assigned magistrate judge would be held in Buffalo. While consenting to magistrate judge jurisdiction would benefit the parties with respect to scheduling, there will be no adverse substantive consequences should they withhold such consent. The undersigned also notes that if the parties consented to a bench trial, the matter may be able to proceed on set dates this year before the undersigned (although likely not on consecutively-scheduled dates).

SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/12/2021. (CDH) (Entered: 04/12/2021)

| 04/26/2021 | 85 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Huggins, Maeve) (Entered: 04/26/2021) |
| --- | --- | --- |
| 04/27/2021 | 86 | TEXT ORDER re 85 Joint Status Report. The parties have advised the Court that they are in the process of scheduling a mediation date. By no later than June 30, 2021, the parties shall provide a further joint report advising the Court of the status of their mediation efforts. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/27/2021. (CDH) (Entered: 04/27/2021) |
| 06/30/2021 | 87 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Huggins, Maeve) (Entered: 06/30/2021) |
| 07/06/2021 | 88 | TEXT ORDER. On or before August 20, 2021, the parties shall provide the Court with a joint report regarding the status of their mediation efforts. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/06/2021. (CDH). (Entered: 07/06/2021) |
| 08/19/2021 | 89 | STATUS REPORT by Josue Ortiz. (Pierce, Alan) (Entered: 08/19/2021) |

| 08/20/2021 | 90 | STATUS REPORT by Mark Stambach. (Quinn, Robert) (Entered: 08/20/2021) |
| 08/23/2021 | 91 | TEXT ORDER. On or before September 3, 2021, the parties shall provide the Court with a single joint report regarding the status of their mediation efforts. The Court will not consider submission of competing reports to constitute compliance with this Order. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 08/23/2021. (CDH). (Entered: 08/23/2021) |
| 09/03/2021 | 92 | STATUS REPORT by Mark Stambach. (Quinn, Robert) (Entered: 09/03/2021) |
| 09/23/2021 | 93 | Mediation Certification by Michael Menard. The case has not settled mediation complete. (Menard, Michael) (Entered: 09/23/2021) |
| 11/10/2021 | 94 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *requesting conf to set trial date*. (Pierce, Alan) (Entered: 11/10/2021) |
| 11/12/2021 | | E-Filing Notification regarding 94 LETTER: this document contains a request for relief and should be filed as a motion. ACTION REQUIRED: Re-file document using the motion event.(SG) (Entered: 11/12/2021) |
| 11/12/2021 | | E-Filing Notification: DISREGARD previous E-Filing Notification directing the refiling of the 94 Letter. The Court will accept the filing as is. (SG) (Entered: 11/12/2021) |
| 11/30/2021 | 95 | TEXT ORDER. A telephonic status conference is set in this matter for December 7, 2021, at 10:00 a.m. The attorneys who will be trying the case must attend and be prepared to schedule a trial date. Due to the Court's congested calendar, the parties are strongly discouraged from seeking an adjournment of this conference, but in the event such an adjournment is requested, any such request must set forth mutually convenient dates and times that the parties are available within the next 45 days. To access the conference, dial (866) 434-5269 and enter access code 8632566# sufficiently in advance of the start time. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 11/30/2021. (CDH) (Entered: 11/30/2021) |
| 12/07/2021 | 96 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances by telephone: Alan J. Pierce, Esq. on behalf of plaintiff; Robert Emmet Quinn, Esq. on behalf of defendant Mark Stambach. Status Conference held on 12/7/2021 by telephone. Jury trial set for 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Pretrial Conference set for 3/30/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Pretrial Order to be issued. (Court Reporter AT&T Teleconference) (DPS) (Entered: 12/08/2021) |
| 12/09/2021 | 97 | NOTICE OF REMOVAL by All Defendants (Huggins, Maeve) (Entered: 12/09/2021) |
| 12/16/2021 | 98 | PRETRIAL ORDER, Pretrial Conference set for 3/30/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury Trial set for 5/9/2022 09:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Signed by Hon. Elizabeth A. Wolford on 12/15/2021. (Please note: This docket entry does not contain every detail of this order. It is your responsibility to read and download the pdf to this document for future reference.) (DPS) (Entered: 12/16/2021) |
| 02/04/2022 | 99 | NOTICE of Appearance by Hugh M. Russ, III on behalf of Mark Stambach (Russ, Hugh) (Entered: 02/04/2022) |
| 02/04/2022 | 100 | NOTICE of Appearance by Peter A. Sahasrabudhe on behalf of Mark Stambach (Sahasrabudhe, Peter) (Entered: 02/04/2022) |

**A-21**

| 02/09/2022 | 101 | First MOTION for Extension of Time to File *proposed voire dire questions, exhibit lists, expert witness list, deposition testimony, motions in limine, statement of claims, list of damages, objections to opposing party's deposition designations and motions in limine, jury instructions, and papers in connection with motions in limine* by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 02/09/2022) |
|---|---|---|
| 02/09/2022 | 102 | First MOTION for Extension of Time to File *PROPOSED voire dire questions, exhibit lists, expert witnesses and summaries, deposition testimony, motions in limine, statement of claims, list of damages, objections to plaintiff's deposition designations, options to motions in limine, jury instructions, and reply papers in connection with motions in limine* by Mark Stambach.(Sahasrabudhe, Peter) (Entered: 02/09/2022) |
| 02/10/2022 | 103 | First MOTION for Extension of Time to File *joining Def's motion for extension re pretrial documents* by Josue Ortiz.(Pierce, Alan) (Entered: 02/10/2022) |
| 02/10/2022 | 104 | TEXT ORDER granting in part 102 Motion for Extension of Time and 103 Motion for Extension of Time. A jury trial is currently scheduled to commence in this action on May 9, 2022, unless preempted by the trial of a criminal case. (Dkt. 98). The final pretrial conference is scheduled for March 30, 2022, and pretrial filings are to be filed beginning on March 9, 2022. (*Id.*).<br><br>The parties have requested a 30-day extension of the pretrial filing deadlines, without any adjournment of the trial date. While the Court appreciates the parties' scheduling concerns and does not take denying any of the requested relief lightly, the COVID-19 pandemic has created havoc with the Court's already busy docket, and the Court's trial schedule does not allow it to accommodate the parties' request in full. The Court currently has jury trials scheduled through the end of 2022, and in some cases those trials are double- and triple-booked.<br><br>Indeed, the parties are hereby advised that with respect to the trial date in this case, the Court currently has a criminal trial in *United States v. Baker*, No. 21-cr-6042, scheduled to commence on May 16, 2022. In the event that criminal trial (which by law takes precedence over any civil trial) goes forward, and the parties continue to anticipate a two-week trial in this matter, the Court will need to move the trial of this action forward by one week, to on or about May 2, 2022. The parties should therefore be prepared to have the start date of this trial determined on a standby basis. If counsel are not available the week of May 2, 2022, they will need to make arrangements to have counsel appear who are available. The Court fully appreciates the difficulties this may present to trial counsel, but it is unfortunately the result of the Court's extremely congested docket. The parties are reminded that they are free to consent to magistrate judge jurisdiction and that the highly competent magistrate judges in this District do not have the same scheduling difficulties with trials as the undersigned. While consenting to magistrate judge jurisdiction would benefit the parties with respect to scheduling, there will be no adverse substantive consequences should they withhold such consent.<br><br>For the foregoing reasons and the reasons set forth in the pending motions to extend, the Court grants the parties' requests for an adjournment of the pretrial filing deadlines in part. The final pretrial conference in this matter is reset for April 13, 2022, at 1:30 p.m. Pretrial filing deadlines will be adjusted accordingly, with the earliest pretrial filings being due on March 25, 2022. The Court will issue an amended pretrial order setting forth the new deadlines.<br><br>SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 02/10/2022. (CDH) (Entered: 02/10/2022) |

A-22

| 02/10/2022 | 105 | AMENDED PRETRIAL ORDER. Pretrial Conference is **reset for 4/13/2022 at 1:30 PM** in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury trial to commence on 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. Jury trial to be reset for 5/2/2022 if the Court's criminal calendar requires. Signed by Hon. Elizabeth A. Wolford on 2/10/2022. (Please note: This docket entry does not contain every detail of this order. It is your responsibility to read and download the pdf to this document for future reference.) (DPS) (Entered: 02/10/2022) |
|---|---|---|
| 03/25/2022 | 106 | Exhibit List by Josue Ortiz.. (Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 107 | Expert Witness List by Josue Ortiz. (Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 108 | Letter filed by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *explaining ECF filing error on Trial Documents and attaching missing trial documents*. (Attachments: # 1 Exhibit Trial-Plaintiff's Claims, # 2 Exhibit Trial-Plaintiff's Damages, # 3 Exhibit Trial-Plaintiff's Trial Brief/MIL, # 4 Exhibit Trial-Plaintiff's Voir Dire)(Pierce, Alan) (Entered: 03/25/2022) |
| 03/25/2022 | 109 | Proposed Voir Dire by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 03/25/2022) |
| 03/25/2022 | 110 | Exhibit List by Mark Stambach.. (Sahasrabudhe, Peter) (Entered: 03/25/2022) |
| 03/25/2022 | 111 | First MOTION in Limine by Mark Stambach. (Attachments: # 1 Declaration Declaration in Support, # 2 Exhibit Exhibit A- Plaintiff's Expert Disclosure, # 3 Exhibit Exhibit B- Mary Evans Deposition Excerpt, # 4 Exhibit Exhibit C- Sentencing Transcript, # 5 Memorandum in Support)(Sahasrabudhe, Peter) (Entered: 03/25/2022) |
| 03/28/2022 | 112 | Proposed Voir Dire by Josue Ortiz. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/28/2022 | 113 | MOTION in Limine & Trial Brief by Josue Ortiz. (Pierce, Alan) Modified on 3/29/2022 (CGJ). (Entered: 03/28/2022) |
| 03/28/2022 | 114 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Claims at trial*. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/28/2022 | 115 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Special Damages*. (Pierce, Alan) (Entered: 03/28/2022) |
| 03/29/2022 | | E-Filing Notification: re 113 modified to add Motion in Limine. (CGJ) (Entered: 03/29/2022) |
| 03/31/2022 | 116 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Attachments: # 1 Exhibit Jointly Proposed Statement of the Case)(Sahasrabudhe, Peter) (Entered: 03/31/2022) |
| 04/01/2022 | 117 | Proposed Jury Instructions by Josue Ortiz. (Pierce, Alan) (Entered: 04/01/2022) |
| 04/01/2022 | 118 | MEMORANDUM in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit Epps complaint, # 3 Exhibit Dixon complaint, # 4 Exhibit Peters Amd Complaint, # 5 Exhibit P's Expert Disclosure, # 6 Exhibit Redlich expert report, # 7 Exhibit Joseph expert report, # 8 Exhibit P's responses to document demands)(Pierce, Alan) (Entered: 04/01/2022) |

A-23

| 04/01/2022 | 119 | Proposed Jury Instructions by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/01/2022) |
|---|---|---|
| 04/01/2022 | 120 | DECLARATION filed by Mark Stambach *in partial opposition to Plaintiff's motions in limine* filed by Mark Stambach. (Attachments: # 1 Plaintiff's Deposition Testimony, # 2 Plaintiff's Statement of Damages, # 3 Memorandum of Law)(Sahasrabudhe, Peter) (Entered: 04/01/2022) |
| 04/05/2022 | 121 | TEXT ORDER. Due to a change in the Court's schedule, the pretrial conference currently scheduled for April 13, 2022, is hereby reset for April 11, 2022, at 10:00 a.m. at the United States Courthouse, 100 State Street, Rochester, New York. All other deadlines set forth in the Amended Pretrial Order entered on February 10, 2022 (Dkt. 105) remain in effect. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/05/2022. (CDH) (Entered: 04/05/2022) |
| 04/06/2022 | 122 | REPLY to Response to Motion re 113 MOTION *IN LIMINE* filed by Josue Ortiz. (Pierce, Alan) (Entered: 04/06/2022) |
| 04/06/2022 | 123 | Trial Document by Josue Ortiz as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Plaintiff's Response to Def's Jury Instructions*. (Pierce, Alan) (Entered: 04/06/2022) |
| 04/06/2022 | 124 | REPLY/RESPONSE to re 111 First MOTION in Limine filed by Mark Stambach. (Attachments: # 1 Exhibit A- March, 2022 E-mail From Plaintiff's Counsel, # 2 Exhibit B- November 19, 2019 Correspondence From Plaintiff's Counsel, # 3 Exhibit C- November 19, 2019 Correspondence from Former Defense Counsel, # 4 Exhibit D- February 2002 E-mail from Plaintiff's Counsel, # 5 Memo of Law)(Sahasrabudhe, Peter) (Entered: 04/06/2022) |
| 04/06/2022 | 125 | REPLY/RESPONSE to re 117 Proposed Jury Instructions *Objections to Plaintiff's Proposed Jury Instructions* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/06/2022) |
| 04/11/2022 | 126 | TEXT ORDER re: April 11, 2022 Pretrial Conference. Further submissions by Plaintiff regarding Defendant's Motions in Limine (Dkt. 111) related to expert witnesses and evidence involving conduct at issue in unrelated lawsuits are due on or before April 15, 2022. Responses by Defendant are due on or before April 22, 2022. The parties shall file an agreed upon stipulation concerning post-sentencing evidence or alternatively, an explanation of their respective positions, on or before April 27, 2022. A further Pretrial Conference shall be held on May 2, 2022, at 3:00 p.m. at US Courthouse, 100 State Street, Rochester, NY 14614. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/11/2022. (MGB) (Entered: 04/11/2022) |
| 04/11/2022 | 127 | TEXT ORDER setting trial date. Instead of Monday, May 9, 2022, referenced in the Amended Pretrial Order 105 , the jury trial in this matter will commence on May 3, 2022, at 9:00 a.m. at US Courthouse, 100 State Street, Rochester, NY 14614. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/11/2022. (MGB) (Entered: 04/11/2022) |
| 04/11/2022 | 128 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Alan J. Pierce, Esq. and Wayne C. Felle, Esq. on behalf of plaintiff; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Initial Pretrial Conference held on 4/11/2022. Trial start date of 5/3/2022 confirmed; trial schedule discussed. Court advises regarding rulings on outstanding issues; written decision to also be issued. Supplemental submissions as discussed on the record due by 4/15/2022, responses by 4/22/2022. Proposed Stipulation concerning post-sentencing evidence due by 4/27/2022. Further Pretrial Conference set for 5/2/2022 at 3:00 PM in US Courthouse, |

| | | |
|---|---|---|
| | | 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 04/11/2022) |
| 04/15/2022 | 129 | RESPONSE in Opposition re 111 First MOTION in Limine *Supplemental* filed by Josue Ortiz. (Attachments: # 1 Exhibit Reiber, # 2 Exhibit Redlich, # 3 Exhibit Joseph, # 4 Exhibit Coggins, # 5 Exhibit Shehata)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/15/2022 | 130 | RESPONSE in Opposition re 111 First MOTION in Limine *SUPPLEMENTAL FILING* filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit)(Pierce, Alan) (Entered: 04/15/2022) |
| 04/15/2022 | 131 | RESPONSE in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Memorandum in Support)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/15/2022 | 132 | First MOTION to Adjourn Trial by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Memorandum in Support)(Felle, Wayne) (Entered: 04/15/2022) |
| 04/16/2022 | 133 | TEXT ORDER regarding 132 First Motion to Adjourn Trial by Josue Ortiz. To the extent Plaintiff suggests that Mr. Pierce and the law firm of Hancock Estabrook LLP have the right to withdraw as counsel either unilaterally or through consent of Plaintiff and his co-counsel, this is incorrect. Pursuant to this District's Local Rule of Civil Procedure 83.2(c), any such withdrawal at this stage of the proceeding may only be accomplished with consent of the Court. Not only is no such application for withdrawal pending before the Court, but even in the event such a motion is filed, it is unlikely to be granted at this late stage of the proceeding. Nonetheless, to ensure that the record is complete and to afford Defendant's counsel an opportunity to be heard, the Court will set a deadline to respond to the pending motion to adjourn. Defendant must respond to the pending motion to adjourn on or before April 20, 2022. In the meantime, all deadlines and the trial date remain in place as scheduled. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/16/2022. (MGB) (Entered: 04/16/2022) |
| 04/18/2022 | 134 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (MOTION ARGUMENT) held on 04/11/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/9/2022. Redacted Transcript Deadline set for 5/19/2022. Release of Transcript Restriction set for 7/18/2022. (KJC) (Entered: 04/18/2022) |
| 04/19/2022 | 135 | First MOTION to Withdraw as Attorney *Hancock Estabrook, LLP and Alan J Pierce* by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Memorandum in Support)(Pierce, Alan) (Entered: 04/19/2022) |
| 04/20/2022 | 136 | Amended Notice of Motion re 135 MOTION to Withdraw as Attorney by by Josue Ortiz. (Pierce, Alan) Modified on 4/21/2022 (CGJ). (Entered: 04/20/2022) |
| 04/20/2022 | 137 | RESPONSE in Opposition re 132 First MOTION to Adjourn Trial filed by Mark Stambach. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Memo of Law) (Sahasrabudhe, Peter) (Entered: 04/20/2022) |
| 04/21/2022 | | E-Filing Notification: re 136 Docket text modified to show as Amended Notice of Motion. (CGJ) (Entered: 04/21/2022) |

A-25

| 04/21/2022 | 138 | TEXT ORDER denying 132 Motion to Adjourn Trial and setting motion hearing re 135 Motion to Withdraw as Attorney. The trial of this action, which has been pending since 2016, is scheduled to commence on May 3, 2022. Plaintiff Josue Ortiz ("Plaintiff") now seeks an adjournment of the trial date based on the requested withdrawal of co-counsel Alan Pierce of the law firm Hancock Estabrook. There is a factual dispute regarding Mr. Pierce's pending motion for withdrawal (Dkt. 135) and a hearing thereon is hereby set for Tuesday, April 26, 2022, at 2:00 p.m. at the United States Courthouse, 100 State Street, Rochester, New York. All counsel for Plaintiff (that is, both Mr. Pierce and co-counsel Wayne Felle) and Plaintiff himself must be present at this hearing and prepared to answer questions from the Court under oath. The purpose of this hearing shall be to determine whether Plaintiff has voluntarily and of his own will discharged Mr. Pierce as his attorney.<br><br>Regardless of the ultimate outcome of Mr. Pierce's motion to withdraw, Plaintiff's motion to adjourn the trial date (Dkt. 132) is denied. "A district court's decisions regarding the timetable for trial will not be reversed absent an abuse of discretion." *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993) (citation omitted). The party seeking to adjourn a trial date "bears the burden of establishing its need." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (citation omitted). Plaintiff has failed to do so here. Even if Mr. Pierce is permitted to withdraw, Plaintiff will continue to be represented by Mr. Felle, an experienced trial attorney who is fully familiar with the facts and procedure of this case. Accordingly, there will be minimal, if any, prejudice to Plaintiff in commencing trial as scheduled. Moreover, the Court has already expended significant resources in clearing its calendar for the trial of this case, notwithstanding the preference it is required to give to the many criminal cases on its docket and the tremendous congestion and trial backlog caused by the COVID-19 pandemic. If the Court granted an adjournment at this time it is unlikely the trial of this case could proceed within this calendar year, resulting in further substantial delay in a case that has already been pending for a number of years.<br><br>Further, Plaintiff's eleventh-hour request for an adjournment was made only after a Court appearance at which the Court expressed skepticism regarding Plaintiff's compliance with the applicable expert disclosure requirements and stated that several of Plaintiff's expert witnesses would likely not be permitted to testify. Only two months earlier, Plaintiff's counsel rejected a request from newly-retained defense counsel for an adjournment, stating that "[t]his case is 6 years old and needs to go forward." (Dkt. 137-1 at 1). It thus appears that Plaintiff's request for an adjournment is a disguised attempt to allow additional time to cure the deficiencies in Plaintiff's expert disclosures. The Court will not countenance this type of gamesmanship.<br><br>Jury selection in this matter will commence on May 3, 2022, as scheduled. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/21/2022. (CDH) (Entered: 04/21/2022) |
| 04/22/2022 | 139 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Sahasrabudhe, Peter) (Entered: 04/22/2022) |
| 04/26/2022 | 140 | REPLY/RESPONSE to re 136 Amended MOTION to Withdraw as Attorney *Notice of Motion by Hancock Estabrook, LLP and Alan J Pierce*, 135 First MOTION to Withdraw as Attorney *Hancock Estabrook, LLP and Alan J Pierce Supplement by Hancock Estabrook, LLP* filed by Josue Ortiz. (Attachments: # 1 Exhibit)(Pierce, Alan) (Entered: 04/26/2022) |

**A-26**

| | | |
|---|---|---|
| 04/26/2022 | 141 | TEXT ORDER granting 135 Motion to Withdraw as Attorney. For the reasons discussed on the record on April 26, 2022, the Court grants Alan J. Pierce, Esq.'s and Hancock Estabrook, LLP's motion to withdraw as counsel for Plaintiff Josue Ortiz. Plaintiff will continue to be represented by Wayne C. Felle, Esq. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 04/26/2022. (CDH) (Entered: 04/26/2022) |
| 04/26/2022 | 142 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Alan J. Pierce, Esq.; Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Oral Argument re 135 Motion to Withdraw as Attorney held on 4/26/2022. Motion granted for reasons as stated on the record; Alan J. Pierce, Esq. and Hancock Estabrook, LLP relieved as counsel for Plaintiff Josue Ortiz. Court addresses plaintiff's expert witnesses; written decision to be issued. Plaintiff's renewed oral request to adjourn trial denied. Pretrial Conference remains set for 5/2/2022 at 3:00 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 04/26/2022) |
| 04/26/2022 | 143 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 04/26/2022) |
| 04/27/2022 | 144 | RESPONSE in Opposition re 111 First MOTION in Limine filed by Josue Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Felle, Wayne) (Entered: 04/27/2022) |
| 04/27/2022 | 145 | Trial Document by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Stipulation*. (Attachments: # 1 Exhibit A-Stipulation)(Sahasrabudhe, Peter) (Entered: 04/27/2022) |
| 04/28/2022 | 146 | DECLARATION signed by ALAN J PIERCE re 111 First MOTION in Limine filed by Josue Ortiz *response to court question at 4/26 hearing* filed by Josue Ortiz. (Pierce, Alan) (Entered: 04/28/2022) |
| 05/02/2022 | 147 | DECLARATION re 111 First MOTION in Limine filed by Mark Stambach *in further support of motions in limine* filed by Mark Stambach. (Attachments: # 1 Pierce E-mail, # 2 Plaintiff's Memorandum in Opposition to Detective Stambach's Motions in Limine) (Sahasrabudhe, Peter) (Entered: 05/02/2022) |
| 05/02/2022 | 148 | STIPULATION *Stipulation of Undisputed Facts* by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 05/02/2022) |
| 05/02/2022 | 149 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. on behalf of plaintiff; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant Stambach. Final Pretrial Conference held on 5/2/2022. Jury trial set for 5/3/22 to proceed as scheduled. (Court Reporter Karen Clark.) (DPS) (Entered: 05/02/2022) |
| 05/03/2022 | 150 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial held on 5/3/2022. Jury selected and sworn; preliminary instructions given. Opening statements by plaintiff and defendant. Jury Trial set to continue on 5/4/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/03/2022) |
| 05/04/2022 | 151 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant M. Stambach. Jury Trial held on 5/4/2022. |

| | | |
|---|---|---|
| | | Plaintiff's testimony begins; witnesses E. Coggins, M. Vaughn, and J. Lonergan called by plaintiff. Jury Trial set to continue on 5/5/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/04/2022) |
| 05/05/2022 | 152 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial continued on 5/5/2022. Plaintiff's testimony complete; defendant M. Stambach called by plaintiff. Jury Trial set to continue on 5/6/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/05/2022) |
| 05/06/2022 | 153 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. on behalf of defendant M. Stambach. Jury Trial continued on 5/6/2022. Plaintiff calls witnesses M. Evans and M. Lauver. Charge conference held. Jury Trial set to continue on 5/9/2022 at 9:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Elizabeth A. Wolford. (Court Reporter Karen Clark.) (DPS) (Entered: 05/06/2022) |
| 05/06/2022 | 154 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (OPENING STATEMENTS) held on 05/03/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/27/2022. Redacted Transcript Deadline set for 6/6/2022. Release of Transcript Restriction set for 8/4/2022. (KJC) (Entered: 05/06/2022) |
| 05/09/2022 | 155 | TEXT ORDER granting in part and denying in part 113 Plaintiff's motion in limine concerning prior convictions for the reasons stated on the record on April 11, 2022; and granting 111 Defendant's motion in limine to limit evidence of other lawsuits against Defendant and subsequent remedial measures, and to limit reference to defense counsel as affiliated with the City of Buffalo, for the reasons stated on the record on April 11 and 26, 2022. In addition, 111 Defendant's motion in limine pertaining to post-sentencing information was resolved as stated on the record at the appearances on April 11 and 26 and May 2, 2022, and through the stipulation of the parties filed at Docket 148. Finally, 111 Defendant's motion in limine pertaining to expert witnesses is granted with respect to Rachel Duchon, Ronald Reiber, Ph.D., and Allison Redlich, Ph.D., granted in part as to Dr. Evelyn Coggins and Dr. Brian Joseph, and denied as moot as to Dr. Hany Shehata, Dr. Raul Vazquez, and Michele Lowry, Psy.D., as stated on the record at the appearances on April 11 and 26 and May 2, 2022, and a written decision explaining the Court's reasoning more fully will be issued in due course. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/09/2022. (CDH) (Entered: 05/09/2022) |
| 05/09/2022 | 156 | Letter filed by ALAN PIERCE as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department *Charging Lien*. (Pierce, Alan) (Entered: 05/09/2022) |
| 05/09/2022 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings(TRIAL TESTIMONY OF E. COGGINS) held on 05/04/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due |

A-28

| | | |
|---|---|---|
| | | 5/31/2022. Redacted Transcript Deadline set for 6/9/2022. Release of Transcript Restriction set for 8/8/2022. (KJC) (Entered: 05/09/2022) |
| 05/09/2022 | 158 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Wayne C. Felle, Esq. with plaintiff J. Ortiz; Hugh M. Russ, III, Esq. and Peter A. Sahasrabudhe, Esq. with defendant M. Stambach. Jury Trial completed on 5/9/2022. Plaintiff calls witness E. Torres. Parties rest; proof is closed. Jurors charged; deliberations held. Judge orders meals for jurors. Verdict reached; jury finds in favor of plaintiff. Damages awarded in the amount of $5 million in compensatory damages and $1.5 million in punitive damages. (Court Reporter Karen Clark.) (DPS) (Entered: 05/10/2022) |
| 05/10/2022 | 159 | TEXT ORDER. All post-verdict motions in this case shall be filed in accordance with the deadlines contained in the Federal Rules of Civil Procedure. This Text Order shall supersede any prior statements by the Court regarding deadlines for post-verdict motions. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/10/2022. (CDH) (Entered: 05/10/2022) |
| 05/10/2022 | 160 | JURY VERDICT. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 161 | Sealed Document. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 162 | JURY VERDICT as to punitive damages. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 163 | Sealed Document. (CGJ) (Entered: 05/10/2022) |
| 05/10/2022 | 164 | JUDGMENT in favor of Josue Ortiz against Mark Stambach. Signed by Mary C. Loewenguth, Clerk of Court on 5/10/2022. (CGJ) (Entered: 05/10/2022) |
| 05/16/2022 | 165 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings TRIAL TESTIMONY OF M. STAMBACH) held on 05/05/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2022. Redacted Transcript Deadline set for 6/16/2022. Release of Transcript Restriction set for 8/15/2022. (KJC) (Entered: 05/16/2022) |
| 05/16/2022 | 166 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - CLOSING ARGUMENTS) held on 05/09/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2022. Redacted Transcript Deadline set for 6/16/2022. Release of Transcript Restriction set for 8/15/2022. (KJC) (Entered: 05/16/2022) |
| 05/20/2022 | 167 | First MOTION for Attorney Fees by Josue Ortiz. (Attachments: # 1 Declaration, # 2 Exhibit Billing Ledger, # 3 Exhibit Bill of Costs, # 4 Memorandum in Support)(Felle, Wayne) (Entered: 05/20/2022) |
| 05/20/2022 | 168 | TEXT ORDER re 167 First MOTION for Attorney Fees filed by Josue Ortiz. Responses shall be filed on or before June 10, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/20/2022. (CDH) (Entered: 05/20/2022) |
| 05/23/2022 | 169 | First MOTION for Attorney Fees by ALAN PIERCE. (Attachments: # 1 Declaration, # 2 |

| | | |
|---|---|---|
| | | Memorandum in Support)(Pierce, Alan) (Entered: 05/23/2022) |
| 05/23/2022 | 170 | CONTINUATION OF EXHIBITS by ALAN PIERCE. to 169 First MOTION for Attorney Fees filed by ALAN PIERCE. (Attachments: # 1 Exhibit 2 - costs, # 2 Exhibit 3 - AJP CV, # 3 Exhibit 4 - EMAILS, # 4 Exhibit 5 - JOINT RETAINER, # 5 Exhibit 6 - EMAILS, # 6 Exhibit 7 - RETURNED CHECKS)(Pierce, Alan) (Entered: 05/23/2022) |
| 05/23/2022 | 171 | TEXT ORDER re 169 First Motion for Attorney Fees by Alan Pierce. Responses shall be filed on or before June 13, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 05/23/2022. (CDH) (Entered: 05/23/2022) |
| 05/24/2022 | 172 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME I - PRELIMINARY INSTRUCTIONS/OPENING STATEMENTS) held on 05/03/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 1. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/14/2022. Redacted Transcript Deadline set for 6/24/2022. Release of Transcript Restriction set for 8/22/2022. (KJC) (Entered: 05/24/2022) |
| 05/26/2022 | 173 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME II TESTIMONY OF J. ORTIZ, M. VAUGHN & J. LONERGAN) held on 05/04/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/16/2022. Redacted Transcript Deadline set for 6/27/2022. Release of Transcript Restriction set for 8/24/2022. (KJC) (Entered: 05/26/2022) |
| 05/31/2022 | 174 | DECISION AND ORDER memorializing rulings re 111 Motion in Limine filed by Mark Stambach. Signed by Hon. Elizabeth A. Wolford on 05/31/2022. (CDH) (Entered: 05/31/2022) |
| 06/03/2022 | 175 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - TESTIMONY OF J. ORTIZ) held on 05/05/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 3. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/24/2022. Redacted Transcript Deadline set for 7/5/2022. Release of Transcript Restriction set for 9/1/2022. (KJC) (Entered: 06/03/2022) |
| 06/03/2022 | 176 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - TESTIMONY OF E. TORRES, FINAL JURY CHARGE, VERICT) held on 05/09/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/24/2022. Redacted Transcript Deadline set for 7/5/2022. Release of Transcript Restriction set for 9/1/2022. (KJC) (Entered: 06/03/2022) |
| 06/07/2022 | 177 | MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b)*, MOTION for a New Trial Pursuant to Fed. R. Civ. P. 59(a), MOTION for Remittur |

| | | |
|---|---|---|
| | | Pursuant to Fed. R. Civ. P. 59(e) by Mark Stambach. (Attachments: # 1 Declaration in Support of Motion for Summary Judgment, # 2 Exhibit A - Trial Exhibits Entered by Ortiz, # 3 Exhibit B - Trial Exhibits Entered by Defense Counsel, # 4 Memorandum in Support of Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b)) (Sahasrabudhe, Peter). Added MOTION for New Trial, MOTION for Remittur on 6/8/2022 (CGJ). (Entered: 06/07/2022) |
| 06/07/2022 | 178 | TEXT ORDER re 177 MOTION for Summary Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e) filed by Mark Stambach. Responses shall be filed on or before June 28, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/07/2022. (CDH) (Entered: 06/07/2022) |
| 06/08/2022 | | E-Filing Notification: re 177 Modified to add Motion for New Trial and Motion for Remittur. (CGJ) (Entered: 06/08/2022) |
| 06/10/2022 | 179 | RESPONSE in Opposition re 167 First MOTION for Attorney Fees filed by Mark Stambach. (Attachments: # 1 Memorandum of Law in Opposition)(Sahasrabudhe, Peter) (Entered: 06/10/2022) |
| 06/13/2022 | 180 | REPLY to Response to Motion re 169 First MOTION for Attorney Fees filed by Mark Stambach. (Attachments: # 1 Memorandum in Opposition)(Sahasrabudhe, Peter) (Entered: 06/13/2022) |
| 06/14/2022 | 181 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (TRIAL - VOLUME IV - TESTIMONY OF M. EVANS AND M. LAUBER, CHARGE CONFERENCE) held on 05/06/2022, before HONORABLE ELIZABETH A. WOLFORD. Court Reporter Karen J. Clark, RPR, KarenClark1013@AOL.com. Volume Number: 4. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/5/2022. Redacted Transcript Deadline set for 7/15/2022. Release of Transcript Restriction set for 9/12/2022. (KJC) (Entered: 06/14/2022) |
| 06/21/2022 | 182 | REPLY to Response to Motion re 169 First MOTION for Attorney Fees filed by ALAN PIERCE. (Attachments: # 1 Memorandum in Support REPLY MOL, # 2 Exhibit EXH 8 - TIME ENTRIES FOR DA CASE, # 3 Exhibit EXH 9-P'S RESPONSES TO DEF'S INTERROGATORIES)(Pierce, Alan) (Entered: 06/21/2022) |
| 06/21/2022 | 183 | First MOTION for Leave to File *Reply Papers in Connection with Pending Fed. R. Civ. P. 50(b) Motion for Judgment as a Matter of Law* by Mark Stambach.(Sahasrabudhe, Peter) (Entered: 06/21/2022) |
| 06/21/2022 | 184 | TEXT ORDER granting 183 Motion for Leave to File Reply Papers in Connection with Pending Fed. R. Civ. P. 50(b) Motion for Judgment as a Matter of Law. Defendant shall file his reply on or before July 8, 2022. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/21/2022. (CDH) (Entered: 06/21/2022) |
| 06/23/2022 | 185 | First MOTION for Leave to File *REPLY ON HANCOCK MOTION FOR FEES & COSTS* by ALAN PIERCE.(Pierce, Alan) (Entered: 06/23/2022) |
| 06/23/2022 | 186 | TEXT ORDER granting *nunc pro tunc* 185 Motion for Leave to File Reply on Hancock's Motion for Fees & Costs. The Court will consider the reply papers filed on June 21, 2022 (Dkt. 182) in connection with Hancock Estabrook's pending motion for fees and costs (Dkt. 169). SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 06/23/2022. (CDH) (Entered: 06/23/2022) |

| 06/28/2022 | 187 | RESPONSE in Opposition re 177 MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e)* MOTION for New Trial filed by Josue Ortiz. (Attachments: # 1 Memorandum in Support Memo of Law)(Felle, Wayne) (Entered: 06/28/2022) |
| 07/01/2022 | 188 | Letter filed by Mark Stambach as to The City of Buffalo, Mary Gugliuzza, Mark Stambach, Richard Wagstaff, BPD DOES 1-12, Mark Vaughn, Buffalo Police Department . (Sahasrabudhe, Peter) (Entered: 07/01/2022) |
| 07/05/2022 | 189 | First MOTION for Leave to File by Josue Ortiz.(Felle, Wayne) (Entered: 07/05/2022) |
| 07/05/2022 | 190 | TEXT ORDER granting 189 Motion for Leave to File Excess Pages. The Court grants Plaintiff's request for leave to exceed the 25-page limitation for responsive papers *nunc pro tunc* and will accept and consider Plaintiff's response in opposition to Defendant's post-trial motions filed on June 28, 2022. (Dkt. 187). Consistent with the Local Rules of Civil Procedure and the undersigned's individual practices, any future requests to exceed the applicable page limitations must be made in advance of the filing deadline. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/05/2022. (CDH) (Entered: 07/05/2022) |
| 07/07/2022 | 191 | TEXT ORDER granting leave to file excess pages. Defendant may file a reply brief of no more than 15 pages in further support of his post-trial motions (Dkt. 177). SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 07/07/2022. (CDH) (Entered: 07/07/2022) |
| 07/08/2022 | 192 | REPLY to Response to Motion re 177 MOTION for Summary Judgment *as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and for Remittur Pursuant to Fed. R. Civ. P. 59(e)* MOTION for New Trial *Reply Memorandum of Law in Further Support of Post-Verdict Relief* filed by Mark Stambach. (Sahasrabudhe, Peter) (Entered: 07/08/2022) |
| 12/21/2022 | 193 | TEXT ORDER. Oral argument on 167 Motion for Attorney Fees, 169 Motion for Attorney Fees, and 177 Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), a New Trial Pursuant to Fed. R. Civ. P. 59(a), and Remittur Pursuant to Fed. R. Civ. P. 59(e) is set for January 31, 2023, at 2:00 p.m. at the United States Courthouse, 2 Niagara Square, Buffalo, New York 14202. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 12/21/2023. (CDH) (Entered: 12/21/2022) |
| 01/31/2023 | 194 | Minute Entry for proceedings held before Hon. Elizabeth A. Wolford: Appearances: Pltf: Wayne Felle, Esq. (current counsel), Alan Pierce, Esq. (former counsel), Pltf present / Deft (via telephone): Hugh Russ, Esq., Peter Sahasrabudhe, Esq. Oral Argument held on 1/31/2023. Court reserved decision. (Court Reporter Megan Pelka.) (SDW) (Entered: 01/31/2023) |
| 02/17/2023 | 195 | DECISION AND ORDER granting in part and denying in part 167 Motion for Attorneys' Fees; granting in part and denying in part 169 Motion for Attorneys' Fees; denying 177 Motion for Summary Judgment; denying 177 Motion for New Trial; denying 177 Motion for Remittitur. Signed by Hon. Elizabeth A. Wolford on 02/17/2023. (CDH) (Entered: 02/17/2023) |
| 02/27/2023 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Oral Argument Proceedings held on 01/31/2023, before Honorable Judge Elizabeth A. Wolford. Court Reporter/Transcriber Megan E. Pelka, RPR, (716) 229-0880. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | |
|---|---|---|
| | | Redaction Request due 3/20/2023. Redacted Transcript Deadline set for 3/30/2023. Release of Transcript Restriction set for 5/30/2023. (MEP) (Entered: 02/27/2023) |
| 03/10/2023 | 197 | NOTICE OF APPEAL by Mark Stambach. Filing fee $ 505, receipt number ANYWDC-4818525. (Sahasrabudhe, Peter) (Entered: 03/10/2023) |
| 03/13/2023 | | Within 14 days of filing the Notice of Appeal, the appellant is required to electronically file with the District Court an index of filed documents it wishes the Court of Appeals to consider, called Designation of Record on Appeal. After receipt, the Clerks Office will certify and transmit the index to the Circuit. (SG) (Entered: 03/13/2023) |
| 03/13/2023 | | Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (SG) (Entered: 03/13/2023) |
| 03/21/2023 | 198 | First MOTION to Stay *Enforcement of Judgment and Waive Bond Requirement* by Mark Stambach. (Attachments: # 1 Declaration in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement, # 2 Affidavit in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement, # 3 Exhibit A - Buffalo Cash Flow, # 4 Memorandum in Support in Support of Motion to Stay Enforcement of Judgment and Waive Bond Requirement)(Sahasrabudhe, Peter) (Entered: 03/21/2023) |
| 03/24/2023 | 199 | DESIGNATION of Record on Appeal by Mark Stambach re 197 Notice of Appeal CLERK TO FOLLOW UP (Sahasrabudhe, Peter) (Entered: 03/24/2023) |
| 03/24/2023 | 200 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals re 199 DESIGNATION of Record on Appeal (CGJ) (Entered: 03/24/2023) |
| 03/24/2023 | 201 | TEXT ORDER re 198 MOTION to Stay Enforcement of Judgment and Waive Bond Requirement. Responses are due on or before April 14, 2023. Replies are due on or before April 21, 2023. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers. SO ORDERED. Signed by Hon. Elizabeth A. Wolford on 03/24/2023. (CDH) (Entered: 03/24/2023) |
| 03/30/2023 | 202 | NOTICE of Appearance by Wayne C. Felle on behalf of Josue Ortiz (Felle, Wayne) (Entered: 03/30/2023) |
| 04/14/2023 | 203 | NOTICE of Appearance by Timothy W. Hoover on behalf of Josue Ortiz (Hoover, Timothy) (Entered: 04/14/2023) |
| 04/14/2023 | 204 | NOTICE of Appearance by Spencer Leeds Durland on behalf of Josue Ortiz (Durland, Spencer) (Entered: 04/14/2023) |
| 04/14/2023 | 205 | RESPONSE in Opposition re 198 First MOTION to Stay *Enforcement of Judgment and Waive Bond Requirement* filed by Josue Ortiz. (Hoover, Timothy) (Entered: 04/14/2023) |
| 04/21/2023 | 206 | REPLY to Response to Motion re 198 First MOTION to Stay *Enforcement of Judgment and Waive Bond Requirement* filed by Mark Stambach, The City of Buffalo. (Attachments: # 1 Affidavit Affidavit of William Ferguson in Further Support of Motion to Waive the Posting of a Bond, with Exhibit A)(Sahasrabudhe, Peter) (Entered: 04/21/2023) |
| 04/26/2023 | 207 | DECISION AND ORDER granting 198 motion to stay enforcement of judgment pending appeal and to waive bond requirement. Signed by Hon. Elizabeth A. Wolford on 04/26/2023. (CDH) (Entered: 04/26/2023) |

A-33

CM/ECF LIVE(C) - U.S. District Court:nywd

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/16/2023 14:07:07 | | | |
| **PACER Login:** | cpnycpara17 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-cv-00321-EAW-MJR |
| **Billable Pages:** | 28 | **Cost:** | 2.80 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                              Plaintiff,

      vs.

RICHARD WAGSTAFF, MARY
GUGLIUZZA, BPD DOES I-12 in their
Capacity as Police Officers of the CITY OF
BUFFALO, BUFFALO POLICE
DEPARTMENT, MARK STAMBACH, and
MARK VAUGHN,

                           Defendants.

**AMENDED COMPLAINT**

Civil Action No.
16-CV-321
(EAW/HBS)

Plaintiff Josue Ortiz, by and through his attorneys, Hancock Estabrook, LLP and the Law

Offices of Wayne C. Felle, as and for his Amended Complaint, alleges as follows:

**INTRODUCTION**

1.    This civil rights action seeks compensatory and punitive damages as a result of the

wrongful arrest, conviction, and imprisonment of Plaintiff Josue Ortiz ("ORTIZ") pursuant to 42

U.S.C. § 1983 and provisions of the United States Constitution as described herein.

2.    The wrongful arrest, conviction, and imprisonment of Ortiz was the direct and

foreseeable consequence of official policies, patterns, practices and customs that manifest a

failure to recognize basic principles of due process, constitutional rights and demonstrate

intentional, reckless disregard and indifference for human life and liberty.

3.    The Buffalo Police Department ("BPD"), an administrative arm of the City of

Buffalo ("CITY"), acting through the individual Defendants named herein who are employees

of the BPD, the BPD, and the supervisory officials of the BPD, operating with the authority of

law, failed to protect ORTIZ by allowing individuals who lacked the proper training and oversight to violate his constitutional rights, thereby causing ORTIZ profound physical and psychological injuries.

## JURISDICTION AND VENUE

4.      This civil rights action is brought pursuant to, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and other federal laws for relief from commission of intentional and tortuous acts.

5.      This Court has jurisdiction over said federal claims pursuant to 28 U.S.C. § 1331 and §1343(3) and (4), as they are brought to redress deprivations of rights, privileges, and immunities secured by the United States Constitution and by federal law.

6      Venue is proper in the Western District of New York, under 28 U.S.C. §1391(b), in that Defendants are located in this state and district, and a substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in  this district.

7.      That at all times hereinafter mentioned, and at the time of the occurrence hereinafter more particularly set forth, ORTIZ was a citizen of the United States residing in the City of Buffalo, County of Erie, State of New York.

8.      That at all times hereinafter mentioned, and at the time of the occurrences hereinafter more particularly set forth, Defendants, RICHARD WAGSTAFF ("WAGSTAFF"), MARY GUGLIUZZA ("GUGLIUZZA"), MARK VAUGHN ("VAUGHN), MARK STAMBACH ("STAMACH"), and BPD DOES 1-12 were residents of the County of Erie, State of New York.

{H3586328.1}                                    2

9.    That at all times hereinafter mentioned, the BPD is a CITY department duly organized and existing under and by virtue of the laws of the City of Buffalo, County of Erie and State of New York.

10.    That at all times hereinafter mentioned the BPD was responsible for the policies, practices and customs of BPD and its officers.

11.    That at all times hereinafter mentioned the BPD was responsible for the hiring, training, supervision, retention, control and discipline of police officers and/or detectives within the office of the BPD, including specifically its investigators, officers and employees.

12.    That at all times hereinafter mentioned the BPD was the employer, supervisor and/or authority over the individual Defendants, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 , and through the authority vested in the BPD, said individual Defendants were authorized to and did act under the color of state law.

13.    That at all times hereinafter mentioned the BPD was responsible for ensuring that all officers within the BPD acted lawfully; followed constitutional due process safeguards; implemented and adhered to customs, practices and policies consistent with the pursuit of justice and presumption of innocence; and guaranteed all the rights and liberties provided for by the Constitution of the State of New York and the United States.

14.    Defendants WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 were hired, employed and acting on behalf of the BPD at all times herein and were acting in such capacity as an authorized officers and/or detectives of the BPD, under color of state law.

{H3586328.1}                                                      3

15.     Defendants, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 were at all times relevant to this Complaint duly appointed to lawfully enforce the laws of the State of New York and through the BPD having taken an oath to uphold the laws of the State of New York and the United States, thereby acting under color of state law.

16.     At all times relevant hereto and in all of their actions described herein, each Defendant was acting under the color of state law, county authority, state authority, statute, custom, practice or usage, and pursuant to their official capacity.

17     At all times relevant hereto and in all of their actions described herein, each Defendant acted intentionally and/or with reckless disregard and/or deliberate indifference and/or negligently.

18.     This action is brought on behalf of ORTIZ for violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 for false arrest and imprisonment, malicious prosecution, unreasonable search and seizure of his person, deprivation of due process, violation of his Fifth Amendment right against self-incrimination, his due process right to be free from the fabrication of evidence, and *Brady* violations.

## BACKGROUND AND FACTUAL ALLEGATIONS

19.     On November 16, 2004, ORTIZ was taken into police custody, subjected to custodial interrogation, arrest and incarceration through the actions, authority and power of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 operating under color of state law for the murders of Nelson "Lobo" Camacho and Miguel "Flaco" Camacho ("the Camacho Brothers").

20.     ORTIZ's alleged "confession" on November 16, 2004 to the murder of the Camacho Brothers on November 11, 2004 was contrary to, and known to be contrary to, the undisputed facts surrounding the murders by Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12.

21.     On November 22, 2004 ORTIZ was ordered by Erie County Court to undergo a CPL 730

Competency exam.

22.     On November 29, 2004 the Director of the Office of Forensic Mental Health Services requested that the examination be delayed until ORTIZ could be stabilized with medication, and in his letter to the court of December 3, 2004, the Director noted that ORTIZ had presented to the Holding Center on November 17th in an apparently perplexed and frightened state; though responsive, his answers seemed irrelevant and he displayed a blunt affect. His demeanor vacillated from combative to silent.

23.     ORTIZ was transferred to the CPEP Unit at ECMC Hospital on November 23, 2004 where his behavior went from agitated to catatonic, with the hospital notes describing him as suicidal, bizarre, in need of physical and chemical restraints, irrational, illogical, preoccupied and psychotic; his history reflected chronic depression and both alcohol and substance abuse.

24.     As of early December, 2004, ORTIZ was diagnosed as suffering from a psychotic mental illness and was deemed to be "incompetent" to stand trial.

25.     The attending physician diagnosed ORTIZ on November 30, 2004 as having undifferentiated schizophrenia and found him to be "incompetent" to stand trial.

26.    During the time that ORTIZ was found to be incompetent to stand trial Defendant STAMBACH gave testimony to an Erie County Grand Jury regarding ORTIZ's false and coerced confession.

27.    On December 6, 2004, an Erie County Grand Jury indicted ORTIZ on four (4) counts of Murder in the First Degree, four (4) counts of Murder in the Second Degree, and one (1) count of Burglary in the First Degree.

28.    These charges involved the murder of the Camacho Brothers in the City of Buffalo, New York on November 11, 2004.

29.    On December 29, 2004 ORTIZ was discharged from the hospital and returned to the Holding Center.

30.    Evelyn Coggins, MD, saw ORTIZ on January 13, 2005 and January 21, 2005 and observed that while still unfocused, he appeared more relaxed and appropriate; that his thoughts were organized, but he complained of hearing voices saying, "it was you"; that he was no longer overtly suicidal; and she diagnosed him as suffering from psychosis, possible schizoaffective disorder/bipolar, but found that he was no longer incapacitated under Article 730.

31.    At a competency hearing held in May 2005, Dr. Coggins testified that: ORTIZ had professed his innocence of the charges and that he told her that he had nothing to do with the murders every time she spoke with her; opined that ORTIZ could have been suffering from a serious mental illness as of November 11, 2004 and may have been experiencing his first psychotic break from reality.

32.     On September 3, 2005, Ronnie Williams, a jailhouse informant claiming to have been housed with ORTIZ at the Holding Center, allegedly reported to Defendant STAMBACH that ORTIZ had admitted (in English) to killing the Camacho brothers.

33.     As a result of his Indictment ORTIZ was facing a sentence of life in prison if convicted.

34.     Given his emotional and mental condition ORTIZ could not cope with the idea of being behind bars the rest of his life.

35.     On March 22, 2006, ORTIZ pled guilty to two counts of Manslaughter 1st degree upon a sentence commitment of 25 years concurrent determinate and five years PRS.

36.     The Pre-Sentence Report ("PSR") states that: ORTIZ declined to make any statement to the Probation Department about the offenses and reported that "he had made a decision to withdraw his guilty plea;" that he reported a "history of *** mental health disorders" beginning in 2000 which included hearing voices and seeing people who were not there.

37.     At sentencing on June 16, 2006, defense counsel for ORTIZ advised the Court that on the day before counsel received a letter from ORTIZ indicating that he had changed his mind and wanted to withdraw his plea; ORTIZ told his counsel on June 16, 2006 that he wanted to take back his pleas because he did not commit the murders, and that on the day of his confession he was clearly and obviously under the influence of coke, pills, and marijuana and operating for several days without sleep.

38.     Notwithstanding this new information, on June 16, 2006, ORTIZ was sentenced to an indefinite term of twenty-five (25) years of imprisonment with five (5) years of post-release supervision, and was directed to the custody of the New York State Department of Corrections.

39.     As a direct result of the actions and constitutional violations of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 ORTIZ continued to be incarcerated from November 16, 2004 until his release from state prison on December 8, 2014.

40.     The wrongful arrest, prosecution, conviction, and incarceration of ORTIZ was the direct result of the unconstitutional and intentional, reckless disregard and deliberate indifference actions of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 who:

a.     obtained a coerced, manipulated and false confession from ORTIZ whom they knew was suffering from obvious psychiatric illness and who had a history of serious mental health problems at the time of his interrogation and alleged confession;

b.     concealed, withheld and failed to investigate exculpatory and inconsistent evidence related to the commission of this crime;

c.     detained and arrested ORTIZ without regard to the witness identifications, and inconsistencies in ORTIZ's statements with the physical and forensic evidence;

d.     coerced, manipulated and obtained fabricated evidence from a known "jail house informant" to provide testimony reasonably known to be false;

e.     failed to properly investigate the commission of the murders and instead framed ORTIZ, a mentally compromised individual, for a crime he did not commit;

f.     failed to consider ORTIZ's significant cognitive impairment, bi-polar disorder and schizophrenia which contributed to a diminished and distorted capacity to comprehend everyday events and thereby allowed Defendants to deny and violate his constitutional rights.

{H3586328.1}                                    8

41.     Rather than properly investigate the case Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 choose to remove or omit pieces of evidence that did not fit into their theory and ORTIZ's confession and to submit for prosecution a case known to have serious questions of credibility and trustworthiness, all contrary to the pursuit of justice.

42.     Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

43.     Disregarding ORTIZ's psychiatric disorders and obvious psychotic break from reality at the time of the investigation and interrogation, along with ignoring the substantial evidence of his innocence Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 obtained and relied upon a manufactured, coerced and patently false confession from ORTIZ.

44.     At the time of ORTIZ's detention, interrogation, arrest, indictment, prosecution, conviction and imprisonment there were significant inconsistencies between his purported "confession" and the objective physical evidence and initial witness descriptions of the perpetrators of the crime that should have caused Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 to reject, prevent and question the integrity of the criminal case against ORTIZ, but instead these Defendants removed, hid or altered the inconsistent investigation material which was clearly *Brady* material and failed,

refused and denied turning over the exculpatory information or evidence to criminal defense

attorneys representing ORTIZ; the significant inconsistencies included but were not limited to

the following:

      a.      DNA evidence at the crime scene and on items recovered from the crime scene

excluded ORTIZ as a participant in the murders;

      b.      the statements of Vega and Osorio that exonerated ORTIZ;

      c.      his confession contained no clear identification of his co-conspirators despite the

police understanding from the outset that there were three (3) participants in the crime; no

mention of the bat reportedly used and recovered by the police; identification of who kicked the

door in or who had what weapon;

      d.      his confession was demonstrably inaccurate in asserting the use of incorrect

vehicles and multiple guns including an AK-47, a .9 mm and shotgun fired when ballistics only

support an AK-47 or SKS; describing Flaco's handgun as "darker" than a cell phone when the

gun found at the scene was chrome colored;

      e.      from a prosecutorial perspective, ORTIZ's confession was a dead end insofar as it

furnished no useful leads or basis to prosecute anyone else for the murders despite that right

from the start the police had reason to believe that three people were involved and yet the police

investigation and prosecution concluded with ORTIZ's confession and guilty plea;

      f.      the inconsistent statements and testimony of cooperating witnesses and criminals,

and evidence including vehicles used, weapons fired, whether the TV was on, the attempted

removal of one victim's chain, location of victims, description of victim on cell phone, where

the victims were shot and the actual killer would know the correct details; and

g.     contrary to ORTIZ's confession that identified only himself as the killer and his physical appearance as a man 6 feet 5 inches tall and weighing approximately 350 pounds at the time of his confession all other witnesses interviewed by Defendants several people observed three (3) suspects fleeing the scene, none of whom even remotely fit ORTIZ's physical description; the three suspects were all described as young looking, light skinned individuals wearing dark hoodies and ranging in height from 5' 5" to no more than 5' 11" and of average .

45.     While ORTIZ was incarcerated the US Attorney's Office for the WDNY, Federal Bureau of Investigation ("FBI"), and the New York State Police ("NYSP") were investigating the 10th Street and 7th Street gangs in Buffalo, and along with the examination of witness statements, physical evidence, the likelihood of a false confession and DNA evidence surrounding ORTIZ's conviction for the killings of the Camacho Brothers, these law enforcement officials determined that other individuals – not ORTIZ – were responsible for the murder of the Camacho Brothers.

46.     Testimony was presented to a Federal Grand Jury on multiple dates in 2011 and 2012, including testimony from ORTIZ.

47.     While the Federal Grand Jury proceedings were pending federal prosecutors met with ORTIZ on several occasions, including on September 6, 2012 at Attica State Prison.

48.     At this meeting after the prosecutors informed ORTIZ that people were claiming that he did not commit the murders and that many details of the crimes did not match up with what he had told Defendants in 2004, ORTIZ stated "OK, I'm innocent" and he advised the prosecutors that he confessed in 2004 because "(y)ou could say that I was scared *** but I didn't

know what I was scared of. Back then, I kinda lost my mind for awhile. *** When I spoke with the detectives I had been up for three days."

49.     On November 8, 2012 the Federal Grand Jury indicted Misael (Misa) Montalvo, Efrain (Cheko) Hidalgo, and Brandon Jonas for the murders of the Camacho Brothers.

50.     On November 9, 2012 this Court executed an Order authorizing the release of the Grand Jury minutes to the Erie County District Attorney's office, and on March 7, 2013 this Court authorized the release of the minutes to ORTIZ's original defense counsel in the state prosecution.

51.     On November 16, 2012, WDNY US Attorney William J. Hochul, Jr. and Assistant US Attorney Joseph M. Tripi ("AUSA Tripi") announced to the public that a three count superseding indictment was returned by a Federal Grand Jury on November 8, 2012 charging Efrain Hidalgo, Brandon Jonas and Misael Montalvo with two counts of discharging a firearm causing the death in furtherance of drug trafficking and violent crime for the murders of the Camacho Brothers.

52.     AUSA Tripi announced that based upon the independent investigation of Federal law enforcement officers, ORTIZ has "zero role in this offense" and requested that the Erie County District Attorney's Office release ORTIZ without further litigation or proceedings.

53.     The WDNY US Attorneys' Office announced ORTIZ's innocence publicly and in Federal Court, and AUSA Tripi stated publically that the clear and unequivocal evidence provided to the District Attorney's Office clearly established ORTIZ's innocence.

54.     Upon information and belief the evidence provided by the WDNY US Attorney's office to the District Attorney was provided to Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12.

55.     Notwithstanding the foregoing, ORTIZ remained in the custody of the New York State Department of Corrections due to Defendants' intentional, reckless disregard and/or indifference to ORTIZ's constitutional rights.

56.     On or about April 23, 2013 ORTIZ filed a CPL 440 motion in Erie County Court to vacate his conviction based on, *inter alia*, newly discovered evidence, including the Federal indictment of other individuals for the murders; conflicts in the identification and physical evidence used by Defendants to arrest and convict him; his false, manipulated and coerced confession procured by the Defendants when ORTIZ was suffering from a severe psychotic break from reality, including schizophrenia, exacerbated by sleep deprivation, drug use and a limited command of the English language; DNA evidence excluding ORTIZ from the crime scene and from physical evidence connected with it; and his actual innocence.

57.     While the motion was pending and opposed by the Erie County DA's office and Defendants herein it was admitted by the DA's office that was never turned over to ORTIZ or his counsel the statements of Pedro Vega and Carlos Osorio that were contained in the prosecution file and exonerated ORTIZ in the murders prior to his guilty plea.

58.     The Vega and Osorio statements constituted *Brady* material.

59.     Defendants' failure to turn over those statements constituted a *Brady* violation which deprived him of the opportunity for effective use of the information in deciding whether to plead guilty.

60.     Notwithstanding the clear and convincing evidence of ORTIZ's wrongful conviction and incarceration, Defendants herein opposed or assisting in opposing ORTIZ's motion to vacate his c conviction.

61.     On February 7, 2014 Hon. Thomas J. Francyzk ordered a hearing to determine whether by clear and convincing evidence ORTIZ should have his conviction for the murders of the Camacho brothers vacated.

62.     At numerous hearing dates on the motion to vacate the Individual Defendants herein failed to appear as witnesses and continued to support opposition to the motion to vacate requiring that the motion proceedings be delayed and re-scheduled while presenting no evidence to rebut the motion to vacate or ORTIZ's actual innocence.

63.     As a direct result of Defendants' violations of ORTIZ's constitutional rights in 2004 and 2005 and their action in opposing his motion to vacate, ORTIZ continued to be incarcerated from November 16, 2012 until his release from prison on December 9, 2014 pursuant to a Court Order dated the same date.

64.     On January 20, 2015, the 2004 indictment in *People v. Ortiz*, Indictment No. 02630-2004 was dismissed, and such was formalized in an Order filed and entered on May 8, 2015.

65.     Defendants were acting under color of state law when they violated ORTIZ's constitutional rights and the protections and safeguards afforded to all United States citizens, including but not limited to violating ORTIZ's Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

66.     Defendants acted without probable cause because, *inter alia*, probable cause does not exist where, as here, ORTIZ's conviction was vacated.

67.     Defendants' acted in bad faith and illegally in arresting and convicting ORTIZ.

68.     ORTIZ's arrest, coerced confession, prosecution, conviction and imprisonment was the direct result of official policies, customs or usages maintained by Defendant BPD that caused ORTIZ to be subjected to a denial of his Federal constitutional rights.

69.     The policies, customs or usages maintained by Defendants include, but are not limited to:

a.     deliberate indifference to the constitutional rights of citizens including ORTIZ;

b.     deliberate indifference to suspects' mental, emotional and/or cognitive illnesses and/or impairments which could lead to a false, coerced and/or manipulated confession;

c.     solve a crime and clear a case as quickly as possible regardless of inconsistencies between a confession and the actual facts of the crime;

d.     subject suspects with mental and psychiatric illness and/or impairment to unreasonable, manipulative, coercive and unlawful interrogation, detention, arrest, prosecution and conviction;

e.     fail to provide to suspects and defendants and their counsel exculpatory *Brady* material;

f.     fail to disclose and removal from criminal files *Brady* information and evidence inconsistent to a confession;

g.     tolerate and condone police officers' acts of misconduct and constitutional violations;

h.      fail to properly train, educate and/or supervise police its employees, including the Individual Defendants herein, thereby allowing learning on the job through improper, undocumented and unconstitutional methods exhibiting an intentional and/or reckless indifference and/or intentional disregard to the liberties and constitutional rights of United States citizens; and

i.      intentionally fail to accept uncontradicted proof from the US Attorneys' office and the FBI of the actual innocence of previously convicted defendants including ORTIZ.

71.     The supervisory and policy making officers of Defendant BPD directly participated in the constitutional violations alleged herein; failed to remedy the violations after being informed of them through a report or appeal; created policies, customs and usages alleged above that sanctioned conduct amounting to constitutional violations or allowed such policies, customs or usages to continue; engaged in grossly negligent supervision of the subordinate employees names as Individual Defendants herein who committed the violations; or failed to act on information indicating that unconstitutional acts were occurring.

72.     The willful, intentional, illegal and wrongful actions of Defendants herein constitute outrageous conduct insofar as they were intended to and did cause ORTIZ to be imprisoned for over ten (10) years, without regard to his mental and psychiatric condition, with a likelihood of causing ORTIZ extreme and unnecessary physical and mental injuries and emotional distress.

73.     As a result of Defendants' unconstitutional acts ORTIZ has been wrongfully imprisoned for over 10 years of his life, and has and continues to live with the stigma and humiliation of being looked upon by others as a murderer.

{H3586328.1}                                    16

74.    The injuries and damages sustained by ORTIZ arising from his unjust and illegal arrest, conviction, and imprisonment include, but are not limited to the following: personal injuries including beatings, attacks, stabbings; pain and suffering; severe mental anguish and emotional distress; emotional abuse by correctional officers; attempted suicide due to the physical and mental abuse sustained in prison; constant fear of being sexually assaulted, beaten, stabbed, burned or killed; activation, precipitation and aggravation of post-traumatic stress disorder; loss of income; humiliation, indignities and embarrassment; degradation, including the day to day indignities, embarrassment and degradation of prison life, and life as a convicted murderer; injury to reputation; permanent loss of natural psychological development; subjection to physical and verbal attacks and assaults; abuse and harassment; restrictions on all forms of personal freedom, including, but not limited to, daily loss of freedom in movement from place to place; the loss of choice and opportunity with respect to diet, sleep, personal and social contact; loss of educational and vocational opportunity; inadequate medical and/or psychiatric and/or psychological care by physicians and/or other medical personnel of his own choosing; athletic opportunity; personal fulfillment; sexual activity; family and social relationships; socializing, reading, television, movies, travel, enjoyment and expression; post-traumatic stress disorder, nightmares and insomnia, anxiety, panic attacks, depressive disorder, sleep disturbance, nightmares and dysthymia; the indignity and embarrassment of repeated strip searches;

75.    As a direct result of his unjust conviction and imprisonment and loss of freedom, in the future ORTIZ will: require ongoing medical and/or psychiatric and related treatment, therapy, rehabilitation and care into the indefinite future; fail to make social relationships; fail to

{H3586328.1}                                    17

find suitable and rewarding employment; and be forced to rely on social services for his basic support and necessities.

76.    During his incarceration ORTIZ had numerous family members pass away, and was unable to attend their funerals, or even be aware of when they passed away; his grandmother passed away in 2009, and ORTIZ was not told of her passing until 2012, causing ORTIZ to live with the shame of his grandmother passing while she thought he was a murderer.

77.    Due to ORTIZ's unjust conviction and incarceration, his sense of reality, his self-confidence, his day to day living skills, his social skills, his trust in others, his trust in his own perceptions were severely affected, eroded and/or destroyed; he now feels helpless to control his life and has little hope for the future; it is unlikely that he will ever be able to live and manage his life independently.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983 – False Arrest and Imprisonment*

78.    ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-77 above.

79.     This section 1983 claim for false arrest is brought to vindicate ORTIZ's Fourth and Fourteenth Amendment right to be free from unreasonable seizures and seizures.

80.    As alleged above Defendants conduct was under color of state law, and deprived ORTIZ of a right, privilege, or immunity secured by the Constitution or laws of the United States.

81.    False arrest and false imprisonment are synonymous causes of action and are substantially the same in all relevant respects under Section 1983.

82.    Defendants intended to confine ORTIZ, ORTIZ was conscious of the confinement, did not consent to the confinement, and the confinement was not otherwise privileged.

83.    Defendants' acted without probable cause.

84.    As a direct result of Defendants' false arrest and imprisonment of ORTIZ he suffered the injuries and damages alleged herein.

## SECOND CAUSE OF ACTION
### *42 U.S.C. § 1983 – Malicious Prosecution*

85.    ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-84 above.

86.    ORTIZ's arrest, arraignment, indictment, conviction, and incarceration violated his right to be free of an unreasonable seizure of his person, i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty.

87.    ORTIZ was deprived of liberty consistent with his seizure.

88.    As a result of Defendants' action ORTIZ suffered a harm of constitutional proportions as required by law.

89.    Defendants' prosecution terminated in ORTIZ's favor.

90.    Defendants' acted without probable cause.

91.    As a direct result of Defendants' malicious prosecution of ORTIZ he suffered the injuries and damages alleged herein.

**THIRD CAUSE OF ACTION**
*42 U.S.C. § 1983 – Fifth Amendment Right Against Self-Incrimination*

92.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-91 above.

93.     The Fifth Amendment's self-incrimination clause bars Defendants from ORTIZ's coerced and compelled confession in his criminal prosecution.

94.     Defendants' use of ORTIZ's coerced confession violated his Fifth Amendment rights.

95.     Defendants' acted without probable cause.

96.     As a direct result of Defendants' violation of ORTIZ's Fifth Amendment right against self-incrimination he suffered the injuries and damages alleged herein.

**FOURTH CAUSE OF ACTION**
*42 U.S.C. § 1983 – Due Process Right To Be Free From Fabrication Of Evidence*

97.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-96 above.

98.     ORTIZ has the right not to be deprived of liberty as a result of any government officer's fabrication of evidence.

99.     Defendants' fabricated evidence against ORTIZ through his coerced and false confession and the hiding and failure to produce exculpatory and inconsistent evidence exonerating ORTIZ of the murders.

100.    Defendants' acted without probable cause.

101.    As a direct result of Defendants' violation of ORTIZ's Due Process right to be free from fabrication of evidence he suffered the injuries and damages alleged herein.

## FIFTH CAUSE OF ACTION
### *42 U.S.C. § 1983 – Brady Violations*

102.   ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-101 above.

103.   Defendants withheld and failed to produce to ORTIZ and his defense counsel before his plea exculpatory *Brady* material.

104.   ORTIZ's prosecution and the conviction in which Defendants' *Brady* violations occurred was determined to be invalid.

105.   The evidence at issue was favorable to the accused, was suppressed by Defendants either willfully or inadvertently, and ORTIZ was prejudiced as a result.

106.   Defendants' acted without probable cause.

107.   As a direct result of Defendants' Brady violations ORTIZ suffered the injuries and damages alleged herein.

**WHEREFORE**, Plaintiff, JOSUE ORTIZ, prays for judgment against all Defendants, and each of them, as follows:

1.   For an award of monetary damages against Defendants, jointly and severally, in an amount to be proven at trial;

2.   For punitive and exemplary damages against Defendants, jointly and severally, in an amount to be proven at trial;

3.   For costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable law;

4.   For such other and further relief as the Court deems just and proper.

A-55

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues triable by a jury.

DATED: March 27, 2019            Respectfully Submitted,
                                 *Attorneys for Plaintiff*

                                 HANCOCK ESTABROOK, LLP

                                 By: ___ s/ Alan J Pierce _____
                                        Alan J. Pierce, Esq.

                                 100 Madison St., Suite 1500
                                 Syracuse, New York 13202
                                 Tel:  (315) 565-4500

                                     - and -

                                 LAW OFFICES OF WAYNE C. FELLE, ESQ.
                                 Wayne C. Felle, Esq.
                                 6024 Main St.
                                 Williamsville, New York 14221
                                 Tel: (716) 505-2700

A-56

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                          Plaintiff,

                                                    **ANSWER TO AMENDED**
                                                    **COMPLAINT**

vs.
                                                    Index No. 16-CV-321

**RICHARD WAGSTAFF, MARY GUGLIUZZA**
**BPD DOES I-12 in their Capacity as Police Officers**       Jury Trial Demanded
**of the CITY OF BUFFALO, BUFFALO POLICE**
**DEPARTMENT, MARK STAMBACH, and**
**MARK VAUGHN,**

                          Defendants.

Defendants, **RICHARD WAGSTAFF, MARY GUGLIUZZA, BPD DOES I-12 in**

**their Capacity as Police Officers of the CITY OF BUFFALO, BUFFALO POLICE**

**DEPARTMENT, MARK STAMBACH, and MARK VAUGHN** (collectively

"Defendants"), by their attorney, Maeve E. Huggins, Esq., Assistant Corporation

Counsel, *cf counsel* to Corporation Counsel, Timothy A. Ball, Esq., as and for their Answer

to Plaintiff's Amended Complaint in the above action, allege as follows:

## INTRODUCTION

1.      Deny any allegations of wrongful conduct by the Defendants, deny

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 1 of Plaintiff's Amended Complaint, and respectfully refer to the

March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford

(Dkt. No. 56).

2.      Deny the allegations in paragraph 2 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

3.      With respect to the allegations in paragraph numbered 3 of Plaintiff's Amended Complaint, admit that the Buffalo Police Department is an administrative arm of the City of Buffalo, not a separate and distinct legal entity from the City of Buffalo, deny every allegation of wrongful conduct by the Defendants, deny that the individual Defendants lacked proper training and oversight, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

## JURISDICITON AND VENUE

4.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

5.      Deny any allegation of wrongful conduct by the Defendants, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of Plaintiff's Amended Complaint, and respectfully refer all questions of law to the Court.

- 2 -

A-58

6.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of Plaintiff's Amended Complaint.

8.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of Plaintiff's Amended Complaint.

9.      With respect to the allegations in paragraph 9 of Plaintiff's Amended Complaint, admit that the Buffalo Police Department is an administrative arm of the City of Buffalo, not a separate and distinct legal entity from the City of Buffalo, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

10.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of Plaintiff's Amended Complaint.

11.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of Plaintiff's Amended Complaint.

12.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

13.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

17.     Deny any allegation of wrongful conduct by the Defendants, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 of Plaintiff's Amended Complaint, and respectfully refer all questions of law to the Court.

18.     Deny the allegations contained in paragraph 18 of the Plaintiff's Amended Complaint, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

## BACKGROUND AND FACTUAL ALLEGATIONS

19.     With respect to the allegations in paragraph 19 of Plaintiff's Amended Complaint, deny all allegations of wrongful conduct by the Defendants, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

20.     Deny the allegations in paragraph 20 of Plaintiff's Amended Complaint and deny any allegations of wrongful conduct by the Defendants.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of Plaintiff's Amended Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of Plaintiff's Amended Complaint.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of Plaintiff's Amended Complaint.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of Plaintiff's Amended Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of Plaintiff's Amended Complaint.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of Plaintiff's Amended Complaint.

27.     Admit the allegations in paragraph 27 of Plaintiff's Amended Complaint.

28.    Admit the allegations in paragraph 28 of Plaintiff's Amended Complaint.

29.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of Plaintiff's Amended Complaint.

30.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of Plaintiff's Amended Complaint.

31.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of Plaintiff's Amended Complaint.

32.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of Plaintiff's Amended Complaint.

33.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of Plaintiff's Amended Complaint.

34.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of Plaintiff's Amended Complaint.

35.    Admit the allegations in paragraph 35 of Plaintiff's Amended Complaint.

36.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of Plaintiff's Amended Complaint.

37.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of Plaintiff's Amended Complaint.

38.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of Plaintiff's Amended Complaint.

39.     Deny the allegations in paragraph 39 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

40.     Deny the allegations in paragraph 40 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

41.     Deny the allegations in paragraph 41 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

42.     Deny the allegations in paragraph 42 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

43.     Deny the allegations in paragraph 43 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

44.     Deny the allegations in paragraph 44 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

45.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of Plaintiff's Amended Complaint.

46.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of Plaintiff's Amended Complaint.

47.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of Plaintiff's Amended Complaint.

48.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of Plaintiff's Amended Complaint.

49.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of Plaintiff's Amended Complaint.

50.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of Plaintiff's Amended Complaint.

51.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of Plaintiff's Amended Complaint.

52.     Deny any wrongful conduct by the Defendants and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 of Plaintiff's Amended Complaint.

53.     Deny any wrongful conduct by the Defendants and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of Plaintiff's Amended Complaint.

54.     Deny the allegations in paragraph 54 of Plaintiff's Amended Complaint and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

55. Deny the allegations in paragraph 55 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

56. Deny any allegations of wrongful conduct by the Defendants and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 of Plaintiff's Amended Complaint.

57. Deny the allegations in paragraph 57 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

58. Deny the allegations in paragraph 58 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

59. Deny the allegations in paragraph 59 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

60. Deny the allegations in paragraph 60 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18,

2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

61.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of Plaintiff's Amended Complaint.

62.    Deny the allegations in paragraph 62 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

63.    Deny the allegations in paragraph 63 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

64.    With respect to the allegations in paragraph 64 of Plaintiff's Amended Complaint, admit that the 2004 indictment in People v. Josue Ortiz, Indictment No. 02630-2004 was dismissed but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

65.    Deny the allegations in paragraph 65 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

66.    Deny the allegations in paragraph 66 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

67.    Deny the allegations in paragraph 67 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

68.    Deny the allegations in paragraph 68 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

69.    Deny the allegations in paragraph 69 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

71.    Deny the allegations in paragraph 71 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

72.    Deny the allegations in paragraph 72 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18,

2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

73.     Deny the allegations in paragraph 73 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

74.     Deny the allegations in paragraph 74 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

75.     Deny the allegations in paragraph 75 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

76.     Deny the allegations in paragraph 76 of Plaintiff's Amended Complaint.

77.     Deny the allegations in paragraph 77 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 - False Arrest and Imprisonment**

78.     Admit so much of the allegations contained in paragraph 78 of Plaintiff's Amended Complaint as are elsewhere herein admitted, deny so much of the allegations of said paragraph as are elsewhere herein denied, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

79.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of Plaintiff's Amended Complaint.

80.     Deny the allegations in paragraph 80 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

81.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

82.     Deny the allegations in paragraph 82 of Plaintiff's Amended Complaint.

83.     Deny the allegations in paragraph 83 of Plaintiff's Amended Complaint.

84.     Deny the allegations in paragraph 84 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 - Malicious Prosecution**

85.     Admit so much of the allegations contained in paragraph 85 of Plaintiff's Amended Complaint as are elsewhere herein admitted, deny so much of the allegations of said paragraph as are elsewhere herein denied, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

86.     Deny the allegations in paragraph 86 of Plaintiff's Amended Complaint.

87.     Deny the allegations in paragraph 87 of Plaintiff's Amended Complaint.

88.     Deny the allegations in paragraph 88 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

89.     With respect to the allegations in paragraph 89, admit that the indictment of Plaintiff was dismissed but clarify that the Erie County District Attorney's Office prosecuted and handled the criminal case against Plaintiff.

90.     Deny the allegations in paragraph 90 of Plaintiff's Amended Complaint.

91.     Deny the allegations in paragraph 91 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 - Fifth Amendment Right Against Self-Incrimination**

92.     Admit so much of the allegations contained in paragraph 92 of Plaintiff's Amended Complaint as are elsewhere herein admitted, deny so much of the allegations of said paragraph as are elsewhere herein denied, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

93.     Deny the allegations in paragraph 93 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

94.     Deny the allegations in paragraph 94 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

95.     Deny the allegations in paragraph 95 of Plaintiff's Amended Complaint.

96.     Deny the allegations in paragraph 96 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983 - Due Process Right To Be Free From Fabrication Of Evidence**

97.     Admit so much of the allegations contained in paragraph 97 of Plaintiff's Amended Complaint as are elsewhere herein admitted, deny so much of the allegations of said paragraph as are elsewhere herein denied, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

98.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of Plaintiff's Amended Complaint and respectfully refer all questions of law to the Court.

99.     Deny the allegations in paragraph 99 of Plaintiff's Amended Complaint.

100.    Deny the allegations in paragraph 100 of Plaintiff's Amended Complaint.

101.    Deny the allegations in paragraph 101 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 - Brady Violations**

102.    Admit so much of the allegations contained in paragraph 102 of Plaintiff's Amended Complaint as are elsewhere herein admitted, deny so much of the allegations of said paragraph as are elsewhere herein denied, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

103.    Deny the allegations in paragraph 103 of Plaintiff's Amended Complaint.

104.    Deny the allegations in paragraph 104 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

105.    Deny the allegations in paragraph 105 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

106.    Deny the allegations in paragraph 106 of Plaintiff's Amended Complaint.

107.    Deny the allegations in paragraph 107 of Plaintiff's Amended Complaint, deny any wrongful conduct by the Defendants, respectfully refer all questions of law to the Court, and respectfully refer to the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

## GENERAL DENIAL

The Defendants deny each and every other allegation of Plaintiff's Amended Complaint not specifically admitted, denied, or otherwise controverted herein.

## DEFENSES

### AS AND FOR A FIRST DEFENSE:

A-73

Upon information and belief, the arrest, detention, search, seizure, and/or prosecution of Plaintiff, if any such arrest, detention, search, seizure, and/or prosecution occurred, was based on probable cause.

## AS AND FOR A SECOND DEFENSE:

Upon information and belief, the arrest, detention, search, seizure, and/or prosecution of Plaintiff, if any such arrest, detention search, seizure, and/or prosecution occurred, was based on "arguable probable" cause.

## AS AND FOR A THIRD DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, on the grounds that at all time relevant herein, the Defendants exercised their professional judgment under the circumstances and therefore their actions are cloaked with immunity.

## AS AND FOR A FOURTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, upon the grounds of any sovereign, governmental, or qualified immunity available to municipalities and their employees including but not limited to governmental immunity for alleged errors of judgment in discretionary decisions and absolute immunity for witness testimony provided at criminal proceedings.

## AS AND FOR A FIFTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, on the grounds that the actions of the Defendants did not violate any Constitutional rights of the Plaintiff.

## AS AND FOR A SIXTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, upon the doctrine of qualified immunity.

## AS AND FOR A SEVENTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, on the grounds that the actions of the Defendants were done in good faith, without malice, and objectively reasonable under the totality of the circumstances.

## AS AND FOR AN EIGHTH DEFENSE:

Upon information and belief, the Amended Complaint, in whole or in part, fails to state a cause of action against the Defendants and/or is inconsistent with the rulings and directives contained in the March 18, 2019 Decision and Order of United States District Judge Elizabeth A. Wolford (Dkt. No. 56).

## AS AND FOR A NINTH DEFENSE:

The damages complained of, if any, were caused by the culpable conduct of others over whom the Defendants exercised no control and for whom the Defendants bear no responsibility.

## AS AND FOR A TENTH DEFENSE:

Upon information and belief, Plaintiff's Amended Complaint may be barred, in whole or in part, for a failure to file a timely notice of claim pursuant to the General Municipal Law and the City of Buffalo Charter.

## AS AND FOR AN ELEVENTH DEFENSE:

Upon information and belief, the Amended Complaint may be barred, in whole or in part, for failure to comply with Article Four of the New York State General Municipal Law.

## AS AND FOR A TWELFTH DEFENSE:

Upon information and belief, no special relationship existed between the Plaintiff and the Defendants that would create a "special duty" of protection to the Plaintiff.

## AS AND FOR A THIRTEENTH DEFENSE:

Upon information and belief, under relevant state and federal law, punitive damages cannot be awarded against certain Defendants.

## AS AND FOR A FOURTEENTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.

## AS AND FOR A FIFTEENTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, by the applicable statute of limitations.

## AS AND FOR A SIXTEENTH DEFENSE:

Upon information and belief, the Amended Complaint is barred, in whole or in part, by the Plaintiff's failure to obtain personal jurisdiction based on insufficient service of process.

### AS AND FOR A SEVENTEENTH DEFENSE:

Plaintiff's damages, if any, must be reduced in proportion to his own culpable conduct, if any, pursuant to N.Y. C.P.L.R. 1411.

### AS AND FOR AN EIGHTEENTH DEFENSE:

The limitations on liability of persons jointly liable, set forth in Article 16 of the N.Y. C.P.L.R., may apply to this action.

### AS AND FOR A NINETEENTH DEFENSE:

If a release, promise not to sue, or promise not to enforce a judgment is given by plaintiff to other alleged tortfeasors, its effect shall be governed by N.Y. Gen. Oblig. Law §15-108.

### AS AND FOR A TWENTIETH DEFENSE:

The Buffalo Police Department is not proper Defendant because it is an administrative department of the City of Buffalo, not a separate and distinct legal entity capable of being sued.

**WHEREFORE**, the Defendants demand judgment dismissing the Plaintiff's Amended Complaint herein, in whole or in part, or reducing the recovery in accordance with the defenses set forth herein, together with the costs and disbursements of this Action, and for such other and further relief as to this Court may deem just and proper.

Dated:    April 15, 2019
          Buffalo, New York

                                          TIMOTHY A. BALL, ESQ.
                                          Corporation Counsel

                                          /s/ Maeve E. Huggins
                                          By: Maeve E. Huggins
                                          Assistant Corporation Counsel
                                          65 Niagara Square, 11th Floor
                                          Buffalo, New York 14202
                                          Tel.: (716) 851-4317
                                          mhuggins@city-buffalo.com

TO:     Alan J. Pierce, Esq.
        Hancock Estabrook, LLP
        100 Madison Street, Suite 1500
        Syracuse, New York 13202

        Wayne C. Felle, Esq.
        Law Offices of Wayne C. Felle, Esq.
        6024 Main Street
        Williamsville, New York 14221

A-78

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JOSUE ORTIZ,**

                **Plaintiff,**

vs.

**RICHARD WAGSTAFF, MARY GUGLIUZZA**
**BPD DOES I-12 in their Capacity as Police Officers**
**of the CITY OF BUFFALO, BUFFALO POLICE**
**DEPARTMENT, MARK STAMBACH, and**
**MARK VAUGHN,**

                **Defendants.**

**CERTIFICATE OF SERVICE**

Index No. 16-CV-321

      I, Maeve E. Huggins, hereby certify that on April 15, 2019, I electronically filed the foregoing Answer to Plaintiff's Amended Complaint on behalf of the Defendants, **RICHARD WAGSTAFF, MARY GUGLIUZZA, BPD DOES I-12 in their Capacity as Police Officers of the CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT, MARK STAMBACH, and MARK VAUGHN,** (collectively "Defendants"), with the Clerk of the District Court using the EM/ECF system which would then electronically notify the following participants in this case:

Wayne Felle, Esq.
6024 Main Street
Williamsville, New York 14221
waynefelle@waynefellelaw.com

Alan J. Pierce, Esq.
HANCOCK ESTABROOK, LLP
100 Madison Street, Suite 1500
Syracuse, New York 13202
apierce@hancocklaw.com

      I certify under penalty of perjury that the foregoing is true and correct.

Dated:    April 15, 2019
         Buffalo, New York

                              TIMOTHY A. BALL, ESQ.
                              Corporation Counsel

                              */s/ Maeve E. Huggins*
                              By: Maeve E. Huggins

A-79

Assistant Corporation Counsel
65 Niagara Square, 11th Floor
Buffalo, New York 14202
Tel.: (716) 851-4317
mhuggins@city-buffalo.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

JOSUE ORTIZ,

        **Plaintiff,**

      **vs.**

**RICHARD WAGSTAFF, MARY GUGLIUZZA,**
**BPD DOES 1-12 in their capacity as Police**
**Officers of the CITY OF BUFFALO,**
**BUFFALO POLICE DEPARTMENT, MARK**
**STAMBACH, and MARK VAUGHN,**

        **Defendants.**

_____

**NOTICE OF MOTION**
**TO DISMISS**

**Index No.: 16-cv-00321**

| | |
|---|---|
| **MOTION MADE BY:** | Defendants. |
| **DATE, TIME AND**<br>**PLACE OF HEARING** | On a date to be set by the Court at the United States District Court for the Western District of New York. |
| **RELIEF SOUGHT:** | Dismissal of Plaintiff's Amended Complaint, Judgment, and/or Summary Judgment in favor of the Defendants pursuant to Fed.R.Civ.P. Rules 4 and/or 12 for insufficient process, insufficient service of process, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, judgment on the pleadings, and/or Rule 56 for summary judgment, costs, and such other relief as deemed proper. |
| **SUPPORTING PAPERS:** | Statement of Undisputed Material Facts, Declaration of Maeve E. Huggins, Esq., Assistant Corporation Counsel for the City |

1

of Buffalo, *cf Counsel* to Timothy A. Ball, Esq., Corporation Counsel, dated April 24, 2020, together with the accompanying Memorandum of Law and Exhibits, and all the pleadings and proceedings hereinbefore had herein.

**ANSWERING PAPERS:**

Any answering papers must be served in accordance with the Federal Rules of Civil Procedure and any briefing schedule set by the Court.    The Defendants request the opportunity to submit reply papers.

Dated:       April 24, 2020
             Buffalo, New York

TIMOTHY A. BALL, ESQ.
Corporation Counsel
Attorney for Defendants

*/s/ Maeve E. Huggins*
Assistant Corporation Counsel
65 Niagara Square, 11th Floor
Buffalo, New York 14202
Tel.: (716) 851-4317
Fax.: (716) 851-4105
mhuggins@city-buffalo.com

To:    Alan J. Pierce, Esq.
       Hancock Estabrook, LLP
       100 Madison Street, Suite 1500
       Syracuse, New York 13202
       (315) 565-4500

       Wayne C. Felle, Esq.
       Law Offices of Wayne C. Felle, Esq.
       6024 Main Street
       Williamsville, New York 14221
       (716) 505-2700

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSUE ORTIZ,

Plaintiff,

vs.

RICHARD WAGSTAFF, MARY GUGLIUZZA, BPD DOES 1-12 in their capacity as
Police Officers of the CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT,
MARK STAMBACH, and MARK VAUGHN,

Defendants.

---

Index No.: 16-CV-00321

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

TIMOTHY A. BALL, ESQ.
Corporation Counsel
*Attorney for Defendants*

By: Maeve E. Huggins
Assistant Corporation Counsel
1112 City Hall : 65 Niagara Square
Buffalo, New York 14202
Tel.: (716) 851-4317
Fax.: (716) 851-4105
E-mail: mhuggins@city-buffalo.com

## PRELIMINARY STATEMENT

Josue Ortiz (hereinafter "Plaintiff") contends that the Defendants violated his Constitutional rights when he was arrested and prosecuted for the murders of Nelson and Miguel Camacho. *See generally* Dkt. No. 59. The Defendants respectfully submit this Memorandum of Law in support of their Motion seeking dismissal of Plaintiff's Amended Complaint, Judgment on the Pleadings, and/or Summary Judgment pursuant to Fed. R. Civ. P. (hereinafter "Rule") 4, 12, and/or 56. The Defendants move on the following grounds: (1) this Court lacks personal jurisdiction over Mary Gugliuzza, Mark Stambach, and Mark Vaughn; (2) Plaintiff's false arrest/imprisonment claim is time barred; (3) the Buffalo Police Department (hereinafter "BPD") lacks the capacity to be sued; (4) Plaintiff never identified defendants Does 1-12 sufficiently; and (5) the Defendants are entitled to judgment as a matter of law as the Plaintiff's claims have no merit, and alternatively, are barred by qualified immunity.

## STATEMENT OF FACTS

A full recitation of the material facts not in dispute may be found in the Defendants' Statement of Undisputed Material Facts, together with all Exhibits attached thereto, and is submitted simultaneously in support of this Motion.

## PLAINTIFF'S CLAIMS

Plaintiff asserts the following purported claims in his Amended Complaint against the Defendants: (1) a Fourth and Fourteenth[1] Amendment violation claim pursuant to 42

---

[1] Generally, "[t]here is no cause of action for false arrest or an unlawful stop under the Due Process Clause of the Fourteenth Amendment." *Pinter v. City of New York*, 976 F. Supp. 2d 539, 573 (S.D.N.Y. 2013); *see also*

1

U.S.C. § 1983 for false arrest/imprisonment (Dkt. No. 59 at ¶¶78-84); (2) a Fourth Amendment violation claim pursuant to 42 U.S.C. § 1983 for malicious prosecution (Dkt. No. 59 at ¶¶85-91); (3) a Fifth Amendment violation claim pursuant to 42 U.S.C. § 1983 for use of Plaintiff's statement in his criminal prosecution (Dkt. No. 59 at ¶¶92-96); (4) a due process claim pursuant to 42 U.S.C. § 1983 for the fabrication of evidence through use of his statement in his prosecution (Dkt. No. 59 ¶¶97-101); and a *Brady* violation claim pursuant to 42 U.S.C. § 1983 for the withholding or suppression of *Brady* material from Plaintiff's counsel prior to his guilty plea (Dkt. No. 59 ¶¶102-107).  By Decision and Order, dated March 18, 2019, Hon. Elizabeth A. Wolford ordered that Plaintiff's abuse of process claim and any *Monell* claim against the City of Buffalo cannot proceed.  Dkt. No. 56 at 10-11, 16.

## STANDARD OF REVIEW

### I.  Rule 4 and 12 Standard of Review

Under Rule 12, defendants may move for dismissal on the grounds of lack of personal jurisdiction, insufficient process, and insufficient service of process.  Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5).  Perfected service of a summons and complaint is a perquisite to commencing an action.  A court "ordinarily may not exercise power over a party the complaint names as defendant" without proper service of process.  *Murphy*

---

*Tyus v. Newton*, 2015 WL 5306550, *6 (D. Conn. 2015) ("[t]he allegations set forth in support of the Fourteenth Amendment claim are duplicative of those forming the basis of [the plaintiff's] false arrest claim under the Fourth Amendment. Thus, no general substantive due process claim is available to the plaintiff"). Accordingly, any claim of violation of Plaintiff's Fourteenth Amendment rights for false arrest or false imprisonment must be dismissed.

*Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Anzulewicz v. National Fuel Gas Supply Corp.*, 208 F.R.D 47, 49 n. 5 (W.D.N.Y. 2002). Once a defendant challenges service of process, the plaintiff bears the burden of proving that service was adequate. *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997). In considering a motion to dismiss pursuant to Rule 12(b)(5), the court "must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChryslter N.A. Holding Corp.*, 191 F. Supp.2d 382, 387 (S.D.N.Y. 2002).

Rule 4 governs summonses and service of process requirements. Rule 4(c)(1) provides "a summons must be served with a copy of the complaint." Plaintiff is "responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). However, "if a defendant is not served within 90 days after the complaint is filed, the court on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). To serve an individual within a Judicial District of the United States, Federal Rule of Civil Procedure 4(e) provides service may be effected by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Local Rule 4 of Civil Procedure for the Western District of New York dictates that "proof of service shall be filed with the Clerk of Court."

A district court should grant a Rule 12 dispositive motion if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (articulating Rule 12(b)(6) standard of review). Rule 12(c) provides "after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." A Rule 12(c) motion to dismiss is judged by the same standards applicable to a Rule 12(b)(6) motion to dismiss. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In passing upon a motion to dismiss, the court must view the allegations in the light most favorable to the plaintiff. *See Scheur v. Rhodes*, 416 U.S. 232, 236 (1974). In deciding a Rule 12(b)(6) and/or 12(c) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted); *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991); *Newman v. Holder,* 101 F.Supp.2d 103, 105 (E.D.N.Y. 2000); *Leibovitz v. City of New York*, No. 14-CV-7106(KAM)(LB), 2018 WL 1157872, at *6 (E.D.N.Y. Mar. 2, 2018), appeal dismissed (May 8, 2018).  A Rule 12 motion need not be converted to one for summary judgment if the party does not rely on the extrinsic material outside the complaint in support of the request for judgment on the pleadings.  The Court need only convert and consider materials outside the initial pleadings under Rule 56 if the claims survive Rule 12 scrutiny.  *See Spear v. City of Buffalo*, 11CV-00012A F, 2014 WL 1053987, at *6-7 (W.D.N.Y. Mar. 18, 2014), adopted, 11-CV-00012A F, 2014 WL 1347759 (W.D.N.Y. Apr. 4, 2014).

The standard of review on a Rule 12(b)(6) motion requires the court to accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 Fed.Appx. 32, 34 (2d Cir. 2014).  However, legal conclusions are not assumed to be true, and "[t]he complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted); *Harris*, 186 F.3d at 247 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While courts must accept all precisely worded factual allegations as true, legal conclusions or unsupported inferences or assumptions in a complaint need not be accepted in the context of deciding a Rule 12 motion. *See Smith v. Local 819 I.B.T. Pension*

5

*Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Harris*, 186 F.3d at 247. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## II.   Rule 56 Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact, and based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kaytor v. Elec. Boart Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). The Supreme Court has affirmed summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). In making this determination, the court must resolve all ambiguities and draw all inferences against the moving party. However, when a properly supported summary judgment motion is made, the non-moving party may not rely upon the mere allegations of his pleading, "but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.")

6

A-89

(emphasis in original)).  A factual dispute is material "only if it has some effect on the outcome of the suit."  *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted).  A genuine issue exists for trial "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Weber v. AVX Pension Plan for Bargaining Unit and Hourly Employees*, No. 07–CV–615S, 2009 WL 3165627 (W.D.N.Y. Sept. 27, 2009) (internal quotations omitted).

In order to raise a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts...and he may not rely on conclusory allegations or unsubstantiated speculation."  *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 473 (S.D.N.Y. 2003).  Rather, the non-moving party "must produce admissible evidence that supports her pleadings."  *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289-90 (1968)).  "Summary judgment is appropriate, if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative . . . or if it is based purely on conjecture or surmise."  *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citations and internal quotes omitted).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## ARGUMENT

Applying these settled standards of review and applicable Federal Rules of Civil Procedure, the Defendants respectfully submitted that this Court lacks jurisdiction over Gugliuzza, Stambach, and Vaughn.  Likewise, Plaintiff's claims should be dismissed with

prejudice for the reasons herein.  Plaintiff's false arrest and imprisonment claim is time

barred.  BPD is not capable of being sued.  The Plaintiff failed to state a claim against BPD

Does 1-12 in his Amended Compliant.  Finally, based upon the record, Plaintiff's

allegations do not create a question of fact sufficient to withstand Summary Judgment,

there was no Constitutional violation, alternatively the Defendants are entitled to

qualified immunity, and all claims should be dismissed as a matter of law.

I.  **This Court lacks jurisdiction over Mary Gugliuzza, Mark Stambach, and Mark Vaughn because Plaintiff failed to timely perfect proper service.**

Pursuant to Rule 4(m), Plaintiff had ninety days to serve the summons and

complaint after it was filed.  As his Complaint was filed on April 25, 2016 (Dkt. No. 1),

Plaintiff had until July 25, 2016, to perfect service (July 24, 2016 is a Sunday).  However,

Gugliuzza, Stambach, and Vaughn were never properly served during that period of

time.

On July 29, 2016, Plaintiff filed an affidavit of service purporting to have served

Gugliuzza, Vaughn, and Stambach on July 25, 2016 "[b]y delivering to and leaving with

Janet Poydock, and he know the person so served to be legal steno clerk City of Buffalo

City Corporation Counsel of defendant corporation" (sic).  Dkt. No. 5.  The purported

proof of service is dated July 25, 2016.  *Id.*  Such is not proper service for Gugliuzza,

Stambach, and Vaughn.  Gugliuzza retired from BPD employment effective December

31, 2012.  Ex. A.  Stambach retired from BPD employment effective June 26, 2006.  *Id.; see

also* Ex. D at 7.  Vaughn retired from BPD employment effective June 23, 2009.  *Id.*  After

such dates, the City of Buffalo or BPD could no longer be considered Gugliuzza,

A-91

Stambach, and Vaughn's place of employment for service of process because they retired from working there. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298 (3d Cir. 1995) (defendant corporation was no longer authorized to conduct business in Oklahoma; therefore, the Secretary of State of Oklahoma was no longer the authorized agent to accept service of process).

At no time did Gugliuzza, Stambach, or Vaughn waive proper service. In fact, the Defendants timely challenged service in their Answer, filed on August 15, 2016. Dkt. No. 6 at 12. Plaintiff took no further action to effect proper service or seek an extension of time to do so. Accordingly, this Court lacks jurisdiction over Gugliuzza, Stambach, and Vaughn and must dismiss this action against them.

## II. To the extent any still exist, claims against BPD must be dismissed because BPD lacks the capacity to be sued.

BPD lacks the capacity to be sued, and therefore, is not a proper party. Under Rule 17(b)(2), BPD's capacity to be sued is governed by New York law. New York law is clear; administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued. BPD is an administrative arm of the City of Buffalo. City of Buffalo Charter §5-1 ("There shall be in the city government the following departments: … (8) Department of police…"); s*ee Baker v. Willett*, 42 F.Supp.2d 192, 198 (N.D.N.Y. 1999); *Loria v. Town of Irondequoit*, 775 F.Supp. 599, 606 (W.D.N.Y. 1990); *Warner v. Village of Goshen Police Dep't*, 256 F.Supp.2d 171, 175 (S.D.N.Y. 2003); *Davis v. Lynbrook Police Dep't*, 224 F.Supp.2d 463, 477 (E.D.N.Y. 2002); *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002) (dismissing claims against

police department); *Umhey v. Cnty. cf Orange,* 957 F.Supp. 525, 530-31 (S.D.N.Y. 1997); *Wilson v. City cf N.Y.,* 800 F.Supp. 1098, 1101 (E.D.N.Y. 1992); *see also Blyden v. N.Y.P.D.,* No. 05-cv-4740, 2005 WL 3388609, at *2 (E.D.N.Y. Dec. 12, 2005). Accordingly, to the extent that any claims against BPD survived the previous dispositive motion, such claims must be dismissed and BPD from all future captions in action.

**III.    Plaintiff's false arrest and imprisonment claims are time barred.**

A claim made pursuant to 42 U.S.C. § 1983 (hereinafter "Section 1983") must be filed within three years of the date upon which the claim accrued. *Milan v. Wertheimer,* 808 F.3d 961, 963-64 (2d Cir. 2015). A claim accrues when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato,* 549 U.S. 384, 388 (2007). "The statute of limitations for a claim of false imprisonment — and for claims of false arrest, which is a species of false imprisonment — begins to run when the alleged false imprisonment ends. An alleged false imprisonment ends when the victim becomes held pursuant to [legal] process — when, for example, he is bound over by a magistrate or arraigned on charges. *Alvarez v. Peters, et al.,* No. 19-CV-6789(EK), 2020 WL 1808901, at *3 (E.D.N.Y. Apr. 9, 2020) (*citing Wallace,* 549 U.S. at 389) (internal citations and quotation marks omitted).

Plaintiff was arrested on November 17, 2004, indicted on December 6, 2004, and arraigned on the indictment on December 16, 2004. **Ex. E, I.** Arraigned on December 6, 2004, Plaintiff was detained pursuant to legal process more than three years prior to his filing of the instant action on April 25, 2016 (Dkt. No. 1). Therefore, the statute of

limitations bars Plaintiff's false arrest and imprisonment claims and such claims must be dismissed with prejudice.

IV.    **The Defendants are entitled to judgment as a matter of law and Plaintiff's action should be dismissed because his claims are meritless.**

A.    **Section 1983 Liability**

Section 1983 provides a remedy to parties allegedly deprived of their federal rights by government officials acting under color of law.  The statute is not itself a source of substantive rights.  It simply provides a cause of action for vindicating federal rights elsewhere conferred.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42, 48 (1988).

B.    **All claims against BPD Does 1-12 must be dismissed with prejudice because Plaintiff's allegations against BPD Does 1-12 are insufficient to identify such defendants and give rise to Section 1983 liability.**

Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted.  Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res

judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

Plaintiff's Amended Complaint is entirely vague and insufficient in identifying BPD Does 1-12 as defendants in any meaningful manner.  No specific description is provided that apprises of the intended defendant.  No physical description is provided of these individuals.  There is no factual allegation contained in the Amended Complaint other than "officers and/or detectives of the BPD."  At the time of the filing of Plaintiff's Amended Complaint, considerable paper discovery had been provided by the Defendants in this action as well as his separate action, Ortiz v. Case, Index No. 1:16-cv-00322.  Plaintiff took no action to further identify BPD Does 1-12 despite the availability of voluminous BPD files.

Moreover, there is no specific factual allegation regarding the individual conduct of BPD Does 1-12 to aid in their identification either.  A viable Section 1983 liability must be based on the personal involvement of a defendant in the alleged constitutional violation. *See Spavone v. New York State Dep't. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  To the extent Plaintiff names BPD Does 1-12 as defendants, he entirely fails to plead sufficient allegations to allege personal involvement.  Accordingly, no Section 1983 claim can stand where the Amended Complaint lacks proper identification of defendants BPD Does 1-12 and record lacks the requisite direct involvement to trigger Section 1983 liability. Therefore, all claims must be dismissed against defendants BPD Does 1-12.

C.      **All official capacity claims must be dismissed.**

12

A claim against an individual municipal defendant who is sued in his official capacity is duplicative of the same claim against the municipality. *Irwin v. W. Irondequoit Cent. Sch. Dist.*, 2017 WL 881850, at *4 (W.D.N.Y. 2017); *Burgess v. DeJoseph*, 2017 WL 1066662, at *8 (N.D.N.Y. 2017) (noting that a claim against a municipal officer in his official capacity is essentially the same as a claim against the municipality itself). To the extent that Plaintiff sues the individually named defendants in their official capacities, such claims must be dismissed. To the extent such these individual defendants BPD Does 1-12 are sued only in their official capacity, all claims must be dismissed. *Irwin*, 2017 WL 881850, at *4; *Burgess*, 2017 WL 1066662, at *8.[2]

### D.   Plaintiff's Constitutional rights were not violated because his voluntary statement provided ample probable cause for his arrest and prosecution.

Plaintiff's Amended Complaint claims that his Constitutional rights were violated when he was arrested and prosecuted for the November 11, 2004 murder of the Camacho brothers. However, there was no Constitutional violation because ample probable cause to arrest, charge, and prosecute Plaintiff exist based upon his voluntary statement to Stambach.[3] The record is devoid of any evidence of any Fourth or Fifth Amendment violation.

---

[2] By Decision and Order, dated March 18, 2019, Hon. Elizabeth A. Wolford ordered that any *Monell* claim against the City of Buffalo cannot proceed. Dkt. No. 56 at 10-11, 16.

[3] Should this Court finds Plaintiff's false arrest and imprisonment claim is not time barred, the probable cause established by Plaintiff's statement defeats such claims.

A-96

A Section 1983 claim for malicious prosecution is false arrest is brought to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Because "accusers must be allowed room for benign misjudgments," the law "places a heavy burden on malicious prosecution plaintiffs." *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights...., and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City cf New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted).

To prevail on a malicious prosecution claim under New York law, a plaintiff must establish four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). As with false arrest, under New York law, the existence of probable cause is an absolute defense to a malicious prosecution claim. *Savino v. City cf New York*, 331 F.3d 63, 72 (2d Cir. 2003).

Here, on November 15, 2004, Plaintiff initiated contact with BPD and indicated that he wished to provide information regarding the murders. Ex. O. He was voluntarily brought to police headquarters to meet with Stambach. *Id.*; Ex. P. Ultimately, Plaintiff claimed that he was involved in the murders. Ex. G at 118. Thereafter, Plaintiff waived his Miranda rights, which were administered in Spanish through a translator. Ex. F; Ex. D at 200; Ex. G at 119, 123-124. Officer Edwin Torres provided Spanish translation. Ex.

14

D at 53, 106, 115.   Plaintiff claimed to have committed the murders and a written statement was signed by Plaintiff.   Ex. B; Ex. D at 220; Ex. G at 126, 134; Ex. F.   After consultation with the Erie County District Attorney's Office, Stambach arrested and charged Plaintiff based upon that statement.   Ex. D at 240-41.   A Grand Jury ultimately indicted Plaintiff for the murders.   Ex. I.   The record is devoid of any evidence that Wagstaff, Gugliuzza, or Vaughn took any action that violated Plaintiff's Constitutional rights.

Importantly, the decision to arrest and charge Plaintiff was made following consultation with the District Attorney's Office.   It is well-settled that "[f]or purposes of a malicious-prosecution claim, there is a presumption that the prosecutor exercised independent judgment in deciding whether to initiate the criminal proceeding and that the arresting officer therefore did not 'initiate' the proceeding. A plaintiff bringing a malicious-prosecution claim must rebut that presumption, for example by showing that the arresting officer created false information likely to influence a jury's decision and forwarded the information to prosecutors or that the arresting officer withheld relevant and material information. Absent an officer misleading prosecutors or continuing to be involved in the criminal prosecution following the plaintiff's arrest and charge, once a prosecutor institutes formal charges the link between the officer and the prosecution is severed and the officer may not be held liable for malicious prosecution." *LaFontaine v. City of New York*, Slip Copy, 2009 WL 3335362 (S.D.N.Y. 2009); *Williams v. City of New York*, Slip Copy, 2003 WL 22434151 (S.D.N.Y. 2003); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

Moreover, to establish a claim for malicious prosecution, the plaintiff must show, among other things, that his confinement was not justified.  An arrest is justified if the arresting officer had probable cause to believe that the suspect committed a crime.  *Coyle v. Coyle*, 302 F. Supp. 2d 3, 7 (E.D.N.Y. 2004).  In other words, the existence of probable cause is a complete defense to a malicious prosecution, even where the plaintiff is ultimately cleared of all charges.  *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001).

The statement provided ample probable cause.  Further, probable cause is presumed when a grand jury hands down an indictment.  Where probable cause is presumed on the basis of a grand jury indictment, "the plaintiff overcomes the presumption by a showing that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Id.* (internal quotation marks omitted).

Here, a Grand Jury indicted Plaintiff.  Therefore, probable cause is presumed.  Because there is no evidence of bad faith on the part of Stambach, plaintiff's malicious prosecution claim against them cannot be maintained.  Likewise, there has been no showing of actual malice or personal animus as a motivation for Defendant's actions.  While he appeared frightened (Ex. D at 165, 195), Plaintiff did not exhibit any "behavioral and/or psychiatric illnesses or conditions" while with Stambach.  Ex. D at 195.  The Defendants gained nothing by Plaintiff's statement or his arrest and prosecution.

Even if the indictment did not create a presumption of probable cause, a police officer has probable cause to arrest when he or she:

16

A-99

> Has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. To determine whether probable cause exists, courts examine the totality of circumstances surrounding the arrest, including the actual information known to the officer at the time of the arrest, and then decide whether those facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.

*Hoyos v. City of New York*, 999 F. Supp. 2d 375, 386 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).  Based upon the totality of circumstances and information known to Stambach at the time, Plaintiff's November 16, 2004 statements of his purported involvement in the murders established probable cause.

Likewise, Plaintiff cannot show that the Defendants initiated or continued the criminal proceeding against the Plaintiff because the independent actions of the District Attorney's Office while charging Plaintiff, later at the *Huntley* hearing, and during the course of the criminal prosecution broke any causal chain.

A *Huntley* hearing was held and the Honorable Joseph S. Forma denied Plaintiff's motion to suppress his oral and written statements, finding no Fourth or Fifth Amendment violations occurred. Ex. J, P.  Such ruling was upheld on appeal.  Ex. L.  The doctrines of *res judicata* and collateral estoppel can be invoked against a constitutional claim to bar relitigation of issues decided in state court.  *Allen v. McCurry*, 449 U.S. 90, 104 (1980).  As the Supreme Court recognized in *Allen*, there is nothing in the legislative history of Section 1983 that indicates congress intended to provide claimants a right to relitigate issues and Full Faith and Credit requires federal courts provide the same preclusive effect to state court judgment as would be given in the courts of the state itself.

17

U.S. Const. Art. IV, §1; *Id.* at 94-96. Thus, when applicable, collateral estoppel should be invoked to avoid the costs of repetitive litigation, preserve judicial resources, and prevent inconstant judgments.

This preclusive effect may stem from the actual litigation and resolution of the issues in a prior state court proceeding or from the fact that the issue could have been litigated in the state court proceeding, even it if was not. *See Migra v. Warren City School District Board cf Ed.*, 465 U.S. 75, 83–85 (1984); *Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir. 1986); *Antonsen v. Ward*, 943 F.2d 198 (2d Cir. 1991)(Article 78 barred subsequent claims and that Under the "transactional approach" to res judicata, claims arising out of the same "factual grouping" are deemed to be part of the same cause of action and any later claim will be barred.); *Smeraldo v. City cf Jamestown*, 2011 WL 5080193 (W.D.N.Y. 2011)("…an Article 78 proceeding can serve as the basis for issue preclusion in federal court.").

Under New York Law collateral estoppel, applies where: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 146 (2d Cir., 2005); *Marshall v. Nat'l Ass'n cf Letter Carriers BR36*, 2003 WL 22519869 (S.D.N.Y., 2003)(finding plaintiff's claims barred "to the extent that they are premised on the events ... described in [earlier] complaints").

A-101

It is well established that the preclusive effect of a prior adjudication provides an appropriate basis for determination of a motion for summary judgment. *See Index Fund, Inc. v. Hagopian*, 677 F. Supp. 710 (S.D.N.Y. 1987); *Page v. Liberty Cent. School Dist.*, 679 F.Supp.2d 448 (S.D.N.Y. 2010); *Leon v. Department of Educ.*, 16 F.Supp.3d 184 (E.D.N.Y. 2014) (finding plaintiffs' discrimination claims were precluded where "parties have already actually litigated and decided that any adverse employment action was justified, and therefore, could not have been a pretext for unlawful discrimination").

Here, Plaintiff had the full opportunity to litigate and challenge the statement given to Stambach (as well as the conduct of others involved in the investigation). Ex. J, P. Plaintiff's mental health was well known to the trial court prior to the *Huntley* hearing. Ex. E. Plaintiff should not be allowed to now relitigate that issue, using all manner of additional information and arguments that were not presented in the first instance. *See People v. Scott*, 157 A.D.2d 593 (1st Dept., 1990) *lv. denied* 75 N.Y.2d 924.

### E.     Alternatively, the Defendants are entitled to qualified immunity.

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Qualified immunity provides a broad shield and a deliberately forgiving standard of review. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* Qualified immunity is a deliberately forgiving standard: it provides "breathing room to make reasonable but

19

mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal citations and quotation marks omitted).

When a case concerns a qualified immunity defense, the court considers only the facts that were known to the defendant officers. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). When the facts known to the officers are undisputed, "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is a question of law better left for the court to decide." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (internal quotation marks omitted) (citing *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("where the factual records is not in serious dispute . . . [it] is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible . . .")).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d. Cir. 2008); *see Pearson v. Callahan*, 555 U.S. 223 (2009); *Reichle v. Howards*, 566 U.S. 658 (2012). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

For a right to be clearly established, a case directly on point is not necessary. However, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). Therefore,

A-103

"[t]he relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stephenson*, 332 F.3d at 76 (internal quotation omitted). As to the first consideration, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). As to the second consideration, "the relevant question is whether a reasonable officer could have believed the [challenged conduct] to be lawful, in light of clearly established law and the information the ... officer[ ] possessed." *Id.* at 115.

A defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to [] the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (quotation marks and citation omitted).

This doctrine shields police officers from liability for civil damages if "if there was arguable probable cause at the time of the arrest—that is, if officers of reasonable competence could disagree on whether the probable test was met." *Id.* at 388 (internal quotation marks omitted). In this case, based on undisputed facts, notably Plaintiff's statement, at a minimum, Stambach is entitled to qualified immunity.

21

"[T]he relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." *Id.* at 390. Moreover, as with false arrest, an arresting officer is entitled to qualified immunity from a malicious prosecution claim if "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* The legal test for qualified immunity in cases in which probable cause is a complete defense to a plaintiff's allegations. An arresting officer is immune from suit if he can establish that there was "arguable probable cause" for plaintiff's arrest. *See e.g. Escalera v. Lunn*, 361 F.3d 864, 870 (2d Cir. 1991). The "analytically distinct" analysis of "arguable probable cause" is more favorable to a defendant officer than that of probable cause itself. *Escalera*, 361 F.3d at 843. Put another way "[i]f facts supporting probable cause to arrest are ultimately found not to have existed, an arresting officer will nonetheless be entitled to immunity from suit based on "arguable probable cause," which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that "'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Finigan v. Marshall*, 574 F.3d 57 (2d Cir. 2009).

As discussed above, there was probable cause to arrest the Plaintiff based on the totality of the circumstances. However, even assuming, *arguendo*, that the Defendants did not have probable cause, reasonable officers could disagree and believe that there was probable cause. The record is devoid of any indication that Plaintiff was undergoing any mental health issues while giving his statement to Stambach. Likewise, Stambach's conduct was reasonable based upon the information known to him at the time. The fact

that the District Attorney's Office pursued criminal charges against the Plaintiff after the statement and reviewing the BPD file only supports the fact that there was "arguable probable cause" to arrest the Plaintiff.  *See Morales v. City of New York*, 209 Fed.Appx. 75 (2d Cir. 2006).  Similarly, the *Huntley* hearing, further supports a finding of "arguable probable cause" as the trial court found no Constitutional violation with BPD's conduct. Accordingly, the Defendants are therefore entitled to qualified immunity.

F.     **The Defendants did not suppress any *Brady* material.**

Plaintiff's conviction resulted from a guilty plea.  Ex. L.  The record is devoid of any evidence that the Defendants withheld *Brady* information.  Correspondence indicates that BPD records were provided as discovery by the District Attorney's Office.  Ex. K (demonstrating that BPD P-73s were available to Plaintiff's defense counsel at the time of the plea).

It bears noting that the Defendants played no role in opposing Plaintiff's post-conviction proceedings.  No defendant was a party to that proceeding.  Plaintiff acknowledges that the Erie County District Attorney's Office had the decision-making authority with respect to vacatur of Plaintiff's conviction.  *See* Ortiz v. Case, 1:16-cv-00322. Moreover, the Amended Complaint acknowledges that post-conviction evidence of Plaintiff's innocence was sent to the District Attorney's Office, not withheld by the Defendants.  Dkt. No. 59 ¶¶53-54.  Indeed, it was the District Attorney's Office that so vigorously litigated Plaintiff's post-conviction motions.  Ex. N.  Ultimately, the evidence that led to the vacatur of Plaintiff's convictions was not in the possession of the named defendants.  In fact, Plaintiff's criminal defense counsel noted during the litigation of

A-106

Plaintiff's CPL 440 motion, evidence of Plaintiff's actual innocence was not uncovered by BPD.  Ex. M at 11.

In sum, there are no genuine disputes of material fact that would allow a reasonable jury to find in favor of Plaintiff.  Plaintiff's claims are belied by the actions of the District Attorney's Office, the outcome of the *Huntley* hearing, and sworn plea.  There was no Constitutional violation, and alternatively, the Defendants are entitled to qualified immunity.

## CONCLUSION

The Defendants respectfully request that this Court grant this Motion to Dismiss and/or Summary Judgment in favor of the Defendants pursuant to Fed. R. Civ. P. Rules 4, 12, and/or 56, and dismiss Plaintiff's Amended Complaint, including all claims with prejudice, award costs in defending this action, and for such other and further relief that this Court deems necessary, just, and proper.

Dated:  April 24, 2020
        Buffalo, New York

Timothy A. Ball, Esq.
Corporation Counsel
Attorney for Defendants

By:     */s/ Maeve E. Huggins*
        Maeve E. Huggins
        Assistant Corporation Counsel
        1112 City Hall
        65 Niagara Square
        Buffalo, New York 14202
        Telephone: (716) 851-4317
        Facsimile: (716) 851-4105
        E-Mail: mhuggins@city-buffalo.com

24

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **JOSUE ORTIZ,** | **SUPPORTING DECLARATION** |
| **Plaintiff,** | |
| **vs.** | **Index No.: 16-cv-00321** |
| **RICHARD WAGSTAFF, MARY GUGLIUZZA,** | |
| **BPD DOES 1-12 in their capacity as Police** | |
| **Officers of the CITY OF BUFFALO,** | |
| **BUFFALO POLICE DEPARTMENT, MARK** | |
| **STAMBACH, and MARK VAUGHN,** | |
| **Defendants.** | |

_____

**MAEVE E. HUGGINS**, declares under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.      I am an attorney at law admitted to practice before this Court and am an Assistant Corporation Counsel for the City of Buffalo, *cf Counsel* to Timothy A. Ball, Esq., Corporation Counsel, and attorney for Defendants, RICHARD WAGSTAFF, MARY GUGLIUZZA, BPD DOES 1-12, BUFFALO POLICE DEPARTMENT, MARK STAMBACH, and MARK VAUGHN (hereinafter collectively "Defendants"), in the above-entitled action.   In such capacity, I am fully familiar with the facts and circumstances of this litigation.

2.      I offer this declaration in support of the Defendants' Motion to Dismiss and/or for Summary Judgment pursuant to Fed. R. Civ. P. 4, 12, and/or 56.

1

3.      Copies of the following documents are attached hereto as Exhibits to the Defendants' L. R. Civ. P. 56 Statement of Undisputed Material Facts in support of this Motion and made a part hereof:

**Ex. A:** Affidavit of Lt. Salvatore Losi, sworn to on April 15, 2020;

**Ex. B:** P-73 of Mark R. Stambach, dated November 16, 2004, and notes;

**Ex. C:** Plaintiff's deposition transcript;

**Ex. D:** Mark Stambach's deposition transcript;

**Ex. E:** Criminal case court proceedings notes;

**Ex. F:** Plaintiff's statement and Spanish Miranda rights card;

**Ex. G:** Edwin Torres' deposition transcript;

**Ex. H:** P-73 of Mark J. Vaughn, dated November 15, 2004;

**Ex. I:** Indictment;

**Ex. J:** Portions of *Huntley* hearing transcript provided by Plaintiff in discovery;

**Ex. K:** Answering Affidavit of Assistant District Attorney Kenneth F. Case, dated February 22, 2005.

**Ex. L:** Transcripts of Plaintiff's guilty plea on March 22, 2006 and sentencing on June 16, 2006 and Memorandum and Order affirming the conviction;

**Ex. M:** Correspondence and Reply to the People's Opposing Affidavit;

**Ex. N:** Moving papers and correspondence filed in opposition to Plaintiff's CPL 440 Motion by the District Attorney's Office;

**Ex. O:** P-73 of David Sadlocha, dated November 16, 2004;

**Ex. P:** Memorandum and Order deciding *Huntley* hearing;

2

A-109

**Ex. Q:** Mark Stambach notes, dated September 30, 2005; and

**Ex. R:** Decision & Order deciding Plaintiff's CPL 440 Motion.

4.     On or about April 25, 2016, Plaintiff filed the instant action.  Dkt. No. 1.

5.     On July 29, 2016, Plaintiff filed an affidavit of service purporting to have served Richard Wagstaff, Mary Gugliuzza, Mark Vaughn, and Mark Stambach on July 25, 2016 "[b]y delivering to and leaving with Janet Poydock, and he know the person so served to be legal steno clerk City of Buffalo City Corporation Counsel of defendant corporation." (sic)  Dkt. No. 5.  The purported proof of service is signed under penalty of perjury by Douglas A. DiFilippo and dated July 25, 2016.  *Id.*

6.     On August 15, 2016, the Defendants interposed an Answer to Plaintiff's Complaint.  Dkt. No. 6.

7.     On August 17, 2017, the Defendants moved to dismiss Plaintiff's Complaint for Failure to State a Claim pursuant to Fed. R. Civ. P. 12, among other relief sought.  Dkt. No. 32.  On October 6, 2017, Plaintiff opposed the Defendants' motion and cross-moved for leave to amend his complaint.  Dkt. No. 37.

8.     By Report and Recommendation, filed on December 13, 2017, the Honorable Hugh B. Scott, United States Magistrate Judge, granted in part and deemed moot in part the Defendants' motion, granted in part the Plaintiff's cross-motion to amend to remove defendant Buffalo Police Department as a party and denied leave for Plaintiff's remaining requests.  Dkt. No. 44.  Plaintiff filed objections (Dkt. No. 47) and the Defendants responded (Dkt. No. 49).

3

9.      By Decision and Order, filed on March 18, 2019, the Honorable Elizabeth A. Wolford, United States District Judge, rejected in part and adopted in part the Report and Recommendation.  Dkt. No. 56.  The Court granted Plaintiff's cross-motion for leave to file an amended complaint except to the extent Plaintiff sought to assert an abuse of process claim or any claims against the City of Buffalo, and denied the Defendants' motion for judgment on the pleadings as moot, among other relief.  *Id.*  Judge Wolford further instructed Plaintiff to file an amended complaint in accordance with her Decision and Order.  *Id.* at 16.

10.      On March 27, 2019, Plaintiff filed an Amended Complaint.  Dkt. No. 59.

11.      On April 15, 2019, the Defendants filed an Answer to Plaintiff's Amended Complaint.  Dkt. No. 61.  The Defendants asserted defenses of insufficient service of process, lack of personal jurisdiction, and qualified immunity, among other defenses.  *Id.*

12.      All documentary evidence and testimony supports the undisputed facts that these Defendants are entitled to judgment as a matter of law because Plaintiff failed to obtain personal jurisdiction over Mary Gugliuzza, Mark Stambach, and Mark Vaughn, Plaintiff's false arrest and imprisonment claims are time barred, the causes of action proffered against the Defendants have no merit, or alternatively, the Defendants are entitled to qualified immunity, and there are no contested facts sufficient to require a trial of these claims against them.

13.      That based on the facts set out in the accompanying Statement of Undisputed Material Facts, and the argument set forth in the accompanying Memorandum of Law, the Defendants pray for an order granting their Motion to Dismiss

Plaintiff's Amended Complaint, for insufficient process and lack of personal jurisdiction,

Judgment on the Pleadings, and/or Summary Judgment, dismissing all claims against

the Defendants with prejudice and awarding costs for defense of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2020.
          Buffalo, New York

                         Timothy A. Ball, Esq.
                         Corporation Counsel
                         *Attorney for Defendants*

          By:    */s/ Maeve E. Huggins*
                         Maeve E. Huggins
                         Assistant Corporation Counsel
                         1112 City Hall
                         65 Niagara Square
                         Buffalo, New York 14202
                         Telephone: (716) 851-4317
                         Facsimile: (716) 851-4105
                         E-Mail: mhuggins@city-buffalo.com

A-112

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

           Plaintiff,

    vs.

RICHARD WAGSTAFF, MARY GUGLIUZZA,
BPD DOES 1-12 in their capacity as Police
Officers of the CITY OF BUFFALO,
BUFFALO POLICE DEPARTMENT, MARK
STAMBACH, and MARK VAUGHN,

          Defendants.

**AFFIDAVIT OF
SALVATORE LOSI**

Index No.: 16-cv-00321

**SALVATORE LOSI, being duly sworn, deposes and states:**

1.     I am fully familiar with the facts and circumstances as set forth herein, except those stated upon information and belief.

2.     I am employed by the Buffalo Police Department and I make this Affidavit in support of the Defendants' Motion to Dismiss and/or for Summary Judgment.

3.     I am employed by the City of Buffalo, New York within the Buffalo Police Department as a lieutenant assigned to the Administration and Finance Division.

4.     As a part of my duties and responsibilities in the Administration and Finance Division, I have access to and am fully familiar with official Buffalo Police Department personnel records made and kept in the ordinary course of business.

1

A-113

5.      A review of official Buffalo Police Department personnel records made and kept in the ordinary course of business indicates the following: Mary Gugliuzza retired from Buffalo Police Department employment on December 31, 2012; Mark Stambach retired from Buffalo Police Department employment on June 26, 2006; and Mark Vaughn retired from Buffalo Police Department employment on June 23, 2009.

Dated:  April 15, 2020
        Buffalo, New York

_____
SALVATORE LOSI

Sworn to before me this
15 day of April, 2020.

CHRISTOPHER R. POOLE, ESQ.
Notary Public, State of New York
Qualified in Erie County
Commission Expires July 24, 2022

2

A-114

# City Of Buffalo - Department Of Police
## Major Crimes Unit

**To:**          Captain Mark Morgan
                 Crimes Against Persons Bureau

**From:**        Det. Mark R. Stambach
                 D/Sgt. James Lonergan
                 Major Crimes Unit

**Subject:**     **FILE # 04-242**

**Date:**        11/16/04

ATTN:            Lt. Margaret Sack
                 Major Crimes Unit

Sir:

Your writers did meet with P.O. David Sadlocha and P.O. John Lobaugh at the Major Crimes Unit Office. Both officers did have with them a Mr. Josue Daniel Ortiz. They responded to a call at 7:16pm. P.O. Sadlocha, Car D432, indicated the subject was confessing about the homicide on Niagara Street.

Mr. Josue Daniel Ortiz was placed into Sgt. Vivian's Office at 7:25pm. A formal interview was started at 7:30pm. He gave information during this interview that indicated he was involved in the homicides. Present in the Interview Room was P.O. Edwin Torres of B District. He was used as an interpreter as he informed your writers he spoke only a little English.

After listening to Mr. Ortiz explain what had happened, he was advised of his rights.

P.O. Edwin Torres read a Spanish Rights Card to Mr. Ortiz. The rights were read at 8:25pm. He then signed the Rights Card. His waiver was read at 8:30pm. This Rights Card shall now become a part of this file.

At 8:40pm, Mr. Ortiz was given a Coke, large fries and a sandwich from McDonald's .

At 9:00pm, a formal sworn statement was taken from him. Please see attached sworn statement for further details on this matter. This sworn statement will now become a part of this file. The statement was finished at 10:30pm, whereas it was read back to him and he signed it.

Your office will be kept apprised of any new developments in this case.

Respectfully,

Mark R. Stambach

Det. Mark R. Stambach
Major Crimes Unit

A-115

P-1302

NOTES                                11-16-2004

                                     7:30 PM


        JOSUE              WM 23
        DANIEL                    1981
        ORTIZ      .       142 GERMAIN ST.


        ARRESTED  IN  PUERTO  RICO
        FOR  GUNS  AND  DOPE . . . .

                                              VICTIM
(A)     CELL PHONE IN HAND      (A)  ONE IN
        PISTOL  IN OTHER              REAR OF
        FLOCO  HAD  PISTOL IN HAND .  HOUSE
        CELL

(A)     T.V.  WAS  BIG      (A)  GOLD CHAIN
(A)     T.V.  WAS  ON            RIPPED OFF
                                 LOBO  WHO
                                 WAS  AT
        HE  WAS  WITH            FRONT DOOR
        UDAH
        HE IS  JOEY              RAN  AWAY

                        THREE
        THERE  WERE  THERE
                                 GERMAIN  WAS
                                 HIMSELF

(☆)   THEY  WENT
        THERE  FOR  DOPE    (A)  HE  HAD  A
        AND  MONEY               SHOTGUN HE
                                 DID  NOT  FIRE
      / FLOCO  HAD               ANY  SHOTS
        PISTOL                   INSIDE

A-116

☆) NAME OF GUN

MILATARY GUN

AK — ⟵ HIS WORDS

☆) YES AK WAS

FIRED

☆) Where is the milatary gun

right now

He knows                8:25 PM

were it is .             Advised

                         8:30 PM

                         Waiver

                              8:40PM

                    Feed

                    McDonalds

                    Cake - Fries

                    Sandwhich

1

```
 1    STATE OF NEW YORK

 2    COURT OF CLAIMS

 3    ----------------------------------------------------

 4    JOSUE ORTIZ,

 5

 6              Claimant,

 7     -vs-                    CLAIM NO. 126292

 8    THE STATE OF NEW YORK,

 9

10              Defendant.

11    ----------------------------------------------------
         Examination before trial of JOSUE ORTIZ, held before

12    Kelly S. Hairston, Notary Public, at 350 Main Street,

13    Third Floor, Buffalo, New York, on Thursday, March 15th,

14    2018 beginning at 1:00 p.m. and ending at 3:27 p.m.,

15    pursuant to notice.

16

17

18

19

20

21

22

23

24

25
```

A-118

2

```
 1    APPEARANCES              LAW OFFICES OF WAYNE C. FELLE, P.C.
                               WAYNE C. FELLE, ESQ.,
 2                             6024 Main St,
                               Buffalo, New York 14221,
 3                             Ph. (716) 505-2700,
                               Attorney for the Claimant.
 4
                               STATE OF NEW YORK,
 5                             OFFICE OF THE ATTORNEY GENERAL,
                               ERIC T. SCHNEIDERMAN,
 6                             BY:  TIMOTHY FLYNN, ESQ.,
                               ASSISTANT ATTORNEY GENERAL,
 7                             Main Place Mall,
                               350 Main Street, Third Floor,
 8                             Buffalo, New York 14202,
                               Ph. (716) 853-8426,
 9                             Attorney for the Defendant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-119

3

```
 1                    W I T N E S S E S
 2   WITNESS              EXAMINATION              PAGE
 3   Josue Ortiz         by Mr. Flynn             04
 4
 5
 6
 7                         EXHIBITS
 8   NUMBER              DESCRIPTION               PAGE
 9   1                   Statement                 49
10   2                   Court Decisions           49
11   3                   Document                  49
12   4                   Document                  49
13   5                   Supreme Court Decision    49
14   6                   Verified Claim            58
15   7                   Superseding Indictment    80
16
17
18
19
20
21
22
23
24
25
```

A-120

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                4

1                         JOSUE ORTIZ,

2         2449 Niagara Avenue, Apartment 2, Niagara Falls, New

3     York, 14305, having been first duly sworn, was examined

4     and testified as follows:

5

6     The following stipulations were entered into by

7     counsel:

8

9         It is hereby stipulated by and between the attorneys

10    for the respective parties hereto that the oath of the

11    Referee is waived, that signing, filing and

12    certification of the transcript are not waived and that

13    all objections, except as to the form of the questions,

14    are to be reserved until the time of trial.

15

16                        EXAMINATION

17    BY MR. FLYNN:

18    Q. Good afternoon, Mr. Ortiz.  My name is Timothy Flynn.

19       I'm an Assistant Attorney General assigned to your

20       claim.  We met briefly as you were walking in.  I'm

21       going to ask you some questions today about your claim

22       and some background about you.  Have you ever been

23       deposed before?

24    A. Excuse me?

25    Q. Have you ever had a deposition before?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                    5

```
 1      A. No, it's my first time.
 2      Q. For the benefit of our court reporter, if you could
 3         allow me to finish the question before you answer, he
 4         can only take down one of us talking at the same time,
 5         one at a time.  If we try talking at the same time,
 6         he's going to scold us.
 7      A. Understand.
 8      Q. If you can, if you can verbalize your answers.  You and
 9         I understand a nod of the head, but he can't put that
10         down on the record.  We just had a brief conversation
11         with your attorney prior to going on the record.  We're
12         going to have you reserve your right to read and sign
13         your deposition transcript for 30 days.
14            MR. FLYNN:  Is that correct?
15            MR. FELLE:  Correct, in receipt of the transcript.
16
17      BY MR. FLYNN:
18      Q. If at any time you don't understand a question I have,
19         please let me know and I'll try to rephrase it.  If you
20         answer the question, I will assume you understood the
21         question, okay?
22      A. Okay.
23      Q. I understand you're bilingual in English and in
24         Spanish?
25      A. Now I am, but when I first came over here I wasn't
```

A-122

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                6

1    speaking no English at all.

2  Q. Are you more comfortable in English or Spanish?

3  A. English, I understand it very well now.

4  Q. Okay.  You understand English?

5  A. Yes.

6  Q. You don't feel you need an interpreter or anything like

7     that at all?

8  A. No.

9  Q. Okay, thank you.  If you need a break during the

10     deposition, restroom, just want to stretch a little

11     bit, please let me know.  We'll accommodate you, okay?

12     We'll try to get you out of here as quickly as we can.

13  A. Okay.

14  Q. Have you taken anything prior to the deposition today,

15     medication wise or other that may inhibit your ability

16     to testify?

17  A. I just take my regular medication, but I don't think

18     they -- it's going to be an issue with it.  I take my

19     psychotic medication.

20  Q. We'll get into what medications you take later on, but

21     nothing that would inhibit you or prevent you from

22     understanding my question or your ability to answer?

23  A. I understand you very well.

24  Q. Okay, thank you.  And your date of birth, sir?

25  A. ███████  1981.

A-123

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          7

1    Q. How old are you today?

2    A. I'm 36 years old.

3    Q. And the next question I'm going to ask, I'm going to

4       ask our court reporter if he will redact the answer

5       to -- your Social Security Number?

6          MR. FELLE:  I'm just going to object to that.  I'm

7       not sure what your policy is about redacting that

8       information, but it is a public document.  I'll allow

9       him to answer the last four and we can provide to you

10      in a confidential manner the full Social Security

11      Number.

12         MR. FLYNN:   That's acceptable.

13         MR. FELLE:  Just last four of your Social

14      Security.

15         THE WITNESS:  All right.  4236.

16

17   BY MR. FLYNN:

18   Q. Your marital status, sir?

19   A. I'm single.

20   Q. Have you ever been married?

21   A. No.

22   Q. Do you have any children?

23   A. Not yet.

24   Q. Not yet, one incoming or anticipating?

25   A. No, I just -- no children for now.

Case 23-352, Document 49, 06/27/2023, 3534002, Page135 of 251

A-124

1   Q. And the address that you gave at 2449 Niagara Avenue up
2        in Niagara Falls, how long have you lived there?
3   A. I've been living over there since May of 2015.
4   Q. And do you own or rent that place?
5   A. Rent.
6   Q. It's an apartment; correct, you said?
7   A. Yes.
8   Q. And prior to that, where did you live?
9   A. I used to live in Buffalo when I first got released
10       from prison.  I used to live in 50 Sheck with my
11       cousin.
12  Q. What's the address?
13  A. 50 Sheck.
14  Q. T-r-e-k?
15  A. No Sheck like S-h-e-c-k, I think that's the way you
16       spell it.
17  Q. S-h-e-c-k?
18  A. S-h-e-c-k, yeah, I think.
19  Q. And you said you lived with your cousin there?
20  A. Yeah, just for a few months.
21  Q. And what was your cousin's name?
22  A. Reynaldo Velasquez.
23  Q. And did you pay him rent or he just help you out after
24       you got released from prison?
25  A. Yeah, he just helped me out.  I just spent like a month

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          9

1  and a half over there and after that I went to the
2  Buffalo City Mission, and from the City Mission I went
3  to one of my friend's house for a little bit and after
4  that I moved to the Niagara Falls.
5  Q. How long were you at the Buffalo City Mission?
6  A. Like a month and a half, two.
7  Q. And then you lived with a friend, you said?
8  A. Yes.
9  Q. Was that in Buffalo or up in the Falls?
10 A. In Buffalo.
11 Q. Who was that, do you remember?
12 A. His name is Jose Galarza.
13 Q. Can you spell his last name if you know it?
14 A. G-a-l-a-r-z-a.
15 Q. How long did you live with Mr. Galarza?
16 A. Almost two months.
17 Q. Okay, and correct me if I'm wrong, you were released
18    from state custody in December of 2014; is that
19    correct?
20 A. Yes.
21 Q. Do you remember the specific date you were released?
22 A. Yep, December 9.
23 Q. What's your highest level of education, sir?
24 A. I have, I remember that it was like around 1 credit to
25    get my GED when I was in Puerto Rico.

A-126

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          10

1   Q. You're one credit shy of getting your GED?

2   A. To get my high school diploma, yes.

3   Q. And you did that in Puerto Rico?

4   A. Yes.

5   Q. Were you born in Puerto Rico?

6   A. Yes, I did (sic).

7   Q. And how long did you live in Puerto Rico before you

8      came to the U.S.?

9   A. Since I was born.  When I first came over here was in

10     summer 2004.

11  Q. You came to the U.S. in summer of 2004, did you come

12     directly to Buffalo?

13  A. Yes.

14  Q. Summer '04?

15  A. That's correct.

16  Q. And where were you living when you came then?

17  A. I came to live with my uncle, my cousin's father.  His

18     name is -- was Reynaldo Velasquez also.  He passed away

19     in 2010.

20  Q. He's the uncle of the gentleman you lived with upon

21     your release?

22  A. He's my uncle, the father of my cousin.

23  Q. Okay.  Same name as --

24  A. Yes.

25  Q. And where did you live with him at, do you remember the

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          11

1       address?

2    A. He was at Riverside.  I think the name of the street

3       was Royal Avenue.

4    Q. Royal Avenue?

5    A. Yes.

6    Q. How long did you live with him there?

7    A. It was for a very short period of time, probably like

8       around a month.

9    Q. Okay.  Do you know where you went to after that?

10   A. Yes, I moved by myself and I came to the west side in

11      7th street.

12   Q. Center Street?

13   A. 7th.

14   Q. 7th, sorry.  And was that an apartment there?

15   A. Yes.

16   Q. How long did you live in the apartment on 7th Street?

17   A. Like around a month and a half, two months.  And after

18      that, I moved back to Riverside.

19   Q. Do you remember where that was in Riverside where you

20      moved back to?

21   A. Germain Street.

22   Q. And how long were you at the Germain Street address, up

23      until your arrest?

24   A. Yeah, around it, yeah.  Last thing I remember I was

25      living there, yeah.

A-128

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          12

1    Q. And your arrest was sometime in November of 2004?

2    A. I believe so, yes.

3    Q. Okay.  The apartment on Germain Street -- was that an

4       apartment on Germain Street, I apologize?

5    A. Apartment, yes.

6    Q. Did you rent it?

7    A. Yes.

8    Q. Do you know who the owner was?

9    A. I don't remember his name.

10   Q. I apologize, just back up a little on your education.

11      You're one credit shy of your GED, what was the highest

12      grade you completed in your education?

13   A. 11th grade.

14   Q. And you did that all in Puerto Rico; correct?

15   A. Yes.

16   Q. Any schooling or anything since your release from

17      incarceration?

18   A. No.

19   Q. Okay.  How about while you were in?

20   A. Yes.  When I was in --

21   Q. What type of educational programs were you in?

22   A. In prison I was in school.  That's how I learned

23      English, to write it, to read it and I was in the GED

24      class.

25   Q. Did you take any of the GED classes while you were in

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-129

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                13

1        Puerto Rico before you came to Buffalo?

2   A. No.

3   Q. So you took all those while you were incarcerated?

4   A. Sure.

5   Q. Any other schooling that you had while you were

6        incarcerated?

7   A. No.

8   Q. Other than the programs they put you in?

9   A. Yeah.

10  Q. Do you remember what type of programs you were in, just

11       generally?

12  A. It was basically school programs, basically.

13  Q. Any trade programs?

14  A. No.

15  Q. Trade programs, I'm mean electrical, carpentry,

16       plumbing, anything like that?

17  A. Yes, they used to call it vocational, but I never went

18       to get a training program.

19  Q. Okay.  Was that your choice or you just didn't qualify

20       for them or what was that?

21  A. Yeah, it's kind of choice, yeah.  I was just focusing,

22       trying to get my GED.

23  Q. Are you currently employed?

24  A. Yes, I am.

25  Q. Where at?

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-130

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          14

1    A. I work in a hotel, Quality Inn, Niagara Falls

2       Boulevard.

3    Q. Niagara Falls Boulevard in Niagara Falls?

4    A. In Niagara Falls, that's correct.

5    Q. And what do you do for them?

6    A. I'm house man, a little maintenance and also in the

7       restaurant as I work as a dishwasher.

8    Q. How long have you been employed by them?

9    A. This month is going to be two years.

10   Q. What are your duties as a house man?

11   A. Help them out with the laundry, cleaning, mopping,

12      whatever they ask me to do, I just do it.

13   Q. Okay.  How about maintenance, what type of maintenance

14      things do you do?

15   A. Just simple things, like if a toilet don't want to

16      flush or something like that, I just grab the thing and

17      put it together.  If the sink don't want to drain, just

18      get a snake and make it drain from the pipes.

19   Q. Okay, and how much do you earn there?

20   A. Excuse me?

21   Q. How much do you earn there?

22   A. Oh, I'm on the minimum wage.

23   Q. Minimum wage?

24   A. Right now it's $10.40, I believe.

25   Q. $10.40 per hour?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          15

1     A. Yes.

2     Q. And do you work full-time or part-time there?

3     A. I work full-time.

4     Q. Is that 40 hours a week?

5     A. That's correct.

6     Q. So you've been there two years, it's March of 2018, so

7        you started April of 2016; is that correct?

8     A. I started the 27th, 2016, March.  I don't know if it

9        was the 25th, 26th, around that time.

10    Q. Okay.  So sometime late March?

11    A. Late March, yes.

12    Q. Did you have any employment prior to Quality Inn?

13    A. Yes, I did.  I used to work for --

14    Q. I'll qualify it, your most previous employment to

15       Quality Inn?

16    A. Before I started working --

17    Q. Just before Quality?

18    A. I used to work for temporary agencies, like Remedy

19       Staffing and SPS Temporaries.

20    Q. SPS Staffing?

21    A. Temporaries.

22         MR. FELLE:  Remedy Staffing.

23

24    BY MR. FLYNN:

25    Q. Remedy Staffing, I'm sorry.

Case 23-352, Document 49, 06/27/2023, 3534002, Page143 of 251

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                16

1    A. Remedy Staffing, yes.

2    Q. I combined the two, sorry.  And how long did you work

3       for the temp agencies?

4    A. It was like for Remedy, I worked barely for a few

5       months until they laid me off, and for SPS around the

6       same time.  Also SPS, it was more like a part-time.  I

7       was working like two to three days a week for SPS.

8    Q. For Remedy, how much did Remedy Staffing pay?

9    A. I used to be in the minimum wage also, back then it was

10      like $8.75.

11   Q. Do you know the approximate time period you were with

12      Remedy, what year?

13   A. 2000 -- around 2015.

14   Q. And just a couple months; right?

15   A. Right.

16   Q. And what type of jobs did they send you to?

17   A. First they send me to Niagara Chocolate in the

18      Cheektowaga, you know, the factory for candy.

19   Q. Yes.

20   A. But it was too much for me because at that time I had

21      no vehicle, so I used to take three buses to come down

22      and three buses to go up, and I was working overnights.

23      So after a month and a half, I called my staffing

24      coordinator and explained the situation to her.  So I

25      stopped working at Remedy, Niagara Chocolate and a

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          17

1    month after they send me to learn -- they call it

2    Lornamead.  It's a toothpaste factory in Tonawanda, New

3    York.  I used to work a 12 hour shift.

4  Q. Could you say the name of the factory again?

5  A. Lornamead, L-o-r-n-a-m-e-a-d.  I think I got it

6    right.

7  Q. That was in Tonawanda or North Tonawanda?

8  A. Tonawanda.

9  Q. And how about SPS Temporary, how long were you -- what

10   year were you with them?

11 A. I worked for them for a few months also, too.

12 Q. Do you remember the year that you worked there, was it

13   in 2015?

14 A. It was late 2015, beginning of 2016.

15 Q. What type of places did they send you to?

16 A. First they send me to, it was in a place they used to

17   call, they still call New England Motor Freight.

18   Basically it was like loading wagons with clothes and

19   stuff and put it in pallets.  And after that, they send

20   me to, it was some kind of factory in Lackawanna.  The

21   factory in Lackawanna used to call Sunil.

22      MR. FELLE:  Sun Hill?

23      THE WITNESS:  Sunil.

24

25   BY MR. FLYNN:

A-134

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          18

```
1     Q. Sunil?
2     A. Sunil, yeah.
3     Q. What did you do at that place?
4     A. It was like watching spools or whatever the name of
5        that thing is.  So they used to pass in for like big
6        rack of this, big machine.  They used wash it and I
7        used to grab it with a thing of air, take the water
8        they got, put it in the table and somebody used to dry
9        it and stack it up in pallets.
10    Q. And what did SPS Temporary pay you, was that minimum
11       wage also?
12    A. Minimum wage also, yeah.
13    Q. Do you know if it was about the same, $8.75 an hour?
14    A. No, I think they increased to 9 bucks around that
15       time.
16    Q. With SPS you were only there two or three days a
17       week?
18    A. Yes.
19    Q. With Remedy, were you full-time?
20    A. Yes.
21    Q. Any other employment in between the time you were
22       released from your incarceration until -- through
23       today?
24    A. No, no.
25    Q. Was SPS Temporaries the first place you obtained
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018            19

```
 1        employment upon your release?
 2   A. No, Remedy Staffing.
 3   Q. Remedy Staffing, okay.  You're right, I screwed up the
 4      dates.
 5        We talked a little bit about your employment,
 6      extensively about your employment since your release,
 7      how about any employment prior to November 2004?
 8   A. No, I try to -- looking for some jobs and stuff, but at
 9      that time like I said, I was not able to speak English.
10      So even I remember I went on a few interviews, but they
11      talk to me in English and I was not able to speak back,
12      so they never hired me.
13   Q. So when you came into the U.S. through Buffalo in the
14      summer of '04, you couldn't speak English?
15   A. No.
16   Q. Okay, and the summer -- so in between the summer --
17      correct me if I'm wrong, between the time you arrived
18      here in the summer of '04 until November of '04, you
19      didn't have any employment?
20   A. No.
21   Q. How did you support yourself then?
22   A. Before I came over here, my father, he sell the house
23      because after my mom pass away, he sell the house.  So
24      he split the money between me and my two brothers and
25      that's how I was supporting myself.
```

A-136

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          20

1    Q. He came over with those funds?

2    A. Excuse me?

3    Q. He came over with that money?

4    A. Yes.

5    Q. Not came over, but came here with that money?

6    A. Yeah.

7    Q. When you -- during that time from summer of '04 to

8       November of '04, were you on any Social Services or

9       anything like that?

10   A. When I do got released, I applied for Social Services,

11      but --

12         MR. FELLE:  He's asking before your incarceration.

13         THE WITNESS:  Back in 2004, no, I don't remember,

14      no.  Honestly speaking, I don't remember if I was or

15      not.

16

17   BY MR. FLYNN:

18   Q. And how about since your release, have you received

19      Social Services since --

20   A. When I do get -- when I do have -- when I was released,

21      I do have applied for Social Services.

22   Q. And what did you receive Social Services wise?

23   A. They help me with some food stamps and stuff.

24   Q. Did you get Medicaid?

25   A. Yes.  I'm not in Social Services anymore because since

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-137

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          21

1      I work, I'm not qualified to get Social Services

2      benefits.

3   Q. How long was it that you were on Social Services?

4   A. From November 2014 all the way around summer 2015.

5      When I started working I let her know and so --

6   Q. How is your health today?

7      MR. FELLE:  Object to form.

8      THE WITNESS:  Well, I feel very well, I guess.

9

10  BY MR. FLYNN:

11  Q. You mentioned a little bit about some of the

12     psychiatric medications you said you had taken but

13     don't affect your ability to testify.  Do you have a

14     mental health diagnosis, someone has diagnosed you with

15     a mental health condition?

16  A. Yes.  I'm diagnosed with schizophrenia, bipolar

17     disorder and depression.

18     MR. FELLE:  Object to form of the last question.

19

20  BY MR. FLYNN:

21  Q. Who diagnosed you with those?

22  A. In the beginning when the Buffalo General Hospital,

23     they diagnosed me with that thing when I got a

24     little -- they call it relapsed and stuff, so they put

25     me in the hospital for a few days.  And since I've been

DePAOLO-CROSBY REPORTING SERVICES, INC.
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          22

1          released from the hospital and I've been getting some
2          counseling and seeing the doctor in Niagara Falls
3          also.
4    Q. Since your release from the hospital or since your
5          release from your incarceration?
6    A. No, from the hospital and stuff, yeah.  Since I've been
7          out, yeah.
8    Q. Have you been hospitalized since your release in
9          December of 2014?
10   A. I was in Buffalo General Hospital in the psych unit.
11   Q. After your release from incarceration?
12   A. Yes.
13   Q. When was that, do you remember?
14   A. Well, I believe it was December 2015, around December,
15          January.
16   Q. How long were you hospitalized for?
17   A. I believe it was probably like -- I don't know because
18          I lose my mind for a little minute, but probably like a
19          week and a half, two weeks.
20   Q. Any other hospitalizations for your mental health
21          conditions after your release other than this one at
22          Buffalo General?
23   A. No.  No, it was in Niagara Falls.
24          MR. FELLE:  It wasn't at Buffalo General, Niagara
25          Falls Memorial.

A-139

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          23

```
1              MR. FLYNN:  Oh, okay, I'm sorry.
2              THE WITNESS:  Yeah.
3
4      BY MR. FLYNN:
5      Q. You were diagnosed with those mental health conditions
6         by Buffalo General; correct?
7      A. I've been diagnosed with that since my knowledge since
8         back in 2004, until I know.
9      Q. Do you know who diagnosed you with those back in
10        2004?
11     A. Back then, well, I lose -- honestly speaking, I lose my
12        mind for a little minute because -- I really don't know
13        what happened.  And when I regained back consciousness,
14        I was in Erie County Medical Center back in 2004.  And
15        the doctor there, what's the name of the doctor?  Not
16        Dr. Joseph.  I see Dr. Joseph, but it was some other
17        doctor that I seen before and I forgot his name.  Let
18        me see, I think his name was Dr. Liebergall if I'm not
19        mistaken.
20     Q. Do you treat with a mental health professional now?
21     A. Yes.
22     Q. Who is that?
23     A. I get treatment with -- my counselor name is Erin
24        Merillo and the doctor is Dr. Hani Shahata.
25     Q. Do you know how to spell that doctor's name?
```

A-140

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          24

```
 1     A. Oh, my gosh.
 2          MR. FELLE:  It's in --
 3
 4     BY MR. FLYNN:
 5     Q. Where is the doctor's office at?
 6     A. In Niagara Falls, in the Trot Building in Niagara
 7        Falls.
 8     Q. Tri Building?
 9     A. Trot, Trot.
10     Q. T-r-o-t?
11     A. T-r-o-t, yeah.  Let's see if I got that card over here.
12        This is the card from --
13          MR. FELLE:  Let me have it.  This is Dr. Erin
14        Marinello.
15          THE WITNESS:  She's my counselor now.
16          MR. FLYNN:  Is she M-a-r-i-n-e-l-l-o.
17          MR. FELLE:  Correct, E-r-i-n, with a comma, LMHC,
18        defined as a social worker at the Niagara County
19        Department of Mental Health.  That's okay, we can
20        provide them with the information.
21
22     BY MR. FLYNN:
23     Q. And just again, the doctor's name was Hani -- just your
24        recollection, not the spelling.
25     A. Hani, I believe it's H-a-n-i, and Shahata, S-h-e --
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

Case 23-352, Document 49, 06/27/2023, 3534002, Page152 of 251

A-141

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          25

1    Q. That's okay.  We'll get it from your attorney
2       afterwards, okay?
3    A. Yeah, because I really --
4    Q. Do you remember if Dr. Shahata, is he or she at the
5       Trot Building also?
6    A. Both they are at the Trot Building.
7    Q. Do you currently treat with anyone else?
8    A. Besides them, no.
9    Q. Do they have you on any medications today?
10   A. Yes.
11   Q. What do they have you on?
12   A. Lithium, 450 milligrams.
13   Q. Per day?
14   A. In the morning and at night, twice a day.  And I also
15      take Olanzapine, which is generic for Zyprexa.  I take
16      10 milligrams in the morning and 10 milligrams at
17      night, twice a day.
18   Q. Anything else?
19   A. No, those are the only two medications I take right
20      now.
21   Q. In some of your records I saw, I think it was from a
22      Dr. Joseph that you may have mentioned and another one,
23      they may have done a mental health examination of you
24      prior to your incarceration or prior to your state
25      incarceration while you were being held at the County

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          26

1    Center -- Dr. Coggins, it might be, but they indicated

2    that you had a long history of abusing alcohol, Xanax

3    and marijuana?

4        MR. FELLE:  First of all, object to the form.  It's

5    a very compound question.  I'm not sure --

6        MR. FLYNN:  I'll back it up.

7        MR. FELLE:  And you're asserting facts that aren't

8    in evidence.  So in fairness to Mr. Ortiz, if you could

9    break that up and just ask him a question not based on

10   any authority for that proposition?

11

12   BY MR. FLYNN:

13   Q. Sir, do you have a history of abusing alcohol?

14   A. No, not right now, no.  I don't drink.

15   Q. Don't drink now?

16   A. No.

17   Q. Have you ever had a history of abusing alcohol?

18   A. I used to when I was young, put it like that.  But --

19   Q. And what would you drink?

20   A. -- not anymore.  Beer, liquor.

21   Q. And how often would you drink?

22   A. It was probably like -- I was like a weekend type of

23      guy.

24   Q. Would you drink to the point of intoxication?

25       MR. FELLE:  Object to form.

A-143

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          27

1          THE WITNESS:  Sometimes I used to drink a lot.

2

3   BY MR. FLYNN:

4   Q. Did you or do you have a history of abusing Xanax?

5          MR. FELLE:  Object to the form.  First of all, the

6     question is do you or did you, so I'm going to object

7     to the compound nature of the question.

8          MR. FLYNN:  I think it was just do you.

9          MR. FELLE:  Before that, we're relating to before

10     his incarceration.  So just so we're clear about the

11     question, Mr. Flynn is now clarifying and he's asking

12     you right now do you have an issue abusing Xanax?

13          THE WITNESS:  Now, no.

14

15   BY MR. FLYNN:

16   Q. And I will ask, if you don't understand your question,

17     tell me you don't.  I don't want your attorney to

18     rephrase my question, okay?  Tell me you don't

19     understand it and I'll rephrase it.

20   A. Okay.

21   Q. Since your incarceration, have you abused Xanax?

22   A. No.

23   Q. Prior to your incarceration in 2004, did you abuse

24     Xanax?

25   A. Back then, yes.

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          28

1   Q. How often did you use the Xanax prior to your
2      incarceration?
3         MR. FELLE:  Object to form.  You can answer if you
4      understand.
5         THE WITNESS:  Repeat the question again.
6
7   BY MR. FLYNN:
8   Q. Yeah.  Prior to your incarceration in --
9   A. Before?
10  Q. Yeah, prior to -- in November of 2004, how often did
11     you use Xanax?
12  A. When I used to drink, put it like that.  When I used to
13     drink, I used to take a couple pills.
14  Q. And you -- have you used Xanax since you've been
15     released?
16  A. No.
17  Q. Since your release from incarceration, have you used
18     marijuana?
19  A. No.
20  Q. Prior to your incarceration in November 2004, did you
21     abuse marijuana?
22  A. When I was young, yes.
23        MR. FELLE:  Object to the form of the question.
24
25     BY MR. FLYNN:

A-145

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          29

1    Q. And how often would you use marijuana when you were
2       younger?
3          MR. FELLE:  Object.  You can answer if you
4       understand.
5          THE WITNESS:  Yes.  I used to drink too, like
6       socially.
7
8    BY MR. FLYNN:
9    Q. Since your release from incarceration, have you abused
10      any other drugs?
11   A. No.
12   Q. Okay.  Prior to your incarceration in November of 2004,
13      did you use or abuse any other drugs other than
14      alcohol, Xanax or marijuana?
15         MR. FELLE:  Object to the form.
16         THE WITNESS:  Back in 2004?
17
18   BY MR. FLYNN:
19   Q. Prior to '04?
20   A. Pretty much, no.
21   Q. How old were you when you came here -- I apologize,
22      when you came in 2004, how old were you?
23   A. I was 22, I think, if I'm not mistaken.
24   Q. And you were arrested in November of 2004; is that
25      correct?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018           30

1   A. Yeah, I think so, yes.

2   Q. Since your release from incarceration in December of

3      2014, have you been arrested?

4   A. I can explain something that happened.

5   Q. Can you tell me first if you've been arrested?

6          MR. FELLE:  Just briefly, he's asking you first of

7      all, the question is, have you been arrested?

8          THE WITNESS:  Yes.

9

10  BY MR. FLYNN:

11  Q. And what were you arrested for?

12  A. Basically I'm going to make a long story short, but

13     back in November 2015, somebody tried to break into my

14     place in -- where I live in Niagara Falls.  So I was a

15     little concerned about my safety and my family's safety

16     but --

17  Q. I apologize, did someone try to break in your place?

18  A. Yeah, they forced in my front door which I reported to

19     the Niagara Falls police department.  They came to my

20     home, made the report or whatever.  So that was in

21     November of 2015.  So in December of 2015, I was a

22     little concerned about my safety, so I went to

23     Cabella's in Cheektowaga in Buffalo and I decided to

24     purchase a weapon.

25  Q. What did you purchase?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          31

1      A. It was a 12 gauge shotgun.  So I filled out the

2         application, they did the background check, everything,

3         whatever.  So they sold that weapon to me and I paid

4         $330 for the 12 gauge shotgun.  So that was in December

5         of 2015.

6      Q. '15 you said; correct?

7      A. So in February of 2016, they came and arrested me and

8         tell me that I got a federal warrant, federal warrant

9         for possession of a firearm.

10     Q. A federal warrant?

11     A. Yeah.  Because they said --

12          MR. FELLE:  That's okay.  I don't want you to

13     suggest what they said, okay?  That becomes hearsay,

14     but I think you've described it.  Was that the basis of

15     your arrest?

16          THE WITNESS:  Yes.

17          MR. FELLE:  You possessed this gun?

18          THE WITNESS:  Yes.

19          MR. FELLE:  That you acquired lawfully?

20          THE WITNESS:  Right, yeah.  I bought it lawfully --

21

22     BY MR. FLYNN:

23     Q. And again, if you don't understand my question, please

24        let me --

25          MR. FLYNN:  And Mr. Felle, I would ask that you not

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          32

1    rephrase my question and let him ask.  If he doesn't

2    understand it, I want him to tell me he doesn't

3    understand it.

4         MR. FELLE:  Okay.  But he's asking you a question, I

5    believe.

6

7    BY MR. FLYNN:

8    Q. What was the charge you were charged with under this

9       federal warrant?

10   A. Possession of a firearm.  They said that I was not

11      allowed to possess a firearm.

12   Q. And who is they, who arrested you?

13   A. Well, the Niagara Falls police department came and get

14      me.

15   Q. Niagara Falls police arrested you on a federal

16      warrant?

17   A. Yep, and after that they came and got me from over

18      here, the ATF, I believe.

19   Q. And what happened to that criminal charge, was there a

20      trial or did you plead guilty?

21   A. Well, I was not going to take it to trial.  I was going

22      to, but the end of the road what I done was I

23      finally -- they plead guilty.  The judge understand and

24      they give me three years probation.

25   Q. Do you recall what judge it was?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          33

```
 1    A. I'm going to tell you the number right now.
 2          MR. FELLE:  It was Judge Vilardo.
 3          THE WITNESS:  Vilardo, Lawrence Vilardo, yep.
 4          MR. FLYNN:  Again, I would ask Mr. Felle not to
 5       answer his questions.  If he doesn't remember, that's
 6       fine.  I would ask you --
 7          MR. FELLE:  It's true.  So Mr. Ortiz, if you don't
 8       recall something, you just tell us you can't recall it.
 9
10    BY MR. FLYNN:
11    Q. And I apologize, I should have said that at the
12       beginning.  I don't want you to guess at anything.  If
13       you don't know it, feel free to tell me you don't know,
14       okay?
15    A. Okay.
16    Q. I'm not quizzing you on anything.  I understand a lot
17       of these questions I may ask you happened a long ago.
18       I appreciate that.  I don't know if I can remember what
19       I did last week, let alone I'm asking you some
20       questions that happened 10 or 12 years ago, so I
21       appreciate the timing of the thing.  So if you don't
22       know, just please tell me you don't know.
23    A. Okay.
24    Q. And if you're going to guess or estimate on something,
25       tell me that you're going to guess or estimate, okay?
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          34

```
 1    A. Okay, sounds fair.
 2    Q. I apologize, I should have said that in the beginning.
 3       And on this, were you on probation when you were
 4       released from your state incarceration in December of
 5       2014?
 6    A. No.
 7    Q. Okay.  Why was it you were not allowed to possess a
 8       firearm?
 9    A. They said that I was not allowed to possess a firearm
10       because back then when I was a teenager in Puerto Rico,
11       I got caught up into a fight and the person that I got
12       caught up into a fight pressed charges on me.
13    Q. Were you convicted of those charges?
14    A. Yeah, they gave me one year and a half probation back
15       then when I was 18 years old.
16    Q. 18?
17    A. 18, yes.
18    Q. And was that in a federal court or was that --
19    A. No, it was for the state.
20    Q. State court?
21    A. Yeah.
22    Q. I apologize, I said state court, but I don't know if
23       it's the state court in Puerto Rico.  But that was in
24       state court?
25    A. Yeah.  They got federal too, but it was in the state
```

A-151

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          35

```
 1        court.
 2   Q. Do you recall what you were convicted of back when you
 3        were 18 of that fight, what the charge was?
 4   A. Yeah, I think it was assault.
 5   Q. And in this, the possession of the weapon, the shotgun,
 6        where you got three years probation, were you
 7        represented by an attorney on that charge?
 8   A. Yes.
 9   Q. Who represented you?
10   A. John Humann.
11   Q. And correct me if I'm wrong, is he the federal public
12        defender?
13   A. Yes.
14   Q. Are you still on probation today?
15   A. Yes.
16   Q. Who's your probation officer?
17   A. James Dyckman.
18   Q. Do you know how to spell his last name?
19   A. D-y-c-k-m-a-n.
20   Q. And do you know how often you report to James
21        Dyckman?
22   A. Once a month.
23   Q. Where do you report?
24   A. Well, basically sometimes he comes to see me at my work
25        or my place most of the time, and like once a month.
```

A-152

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018        36

1    Q. Do you ever have to go see him?

2    A. Yeah, at the beginning, yes.

3    Q. Where was he at, he's downtown in Buffalo in Niagara

4       Falls?

5    A. Right here in downtown Buffalo.

6    Q. Is he a federal probation officer, do you know?

7    A. Yes.

8    Q. Since your release, I asked you, you told me about the

9       one arrest that you had in December or February of

10      2016.  Have you had any other arrests since your

11      release from state incarceration?

12   A. No.

13   Q. How about prior to your incarceration in November of

14      2004?  You told me about the charges as an 18 year old

15      in Puerto Rico.  Any other criminal charges against

16      you?

17   A. No.

18   Q. And obviously if you have no criminal charges, you have

19      no other criminal convictions?

20   A. No.

21   Q. No, you have none?

22   A. No.

23   Q. I'm going to -- I kind of myself created -- tried to

24      get a timeline of what was going on back in 2004 with

25      you to your arrest.  I'm just going to ask you some

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          37

```
 1          questions and tell me if you remember them or not,
 2          okay?  Back in November of 2004, did you know who
 3          Nelson or Miguel Camacho were?
 4     A. Back in November of 2004 when I came over here, I met
 5          him, I met him.
 6     Q. Let's go with Nelson.  When did you first meet Nelson
 7          Camacho?
 8     A. Right around summer time.
 9     Q. And what circumstances did you meet him?
10     A. Basically we used to go to a bar they used to call the
11          Famous Corner.
12     Q. Famous Corner?
13     A. Yeah.
14     Q. Where is that located, west side?
15     A. No, it's -- I forgot the name of the street because
16          it's been so long and I don't drink anymore so --
17     Q. Is it in Buffalo?
18     A. Yes.
19     Q. Or it was in Buffalo?
20     A. Yes.
21     Q. And how about Miguel Camacho, when was the first time
22          you met him?
23     A. They used to be in the bar together, so we met at the
24          bar.
25     Q. Would you hang out with them or just see them when you
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

Case 23-352, Document 49, 06/27/2023, 3534002, Page165 of 251

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          38

```
 1        would go into the bar?
 2    A. When I used to see them go to the bar.
 3    Q. You weren't regular friends with them or it was just
 4        people you would know in the bar?
 5    A. Yeah, you know.  We was cool.
 6    Q. Would you see them outside the bar?
 7    A. No.
 8    Q. Do you recall back on November 15 of 2004 approaching a
 9        Buffalo police car near Hampshire and 19th Street,
10        telling the police you felt you were being threatened
11        and somebody was going to try to kill you?
12            MR. FELLE:  Object to the form.
13            THE WITNESS:  I don't remember.
14
15    BY MR. FLYNN:
16    Q. Do you remember the next day, November 16 of 2004, the
17        police coming to your house on Germain Street?
18    A. No.  I don't remember.  I lost my mind like around -- I
19        don't remember.
20            MR. FELLE:  He's just asking if you remember.
21            THE WITNESS:  No.
22
23    BY MR. FLYNN:
24    Q. Just asking if you remember, that's okay.
25    A. No.
```

A-155

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          39

```
 1      Q. Do you remember that same day going to Buffalo police
 2         headquarters November 16, 2004?
 3      A. No.
 4      Q. Let me ask you this and I apologize, I should have
 5         asked in the beginning, prior to coming in today other
 6         than speaking with Mr. Felle or any other attorneys in
 7         his office, did you review any documents prior to
 8         testifying today?
 9      A. Like, review documents?
10      Q. Yeah, papers or anything like that?
11      A. No.
12      Q. Nothing?
13      A. No.
14      Q. Just conversations with Mr. Felle?
15      A. Yes.
16      Q. Don't tell me though.  I don't want to know about that.
17         But you didn't review any paperwork or anything like
18         that?
19      A. No.
20      Q. Did you take a look at your claim that you filed
21         against the state or that your attorney filed on your
22         behalf?
23      A. Yes.
24      Q. When was the last time you looked at your claim?
25      A. I got it home, but once in the beginning when we
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          40

```
1          started with the process and stuff, but I looked at it
2          probably since the beginning to start the whole
3          process.
4     Q. Do you know when the last time was you looked at it?
5     A. Year and a half.
6     Q. So it's not like in a week or two prior to today?
7     A. No.
8     Q. That's all.  I apologize for jumping around.  I think
9          you had told me and correct me, you don't recall going
10         to Buffalo police headquarters on November 16, 2014?
11             MR. FELLE:  Object to the form.  You said 2014?
12             MR. FLYNN:  2004.
13             MR. FELLE:  2004, just so the record is clear.  Is
14         your answer the same?
15             THE WITNESS:  Yes, it's the same.  I don't
16         remember.
17             MR. FLYNN:  Just go off for a second.
18             (Brief pause in proceedings.)
19
20    BY MR. FLYNN:
21    Q. Do you remember back in November of 2004 being arrested
22         by the Buffalo police?
23    A. No.
24    Q. And further, with part of that arrest being charged
25         with the murders of the Camacho brothers, Miguel and
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                    41

1           Nelson that we talked about?

2               MR. FELLE:  Object to form.

3               THE WITNESS:  I don't remember.

4

5   BY MR. FLYNN:

6   Q. Do you remember being held at the Erie County Holding

7       Center following your arrest in November 2004?

8   A. When I regained back consciousness, I was in the Erie

9       County Medical Center in custody.

10  Q. In custody?

11  A. Yeah.

12  Q. Do you remember when that was that you regained

13      consciousness?

14  A. I don't remember the day or nothing.  I remember it was

15      snowing outside.

16  Q. Do you remember if it was November or December of 2004

17      or some time thereafter?

18  A. I can't tell you.  I can't tell you.

19  Q. And that was at Erie County Medical Center, you said?

20  A. ECMC, yes.

21  Q. Was that at the time when you told me about when you

22      were diagnosed with the bipolar, schizophrenia and

23      depression?

24              MR. FELLE:  Object to form.

25              THE WITNESS:  I believe so, yes.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          42

```
 1
 2      BY MR. FLYNN:
 3      Q. Do you remember meeting with any psychiatrist sent to
 4         evaluate you on behalf of the court while you were at
 5         the Erie County Medical Center in 2004 or early 2005?
 6            MR. FELLE:  Object to form.
 7            THE WITNESS:  Like I said, I remember the doctor,
 8         when I gained back consciousness and stuff.  He used to
 9         go to see me and talk to me.  His name was
10         Dr. Liebergall.
11
12      BY MR. FLYNN:
13      Q. The guy you mentioned before, Liebergall?  I apologize,
14         is that a male or female?
15      A. A male.
16      Q. Who was your attorney on the criminal charges that you
17         had against you at that time?
18      A. He -- John Nutarino (sp).
19      Q. John Nutarino?
20      A. Yeah, he passed away.
21      Q. He passed a couple years ago or something?
22      A. I believe so, like a year and a half, two years ago.
23      Q. Did you go to all your court appearances with
24         Mr. Nutarino with respect to those criminal charges
25         against you?
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          43

1    A. I believe so.

2    Q. Do you remember in late November 2004 to early 2005

3       being examined by a psychiatrist or psychiatrists to

4       determine whether you were competent or not to proceed

5       with the criminal charges?

6          MR. FELLE:  Object to the form.  Object to the form.

7       I'm going to let him answer this compound question.  Do

8       you remember being examined and do you remember being

9       examined for something, what the attorney is

10      describing?

11         THE WITNESS:  I remember talking to the doctor, but

12      I don't remember no examination or nothing.  He used to

13      ask me questions and stuff but --

14

15   BY MR. FLYNN:

16   Q. Not a physical examination.  But did you sit down and

17      talk to a psychiatrist or psychiatrists during that

18      time frame, November 2004 to early 2005?

19         MR. FELLE:  Object to form.

20

21   BY MR. FLYNN:

22   Q. And talking to them?

23   A. When I was at ECMC or when they sent me back to the

24      Holding Center?

25   Q. At ECMC.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          44

1    A. Dr. Joseph Liebergall.

2    Q. Do you remember talking to any of them at the Holding

3       Center during that same time period?

4    A. Yes, I remember Dr. Evelyn Coggins and Dr. Brian

5       Joseph.

6    Q. Do you know why they were talking to you?

7           MR. FELLE:  Object to form.

8           THE WITNESS:  I thought it was like a regular

9       routine evaluation.

10

11   BY MR. FLYNN:

12   Q. Okay.  Do you recall either Dr. Coggins -- strike that.

13          Do you recall Dr. Coggins making the determination

14      that you were competent to proceed with the criminal

15      charges against you?

16          MR. FELLE:  Object to form.

17          THE WITNESS:  No.

18

19   BY MR. FLYNN:

20   Q. Do you recall Dr. Joseph making that same determination

21      that you were competent to proceed with your -- with

22      the criminal charges that were filed against you?

23          MR. FELLE:  Object to the form.

24          THE WITNESS:  I remember Dr. Joseph one time went to

25      the court.  I remember Dr. Joseph.  He went to court

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          45

```
 1        and gave me a subpoena about my condition or

 2        whatever.

 3    Q. Were you present when he was in there?

 4    A. Yes.

 5    Q. Present in court, I mean?

 6    A. Yes, yes.

 7    Q. Was that in front of Justice Forma, if you remember?

 8    A. I don't remember the name of the judge.

 9    Q. Do you remember in the July of 2005 Justice Forma

10        making the determination that you were not an

11        incapacitated person and that the criminal charges

12        against you could proceed?

13    A. No.

14    Q. How long did you remain from November of 2004 when you

15        were arrested, how long did you remain at the Holding

16        Center over here on Delaware Avenue in Buffalo?

17    A. Well, I left the Holding Center back in summer time

18        2006.

19    Q. 2006?

20    A. Yeah.

21    Q. And during that time, you told me that you -- at least

22        one time that you went to Erie County Medical Center;

23        is that correct?

24    A. Yeah, in -- I believe in the beginning with all this

25        process.
```

A-162

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          46

1    Q. Do you know how long you were there at ECMC?

2    A. No, I don't remember.

3    Q. During this time that you were at the Holding Center

4       from November of '04 until I think you said the summer

5       of '06?

6    A. Yeah, I remember that I went upstate in the summer of

7       '06.

8    Q. Were you at the Erie County Holding Center your entire

9       time, did you ever go out to the correctional facility

10      in Alden or did you stay at the Holding Center?

11   A. At the Holding Center.

12   Q. Other than this one time you told me about at Erie

13      County Medical Center, ECMC, did you go to any other

14      hospitals while you were at the Holding Center?

15          MR. FELLE:  Object to the form.

16          THE WITNESS:  Ask me the question again.

17

18   BY MR. FLYNN:

19   Q. Sure.  You told me that you were at the Erie County

20      Holding Center from November of 2004 to the summer of

21      2006; correct?

22   A. Well --

23          MR. FELLE:  Object to the form.

24          THE WITNESS:  Like I said, I was in the -- when I

25      regained back consciousness, I was in the ECMC.

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-163

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          47

1
2      BY MR. FLYNN:
3      Q. You've told me about the one at ECMC.  I want to know,
4         did you go back to ECMC any other times or Buffalo
5         General or anywhere else?
6      A. When I was in upstate back when I was in Attica
7         Correctional Facility, the end of 2008 --
8      Q. No, I just want to keep it to the summer of 2006.
9      A. Oh, no.
10     Q. While you were at the Holding Center?
11     A. No, I just stay in the Holding Center.
12     Q. So during the time you were just at the Holding
13        Center?
14     A. Yes.
15     Q. Which was a year and a half, a little longer?
16     A. 20 some months, probably like 20, 21 months.
17     Q. You just went to one hospitalization at ECMC early on;
18        correct?
19            MR. FELLE:  Object to the form.
20            THE WITNESS:  Correct.
21
22     BY MR. FLYNN:
23     Q. Do you remember in September of 2005 a fellow prisoner
24        in the Holding Center by the name of Ronnie Williams?
25     A. No.

DePAOLO-CROSBY REPORTING SERVICES, INC.
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          48

1    Q. Do you remember telling any fellow inmates at the Erie
2       County Holding Center that you had killed the Camacho
3       brothers?
4    A. No.  How come I -- would not be able if I was not able
5       to speak English.  It's just jailhouse people, they
6       tried to make some deals and stuff, saying that kind of
7       stuff.
8    Q. But you didn't tell Mr. Williams or any other
9       inmates?
10   A. No.
11   Q. Did any other inmates in the Holding Center speak
12      Spanish?
13   A. Not in my section.
14   Q. No other inmates in there, you were the only one?
15   A. Yep.
16   Q. That spoke Spanish?
17   A. Yep.
18   Q. Do you remember on March 22, 2006 entering a plea of
19      guilty to two counts of manslaughter in the first
20      degree for the deaths of Nelson and Miguel Camacho?
21   A. Yes, I did.  The only way I did that is because --
22          MR. FELLE:  Just asking you if you remembered it.
23          THE WITNESS:  Yes.
24
25      BY MR. FLYNN:

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          49

```
 1        Q. Did you plead guilty to those charges?

 2        A. Yes.

 3        Q. Do you remember what judge that was in front of?

 4        A. Michael D'Amico.

 5        Q. And do you remember subsequent to that on June 16 of

 6           2006 being sentenced for the -- for that charge, for

 7           that plea of guilty?

 8        A. I tried to withdraw my guilty plea, but yes, I remember

 9           being sentenced.

10        Q. What was the sentence that you received?

11        A. They sentence me to 25 years.

12        Q. Was there post release supervision too?

13        A. Yes.

14        Q. How long was that, if you remember?

15        A. Five years.

16        Q. For each count or --

17        A. Both.

18        Q. Were they to run concurrent or consecutive, if you

19           know?

20        A. I believe it was together.

21        Q. Was that again in front of Judge D'Amico?

22        A. Yes.

23              (Proposed Exhibit Numbers 1-5 marked for

24              identification.)

25
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          50

1      BY MR. FLYNN:
2      Q. Okay.  Mr. Ortiz, I want to show you what we marked as
3         Exhibit 1, ask you to just take a look at it first,
4         okay?
5      A. Okay.
6      Q. If you want to read it, you can read it, but just let
7         me know when you're done.
8      A. There you go.
9      Q. You had a chance to take a look at it?
10     A. Yep.
11     Q. And you told me when we started that you can read
12        English now?
13     A. Now, yes.
14     Q. So you read this and you understand what --
15     A. Yeah.
16     Q. You understand what the words are on it?
17     A. Yeah.
18     Q. Okay.  Have you ever seen this document before, Exhibit
19        1?
20     A. Honestly speaking, no, that I remember.
21     Q. It appears to be a City of Buffalo Department of Police
22        statement by you dated November 16, 2004.  You see that
23        at the top of Page 1?
24           MR. FELLE:  Object to the form.  He's just asking
25        you what the document itself states, not whether or not

A-167

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          51

1          you know that independently.  Is that what it says?

2

3     BY MR. FLYNN:

4     Q. Does it have your name on the top and the date November

5          16, 2004?

6     A. Yeah, that's my name.

7     Q. Okay, and I'll look at the third -- let's look at the

8          bottom page, bottom of Page 1 in the right hand corner.

9          There appears to be initials there, do you see those

10         there below the yellow marker, exhibit marker

11         sticker?

12    A. Right here?

13    Q. Yes.

14    A. Yes.

15    Q. Are any of those initials yours?

16         MR. FELLE:  If you know.

17         THE WITNESS:  Yes, but I don't remember none of

18         that.

19

20    BY MR. FLYNN:

21    Q. Okay.  I didn't ask if you remembered it, I just asked

22         you if any of the initials are yours?

23    A. Yes.

24    Q. And which one is yours, do you know?

25    A. This is my name, I guess.

A-168

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          52

1      Q. The bottom one?
2      A. JOB, yeah.
3            MR. FELLE:  The fact you say I guess, we don't want
4         you to guess.  Do you know if that is or isn't?
5            THE WITNESS:  It's my initials, yes.
6
7      BY MR. FLYNN:
8      Q. Okay.  Do you recall putting your initials on that
9         document?
10     A. No.
11     Q. Same thing with Page 2, in the bottom right corner
12        there appears to be initials there.  Do you see
13        those?
14     A. Yes.
15     Q. Are your initials there on the bottom there?
16           MR. FELLE:  Object to form.
17           THE WITNESS:  Yes.
18
19     BY MR. FLYNN:
20     Q. Do you recall putting those on Page 2?
21     A. No.
22     Q. And the last page there's a signature, do you see your
23        name there?
24     A. Yes.
25     Q. Is that your signature?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          53

1    A. Yes.

2    Q. Above it, again appears to be three sets of initials

3       again.  Do your initials appear there?

4    A. Yes, but I don't remember signing none of that.

5    Q. That was going to be my next question, do you remember

6       signing this document?

7    A. No.

8    Q. This document -- I'm just going to summarize it -- it

9       appears to be a confession by you to killing Mr. Miguel

10      and -- Camacho and Nelson Camacho.  Did I get the first

11      name right?  Miguel and Nelson Camacho.  Is that --

12         MR. FELLE:  Hold on, it's not a question, that's a

13      statement.

14         MR. FLYNN:  That was a statement, that's -- I

15      summarized it.

16         MR. FELLE:  There was an awkward pause for the sake

17      of the record.  I was about to say something, but

18      there's no question posed.

19         MR. FLYNN:  Pause won't show up on the record.

20         MR. FELLE:  Correct.

21

22    BY MR. FLYNN:

23    Q. My summary of it, my reading of it, do you remember

24       giving this statement to the Buffalo police?

25    A. No.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          55

1    Q. Do you recall ever seeing these documents before?

2    A. I don't remember those documents.

3    Q. Okay.  Is this the first time you've seen them to your

4       recollection?

5    A. That I know, yeah.

6    Q. Do you recall in the summer of 2005 having a hearing in

7       front of Justice Forma with respect to your

8       competency?

9    A. I believe my lawyer put a motion in, so yes.

10   Q. Is that the one I think you told me that Dr. Brian

11      Joseph came in and gave an opinion?

12   A. Yes, I believe so, yes.

13   Q. And do you recall what the result of that hearing was,

14      what the finding was?

15   A. I, I think it was for to change if I was competent to

16      proceed with the process.

17   Q. Do you recall this first decision dated July 15, 2005

18      of Justice Forma finding that you were not an

19      incapacitated person within the meaning of CPL Section

20      310-1 and accordingly, the criminal action against you

21      must proceed?

22          MR. FELLE:  Object to form.

23

24   BY MR. FLYNN:

25   Q. Do you remember that?

A-171

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                56

```
 1      A. I don't remember these decisions or none of that.
 2      Q. But Mr. Nutarino was your attorney at the time?
 3      A. Yeah, Mr. Nutarino was my attorney for the whole
 4         process.
 5      Q. No one else was?
 6      A. No.
 7      Q. Thanks.  The second one, part of Exhibit 2 is dated
 8         October 31, 2005 and it appears Mr. Nutarino -- do you
 9         recall Mr. Nutarino making a motion in attempt to
10         suppress statements both oral and written that you had
11         made?
12      A. No.
13      Q. Okay.  Do you recall having a hearing on that in front
14         of Justice Forma in the summer to early fall of 2005?
15      A. To make clear, it was two lawyers, it was Mr. Nutarino
16         and Betty Cabo Torres.  She was a lawyer too, but she
17         used to be my interpreter back then.
18      Q. Mr. Nutarino was your primary attorney?
19      A. Yes, and Ms. Betty Cabo Torres, she was an attorney
20         too, but --
21      Q. Was she more an interpreter or attorney or both?
22      A. She was both.
23      Q. Okay, but Mr. Nutarino was the primary attorney for
24         you?
25      A. Yes.
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          57

1    Q. And do you recall this decision of October 31, 2005
2       where a motion made on your behalf by Mr. Nutarino to
3       suppress your oral statements and written statements
4       was denied?
5    A. No.
6    Q. I just want to show you marked as Exhibit 3 -- kind of
7       hard to see if it's Exhibit 3.  We had a comment on
8       what it looks like, Number 3.  Not throwing our court
9       reporter under the bus.  Had a chance to take a look at
10      it?
11   A. Yeah.
12   Q. Have you ever seen this document before?
13   A. No.
14   Q. Do you recall meeting with -- strike that.
15         This document Exhibit 3 is signed -- is typed named
16      below it Evelyn Coggins, consulting psychiatrist.  Do
17      you recall meeting with Ms. Coggins while you were held
18      at the Erie County Holding Center?
19   A. Yes.
20   Q. Do you recall meeting her on October 25, 2005?
21   A. I don't remember exactly the day, but I used to meet
22      her like regularly when I was there.  We used to talk
23      regularly.
24   Q. How often would be regularly?
25   A. Well, like --

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          58

1      Q. Weekly, monthly?

2      A. Once a month.

3      Q. Once a month?

4      A. Yeah.

5      Q. Do you recall in October 2005 -- strike that.

6          Do you recall on August 25, 2005 Dr. Coggins gave an

7          opinion that you remained competent to proceed with the

8          criminal proceedings?

9      A. No.

10     Q. Next I want to show you Exhibit 4 and ask you to take a

11         look at that.  Had a chance to take a look at it?

12     A. Yeah.

13     Q. Have you ever seen that document before?

14     A. Not that I know.

15     Q. That document, Exhibit 4, is attached as Exhibit C to

16         your claim.  Do you recall reviewing your claim prior

17         to having it served and filed?

18     A. Like I said, if I did, I was not able to even read

19         English back then, so I really don't remember it.  I

20         might have it, but I don't really understand it.

21         (Proposed Exhibit Number 6 marked for

22         identification.)

23

24     BY MR. FLYNN:

25     Q. I want to show you Exhibit 6 which is a document

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          59

1       entitle Josue -- did I pronounce that correctly?
2   A. Josue.
3   Q. Josue Ortiz versus the State of New York, Verified
4       Claim, State of New York, Court of Claims.  I'd ask you
5       to take a look at that.  You don't have to read the
6       whole thing, just want you to kind of skim it.
7   A. Um-hmm.
8   Q. You have a chance to take a look at it?
9   A. Yes.
10  Q. This is Exhibit 6 and it's a copy of your claim.  You
11      ever seen this document before?
12  A. My attorney Mr. Wayne gave me a copy of that.
13  Q. And I'll just direct your attention to Page 19, is that
14      your signature on the verification page?
15  A. Right here, yes.
16  Q. And then on Page 18, is that your signature in the
17      middle of the page?
18  A. Yes.
19  Q. Okay.  At this time in May -- it appears to be dated
20      May 13, 2015 on both Page 18 and 19; is that correct?
21  A. Yes.
22  Q. At that time, could you read and speak English?
23  A. Yes.
24  Q. And I want to direct your attention to Paragraph 13.
25      If you could read Paragraph 13.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          60

```
 1      A. Yes.
 2      Q. And it appears to reference a document entitled Exhibit
 3         C, do you see that?
 4      A. At the bottom -- yeah, last sentence says --
 5      Q. It says certificate of disposition?
 6      A. That's what Exhibit C mean?
 7      Q. Yeah.
 8      A. Yep.
 9      Q. Okay, and again, now I'll ask you to look at Exhibit
10         4?
11      A. Right here?
12      Q. Yeah, the one in front of you.  Is that Exhibit C
13         attached to your claim, if you know?
14      A. I don't see it here.
15      Q. Is that the document -- I don't mean to confuse you.
16      A. Okay.
17      Q. Exhibit 6 is the claim.
18      A. Okay.
19      Q. And it has -- does not have the exhibits attached to
20         it.  There's Exhibits A through F.
21      A. Okay.
22      Q. In Paragraph 13 of Exhibit 6, it refers to that you
23         were sentenced to indefinite term of 25 years of
24         imprisonment with five years post supervision, directed
25         to the custody of New York State Department of
```

Case 23-352, Document 49, 06/27/2023, 3534002, Page187 of 251

```
 1          Corrections (the judgment of conviction, see attached
 2          hereto as Exhibit C).  Do you know if the document in
 3          front of you, Exhibit 4, is C that's attached to your
 4          claim?
 5     A.  I really don't understand what you're trying to tell
 6          me.
 7     Q.  Okay.
 8     A.  So can you rephrase that before so I can understand
 9          better?  Because you lost me for a minute.
10     Q.  Look at Paragraph 13.
11     A.  Okay.  I'm looking at it.  They basically said that I
12          got sentenced to 25 years in prison plus 5 years post
13          release with direct custody to New York State
14          Department of Correction, the judgment convictions.
15          See attached hereto as Exhibit C.  Okay.  I stop right
16          there --
17     Q.  Now look at 4.  What's Exhibit 4 titled at the top,
18          very top of the document?
19     A.  Right here?
20     Q.  No, way up at the top.
21          MR. FELLE:  I'm going to object to the line of
22          questions.  I think you're trying to establish this is
23          the same document.  If he knows, he can answer.  I
24          think he's expressed he doesn't know.  We'll stipulate
25          to the notice of claim.  It's a verified document that
```

A-177

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          62

```
 1          comes in as evidence so --
 2              MR. FLYNN:  My concern was he has said he's never
 3          saw that document and he said he couldn't read and
 4          speak English at the time.  That document is attached
 5          to his claim dated May of 2015, and he says he didn't
 6          speak or understand English at the time.
 7              THE WITNESS:  Back in 2004 it wasn't.  Now I am.
 8          Back in 2004 I wasn't.
 9
10      BY MR. FLYNN:
11      Q. So I'll straighten out my question.  In May of 2015
12          when the claim was filed on your behalf?
13      A. Okay.
14      Q. Did you understand -- did you review the claim prior --
15      A. Yes, I did.
16      Q. And you signed it?
17      A. Yes, I did.
18      Q. Did you review all the exhibits that were attached to
19          the claim?
20      A. Yes.
21      Q. Okay.  That's all I have.  Exhibit 5 is going to be --
22          we'll shortcut it.  I'll ask you to just take a look at
23          it.  We'll ask the same question, okay?  You don't have
24          to read it.  If you just want to skim it, I'm not going
25          to ask you any detailed questions about.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          63

1    A. Okay.  Okay.

2    Q. Have you ever seen that document before?

3    A. No.

4    Q. Okay.  Exhibit 5 appears to be a decision from the

5       Supreme Court Appellate Division, Fourth Department,

6       filed February -- excuse me, entered December 21, 2007.

7       It's entitled People of the State of New York versus

8       Josue -- did I pronounce that wrong?

9    A. Josue.

10   Q. Josue, I apologize.

11   A. No problem.

12   Q. Ortiz.  And it has a docket number of KA 06-1983.  This

13      document also appears as Exhibit D to your claim.  Do

14      you recall this decision being a part of your claim?

15         MR. FELLE:  Object to the form of the question as to

16      what the attorney was representing.  He was reading

17      from the document.  We don't verify the accuracy of

18      that.  The record does not reflect that Mr. Flynn was

19      reading from a document, but to the extent that he's

20      asking whether or not the Exhibit 5 was an attachment

21      to the notice of claim, Mr. Ortiz, you can answer that.

22      Do you know?

23         THE WITNESS:  Can you please ask me the question

24      again?

25

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          64

1    BY MR. FLYNN:
2    Q. Sure.  Was Exhibit 5 attached to your claim when you
3        reviewed it and signed it prior to it being filed?
4    A. Back when?
5    Q. May of 2015.
6    A. If I read it, I don't -- I don't -- I really don't -- I
7        read the paper that my attorney present sent to me, I
8        read the whole thing, but I really don't --
9    Q. Let me just back up to Exhibit 6 and direct you to
10       Paragraph 14, if you can read that.
11   A. Number 14?
12   Q. 14, yes.
13   A. I remember, I remember reading here but --
14   Q. Okay.  You don't remember if Exhibit 5 was attached to
15       your claim or not?
16   A. Like I said, Mr. Flynn, if they do send me that paper
17       back then, I was not able to understand it because I
18       was not able to read English or nothing like that.  So
19       they might do send me a lot of paper, but I really
20       don't understand what they were saying.
21   Q. I understand that.  I'm asking in May of 2015, was this
22       attached to your claim, Exhibit 5?
23   A. Well, it says right here.
24   Q. And you signed Exhibit 6?
25   A. Yes, I signed this paper.  I remember reading right

A-180

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          65

1          here.

2              MR. FELLE:  The deponent is referencing Exhibit 6

3          when he's pointing and saying that he signed that, he's

4          referring to the notice of claim.

5

6     BY MR. FLYNN:

7     Q. Now your attorney made a representation that he's

8          contesting that the verification -- the veracity of

9          this document.

10    A. Or that paper?

11    Q. This paper, Exhibit 5.

12    A. Okay.  That paper.

13    Q. I'd ask you to take a look at that and ask you is that

14         not a decision from the Appellate Division, Fourth

15         Department with respect to your appeal of your criminal

16         conviction?

17    A. Yes, it is.

18             MR. FELLE:  Object to form of the question.

19             THE WITNESS:  Yes, it is.

20             MR. FLYNN:  Mr. Felle, you're still going to contest

21         the veracity of this?

22             MR. FELLE:  I never did.  You're misrepresenting my

23         comment.  My comment was that you're reading from a

24         document and the accuracy of your reading of the

25         document is what I was contesting.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          66

```
 1          MR. FLYNN:  Okay.
 2          MR. FELLE:  You don't have the document.  We're just
 3      trusting that you're reading it correctly.
 4          MR. FLYNN:  You have the document.  It's Exhibit D
 5      to the claim.
 6          MR. FELLE:  It was the premise of your question and
 7      that's all.  I think it's clarified now.
 8          MR. FLYNN:  Okay, thanks.
 9
10   BY MR. FLYNN:
11   Q. I think you had told me earlier you do not recall
12      giving the statement Exhibit 1 to the Buffalo police on
13      November 16, 2004; is that correct?
14   A. No, I don't remember, Mr. Flynn.
15   Q. Okay, and I think you had told me you do not remember
16      telling any inmates at the Holding Center that you
17      killed the Camacho brothers; correct?
18   A. No.
19   Q. Do you recall while you were in state prison telling
20      any psychologist that you killed the Camacho
21      brothers?
22   A. No.
23          MR. FELLE:  Object to the form of the question.
24
25      BY MR. FLYNN:
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          67

1 Q. And do you recall going over -- towards the latter part

2  of your incarceration, going over and being requested

3  to testify at a federal grand jury?

4 A. I remember they went to see me and talk to me.

5 Q. And do you remember having an attorney by the name

6  Emily Trott representing you?

7 A. Yes.

8 Q. Do you remember testifying at that grand jury that you

9  killed the Camacho brothers?

10 A. Yes.

11 Q. Okay. If you entered a plea of not guilty -- or excuse

12  me, a plea of guilty and now saying you wanted to

13  change your plea and did not do it, why did you plead

14  guilty?

15   MR. FELLE:  Object to the form.

16   THE WITNESS:  Make it real quick.  The only reason

17  that I plead guilty is because my lawyer back then,

18  Mr. Nutarino told me that if I was going to go to

19  trial, I was not going to win a successful trial

20  because the confession -- apparently the confession

21  that I gave, it was apparently detailed.  So he told me

22  that if I don't plead guilty to those counts of the

23  manslaughter, I would spend the rest of my life in

24  prison.  So it was I take those years or I never get

25  out of jail, so they got me in that position.  Did I

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          68

1       really -- and I do plead guilty, but I try to withdraw

2       my guilty plea before my sentence.  Mr. D'Amico don't

3       buy it because I remember the date of my sentence --

4

5   BY MR. FLYNN:

6   Q. Judge D'Amico; correct?

7   A. Michael D'Amico, yeah.  My attorney at that time,

8       Mr. Nutarino, tried to withdraw my guilty plea, but it

9       was not -- apparently it was not a strong point or

10      strong ground or something like that.  So they decide

11      to sentence me, but I did try to withdraw my guilty

12      plea.

13  Q. But you did plead guilty to the charge?

14  A. Yes, I did.

15  Q. I have it and correct me if I'm wrong, that you first

16      went into state prison from the Erie County Holding

17      Center sometime in July of 2006?

18  A. Summer time, yes.

19  Q. And you testified that you were released on December, I

20      think 9th you told me, 2014?

21  A. Yes.

22  Q. Do you recall what prison you went to first in July of

23      2006, state prison?

24  A. Yes, I do, Elmira.

25  Q. Elmira?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          69

1    A. Yeah.

2    Q. How long were you at Elmira Correctional?

3    A. I was in reception, Elmira reception.  So basically I

4       went over there, they give me my green clothes and a

5       month after I went to Attica.  And I spend from Attica

6       from 2006 to 2010, and after that I went to Auburn.

7    Q. How long were you there at Auburn?

8    A. I spent in Auburn from 2010 to 2012.

9    Q. Where did you go after that, if you know?

10   A. They sent me back to Attica, and from 2012 to 2014 when

11      I got released.

12   Q. You didn't go to any other facility, correctional

13      facilities?

14   A. No.

15   Q. Just those?

16   A. Just those.

17   Q. Four or three?

18   A. Three, yeah.

19   Q. Elmira, Attica and Auburn and then back to Attica?

20   A. Yep.

21   Q. Are they all -- strike that.

22          Is Elmira, the reception place, was that a maximum

23      facility, if you know?

24   A. Yes, yes.

25   Q. How about Attica, is that a maximum facility?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018            70

1    A. Yeah, Attica is a max.

2    Q. How about Auburn Correctional Facility, is --

3    A. It's a max as well, yes.

4    Q. Did you have any illnesses while you were in prison?

5    A. Like as far as what?

6        MR. FELLE:  Object to form?

7

8    BY MR. FLYNN:

9    Q. Anything that you know of?

10   A. My body and stuff?

11   Q. Physical and/or mental.  Let's go physical first.

12   A. Physical, thank God I'm doing very well physical.  But

13      my mental health condition, I guess.

14   Q. And that you had told me had been diagnosed prior to

15      going into state prison; correct?

16   A. Yes.

17       MR. FELLE:  Object to the form.

18

19   BY MR. FLYNN:

20   Q. Did you get treatment while you were at Elmira

21      Correctional Facility for your mental health

22      condition?

23   A. Yes, I did.

24   Q. How about your first time at Attica?

25   A. Yes, I did.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          71

```
1    Q. And how about at Auburn?
2    A. Yes, used to get counseling.
3    Q. And how about at Attica?
4    A. Yeah.
5    Q. The second time?
6    A. Yeah.
7    Q. Okay.  What type of treatment did you receive at
8       Elmira?
9    A. Well, I see the doctor, they prescribe me some
10      medication.
11   Q. Do you recall what they were?
12   A. Abilify.
13   Q. And did he have you on anything else while you were at
14      Elmira?
15   A. It was Abilify -- that's it because a month after, I
16      just left.
17   Q. Then you went to Attica you told me?
18   A. Yes.
19   Q. And what type of treatment did you receive the first
20      time you were at Attica?
21   A. They used to change my medication a lot too, but they
22      used to give me Abilify as well, Zoloft and Zyprexa,
23      Remeron.  It was some other medication, but I don't
24      remember.
25   Q. Did you get any counseling while you were there at
```

A-187

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          72

```
1        Attica the first time?
2    A. Yes, yes, yes.
3    Q. Anything else besides the counseling and the
4        medications you got at the first time while you were at
5        Attica --
6    A. No.
7    Q. -- treatment wise?  Then you went to Auburn
8        Correctional Facility, 2010-2012?
9    A. Yes.
10   Q. What type of treatment did you receive, if any,
11       there?
12   A. I used to get counseling and see the doctor as well.
13   Q. Did you get medications there?
14   A. Yes.
15   Q. Do you recall what they were?
16   A. Yes, they used to give me Zyprexa only.
17   Q. Zyprexal?
18   A. Zyprexa.
19   Q. Zyprexa?
20   A. Yeah.
21   Q. Thank you.  That's the only thing you received at
22       Auburn?
23   A. Yes.
24   Q. Then you told me you went to Attica in 2012 until your
25       release, what type of treatment did you receive then?
```

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          73

1       A. I used to see the counselor and doctor again.

2       Q. Were you given medications?

3       A. Yes, they used to give me Abilify and Zyprexa.

4       Q. When you were released, were you on any medications

5          after you were released?

6       A. Until I get my -- for few months I wasn't.  I wasn't

7          for a few months in the beginning.

8       Q. Is that because you weren't on Social Services yet?

9       A. Right.

10      Q. Okay.  You had told me you were on -- currently on

11         Lithium and Zyprexa.  How long have you been taking the

12         Lithium?

13      A. I've been on Lithium for -- well, it's been since I

14         first went to the Buffalo General Hospital back in --

15         what I tell you, December 2015, around it.

16      Q. So since December 2015 approximately?

17      A. Right, December, January, 2015.  December 2015, January

18         2016, around that time.

19      Q. Okay, and how about the Zyprexa, how long you been

20         taking that?

21      A. I've been taking combined with the same thing.

22      Q. Same dates, late 2015, early 2016?

23      A. Around that time, yes.

24      Q. Did you suffer any injuries while you were incarcerated

25         at state prison?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          74

```
 1    A. Well, somebody tried to stab me.

 2    Q. When did that --

 3    A. Cut me in the face over here.  Officers one time, they

 4       beat the hell out of me too.

 5    Q. Let me ask you about the stabbing, when -- the

 6       attempted stabbing.  When did that happen?

 7    A. That happened back in 2000 -- I was in Attica, 2008.

 8       Got a misunderstanding with an inmate and when we came

 9       out to go to eat, we was in line.  The inmate pulled a

10       knife and attacked me.

11    Q. Okay.  Did you get cut or stabbed with that knife?

12    A. Yeah, A little bit right here in my face.  Thank God I

13       caught --

14    Q. You're pointing to your left cheek?

15    A. Yeah, he tried to get me, but thank God I moved.

16    Q. You have any scar there on your left cheek?

17    A. Yeah, a little bit.

18    Q. Whereabouts is your scar, you're pointing to the middle

19       of your left cheek?

20    A. Yeah, like right around there.  It's right here

21       somewhere.

22    Q. You got a little bit of a stubble there.  Is the scar

23       visible?

24    A. Yeah, you can see it right there.  It's like a little

25       bit, just superficial.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          75

1    Q. Do you know approximately how long that scar is?

2    A. From 2008.

3    Q. No, how long in length it is, I apologize?

4    A. I don't know.

5    Q. Did you get any disciplinary charges filed against you

6       for this incident?

7    A. Yes, I did.

8    Q. Do you recall what those were?

9    A. It was only 15 days keep lock.

10   Q. Was the charge against you for fighting?

11   A. Yeah, basically, yeah.  That's what the -- disciplinary

12      hearing there.  And after that, they tried to make me

13      press charges against the other inmate, but I just

14      leave that thing like that.  I said I don't want to get

15      involved with that.

16   Q. So you didn't file criminal charges against that

17      person?

18   A. No, no, I didn't.

19   Q. And I think you had started telling me you were

20      assaulted by officers?

21   A. Yeah, one time, you know, when I got my --

22   Q. Where did that occur?

23   A. That happened back in December 2008 because --

24   Q. What facility were you at at the time?

25   A. I was in Attica.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          76

1    Q. At Attica?

2    A. Yeah.

3    Q. Tell me what happened there?

4    A. Yeah.  Basically I got a little relapse so they put me

5       in the mental health stuff.  So I remember that I was

6       going the stairs handcuffed and I was like a little

7       agitated, like talking and stuff.  So a few officers

8       got offended when I say something about him, so they

9       beat me up.

10   Q. How many officers were involved, if you remember?

11   A. It was quite a few, like probably like 7, 8.

12   Q. Did you suffer any injuries as a result of that?

13   A. No, just a little sore and stuff, but my nose bleed and

14      my mouth but besides that, no.  No broken bones or

15      nothing, thank God.

16   Q. Let me ask you something, with respect to that assault

17      by the officers, did you get any disciplinary charges

18      against you for that?

19   A. Yes, they give me six months in solitary confinement.

20   Q. Is that also referred to as SHU or SHU?

21   A. Yep, yep, and I didn't even do nothing.  I was

22      handcuffed.

23   Q. You were handcuffed at the time of the assault?

24   A. Yes.

25   Q. Did you file a lawsuit with respect to that at all?

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          77

1   A. No.  I should have, but I didn't.

2   Q. Any other times while you were -- that you were

3      assaulted while you were in state prison, staff or by

4      other inmates?

5   A. No.

6   Q. You told me about the two disciplinary charges that you

7      had, one was at Attica in '08 where you got 15 days

8      keep lock and the second again in Attica, you got 6

9      months SHU.  Did you spend any other time in SHU while

10     you were in state prison?

11  A. No.

12  Q. You had mentioned a phrase 15 days keep lock.  To your

13     understanding, could you tell me what keep lock

14     means?

15  A. Well, it's a maximum security prison, so you locked in

16     your cell for 15 days.

17  Q. Locked in your own cell?

18  A. Yes.

19  Q. You're not transferred to the special housing unit, are

20     you?

21  A. No, no, I wasn't.

22  Q. Other than this 15 days you received for the incident

23     in Attica in 2008, did you have any other keep lock

24     time?

25  A. No.

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          78

```
 1      Q. Imposed against you?
 2      A. No.
 3          MR. FELLE:  Object to form.
 4
 5   BY MR. FLYNN:
 6      Q. Other than this claim that we're here talking about
 7         today, do you have any other lawsuits filed with
 8         respect to this -- the incident of your arrest and
 9         criminal charges and conviction against you that arose
10         in November of 2004?
11      A. Other than this one?
12      Q. This one, the one we're talking about today?
13          MR. FELLE:  It's kind of -- just if I may object.
14          THE WITNESS:  Can he talk for me because --
15          MR. FELLE:  It's somewhat intertwined.  The same
16      action also has an ancillary portion to it which is in
17      federal court.
18          MR. FLYNN:  That's what I'm asking.
19          MR. FELLE:  County and city.  Okay.  I don't know
20      that he would understand it from that question.  But I
21      think we certainly have told you that but --
22          THE WITNESS:  He's aware about it too.
23          MR. FELLE:  He's asking you if you're aware of
24      that.
25          THE WITNESS:  Yes, yes.
```

Case 23-352, Document 49, 06/27/2023, 3534002, Page205 of 251

A-194

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          79

1

2   BY MR. FLYNN:

3   Q. Do you know who you are -- you're the plaintiff in that

4      case?  Do you know what that is, a plaintiff?

5   A. Yes.

6   Q. Do you know who you sued or who your attorney sued on

7      your behalf in that case?

8   A. Yes, he explained it to me, yes.

9   Q. Could you tell me who the defendants are, who you

10      sued?

11   A. Well, Tiano, some officers from the Buffalo Police

12      Department, the Erie County and the City of Buffalo.

13   Q. City of Buffalo.  Did you also sue the district

14      attorney's office, Erie County District Attorney's

15      office, if you know?

16   A. Yes, I think.  I believe so, yes.

17   Q. Is that action filed in federal court here in Western

18      New York?

19   A. Yes.

20   Q. Okay.  Do you know what the current status of that

21      lawsuit is, is it still ongoing?

22   A. Yes.

23   Q. Have you been deposed at a -- give a deposition in that

24      case?

25   A. No.

**DePAOLO-CROSBY REPORTING SERVICES, INC.**
170 Franklin Street, Suite 601, Buffalo, New York 14202
716-853-5544

A-195

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          80

1    Q. Is a deposition of you scheduled for you in that case

2       as far as you know?

3    A. As far as I know for now, no.

4    Q. Okay.  Do you know, is the -- the case has not been

5       dismissed?

6    A. No.

7    Q. Do you know if there's a trial date set on that case?

8    A. No.

9    Q. And Mr. Felle and other attorneys represent you with

10      respect to that action; correct?

11   A. Only Mr. Felle.

12   Q. Almost done.  Do you want to take a break?

13   A. I'm okay.

14   Q. You sure?

15   A. Yes.

16         (Brief pause in proceedings.)

17         (Proposed Exhibit Number 7 marked for

18         identification.)

19

20   BY MR. FLYNN:

21   Q. Mr. Ortiz, I'll show you Exhibit 7 and just skim it

22      quickly, you don't have to read the whole thing.

23   A. Okay.

24   Q. Had a chance to take a look at it?

25   A. Yes.

1    Q. For ease of confusion unlike the past, I'll represent
2       to you that Exhibit 7 is attached as Exhibit E to your
3       claim, okay?
4    A. Okay.
5    Q. Have you ever seen Exhibit 7 before?
6    A. Not that paper, no.
7    Q. Other than it being attached to your claim when you
8       signed it; correct?
9    A. Correct.
10          MR. FELLE:  Object to the form of that question.
11          MR. FLYNN:  Yeah, it was a little --
12
13   BY MR. FLYNN:
14   Q. This document has a caption entitled District Court of
15      the United States for the Western District of New York
16      superseding indictment and it has a number 11-CR-366-A
17      as in apple and the caption of it says United States of
18      America versus and there's four names there, Mizael,
19      M-i-z-a-e-l, I don't know if I pronounced that right,
20      Montalavo a/k/a Bori, B-o-r-i, a/k/a Misa, M-i-s-a.
21      The next name is Carmen M. Justiano, J-u-s-t-i-a-n-o,
22      Ramirez, a/k/a Milli, M-i-l-l-i.  Efrain, E-f-r-a-i-n,
23      Hidalgo, H-i-d-a-l-g-o, and the last name is Brandon
24      Jonas.  I'm going to try to keep my questions as simple
25      as I can for this.  Do you know a Mizael Montalavo,

Case 23-352, Document 49, 06/27/2023, 3534002, Page208 of 251

```
 1        a/k/a Bori, a/k/a Misa?
 2            MR. FELLE:  Object to form.
 3            THE WITNESS:  No.
 4
 5   BY MR. FLYNN:
 6   Q. Have you ever heard of that person?
 7   A. When the federal authorities came to see me, they tell
 8      me about him, but I don't know.
 9   Q. What did they tell you about Mizael Montalavo?
10   A. Basically they told me that when they went to see me,
11      not in the beginning, but like a year after they came
12      to see me, they tell me that they got the real person
13      that commit the murders.  That's why they mentioning
14      they name, but I tell them that I don't know none of
15      those persons.
16   Q. You never heard of Mizael Montalavo prior to the --
17      before the federal authorities mentioned it to you?
18   A. No.
19   Q. How about Carmen M. Justiano Ramirez?
20   A. No.
21   Q. Never heard of him prior?
22   A. Never.
23   Q. Was his name mentioned to you by those federal
24      authorities in the same context that you described --
25   A. Yes.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          83

```
 1    Q. -- Mr. Montalavo?

 2    A. Yes.

 3    Q. How about Efrain Hidalgo, you ever heard of him?

 4    A. No.

 5    Q. He's an a/k/a, also known as Cheko, C-h-e-k-o.  You

 6       ever heard of Mr. Hidalgo or the name Cheko?

 7    A. No.

 8    Q. And did the federal authorities in the same context of

 9       Mr. Montalavo mention his name?

10    A. Yes.

11    Q. And how about Brandon Jonas, did you ever hear of his

12       name prior to your conversations with the federal

13       authorities?

14    A. No.

15    Q. Never met him before?

16    A. No.

17    Q. He has an a/k/a also known as the letter B, you ever

18       know anyone by that name or reference nickname or

19       anything?

20    A. No.

21    Q. Do you know, is it your personal knowledge, do you know

22       if these people that I just named, those four

23       individuals on this indictment, were they charged with

24       the crime of murdering Mr. Nelson Camacho and Miguel

25       Camacho?
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                84

```
 1        A. Yes.
 2        Q. Do you know what the status of those charges are
 3           against those individuals?
 4        A. No.
 5        Q. Do you know if any of these four individuals pled
 6           guilty to any of these charges, of killing either of
 7           the Camacho brothers?
 8        A. Not that I know of.  I really don't know.
 9        Q. Do you know if any of these individuals went to trial
10           on the homicide -- for murdering the Camacho
11           brothers?
12        A. I don't know.
13        Q. Do you know if any of these individuals have been
14           convicted following trial of killing the Camacho
15           brothers?
16        A. Don't know.
17        Q. Do you know if anyone has been convicted of killing the
18           Camacho brothers?
19             MR. FELLE:  Object to the form.  What are you
20           talking?  He was convicted.
21
22        BY MR. FLYNN:
23        Q. Other than you?
24        A. Oh, okay.
25             MR. FELLE:  Object to form.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                86

```
 1        Buffalo in the summer of 2004, have you ever been
 2        diagnosed with a mental health illness?
 3    A.  Sure, yes.
 4    Q.  What was the diagnosis?
 5    A.  I was early teens in Puerto Rico, like around 15, 16
 6        years old and I got a real break up with one of my
 7        girlfriends.  You know, when you're young so you really
 8        don't know how to handle that stuff, so my mom tell --
 9        I was like depressed, crying a lot of stuff, so my mom,
10        God bless her soul -- she pass away, but she took me to
11        some kind of doctor, you know, so he could give me some
12        counseling and stuff and they prescribed me some
13        antidepressant pills.  Honestly, it's been a while so I
14        really don't understand, but I also, you know, got a
15        history, a family history of mental illness, you know.
16        My grandpa, he went to the Korean war and he came back,
17        you know, he was -- basically he was schizophrenic
18        too.
19    Q.  Let me ask you this, do you know who treated you when
20        you were 15, 16 years old, do you know where you were
21        treated at?
22    A.  It was a doctor down there when I was living in Puerto
23        Rico.
24    Q.  You don't recall the name of the doctor or facility you
25        went to you?
```

A-201

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          87

```
 1    A. I really don't know.

 2    Q. Do you recall the name of the medication you had?

 3    A. I really don't remember.

 4    Q. Other than that incident, you had any other incidents

 5       where you were diagnosed with a mental health issue

 6       prior to coming to Buffalo?

 7    A. Pretty much besides that one, I didn't know I had a

 8       problem until I got a real relapse, you know.  So that

 9       was the only one when I was in Puerto Rico, that was

10       it.

11    Q. When was the real relapse that you just referred to?

12    A. Like my first episode psychotic that I lose my mind

13       was -- that I realized that I got a mental health

14       condition was back in 2004.

15    Q. Okay.  If you look at Paragraph 56, it says the

16       injuries and damages sustained and then it has a whole

17       list of them there and I want to go through some of

18       them with you, okay?

19    A. Okay.

20    Q. The first one, it says including but not limited to

21       personal injuries.  You told me about the two times

22       that you were -- one time that you were -- a fellow

23       inmate tried stabbing you in your left cheek, you got a

24       cut in your left cheek and then the assault by the

25       correction officers later in December of '08 at Attica.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          88

1          What other personal injures, if any, have you

2          sustained?  You got these two.

3     A. Yeah.

4     Q. I want to know if there's any others?

5          MR. FELLE:  Object to the question.  You can answer

6     to the extent that you understand as a layperson.

7          THE WITNESS:  Yes, I understand.  Well, besides

8     those two, those two was the two incidents that I got,

9     basically serious incidents.

10

11    BY MR. FLYNN:

12    Q. And that's what I want to know, are there any others,

13       any other serious incidents?

14    A. No.

15    Q. You also have severe mental anguish, what do you mean

16       by that?

17         MR. FELLE:  Object to the form as a layperson, it's

18    a medical conclusion.  Obviously this is a legal

19    document prepared by his lawyers, but to the extent

20    that you understand --

21         MR. FLYNN:  It's signed by him.  It's signed by

22    him.

23         MR. FELLE:  The facts are verified, but the legal

24    allegations aren't and I think it's generally accepted

25    that attorneys preparing documents, they have a

Case 23-352, Document 49, 06/27/2023, 3534002, Page214 of 251

```
 1        different knowledge of what things means.
 2            MR. FLYNN:  I just want to know his understanding of
 3        what he -- what the allegation of severe mental anguish
 4        means, that's all.  That's going to be for all these
 5        too.
 6            MR. FELLE:  I'm just going to object to the line of
 7        questions then to that extent.
 8            THE WITNESS:  When you're in prison, prison is not
 9        easy, you know.  Especially when you're an innocent man
10        behind bars, it's worse.
11
12    BY MR. FLYNN:
13    Q. How is it worse?
14    A. It's worse because you live with two sentence.  Know
15        that you're innocent in a place that you not even
16        belong.  You know, they got criminals in prison, but
17        not everybody is a criminal in prison.  So everyday and
18        every night it's a struggle, physical and mental.
19    Q. And that's what you mean by the mental anguish?
20    A. Yes.
21    Q. Is that what you also mean by the emotional distress
22        which is next?
23    A. The emotional distress is because I was the type of
24        person I -- sometimes it was hard for me to go to bed
25        at night thinking about all the situations, everything
```

Case 23-352, Document 49, 06/27/2023, 3534002, Page215 of 251

1      that happened in prison.  People die in prison.

2  Q. The next one you have is, and this is kind of a legal

3      term, but it says activation, precipitation and

4      aggravation of posttraumatic stress disorder?

5          MR. FELLE:  Objection.

6          THE WITNESS:  I believe that's one of my

7      conditions.

8

9  BY MR. FLYNN:

10 Q. Did you have that prior to November of 2004?

11 A. Prior?

12 Q. Yeah, prior.

13 A. Like I said, I only realize that I really -- I was -- I

14     realized that I got some mental problems when I really

15     realized was when I got that breakdown from reality

16     back in 2004.

17 Q. And my question is, do you know if you had

18     posttraumatic stress disorder prior to then?

19         MR. FELLE:  Object to the form.

20         THE WITNESS:  No.

21

22 BY MR. FLYNN:

23 Q. Okay.  The next one you have is loss of income, what do

24     you mean by loss of income, what income did you lose?

25         MR. FELLE:  Object to form.

A-205

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          91

```
 1          THE WITNESS:  For example, once again in prison,
 2      family, if you didn't send in some money, you can't buy
 3      no commissary.  Or you can get a job, but they're not
 4      paying you enough to buy the stuff that I need.  In my
 5      position when I was locked up, a lot of people forget
 6      about me.  A lot of people, they wouldn't send me no
 7      money.  They didn't send me no letter, so it was a
 8      struggle for me even to get a bar of soap everyday.
 9
10  BY MR. FLYNN:
11  Q. You were not employed while you were in Buffalo prior
12      to your incarceration; correct?
13  A. No.
14  Q. Okay.  The next one I want to ask you about, it says --
15      it's two lines down, embarrassment and degradation of
16      prison life.  What do you -- your understanding, what
17      does that mean?
18          MR. FELLE:  Object to form.
19          THE WITNESS:  Well, to my understanding,
20      embarrassed, like we're living, like, you're apparently
21      an inmate, and you're embarrassed about that but you're
22      not.  That's what I understand about that, I guess.
23
24  BY MR. FLYNN:
25  Q. Next you have permanent loss of natural psychological
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                92

```
 1        development.  What is your understanding, what do you
 2        think that means that you're claiming?
 3              MR. FELLE:  Object.
 4              THE WITNESS:  Well, my understanding, this sentence
 5        right here is don't have your own natural mind, that's
 6        my understanding for that.
 7
 8   BY MR. FLYNN:
 9   Q. Okay.  If you go to the top of the next page, Page 14,
10        it's still part of Paragraph 56.
11   A. Yes.
12   Q. It said that you will require ongoing medical and/or
13        psychiatric and related treatment.  To your knowledge,
14        who has advised you that you will need ongoing medical
15        and/or psychiatric treatment?
16   A. Yeah, my doctor and my attorney.
17   Q. Is that Dr. Shahata that we talked about before?
18   A. Yeah.  He said that basically it's like I'm the type of
19        person that to be -- not normal, but to be with my five
20        sense, I got to take my medication.  If I don't take my
21        medication or get therapy, I can get a relapse.
22   Q. That includes Doctor -- or excuse me, Erin -- not
23        doctor, but Erin Marinello?
24   A. She's my counselor, yes.
25   Q. How often do you see Erin Marinello?
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                93

```
 1      A. I see her once a month.
 2      Q. Okay.  How about Dr. Shahata that we talked about?
 3      A. Once every two months or once every three months he see
 4         me, prescribe me some medication.
 5      Q. Towards the second last line of that paragraph, it says
 6         you suffer from nightmares and insomnia.  How often
 7         does that happen, the nightmares?
 8      A. In the beginning when I got released, I used to have
 9         some nightmares and I barely can sleep at night
10         thinking about --
11      Q. How about today, how often do you have nightmares?
12      A. No, no, today, thank God, the medications they give me
13         works out pretty well.  So they make me sleep at night,
14         repair my mood and everything turn out well.
15      Q. Is that the same -- include the insomnia, you're doing
16         better now with the medication?
17      A. Yes.
18      Q. And it wasn't as good when you got out of prison?
19      A. No.
20      Q. You also have on there panic attacks.  When is the last
21         time you suffered a panic attack?
22            MR. FELLE:  Object to form.
23            THE WITNESS:  When I was in prison.
24
25      BY MR. FLYNN:
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          94

1    Q. Okay, and the next one is depressive disorder, but you
2       told me about that; correct?  That you originally
3       had -- the first time that you had when you were 15 or
4       16 in Puerto Rico ?
5    A. Yes.
6    Q. Have you had any depressive disorder episodes while you
7       you were in prison?
8    A. Yeah.
9    Q. How about when you were released?
10   A. In the beginning, yes.
11   Q. Is it better now with your medication?
12   A. Yes.
13   Q. The last one and I don't know if you know it, I don't
14      but it says dysthymia and I'll spell it,
15      d-y-s-t-h-y-m-i-a.  Your understanding of that, if you
16      know?  What is your understanding, if you know?
17   A. Honestly speaking, I don't -- nightmares, but
18      dysthymia, I don't understand that word.
19   Q. That's fine.  I'm just asking what your understanding
20      is.  Not trying to trip you up or anything.
21   A. Okay.
22   Q. If you go to Paragraph 60, it's at the bottom of the
23      page there?
24   A. Yeah.
25   Q. Why don't you take a look at that one?  It goes to the

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          95

```
 1           top of the next page too, if you could read that one?
 2      A.  Yep.
 3      Q.  Had a chance to read it?
 4      A.  Yep.
 5      Q.  Tell me in the first sentence, it says since Josue's
 6           release, he has been making many attempts to find
 7           employment, but as soon as he discloses his past to
 8           prospective employers, position become invaluable.  My
 9           question is, who have you made attempts to find
10           employment with?
11      A.  Okay.  When I first moved to Niagara Falls, I tried to
12           apply in a hotel.  And that was going to be the
13           Sheraton Hotel.  It's across from the casino.  So I was
14           going to work in TGI Friday's as a dishwasher.  You
15           remember, Mr. Wayne?
16      Q.  Is that inside the hotel?
17      A.  Inside the hotel, they got TGI Friday's.  So they was
18           going to hire me and stuff, but in my knowledge, my --
19           this case that I -- this stuff that happened to me back
20           in 2004, to my knowledge everything was expunged
21           because they said they was going to clean my record and
22           whatever, so I said fine.  So when I fill out the
23           application, they ask me if I ever been convicted so I
24           put no.  So what they did was apparently they find out,
25           so they find out that I was convicted for this -- I
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          96

```
 1        don't know how that did show up or whatever.  So I
 2        tried to talk to them and explain, so they said that
 3        they cannot hire me because I never let him know that I
 4        was convicted for manslaughter or whatever.  So I got
 5        Mr. Wayne try to talk to that person and that person
 6        got mad.  I don't know why she got so mad about it, but
 7        Mr. Wayne remember, she called her and she basically
 8        don't try to talk.  So -- and be honest with you right
 9        now, I'm thankful that I got a little job and stuff,
10        but I'm in the minimum wage.  Even that I work five
11        days a week, 40 hours a week, but it's hard, it's hard
12        to find a good job.
13   Q. Let me ask you this, with respect to the TGI Friday's
14        job, you said the position got unavailable.  Do you
15        know if they found a more qualified person other than
16        you?
17            MR. FELLE:  Object to the form.
18            THE WITNESS:  I really don't know.  I try to --
19        after that I try to explain the situation to them and
20        all that stuff, but they ain't try to buy it.  They
21        just reject me and in their mentality, I believe, if
22        one go, one is going to come over later, you understand
23        what I'm saying?
24
25   BY MR. FLYNN:
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          97

1   Q. Sure.  And that kind of leads into the next question.
2      The next sentence says attempts at employment result in
3      rejection after rejection.  Who else other than TGI
4      Friday's has rejected you for employment?
5   A. Well, TGI Friday's.  I try to apply in Burger King
6      also.
7   Q. In Niagara Falls?
8   A. Yes, and same similar situation happen like that and,
9      you know, after that, I started working for the
10     temporary agencies.
11  Q. Okay.
12  A. You know.
13  Q. And having them assign you to places?
14  A. Excuse me?
15  Q. And having the temporary agency assign you to
16     positions?
17  A. Yeah.  For the jobs that I told you that I worked for
18     them for a few months.
19  Q. Okay.  If you go to the top of the next page, Page 15
20     of Exhibit 6 -- and I apologize, I think I might have
21     asked you this, but you were forced to rely -- it says
22     been forced to rely on Social Services for his basic
23     support necessities.  Earlier in the afternoon you told
24     me that you applied for Social Services when you got
25     out of prison?

A-212

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          98

```
 1    A. Yes.
 2    Q. Are you still on it now?
 3    A. No.
 4    Q. When did that end?  I apologize, I think I asked you,
 5       when did that happen?
 6    A. It ended quite a while now because I been working
 7       full-time.
 8    Q. Did it end when you went to the --
 9    A. To the Quality Inn.
10    Q. The Quality Inn?
11    A. Yes.
12    Q. Or did it end when you went to the temp agency?
13    A. No, in the temp agencies I was part-time, so I was
14       still able to get some benefits but --
15    Q. Okay.
16    A. -- it ended when I started working full-time at the
17       Quality Inn.
18    Q. And there you started in March of 2016 or so?
19    A. Yes.
20    Q. So ballpark, I'm not pinning you down on this, but
21       basically maybe December 2014 or January 2015?
22    A. Around there, yeah.
23    Q. Until around March of 2016 you were on Social
24       Services?
25    A. Around there, yes.
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          99

1   Q. Next I want to go to Paragraph 63, it's at the bottom
2      of Page 15 of Exhibit 6 and also the top of Page 16, if
3      you can read that.
4   A. 63?
5   Q. 63, yes.
6   A. Okay.
7   Q. Had a chance to read it?
8   A. Yes.
9   Q. Okay.  The first sentence of 63 talks about a physical
10     attack by inmates, one of which was the stabbing in the
11     face, that's the one you told me about earlier?
12  A. Yes.
13  Q. Down below it, it says the correctional officers -- you
14     suffered emotional abuse by correctional officers,
15     including throwing cold water on him and taking away
16     your mattress and bedding for periods of time?
17  A. Yes.
18  Q. Where and when did the throwing of the water, cold
19     water occur to you?
20  A. That happened around the time they assault me.
21  Q. Okay.
22  A. And --
23  Q. Was that in Attica?
24  A. Yes, in Attica.  Like I was saying, December --
25  Q. Just back up, I just want to get --

1      MR. FELLE:  Hold on.  For the same reason I told

2   Mr. Ortiz not to interrupt you, you have to be

3   courteous to him and you're interrupting his response

4   to your question.  I know you want to try to clarify

5   it --

6      MR. FLYNN:  I just want to get the date, that's all.

7   He can clarify.

8      MR. FELLE:  It's still inappropriate.

9

10  BY MR. FLYNN:

11  Q. Go ahead, continue.  Continue, Mr. Ortiz.

12  A. It's okay?

13  Q. Yeah, go ahead.  I'll come back and ask the second part

14     of the question.

15  A. Like I was saying, around the time that they assault

16     me, they put me -- I was -- they send me to the mental

17     health unit.  It was like cage, you know, it was like

18     cage for mental health illness people.  So they said

19     that after that, they give like a little retaliation

20     against me.  So if I was sleeping, they used to throw

21     some cold water on me.

22  Q. These are officers doing it, not inmates?

23  A. Officers, they was officers.  They used to throw some

24     cold water at me.  If they took me out to see the

25     doctor or see the counselor in another room, sometimes

A-215

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018                101

1       when I come back to my cage, they took the mattress
2       out, so it was no mattress in there.  It was like an
3       iron, a platform iron down there.  It was for days,
4       probably two or three days like that without a
5       mattress.
6    Q. How many times did that happen that the officers would
7       throw water on you, if you know?
8    A. That was without exaggeration, that was probably like
9       every other day.
10   Q. While you were in the mental health unit?
11   A. When I was in the mental health cage, yeah.
12   Q. How long were you in that mental health unit?
13   A. A few weeks, few weeks that I remember.  I got like a
14      little relapse and stuff and I lose my mind and stuff,
15      but it -- at least it was a few weeks.  They wouldn't
16      give me no food sometimes, no breakfast, no lunch.
17      Sometimes they'd give me breakfast, no lunch, no
18      dinner.  Sometimes no breakfast, lunch or dinner,
19      sometimes they didn't give me no food in all three
20      days -- all three meals.
21   Q. Did you ever make complaints about not receiving
22      meals?
23   A. No.
24   Q. You had told me that the assault by officers occurred
25      in December of 2008.  Is this around the time that

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          102

```
 1       this -- the cold water and taking your mattress --
 2   A. Everything took out the same time, around that time.
 3   Q. Was it all while you were in the mental health unit or
 4       while you were in SHU or both?
 5   A. When I was in the mental health unit.
 6   Q. It didn't happen when you were in SHU?
 7   A. No.
 8           MR. FELLE:  Object to form.
 9
10   BY MR. FLYNN:
11   Q. If you go to the top of Page 16 of Exhibit 6, the top
12       of the next page, it's still part of the Paragraph 63.
13       You see that?
14   A. Yeah.
15   Q. If you could I'll read it.  The first full sentence
16       there, it says further, because of abuse and mental
17       state, Josue -- I apologize -- was in -- he attempted
18       to take his own life in 2005 by attempting to hang
19       himself with respect to a sheet.  Do you see that in
20       there?
21   A. Yes, I see.
22   Q. What correctional facility were you at when that
23       occurred?
24   A. I was in the Erie County Holding Center.
25   Q. In 2005?
```

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          103

1   A. Yes.

2   Q. So you hadn't started your state prison time yet?

3   A. No.

4   Q. Were you hospitalized after that incident?

5   A. They send me to a mental health unit, the Erie County

6      Holding Center, inside the Holding Center.

7   Q. That was going to be my next question.  Did you go

8      outside the facility for treatment after this

9      incident?

10  A. No, they send me to the hospital inside the Holding

11     Center.  They send me to the medical unit and from the

12     medical unit, they send me to a place called Delta

13     where they got some mental health people incarcerated,

14     so that's where they keep you.

15  Q. That's all within the Erie County Correctional Facility

16     on Delaware?

17  A. Yes, yes.

18          MR. FELLE:  Object to form.

19

20  BY MR. FLYNN:

21  Q. If you know, what you just described, those places were

22     all at the Erie County Holding Center on Delaware?

23  A. Yes.

24          MR. FLYNN:  I think I'm done.  Let me just look at

25     my notes, okay?  See if I missed anything.

A-218

J. ORTIZ -- BY MR. FLYNN -- 03/15/2018          104

```
1              THE WITNESS:  Okay.
2              MR. FLYNN:  Mr. Ortiz, that's all I have.  Thank you
3       very much for coming in.  I appreciate it.
4              THE WITNESS:  Okay, Mr. Flynn.  Thank you for having
5       me.
6              (Whereupon, the examination was concluded at 3:27
7              p.m.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1    CASE NAME:
      DEPONENT: _____ DATE TAKEN:
 2    STATE OF )
                    SS:
 3    COUNTY OF )
      I wish to make the following changes, for the following
 4    reasons:
      PAGE LINE CHANGE:
 5
      _____
 6    _____ CHANGE: _____
      _____ REASON: _____
 7
      _____ CHANGE: _____
 8    _____ REASON: _____
 9
      _____ CHANGE: _____
      _____ REASON: _____
10
      _____ CHANGE: _____
11    _____ REASON: _____
12
      _____ CHANGE: _____
      _____ REASON: _____
13
      _____ CHANGE: _____
14    _____ REASON: _____
15
      _____ CHANGE: _____
16    _____ REASON: _____
17
      _____ CHANGE: _____
18    _____ REASON: _____
19
      _____ CHANGE: _____
20    _____ REASON: _____
21    Signature: _____
22    Subscribed and sworn to before me this
      _____ day of _____ 2018
23
      _____ Notary Public
24
25
```

A-220

106

```
1      CERTIFICATE OF WITNESS

2           I, the undersigned, have read the foregoing

3      transcript, and the same is true and correct, save

4      and except for the changes and/or corrections, if

5      any, as indicated by me on the errata sheet attached

6      hereto.

7           (Signed):_____

8           Dated:_____

9      Subscribed and sworn to me before this

10     ____day of _____, 20__.

11     _____

12     Notary Public

13     My commission expires_____
```

```
1    STATE OF NEW YORK)
            )    ss.
2    COUNTY OF ERIE   )

3
     I, Kelly S. Hairston, Notary Public, in and for the County
4    of Erie, State of New York, do hereby certify:

5
         That the witness whose testimony appears hereinbefore
6    was, before the commencement of their testimony, duly
     sworn to testify the truth, the whole truth and nothing
7    but the truth; that said testimony was taken pursuant to
     notice at the time and place as herein set forth; that
8    said testimony was taken down by me and thereafter
     transcribed into typewriting, and I hereby certify the
9    foregoing testimony is a full, true and correct
     transcription of my shorthand notes so taken.

10
11       I further certify that I am neither counsel for nor
     related to any party to said action, nor in any way
12   interested in the outcome thereof.

13
         IN WITNESS WHEREOF, I have hereunto subscribed my
14   name and affixed my seal this 13th day of April, 2018.

15
16       [signature]
17   Kelly S. Hairston
     Notary Public,
18   State of New York, County of Erie
     My commission expires 08/13/19.

19
20
21
22
23
24
25
```

< Dates >

08/13/19.  1 0 7 : 3 6
27th, 2016, March  1 5 : 8
April, 2018.  1 0 7 : 2 7
August 25, 2005  5 8 : 6
December 2008  7 5 : 2 3
December 2014  9 8 : 2 1
December 2015
    2 2 : 1 4 ,  7 3 : 1 5 ,
    7 3 : 1 6
December 2015, january
    2016  7 3 : 1 7
December 21, 2007
    6 3 : 6
December 9  9 : 2 2
December, january
    2 2 : 1 4
December, january, 2015
    7 3 : 1 7
January 2015  9 8 : 2 1
July 15, 2005  5 4 : 1 2 ,
    5 5 : 1 7
June 16  4 9 : 5
March 15th, 2018  1 : 1 6
March 22, 2006  4 8 : 1 8
May 13, 2015  5 9 : 2 0
November 15  3 6 : 8
November 16  3 8 : 1 6
November 16, 2004
    3 9 : 2 ,  5 0 : 2 2 ,
    5 1 : 4 ,  5 4 : 5 ,
    6 6 : 1 3
November 16, 2014
    4 0 : 1 0
November 2004  1 9 : 7 ,
    2 8 : 2 0 ,  4 1 : 7 ,
    4 3 : 2 ,  4 3 : 1 8
November 2014  2 1 : 4
November 2015  3 0 : 1 3
October 14, 1981  6 : 2 5
October 2005  5 8 : 5
October 25, 2005
    5 7 : 2 0
October 31  5 4 : 2 3
October 31, 2005
    5 4 : 1 4 ,  5 6 : 8 ,
    5 7 : 1
$10.40  1 4 : 2 4 ,
    1 4 : 2 5
$330  3 1 : 4

$8.75  1 6 : 1 0 ,
    1 8 : 1 3
'04  1 0 : 1 4 ,  1 9 : 1 4 ,
    1 9 : 1 8 ,  2 0 : 7 ,
    2 0 : 8 ,  2 9 : 1 9 ,
    4 6 : 4
'06  4 6 : 5 ,  4 6 : 7
'08  7 7 : 7 ,  8 7 : 2 5
'15  3 1 : 6
-vs-  1 : 7

< 0 >

04  3 : 3
06-1983.  6 3 : 1 2

< 1 >

1  3 : 9 ,  9 : 2 4 ,
    5 0 : 3 ,  5 0 : 1 9 ,
    5 0 : 2 3 ,  5 1 : 8 ,
    6 6 : 1 2
1-5  4 9 : 2 3
10  2 6 : 1 6 ,  3 3 : 2 0
11-CR-366-A  8 1 : 1 6
11th  1 2 : 1 3
12  1 7 : 3 ,  3 1 : 1 ,
    3 1 : 4 ,  3 3 : 2 0
126292  1 : 7
13  6 0 : 2 2
13.  5 9 : 2 4 ,  5 9 : 2 5 ,
    6 1 : 1 0
13th  1 0 7 : 2 7
14  6 4 : 1 0 ,  6 4 : 1 1 ,
    6 4 : 1 2 ,  9 2 : 9
14202  2 : 1 5
14220  2 : 4
14305  4 : 3
15  7 5 : 9 ,  7 7 : 7 ,
    7 7 : 1 2 ,  7 7 : 1 6 ,
    7 7 : 2 2 ,  8 6 : 5 ,
    8 6 : 2 0 ,  9 4 : 3 ,
    9 7 : 1 9 ,  9 9 : 2
15th  5 4 : 2 0
16  8 6 : 5 ,  8 6 : 2 0 ,
    9 4 : 4 ,  9 9 : 2 ,
    1 0 2 : 1 1
165  5 4 : 1 2
166  5 4 : 1 2
167  5 4 : 1 3

168  5 4 : 1 4
169  5 4 : 1 4
170  5 4 : 1 4
18  3 4 : 1 5 ,  3 4 : 1 6 ,
    3 4 : 1 7 ,  3 5 : 3 ,
    3 6 : 1 4 ,  5 9 : 1 6 ,
    5 9 : 2 0
19  5 9 : 1 3 ,  5 9 : 2 0
19th  3 8 : 9
1:00  1 : 1 7

< 2 >

2  3 : 1 0 ,  4 : 2 ,
    5 2 : 1 1 ,  5 2 : 2 0 ,
    5 6 : 7
2.  5 4 : 9
20  4 7 : 1 6
2000  1 6 : 1 3 ,  7 4 : 7
2004  1 0 : 1 0 ,
    1 0 : 1 1 ,  1 2 : 1 ,
    2 0 : 1 3 ,  2 3 : 8 ,
    2 3 : 1 0 ,  2 7 : 2 3 ,
    2 8 : 1 0 ,  2 9 : 1 2 ,
    2 9 : 1 6 ,  2 9 : 2 2 ,
    2 9 : 2 4 ,  3 6 : 1 4 ,
    3 6 : 2 4 ,  3 7 : 2 ,
    3 7 : 4 ,  3 8 : 8 ,
    3 8 : 1 6 ,  4 0 : 1 3 ,
    4 0 : 2 1 ,  4 1 : 1 6 ,
    4 2 : 5 ,  4 5 : 1 4 ,
    4 6 : 2 0 ,  6 2 : 7 ,
    6 2 : 8 ,  7 8 : 1 0 ,
    8 6 : 1 ,  8 7 : 1 4 ,
    9 0 : 1 0 ,  9 0 : 1 6 ,
    9 5 : 2 0
2004.  2 3 : 1 4 ,
    4 0 : 1 2
2005  4 2 : 5 ,  4 3 : 2 ,
    4 3 : 1 8 ,  4 5 : 9 ,
    4 7 : 2 3 ,  5 5 : 6 ,
    5 6 : 1 4 ,  1 0 2 : 1 8 ,
    1 0 2 : 2 5
2005.  5 4 : 2 0 ,
    5 4 : 2 3
2006  4 5 : 1 8 ,
    4 5 : 1 9 ,  4 6 : 2 1 ,
    4 9 : 6 ,  6 8 : 1 7 ,
    6 8 : 2 3 ,  6 9 : 6
2006.  4 7 : 8

2008  4 7 : 7 ,  7 5 : 2 ,
    7 7 : 2 3
2008.  7 4 : 7 ,
    1 0 1 : 2 5
2010  1 0 : 1 9 ,  6 9 : 6 ,
    6 9 : 8
2010-2012  7 2 : 8
2012  6 9 : 8 ,  6 9 : 1 0 ,
    7 2 : 2 4
2014  9 : 1 8 ,  2 2 : 9 ,
    3 0 : 3 ,  3 4 : 5 ,
    4 0 : 1 1 ,  6 8 : 2 0 ,
    6 9 : 1 0
2015  8 : 3 ,  1 6 : 1 3 ,
    1 7 : 1 3 ,  1 7 : 1 4 ,
    3 0 : 2 1 ,  3 1 : 5 ,
    6 2 : 5 ,  6 2 : 1 1 ,
    6 4 : 2 1 ,  7 3 : 2 2
2015.  2 1 : 4 ,
    3 0 : 2 1 ,  6 4 : 5
2016  1 6 : 7 ,  1 5 : 8 ,
    1 7 : 1 4 ,  3 1 : 7 ,
    7 3 : 2 2 ,  9 8 : 1 8 ,
    9 8 : 2 3
2016.  3 6 : 1 0
2018  1 5 : 6
20__.  1 0 6 : 1 0
21  4 7 : 1 6
22  2 9 : 2 3
2449  4 : 2 ,  8 : 1
25  4 9 : 1 1 ,  6 0 : 2 3 ,
    6 1 : 1 2
25th  1 5 : 9
26th  1 5 : 9
27th  1 5 : 8

< 3 >

3  3 : 1 1 ,  5 7 : 6 ,
    5 7 : 1 5
3.  5 7 : 7 ,  5 7 : 8
30  5 : 1 3
310-1  5 5 : 2 0
350  1 : 1 5 ,  2 : 1 4
36  7 : 2
3:27  1 : 1 7 ,  1 0 4 : 6

< 4 >

4  3 : 1 2 ,  5 8 : 1 0 ,

58:15, 60:10,
61:3, 61:17
4. 61:17
40 15:4, 96:11
4236. 7:15
450 25:12
49 3:9, 3:10,
3:11, 3:12,
3:13

< 5 >

5 3:13, 61:12,
62:21, 63:4,
63:20, 64:2,
64:14, 64:22
5. 65:11
50 8:10, 8:13
505-2700 2:5
56 85:20, 87:15
56. 92:10
58 3:14

< 6 >

6 3:14, 58:21,
58:25, 59:10,
60:17, 60:22,
64:9, 64:24,
65:2, 77:8,
85:14, 85:19,
97:20, 99:2,
102:11
60 94:22
6024 2:3
63 99:1, 99:4,
99:5, 99:9
63. 102:12

< 7 >

7 3:15, 76:11,
80:17, 80:21,
81:2, 81:5
716 2:5, 2:16
7th 11:11, 11:13,
11:14, 11:16

< 8 >

8 76:11
80 3:15
853-8426 2:16

< 9 >

9 18:14
9th 68:20
_____2018 105:44
_____CHANG
E 105:11,
105:14,
105:17,
105:20,
105:23,
105:26,
105:29,
105:32,
105:35, 105:38
_____REASO
N 105:12,
105:15,
105:18,
105:21,
105:24,
105:27,
105:30,
105:33,
105:36, 105:39
____day 105:44,
106:10

< A >

a/k/a 81:20,
81:22, 82:1,
83:5, 83:17
Ability 71:12,
71:15, 71:22,
73:3
ability 6:15, 6:22,
21:13
able 19:9, 19:11,
48:4, 58:18,
64:17, 64:18,
98:14
Above 53:2
abuse 27:23,
28:21, 29:13,
99:14, 102:16

abused 27:21,
29:9
abusing 26:2,
26:13, 26:17,
27:4, 27:12
acceptable 7:12
accepted 88:24
accommodate 6:11
accordingly 55:20
accuracy 63:17,
65:24
acquired 31:19
across 95:13
action 55:20,
78:16, 79:17,
80:10, 107:12
activation 90:3
address 8:1, 8:12,
11:1, 11:22
advised 92:14
affect 21:13
affixed 107:27
afternoon 4:18,
97:23
afterwards 25:2
agencies 15:18,
16:3, 97:10,
98:13
agency 97:15,
98:12
aggravation 90:4
agitated 76:7
ago 33:17,
33:20, 42:21,
42:22
ahead 100:11,
100:13
ain't 96:20
air 18:7
alcohol 26:2,
26:13, 26:17,
29:14
Alden 46:10
allegation 89:3
allegations 88:24
allow 5:3, 7:8
allowed 32:11,
34:7, 34:9
Almost 9:16,
80:12

alone 33:19
America 81:18
ancillary 78:16
and/or 70:11,
92:12, 92:15,
106:4
anguish 88:15,
89:3, 89:19
answer 5:3, 5:20,
6:22, 7:4,
7:9, 28:3,
29:3, 33:6,
40:14, 43:7,
61:23, 63:21,
88:5
answers 5:8
anticipating 7:24
antidepressant 86:13
Apartment 4:2,
8:6, 11:14,
11:16, 12:3,
12:4, 12:5
apologize 12:4,
12:10, 29:21,
30:17, 33:11,
34:2, 34:22,
39:4, 40:8,
42:13, 54:10,
63:10, 75:3,
85:10, 97:20,
98:4, 102:17
apparently 67:20,
67:21, 68:9,
91:20, 95:24
appeal 65:15
appear 53:3
APPEARANCES 2:1,
42:23
appears 50:21,
51:9, 52:12,
53:2, 53:9,
56:8, 59:19,
60:2, 63:4,
63:13, 107:10
Appellate 63:5,
65:14
apple 81:17
application 31:2,
95:23
applied 20:10,

20:21, 97:24
apply 95:12, 97:5
appreciate 33:18,
    33:21, 104:3
approaching 38:8
approximate 16:11
approximately 73:16,
    75:1
April 15:7
arose 78:9
Around 9:24,
    11:8, 11:17,
    11:24, 15:9,
    16:5, 18:13,
    18:14, 21:4,
    22:14, 37:8,
    38:18, 40:8,
    73:15, 73:18,
    73:23, 74:20,
    86:5, 98:22,
    98:23, 98:25,
    99:20, 100:15,
    101:25, 102:2
arrest 11:23,
    12:1, 31:15,
    36:9, 36:25,
    40:24, 41:7,
    78:8
arrested 29:24,
    30:3, 30:5,
    30:7, 30:11,
    31:7, 32:12,
    32:15, 40:21,
    45:15
arrests 36:10
arrived 19:17
assault 35:4,
    76:16, 76:23,
    87:24, 99:20,
    100:15, 101:24
assaulted 75:20,
    77:3
asserting 26:7
assign 97:13,
    97:15
assigned 4:19
Assistant 2:12,
    4:19
assume 5:20
ATF 32:18

attached 58:15,
    60:13, 60:19,
    61:1, 61:3,
    61:15, 62:4,
    62:18, 64:2,
    64:14, 64:22,
    81:2, 81:7,
    106:5
attachment 63:20
attack 93:21,
    99:10
attacked 74:10
attacks 93:20
attempt 56:9
attempted 74:6,
    102:17
attempting 102:18
attempts 95:6,
    95:9, 97:2
attention 59:13,
    59:24, 85:20
Attica 47:6, 69:5,
    69:10, 69:19,
    69:25, 70:1,
    70:24, 71:3,
    71:17, 71:20,
    72:1, 72:5,
    72:24, 74:7,
    75:25, 76:1,
    77:7, 77:8,
    77:23, 87:25,
    99:23, 99:24
Attorney 2:6, 2:9,
    2:12, 2:17,
    4:19, 5:11,
    25:1, 27:17,
    35:7, 39:21,
    42:16, 43:9,
    54:21, 54:24,
    56:2, 56:3,
    56:18, 56:19,
    56:21, 56:23,
    59:12, 63:16,
    64:7, 65:7,
    67:5, 68:7,
    79:6, 79:14,
    92:16
attorneys 4:9,
    39:6, 80:9,
    88:25

Auburn 69:6,
    69:7, 69:8,
    69:19, 70:2,
    71:1, 72:7,
    72:22
authorities 82:7,
    82:17, 82:24,
    83:8, 83:13
authority 26:10
Avenue 4:2, 8:1,
    11:3, 11:4,
    45:16
aware 78:22,
    78:23
away 10:18,
    19:23, 42:20,
    86:10, 99:15
awkward 53:16

< B >

B-o-r-i 81:20
background 4:22,
    31:2
ballpark 98:20
bar 37:10, 37:23,
    37:24, 38:1,
    38:2, 38:4,
    38:6, 91:8
barely 16:4, 93:9
bars 89:10
based 26:9
basic 97:22
Basically 13:12,
    17:18, 30:12,
    35:24, 37:10,
    61:11, 69:3,
    75:11, 76:4,
    82:10, 86:17,
    88:9, 92:18,
    96:7, 98:21
basis 31:14
Bates 54:12,
    54:13
beat 74:4, 76:9
become 95:8
becomes 31:13
bed 89:24
bedding 99:16
Beer 26:20

beginning 1:17,
    17:14, 21:22,
    33:12, 34:2,
    36:2, 39:5,
    39:25, 40:2,
    45:24, 73:7,
    82:11, 93:8,
    94:10
behalf 39:22,
    42:4, 57:2,
    62:12, 79:7
behind 89:10
believe 12:2,
    14:24, 22:14,
    22:17, 24:25,
    32:5, 32:18,
    41:25, 42:22,
    43:1, 45:24,
    49:20, 55:9,
    55:12, 79:16,
    90:6, 96:21
belong 89:16
below 51:10,
    57:16, 99:13
benefit 5:2
benefits 21:2,
    98:14
Besides 25:8,
    72:3, 76:14,
    87:7, 88:7
better 61:9,
    93:16, 94:11
Betty 56:16,
    56:19
big 18:5, 18:6
bilingual 5:23
bipolar 21:16,
    41:22
birth 6:24
bit 6:11, 9:3,
    19:5, 21:11,
    74:12, 74:17,
    74:22, 74:25
bleed 76:13
bless 86:10
body 70:10
bones 76:14
Bori 81:20, 82:1
born 10:5, 10:9
bottom 51:8,

52:1, 52:11,
52:15, 60:4,
94:22, 99:1
**bought** 31:20
**Boulevard** 14:2,
14:3
**Brandon** 81:23,
83:11
**break** 6:9, 26:9,
30:13, 30:17,
80:12, 86:6
**breakdown** 90:15
**breakfast** 101:16,
101:17, 101:18
**Brian** 44:4, 55:10
**Brief** 5:10, 40:18,
80:16
**briefly** 4:20, 30:6
**broken** 76:14
**brothers** 19:24,
40:25, 48:3,
66:17, 66:21,
67:9, 84:7,
84:11, 84:15,
84:18
**bucks** 18:14
**Buffalo** 1:16, 2:4,
2:15, 8:9,
9:2, 9:5, 9:9,
9:10, 10:12,
13:1, 19:13,
21:22, 22:10,
22:22, 22:24,
23:6, 30:23,
36:3, 36:5,
37:17, 37:19,
38:9, 39:1,
40:10, 40:22,
45:16, 47:4,
50:21, 53:24,
54:5, 66:12,
73:14, 79:11,
79:12, 79:13,
86:1, 87:6,
91:11
**Building** 24:6,
24:8, 25:5,
25:6
**Burger** 97:5
**bus** 57:9

**buses** 16:21,
16:22
**buy** 68:3, 91:2,
91:4, 96:20

**< C >**

**C-h-e-k-o** 83:5
**C.** 2:1, 2:2,
61:15
**Cabella** 30:23
**Cabo** 56:16,
56:19
**cage** 100:17,
100:18, 101:1,
101:11
**call** 13:17, 17:1,
17:17, 17:21,
21:24, 37:10
**called** 16:23,
96:7, 103:12
**Camacho** 37:3,
37:7, 37:21,
40:25, 48:2,
48:20, 53:10,
53:11, 66:17,
66:20, 67:9,
83:24, 83:25,
84:7, 84:10,
84:14, 84:18,
85:7, 85:8
**candy** 16:18
**caption** 81:14,
81:17
**car** 38:9
**card** 24:11, 24:12
**Carmen** 81:21,
82:19
**carpentry** 13:16
**CASE** 79:4, 79:7,
79:24, 80:1,
80:4, 80:7,
95:19, 105:1
**casino** 95:13
**caught** 34:11,
34:12, 74:13
**cell** 77:16, 77:17
**Center** 11:12,
23:14, 26:1,
41:7, 41:9,

41:19, 42:5,
43:24, 44:3,
45:16, 45:17,
45:22, 46:3,
46:8, 46:10,
46:11, 46:13,
46:14, 46:20,
47:10, 47:11,
47:13, 47:24,
48:2, 48:11,
57:18, 66:16,
68:17, 102:24,
103:6, 103:11,
103:22
**certainly** 78:21
**CERTIFICATE** 60:5,
106:1
**certification** 4:12
**certify** 107:7,
107:16, 107:21
**chance** 50:9,
54:18, 57:9,
58:11, 59:8,
80:24, 95:3,
99:7
**CHANGE** 55:15,
67:13, 71:21,
105:8
**changes** 105:6,
106:4
**charge** 32:8,
32:19, 35:3,
35:7, 49:6,
68:13, 75:10
**charged** 32:8,
40:24, 83:23
**charges** 34:12,
34:13, 36:14,
36:15, 36:18,
42:16, 42:24,
43:6, 44:15,
44:22, 45:11,
49:1, 54:24,
75:5, 75:13,
75:16, 76:17,
77:6, 78:9,
84:2, 84:6
**check** 31:2
**cheek** 74:14,
74:16, 74:19,

87:23, 87:24
**Cheektowaga** 16:18,
30:23
**Cheko** 83:5, 83:6
**children** 7:22, 7:25
**Chocolate** 16:17,
16:25
**choice** 13:19,
13:21
**circumstances** 37:9
**City** 9:2, 9:5,
50:21, 78:19,
79:12, 79:13
**Claim** 1:7, 3:14,
4:20, 4:21,
39:20, 39:24,
58:16, 59:4,
59:10, 60:13,
60:17, 61:4,
61:25, 62:5,
62:12, 62:14,
62:19, 63:13,
63:14, 63:21,
64:2, 64:15,
64:22, 65:4,
66:5, 78:6,
81:3, 81:7,
85:19
**Claimant** 1:6, 2:6
**claiming** 92:2
**Claims** 1:2, 59:4
**clarified** 66:7
**clarify** 100:4,
100:7
**clarifying** 27:11
**class** 12:24
**classes** 12:25
**clean** 95:21
**cleaning** 14:11
**clear** 27:10,
40:13, 56:15
**clothes** 17:18,
69:4
**Coggins** 26:1,
44:4, 44:12,
44:13, 57:16,
57:17, 58:6
**cold** 99:16,
99:18, 100:21,
100:24, 102:1

combined 16:2, 73:21
comes 35:24, 62:1
comfortable 6:2
coming 38:17, 39:5, 85:25, 87:6, 104:3
comma 24:17
commencement 107:11
comment 57:7, 65:23
commissary 91:3
commission 106:13, 107:36
commit 82:13
competency 55:8
competent 43:4, 44:14, 44:21, 55:15, 58:7
complaints 101:21
completed 12:12
compound 26:5, 27:7, 43:7
concern 62:2
concerned 30:15, 30:22
concluded 104:6
conclusion 88:18
concurrent 49:18
condition 21:15, 45:1, 70:13, 70:22, 87:14
conditions 22:21, 23:5, 90:7
confession 53:9, 67:20
confidential 7:10
confinement 76:19
confuse 60:15
confusion 81:1
consciousness 23:13, 41:8, 41:13, 42:8, 46:25
consecutive 49:18
consulting 57:16
contest 65:20
contesting 65:8,

65:25
context 82:24, 83:8
Continue 100:11
conversation 5:10
conversations 39:14, 83:12
convicted 34:13, 35:2, 84:14, 84:17, 84:20, 85:1, 85:7, 95:23, 95:25, 96:4
conviction 61:1, 65:16, 78:9, 85:2
convictions 36:19, 61:14
cool 38:5
coordinator 16:24
copy 59:10, 59:12, 85:19
Corner 37:11, 37:12, 51:8, 52:11
Correct 5:14, 5:15, 8:6, 9:17, 9:19, 10:15, 12:14, 14:4, 15:5, 16:7, 19:17, 23:6, 24:17, 29:25, 31:6, 35:11, 40:9, 45:23, 46:21, 47:18, 47:20, 53:20, 59:20, 66:13, 66:17, 68:6, 68:15, 70:15, 80:10, 81:8, 81:9, 91:12, 94:2, 106:3, 107:17
Correction 61:14, 87:25
Correctional 46:9, 47:7, 69:2, 69:12, 70:2, 70:21, 72:8, 99:13, 99:14,

102:22, 103:15
Corrections 61:1, 106:4
correctly 59:1, 66:3
counsel 4:7, 107:21
counseling 22:2, 71:2, 71:25, 72:3, 72:12, 86:12
counselor 23:23, 24:15, 73:1, 92:24, 100:25
count 49:16
counts 48:19, 67:22
County 23:14, 24:18, 25:25, 41:6, 41:9, 41:19, 42:5, 45:22, 46:8, 46:13, 46:19, 48:2, 54:11, 57:18, 68:16, 78:19, 79:12, 79:14, 102:24, 103:5, 103:15, 103:22, 105:5, 107:3, 107:6, 107:35
couple 16:14, 28:13, 42:21, 85:15
Court 1:2, 3:10, 3:13, 5:2, 7:4, 34:18, 34:20, 34:22, 34:23, 34:24, 35:1, 42:4, 42:23, 44:25, 46:5, 54:10, 54:11, 57:8, 59:4, 63:5, 78:17, 79:17, 81:14
courteous 100:3
cousin 8:11, 8:19, 8:21, 10:17, 10:22

CPL 55:19
created 36:23
credit 9:24, 10:1, 12:11
crime 83:24
criminal 32:19, 36:15, 36:18, 36:19, 42:16, 42:24, 43:5, 44:14, 44:22, 45:11, 54:24, 55:20, 58:8, 65:15, 75:16, 78:9, 89:17
criminals 89:16
crying 86:9
current 79:20
currently 13:23, 25:7, 73:10
custody 9:18, 41:9, 41:10, 60:25, 61:13
Cut 74:3, 74:11, 87:24

< D >
D'amico 49:4, 49:21, 68:2, 68:6, 68:7
D-y-c-k-m-a-n 35:19
d-y-s-t-h-y-m-i-a 94:15
damages 87:16
DATE 6:24, 9:21, 51:4, 68:3, 80:7, 100:6, 105:2
Dated 50:22, 54:12, 54:14, 55:17, 56:7, 59:19, 62:5, 106:8
dates 19:4, 73:22
day 25:13, 25:14, 25:17, 38:16, 39:1, 41:14, 57:21, 101:9, 107:27
days 5:13, 16:7, 18:16, 21:25,

75:9, 77:7,
  77:12, 77:16,
  77:22, 96:11,
  101:3, 101:4,
  101:20
deals 48:6
deaths 48:20
December 9:18,
  22:9, 30:2,
  30:21, 31:4,
  34:4, 36:9,
  41:16, 68:19,
  87:25, 99:24,
  101:25
decide 68:10
decided 30:23
Decision 3:13,
  55:17, 57:1,
  63:4, 63:14,
  65:14
Decisions 3:10,
  54:10, 56:1
Defendant 1:11,
  2:17
defendants 79:9
defender 35:12
defined 24:18
degradation 91:15
degree 48:20
Delaware 45:16,
  103:16, 103:22
Delta 103:12
denied 57:4
Department 24:19,
  30:19, 32:13,
  50:21, 60:25,
  61:14, 63:5,
  65:15, 79:12
DEPONENT 65:2,
  105:2
deposed 4:23,
  79:23
deposition 4:25,
  5:13, 6:10,
  6:14, 79:23,
  80:1
depressed 86:9
depression 21:17,
  41:23
depressive 94:1,

94:6
described 31:14,
  82:24, 103:21
describing 43:10
DESCRIPTION 3:8
detailed 62:25,
  67:21
determination 44:13,
  44:20, 45:10
determine 43:4
development 92:1
diagnosed 21:14,
  21:16, 21:21,
  21:23, 23:5,
  23:7, 23:9,
  41:22, 70:14,
  86:2, 87:5
diagnosis 21:14,
  86:4
die 90:1
different 89:1
dinner 101:18
diploma 10:2
direct 59:13,
  59:24, 61:13,
  64:9, 85:20
directed 60:24
directly 10:12
disciplinary 75:5,
  75:11, 76:17,
  77:6
discloses 95:7
dishwasher 14:7,
  95:14
dismissed 80:5
disorder 21:17,
  90:4, 90:18,
  94:1, 94:6
disposition 60:5
distress 89:21,
  89:23
District 79:13,
  79:14, 81:14,
  81:15
Division 63:5,
  65:14
docket 63:12
Doctor 22:2,
  23:15, 23:17,
  23:24, 23:25,

24:5, 24:23,
  42:7, 43:11,
  71:9, 72:12,
  73:1, 86:11,
  86:22, 86:24,
  92:16, 92:22,
  92:23, 100:25
Document 3:11,
  3:12, 7:8,
  50:18, 50:25,
  52:9, 53:6,
  53:8, 57:12,
  57:15, 58:13,
  58:15, 58:25,
  59:11, 60:2,
  60:15, 61:2,
  61:18, 61:23,
  61:25, 62:3,
  62:4, 63:2,
  63:13, 63:17,
  63:19, 65:9,
  65:24, 65:25,
  66:2, 66:4,
  81:14, 88:19
documents 39:7,
  39:9, 55:1,
  55:2, 88:25
doing 70:12,
  93:15, 100:22
done 25:23,
  32:22, 50:7,
  80:12, 103:24
door 30:18
Down 5:4, 5:10,
  16:21, 43:16,
  86:22, 91:15,
  98:20, 99:13,
  101:3, 107:15
downtown 36:3,
  36:5
drain 14:17,
  14:18
drink 26:14,
  26:15, 26:19,
  26:21, 26:24,
  27:1, 26:12,
  28:13, 29:5,
  37:16
drugs 29:10,
  29:13

dry 18:8
duly 4:3, 107:11
During 6:9, 20:7,
  43:17, 44:3,
  45:21, 46:3,
  47:12
duties 14:10
Dyckman 35:17,
  35:21
dysthymia 94:14,
  94:18

< E >
E-f-r-a-i-n 81:22
E-r-i-n 24:17
Earlier 68:11,
  97:23, 99:11
early 42:5, 43:2,
  43:18, 47:17,
  56:14, 73:22,
  86:5
earn 14:19, 14:21
ease 81:1
Easy 85:11, 89:9
eat 74:9
ECMC 41:20,
  43:23, 43:25,
  46:1, 46:13,
  46:25, 47:3,
  47:4, 47:17
education 9:23,
  12:10, 12:12
educational 12:21
Efrain 81:22, 83:3
either 44:12, 84:6
electrical 13:15
Elmira 68:24,
  68:25, 69:2,
  69:3, 69:19,
  69:22, 70:20,
  71:8, 71:14
embarrassed 91:20,
  91:21
embarrassment 91:15
Emily 67:6
emotional 89:21,
  89:23, 99:14
employed 13:23,
  14:8, 91:11

employers 95:8
employment 15:12,
   15:14, 18:21,
   19:1, 19:5,
   19:6, 19:7,
   19:19, 95:7,
   95:10, 97:2,
   97:4
end 32:22, 47:7,
   98:4, 98:8,
   98:12
ended 98:6, 98:16
ending 1:17
England 17:17
English 5:23, 6:1,
   6:2, 6:3, 6:4,
   12:23, 19:9,
   19:11, 19:14,
   48:5, 50:12,
   58:19, 59:22,
   62:4, 62:6,
   64:18
enough 91:4
entered 4:6, 63:6,
   67:11
entering 48:18
entire 46:8
entitle 59:1
entitled 60:2,
   63:7, 81:14
episode 87:12
episodes 94:6
ERIC 2:10
Erie 23:14, 41:6,
   41:8, 41:19,
   42:5, 45:22,
   46:8, 46:12,
   46:19, 48:1,
   54:11, 57:18,
   68:16, 79:12,
   79:14, 102:24,
   103:5, 103:15,
   103:22, 107:3,
   107:7, 107:35
Erin 23:23,
   24:13, 92:22,
   92:23, 92:25
errata 106:5
Especially 89:9
ESQ 2:2, 2:11

establish 61:22
estimate 33:24,
   33:25
evaluate 42:4
evaluation 44:9
Evelyn 44:4, 57:16
evening 54:7
everybody 89:17
everyday 89:17,
   91:8
Everything 31:2,
   89:25, 93:14,
   95:20, 102:2
evidence 26:8,
   62:1
exactly 57:21
exaggeration 101:8
EXAMINATION 1:14,
   3:2, 4:16,
   25:23, 43:12,
   43:16, 104:6
examined 4:3,
   43:3, 43:8,
   43:9
example 91:1
except 4:13,
   106:4
Excuse 4:24,
   14:20, 20:2,
   63:6, 67:11,
   92:22, 97:14
Exhibits 3:7,
   60:19, 60:20,
   62:18
expires 107:36
expires_____
   106:13
explain 30:4,
   96:2, 96:19
explained 16:24,
   79:8
expressed 61:24
expunged 95:20
extensively 19:6
extent 63:19,
   88:6, 88:19,
   89:7

< F >

F. 60:20
face 74:3, 74:12,
   99:11
facilities 69:13
Facility 46:9,
   47:7, 69:12,
   69:23, 69:25,
   70:2, 70:21,
   72:8, 75:24,
   86:24, 102:22,
   103:8, 103:15
fact 52:3
factory 16:18,
   17:2, 17:4,
   17:20, 17:21
facts 26:7, 88:23
fair 34:1
fairness 26:8
fall 56:14
Falls 4:2, 8:2,
   9:4, 9:9,
   14:1, 14:3,
   14:4, 22:2,
   22:23, 22:25,
   24:6, 24:7,
   30:14, 30:19,
   32:13, 32:15,
   36:4, 95:11,
   97:7
family 30:15,
   86:15, 91:2
Famous 37:11,
   37:12
far 70:5, 80:2,
   80:3
father 10:17,
   10:22, 19:22
February 31:7,
   36:9, 63:6
federal 31:8,
   31:10, 32:9,
   32:15, 34:18,
   34:25, 35:11,
   36:6, 67:3,
   78:17, 79:17,
   82:7, 82:17,
   82:23, 83:8,
   83:12
feel 6:6, 21:8,
   33:13

Felle 2:1, 2:2,
   31:25, 33:4,
   39:6, 39:14,
   65:20, 80:9,
   80:11
fellow 47:23,
   48:1, 87:22
felt 38:10
female 42:14
few 8:20, 16:4,
   17:11, 19:10,
   21:25, 73:6,
   73:7, 76:7,
   76:11, 97:18,
   101:13, 101:15
fight 34:11,
   34:12, 35:3
fighting 75:10
file 75:16, 76:25
filed 39:20,
   39:21, 44:22,
   58:17, 62:12,
   63:6, 64:3,
   75:5, 78:7,
   79:17
filing 4:11
fill 95:22
filled 31:1
finally 32:23
find 95:6, 95:9,
   95:24, 95:25,
   96:12
finding 55:14,
   55:18
fine 33:6, 94:19,
   95:22
finish 5:3, 85:15
firearm 31:9,
   32:10, 32:11,
   34:8, 34:9
First 4:3, 5:1,
   5:25, 8:9,
   10:9, 16:17,
   17:16, 18:25,
   26:4, 27:5,
   30:5, 30:6,
   37:6, 37:21,
   48:19, 50:3,
   53:10, 54:11,
   54:20, 55:3,

55:17, 68:15,
68:22, 70:11,
70:24, 71:19,
72:1, 72:4,
73:14, 85:21,
85:25, 87:12,
87:20, 94:3,
95:5, 95:11,
99:9, 102:15
**Five** 49:15,
60:24, 92:19,
96:10
**Floor** 1:16, 2:14
**flush** 14:16
**focusing** 13:21
**following** 4:6,
41:7, 84:14,
105:6
**follows** 4:4
**food** 20:23,
101:16, 101:19
**forced** 30:18,
97:21, 97:22
**foregoing** 106:2,
107:17
**forget** 91:5
**forgot** 23:17,
37:15
**Forma** 45:7, 45:9,
54:11, 55:7,
55:18, 56:14
**forth** 107:14
**found** 96:15
**Four** 7:9, 7:13,
69:17, 81:18,
83:22, 84:5
**Fourth** 63:5,
65:14
**frame** 43:18
**free** 33:13
**Freight** 17:17
**Friday** 95:14,
95:17, 96:13,
97:4, 97:5
**friend** 9:3, 9:7
**friends** 38:3
**front** 30:18, 45:7,
49:3, 49:21,
55:7, 56:13,
60:12, 61:3

**full** 7:10, 102:15,
107:17
**full-time** 15:2,
15:3, 18:19,
98:7, 98:16
**funds** 20:1

**< G >**
**G-a-l-a-r-z-a** 9:14
**gained** 42:8
**Galarza** 9:12, 9:15
**gauge** 31:1, 31:4
**gave** 8:1, 34:14,
45:1, 55:11,
58:6, 59:12,
67:21
**GED** 9:25, 10:1,
12:11, 12:23,
12:25, 13:22
**General** 2:9, 2:12,
4:19, 21:22,
22:10, 22:22,
22:24, 23:6,
47:5, 73:14
**generally** 13:11,
88:24
**generic** 25:15
**gentleman** 10:20
**Germain** 11:21,
11:22, 12:3,
12:4, 38:17
**getting** 10:1, 22:1
**girlfriends** 86:7
**give** 32:24, 69:4,
71:22, 72:16,
73:3, 76:19,
79:23, 86:11,
93:12, 100:19,
101:16,
101:17, 101:19
**given** 73:2
**giving** 53:24,
66:12
**God** 70:12,
74:12, 74:15,
76:15, 86:10,
93:12
**gosh** 24:1
**grab** 14:16, 18:7

**grade** 12:12,
12:13
**grand** 67:3, 67:8
**grandpa** 86:16
**green** 69:4
**ground** 68:10
**guess** 21:8,
33:12, 33:24,
33:25, 51:25,
52:3, 52:4,
70:13, 91:22
**guilty** 32:20,
32:23, 48:19,
49:1, 49:7,
49:8, 67:11,
67:12, 67:14,
67:17, 67:22,
68:1, 68:2,
68:8, 68:11,
68:13, 84:6
**gun** 31:17
**guy** 26:23, 42:13

**< H >**
**H-a-n-i** 24:25
**H-i-d-a-l-g-o** 81:23
**Hairston** 1:15,
107:6, 107:33
**half** 9:1, 9:6,
11:17, 16:23,
22:19, 34:14,
40:5, 42:22,
47:15
**Hampshire** 38:9
**hand** 61:8, 85:14,
85:19
**handcuffed** 76:6,
76:22, 76:23
**handle** 86:8
**hang** 37:25,
102:18
**Hani** 23:24,
24:23, 24:25
**happen** 74:6,
93:7, 97:8,
98:5, 101:6,
102:6
**happened** 23:13,
30:4, 32:19,

33:17, 33:20,
74:7, 75:23,
76:3, 90:1,
95:19, 99:20
**hard** 57:7, 89:24,
96:11
**Have you** 63:2,
81:5
**head** 5:9
**headquarters** 39:2,
40:10, 54:5
**Health** 21:6,
21:14, 21:15,
22:20, 23:5,
23:20, 24:19,
25:23, 70:13,
70:21, 76:5,
86:2, 87:5,
87:13, 100:17,
100:18,
101:10,
101:11,
101:12, 102:3,
102:5, 103:5,
103:13
**hear** 83:11
**heard** 82:6,
82:16, 82:21,
83:3, 83:6
**hearing** 55:6,
55:13, 56:13,
75:12
**hearsay** 31:13
**held** 1:14, 25:25,
41:6, 57:17
**hell** 74:4
**Help** 8:23, 14:11,
20:23
**helped** 8:25
**hereby** 4:9,
107:7, 107:16
**herein** 107:14
**hereinbefore** 107:10
**hereto** 4:10,
61:2, 61:15,
106:6
**hereunto** 107:26
**Hidalgo** 81:23,
83:3, 83:6
**high** 10:2

highest 9:23,
    12:11
Hill 17:22
hire 95:18, 96:3
hired 19:12
history 26:2,
    26:13, 26:17,
    27:4, 86:15
Hold 53:12, 100:1
Holding 41:6,
    43:24, 44:2,
    45:15, 45:17,
    46:3, 46:8,
    46:10, 46:11,
    46:14, 46:20,
    47:10, 47:11,
    47:12, 47:24,
    48:2, 48:11,
    57:18, 66:16,
    68:16, 102:24,
    103:6, 103:10,
    103:22
home 30:20,
    39:25
homicide 84:10
honest 96:8
Honestly 20:14,
    23:11, 50:20,
    86:13, 94:17
Hospital 21:22,
    21:25, 22:1,
    22:4, 22:6,
    22:10, 73:14,
    103:10
hospitalization 47:17
hospitalizations 22:20
hospitalized 22:8,
    22:16, 103:4
hospitals 46:14
Hotel 14:1,
    95:12, 95:13,
    95:16, 95:17
hour 14:25, 17:3,
    18:13
hours 15:4, 96:11
house 9:3, 14:6,
    14:10, 19:22,
    19:23, 38:17
housing 77:19
Humann 35:10

< I >
Identification. 49:24,
    58:22, 80:18
illness 86:2,
    86:15, 100:18
illnesses 70:4
imposed 78:1
imprisonment 60:24
In. 4:20, 104:3
inappropriate 100:8
incapacitated 45:11,
    55:19
incarcerated 13:3,
    13:6, 73:24,
    103:13
incarceration 12:17,
    18:22, 20:12,
    22:5, 22:11,
    25:24, 25:25,
    27:10, 27:21,
    27:23, 28:2,
    28:8, 28:17,
    28:20, 29:9,
    29:12, 30:2,
    34:4, 36:11,
    36:13, 67:2,
    91:12
incident 75:6,
    77:22, 78:8,
    87:4, 103:4,
    103:9
incidents 87:4,
    88:8, 88:9,
    88:13
include 93:15
includes 92:22
including 87:20,
    99:15
income 90:23,
    90:24
incoming 7:24
increased 18:14
indefinite 60:23
independent 54:4
independently 51:1,
    54:16
indicated 26:1,
    106:5

indictment 3:16,
    81:16, 83:23
individuals 83:23,
    84:3, 84:6,
    84:9, 84:13
information 7:8,
    24:20
inhibit 6:15, 6:21
initials 51:9,
    51:15, 51:22,
    52:5, 52:8,
    52:12, 52:15,
    53:2, 53:3
injures 88:1
injuries 73:24,
    76:12, 87:16,
    87:21
inmate 74:8,
    74:9, 75:13,
    87:23, 91:21
inmates 48:1,
    48:9, 48:11,
    48:14, 66:16,
    77:4, 99:10,
    100:22
Inn 14:1, 15:12,
    15:15, 98:9,
    98:10, 98:17
innocent 89:9,
    89:15
inside 95:16,
    95:17, 103:6,
    103:10
insomnia 93:8,
    93:15
interested 107:23
interpreter 6:6,
    56:17, 56:21
interrupt 100:2
interrupting 100:3
intertwined 78:15
interviews 19:10
intoxication 26:24
invaluable 95:8
involved 75:15,
    76:10
iron 101:3
issue 6:18,
    27:12, 87:5
itself 50:25

< J >
J-u-s-t-i-a-n-o 81:21
jail 67:25
jailhouse 48:5
James 35:17,
    35:20
JOB 52:2, 91:3,
    96:9, 96:12,
    96:14
jobs 16:16, 19:8,
    97:17
John 35:10,
    42:18, 42:19
Jonas 81:24,
    83:11
Jose 9:12
Joseph 23:16,
    25:22, 44:1,
    44:5, 44:20,
    44:24, 44:25,
    55:11
Josue 1:4, 1:14,
    3:3, 4:1,
    59:1, 59:2,
    59:3, 63:8,
    63:9, 63:10,
    95:5, 102:17
Judge 32:23,
    32:25, 33:2,
    45:8, 49:3,
    49:21, 68:6
judgment 61:1,
    61:14
July 45:9, 54:20,
    68:17, 68:22
jumping 40:8
jury 67:3, 67:8
Justiano 81:21,
    82:19
Justice 45:7,
    45:9, 54:10,
    55:7, 55:18,
    56:14

< K >
KA 63:12
keep 47:8, 75:9,

77:8, 77:12, 77:13, 77:23, 81:24, 85:22, 103:14
Kelly 1:15, 107:6, 107:33
kill 38:11
killed 48:2, 66:17, 66:20, 67:9
killing 53:9, 84:6, 84:14, 84:17, 85:7
kind 13:21, 17:20, 36:23, 48:6, 57:6, 59:6, 78:13, 86:11, 90:2, 97:1
King 97:5
knife 74:10, 74:11
knowledge 23:7, 83:21, 89:1, 92:13, 95:18, 95:20
known 83:5, 83:17
knows 61:23
Korean 86:16

< L >
L-o-r-n-a-m-e-a-d 17:5
Lackawanna 17:20, 17:21
laid 16:5
Last 7:9, 7:13, 9:13, 11:24, 21:18, 33:19, 35:18, 39:24, 40:4, 52:22, 60:4, 81:23, 93:5, 93:20, 94:13
Late 15:10, 15:11, 17:14, 43:2, 73:22
later 6:20, 87:25, 96:22

latter 67:1
laundry 14:11
LAW 2:1
lawfully 31:19, 31:20
Lawrence 33:3
lawsuit 76:25, 79:21
lawsuits 78:7
lawyer 55:9, 56:16, 67:17
lawyers 56:15, 88:19
layperson 88:6, 88:17
leads 97:1
learn 17:1
learned 12:22
least 45:21, 101:15
leave 75:14
left 46:17, 71:16, 74:14, 74:16, 74:19, 87:23, 87:24
legal 88:18, 88:23, 90:2
length 75:3
letter 83:17, 91:7
level 9:23
Liebergall 23:18, 42:10, 42:13, 44:1
life 67:23, 91:16, 102:18
limited 87:20
LINE 61:21, 74:9, 89:6, 93:5, 105:8
lines 91:15
liquor 26:20
list 87:17
Lithium 25:12, 73:11, 73:12, 73:13
little 6:10, 9:3, 12:10, 14:6, 19:5, 21:11, 21:24, 22:18, 23:12, 30:15,

30:22, 47:15, 74:12, 74:17, 74:22, 74:24, 76:4, 76:6, 76:13, 81:11, 96:9, 100:19, 101:14
live 8:8, 8:9, 8:10, 9:15, 10:7, 10:17, 10:25, 11:6, 11:16, 30:14, 89:14
lived 8:2, 8:19, 9:7, 10:20
living 8:3, 10:16, 11:25, 86:22, 91:20
LMHC 24:17
loading 17:18
located 37:14
lock 75:9, 77:8, 77:12, 77:13, 77:23
Locked 77:15, 77:17, 91:5
long 8:2, 9:5, 9:15, 10:7, 11:6, 11:16, 11:22, 14:8, 16:2, 17:9, 21:3, 22:16, 26:2, 30:12, 33:17, 37:16, 45:14, 45:15, 46:1, 49:14, 69:2, 69:7, 73:11, 73:19, 75:1, 75:3, 101:12
longer 47:15
Look 39:20, 50:3, 50:9, 51:7, 54:15, 54:18, 57:9, 58:11, 59:5, 59:8, 60:9, 61:10, 61:17, 62:22, 65:13, 80:24, 85:21, 87:15,

94:25, 103:24
looked 39:24, 40:1, 40:4
looking 19:8, 61:11
looks 57:8
Lornamead 17:2, 17:5
lose 22:18, 23:11, 87:12, 90:24, 101:14
loss 90:23, 90:24, 91:25
lost 38:18, 61:9
lot 27:1, 33:16, 64:19, 71:21, 86:9, 91:5, 91:6
lunch 101:16, 101:17, 101:18

< M >
M-a-r-i-n-e-l-l-o 24:16
M-i-l-l-l 81:22
M-i-s-a 81:20
M-i-z-a-e-l 81:19
M. 81:21, 82:19
machine 18:6
mad 96:6
Main 1:15, 2:3, 2:13, 2:14
maintenance 14:6, 14:13
male 42:14, 42:15
Mall 2:13
man 14:6, 14:10, 89:9
manner 7:10
manslaughter 48:19, 67:23, 96:4
March 15:6, 15:10, 15:11, 98:18, 98:23
marijuana 26:3, 28:18, 28:21, 29:1, 29:14
Marinello 24:14, 92:23, 92:25
marital 7:18

marked 49:23,
50:2, 54:9,
57:6, 58:21,
80:17
marker 51:10
married 7:20
mattress 99:16,
101:1, 101:2,
101:5, 102:1
max 70:1, 70:3
maximum 69:22,
69:25, 77:15
meals 101:20,
101:22
mean 13:15,
46:5, 60:6,
60:15, 88:15,
89:19, 89:21,
90:24, 91:17
meaning 55:19
means 77:14,
89:1, 89:4,
92:2
Medicaid 20:24
Medical 23:14,
41:9, 41:19,
42:5, 45:22,
46:13, 88:18,
92:12, 92:14,
103:11, 103:12
medication 6:15,
6:17, 6:19,
71:10, 71:21,
71:23, 87:2,
92:20, 92:21,
93:4, 93:16,
94:11
medications 6:20,
21:12, 26:9,
25:19, 72:4,
72:13, 73:2,
73:4, 93:12
meet 37:6, 37:9,
57:21
meeting 42:3,
57:14, 57:17,
57:20
Memorial 22:25
Mental 21:14,
21:15, 22:20,

23:5, 23:20,
24:19, 25:23,
70:11, 70:13,
70:21, 76:5,
86:2, 86:15,
87:5, 87:13,
88:15, 89:3,
89:18, 89:19,
90:14, 100:16,
100:18,
101:10,
101:11,
101:12, 102:3,
102:5, 102:16,
103:5, 103:13
mentality 96:21
mention 83:9
mentioned 21:11,
25:22, 42:13,
77:12, 82:17,
82:23
mentioning 82:13
Merlio 23:24
met 4:20, 37:4,
37:5, 37:22,
37:23, 83:15
Michael 49:4, 68:7
middle 59:17,
74:18
Miguel 37:3,
37:21, 40:25,
48:20, 53:9,
53:11, 83:24,
85:8
Milli 81:22
milligrams 25:12,
26:16
mind 22:18,
23:12, 38:18,
87:12, 92:5,
101:14
Minimum 14:22,
14:23, 16:9,
18:10, 18:12,
96:10
minute 22:18,
23:12, 61:9
Misa 81:20, 82:1
misrepresenting 65:22
missed 103:25

Mission 9:2, 9:5
mistake 85:11
mistaken 23:19,
29:23
misunderstanding 74:8
Mizael 81:18,
81:25, 82:9,
82:16
mom 19:23, 86:8,
86:9
money 19:24,
20:3, 20:5,
91:2, 91:7
Montalvo 81:20,
81:25, 82:9,
82:16, 83:1,
83:9
month 8:25, 9:6,
11:8, 11:17,
14:9, 16:23,
17:1, 35:22,
35:25, 58:2,
58:3, 69:5,
71:15, 93:1
monthly 58:1
months 8:20,
9:16, 11:17,
16:5, 16:14,
17:11, 47:16,
73:6, 73:7,
76:19, 77:9,
93:3, 97:18
mood 93:14
mopping 14:11
morning 25:14,
25:16
motion 55:9,
56:9, 57:2
Motor 17:17
mouth 76:14
moved 9:4, 11:10,
11:18, 11:20,
74:15, 95:11
MR. FLYNN 4:17,
5:14, 5:17,
7:12, 23:1,
24:16, 26:6,
27:8, 31:25,
33:4, 40:12,
40:17, 53:14,

53:19, 62:2,
65:20, 66:1,
66:4, 66:8,
78:18, 81:11,
85:1, 85:10,
88:21, 89:2,
100:6, 103:24,
104:2
Ms 56:19, 57:17
murdering 83:24,
84:10
murders 40:25,
82:13
myself 11:10,
19:25, 36:23

< N >
NAME 4:18, 8:21,
9:12, 9:13,
10:18, 10:23,
11:2, 12:9,
17:4, 18:4,
23:15, 23:17,
23:18, 23:23,
23:25, 24:23,
35:18, 37:15,
42:9, 45:8,
47:24, 51:4,
51:6, 51:25,
52:23, 53:11,
67:5, 81:21,
81:23, 82:14,
82:23, 83:6,
83:9, 83:12,
83:18, 86:24,
87:2, 105:1,
107:27
named 57:15,
83:22
names 81:18
natural 91:25,
92:5
nature 27:7
near 38:9
necessities 97:23
need 6:6, 6:9,
91:4, 92:14
neither 107:21
Nelson 37:3,

37:6,  41:1,
48:20,  53:10,
53:11,  83:24,
85:7
New 1:1,  1:8,
1:16,  2:4,
2:8,  2:15,
4:2,  17:2,
17:17,  59:3,
59:4,  60:25,
61:13,  63:7,
79:18,  81:15,
107:1,  107:7,
107:35
Next 7:3,  38:16,
53:5,  58:10,
81:21,  89:22,
90:2,  90:23,
91:14,  91:25,
92:9,  94:1,
95:1,  97:1,
97:2,  97:19,
99:1,  102:12,
103:7
Niagara 4:2,  8:1,
8:2,  9:4,
14:1,  14:3,
14:4,  16:17,
16:25,  22:2,
22:23,  22:24,
24:6,  24:18,
30:14,  30:19,
32:13,  32:15,
36:3,  95:11,
97:7
nickname 83:18
night 25:14,
25:17,  89:18,
89:25,  93:9,
93:13
nightmares 93:6,
93:7,  93:9,
93:11,  94:17
No. 1:7,  20:14,
22:23,  26:14,
38:18,  48:4,
76:14,  77:1,
95:24
nod 5:9
none 36:21,

51:17,  53:4,
56:1,  82:14
nor 107:21,
107:22
normal 92:19
North 17:7
nose 76:13
Notary 1:15,
105:46,
106:12,  107:6,
107:34
notes 103:25,
107:18
Nothing 6:21,
39:12,  41:14,
43:12,  64:18,
76:15,  76:21,
107:12
notice 1:18,
61:25,  63:21,
65:4,  107:14
November 12:1,
19:18,  20:8,
28:10,  29:12,
29:24,  30:21,
36:13,  37:2,
37:4,  40:21,
41:16,  45:14,
46:4,  46:20,
78:10,  90:10
Number 3:8,  7:6,
7:11,  33:1,
57:8,  58:21,
63:12,  64:11,
80:17,  81:16
Numbers 49:23
Nutarino 42:18,
42:19,  42:24,
54:21,  54:24,
56:2,  56:3,
56:8,  56:9,
56:15,  56:18,
56:23,  57:2,
67:18,  68:8


< O >
oath 4:10
Objection 90:5
objections 4:13

obtained 18:25
Obviously 36:18,
88:18
occur 75:22,
99:19
occurred 101:24,
102:23
offended 76:8
OFFICE 2:9,  24:5,
39:7,  79:14,
79:15
officer 35:16,  36:6
Officers 74:3,
75:20,  76:7,
76:10,  76:17,
79:11,  87:25,
99:13,  99:14,
100:22,
100:23,  101:6,
101:24
OFFICES 2:1
often 26:21,
28:1,  28:10,
29:1,  35:20,
57:24,  92:25,
93:6,  93:11
Olanzapine 25:15
old 7:1,  7:2,
29:21,  29:22,
34:15,  36:14,
86:6,  86:20
Once 36:22,
35:25,  39:25,
58:2,  58:3,
91:1,  93:1,
93:3
ongoing 79:21,
92:12,  92:14
opinion 55:11,
58:7
oral 56:10,  57:3
originally 94:2
Ortiz 1:4,  1:14,
3:3,  4:1,
4:18,  26:8,
33:7,  50:2,
59:3,  63:12,
63:21,  80:21,
85:6,  100:2,
100:11,  104:2

others 88:4,  88:12
outcome 107:23
outside 38:6,
41:15,  103:8
overnights 16:22
own 8:4,  77:17,
92:5,  102:18
owner 12:8


< P >
p.m. 1:17,  104:7
PAGE 3:2,  3:8,
50:23,  51:8,
52:11,  52:20,
52:22,  59:13,
59:14,  59:16,
59:17,  59:20,
92:9,  94:23,
95:1,  97:19,
99:2,  102:11,
102:12,  105:8
Pages 54:12
paid 31:3
pallets 17:19,
18:9
panic 93:20,
93:21
paper 64:7,
64:16,  64:19,
64:25,  65:10,
65:11,  65:12,
81:6
papers 39:10
paperwork 39:17
Paragraph 59:24,
59:25,  60:22,
61:10,  64:10,
85:20,  87:15,
92:10,  93:5,
94:22,  99:1,
102:12
paragraphs 85:15,
85:22
part 40:24,  56:7,
63:14,  67:1,
92:10,  100:13,
102:12
part-time 15:2,
16:6,  98:13

parties 4:10
party 107:22
pass 18:5, 19:23, 86:10
passed 10:18, 42:20, 42:21
past 81:1, 95:7
Pause 40:18, 53:16, 53:19, 80:16
pay 8:23, 16:8, 18:10
paying 91:4
People 38:4, 48:5, 63:7, 83:22, 90:1, 91:5, 91:6, 100:18, 103:13
Per 14:25, 25:13
period 11:7, 16:11, 44:3
periods 99:16
permanent 91:25
person 34:11, 45:11, 55:19, 75:17, 82:6, 82:12, 89:24, 92:19, 96:5, 96:15
personal 83:21, 87:21, 88:1
persons 82:15
Ph 2:5, 2:16
phrase 77:12
Physical 43:16, 70:11, 70:12, 89:18, 99:9
pills 28:13, 86:13
pinning 98:20
pipes 14:18
Place 2:13, 8:4, 17:16, 18:3, 18:25, 30:14, 30:17, 35:25, 69:22, 89:15, 103:12, 107:14
places 17:15, 97:13, 103:21
plaintiff 79:3, 79:4
platform 101:3

plea 48:18, 49:7, 49:8, 67:11, 67:12, 67:13, 68:2, 68:8, 68:12
plead 32:20, 32:23, 49:1, 67:13, 67:17, 67:22, 68:1, 68:13
please 5:19, 6:11, 31:23, 33:22, 63:23
pled 84:5, 85:1
plumbing 13:16
plus 61:12
point 26:24, 68:9
pointing 65:3, 74:14, 74:18
Police 30:19, 32:13, 32:15, 38:9, 38:10, 38:17, 39:1, 40:10, 40:22, 50:21, 53:24, 54:5, 66:12, 79:11
policy 7:7
portion 78:16
posed 53:18
position 67:25, 91:5, 95:8, 96:14
positions 97:16
possess 32:11, 34:7, 34:9
possessed 31:17
Possession 31:9, 32:10, 35:5
post 49:12, 60:24, 61:12
posttraumatic 90:4, 90:18
precipitation 90:3
premise 66:6
prepared 88:19
preparing 88:25
prescribe 71:9, 93:4
prescribed 86:12

Present 45:3, 45:5, 64:7
press 75:13
pressed 34:12
Pretty 29:20, 87:7, 93:13
prevent 6:21
previous 15:14
primary 56:18, 56:23
Prior 5:11, 6:14, 8:8, 15:12, 19:7, 25:24, 27:23, 28:1, 28:8, 28:10, 28:20, 29:12, 29:19, 36:13, 39:5, 39:7, 40:6, 58:16, 62:14, 64:3, 70:14, 82:16, 82:21, 83:12, 85:25, 87:6, 90:10, 90:11, 90:12, 90:18, 91:11
prison 8:10, 8:24, 12:22, 61:12, 66:19, 67:24, 68:16, 68:22, 68:23, 70:4, 70:15, 73:25, 77:3, 77:10, 77:15, 89:8, 89:16, 89:17, 90:1, 91:1, 91:18, 93:18, 93:23, 94:7, 97:25, 103:2
prisoner 47:23
probably 11:7, 22:17, 22:18, 26:22, 40:2, 47:16, 76:11, 101:4, 101:8
probation 32:24, 34:3, 34:14, 35:8, 35:14, 35:16, 36:6
problem 63:11,

87:8
problems 90:14
proceed 43:4, 44:14, 44:21, 45:12, 55:16, 55:21, 58:7
proceedings 58:8
proceedings, 40:18, 80:16
process 40:1, 40:3, 45:25, 55:16, 56:4
professional 23:20
program 13:18
programs 12:21, 13:8, 13:10, 13:12, 13:13, 13:15
pronounce 59:1, 63:8
pronounced 81:19
Proposed 49:23, 58:21, 80:17
proposition 26:10
prospective 95:8
provide 7:9, 24:20
psych 22:10
psychiatric 21:12, 92:13, 92:15
psychiatrist 42:3, 43:3, 43:17, 57:16
psychiatrists 43:3, 43:17
psychological 91:25
psychologist 66:20
psychotic 6:19, 87:12
Public 1:15, 7:8, 35:11, 105:46, 106:12, 107:6, 107:34
Puerto 9:25, 10:3, 10:5, 10:7, 12:14, 13:1, 34:10, 34:23, 36:15, 86:5, 86:22, 87:9, 94:4
pulled 74:9

purchase 30:24,
  30:25
pursuant 1:18,
  107:13
put 5:9, 13:8,
  14:17, 17:19,
  18:8, 21:24,
  26:18, 28:12,
  55:9, 76:4,
  95:24, 100:16
putting 52:8,
  52:20


< Q >
qualified 21:1,
  96:15
qualify 13:19,
  15:14
Quality 14:1,
  16:12, 15:15,
  15:17, 98:9,
  98:10, 98:17
questions 4:13,
  4:21, 33:5,
  33:17, 33:20,
  37:1, 43:13,
  61:22, 62:25,
  81:24, 85:18,
  89:7
quick 67:16
quickly 6:12,
  80:22
quite 76:11, 98:6
quizzing 33:16


< R >
rack 18:6
Ramirez 81:22,
  82:19
read 5:12, 12:23,
  50:6, 50:11,
  50:14, 58:18,
  59:5, 59:22,
  59:25, 62:3,
  62:24, 64:6,
  64:7, 64:8,
  64:10, 64:18,
  80:22, 95:1,

95:3, 99:3,
  99:7, 102:15,
  106:2
reading 53:23,
  63:16, 63:19,
  64:13, 64:25,
  65:23, 65:24,
  66:3
real 67:16,
  82:12, 86:6,
  87:8, 87:11
reality 90:15
realize 90:13
realized 87:13,
  90:14, 90:15
really 23:12,
  25:3, 58:19,
  58:20, 61:5,
  64:6, 64:8,
  64:19, 68:1,
  84:8, 86:7,
  86:14, 87:1,
  87:3, 90:13,
  90:14, 96:18
reason 67:16,
  100:1
reasons 105:7
recall 32:25,
  33:8, 35:2,
  38:8, 40:9,
  44:12, 44:13,
  44:20, 52:8,
  52:20, 55:1,
  55:6, 55:13,
  55:17, 56:9,
  56:13, 57:1,
  57:14, 57:17,
  57:20, 58:5,
  58:6, 58:16,
  63:14, 66:11,
  66:19, 67:1,
  68:22, 71:11,
  72:15, 75:8,
  86:24, 87:2
receipt 5:15
receive 20:22,
  71:7, 71:19,
  72:10, 72:25
received 20:18,
  49:10, 72:21,

77:22
receiving 101:21
reception 69:3,
  69:22
recollection 24:24,
  54:4, 55:4
record 5:10,
  5:11, 40:13,
  53:17, 53:19,
  63:18, 95:21
records 26:21
redact 7:4
redacting 7:7
Referee 4:11
reference 60:2,
  83:18
referencing 65:2
referred 76:20,
  87:11
referring 65:4
refers 60:22
reflect 63:18
regained 23:13,
  41:8, 41:12,
  46:25
regular 6:17,
  38:3, 44:8
regularly 57:22,
  57:23, 57:24
reject 96:21
rejected 97:4
rejection 97:3
relapse 76:4,
  87:8, 87:11,
  92:21, 101:14
relapsed 21:24
related 92:13,
  107:22
relating 27:9
release 10:21,
  12:16, 19:1,
  19:6, 20:18,
  22:4, 22:6,
  22:8, 22:11,
  22:21, 28:17,
  29:9, 30:2,
  36:8, 36:11,
  49:12, 61:13,
  72:25, 95:6
released 8:9,

8:24, 9:17,
  9:21, 18:22,
  20:10, 20:20,
  22:1, 28:15,
  34:4, 68:19,
  69:11, 73:4,
  73:5, 93:8,
  94:9
rely 97:21, 97:22
remain 45:14,
  45:15
remained 58:7
Remedy 15:18,
  15:22, 15:25,
  16:1, 16:4,
  16:8, 16:12,
  16:25, 18:19,
  19:2, 19:3
remembered 48:22,
  51:21
Remeron 71:23
Rent 8:4, 8:5,
  8:23, 12:6
repair 93:14
Repeat 28:5
rephrase 5:19,
  27:18, 27:19,
  32:1, 61:8
report 30:20,
  35:20, 35:23
reported 30:18
reporter 5:2, 7:4,
  57:9
represent 80:9,
  81:1
representation 65:7
represented 35:7,
  35:9
representing 63:16,
  67:6
requested 67:2
require 92:12
reserve 5:12
reserved 4:14
respect 42:24,
  55:7, 65:15,
  76:16, 76:25,
  78:8, 80:10,
  96:13, 102:19
respective 4:10

response 100:3
rest 67:23
restaurant 14:7
restroom 6:10
result 55:13,
  76:12, 97:2
retaliation 100:19
review 39:7,
  39:9, 39:17,
  62:14, 62:18
reviewed 64:3
reviewing 58:16
Reynaldo 8:22,
  10:18
Rico 9:25, 10:3,
  10:5, 10:7,
  12:14, 13:1,
  34:10, 34:23,
  36:15, 86:5,
  86:23, 87:9,
  94:4
Riverside 11:2,
  11:18, 11:19
road 32:22
Ronnie 47:24
room 100:25
routine 44:9
Royal 11:3, 11:4
run 49:18

< S >
S-h-e 24:25
S-h-e-c-k 8:15,
  8:17, 8:18
S. 1:15, 107:6,
  107:33
safety 30:15,
  30:22
sake 53:16
save 106:3
saw 25:21, 62:3
saying 48:6,
  64:20, 65:3,
  67:12, 96:23,
  99:24, 100:15
says 51:1, 60:4,
  60:5, 62:5,
  64:23, 81:17,
  87:15, 87:20,

90:3, 91:14,
  93:5, 94:14,
  95:5, 97:2,
  97:21, 99:13,
  102:16
scar 74:16,
  74:18, 74:22,
  75:1
scheduled 80:1
schizophrenia 21:16,
  41:22
schizophrenic 86:17
SCHNEIDERMAN 2:10
school 10:2,
  12:22, 13:12
schooling 12:16,
  13:5
scold 5:6
screwed 19:3
seal 107:27
second 40:17,
  54:13, 54:23,
  56:7, 71:5,
  77:8, 93:5,
  100:13
Section 48:13,
  55:19
Security 7:5,
  7:10, 7:14,
  77:15
seeing 22:2, 55:1
seen 23:17,
  50:18, 55:3,
  57:12, 58:13,
  59:11, 63:2,
  81:5
sell 19:22, 19:23
send 16:16,
  16:17, 17:1,
  17:15, 17:16,
  17:19, 64:16,
  64:19, 91:2,
  91:6, 91:7,
  100:16, 103:5,
  103:10,
  103:11, 103:12
sense 92:20
sent 42:3, 43:23,
  64:7, 69:10
sentence 49:10,

49:11, 60:4,
  68:2, 68:3,
  68:11, 89:14,
  92:4, 95:5,
  97:2, 99:9,
  102:15
sentenced 49:6,
  49:9, 60:23,
  61:12
separate 54:10
September 47:23
serious 88:9,
  88:13
served 58:17
Services 20:8,
  20:10, 20:19,
  20:21, 20:22,
  20:25, 21:1,
  21:3, 73:8,
  97:22, 97:24,
  98:24
set 80:7, 107:14
sets 53:2
severe 88:15,
  89:3
Shahata 23:24,
  24:25, 25:4,
  92:17, 93:2
Sheck 8:10, 8:13,
  8:15
sheet 102:19,
  106:6
Sheraton 95:13
shift 17:3
short 11:7, 30:12
shortcut 62:22
shorthand 107:18
shotgun 31:1,
  31:4, 35:6
show 50:2,
  53:19, 54:9,
  57:6, 58:10,
  58:26, 80:21,
  96:1
SHU 76:20, 77:9,
  102:4, 102:6
shy 10:1, 12:11
sic 10:6
side 11:10, 37:14
sign 5:12

Signature 52:22,
  52:25, 59:14,
  59:16, 105:41
Signed 57:15,
  62:16, 64:3,
  64:24, 64:25,
  65:3, 81:8,
  88:21, 106:7
signing 4:11,
  53:4, 53:6
similar 97:8
simple 14:15,
  81:24
single 7:19
sink 14:17
Sir 6:24, 7:18,
  9:23, 26:13
sit 43:16
situation 16:24,
  96:19, 97:8
situations 89:25
six 76:19
skim 59:6, 62:24,
  80:21
sleep 93:9, 93:13
sleeping 100:20
snake 14:18
snowing 41:15
soap 91:8
Social 7:5, 7:10,
  7:13, 20:8,
  20:10, 20:19,
  20:21, 20:22,
  20:25, 21:1,
  21:3, 24:18,
  73:8, 97:22,
  97:24, 98:23
socially 29:6
sold 31:3
solitary 76:19
somebody 18:8,
  30:13, 38:11,
  74:1
someone 21:14,
  30:17
sometime 12:1,
  15:10, 68:17
Sometimes 27:1,
  35:24, 89:24,
  100:25,

101:16,
101:17,
101:18, 101:19
somewhat 78:15
somewhere 74:21
soon 95:7
sore 76:13
sorry 11:14,
15:25, 16:2,
23:1
soul 86:10
sounds 34:1
sp 42:18
Spanish 5:24, 6:2,
48:12, 48:16
speaking 6:1,
20:14, 23:11,
39:6, 50:20,
94:17
special 77:19
specific 9:21
spell 8:16, 9:13,
23:25, 35:18,
94:14
spelling 24:24
spend 67:23,
69:5, 77:9
spent 8:25, 69:8
split 19:24
spoke 48:16
spools 18:4
SPS 15:19,
15:20, 16:5,
16:6, 16:7,
17:9, 18:10,
18:16, 18:25
SS 105:4, 107:2
St 2:3
stab 74:1
stabbed 74:11
stabbing 74:5,
74:6, 87:23,
99:10
stack 18:9
staff 77:3
Staffing 15:19,
15:20, 15:22,
15:25, 16:1,
16:8, 18:23,
19:2, 19:3

stairs 78:6
stamped 54:12,
54:13
stamps 20:23
start 40:2
started 15:7,
15:8, 15:16,
21:5, 40:1,
50:11, 75:19,
97:9, 98:16,
98:18, 103:2
State 1:1, 1:8,
2:8, 9:18,
25:24, 34:4,
34:19, 34:20,
34:22, 34:23,
34:24, 34:25,
36:11, 39:21,
59:3, 59:4,
60:25, 61:13,
63:7, 66:19,
68:16, 68:23,
70:15, 73:25,
77:3, 77:10,
102:17, 103:2,
105:3, 107:1,
107:7, 107:35
Statement 3:9,
50:22, 53:13,
53:14, 53:24,
66:12
statements 56:10,
57:3
States 50:25,
81:15, 81:17
status 7:18,
79:20, 84:2
stay 46:10, 47:11
sticker 51:11
stipulate 61:24
stipulated 4:9
stipulations 4:6
stop 61:15
stopped 16:25
story 30:12
straighten 62:11
Street 1:15, 2:14,
11:2, 11:11,
11:12, 11:16,
11:21, 11:22,

12:3, 12:4,
37:15, 38:9,
38:17
stress 90:4, 90:18
stretch 6:10
strike 44:12,
57:14, 58:5,
69:21
strong 68:9, 68:10
struggle 89:18,
91:8
stubble 74:22
stuff 17:19, 19:8,
20:23, 21:24,
22:6, 40:1,
42:8, 43:13,
48:6, 48:7,
70:10, 76:5,
76:7, 76:13,
86:8, 86:9,
86:12, 91:4,
95:18, 95:19,
96:9, 96:20,
101:14
subpoena 45:1
Subscribed 105:43,
106:9, 107:26
subsequent 49:5
successful 67:19
sue 79:13
sued 79:6, 79:10
suffer 73:24,
76:12, 93:6
suffered 93:21,
99:14
suggest 31:13
summarize 53:8
summarized 53:15
summary 53:23
Summer 10:10,
10:11, 10:14,
19:14, 19:16,
19:18, 20:7,
21:4, 37:8,
45:17, 46:4,
46:6, 46:20,
47:8, 55:6,
56:14, 68:18,
86:1
Sun 17:22

Sunil 17:21,
17:23, 18:1,
18:2
superficial 74:25
Superseding 3:15,
81:16
supervision 49:12,
60:24
support 19:21,
97:23
supporting 19:25
suppress 66:10,
57:3
Supreme 3:13,
54:11, 63:5
sustained 87:16,
88:2
sworn 4:3,
105:43, 106:9,
107:12

< T >
T-r-e-k 8:14
T-r-o-t 24:10,
24:11
T. 2:10
table 18:8
talked 19:5, 41:1,
92:17, 93:2
talks 99:9
teenager 34:10
teens 86:5
temp 16:3,
98:12, 98:13
Temporaries 15:19,
15:21, 18:25
Temporary 15:18,
17:9, 18:10,
97:10, 97:15
term 60:23, 90:3
testified 4:4,
68:19
testify 6:16,
21:13, 67:3,
107:12
testifying 39:8,
67:8
testimony 107:10,
107:11,

107:13,
  107:15, 107:17
TGI 95:14,
  95:17, 96:13,
  97:3, 97:5
thankful 96:9
Thanks 56:7, 66:8
THE WITNESS 21:8,
  24:15, 27:1,
  29:16, 38:13,
  41:3, 42:7,
  44:17, 44:24,
  46:24, 47:20,
  52:17, 67:16,
  78:22, 90:20,
  91:1, 91:19,
  93:23
therapy 92:21
thereafter 41:17,
  107:15
thereof 107:23
thinking 89:25,
  93:10
Third 1:16, 2:14,
  51:7
though 39:16
threatened 38:10
Three 16:7,
  16:21, 16:22,
  18:16, 32:24,
  35:6, 53:2,
  69:17, 69:18,
  85:22, 93:3,
  101:4, 101:19,
  101:20
throw 100:20,
  100:23, 101:7
throwing 57:8,
  99:15, 99:18
Thursday 1:16
Tiano 79:11
timeline 36:24
timing 33:21
Timothy 2:11, 4:18
titled 61:17
today 4:21, 6:14,
  7:1, 18:23,
  21:6, 25:9,
  35:14, 39:5,
  39:8, 40:6,

78:7, 78:12,
  85:16, 93:11,
  93:12
together 14:17,
  37:23, 49:20
toilet 14:15
Tonawanda 17:2,
  17:7, 17:8
took 13:3, 86:10,
  100:24, 101:1,
  102:2
toothpaste 17:2
top 50:23, 51:4,
  61:17, 61:18,
  61:20, 92:9,
  95:1, 97:19,
  99:2, 102:11
Torres 56:16,
  56:19
Towards 67:1,
  93:5
Trade 13:13,
  13:15
training 13:18
transcribed 107:16
transcript 4:12,
  5:13, 5:15,
  106:3
transcription 107:18
transferred 77:19
treat 23:20, 25:7
treated 86:19,
  86:21
treatment 23:23,
  70:20, 71:7,
  71:19, 72:7,
  72:10, 72:25,
  92:13, 92:15,
  103:8
Tri 24:8
trial 1:14, 4:14,
  32:20, 32:21,
  67:19, 80:7,
  84:9, 84:14
tried 30:13,
  36:23, 48:6,
  49:8, 68:8,
  74:1, 74:15,
  75:12, 87:23,
  95:11, 96:2

trip 94:20
Trot 24:6, 24:9,
  25:5, 26:6
Trott 67:6
true 33:7, 106:3,
  107:17
trusting 66:3
truth 107:12,
  107:13
try 5:5, 5:19,
  6:12, 19:8,
  30:17, 38:11,
  68:1, 68:11,
  81:24, 96:5,
  96:8, 96:18,
  96:19, 96:20,
  97:5, 100:4
trying 13:22,
  61:5, 61:22,
  94:20
turn 93:14
twice 25:14,
  25:17
two 9:6, 9:16,
  11:17, 14:9,
  15:6, 16:2,
  16:7, 18:16,
  19:24, 22:19,
  25:19, 40:6,
  42:22, 48:19,
  54:10, 54:15,
  56:15, 77:6,
  87:21, 88:8,
  89:14, 91:15,
  93:3, 101:4
two. 88:2
type 12:21,
  13:10, 14:13,
  16:16, 17:15,
  26:22, 71:7,
  71:19, 72:10,
  72:25, 89:23,
  92:18
typed 57:16
typewriting 107:16

< U >
Um-hmm 59:7
unavailable 96:14

uncle 10:17,
  10:20, 10:22
undersigned 106:2
Understand 5:7,
  5:9, 5:18,
  5:23, 6:3,
  6:4, 6:23,
  27:16, 27:19,
  28:4, 29:4,
  31:23, 32:2,
  32:3, 32:23,
  33:16, 50:14,
  50:16, 58:20,
  61:5, 61:8,
  62:6, 62:14,
  64:17, 64:20,
  64:21, 78:20,
  86:14, 88:6,
  88:7, 88:20,
  91:22, 94:18,
  96:22
understanding 6:22,
  77:13, 89:2,
  91:16, 91:19,
  92:1, 92:4,
  92:6, 94:15,
  94:16, 94:19
understood 5:20
unit 22:10,
  77:19, 100:17,
  101:10,
  101:1, 102:3,
  102:5, 103:5,
  103:11, 103:12
United 81:15,
  81:17
unlike 81:1
Until 4:14, 11:23,
  16:5, 18:22,
  19:18, 23:8,
  46:4, 72:24,
  73:6, 87:8,
  98:23
upstate 46:6, 47:6

< V >
vehicle 16:21
Velasquez 8:22,
  10:18

veracity 65:8,
65:21
verbalize 5:8
verification 59:14,
65:8
Verified 3:14,
59:3, 61:25,
88:23
verify 63:17
versus 59:3,
63:7, 81:18
Vilardo 33:2, 33:3
visible 74:23
vocational 13:17

< W >
wage 14:22,
14:23, 16:9,
18:11, 18:12,
96:10
wagons 17:18
waived 4:11, 4:12
walking 4:20
wanted 67:12
war 86:16
warrant 31:8,
31:10, 32:9,
32:16
wash 18:6
watching 18:4
water 18:7,
99:15, 99:18,
99:19, 100:21,
100:24, 101:7,
102:1
Wayne 2:1, 2:2,
59:12, 95:15,
96:5, 96:7
weapon 30:24,
31:3, 35:5
week 15:4, 16:7,
18:17, 22:19,
33:19, 40:6,
96:11
weekend 26:22
Weekly 58:1
weeks 22:19,
101:13, 101:15
west 11:10, 37:14

Western 79:17,
81:15
whatever 14:12,
18:4, 30:20,
31:3, 45:2,
95:22, 96:1,
96:4
Whereabouts 74:18
WHEREOF 107:26
Whereupon 104:6
whether 43:4,
50:25, 63:20
whole 40:2, 56:3,
59:6, 64:8,
80:22, 87:16,
107:12
will 5:20, 7:4,
27:16, 92:12,
92:14
Williams 47:24,
48:8
win 67:19
wise 6:15, 20:22,
72:7
wish 105:6
with you 96:8
withdraw 49:8,
68:1, 68:8,
68:11
within 55:19,
103:15
without 101:4,
101:8
WITNESS 3:2,
7:15, 17:23,
20:13, 23:2,
27:13, 28:5,
29:5, 30:8,
31:16, 31:18,
31:20, 33:3,
38:21, 40:15,
41:25, 43:11,
44:8, 46:16,
48:23, 51:17,
52:5, 62:7,
63:23, 65:19,
78:14, 78:25,
82:3, 85:3,
88:7, 89:8,
90:8, 92:4,

96:18, 104:1,
104:4, 106:1,
107:10, 107:26
word 94:18
words 50:16
work 14:1, 14:7,
15:2, 15:3,
15:13, 16:18,
16:2, 17:3,
21:1, 35:24,
95:14, 96:10
worked 16:4,
17:11, 17:12,
97:17
worker 24:18
working 15:16,
16:7, 16:22,
16:25, 21:5,
97:9, 98:6,
98:16
works 93:13
worse 89:10,
89:13, 89:14
write 12:23
written 56:10,
57:3

< X >
Xanax 26:2, 27:4,
27:12, 27:21,
27:24, 28:1,
28:11, 28:14,
29:14

< Y >
Year 16:12,
17:10, 17:12,
34:14, 36:14,
40:5, 42:22,
47:15, 82:11
years 7:2, 14:9,
15:6, 32:24,
33:20, 34:15,
35:6, 42:21,
42:22, 49:11,
49:15, 60:23,
60:24, 61:12,
67:24, 86:6,

86:20
yellow 51:10
Yep 9:22, 32:17,
33:3, 48:15,
48:17, 50:10,
54:19, 60:8,
69:20, 76:21,
95:2, 95:4
York 1:1, 1:8,
1:16, 2:4,
2:8, 2:15,
4:3, 17:3,
59:3, 59:4,
60:25, 61:13,
63:7, 79:18,
81:15, 107:1,
107:7, 107:35
young 26:18,
28:22, 86:7
younger 29:2
yourself 19:21

< Z >
Zoloft 71:22
Zyprexa 25:15,
71:22, 72:16,
72:18, 72:19,
73:3, 73:11,
73:19
Zyprexal 72:17