# 23-0352

## United States Court of Appeals

*for the*

## Second Circuit

JOSUE ORTIZ,

*Plaintiff-Appellee,*

— v. —

MARK STAMBACH,

*Defendant-Appellant,*

RICHARD WAGSTAFF, MARY GUGLIUZZA, BUFFALO POLICE
DEPARTMENT DOES 1-12, BUFFALO POLICE DEPARTMENT,
THE CITY OF BUFFALO, MARK VAUGHN,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## REPLY BRIEF FOR DEFENDANT-APPELLANT

HODGSON RUSS LLP
Peter A. Sahasrabudhe, Esq.
*Attorneys for Defendant-Appellant*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

CP COUNSEL PRESS   (800) 4-APPEAL • (512905)

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ...................................................................3

ARGUMENT ......................................................................................3

POINT I.    THE DISTRICT COURT AFFIRMED THE JURY'S
VERDICT BASED ON A THEORY WHICH WAS NOT
ADVANCED AT TRIAL ................................................................3

POINT II.    THE DISTRICT COURT ERRED IN DENYING
DETECTIVE STAMBACH'S RULE 50 MOTION
AS TO ORTIZ'S MALICIOUS PROSECUTION CLAIM ...............6

    A.    Ortiz's Factual Assertions Are Faulty ...................................6

        1.    Stambach was impeached on collateral issues only ..................6

        2.    It is irrelevant that Stambach's colleagues previously
questioned Ortiz ........................................................7

        3.    The jury was not permitted to consider the homicide
file, as it never made it into evidence .........................................8

        4.    The parties' stipulation did not require the jury to find
that Stambach planted non-public facts in Ortiz's
confession.....................................................................9

    B.    Ortiz Fails to Address or Distinguish Authority in Detective
Stambach's Favor on the Issue of Probable Cause ..............................9

        1.    Detective Stambach's case-law demonstrates that
a sworn confession creates probable cause..............................10

        2.    Ortiz did not adduce sufficient evidence to
overcome the presumption of probable cause
created by the grand jury indictment .......................................12

i

## <u>TABLE OF CONTENTS - cont'd</u>

PAGE

C.      It would be Manifestly Unjust to Deny Detective
Stambach Qualified Immunity on Ortiz's Malicious
Prosecution Claim ...............................................................14

POINT III.    STAMBACH IS ENTITLED TO JUDGMENT AS A
MATTER OF LAW ON ORTIZ'S FABRICATION OF
EVIDENCE CLAIM ............................................................15

A.      Ortiz Failed to Adduce Any Evidence Suggesting
that Stambach Fabricated the Sworn, Mirandized
Confession which was Reviewed by a Prosecutor.............................15

B.      Stambach Merely Forwarded the Sworn, Mirandized
Statement to a Prosecutor....................................................17

POINT IV.    STAMBACH IS ENTITLED TO JUDGMENT AS A
MATTER OF LAW ON ORTIZ'S FIFTH AMENDMENT
CLAIM ................................................................................18

A.      Detective Stambach did not Coerce Ortiz...........................................18

B.      Detective Stambach is Entitled to Qualified
Immunity on Ortiz's Fifth Amendment Claim....................................20

POINT V.     ALTERNATIVELY, THE JURY'S AWARD OF
COMPENSATORY DAMAGES SHOULD BE REDUCED............21

POINT VI.    THE COURT SHOULD STRIKE THE PUNITIVE
DAMAGES AWARD ..........................................................22

CONCLUSION ......................................................................23

ii

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Federal Cases**

*U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*,
  764 F.3d 699 (7th Cir. 2014) ...............................................................3

*Blackburn v. State of Ala.*,
  361 U.S. 199 (1960)...........................................................................19

*Blackmon v. Holder*,
  20-CV-524, 2022 WL 329256 (E.D.N.C. 2022) .................................15

*Bonds v. City of New York*,
  No. 12-cv-1772, 2014 WL 2440542 (E.D.N.Y. May 2014) ..............12

*Boyd v. City of New York,*
  336 F.3d 72 (2d Cir. 2003) ..........................................................10, 12

*Dassey v. Dittmann*,
  877 F.3d 297 (7th Cir. 2017) ..............................................................14

*Fikes v. Alabama*,
  352 U.S. 191 (1957)...........................................................................19

*King v. City of New York*,
  No. 99-cv3669, 2007 WL 959696 (E.D.N.Y. Mar. 30, 2007) ..........19

*Limone v. United States*,
  579 F.3d 79 (1st Cir. 2009)................................................................21

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
  442 F.3d 101 (2d Cir. 2006) ..............................................................22

*Pearson v. Callahan*,
  555 U.S. 223 (2009)...........................................................................21

*Provost v. City of Newburgh*,
  262 F.3d 146 (2d Cir. 2001) .........................................................14, 20

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Sedunova v. City of New York*,
    13 CV 5262, 2015 WL 541408 (E.D.N.Y. 2015)........................................10, 11

*Sedunova v. City of New York*,
    652 Fed. Appx. 29 (2d Cir. 2016).......................................................................16

*Sinclair v. Long Island R.R.*,
    985 F.2d 74 (2d Cir. 1993) .............................................................................3, 5

*Spano v. New York*,
    360 U.S. 315 (1959).............................................................................................19

*Thomsen v. City of New York*,
    15-cv-2668, 2016 WL 590235 (S.D.N.Y. 2016)........................................10, 11

*Washington v. Buraker*,
    322 F. Supp. 2d 702 (W.D. Va. 2004), *aff'd* 407 F.3d 274 (4th Cir.
    2005) .........................................................................................................17, 19

*Woods v. City of Reno*,
    2020 WL 4194844 (D. Nev. 2020)....................................................................19

iv

## **INTRODUCTION**

Josue Ortiz's brief acknowledges, just as the District Court did, that Ortiz confessed to the murders of Nelson and Miguel Camacho in November of 2004. Despite citing evidence not introduced at trial and raising arguments not presented to the District Court or the jury, Ortiz has still failed to demonstrate that his confession was the product of any constitutional violation committed by Detective Mark Stambach. For this reason alone, the verdict awarded in Ortiz's favor against Detective Stambach cannot stand. If anything, Ortiz's brief emphasizes precisely what was missing from his case.

Ortiz fails to sufficiently address the legal arguments Detective Stambach advances regarding the three causes of action which survived summary judgment. Ortiz fails to distinguish the case-law Detective Stambach cites establishing that, under the circumstances present in this case, a sworn confession creates probable cause for an arrest and prosecution, and probable cause constitutes a complete defense to Ortiz's malicious prosecution claim. Ortiz also distorts the trial evidence into what he wishes it was, arguing that Detective Stambach is liable for due process fabrication of evidence. Most significantly, Ortiz misstates what the record shows about Detective Stambach's interactions (or lack thereof) with the Assistant District Attorney who ultimately chose to bring charges against Ortiz.

Absent a showing that Detective Stambach intentionally misled the District Attorney as to the circumstances of Ortiz's sworn confession, Ortiz cannot succeed on his fabrication of evidence claim. Finally, Ortiz fails to demonstrate how Detective Stambach's interview of him was unconstitutionally coercive. Even if Ortiz did suffer from mental illness, no authority suggests that Detective Stambach's decision to question him for a mere forty minutes is coercive under the Fifth Amendment.

Rather than the distorted version of the record he now presents, the jury and the District Court relied exclusively on Ortiz's later-revealed innocence to conclude that Detective Stambach had committed heinous constitutional violations. But the actual evidence before the jury of Detective Stambach's actions simply does not support the jury or the District Court's conclusions. All witnesses who actually testified regarding Detective Stambach's conduct confirmed that he acted properly in all respects. No witness who had personal knowledge of Detective Stambach's conduct testified that he violated Ortiz's rights or acted improperly in any way. Only speculation and supposition were presented to the jury. Given these egregious failures, the Court should either reverse the judgment against Detective Stambach or order a new trial.

## STATEMENT OF FACTS

Detective Stambach included the relevant facts in his principal brief. Certain facts are repeated here only for purposes of argument.[1]

## ARGUMENT

## POINT I.  THE DISTRICT COURT AFFIRMED THE JURY'S VERDICT BASED ON A THEORY WHICH WAS NOT ADVANCED AT TRIAL

Never once during trial did Ortiz's counsel argue or posit that Ortiz confessed to the Camacho murders because Detective Stambach had placed non-public information into Ortiz's mind before Police Officer Edwin Torres arrived to serve as a translator.  But the District Court's decision found this to be the case: the District Judge found that Ortiz merely repeated a confession to Officer Torres that was somehow planted in his mind during his initial forty-minute interaction with Detective Stambach.  A-3118-3119.  Because this theory was never put to the jury, and because this is the theory upon which the jury verdict was sustained, a new trial must be ordered.  *See Sinclair v. Long Island R.R.*, 985 F.2d 74, 78 (2d Cir. 1993) ("[T]he verdict ... cannot be sustained on a theory that was never presented to the jury"); *see also U.S. ex rel. Absher v. Momence Meadows Nursing Center,*

---

[1]     Of course in gleaning the relevant facts, the Court should look only to the trial record. The Court should disregard the citations in Ortiz's brief to facts which clearly did not come into evidence at trial.

3

*Inc.*, 764 F.3d 699, 712 (7th Cir. 2014) ("because the relators did not argue to the jury that [defendant] committed fraud by impliedly (but falsely) certifying compliance with applicable regulations, this theory is waived on appeal").

First, Ortiz misstates the record when he claims this argument was put to the jury. Dkt. No. 75 ("Resp. Br.") at p. 62. While Ortiz's counsel may have alluded to his belief that certain details were placed into the confession by Detective Stambach, counsel never once argued that Ortiz later independently repeated those details, or the Stambach-suggested confession generally, when Torres was present. A-2572 (arguing that the only thing Torres witnessed was Stambach typing up the confession as opposed to a true question and answer). The uncontradicted, credible record evidence, which shows that Officer Torres witnessed the sworn, *Mirandized* confession, belies that argument. Indeed, Officer Torres testified that he recalled Ortiz making the confession, that he was convinced Ortiz was involved in the murders, and that he was convinced based on Ortiz's own words. A-2669-2670. It cannot be disputed that the basis upon which the District Court upheld the jury's verdict, that Ortiz repeated the (allegedly forced) confession in Spanish to Officer Torres, was never submitted to the jury.

4

Second, Ortiz incorrectly characterizes the District Court's analysis as adopting a reasonable view of the verdict that is "consistent with the facts and evidence adduced at trial." Resp. Br. at p. 61. That Detective Stambach, who does not speak Spanish, could manipulate Ortiz into confessing in Spanish to Officer Torres in less than an hour's time simply makes no sense. That interpretation is not based on a reasonable view of the evidence and is actually inconsistent with the facts adduced through testimony. Moreover, in allowing the verdict to stand based on the theory that Ortiz was manipulated into confessing in front of Officer Torres, the District Court severely prejudiced Detective Stambach. Detective Stambach spent his efforts at trial defending against the position advanced by Ortiz and his counsel – that the entire sworn confession, given in front of both Detective Stambach and Officer Torres, was entirely fabricated. SA-18. By sustaining the verdict on the grounds that the sworn confession was not made up, but coerced prior to it having been recorded, the District Court necessarily injected a new theory of liability which was not advanced at trial. Because a District Court is not permitted to engage in such reasoning when ruling on post-verdict motions, at the very least, a new trial is warranted. *See Sinclair*, 985 F.2d at 78.

5

If this Court is not inclined to reverse the District Court's decision denying Detective Stambach's motion for judgment as a matter of law, then a new trial must be ordered instead.

## POINT II.  THE DISTRICT COURT ERRED IN DENYING DETECTIVE STAMBACH'S RULE 50 MOTION AS TO ORTIZ'S MALICIOUS PROSECUTION CLAIM

### A.  Ortiz's Factual Assertions Are Faulty

Ortiz begins his argument as to his malicious prosecution claim by listing a litany of factual assertions which, frankly, are based on strained inferences that do not accurately reflect the trial evidence.  Rep. Br. at p. 34-40.  Even worse, the great majority of these factual assertions were not made to the jury and were also not raised during briefing on post-verdict motions before the District Court.  These factual arguments and assertions are thus not properly before this Court.  But even if they were, they lack merit and are contradicted by the actual trial record.  Although it is unnecessary to go through each of the factual contentions made by Ortiz for purposes of this appeal, a select few require mention here.

### 1.  Stambach was impeached on collateral issues only

Ortiz continually makes mention of instances where Detective Stambach was "impeached."  *See, e.g.*, Resp. Br. at p. 40.  But the issues or facts upon which these impeachments occurred are of limited to no relevance.  For

6

example, whether Detective Stambach was present for Ortiz's booking photo says nothing of whether or not Ortiz voluntarily confessed to the Camacho murders. A-2309-10. Whether or not Detective Stambach reviewed a statement made by Carlos Osario is of no moment, as that statement never came into evidence, and the jury could not consider the contents of that statement in its deliberations. A-2275 (District Court stating that there is no evidence that Carlos Osario gave a statement). Further, the exact timing of when Detective Stambach reviewed photographs of the crime scene in relation to when he first interviewed Ortiz has no bearing on whether Ortiz freely gave his statement confessing to the Camacho murders. By emphasizing these "impeachments," counsel endeavors to distract this Court from the truly relevant and significant evidence.

2. It is irrelevant that Stambach's colleagues previously questioned Ortiz

Ortiz continually emphasizes that other members of the BPD interviewed him the day prior to his confession, and that he did not reveal any relevant information during those interviews. *See, e.g.*, Resp. Br. at p. 34. Obviously, however, there are many instances where a witness does not reveal information during his first few encounters with the police, but then subsequently does so during a later encounter. Contrary to Ortiz's argument, the fact that he had not previously relayed relevant information on the Camacho murders was not

7

necessarily evidence that he was innocent or uninvolved. In fact, Sergeant Lonergan testified that he did not think it was important to tell Stambach about his prior encounter with Ortiz which occurred the night before, because Lonergan knew Ortiz might give further information during his subsequent discussion with Detective Stambach. A-2265.

3. The jury was not permitted to consider the homicide file, as it never made it into evidence

Ortiz strenuously argues that the jury could have believed that Stambach reviewed the assigned homicide file for the Camacho murders prior to his initial interview with Ortiz. Resp. Br. at p. 37. But, regardless of whether Stambach did or did not review the homicide file, the jury had no way of determining what such a review would have revealed. Virtually the entire homicide file, save for a few select police reports, was precluded from evidence. A-2862-2917 (demonstrating all of the documentary evidence which was introduced at trial). The jury had no way of determining what a review of the homicide file would have revealed to Stambach. Ortiz failed to adduce evidence demonstrating what exactly was in the homicide file, or when various materials included would have been filed. Ortiz's discussion of the Camacho homicide file

has no bearing on this appeal.  The discussion is simply another attempt to distract the Court.

      4.     <u>The parties' stipulation did not require the jury to find that Stambach planted non-public facts in Ortiz's confession</u>

      Ortiz argues that, because he was not involved in the Camacho murders, the jury must have found that "non-public" facts were placed into his confession by Detective Stambach.  Resp. Br. at p. 35.  But that inference does not follow.  Simply because Ortiz was not involved in the murder does not mean he was not at the scene or that he did not subsequently become aware of the crime scene's various details and features.  Ortiz knew the Camacho brothers and even attended their funeral, so there was ample opportunity for him to have heard about what the crime scene looked like prior to his encounter with Detective Stambach. A-2547-2548.  The Court should reject Ortiz's assertion that only Detective Stambach could have fed Ortiz information about the crime scene prior to his sworn, *Mirandized* interview.

**B.**    **Ortiz Fails to Address or Distinguish Authority in Detective Stambach's Favor on the Issue of Probable Cause**

      In addition to creating a faulty factual premise to argue in favor of his malicious prosecution claim, Ortiz also fails to address the persuasive legal authority Detective Stambach cites which demonstrates that there was probable

9

cause for Ortiz's prosecution and that his malicious prosecution claim therefore fails as a matter of law.  Likewise, Ortiz's arguments regarding the competing testimony plus test announced in *Boyd v. City of New York* fail, because he cannot point to any actual testimony which establishes bad faith misconduct by Detective Stambach.  336 F.3d 72 (2d Cir. 2003).  For these primary reasons, Ortiz's malicious prosecution claim fails.

1.  <u>Detective Stambach's case-law demonstrates that a sworn confession creates probable cause</u>

Detective Stambach's opening brief cited *Thomsen v. City of New York*, 15-cv-2668, 2016 WL 590235, at *7 (S.D.N.Y. 2016) and *Sedunova v. City of New York*, 13 CV 5262, 2015 WL 541408, at *3 (E.D.N.Y. 2015).  Both cases clearly demonstrate that a sworn confession, such as the one given by Ortiz, creates probable cause and precludes a subsequent malicious prosecution claim.  Ortiz barely attempts to distinguish those two cases, because he cannot.  His half-hearted attempt to do so falls short.

Ortiz argues only that, in *Thomsen* and *Sedunova*, the officers who took sworn confessions applied little pressure and had corroborating evidence available.  Resp. Br. at p. 41-42.  But the same can be said of Detective Stambach in this case.  There is no evidence of Stambach applying any pressure whatsoever

10

to Ortiz. No witness testified that Stambach raised his voice to Ortiz or forced Ortiz to say anything. Moreover, Stambach had some corroborating evidence, as Ortiz, only minutes prior, had flagged down two patrol officers and told them he wanted to confess to the Camacho murders. A-2902. Nothing distinguishes this case from either *Thomsen* or *Sedunova*. Just as the confessions in those cases created probable cause, Ortiz's voluntary confession in this case also creates probable cause, thereby entitling Detective Stambach to judgment as a matter of law on Ortiz's malicious prosecution claim.

Of course, Ortiz is correct that a police officer cannot beat a suspect until they say "I did it," or teach a child to say "I'm guilty." Resp. Br. at p. 41. But there is no evidence that Detective Stambach did anything of the kind when he interviewed Ortiz. The evidence actually shows that Detective Stambach gave Ortiz food and made him feel comfortable. At most, Detective Stambach may have asked Ortiz leading or suggestive questions, but this type of questioning does not vitiate probable cause created by a voluntary confession. *Thomsen*, 2016 WL 590235, at *2, *7. In fact, in *Thomsen*, the court held that probable cause was not vitiated even when the police officer had deliberately lied to the suspect about the evidence she had against him. *Id.* at *2. Despite this dishonest conduct, there was still probable cause created by the suspect's confession. *Id.* at *7. So, too, here.

11

Because Ortiz can only show that Detective Stambach may have asked him leading or suggestive questions, his voluntary confession – which only took approximately forty minutes to elicit – created probable cause for his prosecution.

Because there was probable cause to prosecute Ortiz, his malicious prosecution claim fails as a matter of law.

2. <u>Ortiz did not adduce sufficient evidence to overcome the presumption of probable cause created by the grand jury indictment</u>

Where, as here, a plaintiff was indicted by a grand jury, he must offer testimony of a police officer's bad faith misconduct, plus some evidence which corroborates that testimony, in order to overcome the presumption of probable cause created by the indictment. *Bonds v. City of New York*, No. 12-cv-1772, 2014 WL 2440542, at *7 (E.D.N.Y. May 2014) (citing *Boyd*, 336 F.3d at 76). Ortiz failed to do so at trial, dooming his malicious prosecution claim.

In arguing that he met the competing testimony plus test announced in *Boyd*, *supra*, Ortiz essentially acknowledges that he was required to offer some testimony establishing bad faith misconduct or other unconstitutional behavior on the part of Detective Stambach. Resp. Br. at p. 43. But Ortiz does not point to any testimony which actually shows such misconduct on Detective Stambach's behalf – nor can he. Only three witnesses actually testified as to Detective Stambach's

12

conduct, and none of their testimony reveals any misconduct at all. Officer Torres testified that there was nothing improper about Ortiz's sworn confession. A-2674-2675. Sergeant Lonergan testified that he agreed with the decision to arrest Ortiz, and that Detective Stambach acted properly in all respects. A-2267-69; 2280. And, Detective Stambach also testified that he did not threaten, coerce, or manipulate Ortiz in any way. A-2335-36; 2378; 2902. No other witness actually observed anything that Detective Stambach did in connection with the investigation of the Camacho murders. Ortiz himself conveniently could not remember any of his interactions with Detective Stambach. A-2164; A-2435. Without any direct testimony establishing bad faith misconduct on the part of Detective Stambach, Ortiz's malicious prosecution claim fails as a matter of law.

The rule announced in *Boyd* exists to prevent exactly what happened here. For the presumption of probable cause to mean anything at all, in the context of a claim of malicious prosecution, there needs to be some direct testimony somewhere in the record that a police officer acted in bad faith. Because there was absolutely no testimony – zero – to that effect in this case, Ortiz's malicious prosecution claim necessarily fails.

13

**C.  It would be Manifestly Unjust to Deny Detective Stambach Qualified Immunity on Ortiz's Malicious Prosecution Claim**

In addition, Detective Stambach should be granted qualified immunity on Ortiz's malicious prosecution claim.  Contrary to what Ortiz says in his brief (Resp. Br. at p. 46), a failure to grant qualified immunity in this instance would be manifestly unjust.  *See Provost v. City of Newburgh*, 262 F.3d 146, 162 (2d Cir. 2001).  In reviewing steps taken by police officers in extracting confessions, federal courts have approved of tactics far more coercive and manipulative than anything Detective Stambach did in this case.  *Dassey v. Dittmann*, 877 F.3d 297, 304 (7th Cir. 2017) (noting that the Supreme Court "has held that officers may deceive suspects through appeals to a suspect's conscience, by posing as a false friend, and by other means of trickery and bluff").  It would be fundamentally unfair for federal precedent to exist affirming severe interrogation tactics taken by law enforcement officers while Detective Stambach is simultaneously punished for conducting a short, non-coercive interview with Ortiz before calling for the help of a translator.

Qualified immunity is thus another ground upon which Detective Stambach should be granted judgment as a matter of law on Ortiz's malicious prosecution claim.

14

**POINT III. STAMBACH IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ORTIZ'S FABRICATION OF EVIDENCE CLAIM**

**A.     Ortiz Failed to Adduce Any Evidence Suggesting that Stambach Fabricated the Sworn, Mirandized Confession which was Reviewed by a Prosecutor**

Ortiz also fails to demonstrate that there was sufficient evidence for him to maintain his due process fabrication of evidence claim. Ortiz's arguments as to this cause of action ignore applicable authority and contradict what the trial evidence actually shows.

Ortiz fails to meaningfully distinguish this case from *Blackmon v. Holder*, 20-CV-524, 2022 WL 329256, at *3-*5 (E.D.N.C. 2022). *Blackmon* is particularly instructive because, like this case, the decision deals with a voluntary confession which later turned out to be false. *Id.* There, the Court noted that so long as a confession accurately reflected what a suspect said in an interview, the confession could not be the basis for a fabrication of evidence claim – even if the confession ultimately proved to be false. *Id.* That is the exact scenario presented here, and Ortiz fails to demonstrate otherwise.

Contrary to Ortiz's conclusory arguments, the evidence unequivocally shows that the confession is an accurate representation of what occurred during Ortiz's sworn, *Mirandized* interview. To conclude as much, the Court need look

15

no further than the testimony of Officer Torres, who testified unequivocally that the confession accurately reflects what transpired between Stambach and Ortiz. A-2667-68. Ortiz offered no contradictory evidence – none. Accordingly, because Ortiz cannot show that the confession forwarded to prosecutors was itself fabricated or made up, he cannot maintain his fabrication of evidence claim. Again, there was no testimony contradicting Officer Torres's account on this point.

Equally unavailing is Ortiz's argument that Stambach knew the confession was false before forwarding it the Assistant District Attorney who ultimately decided to charge Ortiz. None of the trial evidence suggests that the Buffalo Police Department had any viable leads in the Camacho homicide other than Ortiz when the confession was given, so Ortiz's claim that Stambach knew the confession was untrue is based completely on speculation. Such speculation is insufficient to support Ortiz's fabrication of evidence claim. *See Sedunova v. City of New York*, 652 Fed. Appx. 29, 31, n.1 (2d Cir. 2016) ("Although Sedunova attempts to plead a fabrication claim, she has not alleged that her confession was forged she acknowledges that she made the videotaped confession and adopted the written confession, nor has she alleged any other circumstances that lead to a reasonable inference that any defendant knew her confession was false when made").

16

In short, the statement forwarded to prosecutors accurately recorded what Ortiz said to Stambach and Torres in his *Mirandized* interview. Because the statement was not forged or fabricated, Stambach is entitled to judgment as a matter of law on Ortiz's fabrication of evidence claim.

**B.     Stambach Merely Forwarded the Sworn, *Mirandized* Statement to a Prosecutor**

Ortiz also fails to distinguish this case from another false confession case from outside of this Circuit – *Washington v. Buraker*, 322 F. Supp. 2d 702, 712 (W.D. Va. 2004), *aff'd* 407 F.3d 274 (4th Cir. 2005). *Washington* teaches that, to succeed on a fabrication of evidence claim in the context of a false confession, a plaintiff must prove that a police officer misled the prosecutor as to the circumstances of the confession. *Id.* at 712. But no such evidence exists in this case – notwithstanding Ortiz's current arguments to the contrary.

The only evidence shows that Stambach merely forwarded Ortiz's confession to the District Attorney assigned to the case. And the confession was unequivocally not falsified or forged – it accurately reflected what Ortiz said to Stambach once Officer Torres arrived to translate. A-2667-68. The testimony that Ortiz cites regarding Stambach's interaction with the assigned prosecutor shows only that Stambach gave the sworn confession to the prosecutor for his review.

17

A-2385 (Stambach testifying that the only evidence he showed the District Attorney for his review was the sworn statement).  There is no testimony that Stambach and the prosecutor had any discussions or interactions regarding Stambach's initial forty-minute conversation with Ortiz prior the prosecutor's decision to bring charges.  Because Stambach's only relevant interaction with a prosecutor was related the sworn confession which was indisputably not falsified, Stambach cannot be said to have misled the prosecutor.  For this reason, too, the fabrication of evidence claim fails as a matter of law.

## POINT IV.  STAMBACH IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ORTIZ'S FIFTH AMENDMENT CLAIM

### A.    Detective Stambach did not Coerce Ortiz

Ortiz does not cite a single case even suggesting that the jury could have found Fifth Amendment coercion based on the evidence adduced at trial.  No such authority exists.  Simply put, questioning an individual with schizophrenia for a mere forty minutes is not the kind of coercion which subjects a law enforcement officer to damages under the Fifth Amendment.  In each of the cases cited by Ortiz, the officer found to have committed a Fifth Amendment violation questioned an individual for a substantially longer period of time than Stambach questioned Ortiz, and in a substantially more coercive manner.  *See, e.g.*, *Blackburn v. State of*

18

*Ala.*, 361 U.S. 199, 207 (1960) (interrogation took five to six hours); *Spano v. New York*, 360 U.S. 315, 322 (1959) (suspect questioned for eight straight hours); *Fikes v. Alabama*, 352 U.S. 191, 194 (1957) (suspect questioned during multiple hour sessions over the course of multiple days); *Woods v. City of Reno*, 2020 WL 4194844, at *8 (D. Nev. 2020) (interview lasted up to five hours).

Under Ortiz's reasoning, the fact that Detective Stambach questioned Ortiz at all without a translator present would be coercive, but of course the law requires much more. To establish his Fifth Amendment claim, Ortiz was required to show some evidence of coercive tactics by Detective Stambach during their forty-minute interaction – and he made no such showing. The evidence, at best, shows that Stambach asked Ortiz pointed or leading questions regarding the Camacho homicide during the forty-minute interview. But such questions would not constitute Fifth Amendment coercion, unless Ortiz could show that the questions were specifically designed to exploit his allegedly weakened mental state. *King v. City of New York*, No. 99-cv3669, 2007 WL 959696, at *12-*13 (E.D.N.Y. Mar. 30, 2007) (explaining that there was no evidence that the interrogating officers intentionally employed techniques to exacerbate or exploit the plaintiff's weakened state, so the plaintiff's Fifth Amendment claim failed as a matter of law); *Washington*, 322 F. Supp. 2d at 714 (explaining that mere

19

questioning of a suspect who officers knew was mentally handicapped did not amount to Fifth Amendment coercion).

Because Ortiz made no showing as to how Stambach's questioning was specifically designed to exploit his mental state, he cannot recover on his Fifth Amendment claim. Indeed, Ortiz offered no evidence whatsoever to demonstrate what tactics Detective Stambach employed other than to ask him questions about the Camacho homicide. The critical evidence that the District Court ignored involves Ortiz's testimony that he cannot remember his interview with Detective Stambach. Thus, the version of the interview given by the police witnesses went uncontradicted. The Court should thus reverse the District Court's denial of judgment as a matter of law to Stambach on Ortiz's Fifth Amendment claim.

**B.      Detective Stambach is Entitled to Qualified Immunity on Ortiz's Fifth Amendment Claim**

To disallow Detective Stambach qualified immunity here would result in manifest injustice. *See Provost,* 262 F.3d at 162. As the very cases cited by Ortiz demonstrate, no federal court has ever held that a police officer can be found liable under the Fifth Amendment for questioning a mentally ill witness for less than an hour. The reality is that mentally ill people often need to be questioned when crimes are being investigated. To hold Detective Stambach liable based on

20

the evidence presented at trial would suggest that any officer who has obtained an

inculpatory statement from a witness with mental illness may be subject to

damages. Surely, that is not a precedent that this Court wants to set.

Because in 2004 (or even today) there was no clearly established

federal authority demonstrating that Detective Stambach's interview of Ortiz could

be viewed as constitutionally coercive, Detective Stambach is entitled to qualified

immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This is yet another

compelling reason why this Court should reverse the District Court's denial of

Detective Stambach's Rule 50 motion as to Ortiz's Fifth Amendment claim.

### POINT V. ALTERNATIVELY, THE JURY'S AWARD OF COMPENSATORY DAMAGES SHOULD BE REDUCED

Ortiz does not meaningfully dispute that he failed to offer a detailed

account of emotional distress damages stemming from his incarceration. Indeed,

he all but concedes that he offered no testimony regarding his emotional distress

other than a few isolated incidents that occurred over ten years of his incarceration.

Because of this failure, the Court can readily conclude that the jury's award of

$500,000 per year of incarceration was intrinsically excessive. *See Limone v.*

*United States*, 579 F.3d 79, 106 (1st Cir. 2009) (noting that "the $1,000,000 per

year baseline is extremely generous, and in cases involving noneconomic damages

21

we have counseled that special attention must be paid to the particular circumstances of each individual plaintiff").

      If the jury's verdict is not overturned, then the Court should reduce the amount of compensatory damages awarded by the jury.

## POINT VI.  THE COURT SHOULD STRIKE THE PUNITIVE DAMAGES AWARD

      "To be entitled to an award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'"  *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006).  In arguing that he showed this positive element of conscious wrongdoing, Ortiz ignores that his case relied heavily on evidence which was, at best, circumstantial, if not entirely speculative.  Indeed, the direct evidence introduced at trial showed only that Detective Stambach was motivated by a desire to bring the perpetrator of the Camacho murders to justice.  Under this circumstance, punitive damages were simply not warranted.  Accordingly, the Court should reverse the District Court's denial of Detective Stambach's request to strike the jury's punitive damages award.

22

## **CONCLUSION**

Josue Ortiz's plight reasonably engenders sympathy from all of us. But sympathy and emotion are insufficient to sustain a verdict which holds a long-tenured police officer personally liable for heinous constitutional violations. Detective Stambach urges this Court to look to the actual evidence that was introduced at trial – it is clearly insufficient to uphold the verdict against him. For these reasons, the Court should either reverse the judgment against Detective Stambach or order a new trial. Alternatively, the Court should strike the jury's punitive damages award and, at a minimum, reduce the amount of compensatory damages awarded by the jury.

Dated:      Buffalo, New York
                October 13, 2023

                         **HODGSON RUSS LLP**
                         *Attorneys for Defendant-Appellant*
                         *Mark Stambach*

                         By: /s/ Peter A. Sahasrabudhe
                              Hugh M. Russ III, and
                              Peter A. Sahasrabudhe, of counsel
                         The Guaranty Building
                         140 Pearl Street, Suite 100
                         Buffalo, NY 14202-4040
                         716.856.4000

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of 2d Cir. Local Rule 32.1(a)(4)(B) because it contains 4,770 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This reply brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared using Microsoft Office Word and a proportionately spaced, serif font (Times New Roman, 14 point).

Dated:     Buffalo, New York
            October 13, 2023

                         **HODGSON RUSS LLP**
                         *Attorneys for Defendant-Appellant*
                         *Mark Stambach*

                         By: /s/ Peter A. Sahasrabudhe
                              Hugh M. Russ III, and
                              Peter A. Sahasrabudhe, of counsel
                         The Guaranty Building
                         140 Pearl Street, Suite 100
                         Buffalo, NY  14202-4040
                         716.856.4000